UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

       Plaintiff,

  -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI,
JIA LIAN,
XIAO YU,

       Defendants,

  -and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

       Nominal Defendant.

Civil Action No.: 1:18-cv-11642

---

## MEMORANDUM OF LAW OF DEFENDANT VINCENT WENYONG SHI IN OPPOSITION TO MOTION FOR ORDER OF CONTEMPT AND IN SUPPORT OF MOTION TO DISMISS AND TO DISCHARGE RECEIVER

CKR LAW LLP
1330 Avenue of the Americas
14th Floor
New York, New York 10019
Tel. (212) 259-7300

*Attorneys for Defendant*
*Vincent Wenyong Shi*

Of counsel:  Michael James Maloney

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT  AND SUMMARY OF FACTS.................................................. 1

ARGUMENT .................................................................................................................... 5

POINT I.      THE APPLICATION FOR AN ORDER OF CONTEMPT MUST BE  DENIED
              BECAUSE THE COURT HAS NO JURISDICTION OVER SHI........................ 5

POINT II.     THE APPLICATION FOR AN ORDER OF CONTEMPT MUST BE  DENIED
              ON THE MERITS BECAUSE IT AMOUNTS TO NOTHING MORE  THAN
              AN UNLAWFUL DEMAND THAT SHI AFFIRMATIVELY INVEST NEW
              MONEY INTO LINK MOTION............................................................... 7

POINT III.    THIS ACTION MUST BE DISMISSED AS TO  SHI FOR FAILURE TO
              SERVE PROCESS.................................................................................. 8

POINT IV.     THE SECURITIES CLAIMS MUST BE DISMISSED  FOR FAILURE TO
              STATE A CAUSE OF ACTION ................................................................ 8

   A.     Plaintiff's Claim Under Section 10(b) of The Exchange Act and Rule 10b-5 Must Be
          Dismissed Because Plaintiff Does Not Allege any Purchase and Sale of Securities...... 8

   B.     Plaintiff's Claim Under Section 20(a) of The Exchange Act Must Be Dismissed ........ 10

POINT V.      THE BREACH OF FIDUCIARY DUTY CLAIM AND UNJUST
              ENRICHMENT CLAIMS MUST BE DISMISSED AS TO SHI FOR LACK OF
              JURISDICTION ................................................................................... 11

POINT VI.     THE PRELIMINARY INJUNCTION SHOULD BE  DISSOLVED AND THE
              RECEIVER DISCHARGED .................................................................... 12

   C.     There is No Evidence of Consent by the Board of Directors  to the Appointment of a
          Receiver and Plaintiff has not Otherwise Satisfied the Standard for Appointment of a
          Receiver ......................................................................................................... 12

   D.     Failing to Discharge the Receiver Will Destroy All  Remaining Value in Link Motion . 14

   F.     New York is The Wrong Forum ..................................................................... 15

   G.     The Court Does Not Have Jurisdiction Over Link Motion................................ 17

CONCLUSION ............................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ............................................................. 9

*Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir. 2002)................................................................. 15

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........................................ 7

*Burstyn v. Worldwide Xceed Grp., Inc.*, No. 01 Civ. 1125(GEL), 2002 WL 31191741 (S.D.N.Y. Sep. 30, 2002) .......................................................................................................................... 9

*Caiola v. Citibank, N.A., New York*, 295 F.3d 312 (2d Cir. 2002) ............................................. 8

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018)................................. 10

*City of Pontiac Policemen's and Firemen's Retirement Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) ....................................................................................................................................... 8

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................................ 10

*Data-Stream AS/RS Tech., LLC v. Acequip Ltd.*, NO. 02 Civ. 2089, 2002 WL 1683736 (S.D.N.Y. July 24, 2012) ........................................................................................................................ 11

*Decker v. Massey-Ferguson, Ltd.* 681 F.2d 111 (2d Cir. 1982) ................................................. 9

*Dorrough v. Harbor Secs., LLC*, No. 99 CV 7589 (ILG), 2002 WL 1467745 (E.D.N.Y. May 10, 2002) ........................................................................................................................................ 6

*Gordon Partners v. Blumenthal*, No. 02 Civ. 7377, 2007 WL 431864 (S.D.N.Y. Feb. 9, 2007) .. 8

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) ...................................................... 4

*In re Herald*, 540 Fed.Appx. 19 (2d Cir. 2013) ......................................................................... 15

*In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553 (S.D.N.Y. 2014), aff'd, 604 F. App'x 62 (2d Cir. 2015) ......................................................................................................................................... 7

*Jackson v. Cty. of Nassau*, 339 F.Supp.2d 473 (E.D.N.Y. 2004) ................................................ 5

*Lantau Holdings Ltd. v. Orient Equal Int'l Grp. Ltd.*, 161 A.D.3d 714, 79 N.Y.S.3d 8 (1st Dep't 2018) ........................................................................................................................................ 11

*Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606(HBP), 2006 WL 2266312 (S.D.N.Y. Aug. 4, 2006) . 4

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005) ............................................. 8

*Licci ex rel. Licci  v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012)..................... 11

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013)................................................. 11

*Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, No. 03 Civ. 1681(LAP), 2004 WL 2199547 (S.D.N.Y. Sep. 29, 2004)........................................................................... 4

*Oyewole v. Ora*, 291 F.Supp.3d 422 (S.D.N.Y. 2018) ............................................................... 7

*Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003) ............................. 15

*Prado v. City of New York*, No. 12-CV-4239 RJS, 2015 WL 5190427 (S.D.N.Y. Sept. 3, 2015). 5

ii

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65 (2d Cir. 1998)............... 14

*Ramgoolie v. Ramgoolie*, No. 16-CV-3345, 2016 WL 11281385 (S.D.N.Y. Dec. 20, 2016)...... 12

*Reich v. Lopez*, 858 F.3d 55 (2d Cir. 2017) ......................................................................... 10

*Senese v. Hindle*, 2011 WL 4536955 (E.D.N.Y. Sept. 9, 2011) .................................................. 5

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014) ........................... 10

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401 (S.D.N.Y. 2014)......................................................................................................... 9

*Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010) ..................................................................... 11

*Steinberg v. Bombardier Trust*, No. 07 Civ. 1212 (WHP), 2008 WL 2787720 (S.D.N.Y. July 9, 2008) ......................................................................................................................... 11

*Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652 (S.D.N.Y. March 26, 2015) ........................................................................................................................... 7

*U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop LLC*, 859 F.Supp.2d 602 (S.D.N.Y. 2012)......... 13

*Varsames v. Palazzolo*, 96 F.Supp.2d 361 (S.D.N.Y. 2000) ...................................................... 12

**Rules & Statutes**

Fed. R. Civ. P. 4 ......................................................................................................................... 5

Fed. R. Civ. Proc. 12(b) ............................................................................................................. 1

Fed.R.Civ.P. 9(b) ........................................................................................................................ 8

NY CPLR 302(a) ........................................................................................................................ 11

Defendant Vincent Wenyong Shi ("Shi"), by and through his undersigned attorneys, hereby respectfully submits this memorandum of law in opposition to plaintiff's order to show cause for contempt and in support of Defendant Shi's motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(2), (5), and (6) and to dissolve the preliminary injunction and discharge the receiver.

## PRELIMINARY STATEMENT
## AND SUMMARY OF FACTS

In this action, Plaintiff Wayne Baliga ("Baliga") has effected an abuse of process by selectively disclosing to this Court only that information designed to bootstrap an international receivership over defendant Link Motion, Inc. ("Link Motion"). This action should have never been brought in the Southern District of New York in the first place. Link Motion is a Cayman company with headquarters in Beijing. (*See* Declaration of Michael James Maloney, dated March 27, 2019 (the "Maloney Decl."), at Ex. 11 p.1.)[1] Shi and the other individual defendants are all residents of the People's Republic of China (the "PRC"). (*See* ECF Dkt. No. 1, Verified Amended Complaint, at ¶¶ 6-8.)

The application for an order of contempt and all claims as to Shi must be denied and dismissed for the reason that Baliga never even bothered to try to effect service of process on Shi. Instead, Baliga merely served copies of papers to "Law Debenture Corporate Services Inc.," the registered agent for Link Motion. Law Debenture is not the authorized agent for service of process on Shi and service of papers on Law Debenture fails to effect service of process on Shi.

The brazenness and bad faith of Baliga and Robert W. Seiden, the receiver appointed by this Court, has now been made clear from papers filed with the High Court for the Hong Kong Special Administrative Region. In an affirmation submitted to the Hong Kong court dated

---

[1]     Unless otherwise stated, all citations to "Ex. _" refer to exhibits to the Maloney Decl.

February 21, 2019, Mr. Seiden falsely stated that "[a]ll of the 1st to 4th Defendants [*i.e.*, Link Motion, Shi, Jia Lian, and Xiao Yu] have appointed Law Debenture Corporate Services Inc. . . . as their agent for service of process. The 1st to 4th Defendants [*i.e.*, the same defendants] were all served via Law Debenture. . . ." (Ex. 1, at ¶ 60.)

After learning of the falsity of the foregoing statement, Randall Ivan Arthur, Baliga's and Mr. Seiden's Hong Kong counsel, could not let the statement remain before the Hong Kong court without correction. In an affidavit dated February 22, 2019, Mr. Arthur stated "I wish to clarify [paragraph 60 of Robert W. Seiden's affirmation to the Hong Kong court]. Law Debenture is the registered agent for [Link Motion]. . . . [G]iven the 2nd to 4th Defendants [*i.e.*, Shi, Jia Lian, and Xaio Yu] are directors of Link Motion, it was believed that the [papers in this action] would come to their attention. . . ." (Ex. 2, at ¶ 5.) Mr. Seiden is a member of the law firm representing Baliga, yet neither counsel for Baliga nor Mr. Seiden made any attempt to advise this Court of their failure to effect service of process on Shi.

Indeed, the entire action fails for lack of jurisdiction. Baliga's primary basis for the existence of jurisdiction in New York are his claims under Section 10(b)(5) of the Securities Act of 1933 (the "Securities Act") and Section 20 of the Securities and Exchange Act of 1934 (the "Exchange Act"). Yet these claims fail to state a cause of action because Baliga fails to allege any material misstatements or omissions in connection with any purchase or sale of securities. Without the purchase and sale of securities, Baliga fails to state a cause of action under Section 10(b)(5) and Section 20. There exists no long-arm jurisdiction over Baliga's common law claims because the alleged misconduct has no nexus to New York. Thus, without valid claims under the securities laws, this Court lacks jurisdiction over Shi and the other defendants.

Baliga's claims also fail on the merits because the core allegations asserted by Plaintiff – the purported stripping of Link Motion's most valuable assets – are utterly false. Baliga alleges that Shi and the other individual defendants are improperly stripping Link Motion of assets comprising business segments referred to as "FL Mobile" and "Showself." Yet Baliga conveniently failed to disclose to the Court that the board of directors has been trying to sell FL Mobile since August 2015. As disclosed to shareholders in a Form 20-F annual report filed with the SEC on April 6, 2016, Link Motion described its efforts to divest FL Mobile as follows:

> In August, 2015, we entered into a legally binding framework agreement (the "FL Framework Agreement") with Beijing Jinxin Rongda Investment Management Co. Ltd. ("Beijing Jinxin"), . . . to sell our entire stake in FL Mobile Inc. . . . This FL Framework Agreement will be terminated at the earlier of (a) one year after its execution, and (b) all parties entering into a binding final agreement. All shareholders of FL Mobile Inc. agreed to sell to Beijing Jinxin the entire stake in FL Mobile Inc. that they held for no less than RMB 4 billion. In January 2016 FL Mobile became a majority owned subsidiary of Beijing Technology through reorganization and termination of contractual arrangements. In February 2016, Beijing Technology, Beijing Jinxin, and Shanghai Houfeng Investment Co., Ltd., the controlling shareholder of Gansu Huangtai Wine-Marketing Industry Co., Ltd. ( "Gansu Huangtai"), a company listed on the Shenzhen Stock Exchange, contemplated a transaction, pursuant to which, Gansu Huangtai would acquire the entire stake of FL Mobile. In March 2016, however, we were informed by Beijing Jinxin that Gansu Huangtai was not able to proceed further with such proposed transaction and Beijing Jinxin remained committed to the binding FL Framework Agreement and would work with us on the completion of the divestment of FL Mobile. In March 2016, FL Mobile was reorganiazed as a majority owned subsidiary of Xinjiang NQ Mobile Venture Capital Investment Co., Ltd. As a further arrangement of the FL Mobile Divestment, later in March 2016, Dr. Vincent Wenyong Shi, our chairman and chief operating officer as well as the chairman of FL Mobile, entered into a termination and share purchase agreement with FL Mobile and us pursuant to which, Dr. Shi will acquire 22% equity interest in FL Mobile by terminating the relevant contractual arrangements and paying us a total consideration of RMB880 million (US$135.5 million).

(Ex. 11, at p.45.) Subsequent statements filed with the SEC describe the efforts of the company to effect a divestiture of FL Mobile. (Exs. 5 to 9.) Likewise, the company disclosed in 2017 that it was seeking to divest the Showself business. (Ex. 10.)

Finally, the receiver appointed by this Court should be discharged because the appointment was based on false or inaccurate statements by Plaintiff Baliga or his counsel. The Court appointed Robert W. Seiden as receiver on the belief that Link Motion had consented to the appointment of a receiver. (*See* ECF Dkt. 26.) Baliga failed to present to the Court any duly executed resolution of the board of directors of Link Motion consenting to the appointment of a receiver or any other evidence of action of the board duly authorized a receiver. Instead, the purported consent of Link Motion was evidenced only by the signature of an attorney from DLA Piper LLP (US) ("DLA") purporting to act on behalf of Link Motion. (*See* ECF Dkt. No. 23.) DLA then promptly withdrew from the action. (*See* ECF Dkt. No. 28.) The foregoing fails to rise to the level of consent sufficient to warrant the highly disruptive measure of a receiver, and Baliga has failed otherwise to show an adequate basis for the appointment of a receiver.

Further, the receiver should be discharged because he is not a citizen of the People's Republic of China (the "PRC"). The corporates structure of Link Motion and its various subsidiaries is organized as a "variable interest entity" ("VIE"), a structure created to comply with PRC laws requiring certain technology companies to be controlled by citizens of the PRC. If a VIE, such as Link Motion, were to become subject to the control of a non-citizen of the PRC, that company would become illegal under PRC law and subject to divestiture of its PRC. Thus, failing to discharge Mr. Seiden as receiver would ultimately result in the loss of Link Motion's valuable interests in its PRC technology businesses.

## ARGUMENT

## POINT I.

## THE APPLICATION FOR AN ORDER OF CONTEMPT MUST BE DENIED BECAUSE THE COURT HAS NO JURISDICTION OVER SHI

A Court cannot compel compliance by a party over which it does not have specific jurisdiction. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134-38 (2d Cir. 2014) (abuse of discretion to hold bank in contempt where court could enforce asset freeze injunction against nonparty bank only if it had personal jurisdiction over bank). Where a defendant is not subject to personal jurisdiction, the defendant is not subject to an order of contempt. *See Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606(HBP), 2006 WL 2266312, at *11-12 (S.D.N.Y. Aug. 4, 2006) (court could not hold defendant in contempt where defendant not subject to personal jurisdiction)*; Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, No. 03 Civ. 1681(LAP), 2004 WL 2199547, at *18 (S.D.N.Y. Sep. 29, 2004) (vacating preliminary injunction where court lacked personal jurisdiction over defendant); *Senese v. Hindle*, 2011 WL 4536955 (E.D.N.Y. Sept. 9, 2011).

Here, Plaintiff purports to have served Shi by delivering process to "Law Debenture Corporate Services Inc.," the registered agent for the corporate defendant Link Motion, not for Shi. Service through an agent requires a clear and specific appointment of the person served as one authorized to accept service of process. Fed. R. Civ. P. 4(e)(2)(C); *Jackson v. Cty. of Nassau*, 339 F.Supp.2d 473, 477-78 (E.D.N.Y. 2004).

Plaintiff presents no such clear and specific appointment of Law Debenture as agent for service of process for Shi. Moreover, Shi's status as an officer and chairman of the board of the corporate defendant Link Motion does not provide a basis for service upon Shi through Link Motion's registered agent. "While an 'agent's authority to accept service may be implied from the

relationship between principal and agent,' a party 'must present facts and circumstances showing the proper relationship between the defendant and its alleged agent' in fact existed—[i]n absence of actual appointment, service of process is ineffective." *Prado v. City of New York*, No. 12-CV-4239 RJS, 2015 WL 5190427, at *3 (S.D.N.Y. Sept. 3, 2015) (internal citation and quotation marks omitted).

Contrary to the facts that Plaintiff has presented to this Court, the receiver's Hong Kong counsel acknowledged to the court in Hong Kong, by way of affidavit, that none of the individual defendants were served with process. After the issuance of the preliminary injunction in this action, Plaintiff requested that the High Court for the Hong Kong Special Administrative Region issue an *ex parte* injunction against the defendants and appoint Robert W. Seiden as a receiver in Hong Kong. The receiver, Mr. Seiden, submitted to the Hong Kong court an affidavit in which he claimed that Shi and the other individual defendants had appointed Law Debenture Corporate Services, Inc. as their agent. This was a false statement. Realizing the falsity of this statement, Randall Ivan Arthur, Hong Kong counsel for Plaintiff, submitted an affidavit correcting the false statement, stating by serving papers to Law Debenture "it was believed that [the papers] would come to [the individual defendants] attention. . . ." (Ex. 2, at ¶¶4-5.) Simply put, Shi has not been served with process.

The mere fact that Shi has knowledge of the lawsuit, or even the Court's orders, is insufficient to confer personal jurisdiction over him absent valid service of process. *See Dorrough v. Harbor Secs., LLC*, No. 99 CV 7589 (ILG), 2002 WL 1467745, at *4 n.4 (E.D.N.Y. May 10, 2002).

Cases finding personal jurisdiction over contemptors based on their knowledge of an injunction and violation thereof are inapposite because the exercise of personal jurisdiction in such

cases derive solely from actions by the contemptor to divert assets in violation of a court order. Here, Plaintiff has failed to identify any instance where Shi, acting with knowledge of the injunction, diverted assets belonging to Link Motion. Instead, Plaintiff seeks to coerce Shi into *investing* new assets into Link Motion.

## POINT II.

### THE APPLICATION FOR AN ORDER OF CONTEMPT MUST BE DENIED ON THE MERITS BECAUSE IT AMOUNTS TO NOTHING MORE THAN AN UNLAWFUL DEMAND THAT SHI AFFIRMATIVELY INVEST NEW MONEY INTO LINK MOTION

Plaintiff has made no showing that Shi has transferred corporate assets in contravention to the Court's Preliminary Injunction. Plaintiff is merely asking the Court to order Shi, personally, to *transfer to* Link Motion *new* money in order to fund this litigation. The formation documents of Link Motion, *i.e.*, the Sixth Amended and Restated Memorandum of Association of Netqin Mobile, Inc. (n/k/a Link Motion Inc.), provide that "[t]he liability of each Member is limited to the amount from time to time unpaid on such Member's shares. . . ." (Ex. 4, at p.1.) In short, there exists no legal obligation *requiring* Shi to personally invest additional funds into the company for the purpose of funding this litigation and there is no basis in equity or law to create such an obligation out of thin air.

Meanwhile, Mr. Seiden has already obtained an injunction over Link Motion's bank accounts in Hong Kong. (Ex. 14.) His inability to transfer any funds that may be in those accounts is the result of his own negligence by improperly drafting the Hong Kong injunction to permit such transfers.

## POINT III.

### THIS ACTION MUST BE DISMISSED AS TO
### SHI FOR FAILURE TO SERVE PROCESS

As discussed above, the Court does not have jurisdiction over Shi. "Valid service is a prerequisite for a federal court to assert personal jurisdiction over a claim." *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *5 (S.D.N.Y. March 26, 2015); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). Upon a defendant's motion to dismiss under Rule 12(b)(5) for insufficient service of process, the plaintiff bears the burden of proving adequate service. *Oyewole v. Ora*, 291 F.Supp.3d 422, 430 (S.D.N.Y. 2018). Therefore, this action must be dismissed as to Shi.

### POINT IV.

### THE SECURITIES CLAIMS MUST BE DISMISSED
### FOR FAILURE TO STATE A CAUSE OF ACTION

#### A.  Plaintiff's Claim Under Section 10(b) of The Exchange Act and Rule 10b-5 Must Be Dismissed Because Plaintiff Does Not Allege any Purchase and Sale of Securities

"For claims of securities fraud under Section 10(b) and Rule 10b–5, plaintiffs must adequately allege each of the following elements: (1) that the defendants either made one of more misstatements of material fact, or omitted to state a material fact that the defendants had a duty to disclose (2) with scienter (3) in connection with the purchase or sale of securities; (4) that one or more plaintiffs relied upon the misstatement or omission; and (5) that such reliance was the proximate cause of a plaintiffs loss (loss causation)." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 570 (S.D.N.Y. 2014), aff'd, 604 F. App'x 62 (2d Cir. 2015); *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007).

Under the element of fraud committed in connection with the purchase or sale of securities, "standing is limited to actual purchasers or sellers of securities." *Caiola v. Citibank, N.A., New*

*York*, 295 F.3d 312, 322 (2d Cir. 2002). "Among the potential plaintiffs barred by this rule are persons injured by decisions to hold or refrain from trading." *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377, 2007 WL 431864, at *9 (S.D.N.Y. Feb. 9, 2007) (internal quotation marks and citations omitted). "Additionally, to be actionable under Section 10(b) and Rule 10b–5, the alleged misstatement or omission must be material." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 572. "Material facts are those that may affect the desire of investors to buy, sell, or hold securities." *Id.*

Securities fraud claims are subject to the heightened pleading standard of Rule 9(b) and accordingly must be pled with particularity. *City of Pontiac Policemen's and Firemen's Retirement Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014); *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 168 (2d Cir. 2005) ("Any fraud must be pled with particularity, Fed.R.Civ.P. 9(b); but the rule is applied assiduously to securities fraud."). "These well-known standards require, in relevant part, that 'securities fraud complaints specify each misleading statement … [and] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *City of Pontiac*, 752 F.3d at 184 (internal citation and quotation marks omitted).

Here, plaintiff does not allege any connection to "the purchase or sale of securities" and thus does not allege that any purported misstatements by defendants were in connection with any such purchase or sale of securities. Without such allegation, plaintiff cannot state a 10b-5 claim. Further, plaintiff fails to plead any facts in connection with this claim with the requisite particularity. Plaintiff does not allege any facts giving rise to a strong inference that Shi acted with the required state of mind to give rise to a Section 10(b) claim. Thus, plaintiff cannot satisfy the heightened pleading standard applicable to securities fraud claims.

Plaintiff's claims amount to nothing more than allegations of garden variety corporate mismanagement. Allegations of mismanagement cannot form the basis for securities fraud claims.

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("It is well-settled 'that section 10(b) was not designed to regulate corporate mismanagement.'") (quoting *Decker v. Massey-Ferguson, Ltd.* 681 F.2d 111, 115 (2d Cir. 1982)).

### B. Plaintiff's Claim Under Section 20(a) of The Exchange Act Must Be Dismissed

Plaintiff's claim under Section 20(a) of The Exchange Act should be dismissed because such a claim is derivative of a Section 10(b) violation, which, as discussed above, plaintiff has not sufficiently pled. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 437 (S.D.N.Y. 2014) ("It is axiomatic that liability for a Section 20(a) violation is derivative of liability for a Section 10(b) violation"). "It is well-established that, to state a claim for 'control person' liability under Section 20(a), a plaintiff must, at a minimum, plead: (1) a primary violation by the controlled person and (2) control of the primary violator by the defendant*." Id.* Where a plaintiff fails to adequately plead a primary violation, a Section 20(a) claim must fail. *Id.* Further, to state a claim under Section 20(a), plaintiffs must plead "culpable participation," meaning that "they must allege facts indicating 'that the controlling person knew or should have known that the primary violator, over whom the person had control, was engaging in fraudulent conduct.'" *Id.* (quoting *Burstyn v. Worldwide Xceed Grp., Inc.*, No. 01 Civ. 1125(GEL), 2002 WL 31191741, at *8 (S.D.N.Y. Sep. 30, 2002)).

Plaintiff fails to state a primary violation under Section 10(b) because, as discussed above, plaintiff does not allege the purchase or sale of securities. Without a primary violation, plaintiff cannot sustain a derivative claim under Section 20(a). In connection with the purported Section 20(a) claim, plaintiff merely refers to reports or filings by Link Motion but does not allege with particularity culpable participation by Shi or any specific actions performed by Shi. *See Special Situations Fund IIIC QP, L.P.*, 33 F.Supp.3d at 439. Such allegations are insufficient.

## POINT V.

## THE BREACH OF FIDUCIARY DUTY CLAIM AND UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED AS TO SHI FOR LACK OF JURISDICTION

"A plaintiff must establish the court's jurisdiction with respect to each claim asserted. . . ." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (internal citations and quotations omitted). Here, Plaintiffs cannot establish general jurisdiction over any of the Defendants. Link Motion is a Cayman Islands corporation with headquarters in Beijing, People's Republic of China. Shi is a resident of the PRC. Accordingly, there is no basis for the assertion of general jurisdiction over these parties. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."); *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) ("In an 'exceptional case,' an individual's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere … but the Second Circuit has yet to find such a case."); *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (no general jurisdiction over company organized under Turkish law, with operations, properties, and assets predominantly in Turkey and with neither place of incorporation nor primary place of business in New York).

Likewise, there is no basis for the assertion of personal jurisdiction over Shi with respect to the common law claims. Under New York's long-arm jurisdiction statute, courts may exercise jurisdiction over defendants with respect to causes of action arising out of the transaction of business conducted in New York, a tortious act committed either committed in the state or causing injury in the state, or with respect to defendants' ownership, use or possession of real property within the state. NY CPLR 302(a); *Licci ex rel. Licci  v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012); *Spiegel v. Schulmann*, 604 F.3d 72, 77 (2d Cir. 2010). To form a basis for

long-arm jurisdiction, there must be a "strong nexus" between plaintiff's claim and the defendant's in-state conduct. *Steinberg v. Bombardier Trust*, No. 07 Civ. 1212 (WHP), 2008 WL 2787720, at *3 (S.D.N.Y. July 9, 2008). The Court's exercise of personal jurisdiction must comport with due process principles, involving both a "minimum contacts" inquiry and a "reasonableness" inquiry. *Licci*, 673 F.3d at 60. Under the minimum contacts inquiry, the Court considers whether the defendant has sufficient contacts with the forum state to justify the exercise of personal jurisdiction. Under the reasonableness inquiry, the Court considers "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.*

None of the activities that form the basis of Plaintiff's common law claims support the application of long-arm jurisdiction here.[2] *See*, *e.g.*, *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128-29 (2d Cir. 2013); *Lantau Holdings Ltd. v. Orient Equal Int'l Grp. Ltd.*, 161 A.D.3d 714, 714, 79 N.Y.S.3d 8, 10 (1st Dep't 2018); *Data-Stream AS/RS Tech., LLC v. Acequip Ltd.*, NO. 02 Civ. 2089, 2002 WL 1683736, at *8-9 (S.D.N.Y. July 24, 2012).

## POINT VI.

## THE PRELIMINARY INJUNCTION SHOULD BE DISSOLVED AND THE RECEIVER DISCHARGED

### C. There is No Evidence of Consent by the Board of Directors to the Appointment of a Receiver and Plaintiff has not Otherwise Satisfied the Standard for Appointment of a Receiver

"Appointment of a receiver is a 'drastic remedy usually imposed only where no lesser relief will be effective." *Ramgoolie v. Ramgoolie*, No. 16-CV-3345, 2016 WL 11281385, at *7

---

[2]    For the same reasons, this Court lacks personal jurisdiction over Link Motion.

(S.D.N.Y. Dec. 20, 2016), *adopted by Ramgoolie v. Ramgoolie*, 2017 WL 564680 (S.D.N.Y. Feb. 10, 2017); *see Varsames v. Palazzolo*, 96 F.Supp.2d 361, 365 (S.D.N.Y. 2000). The following factors are considered in determining whether to appoint a receiver:

> [f]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Id.* (quoting *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop LLC*, 859 F.Supp.2d 602, 610 (S.D.N.Y. 2012)).

Here, Plaintiff has failed to make a showing, and the Court has not found, any of the grounds necessary for the appointment of a receiver. Instead, Plaintiff asked the Court to appoint a receiver based on a purported stipulation of Link Motion. The stipulation was signed by DLA Piper LLC (US) ("DLA"), purported counsel for Link Motion.

Nothing in the stipulation, however, evidences the consent of Link Motion. It is basic corporate law that the board of directors of a corporation manages the affairs of the corporation. The public filings for Link Motion show that the company had a nine-member board of directors. Neither Plaintiff nor DLA submitted any evidence of any duly executed resolution or other action of the board of Link Motion consenting to the appointment of a receiver. Indeed, not a single attorney from DLA made any statement under oath that the stipulation was duly authorized by the board of Link Motion.

The record further demonstrates that not only did Plaintiff seek this receivership without the knowledge and consent of the board of directors of Link Motion, but Plaintiff brought this proceeding for the express purpose of taking control and replacing the existing board of directors. In an affidavit submitted to the Hong Kong court, the receiver's Cayman counsel, Rebecca Hume,

stated that "[t]he Plaintiff [*i.e.*, the receiver] has consulted with me about the possibility of using the powers conferred upon him under the US Order to effect changes in the composition of Link Motion's board of directors. . . ." (Ex. 3, at ¶ 5.)

### D. Failing to Discharge the Receiver Will Destroy All Remaining Value in Link Motion

Plaintiff and Mr. Seiden failed to disclose to the Court that Link Motion is organized as what is referred to as a Variable Interest Entity ("VIE"). As disclosed to investors in the fiscal year 2015 Form 20-F:

> The "variable interest entity" structure, or VIE structure, has been adopted by many PRC-based companies, including us, to obtain necessary licenses and permits in the industries that are currently subject to foreign investment restrictions in China. Under the Draft, variable interest entities that are controlled via contractual arrangement would also be deemed as FIEs, if they are ultimately "controlled" by foreign investors. Therefore, for any companies with a VIE structure in an industry category that is on the "negative list," the VIE structure may be deemed legitimate only if the ultimate controlling person(s) is/are of PRC nationality (either PRC companies or PRC citizens). Conversely, if the actual controlling person(s) is/are of foreign nationalities, then the variable interest entities will be treated as FIEs and any operation in the industry category on the "negative list" without market entry clearance may be considered as illegal.

(Ex. 11, at p.27.)

In order to comply with PRC law, as described above, the board of directors of Link Motion is comprised of PRC citizens, such as Shi. The moment a non-PRC citizen, such as Mr. Seiden, deprives the board of directors of Link Motion of control over the company, the company's operations will be deemed illegal under PRC law and, therefore, destroy all remaining value in Link Motion. Accordingly, the Court should discharge the receiver so as to prevent Link Motion from becoming illegal under PRC law.

**F.  New York is The Wrong Forum**

"The doctrine of forum non conveniens permits a court to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998). The inquiry is based on "where litigation will be most convenient and will serve the ends of justice." *Id.* In evaluating a motion brought under the doctrine of forum non conveniens, after determining the degree of deference owed to a plaintiff's choice of forum, a court must first consider whether an adequate alternative forum exists and then balance a series of private and public interests. *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir. 2002). "A forum is not inadequate even if the foreign justice system differs from that of the United States." *PT United Can Co. Ltd.*, 138 F.3d at 73.

The private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Aguinda*, 303 F.3d at 479 (internal citation and quotation marks omitted). "Public interest factors include administrative difficulties associated with court congestion; the unfairness of imposing jury duty on a community with no relation to the litigation; the interest in having localized controversies decided at home; and avoiding difficult problems in conflict of laws and the application of foreign law." *Id.* at 480; *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75-76 (2d Cir. 2003). *See In re Herald*, 540 Fed.Appx. 19 (2d Cir. 2013) (Summary Order) (plaintiff's choice of forum entitled to little deference where plaintiff did not identify single witness in New York and Plaintiffs' lack of connection to United States suggested forum shopping).

Here, as alleged in the complaint, defendant Link Motion is a company incorporated in the Cayman Islands with its principal offices located in Beijing, People's Republic of China. Defendant Shi is a citizen of the PRC. Likewise, the complaint alleges that defendants Lian and Yu are Chinese citizens. None of these parties have any substantial connection to New York. Plaintiff himself is a resident of Illinois and, therefore, has little or no connections to New York.

The receiver has acknowledged in papers filed with other courts that the appropriate forum for evaluation of the allegations in this action is the Cayman Islands. The receiver submitted an affirmation dated February 21, 2019 in the High Court of the Hong Kong Administrative Region in connection with an application for a local receivership order in Hong Kong. (Ex. 1.) In the affirmation, the receiver summarizes the allegations made by plaintiff in this action including the alleged mismanagement of Link Motion and illegal transfer of Link Motion's assets. The receiver identifies Link Motion bank accounts that are maintained in Hong Kong. (*Id.* at ¶42.) The receiver states that he has not identified any substantial assets belonging to Link Motion in the United States and that "[i]t appears that the bulk of Link Motions assets are in Hong Kong and the PRC." (*Id.* at ¶62.) The receiver argues in his affirmation that there is a risk of dissipation of Link Motion's assets by defendants and that defendants may transfer assets out of Hong Kong or frustrate plaintiff's efforts to take control of Link Motion's assets. (*Id.* at ¶53.)

The receiver's Cayman Islands counsel submitted an affidavit dated February 26, 2019 to the Hong Kong court regarding the requirements for the receiver to use his powers to change the composition of Link Motion's board of directors and to take control of Link Motion's Hong Kong bank accounts. (Ex. 3.) Specifically, the Cayman Islands counsel states that the order issued by this Court is insufficient for the receiver to take the contemplated actions, and that the receiver

must make an application in Cayman Islands courts to be recognized as a receiver under Cayman Islands law. (*Id.* ¶¶6-7.)

### G.  The Court Does Not Have Jurisdiction Over Link Motion

It is not appropriate to appoint a receiver for defendants over whom the Court does not have jurisdiction. *See Ramgoolie v. Ramgoolie*, No. 16-CV-3345, 2016 WL 11281385, at *8 (S.D.N.Y. Dec. 20, 2016) ("Court cannot possibly recommend the appointment of a receiver in light of its recommendation that personal jurisdiction does not exist over … defendants, foreign corporations"), *adopted by Ramgoolie v. Ramgoolie*, 2017 WL 564680 (S.D.N.Y. Feb. 10, 2017). As demonstrated above, this Court lacks jurisdiction over Shi because the securities claims fail to state a cause of action and the common law claims fail for lack of jurisdiction. For the same reasons, this Court lack personal jurisdiction over Link Motion and, therefore, there is no basis for the appointment by the Court of a receiver to govern the affairs of Link Motion or otherwise to interfere with the ordinary management of the corporation in accordance with its by-laws.

## CONCLUSION

For all the foregoing reasons, the Court should enter an Order denying the application for an order of contempt, dismissing all claims against Defendant Shi, and dissolving the preliminary injunction and receivership.

Dated: New York, New York
       March 27, 2019

Respectfully submitted,

CKR LAW, LLP

By:    */s/ Michael James Maloney*
        Michael James Maloney
        Eric Small
1330 Avenue of the Americas
14th Floor
New York, New York 10019
Tel. (212) 259-7300
mmaloney@ckrlaw.com
esmall@ckrlaw.com
*Attorneys for Defendant Vincent Wenyong Shi*