J3T3BALC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

WAYNE BALIGA,

                    Plaintiff,

            v.                          18 CV 11642 (VM)

LINK MOTION, INC., et al.,

                    Defendants.

------------------------------x
                                        New York, N.Y.
                                        March 29, 2019
                                        9:45 a.m.

Before:

                    HON. VICTOR MARRERO,

                                        District Judge

                         APPEARANCES

THE SEIDEN GROUP
     Attorneys for Plaintiff
BY:  MICHAEL CILENTO

CKR LAW, LLP
     Attorneys for Defendant Vincent Wenyong Shi
BY:  MICHAEL J. MALONEY

J3T3BALC

1        THE COURT:  Good morning.  This is a proceeding in the

2   matter of Wayne Baliga v. Link Motion, Inc.,  Vincent Shi, Jia

3   Lian, and Xiao Yu.  The Court scheduled this proceeding on an

4   order to show cause for contempt that the Court endorsed on

5   March 15, and scheduled this proceeding to hear these

6   circumstances under which the defendants, allegedly, according

7   to the plaintiff, did not comply with earlier order of the

8   Court and appointment of a receivership that the Court had

9   ordered on February 1st, 2019, after the defendants did not

10  appear in this matter within the requisite timeframe.

11        Subsequent to the scheduling of these proceedings, the

12  Court received by letter dated March 28 a submission from

13  defendant Vincent Shi moving for dismissal of all the claims

14  against Mr. Shi, dissolving the preliminary injunction that the

15  Court had entered on February 1st, discharging the receiver, in

16  the part on the grounds that Mr. Shi was not properly served,

17  and that the Court lacks jurisdiction over Mr. Shi.

18        So that is the posture of the case as the Court

19  understands it.

20        Let me ask Mr. Cilento whether he may wish to add

21  anything to what the Court has said, and what plaintiff

22  understands the posture of the case may be in relation to this

23  defendant and the other defendants.

24        MR. CILENTO:  Sure.  And your Honor, everything you

25  said was correct for the posture.  I believe that defendants'

J3T3BALC

1    submission yesterday can be broken down into two separate

2    parts.  One is the motion to dismiss claims as it relates to

3    Shi as well as to dissolve the injunction, the receivership,

4    and the submission in opposition to the order to show cause for

5    contempt which we are here for today.  And I believe I didn't

6    submit anything in response.  I do have a sworn to affidavit

7    from a consultant to the receiver explaining recent events that

8    have taken place over the last couple of weeks, if your Honor

9    wishes to see that today or I could also submit it online

10   after.

11          But I believe today we are only here for the order to

12   show cause on contempt.  I don't believe that today should deal

13   with the dismissal of the claims against defendant Shi or the

14   removal of the receivership or the dissolution of the

15   injunction.

16          THE COURT:  Let's put Mr. Shi aside for a moment.

17   What is your understanding concerning the appearance or

18   non-appearance of the other defendants and the corporate

19   defendant?  To what extent was service properly made on all

20   defendants, and to your knowledge, have any communications been

21   had with any of them?

22          MR. CILENTO:  Well, it is clear that the corporate

23   entity Link Motion does not have counsel and has not appeared

24   since their former counsel withdrew.  It's very clear that this

25   Court has jurisdiction over that company.  It's very clear that

J3T3BALC

1    service was properly made on that company through their

2    registered agent in New York, also through their corporate

3    counsel in New York who appeared in the action for the company

4    before withdrawing.

5          As it relates to the individual defendants, I believe

6    that the Court does have jurisdiction over them.  I believe

7    that service was attempted on the individual defendants.

8    Whether that service rises to the level of completion needed in

9    this court, I think there are good arguments on both sides, and

10   I'm happy to brief that argument and I plan to in my opposition

11   to counsel's most recent motion.

12         But, I think what this Court needs to understand here

13   is that Vincent Shi's counsel has kind of conflated two

14   different issues here.  There is service as to the complaint in

15   the underlying action, which cannot be argued was properly

16   served on the corporate entity.  I think it can be argued that

17   service on the individual defendants may not have been proper

18   at this stage, but that's something that we can brief and

19   that's something that I -- that can be fixed.  But it can't --

20         THE COURT:  Let me stop you, Mr. Cilento.  Rather than

21   briefing, would it not be more prudent, if you acknowledge that

22   there may have been deficiencies in the method of service, cure

23   the deficiencies and make proper service?

24         MR. CILENTO:  Yes, I think there may be deficiencies.

25   I just hesitate because I know that the -- the corporate

J3T3BALC

1    entity's counsel did forward the complaint to the individual

2    defendants.  So whether that is sufficient or not I think does

3    require some briefing.  But one important point I want to make

4    is that there's no question that there was proper service of

5    the receivership order and injunction on defendant Shi.

6         So, counsel for Mr. Shi is conflating the two issues.

7    He is saying there was no service of the complaint, therefore,

8    Shi is not required to comply with the order.  But, there's no

9    question that the receivership order was granted over the

10   company, who was served properly, and in that receivership

11   order, it says anyone with actual notice of this order,

12   personal service or otherwise, must comply.  The order is very

13   clear, the method of service is very clear.  I complied with

14   the order, in getting this to the individual defendants.  It's

15   clear that they have actual notice of it.  They've had actual

16   notice of it and they were required to comply with it.

17        Whether there was service on them or not for the

18   underlying complaint, that's something which defendants'

19   counsel has argued now and that's fine.  That's proper.  But

20   they cannot argue that they were not -- that Mr. Shi was not,

21   did not have actual notice of the receivership order which was

22   valid and still is valid.

23        THE COURT:  Thank you.  Mr. Maloney.

24        MR. MALONEY:  Good morning, your Honor.  I'd like to

25   address a few points about the question of service and

J3T3BALC

1    jurisdiction.

2              THE COURT:  As it relates to Mr. Shi?

3              MR. MALONEY:  As it relates to Mr. Shi, your Honor.

4    The basic principle is that an individual cannot be held in

5    contempt until they have been served with process.  And process

6    we all know is by law required to be served in a certain manner

7    which was not performed here in this action with respect to

8    Mr. Shi.

9              THE COURT:  Mr. Cilento has made a distinction between

10   service of process of the complaint and service with regards to

11   the receivership order and the notice that was provided there

12   as to the corporate defendant and any knowledge of the person.

13   You heard what he alleged.

14             MR. MALONEY:  Yes, your Honor, and I have something to

15   say about that as well.  The rule applies with respect to the

16   order, the receivership order as well process must be served.

17   There is a line of cases providing for an exception to the

18   requirement of service of process when a person with knowledge

19   of the order does something in violation of the order along the

20   lines of diverting assets of the company under which the

21   receiver has control.  That's the limitation of the exception,

22   your Honor.

23             In this case, there is no evidence that Mr. Shi did

24   anything of that nature.  What the receiver has asked is that

25   Mr. Shi affirmatively invest new funds into the company, in

J3T3BALC

1    order to fund the account that the Court described in its

2    order.  Mr. Shi has no legal obligation to invest further funds

3    into this company.  His obligation to the company is limited to

4    the price he paid for his shares, which has already been paid.

5         The receiver, after obtaining the injunction here in

6    New York, took that order to Hong Kong, and obtained an

7    injunction in Hong Kong over the company's accounts in Hong

8    Kong.  That is the reason why no assets have been transferred

9    anywhere, because they are now frozen in Hong Kong.

10        Now, this in part stems back to somewhat we believe

11   fundamentally faulty recitation of facts originally presented

12   to the Court in the verified complaint.  Your Honor, what the

13   plaintiff failed to advise the Court here is that Link Motion

14   is organized in a matter of what's called a variable interest

15   entity.  The assets that plaintiff complains of Link Motion has

16   no legal interest in.  The only legal interest that Link Motion

17   has in the operations in China is by way of a contract.  A

18   contract between Link Motion and a holding company in the PRC

19   called Beijing Technology.  That contract provides that Beijing

20   Technology must pay to Link Motion profits generated from

21   Beijing Technology's business.  This is structured to comply

22   with PRC laws, and the appointment of a non-PRC citizen to

23   control over Link Motion will, we believe, cause the entire

24   structure to be in violation of PRC law, and will likely

25   destroy whatever value remains in Link Motion.

J3T3BALC

1     Your Honor, so my ultimate point is there is no

2     evidence that Mr. Shi has done anything to violate the order

3     currently in place.  The order cannot be applied to Mr. Shi

4     because he hasn't been served with process.  And there is

5     nothing here to suggest that the exception that plaintiff has

6     referred to is satisfied here.

7           THE COURT:  Thank you.  Mr. Cilento.

8           MR. CILENTO:  Yes, your Honor.  So, on the first point

9     of service of process.  Service of process of the receivership

10    order, the case law is very clear on this that the wording of

11    the order is sufficient for service of process.  So whatever

12    that order says, that's how you serve process.  The order says

13    actual notice, personal or otherwise.  It makes sense, given

14    the circumstances of the case and the details of the

15    receivership order, it would be actual notice instead of

16    personal service since everyone is in China.

17          As far as Mr. Shi's argument that the receiver's

18    asking him to personally fund anything, I just, I don't know

19    where that comes from.  This company has hundreds of millions

20    of dollars in accounts in assets both in cash and in assets.

21    We're not asking Mr. Shi to fund anything.  We asked him to

22    fund the receivership accounts, as per the order, which he has

23    not done.  There's no personal investment, we are not asking

24    him to personally invest anything.  We are asking him to take

25    $100,000 out of the $570 million we know this company has in

J3T3BALC

1    the PRC, and transfer it to an account so we can pay

2    professionals.

3         As far as the lockup of the accounts in Hong Kong,

4    those are two very small accounts of this company which

5    maintains most of its assets in accounts in the PRC in China.

6    So, the argument that the receiver has lockup accounts in Hong

7    Kong is the reason why nothing can be transferred or funded, is

8    just not true.

9         As far as faulty facts in the verified complaint,

10   okay, it is very clear that defendant Shi and the other

11   individual defendants of Link Motion have diverted assets out

12   of that company's name into ownership of third parties that no

13   one knows who they are.  We have lots of evidence of this.  We

14   have e-mails from the board of directors saying who is this

15   entity that Mr. Shi just transferred ownership of their major

16   asset.  Who is this?  He didn't -- he's not complying with the

17   board of directors, with any of the resolutions, he's doing

18   everything on his own.

19        We have evidence that there are all kinds of illegal

20   related transactions between Mr. Shi and the company's

21   noteholder.  Basically, there's a ton of evidence that I have

22   submitted already in support of the injunction receivership

23   that the counsel has just not addressed whatsoever.

24        I now have another affidavit from the receiver's

25   consultant, and by the way, the receiver is very active in this

J3T3BALC

1    case, and he has professionals in China, in Hong Kong, working

2    on this case, who have been in contact with board members,

3    employees, and have tried to get in contact with Mr. Shi who

4    has refused those efforts.

5          But basically, our agents and consultants of the

6    receivership in China have now sworn to us and told us that

7    defendant Shi has gone into the offices of Link Motion in

8    China, and with his own team of outside people, they went into

9    the offices, and requested the legal team and the accounting

10   team to hand over all files to them, which they were removing

11   from the office.  And some of the employees stood up and said,

12   no, we're not giving you these legal files and these accounting

13   records.  And Shi said, okay, you're fired, you're fired,

14   you're fired.  Had his team come in, physically take computers,

15   physically take the files, and move it out of the office.

16         Before the receiver was in place, there were I believe

17   80 employees, that went down to about 30.  And then after this

18   last raid Mr. Shi and his outside team did at the office, the

19   employees are now down to 10.

20         We have e-mails to the receiver's consultants from

21   employees of Link Motion saying Mr. Shi has raided the office,

22   he has taken the files, he has fired us for not going with him.

23   And he is now and Mr. Shi is now in the process of taking the

24   last remaining valuable assets of the company, which are

25   tech-related and application-related, and he's moving those to

J3T3BALC

1    different entities all out of Link Motion's control, with no

2    cooperation from the board of directors or the employees.

3          So there is a ton of evidence that he has violated

4    this order.  Not to mention the fact that the order

5    specifically says you must cooperate with the receiver.  And

6    that's what the receiver tried to do at first.  He sent letters

7    to Mr. Shi saying let's talk about this.  Let's communicate.

8    Let's see what's going on.  We need the books and records to

9    make sure everything is legitimate.  And Mr. Shi has refused to

10   cooperate with the receiver.  He knows that the receiver is in

11   place.  Refuses to cooperate.  That right there is grounds for

12   contempt.

13         Not to mention this latest affidavit that I have

14   showing that he raided the offices, is taking everything out of

15   the offices, is firing employees, and what the e-mail shows the

16   employees telling the receiver's agents in China, please can

17   the receiver do something, we are not getting paid, he is

18   firing everyone, we need help.  This is here.

19         THE COURT:  Let me ask, Mr. Cilento, all these

20   terrible things going on in China and Hong Kong and elsewhere,

21   have the plaintiff or anyone else made an attempt to challenge

22   these actions under local law there?

23         MR. CILENTO:  I do not believe that -- the defendants?

24   Have they came into the Hong Kong, is that what you're asking?

25         THE COURT:  Whoever is complaining about all of these

J3T3BALC

1   terrible things going on.

2              MR. CILENTO:  Oh.  Have they taken actions in China?

3              THE COURT:  Yes.

4              MR. CILENTO:  So that is basically underway right now.

5   The receiver has just hired a local Beijing attorney to start

6   the process there.  It's very sensitive and political.  We are,

7   our agents were in communications with the employees to contact

8   the local police after this raid, but it's a very difficult

9   thing to do there.  But, yes, the receiver has hired a local

10  Beijing attorney to start the local process there.

11             And one other point about this VIE structure that

12  defendants' counsel is saying if a non-PRC citizen is appointed

13  over the company, it will lose all value.  That's just not

14  true.  First, the VIE is a legal fiction.  It is not an actual

15  part of the law.  And two, even if it were, the receiver is not

16  going to sit on the board himself.  He has a team of Chinese

17  citizens who are going to run this company.  Basically, one of

18  the current board members right now is working with the

19  receiver, and the receiver is going to appoint that board

20  member as interim CEO and chair of the board and have that

21  Chinese citizen board member run the company.  And this current

22  board member who the receiver is working with to run the

23  day-to-day operations is very well respected by the employees,

24  and everyone there, and we believe it will be a great

25  transition to actually restore the value of this company.

J3T3BALC

1        But the bottom line is this.  There is $570 million

2   that is unaccounted for, and the shareholders want to know

3   where that money is.  And Mr. Shi is hiding it.  He's hiding it

4   through an attenuated line of structure of corporate entities

5   that is something that you've never seen.  I saw the flow chart

6   of what is going on, and it is crazy.  But he is hiding assets

7   all over the place, it is very difficult to track.  It's very

8   difficult for Chinese citizens to track, since everything is in

9   Chinese language and whatnot.  So, it's a very difficult thing.

10       But the bottom line is there is $570 million.  If

11  defendants' counsel can tell us where that money is, and tell

12  us that it's going to go to the company and be distributed to

13  the shareholders, then we are fine with Mr. Shi staying in

14  place.  But until that happens, the receiver is going to do

15  everything he can to replace Vincent Shi, get the $570 million

16  back into Link Motion's actual control, and distribute to

17  shareholders, if necessary.

18       THE COURT:  Let me pursue this questioning,

19  Mr. Cilento.  Assuming that this receiver commences some form

20  of proceedings under domestic law in China or Hong Kong,

21  wherever, in those proceedings, would the issue of whether or

22  not Mr. Shi and the company and others' notice and service of

23  process be a matter that would need to be examined?

24       MR. CILENTO:  I'm glad you asked that question because

25  I forgot I wanted to bring that point up.  So in defendants'

J3T3BALC

1    brief, he makes this argument that the receiver lied and said

2    that the defendants were all served, and then actually made a

3    correction to his affidavit in Hong Kong saying, actually,

4    we're not 100 percent sure if they were served.  We know the

5    corporate entity was served and the individuals were attempted

6    to be served through the registered agent.  Okay.

7            Three days after the correction went in to the Hong

8    Kong court, the correction being actually it was just a

9    corporate entity that was -- that had counsel appear for them,

10   none of the individual defendants in the Southern District,

11   three days after that correction, the Hong Kong court issued

12   the injunction.  Okay.  So, there was no foul play there.  It

13   was a miscommunication, actually on my part, where I said that

14   everyone was served through the corporate -- through the

15   registered agent, and DLA appeared for Link Motion.  It was a

16   miscommunication.  It was corrected.  The Hong Kong court

17   granted the injunction, knowing that the individual defendants

18   did not have counsel and did not appear in this action.  So, I

19   imagine it would be the same in China, too, and I imagine the

20   reason is because the receivership order is valid.

21           The company had counsel appear in this action, didn't

22   fight the receivership, and the order is valid.

23           And so, what we did in Hong Kong, the receiver did in

24   Hong Kong was domesticate that receivership order, which didn't

25   require the individual defendants to be -- put it this way.  If

J3T3BALC

1    the individual defendants weren't named in this lawsuit,

2    everything would be the same.  Right.  We would still be able

3    to seek contempt against Vincent Shi for not complying with the

4    order.  So, imagine that the individual defendants weren't

5    named in this lawsuit, everything would be the same.

6           THE COURT:  Thank you.  Mr. Maloney.

7           MR. MALONEY:  Your Honor, a couple things here.  I'd

8    like to talk a little about the receivership order itself.  As

9    you may recall, the receivership order was entered on the

10   purported consent of the company.  However, there are a lot of

11   strange circumstances relating to that purported consent.

12   There is no evidence of any action or resolution by the board

13   of directors of Link Motion agreeing to the entry of a

14   preliminary injunction and a receiver in New York over its

15   affairs.  In fact, there is no evidence of any consent by any

16   officer or director of the company at all, to the institution

17   of a preliminary injunction or receivership.

18          The only evidence we have is the signature by one

19   attorney at DLA Piper who purported to appear on behalf of the

20   company and then who promptly withdrew.  The plaintiff has in

21   no other way made a showing of the bases necessary for the

22   institution of a preliminary injunction or a receivership here.

23   And the Court has not made any finding of the bases necessary

24   for the institution of the preliminary injunction or the

25   receivership here.  We plan to challenge the validity of the

J3T3BALC

1   preliminary injunction and the receivership on those grounds.

2              On the VIE structure, your Honor, Link Motion first

3   submitted a form F1 in and around 2011.  From that day to the

4   present, it has consistently described the way the VIE business

5   structure functions.

6              I want to direct the Court's attention to Exhibit 11

7   to my declaration where the company has disclosed its

8   understanding of how the VIE structure works.  In page 26 and

9   27 the company describes how in certain sensitive business

10  areas, PRC law requires entities operating in those areas to be

11  controlled by PRC citizens.  The company describes the

12  definition of control under applicable law.  I am going to read

13  one section of that definition.  It says:  Having the right to

14  directly or indirectly appoint not less than one half of the

15  members of the board of directors or other similar decision

16  making body of the enterprise.  That is exactly what the

17  receiver is proposing to do here.

18             On the next page, page 27, the company describes,

19  conversely, if the actual controlling person is of foreign

20  nationalities, then the variable interested entities will be

21  treated as FIE, which is a foreign investment entity, and any

22  operation in the industrial category of the negative list

23  without market entry clearance may be considered as illegal.

24             Your Honor, I also would like to point your attention

25  to the other exhibits to my declaration.  These are press

J3T3BALC

1    releases filed by the company with the SEC, regarding the

2    company's transactions involving the assets that plaintiff

3    complains of FL Mobile and Show Self.  In short, the company

4    has disclosed fully and accurately for over four years now that

5    it's been trying to divest those assets in the PRC, and has

6    attempted in several ways and with several counter parties to

7    do so.

8         In Exhibit 14 -- I'm sorry.  Exhibit 13 to my

9    declaration, you have now disclosed the notice of arbitration,

10   the divestment of those assets is the subject of a litigation

11   before the Hong Kong international arbitration center, which is

12   still pending.

13        Ultimately, what's going on here is that plaintiff is

14   trying to alter the situation on the ground with respect to a

15   pending arbitration in Hong Kong regarding these divestments.

16   And the company is trying its best to pursue its rights with

17   respect to the divestment agreements it previously disclosed.

18        Finally, your Honor, with respect to the evidence that

19   counsel spoke about here today, as far as I know, none of that

20   evidence he referred to is before the Court right now.

21   Certainly have not had an opportunity to review it.  We have

22   really nothing more than allegations here from the plaintiff.

23   I don't think that's a basis to find Mr. Shi in contempt.

24        THE COURT:  Mr. Maloney, one other mention that occurs

25   to me based on everything that both parties have said, in light

J3T3BALC

of all of the developments in this matter overseas in China and
Hong Kong, the assets that are involved presumably are located
there somewhere, all of the people who have control over those
assets or do not have control of the assets are somewhere over
there.  The individual defendants are over there.

Why is not this matter being litigated and resolved
elsewhere under local law rather than in New York?  In other
words, is there a forum non conveniens issue here?

MR. MALONEY:  There is, and we've touched upon that in
our papers.  Fundamentally speaking, the case is severely
flawed.  The primary basis for personal jurisdiction in New
York asserted by plaintiffs arises under the securities laws,
where they allege the defendants made certain statements
directed to U.S. citizens in connection with the purchase and
sale of securities.  Without establishing those allegations,
there is no personal jurisdiction here in New York.
Plaintiff's claims are fundamentally flawed because they do not
allege the purchase or sale of securities.  There is just no
personal jurisdiction of the securities laws.  The other
allegations relate to ordinary allegations of corporate
mismanagement.

There is no personal jurisdiction in New York because
of precisely the issues that you identified, your Honor.  All
the people are in Beijing, all the assets are in China.  This
is a local matter that should be pursued either in China, under

J3T3BALC

1   local law in China, or in the Cayman Islands where Link Motion

2   is organized.

3          Essentially, what plaintiff has done here is

4   bootstrapped their case by way of a temporary restraining order

5   and preliminary injunction obtained in New York.  We think that

6   was made in bad faith.  And to the extent that ultimately

7   impairs the VIE structure of this company, we do think Mr. Shi

8   will look into his rights vis-a-vis plaintiff and the receiver

9   for doing so.

10          THE COURT:  Thank you.  Mr. Cilento, can you address

11   the issue I've just raised concerning the forum non conveniens.

12          MR. CILENTO:  Sure.  That's all well and good what

13   counsel said, except the fact that we are here to defend and

14   recover for U.S. shareholders who have been defrauded by this

15   Chinese company.  The shareholders purchased shares through

16   ADRs from Deutsche Bank in New York, the stock traded on New

17   York stock exchanges, and the investors that this recovery

18   effort are underway for are U.S. investors.  They have no

19   recourse in China.

20          This is a disturbing trend that has happened over the

21   last 10 or 15 years, where Chinese companies have come into the

22   U.S., reverse mergered into shell companies listed on the New

23   York stock exchanges, raised money from U.S. investors, and

24   then went dark.  Went dark on the U.S. investors, went dark on

25   the SEC.

J3T3BALC

1          Same thing happened here.  They got delisted off the

2     stock exchange.  Right now the shares that U.S. investors have

3     dropped, I forget the number, it's like 90 percent or

4     95 percent.  Right.  And now to say, oh well, come after us in

5     China, is exactly what Mr. Shi and the individual defendants

6     have been saying.  Come after us in China because they know

7     there is no recourse there in China as to these individual

8     defendants.  They need someone like Mr. Seiden, who is the

9     receiver, who has a network within China, within Hong Kong, to

10    make this right, to restore value to their investment.

11         So, to say that the U.S. investors need to go to China

12    to prosecute this is ridiculous.  It will never happen.  They

13    are not going to be able to do it.  This company raised money

14    from U.S. investors, it listed on the New York stock exchange,

15    and then after it raised that money, it went dark.  Okay.  It

16    started transferring assets to different companies.  It said,

17    sorry U.S. shareholders, we are not going to give you updates.

18    Sorry, SEC, we're not going to make our filings.  We don't

19    care.  Come after us in China if you can.  Good luck.  And

20    that's it.

21         And so, we are doing everything we can to give these

22    U.S. shareholders some recourse, and it's not easy, it's not

23    guaranteed, very likely we'll fail.  We happen to have very

24    good traction on this case right now, and the receiver is doing

25    many great things.  And I think he can restore value to this

J3T3BALC

1    company and the shareholders.

2            But I think it's a ridiculous thing to say to U.S.

3    shareholders you have to go to China when they invested in New

4    York through Deutsche Bank for a company that was listed on the

5    stock exchange.

6            THE COURT:  Thank you.

7            MR. CILENTO:  One last thing, your Honor.  I do think

8    that all of these arguments should be for another day.  Okay.

9    There is no question that the receivership order is valid, and

10   according to the law and case law, even if it were later proven

11   invalid, right now it is a valid order, Mr. Shi has not

12   complied with it.  It's indisputable he has not complied with

13   this valid receivership order.  Whether the other side can come

14   in and dissolve the injunction and receivership order, that's

15   for another day.  I don't think they will be able to.  Right

16   now it is very clear that Mr. Shi is in contempt of this valid

17   order.

18           MR. MALONEY:  Your Honor, I apologize for extending

19   this argument but I do want to address a few of the points

20   Mr. Cilento just made.  There's some gross inconsistencies here

21   today.  Earlier today Mr. Cilento said that the receiver has

22   professionals on the ground, he is taking action on the ground

23   in China, and this is all in furtherance of the receivership.

24   And then a moment ago Mr. Cilento then said that there's no

25   point in taking any action in China because there is no

1    recourse.

2            Mr. Cilento through counsel has represented to the

3    Hong Kong court that he's taking action in the Cayman Islands

4    in connection with Link Motion and the rights of shareholders

5    in this case.  Your Honor, it's just not accurate to say there

6    is no recourse to be had outside of New York.

7            If the shareholders -- ultimately what's happening

8    here is the divestment went wrong.  There is a litigation that

9    the company has commenced and is participating in to try to

10   pursue its rights, as I mentioned, in connection with the

11   arbitration in Hong Kong.  If the shareholders in the U.S. feel

12   their interests are implicated, they can try to join that

13   arbitration to assert their rights therein.

14           It is just not accurate to say there is no recourse to

15   be had outside of New York.  And I think your Honor was right

16   to identify the possibility of a forum non conveniens issue

17   here.

18           And to finally address the issue of the compliance

19   with the order of contempt.  I want to make the point that

20   Mr. Seiden in his capacity as a receiver did ask Mr. Shi to

21   invest money in the company.  And specifically, his request was

22   in Exhibit 2 to Mr. Cilento's declaration, please immediately

23   fund the receivership account with $100,000, then he provides

24   wire instruction.  This instruction, in combination with the

25   PRC laws regarding the VIE structure and control of non-PRC

1    companies over the company, places Mr. Shi in an impossible

2    situation.  He's, first of all, he has no legal obligation to

3    invest his own money, and he cannot violate PRC laws by

4    directly diverting PRC assets to Mr. Seiden.  That might result

5    in a termination of the VIE structure and the loss of whatever

6    value remains in Link Motion.  It's impossible, and in equity,

7    the Court cannot require him to do so.

8         THE COURT:  Thank you.  I appreciate the arguments and

9    the clarifications on some of the issues that the parties have

10   now submitted.  Mr. Shi has raised questions concerning whether

11   or not the receivership order is valid as to him, insofar as he

12   alleges that there was no proper service of the action or the

13   order on him.  That raises a substantial issue which I think on

14   the record we have before us the Court is not in a position to

15   address.

16        Mr. Shi has also submitted further challenges to the

17   proceedings insofar as he is made a motion to dismiss all

18   claims, which the plaintiff has not responded to.

19        I think the only appropriate way to proceed in light

20   of these circumstances is to allow for proper responses to the

21   issues raised by Mr. Shi's motions and give the Court a more

22   substantial record on which to address the issues that have

23   been raised.

24        Mr. Cilento, what is your view so far as the time that

25   you may need in order to respond to the pending motions and the

J3T3BALC

1      issues raised by counsel today?

2              MR. CILENTO:  Your Honor, normal briefing schedule

3      would be fine with me.  Maybe three weeks would be great, would

4      be enough.

5              THE DEPUTY CLERK:  April 19.  Friday, April 19.

6              MR. CILENTO:  Sure.

7              THE COURT:  Mr. Maloney?

8              MR. MALONEY:  Your Honor, I would respectfully request

9      also three weeks following the opposition of plaintiff.  And

10     the basis for that request is it does take me some time to get

11     communications to and from China, and to go to work with

12     written documents with my client.  So I do think three weeks

13     would be appropriate.  I believe that's May 10, thereabouts.

14             THE COURT:  All right.  Three weeks from April 19.

15             THE DEPUTY CLERK:  May 10.

16             MR. MALONEY:  Thank you.

17             THE COURT:  Anything else, Mr. Cilento?

18             MR. CILENTO:  I would just like to point out again,

19     even if we drop Mr. Shi from this lawsuit, the receivership

20     order is still in place.  He's still bound to comply with that

21     order.  Even if the service was invalid.  Even if we dropped

22     him from the lawsuit, Link Motion appeared, we submitted a

23     brief on the injunction receivership, they didn't respond

24     because they couldn't, and then they consented.

25             The whole consent thing, I don't know if defendants'

J3T3BALC

1    counsel is saying DLA Piper illegally entered the suit for LKM.

2    I don't know what he's saying.  But they consented to the

3    receivership because they couldn't defend it.  If Mr. Shi, if

4    we drop Mr. Shi from this lawsuit, Link Motion is still a

5    party, was still served, there's still jurisdiction that

6    receivership order is still valid and Mr. Shi has to comply

7    with it.

8         THE COURT:  That was circular there, Mr. Cilento.  If

9    he's dropped, you're saying that the receivership order is

10   still valid as to him, but he's challenging the order because

11   he's saying he wasn't properly served.

12        MR. CILENTO:  He is not challenging the receivership

13   order.  Because him individually, I don't know if he has

14   standing to challenge that order.

15        THE COURT:  Mr. Maloney's letter of March 28, first

16   point says a motion for an order dismissing all claims against

17   Mr. Shi, dissolving the preliminary injunction entered and

18   discharging the receivership order.  To me, that's a fairly

19   comprehensive challenge.

20        MR. CILENTO:  Assuming that's true, that he can move

21   to do that, that's fine.  That receivership order is valid

22   right now.  There is no question about that.  The case law is

23   very clear --

24        THE COURT:  It may be valid at this point as to the

25   company, because the company's not here to defend it.  But

J3T3BALC

1    there is a defendant as to whom you are saying it is valid and

2    they're saying is not valid, and the Court is not going to take

3    your word because you say it's valid as to Mr. Shi.

4              MR. CILENTO:  That receivership order says it's not,

5    you know, only parties have to comply with it.

6              THE COURT:  Mr. Shi is challenging your

7    interpretation.

8              MR. CILENTO:  That's fine.  Until he sets aside that

9    receivership order or invalidates it, he has to comply with it

10   under the law.  That's what I respectfully represent.  Why is

11   he not in communication with the receiver?

12             THE COURT:  Mr. Maloney?

13             MR. MALONEY:  Your Honor, I think our central point

14   holds.  You are correct Mr. Shi is challenging the receivership

15   order.  And we believe we've presented a basis that's

16   sufficient to stay enforcement of that aspect of the order

17   against Mr. Shi, pending briefing, and that basis is that

18   complying with certain aspects of that order as interpreted by

19   Mr. Seiden, the receiver may cause Mr. Shi to be in violation

20   of PRC law.  That's an untenable situation to put Mr. Shi in,

21   and he has a legitimate right to challenge the receivership

22   order on that basis.

23             I'll refer again to those portions of the SEC filings

24   that I read into the record.  The company has consistently

25   disclosed its understanding of Chinese law with respect to VIE

J3T3BALC

1   structure, and Mr. Shi should not be forced into a position

2   where he must violate PRC law, by way of what we believe to be

3   an action in New York that has no jurisdiction and was

4   improperly brought.

5          THE COURT:  All right.  Thank you.  I've made the

6   point clear that until we are able to address these legal

7   issues raised by Mr. Shi's challenge, I will hold making a

8   determination on the contempt order.  In the meantime,

9   essentially the status quo remains.  That is not to say that

10  the receiver's order does not apply at least as to the company.

11         All right?  So we have a briefing schedule.  And we'll

12  determine the next steps when that motion or motions is fully

13  briefed.  Thank you.

14         MR. CILENTO:  Do we have a return date for the motion?

15         THE COURT:  Well, the defendants' reply date is due

16  May 10.

17         MR. CILENTO:  So come back here May 10?

18         THE COURT:  May 10 is when the motion will be fully

19  briefed and the Court will then take it under advisement.

20         MR. CILENTO:  Okay.  Thanks.

21         MR. MALONEY:  Thank you, your Honor.

22         THE COURT:  Thank you.

23         (Adjourned)

24

25