UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)                    1:18-cv-11642

                         Plaintiff,

            -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI,
JIA LIAN,
XIAO YU,

                         Defendants,

            -and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

                         Nominal Defendant.

---

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO SERVE DEFENDANT SHI BY ALTERNATIVE MEANS OF SERVICE

Michael D. Cilento, Esq.
Seiden Law Group
469 Seventh Ave., Suite 502
New York, NY 10018
mcilento@seidenlegal.com
646-766-1723

*Attorneys for Plaintiff Wayne Baliga*

October 2, 2019

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT...................................................................................... 4

BACKGROUND............................................................................................................. 5

    Underlying Complaint, Temporary Restraining Order,
    and Appointment of Receiver.................................................................................. 5

    Plaintiff's Contempt Application, Defendant Shi's Motion to Dismiss,
    and Plaintiff's Amended Complaint........................................................................ 6

    Investigation into Defendant Shi's Whereabouts and
    Personal Service on Defendant Shi in China.......................................................... 6

    Service of Process in China through the Hague Convention.................................. 7

ARGUMENT................................................................................................................... 8

    I.    This Court Should Utilize its Discretion and Allow
         Defendant Shi to be Served by Alternative Means.......................................... 8

        A.  The Circumstances Warrant Court Intervention.................................... 8

        B.  Failed Hague Service Attempts are Not Required
            Before Ordering Alternative Service.................................................... 10

        C.  Service on Shi by Email and through his Counsel
            is Allowed and is Constitutional.......................................................... 11

CONCLUSION............................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

F.T.C. v. Pecon Software Ltd.,
   2013 WL 4016272 (S.D.N.Y. 2013).............................................................................. 11

Gurung v. Malhotra,
   279 F.R.D. 215 (S.D.N.Y. 2011)........................................................................... 12

In GLG Life Tech Corp. Sec. Litig.,
   287 F.R.D. 262 (S.D.N.Y. 2012)...................................................................... 11, 12

Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,
   265 F.R.D. 106 (S.D.N.Y. 2010)........................................................................... 11

Mullane v. Central Hanover Bank & Trust Co.,
   339 U.S. 306 (1950)............................................................................................ 13

Rio Props., Inc. v. Rio Int'l Interlink,
   284 F.3d 1007 (9th Cir.2002)............................................................................... 12

RSM Prod. Corp. v. Fridman,
   2007 WL 2295907 (S.D.N.Y. 2007)...................................................................... 12

S.E.C. v. Anticevic,
   No. 05 CV 6991 (KMW), 2009 WL 361739 (S.D.N.Y. 2009)............................... 8, 10, 11, 13

U.S. S.E.C. v. China Intelligent Lighting & Elecs., Inc.,
   No. 13 CIV. 5079 JMF, 2014 WL 338817  (S.D.N.Y. 2014).................................. 12

Wei Su v. Sotheby's, Inc.,
   No. 17-CV-4577 (VEC), 2018 WL 4804675 (S.D.N.Y. 2018)................................. 8

## **Other Authorities**

Wright & Miller, 4B Federal Practice & Procedure: Civil 3d § 1134, at 333 (2002).................. 11

Plaintiff Wayne Baliga ("Plaintiff") respectfully submits this memorandum of law in support of his request for an order affirming that sufficient service has already been made on Defendant Vincent Wenyong Shi ("Defendant Shi"), or in the alternative, for an order allowing Defendant Shi to be served by other alternative means.

## PRELIMINARY STATEMENT

Plaintiff brought this application seeking court affirmation that the service already made on Defendant Shi personally in China is sufficient service of process (as an alternative means of service), or in the alternative, for an order allowing and directing Defendant Shi to be served by email and through his US counsel. Defendant Shi, in opposing this application, has argued that Plaintiff's personal service on him in China, as well as Plaintiff's other proposed alternative means of service, are prohibited since China has objected to Article 10 of the Hague Convention on Service[1]. The caselaw on this point, however, is very clear: an objection to an Article of the Hague Convention on Service only prohibits those methods of service explicitly contained in that particular Article. Thus, China's objection to Article 10 does not prohibit Plaintiff's personal service on Defendant Shi, nor does it prohibit Plaintiff's other proposed methods of alternative service – by email and through US counsel – since none of these methods of service are contained in Article 10, which deals with service by postal mail and through State officials.

Furthermore, the circumstances here – including Defendant Shi's (i) blatant disregard and violation of the Injunction and Receivership Order in this case, (ii) intentional masking of his residential status (which would prolong – if not totally prevent – the already severely delayed

---

[1] References herein to the "Hague Convention on Service" refers to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163; and "Article 10" refers to Article 10 of the Hague Convention on Service.

process of service in China under the Hague Convention on Service), and (iii) substantive

participation in this action to date – warrant court intervention.  Accordingly, the Court should

utilize its discretion and either (a) deem the personal service on Defendant Shi in China

sufficient service of process, or (b) allow Plaintiff to serve Defendant Shi by email and/or

through his US counsel – all of which are allowed and are constitutional.

**BACKGROUND**

**Underlying Complaint, Temporary Restraining Order,**
**and Appointment of Receiver**

Plaintiff initiated this action on December 13, 2018 by submitting a Verified Complaint

containing both direct and derivative claims against Link Motion Inc. ("LKM" or the

"Company") and certain of its directors, including Defendant Shi.  See Dkt. 1 ("Complaint").

The allegations in the Complaint include, inter alia, that Defendant Shi and the other

Directors committed various breaches of fiduciary duties, including directing outright fraudulent

transfers of LKM assets to third parties for no consideration and with no board or shareholder

approval.  Id. ¶ 17-21, ¶ 26-31.

On the next day, December 14, 2019, Plaintiff submitted an application for a Temporary

Restraining Order ("TRO"); the application included a memorandum of law and multiple

affirmations attaching proof of the Complaint's allegations.  See Dkt. 92-94.  The Court granted

the TRO and set a briefing schedule for Plaintiff's request for a preliminary injunction and

appointment of a temporary receiver.  See Dkt. 7.

After the Defendants failed to oppose the request for an injunction and receiver, and after

Plaintiff submitted a further affidavit in support of the request that included further evidence of

the dire situation that the Company was in (see Dkt. 24), this Court granted the injunction and

appointed Robert W. Seiden, Esq. as the temporary receiver over the Company (the "Receiver").

See Dkt. 26.

**Plaintiff's Contempt Application, Defendant Shi's Motion to Dismiss,
and Plaintiff's Amended Complaint**

Subsequent to the Injunction and Receivership Order, Plaintiff moved by Order to Show

Cause to hold Defendant Shi in contempt for, inter alia, violating the Injunction and Receivership

Order.  See Dkt 29-32.

At the 11th hour, just prior to the show cause hearing, Defendant Shi submitted a Motion

to Dismiss the Complaint on the merits and for lack of jurisdiction, and also moved to dissolve

the preliminary injunction and discharge the Receiver.  See Dkt. 35.

After a round of briefings on the Motion to Dismiss, the Court found that Defendant Shi

must be dismissed from the action, without prejudice, for lack of jurisdiction, as he had not been

properly served with the summons and Complaint.  See Dkt. 64.  Ion its decision, the Court also

ruled as follows:

"For all these reasons, the Court denies, without prejudice, Baliga's request for alternative
service. Baliga may move again for permission for alternative service under Rule 4 (f) (3)
upon a proper showing that such an alternative is required or warranted."
Id. pg. 16.

Plaintiff subsequently amended the complaint, adding Defendant Shi back into the case

(see Dkt. 68), and moved by pre-motion letter to request to serve Defendant Shi by alternative

means, as per the Court's decision.  See Dkt. 87.

**Investigation into Defendant Shi's Whereabouts and
Personal Service on Defendant Shi in China**

Following the Court's Decision on Defendant Shi's motion to dismiss (Dkt. 64), Plaintiff

hired Confidential Global Investigations ("CGI") to perform an investigation in Defendant Shi's

whereabouts, including locating a current residential or business address.  See Affidavit of Nathaniel Francis, dated October 2, 2019 ("Francis Aff.") ¶ 3.

An extensive investigation ensued, including public property record searches in Hong Kong (id. ¶ 4); business records searches in Hong Kong and China (id. ¶ 5); online legal and lawsuit searches involving Defendant Shi (id. ¶ 6); and multiple site visits to multiple potential residences and business offices of Defendant Shi.  Id. ¶ 8, 9.

Unfortunately, the site visits to the potential residential and business addresses revealed that Defendant Shi did not reside or conduct business (anymore) at any of the locations identified by the investigations.  Id. ¶ 9, 10.

Furthermore, the investigation revealed, through a source close to Defendant Shi, that Defendant Shi is "deliberately and carefully concealing his whereabouts" and that he "does not sleep in the same place every night" and "stays mostly in different and varying hotels."  Id. ¶ 12.

On July 22, 2019, the investigators were able to locate Defendant Shi in person, and used the opportunity to have a Chinese associate serve Defendant Shi with the amended summons and complaint in this action.  Id. ¶ 14.  An affidavit of service confirming the personal service on Defendant Shi was subsequently filed on July 23, 2019.  See Dkt. 86.

**Service of Process in China through the Hague Convention on Service**

The process of service in China through the Hague Convention on Service is rather convoluted, requiring multiple different offices and courts to review the request before service is attempted; the typical time to process and serve a request in China through the Hague Convention on Service takes about 6-8 months.  See Affidavit of Timothy Clissold, dated October 2, 2019 ("Clissold Aff.") ¶ 4.

In practice, however, the process usually takes much longer, and various legal practitioners and academics estimate that the process normally takes more than a year.  Id. ¶ 5.

Furthermore, due to local protectionism from local government and party officials, "it is normal for foreign plaintiffs not to receive the kind of impartial treatment that one would expect in the USA or Europe."  Id. ¶ 6.

According to Mr. Clissold, who has more than 20 years of experience working on matters such as this inside China, "not only is it very unlikely that a request for service through the Hague Convention would be served on a Chinese defendant within one year of submission of the documents, but I would very surprised if any service was ever made at all."  Id. ¶ 7.

## ARGUMENT

### I.  This Court Should Utilize its Discretion and Allow Defendant Shi to be Served by Alternative Means

The decision whether to allow alternative methods of serving process under FRCP 4 (f) (3) is committed to the sound discretion of the district court.  See Wei Su v. Sotheby's, Inc., No. 17-CV-4577 (VEC), 2018 WL 4804675, at *3 (S.D.N.Y. 2018).  The Rule "provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case."  S.E.C. v. Anticevic, No. 05 CV 6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. 2009).

### A.  The Circumstances Warrant Court Intervention

First, time is of the essence in this action, especially as it relates to bringing Defendant Shi under the jurisdiction of the Court and subjecting him to consequences for violating the Court's orders, namely the Injunction and Receivership Order that is in place.  It is undisputed that Defendant Shi is in violation of that Order: Defendant Shi has refused to cooperate or communicate with the Receiver in any way.  Furthermore, there is ample evidence that

Defendant Shi is stripping the Company of its assets, an additional violation of the Injunction and Receivership Order.  This has all been laid out in detail in prior submissions to this Court. See Affirmation of Robert W. Seiden dated March 14, 2019, and the exhibits attached thereto, Dkt. 30 (explaining that Defendant Shi has ignored multiple letters and electronic messages from the Receiver and his representatives and is actively taking steps to thwart the Receiver); see also Affidavit of Mathew Mathison dated March 28, 2019, and the exhibits attached thereto, Dkt 50 (explaining that Defendant Shi has, inter alia, raided LKM's corporate headquarters, stealing legal and accounting documents and destroying data and contract management systems). To date, Defendant Shi has faced no consequences for these illegal actions and violations of the Court's orders.  Indeed, Defendant Shi is causing the Company and the Plaintiff irreparable harm; the interest of justice requires allowing alternative service and avoiding any further delay.

Second, despite utilizing the services of an investigative team to conduct extensive searches in the US, China and Hong Kong, Plaintiff cannot verify an address (residential or business) for Defendant Shi, which is needed to apply for service through the Hague Convention. See generally Francis Aff.  The thorough investigation included site visits to various addresses, including all potential residential and business addresses for Defendant Shi, but revealed that Defendant Shi was not residing at or doing business at any of the addresses.  Id. ¶ 9-11. Furthermore, through information obtained from an individual who is close to Defendant Shi, it is believed that Defendant Shi is not residing in any one place but rather he is staying in various hotels and changing locations frequently to mask his whereabouts. Id. ¶ 12.  As the Hague Convention on Service requires a single address, and will only attempt delivery to a single address, it is impracticable to expect successful service through the Hague Convention on Service.

Third, Defendant Shi would be able to easily avoid such service, since he has knowledge that we are attempting to serve him.  The attempts at service through the Hague Convention are not sophisticated; the process servers through the local courts will not try to track Defendant Shi down and will only attempt to serve to a single address.  Because Defendant Shi knows that we are attempting service, he will be able to continue residing in hotels, completely avoiding being served (he has avoided detection for the most part from CGI's various investigators and agents inside China as it is).  Once a service attempt through the Hague Convention fails, another attempt can take months if not longer, and multiple unsuccessful attempts can lead to an indefinite delay of service.  <u>See</u> Clissold Aff. ¶ 5.  Because Defendant Shi can easily avoid service through the Hague Convention on Service and cause further if not indefinite delays, this Court should allow alternative service.

Finally, the Court should take notice that Defendant Shi has participated substantively in this litigation.  Indeed, Defendant Shi himself moved to have the injunction dissolved and the Receiver discharged.  <u>See</u> Dkt. 35.  While the Court ultimately disagreed with Defendant Shi's positions and arguments, it did so after fully considering them on the merits.  Allowing Defendant Shi to participate substantively in the litigation while being able to avoid service of process is another point that militates in favor of allowing alternative service, in the interest of justice.

     **B.** **<u>Failed Hague Service Attempts are Not Required</u>**
              **<u>Before Ordering Alternative Service</u>**

"A plaintiff is not required to attempt service through the other provisions of Rule 4 (f) before the Court may order service pursuant to Rule 4 (f) (3)."  <u>Anticevic,</u> 2009 WL 361739, at *3.

And while there may be instances where a court may first require efforts to be made under the Hague Convention on Service, "nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)." In GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (citing Wright & Miller, 4B Federal Practice & Procedure: Civil 3d § 1134, at 333 (2002) ("The only proscription on the district court's discretion is that the method not be prohibited by international agreement.")).

Indeed, "[s]ervice of process under Rule 4 (f) (3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant." Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (internal citation omitted).

Due to the above circumstances detailed above, including the fact that Plaintiff does not have a verified address for Defendant Shi, and because under the Federal Rules and this District's caselaw it is not required to exhaust a service attempt through the Hague Convention on Service, the Court should allow Plaintiff to bypass the other provisions of Rule 4 (f) and allow immediate service by alternative means.  See e.g., Anticevic, 2009 WL 361739, at *3 (S.D.N.Y. 2009).

### C.   Service on Defendant Shi Personally, by Rmail, and through his US Counsel is Not Prohibited and is Constitutional

Article 10 allows for service of process through alternative means such as "postal channels" and "judicial officers," unless a destination state objects to those means.  Hague Convention on Service, Article 10.  While China has objected to the means listed in Article 10, "that objection is specifically limited to the means of service enumerated in Article 10." F.T.C.

v. Pecon Software Ltd., 2013 WL 4016272, at *4 (S.D.N.Y. 2013).  Furthermore, "[w]here a signatory nation has objected to only those means of service listed in Article X, a court acting under Rule 4 (f) (3) remains free to order alternative means of service that are not specifically referenced in Article X."  Gurung v. Malhotra, 279 F.R.D. 215, 219 (S.D.N.Y. 2011).

Since personal service on Defendant Shi in China did not utilize "postal channels" or "judicial officers," and is otherwise not mentioned in Article 10, such service is not prohibited by an objection to Article 10.

Similarly, serving Defendant Shi through his US Counsel also would not violate an objection to Article 10.  See In GLG Life Tech Corp., 287 F.R.D. at 267 ("service on GLG's counsel ... would not run afoul of the Hague Convention since ... no documents would be transmitted abroad."); see RSM Prod. Corp. v. Fridman, 2007 WL 2295907, at *3 (S.D.N.Y. 2007) (holding that the plaintiff's request for court-directed service on the defendant through counsel in the United States pursuant to Rule 4(f) (3) did not implicate the Hague Convention on Service because it involved no transmittal of documents abroad).

Service through email is also not precluded.  See Pecon Software Ltd. WL 4016272 at *5 ("Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10."); see also U.S. S.E.C. v. China Intelligent Lighting & Elecs., Inc., No. 13 CIV. 5079 JMF, 2014 WL 338817, at *1 (S.D.N.Y. 2014) (holding that emailing Chinese nationals did not violate any international agreements); see also Gurung, 279 F.R.D. at 220 (collecting cases authorizing email service).

Finally, Plaintiff's proposed alternative means of service pass constitutional muster.  See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir.2002). "Constitutional notions of due process require that any means of service be 'reasonably calculated, under all circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Anticevic, 2009 WL 361739 at *4 (quoting, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

Here, it cannot be seriously argued that the proposed alternative means of service would not reasonably apprise Defendant Shi of the action. Defendant Shi was literally personally served in China with the amended summons and amended complaint. See Dkt. 86. Defendant Shi also has US counsel, who presumably communicates Defendant Shi on a somewhat regularl basis and who has been involved in this case since his appearance in March of this year. See Dkt. 38. Lastly, we know Defendant Shi is reachable by email, as LKM's former counsel DLA has submitted to the court an email they received from Defendant Shi at his LKM email address approving their withdrawal from this action. See Dkt. 28, pg. 11.

## **CONCLUSION**

For all the foregoing reasons, and for those contained in the affidavits and other supporting papers submitted herewith, and upon all the other documents and proceedings in this action, the Court should affirm that the personal service made on Defendant Shi is sufficient service of process, or, in the alternative, the Court should order that Defendant Shi be served by email and through his US Counsel.

Dated:  October 2, 2019
        New York, New York

Michael D. Cilento, Esq.
Seiden Law Group
469 Seventh Ave., Suite 502
New York, NY 10018
mcilento@seidenlegal.com
646-766-1723

*Attorneys for Plaintiff Wayne Baliga*