UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/11/19
```

--------------------------------- X

WAYNE BALIGA, derivatively on         :
behalf of Link Motion Inc.,           :
                                      :
                  Plaintiff,          :        18 Civ. 11642 (VM)
                                      :
      - against -                     :        **DECISION AND ORDER**
                                      :
LINK MOTION INC. (F/K/A NQ MOBILE     :
INC.), et al.,                        :
                                      :
                  Defendants.         :
--------------------------------- X

**VICTOR MARRERO, United States District Judge.**

Wayne Baliga ("Baliga") brings this case as a shareholder derivative action on behalf of, and against, Link Motion Inc. (f/k/a NQ Mobile Inc.) ("Link Motion" or the "Company"). Baliga alleges that defendants Vincent Shi ("Shi"), Jia Lian, and Xiao Yu (collectively, the "Individual Defendants" and, together with Link Motion, the "Defendants") are unlawfully divesting Link Motion's assets, including whole subsidiaries, by selling them without permission from shareholders.

Shi now seeks to dismiss Baliga's suit and responds to an order to show cause why the he should not be held in contempt for violating an Order of this Court. (See Dkt. No. 35.) For the reasons discussed below, Shi's motion is GRANTED in part and DENIED in part.

1

## I.   BACKGROUND

A. COMPANY BACKGROUND AND PRE-SUIT DISPUTES

Link Motion is a Cayman Islands company with its principle headquarters in Beijing, China. (See "Complaint," Dkt. No. 1.)[1] It develops, licenses, supports, and sells software and services focusing on smart car and smart ride businesses and associated technologies. The Company maintains a portfolio of legacy mobile and productivity applications.

In 2011, Link Motion held its initial public offering on the New York Stock Exchange ("NYSE"), offering over seven million American Depository Shares ("ADS"). Over the years, Link Motion has continued to offer and issue ADS, such that the Company has nearly 100 million ADS outstanding to date. Baliga is a shareholder who holds ADS in Link Motion.

According to Baliga, Company operations began to unravel in late 2017 after independent investigations and audits of the Company uncovered Shi's potential misconduct. Shi, a Chinese citizen, has been a part of Link Motion since near its inception. He began serving as its Chief Operating Officer in October 2005 and became Chairman of the Board of Directors (the "Board") in 2014. Shi allegedly fabricated certain

---

[1]     Except as otherwise noted, the factual background below derives from the Complaint and the facts there pleaded, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

2

transactions to benefit himself to the detriment of shareholders and refused to step down as the Board and auditors attempted to investigate the matter.

As the Company fought internally, it faltered externally. In early 2018, the Company failed to file its required annual SEC Form 20-F as a foreign issuer. In November 2018, the Finland office of the Company allegedly had to close because of the lack of support from Link Motion. According to Baliga, a Texas office faces similar prospects of closure. In December 2018, the NYSE began procedures to delist Link Motion from the exchange. (See Dkt. No. 24 ¶ 2.)

While the Company faltered, the Individual Defendants allegedly transferred assets away secretly. For example, in October 2018, the Company transferred two businesses to a third party without Board approval or notice.

B. BALIGA BRINGS SUIT

To stem the loss of assets, on December 13, 2018, Baliga initiated this suit, bringing claims for appointment of a receiver (Count One); breach of fiduciary duties (Count Two); unjust enrichment (Count Three); violation of Section 10(b) of the Exchange Act, 15 U.S.C. Section 78j ("Section 10(b)") (Count Four); violation of Section 20(a) of the Exchange Act, 15 U.S.C. Section 78t (Count Five). Baliga delivered service of process upon Defendants via Law Debenture Corporate

3

Services Inc., Link Motion's agent for service of process. (See Dkt. Nos. 16, 17, 18, 19.)

In conjunction with the filing of the Complaint, which effectively sought (1) preliminary injunctive relief to restrain the transfer Link Motion's assets; and (2) the appointment of a receiver over Link Motion to regain transferred assets, Baliga simultaneously moved for a temporary restraining order. (See "TRO Motion," Dkt. No. 63). On December 14, 2018, the Court issued a Temporary Restraining Order (1) preventing Link Motion from further transferring, liquidating, or dissipating any of its assets; and (2) directing the parties to confer and provide a joint update to the Court within one week regarding a proposed briefing schedule for Baliga's preliminary injunction request. (See "Temporary Restraining Order," Dkt. No. 7.)

One week later, Baliga and Link Motion submitted a joint letter offering competing briefing schedules regarding Baliga's requests for a preliminary injunction and appointment of a receiver. (See "December 21 Joint Letter," Dkt. No. 20.) The Court granted Link Motion's proposed briefing schedule, directing it to respond to Baliga's requests by January 21, 2019. (See Dkt. No. 21.) In the meantime, Link Motion consented to extending the Temporary Restraining Order until the Court ruled on the preliminary

injunction request. Attorneys from DLA Piper LLP ("DLA Piper") signed the joint letter as "Counsel for Defendant, Link Motion Inc." (See December 21 Joint Letter at 2.) None of the Individual Defendants signed the December 21 Joint Letter or otherwise appeared.

On January 21, 2019, rather than filing its brief in opposition to a preliminary injunction, Link Motion filed a proposed stipulation. (See "Proposed Stipulation," Dkt. No. 22.) In the Proposed Stipulation, Baliga agreed to extend Link Motion's time to answer the Complaint to February 20, 2019, and Link Motion withdrew its opposition to preliminary injunctive relief and the appointment of a receiver. Attorneys from DLA Piper signed this letter on behalf of Link Motion as well. The Court endorsed the Proposed Stipulation the next day. (See Dkt. No. 23.)

A few days later, Baliga submitted an additional affidavit in support of the grant of of injunctive relief and appointment of a receiver, outlining recent developments. (See Dkt. No. 24.) Baliga explained that since he filed suit, the NYSE suspended trading of Link Motion ADS, the Company's independent registered public accountant resigned, and employees were working without pay. In light of these developments, the Court issued a Preliminary Injunction Order and appointed Robert W. Seiden as Temporary Receiver on

February 1, 2019. (See "Preliminary Injunction Order," Dkt. No. 26.)

Link Motion never filed an answer or otherwise moved to dismiss the Complaint by the February 20, 2019 deadline. DLA Piper's letter dated March 1, 2019, might explain why. According to the firm, even before Baliga filed suit, Link Motion was already in arrears with its legal fees. (See "DLA Piper March 1 Letter," Dkt. No. 28.) Nevertheless, "at Link Motion's request," DLA Piper appeared "in order to protect Link Motion's immediate interest" in the litigation. (Id. at 6.) In the weeks that followed, however, Link Motion failed to "cooperate in the representation" or "respond to inquiries" from DLA Piper. (Id.) As a result, DLA Piper moved to withdraw as Link Motion's counsel with Link Motion's consent, as evidenced by an email from Shi. (See id. at 1, 9.) The Court granted DLA Piper's request. (See id. at 4.)

C. CONTEMPT PROCEEDINGS AND MOTION TO DISMISS BRIEFING

On March 14, 2019 Baliga requested that the Court order Shi to show cause why he should not be held in contempt. (See Dkt. Nos. 29, 30.) According to Baliga, Shi was not complying with the Preliminary Injunction Order or cooperating with the Temporary Receiver. The Court scheduled a show cause hearing for March 29, 2019. (See Dkt. No. 33.)

Two days before the show cause hearing, Shi finally appeared in the action, moving to dismiss the Complaint for lack of jurisdiction and opposing the contempt proceedings on similar grounds. (See "Motion to Dismiss," Dkt. No. 37.)

Shi's core contention is that the Court has no personal jurisdiction over him because Baliga failed to serve him properly. (See id. at 5, 8.) Shi argues that without jurisdiction, the Complaint must be dismissed as to him, and that the Court cannot hold him in contempt for violating the Preliminary Injunction Order. Shi also asserts that the Court lacks jurisdiction over Link Motion. (See id. at 17.)

Partly given Shi's claim of the Court's lack of personal jurisdiction, rather than proceed before this Court, Shi argues that the Court should dismiss based on the forum non conveniens doctrine. In support, Shi emphasizes Defendants' connections to Cayman Islands and China. He points out that the Company's assets are abroad and the Temporary Receiver is likewise pursuing legal action abroad. Shi argues that the Cayman Islands is the proper forum. (See id. at 15-16.)

Shi partly challenges the Complaint on the merits as well. Shi argues that Baliga has failed to state a claim under Section 10(b) because there are no allegations regarding "the purchase or sale of securities" or that Shi acted with scienter. (Id. at 8-9.) Thus, according to Shi, Counts Four

7

and Five, which are predicated upon a Section 10(b) violation, must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").

Shi separately contests the Preliminary Injunction Order as well, in three different ways. First, Shi claims the Company's purported consent to the appointment of a receiver through stipulation was invalid because Baliga presented no evidence that the Board consented to such action. Next, Shi argues that the Court did not make the necessary findings to appoint a receiver. (See id. at 12-13.) Finally, Shi argues that the appointment of a receiver violates a Chinese law requiring the Company's Board to be Chinese citizens. (See id. at 14.)

After hearing argument at the March 29, 2019 show cause hearing regarding contempt proceedings for Shi, the Court adjourned without resolving whether to hold Shi in contempt and ordered Baliga to respond to Shi's Motion to Dismiss. (See Dkt. Minute Entry for 3/29/2019.) Baliga responded on April 26, 2019. (See "Opposition," Dkt. No. 51.)

Baliga concedes that service was improper over Shi but requests additional time for service and permission for alternative service under Rule 4(f)(3) of the Federal Rules

8

of Civil Procedure ("Rule 4(f)(3)"). (See id. at 30.)[2]
Notwithstanding the lack of proper service, Baliga argues
that Shi has enough minimum contacts with New York for the
Court to exercise personal jurisdiction over Shi.

Baliga also defends the Court's exercise of personal
jurisdiction over Link Motion under numerous theories. First,
as a procedural matter, Baliga claims that Shi lacks standing
to raise any arguments on Link Motion's behalf. (See id. at
7-8.) Second, Baliga argues that Link Motion forfeited any
personal jurisdiction defense by failing to respond to the
Complaint by the February 20, 2019 deadline. (See id. at 10.)
Third, Baliga relies on a forum selection clause between the
Company and Deutsche Bank Trust Company Americas ("Deutsche
Bank") in connection with the Company listing ADS on the NYSE.
(See id. at 11.) Finally, Baliga argues that the Court has
general and specific jurisdiction over Link Motion. (See id.
at 11-17.)

In addition to defending the Court's exercise of
personal jurisdiction over Shi, Baliga defends his choice of
forum. Baliga argues that the public and private interests in

---

[2] The Opposition does not include page numbers. As such, the Court
considers the Opposition's cover page as the first page, the subsequent
table of contents as the second page, and so forth, and pincites to the
Opposition follow that convention.

the case support his choice of forum, and no adequate alternative forum exists.

On the merits, Baliga asserts that he states a claim under Section 10(b), providing documentary evidence of his purchases of Link Motion securities from 2014 to 2018. (See id. at 24-25 (citing Dkt. No. 49-8).)

Baliga then defends the Preliminary Injunction Order. Baliga points out that Shi still has not responded to the various submissions filed in support the Preliminary Injunction Order, which included documentary evidence and various affirmations. Baliga similarly reemphasizes the largely uncontroverted allegations of Shi's noncompliance with the Preliminary Injunction Order that he argues justify civil contempt. Baliga also challenges Shi's assertion that DLA Piper acted without authority.

Shi replied on May 22, 2019. (See "Reply," Dkt. No. 62.) Beyond supporting the points argued in the Motion to Dismiss, Shi defends his standing to raise arguments on behalf of Link Motion.

## II.  DISCUSSION

A. PERSONAL JURISDICTION OVER SHI

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." Licci ex rel. Licci v. Lebanese Canadian Bank,

10

SAL, 673 F.3d 50, 59 (2d Cir. 2012). First, the plaintiff must properly deliver service of process upon the defendant. See id. Second, the plaintiff must have a "statutory basis for personal jurisdiction that renders such service of process effective." Id. Third, the exercise of personal jurisdiction must comport with due process. See id. at 60.

Baliga does not attempt to defend his service of process on Link Motion's agent as proper regarding Shi. Rather, Baliga effectively concedes that service was improper by requesting permission to serve Shi alternatively. The Court finds that Shi has not received proper service of process.

Without proper service of process, the Court does not have personal jurisdiction over Shi, see id., and two results follow. First, the Court must dismiss the Complaint as to Shi. Second, the Court cannot hold Shi in contempt for violating the Preliminary Injunction Order. See, e.g., Comverse, Inc. v. Am. Telecomms., Inc. Chile, No. 07 Civ. 11121, 2009 WL 464446, at *2 n.4 (S.D.N.Y. Feb. 24, 2009) ("Without personal jurisdiction over [executives of defendant company], this Court cannot hold them in contempt." (citing New York State Nat'l Org. for Women v. Terry, 961 F.2d 390, 400 (2d Cir. 1992), vacated on other grounds sub nom. Pearson v. Planned Parenthood Margaret Sanger Clinic (Manhattan), 507 U.S. 901 (1993))).

11

Baliga cannot overcome the lack of proper service to avoid either result. Although Baliga is correct that Shi almost certainly has the minimum contacts necessary with the United States and the forum state to satisfy due process concerns,[3] service of process is mandatory for personal jurisdiction.

Despite the lack of personal jurisdiction, Baliga attempts to justify a finding of civil contempt by casting Shi as a non-party. According to Baliga, as long as Shi had actual notice of the Preliminary Injunction Order, the Court can find Shi in contempt even if he is no longer a party to the suit. Baliga relies exclusively on a pair of state court decisions for this argument. (See Opposition at 26 (citing McCormick v. Axelrod, 466 N.Y.S.2d 279 (1983); Power Auth. v. Moeller, 395 N.Y.S.2d 497 (App. Div. 3d Dep't 1977)).)

As a preliminary matter, Baliga does not explain his choice to cite only state cases discussing state law in support of his argument. Because contempt proceedings implicate the "vindication of the authority of the court . . . . [T]he rule of [Erie Railroad Co. v. Tompkins, 304

---

[3]    Indeed, Shi does not seriously contest personal jurisdiction on minimum contacts grounds in the Motion to Dismiss beyond a single conclusory sentence (see Motion to Dismiss at 12) and courts routinely exercise personal jurisdiction in securities cases over foreign executives that are alleged to have "exercised control over or signed fraudulent SEC statements." Das v. Rio Tinto PLC, 332 F. Supp. 3d 786, 801 (S.D.N.Y. 2018); see also In re Banco Bradesco S.A. Sec. Litig., 277 F. Supp. 3d 600, 643 (S.D.N.Y. 2017).

12

U.S. 64, 58 (1938)] does not apply[.]" <u>New York ex rel. Abrams
v. Terry</u>, 45 F.3d 17, 23-24 (2d Cir. 1995). That is, federal
law, not state law, applies.

Under applicable federal law, alleged
contemnors -- including non-parties -- must receive proper
service of process before contempt proceedings can begin. <u>See</u>
Rule 83.6 of the Local Civil Rules of the United States
District Courts for the Southern and Eastern Districts of New
York ("Where the alleged contemnor [has not appeared] . . .
service shall be made personally, together with a copy of
this Local Civil Rule 83.6, in the manner provided for by the
Federal Rules of Civil Procedure for the service of a
summons."); <u>First City, Texas Houston, N.A. v. Rafidain Bank</u>,
281 F.3d 48, 55 (2d Cir. 2002) (requiring proper service of
subpoena in order to hold alleged contemnor in contempt for
violating subpoena); <u>Soundkillers LLC v. Young Money Entm't,
LLC</u>, No. 14 Civ. 7980, 2016 WL 4990257, at *4 (S.D.N.Y. Aug.
2, 2016), <u>report and recommendation adopted</u>, 2016 WL 4926198
(S.D.N.Y. Sept. 15, 2016) ("Thus, the directors or officers
of a corporation which is a party to an action may be held
personally in contempt for . . . noncompliance with a subpoena
or court order . . . provided that these individuals have
been served with process and that the Court has personal
jurisdiction over them." (internal citation omitted)); <u>see</u>

13

also 9 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2960 (3d ed. 2019) (in civil contempt proceedings, parties "not already within the jurisdiction of the court . . . must be served with process as in any other civil action").

But even if New York state law applied, the same results follow. "Contempt proceedings may move forward upon a showing of actual notice, but only as long as the court making the contempt finding already has personal jurisdiction over the defendant." United States v. Thompson, 921 F.3d 82, 87-88 (2d Cir. 2019) (citing People v. McCowan, 629 N.Y.S.2d 163 (1995)).

Accordingly, the Court grants Shi's Motion to Dismiss and dismisses the Complaint in its entirety as to Shi without prejudice.

## B. ALTERNATIVE SERVICE

Baliga can rectify the dismissal of Shi in this case by properly serving him. Because Shi is located in a foreign country, Federal Rule of Civil Procedure 4(f)(1) permits Baliga to serve Shi "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1).

14

Baliga has not even attempted to comply with the Hague Convention. Rather, he seeks permission for alternative service under Rule 4(f)(3) either "through email or via the Company's registered agent." (Opposition at 30.) Baliga notes that courts in this district have previously permitted such service in cases involving effecting service in China. (See id. at 30-31 (citing In GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262 (S.D.N.Y. 2012)).)

As Shi points out, whether to exercise discretion and grant alternative service requires courts to evaluate "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." Wei Su v. Sotheby's, Inc., No. 17 Civ. 4577, 2018 WL 4804675, at *3 (S.D.N.Y. Oct. 3, 2018). Baliga does not address either of these requirements.

The Court is mindful of Baliga's allegations and desire to move quickly. However, those reasons are no excuse to flout procedural rules, especially without support for his request. The plaintiff seeking alternative service in GLG Life Tech, for example, attempted to obtain the defendant's residential address in China and submitted an affidavit regarding the difficulty and delay of service of process in China. 287

15

F.R.D. at 264, 266-68. Baliga has made no such showing or attempt here.

For all these reasons, the Court denies, without prejudice, Baliga's request for alternative service. Baliga may move again for permission for alternative service under Rule 4(f)(3) upon a proper showing that such an alternative is required or warranted.

C. FORUM NON CONVENIENS

Under the forum non conveniens doctrine, the Court "assesses the appropriateness of litigating the action in the plaintiff's choice of forum, as opposed to the alternative venue, by balancing the private interests of the litigants and the public interest concerns of the court." Turedi v. Coca Cola Co., 460 F. Supp. 2d 507, 521 (S.D.N.Y. 2006), aff'd, 343 Fed. App'x 623 (2d Cir. 2009).

To justify dismissal on forum non conveniens grounds, Shi emphasizes the international quality of this action. Specifically, Link Motion is a Cayman Islands corporation that operates and has most of its assets in China, requiring the Temporary Receiver to proceed simultaneously in the courts of those countries to discharge his duties. But the international quality of the action does not necessitate dismissal on forum non conveniens ground. Rather, Shi must point to tangible public or private hardships that outweigh

16

Baliga's choice of forum, such as "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." Aguinda v. Texaco, Inc., 303 F.3d 470, 479 (2d Cir. 2002) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

Despite quoting that test, Shi references none of these considerations. Nor does he explain why litigating in the Cayman Islands would be more appropriate. This proposed alternative is particularly unpersuasive given that his concerns about the alleged China-centric quality of this action would seemingly apply equally when litigating in the Cayman Islands.

In contrast, Baliga explains in great detail the public and private interests supporting the New York forum. First, Baliga points out that the claims arise from Link Motion's listing of securities on the NYSE, implicating United States securities laws designed to protect United States investors. Moreover, Baliga emphasizes that securities and misconduct claims like his typically involve documentary evidence which are easily accessed electronically. Finally, Baliga notes that the Court must generally defer to his choice of forum.

17

See Iragorri v. United Techs. Corp., 274 F.3d 65, 71 (2d Cir. 2001). Shi addresses none of these arguments in his Reply.

Baliga is correct. Given the resources available to Defendants, the type of evidence this case likely requires, and the interest of protecting United States investors, especially in securities transactions involving the shares of foreign entities, the Court finds that the balance of public and private interests in this action counsel against dismissal. Therefore, the Court denies Shi's Motion to Dismiss on forum non conveniens grounds.

D. SECTION 10(B) CLAIM

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a

18

complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Shi moves to dismiss Counts Four and Five, which are predicated upon a violation of Section 10(b). An essential element of a securities claim under Section 10(b) is the purchase or sale of securities. See, e.g., Solow v. Citigroup, Inc., 507 F. App'x 81, 82 (2d Cir. 2013). Shi argues that Baliga has failed to allege this element. Shi is correct.

Although Baliga has now provided ample evidence in his Opposition and its associated exhibits that he did, in fact, purchase or sell Link Motion ADS, he did not plead so in his Complaint. Baliga may not amend his Complaint through briefing and exhibits. See, e.g., Kleinman v. Elan Corp., 706 F.3d 145, 153 (2d Cir. 2013). Thus, the Court grants Shi's Motion to Dismiss with respect to Counts Four and Five without prejudice. Further, the Court grants Baliga leave to amend the Complaint to include the necessary allegations.

E. VALIDITY OF THE PRELIMINARY INJUNCTION ORDER

Beyond arguing for dismissal of the Complaint and against finding him in contempt, Shi also attacks the validity of the Preliminary Injunction Order, and specifically, the Court's appointment of the Temporary Receiver. Shi claims that DLA Piper could not consent to the appointment of a

19

receiver and that the Court has not made the necessary findings to justify the appointment of a receiver. Shi argues finally that the appointment of a non-Chinese citizen as a receiver violates Chinese law. In response, Baliga reiterates the posture of the case and difficulties facing Link Motion investors, and questions Shi's standing to challenge the Preliminary Injunction Order on behalf of Link Motion. On Reply, Shi asserts that he has suffered an injury-in-fact sufficient to confer standing to contest the Preliminary Injunction Order.

Generally, one defendant cannot raise arguments on behalf of another. See, e.g., In GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262, 265 (S.D.N.Y. 2012). Shi's injury-in-fact argument is in tension with his contention that the Court has no personal jurisdiction over him because non-parties seeking to invoke standing to be heard on a matter generally must move to intervene and willingly subject themselves to the Court's jurisdiction.

Nevertheless, without deciding whether Shi is permitted to raise such arguments, the Court will exercise its discretion to consider his arguments as though they were raised by an amicus curiae. See id. (considering arguments made by defendant company about service on executive defendants as if they were made by an amicus curiae).

20

None of Shi's arguments against the Preliminary
Injunction Order and appointment of the Temporary Receiver
are persuasive. Shi focuses on the behavior of DLA Piper,
which represented Link Motion, apparently without pay, from
at least December 21, 2018 to March 1, 2019. Shi argues that
Baliga presents no proof that the Board permitted DLA Piper
to consent to the appointment of a receiver, and he claims
that the Board, in fact, did not consent. Shi also argues,
without citing any case law, that Baliga needed to submit
proof of the Board's consent to DLA Piper's actions.

Shi's focus on whether DLA Piper could or did consent to
some action misses a critical detail: neither Link Motion nor
Shi ever opposed the motion leading to the Preliminary
Injunction Order. Baliga has submitted multiple declarations
and other documents outlining the perilous situation of the
Company which were -- and still are -- unrefuted. The Court
clarifies that these submissions are sufficient to show that
the appointment of the Temporary Receiver was necessary to
protect against the "the imminent danger of the property being
lost." United States Bank Nat'l Ass'n v. Nesbitt Bellevue
Prop. LLC, 859 F. Supp. 2d 602, 610 (S.D.N.Y. 2012). For
example, Baliga has provided evidence that (1) Link Motion
has transferred substantial assets without notice to the
Board; (2) Link Motion has failed to make required filings

21

with the SEC; (3) employees have gone without pay; and (4)
Shi has fired employees and ordered documents removed. These
behaviors are precisely the kind of actions that warrant the
appointment of a receiver. Indeed, "perhaps one of the most
frequent settings in which federal equity receivers have been
employed in recent years is as an incident to a stockholder
suit to prevent the impairment of corporate assets." 9 Charles
Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal
Practice and Procedure § 2983 (3d ed. 2019).

Lastly, Shi claims that appointment of the Temporary
Receiver violates Chinese law and threatens to destroy all
remaining value of Link Motion. Shi greatly extends this
argument on Reply by asserting that the Court must conduct a
conflicts of law analysis to determine if the Preliminary
Injunction Order comports with international principles of
comity. (See Reply at 12.)

"International comity comes into play only when there is
a true conflict between American law and that of a foreign
jurisdiction." In re Picard, 917 F.3d 85, 102 (2d Cir. 2019)
(internal quotation marks omitted). "A true conflict exists
if compliance with the regulatory laws of both countries would
be impossible." Id. (internal quotation marks omitted). A
party's mere allegation of a conflict will not suffice; the
record needs to demonstrate the conflict clearly. See id.

Thus, when asserting issues of foreign law, parties should generally identify the foreign laws at issue, submit expert opinions, and provide translated primary source materials. See, e.g., Haywin Textile Prods. v. Int'l Fin. Inv. & Commerce Bank, Ltd., 137 F. Supp. 2d 431, 435 (S.D.N.Y. 2001).

Shi provides no expert analysis on this argument and cites no Chinese laws. Instead, Shi relies exclusively on the Company's prior SEC filings describing its corporate structure. These filings are insufficient to raise the prospect of a true conflict, and the Court finds no such conflict based on Shi's submissions. For example, Shi emphasizes language from the Company's SEC filings that Chinese law prohibits him from "providing any assistance . . . to foreign investors" but neglects to quote the remainder of the sentence. (See Dkt. No. 60 at 6.) The full sentence states "[a] domestic company that holds a telecommunications value-added services operation license is prohibited from . . . providing resources . . . to foreign investors that conduct value-added telecommunications business illegally in China." (Id. at 4 (emphasis added).) Given that Baliga alleges that Link Motion may no longer be a going concern at this point, it is not clear that it even conducts a "value-added telecommunications business" such that this provision still applies.

23

In sum, the Court declines to vacate the Preliminary Injunction Order.

F. PERSONAL JURISDICTION OVER LINK MOTION

Apart from contesting the Court's personal jurisdiction over himself, Shi challenges the Court's exercise of personal jurisdiction over Link Motion as well.

Again, the Court doubts whether Shi can raise such arguments on behalf of Link Motion. See United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76-77 (1988) (non-party witness contesting a civil contempt finding "has no legitimate interest" in "raising matters" such as "the District Court's lack of personal jurisdiction" over a party).

But, even if the Court were to consider such arguments, they are unavailing. In the Motion to Dismiss, Shi's entire substantive argument about the Court's lack of jurisdiction over Link Motion states only:

> [T]his Court lacks jurisdiction over Shi because the securities claims fail to state a cause of action and the common law claims fail for lack of jurisdiction. For the same reasons, this Court lack[s] personal jurisdiction over Link Motion . . . .

(Motion to Dismiss at 17.)

Critically, Shi premised his argument regarding the Court's lack of personal jurisdiction over him on the failure to receive proper service of process. However, the argument

24

that Baliga wrongfully served Shi at Link Motion's agent for service cannot apply to Link Motion itself. As such, this argument is unfounded and unavailing.

Shi attempts to salvage his argument in his Reply, devoting five pages to argue that the Court lacked both general and specific jurisdiction over Link Motion, and that Link Motion did not consent to personal jurisdiction. These new arguments are a substantial departure from the few lines Shi devoted in his Motion to Dismiss. As the Court explains in Rule II.D of its Individual Practices, it "will not consider new matters raised in replies for the first time." See also Bertuglia v. City of New York, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012) ("[A]rguments raised for the first time in reply should not be considered, because the plaintiff[] had no opportunity to respond to those new arguments.").

Despite these hurdles, even if the Court were to consider Shi's arguments, they would be unavailing. At this stage of the proceedings, the Court must credit Baliga's uncontroverted allegations of corporate mismanagement and fraud that is harming United States investors such as himself. See, e.g., MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012). These allegations are sufficient to establish personal jurisdiction and courts repeatedly exercise personal jurisdiction over public companies that target United States

investors in similar circumstances. <u>See, e.g.,</u> <u>SEC v. Sharef</u>,
924 F. Supp. 2d 539, 547 (S.D.N.Y. 2013). No unique
considerations exist here to support the Court's declining to
exercise jurisdiction. Therefore, the Court denies Shi's
Motion to Dismiss Baliga's claims against Link Motion on
personal jurisdiction grounds.

## III. ORDER

Accordingly, for the reasons stated above it is hereby,

**ORDERED** that the motion (Dkt. No. 35.) of Defendant Vincent Wenyong Shi ("Shi") to dismiss the complaint (Dkt. No. 1) of plaintiff Wayne Baliga ("Baliga") is **GRANTED IN PART** and **DENIED IN PART.** Counts Four and Five are dismissed without prejudice. Shi is dismissed from the case for lack of personal jurisdiction without prejudice to Baliga's further endeavor to serve Shi properly. It is further

**ORDERED** that Baliga is granted leave to file an amended complaint as to Counts Four and Five within two weeks of the date of entry of this Order. It is further

**ORDERED** that the request of Baliga for alternative service under Federal Rule of Civil Procedure 4(f)(3) is denied without prejudice.


**SO ORDERED.**

Dated:   New York, New York
         11 June 2019

                                        _____
                                           VICTOR MARRERO
                                              U.S.D.J.

27