**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)                     1:18-cv-11642-VM-DCF

                              Plaintiff,

            -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI, JIA LIAN, XIAO YU,

                              Defendants,

            -and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

                              Nominal Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO CHINA AI CAPITAL LIMITED'S MOTION TO INTERVENE**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY ................................ 2

ARGUMENT ............................................................................................................................... 7

   I.    CHINA AI HAS NO RIGHT TO INTERVENE, GIVEN ITS UNDISCLOSED
        RELATIONSHIP WITH DEFENDANT SHI AND THE RISK THAT INTERVENTION
        MAY RESULT IN A FRAUD ON THE COURT ........................................................... 7

   II.   CHINA AI HAS OTHERWISE FAILED TO ESTABLISH ITS RIGHT TO
        INTERVENE ................................................................................................................. 10

   A.   China AI's Motion Is Untimely ........................................................................................ 10

   B.   Plaintiff Adequately Protects LKM Shareholders' Interests ............................................ 12

CONCLUSION……………………………………………………………………………..16

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Almeciga v. Ctr. for Inestigative Reporting, Inc.*, 185 F. Supp. 3d 401 (S.D.N.Y. 2016)............10

*Andrews v. Sony/ATV Music Publ'g, LLC*, 2017 WL 770614 (S.D.N.Y. Feb. 24, 2017) ...... 11, 12

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001) ................................... 12

*Chevron Corp. v. Donziger*, 2013 WL 150006 (S.D.N.Y. Jan. 14, 2013)............................. 10, 11

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................................. 12

*Davis v. Scottish Re Grp. Ltd.*, 30 N.Y. 3d 247 (2017) ............................................................... 14

*Ferguson v. Ruane Cuniff & Goldfarb Inc.*, 2019 WL 1434435 (S.D.N.Y. Mar. 29, 2019).. 11, 13

*Floyd v. City of New York*, 302 F.R.D. 69 (S.D.N.Y. 2014)........................................................... 7

*Galin v. Hamada*, 283 F. Supp. 3d 189, 203 (S.D.N.Y. 2017)……………………………......10

*Greenidge v. Allstate Ins. Co.*, 82 F. App'x 728 (2d Cir. 2003) ..................................................... 7

*In re Ambac Fin. Grp., Inc., Derivative Litig.*, 257 F.R.D. 390 (S.D.N.Y. 2009) ....................... 13

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*,
    2012 WL 1674299 (S.D.N.Y. May 14, 2012) ........................................................................... 7

*In re Bank of New York Derivative Litig.*, 320 F.3d 291 (2d Cir. 2003). ....................................... 7

*In re Holocaust Victim Assets Litig.*, 225 F.3d 191 (2d Cir. 2000) ............................................. 11

*Izzo Golf Inc. v. King Par Golf Inc.*, 2019 WL 4023562 (W.D.N.Y. Aug. 27, 2019)................... 7

*Kamdem-Ouaffo v. Pepsico, Inc.,* 314 F.R.D. 130 (S.D.N.Y. 2016) ...................................... 10, 12

*Macatra B.V. v. Destiny Navigation*, 2010 WL 339774 (S.D.N.Y. Jan. 27, 2010) ...................... 12

*Mason-Mahon v. Flint*, 166 A.D.3d 754 (N.Y. App. Div. 2018) ................................................. 14

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377 (2d Cir. 2006) ................ 10, 11

*NAACP v. New York*, 413 U.S. 345 (1973)................................................................................... 10

*R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238 (2d Cir. 2006) ..................... 7

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2015 WL 4097927 (S.D.N.Y. July 6, 2015)... 16

*Rocha Toussier y Asociados, S.C. v. Rivero*, 184 A.D.2d 397 (1992)...........................................15

*Rudolph v. Hudsons Bay Co.*, 2019 WL 1416986 (S.D.N.Y. Mar. 29, 2019)..............................11

*Schultz v. Reynolds and Newport Ltd*, 1992-93 CILR 59................................................................15

*Steginsky v. Xcelera Inc.*, 741 F.3d 365 (2d Cir. 2014) ..................................................................13

*Svanstrom v. Jonasson*, 1997 CILR 192 ..........................................................................................15

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994).....................................................11

*Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 31 F.3d 89 (2d Cir. 1994)........7

*Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
     922 F.2d 92 (2d Cir. 1990).........................................................................................................7

*Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011) ...............................................................16

*Zabusky & Ors v Virgtel Ltd & Ors* [2012] QCA 107...............................................................15, 16

## Rules & Statutes

Fed. R. Civ. P. 11…………………………………………………………………………….9, 10

Fed. R. Civ. P. 15(a)(2)....................................................................................................................16

Fed. R. Civ. P. Rule 24(a) ..........................................................................................................7, 10

Fed. R. Civ. P. Rule 24(b)...............................................................................................................10

N.Y. Bus. Corp. Law § 626(a)…………………………………………………………....14, 15

Plaintiff Wayne Baliga ("Plaintiff"), by his undersigned counsel, submits this memorandum of law in opposition to the motion to intervene submitted by China AI Capital Limited ("China AI") and its supporting memorandum of law (ECF 127, 129) (collectively as to China AI's motion and memorandum of law, the "Motion").[1]

## PRELIMINARY STATEMENT

This case arises out of a fraud perpetrated by Defendant Shi and his associates against LKM and its shareholders by, *inter alia*, stripping the Company of its value through unlawful transfers of LKM's assets to unknown third parties. As a result of the alleged fraud, Defendant Shi and his associates have extracted nearly all of the value of the Company, harming LKM shareholders in the process, and have caused the Company to get delisted from the NYSE. By China AI's present Motion, Defendant Shi and his associates are, in all likelihood, once again committing fraud. This time, however, it appears that Defendant Shi's fraud is on LKM shareholders and the Court.

That Defendant Shi and China AI are colluding to perpetuate a fraud has been demonstrated by facts set forth in the Receiver's May 2, 2020 letter to the Court (the "Receiver's Letter"). Indeed, the Receiver's Letter sets forth disturbing facts that support the notion that China AI and Shi are, if not one in the same, then closely related.

And yet, ironically, by its present Motion, China AI seeks to intervene as a plaintiff here. Indeed, China AI maintains that it is Plaintiff who cannot adequately represent the interests of LKM and its shareholders. Not so. China AI has failed to meet its burden for demonstrating why intervention should be ordered here. Its arguments are unavailing.

---

[1] All capitalized terms not otherwise defined herein have the same meaning ascribed to them in the First Amended Complaint ("FAC"). ECF 68. "¶__" are references to the paragraphs of the FAC. Citations to "China AI. Br. __" are to China AI's Memorandum of Law In Support Of Motion To Intervene. ECF 129. "Ex. __" are references to exhibits attached to the Declaration of Jake Nachmani, filed contemporaneously with this brief. Unless otherwise noted, all emphasis is added and all internal quotations and citations are omitted.

*First,* if China AI is either an alter ego or an affiliate of Shi's, it can have no legitimate interest as an intervenor. Indeed, China AI's interest may very well be that of Shi's – diametrically opposed to that of the Company's, LKM shareholders', and Plaintiff Baliga's. That significant questions can be raised about China AI's identity, its relationship to Shi, and its real interests in this action demands that China AI's Motion be denied.

*Second*, China AI's Motion is untimely, coming fifteen months after China AI had notice of this action – and even more delayed, given China AI's constructive notice.

*Third*, and contrary to China AI's contentions, Plaintiff has standing here. The FAC alleges both direct and derivative claims; Plaintiff has standing to bring all of these claims, and China AI fails to challenge Plaintiff's right to sue LKM directly. Moreover, the Cayman Island law requiring a plaintiff to convert American Depository Shares ("ADS") to common shares is a procedural rule, which, accordingly, New York courts are under no obligation to follow – further establishing Plaintiff's standing. Additionally, recent caselaw analyzing Cayman Island law and English common law recognizes the inequity and dangerous results of holding otherwise.

Accordingly, and for all the reasons set forth herein, China AI's Motion should be denied.

## SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff commenced this action in December 2018, alleging that Defendant Shi and other LKM directors committed fraud and various breaches of fiduciary duties, including directing fraudulent transfers of LKM assets to third parties for no consideration and with no Board or shareholder approval. ECF 1 at ¶¶17-21, 26-31. A Receiver has been appointed by the Court. ECF 26. Defendant Shi filed a motion to dismiss (ECF 35), and that motion has been decided. ECF 64. Plaintiff then filed the FAC. ECF 68. Since the filing of the FAC, Defendant Shi has actively avoided being served under Hague Convention procedures, and, as a result, in October

2019, Plaintiff requested that the Court grant Plaintiff's application to allow for alternative service on Shi.  ECF 87, 104.  Shi opposed Plaintiff's motion for alternative service.  ECF 110.[2]  Merely two days after Shi's opposition, and approaching a year after the commencement of this action, China AI appeared in this matter and notified the Court of its intention to intervene.  ECF 111.  Shi did not oppose that.  ECF 114.  Nearly five months later and 15 months after the commencement of this action, China AI moved to intervene.  ECF 127.

Between China AI's first notifying the Court of its intention to intervene on November 1, 2019 and the date of this filing, the Receiver revealed critical and disturbing facts concerning China AI and its relationship to Defendant Shi.  For example, on November 15, 2019 (endorsed by the Court on November 22, 2019), the Receiver notified the Court of significant issues raised by China AI's intervention.  ECF 115.  Notwithstanding that the identity of the entity seeking to intervene was initially set forth as "AI Capital China," by its November 15 letter, the Receiver informed the Court that it would be investigating China AI, as the Receiver suspected that China AI was an entity closely related to Defendant Shi and that a July 2018 transaction involving the issuance of LKM shares to China AI had a fraudulent purpose.  ECF 115.  The Receiver informed the Court that it would continue to investigate these matters.  ECF 115.

The Receiver continued its investigation, and, on May 2, 2020, by the Receiver's Letter, the Receiver provided the Court with newly uncovered information that directly concerns this Motion and the Court's administration of justice.  Ex. 1.  The Receiver's Letter and its supporting documentation shed light on the undisclosed close relationship between China AI and Defendant Shi and the fraud which China AI and Defendant Shi are potentially attempting on this Court by China AI's Motion.

---

[2] The Court has ordered Shi to consent to the Court's jurisdiction, such that he waives service of process, or demonstrate by a "persuasive showing" why he should be able to proceed as an amicus curiae.  ECF 140.

Pursuant to a transaction announced by LKM on July 19, 2018, China AI agreed to pay LKM $20 million to acquire over 70,000,000 Class B shares of LKM (the "Class B Shares Transaction").  Ex. 1 at 2-3.  Evidence demonstrates that this transaction was effectuated and that China AI came into possession of these shares.  In fact, based on LKM's shareholder registry dated May 4, 2020 (the "Shareholder Registry"), China AI still retains its 70,175,439 Class B shares.  Ex. 2 at 7.

The Class B Shares Transaction strongly suggests that China AI is either an alter ego or an affiliate of Shi's.  Notably, nearly two years after the Class B Shares Transaction, China AI has paid at most only half of what it owes to LKM for these shares.  Ex. 1 at 3; Ex. 2 at 7.  Importantly, Class B shares confer significant voting power; each Class B share holds ten times the voting power of a Class A common share of LKM.  Ex. 1 at 2.  As a result of the Class B Shares Transaction, China AI was able to place its two principals, Yu "Bruson" Li ("Li") and "Larry" Chi ("Chi"), on LKM's board of directors (the "Board"), gaining significant control of the Board as a result.  Ex. 1 at 2.  Prior to the Class B Shares Transaction, Li and Chi were both close associates of Defendant Shi.  Additionally, LKM hid the Class B Shares Transaction from its counsel at the time, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps"), and, when Skadden Arps learned of the Class B Shares Transaction, the firm expressed that the Class B Shares Transaction had no legitimate purpose.   Ex 1. at 3.

Additional evidence uncovered by the Receiver strongly suggests an alter ego/affiliate relationship between Shi and China AI.  This evidence includes, but is not limited to that:

- Li, who held 50% of the shares of China AI at the time of the Class B Shares Transaction and subsequently became its sole shareholder, was Vice Chairman of LKM from 2010 to 2015.  Ex. 1 at 2.

- Pursuant to the Class B Shares Transaction, Li and Chi, through China AI, became the owners of $20 million of Class B LKM shares, and, in connection

with the significant voting power conferred to Class B shares, each became members of LKM's Board.  Ex. 1 at 2, 3.  Li remains an LKM Board member.

- Prior to the Class B Shares Transaction, Shi had invested in HH-Medic, Inc. ("HH Medic"), a Cayman Island company operating in Beijing and founded by Li, using LKM funds. LKM currently owns over 11 percent of HH-Medic's shares.  Ex. 1 at 2, 3.

- A portion of the funds paid to LKM in connection with the Class B Shares transaction was paid for by HH Medic.  Ex. 1 at 3.

- LKM had no legitimate need for the $20 million investment at the time of the Class B Shares Transaction.  Ex. 1 at 2, 3.

- After Skadden Arps learned of the Class B Shares Transaction, the firm resigned as LKM's counsel.  Ex. 1 at 3.

- China AI has never paid in full for these shares; $10 million of the $20 million remain outstanding according to LKM's Shareholder Registry.  Ex. 1. at 3; Ex. 2 at 7.

- On the same day as the Class B Shares Transaction, July 19, 2018, China AI paid LKM $5 million; however, that same day, China AI wired approximately $10 million – the amount which China AI is said to have paid for its Class B shares – to a bank account in Luxembourg.  Ex. 1 at 3.

- On July 22, 2019, the very day Shi was personally served with the summons and FAC while in China, Shi informed the agent of the Receiver in China that he was planning to frustrate the Receiver's efforts by taking action in this Court.  Ex. 1 at 4.

- In connection with Plaintiff's motion for alternative service (ECF 104), and only two days after Shi submitted a brief opposing Plaintiff's motion for alternative service (ECF 110), China AI appeared for the first time in this action and moved to intervene.  ECF 111.

And yet, despite the ties between China AI and Defendant Shi, China AI has sought to intervene in this matter, attempting to replace Baliga with itself as the plaintiff.  In other words, by China AI's Motion, Shi or his affiliate is potentially seeking to replace Baliga and purportedly sue Shi for the misconduct which the FAC alleges he committed against LKM and its shareholders.  It strains credulity to believe that Shi is not behind this, that this is not a fraudulent attempt to hijack

this litigation, and that China AI, if given the opportunity, would earnestly prosecute this matter against the very person who in all likelihood controls it.

Neither China AI nor Shi has ever disclosed this relationship to the Court.  Quite the opposite actually, as both China AI and Shi have represented that there is nothing improper about China AI's seeking to intervene.  China AI maintains that it is an LKM shareholder who, on behalf of the Company, can adequately protect the interests of all LKM shareholders.  China AI. Br. at 7.  Unsurprisingly, Shi did not object to China AI's intention to intervene.  ECF No. 114.  Specifically, Shi stated, "Plaintiff has not submitted any admissible evidence to dispute China AI's claims of share ownership and Mr. Shi is not aware of any … China AI is not a 'sham entity' set up by Mr. Shi and Plaintiff has failed to submit any admissible evidence to show otherwise."  ECF 114.

The evidence set forth in the Receiver's Letter gives rise to a number of critical questions about China AI and Defendant Shi that include but are not limited to (i) who and what is China AI; (ii) who controls China AI; (iii) what is China AI's past and present relationship to Defendant Shi; (iv) what happened to the remaining $10 million that China AI owed to LKM in connection with the Class B Shares Transaction; (v) why was China AI permitted to not pay in full for its Class B shares; and (vi) on the same day of the Class B Shares transaction, why did LKM wire approximately $10 million to a bank account in Luxembourg – and who owns this account.

These questions go directly to China AI's interest as an intervenor and whether China AI has honestly disclosed its true interest in this action.  That there exists a compelling basis to ask these questions requires a denial of China AI's motion.  The risk that China AI and Defendant Shi are colluding to commit fraud on the Court is simply too great.

## **ARGUMENT**

On a motion to intervene under Rule 24(a) of Federal Rules of Civil Procedure ("Rule 24(a)"), the movant bears the burden at all times to prove it is entitled to intervene as a right. *Floyd v. City of New York*, 302 F.R.D. 69, 83 (S.D.N.Y), *aff'd in part, appeal dismissed in part*, 770 F.2d 1051 (2d Cir. 2014). In order to intervene as a matter of right under Rule 24(a), an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003). Moreover, the "interest" asserted must be "direct," as opposed to "contingent." *Greenidge v. Allstate Ins. Co.*, 82 F. App'x 728, 730 (2d Cir. 2003). Failure to satisfy any one of these requirements is a sufficient reason to deny the application. *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006).

## I.   CHINA AI HAS NO RIGHT TO INTERVENE, GIVEN ITS UNDISCLOSED RELATIONSHIP WITH DEFENDANT SHI AND THE RISK THAT INTERVENTION MAY RESULT IN A FRAUD ON THE COURT

In order to intervene as a right, a proposed intervenor must have an interest in the action that is direct, substantial, and legally protectable. *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). A proposed intervenor must demonstrate "why intervention is required to protect [its] interests, as distinguished from exercising [its] rights as objectors under Rule 23.1." *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 2012 WL 1674299, at *3 (S.D.N.Y. May 14, 2012). The interests of party's alter ego are imputed to the party. *See Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 31 F.3d 89, 102 (2d Cir. 1994); *Izzo Golf Inc. v. King Par Golf*

7

*Inc.*, 2019 WL 4023562, at *5 (W.D.N.Y. Aug. 27, 2019) (on motion to intervene, alter ego of party and party were determined to have the same interests).

China AI has failed to meet its burden of demonstrating that it has an interest in this action that is distinct from that of Defendant Shi. Based on the findings in the Receiver's Letter, China AI's interest in this action is likely identical to Shi's. Indeed, the Receiver's findings strongly suggest that China AI's intervention is a fraudulent attempt to hijack this litigation for the benefit of Defendant Shi and to the detriment of LKM and its shareholders. This evidence includes but is not limited to that:

- Li, one of China AI's principal shareholders at the time of the Class B Transaction, was ***Vice Chairman of LKM from 2010 to 2015***. Ex. 1 at 2.

- Pursuant to the Class B Shares Transaction, Li and Chi became the owners of $20 million of Class B LKM shares, and, in connection with the significant voting power conferred to them by their Class B shares, each became members of LKM's Board. Ex. 1 at 2, 3. ***Li is still a member of LKM's Board***.

- Prior to the Class B Shares Transaction, Shi had invested in HH-Medic, a Cayman Island company founded by Li, ***using LKM funds***. LKM currently owns over 11 percent of HH-Medic's shares. Ex. 1 at 2.

- A portion of the funds paid to LKM in connection with the Class B Shares transaction was ***paid for by HH Medic.*** Ex. 1. at 3.

- ***LKM had no need for the $20 million China AI investment*** at the time of the Class B Shares Transaction. Ex. 1 at 2, 3.

- ***LKM did not tell Skadden Arps about the Class B Shares Transaction***, and, when Skadden Arps learned about it, the firm objected to it and ***expressed that the transaction lacked any legitimate business purpose***. Ex. 1 at 3.

- ***China AI never paid in full for these shares***; $10 million of the $20 million remain outstanding. Ex. 1 at 2-3.

- ***On the same day as the Class B Shares Transaction***, China AI paid LKM $5 million, but ***China AI wired approximately $10 million – the amount which China AI is said to have paid for its Class B shares – to a bank account in Luxembourg***. Ex. 1 at 3.

- On July 22, 2019, the very day Shi was served with the summons and FAC, ***Shi informed the Receiver's agent in China that he was planning to frustrate the Receiver's efforts by taking action in this Court.***  Ex. 1 at 4.

- ***Only two days*** after Shi submitted a brief opposing Plaintiff's motion for alternative service (ECF 110), ***China AI appeared*** in this action and moved to intervene.  ECF 111; Ex. 1 at 4.

- ***Shi did not object China AI's motion to intervene***, maintaining purportedly that "China AI is not a 'sham entity.'"  ECF 114; Ex. 1 at 4.

In light of these significant connections between Shi and China AI, it is at minimum highly probable that China AI is an alter ego or an affiliate of Shi's.  If that is the case, then, by China AI's Motion, Shi, with the collusion of China AI, is seeking to replace Baliga with an instrument of his own control.

Such a tactic makes China AI an improper intervenor.  Indeed, that significant questions exist concerning, *inter alia*, who and what is China AI, who controls China AI, the nature and scope of China AI's past and present relationship with Shi, and why China AI was allowed to get away with not paying in full for its Class B shares, all directly relate to China AI's actual and potentially fraudulent interest as an intervenor in this action.  Indeed, if China AI's Motion were to be granted, there is reason to suspect that China AI would attempt to swiftly and voluntarily dismiss this action or significantly frustrate the Receivership's efforts to effectively manage the affairs of LKM.

Moreover, while the very basis for these questions should automatically invalidate China AI's right to intervene, China AI and Shi should be required to demonstrate who China AI really is.  Indeed, the significant indicia of impropriety here warrants a full disclosure of China AI's past and present relationship to LKM and Shi.[3]

---

[3] If upon China AI's providing this information to the Court it becomes evident that China AI is an alter ego or affiliate of Shi's, such an intentional material omission could subject China AI and Shi – as well as their attorneys – to sanctions under both Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") and the

## II.   CHINA AI HAS OTHERWISE FAILED TO ESTABLISH ITS RIGHT TO INTERVENE

Notwithstanding the potential fraudulent intent at stake here, China AI's Motion fails for at least two additional reasons: (i) China AI's Motion is untimely; and (ii) China AI cannot establish that Plaintiff will not protect the interest of LKM shareholders.  Each of these reasons provides an independent basis for denying China AI's Motion.

### A.   China AI's Motion Is Untimely

If a motion to intervene is untimely, it must be denied.  *NAACP v. New York,* 413 U.S. 345, 365 (1973) ("Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely, intervention must be denied."); *Chevron Corp. v. Donziger*, 2013 WL 150006, at *2 (S.D.N.Y. Jan. 14, 2013) (noting that "untimeliness of a motion to intervene is alone sufficient to warrant denial of the request to intervene as of right.").  Rule 24(a) requires courts to measure timeliness from the moment when the applicant had actual or constructive notice of its unrepresented interest.  *Kamdem-Ouaffo v. Pepsico, Inc.,* 314 F.R.D. 130, 135 (S.D.N.Y. 2016). The filing of a lawsuit addressing the proposed intervenor's interests triggers notice.  *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) (finding

---

Court's inherent powers to sanction parties.  Indeed, misrepresenting the identity of a potential plaintiff-intervenor when that intervenor is in fact an agent of a defendant would be a scheme calculated to interfere with the judicial system's ability to impartially adjudicate this case and would thereby constitute a fraud on the Court. *See Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016) ("the essence of a fraud upon the Court is when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process"); *see also Galin v. Hamada*, 283 F. Supp. 3d 189, 203 (S.D.N.Y. 2017) (holding that Rule 11 sanctions were warranted against party and party's counsel because they knew that claims on a dispositive issue were "utterly lacking in support; quoting "Rule 11 sanctions are appropriate where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that [the claim] was groundless.").

motion to intervene untimely based, in part, on the fact that the related litigation's "complaint and other filings ... are publicly available for anyone to access"; citing cases).

Here, China AI had notice of this lawsuit since the day it was filed in December 2018.  *See* ECF 1.  In fact, it knew of the allegations even prior to the commencement of this action, since the Directors of China AI sat on the Board of LKM when the Plaintiff sent requisition and demand letters to the Board in November 2018.  *See* ECF 113.  Furthermore, LKM's entire Board, including China AI's Directors, were aware of and informed about this action and the Receivership Order that this Court issued.  *See* ECF 113.  Moreover, after the Court on November 26, 2019 directed the parties to brief this intervention issue before Magistrate Judge Freeman (*see* ECF 116-17), China AI delayed ***another three months*** before addressing this issue again (ECF 122-24) and ***four months*** before it had a non-defective motion on the docket.  ECF 137.  In total, China AI delayed ***15 months after the commencement of this action*** and ***sixteen months after learning about this action's pendency*** before filing this Motion.

Accordingly, China AI's Motion is untimely, as the Second Circuit has routinely denied motions to intervene when they are made in periods of time far shorter than at issue here.  *See MasterCard Int'l Inc.*, 471 F.3d at 390 (finding a delay of less than one year untimely for intervention purposes); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198–99 (2d Cir. 2000) (eight-month delay rendered a motion to intervene untimely); *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 71 (2d Cir. 1994) (affirming denial of as-of-right and permissive intervention where petitioner had constructive knowledge of its interest eight months before it moved to intervene).[4]

---

[4] Same as to district courts in the Southern District of New York. *See, e.g. Ferguson v. Ruane Cuniff & Goldfarb Inc.*, 2019 WL 1434435, at *4 (S.D.N.Y. Mar. 29, 2019) (nine-month delay untimely); *Rudolph v. Hudsons Bay Co.*, 2019 WL 1416986, at *3 (S.D.N.Y. Mar. 29, 2019) (same); *Andrews v. Sony/ATV Music Publ'g, LLC*, 2017 WL 770614, at *9 (S.D.N.Y. Feb. 24, 2017) (motion was untimely when it was filed four months after the filing of operative

Additionally, China AI has to date failed to provide any explanation whatsoever for this delay.  It cannot – further demonstrating the untimeliness of its motion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (finding motion to intervene untimely where the proposed intervenor "offer[ed] no explanation for waiting to file his intervention motion"); *Andrews*, 2017 WL 770614 at *10 (motion to intervene denied where proposed intervenor "offer[ed] no compelling justification for its delay"); *Kamdem-Ouaffo*, 314 F.R.D. at 135 ("Plaintiff provides no explanation to excuse his delay in filing, thereby underscoring the untimeliness of the Motion.").

Moreover, this action is sufficiently far along to warrant holding China AI's Motion untimely.  Indeed, Defendants' motions to dismiss have already been adjudicated.  *See Rudolph*, 2019 WL 1416986 at *2 (motion to intervene was untimely because "[t]here is little doubt that the proposed intervenors have been aware of the pendency of this action since its inception but have waited until the filing of a fully-briefed motion to dismiss to speak up.").[5]

### B.  Plaintiff Adequately Protects LKM Shareholders' Interests

Where there is an identity of interest between a party and a movant seeking to intervene, the movant must rebut the presumption of adequate representation by the party already in the action.  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179–80 (2d Cir. 2001).  Because

---

complaint; at time of application to intervene, proposed intervenor had constructive notice for approximately a year); *Chevron Corp.*, 2013 WL 150006 at *2 (11-month delay untimely); *Macatra B.V. v. Destiny Navigation*, 2010 WL 339774, at *2 (S.D.N.Y. Jan. 27, 2010) (12-month delay was "unreasonable and [would] unduly prejudice[] plaintiff").

[5] China AI maintains that its Motion is purportedly timely because service of process has not been effectuated upon Shi.  China AI Br. at 7.  This is nonsense.  Plaintiff has been vigilantly attempting to serve Shi since the onset of this action.  Shi was served the original summons and complaint in December 2018.  ECF 17. And, in July 2019, Defendant Shi was personally served with the FAC in China.  ECF 86.  However, effective service of process under the Hague Convention has been frustrated because Defendant Shi is "deliberately and carefully concealing his whereabouts" (ECF 104) and has the means to indefinitely delay being served, prompting Plaintiff in July 2019 to request that the Court rule that service has already been effectuated on Shi or allow for alternative service of process on him.  ECF Nos. 87, 104.  Indeed, that discovery has not commenced is a result of Shi's actively avoiding being served. *See generally* ECF 104-05.

shareholders in a derivative matter share an identity of interest almost by definition, since the true party in interest is the corporation itself, the movant bears the burden of establishing that the plaintiff will not adequately represent the interest of the corporation. *In re Ambac Fin. Grp., Inc., Derivative Litig.*, 257 F.R.D. 390, 393 (S.D.N.Y. 2009).  Accordingly, on a motion to intervene, the movant must make a "rigorous showing of inadequacy," established by a showing of "collusion, adversity of interest, nonfeasance, or incompetence" of the existing named party. *Ferguson*,  2019 WL 1434435 at *4.

China AI has failed to meet its burden of establishing Plaintiff's purported inadequate representation of LKM's interests.  Instead, China AI maintains that Plaintiff does not have standing to sue derivatively on behalf of the Company because Plaintiff, as a holder of ADS, is not a "shareholder" of LKM.  China AI Br. at 1-2, 7-8.  Notwithstanding that China AI's argument has no bearing on Plaintiff's purported "collusion, adversity of interest, nonfeasance, or incompetence," China AI's argument fails.

*First*, China AI's argument misses the mark.  Although the Complaint is styled as a derivative action, the FAC asserts numerous direct claims under common law and the federal securities laws. *See, e.g.*, ¶¶43-55.  Plaintiff has standing to bring these claims in New York, and China AI has failed to demonstrate otherwise. *See Steginsky v. Xcelera Inc.*, 741 F.3d 365, 372 (2d Cir. 2014) (shareholder of Cayman Island company alleged claims under federal securities laws and common law).

*Second*, under New York law, Plaintiff has derivative standing.  Indeed, China AI's contention that Plaintiff did not convert his ADS to LKM shares gives rise to a procedural issue governed by New York law, not a substantive one, and thus is no bar to Plaintiff's standing.  Whereas substantive issues of corporate law are governed by the law of incorporation – here as to

13

LKM, the Cayman Islands – procedural rules are governed by the law of the forum – here, New York. *Davis v. Scottish Re Grp. Ltd.*, 30 N.Y. 3d 247, 252 (2017).  *Davis* is instructive as to the issue of Plaintiff's standing here.

In *Davis*, defendants argued that the plaintiff there purportedly did not have standing because the plaintiff failed to comply with order 15, rule 12A of the Cayman Islands Grand Court Rules ("Rule 12A"), requiring a derivative plaintiff to seek leave of the Cayman Islands Grand Court before bringing a derivative suit.  *See id.* at 250.  Analyzing the issue, the Court of Appeals disagreed and determined that, because the law requiring a Cayman Island derivative plaintiff to go through the administrative effort of seeking leave of a Cayman Island court to file a derivative action was a procedural rule, not a substantive one, New York law and not Cayman Island law applied to plaintiff's standing.  *See id.* at 257.   Indeed, the *Davis* court emphasized that "New York courts have the authority to employ New York procedures to decide whether a New York plaintiff has standing to bring a derivative claim against a Cayman Islands company."  *Id.* at 248.

This rationale has been subsequently applied since *Davis*. For example in *Mason-Mahon v. Flint*, 166 A.D.3d 754  (N.Y. App. Div. 2018), the court there held that a derivative plaintiff's lack of standing pursuant to the laws of the United Kingdom was no bar to plaintiff's standing in New York where plaintiff, suing derivatively on behalf of a United Kingdom company, brought the action in New York.  *See Mason-Mahon*, 166 A.D.3d at 756.

Such is the case here.  The Cayman Island law purportedly requiring the conversion of ADS to common shares of a company before a plaintiff can bring a derivative suit raises the same procedural – not substantive – concerns that the courts in *Davis* and *Mason-Mahon* determined were no bar to those plaintiffs' bringing a derivative action in New York.  Accordingly, New York law, not Cayman Island Law, should apply to the technical issue of Plaintiff's retaining ADS,

conferring Plaintiff's standing.  *See* N.Y. Bus. Corp. Law § 626(a) ("An action may be brought in

the right of a domestic or foreign corporation to procure a judgment in its favor, by a holder of

shares or of voting trust certificates of the corporation or of a beneficial interest in such shares or

certificates."); *Rocha Toussier y Asociados, S.C. v. Rivero*, 184 A.D.2d 397 (1992) (that plaintiff

was beneficial owner of shares conferred standing under N.Y. Bus. Corp. Law § 626).

   *Third,* to the extent that Plaintiff's standing is governed by Cayman Island law, which

China AI seeks to apply to the issue of standing, Cayman Island caselaw justifies Plaintiff's

standing here.  For example, the Court of Appeal of the Cayman Islands in *Schultz v. Reynolds and*

*Newport Limited*, explained that the beneficial owner of shares in a company whose name did not

appear on the register of its members could in certain situations bring a derivative action on behalf

of the company to claim remedies for harm done to the company.  *See Schultz v. Reynolds and*

*Newport Ltd*, 1992-93 CILR 59.  Ex. 3.   Indeed, in a later decision, the Court of Appeal of the

Cayman Islands provided a clear rationale for this ruling, stating that:

> It does not seem logical to contend that the right of a person holding an
> equitable interest in shares should depend on the nature of the equitable
> interest and that the equitable interest of a person who has contracted to
> purchase is distinguishable from that of a shareholder who has opted to hold
> shares in the name of a nominee, so that in the one situation the equitable
> owner could file a derivative action and in the other situation he could not.

*Svanstrom v. Jonasson*, 1997 CILR 192 (dismissed on grounds not applicable here).   Ex. 4.

   Likewise, more recent decisions analyzing this issue under Cayman Island law and English

common law principles have held that a rule prohibiting beneficial owners of shares from suing

derivatively would "not be sensible" and works an "injustice," and that, as a practical matter,

forcing those beneficial owners to transform their shares could "incur expense and delay which

might … diminish[] the value of the derivative action." *Zabusky & Ors v Virgtel Ltd & Ors* [2012]

QCA 107.  Ex. 5.  It could also yield perverse results: "a shareholder with an indisputable and

undisputed [equitable] title to shares who has not been registered could not sue to protect the company even if he were the only person who had a reason to bring the action. Such a rule has little to recommend it." *Id.* As such, prohibiting a beneficial owner from bringing a derivative suit "is capable of causing such mischief … that it should not be accepted here, if it exists elsewhere." *Id.* This rationale bears significant weight here, where ADS were the only LKM securities available to Plaintiff and the process of LKM share conversion was unduly burdensome and expensive.[6]

Finally, to the extent the Court has any concerns about Plaintiff's standing, Plaintiff will seek leave of the Court to file a Second Amended Complaint. By this amended pleading, Plaintiff would remove any derivative claims and allege direct claims only, as well as provide additional allegations concerning Defendant Shi's continued fraud against LKM shareholders, uncovered as a result of the Receiver's ongoing investigations. As such, China AI's argument concerning Plaintiff's purported lack of standing is moot.[7]

## **CONCLUSION**

For all the foregoing reasons, China AI's motion to intervene should be denied in its entirety.

---

[6] *See* Ex. 6 at 45-46 (explaining the burdensome process and expense associated with converting ADSs into shares of LKM).

[7] *See* Fed. R. Civ. P. 15(a)(2) "[t]he court should freely give leave" to a party to amend its complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Williams v. Citigroup Inc.,* 659 F.3d 208, 213 (2d Cir. 2011) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits"); *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2015 WL 4097927, at *8 (S.D.N.Y. July 6, 2015) (leave to file second amended complaint in derivative action granted because correcting "deficiencies in the complaint is a legitimate reason for seeking to amend a pleading under the liberal standard of Rule 15(a).")

Dated: May 4, 2020

New York, New York

SEIDEN LAW GROUP LLP

/s/ Jake Nachmani
Jake Nachmani
469 Seventh Avenue, Fifth Fl.
New York, NY 10018
jnachmani@seidenlegal.com
(212) 523-0686

*Counsel for Plaintiff Baliga*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsels of record.

Dated: May 4, 2020                                       SEIDEN LAW GROUP LLP


                                                         /s/ Jake Nachmani
                                                             Jake Nachmani