

# EXHIBIT 4

**[1997 CILR 192]**

**SVANSTROM and NINE OTHERS v. JONASSON**

COURT OF APPEAL (Zacca, P., Georges and Kerr, JJ.A.): April 4th, 1997

*Companies—legal proceedings—action in respect of corporate wrong—only shareholders on register may bring action under exception to rule in Foss v. Harbottle against controlling interests for loss caused to company—no locus standi for beneficial owners even if registered shareholders joined as defendants*

The respondent brought an action against the first four appellants in the Grand Court to recover damages for losses caused to his companies by breaches of their fiduciary duties.

The respondent was the beneficial owner of a minority shareholding in the seventh and eighth appellant companies. The first four appellants were directors of the companies and together held the beneficial interest in a majority of the shares of both. The entire issued share capital of both companies was registered in the name of the ninth appellant.

The respondent claimed on behalf of himself and other beneficial owners of minor shareholdings in the companies for loss resulting from the sale of company assets by the first four appellants at an undervalue and from the loss of contracts which the directors diverted to other companies in which the four of them held substantial interests.

All the appellants except the ninth and tenth appellants—the nominee shareholders representing, respectively, the first eight appellants and the respondent—filed a summons seeking to have the respondent's claim struck out on the ground, *inter alia*, that he had no *locus standi* to bring the action.

The Grand Court dismissed the summons on the basis that the respondent had *locus standi* to bring his action on behalf of each company in respect of a wrong done to it, under an exception to the general rule that the company itself must be the plaintiff, allowing a minority shareholder to complain of fraud on the part of the controlling majority. He relied on Cayman precedent for the proposition that, provided that registered shareholders were joined as defendants, a person such as the respondent, for whom those nominees held on trust, could bring such an action.

On appeal the first eight appellants submitted that (a) the trial judge had erred in his construction of the Cayman case law, since the issue of whether a beneficial owner of shares could bring a derivative action on behalf of the company had not yet been determined by the Cayman courts; (b) the exception to the common law principle that the company

---



itself was the proper plaintiff to bring an action based on a wrong perpetrated against it applied only to aggrieved minority shareholders who would otherwise be denied justice by the fraudulent majority's refusal to sue on the company's behalf; and (c) since the respondent and his fellow beneficial owners were not on the register of company shareholders, and since under art. 11 of each company's articles of association the company was not bound to recognize any equitable interest in its shares, they did not constitute an aggrieved minority with *locus standi* to bring an action.

The respondent submitted in reply that (a) authority both in England and the Cayman Islands showed that the beneficial owner of a minority shareholding had *locus standi* to bring an action on behalf of the company if he alleged fraud and the wrongdoers were in control of the company; (b) any other interpretation of the exception to the general common law rule would enable the first four appellants to avoid being held accountable in the courts to all those with substantial beneficial interests in the two companies; and (c) the trial judge had therefore correctly dismissed the appellant's summons to strike out his action against them.

**Held,** striking out the respondent's action:

(1) The respondent, as beneficial owner of a minority interest in the seventh and eighth appellants, had no *locus standi* to bring an action on behalf of the companies against their directors. The proper plaintiff in such cases was the company itself, subject to well-recognized exceptions, the relevant one in this case being where a minority shareholder wished to allege fraud by the controlling members resulting in loss to the company (page 200, line 34 – page 201, line 6; page 205, line 44 – page 206, line 17).

(2) Since the respondent was not a registered member of either company, however, he did not fall within this general exception, and there was no authority to the contrary in either England or the Cayman Islands. In the absence of an arrangement between the nominee shareholder and the beneficial owners of the companies' shares whereby the nominee could be compelled to bring proceedings on behalf of the companies, the respondent had no remedy. He could not succeed merely by joining the registered shareholder as a defendant (page 197, line 31 – page 198, line 21; page 202, lines 1–16; page 203, lines 18–44; page 207, lines 17–26; page 208, lines 27–43).

(3) Moreover, the common law principle that a company was not obliged to recognize a trust affecting its shares was reflected in each company's articles of association, which stated that the company was not bound to recognize any equitable interest but would regard a registered shareholder as being absolutely entitled. For this reason too the respondent had no standing to bring the proceedings (page 199, lines 4–5; page 200, lines 19–33; page 203, lines 29–34; page 207, line 41 – page 208, line 14).

---

1997 CILR 194

**Cases cited:**

(1) *Bagshaw* v. *Eastern Union Ry. Co.* (1849), 7 Hare 114; 68 E.R. 46; 18 L.J. Ch. 193, distinguished.
(2) *Binney* v. *Ince Hall Coal & Cannel Co.* (1866), 35 L.J. Ch 363; 14 L.T. 392, distinguished.
(3) *Edwards* v. *Halliwell*, [1950] 2 All E.R. 1064; (1950), 94 Sol. Jo. 803, *dicta* of Jenkins, L.J. applied.
(4) *Foss* v. *Harbottle* (1843), 2 Hare 461; 67 E.R. 189 applied.
(5) *Fulloon* v. *Radley* (1991), 9 A.C.L.C. 1434; [1992] 2 Qd. R. 290, observations of Master White applied.
(6) *Great W. Ry. Co.* v. *Rushout* (1852), 5 De G. & Sm. 290; 64 E.R. 1121, not followed.
(7) *Hooker Invs. Pty. Ltd.* v. *Email Ltd.* (1986), 10 A.C.L.R. 443, *dicta* of Young, J. applied.
(8) *Maas* v. *McIntosh* (1928), 28 S.R. (N.S.W.) 441; 45 W.N. (N.S.W.) 107, *dicta* of Harvey, C.J. in Eq. applied.
(9) *Perkins, In re, ex p. Mexican Sta. Barbara Mining Co.* (1890), 24 Q.B.D 613, followed.
(10) *Prudential Assur. Co. Ltd.* v. *Newman Indus. Ltd. (No. 2)*, [1982] Ch. 204 ; [1982] 1 All E.R. 354, applied.
(11) *Schultz* v. *Reynolds*, 1992-93 CILR 59, explained.
(12) *Stena Fin. BV* v. *Sea Containers Ltd.*, [1989] L.R.C. (Comm.) 641.

**Legislation construed:**

Companies Law (1995 Revision) (Laws of the Cayman Islands, 1963, *cap.* 22, revised 1995), s.37: The relevant parts of this section are set out at page 200, line 40 – page 201, line 2.

*A. Bueno, Q.C.* and *D.A. Harris* for the first, seventh and eighth appellants;
*A. Bueno, Q.C.* and *H. St.J. Moses* for the third, fifth and sixth appellants;
*J.A. Leo-Rhynie, Q.C.* and *A. McN. McLaughlin, Jnr.* for the respondents.
The fourth, ninth and tenth appellants did not appear and were not represented.

**GEORGES, J.A.:** The respondent, Mr. Jonasson, is the beneficial owner of 15.11% of the shares in Rio Number Two Ltd. (the seventh appellant) and Rio Number Three Ltd. (the eighth appellant). The first to fourth appellants are the directors of the seventh and eighth appellants and together hold the beneficial interest in 51.02% of these two companies. Campbell Nominees Ltd. ("CNL") is the registered shareholder of the entire shareholdings in the seventh and eighth appellants and was named as the ninth and tenth defendants in the action in relation to its holdings in each of the companies. It entered appearances in the action but thereafter took no further part.

The action is a derivative action. The respondent claims on behalf of



himself and other shareholders of the seventh and eighth appellants (save the first, second, third and fourth appellants) for loss caused to the seventh and eighth appellants when their assets were sold at an undervalue and contracts which they could have secured were diverted to other companies in which the first to fourth appellants held substantial interests. The details of the allegations supporting these claims need not now be canvassed.

The first to eighth defendants filed a summons asking that the action be struck out under r.41 of the Grand Court (Civil Procedure) Rules or under the inherent jurisdiction of the court on two grounds; first, that the respondent did not at the date of the commencement of the action have *locus standi* to bring the action and secondly, that the action was obviously unsustainable against any of the appellants. At the hearing of the summons, arguments were advanced solely to the ground of *locus standi*. The judge dismissed the summons, gave leave to appeal and stayed all further proceedings until the hearing and determination of the appeal.

Both sides agree that the principle has been clearly established in *Foss* v. *Harbottle* (4) that in an action in respect of a wrong to a company, *prima facie*, the proper plaintiff is the company itself. In *Prudential Assur. Co. Ltd.* v. *Newman Indus. Ltd. (No. 2)* (10) the Court of Appeal in England (Cumming-Bruce, Templeman and Brightman, L.JJ.) set out the classic definition of the rule in *Foss* v. *Harbottle* as stated in the judgment of Jenkins, L.J. in *Edwards* v. *Halliwell* (3) as follows ([1982] Ch. at 210-211):

> "(1) The proper plaintiff in an action in respect of a wrong alleged to be done to a corporation is, prima facie, the corporation. (2) Where the alleged wrong is a transaction which might be made binding on the corporation and on all its members by a simple majority of the members, no individual member of the corporation is allowed to maintain an action in respect of that matter because, if the majority confirms the transaction, cadit quaestio; or, if the majority challenges the transaction, there is no valid reason why the company should not sue. (3) There is no room for the operation of the rule if the alleged wrong is ultra vires the corporation, because the majority of members cannot confirm the transaction. (4) There is also no room for the operation of the rule if the transaction complained of could be validly done or sanctioned only by a special resolution or the like, because a simple majority cannot confirm a transaction which requires the concurrence of a greater majority. (5) There is an exception to the rule where what has been done amounts to a fraud and the wrongdoers are themselves in control of the company. In this case the rule is relaxed in favour of the aggrieved minority, who are allowed to bring a minority shareholders' action on behalf of

themselves and all others. The reason for this is that, if they were



denied that right, their grievance could never reach the court because the wrongdoers themselves, being in control, would not allow the company to sue."

The short question which arose for decision was whether the beneficial holder of the shares whose name did not appear on the company's register of shareholders could exercise the right to sue on behalf of the company in the circumstances set out in para. 5 of the passage quoted above.

The trial judge, in reaching his conclusion, held that whatever may be the position in England, the Court of Appeal of the Cayman Islands in *Schultz* v. *Reynolds* (11) had decided that the beneficial owner of shares in a company whose name did not appear on the register of its members could bring a derivative action on behalf of the company to claim remedies for harm done to the company. He concluded his judgment thus:

"However attractive I find Mr. Bueno's arguments, Georges, J.A. in particular stated the proposition that a minority shareholder seeking to bring a derivative action may do so if he falls within the exception to the rule in *Foss* v. *Harbottle* and joins the registered shareholders as defendants if they refuse to take action themselves, with such force that I do not consider that it is for me to say other than that it represents the state of the law in the Cayman Islands at the present time. That being so, I dismiss the application with costs."

Although the consequence will be to increase significantly the length of this judgment, it is necessary to cite fully the passage in the judgment which is stated to express forcefully the conclusion that a beneficial owner of shares whose name does not appear on the register can bring an action under the exception to the rule in *Foss* v. *Harbottle* (4) if the registered owner of the shares is named as defendant. It is to be found in *Schultz* v. *Reynolds* (11) (1992-93 CILR at 76-77):

"It was also contended that even before the rule itself came to be considered, the appellant lacked the status to sue because she was not a member of the company, Newport Ltd. The register of shareholders showed that all the shares in that company were held by CMS. Section 37 of the Companies Law (Revised) identified as members of a company those persons whose names appeared in the register. In *Birch* v. *Sullivan*...the plaintiff had been adjudicated a bankrupt and a trustee in bankruptcy had been appointed. His name still appeared on the register of members of a company in which he held shares. He issued a writ against Sullivan who was a director of the defendant company claiming declarations for misfeasance as a director. The action was stayed so long as the plaintiff remained on the record as the plaintiff. Liberty was granted to have the action dismissed if the trustee in bankruptcy did not apply to be substituted as plaintiff within a fixed time.

The Chief Justice rejected the submission that the appellant had

no *locus standi*. He relied on a statement in *Bagshaw* v. *Eastern*



*Union Ry. Co.*…that the holder of a 'scrip' in a company had an 'inchoate right to become a registered holder of the perpetual stock' and for that reason could sue on its behalf. It was emphasized in that case…that it was not argued that—

> 'the holders of scrip certificates in the perpetual stock had not such an interest in the application of the capital of the company as was necessary to enable them to maintain a bill properly framed, to prevent a misapplication of the capital of the company.'

The only issue was whether such persons could represent both scrip holders and holders of regular stock. The statement was, therefore, *obiter* and was made without the benefit of argument.

There is some further support in *Stena Fin. BV* v. *Sea Containers Ltd.*… In that case, however, the plaintiff had become a registered shareholder by the date of hearing. The authority cited, *Great W. Ry. Co.* v. *Rushout*…, had decided that the beneficial owner of shares could sue if he joined the registered shareholder as a defendant.

In this case, however, there is an additional complication. The plaintiff, though a beneficial owner, is a joint beneficial owner with Dupre. It is clear law that although as between themselves joint tenants and joint owners had separate rights, as against everyone else they were in the position of a single owner. There was absolute unity between them. Together they formed one person and could not commence proceedings without the aid of the other or others. As regards joint shareholders this principle was recently restated by Harman, J. in *Re Exchange Travel (Holdings) Ltd.*…to the effect that—'joint tenants of a share are joint covenanters and can only act together….' This suit is, therefore, not properly constituted in the absence of CMS and Dupre as plaintiffs. Neither would, of course, consent to be joined as plaintiffs. Consequently, they should have been named as defendants."

I do not accept that the passage makes any clear statement that a beneficial owner of shares has *locus standi* to bring a derivative action so long as he joins the registered shareholder as defendant. The opening words of the passage cited make it clear that contentions are being examined rather than propositions of law laid down.

In the second paragraph, a statement in a case on which the Chief Justice (against whose judgment the appeal had been filed) had relied, *Bagshaw* v. *Eastern Union Ry. Co.* (1) was found to be *obiter* and made without the benefit of argument. The case of *Stena Fin. BV* v. *Sea Containers Ltd.* (12) was noted but it was pointed out that by the date of hearing the plaintiff had become a registered shareholder. At that stage *Great W. Ry. Co.* v. *Rushout* (6) is noted and the proposition which it supports set out without comment. Thereafter, the second issue is raised—the complication that a joint beneficial owner had not been

joined. The language then changes:



> "It is clear law that although as between themselves joint tenants and joint owners had separate rights, as against every one else they were in the position of a single owner…. Together they formed one person and could not commence proceedings without the aid of the other or others."

The issue being discussed was the decision of the Chief Justice that the plaintiff had *locus standi*. No conclusion was reached on the applicability of *Great W. Ry. Co.* v. *Rushout*. But even if that case was accepted as applicable in *Schultz*, the registered shareholders had not been joined so that, in any event, even on that authority, the action was not properly constituted. It was not, in the context in which it appears, a positive finding that the action would have been properly constituted had they been joined.

I find Mr. Leo-Rhynie's arguments in support of the construction which the trial judge placed on the passage to be unacceptable, since the passage in question does not support the proposition that the beneficial owner can sue if the registered owner is joined as a defendant. It goes no further than to state that even if the beneficial owner could file a derivative action, the proceedings were not properly constituted because one of the two joint beneficial owners had not been joined. The issue in this case is not covered by a previous authority of this court and is open for determi nation.

*Great W. Ry. Co.* v. *Rushout* (6) undoubtedly supports the proposition that a beneficial owner of shares has the standing to bring a derivative action even though its name does not appear on the company's register of shareholders. The Great Western Railway Co. ("GWR") had filed a derivative action naming as defendant the Oxford, Worcester & Wolverhampton Railway Co. Ltd. ("OWWR") in which it held a substantial number of shares in the hands of trustees whose names appeared on the register of that company. Also named as defendants were the directors of the OWWR and the trustees who held the shares on behalf of the GWR. Counsel for the OWWR took a preliminary objection that the GWR, as beneficial owner of the shares, had no standing to launch the action.

It is significant that counsel for GWR acknowledged, in presenting their arguments, that there might be force in the argument in ordinary cases but that the special rights given to the GWR under its act of incorporation entitled it to complain of the internal management of the OWWR which affected its interest. Parker, V.-C. held that the GWR had an interest to maintain the suit because the shares were held on a valid trust on behalf of the GWR and that they had an interest in what was sought by the bill—namely the protection of the property of the OWWR in which the shares were held. He did go on to add, however, that the Act of Parliament under which the GWR had been incorporated assumed that

the GWR might, in the normal course of events, have had only an



equitable interest in the shares which it held. The GWR was accordingly in precisely the situation which the Act envisaged and did have standing to bring the action to protect the OWWR.

It is a fundamental rule of company law that a company is under no obligation to recognize trusts affecting its shares. In *In re Perkins, ex p. Mexican Sta. Barbara Mining Co.* (9) the company filed a bankruptcy petition against Perkins, the debtor. Perkins had sued Dickey, whose name appeared on the list of shareholders, claiming a declaration that Dickey held the shares in trust for him. He joined the company as a defendant. He succeeded in obtaining the declaration but the action against the company was dismissed with costs. These were taxed at £129 3s. 9d., which was the sum in respect of which the company filed the petition. The value of the shares, the subject of the action, was £23,408. The articles of association of the company gave it a lien on its shares for any debt due to it. Objection was taken to the petition on the ground that since the company had a lien on the shares for the costs due, the company could not file unless it surrendered its security. The objection succeeded before the Registrar but failed on appeal.

Lord Esher, M.R. stated (24 Q.B.D. at 617-618):

> "With regard to the first point, I confess I have had a great desire to overrule it if I could, because to say to a man, 'We admit that you are a cestui que trust of the shares; we admit that the man in whose name they stand is a bare trustee for you; we admit, therefore, that you must ultimately be entitled to shares in our company to a large amount; nevertheless, we have a right to make you bankrupt for a much smaller sum'—does seem to me a very strong thing. But it is said the company have a legal right to do this, because it is necessary for the protection of companies that they should not be bound to recognise trusts affecting their shares. So far as I understand the law, now that I have fully considered it, it does give the company power to do this. Therefore, the first ground of objection to the bankruptcy petition fails, because the first step which the debtor must take is, to shew that he is a cestui que trust of the shares. The law has given the company the right to say, 'We do not care whether you are a cestui que trust or not; if you are, we have the right to take no notice of you.' I agree that is the law, though I think it is hard law; but we have nothing to do with the question of hardship."

Lord Coleridge, C.J. was emphatically of the same view (*ibid.*, at 616)

> "In the first place it seems to me extremely important not to throw any doubt on the principle that companies have nothing whatever to do with the relations between trustees and their cestuis que trust in respect of the shares of the company. If a trustee is on the company's

register as the holder of shares, the relations which he may have



with some other person in respect of the shares are matters with which the company have nothing whatever to do; they can look only to the man whose name is upon the register. It seems to me that, if we were to throw any doubt upon that rule, we should make the carrying on of their business by joint stock companies extremely difficult, and might involve those companies in very serious questions, and the ultimate result would be anything but beneficial to the holders of shares in such companies themselves."

It should be noted that those presenting the bankruptcy petition relied on art. 20 of the articles of association which read (*ibid.*, at 614):

"The company shall have a first and paramount lien on all shares, and on the dividends thereon, for all monies due to, and liabilities subsisting with the company from or on the part of the registered holder or holders thereof, or other the [*sic*] person for the time being entitled thereto as against the company…."

The words "or other the [*sic*] person for the time being entitled thereto as against the company" could have been generously interpreted to include a cestui que trust, but they were not because the company was under no obligation to take notice of trusts. Lord Coleridge, C.J. stated (*ibid.*, at 616) that it was "extremely important not to throw any doubt on the principle that companies have nothing whatever to do with the relations between trustees and their cestuis que trust in respect of the shares of the company." Article 11 of the articles of association of Rio Number Two and Rio Number Three restate this principle:

"Except as required by law, no person shall be recognized by the company as holding any shares upon trust and the company shall not be bound by or be compelled in any way to recognize (even when having notice thereof) any equitable, contingent, future or partial interest in any share or interest in any fractional part of a share or (except only as by the articles or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder or in the case of a share warrant in the bearer of the warrant for the time being."

As has been indicated, the exceptions to the rule in *Foss* v. *Harbottle* (4) confer a right to bring an action on behalf of the company on "the aggrieved minority, who are allowed to bring a minority shareholders' action on behalf of themselves and all others." The only members of the company are its shareholders. Section 37 of the Companies Law (1995 Revision) reads:

"The subscribers of the memorandum of association of any company shall be deemed to have agreed to become members of the company whose memorandum they have subscribed, and upon registration of the company shall be entered as members on the register of members hereinafter mentioned, and every other person

who has agreed to become a member of a company and whose name



is entered on the register of members, shall be deemed to be a member of the company."

The application of these principles would preclude a person who holds a beneficial interest in the shares of a company and whose name does not appear on the register of members from being one of the "aggrieved minority" permitted to bring an action on behalf of the company.

Undoubtedly, the holder of a beneficial interest in shares in a company whose name did not appear on the register was allowed in *Great W. Ry. Co.* v. *Rushout* (6) to bring a derivative action on behalf of the company. The issue is the weight to be attached to that decision, which is plainly not binding on this court. The case is cited once in 7(2) *Halsbury's Laws of England*, 4th ed., para. 1713, at 1259 but not in support of the proposition that a person holding a beneficial interest in the shares of a company has the standing to bring a derivative action. It is cited to support the proposition that all questions arising at a meeting of directors are to be decided by a majority of votes of directors present but such decisions are binding on the minority only if the minority has been allowed an opportunity to make their voice heard and to state their views.

In Pennington, *Company Law*, 7th ed. at 870 (1995) the learned author states:

> "A derivative action may be brought by a person who is entitled to shares or an interest in them but is not registered as the holder of them in the company's register of members; such persons include an equitable mortgagee of shares or the renouncee of a letter of allotment of shares…."

*Great W. Ry. Co.* v. *Rushout* (6) is not cited in support of that proposition. The two cases are *Binney* v. *Ince Hall Coal & Cannel Co.* (2) and *Bagshaw* v. *Eastern Union Ry. Co.* (1). The report of the first case, the facts of which are somewhat complicated, certainly does not indicate that this was a derivative action filed to enforce a right of the company in circumstances in which action could not be taken in the name of the company. By the deed of settlement under which the company was constituted, a particular shareholder, William Lancaster, was granted certain exemptions and accorded privileges as compared with other shareholders. At a general meeting of the company, resolutions were passed which, in Mr. Lancaster's view, infringed these rights. At the general meeting he protested. By then he had assigned his shares by way of mortgage to a trustee for the company and had further charged them by way of equitable mortgage to the plaintiff.

The plaintiff as equitable mortgagee filed a bill against the company to restrain the company from carrying the resolutions into effect. Objection was taken on the ground that the plaintiff had no right to sue—the underlying argument being that he could not interfere with the internal management of the company. Article 142 of the deed of settlement stated

(35 L.J. Ch. at 364): "The company shall not be affected by notice of any



trust relating to any share or shares in the company…" Kindersley, V.-C. stated (*ibid.*, at 368) that that clause—

> "does not preclude a cestui que trust of [shares registered in the name of the trustee] from coming and saying 'Do not pay my trustee the monies as though they belonged to him but pay them to me.' Nor does it preclude the plaintiff from coming to the company and saying 'You are injuring these shares in respect of a right which attaches to them…."'

He concluded that to interpret the clause in the manner contended for by the company would enable it to say: "We will by our deed make a provision, that whatever injustice we choose to perpetuate there shall be no remedy against that injustice in a Court of equity."

This does not appear to me to be an approach which should be taken to the development of company law today. It should not be applied to derivative actions and, on the facts of the case, the action does not appear to have been a derivative action.

The other case cited in support of the proposition in Pennington, *Company Law* is *Bagshaw* v. *Eastern Union Ry. Co.* (1). No question of an equitable title to shares arose in that case. The plaintiff was the holder of scrip certificates. In 5 *Stroud's Judicial Dictionary*, 4th ed., at 2453 (1974) a scrip certificate is defined as "a certificate, transferable by delivery, entitling its holder to become a shareholder or bondholder in respect of the shares or bonds therein mentioned." In the course of the judgment in *Bagshaw's case* Ingram, V.-C. stated (7 Hare at 130; 68 E.R. at 53):

> "It was not, I think, argued by the Defendants that the proprietors and holders of scrip certificates in the perpetual stock had not such an interest in the application of the capital of the company as was necessary to enable them to maintain a bill properly framed, to prevent a misapplication of the capital of the company. It clearly could not be so argued; for there was an inchoate right in such parties to become general shareholders in the company."

Neither of these cases support the proposition that the beneficial owner of shares registered in the name of a nominee has the standing to file a derivative action on behalf of himself and other shareholders claiming on behalf of the company for a wrong alleged to be suffered by the company.

Support for the proposition contended for by the respondents in this case was found in a statement in *Mayson, French & Ryan on Company Law*, 10th ed., at 539 (1993):

> "It seems that the beneficial owner of shares held in trust may be permitted to bring a derivative action in an appropriate case: such an action was permitted in *Great Western Ry. Co.* v. *Rushout*…which concerned a statutory company."

The language is certainly tentative. It does no more than encapsulate the decision in that case offering neither support nor criticism. The paragraph

is omitted from the 11th edition of the text.



*Gower's Principles of Modern Company Law*, 4th ed., at 652-653 (1979) states:

> "(v) The right to bring a derivative action is afforded the individual member as a matter of grace. Hence the conduct of a shareholder may be regarded by a court of equity as disqualifying him from appearing as plaintiff on the company's behalf. This will be the case, for example, if he participated in the wrong of which he complains. But the mere fact that the plaintiff was not a member at the time of the wrong will not bar him from bringing the action, for he is enforcing the company's rights, not his own, and without his intervention a wrong to the company might go unremedied. But he must be a shareholder of record at the time when he brings his action."

This formulation rests on the principle clearly stated by the Court of Appeal in *In re Perkins, ex p. Mexican Sta. Barbara Mining Co.* (9) that no doubt should be cast on the principle that companies are under no obligation to recognize any trust which may exist in relation to its shares. The relationship between a trustee whose name appears on the register of shareholders of a company and the beneficial owner of the shares is purely a matter for contractual arrangement between them. This can be structured in such a way that the trustee or nominee can always be compelled to act on the instructions of the cestui que trust or beneficial owner in matters concerning the filing of derivative actions to protect the company from damage inflicted by a majority in circumstances in which such an action may be filed.

Where such arrangements do not exist it may well be the case that hardships may appear to arise because the beneficiary is unable to compel the nominee to transfer the shares to him or to induce him to file an action to remedy the alleged wrong. The temptation is strong to introduce what has been described as "flexibility" in the application of the exceptions to the rule in *Foss* v. *Harbottle* (4) by permitting a beneficiary to file when his name does not appear on the register of members. Permitting this would, in my view, weaken the fundamental principle of non-recognition by the company of trusts affecting its share. In the language of Lord Coleridge, C.J. in *In re Perkins, ex p. Mexican Sta. Barbara Mining Co.* (9), (24 Q.B.D. at 616), this "ultimate result would be anything but bene ficial to the holders of shares in such companies...."

Against that background I conclude that since *Great W. Ry. Co.* v. *Rushout* (6) casts doubt on the principle that companies are in no way obliged to recognize any trusts existing in relation to their shares, it should be treated as a decision on its own facts, strongly influenced by the consideration that the company was a statutory company. It should not, therefore, be regarded as enunciating a general principle applicable to all companies.

In three Australian cases there is support for the proposition that only



members whose names appear on the register of members of the company can bring a derivative action seeking redress on behalf of the company. They are *Maas* v. *McIntosh* (8), *Hooker Invs. Pty. Ltd.* v. *Email Ltd.* (7) and *Fulloon* v. *Radley* (5). It was contended that each of these cases on its facts could be distinguished from the case under consideration and this is indeed correct but that does not, in my view, weaken the support.

In *Maas* v. *McIntosh* it would appear that the plaintiffs were registered shareholders in respect of 150 shares which had been transferred to them by order of the court. Their suit was in respect of dividends and shares registered in the names of trustees, two of whom were acting as directors of the company. The principal objection of the defendants on an application to strike out was that the statement of claim was not intelligible and that such remedies as were sought on behalf of the company were in relation to matters of internal management in regard to which the court had no jurisdiction. Harvey, C.J. in Eq. stated (28 S.R. (N.S.W.) at 446):

> "It is quite true that in a suit by beneficiaries in which the company, and the shareholder trustees are parties, the Court may give effect to the rights of the beneficiaries and may protect their interests to prevent them being sacrificed, by the trustees and the company between them, but under no circumstances can persons only beneficially interested in shares bring a suit on behalf of themselves and all other shareholders, because they are not themselves shareholders."

The statement may indeed be *obiter*. The application to strike out did not succeed. But it appears to me to be sound as a matter of principle.

It was adopted and applied in *Hooker Invs. Pty Ltd.* v. *Email Ltd.* (7). That case is again on the facts distinguishable. The plaintiffs there were not beneficial owners of shares held in the name of a nominee. At the date of the suit they had contracted to purchase a large number of shares from a registered shareholder. Young, J. stated (10 A.C.L.R. at 445):

> "Thus it seems that the better view is that the duty is a duty owed to the company, the company is normally the proper plaintiff, but in suitable circumstances the court will listen to proceedings brought in the name of a shareholder. However, with respect to this sort of duty it is clear that an equitable holder of shares is not permitted by the court to bring the action that the shareholder might bring. This was clearly decided by Harvey C.J. in Eq. in *Maas & Anor* v. *McIntosh & ors*...a decision, as far as I am aware, which has never been criticised on this point."

It does not seem logical to contend that the right of a person holding an equitable interest in shares should depend on the nature of the equitable interest and that the equitable interest of a person who has contracted to purchase is distinguishable from that of a shareholder who has opted to

hold shares in the name of a nominee, so that in the one situation the



equitable owner could file a derivative action and in the other situation he could not.

The position was carefully examined in *Fulloon* v. *Radley* (5). In that case the plaintiffs filed a derivative action based on their equitable title as trustees of shares held by the Fulloon Family Trust. They held these shares pursuant to certain unregistered share transfers referred to in notices of a general meeting of the company signed by Radley, one of two directors of the company. Again, the circumstances giving rise to the equitable interest are different from those in this case but the issue was decided on the basis that the plaintiffs did hold an equitable interest. Master White stated ([1992] 2 Qd. R. at 295):

> "There may arguably have been an allotment of shares by virtue of the matters pleaded in para. 7 of the amended statement of claim but no facts are pleaded which make the plaintiffs members of Datalog. The question is whether, as alleged, equitable owners of shares may maintain a derivative action against the company."

Master White quoted the statement from Pennington, *Company Law* already set out above and analysed the decisions cited as authority in support. He noted that *Binney* v. *Ince Hall Coal & Cannel Co.* (2) had been cited to Harvey, C.J. in Eq. in *Maas* v. *McIntosh* (8), who had held that in no circumstances could persons only beneficially interested in shares bring a suit on behalf of themselves and all other shareholders because they were not themselves shareholders. He noticed that that decision had been applied in *Hooker Invs. Pty. Ltd.* v. *Email Ltd.* (7). He concluded that the plaintiffs had no standing to sue as the alleged equitable owners of shares in Datalog. I am satisfied that the principle stated in these cases is correct.

Accordingly, I would allow the appeal and strike out the action on the ground that the plaintiff did not, at the date of its commencement, have *locus standi* to bring it. The respondent will pay to the plaintiff the costs of this application here and below.

**KERR, J.A.**: I have had the benefit of reading the draft judgment of Georges, J.A. and I am in agreement with his reasoning and conclusion.

Notwithstanding that, I am constrained to add a few words, as the sole question in this appeal was whether or not the plaintiff, as a beneficial owner of shares, was competent to bring a derivative action within the contemplation of the exception to the rule in *Foss* v. *Harbottle* (4) and whether or not the learned trial judge was right in answering this question in the affirmative by relying on his interpretation of certain statements of Georges, J.A., in his judgment in the case of *Schultz* v. *Reynolds* (11), in which the same question arose and in which judgment I unreservedly concurred.

It is agreed by all that the general rule in *Foss* v. *Harbottle,* namely,

that in an action in respect of a wrong done to a company, *prima facie*, the



proper plaintiff is the company itself, was well recognized and respected. The debate in this appeal was concerned with the question whether the status of the plaintiff as beneficial owner of the shares of the company was within the contemplation of a certain and accepted exception to the rule as expressly recognized by Jenkins, L.J. in *Edwards* v. *Halliwell* (3) in what was regarded approvingly by the Court of Appeal in *Prudential Assur. Co. Ltd.* v. *Newman Indus. Ltd. (No. 2)* (10) as a "classic definition of the rule." The relevant exception as formulated in the judgment of the Court of Appeal reads ([1982] Ch. at 211):

> "There is an exception to the rule where what has been done amounts to a fraud and the wrongdoers are themselves in control of the company. In this case the rule is relaxed in favour of the aggrieved minority, who are allowed to bring a minority shareholders' action on behalf of themselves and all others. The reason for this is that, if they were denied that right, their grievance could never reach the court because the wrongdoers themselves, being in control, would not allow the company to sue."

The learned judge, on the basis of his interpretation of certain passages in the judgment of Georges, J.A. in the *Schultz* case (11) concluded:

> "However attractive I find Mr. Bueno's arguments, Georges, J.A. in particular stated the proposition that a minority shareholder seeking to bring a derivative action may do so if he falls within the exception to the rule in *Foss* v. *Harbottle* and joins the registered shareholders as defendants if they refuse to take action themselves, with such force that I do not consider that it is for me to say other than that it represents the state of the law in the Cayman Islands at the present time. That being so, I dismiss the application with costs."

It is implicit in that statement that, whether or not there were statements in the decided cases from other jurisdictions in conflict with the reasoning and decision in *Schultz*, he considered himself bound by the local decision.

Georges, J.A. in his judgment in the instant appeal has quoted the relevant passages from *Schultz.* Taking advantage of this, it is enough to say that in those passages in relation to the specific question he had (i) summarized the arguments of the appellant's counsel before the Chief Justice; (ii) recited the Chief Justice's opinion; and (iii) recognized in the submissions then before the court the relevance and reliance which was placed upon *dicta* from certain cited cases thus (1992-93 CILR at 76):

> "There is some further support in *Stena Fin. BV* v. *Sea Containers Ltd.*... In that case, however, the plaintiff had become a registered shareholder by the date of hearing. The authority cited, *Great W. Ry. Co.* v. *Rushout*..., had decided that the beneficial owner of shares could sue if he joined the registered shareholder as

a defendant."



However, instead of deciding this point, Georges, J.A. continued (*ibid.*, at 77):

"In this case, however, there is an additional complication. The plaintiff, though a beneficial owner, is a joint beneficial owner with Dupre. It is clear law that although as between themselves joint tenants and joint owners had separate rights, as against everyone else they were in the position of a single owner. There was absolute unity between them. Together they formed one person and could not commence proceedings without the aid of the other or others. As regards joint shareholders this principle was recently restated by Harman, J. in *Re Exchange Travel (Holdings) Ltd.*…to the effect that—'joint tenants of a share are joint covenanters and can only act together….' This suit is, therefore, not properly constituted in the absence of CMS and Dupre as plaintiffs. Neither would, of course, consent to be joined as plaintiffs. Consequently, they should have been named as defendants."

It was clear to me then, as it is now, that the decision rested on the overriding want of competence in the plaintiff being but "a joint beneficial owner of shares in the company" and in any event, lacking *locus standi* to go it alone. The learned judge in the instant case elevated the recitals of Georges, J.A. and his recognition of the *dicta* cited in support of argument, to the level of *ratio decidendi* and the conclusion that the plaintiff was competent as beneficial owner of the shares to bring the derivative action. In so doing, the learned judge plainly erred. The respondent's counsel, in his endeavours to support the judge's interpre tation, also read too much into the passages upon which he relied.

In concurring with Georges, J.A. in *Schultz* (11), I am not to be taken as in any way dissenting from this clear and concise statement of Zacca, P. (*ibid.*, at 69):

"In my view it is only CMS, the registered shareholder of Newport Ltd., who can institute an action against Newport Ltd. The appellant, as a beneficial owner of the shares, is not entitled to bring a derivative action against Newport Ltd."

Now Georges, J.A., having rejected the infelicitous interpretation placed on his *dicta* in *Schultz*, went on in his judgment to deal diligently with the arguments and authorities for and against extending *locus standi* to beneficial owners of shares in a company to bring this type of derivative action. On the reasoning set out in his judgment, he concluded, correctly in my view, that the plaintiff at the date of the commencement of the action had not the *locus standi* to bring the action.

Indeed, it seems on the face of it an illogical synthesis to argue that the beneficial owner of shares, who is not within the defined category of shareholder, may bring this special and exceptional derivative action on behalf of himself and other members of the company—a category to

which he clearly does not belong—*a fortiori*, when in fact he belongs to a



category (namely, the beneficial owner of shares) the existence of which, in the light of the following article common to the relevant companies, each company was entitled to ignore:

"11. Except as required by law, no person shall be recognized by the company as holding any shares upon any trust, and the company shall not be bound by or be compelled in any way to recognize (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by the articles or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder or in the case of a share warrant in the bearer of the warrant for the time being."

For these reasons I concur in allowing the appeal and in the order to strike out the plaintiff's action with attendant costs to the appellant.

**ZACCCA P.:** I have had an opportunity of reading the judgment of Georges, J.A. I am in agreement with his reasons and conclusions. I would allow the appeal. However, in view of the submissions of Mr. Leo-Rhynie that the decision in *Schultz* v. *Reynolds* (11) was to the effect that the beneficial owner of shares in a company, whose name did not appear on the register of members of the company, could bring a derivative action on behalf of the company to claim remedies for harm done to the company if the registered shareholder is joined as a defendant, I find it necessary to add a few words.

In the instant case the trial judge relied on the *Schultz* case and held that the Cayman Court of Appeal in that case decided that such an action could be brought. I do not accept that the passage in the *Schultz* case relied on by Mr. Leo-Rhynie invokes the principle that a beneficial owner of shares has *locus* to bring a derivative action so long as he joins the registered shareholder as a defendant. This was not the issue in the *Schultz* case and no arguments were presented to the court to that effect. The court clearly stated in that case that the beneficial owner of shares could not bring a derivative action. In my judgment (1992-93 CILR at 69) I stated:

"In my view it is only CMS, the registered shareholder of Newport Ltd., who can institute an action against Newport Ltd. The appellant, as a beneficial owner of the shares, is not entitled to bring a derivative action against Newport Ltd."

In my view the proposition of Mr. Leo-Rhynie that the decision in *Schultz* v. *Reynolds* supports his contention that a beneficial owner of shares can bring a derivative action if he joins the registered shareholder as a defendant cannot be accepted. That case is not previous authority for such a proposition.

*Appeal allowed.*

Attorneys: *Quin & Hampson* for the first, seventh and eighth appellants; *Hunter & Hunter* for the third, fifth and sixth appellants; *Charles Adams, Ritchie & Duckworth* for the respondent.