Signed by AustLII

# SUPREME COURT OF QUEENSLAND

| | |
|---|---|
| CITATION: | *Zabusky & Ors v Virgtel Ltd & Ors* [2012] QCA 107 |
| PARTIES: | **HARVEY ZABUSKY**<br>(first appellant)<br>**AMALIA ZABUSKY**<br>(second appellant)<br>**EREZ ZABUSKY**<br>(third appellant)<br>**SOFTQUEST SOLUTIONS PTY LTD**<br>ACN 057 679 599<br>(fourth appellant)<br>v<br>**VIRGTEL LTD**<br>(first respondent)<br>**VIRGTEL GLOBAL NETWORKS NV**<br>(second respondent)<br>**VIRGIN TECHNOLOGIES LTD**<br>(third respondent) |
| FILE NO/S: | Appeal No 9072 of 2011<br>SC No 6547 of 2005 |
| DIVISION: | Court of Appeal |
| PROCEEDING: | General Civil Appeal |
| ORIGINATING COURT: | Supreme Court at Brisbane |
| DELIVERED ON: | 20 April 2012 |
| DELIVERED AT: | Brisbane |
| HEARING DATE: | 28 March 2012 |
| JUDGES: | Holmes and Chesterman JJA, and P Lyons J<br>Joint reasons for judgment of Holmes and Chesterman JJA; separate reasons of P Lyons, concurring as to the orders made |
| ORDER: | **The appeal is dismissed with costs.** |
| CATCHWORDS: | APPEAL AND NEW TRIAL – APPEAL GENERAL PRINCIPLES – INTERFERENCE WITH DISCRETION OF COURT BELOW – PARTICULAR CASES – OTHER MATTERS – OTHER CASES – where the appellants sought a stay of a derivative action until the resolution of foreign proceedings – where the appellants argued that the action should be stayed because it was not properly constituted as a derivative action – whether the argument that the action was not properly constituted departed from the appeal grounds and amounted to a collateral attack on an earlier judgment |

Retrieved from AustLII on 17 March 2020 at 04:51:45     Verify version

declaring an entitlement to commence the action – whether the learned primary judge regarded the stay as necessarily precluded by the existence of an issue not common to both proceedings – whether the learned judge erred in refusing to grant a temporary stay of the action

PROCEDURE – SUPREME COURT PROCEDURE – QUEENSLAND – PROCEDURE UNDER UNIFORM CIVIL PROCEDURE RULES AND PREDECESSORS – PARTIES – OTHER MATTERS – where the learned primary judge ordered the joinder of two companies *nunc pro tunc* as applicants to a derivative action – where the appellants argued that leave for the derivative action was required to be obtained under Nigerian legislation – where the appellants argued that there was no entitlement to relief because the cause of action had been sold – whether questions about leave for the bringing of the action and the entitlement to relief were already resolved by an earlier judgment declaring an entitlement to commence the action – whether an unregistered shareholder is precluded from bringing or joining a derivative action – whether one of the two companies was precluded from joining the action because it had notice of the action when it acquired shares in the company on whose behalf the action was brought – whether the learned judge wrongly regarded the two companies' presence as relevant to the resolution of an issue in the action about retainer of the respondents' lawyers – whether the learned judge erred in ordering the joinder

*Company and Allied Matters Acts* 1990 (Nigeria), s 303(2)(a), s 303(2)(b)
*Corporations Act* 2001 (Cth), s 236(1)(a)(i)
*Eastern Caribbean Supreme Court Civil Procedure Rules* 2000
*Nigeria Companies and Allied Matters Act*
*Nigeria Weekly Law Reports*
*Panama's Corporation Law*
*Uniform Civil Procedure Rules* 1999 (Qld), r 69(1)

*Australian Agricultural Co v Oatmont Pty Ltd* (1992) 106 FLR 314; (1992) 8 ACSR 255, cited
*Australian Coal & Shale Employees' Federation v Smith* (1937) 38 SR (NSW) 48, cited
*Australian Securities Commission v Marlborough Gold Mines Ltd* (1993) 177 CLR 485, [1993] HCA 15, cited
*Bagshaw v Eastern Union Railway Co* (1850) 2 Mac & G 389; (1850) 42 ER 151; [1850] EngR 245, cited
*Binney v Ince Hall Coal and Cannel Co* (1866) 35 LJ Ch 363, cited
*Birch v Sullivan* [1957] 1 WLR 1247, cited
*Century Yuasa Batteries Pty Ltd v Century Batteries Holdings Pty* [2004] QSC 271, cited
*Dutton v Gorton* (1917) 23 CLR 362, [1917] HCA 40, cited

Signed by AustLII

Retrieved from AustLII on 17 March 2020 at 04:51:45  Verify version

|  |  |
|---|---|
|  | *Foss v Harbottle* (1843) 67 ER 189; [1843] EngR 478, cited |
|  | *Fulloon v Radley* [1992] 2 Qd R 290, considered |
|  | *Great Western Railway Co v Rushout* (1852) 5 De G & Sm 290; 64 ER 1121; [1852] EngR 297, cited |
|  | *Hooker Investments Pty Ltd v Email Ltd & Ors* (1986) 10 ACLR 443, cited |
|  | *In re Perkins; Ex parte Mexican Santa Barbara Mining Co* (1890) 24 QBD 613, cited |
|  | *Maas v McIntosh* (1928) 28 SR (NSW) 441, considered |
|  | *Prudential Assurance Co Ltd v Newman Industries Ltd (No 2)* [1980] 3 WLR 543; [1980] 2 All ER 841, cited |
|  | *Re Independent Quarries Pty Ltd* (1993) 12 ACSR 188, cited |
|  | *Ruralcorp Consulting Pty Ltd v Pynery Pty Ltd* (1996) 134 FLR 188; (1996) 21 ACSR 161, cited |
|  | *Shultz v Reynolds and Newport Ltd* [1992-93] CILR 59, cited |
|  | *Stroud v Lawson* [1898] 2 QB 44, considered |
|  | *Svanstrom v Jonasson* (1997) 23 ACSR 475, considered |
|  | *Towers v African Tug Company* [1904] 1 Ch 558, cited |
|  | *Virgtel Limited v Zabusky* [2006] 2 Qd R 81; [2006] QSC 66, cited |
|  | *Waddington Ltd v Chan Chun Hoo Thomas* (2008) 11 HKCFAR 370, [2008] HKCFA 63, cited |
| COUNSEL: | D R Cooper SC, with C C Wilson, for the first, third and fourth appellants |
|  | G C Newton SC, with M S Trim, for the respondent |
| SOLICITORS: | Tucker & Cowen Solicitors for the first, third and fourth appellant |
|  | James Conomos Lawyers for the respondent |

[1] **HOLMES AND CHESTERMAN JJA**: The first, third and fourth appellants[1] seek to appeal a judgment which dismissed their application for a temporary stay of proceedings in a derivative action brought by the respondents on behalf of Virgin Technologies Ltd (VTL) and which ordered the joinder to the action of two companies, each called Viscaya Armadora SA. At first instance, those companies were distinguished by reference to their place of incorporation; they will similarly be identified here as "Viscaya Panama" and "Viscaya Anguilla". Both companies are controlled by a Mr van Leeuwen.

*The institution of the derivative action*

[2] The action has a long and chequered history. In 2006, the Chief Justice granted the first and second respondents, Virgtel Ltd and Virgtel Global Networks NV (Global) leave *nunc pro tunc* to commence and continue a derivative proceeding on behalf of VTL, a Nigerian-registered company in the business of providing telephone services in Nigeria. Mr van Leeuwen was the human agent behind Virgtel's and Global's institution of proceedings. The extent of the various parties' shareholdings in VTL was then in dispute in Nigerian litigation; it still is. However, the Chief Justice accepted that Virgtel owned 85 per cent of the shares in VTL, although

---

[1] The second appellant's appeal was dismissed by consent.

Retrieved from AustLII on 17 March 2020 at 04:51:45　　　　　　　　　　　　　　　　　　　　　　　　Verify version

a form registered with the Nigerian Corporate Affairs Commission recorded Global as a 99 per cent shareholder in VTL. At issue in the proposed proceedings was whether the first appellant, Mr Harvey Zabusky, a director of VTL, and the third appellant, his son, Erez Zabusky, had misappropriated money and assets belonging to VTL, channelling some of the proceeds into property in Queensland, and into an Australian registered company which they controlled.

[3] The Chief Justice held that the manner in which a derivative action could be brought was a procedural question, so that the law of Queensland applied to its resolution. In any event, it was alleged that improper payments had been made to an Australian registered company, the fourth respondent to the proceeding, and there was authority to the effect that Australian law applied to both the substantive and procedural aspects of a proceeding for fraud alleging constructive trusts or seeking the remedy of tracing.[2] Because VTL and the applicants Virgtel and Global were unregistered foreign corporations, common law principles applied to the question of whether leave could be granted. There was some question of whether it was necessary at common law for leave to be obtained for the commencement of a derivative proceeding. The Chief Justice approached the application on the basis that it was, in reality, an application for a preliminary determination of the proceeding's competence, which had been challenged by the respondents.

[4] A creditor holding a charge over VTL's assets had appointed a receiver to the company; although the debt secured had been met, the receiver had not been discharged. The receiver had not responded to the proposal of the van Leeuwen interests that he become involved in the proceedings. Interim orders had been made in the litigation on foot in Nigeria to maintain the status quo in the management of VTL's affairs; effectively those orders prevented any step being taken there to convene a meeting or to pass resolutions for the bringing of the action or for liaising with the receiver for that purpose. The Chief Justice regarded the circumstances of the case as falling within the fifth exception to the rule in *Foss v Harbottle*: the interests of justice required that the applicants be permitted to proceed, because neither the receiver nor VTL would do so. Global was a necessary party because of the controversy (given the registration of the Corporate Affairs Commission form showing it as the 99 per cent shareholder) about who held the shares in VTL, and there was no adverse practical consequence attaching to its presence in the proceeding. His Honour made a declaration that the applicants were entitled to commence and continue the proceeding as a derivative action on behalf of VTL.

*The decision on the stay and joinder applications*

[5] The Zabusky interests sought a temporary stay of the action pending final determinations in certain foreign proceedings, identified in the application as:

> "(a) claim No FHC/L/CP/173/04 between Amalia Investments Limited [a company controlled by Mr Zabusky] and another, as petitioners, and Virgtel Global Networks NV and others, as respondents, now pending in the Federal High Court of the Federal Republic of Nigeria;
>
> (b) claim No. FHC/L/CS/986/06 between Virgtel Ltd, as plaintiff, and Harvey Zabusky and others, as defendants,

---

[2] *Virgtel Limited v Zabusky* [2006] 2 Qd R 81 at 91-92.

           now pending in the Federal High Court of the Federal Republic of Nigeria;

(c)     appeal No. CA/L/784M/08 between Harvey Zabusky and others, as appellants, and Virgtel Limited and another, as respondents, now pending in the Court of Appeal of the Federal Republic of Nigeria; and

(d)     claim No. BVIHC (COM) 54/10 between Viscaya Armadora SA (Anguilla) and another, as claimants, and Virgtel Limited and another, as defendants, now pending in the Eastern Caribbean Supreme Court in the High Court of Justice of the British Virgin Islands."

The van Leeuwen interests, meanwhile, applied to join Viscaya Panama and Viscaya Anguilla as additional applicants *nunc pro tunc* to continue the proceeding on behalf of VTL.

[6]     The learned primary judge considered, pursuant to r 69(1) of the *Uniform Civil Procedure Rules* 1999, whether the presence as parties in the action of Viscaya Panama and Viscaya Anguilla

"would be desirable, just and convenient to enable the court to adjudicate effectually and completely on all matters in dispute connected with the proceeding."

His Honour noted that the proceedings commenced by Amalia Investments Ltd in Nigeria sought a declaration as to the shareholdings in VTL which included identification of Viscaya Panama as the holder of 41.85 per cent of the company shares. On any view, then, Viscaya Panama was, his Honour said, a shareholder in VTL and a proper applicant in the derivative action. According to Mr van Leeuwen, Viscaya Panama had transferred its shares in both Virgtel and VTL to Viscaya Anguilla on the latter's incorporation in 2009. The Zabusky interests contended that Viscaya Panama's purported transfer of shares in Virgtel (either a 51.5 or a 53 per cent shareholding, depending on whose argument was accepted) was ineffective. They had pleaded in the derivative action that neither Virgtel nor Global had authority to retain solicitors to bring the proceedings on behalf of VTL (although, more precisely, the pleading was that neither had authorised solicitors to institute the proceedings.)

[7]     The primary judge reached the view that whichever of Viscaya Panama and Viscaya Anguilla was held to be a shareholder in VTL would be an appropriate party to join the derivative action. The retainer point taken in the Zabusky pleadings raised issues of who on behalf of Virgtel and Global had authority to instruct solicitors, as well as questions of the identities of those companies' directors and their shareholders and whether the latter were in a position to control the companies' boards. That was an additional reason it was desirable, just and convenient to have both Viscaya Panama and Viscaya Anguilla before the court.

[8]     Both in opposing the joinder application and in arguing for the stay, the Zabusky interests contended that the derivative action had never been properly constituted and pleaded. The learned judge rejected that argument as precluded by the judgment of the Chief Justice, from which there had been no appeal. He also rejected a further argument that the evidence did not establish that either Viscaya Panama or Viscaya Anguilla was a shareholder of VTL under Nigerian law. There

Retrieved from AustLII on 17 March 2020 at 04:51:45      Verify version

was no issue, he said, that Viscaya Panama had a claim in law to be recognised as a shareholder; and it would be for the court to determine whether Viscaya Anguilla had a sustainable claim to be recognised as a shareholder by virtue of the transfer of Viscaya Panama's shares to it.

[9] The appellants put their principal argument for a temporary stay in light of the Nigerian proceedings in these terms:

> "The fundamental reason why the Queensland proceedings must be stayed is obvious. Once the true shareholdings in VTL are established in Nigeria, the conduct of the affairs of VTL will, relevantly, revert to the shareholders in general meeting.
>
> A general meeting may ratify director's acts despite an abuse of power, and any resulting transaction may be validated and the directors are absolved from liability to the company whether for breach of contract or fiduciary duty.
>
> In other words, VTL will be able to sue in its own name for the wrongs alleged in the Queensland proceedings if it so desires because neither the Respondents nor the van Leeuwen interests will control the company in general meeting due to the existence of other shareholders. A majority decision is achievable in that context. Once VTL is able to pursue all claims in its own name in Nigeria, the other international proceedings necessarily become otiose."

[10] The learned judge noted that the submissions did not completely state the law: shareholders could not ratify directors' improper expropriation of a company's property, which was the conduct alleged in the derivative proceeding. In any event, it was not to the point, he said, that there were proceedings in other jurisdictions concerning the identities of shareholders and the extent of shareholdings held in the various companies connected with the parties. What mattered was that the Queensland action was the only proceeding in which the claim of misappropriation was to be ventilated; it formed no part of the litigation in any other court.

*The primary judge's approach to the stay application*

[11] The notice of appeal contained one ground relating to the refusal of the temporary stay: that the learned judge had

> "erred in directing himself that it was inappropriate to order a temporary stay of the action … in favour of proceedings in Nigeria and the British Virgin Islands unless the determination of the foreign proceedings will determine all of the issues in the Queensland action, when the determination of the foreign proceedings was likely to have a 'manifest effect' on the Queensland action."

The proper position, the appellants submitted, was that a temporary stay could be granted where common issues were being litigated even if there were not "a complete identity of issues and parties".[3] The existence of a single discrete issue in the Queensland proceedings could not justify the dismissal of the application.

[12] Both the Queensland and Nigerian courts, the appellants argued, were seized of the issues as to who owned and controlled VTL and could cause it to prosecute its

---
[3] *Century Yuasa Batteries Pty Ltd v Turek* [2004] QSC 271 per Muir J at [48].

Retrieved from AustLII on 17 March 2020 at 04:51:45 Verify version

claims. (Judgment had been given in the British Virgin Islands litigation prior to the hearing of the appeal.[4] Findings were made in that judgment that Viscaya Panama was a shareholder in Virgtel and that Mr van Leeuwen, Mr Zabusky and one other were appointed as directors of the company in October 2000; but no findings were made about the shareholdings in VTL). The primary judge, it was submitted, had mistaken the argument advanced as to the significance of the Nigerian proceedings in, prospectively, confirming the shareholdings in VTL. It was not that the shareholders could ratify any misappropriation of property; the point was that once the shareholdings were established, there would be a clear majority of shareholders who could vote to use the company's name to sue for the company's benefit, rendering the derivative proceedings superfluous.

[13] The ground of appeal incorrectly characterises the learned judge's approach to whether a stay should be granted. He did not proceed on the footing that there was some general principle that a stay could not be granted wherever there existed an issue not common to the foreign and local proceedings. Instead, he reached a conclusion on the facts of the case that while issues concerning the identity of the VTL shareholders and the extent of their shareholdings were being ventilated elsewhere, they lost their significance beside the important issue of misappropriation in the Queensland proceedings which would not be dealt with in any other proceedings.

[14] What the learned judge had to say about the possibility of shareholders' ratifying improper expropriation of company property by directors was accurate, and an obvious response to the second paragraph of the appellants' argument as set out at paragraph [9] above. His Honour did not expressly deal, it is true, with the suggestion that VTL could itself sue once the shareholding issues were resolved in the Nigerian litigation, but the point is not a compelling one. If the majority of shareholders, as eventually identified, were to resolve that the company should continue the litigation against the Zabusky interests, there would be no disadvantage to the Queensland action's having remained on foot; if instead the majority shareholders were opposed to the continuation of the action, the occasion for the derivative proceeding by the minority shareholders would remain. It is difficult to see then, that the resolution of the Nigerian proceedings would have any material effect on the Queensland proceedings. Certainly no error of law has been shown in the learned judge's approach to the question of whether a stay should be granted.

*A properly constituted derivative action*

[15] The appellants also sought to contend in relation to both the question of stay and that of joinder that there was no properly constituted derivative action. Firstly, they said, it was necessary that all shareholders other than the wrongdoers sue the wrongdoers as defendants, with the company joined as a party to be bound by the judgment. Reference was made to *Australian Coal and Shale Employees Federation v Smith*[5] and Ford's Principles of Company Law[6] for that proposition. Secondly, there was no evidence that Virgtel was registered on the company's members' register as the holder of shares; indeed, there was some evidence to contrary effect in the Nigerian proceedings, from a director of the company.

---

[4] Unreported, judgment British Virgin Islands Eastern Carribean Supreme Court in the High Court of Justice, Bannister J 14 October 2011.
[5] (1937) 38 SR (NSW) 48 at 54 and 59.
[6] 6th ed. 1992.

Retrieved from AustLII on 17 March 2020 at 04:51:45    Verify version

Both Nigerian and Australian law provided that a person who was not a subscriber to the memorandum of the company could not be a member until he agreed to be a member and his name was entered in the register of members. The significance of that fact was that, on the appellants' submission, cases in which an action could be brought as an exception to the rule in *Foss v Harbottle* were limited to suits by members of the company: that is, shareholders whose names appeared in the register of members. One who had only an equitable interest in shares, or a right to become registered as a member, had no standing to bring a derivative action. The prohibition was said to extend to a shareholder whose status as a member is disputed.

[16] This court, however, should not entertain the appellants' argument about whether the action was and is properly constituted, for two reasons. Firstly, it formed no part of the appellants' grounds of appeal; and, secondly, it amounts to a collateral attack on the judgment of the Chief Justice, which was not the subject of any appeal.

*Standing of an unregistered shareholder to bring a derivative action*

[17] It is however, necessary to deal with the argument as to whether a shareholder not registered in the company's registry of members may bring a derivative action, because that was a basis for contending that Viscaya Panama and Viscaya Anguilla should not be joined to the action. The evidence as to whether they are in fact so registered is far from clear, as is discussed elsewhere in these reasons. For the moment it is necessary to deal with the submission that, as a matter of law, only a member whose name appears on the company's register may bring a derivative action on its behalf.

[18] The rule as described in the submission is rigid, allowing no exceptions. Like all such rules, it is capable of working injustice in particular cases. Given the nature of the rule and its asserted importance in this branch of company law one would expect it to have a definite origin in the cases, and an intelligible rationale. One would also expect it to be noticed in the leading textbooks on company law.

[19] The earliest articulation of the rule to which the court was referred was a remark of Harvey CJ in Eq in *Maas v McIntosh*.[7] When examined it appears a slight basis for such a firm rule as the appellants contend for. The case was an application to strike out a statement of claim on the ground that the allegations in it were unnecessary and embarrassing. The pleading contained two causes of action. In one, the plaintiffs sued as shareholders acting for themselves and all other shareholders except three named defendants. The company was also joined as defendant. The claim was that the company had paid away a substantial sum of money to its governing director, one of the named defendants, who had no entitlement to it. The named defendants were in control of the company. The second claim was to recover dividends to which the plaintiffs were beneficially entitled. A legacy in favour of each of them had been satisfied by the transfer of shares in the company but the directors, who had notice of the transfer, did not register the transfer nor pay the dividends to the plaintiffs. They retained the moneys for their own purposes. One suit was derivative, to recover the company's money. The other was to enforce the plaintiffs' own rights.

---

[7] (1928) 28 SR (NSW) 441.

[20] The application appears to have been decided by reference to pre-Judicature Act rules of pleading in equity. The statement of claim was said to be embarrassing because it: "combine[d] two suits" and would "lead to embarrassment or inconvenience and to an attempt to try together two totally different causes of action."

[21] Harvey CJ in Eq said (446):
> "In my opinion, it is not open to [the plaintiffs], in a suit framed on behalf of themselves and all other shareholders of the company to bring a suit as beneficial owners of shares, against the company for enforcement of their beneficial rights.
>
> It is quite true that in a suit by beneficiaries in which the company, and the shareholder trustees are parties, the Court may give effect to the rights of the beneficiaries and may protect their interests to prevent them being sacrificed, by the trustees and the company between them, but under no circumstances can persons only beneficially interested in shares bring a suit on behalf of themselves and all other shareholders, because they are not themselves shareholders."

[22] The judgment cited no authority. It was not a case in which shareholders whose title to the shares was equitable sought to bring a derivative action. So far as the report goes, the derivative action was brought by the plaintiffs as registered shareholders. Their equitable claim was for moneys owed to them personally as beneficial shareholders, not for a wrong done to the company.

[23] The decision to strike out the pleading because it contained the two causes of action seems to be supported by authority. In the 43rd ed of Gore-Browne *On Companies* it is said (28-6):
> "The distinctive characteristic of a shareholder's 'derivative' action is that 'what is recovered cannot be paid to the plaintiff representing the minority, but must go into the coffers of the company'. Hence, such an action should not be combined with a claim for wrong done to the plaintiff shareholder personally."

The authority cited is *Stroud v Lawson*,[8] a case decided at common law after the Judicature Act, in which the Court of Appeal struck out a statement of claim joining a personal claim for damages for misrepresentation against the directors of a company with a claim on behalf of the company to recover dividends paid unlawfully. The two claims were said not to arise out of the same transaction and could not therefore be joined in the one pleading. A more flexible approach was taken in *Prudential Assurance Co Ltd v Newman Industries Ltd (No 2)*[9] in which a personal and a derivative cause of action were tried together. On appeal, (1982) Ch 204 (at 222-223), the personal claim was said to be misconceived because the damages claimed duplicated the company's loss which was recovered in the derivative action. There was no criticism of the decision to try both claims together.

[24] It is, one suspects, the *Stroud* line of reasoning which led the Chief Judge to say that persons beneficially interested in shares may not bring a suit on behalf of

---

[8] [1898] 2 QB 44.
[9] [1980] 2 All ER 841.

themselves and all the shareholders because they are not shareholders. The remark was probably aimed at the irregular joinder of the causes of action. The plaintiffs in that case were members of the company. The case did not present the occasion for pronouncing the rule for which it is now said to be authority. The point was not argued. No reason for the "rule" was given.

[25] Young J followed *Maas* in *Hooker Investments Pty Ltd v Email Ltd & Ors* (1986)[10]. The plaintiff in the action had contracted to buy a number of shares but had not been registered as shareholder. He brought a derivative action alleging that the directors had resolved to allot shares in breach of their duty to act in good faith. Young J said (445):

> "Thus it seems that the better view is that the duty is a duty owed to the company, the company is normally the proper plaintiff, but in suitable circumstances the court will listen to proceedings brought in the name of a shareholder. However … it is clear that an equitable holder of shares is not permitted by the court to bring the action that the shareholder might bring. This was clearly decided by Harvey CJ in Eq in *Maas* … a decision, as far as I am aware, which has never been criticized on this point."

[26] Mr Cooper SC, for the appellants relied principally on *Fulloon v Radley*[11] a decision of Master White (as her Honour then was), and *Svanstrom v Jonasson*[12] a decision of the Court of Appeal of the Cayman Islands. Both cases ultimately take *Maas* as their authority.

[27] *Fulloon* was a case in which shareholders of a company commenced an action "for and on behalf of" all shareholders, except the defendants, against the directors for breach of their fiduciary duties owed to the company. The defendants applied to strike out the action on the basis that the plaintiffs had no standing to sue or, alternatively, for a stay pending rectification of the register to record the plaintiffs as shareholders. The latter order was made.

[28] The plaintiffs were the transferees of 49 per cent of the shares in the company but the transfers had not been registered though a general meeting of the company had instructed the directors to effect the registration. The directors owned the other 51 per cent of the shares. It was their actions which were said to have caused the company loss. The register was under their control.

[29] The Master said (294):

> "The problem for the plaintiffs is that they are said not to be members of Datalog. Their names do not appear on the register of members of the company. There is no dispute about this. It is submitted by Mr Cooper for the defendants that the exception to the rule in *Foss v Harbottle* applies only to members of the company, see *Dutton v Gorton*[13]. He thus submits that the exception may not be extended to those who claim an equitable interest in the company. It would appear that this must be so because the very rationale of that case is that at a general or special meeting called for the purpose, the

---

[10] 10 ACLR 443.
[11] [1992] 2 Qd R 290.
[12] (1997) 23 ACSR 475.
[13] (1917) 23 CLR 362 at 367.

Retrieved from AustLII on 17 March 2020 at 04:51:45    Verify version

minority shareholders who are complaining will be defeated because of the fraud of the majority which is a fraud upon the company itself. … The plaintiffs would not have standing to participate in such a meeting not being members."

(*Dutton* does not address the point of present interest).

[30] The judgment continued:

"The question then is whether … equitable owners of shares may maintain a derivative action against the company. Pennington's *Company Law* (5th ed., 1995) states at 730 that:

'A derivative action may be brought by a person who is the equitable owner of shares, such as an equitable mortgagee or the holder of a letter of allotment, but not by a creditor of the company.'

The authorities cited for this proposition are *Bagshaw v The Eastern Union Railway Company*[14] and *Binney v The Ince Hall Coal and Cannel Company*[15] and they are relied upon by Mr Dutney for the plaintiffs. An examination of those cases would indicate that the learned author has confused the *personal* action available to the plaintiffs in those cases with a derivative action. The prevalence of such confusion is alluded to by Gower, *Modern Company Law*, (4th ed., 1979) at 653. That learned author refers to *Bagshaw…* as an example of a personal action by the holder of scrip not yet registered as a member, see at 654. Ford, *Principles of Company Law*, (5th ed., 1989) at para. 1727 denies that an equitable owner of shares can maintain a derivative action and cites *Maas v McIntosh*[16] and *Hooker Investments Pty Ltd v Email Ltd*[17]."

[31] The judgment then analysed the judgments in *Bagshaw* and *Binney* in considerable detail concluding that in neither was the plaintiff suing as a shareholder representing the interests of all other shareholders to have the company recompensed for wrongs done to it. The Master then noted that *Binney* had been referred to Harvey CJ in Eq in *Maas* in support of the personal, equitable, claim advanced by the plaintiffs in that case, for the unpaid dividends. That, the Master thought, explained the Chief Judge's statement that:

"… [I]n a suit by beneficiaries in which the company, and the shareholder trustees are parties, the Court may give effect to the rights of the beneficiaries …"

but she emphasised the following passage:

"… [U]nder no circumstances can persons only beneficially interested in shares bring a suit on behalf of themselves and all other shareholders, because they are not themselves shareholders."

The Master then referred to *Hooker Investments*, setting out the judgment of Young J and concluded:

---

[14] (1850) 2 Mac & G 389; (1850) 42 ER 151.
[15] (1866) 35 LJ Ch 363.
[16] (1928) SR (NSW) 441.
[17] (1986) 10 ACLR 443.

Retrieved from AustLII on 17 March 2020 at 04:51:45  Verify version

> "… [O]n those authorities, that the plaintiffs have no standing to sue as the alleged equitable owners of shares in Datalog."

[32] Professor Gower's exposition of the "confusion" in the cases, to which Master White referred, was in these terms (*Modern Company Law*, (4th ed., 653-4)):

> "The derivative action … lies where a wrong has been done *to* the company. Where, however, a wrong has been done or threatened *by* the company different considerations apply. The company then is not merely a nominal defendant but the real defendant, because judgment is required against it, not for it. And the proper plaintiff is anyone who has a personal right against the company which is being infringed. The reason why the decisions are so confused and confusing on the question whether the action should primarily be by the company or against it, is because the same facts will often give rise to both possibilities. If the company is proposing to do something … which infringes its articles, a shareholder may properly sue to restrain it. But, alternatively, the company itself may proceed against its directors to restrain them from taking the proposed action. If the first alternative is adopted the company is properly a defendant, though not necessarily the only one … If the second course is adopted, the company is properly the plaintiff, and the directors are the defendants. But the fact that this second alternative is a possible one is no reason for refusing to allow a member to sue the company if he has independent right to do so."

[33] Professor Gower does *not* say that that a derivative action may not be brought by a shareholder whose title is equitable. His only comment on that topic is that the plaintiff "… must be a shareholder of record at the time when he brings his action," but the case cited for the proposition, *Birch v Sullivan*[18], concerned a very different point to that of relevance here. A minority shareholder commenced a derivative action. He was a bankrupt and his shares had passed to his trustee in bankruptcy but he was still registered as member when the action was commenced. Subsequently the trustee in bankruptcy became registered in respect of the bankrupt's shares. Harman J stayed the action until the trustee in bankruptcy decided whether to continue the action for the benefit of the bankrupt estate. He said (at 1249):

> "The circumstances under which a shareholder … may in his own name bring such an action, are well settled. Supposing all the conditions be present and the registered shareholder were not bankrupt, he would be in a position to bring an action because of the wrongful act of the director in not paying money to the company, and I am not satisfied that so long as he remains registered he could not maintain such an action even if he be a bankrupt. However that may be, he certainly can no longer maintain it when he has ceased to be a registered holder."

[34] There is, with respect, no reason to doubt the accuracy of the analysis of *Bagshaw* and *Binney* in the judgment in *Fulloon*. It follows that Professor Pennington's opinion is not supported by those cases. That is a very different thing from saying that the cases decide the opposite proposition for which they were cited. That is, they may not establish that a shareholder with an equitable title may bring

---

[18] [1957] 1 WLR 1247.

Retrieved from AustLII on 17 March 2020 at 04:51:45     Verify version

derivative proceedings, but they do not decide that he may not. There is in fact a case which does support the proposition; *Great Western Railway Co v Rushout*[19]. According to the headnote:

> "A railway company was beneficially entitled to certain shares in another railway company, which, under the authority of the Act constituting the latter company, were vested in trustees for the former. The former company filed a bill against the directors … and against the trustees of their own shares, complaining that certain dispositions of the trust funds and contracts, which were in contemplation, were illegal."

Objection was taken to the suit on the basis that the petitioners were not themselves shareholders but only beneficiaries entitled to shares held on trust for them.

[35] Vice Chancellor Parker said (306; 1129):

> "It appears by the bill … that the Plaintiffs are not shareholders in their own name in this company; but … they have got a large number of shares that are standing in the names of four persons, who are trustees for the Plaintiffs …, and in that state of matters it was contended that the company had no such interest as enabled them to maintain the suit, suing on behalf of themselves and all other the shareholders.
>
> With reference to that question, I think they have an interest to maintain this suit. There is a valid trust … which these shares are held for the Great Western Railway Company, they are the only persons who, under that trust, are interested in the shares. They have therefore an interest in what is sought by this bill to protect the property and concerns of this company.
>
> It is very true that, for many purposes, the company are only bound to regard the legal title. One of the clauses of the Act is that the company shall not be bound to see to the execution of any trust. Now, they are not asked here to see to the execution of any trust, they are only asked to act on a title, which is a trust executed, and is an equitable not a legal title; and enabling these parties to maintain this suit does not in any way change the jurisdiction on the subject-matter: so that I must assume for this purpose that the legal shareholders themselves could maintain this bill … and, when it is added to this that the trustees themselves, the persons who are the legal owners of the shares, are parties to the suit, and bound by the proceedings, I confess I do not see any objection to the frame of the suit."

That seems, with respect, a pragmatic and flexible approach to the question of who is an appropriate plaintiff to bring a derivative action.

[36] If the rule that equitable shareholders may not sue were as well established as the appellants contend, it is curious that no mention of it appears in any of the major textbooks on company law. In considering the texts it is necessary to refer to older

---

[19] (1852) 5 De G & Sm 290; 64 ER 1121.

Retrieved from AustLII on 17 March 2020 at 04:51:45     Verify version

editions, those published before derivative actions were regulated by amendments to companies' legislation. Those mentioned were current when *Hooker Investments* and *Fulloon* were decided. Ford, *Principles of Corporations Law*, (6th ed. 1992) para 1727 supports the rule and says that a derivative action may not be brought by an equitable owner of shares. The authorities cited are *Maas* and *Hooker Investments*. None of *Palmer's Company Law* (22nd ed. 1976), *Gore-Browne* on *Companies* (43rd ed. 1984), Gower, *Principles of Modern Company Law*, (4th ed. 1979) or *Buckley on the Companies Act* (14th ed.), mention the rule at all. None of them contain a statement similar to that found in Ford.

[37] The other case relied on for the rule was *Svanstrom v Jonasson*; the headnote succinctly summarises the decision:

> "(i) Only the members of a company, whose names appear on the register, can bring a derivative action seeking redress on behalf of the company.
> 
> (ii) To permit the holder of the beneficial interest in shares to bring a derivative action would weaken the fundamental principle of company law that a company is under no obligation to recognise trusts affecting its shares."

[38] An earlier case decided by the Court of Appeal of the Cayman Islands, *Shultz v Reynolds and Newport Ltd*[20], had apparently decided the opposite. The judgments in *Svanstrom* explain at considerable length why *Shultz* was not authority for that proposition. The Australian authorities, *Maas*, *Hooker Investments* and *Fulloon* were thought to be authoritative and were followed without any independent analysis. It has been noticed that none of the Australian cases essayed a rationale for the rule. Harvey CJ in Eq's cryptic remark was accepted as establishing a "clear" principle which Young J understood had been acted on in New South Wales for 60 years without dissent. White M accepted the correctness of the proposition and established that Professor Pennington's contrary assertion was not supported by the cases he cited. But the judgment in *Fulloon* did not itself express any rationale for the rule. It accepted the authority of the earlier cases.

[39] The Court in *Svanstrom* did attempt an explanation. It is that encapsulated in headnote (ii). Georges JA referred (at 479) to the:

> "… [F]undamental rule of the company law that a company is under no obligation to recognise trusts affecting its shares."

His Honour referred to *Re Perkins; Ex parte Mexican Santa Barbara Mining Co.*[21], and concluded (at 482) that the case clearly established the principle:

> "[T]hat companies are under no obligation to recognise any trust which may exist in relation to its shares. The relationship between a trustee whose name appears on the register of shareholders … and the beneficial owner of the shares is purely a matter for contractual arrangement between them."

Georges JA also referred to *Great Western Railway v Rushout* which, it was said:

> "[U]ndoubtedly supports the proposition that a beneficial owner of shares has the standing to bring a derivative action even though its name does not appear on the company's register of shareholders." (At 478.)

---

[20] [1992-93] CILR 59.
[21] (1890) 24 QBD 613.

The case was in the end disregarded as an authority because it was said to "cast doubt" on the principle that companies are not required to recognise trusts on its shares.

[40] With great respect, this is a misreading of Vice-Chancellor Parker's judgment which noted that the company was "not asked … to see to the execution of (i.e. recognise) any trust … [but] asked to act on a title" i.e. the plaintiffs' proved beneficial ownership of the shares. VTL is not being asked to recognise a trust over its shares or to treat someone whose name appears in the register as a shareholder as other than a member. The company is joined in an action at the suit of a shareholder against other shareholders to protect the company's own interests.

[41] Georges JA recognised that the rule that only registered members might bring a derivative action may give rise to hardship where the beneficial owner is unable to procure the registration of the transfer of shares or to compel the registered owner of shares to commence a derivative action. The temptation to introduce some "flexibility" into the rule was said to be strong, but was to be resisted lest it "weaken the fundamental principle of non-recognition by the company of trusts affecting its shares". For the reason given by Parker VC, the rule is not weakened by allowing a shareholder, who has an established equitable title to shares, to sue.

[42] *Maas* and *Hooker Investments* were the subject of comment in *Waddington Ltd v Chan Chun Hoo Thomas*[22] but only in the judgment of Lord Millett NPJ. The case was concerned with whether a shareholder in a subsidiary company could bring a derivative action on behalf of the parent company. The court decided in favour of the plaintiff. Lord Millett appears to have found the cases of present relevance less than convincing. He said:

> "71 … There are numerous dicta in the cases to the effect that only a shareholder may bring a derivative action to enforce the right vested in the company. But most of them are merely *obiter*. Where they have formed the ground for decision, they have to be understood in their context. In every case where the status of the plaintiff has been determinative, the question was whether a former shareholder or a person who was an equitable but not the legal owner of the shares could maintain the action: for former shareholders see *Birch v Sullivan* …; for equitable owners see *Maas* …; *Hooker Investments* … The focus in all these cases was on the character of the plaintiff's shareholding; he must be a current and legal shareholder. The present case is concerned with a different question: the identity of the company of which he must be such a shareholder."

[43] Lord Millett referred to a case, *Ruralcorp Consulting Pty Ltd v Pynery Pty Ltd*[23] which he described as "[t]he only case in which the question whether a multiple derivative action may be maintained has been decided in a common law jurisdiction outside the United States …". A Senior Master of the Victorian Supreme Court had decided in *Ruralcorp* that a shareholder in a subsidiary company could not bring a derivative action on behalf of the holding company. Two reasons were given; the second of which was that an equitable owner of shares in a company had no standing to bring a derivative action. Lord Millett described the second ground as "scarcely more convincing than the first", noting that the reason for the prohibition

---

[22] (2008) 11 HKCFAR 370.
[23] (1996) 21 ACSR 161.

Retrieved from AustLII on 17 March 2020 at 04:51:45      Verify version

was that "a company does not recognise or give effect to equitable interests" in its shares. As has been pointed out, the bringing of a derivative action by such a shareholder does not require the company to recognise or give effect to a trust or other equitable interest in the company's shares. More importantly, Lord Millett concluded that the question for the court in that case was "simply [one] of the plaintiff's standing to sue", as to which "[a] court must ask itself whether the plaintiff has a legitimate interest in the relief claimed sufficient to justify him in bringing proceedings to obtain it."

[44] *Fulloon* appears to be a good example of the injustice the rule can work. The plaintiffs did not appear in the register of members because the directors who were in control of the company refused to perfect a transfer of the shares to the plaintiffs. A general meeting of the company would have been ineffectual because the defendants commanded a majority of votes. No doubt the plaintiffs could have commenced an action to rectify the register and/or obtain injunctive relief, but in doing so would incur expense and delay which might have diminished the value of the derivative action.

[45] The rule could work capriciously. A member of the company, on the register, could bring a derivative action though not having any economic interest in the company. The member may be a bankrupt as in the case of *Birch v Sullivan*. On the other hand, a shareholder with an indisputable and undisputed title to shares who has not been registered could not sue to protect the company even if he were the only person who had a reason to bring the action. Such a rule has little to recommend it.

[46] The review of the cases and the texts gives rise to considerable doubt that the so-called "rule" exists. *Maas* is the only authority for it, the other cases following it without question, examination or analysis. For the reasons given, *Maas* is not a satisfactory authority. None of the Australian cases addressed the problems to which the rule could give rise. Nor do they give any explanation for its existence. *Svanstrom* touches upon both, but not satisfactorily. If, despite the considerable doubt, the rule does exist in some jurisdictions there is no authority, to which this court was referred, which would bind it to adopt the rule. Nor has the rule been recognised or adopted by any intermediate Court of Appeal whose decision should be accorded deference in accordance with the principle in *Australian Securities Commission v Marlborough Gold Mines Ltd*[24]. The rule is capable of causing such mischief without counterbalancing advantage that it should not be accepted here, if it exists elsewhere.

[47] A more flexible approach capable of adapting to the justice of particular cases should be adopted. Such a rule would take account of the circumstance that a derivative action is exceptional and should not be allowed to proceed unless the plaintiffs demonstrate in their pleading, perhaps supported by affidavit, that the suit is a proper one. Such a requirement finds expression in a number of the texts and cases. One of the elements of the cause of action is the plaintiff's standing to sue. The register of members is the best evidence to show whether the plaintiff is a member and in the minority. To that extent the "rule" would make sense, but it would not be sensible to adopt a rule that absolutely forbade anyone but a member from bringing a derivative action.

[48] Other less complete proofs of the plaintiff's standing should be accepted as long as the evidence sufficiently shows the plaintiff's right as shareholder to complain of

---

[24] (1993) 177 CLR 485.

Retrieved from AustLII on 17 March 2020 at 04:51:45 Verify version

a wrong done to the company. In *Great Western Railway v Rushout* there was indisputable proof of the plaintiff's beneficial title to the shares. There may be cases in which a plaintiff's title to shares is doubtful or disputed. In such cases, depending upon the evidence, and the extent of the doubt or dispute, an action should be stayed until the plaintiff's status is clarified. As Lord Millett pointed out, the question in each case is one of the plaintiff's standing to sue. If the evidence in a particular case sufficiently shows that the plaintiff is a shareholder, whether on the register or not, and the other requirements for a derivative action are made out, the action should be allowed to proceed.

[49] It should be noted that the discussion is relevant to only a small class of case in which general law principles still apply. Part 2F.1A of the *Corporations Act* 2001 (Cth) has abolished the common law derivative action and replaced it with statutory rights. Interestingly, these may be exercised by:

> "A member, former member, or person entitled to be registered as a member, of the company or of a related body corporate."
> (See s 236(1)(a)(i).)

> Including in the class of persons who may bring an action those who are entitled to become members would overcome the unfairness noted in *Fulloon* and *Svanstrom*.

[50] It is perhaps also worth pointing out in that dealing with an application pursuant to s 260 of the *Corporations Law* (Cth) (the "Oppression" section) which permitted members of a company in the minority to apply for relief against misconduct by the majority, an applicant entitled to be registered as a member but who was not on the register was treated as a member for the purposes of the proceeding. Williams J so held in *Re Independent Quarries Pty Ltd*[25]. An application to dismiss the claim because the claimant did not have standing to proceed was refused. The applicant for relief held share certificates sealed by the company issued upon lodgement of a valid transfer form. The consideration for the transfer had been fully paid. A "rival faction" in control of the company refused to register the transfer. Williams J held that in the circumstances:

> "… [T]he person named in the share certificate as the registered holder of the shares can lawfully claim to be a member of the company" (at 192).

Equity and the common law rule should be no less adaptable.

[51] The approach described above is capable of adaptation to circumstances so as to avoid injustices of the type discussed. The appellant's submission that as a matter of law an equitable owner of shares may not, however clear the title, be permitted to bring a derivative action should be rejected. In this case there is no doubt that one of the two companies, Viscaya Panama and Viscaya Anguilla, is a shareholder in VTL.

[52] In any event, the correctness of the contention that, as a matter of fact, Viscaya Panama and Viscaya Anguilla are not on the register of members of VTL may also be questioned. The members' register is not in evidence. Mr Onigbanjo, the company's current secretary (and also Mr Zabusky's Nigerian lawyer) deposed that he was not aware whether VTL had ever maintained one. But his evidence was far from conclusive on the point; and the fact that no register was produced does not

---

[25] (1993) 12 ACSR 188.

mean one does not exist. Among the documents produced at first instance was an Annual Return for VTL for the year 2000, filed in the Nigerian Corporations Commission by Mr Onigbanjo, recording that VTL's members were Panama and Global. If there is a register, it seems probable that it records similar information. In its absence, it is impossible to reach any conclusion about whether either applicant is a member whose name appears on the register.

[53] These were interlocutory proceedings, in which the evidence was not sufficient to show that the applicants were not members of VTL. And in any event, for the reasons already given, since it was common ground that Viscaya Panama was a shareholder, with the only question being whether it had effectively assigned its shareholding to Viscaya Anguilla, the uncertainty as to whether the names of one or both actually appeared in the register should not be regarded as a bar to their joining the action.

*The requirements of the Company and Allied Matters Acts 1990 (Nigeria)*

[54] Further arguments were advanced to support the ground of appeal asserting error in the finding that Viscaya Panama and Viscaya Anguilla were proper parties. One was that the proper law for considering whether Viscaya Panama and Viscaya Anguilla had standing to bring the derivative action was that of Nigeria, as the place of incorporation of VTL. The *Company and Allied Matters Acts* 1990 *(Nigeria)* sets out requirements for the granting of leave to bring an action on behalf of a company. They include requirements which, the appellants submitted, Viscaya Panama and Viscaya Anguilla could not meet: that the wrongdoers were the directors who were in control and would not take the necessary action, and that the applicants had given notice to the directors of their intention to seek leave to bring the action if the directors did not do so.[26] But this is an argument about whether the derivative action was properly brought, an issue which was resolved by the Chief Justice. The Nigerian provisions have no bearing on the purely procedural question of whether Viscaya Panama and Viscaya Anguilla should be joined to the action under r 69.

*The possible disposition of the cause of action*

[55] Similarly, a further contention, that the van Leeuwen interests could not show that VTL was entitled to the relief claimed because the company no longer owned the cause of action, it having been sold by the receiver, seems also to amount to an attempt to revisit the correctness of the Chief Justice's order permitting the bringing of the action. In any event, whether VTL was still the owner of the cause of action depended, in fact, on the construction of a definition of "excepted assets" in the relevant assets sale agreement; a question, as the learned primary judge observed, properly left for trial.

*Viscaya Anguilla's acquisition of shares with notice of the action*

[56] It was said by the appellants of Viscaya Anguilla that if it took its interest in VTL by assignment from Viscaya Panama, it did so with notice of the action and consequently did not have a real interest in the action sufficient for it to be joined. The cases said to support that proposition were *Towers v African Tug Company*[27]

---

[26] *Company and Allied Matters Acts* 1990 *(Nigeria)* s 303(2)(a) and (b).
[27] [1904] 1 Ch 558 at 556-7.

Retrieved from AustLII on 17 March 2020 at 04:51:45     Verify version

and *Australian Agricultural Co v Oatmont Pty Ltd*.[28] *Towers* was a case in which two shareholders commenced an action on behalf of themselves and, purportedly, all other shareholders against a company and its directors to compel repayment to the company of the amount of a dividend illegally but honestly paid. The two plaintiffs themselves had received the dividend with knowledge of the circumstances of its payment. It was held that an individual shareholder could not complain of an act as ultra vires when he had in hand some of the proceeds of that ultra vires act, whether or not he represented himself as suing on behalf of himself and others.

[57] *Australian Agricultural Co v Oatmont Pty Ltd* concerned not a derivative action, but an application by an individual shareholder, Oatmont, for a declaration that the company, Australian Agricultural Co., had breached relevant legislation prohibiting it from holding more than a specified amount of pastoral land by acquiring control of a third company which held pastoral leases. Oatmont itself had been negotiating to buy the shares in the third company. On the same day Oatmont's solicitors wrote to Australian Agricultural Co. asserting a breach of the legislation, it had bought 50 shares in Australian Agricultural Co. (whose issued share capital was in excess of 14 million shares). Oatmont then proceeded to assert a private right as a shareholder to prevent corporate misuse of power in the form of conduct proscribed by statute. Mildren J, with whom the other members of the Northern Territory Court of Appeal agreed, concluded that Oatmont did not have standing for a number of reasons: it was not in a position to bring a derivative action, but its personal rights were not affected, except as to a possible diminution as to the value of the shares; the conduct complained of was not deliberate, reckless or even negligent; the Attorney-General had refused his fiat, and the prospect of proceedings for any offence were practically non-existent.

[58] As a further consideration, Mildren J noted that when Oatmont applied to purchase its minimal number of shares, it was fully aware of the alleged unlawfulness. Even if the purchases were not made for the sole purpose of giving it standing, the circumstances of their acquisition were sufficient to preclude Oatmont from seeking relief in either a personal or a derivative action. He went on to say that he did not consider it possible to acquire standing,
> "…by the simple expedient of purchasing a few shares on the stock exchange in the company which the purchaser wishes to sue when the purchaser knows full well the circumstances said to give rise to the presumed unlawful conduct of that company."[29]

[59] Nothing in either of the cases cited gives rise to some general proposition that, having taken shares with notice of a derivative action, a shareholder must be barred from that litigation. The circumstances here are entirely dissimilar from those in either *Towers v African Tug Co* or *Australian Agricultural Co v Oatmont Pty Ltd*. There is no suggestion that Viscaya Anguilla stands to benefit from the alleged fraudulent conduct, or that it took an assignment of shares from Viscaya Panama for the purpose of enabling it to litigate. Its joinder with Viscaya Panama is sought simply because of the live question as to which should be regarded as the shareholder in VTL. The contention, that Viscaya Anguilla does not have a sufficient interest to be permitted to join the litigation purely because it had notice of it, must be rejected.

---

[28] (1992) 8 ACSR 255.
[29] At 269.

*The relevance of the retainer point*

[60] Finally, it was said that the learned judge had erred in regarding the joinder of the Viscaya Panama and Viscaya Anguilla as relevant to the retainer issue, which was concerned solely with the internal management of Virgtel and Global. Neither Viscaya Panama nor Viscaya Anguilla, it was pointed out, was incorporated at the time the solicitors were retained. It seems probable that his Honour meant by reference to the retainer issue to indicate that in the event that it was decided against Virgtel and Global, it would be beneficial to have the Viscaya companies as alternative applicants. The learned primary judge proceeded on the basis that whichever of the Viscaya companies was eventually held to be the shareholder in VTL was an appropriate party to join, with both conveniently made parties pending resolution of that issue.

*Conclusion*

[61] The appellants' appeal against the judgment, both in respect of the refusal of the temporary stay and the order for joinder, is without substance and must be dismissed. The appellants should pay the respondents' costs of the appeal.

[62] **P LYONS J:** I agree with the reasons of Holmes and Chesterman JJA and the orders proposed by their Honours.