# CHO LEGAL GROUP LLC
100 Plainfield Ave., Ste. 8E
Edison, NJ 08817
ph. (732) 545 – 9600
fax. (609) 613-5611

*SERVING NEW JERSEY AND NEW YORK*

May 5, 2020

Hon. Victor Marrero
Suite 1040
United States Courthouse
500 Pearl Street
New York, New York, 10007

Re: **WAYNE BALIGA v. LINK MOTION INC. et. al.**
**1:18-cv-11642**
**Response to Court-Appointed Temporary Receiver for Link Motion Inc. Robert W. Seiden, Esq.'s May 2, 2020 letter.**

Dear Judge Marrero:

We represent Intervenor Plaintiff China AI Capital Limited ("China AI") in the above matter. Please accept this letter in response to the letter from the Court-Appointed Temporary Receiver for Link Motion Inc., Robert W. Seiden, Esq.'s (the "Receiver") dated May 2, 2020.

The Court should not consider the Receiver's letter in deciding Plaintiff AI Capital's motion to intervene because it is improper for the Receiver to be advocating for the Plaintiff. "A court-appointed receiver has long been considered a fiduciary, 'bound to perform his delegated duties with the high degree of care demanded of a trustee or other similar fiduciary.'" Boardwalk Realty Assocs., LLC v. Crespo (In re Crespo), 561 B.R. 25, 34, (2016) quoting Crites, Inc. v. Prudential Ins. Co., 322 U.S. 408, 414, 64 (1944). The Supreme Court has held that receivers are required to execute their duties with a "high degree of care demanded of a trustee or other similar fiduciary." Crites, Inc., 322 U.S. at 414. They are not free to act in their own interest or the interests of their associates. Id.

Here, the Receiver was appointed to, among other things protect "the status quo" of Link Motion Inc. See Exhibit A, a true and correct copy of Document 26 the 2/1/19 Order appointing the receiver, ¶ 2. The Receiver does not have standing to oppose the motion to intervene because he is responsible for maintaining the status quo of Link Motion. China AI had invested $7.5 million into the Company and became a registered shareholder well before the Receiver was appointed by this Court. There is no dispute that the Company received the $7.5 million invested by China AI. Taking a position against China AI's standing to intervene as a shareholder will not retain the status quo. If the Receiver believes Link Motion has a claim against China AI he needs to bring that claim separately.

By taking a side in the motion to intervene the Receiver is no longer acting as a neutral third party acting on behalf of the company and its shareholders. Instead he is acting in the interest of Plaintiff, Wayne Baliga, and the Receiver's own law firm, The Seiden Group, which is representing Plaintiff and has a substantial financial interest in recovery from the as much of the company's assets as possible. It is highly unusually for a Receiver to step out of the neutral position and zealously advocate for a shareholder and can be explained only by the Receiver's divided loyalties. This dual representation by the same firm is a conflict of interest that can be seen in the Receiver's letter which takes a position in support of Plaintiff and against China AI.

The conflict between the financial interests of the Receiver's law firm in the action and the Receiver's fiduciary duties as a court appointed receiver. As set forth in China AI's motion papers, the Receiver's law firm brought this derivative action on behalf of Plaintiff for the purpose of having the Receiver appointed to take possession of the company's assets. Yet the Plaintiff *is not* a registered shareholder with standing to sue derivatively. On May 5, 2020, Plaintiff's counsel filed papers in opposition to China AI's motion in which Plaintiff conceded that he is not a shareholder

with standing to sue derivatively. The Receiver's May 4, 2020 report making false accusations against China AI is not a coincidence.

Further, the records submitted by the Receiver are improperly redacted and excerpted from more complete records. Submitting records in this format conceals the truth. To the best of China AI's knowledge, the Receiver now has control over all of the bank accounts and records of the company in China. With that level of access and control, why does the Receiver not submit more complete records in connection with his report? Why submit such limited and excerpted documents? Did the financial interest of the Receiver's law firm, which is representing the Plaintiff, influence the Receiver's selection, redaction, and characterization of the documents attached to his report? China AI is a registered shareholder and entitled to answers to these questions.

The Receiver also claims to state that his agent, Lilin Guo, has "expended hundreds of hours [and] tremendous amounts . . . monetary support" in support of the Receiver's purported investigation. But the Receiver fails to specify in any level of detail what exactly Mr. Guo and the Receiver have done. Now that the Receiver, and his law firm, have gained access to the company's bank account, China AI has every reason to believe the Receiver is using *the same money invested by China AI in 2018* to pay himself, Mr. Guo, and his other friends to supposedly act as a neutral fiduciary. We have no record of how the Receiver is spending this money.

Therefore, the court should not consider the Receiver's May 2, 2020 letter when deciding the motion to intervene and request that the Receiver fully account for all of the Company's assets and his actions.

Respectfully Submitted,

_/s/ Jae H. Cho _____
Jae H. Cho, Esq.
Cho Legal Group, LLC
Attorneys for China AI