**FELICELLO**

Michael James Maloney*
Partner

Felicello Law P.C.
1140 Avenue of the Americas
9th Floor
New York, NY 10036

Tel. +1 (646) 564-3510
mmaloney@felicellolaw.com

May 8, 2020

VIA ECF

Hon. Magistrate Judge Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: *Baliga, et al. v. Link Motion Inc., et al.*, Case No. 1:18-cv-11642 (the "Action")

Dear Judge Freeman:

This firm represents Vincent Wenyong Shi ("Mr. Shi") in the above-referenced Action. Please accept this letter as Mr. Shi's submission in response to the Court's Order, dated May 4, 2020, regarding the issue of service of process and Mr. Shi's standing to challenge the receiver's authority to remove Mr. Shi as a director of Link Motion Inc. ("LKM").

**1. Mr. Shi is Willing to Accept Service on Non-Prejudicial Terms**

Despite Plaintiff's and the receiver's protestations to the contrary, Mr. Shi is not, and has not been, improperly avoiding service of process in this action. In his declaration dated May 21, 2019, Mr. Shi explained that, based on his understanding of applicable laws of the People's Republic of China (the "PRC"), he had a good faith belief that responding to the receiver's early requests would result in Mr. Shi being found in violation of PRC laws restricting foreign control over businesses operating telecommunication value-added services license in the PRC. (ECF Dkt. No. 60, ¶ 9-11, 17-20). The basis for this belief was that at the time, Mr. Shi remained the "legal representative" of LKM's PRC operating subsidiaries that controlled and entity holding a valid telecommunication value-added services license and, therefore, compliance with the receiver's requests could have resulted in Mr. Shi be prosecuted under PRC law.

Now, however, Mr. Shi's understands that the receiver, has now obtained control over KLM's Hong Kong subsidiary and has successfully caused Mr. Guo Lilin to be appointed as the "legal representative" of LKM's wholly foreign-owned operating subsidiary in Beijing (the "WFOE"), which controls the subsidiary holding the relevant license (the "Licensee"). Also, it appears that Mr. Guo has now shutdown all operations of the Licensee. Therefore, it appears the potential risk of Mr. Shi being prosecuted under PRC law by agreeing to accept service of process from this Court appears to have been mitigated.

*Admitted to practice law in New York

But Mr. Shi may still be subjected to undue prejudice by accepting service because the company has failed to comply with its obligations under the Indemnification Agreement for Directors and Officers, dated March 10, 2011 (the "Indemnification Agreement"), by and between Mr. Shi and LKM and which is governed by New York law. Pursuant to sections 5 and 7 of the Indemnification Agreement, LKM is obligated to advance to Mr. Shi the costs of his legal defense in connection with this action. On February 4, 2020, Mr. Shi made a demand to the receiver for reimbursement of legal fees already incurred and a retainer for legal fees expected to be incurred as required under the Indemnification Agreement. The receiver wrongfully rejected this demand on February 18, 2020. Mr. Shi responded on April 23, 2020, explaining why the receiver's rejection was wrongful.[1] Copies of the correspondence and related exhibits are annexed hereto as Annex A. The fact that Plaintiff alleges intentional conduct is not a lawful grounds for denying Mr. Shi the advancement of legal fees to which he is entitled under the Indemnification Agreement. *See*, *e.g.*, *Sierra Rutile Ltd. v. Katz*, 90 Civ. 4913 (JFK), 1997 U.S. Dist. LEXIS 11018, at *10-11 (S.D.N.Y. July 31, 1997) (granting motion by former directors and officers of Cayman Islands corporation for indemnification and advancement of legal fees and expenses in connection with defense of claims brought by the corporation); *Sequa Corp. v. Gelmin*, 828 F. Supp. 203, 207 (S.D.N.Y. 1993).

The receiver has also obtained control over LKM's bank accounts in Hong Kong and the Google and Apple accounts by which the company formerly earned substantial revenue. Upon information and belief, these accounts have more than sufficient assets to comply with Mr. Shi's indemnification demands. Accordingly, LKM should indemnify Mr. Shi, as it is contractually-obligated to do, so that Mr. Shi can defend the claims against him after accepting service of process.

Mr. Shi proposes, and is willing to accept service by, entry of an Order regarding service as follows:
   (i)     Mr. Shi shall be deemed to have accepted service of process in this action only effective as of the date of entry of the Order;
   (ii)    Mr. Shi shall not be held in contempt for any actions or omissions taken before acceptance of service;
   (iii)   Mr. Shi is granted 60 days from the date of entry to move, answer, or otherwise respond to Plaintiff's Second Amended Complaint; and
   (iv)    The receiver shall cause LKM to reimburse Mr. Shi for the legal fees and expenses he has incurred to date in connection with this action and advance the amounts requested in my letter of February 5, 2020

## 2. Mr. Shi's Challenge to the Receiver's Authority was Timely

As referenced in footnote 2 of the Court's Order of May 4, 2020, Local Rule 6.3 provides for a 14-day time limit for motions for reconsideration or reargument. But Mr. Shi respectfully submits that the 14-day time limit provided in Local Rule 6.3 is inapplicable to Mr. Shi's challenge to the receiver's authority.

---

[1] Mr. Shi's response was delayed as a result of complications arising from the COVID-19 pandemic.

First, Mr. Shi first initiated his challenge to the authority of the receiver by moving under Fed. R. Civ. Proc. 60 on March 27, 2019, the same date he originally appeared in the action. (*See* Notice of Motion, ECF Dkt. No. 35). As described by the Court in its June 11, 2019 Decision and Order, Mr. Shi "claims the Company's purported consent to the appointment of a receiver through stipulation was invalid . . .[,] that the Court did not make the necessary findings to appoint a receiver . . . . [and] that the appointment of a receiver violates a Chinese law requiring the Company's Board to be Chinese citizens. (*See* ECF Doc. 64, p. 8)

In the same Decision & Order, the Court dismissed all of the claims against Mr. Shi and granted Plaintiff leave to file an amended complaint. *Id.* After a series of letters exchanged between Plaintiff and Mr. Shi, the Court held a telephone conference on July 29, 2019 in which it directed Mr. Shi and Plaintiff to submit a joint status report setting forth certain "threshold issues" to be submitted to a Magistrate Judge for consideration and report and recommendation. On August 9, 2019, the parties submitted the requested "Joint Status Report," in which they agreed that the first threshold issue to be decided was "[w]hether the receiver exceeded his authority by purporting to remove Vincent Wenyonn Shi ("Mr. Shi") from his office as a director of Link Motion, Inc. (the "Company")." (*See* ECF Doc. 90). Thus, Mr. Shi's challenge to the authority of the receiver is properly before Your Honor.

Second, and as set forth more fully in my letter of March 27, 2020 (ECF Dkt. No. 132), recent developments demonstrate that the receivership order was entered as a result of fraud, misrepresentation, or misconduct by Plaintiff, his lawyers, and/or the receiver. More specifically, it is now clear that Plaintiff is not, and has never been, a shareholder of LKM with standing to sue derivatively. (*See* Declaration of Katie Pearson, dated March 3, 2020 [ECF Dkt. No. 123-1]). As such, all of the derivative claims in this action must be dismissed. *See*, *e.g.*, *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 475 (S.D.N.Y. 2011) (applying Cayman Islands law to find that plaintiff has no standing to bring derivative claims); *Winn v. Schafer*, 499 F. Supp. 2d 390, 395 (S.D.N.Y. 2007); *Cannonball Fund, Ltd. v. Dutchess Capital Mgmt., LLC*, 33 Mass. L. Rptr. 626 (Super. Ct. 2016).

In response to Ms. Pearson's declaration, Plaintiff first argues in its opposition to China AI's motion to intervene that the FAC asserts direct claims, not merely derivative ones, and thus, the fact that Plaintiff holds ADS rather than shares is not material. But the pleadings on their face make clear that Plaintiff is suing derivatively. Further, apparently recognizing that he would not be entitled to the appointment of a receiver without derivative claims, Plaintiff next argues that whether a holder of ADS may sue derivatively on behalf of a Cayman Island company is a procedural issue governed by New York law and not a substantive issue governed by the law of the jurisdiction of incorporation. Yet, the case Plaintiff cites for this proposition is inapposite. In *Davis v. Scottish Re Grp. Ltd*, the question was whether a proper Cayman Island derivative plaintiff was required to comply with a specific Cayman Island procedure of seeking leave of the Cayman Islands Grand Court before bringing suit. 30 N.Y.3d 247, 252 (2017). *Davis* did not address rights afforded to holders of mere ADS versus shares. And Plaintiff has no cited no caselaw, and we could not locate any, which holds that the Cayman Islands law that only permits shareholders,

rather than holders of ADS, to sue derivatively is a law of procedure.[2] Plaintiff is wrong. The mere holder of ADS of a Cayman Islands company has no standing to sue derivatively. *See*, *e.g.*, *Howe*, 783 F. Supp. 2d at 475; *Winn*, 499 F. Supp. 2d at 395; *Cannonball Fund, Ltd.*, 33 Mass. L. Rptr. 626.

Whether Plaintiff here has standing to sue derivatively directly bears on the challenge to the receiver's authority because the receiver is the managing partner of the ***same law firm*** that represents Plaintiff. Plaintiff himself stated in his January 24, 2019 affidavit that the Court should "appoint Robert W. Seiden ("Mr. Seiden") as the temporary receiver" because Plaintiff "specifically hired Mr. Seiden's law firm to pursue this action. . . ." (ECF Dkt. No. 24, ¶ 3). It is clear that Plaintiff, the receiver, and the law firm he controls, worked together to draft the Complaint that falsely alleges Plaintiff's status as a shareholder of LKM.

By letter dated March 27, 2020, Mr. Shi promptly brought to the attention of the Court the relation between this new evidence and foregoing misrepresentations and misconduct, all of which qualifies for relief under Fed. R. Civ. Proc. 60(b)(2) and (b)(3), and Mr. Shi's challenge to the receiver's authority.

Third, the grounds for the challenge set forth in my letter of August 9, 2019, and described more fully in my letter of August 29, 2019 (ECF Dkt. No. 95), are not subject to any time limitation because these grounds demonstrate that the receiver's action exceeded the power and authority of the Court and, therefore, are void *ab initio*. While court-appointed receivers may "remove" directors from "control" of a corporation, a receiver's powers do not extend to the removal of a person from the position as director of a company. Only shareholders may appoint or remove directors from their offices. "Modern court decisions are fairly consistent in holding that, absent statutory authorization, there is no judicial power to remove legally elected directors, even on a showing of directors' dishonesty or inability to perform their duties. . . .". *See* § 9:16. Judicial removal of directors, 2 Treatise on the Law of Corporations § 9:16 (3d). There is no statutory authority that permits the Court – or receivers appointed by the Court – to remove a director from his position as a director, even if that director loses control by way of the appointment of the receiver. Thus, the scope of the receivership order never included the power to remove Mr. Shi from his *position* as a director even if it did include the power to remove all directors from *control*. Absent such power, the receiver's action in purporting to remove Mr. Shi as a director was void *ab initio*, regardless of when Mr. Shi raised these grounds to challenge the receiver's actions.

Finally, we are continuing to investigate misconduct relating to the receivership in this action. Since the receiver successfully obtained control over LKM, its Hong Kong subsidiary, and the WFOE subsidiary, we have received information suggesting that the receiver has shut down all business activities and terminated all employees. We have also received information suggesting that the receiver, and his agent, Mr. Guo Lilin, are refusing to pay judgments obtained by employees for unpaid wages. Given the Mr. Guo's position as legal representative of the WFOE,

---

[2] Indeed, it is reasonable to assume that the forum of incorporation would be interested in making a distinction between shareholders and mere owners of beneficial interests, such as ADS, in terms of who would be a proper representative to sue on behalf of the company.

Hon. Debra Freeman
May 8, 2020
Page 5 of 5

he is legally responsible for satisfying these claims and, with access to the company's Hong Kong bank accounts, should have ample resources to do so. There appears to be no justified reason not to pay these former employees. Accordingly, we are seeking to locate court records regarding these claims and reserve the right to submit newly obtained evidence, as it becomes available, in further support of Mr. Shi's challenge to the receivership.

    Thank you for your consideration of this matter.

    Respectfully submitted,

    */s/ Michael James Maloney*

    Michael James Maloney

cc:    All counsel of record (via ECF)

Attachments