UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

                       Plaintiff,

      -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI,
JIA LIAN,
XIAO YU,

                    Defendants,

      -and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

                 Nominal Defendant.

---

Civil Action No.: 1:18-cv-11642

---

**REPLY MEMORANDUM OF LAW OF INTERVENOR-PLAINTIF CHINA AI CAPITAL LIMITED IN FURTHER SUPPORT OF MOTION TO INTERVENE AS OF RIGHT AND FOR MODIFICATION OF THE COURT'S ORDER DATED FEBRUARY 1, 2019**

CHO LEGAL GROUP LLC
100 Plainfield Ave., Ste 8E
Edison, NJ 08817
Tel. 732-545-9600

*Attorneys for Intervenor-Plaintiff China AI Capital Limited*

Of counsel:    Jae H. Cho

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iiiii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS IN REPLY ........................................................................... 2

A.      Plaintiff Concedes that He is Not a Registered Shareholder of the Company ........ 2

B.      Corporate Records Demonstrate that China AI is not an "alter ego" of Mr. Shi .... 2

C.      The Transfer of Funds to the Luxembourg Branch of China Merchants Bank Ltd.
        Was a Run-of-the-Mill Repayment of a Loan Obligation of the Company. ........ 45

D.      Skadden Arps never opined on the bona fides of the Class B share subscription. 56

E.      LKM's Articles of Association permit an entity who is not a Founder Affiliate to
        hold Class B shares. .................................................................................... 67

F.      Plaintiff Does Not Adequately Represent the Interests of China AI or any of the
        Registered Shareholders ............................................................................ 8

G.      China AI's Motion is Timely and The Receivership Order Should be Modified ... 9

ARGUMENT .......................................................................................................... 1112

POINT I.      CHINA AI IS SEPARATE AND DISTINCT FROM VINCENT SHI ........... 1112

POINT II.     CHINA AI'S MOTION IS TIMELY ............................................. 1415

POINT III.    NEITHER PLAINTIFF NOR ANY OF THE EXISTING PARTIES
              ADEQUATELY REPRESENT CHINA AI'S INTERESTS .......................... 1617

POINT IV      THE COURT SHOULD MODIFY THE RECEIVERSHIP ORDER .............. 2021

CONCLUSION ...................................................................................................... 2223

# TABLE OF AUTHORITIES

## Cases

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 348 (S.D.N.Y. 2009) .. 12, 14, 15

*CIFI Latam, S.A. v. Tauch*, No. 19-CV-05607 (LTS)(SN), 2020 U.S. Dist. LEXIS 43193 (S.D.N.Y. Mar. 11, 2020). ..................................................................................... 16

*Citizens for an Orderly Energy Policy, Inc. v. Cnty. of Suffolk*, 101 F.R.D. 497 (E.D.N.Y. 1984) ................................................................................................................. 15

*Dow Jones & Co., Inc. v. United States Dep't of Justice*, 161 F.R.D. 247 (S.D.N.Y.1995)... 14, 17

*Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-cv-06685 (ALC), 2019 U.S. Dist. LEXIS 55916 (S.D.N.Y. Mar. 29, 2019) ........................................................... 18

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S. Ct. 1961, 144 L. Ed. 2d 319 (1999) ........................................................ 22

*Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 2011 BL 55355 (S.D.N.Y. 2011) ...... 19

*Izzo Golf Inc. v. King Par Golf Inc.*, No. 02-CV-6012 CJS, 2019 U.S. Dist. LEXIS 145678 (W.D.N.Y. Aug. 26, 2019) ............................................................. 13, 14

*Mason-Mahon v. Flint*, 2018 NY Slip Op 07716, ¶ 1, 166 A.D.3d 754, 87 N.Y.S.3d 556 (2d Dep't 2018) .......................................................................................... 19

*Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993) ...................................................................................... 11

*NAACP v. New York*, 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973) ................................ 14

*NML Capital, Ltd. v. Republic of Arg., No. 14-cv-8601 (TPG)*, 2016 U.S. Dist. LEXIS 20633 (S.D.N.Y. Feb. 19, 2016) .......................................................... 21

*Owens v. Gaffken & Barriger Fund LLC*, 2009 U.S. Dist. LEXIS 24487 (S.D.N.Y. Mar. 23, 2009) ........................................................................................................ 22

*Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 43 S. Ct. 454 (1923) ........................................... 22

*Sackman v. Liggett Group, Inc.*, 167 F.R.D. 6 (E.D.N.Y. 1996) ................................................. 14

*See In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003) ............................... 19

*Steginsky v. Xcelera Inc.*, 741 F.3d 365 (2d Cir. 2014) ............................................................... 18

*Tang Capital Partners, LP v. Cell Therapeutics, Inc.*, 591 F. Supp. 2d 666 [S.D.N.Y. 2008] .... 22

*Trbovich v. United Mine Workers of America*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) ........................................................................................................... 17

*United States ex rel. Preferred Masonry Restoration, Inc. v. Int'l Fid. Ins. Co.*, No. 17-CV-1358 (KMK), 2019 U.S. Dist. LEXIS 148583 (S.D.N.Y. Aug. 30, 2019) ....................... 15

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994) .................................................. 14

*Valley Disposal v. Cent. Vt. Solid Waste Mgmt. Dist.*, 31 F.3d 89 (2d Cir. 1994) ...................... 13

*Winn ex rel. Scottish Re Group Ltd. v. Schafer*, 499 F. Supp.2d 390, 2007 BL 19947 (S.D.N.Y. 2007) ............................................................................................................................. 20

**Statutes and Rules**

Fed. R. Civ. Proc 60                                                                                    1, 20

Fed. R. Civ. Proc. 24(a)(2)                                                                                 1

Intervenor-Plaintiff China AI Capital Limited ("Intervenor-Plaintiff" or "China AI"), by and through its undersigned attorneys, hereby respectfully submits this reply memorandum of law in further support of its motion for an order, pursuant to Fed. R. Civ. Proc. 24(a)(2), for leave to intervene as of right and file its proposed Complaint in Intervention, and pursuant to Fed. R. Civ. Proc. 60 modifying this Court's Order, dated February 1, 2019 (ECF Dkt. No. ("Dkt.") 26, the "February 1, 2019 Order").

## PRELIMINARY STATEMENT

Before all else, it is puzzling and surprising that Plaintiff so strenuously opposes a simple motion to intervene by a major shareholder of defendant Link Motion, Inc. ("LKM" or the "Company"). Even more surprising are the lengths that Plaintiff has gone in mischaracterizing the true facts. Plaintiff argues that there is an undisclosed relationship between Defendant Vincent Wenyong Shi and China AI, that China AI's motion is untimely, and that Plaintiff "adequately" represents the interests of shareholders of the Company. All three of these arguments are contrary to the facts and unavailing. None of Plaintiff's arguments address the central reason why China AI must be allowed to intervene here: Plaintiff does not have, and never had, any legal standing to bring this action derivatively, misrepresented this fact in his pleadings and, therefore, cannot adequately represent the interests of China AI, a registered shareholder, in this action. China AI does have legal standing to sue derivatively and, therefore, should be permitted to intervene.

Moreover, the conclusions presented by Robert W. Seiden, the court-appointed receiver (the "Receiver"), in his letters of May 2, 2020 and May 20, 2020, are based on a selective and out-of-context reading of certain documents. These conclusion are contradicted by corporate and judicial records submitted by China AI. Indeed, the fact that the Receiver's conclusions are so

demonstrably and arbitrarily one-sided and unsupported, along with the fact that the Receiver is the managing partner of the same law firm representing Plaintiff, calls into question the fidelity of the Receiver himself.

<strong>STATEMENT OF FACTS IN REPLY</strong>

By Order dated May 21, 2020,[1] the Court directed the parties to address in the context of this motion, assertions raised in the Receiver's letters of May 2, 2020[2] and May 20, 2020.[3] Accordingly, China AI submits the following Statement of Facts in Reply:

**A.  Plaintiff Concedes that He is Not a Registered Shareholder of the Company.**

In response to China AI's opening papers, Plaintiff submits an updated shareholder register confirming that he is ***not, and never was, a registered shareholder*** of the Company.[4] As set forth in the Declarations of Katie L. B. Pearson, dated March 3, 2020 and May 22, 2020, holders of American Depositary Shares ("ADSs"), such as Plaintiff, are not recognized as shareholders under laws of the Cayman Islands.[5] Thus, Plaintiff lacks standing to sue derivatively. China AI, as a duly registered shareholder whose rights are recognized under Cayman Islands law, does have standing to sue derivatively.

**B.  Corporate Records Demonstrate that China AI is not an "alter ego" of Mr. Shi.**

Plaintiff's primary argument in opposition, that China AI is an "alter ego" of defendant Mr. Shi, is unsupported and, in fact, contradicted by the corporate records and other admissible evidence.

First, Plaintiff suggests that the funds used by China AI to purchase Class B shares of the Company in July 2018 somehow originated from a 2017 venture investment transaction between

---

[1] Dkt. No. 152.
[2] *See* Declaration of Jake Nachmani, dated May 4, 2020 (the "Nachmani Decl."), at Ex 1; Dkt. No. 142-1
[3] *See* Declaration of Jae H. Cho, dated May 29, 2020 (the "Cho Reply Decl."), at Ex. Z.
[4] *See* Nachmani Decl., at Ex 2; Dkt. No. 142-2.
[5] *See* Dkt. No. 123-2; Second Declaration of Katie L. B. Pearson, dated May 22, 2020.

2

the Company and "HH Medic." Plaintiff's suggestion is completely disingenuous and stems from either carelessness or intentional misidentification of legal entities. "HH Medic" is only an English language shorthand for the name "HH Medic Group," a Chinese technology company founded by in 2015 by Mr. Yu "Bruson" Li.[6] HH Medic Group is organized as a commonplace Variable Interest Entity ("VIE") corporate structure.[7] The HH Medic Group operates through its Cayman Islands holding company HH-Medic Inc., the shares of which are held by investors of the HH Medic Group.[8]

There is no dispute that in 2017 the Company invested funds in *HH-Medic Inc.* – the Cayman Islands holding company. The investment was duly authorized by the Company's investment committee[9] and was made alongside several other investment funds, including CID Greater China Fund V, L.P., STCH Investment Inc., and Frees Fund LP, pursuant to a Series A+ Preferred Share Purchase Agreement.[10] The Member Register of HH-Medic Inc. shows that the Company still holds an equity interest in HH-Medic Inc.[11]

However, this 2017 transaction has nothing to do with the 2018 investment by China AI, as so carelessly alleged by Plaintiff.  Neither HH-Medic Inc. nor HH Medic Group paid any portion of the subscription fee for China AI's 2018 investment in the Company.[12]

Rather, an entirely separate and distinct British Virgin Islands company called HH-Medic Partner Inc. ("HH BVI") paid Mr. Li's portion of the subscription fee for the 2018 investment by China AI.[13] HH BVI is owned solely by Mr. Li and was formed as his personal investment

---

[6] *See* Declaration of Hua Jingyuan, dated May 27, 2020 (the "Hua Decl."), at ¶¶ 5-27.
[7] *See* Hua Decl., at ¶¶ 16-17, Ex. E. at pp.1,22.
[8] *See* Hua Decl., at ¶¶ 16-17, 25, Ex. E. at pp.1,22.
[9] *See* Hua Decl., at ¶¶ 26, Ex. F.
[10] *See* Hua Decl., at ¶¶ 25, Ex. E.
[11] *See* Cho Reply Decl., at Ex. W.
[12] *See* Hua Decl., at ¶¶ 23-27.
[13] *See* Hua Decl., at ¶¶ 20-27; Cho Reply Decl., at Ex. U

vehicle.[14] When, in or around July 2018, Mr. Li decided to acquire a 50% interest in China AI for the purpose of joining in the investment in Class B shares of the Company, he used his own funds from HH BVI to contribute his portion of the investment.[15] All of the funds Mr. Li invested into the Company through China AI belonged to him personally and he is not beholden to Mr. Shi or any other person in connection with that investment.[16] Plaintiff's contention that Mr. Li's prior position at the Company as a Vice President somehow causes him to be beholden to Mr. Shi is spurious because during nearly all of Mr. Li's tenure at LKM, from 2011 through 2015, Henry Lin was the Chairman and CEO of LKM, not Mr. Shi.[17]

Plaintiff's coloring of these legal entities and transactions to be intertwined is pure speculation without any supporting documentation. In reply, China AI has submitted documentary evidence showing that Mr. Li's and China AI's involvement in the 2018 transaction was independent of Mr. Shi.

### C.  The Transfer of Funds to the Luxembourg Branch of China Merchants Bank Ltd. Was a Run-of-the-Mill Repayment of a Loan Obligation of the Company.

Likewise, Plaintiff's reliance on the so-called "Luxembourg" payment as evidencing an improper relationship between Mr. Shi and China AI is also a false canard. In or around June and July 2016, the Company became obligated to repurchase its 4.00% Convertible Senior Notes due October 15, 2018 (the "Notes").[18] This was duly disclosed in the Company's 20-F annual report.[19] The Company was obligated to repurchase these notes in United States Dollars, but most of LKM's cash reserves were held in Chinese Renminbi ("RMB").[20]

---

[14] *See* Hua Decl., at ¶¶ 20-27, Ex. D.
[15] *See* Cho Reply Decl., at Ex U; Hua Decl., at ¶¶ 20-27.
[16] *See* Hua Decl., at ¶¶ 18-27; Cho Reply Decl., Ex. U.
[17] *See* Hua Decl., at ¶¶ 28-34.
[18] *See* Hua Decl., at ¶¶ 35-48; Ex. G.
[19] *See* Hua Decl., at ¶ 38; Ex. G.
[20] *See id.*

Due to severe restrictions under PRC laws governing the conversion of the Company's RMB denominated funds into foreign currencies (*e.g.*, the U.S. Dollar),[21] the Company entered into loan agreements with the Luxembourg branch of China Merchants Bank Ltd. ("China Merchants Bank") requiring the Company to pledge its RMB cash to the Beijing branch of China Merchants Bank as security for loans from the Luxembourg branch denominated in U.S. Dollars for the purpose of repurchasing the Notes.[22]

The loan agreements with China Merchants Bank specifically mention repurchase of the Notes and required that the Company repay these loans to the Luxembourg branch on or before July 31, 2018.[23] Once repaid, the Beijing branch returned to the Company the RMB cash pledged for the loan. China AI has produced copies of these loan documents and accounting vouchers evidencing the disbursement of loan proceeds and repayment in full in July 2018.[24] Although this these payments were nothing more than a commonplace international loan transaction for the purpose of obtaining foreign currency necessary to satisfy corporate obligations, Plaintiff (and the Receiver) incorrectly paints this transaction as suspicious, without any documentary support.

**D.  Skadden Arps never opined on the bona fides of the Class B share subscription.**

Plaintiff's speculation that Skadden Arps specifically objected to the Class B transaction with China AI, and resigned as counsel as a result, is not grounded in any factual basis. Notably, Plaintiff either carelessly or intentionally failed to file on ECF a copy of the email that purportedly supports this incorrect conclusion.[25] The email itself indicates that Skadden Arps was ***not requested*** to provide legal advice concerning the transaction and it was "not clear" to

---

[21] *See* Hua Decl., at ¶ 37.

[22] *See* Hua Decl., at ¶¶ 40-46; Exs. H, I, J, K. Although Ex. I is unsigned, China AI is continuing its efforts to locate a signed copy of Ex. I.

[23] *See* Hua Decl., at Ex. H, at § 2, and Ex. I.

[24] *See* Hua Decl., at Exs. H, I, J, K.

[25] *See* Nachmani Decl., at Ex. 1 at p.3. In page 3 of his letter, the Receiver refers to an email originally annexed to his letter as "Ex. B." Ex. B was not attached to the Nachmani Decl. or filed on ECF. A copy of the email is annexed to the Cho Reply Decl, at Ex. V.

Skadden "whether the transaction apparently discussed at the board meeting earlier today was related to the one raised with Skadden previously."[26] In other words, Skadden did not know about the China AI investment because the Company had retained other counsel. In response to the email from Skadden Arps, then LKM-representative, Justin Chen, indicates that the earlier discussion with Skadden about a proposed transaction "was limited" and did not go into specifics.[27]

Moreover, the emails make clear that the decision to terminate the attorney-client relationship with Skadden was made independent of the Company's desire to move forward with the Class B transaction with China AI, suggesting that the Company had already retained separate counsel who had prepared the materials relating to the Class B Transaction.[28] In fact, DLA Piper represented the Company in connection with the China AI investment.[29] Thus, there is no basis or support for the allegation that Skadden Arps rendered an opinion one way or the other as to the transaction with China AI or had any knowledge about the actual terms of that transaction. Skadden had already been replaced with DLA Piper and it would be mere speculation to suggest that Skadden Arps' statements in the email should be given any weight to prevent intervention by China AI, a registered shareholder of the Company. Skadden's statements simply make clear that it had not undertaken any legal representation, or rendered any opinion, in connection with the transaction.

### E.  LKM's Articles of Association permit an entity who is not a Founder Affiliate to hold Class B shares.

Further, Plaintiff's claim that China AI cannot hold Class B shares or by holding them *must* somehow be an affiliate of Mr. Shi, demonstrates an astounding miscomprehension of the

---

[26] *See* Cho Reply Decl., Ex. V (Ex. B to May 2, 2020 Letter from Receiver).
[27] *See id*.
[28] *See id*.
[29]  *See* Cho Reply Decl., at Ex. X, at § 9(k)(ii).

corporate documents. Nothing in the text of the Articles of Association cited by Plaintiff[30]
requires every holder of Class B shares to be a Founder[31] or Founder's affiliate. Nothing in the
text of those provisions prohibited the Board of Directors from duly authorizing the issuance of
Class B shares to China AI or any other party not affiliated with a Founder.[32] The cited
provisions merely place restrictions on any ***subsequent transfer*** of Class B shares, requiring that
in the event a registered holder of Class B shares transfers its shares to a person or entity who is
not a Founder or Founder Affiliate, then the shares are automatically converted to Class A
shares.[33] The Class B shares were duly issued to China AI and there has been no subsequent
transfer by China AI.[34] The fact that China AI holds the Class B shares is not an admission that
China AI is an affiliate of the Founders, Mr. Shi or Mr. Henry Lin.

The Receiver annexed to his May 2, 2020 letter a declaration by a Ms. Guo *Lingyun*.[35] It
should be noted that Ms. Guo *Lingyuan* is the wife of co-founder Henry Lin and should not be
confused with Mr. Guo *Lilin*, who is the Receiver's agent in the PRC. Ms. Guo *Lingyun*'s
declaration should be disregarded as her contention that the Company had no urgent need for
cash in July 2018 is flatly contradicted by the corporate records evidencing the Repayment Date
of July 31, 2018 of the loan from China Merchants Bank.[36] Ms. Guo Lingyuan claims to have

---

[30] Plaintiff failed to submit with his opposition papers a copy of the excerpt of the Company's Articles of
Association that was annexed as "Exhibit F" to the Receiver's May 2, 2020 letter. A copy of that excerpt is annexed
to the Cho Reply Decl. at Exhibit Y.
[31] The Founders are Henry Lin and Vincent Wenyong Shi. As alleged in China AI's Complaint in Intervention,
Henry Lin has engaged in a years-long campaign to take control of the Company through wrongful means. China AI
belives that Henry Lin's wife, Guo Lingyuan, has been aiding and abetting Henry Lin in this wrongful campaign.
[32] *See* Cho Reply Decl., at Ex Y.
[33] *See id.* ("Upon any sale, pledge, transfer, assignment or disposition of Class B Common Shares by a holder
thereof to any person or entity which is not an Affiliate of such holder or a Founder or an Affiliate of one or more
Founders, each such Class B Common Share shall be automatically and immediately converted into one Class A
Common Share").
[34] *See* Hua Decl., at Ex. F; Nachmani Decl, at Ex. 2.
[35] Plaintiff failed to file on ECF a copy of the Declaration of Guo Lingyuan. A copy of that declaration is annexed as
Exhibit AA to the Cho Reply Declaration.
[36] *See* Hua Decl., at Ex. H at p.2 § 1 (defining "Repayment Date" as twenty-four months from the date of the Loan
Agreement, *i.e.*, July 2018).

knowledge about the Company's affairs during the time the Company's obligation to China Merchants Bank came due in July 2018. In light of the documentary evidence to the contrary, Ms. Guo Lingyun has either intentionally or recklessly misrepresented the truth as to the Company's urgent need for cash in July 2018 or her personal knowledge about the Company's affairs.[37]

### F. Plaintiff Does Not Adequately Represent the Interests of China AI or any of the Registered Shareholders

The indisputable fact is that in July, 2018, the Company was obligated to repay its U.S.$10 million loan from China Merchants Bank.[38] The Company had, therefore, an urgent need for cash and sought an equity investor willing to invest U.S.$10 million into the Company in order to satisfy the Company's obligation to China Merchants Bank. China AI agreed to make the investment, but bargained for Class B shares and the voting rights and other protections that come with such a position.[39] The investment was duly authorized by all parties[40] and the accounting vouchers and other records submitted by China AI show that these funds belonged to the principals of China AI at the time, Mr. Bruson Li and Mr. Chi Rui.[41]

Plaintiff is not a registered shareholder and lacks standing to sue derivatively. China AI is a registered shareholder and has standing to sue derivatively. Moreover, Plaintiff has failed to present credible evidence showing that Mr. Shi  had any interest in China AI or the funds invested into the Company by China AI. On these facts, China AI has an interest in the case and is not being adequately represented by any existing party.

---

[37] As set forth in China AI's proposed Complaint in Intervention, China AI intends to prove that this action is one part of a years-long effort by Henry Lin and his wife, Ms. Guo Lingyuan, to take control of the Company and its assets by wrongful means.

[38] *See* Hua Decl., at Ex. H at p.2 § 1 (defining "Repayment Date" as twenty-four months from the date of the Loan Agreement, *i.e.*, July 2018).

[39] *See* Cho Reply Decl., at Ex. X.

[40] *See* Hua Decl, at Ex. F; Cho Reply Decl., at Ex. X.

[41] *See* Hua Decl., at ¶¶ 6-14; Cho Decl., at Ex. U.

**G. China AI's Motion is Timely and The Receivership Order Should be Modified.**

In December 2018, Plaintiff wrongfully brought derivative claims seeking the appointment of the Receiver, all based on Plaintiff's false allegations that he was a registered shareholder who had standing to sue derivatively. Without the benefit of the truth (*i.e.*, that Plaintiff utterly lacked standing), the Court appointed the Receiver to take control over the Company. The Receiver, through his PRC agent, Mr. Guo *Lilin*, now has control over the Company, its subsidiaries in Hong Kong and the PRC, and the Company's bank and social media accounts.[42] Yet, instead of preserving the Company's operations, the Receiver's proxy in the PRC, Mr. Guo Lilin, has now terminated all operations of the Company and all employees and is failing to satisfy the Company's legal obligations.[43]

Further, in an ordinary case, a shareholder might hope to rely on the fiduciary obligations of a court-appointed receiver to act in the best interests of all shareholders. But China AI did not discover until in and around the fall of 2019 that the Receiver, through his agent, Mr. Guo Lilin, was shutting down operations and otherwise harming the Company.[44] We know now that Mr. Guo's actions ultimately led to judgments being entered against the Company by former employees seeking wages. Instead of paying these judgments, Mr. Guo wrongfully appealed them without any basis in law or fact.[45] Predictably, the judgments have now been affirmed.[46] China AI timely retained counsel and filed its motion on November 1, 2019.[47]

The Receiver has wholly mischaracterized the restrictions order entered against Mr. Guo Lilin in the PRC. The restrictions order is the result of *Mr. Guo's* own decision to appeal the judgments, not any action by Mr. Shi or any other person or even the entry of the original

---

[42] *See* Hua Decl., at ¶¶ 51, 56-60.
[43] *See* Hua Decl., at ¶ 75.
[44] *See* Hua Decl., at ¶¶ 49-68, 74-75.
[45] *See* Hua Decl., at ¶¶ 63-67; Exs. P, Q, R, S.
[46] *See* Hua Decl., at Exs. P, Q, R, S.
[47] Dkt. No. 111.

judgments.[48] Since March 2019, Mr. Guo Lilin has been the only Chairman and legal representative of the judgment-debtor in the PRC.[49] As such, only Mr. Guo and no one else can legally prosecute an appeal of the judgments. It was, therefore, Mr. Guo's decision to wrongfully appeal the judgments, which led to the predictable denial by the appeals court. The temporary restraining order issued by the Haidian court, referred to in the May 20, 2020 letter, only restrained one of the Company's accounts during the pendency of litigation between Mr. Guo and Mr. Xu Zemin relating to a forgery by Mr. Guo.[50] The litigation was commenced by Mr. Xu, former CEO of the Company, and was totally independent of Mr. Shi.[51] Further, not only could Mr. Guo have sought relief from that order after the conclusion of his litigation with Mr. Xu, but Mr. Guo and the Receiver have had access to the Company's other bank accounts and social media accounts for some time.[52] Indeed, they have been paying themselves from Company funds.[53] Thus, the restriction order was the result of Mr. Guo Lilin's own actions and decisions.

It is noteworthy that the Receiver fails to mention the material facts about Mr. Guo Lilin's actions and the transactions described above while at the same time he serves in the dual capacity as the managing partner of the same 12 or so attorney law firm representing Plaintiff and, therefore, has at least an indirect economic interest in the outcome of Plaintiff's claims. Indeed, Plaintiff's opposition is based almost entirely on the Receiver's letters, which selectively omit and mischaracterize the relevant facts, effectively delegating to the Receiver the role of advocate for Plaintiff.

---

[48] *See* Hua Decl., at ¶¶ 63-67; Exs. P, Q, R, S.
[49] *See* Hua Decl., at ¶¶ 63-67; Exs. P, Q, R, S.
[50] *See* Hua Decl., at ¶¶ 49-54, Exs. L, M, N.
[51] *See* Declaration of Xu Zemin, dated May 29, 2020.
[52] *See* Hua Decl., at ¶¶ 58-60; *see, e.g.*, Dkt. Nos. 78 (July 1, 2019 order authorizing Receiver to disburse funds for expenses), 97 (September 19, 2019 order authorizing Receiver to disburse funds for expenses), 100 (September 25, 2019 order directing Google to submit funds to the Receiver).
[53] *See id.*

# ARGUMENT

## POINT I.

### CHINA AI IS SEPARATE AND DISTINCT FROM VINCENT SHI

Plaintiff's argument that China AI should not be granted leave to intervene because it is an "alter ego" of Defendant Vincent Shi should be rejected as contrary to the facts and law. It is black letter law that the corporate veil will only be pierced where "[t]he party seeking to pierce the corporate veil [has] establish[ed] that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene. . . ." *Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141-42, 603 N.Y.S.2d 807, 811, 623 N.E.2d 1157, 1161 (1993) (internal citations and quotations omitted).

Here, the so-called "facts" recited by Plaintiff in support of its alter ego argument are contradicted by documentary evidence. China AI was formed by Chi Rui. Mr. Li became a shareholder in July 2018. Mr. Li and Mr. Chi served as the only directors of China AI until January 2019, when Mr. Chi sold his interest to Mr. Li. In August 2019, Mr. Li sold his entire interest in China AI to Mr. Hua.[54] Mr. Shi has never had any interest in China AI, beneficial or otherwise, and has never served as a director or officer of China AI.[55] On a motion to intervene, the Court must "accept as true the non-conclusory allegations of the motion and must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases. . . ." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009). China AI has done more than state non-conclusory allegations, it has produced admissible records refuting Plaintiff's contentions.

---

[54] *See* Hua Decl., at Ex. B.
[55] *See id.*

Plaintiff insinuates that Company funds from a 2017 transaction were used to pay for the Class B shares issued to China AI. But the records show that China AI purchased those shares using funds provided by Mr. Yu Li and Mr. Chi Rui personally. Mr. Li provided one-half of his share of the funds through his personal investment vehicle HH Medic Partner Inc., a British Virgin Islands limited company separate and distinct from LKM and Mr. Shi.

As described above, Plaintiff's error derives from his failure to properly identify the legal entities involved in the relevant transactions. In 2017, the Company invested in *HH Medic Inc.*, the Cayman Islands holding company that controls HH Medic Group. The funds used by Mr. Li for the 2018 transaction between China AI and the Company were obtained from Mr. Li's *personal* investment vehicle HH Medic Partner Inc. The Company never provided any investment funds to HH Medic Partner Inc.. Plaintiff and the Receiver simply misread the papers.

Likewise, Plaintiff wrongfully mischaracterizes the July 2018 payment to the Luxembourg branch of China Merchants Bank. The payment was made to fulfill the Company's obligations under a 2016 loan from China Merchants Bank for the repurchasing the Notes. The loan was a standard loan transaction involving a pledge of the company's RMB cash in order to raise foreign currency, in this case United States Dollars.

There is simply no evidence to support Plaintiff's and the Receiver's misguided contentions. None of these transactions establish any domination by Mr. Shi over China AI. None of these transactions demonstrate any wrongful conduct. Accordingly, there is no basis in law or fact to find that China AI is an alter ego of Mr. Shi.

The cases cited by Plaintiff are inapplicable here or otherwise inapposite. *Valley Disposal v. Cent. Vt. Solid Waste Mgmt. Dist.*, 31 F.3d 89, 102 (2d Cir. 1994), does not relate to the

consideration of alter ego status in connection with a motion to intervener. It appears Plaintiff has cited *Valley Disposal* solely for the purpose of reciting the factors that courts considered in performing an alter ego analysis. Those factors are:

> (1) whether the shareholder sought to be charged owns all or most of the stock of the corporation; (2) whether the shareholder has subscribed to all of the capital stock of the corporation or otherwise caused its incorporation; (3) whether the corporation has grossly inadequate capital; (4) whether the shareholder uses the property of the corporation as his own; (5) whether the directors or executives of the corporation act independently in the interest of the corporation or simply take their orders from the shareholder in the latter's interest; and (6) whether the formal legal requirements of the corporation are observed.

*Valley Disposal v. Cent. Vt. Solid Waste Mgmt. Dist.*, 31 F.3d 89, 102-03 (2d Cir. 1994).

In light of the facts discussed above, each of those factors weighs in favor of finding that China AI is not an alter ego of Mr. Shi.

Moreover, *Izzo Golf Inc. v. King Par Golf Inc.*, No. 02-CV-6012 CJS, 2019 U.S. Dist. LEXIS 145678 (W.D.N.Y. Aug. 26, 2019), is readily distinguishable. In *Izzo*, the plaintiff patentholder obtained a judgment against the defendant for willful patent infringement. Just prior to the trial, however, "Baird [the principal of the defendant King Par] sold King Par's assets and deposited the proceeds into his personal bank account, without notifying anyone, including Izzo [the Plaintiff], this Court or his own attorney." *Id*., at *7. The principal who orchestrated the sale later moved to intervene in order to contest his potential personal liability on the judgment. *Id*., at *8. While the motion was pending, the court made a finding of fact in a companion case that the principal was the alter ego of the judgment-debtor. The court then denied the motion to intervene based on the prior finding of fact in the companion case. *Id*., at *9.

The facts and circumstances of this case are entirely different. There were no sales or transfers of Company funds or assets to China AI or any of its principals. The funds actually

used to purchase the Class B shares of LKM were personal funds belonging to Mr. Li and Mr. Chi. Accordingly, *Izzo* is inapposite.

## POINT II.

### CHINA AI'S MOTION IS TIMELY

In determining whether a motion to intervene is timely, courts generally consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 [2d Cir. 1994]) (internal quotations omitted). The standard for timeliness is a "flexible" one and is left to the sound discretion of the trial court. *See Sackman v. Liggett Group, Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y. 1996), citing *NAACP v. New York*, 413 U.S. 345, 365-66 , 93 S.Ct. 2591, 2602-03, 37 L.Ed.2d 648 (1973) & *Dow Jones & Co., Inc. v. United States Dep't of Justice*, 161 F.R.D. 247, 251 (S.D.N.Y.1995).

Here, Plaintiff relies entirely on the first factor, the time between when China AI received notice of the action and the time when it moved to intervene, and does not address the remaining factors. Plaintiff's claims of undue delay are entirely misplaced because China AI has offered a well-reasoned explanation for the length of time between the commencement of the action and its motion to intervene.

As set forth in China AI's papers, Plaintiff falsely alleged in his pleadings that he was a shareholder of the Company who had standing to sue derivatively. Even if China AI believed that Plaintiff's claims would ultimately be found to lack merit, there was no reason for China AI to believe that Plaintiff would falsely allege such a fundamentally basic fact as share ownership.

Moreover, the Receiver was appointed to act as a fiduciary for the Company and its shareholders. China AI reasonably believed that the Receiver would, in fact, act as a fiduciary in the best interests of all shareholders. Instead, it is now clear that the Receiver's agents have mismanaged the company, resulting in the cessation of operations, numerous judgments being entered against the Company , and the loss of substantial goodwill. China AI filed its motion on November 1, 2019, promptly after the facts became clear. These unusual circumstances fully explain the timing of China AI's motion to intervene.

In *Aristocrat Leisure Ltd.*, 262 F.R.D. at 353, the court granted a motion to intervene filed nearly *four years* after the movant had notice of the action. Despite the delay, the court granted the motion because the movant provided a "well-reasoned explanation" for the delay, *i.e.*, that the parties had previously acknowledged movant's interest in the proceedings. Other courts have found motions to intervene timely when the facts and circumstances explain any delay. *See*, *e.g.*, *United States ex rel. Preferred Masonry Restoration, Inc. v. Int'l Fid. Ins. Co.*, No. 17-CV-1358 (KMK), 2019 U.S. Dist. LEXIS 148583, at *6-7 (S.D.N.Y. Aug. 30, 2019); *Citizens for an Orderly Energy Policy, Inc. v. Cnty. of Suffolk*, 101 F.R.D. 497, 501 (E.D.N.Y. 1984). Here, China AI has provided a more than reasonable explanation for the timing of its motion to intervene. It had no reason to believe that Plaintiff had falsely alleged share ownership or that the Receiver's agents would destroy the operations of the company.

Further, "[w]hether a motion to intervene is 'timely' is determined in large part by analyzing whether the parties to the case would be prejudiced by intervention, and whether the proposed intervenor will be prejudiced by being kept out of the litigation." *CIFI Latam, S.A. v. Tauch*, No. 19-CV-05607 (LTS)(SN), 2020 U.S. Dist. LEXIS 43193, at *5 (S.D.N.Y. Mar. 11, 2020). In *CIFI Latam*, the court found that the parties would not be prejudiced by intervention

because "liability has not been adjudicated[,] no litigation activity has taken place, [t]he Court has not scheduled a Rule 16 pretrial conference or issued any scheduling orders related to discovery deadlines, and no discovery has taken place. . . ." *CIFI Latam, S.A.*, 2020 U.S. Dist. LEXIS 43193, at *5.

This action is similar. No discovery has taken place, liability has not been adjudicated, and there are no scheduling orders in place that would require modification. The case is still at the pleading stage and, under Cayman Islands law, Plaintiff has no legally recognizable rights as a shareholder. Intervention would not preclude or otherwise prejudice Plaintiff's rights to pursue his direct claims. Therefore, no prejudice would result from granting the motion to intervene.

Thus, the motion is timely because none of the individual defendants have been served with process, no discovery has occurred, no prejudice would result from intervention, and China AI moved promptly after the true facts started to surface.

## POINT III.

### NEITHER PLAINTIFF NOR ANY OF THE EXISTING PARTIES ADEQUATELY REPRESENT CHINA AI'S INTERESTS

The Federal Rules of Civil Procedure require that the Court "permit anyone to intervene who. . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. Rule 24(a)(2).  Rule 24(a)(2)'s requirement that "the proposed intervenor have an interest not otherwise adequately protected, is satisfied 'if the applicant shows that representation of his [or her] interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.'" *Dow Jones & Co. v. DOJ*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995), quoting

*Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972).

It is undisputed that China AI is a registered shareholder of LKM.[56] China AI's interests are not adequately represented in this action currently because Plaintiff is ***not*** a registered shareholder of LKM and lacks standing to continue to pursue any derivative claims.[57] Plaintiff does not contest this fact. Nor is China AI adequately represented by Vincent Shi, who is not a shareholder of LKM.[58] Accordingly, there is no identity of interest between China AI and any existing party.

Further, the objectives of the existing parties differ greatly from the objective of China AI. Plaintiff alleges that his damages were caused by the delisting of his ADSs from the NYSE. In his first cause of action, Plaintiff requests the appointment of a receiver to "prevent the Company from being delisted from the NYSE."[59] China AI's interests and objectives are entirely different from those of a holder of ADSs because China AI's Class B shares were never, and will never be, listed on the NYSE or any other exchange. It appears that Vincent Shi's objective is to overturn his purported removal as a director by the Receiver.

China AI's objective, on the other hand, is to protect its $10 million dollar investment in the Company. Neither Plaintiff nor Mr. Shi have made a similar investment in the Company or have such capital at risk. Accordingly, none of the existing parties adequately represent the interests of registered shareholders of the Company.

---

[56] As discussed above, Plaintiff's contention that China AI could not be a holder of Class B shares is incorrect. Nor would any purported automatic conversion of China AI's Class B shares to Class A shares deprive China AI from standing here.

[57] *See* Declaration of Katie L. B. Pearson, dated March 3, 2020 (ECF Dkt. No. 123-2); and Second Declaration of Katie L. B. Pearson, dated May 22, 2020. *See also* Plaintiff's Memorandum of Law, dated March 5, 2020 (ECF Dkt. No. 123-1).

[58] *See* Nachmani Decl., at Ex. 2.

[59] First Amended Complaint, at ¶ 38 (Dkt. No. 68).

The cases Plaintiff cites have no bearing on the issue of inadequate representation. The case *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), cited in Plaintiff's papers, is inapposite. The plaintiff in *Steginsky* was a shareholder of the company at issue and brought direct claims, not derivative claims. Similarly, *Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-cv-06685 (ALC), 2019 U.S. Dist. LEXIS 55916, at *12 (S.D.N.Y. Mar. 29, 2019), is also distinguishable. In *Ferguson*, plaintiffs brought claims under ERISA on behalf of members of a 401k plan. Ostrander, a fellow member of the same plan, brought a motion to intervene. The court denied the motion on the grounds that because "[a]s fellow Plan participants, Plaintiffs and Ostrander share an 'identity of interest' and the 'same ultimate objective'. . . ." *Ferguson*, 2019 U.S. Dist. LEXIS 55916, at *12.

Here, Plaintiff has failed to contest the fact that he is not a shareholder of LKM. Plaintiff's interest is, therefore, limited to that of a holder of ADSs, *i.e.*, a beneficial owner that is not recognized under Cayman Islands law as a shareholder. Plaintiff's lack of standing as a shareholder was fully disclosed in the Form F-1[60] when Plaintiff first purchased his ADSs in 2014[61] and, therefore, he is legally charged with that knowledge. *See In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 374 (E.D.N.Y. 2003).

Plaintiff's reliance on *Mason-Mahon v. Flint*, 2018 NY Slip Op 07716, ¶ 1, 166 A.D.3d 754, 755, 87 N.Y.S.3d 556, 559 (2d Dep't 2018), is similarly misplaced. In *Mason-Mahon*, a *shareholder* brought a derivative action on behalf of a company organized under the laws of the United Kingdom. Defendants moved to dismiss on the grounds that the plaintiff "failed to seek permission from the English High Court pursuant to the United Kingdom Companies Act of 2006 (hereinafter UK Companies Act) prior to commencing this shareholder derivative action."

---

[60] *See* Declaration of Jae H. Cho, dated March 5, 2020, at Ex. 2 (excerpt of LKM's March 15, 2011 form F-1 in connection with the listing of its ADSs on NYSE).
[61] *See* First Amended Complaint, at ¶ 38 (Dkt. No. 65).

*Mason-Mahon*, 166 A.D.3d at 755. The court ruled that although the internal affairs doctrine governed "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders," the demand requirement of the UK Companies Act was merely procedural and, therefore, inapplicable in New York. *Id.* at 756.

The ruling in *Mason-Mahon* has no bearing on this action because the procedural aspects of Plaintiff's derivative claims, *i.e.*, whether Plaintiff made a demand or satisfactorily established demand futility, are not at issue. Rather, Plaintiff's legal standing to sue is disputed and Plaintiff fails to cite any authority in support of its contention  that the internal affairs doctrine does not control his standing to sue derivatively. As set forth more fully in China AI's moving papers, Plaintiff has no standing to sue derivatively. *Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 475, 2011 BL 55355, 6 (S.D.N.Y. 2011) (internal citations omitted) (applying Cayman Islands law to the issue of standing to sue derivatively in New York). *See also Winn ex rel. Scottish Re Group Ltd. v. Schafer*, 499 F. Supp.2d 390, 393, 2007 BL 19947, 2 (S.D.N.Y. 2007)(the law of the state of incorporation governs the adjudication of a corporation's 'internal affairs,' including questions as to the relationship between the corporation's shareholders and its directors)(internal citations and quotations omitted).

Plaintiff's citation of out-of-context dicta from the Cayman Island decisions *Schultz* and *Svanstrom*, and the Australian decision *Zabusky*, does not support the proposition for which Plaintiff cites them. As set forth more fully in the Pearson Reply Declaration, *Schultz* and *Svanstrom* stand for the proposition that a beneficial owner has no standing to sue derivatively on behalf of a Cayman Islands limited company and remain controlling precedent. *Zabusky* is not binding authority and has not been followed by recent Cayman Islands decisions.

**POINT IV**

**THE COURT SHOULD MODIFY THE RECEIVERSHIP ORDER**

In his opposition papers, Plaintiff fails to contest China AI's arguments for modification of the receivership order. Accordingly, China AI has made a prima facie showing that the February 1, 2019 Order was obtained by way of Plaintiff's misrepresentations as to his legal standing to bring derivative claims on behalf of the Company. Plaintiff concealed from the Court his lack of standing Court when it was considering Plaintiff's application for the appointment of a receiver. Had the Court known the truth, it would have never entertained Plaintiff's application or entered the February 1, 2019 Order.

Moreover, continuing the receivership is no longer equitable. The purported basis for the receivership was to protect *shareholders* of the Company from fraud. Yet the person invoking the Court's jurisdiction for entry of the order, Plaintiff, was the party who committed fraud and is not even a shareholder with standing. The various allegations made by the Receiver as a basis for continuation of the receivership have been demonstrated to lack any merit. Continuation of the receivership will deprive the registered shareholders to have Company's affairs managed by a duly appointed Board of Directors, including the two directors that China AI bargained for the right to appoint, instead of the Receiver.

Courts have the inherent power to modify injunctions and prior orders. *NML Capital, Ltd. v. Republic of Arg., No. 14-cv-8601 (TPG)*, 2016 U.S. Dist. LEXIS 20633, at *37 (S.D.N.Y. Feb. 19, 2016)(internal citations omitted). Fed. R. Civ. Proc 60 provides that a prior order may be modified on a showing of "(3) fraud . . . misrepresentation, or misconduct by an opposing party; . . . (5) . . . [when] applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." "The ultimate question . . . is whether an ongoing exercise of the court's

equitable authority is supported by the prior showing of illegality, judged against the claim that changed circumstances have rendered prospective relief inappropriate." *NML Capital*, 2016 U.S. Dist. LEXIS 20633, at *38-39.

As described more fully in the Declaration of Hua Jingyuan, we now know the Receiver's agent, Mr. Guo Lilin, has failed to maintain the operations of LKM, wrongfully appealed numerous judgments, and wrongfully failed to pay wages owed to numerous former employees. The Receiver is the managing partner of the same law firm representing Plaintiff, and the Receiver's letters, and Plaintiff's reliance on them in opposition to this motion, makes clear that the Receiver has been acting in the capacity as an advocate for Plaintiff instead of investigating the failures of his agent, Mr. Guo Lilin.

Furthermore, we now know that this receivership is outside the permissible boundaries of a court's power to appoint a receiver. As the Supreme Court ruled in *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497, 43 S. Ct. 454, 455-56 (1923):

> A receiver is often appointed upon application of a secured creditor who fears that his security will be wasted. *Kountze v. Omaha Hotel Co.*, 107 U.S. 378, 395. A receiver is often appointed upon application of a judgment creditor who has exhausted his legal remedy. *See White v. Ewing*, 159 U.S. 36. But a [party with only a claim that is legal in nature] has, in the absence of statute, no substantive right, legal or equitable, in or to the property of his debtor. This is true, whatever the nature of the property; and, although the debtor is a corporation and insolvent.

*Pusey & Jones Co.*, 261 U.S. at 497.

Without standing to sue derivatively, Plaintiff's direct claims are only legal in nature. "Ordinarily, a party who brings only legal claims is not entitled to equitable relief, such as the appointment of a receiver." *Owens v. Gaffken & Barriger Fund LLC*, 2009 U.S. Dist. LEXIS 24487, at *5 (S.D.N.Y. Mar. 23, 2009) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310, 312, 119 S. Ct. 1961, 144 L. Ed. 2d 319 [1999]). The risk of dissipation of assets is not a legitimate ground for the appointment of a receiver. *See id*. at *6-7

21

(citing *Grupo Mexicano*; and *Tang Capital Partners, LP v. Cell Therapeutics, Inc.*, 591 F. Supp. 2d 666, 671 [S.D.N.Y. 2008]).

Accordingly, the Court should vacate the receivership and direct the receiver to account for his activities.

## CONCLUSION

For all the foregoing reasons, the Court should enter an Order granting the motion by China AI Capital Limited for leave to join as a party and file its Interpleader Complaint, modifying the receivership order, and granting such other and further relief as the Court deems just and equitable.

Dated: New York, New York
      May 29, 2020

Respectfully submitted,

CHO LEGAL GROUP LLC

By:   */s/ Jae H. Cho*
      Jae H. Cho
100 Plainfield Ave., Ste 8E
Edison, NJ 08817
Tel. 732-545-9600
jae@cholegal.com

*Attorneys for Intervenor-Plaintiff China AI Capital Limited*