UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                                                                   :

CONVERGEN ENERGY LLC, L'ANSE WARDEN    :
ELECTRIC COMPANY, LLC, EUROENERGY    :
BIOGAS LATVIA LIMITED, and LIBRA CAPITAL  :
US, INC.,                                          :          20-cv-3746 (LJL)
                                                           :
                      Plaintiffs,         :        OPINION & ORDER
            -v-                                      :

STEVEN J. BROOKS, NIANTICVISTA ENERGY LLC, :
GREGORY MERLE, RIVERVIEW ENERGY      :
CORPORATION, DANIEL ESCANDON GARCIA,   :
RAMON URIARTE INCHAUSTI, CHIPPER     :
INVESTMENT SCR, SA, URINCHA SL, THEODORE :
JOHN HANSEN, BRIAN R. MIKKELSON, and  :
CONVERGEN ENERGY WI, LLC,         :
                                            :
                    Defendants.       :
                                            :
--------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __7/17/2020__

LEWIS J. LIMAN, United States District Judge:

      Plaintiffs Convergen Energy LLC ("Convergen"), L'Anse Warden Electric Company,

LLC, Euroenergy Biogas Latvia Limited, and Libra Capital US, Inc. ("Libra") (collectively,

"Plaintiffs") move, pursuant to Fed. R. Civ. P. 4(f)(2)(C)(i), 4(f)(3), and 4(h) for an order

permitting alternative means of service on Defendants Daniel Escandon Garcia ("Garcia") and

Ramon Uriarte Inchausti ("Inchausti") (the "Spanish Individual Defendants") and on Chipper

Investment SCR, SA ("Chipper Investment") and Urincha SL ("Urincha SL") (the "Spanish

Corporate Defendants"( (collectively, the "Spanish Defendants").  Specifically, Plaintiffs seek an

order for alternative service on the Spanish Individual Defendants pursuant to Rules 4(f)(2)(C)(i)

and 4(f)(3).  Plaintiffs also seek an order permitting alternative service on the Spanish Corporate

Defendants pursuant to Rule 4(h), which, as relevant here, incorporates portions of Rule 4(f).

      For the reasons below, the motion is granted in part and denied in part.

# BACKGROUND

Plaintiffs brought this action on May 14, 2020 against Steven J. Brooks ("Brooks"), Nianticvista Energy LLC ("Niantic"), Gregory Merle, Riverview Energy Corporation, Theodore John Hansen, Brian R. Mikkelson, Convergen Energy WI, LLC ("CEW"), and the Spanish Defendants (collectively, the "Defendants").  Dkt. No. 1 ("Compl." or "Complaint").[1]

Plaintiffs are part of an international conglomerate headquartered in New York known as the Libra Group (the "Group").  *Id.* ¶ 2.  Libra, a member of the Group, is an in-house asset management and professional service company that supports other companies that are part of the Group, including Convergen.  *Id.* ¶ 28.  The Complaint alleges that Brooks, who was senior vice president of both the Group and Libra, arranged for the sale of the Group's renewable pellet manufacturing plant (the "Pellet Plant") to what he represented was a third party called Nianticvista ("Niantic"), but which he actually owned.  *Id.* ¶¶ 2-4.  The Group had owned the Pellet Plant through its 100%-owned subsidiary Convergen, which in turn owned CEW, which owned and continues to own the Pellet Plant.  *Id.* ¶¶ 2, 8.

The Spanish Defendants are named in this action because, according to Plaintiffs, they were co-investors of Niantic in the fraudulent acquisition of the Pellet Plant.  *Id.* ¶¶ 17-20.  The Spanish Defendants are located in Madrid, Spain: Chipper Investment and Urincha SL have their principal place of business in Madrid, *id.* ¶¶ 17-18; Inchausti resides in Madrid, is an owner of Urincha SL and Chipper Investment, and is the president, advisor and attorney-in-fact for Urincha SL, *id.* ¶ 19; and Garcia resides in Madrid, is an owner of Chipper Investment, and is a representative and attorney-in-fact for Chipper Investment, *id.* ¶ 20.

---

[1] The facts are taken from the Complaint and from the briefs and declarations submitted in connection with the instant motion.

The Complaint alleges that the Spanish Defendants knew that Brooks was a senior officer of Libra, that he was overseeing the sale of the Pellet Plant, and that he was a financial stakeholder in Niantic. *Id.* ¶ 52. It further alleges that the Spanish Defendants had extensive contact with Brooks while he was in New York and employed at Libra, each wired funds directly or indirectly to New York for the fraudulent purchase of the Pellet Plant, *id.*, and that Brooks could not have perpetuated the fraud without funding from the Spanish Defendants, along with certain other defendants, *id.* ¶ 77. The Complaint asserts aiding and abetting claims against the Spanish Defendants in connection with Brooks' fraud and breach of fiduciary duty.

Before filing this action, on May 11, 2020, Plaintiffs emailed certain Defendants and/or attorneys who they believed to be their counsel with a copy of the Complaint to inform them that they would be filing an action in a New York court on May 14, 2020 by noon, absent the parties reaching resolution of the issues. Dkt. No. 59-1. That email stated that Plaintiffs believed that "time is of the essence due to the ongoing irreparable harm at issue." *Id.* On May 14, 2020 at 10:13 a.m. Eastern Time, an attorney from the New York office of the law firm King & Wood Mallesons LLP ("KWM" or "U.S. counsel") responded that KWM was counsel to the Spanish Defendants and that:

> All further correspondence from you [(*i.e.*, Plaintiffs)] or your firm on this matter should be directed to me and KWM.
> You are hereby advised, however, that we are not authorized to, nor will we accept, service of process on behalf of our Clients. Moreover, this response in no way represents consent to personal jurisdiction over our Clients in New York, or elsewhere in the U.S., which is expressly contested. Indeed, our Clients expressly reserve all available defenses to the claims in your putative action, including with respect to service of process, jurisdiction and venue.
> Finally, we disagree with the statement in your below email that "time is of the essence," and with respect to "irreparable harm." Those assertions have no merit whatsoever. If you proceed with your stated course of action, our Clients reserve the right to seek appropriate sanctions pursuant to Part 130 of the Rules of the Chief Administrative Judge (i.e., Rule 130-1.1(c)).

*Id.*

After bringing this action, on May 18, 2020, a paralegal for Plaintiffs' counsel emailed Spain's Central Authority (the "Central Authority"), asking whether the Central Authority was accepting requests for service and anticipated any delays given that Plaintiffs were looking to effect service via the Hague Convention. Dkt. No. 59-2. The next day, Plaintiffs received the following response from the Head of Civil Legal Aid Service for the Central Authority:

> Spain's Central Authority will not be able to ensure the processing of every requested received for the duration of this exceptional situation. Legal proceedings are currently limited in Spain; therefore, only urgent requests, with due accreditation of said urgency, that have been electronically filed will be processed.

*Id.* Subsequently, on May 22, 2020, Plaintiffs' counsel asked KWM to confirm the addresses of the Spanish Defendants. Dkt. No. 59-1. The request was ignored. Dkt. No. 59 ¶ 3.

This motion followed.

## LEGAL STANDARDS

Fed. R. Civ. P. 4(f) is entitled "Serving an Individual in a Foreign Country." That Rule states:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Conviction on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if any international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>   (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>   (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>   (C) unless prohibited by a foreign country's law, by:
>     (i) delivering a copy of the summons and of the complaint to the individual personally; or
>     (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).  Fed. R. Civ. P. 4(f) thus operates as a counterpart to Fed. R. Civ. P. 4(e), which is entitled "Serving an Individual Within a Judicial District of the United States," and sets forth the rules by which service can be effected in a judicial district of the United States.

Procedures for serving foreign companies are governed by Fed. R. Civ. P. 4(h), which provides that, unless federal law provides otherwise or a defendant's waiver has been filed, a foreign corporation, partnership, or association must be served:

(1)  in a judicial district of the United States:
   (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
   (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant; or
(2)  at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Fed. R. Civ. P. 4(h).

## DISCUSSION

Plaintiffs argue that it is currently "impossible to serve the Spanish [Defendants] through the Central Authority in Spain per the Hague Convention."  Dkt. No. 58 ("Pls. Br.") at 1.  As a result, they seek to serve all of the Spanish Defendants by email and by postal channels under Fed. R. Civ. P. 4(f)(3), and in addition, to serve the Spanish Individual Defendants by personal service in Spain under Fed. R. Civ. P. 4(f)(2)(C)(i).[2]  Plaintiffs also seek to serve all of the Spanish Defendants by email service on their counsel, KMW, under Fed. R. Civ. P. 4(f)(3).

---

[2] Plaintiffs seek to serve corporate defendants Urincha SL and Chipper Investment under Fed. R. Civ. P. 4(f)(3) pursuant to Fed. R. Civ. P. 4(h)(2).  *See* Fed. R. Civ. P. 4(h)(2) (authorizing service of a foreign corporation "at a place not within any judicial district of the United States" through "any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under Rule 4(f)(2)(C)(i)").

## I.      Fed. R. Civ. P. 4(f)(3)

In determining whether to issue an order permitting alternative service under Fed. R. Civ. P. 4(f)(3), the Court engages in a three-part analysis to determine whether: (1) the proposed alternative method of service is prohibited by "federal law," Fed. R. Civ. P. 4(f), (2) the proposed method of service is "prohibited by international agreement," Fed. R. Civ. P. 4(f)(3), and (3) assuming that the first two criteria are satisfied, whether the Court, in the exercise of its discretion, should permit alternative service.  *See F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272 at *3 (S.D.N.Y. Aug. 7, 2013); *S.E.C. v. Anticevic*, 2009 WL 361739, at *3-4 (S.D.N.Y. Feb. 13, 2009).  Finally, the Court considers whether the proposed method of service is sufficient to satisfy constitutional due process under *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

Starting with the third factor, "[t]here is no strict requirement that a plaintiff pursue service through an international agreement before asking a court's assistance in ordering alternative service, and the decision of whether to allow that service is committed to the sound discretion of the district court."  *Peifa Xu v. Gridsum Holding Inc.*, 2020 WL 1508748, at *14 (S.D.N.Y. Mar. 30, 2020).  In that respect, the language and structure of Rule 4(f) as a whole is significant.  Before addressing alternative service in subsection (3), that Rule provides in subsection (1) that service can be effected "by any internationally agreed means of service that is reasonably calculated to give notice," and in subsection (2), that "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice."  The Rule does not impose any order of priority among the three subsections.  *See, e.g.*, *Washington State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *3 (S.D.N.Y. Sept. 21, 2018) ("Courts have repeatedly recognized that there is no hierarchy among the subsections in Rule 4(f).") (quoting *In GLG Life Tech Corp. Sec.*

*Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012)).  Each is of equal dignity and, in particular, the Rule does not require a party to exhaust efforts to serve pursuant to Rules 4(f)(1) or 4(f)(2) before seeing an order under Rule 4(f)(3).  *See, e.g.*, *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 512 (S.D.N.Y. 2013) ("So long as those conditions are met, it should not, and does not, matter whether service was attempted pursuant to Rule 4(f)(1) or (2) and, if so, whether or why such service was unsuccessful.").

At the same time, however, while there is no requirement that a party exhaust efforts to effect service pursuant to Rules 4(f)(1) or 4(f)(2), the moving party must make some showing of the need for judicial intervention.  The showing that must be made has frequently been described as follows: "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary."  *Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019); *see, e.g.*, *Peifa Xu*, 2020 WL 1508748, at *14.  The purpose of this inquiry is to "prevent parties from whimsically seeking an alternate means of service," *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 398 (S.D.N.Y. 2014), as well as to accord with "principles of comity" by "encourag[ing] the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process," *GLG Life Tech*, 287 F.R.D. at 266 (quoting *C & F Sys., LLC v. Limpimax, S.A.*, 2010 WL 65200, at *2 (W.D. Mich. Jan. 6, 2010)).  The general legal proposition is that, as always, when a party asks a court to exercise its authority, the party must make some showing that the exercise of that authority is necessary.  Plaintiffs have made that showing here.

Plaintiffs state they have "begun the process of serving through the Central Authority," Pls. Br. at 2, including a formal request to the Central Authority to serve Inchausti, Urincha SL,

and Chipper Investment, Dkt. No. 72 ¶ 11.[3]  *See S.E.C. v. Shehyn*, 2008 WL 6150322, at *3 (S.D.N.Y Nov. 26, 2008) ("Service under the Hague Convention is commenced when a plaintiff requests that the 'Central Authority' of a signatory country effect service on a defendant residing within that country.").  However, the exigencies of COVID and the Central Authority's response that it "will not be able to ensure the processing of every request received for the duration of this exception situation" and that only "urgent requests, with due accreditation of said urgency" suggests service through the Central Authority is unlikely to be effected any time soon, if at all. *See id.* ("[I]f a Central Authority is dilatory . . . a plaintiff may request a U.S. court to order alternative service methods pursuant to Rule 4(f)(3)."); *GLG Life Tech*, 287 F.R.D. at 266 (ordering alternative service where "the length of time required for service under the Hague Convention, approximately six to eight months, may unnecessarily delay this case") (internal citation omitted).  After the filing of this motion, Plaintiffs asked the Central Authority for guidance on what would be considered an "urgent request."  Dkt. No. 72 ¶ 7; *see* Dkt. No. 72-2. They did not receive a response, but still submitted a formal request to serve Inchausti, and, Urincha SL.  *See* Dkt. No. 72 ¶¶ 7, 11.

Plaintiffs' attempts, the current pandemic, and the Central Authority's response all demonstrate that the request is far from "whimsical," and that this Court should exercise its discretion to order service pursuant to Rule 4(f)(3).  *See Atlantica Holdings, Inc. v. BTA Bank JSC*, 2014 WL 12778844, at *3 (S.D.N.Y. Mar. 31, 2014) ("[G]iven the circumstances of this case, Plaintiffs' decision to seek leave to effect alternative service is not whimsical, but sensible."); *see also Washington State Inv. Bd.*, 2018 WL 6253877, at *8-9 (ordering alternative

---

[3] Plaintiffs did not make this request for Garcia because they lacked a proper address for him at the time.  *See* Dkt. No. 71 ("Reply Br.") at 7.  Plaintiffs have since confirmed Garcia's address. *See id.*; *see also* Dkt. No. 72 ¶ 10.

service where service through letters rog would delay the case for over a year, plaintiffs had made some effort to effect service, and plaintiffs had not delayed in seeking relief from the court).

Having established that an order of service under Rule 4(f)(3) is appropriate, Plaintiffs must demonstrate that the proffered alternatives are not prohibited by international agreement and that they comport with constitutional notions of due process.[4]  The Court turns first to the Spanish Individual Defendants and then to the Spanish Corporate Defendants.

## II.      Proposed Methods of Service under Rule 4(f)(3)

As Spain is a signatory to the Hague Convention, the Court cannot permit alternative service that would violate the Hague Convention.  "The Hague Convention provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state."  *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005) (citing Arts. 5, 6, 8, 9, and 10).

In reviewing the proposed methods of alternative service, the Court recognizes that the Spanish Defendants have "actual notice of this action and, thus, as a practical matter, the purpose of the service requirement has already been accomplished."  *Arista Records LLC v. Media Servs. LLC*, 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25, 2008).  But courts have "requir[ed] service anew, even if a defendant has notice of the pendency of the action," and this Court has a similar responsibility to ensure that any alternative method of service that is ordered provides a defendant with formal notice and thus comports with constitutional due process.  *Id.* Accordingly, the Court engages in that analysis here.

---

[4] It is undisputed that the proposed methods of alternative service are not prohibited by federal law.

A.      **The Spanish Individual Defendants**

1.      **Postal Channels**

The Supreme Court has explained that "in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017).

The first condition is met. Under Article 10, the Hague Convention will "not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad" "[p]rovided the State of destination does not object." Hague Convention, Art. 10(a). Spain has not opposed Article 10(a) and therefore, has not opposed service of judicial documents by postal channels. *See* Spain – Central Authority & Practical Information, HCCH, https://www.hcch.net/en/states/authorities/details3/?aid=273 (last visited July 17, 2020) ("Art. 10(a): No opposition"); *see also Water Splash*, 137 S. Ct. at 1512-13.

The second condition is also met. The relevant inquiry is whether service by mail is authorized under "otherwise-applicable law." Rule 4(f)(3) is the otherwise-applicable law, and it authorizes any other mean of service as long as it is not prohibited by international agreement, including service by mail.

Before this Court can authorize such service, it must determine that it comports with due process. "Constitutional notions of due process require that any means of service be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Anticevic*, 2009 WL 361739, at *4 (quoting *Mullane*, 339 U.S. at 314). Plaintiffs represent that they have located addresses for the Spanish Individual Defendants and that their accuracy is not at issue. Reply Br. at 6-7; *see, e.g.*, *In re Petrobras Sec. Litig.*, 2015 WL 10846515, at *1 (S.D.N.Y. Nov. 2, 2015) (permitting

service under Rule 4(f)(3) through registered or overnight mail to last known addresses).

Accordingly, Plaintiffs' request to serve the Spanish Individual Defendants by postal channels

under Rule 4(f)(3) is granted.[5]

### 2. Email

The Spanish Individual Defendants cite to *Zanghi* for the proposition that Plaintiffs

cannot serve them through email because they do not meet the threshold requirements for Rule

4(f)(3) "nor do they indicate that service by email is authorized by the Hague Service

Convention or by Spanish law." Dkt. No. 66 ("Opp. Br.") at 26 n.6 (citing *Zanghi v. Ritella*,

2020 WL 589409, at *5 (S.D.N.Y. Feb. 5, 2020)). But Plaintiffs do not need to demonstrate that

email is authorized by the Hague Convention or by Spanish law to seek relief under Rule 4(f)(3).

They must simply allege that such service is not prohibited by international agreement. And the

Spanish Individual Defendants have not argued that email is prohibited by the Hague Convention

or other international agreement.[6]

The remaining question, therefore, is whether service by email comports with due

process. "Service by email alone comports with due process where a plaintiff demonstrates that

the email is likely to reach the defendant." *Pecon Software*, 2013 WL 4016272, at *5. "Email

service has also repeatedly been found by courts to meet the requirements of due process."

*Pearson Educ. Inc. v. Doe 1*, 2019 WL 6498305, at *3 (S.D.N.Y. Dec. 2, 2019) (quoting

---

[5] Plaintiffs' method of mail must also comply with Rule 4(l)(2)(B), which provides that service "not within any judicial district of the United States must be proved . . . if made under Rule 4(f)(2) or (f)(3), by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee."

[6] As a result, and because Spain has not objected to Article 10 of the Hague Convention, the Court declines to decide whether email is encompassed within "postal channels" in Article 10 for the purposes of seeking to effectuate service under Rule 4(f)(2). *See Zanghi*, 2020 WL 589409, at *5 (noting "most courts that have considered [the] argument" of whether email is a postal channel, "including all pertinent decisions from the Southern District of New York, have rejected it").

*Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 (S.D.N.Y. 2018) (collecting cases)). Concerns about whether "an e-mail from a party with whom the recipient that has not previously corresponded is likely to be flagged as 'spam'" are captured within the due process analysis. *Alfred E. Mann Living Tr. v. ETIRC Aviation S.a.r.l.*, 78 A.D.3d 137, 142 (1st Dep't 2010); *see Philip Morris USA Inc. v. Veles Ltd.*, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (finding "objections about theoretical reliability of email service" to be "unpersuasive" where plaintiff "amply demonstrated the high likelihood that defendants would receive and respond to email communications, and defendants themselves do not dispute receiving email service in this case").

Plaintiffs seek to serve Inchausti through his personal email address, ruriarte@moninvest.es.  Plaintiffs state that counsel to the Spanish Individual Defendants contacted Plaintiffs only after Plaintiffs had emailed Inchausti at this address, suggesting that Inchausti received the email and contacted his counsel thereafter.  *See* Pls. Br. at 8; Dkt. No. 59 ¶ 6.  In this case, service by email is reasonably calculated to notify Inchausti of this action.  *See, e.g.*, *United States v. Besneli*, 2015 WL 4755533, at *2 (S.D.N.Y. Aug. 12, 2015) (noting plaintiff had "already conversed" by using the email address provided to the Court); *see also AMTO, LLC v. Bedford Asset Mgmt., LLC*, 2015 WL 3457452, at *8-9 (S.D.N.Y. June 1, 2015) (collecting cases).

With respect to Garcia, however, Plaintiffs have not proposed how they intend to email Garica, as they do not provide his email address or otherwise "demonstrate that [] email is likely to reach" Garcia.  *See* Dkt. No. 60 (omitting email address for Garcia in proposed order).  "[I]n those cases where service by email has been judicially approved, the movant supplied the [c]ourt with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address."  *AMTO*, 2015 WL 3457452, at *8 (quoting *NYKCool*

*A.B. v. Pac. Int'l Servs., Inc.*, 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014)). Such showing has not been made here, and therefore, the motion is denied with respect to Garcia.

### 3.    Service on U.S. Counsel

Plaintiffs seek an order under Rule 4(f)(3) to serve the Spanish Individual Defendants through U.S. counsel via email pursuant to Rule 4(f)(3).

Plaintiffs' request runs squarely up against the language of Rule 4(f) and the structure of Rule 4 as a whole. As noted above, Rule 4 is in several parts. Rule 4(e) sets forth the means by which an individual may be served "at a place in a judicial district of the United States." Rule 4(f) sets forth the means by which service an individual can be served "at a place not within any judicial district of the United States." And Rule 4(h) sets forth two separate sets of procedures for corporations, partnerships, and unincorporated associations, including foreign entities, depending on whether service is made "at a place within a judicial district of the United States" or "at a place not within any judicial district of the United States."

The rules for serving an individual or a company differ depending on whether the defendant is served at a place in a judicial district of the United States or at a place not within a judicial district of the United States. As relevant here, if service is made on an agent of the defendant at a place within a judicial district of the United States then Plaintiff must show that the agent is "agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). A court entering an order under Rule 4(f)(3) on an agent at a place not within a judicial district of the United States need not show that the agent is authorized to accept service of process. It is sufficient that the service is reasonably designed "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

This Court joins those that have held that Rule 4(f) refers to the "place" of service and not the location of the individual or entity to be served and that, accordingly, the court cannot enter a Rule 4(f)(3) order permitting service on a foreign individual at a place not within a judicial district of the United States when the person to whom the complaint and summons is to be delivered and as to which service is deemed to be effective is at a place within the United States.  *See Codigo Music, LLC v. Televisa S.A. de C.V.*, 2017 WL 4346968, at *13 (S.D. Fla. Sept. 29, 2017) ("the plain language of Rule 4(f)(3) requires that the alternative service sought contain, at least, some component of service that will occur outside of the United States"); *see also Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries (OPEC)*, 107 F. Supp. 3d 134, 137-39 (D.D.C. 2015) ("[B]ased on a textual reading of subsections (h) and (f)(3) of Rule 4 . . . service *cannot* occur in the United States" pursuant to Rule 4(f)(3)); *In re Auto. Parts Antitrust Litig.*, 2017 WL 10808851, at *2 (E.D. Mich. Nov. 2, 2017) ("[T]he plain language of Rule 4(f)(3) limits the Rule to service made outside of the United States."); *Drew Techs., Inc. v. Robert Bosch, L.L.C.*, 2013 WL 6797175, *1-4 (E.D. Mich. 2013) (vacating prior order and finding that service under Rule 4(f)(3) may be effected only outside of the United States).

That result accords with the plain language of Rules 4(e) and 4(f) which speak not to whether the individual to be served is located or resides outside of the United States but to where the individual "may be served" or the "place" where service is to be made.

It is also consistent with the language and structure of Rule 4(h).  That rule provides, in the disjunctive, two separate sets of procedures for serving corporate entities, including a foreign entity depending on whether the entity is served "in a judicial district of the United States," Fed R Civ. P. 4(h)(1), or "at a place not within any judicial district of the United States," including that, if service is made at a place not within any judicial district of the United States, but only

then, service may be made "in any manner prescribed by Rule 4(f) for serving an individual,"
Fed. R. Civ. P. 4(h)(2). The structure and language of Rule 4(h) makes clear that "at a place not
within any judicial district of the United States" refers to the location where service is made and
not the location or domicile of the person being served. And, if "at a place not within any
judicial district of the United States" refers to the location of service (and not the location of the
defendant) for purposes of Rule 4(h) and foreign companies, the identical language when used
with respect to individuals in Rule 4(f) must also refer to the location of service.

The Court is cognizant that its ruling departs from those of courts in this District that
have held that a defendant located outside of the United States can be served through his or her
United States counsel under Rule 4(f)(3) either on the theory that "the relevant circumstance is
where the defendant is, and not the location of the intermediary," *Washington State Inv. Bd.*,
2018 WL 6253877, at *4, or on the theory that that "[c]ourt-ordered service on counsel made
under Rule 4(f)(3) serves as effective authorization 'by law' [under Rule 4(e)(2)] for counsel to
receive service," *RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at *6 (S.D.N.Y. Aug. 10,
2007).[7] The Court also is aware that its decision may cause a certain inconvenience to a plaintiff
and to the courts, particularly in those cases where some defendants have appeared but others
have not yet been able to be served. That inconvenience, though required, is unfortunate; justice
too long delayed can be justice denied.[8] By the same token, the decision may well have some

---

[7] Without analyzing the issue of the "place" of service, other cases hold that a court can authorize
service on counsel located in the United States under Rule 4(f)(3). *See, e.g.*, *Zanghi*, 2020 WL
589409, at *7 ("[S]ervice on a foreign defendant's U.S. counsel 'is a common form of service
ordered under Rule 4(f)(3).'") (quoting *Jian Zhang*, 293 F.R.D. at 515); *GLG Life Tech*, 287
F.R.D. at 267 ("In many instances, courts have authorized service under Rule 4(f)(3) on an
unserved party's counsel."); *NYKCool A.B.*, 2015 WL 998455, at *4 (ordering alternative service
on U.S. counsel under Rule 4(f)(3)); *Atlantica Holdings*, 2014 WL 12778844, at *3 (same).
[8] The reticence of a defendant to ultimately join an action, though, is not cost-free. Such a
defendant may well lose the opportunity to help shape the litigation at the outset and be saddled
with discovery taken by other parties. *See* Fed. R. Civ. P. 16(b)(4) (the case management plan

15

salutary effects.  As a general proposition, consultation with counsel facilitates compliance with the law.  The law should encourage foreign individuals and entities to consult with United States counsel about their obligations under United States law.  There thus is a public value in allowing an individual who in good faith seeks such advice to obtain it without simultaneously and automatically appointing counsel as an agent for service of process or relieving any adversary of the otherwise applicable requirements for service of process.

In the end, however, the Court rests its conclusion on none of these considerations.  The language of the Federal Rules is clear, and that language does not permit the Court to order alternative service at a place outside any judicial district of the United States when the service would be made in a judicial district of the United States.

The Court's interpretation of Rule 4(f)(3) is dispositive with respect to the question of whether the Court can order service to be made on U.S. counsel.  The location of U.S. counsel is in New York.  *See* Dkt. No. 59-1.  It is in a judicial district of the United States.  In addition, the Spanish Defendants have made clear that counsel is not authorized to accept service of process. The email from counsel so states: "[W]e are not authorized to, nor will we accept, service of process on behalf of our Clients."  *Id.*  Thus, the Court declines to enter a Rule 4(f)(3) order permitting service to be made on the Spanish Individual Defendants by serving their U.S. counsel.

### B.     The Spanish Corporate Defendants

Plaintiffs seek to serve the Spanish Corporate Defendants by postal channels, email, and through U.S. counsel.  The preceding analysis largely decides how service is to be made.

---

may be modified "only for good cause"); *see, e.g.*, *Peterson v. Home Depot U.S.A., Inc.*, 2013 WL 5502816, at *2 (S.D.N.Y. Oct. 3, 2013) ("To demonstrate good cause, a party seeking an extension must show that the relevant deadline could not reasonably be met despite that party's diligence.").

Rule 4(h)(2) permits service to be made "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  Plaintiffs represent they have addresses at which to serve the Spanish Corporate Defendants by mail.  The method of service by postal channels is therefore authorized for the reasons stated above.

Rule 4(f)(3) does not permit service of an individual located abroad by serving counsel located in the United States.  For the same reason, a foreign company cannot be served by serving counsel in the United States.  Rule 4(h)(1) is clear—if service is to be made on an agent of a foreign company in the United States, that agent must be "authorized by appointment or by law to receive service of process."  Thus Plaintiffs cannot serve the Spanish Corporate Defendants through their U.S. counsel.

Finally, Plaintiffs seek to serve Urincha SL and Chipper Investment through Inchausti's personal email address.  Plaintiffs allege that Inchausti is the president, advisor, and attorney-in-fact of Urincha SL, a representative and attorney-in-fact of Chipper Investment, and an owner of both companies.  *See* Pls. Br. at 8; *see also* Dkt. No. 59 ¶ 5; Dkt. No. 59-3; Compl. ¶¶ 19-20.

The analysis with respect to them is somewhat more complicated.  Service is not proposed to be made directly on the foreign companies but on their officer or agents.  If Inchausti were located in the United States, Plaintiffs would be able to serve Urincha SL by delivery of the Complaint and summons to Inchausti, under Rule 4(h)(1)(B).  He is president of Urincha SL and thus an officer of the company.  *See* Fed. R. Civ. P. 4(h)(1)(B) (allowing for service upon a "foreign corporation" "in a judicial district of the United States" through "an officer"); *Honig v. Cardis Enterprises Int'l N.V.*, 2016 WL 6304695, at *6 (E.D.N.Y. Oct. 27, 2016).  Based on the

same logic, service abroad on Inchausti should be sufficient to constitute service on Urincha SL. *See F.T.C. v. PCCare247 Inc.*, 2013 WL 841037, at \*4, \*6 (S.D.N.Y. Mar. 7, 2013) (granting leave to serve corporate defendants through the email addresses and Facebook accounts of their directors).  In *PCCare247*, the court permitted service on the corporate entities through the directors' business and personal email addresses.  *See id.* at \*6.  Here, Plaintiffs have proposed an email address for Inchausti, but it is a personal email address and not a corporate email address.  Dkt. No. 59-1 ¶ 6.  However, given that Inchausti is an "officer" of Urincha SL, and that Plaintiffs have already "demonstrated a high likelihood that defendants will receive and respond to emails sent to these addresses," service on Urincha SL by email to Inchausti is likely to provide notice of this action to Urincha SL.  *PCCare247*, 2013 WL 841037, at \*4; *see Henderson v. United States*, 517 U.S. 654, 672 (1996) ("[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections.").

As to Chipper Investment, however, Inchausti is identified only as a "representative" and "attorney-in-fact" without greater detail as to those positions.  Plaintiffs do not identify him as "an officer" or a "managing or general agent" or even allege that Inchausti's positions authorize him by appointment or by law to receive service of process.  Significantly, Plaintiffs have not made any showing that Inchausti is in communication with Chipper Investment, that Chipper Investment receives correspondence from Inchausti's personal email address, or that service on Inchausti would otherwise be effective to give Chipper Investment notice.  Nor does it help Plaintiffs to plead that Urincha SL is the "corporate president and advisor" of Chipper Investment.  Compl. ¶ 18.  Plaintiffs plead no facts about the relationship between Urincha SL and Chipper Investment that permits this Court to confidently conclude that that service on

Inchausti and Urincha SL is likely to notify Chipper Investment of this action.[9]  Therefore, service by email to Chipper Investment through Inchausti's personal email address is denied.

### III.     Rule 4(f)(2)(C)(i)

Finally, Plaintiffs seek personal service under Rule 4(f)(2)(C)(i) on only the Spanish Individual Defendants, as personal service of foreign companies is prohibited under Rule 4(h)(2). *See* Fed. R. Civ. P. 4(h)(2) (service may be effectuated on a company "at a place not within any judicial district of the of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)").

Rule 4(f)(2)(C)(i) permits service by "delivering a copy of the summons and of the complaint to the individual personally," "unless prohibited by the foreign country's law" and "if there is no internally agreed means, or if an international agreement allows but does not specify other means."  Plaintiffs argue that Article 19 of the Hague Convention suggests that any method of service not objected to by a signatory is permitted.  *See* Pls. Br. at 3-4 (citing *Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273 (S.D. Fla. 1999)).  The Spanish Individual Defendants respond that Spanish law must expressly authorize personal service.  *See* Opp. Br. at 22-23 (citing *ePlus Tech., Inc. v. Aboud*, 155 F. Supp. 2d 692 (E.D. Va. 2001)).

The Court declines to give an advisory opinion as to whether personal service is prohibited by Spanish law or authorized under Fed. R. Civ. P. 4(f)(2)(C)(i).  That rule, unlike Rule 4(f)(3), does not require court order, and none of the cases cited by Plaintiffs involves a request for advance approval of personal service under Rule 4(f)(2)(C)(i).  Plaintiffs should effect service under Rule 4(f)(2)(C)(i) if they believe in good faith that it is not prohibited by Spanish law.  If the Spanish Individual Defendants dispute whether service can be effected in

---

[9] Indeed, Plaintiffs do not argue in their briefing that service on Urincha SL is likely to inform Chipper Investment of the action.  *See* Pls. Br. at 6-8.

that manner, they can make a motion under Rule 12(b)(5) at the appropriate time.  The Court will

not decide now how it would decide that motion if service is effected and challenged.

## CONCLUSION

For the reasons stated above, the motion for alternative means of service is GRANTED

IN PART and DENIED IN PART.  The Court hereby orders:

> Plaintiffs may serve the English and Spanish translation of the Summons and Complaint on Daniel Escandon Garcia, Ramon Uriarte Inchausti, Chipper Investment SCR, SA, and Urincha SL by postal channels; and

> Plaintiffs may serve the English and Spanish translation of the Summons and Complaint on Ramon Uriarte Inchausti by email (ruriarte@moninvest.es), and on Urincha SL by email (ruriarte@moninvest.es).

The Clerk of Court is respectfully directed to close Dkt. Nos. 57 and 76.

SO ORDERED.

Dated: July 17, 2020
      New York, New York

                                   LEWIS J. LIMAN
                             United States District Judge