# Robert W. Seiden

Temporary Receiver for Link Motion Inc. Appointed by the Honorable Judge Victor Marrero of the United States District Court, Southern District of New York

469 Seventh Avenue, 5th Floor
New York, New York 10018
Tel: (212) 523-0686
Email: rseiden@seidenlegal.com

**VIA EMAIL**

Honorable Victor Marrero
Honorable Debra C. Freeman
United States Courthouse
500 Pearl Street
New York, New York 10007

May 20, 2020

*Although this letter is referenced on the Docket at Dkts. 151 & 152, it was not initially filed. The Clerk of Court is therefore directed to place this letter, with the attached Exhibit, on the Docket of this action.*

**SO ORDERED:** DATE: 9/15/2020

/s/ Debra Freeman
**DEBRA FREEMAN**
**UNITED STATES MAGISTRATE JUDGE**

Re: *Wayne Baliga v. Link Motion Inc. et al.*, 1:18-cv-11642 (S.D.N.Y.) (VM) (DCF)

Dear Honorable Judge Marrero and Honorable Judge Freeman,

First, I hope you are both doing well during these unprecedented times. I indulge your time to briefly write in response to the letter submitted by China AI Capital Limited ("China AI") on May 6th, 2020 (ECF No. 143) ("China AI's Letter"). I also write to seek the Court's assistance and direction concerning certain recent issues that have developed concerning actions taken in The People's Republic of China ("PRC") against Mr. Lilin Guo ("Mr. Guo") (the interim chairman appointed by the receiver and approved by the court), as a result of obstructive efforts to the Receivership committed by members of LKM's former management, including Defendant Shi and those acting at his direction.

1. **China AI Does Not Deny That It Is An Affiliate Of Shi's And Ignores The Receiver's Duties To This Court**

On May 2nd, 2020 I submitted a letter to the Court setting forth, *inter alia*, the evidence uncovered showing the many financial, professional, and personal ties between China AI and Defendant Shi. This evidence gives rise to the logical deduction that China AI is an entity controlled by Shi. Ex. A. As a result of those ties, by China AI's motion to intervene (ECF No. 127), I indicated that Defendant Shi and China AI may be (intentionally or inadvertently) attempting to mislead the Court. On May 6th, 2020, China AI responded to the May 2nd Letter. ECF No. 143. By China AI's Letter, China AI makes certain material representations which I would respectfully seek to clarify here.

*First*, I understand that China AI does not challenge that it is an entity controlled by Defendant Shi. China AI does not appear to dispute a single fact set forth in the May 2nd Letter that I provided to the Court which connects it to Defendant Shi. Notably, Defendant Shi in his May 8th, 2020 letter (ECF No. 145) also does not dispute the connections between himself and China AI. This bears highlighting and underscores the necessity for the Court to determine who China AI really is and what its real interests in this litigation are.

*Second*, rather than demonstrate to the Court that it is independent of Shi, China AI maintains that the Court should not consider the facts set forth in my May 2nd letter because, it avers, I am purportedly impermissibly advocating on behalf of the Plaintiff here. China AI's position is misplaced.

As the court-appointed receiver over LKM, I am very cognizant of my fiduciary duty to LKM (and this court) and scrupulously honor this duty as it is the very foundation of the role of the receiver. Reporting material information to the Court is a corollary of this duty. The Court has ordered that the Receiver "shall provide interim reports to the Court […] as the Receiver deems appropriate under the circumstances[,]" that the reports shall include information on "the Receiver's activities and findings" or "such other information the Receiver deems appropriate or as the Court may direct." ECF No. 26 (the "Receivership Order"). That the Receiver brought to the Court's attention newly discovered material information suggesting that an entity with an interest that (evidence shows) is diametrically opposed to the Company sought to intervene here constitutes a primary reason why courts appoint receivers.[1]

## 2. Defendant Shi Controls The Bank Account Of LKM'S Wholly Owned Foreign Entity

As referenced in my May 2nd letter, I had intended to submit to the Court a separate letter for the purpose of updating the Court on all LKM-related proceedings that are ongoing in the PRC. However, because China AI, by its May 6th letter, has made various allegations concerning the Receivership's access to LKM's bank accounts, I would like to take this opportunity to correct China AI's misrepresentations to this Court.[2]

*First,* China AI maintains that the Receiver has control over all of LKM's Chinese bank accounts. This is wrong. The Receiver controls no bank accounts of LKM in China. Rather, defendant Shi, not the Receiver, is in control of the primary bank account of LKM's wholly foreign owned entity ("WFOE") in China. As such, Shi has been able to block Mr. Guo and the Receivership from lawfully accessing this bank account, thereby preventing the Receivership from preserving and safeguarding the Company's assets – frustrating the very purpose of this Receivership. For example, on April 26, 2019, Zemin Xu ("Xu"), the former legal representative of the Company's WFOE and a close associate of Shi's, without mentioning the existence of the receivership, filed an application to freeze this account with the People's Court of Haidian District Court in Beijing, China (the "Haidian Court"). The Haidian Court granted the application. The Receiver had no practical authority to object to this application.

*Second,* China AI also contends that the Receiver is purportedly using the same money which China AI had supposedly invested in LKM in 2018 "to pay himself, Mr. Guo, and his other friends to supposedly act as a neutral fiduciary." Again, this is wrong. In fact, as demonstrated in my May 2nd letter, on the very day (July 18th, 2018) that China AI paid LKM $5 million in connection with the Class B Shares Transaction to LKM's Hong Kong bank account, LKM then immediately paid $9,900,000 from this same bank account to a mystery bank account in Luxembourg. Whatever funds China AI paid to LKM were contemporaneously rushed to an account that is inaccessible to the Receiver.

## 3. Defendant Shi Has Harmed LKM Employees In China And Impaired The Receiver's Efforts

---

[1] *See, e.g., U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 610 (S.D.N.Y. 2012) (noting that one of the purposes of a receivership is to protect the plaintiff from "fraudulent conduct on [the] defendant"); *U.S. S.E.C. v. Amerindo Inv. Advisors, Inc.*, 2013 WL 1385013, at *13 (S.D.N.Y. Mar. 11, 2013) (quoting "courts have appointed receivers for several valid purposes, including "marshal[ing] the assets of the defendant [s]," "prevent[ing] the dissipation of [the defendants'] assets pending further action by the court," and "investigat[ing] the defendant[s'] transactions.").

[2] The Receiver still intends to submit a separate letter to the Court detailing all other relevant proceedings that sound in fraud in the PRC at a later time.

Defendant Shi's conduct in China has irreparably harmed LKM Employees. For example, Defendant Shi's aforementioned actions in improperly and secretly securing the freezing order against the WFOE bank account led to LKM employees not receiving their wages, in addition to causing the wrongful termination of employees, as detailed in my May 2nd letter and in Ms. Lingyun Guo's Declaration attached therewith. Relatedly, the receiver has uncovered and is in possession of at least 45 formal complaints lodged by former employees of LKM against the Company in the Haidian Court and the Beijing Labor and Personnel Dispute Arbitration Committee.[3] These complaints have sought recovery in connection with salary owed, lost wages, and reimbursement of certain living expenses as per these employees' respective employment agreements. All of these losses and the consequential harm to these innocent employees is directly attributed to the aforesaid actions of Shi and his associates.

Shi's actions in China have also significantly frustrated the Receivership's efforts and have caused significant harm to the Receiver's appointee in the PRC. For example, even though Defendant Shi and his associates control and or caused the freezing of the WFOE bank account, Mr. Guo, as the named legal representative of the WFOE, has been punished for the complaints filed by the Company's employees against Shi. Specifically, the Haidian Court issued a personal Spending Restriction Order (the "Restriction Order") against the receiver's appointee Mr. Guo due to his inability to satisfy the employment claims, which are to be paid from the WFOE account. This tragic and ironic personal penalty to the receiver's appointee for simply doing his job to try to preserve assets should be addressed. Under the heading "no good deed goes unpunished", Mr. Guo, who has tirelessly borne the burden inside China trying to fight for and help the LKM employees and the receivership is being harmed for his efforts. The Restriction Order is effectively a blacklist; it prohibits Mr. Guo from travelling by air, purchasing first class train tickets, checking into hotels, sending his children to private schools in the PRC or abroad, and visiting his family abroad. Simply put, Shi's actions have negatively impacted Mr. Guo's professional and personal life, while Shi continues to reap the benefits of controlling critical aspects of the Company in China.

Accordingly, the Receiver hereby respectfully seeks this Court's assistance and direction on how to resolve Mr. Guo's unjust treatment in the PRC, caused by Shi and his associates. At the minimum, the receiver requests that the Court issue a directive to defendant Shi to seek redress of these circumstances and use his resources and the truth to cause the penalty to be released from Mr. Guo.

Respectfully submitted,

Robert W. Seiden, Esq.
Court-Appointed Temporary Receiver for Link Motion Inc.

---

[3] Due to the inordinate size of the documents and related translation costs, I will respectfully not attach all the complaints to this letter. However, I will gladly do so should the Court so request.

3

# EXHIBIT A

# Robert W. Seiden

Court-Appointed Temporary Receiver for Link Motion Inc.
Pursuant to The Honorable Judge Victor Marrero of the
United States District Court, Southern District of New York

Robert W. Seiden, Esq. | The Seiden Group
469 7th Avenue, 5th Floor
New York, New York 10036
Tel: (646) 766-1724
Email: rseiden@seidenlegal.com

**VIA FAX (212) 805-6382 AND FEDEX**

Hon. Victor Marrero
Suite 1040
United States Courthouse
500 Pearl Street
New York, New York 10007

May 2, 2020

       Re: *Wayne Baliga v. Link Motion Inc. et al.,* **1:18-cv-11642 (S.D.N.Y.) (VM) (DCF)**

Dear Honorable Judge Marrero,

    I write pursuant to your Honor's February 1, 2019 Order (ECF No. 26) to report on recent material developments concerning Link Motion, Inc. ("LKM" or the "Company") and the state of prosecution of the above-referenced matter.

    In the past number of months, the official Peoples' Republic of China ("PRC") agent of the Receiver, Lilin Guo ("Mr. Guo") has expended hundreds of hours, tremendous amounts of manpower and monetary support to preserve and secure LKM assets and resist the efforts by LKM's former chairman, Mr. Wenyong "Vincent" Shi ("Mr. Shi") and Mr. Shi's cohorts to obstruct the Receiver's progress in China in violation and contempt of your honor's Order. Mr. Guo's efforts in the PRC include but are not limited to: (1) hiring counsel for and successfully defending civil and administrative actions in Beijing initiated by LKM's former legal representative, Xu Zemin, to revoke the recent registration of board members of the Company's wholly foreign owned entity ("WFOE"), NQ Mobile (Beijing) Co., Ltd., under the mandate of the Receiver; (2) attending a shareholder meeting on July 22, 2019 to serve Shi the Receivership Order and discuss the operational aspects of the WFOE and the Company; (3) extensively reviewing LKM's corporate documents and conducting investigative work to prevent further illegal transfer of LKM's assets and other frauds from being committed against the Company. In addition, I would like to bring to the Court's attention various issues concerning China AI Capital Limited ("China AI"), a company incorporated in the British Virgin Islands, that is seeking to intervene as a plaintiff in the New York litigation.

I. **China AI Has Connections To Mr. Shi, And China AI's Acquisition Of LKM Shares Implicates Shi**

I have been advised by Mr. Guo, that, as a result of his investigation in the PRC, he has uncovered evidence that Shi is directly connected to China AI. For example, Mr. Yu "Bruson" Li ("Mr. Li") had previously served as Vice Chairman of LKM from 2010 to 2015. After Mr. Li resigned from LKM, he founded HH-Medic, Inc., a company incorporated in Cayman Islands with operations in Beijing. Ex. A, Declaration of Lingyun Guo ("Guo Decl.") at ¶6. Prior to 2017, Mr. Shi had invested in HH-Medic, Inc. using LKM funds. *Id.* LKM currently owns 11.429% of HH-Medic, Inc. *Id.*

Additionally, the events surrounding how China AI became an LKM shareholder have been corroborated by existing suspicions about the relationship between China AI and Shi. On July 19, 2018, China AI became a shareholder of LKM by entering into a Subscription Agreement with the Company.[1] Under the Subscription Agreement, China AI purchased LKM Class B common shares for $20 million. Importantly, Class B common shares hold ten times the voting power of Class A common shares (as to the transaction, the "Class B Shares Transaction").[2] Upon the execution of the Subscription Agreement, Mr. Li and Mr. Rui "Larry" Chi ("Mr. Chi") were both given board seats on LKM's board. Guo Decl. at ¶4. Notably, at the time of the Class B Shares Transaction, LKM had no need for such a financial investment and the transaction had no legitimate business purpose other than to provide Shi and his associates with additional board seats and voting power over LKM Guo Decl. at ¶5.

Upon China AI's entering into the Subscription Agreement, Mr. Li and Mr. Chi each held 50% of China AI shares.[3] However, after only six months, on January 6, 2019, Mr. Chi transferred all the shares to Li, giving Li 100% control of China AI.[4] Accordingly, by late 2018, at or around the time of Shi's alleged fraudulent transfers of LKM's assets out of LKM, LKM's former Vice Chairman was the sole shareholder of China AI.

II. **Evidence Demonstrates That Shi Engineered China AI's Acquisition Of LKM Shares To Control LKM's Board**

The evidence secured and provided to me by Mr. Guo demonstrates that Mr. Shi engineered the sale of LKM's Class B shares to his close associates through China AI in order to illegally secure greater power over LKM's board and control the Company through the additional voting power of the Class B shares. Indeed, there is no other credible explanation why LKM, then valued at hundreds of millions of dollars, would willingly transfer so much control of LKM to a third party for a payment of only $20,000,000, half of which was never paid, as set forth further below.

---

[1] Subscription Agreement can be found at https://www.sec.gov/Archives/edgar/data/1509986/000114420418045933/tv501523_ex99-3.htm.
[2] *See* Press Release dated July 19, 2018, available at https://www.sec.gov/Archives/edgar/data/1509986/000114420418039211/tv498986_ex99-1.htm.
[3] China AI's ownership structure can be found at https://www.sec.gov/Archives/edgar/data/1509986/000114420418045997/tv500832_sc13d.htm.
[4] *See* https://www.sec.gov/Archives/edgar/data/1509986/000114420419000755/tv510475_sc13da.htm.

In addition, after analyzing documents provided to the Receivership's counsel by third parties, it appears that LKM intentionally excluded Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps"), LKM's counsel at the time of the Class B Shares Transaction, from the transaction. Indeed, it appears that Skadden Arps was unaware that the transaction had even taken place. When Skadden Arps eventually learned of the transaction a day after the board meeting, which approved the issuance of super-voting Class B ordinary shares to China AI, Skadden Arps objected to the transaction, expressing concern that it lacked a legitimate business purpose and that it was not in the best interest of the Company. *See* Ex. B, Skadden's Email to LKM Board Dated July 19, 2018. It bears highlighting that Skadden Arps resigned shortly after LKM's Board approved this transaction.

Further evidence provided to the Receivership demonstrates that the Class B Shares Transaction was made for the purpose of providing Shi additional control over LKM's board. To date, China AI has not fully paid for the Class B shares. The Subscription Agreement referenced in the press release dated July 19, 2018 called for an initial payment of $10 million by China AI upon the execution of the Subscription Agreement, with the remaining $10 million scheduled to be paid on or before September 19, 2018.[5] On September 25, 2018, LKM announced that, due to accounting and disclosure reasons and needing more time to satisfy the closing conditions, LKM and China AI had agreed to extend the closing date of the remaining $10 million payment to November 19, 2018.[6] Nearly two years later, the remaining $10 million has still not been paid; to date, the Company has also not satisfied the closing conditions.

The Receivership team, including Mr. Guo, has analyzed LKM financial records concerning China AI's payments to LKM. In connection with this analysis, the Receivership has found that the only payment ever made pursuant to the Class B Shares transaction was a payment for $7,500,000 transmitted from China AI and its principals to LKM, a portion of which was paid by HH-Medic, Inc, the company owned and controlled by Mr. Li. *See* Ex. C, China AI Payment. Notably, HH-Medic, Inc. appears to be within the LKM corporate structure. Moreover, based on evidence uncovered by Mr. Guo, it appears that Mr. Shi orchestrated and coordinated payment from HH-Medic, Inc., (an entity of which Shi maintained control) to LKM for the purchase of the Class B shares. The evidence provided by Mr. Guo suggests that Shi engaged in this fraudulent related party transaction for the purpose of securing additional control over the Board of LKM so he could perpetuate the fraudulent scheme that is at the core of this case.

Furthermore, it remains unclear how much China AI ever paid for its Class B shares and why LKM has allowed China AI to not pay for those shares in full. For example, LKM's Cayman Islands shareholder registry provides "China AI Capital Limited "50% Full paid; 50% Nil paid," indicating that China AI, at most, has paid for only half of the $20 million owed in connection with the Class B Shares Transaction. Ex. D, LKM Shareholding Registry. Disturbingly, on July 19, 2018, the day of the Class B Shares Transaction, while China AI made a payment of $5,000,000 to LKM in connection with the sale of those shares, LKM sent $9.9 million to an unknown bank account in Luxembourg. *See* Ex. C and Ex. E, Luxembourg Transaction.

---

[5] *Supra* note 2.
[6] See https://www.sec.gov/Archives/edgar/data/1509986/000114420418050650/tv503419_ex99-1.htm.

3

### III. Shi Stated He Intended To Obstruct The Receiver

Further demonstrating Mr. Shi's connection and ties to China AI, Shi expressly represented to Mr. Guo that he intended to obstruct the Receivership. Specifically, on July 22, 2019, while attending in China a shareholder meeting for Beijing NQ Technology Co., Ltd., Ltd., the operating PRC entity of LKM, a meeting called by Ms. Lingyun Guo,[7] Mr. Shi told Mr. Guo that he would fight the Receivership in New York Federal Court. Guo Decl. at ¶9, 10. Notably, while Shi was opposing Plaintiff's motion to effectuate alternative service on him, China AI appeared in this action for the first time and moved to intervene. *See* ECF No. 111. Notably, Mr. Shi did not object to China AI's motion. ECF No. 114.

Additionally, within China, Mr. Shi has commenced various civil and administrative proceedings against Mr. Guo in an attempt to circumvent the Orders of this Court, including attempting to obstruct the proper registration of the new legal representatives of the WFOE entity inside the PRC.[8] In addition, Shi has engaged in alleged criminal activities, including the unauthorized and illegal removal of the Company's books and records to an undisclosed location and refusing to disclose such location or turn over the books and records upon request by the Court Appointed Receiver, Mr. Guo or employees of the Company. Guo Decl. at ¶11-13.

### IV. LKM Corporate Governance Documents Demonstrate The Connection Between China AI and Mr. Shi

According to the Company's Articles of Association, Class B shares can be issued to only LKM's founders or their affiliates. Specifically, the language regarding Class B shares calls for an "automatic conversion to Class A Common Shares" if the holder of Class B shares transfers them to "any person or entity which is not an Affiliate of such holder, a Founder or a Founder's Affiliate." Ex. F, Company's Articles of Association at 15.

Accordingly, as a holder of Class B shares, China AI is either Shi's entity or his "affiliate."[9] Indeed, if China AI were neither, its Class B shares would have been automatically converted to Class A shares, pursuant to the terms of the Company's Articles of Association. Because China AI still holds its Class B shares, Mr. Shi and China AI are effectively admitting that China AI and Mr. Shi are either one in the same or that China AI is Mr. Shi's affiliate.

In the alternative, if for whatever reasons China AI is not an affiliate of Mr. Shi's, then it is not entitled to hold Class B shares. Accordingly, China AI cannot represent itself to be a super voting Class B share shareholder.

Critically, China AI has filed a motion to intervene as a plaintiff in the matter. If China AI is in fact an affiliate of Mr. Shi's, then, by seeking to intervene, China AI is likely attempting to hijack this lawsuit for Shi's own fraudulent purposes. As an affiliate of Shi's, China AI can have

---

[7] Note that Ms. Lingyun Guo and Mr. Lilin Guo are not related despite having the same surname.

[8] The Receiver will submit a separate letter detailing the obstructive proceedings in the PRC to the Court.

[9] According to the Company's Articles of Associates, an "Affiliate" is defined as "with respect to any specified Person, any other Person that directly, or indirectly through one of more intermediaries, controls or is controlled by, or is under common control, with such specified Person[.]" Ex. F at 4.

4

no legitimate interest in this action. Neither Shi nor China AI has ever disclosed its affiliation to the Court.

For these reasons, China AI should be compelled to disclose its ownership and any relationships, direct or indirect, it has or has ever had with Mr. Shi before any motion to intervene is decided. Specifically, China AI, Mr. Li, Mr. Chi, and Mr. Shi should be required to clarify the following issues:

1. Whether Mr. Chi, Mr. Li and China AI are affiliated with or controlled by Mr. Shi, and what was the source of funds for the transaction between China AI and LKM;
2. Whether LKM's issuance of Class B shares to Mr. Li and China AI obtained valid approval from LKM's board of directors, and provide any and all board meeting minutes, voting rolls, and affirmations from the directors who participated;
3. Why LKM needed China AI's investment or the legitimate business purpose for why the Class B Shares Transaction was entered into by LKM;
4. Whom Mr. Li contacted to consummate the Class B Shares Transaction;
5. Demonstrate how China AI is not an affiliate of Shi's, given that China AI's Class B shares have never been converted to Class A shares;
6. The amount of investments and loans China AI obtained from LKM, a detailed accounting of the transaction transmissions and/or a reconciliation of the cancelation of any issued shares per the Subscription Agreement;
7. Whether China AI's share capital in LKM's shareholder registry has been fully paid, and if so, proof that such payment has been made;
8. Detailed reason for Mr. Chi to be paid $1,320,980 from LKM on December 28, 2017;
9. As former Co-Chairman of the Board of Directors, a statement from Mr. Chi as to his involvement in the matters in front of the court;
10. A statement from the Company's counsel of record at the time, Skadden Arps as to their involvement in the review of the transaction; and
11. A statement from Mr. Shi's personal counsel of record at the time, DLA Piper as to how they were involved in the review on behalf of the company, while representing Mr. Shi's personally.

Due to reason stated above, I, the court-appointed Receiver, reserve the right to seek appropriate remedies from the Court to address the contemptuous behavior of the related Company actors, such as Wenyong Shi, Rui "Larry" Chi, Yu "Bruson" Li and China AI.

Respectfully submitted,

Robert W. Seiden, Esq.
Court-Appointed Temporary Receiver for Link Motion Inc.