# FELICELLO

Michael James Maloney[*]
Partner

Felicello Law P.C.
1140 Avenue of the Americas
9th Floor
New York, NY 10036

Tel. +1 (646) 564-3510
mmaloney@felicellolaw.com

October 14, 2020

VIA ECF

Hon. Magistrate Judge Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:     *Baliga, et al. v. Link Motion Inc., et al*., Case No. 1:18-cv-11642 (the "Action")
        Response to October 9, 2020 Submission by Receiver

Dear Judge Freeman:

This firm represents Vincent Wenyong Shi ("Mr. Shi") in the above-referenced action. Please accept this letter in response to the October 9, 2020 submission by Robert W. Seiden, Esq., the Court-appointed receiver (the "Receiver") for Link Motion Inc. (the "Company").

In his letter, the Receiver posits two reasons for seeking recognition of his authority in the Cayman Court. First, the Receiver suggests that he sought recognition in order to prevent the Company from being dissolved for failure to pay its registration fees. The Receiver contends that the Company's registration fees in the Cayman Islands were coming due in January 31, 2020 but that Mr. Shi failed to pay the fees. This position is contrary to the facts. The Receiver was appointed by this Court on February 1, 2019. (ECF Dkt. No. 26). The Order directed the Receiver to "protect the status quo of the Company" and prohibited anyone else from transferring any funds belonging to the Company. (*Id.*). Thus, as of February 1, 2019 it was the Receiver's duty to pay any registration fees owed by the Company and Mr. Shi was prohibited from doing so. Accordingly, it appears that it was the Receiver's negligence in failing to comply with his duty to "protect the status quo of the Company," and not any actions or omissions by Mr. Shi, that resulted in unpaid registration fees.

The Receiver further argues that recognition in the Cayman Islands was necessary to deal with the Company's registered agent. This argument is nonsensical because in the ordinary course

Hon. Debra Freeman
October 14, 2020
Page 2 of 3

there is no need to engage a registered agent in order to pay a government mandated fee. Ordinarily, a fee may be paid simply by making payment to the designated account and the Receiver submits no evidence to suggesting otherwise. As described more fully below, the Receiver has had access to and control over the Company's funds since at least April 2019 and, therefore, there was no reason why the Receiver could not have made these payments over a year ago.

Second, the Receiver argues that recognition was necessary to prevent Mr. Shi from "obstructing the Receivership abroad." Records filed in this proceeding directly contradict this argument. Less than a month after his appointment in this action, the Receiver sought recognition in the High Court of Hong Kong, which was granted shortly thereafter. In and around April 2019, Mr. Guo Lilin, the Receiver's agent in Hong Kong and the People's Republic of China ("PRC"), was appointed as legal representatives over the Company's Hong Kong and PRC subsidiaries and operating entities and bank accounts. These facts demonstrate no obstruction of the Receiver's efforts to obtain control over the Company's Hong Kong and PRC assets. The so-called "evidence" the Receiver submitted in support of his contention that Mr. Shi was "obstructing" the receivership comprise nothing more than contextless photos and hearsay.

Based on information provided by China AI's U.S. counsel, Mr. Shi now has reason to believe that the Receiver sought recognition by the Cayman Court for an altogether different purpose – to retaliate against China AI Limited ("China AI") for seeking leave to intervene in this action. As we have learned from prior proceedings in this action, China AI is the largest shareholder of the Company pursuant to a Subscription Agreement entered into with the Company in July 2018 whereby China AI agreed to pay $20 million to the Company in exchange for 70,175,439 shares of the Company.[1] China AI made an initial payment $10 million to the Company in or around July 2018.[2] In November 2018, the Company and China AI amended the Subscription Agreement to provide for more time for the Company to meet the closing conditions precedent to the second payment.[3] However, the Receiver was appointed before the closing conditions were satisfied. China AI original moved to intervene on November 1, 2019. (ECF Dkt. No. 111). The Receiver's application to the Cayman Court was made less than two months later, on January 13, 2020.

China AI's U.S. counsel has provided copies of correspondence with the Receiver's Cayman counsel in August and September 2020.[4] This correspondence shows that in September 2020 the Receiver terminated the Subscription Agreement even though China AI had offered to make the second payment to the Company of $10 million on mutually agreeable terms. There seems to be no logical explanation for why the Receiver would terminate a source of funding for the Company that perhaps could have been used to settle this action. Now that Plaintiff has dropped all of his derivative claims, his losses would be less than $650,000. Mr. Shi believes that the

---

[1] https://www.sec.gov/Archives/edgar/data/1509986/000114420418050650/tv503419_ex99-2.htm
[2] https://www.sec.gov/Archives/edgar/data/1509986/000114420418045933/tv501523_ex99-1.htm
[3] https://www.sec.gov/Archives/edgar/data/1509986/000114420418050650/tv503419_ex99-2.htm
[4] *See* Letters dated August 25, 2020, September 4, 2020, September 10, 2020 and September 17, 2020, annexed hereto.

Hon. Debra Freeman
October 14, 2020
Page 3 of 3

Receiver acted in self-interest because the Receiver is the managing partner of the law firm representing Plaintiff and is presumably paying himself legal fees from the Company's assets during the receivership.

Finally, the Receiver now concedes that he lacks the power to appoint and remove directors of the Company. This concession conforms with arguments made by Mr. Shi during prior proceedings in this action. However, the Receiver fails to directly address the implications of this fact, *i.e.*, that his removal of Mr. Shi as a director and appointment of Mr. Guo Lilin as a director are null and void. Accordingly, the Court should issue an Order declaring the Receivers prior removal of Mr. Shi as a director and appointment of Mr. Guo Lilin null and void and restore the membership of the Board of Directors to the status quo as of the appointment of the Receiver.

It should be further noted that the papers disclosed by the Receiver demonstrate that when seeking recognition by the Cayman Court, the Receiver relied primarily on allegations by Plaintiff that he was a "shareholder" of the Company. Based on the previous submissions made by China AI in this action, it is now clear that Plaintiff was never a registered shareholder of the Company and never had legal standing to act derivatively on behalf of the Company. Plaintiff has admitted tacitly this fact by dropping all derivative claims in his Second Amended Complaint. Accordingly, Mr. Shi reserves the right to renew his request to discharge the Receiver and dissolve the receivership based on the filing of the Second Amended Complaint and the recent disclosures discussed herein.

Respectfully submitted,

/s/ *Michael James Maloney*

Michael James Maloney

cc:    All counsel of record (via ECF)
       Dov Gold, Esq., counsel for Robert W. Seiden (via email)