# CHO LEGAL GROUP LLC

100 Plainfield Avenue - 2nd flr., Ste 8E
Edison, NJ 08817
ph. (732) 545 – 9600
fax. (609) 613-5611

*SERVING NEW JERSEY AND NEW YORK*

September 4, 2020

Mr. Mark Russell
4th Floor Harbour Centre
42 North Church Street
George Town
PO Box 2255
KY1-1107 Cayman Islands

    **Re:**    **Subscription Agreement with Link Motion**
                 **Your Ref: 1649/20**

Dear Sirs,

We are New York counsel for China AI Capital Limited (China AI) and write in that capacity. We write in response to your letter of 25 August 2020, concerning that certain subscription agreement dated 19 July 2018 (as amended, the Subscription Agreement) between China AI and Link Motion Inc. (Link Motion). We note that you write on behalf of Robert W. Seiden (the Receiver), temporary receiver of Link Motion. Unless stated otherwise, all capitalized terms in this letter shall have the meanings assigned to them in the Subscription Agreement.

In your letter, you note that the Closing did not occur within the time provided in Subscription Agreement, as amended. As you may be aware, the Closing did not occur because Link Motion was unable to satisfy the conditions to Closing set forth in Section 2(d)(ii) and (iii) and (v) and (viii) of the Subscription Agreement on or before 19 November 2018. Following Link Motion's failure to satisfy the foregoing conditions to Closing on or before 19 November 2018, China AI entered into discussions with Link Motion regarding a second amendment to the Subscription Agreement to further extend the Closing Date to a date mutually agreeable to both parties, and stayed China AI's obligations. Significantly, the parties did not agree to amend any other terms of the Subscription Agreement.

In your letter, you now propose that China AI agree to make the Closing Payment of $10,000,000 within 14 days of your letter and consent to waive the closing conditions set forth in Section 2(d)(ii) and (vi) and (viii) of the Subscription Agreement. In attempting to comprehend the Receiver's demands, it appears that, while not denominated as such, the Receiver is proposing a second amendment to the Subscription Agreement on the terms set forth in your letter.

Initially, please note that although China AI is willing to consider good faith proposals regarding a second amendment to the terms of the Subscription Agreement, there appears to be several aspects of your proposal that conflict with the other terms of the Subscription Agreement.

**CHO LEGAL GROUP LLC**

First, it appears that Link Motion is currently unable to make truthful representations and warranties as to the matters set forth in Section 3(h) and (o) of the Subscription Agreement.  China AI hereby requests that Link Motion provide all records relating to the reports and other records that are the subject of the representation and warranty in Section 3(o). Specifically, China AI requests current financial statements and a business plan. China AI will use these records for the purpose of negotiating mutually agreeable terms of a further amendment to the Subscription Agreement.

Second, it appears that the Receiver does not have sufficient authority to perform, in good faith, all of Link Motion's obligations that would be triggered by the Closing Payment. In Section 5(a) of the Subscription Agreement, Link Motion made covenants regarding the appointment to the Board of directors nominated by China AI. As stated in paragraph 2 of the Order of the Grand Court of the Cayman Islands, Financial Services Division, dated 4 February 2020, the Receiver does not have the power to appoint or replace any director of Link Motion. Accordingly, the Receiver currently lacks power to exercise Link Motion's rights under Section 2(b) without breaching Link Motion's obligations under Section 5(b) of the Subscription Agreement. China AI reserves all rights with respect to any breach that may occur as a result of action by the Receiver pursuant to Section 2(b) of the Subscription Agreement.

Notwithstanding the foregoing, China AI stands ready and willing to make the Closing Payment of $10,000,000 upon mutually agreeable terms and, therefore, proposes that the Receiver reconsider unilaterally imposing a deadline upon the Closing so that all parties may enter into settlement negotiations.

Very truly yours,

/s/ *Jae H. Cho*
Jae H. Cho