# Robert W. Seiden

**Court-Appointed Temporary Receiver for Link Motion Inc. Pursuant to The Honorable Judge Victor Marrero of the United States District Court, Southern District of New York**

469 7th Avenue, 5th Floor
New York, New York 10018
Tel: (212) 523-0686
Email: rseiden@seidenlegal.com

October 9, 2020

**VIA Email**
Honorable Debra C. Freeman
United States District Court
500 Pearl Street
New York, New York 10007

      **Re:** *Baliga v. Link Motion Inc. et al.,* **1:18-cv-11642 (S.D.N.Y.) (VM) (DCF)**

Dear Judge Freeman:

      I write pursuant to your September 4, 2020 Order (ECF 163) requiring the Receiver to provide the Court by October 9, 2020, with (i) an explanation as to why the Receiver made an application to the Grand Court of the Cayman Islands (the "Cayman Court") for an order "recognizing" his authority; (ii) copies of the papers the Receiver submitted to the Cayman Court in connection with that application; and (iii) an explanation of the Receiver's understanding of the ramifications of the Cayman Court Order with respect to his authority to remove or appoint directors of Link Motion Inc. ("LKM" or the "Company").  Attached to this letter are all documents that the Receiver submitted to the Cayman Court, the Cayman Court's February 4, 2020 "Ruling" setting forth the grounds for its recognition of the Receiver (the "Cayman Islands Ruling"), and its accompanying February 4, 2020 Order recognizing the Receiver (the "Recognition Order").[1]

---

[1] All documents submitted to the Cayman Court are attached hereto as Exhibits 1 – 14, Exhibits 15 – 21 were not submitted to the Cayman Court (Exhibit 1, Originating Summons; Exhibit 2, Affidavit of Robert Seiden; Exhibit 3, RWS-1, a bundle of various documents referred to in the Cayman Islands application; Exhibit 4, Affidavit of Lorin Williams; Exhibit 5, Draft Cayman Islands Order; Exhibit 6, Skeleton Argument for Cayman Court ("Skeleton Argument"); Exhibit 7, *Canadian Arab Financial Corporation v Player*, 1984-85 CILR 63; Exhibit 8, *Classroom Investments v China Hospitals*, 2015 (1) CILR 451; Exhibit 9, Grand Court Laws; Exhibit 10, *Kalley v. Manus*, 1999 CILR 566; Exhibit 11, *Schemmer v Property Resources Ltd*, [1975] Ch 273; Exhibit 12, *In re Philadelphia Alternative Asset Fund Limited*, 2006 CILR Note 7; Exhibit 13, *In re Silk Road M3 Fund*, Grand Ct., Unreported; Exhibit 14, Hearing Bundle Index; Exhibit 15, Receivership Order; Exhibit 16, Cayman Islands Ruling; Exhibit 17, Recognition Order; Exhibit 18, *Argentine Holdings (Cayman) Limited v. Buenos Aires Hotel Corporation SA*, 1997 CILR 90; Exhibit 19, Receiver's July 17, 2020 Letter to the Court; Exhibit 20, *In re Bernard L Madoff Investment Securities LLC*, 2010 (1) CILR 231; Exhibit 21, Companies Law (2020 Revision)).

1

**Robert W. Seiden**  Court-Appointed Temporary Receiver for Link Motion Inc. Pursuant to The Honorable Judge Victor Marrero of the United States District Court, Southern District of New York

A. <u>**The Receiver Sought Cayman Recognition To Protect The Company From Being Dissolved In The Cayman Islands And To Help Stop Shi From Obstructing The Receivership Abroad**</u>

On advice of both US and Cayman Islands counsel, as the Receiver for LKM, I made an application for recognition of this Court's February 1, 2019 order appointing the receiver (ECF 26) ("<u>Receivership Order</u>") for two reasons, both of which I have previously set forth in paragraphs 43-48 of Exhibit 2, an affidavit dated January 10, 2020, submitted in connection with the Receiver's seeking Cayman Islands recognition.[2] Those reasons are set forth below.

<u>First</u>, the Receiver sought recognition in the Cayman Islands to prevent the Company (which is organized under the law of the Cayman Islands) from being dissolved. Similar to how Shi failed to file the necessary documents on behalf of the Company with the SEC, causing the Company to be delisted from the New York Stock Exchange in December 2018, the Company also failed to pay its corporate filing fees that were due in the Cayman Islands by January 31, 2020.[3] As a result, LKM was at risk of being removed from the Cayman Registrar of Companies ("<u>Registrar</u>") and being dissolved.[4] As the Grand Court of the Cayman Islands recognized in ruling on the Receiver's application, "*[t]he fact is that the Individual Defendants against whom the allegations of misfeasance have been made have abandoned the Company and put it at risk of being struck off administratively and dissolved.*"[5]

In the Cayman Islands, it is impossible to pay the registered fees for an exempted company, such as LKM, without engaging a registered agent. The Receiver understood, based upon advice of Cayman counsel, that failure to engage a registered agent, such as LKM's registered agent before the Receivership, Maples Corporate Services Limited ("<u>Maples</u>"), would have resulted in the Company being removed from the Registrar and dissolved.[6] However, before the Recognition Order, the Receiver was not able to act on behalf of LKM in the Cayman Islands as a matter of Cayman law. That position was consistent with Cayman Islands law, which looks to the jurisdiction of incorporation to determine who is entitled to act on behalf of a company.[7] Therefore, Maples would not engage the Receiver on behalf of the Company without

---

[2] *See* Exhibit 2, Affidavit of Robert Seiden ¶¶ 43-48; *see also* Exhibit 6, Skeleton Argument ¶ 3 ("[T]he Individual Defendants have ignored, obstructed and frustrated the Receivership. They have also allowed Link Motion's corporate filings in this jurisdiction to fall into arrears, risking a dissolution of the Company.").
[3] *See* Exhibit 2, Affidavit of Robert Seiden ¶ 45.
[4] *See* Exhibit 2, Affidavit of Robert Seiden at ¶ 45 ("The failures to pay the corporate filing fees and maintain a registered office services provider are serious risks to the viability of the receivership and the continued efforts to recover value for the Company and its shareholders, as a strike off and dissolution could potentially raise concerns as to the Company's title to its asset and jeopardize my ability to carry out my duties as Receiver."); *see* also Exhibit 6, Skeleton Argument ¶ 16.
[5] *See* Exhibit 16, Cayman Islands Ruling ¶ 16.
[6] *See* Exhibit 21, Companies Laws § 170 ("Any exempted company which fails to comply with section 168 or 169 shall be deemed to be a defunct company"); *see also* Exhibit 16, Cayman Islands Ruling ¶ 6 ("Failure to pay the fees or maintain a registered office raises a significant risk that the Company will be struck-off the register and dissolved, putting its status and title to its assets in jeopardy and that, without recognised legal status in the Cayman Islands, the Receiver will not have the required authority to intervene and prevent the administrative strike-off."); *see also* Exhibit 2, Affidavit of Robert Seiden at ¶ 45.
[7] *See* Exhibit 20, *In re Bernard L. Madoff Investment Securities LLC*, 2010 (1) CILE 231 at ¶5 ("The Cayman conflict of laws rules applicable to this issue are well established. Firstly, all matters concerning the constitution of a

a Cayman Islands court order recognizing the Receivership.[8]  Accordingly, as the Cayman Court recognized in its ruling that the Receiver sought "the recognition of his appointment by [the Cayman] Court to allow him to protect the interests of the Company."[9]

Second, the Receivership sought Cayman Islands recognition to stop Shi from obstructing the Receivership abroad, depleting the Company of its revenue and assets, and seeking to bolster his legitimacy by claiming that the Receivership was illegitimate.[10]  Between May 15, 2019 and November 5, 2019, Shi, through his agents, siphoned over $80 million dollars from the Company.[11]  Further, Shi engaged in various fraudulent actions that harmed the Company.  For example, as detailed in the Receiver's affidavit filed with the Cayman Court, Shi took "*steps to force certain Company employees to resign, then offered to rehire them to continue their work on the Company's revenue generating applications through a different entity set up to receive those revenues; and (ii) Shi attended at the Company's offices to cause accounting and legal documents to be removed and to destroy and damage operating data systems and the Company's main contract management system.*"[12]  To strengthen his legitimacy and control of LKM abroad, Shi claimed, via a Chinese social media platform, that the Receiver's appointment by a New York court "*does not have effect under Cayman Islands law and is therefore not binding on the Company or should not be recognized in other jurisdictions.*"[13]

Specifically, Shi, purporting to act as the Company, issued a press release on March 12, 2019[14], claiming that the board of directors and majority shareholders voted unanimously that:

> *"1. In view of the normal and sound daily operation of the company, the shareholders' meeting and the board of directors, the minority shareholders' litigation has no factual and legal basis. The US and Hong Kong courts do not have jurisdiction over the Company, and there is no official judicial process being initiated. Therefore, it can be determined that the minority shareholders' intent to take over the Company is completely invalid, and such act has seriously violated the legitimate rights and interests of majority shareholders and the Company;*
>
> *2. Authorize the management and board of the Company to pursue the losses caused by the minority shareholders and related responsible individuals to the Company and major shareholders to the Company and majority shareholders; request the*

---

corporation are governed by the law of the place of its incorporation. It follows that the law of the place of incorporation determines who are the company's officials authorized to act on its behalf.")

[8] *See* Exhibit 16, Cayman Islands Ruling ¶ 16 ("Recognising the Receiver's appointment would, *inter alia,* give him the standing to engage or direct a Cayman registered office provider for the Company, to pay the necessary fees and costs directly and otherwise act on behalf of the Company.").

[9] *See* Exhibit 16, Cayman Islands Ruling ¶ 6.

[10] *See* Exhibit 2, Affidavit of Robert Seiden ¶ 43.

[11] *See* Exhibit 19, Receiver's July 17, 2020 Letter to the Court.

[12] *See* Exhibit 2, Affidavit of Robert Seiden ¶ 39(b); *see also* Exhibit 3, RWS-1 at 119-122.

[13] *See* Exhibit 2, Affidavit of Robert Seiden ¶ 43; *see* Exhibit 6, Skeleton Argument ¶ 17.

[14] *See* Exhibit 3, RWS-1 at 117-118; *see also* ECF 30, Exhibit 7, Press Release.

**Robert W. Seiden**  Court-Appointed Temporary Receiver for Link Motion Inc. Pursuant to The Honorable Judge Victor Marrero of the United States District Court, Southern District of New York

*aforementioned media to immediately cease and desist false reports; and retain lawyers to challenge the jurisdiction of the U.S. and Hong Kong courts"*[15]

Thus, as the Receiver stated in an affidavit to the Cayman Court, without the Recognition Order, "*Shi and others involved in the mismanagement and asset-stripping of Link Motion [would have been] able to continue to rely on arguments that the Receiver, and the receivers appointed in the HK Court, have no status under the law of the jurisdiction of incorporation of the Company and therefore no valid claim to act for or on behalf of Link Motion*."[16] Accordingly, the Receivership sought Cayman Islands recognition to stop Shi from claiming that the Receiver did not have "*status under the law of the jurisdiction of incorporation of the Company and therefore no valid claim to act on behalf of Link Motion . . . "[and to] aid the US Court and the US Proceeding in recovering and protecting the assets of Link Motion.*"[17]

Knowing that the Company was at risk of being struck off the Registrar and that Shi was acting to obstruct the Receivership abroad, the Receiver sought, under seal, approval from Judge Marrero to domesticate the Receivership Order in the Cayman Islands.[18] Once Judge Marrero approved the request to domesticate the Receivership in the Cayman Islands, the Receivership engaged Mark Russell, the Head of Insolvency and Restructuring at KSG Attorneys at Law in the Cayman Islands, to apply for Cayman Islands recognition.

On February 4, 2020, the Cayman Court recognized my appointment as the Receiver over LKM.[19] Notably, based on discussions with Cayman counsel, this is the first time that a Receiver appointed by a United States court has been recognized over a Cayman Islands Company.

Upon receiving recognition in the Cayman Islands, the Receivership took immediate action to protect the Company. The Receiver's team secured the Recognition Order which recognized the Receiver's "*appointment by [the Cayman Court] noted on the Register of Directors of Link Motion Inc.*"[20] and engaged Maples as the Company's registered agent to pay LKM's corporate filing fees. As a result, the Company is currently in good standing with the Registrar, Shi is no longer able to claim that the Receivership is not legitimate abroad, and the Receiver's ability to preserve the Company's assets has been enhanced.

---

[15] *See* Exhibit 3, RWS-1 at 117-118; *see also* ECF 30, Exhibit 7; Exhibit 2, Affidavit of Robert Seiden ¶ 39(a).
[16] *See* Exhibit 2, Affidavit of Robert Seiden ¶ 44.
[17] *See* Exhibit 2, Affidavit of Robert Seiden ¶ 44.
[18] On September 18, 2019, the Receiver filed an application, under seal, to engage Mark Russell at KSG Attorneys at Law in the Cayman Islands to domesticate the Receivership in the Cayman Islands. The Receiver's application was granted, under seal, on September 19, 2019.
[19] *See* Exhibit 16, Cayman Islands Ruling; *see also* Exhibit 17, Recognition Order.
[20] *See* Exhibit 17, Recognition Order ¶ 4.

Case 1:18-cv-11642-VM-VF   Document 173   Filed 10/20/20   Page 5 of 6

Robert W. Seiden — Court-Appointed Temporary Receiver for Link Motion Inc. Pursuant to The Honorable Judge Victor Marrero of the United States District Court, Southern District of New York

B. **The Cayman Court Recognized The Receiver's Authority To Exclude Directors From The Control Of, Management Of, And Participation In The Affairs Of The Company**

The Recognition Order recognized that the Receiver may exclude directors from the "*participation of or in the Company's affairs.*"[21] This is because the power to "*exclude existing directors and officers from ongoing management of the Company*"[22] is an inherent power granted to receivers.[23] Indeed, under both New York law[24] and Cayman law, as recognized by the Cayman Islands' highest court[25], a receiver displaces the directors of a company upon being appointed.[26] As such, "*[t]he powers of the directors in this respect are entirely in abeyance so far as that business of the company is concerned, and the relevant powers of the company are exercised by the receiver under the direction of the court.*"[27] The Recognition Order specifically provided that Receiver could exclude directors from participating in LKM's affairs, stating that the Receiver "*may exercise his recognized powers and functions in the Cayman Islands to the exclusion of any other person.*"[28]

However, under Cayman Islands law, the power to *appoint* or *remove* a director from his or her official title is typically reserved for shareholders and is not a power a local receiver typically has. Accordingly, the Recognition Order did not recognize the Receiver's authority to remove or appoint directors in their official capacity.[29] Stated differently, the Cayman Court could not recognize a power granted to a receiver by a foreign court where that power is not capable of being granted to a receiver under Cayman Islands law.[30]

---

[21] *See* Exhibit 6, Skeleton Argument ¶ 13(c).

[22] *See* Exhibit 6, Skeleton Argument ¶ 30 (emphasis added).

[23] *See* § 7813.Powers and duties of receivers, 16 Fletcher Cyc. Corp. ("Where a receiver conducts the business of the corporation, that receiver takes the place of the directors in the management of the corporate affairs.").

[24] *See Planten v. Natl. Nassau Bank of New York*, 157 N.Y.S. 31, 35 (N.Y. Sup. Ct. 1916) ("the receiver, once one is appointed, displaces the directors in the control of the corporation. This is familiar law, and is not only expressly provided in many statutes, but is a long-established and well-recognized practice."); *see also Abm. S. See & Depew v. Fisheries Products Co.*, 9 F.2d 235, 237 (2d Cir. 1925) ("The appointment of the receivers supersedes the power of the directors to carry on the business of the corporation, and the receivers take possession of the corporation until the further order of the court.").

[25] *See* Exhibit 7, *Canadian Arab Financial Corporation v. Player,* 1984-85 CILR 63 at 67 ¶ 1 ("[I]t was clear that on this subject the legal position was the same in Canada as it was in England and, by derivation, the Cayman Islands. *The appointment of the appellant as receiver and manager had the effect of vesting the complete control and management of the second defendant in the appellant as an officer of the court (not as an agent of the company), thereby displacing the board of directors*."; *see also* 1984-85 CILR at 109-110) (emphasis added).

[26] *See* 19 C.J.S. Corporations § 856 ("Since a corporate receiver supplants officers and directors of corporation and stands in their shoes, insofar as the appointment of a receiver vests the right to control the corporate property*, it is obvious that the directors and officers of the corporation are, by the appointment, deprived of authority over or control thereof.*") (emphasis added).

[27] *See* Exhibit 18, *Argentine Holdings (Cayman) Limited v. Buenos Aires Hotel Corporation SA,* 1997 CILR 90 at 102 Line 37 to 104 line 5 (quoting *Kerr on Receivers*, 16th ed., at 216 (1983)) (analyzing multiple Cayman Islands cases for the same proposition).

[28] *See* Exhibit 17, Recognition Order ¶ 3.

[29] *See* Exhibit 16, Cayman Islands Ruling ¶ 15 ("In this case, the powers conferred upon the Receiver are the same as could be granted by this Court, save for the power to appoint Directors which will be excluded from the Recognition Order."); Exhibit 17, Recognition Order ¶ 2.

[30] *See* Exhibit 16, Cayman Islands Ruling ¶ 15 ("One of those conditions is that the powers conferred upon the foreign Receiver be powers capable of being granted under Cayman Islands law.")

**Robert W. Seiden**

**Court-Appointed Temporary Receiver for Link Motion Inc. Pursuant to The Honorable Judge Victor Marrero of the United States District Court, Southern District of New York**

Accordingly, based upon the Receivership Order and the Recognition Order, the Receiver has the power to *exclude* LKM's directors from the management of the Company and participation in any Company affairs, though the Receiver cannot *appoint* or *remove* a director. In line with these powers and limitations, while Shi still holds the title of Chairman of the Company's board of directors, he has been excluded from "*control of, management of, or participation in, the affairs of the Company*."[31]

The Receiver is available to discuss the foregoing with Your Honor. If the Court requests, Mark Russell, the Receiver's counsel in the Cayman Islands, will join the October 15, 2020 teleconference. Please do not hesitate to contact me via email or telephone if your Honor wishes to discuss this matter in further detail.

Sincerely,

*Robert Seiden*

Robert W. Seiden, Esq.
Court-Appointed Temporary Receiver for Link Motion Inc

---

[31] *See* Exhibit 15, Receivership Order II(2)(b).