# EXHIBIT 3

Plaintiff
R Seiden
First
RWS-1
January 2020

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD       OF 2020**

**BETWEEN:**

**ROBERT W. SEIDEN, IN HIS CAPACITY AS**
**TEMPORARY RECEIVER OF LINK MOTION INC.**

**PLAINTIFF**

**AND:**

**LINK MOTION INC.**

**DEFENDANT**

---

**EXHIBIT RWS-1**

---

This is the exhibit marked RWS-1 to the First Affidavit of Robert W. Seiden.

AFFIRMED before me at New
York, New York, this 10th
day of January, 2020

MICHAEL D CILENTO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CI6337025
Qualified in Bronx County
My Commission Expires February 16, 2020

20



# Search Report

| | |
|---|---|
| **Entity Name :** | Link Motion Inc. |
| **Jurisdiction :** | Cayman Islands |
| **Registration Number :** | 183784 |
| **Registration Date :** | 14th March 2007 |
| **Entity Type :** | EXEMPT |
| **Registered Office :** | REGISTERED OFFICE RESIGNED |
| | P. O. Box 0 |
| | Registered Office Resigned |
| | GRAND CAYMAN |
| | CAYMAN ISLANDS |

| | |
|---|---|
| **Status :** | ACTIVE |
| **Status Date :** | 14th March 2007 |

- INFORMATION REGARDING THE CORPORATE RECORDS AND REGISTERS ARE NOT AVAILABLE FOR PUBLIC INSPECTION

- THIS REPORT DOES NOT CONFIRM THE ENTITY IS IN GOOD STANDING

Authorisation Code : 278467806610
www.verify.gov.ky
09 January 2020

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 4 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 1 of 18

**48**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

        Plaintiff,

   -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI,
JIA LIAN,
XIAO YU,

        Defendants,

   -and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

       Nominal Defendant.

1:18-cv-11642

**VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT**

Plaintiff Wayne Baliga ("**Mr. Baliga**"), by and through his undersigned attorneys, submits this Verified Shareholder Derivative Complaint against Link Motion Inc. ("**LKM**" or the "**Company**"), Vincent Wenyong Shi ("**Defendant Shi**"), Jia Lian ("**Defendant Lian**"), and Xiao Yu ("**Defendant Yu**") (Defendants Shi, Lian, and Yu together as the "**Individual Defendants**"). Mr. Baliga alleges the following based upon information and belief, except as to those matters concerning Mr. Baliga, which are alleged upon personal knowledge. Mr. Baliga's information and belief is based on, among other things, the investigations conducted by himself and similarly situated shareholders organized under the name LKMForward, such investigations including, among other things, review and analysis of various filings both in the U.S and China, as well as communications with the Company's Board of Directors (the "**Board**") and certain other executives of LKM.

1

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 5 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 2 of 18

**49**

## NATURE OF ACTION

1.     This is a shareholder derivative action brought for the benefit of LKM and its shareholders.  LKM is a multinational technology company that develops, licenses, supports and sells software and services that focus on the smart car and smart ride businesses.  LKM's portfolio of offerings includes enabling technology solutions and secure connected computers for the ecosystem of car businesses, consumer ride sharing services, as well as legacy mobile security, productivity and other related applications.  LKM operates internationally, is based in Beijing, and trades on the New York Stock Exchange ("**NYSE**") under the ticker "LKM."  LKM has operational offices in various countries including the US.

2.     This derivative action is brought seeking equitable relief and damages to remedy, inter alia, (1) the gross mismanagement of LKM including egregious self-dealing by the Individual Defendants, (2) the misleading and false statements (including material omissions) that the Individual Defendants issued (or failed to issue) to its Board, its shareholders and the investing public, and (3) the now outright fraud and theft of LKM assets by the Individual Defendants over the last few months.

3.     The Individual Defendants are currently stripping the Company of all its value by transferring ownership of LKM's most valuable assets including highly profitable businesses to unknown third parties.  Upon information and belief, the Individual Defendants are going to allow the Company to be delisted from the NYSE and then will "go dark" on LKM's Board and shareholders, leaving LKM and its shareholders with no value or assets and slim chance to recover the same.  This action is an attempt to stop this from happening by, inter alia, getting a receiver appointed to assume control of the Company in order to attempt to claw back LKM's rightful assets, prevent any further fraudulent transfers, and take legal action in China for

2

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 6 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 3 of 18

50

the benefit of LKM regarding regaining and protecting their assets. This action also seeks damages stemming from the Individual Defendants violations of both state and federal law.

## PARTIES

4.      Plaintiff Wayne Baliga is an individual who is a U.S. citizen and resident of the State of Illinois. Mr. Baliga is currently and has at all material times of this Action been a shareholder of LKM.

5.      Nominal Defendant LKM is a company incorporated in the Cayman Islands with its principle executive offices located in Beijing, China. LKM has offices in the United States, but upon information and belief those offices are on the brink of shutting down due to the Individual Defendants cutting support and communication with the US offices. LKM securities trade on the NYSE under the ticker "LKM." LKM's agent for service of process in the United States is Law Debenture Corporate Services Inc., 400 Madison Avenue, 4th Floor, New York, New York 10017.

6.      Defendant Shi has been LKM's Chairman of the Board since December 2014 and Chief Operating Officer since October 2005. Upon information and belief, Defendant Shi is a Chinese citizen.

7.      Defendant Lian is the current acting Chief Executive Officer of LKM. Upon information and belief, Defendant Lian is a Chinese citizen.

8.      Defendant Yu is a current Director of LKM with managerial and executive influence and power, and who is involved in the highest-level operations of the Company along with Defendant Shi and Lian. Upon information and belief, Defendant Yu is a Chinese citizen.

3

Case 1:18-cv-11642-VM-VF Document 173-3 Filed 10/20/20 Page 7 of 171
Case 1:18-cv-11642-VM Document 1 Filed 12/13/18 Page 4 of 18

51

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. 1332 because the parties are citizens of different states and the amount of controversy exceeds $75,000.00. Furthermore, this Court has subject matter jurisdiction because Mr. Baliga has alleged violations of federal law.

10.     This Court has jurisdiction over each Defendant named herein because LKM is a corporation that conducts and transacts business in this District, trades on the NYSE, and otherwise has sufficient minimum contacts with the U.S. and this District. The Individual Defendants through LKM as well as individually also have sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Furthermore, this Court has jurisdiction over each Defendant based on FRCP 4(k)(1) and CPLR 302, due to the Individual Defendants' contacts with this District via LKM and individually. Moreover, this Court has jurisdiction over all Defendants pursuant to FRCP 4(k)(1)(c) and Section 27 of the Exchange Act (15 U.S.C § 78aa) due to the Exchange Act violations alleged herein.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because each of the Defendants are subject to personal jurisdiction of this District with respect to this action.

12.     In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

4

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 8 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 5 of 18

52

## FACTUAL ALLEGATIONS

### LKM Background

13.    LKM is a multinational technology company that develops, licenses, supports and sells software and services that focus on the smart car and smart ride business. LKM's portfolio of offerings includes enabling technology solutions and secure connected carputers for the ecosystem of car businesses, consumer ride sharing services, as well as legacy mobile security, productivity and other related applications.

14.    LKM was a very successful business with a very significant balance sheet of liquid and current assets when mismanagement and negligence by Defendant Shi and other members of the Board led the Company to be in a position it finds itself today, which includes noncompliance with the NYSE for failing to file current financials, including the annual audited report on Form 20-F for the year 2017 among other listing requirements of which the Company remains today in breach.

15.    Due to various allegations of wrongdoing, there were independent investigations and audits of the Company, which found several potential allegations of conflicts of interest and self-dealings by Defendant Shi.  It was then recommended in or around late 2017 that the directors of the board form a special committee and pursue an independent investigation into the matters of dispute between the co-founder Henry Lin and the Chairman of the Board, Defendant Shi. The Company's auditors communicated that they would not be able to complete their audit work for the year 2017 until such a time that the independent investigation was completed.  This occurred in August 2018 and was summarized in a press release and 6K by the Company.  It became clear based on the findings that Defendant Shi needed to step down from his positions with the Company until the allegations could ultimately be resolved.  This was also

5

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 9 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 6 of 18

53

communicated by the Company's audit committee chair at the time, who has since resigned, as well as the Company's independent auditor.

16.     Unfortunately, Defendant Shi was unwilling to step down, and, instead, began to direct a campaign of deceit, gross mismanagement, fraudulent self-dealing, and quite literally theft of LKM's most valuable assets.  In their recent rampage to destroy the Company and extract as much value for themselves as possible, the Individual Defendants have breached their fiduciary duties to the Company, the Board, and its shareholders, and have committed various violations of both state and federal law as outlined herein.

**Breaches Due to Mismanagement**

17.     By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed LKM the fiduciary obligations of good faith, trust, loyalty, and due care, and were required to use their utmost ability to control and manage the Company in a fair, just, honest and equitable manner.  The Individual Defendants were required to act in furtherance of the best interests of the Company so as to benefit the Company and not in furtherance of their personal interests or benefit.

18.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of LKM, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

19.     The Individual Defendants have breached their fiduciary duties by failing to take the necessary steps to prevent the Company's involuntary for-cause delisting from the NYSE.  There are two separate bases for this delisting: (1) the Company has failed to file their annual 2017 Form 20-F as a foreign issuer, and (2) the Company's share price was less than

6

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 10 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 7 of 18

**54**

$1.00 over a consecutive 30 trading-day period as of at least September 24, 2018. Upon information and belief, the Company has not taken the necessary steps to conduct an audit and prepare their 2017 Form 20-F and thus the Company will be imminently delisted from the NYSE.

20.     The Individual Defendants have breached their fiduciary duties by directing and/or allowing LKM to abandon certain of its business lines, engaging in gross mismanagement and wasting of corporate assets. The Defendants ceased communicating with LKM's subsidiary in Finland, which has resulted in corporate waste and the closing of the Finland office on about November 23, 2018. LKM Finland required both operating capital and direction from LKM as its largest shareholder to make corporate decisions. Defendants, however, simply cut LKM Finland off from any support whatsoever, which brought LKM Finland to a halt, forcing improper employee layoffs and ultimately the closure of a successful subsidiary with receivables that exceed debt. Upon information and belief, LKM may now face legal action in Finland due to the way LKM Finland was mishandled and how the business was forced to shut down and lay off employees.

21.     The Individual Defendants have breached their fiduciary duties by directing and/or allowing LKM to abandon LKM's office and operations in Dallas, Texas, which is estimated to not have sufficient capital for more than a few weeks of operations. Similar to the situation with LKM Finland, the Defendants ceased communications with its US offices, stopped providing support and capital, and have opted to simply go dark on its US operations and employees. Moreover, and similar to the situations with LKM Finland and the US operations, the Defendants have also ceased operations and communications with several operating entities

7

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 11 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 8 of 18

55

in China and even missed employee payroll and other regular operating support during this same time frame.

22.     In addition to the above breaches of fiduciary duties by the Individual Defendants due to their gross mismanagement of the Company, the Individual Defendants have further breached their fiduciary duties by wrongfully transferring ownership interests of certain LKM assets to unknown third parties, without the consent or knowledge of the Board, shareholders, or the public – these breaches are outlined below.

**FL Mobile and Showself Self-Dealing, Misstatements, and Illegal Transfer**

23.     In or around March 2017, LKM entered into a certain transaction with Tongfang Investment Fund Series SPC ("**Tongfang**") whereby LKM would sell its FL Mobile and Showself Live Social Video Business ("**Showself**") to Tongfang for approximately $507 million dollars.  Press releases announcing the sale to this effect were issued by LKM.  The agreement between LKM and Tongfang called for a small cash payment upfront, after which LKM would transfer Showself to Tongfang, and Tongfang would pay the remaining balance due before May 31, 2017.  The agreement called for FL Mobile and Showself to be transferred back to LKM if Tongfang failed to pay the remaining balance due.

24.     Unfortunately, Tongfang failed to pay the balance remaining by the due date of May 31, 2017.  After that time, LKM issued multiple press releases every few months explaining that it was extending the due date for Tongfang and that Tongfang was making final preparations to pay the remaining balance due.  Eventually on or around December 14, 2017, LKM issued a press release stating that it was accepting a note from Tongfang in consideration for the remaining balance due under their agreement.  The note was due to be fully paid in one year from the date of issuance.  Tongfang has still not paid down the note.

8

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 12 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 9 of 18

**56**

25.     LKM's statements in their press releases to the investing public regarding the FL Mobile and Showself transaction were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) the extent of the related party transactions involving the transaction between LKM and Tongfang, especially the involvement of ZhongZhi Hi-Tech Investment ("**ZZ**"); (2) due to the related parties involved in the Transaction, most notably ZZ who maintains a significant convertible note with LKM, LKM agreed to consideration in the form of a note with a high likelihood of default because of ZZ's conflicts of interest with Defendant Shi; (3) Defendant Shi's interest in the transaction was not fully disclosed (Defendant Shi it was later discovered was a significant owner of Tongfang who has a junior position to all other purchasing parties, notably ZZ who also has a Director position on LKM's Board and is the note holder); and (4) as a result, Defendants' statements about LKM's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

26.     In addition to all of the wrongful behavior outlined above regarding the FL Mobile and Showself transaction, Defendants now have gone even further and appear to have committed and outright theft of FL Mobile and Showself by brazenly transferring the ownership interest of Showself to a completely unrelated third-party entity.  Showself the business (aka Shi Xiang Shi Guang in Chinese) was held by an entity called Shi Xiang Shi Dai.  The ownership of Showself/Shi Xiang Shi Guang was not to be transferred until the note was paid off by Tongfang.  Public Chinese records show, however, that Shi Xiang Shi Guang was transferred from Shi Xiang Shi Dai to an unrelated third-party entity named Shi Xiang Hui Shi on November

9

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 13 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 10 of 18

57

27, 2018. It appears now that Tongfang will default on the note, and instead of Showself being

transferred back to LKM as per the agreement, Defendants have stolen the valuable Showself

business from LKM and strictly for the benefit of themselves.

### SyberOS and Rideshare Illegal Transfers

27.     In addition to the fraudulent and illegal transfer of Showself, the

Defendants have also recently and brazenly stolen two more of LKM's most valuable assets by

transferring two highly valuable assets belonging to LKM to a mysterious third-party. This

fraudulent transfer of ownership, like the Showself transfer, is evidenced unambiguously by

China's public records.

28.     LKM owns a subsidiary called NQ Beijing. NQ Beijing in turn owns

Qing Yun Wu Xian. Qing Yun Wu Xian is an investment entity that owns two highly profitable

businesses: SyberOS and Link Motion Rideshare ("**Rideshare**").

29.     Public Chinese records show that on October 20, 2018, Qing Yun Wu

Xian was 100% transferred from NQ Beijing to a mysterious third-party named Zhu Wei.

30.     Upon discovering that Qing Yun Wu Xian was transferred to an unknown

third-party, the shareholder group LKMForward wrote an email to LKM's Board requesting an

explanation. At least two Board members replied to the email indicating that they were unaware

that this transfer had taken place.

31.     Thus, the Individual Defendants did not gain the necessary approval of the

Board for the transfer of Qing Yun Wu Xian, and furthermore, upon information and belief,

failed to disclose these material transactions to anyone at the Company or its shareholders, and

now two of the Company's most valuable assets, SyberOS and Rideshare, are under the

ownership of an unknown third-party.

10

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 14 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 11 of 18

58

**Derivative Allegations and Demands to the Board**

32.     Mr. Baliga brings this action derivatively in the right and for the benefit of LKM to redress the wrongful and illegal conduct outlined herein by the Individual Defendants.

33.     Mr. Baliga will adequately represent the interests of LKM and its shareholders in enforcing and prosecuting its rights.

34.     LKM is named as a nominal defendant in this action solely in a derivative capacity.  This is not a collusive attempt to confer jurisdiction on this Court that it would not otherwise have.  Prosecution of this action, independent of the Individual Defendants, is in the best interests of LKM and its shareholders.

35.     The group of LKMForward shareholders, including Mr. Baliga, have, on at least three different occasions over the last two months, made demands via formal letters to the Board to remedy the current situation as outlined above and hold the Individual Defendants responsible for their behavior.  Such demands have not been successful.  The Board has either refused or been unable to stop the Individual Defendants from looting the Company.  The Board similarly has not agreed to take legal action against the Company or the Individual Defendants.

## FIRST CAUSE OF ACTION
### (Appointment of a Receiver)
### (As to Nominal Defendant LKM)

36.     Mr. Baliga repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

37.     Due to the wrongful conduct herein, which includes, inter alia, the theft of assets, abandonment of business lines and operations, and failure to properly manage the Company in many material ways, an independent receiver is necessary to (a) prevent the further dissipation of the Company and its assets; (b) take the necessary steps in China to claw back the

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 15 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 12 of 18

**59**

assets that were wrongfully transferred out of the ownership of the Company; and (c) manage the

Company's operations, prevent the Company from being delisted from the NYSE, and restore

value to the Company and its shareholders.

### SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duties)
### (As to the Individual Defendants)

38.    Mr. Baliga repeats and realleges each of the foregoing allegations as if

more fully set forth at length herein.

39.    As outlined herein, the Individual Defendants, due to their positions and

control over LKM owed and continue to owe LKM, the Board, and the shareholders certain

fiduciary obligations.

40.    The Individual Defendants breached their fiduciary obligations in that the

Individual Defendants:

   a.    failed to disseminate accurate and truthful information to its Board,

         shareholders, and to the investing public;

   b.    failed to get the required Board approval for certain material actions that the

         Individual Defendants took on behalf of LKM (while at the same time

         ignoring the recommendations of LKM's legal and financial professionals;

   c.    failed to prudently manage the Company in a way that put the best interests

         of the Company first, including by (i) taking the necessary regulatory steps

         in the US to ensure the Company stays listed on the NYSE, and (ii)

         abandoning certain subsidiaries and international offices of the Company

         which has resulted in corporate waste and potential legal liability of LKM;

12

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 16 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 13 of 18

60

d.   structured the Showself transaction in a way that benefited the Individual
Defendants to the detriment of the Company;

e.   wrongfully transferred ownership of Showself to an unknown third-party
without the consent or knowledge of the Board or the shareholders;

f.   wrongfully transferred ownership of SyberOS and Rideshare to an unknown
third-party without the consent or knowledge of the Board of the
shareholders.

41.   Due to the Individual Defendants' breaches, LKM has been substantially
harmed.

<div align="center">

**THIRD CAUSE OF ACTION**

**(Unjust Enrichment)**

**(As to the Individual Defendants)**

</div>

42.   Mr. Baliga repeats and realleges each of the foregoing allegations as if
more fully set forth at length herein.

43.   By their wrongful acts and omissions, the Individual Defendants have
been and continue to be unjustly enriched at the expense of and to the detriment of LKM, and the
circumstances require relief in equity and good conscious.

44.   The Individual Defendants have gained the benefit of ownership of certain
assets belonging to LKM at the expense of LKM losing said assets.

45.   Because the Individual Defendants have gained this benefit at the expense
of LKM, equity and good conscious requires that LKM be afforded restitution.

<div align="center">13</div>

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 17 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 14 of 18

61

## FOURTH CAUSE OF ACTION
### (Violation of Section 10(b) of The Exchange Act and Rule 10b-5)
### (As to All Defendants)

46.     Mr. Baliga repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

47.     The Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the various false statements and omissions outlined herein, which they knew to be false or deliberately disregarded in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.     The Individual Defendants failed to disclose to the Board, its shareholders, or the investing public the various information concerning their wrongful and fraudulent conduct as outlined herein, causing the Company's securities to be artificially inflated and then drop by nearly 50% upon discovery of the misstatements and omissions.

49.     The Individual Defendants participated in a scheme to defraud the Company and its shareholders by wrongfully transferring assets out of the Company to unknown third-parties.

## FIFTH CAUSE OF ACTION
### (Violation of Section 20(a) of The Exchange Act)
### (As to All Defendants)

50.     Mr. Baliga repeats and realleges each of the foregoing allegations as if more fully set forth at length herein.

51.     The Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, the Individual Defendants knew the adverse non-public information regarding the Company's business practices.

14

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 18 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 15 of 18

62

52.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

53.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace.

54.     The Individual Defendants did cause the Company to disseminate false information and further failed to disclose the wrongful and fraudulent scheme by the Individual Defendants in transferring assets and value out of the Company.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Wayne Baliga demands that judgment be entered in favor of LKM as follows:

(a) **on the first cause of action (appointing a receiver)**, judgment against Defendants LKM, for the following relief:

    i.     appointing an independent receiver to assume full control over the Company, its assets, and employees;

    ii.     for attorneys' fees and costs; and

    iii.     for such other and further as this Court may deem equitable and just.

(b) **on the second cause of action (breach of fiduciary duties)**, judgment against Defendants Vincent Wenyong Shi, Jia Lian, and Xiao Yu, jointly and severally, for the following relief:

    i.     compensatory damages in an amount to be determined at trial;

15

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 19 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 16 of 18

**63**

    ii.    consequential damages in an amount to be determined at trial;

    iii.    punitive damages in an amount to be determined at trial;

    iv.    attorneys' fees and costs;

    v.    such other and further relief as this Court may deem equitable and just.

**(c)** **on the third cause of action (unjust enrichment)** judgment against Defendants Vincent Wenyong Shi, Jia Lian, and Xiao Yu, jointly and severally, for the following relief:

    i.    compensatory damages in an amount to be determined at trial;

    ii.    consequential damages in an amount to be determined at trial;

    iii.    attorneys' fees and costs;

    iv.    such other and further relief as this Court may deem equitable and just.

**(d)** **on the fourth course of action (Violation of Section 10(b) of The Exchange Act and Rule 10b-5)**, judgment against Defendants Vincent Wenyong Shi, Jia Lian, and Xiao Yu, jointly and severally, for the following relief:

    i.    compensatory damages in an amount to be determined at trial;

    ii.    consequential damages in an amount to be determined at trial;

    iii.    attorneys' fees and costs;

    iv.    such other and further relief as this Court may deem equitable and just.

**(e)** **on the fifth cause of action (Violation of Section 20(a) of The Exchange Act)**, judgment against Defendants Vincent Wenyong Shi, Jia Lian, and Xiao Yu, jointly and severally, for the following relief:

    i.    compensatory damages in an amount to be determined at trial;

    ii.    consequential damages in an amount to be determined at trial;

    iii.    attorneys' fees and costs;

Case 1:18-cv-11642-VM-VF   Document 173-3   Filed 10/20/20   Page 20 of 171
Case 1:18-cv-11642-VM   Document 1   Filed 12/13/18   Page 17 of 18

64

iv.    such other and further relief as this Court may deem equitable and just.

## **JURY DEMAND**

Plaintiff Wayne Baliga demands a trial by jury on all issues in this action.


Dated: December 13, 2018
       New York, New York

                                        THE SEIDEN GROUP


                                        Michael D. Cilento, Esq.
                                        469 Seventh Ave., Fifth Floor
                                        New York, New York 10018
                                        (646)-766-1723
                                        mcilento@seidenlegal.com

                                        *Attorneys for Plaintiff*

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

                              Plaintiff,

        -against-                                           **VERIFICATION**

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI,
JIA LIAN,
XIAO YU,

                              Defendants,

        -and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

                              Nominal Defendant.

        WAYNE BALIGA, being duly sworn, deposes and says that deponent is the Plaintiff in

this action and has read this Complaint; deponent knows its content and knows that it is true to

the best of deponent's knowledge, except as to those matters stated to be upon information and

belief, and as to those matters, deponent believes them to be true.

                                                    _Wayne J. Baliga_
                                                    Wayne Baliga

Sworn to me before this 13th day
of December 2018.

_____
Notary Public

OFFICIAL SEAL
PRIYANKA KALRA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 07/20/2020

_Kalm_ 12/13/18

18

# Link Motion Receives Notice that the NYSE Has Suspended Trading in Link Motion ADSs and Has Commenced Delisting Proceedings

---

NEWS PROVIDED BY
**Link Motion Inc.** �columnarrow
Dec 24, 2018, 09:00 ET

---

BEIJING, Dec. 24, 2018 /PRNewswire/ -- Link Motion Inc., a leading smart car and smart ride company, today announced that it has been notified by the New York Stock Exchange ("NYSE") that the staff of NYSE Regulation has determined to commence proceedings to delist the American Depositary Shares (the "ADSs") of Link Motion Inc. (the "Company") -- ticker symbol LKM -- from the NYSE. Each ADSs represents five Class A common shares of the Company. Trading in the Company's ADSs on the NYSE was suspended on December 20, 2018.

NYSE Regulation has determined that the Company is no longer suitable for listing based on "abnormally low" price levels, pursuant to Section 802.01D of the Listed Company Manual. The NYSE also notified the Company that the NYSE will apply to the SEC to delist the ADSs upon completion of all applicable procedures, including any appeal by the Company of the NYSE Regulation staff's decision.

The Company has a right to request a review of this determination by a Committee of the Board of Directors of NYSE Regulation. Link Motion is considering this and other alternatives open to the Company to act in the interests of the holders of ADSs and will announce promptly any measures that its board of directors determines are appropriate.

**About Link Motion Inc.**

Link Motion Inc. ("Link Motion" or the "Company") (LKM) is a leading smart car and smart ride company. Link Motion's portfolio of offerings includes enabling technology solutions and secure connected carputers for the ecosystem of car businesses, consumer ride sharing services, as well as legacy mobile security, productivity and other related applications. For more information on Link Motion, please visit www.lkmotion.com or the company's U.S. investor relations site here.

**Forward Looking Statements**

This news release contains "forward-looking statements" within the meaning of Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended, and as defined in the U.S. Private Securities Litigation Reform Act of 1995. These forward-looking statements can be identified by terminology such as "will," "expects," "anticipates," "future," "intends," "plans," "believes," "estimates" and similar statements. All statements other than statements of historical fact in this press release are forward-looking statements and involve certain risks and uncertainties that could cause actual results to differ materially from those in the forward-looking statements. These forward-looking statements are based on management's current expectations, assumptions, estimates and projections about the Company and the industry in which the Company operates, but involve a number of unknown risks and uncertainties. Further information regarding these and other risks is included in

the Company's filings with the U.S. Securities and Exchange Commission. The Company undertakes no obligation to update forward-looking statements to reflect subsequent occurring events or circumstances, or changes in its expectations, except as may be required by law. Although the Company believes that the expectations expressed in these forward-looking statements are reasonable, it cannot assure you that such expectations will turn out to be correct, and actual results may differ materially from the anticipated results. You are urged to consider these factors carefully in evaluating the forward-looking statements contained herein and are cautioned not to place undue reliance on such forward-looking statements, which are qualified in their entirety by these cautionary statements.

**Investor Relations**

Link Motion Inc.
Email: investors@lkmotion.com
Phone: +86 10 6452 2017

SOURCE Link Motion Inc.

Related Links

http://www.lkmotion.com/

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM 25

## NOTIFICATION OF REMOVAL FROM LISTING AND/OR REGISTRATION
## UNDER SECTION 12(b) OF THE SECURITIES EXCHANGE ACT OF 1934.

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0080 |
| Expires: | March 31, 2018 |
| Estimated average burden hours per response: | 1.7 |

Commission File Number 001-35145

Issuer:  Link Motion Inc.

Exchange: NEW YORK STOCK EXCHANGE LLC

(Exact name of Issuer as specified in its charter, and name of Exchange where security is listed and/or registered)

Address:  No. 4 Building
11 Heping Li East Street
Dongcheng District

Telephone number:  86 1370 121 556

(Address, including zip code, and telephone number, including area code, of Issuer's principal executive offices)

American Depositary Shares (each representing five Class A common shares)

(Description of class of securities)

Please place an X in the box to designate the rule provision relied upon to strike the class of securities from listing and registration:

☐ 17 CFR 240.12d2-2(a)(1)

☐ 17 CFR 240.12d2-2(a)(2)

☐ 17 CFR 240.12d2-2(a)(3)

☐ 17 CFR 240.12d2-2(a)(4)

☑ Pursuant to 17 CFR 240.12d2-2(b), the Exchange has complied with its rules to strike the class of securities from listing and/or withdraw registration on the Exchange. [1]

☐ Pursuant to 17 CFR 240.12d2-2(c), the Issuer has complied with its rules of the Exchange and the requirements of 17 CFR 240.12d-2(c) governing the voluntary withdrawal of the class of securities from listing and registration on the Exchange.

Pursuant to the requirements fo the Securities Exchange Act of 1934, NEW YORK STOCK EXCHANGE LLC certifies that it has reasonable grounds to believe that it meets all of the requirements for filing the Form 25 and has caused this notification to be signed on its behalf by the undersigned duly authorized person.

| 2019-01-09 | By | Victoria Paper | Senior Analyst |
|---|---|---|---|
| Date | | Name | Title |

[1]  Form 25 and attached Notice will be considered compliance with the provisions of 17 CFR 240.19d-1 as applicable. See General Instructions.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

EX-99.25 2 ruleprovisionnotice.htm NOTIFICATION OF THE REMOVAL FROM LISTING AND REGISTRATION OF THE STATED SECURITIES The New York Stock Exchange ('NYSE' or the 'Exchange') hereby notifies the Securities and Exchange Commission (the 'Commission') of its intention to remove the American Depositary Shares (each representing five Class A common shares) (the 'ADSs') of Link Motion Inc. (the 'Company') from listing and registration on the Exchange at the opening of business on January 22, 2019, pursuant to the provisions of Rule 12d2-2(b) because, in the opinion of the Exchange, the ADSs are no longer suitable for continued listing and trading on the Exchange. The Exchange has determined that the Company is no longer suitable for listing based on 'abnormally low' price levels, pursuant to Section 802.01D of the Listed Company Manual. The Exchange, on December 20, 2018, determined that the ADSs of the Company should be suspended immediately from trading, and directed the preparation and filing with the Commission of this application for the removal of the ADSs from listing and registration on the Exchange. The Company was notified by phone and by letter on December 20, 2018. Pursuant to the above authorization, a press release regarding the proposed delisting was issued and posted on the Exchange's website on December 20, 2018. Trading in the ADSs was suspended intra-day on December 20, 2018. The Company had a right to appeal to a Committee of the Board of Directors of the Exchange (the 'Committee') the determination to delist the ADSs, provided that it filed a written request for such a review with the Secretary of the Exchange within ten business days of receiving notice of the delisting determination. The Company did not file such request within the specified time period. Consequently, all conditions precedent under SEC Rule 12d2-2(b) to the filing of this application have been satisfied.

```
<SEC-DOCUMENT>0000876661-19-000022.txt : 20190109
<SEC-HEADER>0000876661-19-000022.hdr.sgml : 20190109
<ACCEPTANCE-DATETIME>20190109095145
ACCESSION NUMBER:        0000876661-19-000022
CONFORMED SUBMISSION TYPE:    25-NSE
PUBLIC DOCUMENT COUNT:    2
FILED AS OF DATE:        20190109
DATE AS OF CHANGE:        20190109
EFFECTIVENESS DATE:        20190109

SUBJECT COMPANY:

        COMPANY DATA:
                COMPANY CONFORMED NAME:        Link Motion Inc.
                CENTRAL INDEX KEY:        0001509986
                STANDARD INDUSTRIAL CLASSIFICATION:    SERVICES-PREPACKAGED SOFTWARE [7372]
                IRS NUMBER:            000000000
                STATE OF INCORPORATION:        E9

        FILING VALUES:
                FORM TYPE:        25-NSE
                SEC ACT:        1934 Act
                SEC FILE NUMBER:    001-35145
                FILM NUMBER:        19517467

        BUSINESS ADDRESS:
                STREET 1:        No. 4 Building, 11 Heping Li East Street
                STREET 2:        Dongcheng District
                CITY:            Beijing
                STATE:            F4
                ZIP:            100013
                BUSINESS PHONE:        (86-10) 8565-5555

        MAIL ADDRESS:
                STREET 1:        No. 4 Building, 11 Heping Li East Street
                STREET 2:        Dongcheng District
                CITY:            Beijing
                STATE:            F4
                ZIP:            100013

        FORMER COMPANY:
                FORMER CONFORMED NAME:    NQ Mobile Inc.
                DATE OF NAME CHANGE:    20120418

        FORMER COMPANY:
                FORMER CONFORMED NAME:    NetQin Mobile Inc.
                DATE OF NAME CHANGE:    20110111

FILED BY:

        COMPANY DATA:
                COMPANY CONFORMED NAME:        NEW YORK STOCK EXCHANGE LLC
                CENTRAL INDEX KEY:        0000876661
                IRS NUMBER:            000000000
                STATE OF INCORPORATION:        NY

        FILING VALUES:
                FORM TYPE:        25-NSE

        BUSINESS ADDRESS:
                STREET 1:        11 WALL STREET
                CITY:            NEW YORK
                STATE:            NY
                ZIP:            10005
                BUSINESS PHONE:        212-656-2060

        MAIL ADDRESS:
                STREET 1:        11 WALL STREET
                CITY:            NEW YORK
                STATE:            NY
                ZIP:            10005

        FORMER COMPANY:
                FORMER CONFORMED NAME:    NEW YORK STOCK EXCHANGE INC
                DATE OF NAME CHANGE:    19910628
</SEC-HEADER>
<DOCUMENT>
<TYPE>25-NSE
<SEQUENCE>1
<FILENAME>primary_doc.xml
<TEXT>
<XML>
<?xml version="1.0"?>
<notificationOfRemoval>

    <schemaVersion>X0203</schemaVersion>

    <exchange>
        <cik>0000876661</cik>
        <entityName>NEW YORK STOCK EXCHANGE LLC</entityName>
    </exchange>

    <issuer>
        <cik>1509986</cik>
        <entityName>Link Motion Inc.</entityName>
        <fileNumber>001-35145</fileNumber>
        <address>
            <street1>No. 4 Building</street1>
            <street2>11 Heping Li East Street</street2>
```

```
                    <city>Dongcheng District</city>
                    <stateOrCountryCode></stateOrCountryCode>
                    <stateOrCountry></stateOrCountry>
                    <zipCode></zipCode>
              </address>
              <telephoneNumber>86 1370 121 556</telephoneNumber>
        </issuer>

        <descriptionClassSecurity>American Depositary Shares (each representing five Class A common shares)</descriptionClassSecurity>

        <ruleProvision>17 CFR 240.12d2-2(b)</ruleProvision>

        <signatureData>
              <signatureName>Victoria Paper</signatureName>
              <signatureTitle>Senior Analyst</signatureTitle>
              <signatureDate>2019-01-09</signatureDate>
        </signatureData>
</notificationOfRemoval>
</XML>
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99.25
<SEQUENCE>2
<FILENAME>ruleprovisionnotice.htm
<TEXT>
NOTIFICATION OF THE REMOVAL FROM LISTING AND REGISTRATION OF THE STATED SECURITIES

The New York Stock Exchange ('NYSE' or the 'Exchange') hereby notifies the Securities and Exchange Commission (the 'Commission') of its int

The Exchange has determined that the Company is no longer suitable for listing based on 'abnormally low' price levels, pursuant to Section

The Exchange, on December 20, 2018, determined that the ADSs of the Company should be suspended immediately from trading, and directed the

Pursuant to the above authorization, a press release regarding the proposed delisting was issued and posted on the Exchange's website on De

The Company had a right to appeal to a Committee of the Board of Directors of the Exchange (the 'Committee') the determination to delist th
</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
```

思享时代 （Si Xiang Shi Dai）
https://www.qichacha.com/firm_aac1ad3c85a7637c809fd2783b90b945.html

Si Xiang Shi Dai is supposed to own the Showself business, which is 思享时光 （Si Xiang Shi Guang）. It should remain there til the note is paid.



scroll down from link:



思享时光科技 （Si Xiang Shi Guang） = Showself (the business itself)
https://www.qichacha.com/firm_1a1906d5a2bf08e59c49d52cd2cb5df4.html



scroll down on link you'll see:



on Nov 27, public records show that the Showself business 思享时光(Si Xiang Shi Guang) is no longer owned by 思享时代(Si Xiang Shi Dai) and is now transferred to 思享汇智（Si Xiang Hui Zhi)

思享汇智（Si Xiang Hui Zhi) is owned by two persons – 周宏斌（Zhou Hong Bin) and 卢沛（Lu Pei) Basically Lu Pei is still holding the business and Zhou Hong Bin has replaced Vincent Shi. This transfer possibly made 思享时代(Si Xiang Shi Dai) an empty shell with no actual business.

http://qyxy.baic.gov.cn/newChange/newChangeAction!bgxx_view.dhtml?reg_bus_ent_id=a1a1a1a0334523630133496372a67f0f



Side Note:

On Nov 11, public records show that 思享汇智（Si Xiang Hui Zhi） is transferred from 聚星云霁（Ju Xing Yun Ji） to two persons – 周宏斌（Zhou Hong Bin） and 卢沛（Lu Pei）

http://qyxy.baic.gov.cn/newChange/newChangeAction!bgxx_view.dhtml?reg_bus_ent_id=20e38b8c3f3d05f1013f6081bdaa0053



青云无限（天津）　(Qing Yun Wu Xian)
https://www.qichacha.com/firm_ad506105e2d8dd2ca36e3fbc027f55c7.html

Qing Yun Wu Xian is the investment entity and has the rideshare business 逸品出行（Yi Pin Chu Xing) and 元心科技（Syber OS)







From www.qichacha.com , the public record shows that 青云无限 (Qing Yun Wu Xian) was transferred from 北京网秦天下 (Beijing NQ) to a person named 祝薇 (Zhu Wei) on Oct 20, 2018.



Two directors, William Li and Guo Lingyun responded to our email requesting for information of the transfer and it indicates that they're unaware of the transfer.



Link Motion's Director of Public Relations also responded to the reporter from The Beijing News when he asked about the reason for the transfer:



一夫            Mon, Dec 3, 6:47 AM (7 days ago)
to me ▾

Because Guo Lingyun violated the vie agreement, the company has filed for arbitration. In order to ensure the safety of assets, the company is building a new vie structure, Zhu Wei as a new vie shareholders is acting for the company.

因为郭凌云违反vie协议，公司已经提出仲裁。公司为了确保资产安全，正在搭建新的vie结构，祝薇作为新的vie股东是替公司代持的。

LKM just reply me



一夫            Mon, Dec 3, 1:32 PM (7 days ago)
to me ▾

Dear LKMforward:

This information come from  Hongming Wang王宏明,  the director of public relations for LKM.But I'm not sure he has told me the truth.
It's my pleasure to  share this statement to you,you can share it with the public .And my article will be published as soon as possible.

Best wish
YiFu

---

4                 

# Link Motion Reports on the Special Committee's Independent Investigation; Announces Changes to its Board of Directors

---

NEWS PROVIDED BY
**Link Motion Inc. →**
Sep 10, 2018, 07:00 ET

---

BEIJING, Sept. 10, 2018 /PRNewswire/ -- Link Motion Inc., (NYSE: LKM), a leading smart car and smart ride company, today announced the summary of the results of the independent investigation conducted by an independent Special Committee of its Board of Directors and carried out by its independent counsel, Loeb & Loeb LLP.  The Company also announces changes to its Board of Directors and remedial steps it is taking to enhance its corporate governance and operational controls.

**1.  The Special Committee and the Report to the Board**

**_Background_**

- The Special Committee comprised of independent directors was created in 2016 to deal with allegations concerning internal governance matters raised in connection with an investigation into Dr. Henry Lin's resignation as Chairman and Chief Executive Officer of the Company and the Board's decision to replace him as Chairman with Dr. Vincent Shi.  Loeb & Loeb was first retained as counsel to the Special Committee in November 2016 to investigate these allegations.
- During the first half of 2018, additional allegations were raised and the mandate of the Special Committee was expanded to deal with these matters as well.
- On August 27, 2018, Loeb & Loeb made an oral presentation of the results of the investigation to the Board of Directors.
- Elements of the reported findings pertain to matters related to RPL Holdings Ltd., one of the Company's major shareholders.  RPL's sole shareholder is a trust, of which Dr. Lin and Dr. Shi are major beneficiaries.  Dr. Lin was the sole director of RPL until the delivery of a letter announcing his resignation in 2016, at which time he was replaced in that capacity by Dr. Shi.

## _Principal Findings Related to the Company and its Board of Directors_

- Loeb & Loeb found it was reasonable for the Board to conclude that (i) in December 2014, Dr. Henry Lin resigned as CEO and Chairman of the Company, and (ii) there is not sufficient evidence to conclude that Dr. Henry Lin's letter of resignation from those positions was not authorized or ratified by him.

- However, Loeb & Loeb found a discrepancy between the reason disclosed by the Company for Dr. Lin's resignation at the time of announcement ("personal reasons unrelated to the Company") and the reason provided by counsel to the Company at the request by management in response to a subsequent request for more information as to the nature of the "personal reasons" from the staff of the U.S. Securities and Exchange Commission.  In that response, "health reasons" were put forward as the basis for Dr. Lin's resignation.  This statement was not accurate and complete since members of the Company's management were aware that Dr. Lin's resignation was significantly related to his involvement with a Chinese government investigation involving matters unrelated to the Company.

- In connection with the transaction in which the Company divested its subsidiary, FL Mobile, Loeb & Loeb reported that there is not sufficient evidence to support allegations that (i) the Company intentionally tried to conceal the restricted nature of the RMB 440 million dollar bank deposit, (ii) the Company's repurchase of 5.66% of the outstanding FL Mobile shares from Dr. Vincent Shi was inappropriate or (iii) Company management lacked integrity regarding the disclosure that this deposit constituted restricted cash.

- In connection with the sale of FL Mobile shares by the Company to Tongfang Investment Fund Series SPC ("Tongfang"), the investigation found that, under the agreements signed with Tongfang, the Company has the ability to recover the shares it has sold to Tongfang if Tongfang fails to pay its RMB 1.77 billion senior note delivered in payment for those shares. Furthermore, there is not sufficient evidence to conclude that the

agreements signed with Tongfang are related-party transactions that would require special procedures for approval.

• With respect to internal controls and cash management, Loeb & Loeb reported that there is not sufficient evidence to support the allegations that any director, officer or employee of the Company has the ability to inappropriately direct funds out of the Company or that the Company's banking relationships with China Industrial Bank or Bank of Jiangsu are not trustworthy.

• In connection with the sale of Class B common shares by the Company to China AI Capital, the investigation found that the transaction was presented to the Board in accordance to proper procedures and decision-making and did not violate the Company's Memorandum and Articles of Association.

• Loeb & Loeb investigated Dr. Lin's statement that he did not sign and did not authorize the execution of the letter of resignation as sole director of RPL.  Loeb & Loeb reported its finding that a Company employee had custody of Dr. Lin's signature stamp, which she had used to "stamp" the letter of resignation as director of RPL.  Loeb & Loeb further found that it was "more likely than not" that the employee had done so at the instruction of Dr. Shi.   Dr. Lin was the sole director of RPL until the delivery of the letter announcing his resignation in 2016, at which time he was replaced in that capacity by Dr. Shi.

## 2.  The Changes to its Board of Directors

Mr. Ethan Hu served as Chairman of the Special Committee of the Board, and as such was the director primarily responsible for the investigation into the allegations referred to above.  He was also the Chairman of the Company's Audit Committee.  Now that the arduous tasks as Chairman of the Special Committee have been completed, on September 5, 2018, Mr. Hu tendered his resignation as a director without any dispute or disagreement with the Company or its Board of

Directors in any matter related to his roles on the Board.  In addition, the Board of Directors accepted the resignation of Mr. Jian Qi as an independent director of the Company and a member of the Audit Committee.

The Board of Directors thanked both Mr. Hu and Mr. Qi for the services they have rendered to the Company in their respective capacities.

To expand the remaining number of independent directors, the Board elected Mr. Jia Lian and Mr. Xiao Yu as independent directors of the Company.  Mr. Jia Lian has served as the chairman of Botongxingcheng (Beijing) Investment Co., Ltd.  Mr. Lian has more than 10 years' experience in finance and investment.  He graduated from Chinese People's Liberation Army Armored Force Engineering Institute in 2004.  Mr. Xiao Yu is the chief executive officer of Beijing Hongyi Garment Trading Co., Ltd.  He has more than 10 years' experience in marketing and management.  Mr. Yu graduated from Modern Art Design College in 2004.

### 3.  Improving Corporate Governance and Operational Controls

Based in part on the findings of the investigation, the Board has concluded that the Company's internal procedures and processes with respect to its decision making and operations should be made more effective and transparent in order to avoid events in the future that could lead to allegations similar to those that have been investigated by the Special Committee.  The anticipated improvements will be focused, among other things, on expanded and reinforced management and financial controls and review of financial and operational reporting.

As a first step in that process, the directors have removed each of the existing members of the standing Committees of the Board, thanking them for their service.  Each removed Committee member remains a director of the Company's

full Board of Directors.  As an interim step, the directors named Mr. Yu as the sole member of each of the Audit and Corporate Governance Committees, and named Mr. Yu and Mr. Bruson Li as members of the Nominations Committee, pending the selection of additional directors as members of those committees.

The Board has also decided that the corporate governance of the Company would be enhanced by naming a Co-Chairman of the Board.  Therefore, pursuant to Company's Articles of Association, the directors have elected Director Larry Chi as Co-Chairman of the Board.  Dr. Shi will continue to serve the Company as Chairman of the Board and chief operating officer.

In addition, members of the Board of Directors are considering ways to strengthen the Board's operations.  These methods could potentially include (i) adding additional new directors who can actively contribute to the Company's growth,  (ii) improving the Committee structure and operations, and (iii) implementing structural and procedural methods to improve the Board's oversight of Company operations.

Finally, in order to continue to improve the Company's governance processes, the directors have charged the management with the task of reporting as soon as possible to the Board on appropriate and effective steps for the Board's consideration to achieve that goal.  The Board will report to the shareholders and other interested parties as such procedures are adopted and implemented by the Company.

**About Link Motion Inc.**

Link Motion Inc. ("Link Motion" or the "Company",NYSE: LKM) is a leading smart car and smart ride company. Link Motion's portfolio of offerings includes enabling technology solutions and secure connected carputers for the ecosystem

of car businesses, consumer ride sharing services, as well as legacy mobile security, productivity and other related applications. For more information on Link Motion, please visit www.lkmotion.com or the company's U.S. investor relations site here.

**Forward Looking Statements**

This news release contains "forward-looking statements" within the meaning of Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended, and as defined in the U.S. Private Securities Litigation Reform Act of 1995. These forward-looking statements can be identified by terminology such as "will," "expects," "anticipates," "future," "intends," "plans," "believes," "estimates" and similar statements. All statements other than statements of historical fact in this press release are forward-looking statements and involve certain risks and uncertainties that could cause actual results to differ materially from those in the forward-looking statements. These forward-looking statements are based on management's current expectations, assumptions, estimates and projections about the Company and the industry in which the Company operates, but involve a number of unknown risks and uncertainties. Further information regarding these and other risks is included in the Company's filings with the U.S. Securities and Exchange Commission. The Company undertakes no obligation to update forward-looking statements to reflect subsequent occurring events or circumstances, or changes in its expectations, except as may be required by law. Although the Company believes that the expectations expressed in these forward-looking statements are reasonable, it cannot assure you that such expectations will turn out to be correct, and actual results may differ materially from the anticipated results. You are urged to consider these factors carefully in evaluating the forward-looking statements contained herein and are cautioned not to place undue reliance on such forward-looking statements, which are qualified in their entirety by these cautionary statements.

**Media & Investor Relations**

**MZ North America**

Chris Tyson

Managing Director

949-491-8235

LKM@mzgroup.us

www.mzgroup.us

Luke Zimmerman

Senior Associate

949-259-4987

LKM@mzgroup.us

www.mzgroup.us

SOURCE Link Motion Inc.

Related Links

http://www.lkmotion.com/

6-K 1 tv510911_6k.htm 6-K

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**Form 6-K**

**REPORT OF FOREIGN PRIVATE ISSUER**
**PURSUANT TO RULE 13a-16 OR 15d-16 OF**
**THE SECURITIES EXCHANGE ACT OF 1934**

For the month of January 2019
--------------
Commission File Number: 001-35145
----------

# Link Motion Inc.

**No. 4 Building**
**11 Heping Li East Street**
**Dongcheng District**
**Beijing 100013**
**The People's Republic of China**
**(Address of principal executive offices)**

Indicate by check mark whether the registrant files or will file annual reports under cover of Form 20-F or Form 40-F.
Form 20-F ☒ Form 40-F ☐

Indicate by check mark if the registrant is submitting the Form 6-K in paper as permitted by Regulation S-T Rule 101(b)(1):_____

Indicate by check mark if the registrant is submitting the Form 6-K in paper as permitted by Regulation S-T Rule 101(b)(7):_____

**Changes in Registrant's Certifying Accountant**

On January 7, 2019, Marcum Bernstein & Pinchuk LLP ("MBP") notified Link Motion Inc. (the "Company") that it will resign as the Company's independent registered public accounting firm, effective immediately. MBP did not issue reports on the consolidated financial statements of the Company as of and for the years ended December 31, 2017 or 2018.

In its resignation letter, which is attached hereto as Exhibit 99.1 and is incorporated by reference herein, MBP informed the Company of the following:

1.  A previously disclosed error regarding the classification of RMB512 million of its term deposits ("Term Deposits") that should have been classified as restricted in the Company's audited financial statements as of and for the year ended December 31, 2016;

2.  As previously disclosed, certain agreements related to the Term Deposits, such as a joint custodian agreement, pledge agreement and the related personal bank loan agreements for Dr. Vincent Wenyong Shi ("Dr. Shi"), the Chief Operating Officer and Chairman of Board of Directors of the Company, should have been disclosed;

3.  The Company informed MBP that it identified certain matters, that if further investigated, might impact the Company's audited financial statements as of and for the years ended December 31, 2017 and/or 2016;

4.  As disclosed in the Company's Form 6-K filed on September 10, 2018, a special committee of independent directors of the Company's board of directors announced findings related to its investigation of allegations raised by the former Chairman and Chief Executive Officer (the "Former CEO") of the Company related to internal governance matters raised in connection with an investigation into the Former CEO's resignation and replacement. MBP also received emails containing further allegations directly from the Former CEO.

MBP stated that the Company has not provided the information and documentation that MBP requires to determine whether an investigation of adequate scope has been performed and completed related to aforementioned issues, as well as the impact of the results of the investigation on MBP's work and on the Company's financial statements as of and for the years ended December 31, 2016 and 2017. In addition, MBP stated that these matters raised questions relating to its ability to rely on the representations of management.

MBP confirmed its previous advice that its opinion, dated April 25, 2017, on the Company's financial statements as of and for the year ended December 31, 2016 should no longer be relied upon.

The Company has provided MBP with a copy of the disclosures it is making in this Current Report on Form 6-K and requested from MBP a letter addressed to the Securities and Exchange Commission indicating whether it agrees with such disclosures. A copy of MBP's letter, dated January 9, 2019, is attached as Exhibit 99.2.

The Company has not yet engaged a new independent registered public accounting firm.

---

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**Link Motion Inc.**

By:     /s/ Vincent Wenyong Shi

Name:   Vincent Wenyong Shi

Title:   Chairman and Chief Operating Officer

Date: January 9, 2019

**EXHIBIT INDEX**

<u>Exhibit No.</u>        <u>Description</u>
Exhibit 99.1        Resignation letter from Marcum Bernstein & Pinchuk LLP

Exhibit 99.2        Letter from Marcum Bernstein & Pinchuk LLP

---

EX-99.1 2 tv510911_ex99-1.htm EXHIBIT 99.1

*EXHIBIT 99.1*



January 7, 2019


Dr. Vincent Wenyong Shi

**Link Motion Inc.**
No. 4, Courtyard No. 11, He Ping Li East Street
Dong Cheng District, Beijing 100013, China

Re: Link Motion Inc.

Dear Dr. Vincent Wenyong Shi:

The purpose of this letter is to inform you that Marcum Bernstein & Pinchuk LLP ("MBP," "we," "us" or "our") has resigned as the independent registered public accounting firm for Link Motion Inc. (the "Company"), effective immediately.

As you are aware and as disclosed in the Company's Form 6-K filed on May 16, 2018, the Company's management identified an error regarding the classification of RMB512 million of its term deposits ("Term Deposits"). At that time, management also identified that certain agreements related to the Term Deposits, such as a joint custodian agreement, pledge agreement and the related personal bank loan agreements for Dr. Vincent Wenyong Shi ("Dr. Shi"), the Chief Operating Officer and Chairman of Board of Directors of the Company should have been disclosed and the Term Deposits should have been classified as restricted in the Company's audited financial statements as of and for the year ended December 31, 2016. The management team began a comprehensive review process in order to make necessary adjustments and any required disclosures.

As part of their review process, the Company has informed us that they have identified the following matters, that if further investigated, might impact the Company's audited financial statements as of and for the years ended December 31, 2017 and/or 2016: (i) the proper classification of RMB512 million of Term Deposits resulting in the overstatement of term deposits and understatement of restricted term deposits (ii) the disclosures associated with the Term Deposits (iii) the proper accounting, the nature of (including business purpose), and disclosures about the RMB113.2 million payment to Dr. Shi concerning the reversal of the 5.66% equity in FL Mobile and (iv) other associated accounting treatments and disclosure resulting from the agreements related to the Term Deposits, such as a joint custodian agreement, a pledge agreement and the related personal bank loan agreements for Dr. Shi.



NEW YORK OFFICE • 7 Penn Plaza • Suite 830 • New York, New York • 10001
Phone 646.442.4845 • Fax 646.349.5200 • www.marcumbp.com

In addition, a special committee of independent directors of the Company's Board announced findings in the Company's Form 6-K filed on September 10, 2018, related to its investigation of allegations raised by the former Chairman and Chief Executive Officer (CEO) of the Company related to internal governance matters raised in connection with an investigation into the former CEO's resignation and replacement. MBP also received emails containing further allegations directly from the former CEO.

To date, notwithstanding MBP's repeated requests, the Company has been unable to provide the information and documentation that MBP requires to determine whether an investigation of adequate scope has been performed and completed, as well as the impact of the results of the investigation on our work and on the Company's 2016 and 2017 financial statements.

These matters also raise questions relating to our ability to rely on the representations of management.

We confirm that our opinion dated April 25, 2017 on the Company's 2016 financial statements should no longer be relied upon. In addition, based on the foregoing, we are not in a position to reissue our opinion on the Company's 2016 financial statements nor are we in a position to conclude our work and issue any opinion on the Company's 2017 financial statements. Accordingly, we hereby resign as the Company's independent registered public accounting firm, effective immediately.

Sincerely,

*Marcum Bernstein + Pinchuk LLP*

Marcum Bernstein & Pinchuk LLP

Sent Via E-Mail vincent@lkmotion.com

CC:
The Audit Committee

VIA MAIL: SECPSletters@sec.gov.
Office of the Chief Accountant
SECPS Letter File
Securities and Exchange Commission

EX-99.2 3 tv510911_ex99-2.htm EXHIBIT 99.2

*EXHIBIT 99.2*



January 9, 2019

Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549

Commissioners:

We have read the statements made by Link Motion Inc. in its Form 6-K dated January 9, 2019. We agree with the statements concerning our Firm in such Form 6-K. This Form 6-K should be read in conjunction with our resignation letter that is attached as Exhibit 99.1 to this Form 6-K and incorporated by reference herein.

Very truly yours,

/s/ Marcum Bernstein & Pinchuk LLP

Marcum Bernstein & Pinchuk LLP



NEW YORK OFFICE • 7 Penn Plaza • Suite 830 • New York, New York • 10001
Phone 646.442.4845 • Fax 646.349.5200 • www.marcumbp.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.DC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/14/18_

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

            Plaintiff,

-against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI,
JIA LIAN,
XIAO YU,

            Defendants,

-and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

            Nominal Defendant.

1:18-cv-11642

**TEMPORARY RESTRAINING
ORDER**

On December 14, 2018 Plaintiff Wayne Baliga filed a Proposed Order to Show Cause with Temporary Restraining Order, along with an Affirmation from Michael D. Cilento in Support of Temporary Restraining Order and Order to Show Cause, and supporting exhibits, and an Affirmation from Robert W. Seiden in Support of Temporary Restraining Order and Order to Show Cause. I have reviewed Plaintiff's submission, and, with good cause appearing, it is hereby:

ORDERED THAT, pending the hearing and determination of Plaintiff's Order to Show Cause, Defendants[1] shall be temporarily restrained and enjoined from: transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or other interest in, any assets belonging to Link Motion Inc. (the "Company") including, among other things, its subsidiaries, businesses, physical

---

[1] Including Defendants' successors, assigns, officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device,

assets, and cash reserves. Notwithstanding this Order, the Company shall be allowed to continue to process normal day-to-day operational costs, including but not limited to payroll, attorneys' fees, and auditor fees.

IT IS FURTHER ORDERED THAT this Order shall remain in effect for fourteen (14) days. The parties are directed to meet and confer and to submit a joint letter to the Court on or before December 21, 2018, (1) indicating whether Defendants consent to an extension of this Order beyond the initial fourteen-day period, and (2) setting forth a proposed briefing schedule with respect to Defendants' opposition to and Plaintiffs' reply in further support of Plaintiffs request for a preliminary injunction and appointment of a temporary receiver.

**SO ORDERED.**

Dated:   December 14, 2018
         New York, New York

Hon. Victor Marrero
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

                       Plaintiff,

       -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI,
JIA LIAN,
XIAO YU,

                    Defendants,

       -and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

                 Nominal Defendant.

1:18-cv-11642

**JOINT LETTER**

---

Plaintiff and Defendant Link Motion Inc. ("Defendant") did meet and confer and now submit this joint letter pursuant to this Court's December 14, 2018 Temporary Restraining Order.

Defendant does consent to this Court's December 14, 2018 Temporary Restraining Order remaining in effect pending this Court's ruling on Plaintiff's request for a preliminary injunction and temporary receiver.

Plaintiff and Defendant could not come to agreement on a single proposed briefing schedule on Plaintiff's preliminary injunction and temporary receiver request.

Plaintiff's Statement and Proposal

Plaintiff respectfully requests that this Court set an expedited briefing schedule, keeping in mind that preliminary injunction applications in general are time-sensitive and shall be given preference in terms of timing and processing, and in particular here, it is much easier for the bad actors to continue

their wrongful behavior with just a TRO in place as opposed to a temporary receiver, who would be able to take actions in China to stop the wrongful disposition of company assets. The latest schedule Plaintiff was willing to agree to with Defendant during the meet and confer was: opposition due January 14, 2019, and reply in support due January 21, 2019. Plaintiff again, though, respectfully requests this Court set a briefing schedule that would get to disposition of this request as quickly as this Court sees fit.

Defendant's Statement and Proposal

Defendant respectfully requests that the Court enter the following schedule: an opposition response date of January 21, 2019, and a reply date of January 28, 2019. Plaintiff seeks a shorter schedule despite already having a TRO in place restricting any transfers and despite Defendant's consent to keep the TRO in place until a determination on the motion is made by the Court. Plaintiff's motion seeks extraordinary relief to install a receiver over Link Motion. All of the Defendants and Link Motion's operations are located in China, which is a 13 hour time difference from New York. Moreover, there are significant language barriers, which result in the parties needing additional time and resources to obtain translation of both verbal and written communications. In light of this as well as the upcoming holidays, Defendant requests the Court enter the schedule Defendant has set forth.

Respectfully submitted on December 21, 2018:

Michael D. Cilento, Esq.
**The Seiden Group**
469 Seventh Avenue, Suite 502
New York, NY 10018
646-766-1723
mcilento@seidenlegal.com

*Attorneys for Plaintiff*

**DLA Piper LLP (US)**

By: _/s/ Caryn G. Schechtman_

Caryn G. Schechtman
Marc A. Silverman
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Tel: 212-335-4500
Fax: 212-335-4501
caryn.schechtman@dlapiper.com
marc.silverman@dlapiper.com

*Counsel for Defendant, Link Motion Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.),<br><br>Plaintiff,<br><br>vs.<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, and XIAO YU,<br><br>Defendants,<br><br>and<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.),<br><br>Nominal Defendant. | Case No.: 1:18-cv-11642-VM<br><br>**STIPULATION OF NON-OPPOSITION TO A PRELIMINARY INJUNCTION AND CONSENT ORDER TO EXTEND TIME TO ANSWER, MOVE, OR OTHERWISE RESPOND TO THE COMPLAINT**<br><br> |

This matter having been brought before the Court on the joint application of Defendant Link Motion Inc. (f/k/a NQ Mobile Inc.) ("Link Motion" or "Defendant"), by its counsel, DLA Piper LLP (US), and Plaintiff Wayne Baliga, derivatively on behalf of Link Motion ("Plaintiff"), by his counsel The Seiden Group, for the entry of a Stipulation of Non-Opposition to a Preliminary Injunction and Consent Order to extend the time for Defendant to answer, move or otherwise respond to the Complaint filed on December 13, 2018:

WHEREAS, on December 13, 2018, Plaintiff filed a Verified Shareholder Derivative Complaint against Link Motion, and Vincent Wenyong Shi, Jia Lian, and Xiao Yu ("Individual Defendants") which asserted a cause of action against Link Motion for the appointment of a receiver, a cause of action against the Individual Defendants for breach of fiduciary duties, a

cause of action against the Individual Defendants for unjust enrichment, and causes of action against Link Motion and the Individual Defendants for violations of Sections 10(b) and Section 20(a) of the Exchange Act and Rule 10b-5;

WHEREAS, on December 14, 2018, Plaintiff filed an Order to Show Cause with Temporary Restraining Order ("TRO"), Preliminary Injunction, and Temporary Receiver;

WHEREAS, on December 14, 2018, the Court granted a fourteen (14) day TRO temporarily restraining and enjoining Defendants from transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or other interest in, any assets belonging to Link Motion, but not restraining Link Motion from processing normal day-to-day operational costs, including but not limited to payroll, attorneys' fees, and auditor fees, and further ordered the parties to confer and submit a joint letter on whether Link Motion consented to an order beyond the initial fourteen (14) day period and to set forth a briefing schedule with respect to Defendants' opposition and Plaintiff's reply in further support of Plaintiff's request for a preliminary injunction and appointment of a temporary receiver (the "Preliminary Injunction");

WHEREAS, on December 21, 2018, the Parties wrote the Court informing it that Link Motion consented to extending the TRO beyond the initial fourteen (14) day period pending this Court's ruling on Plaintiff's Preliminary Injunction, but the parties could not agree on a proposed briefing schedule;

WHEREAS, on December 27, 2018, the Honorable Vernon S. Broderick ordered Link Motion to file its opposition by January 21, 2018, and Plaintiff to file its reply by January 28, 2019;

WHEREAS, on December 20, 2018, Plaintiff filed an affidavit of service stating that Link

2

Motion had been served on that date through service on Diana Arios-Hernandez, and it's time to answer, move or otherwise respond to the Complaint was January 10, 2019;

IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS, SUBJECT TO APPROVAL BY THE COURT:

1.      Defendant Link Motion does not oppose the Preliminary Injunction.

2.      Defendant Link Motion's time to move, answer, or otherwise respond to the Complaint shall be extended until February 20, 2019.

3.      By entering into this stipulation, Link Motion contends that it is making only a limited, and not general appearance, for the sole purpose of obtaining an extension of time to answer, move or otherwise respond to the Complaint. Link Motion has preserved and is not waiving and have not waived any objections, defenses or responses to the Complaint.

DATED:  January 21, 2019              Respectfully Submitted,

THE SEIDEN GROUP                      DLA PIPER LLP (US)

By: _s/ Michael D. Cilento_          By: _s/ Marc A. Silverman_
Michael D. Cilento                    Caryn G. Schechtman
469 Seventh Avenue, Suite 502         Marc A. Silverman
New York, New York 10018              1251 Avenue of the Americas
Tel: (646) 766-1723                   New York, NY 10020
Email: mcilento@seidenlegal.com       Tel:  212-335-4500
                                      Fax:  212-335-4501
_Counsel for Plaintiff Wayne Baliga_  caryn.schechtman@dlapiper.com
                                      marc.silverman@dlapiper.com

                                      _Counsel for Defendant Link Motion Inc._

SO ORDERED:

Dated: January 22, 2019                          **Victor Marrero**
                                      UNITED STATES DISTRICT JUDGE

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

                          Plaintiff,

    -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI,
JIA LIAN,
XIAO YU,

                         Defendants,

    -and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

                         Nominal Defendant.

_____

1:18-cv-11642

**ORDER GRANTING
PRELIMINARY INJUNCTION
AND APPOINTING
TEMPORARY RECEIVER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/1/19

      On December 14, 2018 the Court entered a temporary restraining order in this matter and directed the parties to submit a joint letter to the Court setting forth a proposed briefing schedule with respect to Plaintiff Wayne Baliga's ("Baliga") request for a preliminary injunction and appointment of a temporary receiver. (Dkt. No. 7.)

      On December 27, 2018, the Court entered an order directing Defendant Link Motion Inc. (or the "Company") to file its opposition to Baliga's request for a preliminary injunction and appointment of a temporary receiver by January 21, 2019 and Baliga to submit any reply by January 28, 2019. (Dkt. No. 21.)

      On January 21, 2019, the parties submitted a "stipulation of non-opposition to a preliminary injunction and consent order to extend time to answer, move, or otherwise respond to the complaint," whereby the parties stipulated that Defendant Link Motion did not oppose Baliga's request for a preliminary injunction and appointment of a temporary receiver. (Dkt. No. 22.)

On January 24, 2019, Baliga submitted a reply affidavit in further support of a preliminary injunction and appointment of temporary receiver (Dkt. No. 24), outlining certain recent developments regarding the Company since this action was initiated, and Baliga furthermore requested that Robert W. Seiden be appointed as the temporary receiver.

In light of the above, and upon review of all the papers submitted by Baliga in this action and in support of the request for a preliminary injunction and appointment of a temporary receiver, and with good cause appearing, it is hereby

**ORDERED AS FOLLOWS:**

I.          **PRELIMINARY INJUNCTION**

**1.**     The Court hereby preliminarily restrains and enjoins Defendants[1] from: transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or other interest in, any assets belonging to Link Motion including, among other things, its subsidiaries, businesses, physical assets, and cash reserves. Notwithstanding this Order, the Company shall be allowed to continue to process normal day-to-day operational costs, including payroll, and the Company shall provide the Receiver with ongoing reports on operating status and payroll and other disbursements.

**2.**     The Court hereby preliminary enjoins Defendants to take corrective action as necessary to: (i) restore the Company's compliance with the New York Stock Exchange's stock listing requirements; (ii) restore the ownership of the Company's smart ride businesses SyberOS and Rideshare through its fund ownership (Quing Yun Wu Xian); (iii) restore the Company's senior position in the underlying assets of the FL Mobile and

---

[1] All references to "Defendants" herein also include Defendants' successors, assigns, officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device.

Showself businesses (via the entity Shi Xiang Shi Guang); (iv) immediately halt Defendant Shi's oversight of the dispute and arbitration between the Company and Zhongzi; and (v) ensure that litigation or arbitration matters are directed and controlled by the Company's lawyers, the appointed Receiver, and/or the non-conflicted board members as directed by the Receiver.

## II.        APPOINTMENT OF TEMPORARY RECEIVER

**1.        Appointment of Temporary Receiver.**  The Court grants Baliga's request for a temporary receiver for the Company and appoints and confirms Robert W. Seiden Esq. (469 Seventh Avenue, New York, NY 10018, rseiden@seidenlegal.com, 212-523-0686) as temporary receiver (the "Receiver") for the Company during the pendency of this action.

**2.        Purposes of Appointment and Specific Powers.**  The Receiver shall be fully authorized to do any acts to protect the status quo of the Company, to prevent waste, dissipation, or theft of assets to the detriment of investors, and to assure timely and objective analysis of the financial condition of the Company, pending further order of this Court.  In addition to any statutory powers, the Receiver shall have the specific delineated powers:

a)        <u>Monitor and Safeguard Assets.</u>  The Receiver shall take any act necessary to preserve and safeguard the Company's assets, including monitoring and, if necessary to prevent dissipation, taking sole control over the Company's assets, subsidiaries, and bank accounts.

b)        <u>Removal and Appointment.</u>  The Receiver shall assume full control of the Company by removing, as the Receiver deems necessary or advisable, any director, officer, employee, independent contractor, or agent of the Company, including any Individual Defendant, from control of, management of, or participation in, the affairs of the Company.  The Receiver shall further be authorized to appoint or replace, as the Receiver deems necessary or advisable, any such director, officer, employee, independent contractor, or agent of the Company.

c) **Books and Records.** The Receiver shall have full and unrestricted access to all books and records of the Company, in whatever mode said materials are maintained, and wherever located, in the United States of America, the People's Republic of China, or elsewhere.

d) **Banking and Bank Records of Company and Officers and Directors.** The Receiver shall have access to all present bank accounts or other accounts of the Company, and/or establish signature authority over such accounts as the Receiver deems appropriate, as well as to inspect such bank transaction records. Upon presentment of this Order, all persons, including and especially any banks or financial institutions, shall provide account balance information, transaction histories, all account records, and any other records or access the Receiver or his agents request, in the same manner as they would be provided were the Receiver the signatory on the account; no separate subpoena shall be required.

e) **Litigation on Behalf of the Company.** The Receiver shall have the power to commence, continue, join in, and/or control any action, suit, arbitration or proceeding of any kind or nature, in the name of the Company or otherwise, including without limitation, proceedings to prevent or avoid transactions of any kind or nature that may dissipate or transfer ownership of any of the Company's assets, wherever such proceeding is located, in the United States of America, the People's Republic of China, or elsewhere. The Receiver shall furthermore have control over the Company's attorney-client privileges.

f) **Professionals Retained by the Receiver.** The Receiver, upon application and approval by the Court, is authorized to retain one or more experts or advisors, including financial advisors, professional sales agencies, accountants, attorneys, brokers, investigators, and other professionals as the Receiver deems appropriate in order to carry out his duties, including for the collection, preservation, maintenance and operation of the Company's assets. The Receiver is authorized in his sole discretion to delegate specific tasks to his representatives, agents and professionals.

g) <u>Working with Government.</u> The Receiver is authorized, in his sole discretion, to enlist the help of agents, employees, and/or representatives of the governments of the United States of America, the People's Republic of China, or any other nation, or any regional or local governmental authorities therein, or of any regulatory body, including the U.S. Securities & Exchange Commission, the U.S. Commodities & Futures Trading Commission, other departments or divisions of the U.S. government, Interpol, and/or the United States embassies, and/or the embassies of the People's Republic of China. The Receiver shall have the authority to enlist the help of the U.S. government and U.S. law enforcement, pursuant to the Multilateral Assistance Treaty with China, when there exists evidence of criminal conduct sufficient to warrant such assistance. The Receiver shall have the authority, but shall not be required, to petition this Court for instructions at any time, or from time to time.

**3.** **Authority to Act.** The Receiver is authorized to act through and in the name of the Company to carry out his duties. The Receiver is authorized to execute and deliver (or cause to be executed and delivered) any document in the name of the Company, including but not limited to, contracts, deeds, other documents of title, and regulatory, administrative, and other governmental filings.

**4.** **Cooperation.** The appointment of the Receiver herein is binding upon the Defendants and their past and present directors, officers, senior management, employees, agents, and stockholders of the Company, who shall cooperate with the Receiver in the performance of his duties. Defendants shall not in any way disturb or interfere with the Receiver's performance of his duties under this Order. Any actions to determine disputes relating to the Receiver or his actions shall be filed in this Court.

**5.** **Receivership Account and Funding.** The Receiver is authorized to establish and maintain a bank account for the Company in the State of New York to fund the Receivership, including the compensation and expenses of the Receiver, which are subject to the approval of the Court. The Company shall be responsible for funding the Receivership Account and is directed to cooperate with the Receiver in establishing and funding the Receivership Account. The Receivership Account should maintain a minimum

balance of $100,000.00 and is to be replenished fully back to this level after any Court-approved disbursements.

**6.** **Compensation of the Receiver and Other Professionals; Expenses.** The Receiver and his professionals shall be paid on an hourly basis at a reasonable and customary rate for such work to be approved by the Court and paid promptly out of the Receivership Estate. All professionals retained by the Receiver shall submit invoices to the Receiver, which shall be submitted to the Court by the Receiver along with any other expenses. All expenses approved by the Court shall be paid promptly by the Company. Payment of the Receiver's compensation and expenses shall have priority over all other obligations, payments, or distributions of the Company. The Receiver may seek further relief from the Court with respect to any non-payment of expenses. The Receiver is not personally responsible for any of the out of pocket expenses incurred in fulfilling his duties under this Order.

**7.** **Distribution of Funds.** Except as otherwise provided by this Order, the Receiver should hold and retain all money that may come into the Receiver's possession, custody, or control by virtue of his appointment until further Order and approval of this Court for transfer or distribution of such funds.

**8.** **Status Reports.** The Receiver shall provide interim reports to the Court every six months from the date of this Order, or as otherwise directed by the Court or as the Receiver deems appropriate under the circumstances . Such reports shall include a statement of: (i) the Receiver's activities and findings during the preceding six months; (ii) recommended actions to be taken in order to satisfy this Order and other further Orders of the Court; (iii) the fees and expenses for which the Receiver seeks payment that were incurred during the preceding six months; and (iiii) such other information as the Receiver deems appropriate or as the Court may direct.

**9.** **Exculpation, Indemnification, and Advancement of Legal Expenses.** The Receiver, and anyone acting on his behalf, shall have no liability to the Company, its stockholders, or any other person or entity, for any actions taken in good faith pursuant to this Order. The Receiver shall be entitled to all protection, limitation from liability, and

immunity available at law or in equity, to a court-appointed Receiver, including without limitation, all protection, limitation from liability, and immunity, to the fullest extent permitted by applicable law. Expenses, including reasonable attorney's fees, incurred by the Receiver in defending any civil, criminal, administrative, or investigative act, suit, or proceeding, arising by reason of, or in connection with the Receiver's designation as Receiver for the Company, or in the performance of his duties hereunder, shall be paid by the Company in advance of the final disposition of such action, suit, or proceeding, subject to the repayment of such amount if it shall ultimately be determined by this Court that the Receiver is not permitted to be indemnified by the Company under applicable New York law.

      **10.**    **Further Instructions.** The Receiver and the Parties to this action may, from time to time, on an ex-ante basis or noticed motion on shortened time, petition this Court for instructions in pursuance of this Order and further orders this Court may hereafter make.

      **11.**    **Discharge of Receivership.** The Receiver shall, upon notice of motion on shortened time to this Court, be discharged by order of this Court. The Receiver, upon notice of motion on shortened time to this Court, may request the Court discharge Receiver if the Receiver at any time no longer believes he can fulfill his duties under this Order.

      **12.**    **Review of Receiver's Actions.** All actions of the Receiver shall be presumed to have been made on an informed basis, in good faith, and in the honest belief that such actions were taken appropriately to ensure the Company's compliance with this Court's orders. All interim actions of the Receiver shall be subject to review and reversal by this Court only upon a showing that the Receiver abused his discretion.

      **13.**    **Jurisdiction.** This Court shall retain jurisdiction to interpret, construe, and enforce this Order, and any such other or further Orders of this Court.

**IT IS SO ORDERED.**

Dated: February / , 2019

Enter:

Hon. Víctor Marrero
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------- X

WAYNE BALIGA, derivatively on  :
behalf of Link Motion Inc.,    :
                               :
                    Plaintiff, :
                               :
        - against -            :
                               :
LINK MOTION INC. (F/K/A NQ MOBILE :
INC.), et al.,                 :
                               :
                   Defendants. :

----------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/11/19

18 Civ. 11642 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Wayne Baliga ("Baliga") brings this case as a shareholder derivative action on behalf of, and against, Link Motion Inc. (f/k/a NQ Mobile Inc.) ("Link Motion" or the "Company"). Baliga alleges that defendants Vincent Shi ("Shi"), Jia Lian, and Xiao Yu (collectively, the "Individual Defendants" and, together with Link Motion, the "Defendants") are unlawfully divesting Link Motion's assets, including whole subsidiaries, by selling them without permission from shareholders.

Shi now seeks to dismiss Baliga's suit and responds to an order to show cause why the he should not be held in contempt for violating an Order of this Court. (See Dkt. No. 35.) For the reasons discussed below, Shi's motion is GRANTED in part and DENIED in part.

1

# I.   BACKGROUND

## A. COMPANY BACKGROUND AND PRE-SUIT DISPUTES

Link Motion is a Cayman Islands company with its principle headquarters in Beijing, China. (See "Complaint," Dkt. No. 1.)[1] It develops, licenses, supports, and sells software and services focusing on smart car and smart ride businesses and associated technologies. The Company maintains a portfolio of legacy mobile and productivity applications.

In 2011, Link Motion held its initial public offering on the New York Stock Exchange ("NYSE"), offering over seven million American Depository Shares ("ADS"). Over the years, Link Motion has continued to offer and issue ADS, such that the Company has nearly 100 million ADS outstanding to date. Baliga is a shareholder who holds ADS in Link Motion.

According to Baliga, Company operations began to unravel in late 2017 after independent investigations and audits of the Company uncovered Shi's potential misconduct. Shi, a Chinese citizen, has been a part of Link Motion since near its inception. He began serving as its Chief Operating Officer in October 2005 and became Chairman of the Board of Directors (the "Board") in 2014. Shi allegedly fabricated certain

---

[1]      Except as otherwise noted, the factual background below derives from the Complaint and the facts there pleaded, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

2

transactions to benefit himself to the detriment of shareholders and refused to step down as the Board and auditors attempted to investigate the matter.

As the Company fought internally, it faltered externally. In early 2018, the Company failed to file its required annual SEC Form 20-F as a foreign issuer. In November 2018, the Finland office of the Company allegedly had to close because of the lack of support from Link Motion. According to Baliga, a Texas office faces similar prospects of closure. In December 2018, the NYSE began procedures to delist Link Motion from the exchange. (See Dkt. No. 24 ¶ 2.)

While the Company faltered, the Individual Defendants allegedly transferred assets away secretly. For example, in October 2018, the Company transferred two businesses to a third party without Board approval or notice.

## B. BALIGA BRINGS SUIT

To stem the loss of assets, on December 13, 2018, Baliga initiated this suit, bringing claims for appointment of a receiver (Count One); breach of fiduciary duties (Count Two); unjust enrichment (Count Three); violation of Section 10(b) of the Exchange Act, 15 U.S.C. Section 78j ("Section 10(b)") (Count Four); violation of Section 20(a) of the Exchange Act, 15 U.S.C. Section 78t (Count Five). Baliga delivered service of process upon Defendants via Law Debenture Corporate

3

Services Inc., Link Motion's agent for service of process. (See Dkt. Nos. 16, 17, 18, 19.)

In conjunction with the filing of the Complaint, which effectively sought (1) preliminary injunctive relief to restrain the transfer Link Motion's assets; and (2) the appointment of a receiver over Link Motion to regain transferred assets, Baliga simultaneously moved for a temporary restraining order. (See "TRO Motion," Dkt. No. 63). On December 14, 2018, the Court issued a Temporary Restraining Order (1) preventing Link Motion from further transferring, liquidating, or dissipating any of its assets; and (2) directing the parties to confer and provide a joint update to the Court within one week regarding a proposed briefing schedule for Baliga's preliminary injunction request. (See "Temporary Restraining Order," Dkt. No. 7.)

One week later, Baliga and Link Motion submitted a joint letter offering competing briefing schedules regarding Baliga's requests for a preliminary injunction and appointment of a receiver. (See "December 21 Joint Letter," Dkt. No. 20.) The Court granted Link Motion's proposed briefing schedule, directing it to respond to Baliga's requests by January 21, 2019. (See Dkt. No. 21.) In the meantime, Link Motion consented to extending the Temporary Restraining Order until the Court ruled on the preliminary

4

injunction request. Attorneys from DLA Piper LLP ("DLA Piper") signed the joint letter as "Counsel for Defendant, Link Motion Inc." (See December 21 Joint Letter at 2.) None of the Individual Defendants signed the December 21 Joint Letter or otherwise appeared.

On January 21, 2019, rather than filing its brief in opposition to a preliminary injunction, Link Motion filed a proposed stipulation. (See "Proposed Stipulation," Dkt. No. 22.) In the Proposed Stipulation, Baliga agreed to extend Link Motion's time to answer the Complaint to February 20, 2019, and Link Motion withdrew its opposition to preliminary injunctive relief and the appointment of a receiver. Attorneys from DLA Piper signed this letter on behalf of Link Motion as well. The Court endorsed the Proposed Stipulation the next day. (See Dkt. No. 23.)

A few days later, Baliga submitted an additional affidavit in support of the grant of of injunctive relief and appointment of a receiver, outlining recent developments. (See Dkt. No. 24.) Baliga explained that since he filed suit, the NYSE suspended trading of Link Motion ADS, the Company's independent registered public accountant resigned, and employees were working without pay. In light of these developments, the Court issued a Preliminary Injunction Order and appointed Robert W. Seiden as Temporary Receiver on

5

February 1, 2019. (See "Preliminary Injunction Order," Dkt. No. 26.)

Link Motion never filed an answer or otherwise moved to dismiss the Complaint by the February 20, 2019 deadline. DLA Piper's letter dated March 1, 2019, might explain why. According to the firm, even before Baliga filed suit, Link Motion was already in arrears with its legal fees. (See "DLA Piper March 1 Letter," Dkt. No. 28.) Nevertheless, "at Link Motion's request," DLA Piper appeared "in order to protect Link Motion's immediate interest" in the litigation. (Id. at 6.) In the weeks that followed, however, Link Motion failed to "cooperate in the representation" or "respond to inquiries" from DLA Piper. (Id.) As a result, DLA Piper moved to withdraw as Link Motion's counsel with Link Motion's consent, as evidenced by an email from Shi. (See id. at 1, 9.) The Court granted DLA Piper's request. (See id. at 4.)

C. CONTEMPT PROCEEDINGS AND MOTION TO DISMISS BRIEFING

On March 14, 2019 Baliga requested that the Court order Shi to show cause why he should not be held in contempt. (See Dkt. Nos. 29, 30.) According to Baliga, Shi was not complying with the Preliminary Injunction Order or cooperating with the Temporary Receiver. The Court scheduled a show cause hearing for March 29, 2019. (See Dkt. No. 33.)

6

Two days before the show cause hearing, Shi finally appeared in the action, moving to dismiss the Complaint for lack of jurisdiction and opposing the contempt proceedings on similar grounds. (See "Motion to Dismiss," Dkt. No. 37.)

Shi's core contention is that the Court has no personal jurisdiction over him because Baliga failed to serve him properly. (See id. at 5, 8.) Shi argues that without jurisdiction, the Complaint must be dismissed as to him, and that the Court cannot hold him in contempt for violating the Preliminary Injunction Order. Shi also asserts that the Court lacks jurisdiction over Link Motion. (See id. at 17.)

Partly given Shi's claim of the Court's lack of personal jurisdiction, rather than proceed before this Court, Shi argues that the Court should dismiss based on the forum non conveniens doctrine. In support, Shi emphasizes Defendants' connections to Cayman Islands and China. He points out that the Company's assets are abroad and the Temporary Receiver is likewise pursuing legal action abroad. Shi argues that the Cayman Islands is the proper forum. (See id. at 15-16.)

Shi partly challenges the Complaint on the merits as well. Shi argues that Baliga has failed to state a claim under Section 10(b) because there are no allegations regarding "the purchase or sale of securities" or that Shi acted with scienter. (Id. at 8-9.) Thus, according to Shi, Counts Four

7

and Five, which are predicated upon a Section 10(b) violation, must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").

Shi separately contests the Preliminary Injunction Order as well, in three different ways. First, Shi claims the Company's purported consent to the appointment of a receiver through stipulation was invalid because Baliga presented no evidence that the Board consented to such action. Next, Shi argues that the Court did not make the necessary findings to appoint a receiver. (See id. at 12-13.) Finally, Shi argues that the appointment of a receiver violates a Chinese law requiring the Company's Board to be Chinese citizens. (See id. at 14.)

After hearing argument at the March 29, 2019 show cause hearing regarding contempt proceedings for Shi, the Court adjourned without resolving whether to hold Shi in contempt and ordered Baliga to respond to Shi's Motion to Dismiss. (See Dkt. Minute Entry for 3/29/2019.) Baliga responded on April 26, 2019. (See "Opposition," Dkt. No. 51.)

Baliga concedes that service was improper over Shi but requests additional time for service and permission for alternative service under Rule 4(f)(3) of the Federal Rules

8

of Civil Procedure ("Rule 4(f)(3)"). (See <u>id.</u> at 30.)[2]
Notwithstanding the lack of proper service, Baliga argues
that Shi has enough minimum contacts with New York for the
Court to exercise personal jurisdiction over Shi.

Baliga also defends the Court's exercise of personal
jurisdiction over Link Motion under numerous theories. First,
as a procedural matter, Baliga claims that Shi lacks standing
to raise any arguments on Link Motion's behalf. (See <u>id.</u> at
7-8.) Second, Baliga argues that Link Motion forfeited any
personal jurisdiction defense by failing to respond to the
Complaint by the February 20, 2019 deadline. (See <u>id.</u> at 10.)
Third, Baliga relies on a forum selection clause between the
Company and Deutsche Bank Trust Company Americas ("Deutsche
Bank") in connection with the Company listing ADS on the NYSE.
(See <u>id.</u> at 11.) Finally, Baliga argues that the Court has
general and specific jurisdiction over Link Motion. (See <u>id.</u>
at 11-17.)

In addition to defending the Court's exercise of
personal jurisdiction over Shi, Baliga defends his choice of
forum. Baliga argues that the public and private interests in

---

[2]     The Opposition does not include page numbers. As such, the Court
considers the Opposition's cover page as the first page, the subsequent
table of contents as the second page, and so forth, and pincites to the
Opposition follow that convention.

9

the case support his choice of forum, and no adequate alternative forum exists.

On the merits, Baliga asserts that he states a claim under Section 10(b), providing documentary evidence of his purchases of Link Motion securities from 2014 to 2018. (See id. at 24-25 (citing Dkt. No. 49-8).)

Baliga then defends the Preliminary Injunction Order. Baliga points out that Shi still has not responded to the various submissions filed in support the Preliminary Injunction Order, which included documentary evidence and various affirmations. Baliga similarly reemphasizes the largely uncontroverted allegations of Shi's noncompliance with the Preliminary Injunction Order that he argues justify civil contempt. Baliga also challenges Shi's assertion that DLA Piper acted without authority.

Shi replied on May 22, 2019. (See "Reply," Dkt. No. 62.) Beyond supporting the points argued in the Motion to Dismiss, Shi defends his standing to raise arguments on behalf of Link Motion.

## II. **DISCUSSION**

A. PERSONAL JURISDICTION OVER SHI

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." Licci ex rel. Licci v. Lebanese Canadian Bank,

10

SAL, 673 F.3d 50, 59 (2d Cir. 2012). First, the plaintiff must properly deliver service of process upon the defendant. See id. Second, the plaintiff must have a "statutory basis for personal jurisdiction that renders such service of process effective." Id. Third, the exercise of personal jurisdiction must comport with due process. See id. at 60.

Baliga does not attempt to defend his service of process on Link Motion's agent as proper regarding Shi. Rather, Baliga effectively concedes that service was improper by requesting permission to serve Shi alternatively. The Court finds that Shi has not received proper service of process.

Without proper service of process, the Court does not have personal jurisdiction over Shi, see id., and two results follow. First, the Court must dismiss the Complaint as to Shi. Second, the Court cannot hold Shi in contempt for violating the Preliminary Injunction Order. See, e.g., Comverse, Inc. v. Am. Telecomms., Inc. Chile, No. 07 Civ. 11121, 2009 WL 464446, at *2 n.4 (S.D.N.Y. Feb. 24, 2009) ("Without personal jurisdiction over [executives of defendant company], this Court cannot hold them in contempt." (citing New York State Nat'l Org. for Women v. Terry, 961 F.2d 390, 400 (2d Cir. 1992), vacated on other grounds sub nom. Pearson v. Planned Parenthood Margaret Sanger Clinic (Manhattan), 507 U.S. 901 (1993))).

11

Baliga cannot overcome the lack of proper service to avoid either result. Although Baliga is correct that Shi almost certainly has the minimum contacts necessary with the United States and the forum state to satisfy due process concerns,[3] service of process is mandatory for personal jurisdiction.

Despite the lack of personal jurisdiction, Baliga attempts to justify a finding of civil contempt by casting Shi as a non-party. According to Baliga, as long as Shi had actual notice of the Preliminary Injunction Order, the Court can find Shi in contempt even if he is no longer a party to the suit. Baliga relies exclusively on a pair of state court decisions for this argument. (See Opposition at 26 (citing McCormick v. Axelrod, 466 N.Y.S.2d 279 (1983); Power Auth. v. Moeller, 395 N.Y.S.2d 497 (App. Div. 3d Dep't 1977)).)

As a preliminary matter, Baliga does not explain his choice to cite only state cases discussing state law in support of his argument. Because contempt proceedings implicate the "vindication of the authority of the court . . . . [T]he rule of [Erie Railroad Co. v. Tompkins, 304

---

[3]    Indeed, Shi does not seriously contest personal jurisdiction on minimum contacts grounds in the Motion to Dismiss beyond a single conclusory sentence (see Motion to Dismiss at 12) and courts routinely exercise personal jurisdiction in securities cases over foreign executives that are alleged to have "exercised control over or signed fraudulent SEC statements." Das v. Rio Tinto PLC, 332 F. Supp. 3d 786, 801 (S.D.N.Y. 2018); see also In re Banco Bradesco S.A. Sec. Litig., 277 F. Supp. 3d 600, 643 (S.D.N.Y. 2017).

12

U.S. 64, 58 (1938)] does not apply[.]" New York ex rel. Abrams
v. Terry, 45 F.3d 17, 23-24 (2d Cir. 1995). That is, federal
law, not state law, applies.

Under applicable federal law, alleged
contemnors -- including non-parties -- must receive proper
service of process before contempt proceedings can begin. See
Rule 83.6 of the Local Civil Rules of the United States
District Courts for the Southern and Eastern Districts of New
York ("Where the alleged contemnor [has not appeared] . . .
service shall be made personally, together with a copy of
this Local Civil Rule 83.6, in the manner provided for by the
Federal Rules of Civil Procedure for the service of a
summons."); First City, Texas Houston, N.A. v. Rafidain Bank,
281 F.3d 48, 55 (2d Cir. 2002) (requiring proper service of
subpoena in order to hold alleged contemnor in contempt for
violating subpoena); Soundkillers LLC v. Young Money Entm't,
LLC, No. 14 Civ. 7980, 2016 WL 4990257, at *4 (S.D.N.Y. Aug.
2, 2016), report and recommendation adopted, 2016 WL 4926198
(S.D.N.Y. Sept. 15, 2016) ("Thus, the directors or officers
of a corporation which is a party to an action may be held
personally in contempt for . . . noncompliance with a subpoena
or court order . . . provided that these individuals have
been served with process and that the Court has personal
jurisdiction over them." (internal citation omitted)); see

13

also 9 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2960 (3d ed. 2019) (in civil contempt proceedings, parties "not already within the jurisdiction of the court . . . must be served with process as in any other civil action").

But even if New York state law applied, the same results follow. "Contempt proceedings may move forward upon a showing of actual notice, but only as long as the court making the contempt finding already has personal jurisdiction over the defendant." United States v. Thompson, 921 F.3d 82, 87-88 (2d Cir. 2019) (citing People v. McCowan, 629 N.Y.S.2d 163 (1995)).

Accordingly, the Court grants Shi's Motion to Dismiss and dismisses the Complaint in its entirety as to Shi without prejudice.

## B. ALTERNATIVE SERVICE

Baliga can rectify the dismissal of Shi in this case by properly serving him. Because Shi is located in a foreign country, Federal Rule of Civil Procedure 4(f)(1) permits Baliga to serve Shi "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1).

14

Baliga has not even attempted to comply with the Hague Convention. Rather, he seeks permission for alternative service under Rule 4(f)(3) either "through email or via the Company's registered agent." (Opposition at 30.) Baliga notes that courts in this district have previously permitted such service in cases involving effecting service in China. (See id. at 30-31 (citing In GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262 (S.D.N.Y. 2012)).)

As Shi points out, whether to exercise discretion and grant alternative service requires courts to evaluate "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." Wei Su v. Sotheby's, Inc., No. 17 Civ. 4577, 2018 WL 4804675, at *3 (S.D.N.Y. Oct. 3, 2018). Baliga does not address either of these requirements.

The Court is mindful of Baliga's allegations and desire to move quickly. However, those reasons are no excuse to flout procedural rules, especially without support for his request. The plaintiff seeking alternative service in GLG Life Tech, for example, attempted to obtain the defendant's residential address in China and submitted an affidavit regarding the difficulty and delay of service of process in China. 287

15

F.R.D. at 264, 266-68. Baliga has made no such showing or attempt here.

For all these reasons, the Court denies, without prejudice, Baliga's request for alternative service. Baliga may move again for permission for alternative service under Rule 4(f)(3) upon a proper showing that such an alternative is required or warranted.

## C. FORUM NON CONVENIENS

Under the forum non conveniens doctrine, the Court "assesses the appropriateness of litigating the action in the plaintiff's choice of forum, as opposed to the alternative venue, by balancing the private interests of the litigants and the public interest concerns of the court." Turedi v. Coca Cola Co., 460 F. Supp. 2d 507, 521 (S.D.N.Y. 2006), aff'd, 343 Fed. App'x 623 (2d Cir. 2009).

To justify dismissal on forum non conveniens grounds, Shi emphasizes the international quality of this action. Specifically, Link Motion is a Cayman Islands corporation that operates and has most of its assets in China, requiring the Temporary Receiver to proceed simultaneously in the courts of those countries to discharge his duties. But the international quality of the action does not necessitate dismissal on forum non conveniens ground. Rather, Shi must point to tangible public or private hardships that outweigh

16

Baliga's choice of forum, such as "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." Aguinda v. Texaco, Inc., 303 F.3d 470, 479 (2d Cir. 2002) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

Despite quoting that test, Shi references none of these considerations. Nor does he explain why litigating in the Cayman Islands would be more appropriate. This proposed alternative is particularly unpersuasive given that his concerns about the alleged China-centric quality of this action would seemingly apply equally when litigating in the Cayman Islands.

In contrast, Baliga explains in great detail the public and private interests supporting the New York forum. First, Baliga points out that the claims arise from Link Motion's listing of securities on the NYSE, implicating United States securities laws designed to protect United States investors. Moreover, Baliga emphasizes that securities and misconduct claims like his typically involve documentary evidence which are easily accessed electronically. Finally, Baliga notes that the Court must generally defer to his choice of forum.

17

See Iragorri v. United Techs. Corp., 274 F.3d 65, 71 (2d Cir. 2001). Shi addresses none of these arguments in his Reply.

Baliga is correct. Given the resources available to Defendants, the type of evidence this case likely requires, and the interest of protecting United States investors, especially in securities transactions involving the shares of foreign entities, the Court finds that the balance of public and private interests in this action counsel against dismissal. Therefore, the Court denies Shi's Motion to Dismiss on forum non conveniens grounds.

D. SECTION 10(B) CLAIM

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a

18

complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Shi moves to dismiss Counts Four and Five, which are predicated upon a violation of Section 10(b). An essential element of a securities claim under Section 10(b) is the purchase or sale of securities. See, e.g., Solow v. Citigroup, Inc., 507 F. App'x 81, 82 (2d Cir. 2013). Shi argues that Baliga has failed to allege this element. Shi is correct.

Although Baliga has now provided ample evidence in his Opposition and its associated exhibits that he did, in fact, purchase or sell Link Motion ADS, he did not plead so in his Complaint. Baliga may not amend his Complaint through briefing and exhibits. See, e.g., Kleinman v. Elan Corp., 706 F.3d 145, 153 (2d Cir. 2013). Thus, the Court grants Shi's Motion to Dismiss with respect to Counts Four and Five without prejudice. Further, the Court grants Baliga leave to amend the Complaint to include the necessary allegations.

E. VALIDITY OF THE PRELIMINARY INJUNCTION ORDER

Beyond arguing for dismissal of the Complaint and against finding him in contempt, Shi also attacks the validity of the Preliminary Injunction Order, and specifically, the Court's appointment of the Temporary Receiver. Shi claims that DLA Piper could not consent to the appointment of a

19

receiver and that the Court has not made the necessary findings to justify the appointment of a receiver. Shi argues finally that the appointment of a non-Chinese citizen as a receiver violates Chinese law. In response, Baliga reiterates the posture of the case and difficulties facing Link Motion investors, and questions Shi's standing to challenge the Preliminary Injunction Order on behalf of Link Motion. On Reply, Shi asserts that he has suffered an injury-in-fact sufficient to confer standing to contest the Preliminary Injunction Order.

Generally, one defendant cannot raise arguments on behalf of another. See, e.g., In GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262, 265 (S.D.N.Y. 2012). Shi's injury-in-fact argument is in tension with his contention that the Court has no personal jurisdiction over him because non-parties seeking to invoke standing to be heard on a matter generally must move to intervene and willingly subject themselves to the Court's jurisdiction.

Nevertheless, without deciding whether Shi is permitted to raise such arguments, the Court will exercise its discretion to consider his arguments as though they were raised by an amicus curiae. See id. (considering arguments made by defendant company about service on executive defendants as if they were made by an amicus curiae).

20

None of Shi's arguments against the Preliminary Injunction Order and appointment of the Temporary Receiver are persuasive. Shi focuses on the behavior of DLA Piper, which represented Link Motion, apparently without pay, from at least December 21, 2018 to March 1, 2019. Shi argues that Baliga presents no proof that the Board permitted DLA Piper to consent to the appointment of a receiver, and he claims that the Board, in fact, did not consent. Shi also argues, without citing any case law, that Baliga needed to submit proof of the Board's consent to DLA Piper's actions.

Shi's focus on whether DLA Piper could or did consent to some action misses a critical detail: neither Link Motion nor Shi ever opposed the motion leading to the Preliminary Injunction Order. Baliga has submitted multiple declarations and other documents outlining the perilous situation of the Company which were -- and still are -- unrefuted. The Court clarifies that these submissions are sufficient to show that the appointment of the Temporary Receiver was necessary to protect against the "the imminent danger of the property being lost." United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC, 859 F. Supp. 2d 602, 610 (S.D.N.Y. 2012). For example, Baliga has provided evidence that (1) Link Motion has transferred substantial assets without notice to the Board; (2) Link Motion has failed to make required filings

21

with the SEC; (3) employees have gone without pay; and (4)
Shi has fired employees and ordered documents removed. These
behaviors are precisely the kind of actions that warrant the
appointment of a receiver. Indeed, "perhaps one of the most
frequent settings in which federal equity receivers have been
employed in recent years is as an incident to a stockholder
suit to prevent the impairment of corporate assets." 9 Charles
Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal
Practice and Procedure § 2983 (3d ed. 2019).

Lastly, Shi claims that appointment of the Temporary
Receiver violates Chinese law and threatens to destroy all
remaining value of Link Motion. Shi greatly extends this
argument on Reply by asserting that the Court must conduct a
conflicts of law analysis to determine if the Preliminary
Injunction Order comports with international principles of
comity. (See Reply at 12.)

"International comity comes into play only when there is
a true conflict between American law and that of a foreign
jurisdiction." In re Picard, 917 F.3d 85, 102 (2d Cir. 2019)
(internal quotation marks omitted). "A true conflict exists
if compliance with the regulatory laws of both countries would
be impossible." Id. (internal quotation marks omitted). A
party's mere allegation of a conflict will not suffice; the
record needs to demonstrate the conflict clearly. See id.

22

Thus, when asserting issues of foreign law, parties should generally identify the foreign laws at issue, submit expert opinions, and provide translated primary source materials. See, e.g., Haywin Textile Prods. v. Int'l Fin. Inv. & Commerce Bank, Ltd., 137 F. Supp. 2d 431, 435 (S.D.N.Y. 2001).

Shi provides no expert analysis on this argument and cites no Chinese laws. Instead, Shi relies exclusively on the Company's prior SEC filings describing its corporate structure. These filings are insufficient to raise the prospect of a true conflict, and the Court finds no such conflict based on Shi's submissions. For example, Shi emphasizes language from the Company's SEC filings that Chinese law prohibits him from "providing any assistance . . . to foreign investors" but neglects to quote the remainder of the sentence. (See Dkt. No. 60 at 6.) The full sentence states "[a] domestic company that holds a telecommunications value-added services operation license is prohibited from . . . providing resources . . . to foreign investors that conduct value-added telecommunications business illegally in China." (Id. at 4 (emphasis added).) Given that Baliga alleges that Link Motion may no longer be a going concern at this point, it is not clear that it even conducts a "value-added telecommunications business" such that this provision still applies.

23

In sum, the Court declines to vacate the Preliminary Injunction Order.

F. PERSONAL JURISDICTION OVER LINK MOTION

Apart from contesting the Court's personal jurisdiction over himself, Shi challenges the Court's exercise of personal jurisdiction over Link Motion as well.

Again, the Court doubts whether Shi can raise such arguments on behalf of Link Motion. See United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76-77 (1988) (non-party witness contesting a civil contempt finding "has no legitimate interest" in "raising matters" such as "the District Court's lack of personal jurisdiction" over a party).

But, even if the Court were to consider such arguments, they are unavailing. In the Motion to Dismiss, Shi's entire substantive argument about the Court's lack of jurisdiction over Link Motion states only:

> [T]his Court lacks jurisdiction over Shi because the securities claims fail to state a cause of action and the common law claims fail for lack of jurisdiction. For the same reasons, this Court lack[s] personal jurisdiction over Link Motion . . . .

(Motion to Dismiss at 17.)

Critically, Shi premised his argument regarding the Court's lack of personal jurisdiction over him on the failure to receive proper service of process. However, the argument

24

that Baliga wrongfully served Shi at Link Motion's agent for service cannot apply to Link Motion itself. As such, this argument is unfounded and unavailing.

Shi attempts to salvage his argument in his Reply, devoting five pages to argue that the Court lacked both general and specific jurisdiction over Link Motion, and that Link Motion did not consent to personal jurisdiction. These new arguments are a substantial departure from the few lines Shi devoted in his Motion to Dismiss. As the Court explains in Rule II.D of its Individual Practices, it "will not consider new matters raised in replies for the first time." See also Bertuglia v. City of New York, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012) ("[A]rguments raised for the first time in reply should not be considered, because the plaintiff[] had no opportunity to respond to those new arguments.").

Despite these hurdles, even if the Court were to consider Shi's arguments, they would be unavailing. At this stage of the proceedings, the Court must credit Baliga's uncontroverted allegations of corporate mismanagement and fraud that is harming United States investors such as himself. See, e.g., MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012). These allegations are sufficient to establish personal jurisdiction and courts repeatedly exercise personal jurisdiction over public companies that target United States

25

investors in similar circumstances. <u>See, e.g.</u>, <u>SEC v. Sharef</u>, 924 F. Supp. 2d 539, 547 (S.D.N.Y. 2013). No unique considerations exist here to support the Court's declining to exercise jurisdiction. Therefore, the Court denies Shi's Motion to Dismiss Baliga's claims against Link Motion on personal jurisdiction grounds.

26

## III. ORDER

Accordingly, for the reasons stated above it is hereby,

**ORDERED** that the motion (Dkt. No. 35.) of Defendant Vincent Wenyong Shi ("Shi") to dismiss the complaint (Dkt. No. 1) of plaintiff Wayne Baliga ("Baliga") is **GRANTED IN PART** and **DENIED IN PART.** Counts Four and Five are dismissed without prejudice. Shi is dismissed from the case for lack of personal jurisdiction without prejudice to Baliga's further endeavor to serve Shi properly. It is further

**ORDERED** that Baliga is granted leave to file an amended complaint as to Counts Four and Five within two weeks of the date of entry of this Order. It is further

**ORDERED** that the request of Baliga for alternative service under Federal Rule of Civil Procedure 4(f)(3) is denied without prejudice.

**SO ORDERED.**

Dated:    New York, New York
           11 June 2019

                                    VICTOR MARRERO
                                      U.S.D.J.

27



**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Caryn G. Schechtman
caryn.schechtman@dlapiper.com
T  212.335.4593
F  212.884.8593

March 1, 2019
*BY FAX ONLY (212) 805-6382*

Honorable Judge Victor Marrero
United States Courthouse
500 Pearl Street, Suite 1040
New York, New York 1007



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/1/19

**Re:**    *Baliga v. Link Motion, et al.*, **1:18-cv-11642-VM (S.D.N.Y.)**

Dear Honorable Judge Marrero:

We write pursuant to your Honor's Individual Practices Rule II.A to request a conference, or the entry of an order without a conference, for leave to permit DLA Piper LLP (US) ("DLA") to withdraw as attorney of record for Link Motion Inc. (f/k/a NQ Mobile Inc.) ("Link Motion" or "Defendant") under Local Rule 1.4. In accordance with your Honor's Individual Practices Rule II.A.2, below, we provide a "detailed description of the matter to be decided and request that it to be deemed and filed as a formal motion." Further, in accordance with Local Rule 1.4, we submit the attached Declaration of Caryn G. Schechtman ("Schechtman Decl.") that explains the reasons for withdrawal. In short, DLA requests leave to withdraw because Link Motion has been unable to pay DLA's legal fees and has represented that it cannot do so at this time. Additionally, Link Motion has not cooperated in its representation by failing to respond to inquiries. Link Motion also consents to DLA's withdrawal. Further, withdrawal would not prejudice Link Motion or unduly disrupt the proceedings because the case is in its early stages and the Court has appointed a receiver that can appoint counsel to represent Link Motion. Thus, DLA respectfully requests a conference, or the entry of an order without a conference, allowing DLA to withdraw as counsel.

Local Civil Rule 1.4 states:

> An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court and may not withdraw from a case without leave of the Court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar, and whether or not the attorney is asserting a retaining or charging lien. All applications to withdraw must be served upon the client and (unless excused by the Court) upon all other parties.

In order to determine whether to grant permission to withdraw, District Courts "analyze two factors: the reasons for withdrawal and the impact of the withdrawal on the



Hon. Judge Marrero
March 1, 2019
Page Two

prosecution of the suit." *Police Officers For A Proper Promotional Process v. Port Auth. of N.Y. & N.J.*, No. 11-cv-7478 (LTS) (JCF), 2012 WL 4841849, at *1 (S.D.N.Y. Oct. 10, 2012).

*First*, there are at least three several satisfactory reasons for withdrawal: (1) Link Motion has failed to and is unable to pay DLA's fees at this time, (2) it has failed to cooperate in its representation; and (3) Link Motion has consented to DLA's withdrawal. (Schechtman Decl. ¶¶ 3-6.)

Under NY Professional Rule of Conduct 1.16(c)(5), a lawyer may withdraw where the "the client deliberately disregards an agreement or obligation to the lawyer as to expenses or fees," and this Court and other courts in this circuit have agreed that a client's failure to pay legal fees constitutes a "satisfactory reason" for withdrawal as counsel. *See, e.g., Spadola v. N.Y. City Transit Auth.*, No. 00 CIV 3262, 2002 WL 59423, at *1 (S.D.N.Y. Jan. 16, 2002) (Marrero, J.) (granting motion to withdraw upon "fail[ure] to pay his attorney's fees and costs"); *Police Officers*, 2012 WL 4841849, at *1 ("'[I]t is well-settled in the Eastern and Southern Districts of New York that non-payment of legal fees is a valid basis for granting a motion to withdraw pursuant to Local Civil Rule 1.4.'"); *Diarama Trading Co. v. J. Walter Thompson U.S.A. Inc.*, No. 01-cv-2950 (DAB), 2005 WL 1963945, at *1 (S.D.N.Y. Aug. 15, 2005) ("'Satisfactory reasons' include failure to pay legal fees, a client's lack of cooperation—including lack of communication with counsel, and 'the existence of an irreconcilable conflict between attorney and client.'").

Under NY Professional Rule of Conduct 1.16(c)(7), a lawyer may also withdraw where "the client fails to cooperate in the representation or otherwise renders the representation unreasonably difficult for the lawyer to carry out employment effectively." *Karimian v. Time Equities, Inc.*, No. 10 Civ. 3773 (AKH) (JCF), 2011 WL 1900092, at *4-5 (S.D.N.Y. May 11, 2011); *see also Naguib v. Pub. Health Solutions*, No. 12 CV 2561 (ENV) (LB), 2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014) (withdrawal motion granted where client refused to communicate and cooperate with counsel).

Additionally, a client's consent to withdrawal, along with a client's lack of resources to pay or non-payment of fees, has been found to be "satisfactory reasons for [] withdrawal." *Negrin v. Kalina*, No. 09 CIV. 6234 (LGS) (KNF), 2013 WL 1736470, at *1 (S.D.N.Y. Apr. 12, 2013); *Kudo v. Simels*, No. 91 CIV. 3167 (JFK), 1991 WL 278940, at *1 (S.D.N.Y. Dec. 17, 1991) (granting motion to withdraw where client consented).



Hon. Judge Marrero
March 1, 2019
Page Three

As described in the Declaration of Caryn G. Schechtman, prior to the filing of Plaintiff Wayne Baliga's Verified Shareholder Derivative Complaint ("Complaint") and Order to Show Cause with Temporary Restraining Order, Preliminary Injunction, and Temporary Receiver ("OSC"), Link Motion had failed to pay outstanding and overdue legal fees owed to DLA despite repeated requests to pay. Notwithstanding, at Link Motion's request, DLA appeared in this action after the Plaintiff filed its Complaint and OSC in order to protect Link Motion's immediate interest in the emergency filing and to allow Link Motion the opportunity to determine whether to contest the matter. Subsequently, after determining not to oppose the OSC, Link Motion has indicated that it does not have sufficient assets and cannot pay DLA's legal fees at this time. Additionally, Link Motion has failed to cooperate in the representation by failing to respond to inquiries, thus making the representation unreasonably difficult for DLA to carry out its representation effectively. Finally, Link Motion has consented to DLA's withdrawal. (Schechtman Decl. ¶¶ 3-6.)

*Second*, withdrawal would not impact the proceedings or prejudice Link Motion. When a case is "not on the verge of being tried" and withdrawal "will not in and of itself unnecessarily delay the proceedings," counsel should be permitted to withdraw. *See Blue Angel Films, Ltd.*, No. 08 Civ. 6469 (DAB) (JCF), 2011 WL 672245, at *2-3 (noting that "recent case law in the Southern and Eastern Districts of New York has held that non-payment of legal fees alone can be a satisfactory reason for withdrawal," regardless of the timing of the withdrawal); *Winkfield v. Kirschenbaum & Phillips, P.C.*, No. 12-cv-7424 (JMF), 2013 WL 371673, at *1 (S.D.N.Y. Jan. 29, 2013) (same).

This case is pre-discovery and far from trial ready. Moreover, on February 1, 2019, the Court appointed Robert W. Seiden, Esq., as temporary receiver ("Receiver") for the pendency of this action. (ECF 26 at II.1.) The Court granted the Receiver: (a) the power to "assume full control of the Company," (*id.* at II.2(b)); (b) the "power to commence, continue, join in, and/or control any action, suit, arbitration or proceeding of any kind or nature, in the name of the Company or otherwise," (*id.* at II.2(e)); and, (c) the power to "retain one or more experts or advisors, including . . . attorneys . . . as the Receiver deems appropriate in order to carry out his duties," (*id.* at II.2(f)). Thus, the Receiver has the power to control this litigation and appoint counsel as necessary to prevent any prejudice to the Company.

Thus, DLA respectfully requests the Court grant it leave to withdraw as counsel to Link Motion.

We thank the Court for its attention in this matter.



Hon. Judge Marrero
March 1, 2019
Page Four


Respectfully Submitted,

*s/ Caryn G. Schechtman*
Caryn G. Schechtman

cc:    Robert W. Seiden, Esq. (by email, rseiden@seidenlegal.com)
       Michael D. Cilento, Esq. (by email, mcilento@seidenlegal.com)
       Link Motion, Vincent Wenyong Shi (by email, vincent@lkmotion.com)


Request GRANTED. Counsel for
defendant Link Motion Inc. is
authorized to withdraw as attorney
of record. Link motion is directed
to inform the Court within 30 days
of this date of this Order as to the name
**SO ORDERED:** of substitute counsel, who
shall enter a notice of appearance 15 days
thereafter.
**DATE** 3-1-19 **VICTOR MARRERO, U.S.D.J.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.), <br><br> Plaintiff, | Case No.: 1:18-cv-11642-VM <br><br> **DECLARATION OF CARYN G. SCHECHTMAN** |
| vs. | |
| LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, and XIAO YU, <br><br> Defendants, | |
| and | |
| LINK MOTION INC. (F/K/A NQ MOBILE INC.), <br><br> Nominal Defendant. | |

Caryn G. Schechtman, hereby declares as follows:

1.     I am a partner at DLA Piper LLP (US) ("DLA"), which has represented and appeared in this matter on behalf of Link Motion Inc. (f/k/a NQ Mobile Inc.) ("Link Motion" or "Defendant"). My colleague Marc A. Silverman and I have appeared as counsel for Link Motion during this litigation.

2.     Prior to the filing of Plaintiff Wayne Baliga's Verified Shareholder Derivative Complaint ("Complaint") and Order to Show Cause with Temporary Restraining Order, Preliminary Injunction, and Temporary Receiver ("OSC"), Link Motion had failed to pay outstanding invoices to DLA despite repeated requests to pay.

3.     Notwithstanding, at Link Motion's request, DLA appeared in this action after the Plaintiff filed its Complaint and OSC in order to protect Link Motion's immediate interest in the emergency filing and to allow Link Motion the opportunity to determine whether to contest the matter.

4.     Subsequently, after determining not to oppose the OSC, Link Motion has indicated that it does not have sufficient assets and cannot pay DLA's legal fees at this time.

5.     Link Motion has also failed to cooperate in the representation by failing to respond to inquiries, thus making the representation unreasonably difficult for DLA to carry out its representation effectively.

6.     Further, Link Motion has consented to DLA's withdrawal as counsel in this matter. (Attached as Exhibit A is an email from Vincent Wenyong Shi, Chairman of the Board and Chief Operating Officer, Link Motion, to Caryn G. Schechtman, Esq., DLA Piper LLP (US), dated Feb. 4, 2019.)

7.     Additionally, on February 1, 2019, the Court appointed Robert W. Seiden, Esq., as temporary receiver ("Receiver") for the pendency of this action. (ECF 26 at II.1.) The Court granted the Receiver the power to "assume full control of the Company." (*Id.* at II.2(b).) The Receiver also has the "power to commence, continue, join in, and/or control any action, suit, arbitration or proceeding of any kind or nature, in the name of the Company or otherwise." (*Id.* at II.2(e).) Finally, the Receiver has the power to "retain one or more experts or advisors, including . . . attorneys . . . as the Receiver deems appropriate in order to carry out his duties." (*Id.* at II.2.(f).) The Receiver, therefore, has the power to control this litigation and appoint counsel as necessary to prevent any prejudice to the Company.

2

8.    DLA is not asserting a retaining or charging lien.

9.    As a result, DLA respectfully requests that the Court grant it leave to withdraw as counsel for Link Motion.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 1, 2019.

*s/ Caryn G. Schechtman*
Caryn G. Schechtman

3

# Exhibit A

## Silverman, Marc

| | |
|---|---|
| **From:** | Vincent Shi <vincent@lkmotion.com> |
| **Sent:** | Monday, February 04, 2019 2:25 AM |
| **To:** | Schechtman, Caryn G. |
| **Cc:** | Silverman, Marc |
| **Subject:** | Re: Baliga v. Link Motion Inc., et al., No. 1:18-cv-11642-VM (S.D.N.Y.) -PLEASE RESPOND |

[EXTERNAL]

Confirmed

发自我的 iPhone

在 2019年2月4日，09:05，Schechtman, Caryn G. <caryn.schechtman@dlapiper.com> 写道：


Vincent,


As recently discussed on the phone, DLA will be seeking to withdraw as counsel for Link Motion Inc. ("Link Motion") in the litigation titled *Baliga v. Link Motion Inc., et al.*, No. 1:18-cv-11642-VM (S.D.N.Y.) (the "Litigation") as a result of Link Motion's failure to pay DLA's invoices and Link Motion's failure to promptly respond to DLA's inquiries regarding the Litigation. In our call, you informed me that Link Motion does not have sufficient assets to pay DLA's legal fees, and that Link Motion consented to DLA's withdrawal.


Kindly respond to this email with the word "Confirm" to re-confirm Link Motion's consent to DLA's withdrawal as counsel in this matter.


Thank you,

Caryn


Please consider the environment before printing this email

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any

1



**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
T 212.335.4500
F 212. 335.4501
W www.dlapiper.com

## Facsimile

Marc Silverman
T

**Date:** 2019-03-01 11:24:04 EST

*To:*

*Fax:* 12128056382

## Comments:

Baliga v. Link Motion, et al., 1:18-cv-11642-VM (S.D.N.Y.)

Honorable Judge Marrero,

Pursuant to your Honor's Individual Practices I.A and II.A, please find the attached correspondence and declaration with attachments.

Respectfully,

Marc

**Marc A. Silverman**
Associate

T +1 212.335.4828
F +1 212.884.8487
E marc.silverman@dlapiper.com

*The information contained in this facsimile message is confidential and, if addressed to our client or certain counsel, is subject to the attorney-client or work product privilege. This message is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U. S. Postal Service.*

Claim nature: *remedies in aid of Proceeding*
A. Non-Monetary Claim only *outside Hong Kong*
B. Interim ~~relief in the absence of substantive proceedings~~ *(under section 21M*
*High Court Ordinance (Cap. 4))*

No. 10

**Originating summons – expedited form**            **25 (**

HCMP      / 2019

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

MISCELLANEOUS PROCEEDINGS NO. **251** OF 2019



IN THE MATTER OF an application for interim relief pursuant to Section 21M of the High Court Ordinance (Cap. 4)

BETWEEN

ROBERT W. SEIDEN (IN HIS CAPACITY AS TEMPORARY            Plaintiff
RECEIVER OF LINK MOTION INC.)

and

LINK MOTION INC.                                          1st Defendant

VINCENT WENYONG SHI                                       2nd Defendant

JIA LIAN                                                  3rd Defendant

XIAO YU                                                   4th Defendant

---

**ORIGINATING SUMMONS**

---

LET the Defendants LINK MOTION INC., of Law Debenture Corporate Services Inc., 400 Madison Avenue, 4th Floor, New York, NY 10017 United States of America and , Vincent Wenyong Shi, Jia Lian and Xiao Yu all of Law Debenture Corporate Services Inc., 400 Madison Avenue, 4th Floor, New York, NY 10017 United States of America, attend before the Summons Judge in Chambers (not open to public), at the High Court in Hong Kong on **Friday** , the **22** day of **Feb** 2019 at **9:00** o'clock in the ~~fore~~/after-noon on the hearing of an application by the Plaintiff, Robert W. Seiden (in his capacity as Temporary Receiver of Link Motion Inc.) of 469 Seventh

- 1 -

Avenue, New York, NY 10018, United States of America, for the following orders to be made in aid of proceedings commenced in the United States District Court Southern District of New York in action number 1:18-cv-11642:

1.   Mr. Robert W. Seiden, Partner of the Seiden Group, and Ms. Lau Wu Kwai King, Lauren of KLC Corporate Advisory and Recovery Limited be appointed as joint and several receivers of the 1st Defendant, in terms of the Order annexed as the Schedule to this Summons.

2.   An injunction restraining each of the Defendants from:-

   (i)   removing or causing to be removed from Hong Kong any of the 1st Defendant's assets which are within Hong Kong, whether in the 1st Defendant's own name or not, and whether solely or jointly owned; or

   (ii)  in any way disposing of or dealing with or diminishing the value of any of the 1st Defendant's assets within Hong Kong, whether in the 1st Defendant's own name or not, and whether solely or jointly owned.  This prohibition includes, but is not limited to the 1st Defendant's subsidiaries, businesses, physical assets, cash reserves and the following assets:

      a.   a bank account or accounts located in Hong Kong with Standard Chartered Bank (Hong Kong) Limited under the business name of either Link Motion Inc. or NQ Mobile Inc. with account numbers 44707861120, 44711201997, 44711202039, 44711201954 and 32200188000192235 (the "**SCB Accounts**"); and

      b.   a bank account or accounts located in Hong Kong with China Merchants Bank Co., Ltd. under the business name of either Link Motion Inc. or NQ Mobile Inc. with account numbers 20089277, 20507659 and 20507667 (the "**CMB Accounts**").

in terms of the Order annexed as the Schedule to this Summons.

AND let the Defendant within 14 days after service of this Originating Summons on it counting the day of service, return the accompanying Acknowledgement of Service to the Registry of the High Court.

Dated this     day of February 2019.

- 2 -

*Note:* this Originating Summons may not be served later than 12 calendar months beginning with the above date unless renewed by order of the Court.

This Summons was taken out by Kobre & Kim of 6th Floor, ICBC Tower, Three Garden Road, Central, Hong Kong, Solicitors for the Plaintiff whose address is stated above.

Estimated time: 30 minutes

*Note:* If the Defendants do not attend personally or by their counsel or solicitor at the time and place above-mentioned, such order will be made as the Court may think just and expedient.

**KOBRE & KIM**
**Solicitors for the Plaintiffs**

## IMPORTANT

Directions for Acknowledgment of Service are given with the accompanying form.

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

MISCELLANEOUS PROCEEDINGS NO. 251 OF 2019

———————

IN THE MATTER OF an application for interim relief pursuant to Section 21M of the High Court Ordinance (Cap. 4 )

———————

BETWEEN

| | |
|---|---|
| ROBERT W. SEIDEN (IN HIS CAPACITY AS TEMPORARY RECEIVER OF LINK MOTION INC.) | Plaintiff |

and

| | |
|---|---|
| LINK MOTION INC. | 1st Defendant |
| VINCENT WENYONG SHI | 2nd Defendant |
| JIA LIAN | 3rd Defendant |
| XIAO YU | 4th Defendant |

———————

**BEFORE DEPUTY HIGH COURT JUDGE MAURELLET SC IN CHAMBERS**

**ORDER**

UPON the application made by the Plaintiff by way of Originating Summons filed on 22 February 2019 and the Inter Partes Summons filed by the Plaintiff on 26 February 2019

AND UPON reading the Affidavit of Randall Ivan Arthur filed on 25 February 2019; the Affirmation of Robert W. Seiden affirmed on 26 February 2019; the Affidavit of Rebecca Hume sworn on 26 February 2019; the Affidavit of Tonicia Monique Williams sworn on 26 February 2019; the Affirmation of Joseph Capio affirmed on 27 February 2019; the 2nd Affidavit of Randall Ivan Arthur filed on 1 March 2019; and the Affidavit of Wong Chung Yin filed on 1 March 2019; all together with their respective exhibits referred thereto

AND UPON hearing the Solicitor Advocate for the Plaintiff and all the 1st to 4th Defendants being absent

**IT IS ORDERED** that:

1.  The Injunction Order made by Deputy High Court Judge Maurellet SC dated 22nd February 2019 in these proceedings (the "**Injunction Order**") be continued until further order of the Court;

2.  Mr. Robert W. Seiden, Partner of the Seiden Group, and Ms. Lau Wu Kwai King, Lauren of KLC Corporate Advisory and Recovery Limited be appointed as joint and several receivers of the assets of the 1st Defendant in Hong Kong until further order of the Court, on the terms set out in Schedule;

3.  There be liberty to apply; and

4.  The Plaintiff's costs of today be in the cause.

Dated the 1st day of March 2019

Registrar

## SCHEDULE 1

### TERMS OF RECEIVERSHIP

1. Robert W. Seiden and Ms. Lau Wu Kwai King, Lauren be appointed as joint and several receivers (the "**Receivers**") over those assets of the 1st Defendant in Hong Kong defined as "**Receivership Assets**" in Schedule 2 annexed hereto.

2. The Receivers shall take all steps that they consider necessary or desirable, including (without limitation and notwithstanding the orders made in paragraph 1 of the Injunction Order under the heading "Restriction on Disposal of Assets") to:-

    a)   identify and secure the Receivership Assets; and

    b)   take steps in the name of the 1st Defendant to recover the Receivership Assets.

3. The Receivers shall have the power to do all acts and things necessary for the purpose of complying with this Order, and carrying out their functions, including (without limitation and notwithstanding the orders made in paragraph 1 of the Injunction Order (under the heading "Restriction on Disposal of Assets")) each of the following powers, namely, to:-

    a)   to take control of all bank accounts (including but not limited to the SCB and CMB Accounts) and any other property included within the Receivership Assets;

    b)   to ascertain, take possession of, collect, give valid receipts for and protect the Receivership Assets, but not to distribute or part with them save for the exercise of the powers hereunder or in accordance with the Order Granting Preliminary Injunction and Appointing Receiver made in the SDNY Proceedings (as defined in the Injunction Order) on 1 February 2019 (the "**SDNY Injunction and Receivership Order**") or until further order;

    c)   to see, review, secure, take possession of and copy all books, records and documents in relation to the Receivership Assets (including but not limited to the SCB and CMB Accounts (as defined in the Injunction Order)) located at the offices of the 1st Defendant, its banks, accountants, auditors and other advisors or agents, or any other person in Hong Kong;

d) request any information relating to the Receivership Assets from any third party within Hong Kong as the Receivers may reasonably require for the purpose of carrying out their functions, notwithstanding that the third party shall not be obliged to provide such information by virtue only of this Order;

e) to preserve the Receivership Assets, for the benefit of all the shareholders of the 1st Defendant, until further order;

f) to take control of and exercise all rights which the 1st Defendant may have in relation to any of its joint-ventures, subsidiaries or associated companies or other entities in which the 1st Defendant holds an interest in Hong Kong (each, a "**Subsidiary**", and together, the "**Subsidiaries**") (in accordance with the provisions of any relevant constitutional or related documentation of the Subsidiary), or such shares of such Subsidiary as are owned (directly or indirectly) by the 1st Defendant, as may be necessary to obtain control or management of any such Subsidiary including, without prejudice to the generality of the foregoing, the power to call or cause to be called such meetings of the Subsidiary (in accordance with the provisions of any relevant constitutional or related documentation of the Subsidiary) as the Receivers shall consider necessary to appoint or remove all of any directors and other officers and agents of any such Subsidiary and to take all such steps as the Receivers thinks fit to protect the interests of the 1st Defendant therein and for the purpose of protecting the Receivership Assets and managing the affairs of the 1st Defendant;

g) to exercise, in relation to the Receivership Assets, or any part thereof, all such powers, authorities and things as the Receivers would be capable of exercising if they were the absolute beneficial owner of the same (excluding the power of sale), and to use the name of the 1st Defendant, for all or any of such purposes, including but not limited to the right to attend meetings and to exercise any votes, and to direct nominees of the 1st to Defendant in whose names shares or other securities beneficially owned by the 1st Defendant are registered to exercise all or any such rights as the Receivers shall direct;

h) by reason of the taking control of, or the exercise of all rights (arising from the 1st Defendant's holding of shares whether directly or indirectly) which they may have

in relation to any Subsidiary to do or, as a shareholder cause or compel a Subsidiary to do or permit the doing of, all acts in accordance with the provisions of any relevant constitutional documentation of such Subsidiary, and the relevant laws of the jurisdiction in which the Subsidiary is situated, which may include but are not limited to the following:-

(i) to enter upon or take possession of the property of any Subsidiary, including without limitation, any premises of the Subsidiary or any site office where the Receivers have reason to believe there are assets, property, or books of the Subsidiary, and if necessary by force, to change locks and open safes and other strongboxes;

(ii) to ascertain, take possession of, collect, give valid receipts for, and protect the money, books, records, documents, properties, things in action, and other assets of a Subsidiary (collectively the "**Subsidiary Assets**") including, but without prejudice to the generality of the foregoing powers, to take control of all bank accounts in the name of a Subsidiary, demand and receive all debts due or which may fall due to the Subsidiary, but not to distribute or part with them save for the exercise of the powers hereunder or until further order;

(iii) to see, review, secure, take possession of and copy all books, records, and documents of the Subsidiary, or relating to its or their accounts and audit of such documents, located at the offices of the Subsidiary, its accountants, auditors and other advisors or agents, or any other person whether in Hong Kong or overseas (the "**Persons**") provided always such Persons consent to the same; and

(iv) to preserve the Subsidiary Assets and, so far as may be necessary, to carry on the business of a Subsidiary.

4. The Receivers be authorised to:-

a) take such steps as they consider necessary for the purpose of getting in, obtaining control and/or custody of and recovering and preserving all of the Receivership

Assets, including as far as may be necessary taking such steps (including, if appropriate, the commencement of proceedings) to be recognised for such purposes in any other jurisdiction;

b) retain independent advisors, including without limitation, legal advisors, in such disciplines as they shall consider appropriate, to assist them in the conduct of their duties;

c) retain the services of such overseas professionals as they may consider reasonably necessary, for the like purpose; and

d) exercise all of the corporate powers of the 1st Defendant which are vested in its Board of Directors for the purpose of carrying out their functions under this order, save for the power to defend these proceedings or other powers which the Court on any application on notice permits any of them to exercise.

5. The Receivers and all such Persons interested or affected by this Order be at liberty to apply to the Court for directions concerning the conduct of the receivership.

6. The powers of the Receivers in relation to the Receivership Assets shall be vested in them to the exclusion of powers of the Board of Directors of the 1st Defendant and other officers save that the Board of Directors may cause the 1st Defendant to make applications and take other steps in these proceedings and otherwise with the permission of the Court.

## <u>SCHEDULE 2</u>

### ASSETS OF RECEIVERSHIP

1.  The Receivership Assets comprise all bank accounts maintained by the 1st Defendant (including but not limited to the SCB and CMB Accounts), and all shares in subsidiaries of the 1st Defendant whether held in the 1st Defendant's name or in the names of others, situated in Hong Kong (the "**Receivership Assets**").

HCMP 251 / 2019

IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE
MISCELLANEOUS PROCEEDINGS NO. 251 OF 2019

_____

IN THE MATTER OF an
application for interim relief
pursuant to Section 21M of the High
Court Ordinance (Cap. 4)

_____

BETWEEN

| | |
|---|---|
| ROBERT W. SEIDEN (IN HIS | Plaintiff |
| CAPACITY AS TEMPORARY | |
| RECEIVER OF LINK MOTION INC.) | |
| and | |
| LINK MOTION INC. | 1st Defendant |
| VINCENT WENYONG SHI | 2nd Defendant |
| JIA LIAN | 3rd Defendant |
| XIAO YU | 4th Defendant |

**ORDER**

Dated the 1st day of March 2019
Filed the 5th day of March 2019

**Kobre & Kim**
Solicitors for the Plaintiff
6th Floor, ICBC Tower
3 Garden Road, Central
Hong Kong
Tel: 2127 3288      Fax: 2127 3280
Ref: RA/RTM/01381.002

6-K 1 tv517184_6k.htm FORM 6-K

---

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**Form 6-K**

**REPORT OF FOREIGN PRIVATE ISSUER**
**PURSUANT TO RULE 13a-16 OR 15d-16 OF**
**THE SECURITIES EXCHANGE ACT OF 1934**

For the month of March 2019
--------------

Commission File Number: 001-35145
----------

# Link Motion Inc.

**No. 4 Building**
**11 Heping Li East Street**
**Dongcheng District**
**Beijing 100013**
**The People's Republic of China**
**(Address of principal executive offices)**

Indicate by check mark whether the registrant files or will file annual reports under cover of Form 20-F or Form 40-F.

Form 20-F ☒    Form 40-F ☐

Indicate by check mark if the registrant is submitting the Form 6-K in paper as permitted by Regulation S-T Rule 101(b) (1):_____

Indicate by check mark if the registrant is submitting the Form 6-K in paper as permitted by Regulation S-T Rule 101(b) (7):_____

---

**ITEM 1.03        BANKRUPTCY OR RECEIVERSHIP.**

On February 1, 2019, the United States District Court for the Southern District of New York appointed Robert W. Seiden as the Receiver over Link Motion, Inc. in the matter captioned *Baliga v. Link Motion, Inc.,* case number 1:18-cv-11642.

On March 5, 2019, the Deputy High Court Judge Maurellet SC of the High Court of the Hong Kong Special Administrative Region Court of the First Instance, appointed the Receiver Robert W. Seiden and Ms. Lau Wu Kwai King of KLC Corporate Advisory and Recovery Limited as "joint and several receivers of the assets of the 1st Defendant [Link Motion, Inc.] in Hong Kong until further order of the Court in the matter captioned *In The Matter Of an application for interim relief pursuant to Section 21M of the High Court Ordinance (Cap. 4) BETWEEN Robert W. Seiden (IN HIS CAPACITY AS TEMPORARY RECEIVER OF LINK MOTION INC.). and LINK MOTION INC. [1st Defendant], VINCENT WENYONG SHI [2nd Defendant], JIA LIAN [3rd Defendant], XIAO YU [4th Defendant].*

**ITEM 5.02        DEPARTURE OF DIRECTORS OR CERTAIN OFFICERS; APPOINTMENT OF CERTAIN OFFICERS.**

On March 14, 2019, Robert W. Seiden, as Receiver over Link Motion, Inc., exercised his authority granted by the United States District Court for the Southern District of New York to remove Mr. Wenyong "Vincent" Shi as Chairman and Chief Executive Officer, and appoint Mr. Lilin "Francis" Guo as his replacement, subject to the laws of the Cayman Islands.

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**Link Motion Inc.**

By:   /s/ Robert W. Seiden, Esq.
Name: Robert W. Seiden, Esq.
Title:   Court Appointed Receiver

Date: March 26, 2019

6-K 1 tv519475_6k.htm FORM 6-K

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**Form 6-K**

**REPORT OF FOREIGN PRIVATE ISSUER**
**PURSUANT TO RULE 13a-16 OR 15d-16 OF**
**THE SECURITIES EXCHANGE ACT OF 1934**

For the month of April 2019

Commission File Number: 001-35145

# Link Motion Inc.

**No. 4 Building**
**11 Heping Li East Street**
**Dongcheng District**
**Beijing 100013**
**The People's Republic of China**
**(Address of principal executive offices)**

Indicate by check mark whether the registrant files or will file annual reports under cover of Form 20-F or Form 40-F.

Form 20-F  ☒      Form 40-F  ☐

Indicate by check mark if the registrant is submitting the Form 6-K in paper as permitted by Regulation S-T Rule 101(b)(1):_____

Indicate by check mark if the registrant is submitting the Form 6-K in paper as permitted by Regulation S-T Rule 101(b)(7):_____

**ITEM 5.02      DEPARTURE OF DIRECTORS OR CERTAIN OFFICERS; APPOINTMENT OF CERTAIN OFFICERS.**

On March 14, 2019, Robert W. Seiden, as Court-Appointed Temporary Receiver over Link Motion, Inc., exercised his authority granted by the United States District Court for the Southern District of New York to appoint Mr. Francis Lilin Guo and Belbix Limited as the Directors of Link Motion International Limited, a wholly-owned Hong Kong-incorporated subsidiary of Link Motion, Inc., subject to the laws of Hong Kong. On March 20, 2019, Mr. Wu Jiang resigned as Director of Link Motion International Limited.

On April 17, 2019, Mr. Guo, in his capacity as Director of Link Motion International Limited, and with the consent of Mr. Seiden, legally removed the current Legal Representative of Link Motion International Limited's wholly owned subsidiary [also known as a "wholly foreign-owned enterprise (WFOE)"] in the People's Republic of China, NQ Mobile (Beijing) Co., Ltd., and officially assumed the position of Legal Representative. Mr. Guo was issued a new business license by the Beijing Administration for Industry and Commerce Haidian Branch and company seals of NQ Mobile (Beijing) Co., Ltd. in China.

---

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**Link Motion Inc.**

By:   /s/ Robert W. Seiden, Esq.
Name: Robert W. Seiden, Esq.
       Court Appointed Temporary
Title:  Receiver

Date: April 23, 2019

# 关于媒体对凌动智行公司实际控制权不实报道的声明

凌动智行 　Today



　　3月12日，有媒体就凌动智行公司控制权等问题发表题为《凌动智行接管人宣布解雇史文勇 本周五将接管公司控制权》的不实报道。该报道所据事实不清，单方面采信一方信息源，造成股东、公众、媒体、员工等对公司误解。

　　为澄清事实、消除影响，经公司董事会和多数股东一致表决，做出如下决议：

　　1、鉴于公司日常经营正常，股东会、董事会健全，小股东诉讼行为没有事实和法律依据，美国和香港法院不具备司法管辖权，司法程序尚未进入实体审判，因此可认定小股东要求接管公司完全是无效行为，且严重侵犯了多数股东和公司的合法权益；

　　2、授权公司管理层代表公司和多数股东依法追究小股东和相关责任人给公司和主要股东造成的损失；要求相关媒体立即停止不实报道；委派律师对美国和香港法院的越权管辖提出异议；

　　3、要求公司管理层继续履职，保持公司正常经营。

　　希望媒体、公众知晓事实，分辨不实信息，消除不实信息所带来的负面影响，在此一并感谢！

# LINK MOTION, INC.

On March 12th, certain media has published a false article entitled "LKM Receiver Announces Dismissal of Shi Wenyong and Will Take Over Company on Friday." The facts of this article are clearly one-sided, ambiguous and erroneous, creating misunderstandings to shareholders, the public, the media, employees, etc.

 In order to clarify the facts and eliminate unwanted influence, the Company's board of directors and majority shareholders voted unanimously to make the following resolutions:

 1. In view of the normal and sound daily operation of the company, the shareholders' meeting and the board of directors, the minority shareholders' litigation has no factual and legal basis. The US and Hong Kong courts do not have jurisdiction over the Company, and there is no official judicial process being initiated. Therefore, it can be determined that the minority shareholders' intent to take over the Company is completely invalid, and such act has seriously violated the legitimate rights and interests of majority shareholders and the Company;

 2. Authorize the management and board of the Company to pursue the losses caused by the minority shareholders and related responsible individuals to the Company and major shareholders to the Company and majority shareholders; request the aforementioned media to immediately cease and desist false reports; and retain lawyers to challenge the jurisdiction of the U.S. and Hong Kong courts;

 3. Require the management of the company to continue to perform its duties and keep the company in normal operation.

 I hope that the media, the public can distinguish the facts from false information, and help eliminate the negative impact of the false information. Thank you!

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.) | 1:18-cv-11642 |
| Plaintiff, | **AFFIDAVIT** |
| -against- | |
| LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU, | |
| Defendants, | |
| -and- | |
| LINK MOTION INC. (F/K/A NQ MOBILE INC.), | |
| Nominal Defendant. | |

Matt Mathison, being duly sworn, deposes and says as follows under penalty of perjury:

1. I am an Official Advisor to the Court-Appointed Receiver. I am familiar with the facts of the case and since my appointment, I have been in direct communication with Link Motion Inc. ("LKM" or the "Company") staff and deeply involved in the day-to-day operations of the Receivership. A true and correct copy of the Receiver's Authorization Letter is attached hereto as **Exhibit A**.

2. Based on my personal knowledge in this matter, the Chairman and CEO of the current LKM operating company in the People's Republic of China ("PRC"), Vincent Wenyong Shi ("Shi"), has taken the following actions since the appointment of the Receiver.

3. In direct violation of the Receivership Order, Shi failed to acknowledge or respond to any of the Receiver's letters and request to communicate in any form, to provide funds to the Receivership, or to turn over the Company chop, financial documents, and business licenses.

4.  I have had personal communication with employees, ex-employees and others who are in contact with Shi and who repeatedly say that anytime Shi is confronted about the Receiver and Court Orders, he instructs them to ignore and disregard as the Receiver and the Court have no rights or jurisdiction in this company matter.  Shi went as far as to post a message in the public domain via the Company's WeChat and Weibo accounts. Shi's publication, along with its translation, is attached hereto as **Exhibit B**.

5.  In response, the Receiver sent a letter to LKM's board of directors in China on March 14, 2019, which triggered the series of illegal activities described below. A true and correct copy of the Receiver's announcement letter is attached hereto as **Exhibit C**.

6.  Without the Receiver's authorization, Shi has fired employees and formed a new company to receive revenues for Company applications.

7.  The Company has dozens of popular consumer applications with millions of users around the world.  Some of the most popular applications include Vault, NQ Mobile Security, Cooling Master, Anti-virus and Virus Cleaner, etc.  These applications are downloadable for free and come with various in-app purchasing upgrades.  In addition, there are a number of advertising related businesses that generate income for the user traffic and in-app space offered to advertisers.  The Company maintains relationships with Google, Facebook, Apple and other related mobile app and advertising companies.  The Company hosts these servers and applications through the cloud with its relationships with Amazon Web Services (AWS).

8.  Just last week, it came to my attention that Shi forced employees related to the above businesses to resign.  He approached some of these employees and told them he wanted to rehire them to continue in their roles with regards to the applications and advertising business under a different name and at a different office location.  I learned this information from a former

employee that was in this exact situation. The Email correspondence between the former employee and me is attached hereto as **Exhibit D**[1].

9. I also learned that the account management and server details were in the process of being migrated away from these existing company accounts to the new company account name effectively stealing future revenues from the Company. *See* **Exhibit D.**

10. On March 19, 2019. I received an emergency message and call via Wechat from a former director of NQ Mobile. who was very central and an important part of the Company from its pre-IPO days through 2015, and maintains close relationships with many employees.

11. I was told that Shi and a small group of his supporters came into the office and ordered the employees in the Legal. Human Resources, and Accounting departments to assist them in "removing accounting and legal documents, and to help them destroy and damage operating data systems and the company's main contract management system." Wechat conversation records with the former director are attached hereto as **Exhibit E** and **Exhibit F**.

12. I was also told that a number of employees resisted and were fired on the spot as a result. The total number of people employed by the Company went from about 30 at the time (80 a month before) to now just around 10. I was provided the names of the individuals who supported Shi and carried out this raid of the Company offices, and photographs of those files that were prepared for removal. I was also provided a record of the company that was hired to move the materials. In sum. Shi's loyalists raided the Company offices and removed company property and I was told that all employees were hoping the Receiver would help them.

Dated: New York. New York
March 28, 2019

---

[1] For the purposes of ensuring safety of the cooperating Chinese ex-employees, individual names will be redacted from the exhibit. This is also to protect sources, methods. and strategies. and to give the Receiver and the Plaintiffs the best chance of a recovery in this action. If the names are not redacted, it will allow LKM's local management and power brokers to gain such knowledge and more easily frustrate certain of our planned actions or worse.

Matt Mathison

SWORN BEFORE ME ON THIS ⊠ DAY
OF MARCH, 2019

Notary Public

DANNY RAY HAMPTON
Notary Public, State of Texas
Comm. Expires 06-03-2021
Notary ID 129412394

# Robert W. Seiden

**Court-Appointed Receiver for Link Motion, Inc.**
**Pursuant to The Honorable Victor Marrero**
**United States District Court Southern District of New York**

Robert W. Seiden, Esq. | The Seiden Group
469 Seventh Avenue, 5ᵗʰ Floor
New York, New York 10018
Tel: 212.523.0686

Matt Mathison
Dallas, Texas, United States of America

March 11, 2019

**Re: Link Motion Inc. Letter of Authorization**

Dear Mr. Mathison,

As you know, I am the United States Court-Appointed Receiver over Link Motion Inc. ("LKM") pursuant to a United States Court Order dated February 1, 2019 by the Honorable Judge Victor Marrero. I hereby appoint you as Official Advisor to the Receiver.

This designation as Official Advisor to the Court-Appointed Receiver shall be effective immediately and shall continue in effect until terminated by me in a written notice to you.

As Official Advisor to the Receiver, you are authorized to carry out my requests and orders and to communicate on my behalf, subject to my specific instructions and to the aforementioned Court Order (you acknowledge that you have received and read the Court Order).

Thank you,

Robert W. Seiden, Esq.
Court-Appointed Receiver for
Link Motion, Inc.

CC: LKMForward
Honorable Judge Victor Marrero
Kobre & Kim LLP
KLC Kennic Lui & Co

Robert W. Seiden, Esq. | Court-Appointed Receiver

# 关于媒体对凌动智行公司实际控制权不实报道的声明

凌动智行  Today



　　3月12日，有媒体就凌动智行公司控制权等问题发表题为《凌动智行接管人宣布解雇史文勇 本周五将接管公司控制权》的不实报道。该报道所据事实不清，单方面采信一方信息源，造成股东、公众、媒体、员工等对公司误解。

　　为澄清事实、消除影响，经公司董事会和多数股东一致表决，做出如下决议：

　　1、鉴于公司日常经营正常，股东会、董事会健全，小股东诉讼行为没有事实和法律依据，美国和香港法院不具备司法管辖权，司法程序尚未进入实体审判，因此可认定小股东要求接管公司完全是无效行为，且严重侵犯了多数股东和公司的合法权益；

　　2、授权公司管理层代表公司和多数股东依法追究小股东和相关责任人给公司和主要股东造成的损失；要求相关媒体立即停止不实报道；委派律师对美国和香港法院的越权管辖提出异议；

　　3、要求公司管理层继续履职，保持公司正常经营。

　　希望媒体、公众知晓事实，分辨不实信息，消除不实信息所带来的负面影响，在此一并感谢！

# LINK MOTION, INC.

On March 12th, certain media has published a false article entitled "LKM Receiver Announces Dismissal of Shi Wenyong and Will Take Over Company on Friday." The facts of this article are clearly one-sided, ambiguous and erroneous, creating misunderstandings to shareholders, the public, the media, employees, etc.

 In order to clarify the facts and eliminate unwanted influence, the Company's board of directors and majority shareholders voted unanimously to make the following resolutions:

 1. In view of the normal and sound daily operation of the company, the shareholders' meeting and the board of directors, the minority shareholders' litigation has no factual and legal basis. The US and Hong Kong courts do not have jurisdiction over the Company, and there is no official judicial process being initiated. Therefore, it can be determined that the minority shareholders' intent to take over the Company is completely invalid, and such act has seriously violated the legitimate rights and interests of majority shareholders and the Company;

 2. Authorize the management and board of the Company to pursue the losses caused by the minority shareholders and related responsible individuals to the Company and major shareholders to the Company and majority shareholders; request the aforementioned media to immediately cease and desist false reports; and retain lawyers to challenge the jurisdiction of the U.S. and Hong Kong courts;

 3. Require the management of the company to continue to perform its duties and keep the company in normal operation.

 I hope that the media, the public can distinguish the facts from false information, and help eliminate the negative impact of the false information. Thank you!

# Robert W. Seiden

**Court-Appointed Receiver for Link Motion, Inc.**
**Pursuant to The Honorable Victor Marrero**
**United States District Court Southern District of New York**

Robert W. Seiden, Esq. | The Seiden Group
469 Seventh Avenue, 5ᵗʰ Floor
New York, New York 10018
Tel: 212.523.0686

March 14, 2019

2019 年 3 月 14 日

## Via Email / 通过电子邮箱

| Wenyong Vincent Shi 史文勇 | vincent@lkmotion.com |
|---|---|
| Jia Lian 连佳 | lianjia8123@sina.com |
| Lingyun Guo 郭凌云 | guolingyun@lkmotion.com |
| Tiewei Li 李铁巍 | litwxd@sina.com |
| Jun Zhang 张潜 | zzlangk@icloud.com |
| Xichun Wu 吴喜春 | wuxichun@zhusr-capital.com |
| Shengli Chen 陈胜利 | CSL_FFC@163.com |
| 此电子邮箱收件人 | 842460194@qq.com |

To/至

**The Board of Directors of NQ Mobile (Beijing) Co. Ltd. and Beijing NQ Technology Co. Ltd. and all other Link Motion, Inc. related and subsidiary companies:**

**网秦无限（北京）科技有限公司，北京网秦天下科技有限公司，凌动智行（北京）科技有限公司；北京网秦移动科技有限公司；及凌动智行所有相关子公司董事会；**

## IMMEDIATE ATTENTION REQUESTED / TIME SENSITIVE

## 请立即处理

The U.S. Court-Appointed Receiver of Link Motion, Inc. ("LKM" or the "Company") has exercised his authority to remove Wenyong Shi as Chairman and CEO, effective immediately.

凌动智行法院指派的接管人已行使其特权，决定立即将史文勇从公司董事会移除，并将其在公司的所有职务予以革职。

The Receiver has appointed Mr. Lilin "Francis" Guo, a respected China businessman and shareholder in Link Motion Inc., to succeed as Chairman. Further, the Receiver, as sole shareholder of the Company pursuant to an order of the U.S. Federal Court of Southern District of New York and as co-receiver in Hong Kong pursuant to an order of the High Court of the Hong Kong Special Administrative Region, has secured certain resolutions to effectively change the corporate structure of Link Motion, Inc. and vests control of the onshore China entities to the U.S. Receiver, Hong Kong Co-Receivers and the newly appointed chairman Mr. Guo. The Receiver also recently appointed Matthew Mathison as Official Advisor to the Receiver. Mr. Mathison had previously served as Vice President of the Capital Markets Department for LKM in the United States.

接管人已指派郭力麟为凌动智行新任主席及董事长，接替史文勇的所有职务。郭力麟是凌动智行的股东，并在中国商界享有一定的名誉。此外，接管人作为凌动智行唯一股东，已根据美国纽约联邦南区法院及香港特别行政区高等法院的指令合法通过决议，将中国内部的所有与凌动智行有关的公司管辖权交接于美国接管人，香港联合接管人及公司新主席郭力麟先生。同时，接管人近期也指派 Matthew Mathison 先生为接管人的特别顾问。Mathison 先生曾任凌动智行美国资本市场部门的副主席。

The Receivership Order granting control of LKM to the Receiver is on behalf of all LKM shareholders and for the benefit of all LKM shareholders, not just minority shareholders. In the Complaint filed with the U.S. Federal Court, Shi is alleged to have violated and breached his duties of loyalty and trust with the Company and all its shareholders. Mr. Shi has not responded at all to these allegations and must now step aside.

特此说明，根据接管人泣令，接管人所赋有的权利是代表公司所有股东及他们的权益，并不限于代表小股东。在美国联邦法院的起诉状中，史文勇违背了对公司忠诚的责任，未能行使对所有股东所应承担的责任，并辜负了公司及股东的信任。史文勇因从未对这些指控作出明确表态，所以现在必须下台。

Link Motion, Inc. is a company subject to the United States court jurisdiction and the Jurisdiction of Hong Kong because that is where they set up the companies. The court in both the United States and in Hong Kong recognized that Shi has engaged in conduct that violates the law and is required to comply with the court orders. Shi's continual self-denial about his requirements to comply with the U.S. and Hong Kong courts will result in drastic results for Shi personally. All employees should cooperate with the court orders. The Receiver has asked the judge to find Shi in contempt of court for his actions in not complying and trying to obstruct the receiver. The judge will soon decide whether to hold Shi in contempt of court, issue arrest warrant and order him jailed. This will be sent to Interpol as well.

凌动智行因在美国与香港成立了公司，所以美国和香港法院对凌动智行有绝对的管辖权。美国和香港法院裁决史文勇利用其公司高管职务之便的一些行为已构成违法，并要求其配合遵守法院指令。接管人已向法院动议追究史文勇藐视法庭及阻挠接管人工作的刑事责任。纽约联邦法院法官也将很快决定史文勇的刑事责任并颁发针对他的逮捕令。此令将会发至国际刑警组织。

Therefore, upon receipt of this termination letter, Wenyong Shi must exit the premises promptly as failure to do so will result in further criminal sanctions against him in the United States, Hong Kong and/or People's Republic of China. Wenyong Shi is to provide the chop to Mr. Guo.

在接收到此函后，史文勇必须立即从凌动智行公司经营地址撤离。若史文勇未能遵守此令，接管人将在美国，香港及中国内地向追究其他刑事责任。另外，史文勇应立即将公司印章交至郭力麟先生管理。

The Office of Court-Appointed Receiver
法院指定接管人办公室

cc / 抄送:
Lauren Lau, KLC Corporate Advisory and Recovery Limited (Office of the Hong Kong Co-Receiver)
Francis Guo (Chairman)
Frank Li (Agent to the Receiver)
Steven Seiden, Esq. (Counsel to the Receiver)
Matt Mathison (Official Advisor to the Receiver)
Randall Arthur (Kobre & Kim, Hong Kong)
Shaun Wu (Kobre & Kim, PRC)

**From:** ███████████████
**Subject: Re: Important Message from Receiver**
**Date:** March 28, 2019 at 7:37:43 AM CDT
**To:** Matt Mathison <matthewmathison@gmail.com>

I'm glad to receive your email.

Because the employees were owed wages, most of the company's employees have resigned.
Shi Wenyong has set up a new company, █████████████████████████████████████
████████████████████
signed, I am confused about this situation now. I also don't know when you can take
over the company. Do I have to work in a new company?

I very much hope that lkmforward can quickly take over the company and get the company
back on track.

The administrator account of each app and advertisement of the company is mastered by
Mr. Wu Xiaohua, and he is also responsible for the management of related servers.

████████████████████████████████████████████████████████████
██████████

████████████████████████████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████████████████████
██████████████████████████████████████████████████


Best regards！

On Tue, Mar 26, 2019 at 9:53 PM Matt Mathison <matthewmathison@gmail.com> wrote:
Dear Tony,

I greatly appreciate your willingness to help the Receiver.  As you know, the Receiver is acting with the authority of the courts and law and is working to do everything in its power to help Link Motion (and all its related subsidiaries) recover.  It is going through a step-by-step process and following all proper and legal procedures to do this.  While it appears quiet from the public's view, I want you to know that the Receiver is doing many things necessary to be in position to have success in China.  Up to now, as you know Vincent and other directors have not cooperated, but this is not stopping the Receiver's actions.

In the meantime, there is something that you can do that would be very helpful to the Receiver.

████████████████████████████████████████████  Would you be able to provide to the Receiver (all copied here) with the complete list of applications (including the complete App names as recognized on the various app stores including Google Play and Apple) that you know are still in market and still generating either subscription or advertising-based revenues?

Once we have the complete list of full names (the official names that would be known to Google, Facebook, Apple, etc) — we will be in position to help ensure that these apps and their related revenues are not being misappropriated to other entities outside of the Company (Receiver's control). ██████████████████████████████
██████████████████████████████████████████████████████████

If you could provide the list of apps, the place where these apps are hosted, the accounts that support the advertising generation and where the revenues are being deposited by Facebook, Google, etc — the Receiver would be very appreciative.

After the Receiver reviews — we can then discuss how to best proceed to ensure that these apps and their revenues and profits are correctly pointed to the Receiver's estate, on behalf of the Company.

Also, please confirm that the users of these apps, and the revenues generated by the advertising in them, are all from users outside of China, correct?  Meaning, these are in the US, Latin America, Southeast Asia, and Europe, correct?

Thanks for this and if you would prefer, we could set up a WeChat call to discuss with the Receiver directly.

Thanks for your help and we look forward to all doing our best to help the Receiver successful restore the company to its rightful state.

Let me know if you have any questions.
Matt Mathison

# Chat History for ▮▮▮▮ and
## Matt Mathison

2019-3-19 ~ 2019-3-21

▮▮▮▮                                                    3-19 1:54 PM

Matt, are you continent now? I'd like to talk to
you an emergency happened in NQ last night.

Matt Mathison                                           3-19 2:06 PM

[Call]

Matt Mathison                                           3-19 2:07 PM

send me the names of those people helping
Vincent

Matt Mathison                                           3-19 2:07 PM

destroy accounting and legal documents

Matt Mathison                                           3-19 2:07 PM

etc

▮▮▮▮                                                    3-19 2:15 PM

Vincent Shi, Zhigang Chen, Ming Zhang,
Yingli Liu, Yue Wang and others. I need to
confirm other's names.

▮▮▮▮                                                    3-19 2:17 PM

I will call them to confirm other's exact
names.

Matt Mathison                                           3-19 2:17 PM

ok -- you can send chinese names too -- so
we make sure we are accurate

▮▮▮▮                                                    3-19 2:20 PM

史文勇， 陈志刚（男 Vincent助理）、张敏（
女 飞流CFO）   刘颖丽（女 网泰出纳）于悦

Case 1:18-cv-16424-NMV-E Document 173-3 Filed 10/20/20 Page 134 of 171
Case 1:18-cv-11942-NMG-CH Document 50-5 Filed 04/26/19 Page 2 of 5
（女 网案行政）

3-19 2:25 PM

I called them, but my calling can't put through, probably it is midnight now.

3-19 6:35 PM

Hi Matt, I confirmed other's exact names as below:

3-19 6:36 PM

李蕾（女 Vincent 助理）、刘艺兵（男 Vincent的亲戚）、吴晓华（男 技术副总裁）、吴晓龙（男 系统运维工程师）、徐英（女 董秘）

3-19 6:39 PM

All these persons including the names I sent you this morning were involved in removing accounting,legal documents and damaging operating data systems and contract managing system.



Matt Mathison    3-19 6:41 PM

Do you think that employees will report these illegal actions to the police if we provide them with proper support and assistance to do so? Becuase obviusly the destruction of company property and the obstruction by moving them is clearly illegal

3-19 6:44 PM

I don't think they reported polices, because most people just know removing the documents to another place. For Vincent group, the names I sent you, they never reported the polices.



Matt Mathison        3-19 6:46 PM

my question is, do you think they will report to the police -- if we provide them with the supporting materials to do so?



3-19 6:48 PM

I'm not sure they will do it



3-19 6:50 PM

In fact, in past few months, they tried their best to report polices about Vincent illegal actions, no any feedback gave them from polices. This is why most employees feel very disappointed.



3-19 6:52 PM

Now they are hoping international policies can involve in and give them a clear answer.



Matt Mathison        3-19 6:55 PM

We are on it



3-19 6:58 PM

Because many honest employees reported to polices many times, they didn't receive any feedback, Vincent told them, the judgement from American court is no affect in China.





This remover firm has worked on NQ removing. They know the exact address of the documents new place.

3-19 8:54 PM



Matt Mathison  3-19 10:07 PM

Hi ▇▇▇▇ please see if any of the employees can provide evidence of these things. Did anyone take a picture or video? If the employees can provide eveidence it will help the Reciever and international police efforts

3-19 10:21 PM

Ok, I will try to do.

3-19 11:48 PM



3-19 11:48 PM



Case 1:18-cv-11642-VM-VF Document 173-2 Filed 10/30/20 Page 138 of 171
Case 1:19-cv-11654-VM-DCF Document 6 — Filed 9/04/2019 Page 6 of 9

# Chat History for ⬛⬛⬛⬛ and Matt Mathison



⬛⬛⬛⬛  3-19 11:48 PM



⬛⬛⬛⬛  3-19 11:48 PM



Case 1:18-cv-1160-CMH-MSN Document 17 Filed 06/28/2020 Page 139 of 171
Case 1:18-cv-1160-CMH-MSN Document 17 Filed 06/28/2020 Page 7 of 171

# Chat History from [REDACTED] and
# Matt Mathison

| 28 | 各公司税务资料 | |
| 29 | | |
| 30 | 韩国飞流2016年7月-2018年12月凭证、其它资料 | 35册 |
| 31 | 台湾网乐公司2014年1-12月凭证、发票 | 1箱 |
| 32 | 帆悦资料 | 1箱 |



3-19 11:49 PM



3-19 11:49 PM

# Matt Mathison



3-19 11:49 PM



3-19 11:50 PM

I don't know if these pictures will be useful as



3-19 11:49 PM

### 飞流封箱清单

| 箱号 | 封箱内容 | 数量 |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | 2018年以前各公司凭证 | 17箱 |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | BJ飞流2016年1-6月凭证 | 48册 |
| 19 | BJ飞流2016年7-9月凭证 | 46册 |
| 20 | BJ飞流2016年10-12月凭证、开曼INC资料 | 22册 |
| 21 | BJ飞流2017年1-4月凭证 | 36册 |
| 22 | BJ飞流2017年5-7月凭证 | 30册 |
| 23 | BJ飞流2017年8-10月凭证、2017年全年发票 | 33册 |
| 24 | BJ飞流2017年11-12月凭证 | 29册 |
| | CD飞流2016年1-12月凭证 | 4册 |
| | CD飞流2017年1-12月凭证 | 13册 |
| 25 | SH飞流2016年1-12月凭证 | 50册 |
| | SH飞流2017年1-12月凭证 | 24册 |
| 26 | HK飞流2016年1-12月凭证 | 8册 |
| | HK飞流2017年1-12月凭证 | 10册 |
| | HK飞流2014年2-12月凭证 | 3册 |
| | 开曼INC2017年1-12月凭证 | 1册 |
| 27 | 2012年-2017年银行对账单、银行余额调节表、现金盘点表、资金组历史资料 | 1箱 |
| 28 | 各公司税务资料 | 2箱 |
| 29 | | 35册 |
| 30 | 韩国飞流2016年7月-2018年12月凭证、其它资料 | 1册 |
| 31 | 台湾网乐公司2014年1-12月凭证、发票 | 1册 |
| 32 | 帆悦资料 | |

# Chat History for ███ and
# Matt Mathison

2019-3-18

 ███                                      10:11

On Monday, NQ was noticed Vincent is legally
restricted to taking airplane, taking high-
speed rail,high consummation and so on by
Beijing Arbitration Commission after he was
charged with arrears employees wages.

Matt Mathison                                          10:13

So he is restricted by the government

 ███                                      10:15

Yes, from yesterday Beijing time. I knew this
last night.

 ███                                      10:16

But this restriction is just issued by Beijing
Arbitration Commission, not Beijing Court.

 ███                                      10:18

Your Chinese legal consultant knows its legal
force. I think It is weaker than court force.

Matt Mathison                                          10:24

Ok -- was this made public somehow?  Or did
you just hear it from others?

Matt Mathison                                          10:24

is there any formal source stating this?

 ███                                      10:24

I just heard from other. But I'm pretty sure this
is true.

10:26

Maybe you can find the source from BAC official website.

10:31

So I don't know if his restriction will affect the arrest warrant issued by NY court. I suggest you'd better to ask for your legal consultants.

Matt Mathison                                    10:32

thanks

20:12



ıl 中国移动 4G          上午8:51          ⌀ ▢
zxgk.court.gov.cn

中国执行信息公开网
—司法为民  司法便民—

### 限制消费人员

| | |
|---|---|
| 限制消费人员姓名： | 史文勇 |
| 性别： | 男性 |
| 身份证号码/组织机构代码： | 3521241977****0513 |
| 执行法院： | 北京市东城区人民法院 |
| 省份： | 北京 |
| 案号： | (2019)京0101执1691号 |
| 立案时间： | 2019年02月13日 |
| 查看限消令： | [查看] |

关闭



zxgk.court.gov.cn

北京市东城区人民法院
限制消费令

(2019) 京0101执1691号

北京飞流九天科技有限公司

　　本院于2019年02月13日立案执行申请人穆松涛申请执行你单位国内非涉外仲裁裁决一案，因你单位未按执行通知书指定的期间履行生效法律文书确定的给付义务，本院依照《中华人民共和国民事诉讼法》第二百五十五条和《最高人民法院关于限制被执行人高消费及有关消费的若干规定》第一条、第三条的规定，对你单位采取限制消费措施，限制你单位及你单位（法定代表人、主要负责人、影响债务履行的直接责任人员、实际控制人）史文勇不得实施以下高消费及非生活和工作必需的消费行为：（一）乘坐交通工具时，选择飞机、列车软卧、轮船二等以上舱位；（二）在星级以上宾馆、酒店、夜总会、高尔夫球场等场所进行高消费；（三）购买不动产或者新建、扩建、高档装修房屋；（四）租赁高档写字楼、宾馆、公寓等场所办公；（五）购买非经营必需车辆；（六）旅游、度假；（七）子女就读高收费私立学校；（八）支付高额保费购买保险理财产品；（九）乘坐G字头动车组列车全部座位、其他动车组列车一等以上座位等其他非生活和工作必需的消费行为。如你单位（法定代表人、主要负责人、影响债务履行的直接责任人员、实际控制人）因私消费以个人财产实施前述行为

< ＞ 　 ⬆ 📖 ▢



20:12

●|| 中国移动 4G　　上午8:53　　◁ ▣

zxgk.court.gov.cn　　C

止的消费活动的，应当向本院提出申请，获批准后方可进行。

　　如违反限制消费令，经查证属实的，本院将依照《中华人民共和国民事诉讼法》第一百一十一条的规定，予以罚款、拘留，情节严重构成犯罪的，依法追究刑事责任。



为。如你单位（法定代表人、主要负责人、影响债务履行的直接责任人员、实际控制人）因私消费以个人财产实施前述行为

20:12

●ll 中国移动 4G　　上午8:53　　　　　⍀ ▮▯

zxgk.court.gov.cn　　　↻

止的消费活动的，应当向本院提出申请，获批准后方可进行。

如违反限制消费令，经查证属实的，本院将依照《中华人民共和国民事诉讼法》第一百一十一条的规定，予以罚款、拘留；情节严重，构成犯罪的，依法追究刑事责任。

此令



AKRON | ATLANTA | BEIJING | BELIZE | BOSTON | BRAZIL | BRITISH VIRGIN ISLANDS
CANADA | CAPE TOWN | CLEVELAND | DJIBOUTI | DUBAI | GUANGZHOU | HARTFORD
HONG KONG | ISTANBUL | JERICHO | JOHANNESBURG | LONDON | LOS ANGELES | MIAMI
MEXICO CITY | MILAN | MOSCOW | NAPLES | NEW YORK | NYON | ORANGE COUNTY
ORLANDO | OSAKA | PANAMA CITY | PARIS | PHILADELPHIA | ROME | SAN DIEGO
SAN FRANCISCO | SEADOOME | SEATTLE | SEYCHELLES | SHANGHAI | ST. PETERSBURG
TEL AVIV | TOKYO | TRINIDAD AND TOBAGO | WASHINGTON, D.C | WILMINGTON
ckrlaw.com

Michael J. Maloney
Partner
mmaloney@ckrlaw.com
T +1.212.259.7300

July 16, 2019

*Via Fax – (212) 805-6382*

The Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Suite 1040
New York, NY 10007

> **USDC SDNY**
> **DOCUMENT**
> **ELECTRONICALLY FILED**
> **DOC #:** _____
> **DATE FILED:** 7/16/19

Re:   *Baliga v. Link Motion Inc. et al.*, Case No. 1:18-cv-11642-VM
      Emergency Request for Extension of Time to Respond

Dear Judge Marrero,

Pursuant to the Court's Decision and Order of June 11, 2019, plaintiff Wayne Baliga ("Plaintiff" or "Baliga") filed on June 21, 2019 a First Amended Shareholder Derivative Complaint (the "FAC"). (ECF Doc. No. 68.) against defendant Link Motion Inc. ("LKM") and three individual Defendants (the "Individual Defendants"). According to Plaintiff's affidavit of service (ECF Doc. No. 77), LKM's time to respond to the FAC expires on July 17, 2019. Since the filing of the FAC, CKR Law LLP ("CKR") has been in discussions with certain directors of LKM, including Lian Jia, Vincent Wenyong Shi, and representatives of China AI Capital, LKM's majority shareholder, regarding the engagement of CKR to represent LKM in connection with this action. However, because of the delays caused by translation and scheduling of meetings, we need more time to finalize the representation and prepare a response to the FAC.

On Monday, July 15, 2019, we requested the consent of Plaintiff to a 45-day extension of LKM's time to move, answer, or otherwise respond to the FAC. Plaintiff's counsel has advised me that Plaintiff will not agree to such an extension unless the Individual Defendants accept service of process. The Individual Defendants have not authorized us to accept service of process on their behalf. Accordingly, we respectfully request that this Court grant Defendant a 45-day extension of LKM's time to answer, move or otherwise respond to the FAC from July 17, 2019 to August 30, 2019. We respectfully submit that a 45-day extension is reasonable under the circumstances and in the interests of justice. Thank you for your consideration of this matter.

Sincerely,

*/s/ Michael James Maloney*

Michael James Maloney

cc (via email):   All counsel of record

> The Clerk of Court is directed to enter into the public record
> of this action the letter above submitted to the Court by
> *defendants referred to above.*
>
> **SO ORDERED.**
>
> 7-16-19
> DATE          VICTOR MARRERO, U.S.D.J.

1330 Avenue of the Americas | New York, New York 10019
T +1.212.259.7300 | F +1.212.259.8200

To: Hon. Victor marrero     Page 2 of 5          2019-07-16 16:24:47 (GMT)          3327772477  From: Michael Cilento

Case 1:18-cv-11642-VM-DCF  Document 173-3  Filed 10/20/20  Page 147 of 171
Case 1:18-cv-11642-VM-DCF  Document 81  Filed 07/16/19  Page 4 of 4



469 Seventh Avenue, Suite 502
New York, NY 10018
(212) 523-0686
www.seidenlegal.com

Michael D. Cilento, Esq.
Email: mcilento@seidenlegal.com
Direct Dial: (646) 766-1723

July 16, 2019

**VIA FAX (212) 805-6382**
Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: Wayne Baliaga v. Link Motion Inc. et al.
(USDC, SDNY) (Case No. 1-18-cv-11642)

Dear Judge Marrero:

I submit this letter in response to Mr. Maloney's July 16, 2019 (today) letter to you. Initially, I would like to point out that, contrary to what Mr. Maloney wrote in his letter, I did not advise Mr. Maloney that Plaintiff would only agree to an extension if the Individual Defendants accepted service of process. Plaintiff's main concern regarding Mr. Maloney's representation of the Company is that Mr. Maloney has not been duly authorized to represent the Company. I advised Mr. Maloney that if he provided a good faith basis that the Board authorized him to represent the Company, then Plaintiff would have no problem with an extension. I further advised that if it was simply Mr. Shi who was authorizing Mr. Maloney to enter the case, then Mr. Shi would likely need to subject himself to the personal jurisdiction of the Court, since Mr. Shi does not have the authority to engage Mr. Maloney on behalf of the Company. My email exchange with Mr. Maloney is attached hereto.

In Mr. Maloney's letter to you, he says that he has been in communication with certain directors of LKM regarding his representation of the Company. I submit that Mr. Maloney should be made to provide evidence that the Board of LKM has consented to his representation of the Company. My understanding is that the Board (other than Jia Lian and Mr. Shi) is cooperating with the Receiver and desires the Receiver to remain in place. It appears that Mr.

Maloney is simply taking orders from Mr. Shi, who has been removed from his roles at the Company, and has not communicated with the Board or anyone else at the Company (save for his accomplice Jia Lian, who is also a named defendant in the action). In any event, Jia Lian, Mr. Shi, and China AI Capital's one Board representative (which entitlement to a Board representative is in dispute for China AI Capital's failure to make certain payments and close a previous deal with LKM) do not have the required majority of the Board to authorize Mr. Maloney to enter the case on behalf of the Company. The Receiver's communications with the Board confirms this. If given an appropriate amount of time, I can secure affidavits from the Board members explaining that Mr. Shi has not been in contact with them, has not held any Board meetings, has not passed any resolutions regarding representation for the Company, and that Mr. Shi is no longer representing the Company. Without evidence of authorization from the Board, I do not believe Mr. Maloney should be allowed to enter the case on behalf of the Company. If Jia Lian and Mr. Shi want to contest this action, they should be required to enter the case personally to do so, not on behalf of the Company.

I am happy to provide any other information or to have a hearing in front of your Honor regarding this issue.

Sincerely,

Michael D. Cilento

cc: Michael Maloney, Esq. (via email)

Defendants' counsel is directed to respond by 7-19-19, by letter not to exceed three (3) pages, to the matter set forth above by plaintiff.

SO ORDERED.

7-16-19
DATE

VICTOR MARRERO, U.S.D.J.

## RE: Re: Activity in Case 1:18-cv-11642-VM Baliga v. Link Motion Inc. et al Motion for Order to Show Cause

mcilento@seidenlegal.com [mcilento@seidenlegal.com]

**Sent:** 7/15/2019 5:38 PM

**To:** "Michael Maloney" <mmaloney@ckrlaw.com>

**Cc:** "Rosanne Felicello" <rfelicello@ckrlaw.com>

Michael -

After discussing this in depth with my client and team, in order for us to agree to an extension, we need to see some good faith basis that the LKM Board has authorized defense of the suit (a resolution, or signatures of actual Board members). If it's just Shi that is directing you to enter, then I think he would need to subject himself to the Court"s jurisdiction, as I do not believe Shi is authorized to act on behalf of the Company. In trying to serve him, my team visited the Company's headquarters multiple times, and Shi was no where to be found. From what I understand, Shi has gone completely rogue, is not running the Company (only trying to remove its assets), and is in hiding due to our efforts to serve him in this suit and others.

Please let us know if you have proof of authorization. Sorry I cannot be more accommodating. Happy to discuss further,

Thanks
Mike

--
**Michael D. Cilento, Esq.**
The Seiden Group
Attorneys at Law
469 7th Ave, 5th Floor
New York, NY 10018
(Office) 646.766.1723
www.seidenlegal.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护，如您不是正确的收件人，请您立即通知寄信人并删除本邮件。请不要将本电邮进行复制并同件任何其他用途、或违露本邮件之内容。

------ Original Message ------
Subject: RE: Re: Activity in Case 1:18-cv-11642-VM Baliga v. Link Motion Inc. et al Motion for Order to Show Cause
From: mcilento@seidenlegal.com
Date: 7/15/19 9:16 am
To: Michael Maloney <mmaloney@ckrlaw.com>
Cc: Rosanne Felicello <rfelicello@ckrlaw.com>

Michael M. - please give me a call this afternoon to discuss.

Thanks
Mike

--
**Michael D. Cilento, Esq.**
The Seiden Group

To: Hon. Victor marazzo 1Page 5 of 5 1642 VM WF 2019 07 16 16 24 17 (GMT) Filed 10/20/80 9 Page 52 of471 3327772477 From: Michael Cilento

Case 1:18-cv-11642-VM-DCF Document 81 Filed 07/10/19 Page 2 of 4

Attorneys at Law
469 7th Ave, 5th Floor
New York, NY 10018
(Office) 646.766.1723
www.seidenlegal.com

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the
addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you
are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please
immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended
recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly
prohibited.

保密申明：本电邮(包括任何附件)可能含有机密资料并受法律保护，如您不是正确的收件人，请您立即通知寄信人并删除本邮
件。请不要将本电邮进行复制并用作任何其他用途、或透露本邮件之内容。

------- Original Message -------
Subject: Re: Activity in Case 1:18-cv-11642-VM Baliga v. Link Motion Inc. et al Motion for Order to Show Cause
From: Michael Maloney <mmaloney@ckrlaw.com>
Date: 7/15/19 6:56 am
To: mcilento@seidenlegal.com <mcilento@seidenlegal.com>
Cc: Rosanne Felicello <rfelicello@ckrlaw.com>

Michael,

Link Motion Inc is currently working out representation in connection with a response to the amended complaint that was
served on the company. Please advise if Plaintiff will agree to extend by 45 days the time to answer, move, or otherwise
respond to the amended complaint.

I am not authorized to accept service on behalf of the individual defendants.

Michael James Maloney
Partner

CKR| law
GLOBAL PRESENCE. LOCAL EXPERTISE.TM

1330 Avenue of the Americas | 14th Floor
New York, New York 10019
T: +1 (212) 259-7300
M: +1 (646) 564-3510
F: +1 (212) 259-8200
E: mmaloney@ckrlaw.com
W: www.ckrlaw.com

Confidentiality Notice: This e-mail is intended only for the person or entity to which it is addressed and may contain
information that is privileged, confidential or otherwise protected from disclosure. If you have received this e-mail in error,
please notify CKR by return e-mail and destroy the original message and all copies thereof.

Copyright © 2003-2019. All rights reserved.



RECEIVED
JUL 22 2019
CHAMBERS OF
JUDGE MARRERO

ASPEN | ATLANTA | BEIJING | BELIZE | BOSTON | BRAZIL | BRITISH VIRGIN ISLANDS
HONG KONG | ISTANBUL | JERICHO | JOHANNESBURG | LONDON | LOS ANGELES | MIAMI
MEXICO CITY | MILAN | MOSCOW | NAPLES | NEW YORK | NYON | ORANGE COUNTY
ORLANDO | OSAKA | PANAMA CITY | PARIS | PHILADELPHIA | ROME | SAN DIEGO
SAN FRANCISCO | SEADONEE | SEATTLE | SEYCHELLES | SHANGHAI | ST. PETERSBURG
TEL AVIV | TOKYO | TRINIDAD AND TOBAGO | WASHINGTON, D.C | WILMINGTON
ckrlaw.com

Michael J. Maloney
Partner
mmaloney@ckrlaw.com
T +1.212.259.7300

July 19, 2019

*Via Hand Delivery*

The Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Suite 1040
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/22/19

Re:  *Baliga v. Link Motion Inc. et al.*, Case No. 1:18-cv-11642-VM
     Response to Plaintiff's Letter (ECF Doc. No. 81)

Dear Judge Marrero,

In accordance with the Court's direction, we write in response to the letter dated July 16, 2019 from counsel to plaintiff Wayne Baliga ("Plaintiff" or Baliga") (ECF Doc. No. 81), in which Plaintiff questioned whether or not Defendant Link Motion Inc. ("LKM") has engaged CKR Law LLP as counsel in this action by valid corporate action of the Board of Directors.

First, annexed hereto as <u>Exhibit A</u> is a true and correct copy of the minutes of a meeting of the Board of Directors of LKM held on July 17, 2019 (the "Minutes"). The minutes describe the attendees of the meeting, the location and time, the quorum, the matters discussed, and resolutions voted on by the Board at the meeting. (*Id.*) The Minutes state that the Board resolved to engage CKR to represent LKM in connection with this action and a Sarbanes-Oxley whistleblower proceeding commenced by LKM's former Vice President, Matthew Mathison. (*Id.*) The Minutes are signed by all of the directors identified as attending the meeting. It appears from the face of the Minutes that the meeting was duly called in accordance with the operative corporate documents of LKM.[1] The foregoing demonstrates that CKR has been duly engaged to represent LKM in this action.

Second, we submit that the Court should take notice that neither Plaintiff nor the Receiver have produced any resolutions, meeting minutes, or any other evidence to support the claims made in their letter of July 16, 2019. Indeed, the Receiver was appointed in this action by stipulation, signed by former counsel, without any evidence that the Board of Directors of LKM was provided with reasonable notice and an opportunity to take corporate action as to the appointment of a receiver (*see* ECF No. 23). Now that the receivership has been in place for over five months, the Receiver has successfully obtained control over certain of LKM's bank

---

[1] *See* Sixth Amended and Restated Memorandum of Association of NQ Mobile Inc. (n/k/a Link Motion Inc.) ("Memorandum of Association"). The Memorandum of Association is available on the EDGAR website operated by the Securities and Exchange Commission at
https://www.sec.gov/Archives/edgar/data/1509986/000119312515114205/d893378dex11.htm.

accounts, yet we are now receiving reports that taxes owed by LKM's operating subsidiary remain unpaid.

Finally, CKR respectfully requests an extension of LKM's time to answer, move, or otherwise respond to the First Amended Complaint (ECF No. 68, the "FAC") to September 13, 2019. The extension is warranted here, and in the interests of justice, because the Board of Directors of LKM are primarily located in Beijing, People's Republic of China (the "PRC") and CKR required substantial time to finalize a representation. CKR made its application to the Court on July 16, 2019 because of the nature of Plaintiff's response to CKR's request for an extension and the limited time remaining to respond.

An extension is also in the interests of justice because LKM has reason to believe that Plaintiff lacks standing to bring the derivative claims alleged in the FAC and has otherwise failed to state a cause of action against LKM. In particular, "[a]s a threshold matter of standing, the shareholder generally must demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary concerns. . . ." *JFURTI, LLC v. Forum Partners Inv. Mgmt., LLC*, No. 16 CIV. 8633 (CM), 2017 WL 1753487, at *7 (S.D.N.Y. Apr. 27, 2017). In this action Plaintiff alleges misconduct by the Board in connection with transactions regarding the divestiture of LKM's "FL Mobile" and "Showself" business segments. However, the purported misconduct alleged by Plaintiff was already the subject of a prior shareholder demand, in response to which the Board appointed an independent special committee and retained the law firm of Loeb & Loeb LLP to conduct an independent investigation. On September 10, 2018, LKM issued a press release disclosing the results of Loeb & Loeb's investigation which in relevant part concluded that:

> ·    In connection with the transaction in which the Company divested its subsidiary, FL Mobile, Loeb & Loeb reported that there is not sufficient evidence to support allegations that (i) the Company intentionally tried to conceal the restricted nature of the RMB 440 million dollar bank deposit, (ii) the Company's repurchase of 5.66% of the outstanding FL Mobile shares from Dr. Vincent Shi was inappropriate or (iii) Company management lacked integrity regarding the disclosure that this deposit constituted restricted cash.

> ·    In connection with the sale of FL Mobile shares by the Company to Tongfang Investment Fund Series SPC ("Tongfang"), the investigation found that, under the agreements signed with Tongfang, the Company has the ability to recover the shares it has sold to Tongfang if Tongfang fails to pay its RMB 1.77 billion senior note delivered in payment for those shares. Furthermore, there is not sufficient evidence to conclude that the agreements signed with Tongfang are related-party transactions that would require special procedures for approval.

> ·    With respect to internal controls and cash management, Loeb & Loeb reported that there is not sufficient evidence to support the allegations that any director, officer or employee of the Company has the ability to inappropriately

The Hon. Victor Marrero
July 19, 2019
Page 3 of 3

direct funds out of the Company or that the Company's banking relationships with China Industrial Bank or Bank of Jiangsu are not trustworthy.

· In connection with the sale of Class B common shares by the Company to China AI Capital, the investigation found that the transaction was presented to the Board in accordance to proper procedures and decision-making and did not violate the Company's Memorandum and Articles of Association.

(*See* Exhibit B.)

Accordingly, LKM has strong grounds for dismissal of all or a substantial portion of the claims in this action and, therefore, the reasonable extension requested by LKM should be granted.

Sincerely,

Michael James Maloney

cc (via email): All counsel of record

Plaintiff is directed to respond by 7-26-19 by letter not to exceed three (3) pages, to the matter set forth above by defendant LinkMotion, Inc.

**SO ORDERED.**

7-22-19
DATE        VICTOR MARRERO, U.S.D.J.

# EXHIBIT A

**LINK MOTION INC.**
*A Cayman Island Company*
(the "**Company**")

---

**MINUTES OF A MEETING OF THE BOARD OF DIRECTORS**
**OF THE COMPANY HELD IN BEIJING ON JULY 17, 2019**

---

| | |
|---|---|
| **VENUE :** | 5/F, Building 2, 11 Heping Li East Street, Dongcheng District, Beijing |
| **TIME:** | 2:00 p.m. to 2:30p.m. (Local Time) |
| **PRESENT:** | |
| | Dr. Vincent Wenyong Shi, Chairman and Chief Operating Officer |
| | Mr. Lian Jia, Director |
| | Mr. Yu Xiao, Director |
| | Mr. Vincent Wu, Director |
| | Mr. Guoli Yuan |
| | Mr. Shengli Chen |

**IN ATTENDANCE:**

Ms. Ying Xu, Secretary of the Meeting

1. <u>**Officers of the Meeting**</u>

   **IT WAS RESOLVED THAT** Mr. Vincent Wenyong Shi and Ms. Xu Ying be appointed the chairman ("**Chairman**") and secretary ("**Secretary**") of the meeting, respectively.

2. <u>**Constitution of the Meeting**</u>

   The Chairman noted that a majority of directors of the Company (the "**Directors**") were present in person, by phone or through representatives and agreed that they had received due notice of the meeting as required under the Company's current memorandum and articles of association. Accordingly, he declared the meeting duly constituted.

3. <u>**Discussions**</u>

   (a) **IT WAS NOTED** that Link Motion US, Inc./Matthew Mathison/6-1730-19-064 (the "SOX Whistleblower Claim") pending before OSHA, and U.S. Derivative Action Baliga v. Link Motion Inc., Case No. 1:18-cv-11642 (SDNY) (the "SDNY Matter") (together the "Matter")

   (b) **IT WAS NOTED** that CKR Law LLP ("CKR") will represent the Company to defence in connection with the above-referenced Matter.

1

4. **Resolutions**

After due and careful deliberation, **IT IS RESOLVED** that, CKR is engaged as the US counsel of the Company with respect to defense of the foregoing Matters with respect to the Company, effective immediately.

**RESOLVED FURTHER,** that Dr. Wenyong Shi, be and hereby is authorized and approved to take such further actions as he shall deem necessary, appropriate or advisable in order to carry out the intent and purposed of the foregoing resolutions.

**RESOLVED FURTHER,** that any and all actions heretofore taken by the directors or officers of the Company within the terms of any of the foregoing resolutions are hereby ratified and confirmed as the act and deed of the Company.

5. **Termination of Meeting**

There being no further business, the Chairman declared the meeting terminated.

*[Signatures on the next page]*

2

Vincent Wenyong Shi, Chairman of the meeting
Date: July 17, 2019

Ying Xu, Secretary of the meeting
Date: July 17, 2019

Confirmed by:

Jia Lian

Vincent Wu

Xiao Yu

Shengli Chen

Guoli Yuan

_____
Vincent Wenyong Shi, Chairman of the meeting
Date:

_____
Ying Xu, Secretary of the meeting
Date:

Confirmed by:

_____
Jia Lian

_____
Vincent Wu

_____
Xiao Yu

_____
Shengli Chen

_____
Guoli Yuan

_____
Vincent Wenyong Shi, Chairman of the meeting
Date:

_____
Ying Xu, Secretary of the meeting
Date:

Confirmed by:

_____
Jia Lian

_____
Vincent Wu

_____
Xiao Yu

_____
Shengli Chen

_____
Guoli Yuan

---
Vincent Wenyong Shi, Chairman of the meeting
Date: July 17, 2019

---
Ying Xu, Secretary of the meeting
Date: July 17, 2019

Confirmed by:

---
Jia Lian

---
Vincent Wu

---
Xiao Yu

---
Shengli Chen

---
Guoli Yuan

Vincent Wenyong Shi, Chairman of the meeting
Date: July 17, 2019

Ying Xu, Secretary of the meeting
Date: July 17, 2019

Confirmed by:

Jia Lian

Vincent Wu

Xiao Yu

Shengli Chen

Guoli Yuan

Vincent Wenyong Shi, Chairman of the meeting
Date:

Ying Xu, Secretary of the meeting
Date:

Confirmed by:

Jia Lian

Vincent Wu

Xiao Yu

Shengli Chen

Guoli Yuan

# EXHIBIT B

EX-99.1 2 tv502622_ex99-1.htm EXHIBIT 99.1

**Exhibit 99.1**

## Link Motion Reports on the Special Committee's Independent Investigation; Announces Changes to its Board of Directors

**BEIJING – September 10, 2018** -- Link Motion Inc., (NYSE: LKM), a leading smart car and smart ride company, today announced the summary of the results of the independent investigation conducted by an independent Special Committee of its Board of Directors and carried out by its independent counsel, Loeb & Loeb LLP. The Company also announces changes to its Board of Directors and remedial steps it is taking to enhance its corporate governance and operational controls.

### 1. The Special Committee and the Report to the Board

#### *Background*

- The Special Committee comprised of independent directors was created in 2016 to deal with allegations concerning internal governance matters raised in connection with an investigation into Dr. Henry Lin's resignation as Chairman and Chief Executive Officer of the Company and the Board's decision to replace him as Chairman with Dr. Vincent Shi. Loeb & Loeb was first retained as counsel to the Special Committee in November 2016 to investigate these allegations.
- During the first half of 2018, additional allegations were raised and the mandate of the Special Committee was expanded to deal with these matters as well.
- On August 27, 2018, Loeb & Loeb made an oral presentation of the results of the investigation to the Board of Directors.
- Elements of the reported findings pertain to matters related to RPL Holdings Ltd., one of the Company's major shareholders. RPL's sole shareholder is a trust, of which Dr. Lin and Dr. Shi are major beneficiaries. Dr. Lin was the sole director of RPL until the delivery of a letter announcing his resignation in 2016, at which time he was replaced in that capacity by Dr. Shi.

#### *Principal Findings Related to the Company and its Board of Directors*

- Loeb & Loeb found it was reasonable for the Board to conclude that (i) in December 2014, Dr. Henry Lin resigned as CEO and Chairman of the Company, and (ii) there is not sufficient evidence to conclude that Dr. Henry Lin's letter of resignation from those positions was not authorized or ratified by him.
- However, Loeb & Loeb found a discrepancy between the reason disclosed by the Company for Dr. Lin's resignation at the time of announcement ("personal reasons unrelated to the Company") and the reason provided by counsel to the Company at the request by management in response to a subsequent request for more information as to the nature of the "personal reasons" from the staff of the U.S. Securities and Exchange Commission. In that response, "health reasons" were put forward as the basis for Dr. Lin's resignation. This statement was not accurate and complete since members of the Company's management were aware that Dr. Lin's resignation was significantly related to his involvement with a Chinese government investigation involving matters unrelated to the Company.
- In connection with the transaction in which the Company divested its subsidiary, FL Mobile, Loeb & Loeb reported that there is not sufficient evidence to support allegations that (i) the Company intentionally tried to conceal the restricted nature of the RMB 440 million dollar bank deposit, (ii) the Company's repurchase of 5.66% of the outstanding FL Mobile shares from Dr. Vincent Shi was inappropriate or (iii) Company management lacked integrity regarding the disclosure that this deposit constituted restricted cash.

- In connection with the sale of FL Mobile shares by the Company to Tongfang Investment Fund Series SPC ("Tongfang"), the investigation found that, under the agreements signed with Tongfang, the Company has the ability to recover the shares it has sold to Tongfang if Tongfang fails to pay its RMB 1.77 billion senior note delivered in payment for those shares. Furthermore, there is not sufficient evidence to conclude that the agreements signed with Tongfang are related-party transactions that would require special procedures for approval.
- With respect to internal controls and cash management, Loeb & Loeb reported that there is not sufficient evidence to support the allegations that any director, officer or employee of the Company has the ability to inappropriately direct funds out of the Company or that the Company's banking relationships with China Industrial Bank or Bank of Jiangsu are not trustworthy.
- In connection with the sale of Class B common shares by the Company to China AI Capital, the investigation found that the transaction was presented to the Board in accordance to proper procedures and decision-making and did not violate the Company's Memorandum and Articles of Association.
- Loeb & Loeb investigated Dr. Lin's statement that he did not sign and did not authorize the execution of the letter of resignation as sole director of RPL. Loeb & Loeb reported its finding that a Company employee had custody of Dr. Lin's signature stamp, which she had used to "stamp" the letter of resignation as director of RPL. Loeb & Loeb further found that it was "more likely than not" that the employee had done so at the instruction of Dr. Shi. Dr. Lin was the sole director of RPL until the delivery of the letter announcing his resignation in 2016, at which time he was replaced in that capacity by Dr. Shi.

## 2. The Changes to its Board of Directors

Mr. Ethan Hu served as Chairman of the Special Committee of the Board, and as such was the director primarily responsible for the investigation into the allegations referred to above. He was also the Chairman of the Company's Audit Committee. Now that the arduous tasks as Chairman of the Special Committee have been completed, on September 5, 2018, Mr. Hu tendered his resignation as a director without any dispute or disagreement with the Company or its Board of Directors in any matter related to his roles on the Board. In addition, the Board of Directors accepted the resignation of Mr. Jian Qi as an independent director of the Company and a member of the Audit Committee.

The Board of Directors thanked both Mr. Hu and Mr. Qi for the services they have rendered to the Company in their respective capacities.

To expand the remaining number of independent directors, the Board elected Mr. Jia Lian and Mr. Xiao Yu as independent directors of the Company. Mr. Jia Lian has served as the chairman of Botongxingcheng (Beijing) Investment Co., Ltd. Mr. Lian has more than 10 years' experience in finance and investment. He graduated from Chinese People's Liberation Army Armored Force Engineering Institute in 2004. Mr. Xiao Yu is the chief executive officer of Beijing Hongyi Garment Trading Co., Ltd. He has more than 10 years' experience in marketing and management. Mr. Yu graduated from Modern Art Design College in 2004.

### 3. Improving Corporate Governance and Operational Controls

Based in part on the findings of the investigation, the Board has concluded that the Company's internal procedures and processes with respect to its decision making and operations should be made more effective and transparent in order to avoid events in the future that could lead to allegations similar to those that have been investigated by the Special Committee. The anticipated improvements will be focused, among other things, on expanded and reinforced management and financial controls and review of financial and operational reporting.

As a first step in that process, the directors have removed each of the existing members of the standing Committees of the Board, thanking them for their service. Each removed Committee member remains a director of the Company's full Board of Directors. As an interim step, the directors named Mr. Yu as the sole member of each of the Audit and Corporate Governance Committees, and named Mr. Yu and Mr. Bruson Li as members of the Nominations Committee, pending the selection of additional directors as members of those committees.

The Board has also decided that the corporate governance of the Company would be enhanced by naming a Co-Chairman of the Board. Therefore, pursuant to Company's Articles of Association, the directors have elected Director Larry Chi as Co-Chairman of the Board. Dr. Shi will continue to serve the Company as Chairman of the Board and chief operating officer.

In addition, members of the Board of Directors are considering ways to strengthen the Board's operations. These methods could potentially include (i) adding additional new directors who can actively contribute to the Company's growth, (ii) improving the Committee structure and operations, and (iii) implementing structural and procedural methods to improve the Board's oversight of Company operations.

Finally, in order to continue to improve the Company's governance processes, the directors have charged the management with the task of reporting as soon as possible to the Board on appropriate and effective steps for the Board's consideration to achieve that goal. The Board will report to the shareholders and other interested parties as such procedures are adopted and implemented by the Company.





469 Seventh Avenue, Suite 502
New York, NY 10018
(212) 523-0686
www.seidenlegal.com

Michael D. Cilento, Esq.
Email: mcilento@seidenlegal.com
Direct Dial: (646) 766-1723

July 22, 2019

**VIA FAX (212) 805-6382**
Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
>
> 7/22/19

Re: Wayne Baliga v. Link Motion Inc. et al.
(USDC, SDNY) (Case No. 1-18-cv-11642)

Dear Judge Marrero:

This letter is submitted in response to new points made in Mr. Maloney's July 16, 2019 letter to Your Honor, where Mr. Maloney argues that his law firm, CKR Law LLP ("CKR"), has been engaged by Link Motion Inc. ("LKM" or the "Company") pursuant to an alleged Board of Directors ("Board") meeting called by Vincent Wenyong Shi ("Mr. Shi").

First, Mr. Shi does not have authority to call a Board meeting, as he was removed from his management and director positions by the Receiver in March of this year. The Receiver, in the weeks and months following his appointment, reached out to Mr. Shi a number of times to open a line of communication and to cooperate and work with Mr. Shi as per the Receivership Order. These efforts by the Receiver are detailed in the Affirmation of the Receiver dated March 14, 2019 (and annexed exhibits thereto), Dkt. 30. Mr. Shi refused to cooperate and refused to communicate in any way with the Receiver. Furthermore, Mr. Shi actively thwarted the Receivers efforts and even raided LKM's headquarters stealing documents, computers, servers, and more. See Affidavit of Mathew Mathison dated March 28, 2019 (and annexed exhibits thereto), Dkt. 50.

Accordingly, the Receiver, per his authority pursuant to the Receivership Order, removed Mr. Shi from his positions with LKM and appointed Mr. Lilin "Francis" Guo as his replacement. See a true and correct copy of the March 26, 2019 SEC filing annexed to this letter submission,

which states that the Receiver removed Mr. Shi from his positions with LKM on March 14, 2019 and appointed Mr. Guo as his replacement. Thus, because Mr. Shi was removed from his positions with LKM, he had no authority to call a Board meeting and attempt to engage CKR on behalf of the Company.[1]

Second, even if Mr. Shi did have authority to call a Board meeting and pass a resolution, CKR's representation of the Company would be a clear conflict of interest. Plaintiff brought this derivative suit on behalf of the Company due to alleged, inter alia, egregious breaches of fiduciary duties and fraud committed by certain directors of the Company, including, and chiefly, by Mr. Shi. In line with his refusal to put the bests interest of the Company forward, Mr. Shi refused to pay LKM's legal bills and allowed DLA Piper to withdraw as counsel in this action. See Dkt. 28. Mr. Shi then hired CKR personally to contest Plaintiff's application for contempt against Mr. Shi, and CKR also submitted a motion to dismiss the complaint as to Mr. Shi only. See Dkt. 35 and 38.

Now Mr. Shi is attempting to hire CKR to allegedly defend the Company. Again putting aside the fact that Mr. Shi does not have any authority as it pertains to LKM as per the above, clearly CKR coming in to also represent the Company would be a massive conflict of interest: CKR has already appeared in this action on behalf of Mr. Shi personally. See Dkt. 35 ad 38. Moreover, the allegations against Mr. Shi are, inter alia, that he breached his fiduciary duties to the Company and unjustly enriched himself by removing assets out of the Company. Clearly, the interests of Mr. Shi and the Company will "diverge with respect to a material factual or legal issue or to a course of action." United States v. Daugerdas, 735 F. Supp. 2d 113, 115–16 (S.D.N.Y. 2010). Thus, there is real conflict of interest in having CKR represent both Mr. Shi and LKM, and this Court should not allow such conflict in this action.

Sincerely,

Michael D. Cilento, Esq.

cc (via email) to: Michael Maloney, Esq.

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by _plaintiff_.
>
> SO ORDERED.
>
> 7-22-19
> DATE       VICTOR MARRERO, U.S.D.J.

---

[1] It should also be noted that the Board members listed on the alleged Board minutes (attached to Mr. Maloney's letter) is in dispute and Plaintiff, if necessary, plans on providing evidence that those listed are not duly authorized Board members.

6-K 1 tv517184_6k.htm FORM 6-K

<div align="center">

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**Form 6-K**

**REPORT OF FOREIGN PRIVATE ISSUER**
**PURSUANT TO RULE 13a-16 OR 15d-16 OF**
**THE SECURITIES EXCHANGE ACT OF 1934**

For the month of March 2019
--------------

Commission File Number: 001-35145
----------

# Link Motion Inc.

**No. 4 Building**
**11 Heping Li East Street**
**Dongcheng District**
**Beijing 100013**
**The People's Republic of China**
**(Address of principal executive offices)**

</div>

Indicate by check mark whether the registrant files or will file annual reports under cover of Form 20-F or Form 40-F.

<div align="center">

Form 20-F ☒    Form 40-F ☐

</div>

Indicate by check mark if the registrant is submitting the Form 6-K in paper as permitted by Regulation S-T Rule 101(b) (1):_____

Indicate by check mark if the registrant is submitting the Form 6-K in paper as permitted by Regulation S-T Rule 101(b) (7):_____

To: Hon. Victor Marrero    Page 5 of 6  1 64/2 VM WF-DC Document 82 Filed 07/22/19 Page 4 of 5   From: Michael Cilento
Case 1:18-cv-01642-VM-WF-DC Document 82 Filed 07/22/19 Page 4 of 5
3327772477
2019-07-22 16:41:55 (GMT)

---

## ITEM 1.03    BANKRUPTCY OR RECEIVERSHIP.

---

On February 1, 2019, the United States District Court for the Southern District of New York appointed Robert W. Seiden as the Receiver over Link Motion, Inc. in the matter captioned *Baliga v. Link Motion, Inc.*, case number 1:18-cv-11642.

On March 5, 2019, the Deputy High Court Judge Maurellet SC of the High Court of the Hong Kong Special Administrative Region Court of the First Instance, appointed the Receiver Robert W. Seiden and Ms. Lau Wu Kwai King of KLC Corporate Advisory and Recovery Limited as "joint and several receivers of the assets of the 1st Defendant [Link Motion, Inc.] in Hong Kong until further order of the Court in the matter captioned *In The Matter Of an application for interim relief pursuant to Section 21M of the High Court Ordinance (Cap. 4) BETWEEN Robert W. Seiden (IN HIS CAPACITY AS TEMPORARY RECEIVER OF LINK MOTION INC.). and LINK MOTION INC. [1st Defendant], VINCENT WENYONG SHI [2nd Defendant], JIA LIAN [3rd Defendant], XIAO YU [4th Defendant]*

---

## ITEM 5.02    DEPARTURE OF DIRECTORS OR CERTAIN OFFICERS; APPOINTMENT OF CERTAIN OFFICERS.

---

On March 14, 2019, Robert W. Seiden, as Receiver over Link Motion, Inc., exercised his authority granted by the United States District Court for the Southern District of New York to remove Mr. Wenyong "Vincent" Shi as Chairman and Chief Executive Officer, and appoint Mr. Lilin "Francis" Guo as his replacement, subject to the laws of the Cayman Islands.

---

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**Link Motion Inc.**

By:    /s/ Robert W. Seiden, Esq.

Name:    Robert W. Seiden, Esq.

Title:    Court Appointed Receiver

Date: March 26, 2019