# EXHIBIT 6

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

CAUSE NO: FSD 4 OF 2020 (MRHJ)

BETWEEN:

**ROBERT W. SEIDEN, IN HIS CAPACITY AS**
**TEMPORARY RECEIVER OF LINK MOTION INC.**

PLAINTIFF

AND:

**LINK MOTION INC.**

DEFENDANT

**PLAINTIFF'S**
**SKELETON ARGUMENT**
**(for hearing of originating summons on 3 February 2020)**

## I.      Introductory Statement and Recommended Reading

1.      This is an application brought by Robert W. Seiden, in his capacity as temporary receiver (the **Receiver**) of Link Motion Inc. (**Link Motion** or the **Company**), for recognition of his appointment under an order (the **Receivership Order**) of the United States District Court for the Southern District of New York (the **US Court**) or, in the alternative, the making of a receivership order under section 11A of the Grand Court Law (2015 Revision) (the **Grand Court Law**) in aid of the US Court proceeding in which the Receivership Order was made (the **US Proceeding**).

2.      Link Motion is a Cayman Islands exempted company headquartered in the People's Republic of China (**PRC**). The US Proceeding is a derivative action brought by a Link Motion shareholder against three key directors and officers involved in the Company's business and resident in the PRC (the **Individual Defendants**). The serious allegations made in the Verified Shareholder Derivative Complaint (the **Complaint**) commencing the US Proceeding involve mismanagement and self-dealing by Individual Defendants, including allowing Link Motion's shares to be delisted from the New York Stock Exchange (the **NYSE**), failing to file required financial information for publicly-

1

traded companies and transferring valuable Company assets to entities controlled by insiders for no, minimal or unknown consideration.

3.     In response to these allegations, and with the formal non-opposition of Link Motion, the US Court appointed the Receiver over the Company and granted broad injunctive relief against certain individuals. However, while the Receiver has taken steps in Hong Kong and the PRC to fulfill his duties and prevent the dissipation of the Company's assets, the Individual Defendants have ignored, obstructed and frustrated the receivership. They have also allowed Link Motion's corporate filings in this jurisdiction to fall into arrears, risking a dissolution of the Company. Recognition of the Receiver by this Court will confirm the Receiver's power and authority over the assets and undertaking of the Company in its 'home' court and allow the Receiver to protect the interests of the Company pending determination of the serious claims in the US Proceeding.

4.     Recognition of the Receiver's appointment and powers under the Receivership Order is appropriate because there is a sufficient connection between Link Motion and the US Court: Link Motion entered its formal non-opposition to the making of the Receivership Order through a stipulation filed with the US Court. By this stipulation, Link Motion effectively placed itself into the hands of the US Court and permitted it to make the Receivership Order if it felt appropriate – which it clearly did. In the months since, it has not taken any steps in the US Proceeding to discharge the Receiver. Additionally, Link Motion's listing on the NYSE created a close relationship between the Company and US laws and regulatory obligations that further justifies recognition of a receiver appointed by a US court.

5.     If the Court is not prepared to recognize the Receiver's appointment, the Receiver requests that an auxiliary receivership be ordered under section 11A of the Grand Court Law and that the Receiver be appointed as a joint receiver, together with a Cayman-resident insolvency practitioner, of the assets, undertaking and business of Link Motion. A local receivership in aid of the US Proceeding is justified by the real risk of dissipation of the Company's assets through the continued unchecked actions of the Individual Defendants and the potential for Link Motion to be struck-off and dissolved for failure to file its required corporate fees and maintain a registered office in this jurisdiction. The High Court of Hong Kong (the **HK Court**) has already granted

injunctive relief and made a local receivership order in aid of the US Proceeding under its equivalent jurisdiction.

6.      The Court is invited to read the following materials in advance of the hearing of this application:

(a)     the originating summons;

(b)     the First Affidavit of Robert W. Seiden;

(c)     the Complaint (at pages 2 to 19 of Exhibit RWS-1);

(d)     the Receivership Order (at pages 56 to 62 of Exhibit RWS-1);

(e)     the draft order; and

(f)     this Skeleton Argument.

The time estimate for reading this material is 3 hours.

7.      References in this skeleton argument are to the hearing bundle filed by the Plaintiffs and the tab at which the referenced document may be found, in the format **[Tab *X*]**.

## II.     Factual and Procedural Summary

8.      This section contains a summary of the factual background leading to this application, based on the First Affidavit of Robert W. Seiden sworn 10 January 2020 and filed with this Court (**Seiden 1**).[1]

9.      Link Motion, formerly known as NQ Mobile Inc., is a company incorporated in the Cayman Islands. Link Motion and its subsidiaries carry on a multinational business in the development, licensing and sale of technology and services in the smart car and smart ride industry. Its principal executive offices are in Beijing, PRC, but the Company has commercial offices in numerous other jurisdictions including the US and Hong

---

[1] **[Tab 2]**

Kong. Until January 2019, the Company was listed on the NYSE through American depositary shares, each representing 5 Class A common shares in the capital of the Company, under the ticker symbol 'LKM'.

10.   The US Proceeding commenced on 13 December 2018, when Wayne Baliga (**Baliga**), a US citizen and resident and a Link Motion shareholder, filed the Complaint with the US Court. The Complaint makes derivative claims on behalf and for the benefit of Link Motion against the Individual Defendants, who are:

(a)   Vincent Wenyong Shi (**Shi**), a PRC citizen who has been Chairman of the Board of Directors of Link Motion since December 2014 and Chief Operating Officer of Link Motion since October 2005;

(b)   Jia Lin, a PRC citizen who is acting Chief Executive Officer of Link Motion; and

(c)   Xiao Yu, a PRC citizen who is a director of Link Motion with involvement in the management and operations of the Company.

The Company is also listed as a nominal defendant in the Complaint.

11.   The Complaint alleges that the Individual Defendants have breached their fiduciary duties owed to Link Motion, have been unjustly enriched at the expense of Link Motion and have breached US securities laws through failure to disclose fraudulent conduct and failure to make accurate and truthful disclosure concerning Link Motion's financial position. In particular, the Complaint alleges that:

(a)   The Individual Defendants failed to protect the listing of the Company's shares on the NYSE, for which one of the underlying causes was the failure to file Link Motion's annual Form 20-F. Subsequent to the issuing of the Complaint, the NYSE delisted Link Motion's shares in January 2019.

(b)   The Individual Defendants have caused Link Motion to effectively abandon substantial portions of the Company's business by cutting those divisions off from funding or any contact with central management, including the subsidiary in Finland, which was forced to close on 23 November 2018 due to lack of

funding and central direction, and the Company's commercial office in Dallas, Texas.

(c)     The Individual Defendants engaged in undisclosed self-dealing to transfer two substantial businesses of Link Motion – called FL Mobile and Showself Live Social Video Business – to Tongfang Investment Fund Series SPC (**Tongfong**), a company substantially owned by Shi. In March 2017, Link Motion agreed to sell these businesses to Tongfang for US$507,000,000, with a small initial cash amount and the balance due by the end of May 2017. Tongfang repeatedly failed to pay the balance due, despite extensions made by Link Motion to the due date. In December 2017, Link Motion announced that it was accepting a promissory note from Tongfang in satisfaction of the unpaid purchase price, payable within one year. Tongfang has not paid the note, and the businesses sold by Link Motion have subsequently been on-sold by Tongfang. Shi did not disclose to Link Motion or other investors that he is a substantial owner of Tongfang and therefore likely to personally benefit from the transactions. Meanwhile, Link Motion has been deprived of two valuable businesses with the Company never receiving proper payment.

(d)     The Individual Defendants engaged in further undisclosed self-dealing and illegal transfers of Link Motion assets relating to businesses called SyberOS and Rideshare. Public records in the PRC show an October 2018 transfer of the Link Motion subsidiaries controlling those entities to a third party. When shareholders sought an explanation of the transfer from the Company's board of directors, at least two members stated that they were unaware of the transfer. No further details of the transaction are known or were disclosed by the Company, giving rise to serious concerns as to whether Link Motion received commensurate value for the businesses and who ultimately benefited from the transaction.

12.     On 14 December 2018, the day following the filing of the Complaint, the US Court granted an initial 14-day temporary restraining order against Link Motion and the Individual Defendants, enjoining them from transferring Company assets except for normal day-to-day operations. Following service of the Complaint on Link Motion, the Company agreed for the Initial TRO to remain in place pending determination of

Baliga's application for the appointment of a receiver and a preliminary injunction. Ultimately, Link Motion did not contest the appointment of a receiver, and specifically stated to the US Court that it did not oppose Baliga's application. This statement is made in a 'Stipulation of Non-Opposition to a Preliminary Injunction and Consent Order to Extend Time to Answer, Move, or Otherwise Respond to the Complaint' dated 21 January 2019 and filed and approved by the US Court (the **Stipulation**).[2]

13.  Following Link Motion's formal non-opposition, the US Court considered Baliga's application and on 1 February 2019 made the Receivership Order. The parts of the Receivership Order relevant to this application are in Part II.[3] Under the Receivership Order, among other things:

(a)   Mr Seiden is appointed Receiver of Link Motion during the pendency of the US Proceeding.

(b)   The Receiver is authorized to take any action to protect the status quo of the Company; control, preserve and safeguard the Company's assets; and to prevent waste, dissipation or theft of its assets.

(c)   The Receiver is authorized to remove any director, officer, employee, independent contractor or agent of the Company from control, management or participation of or in the Company's affairs, and to appoint or replace such persons.

14.  Since his appointment, the Receiver has taken steps in various jurisdictions to investigate the affairs of Link Motion and take control of its assets and undertaking. In February and March 2019, following the identification of Company bank accounts in Hong Kong, the Receiver obtained an order from the HK Court appointing joint receivers (one of whom is Mr Seiden) in aid of the US Proceeding.

15.  The Receiver has also encountered obstructive efforts from the Individual Defendants, particularly Shi. Shi has ignored communications sent to him by or on behalf of the

---

[2] Exhibit RWS-1 at pages 53 to 55 **[Tab 3]**.
[3] Exhibit RWS-1 at pages 58 to 62 **[Tab 3]**. Part I of the order is concerned with the preliminary injunction aimed primarily at the Individual Defendants. Recognition of that injunction is not sought in the Cayman Islands.

Receiver seeking cooperation. In March 2019, after the HK Court made its receivership order, Link Motion, presumably under the direction of Shi, purported to issue a press release via WeChat (a popular communication app in China) stating that neither the US Court or the HK Court had jurisdiction over the Company. Further, a former senior Link Motion employee cooperating with the Receiver has received reports that Shi and others under his direction have taken steps to 'phoenix' certain revenue streams into a new company under his control and attended at the Company's offices to remove or destroy accounting and legal documents. In July 2019, Shi purported to call a meeting of the Link Motion directors to engage US attorneys in the US Proceeding – the same US attorneys that Shi has engaged personally for that matter, representing a hopeless conflict of interest given the allegations made in the context of a derivative action.

16.   More recently, the Receiver has discovered that Link Motion has failed to pay its corporate filing fees due in the Cayman Islands for at least the past year, and that the registered office has resigned. The next annual fee will be due by 31 January 2020 and there is no reason to believe that the Individual Defendants will properly attend to the payment. Failure to pay the fees or maintain a registered office raises a significant risk that the Company will be struck-off the register and dissolved, putting its status and title to its assets in jeopardy. Without recognized legal status in the Cayman Islands, the Receiver does not have the required authority to intervene and prevent the administrative strike-off.

17.   Against this background, the Receiver makes this application to the Court for recognition of his appointment under the Receivership Order by the US Court, or alternatively for a local receivership in aid of the US Proceeding, like the approach taken by the HK Court. Recognition, or an order in aid, will prevent the Individual Defendants from continuing to rely on jurisdictional arguments to frustrate and obstruct the orders of the US Court and the HK Court and will further the purposes and interests of the US Proceeding brought for the benefit of the Company and its shareholders.

### III.    Recognition of the US Receivership

*A.    Law on Recognition of a Foreign Receiver*

18.    It is well-established that the Court has jurisdiction to recognize the appointment of a receiver by a foreign court[4] where there is "*a sufficient connection between the defendant and the jurisdiction in which the foreign receiver was appointed to justify recognition of the foreign court's order, on English conflict principles, as having effect outside the jurisdiction*".[5] In addition to the sufficient connection requirement, the recent decision of the Grand Court in *In re Silk Road Funds Ltd* suggests that the Court should also consider the reasons or necessity for seeking recognition, whether the receiver is seeking to use the Court to do something it could not do in the appointing jurisdiction, whether the receiver is seeking recognition of any powers that could or would not be granted under Cayman law and whether recognition would raise any public policy concerns.[6]

19.    The relevant considerations in determining whether a sufficient connection exists between the defendant and the jurisdiction appointing the receiver are not closed, but the applicable case law – represented primarily by *Schemmer v Property Resources Ltd*, *Canadian Arab Financial Corporation v Player* and *Silk Road* – has identified the following factors:[7]

(a)    whether the company in respect of which the receiver has been appointed has been made a defendant in the action in the foreign court or has otherwise submitted to the jurisdiction of the foreign court;

(b)    whether the company is incorporated in the country which appointed the receiver;

---

[4] *Canadian Arab Financial Corporation v Player*, 1984-85 CILR 63 at 83 and 103 **[Tab 7]**; *In re Silk Road Funds Ltd* (Grant Ct, 8 February 2018, unreported) at para 49 **[Tab 13]**.
[5] *In re Silk Road* at para 49 **[Tab 13]**, quoting *Schemmer v Property Resources Ltd*, [1973] 1 Ch 273 at 287 **[Tab 11]**.
[6] *In re Silk Road* at para 69 **[Tab 13]**.
[7] *Schemmer* at 287-288 **[Tab 11]**; *Canadian Arab* at 103-104 per Carey JA **[Tab 7]**; *Silk Road* at para 52 **[Tab 13]**.

(c)      whether the courts in the company's jurisdiction of incorporation would recognize the appointment of the foreign receiver;[8] and

(d)      whether the company carried on business in the foreign jurisdiction or has the seat of its central management located there.

20.      However, regardless of the answers to these specific questions, the larger test remains whether there is a sufficient connection to justify recognition that the foreign receivership order should take effect outside of the foreign jurisdiction. While the above factors are helpful questions that in many cases will demonstrate whether the sufficient connection exists, they are not, and should not be taken as, an exhaustive list of the circumstances when it would be appropriate for the Court to recognize a foreign receivership.

B.      *Sufficient Connection Exists Between Link Motion and the United States*

21.      Considering the factors specified above and the circumstances of this case, there are enough contacts between the US, the US Court and Link Motion to find a sufficient connection for the purposes of recognizing the Receiver based on Link Motion's involvement in the US Proceeding, its business activity in the US and its public listing of shares on the NYSE.

22.      Link Motion is central to the US Proceeding. It is not only a defendant to the claim, but the claim is brought derivatively by Baliga for the benefit of Link Motion. The Company is, in some respect, the subject matter of the US Proceeding.

23.      Further, Link Motion had the opportunity to appear in the US Proceeding and entered its non-opposition to the making of the Receivership Order. The Company must be

---

[8] Goulding J described the question this way in *Schemmer*, where he was dealing with an application for recognition in England by a US receiver appointed over a Bahamas company. He was concerned with whether a Bahamas court would recognize the US receiver. When the Court of Appeal in *Canadian Arab* and the Grand Court in *Silk Road* considered the issue, they phrased the question more generally as 'whether the jurisdiction of appointment would recognize a foreign appointed receiver' (not 'the' foreign receiver). It is submitted that while the general approach of the jurisdiction of appointment may raise a comity issue, it is not relevant to establishing whether a sufficient connection exists between that jurisdiction and the company. Notably, in both *Canadian Arab* and *Silk Road* the relevant company was incorporated in the jurisdiction of the receiver's appointment.

taken in those circumstances to have accepted whatever result the US Court would ultimately reach on Baliga's application for a receiver. Although explicitly not a general appearance,[9] the Company still appeared in the US Court for the purposes of the application that led to the Receivership Order and should therefore be regarded as submitting to the jurisdiction of the US Court for that purpose. Since the making of the Receivership Order, the Company has not taken any steps to have the receivership discharged or set aside or to otherwise challenge the jurisdiction of the US Court over it.

24.     Link Motion had significant business contacts with the US. It maintained at least one office, located in Dallas, Texas. More importantly, it listed American depositary shares on the NYSE, opening up its stock for trading by the general public. By virtue of its status as a listed company on an American stock exchange, Link Motion had certain filing obligations with the US Securities and Exchange Commission and was subject to certain US securities laws. By listing its shares on the NYSE and subjecting itself to US law, Link Motion opened itself up to the prospect of being sued for violations of US securities laws, just as Baliga has done in the US Proceeding. Accordingly, the NYSE listing creates a strong nexus between the US and the Company that should be recognized as a sufficient connection for the purposes of recognition of a US receivership in these circumstances.

25.     The answers to two of the questions posed in the case law to determine a sufficient connection are therefore 'yes'. Further, the circumstances of those factors – non-opposition or submission to US jurisdiction and receivership; and significant business contacts with the US and submission to US law – justify determinative weight being assigned to those matters.

26.     The other two factors from *Schemmer* do not detract from that outcome. Although Link Motion is incorporated in this jurisdiction, not the US, that does not prevent this Court from recognizing the Receiver. And the final question – whether the jurisdiction of incorporation would recognize the foreign receiver – is the subject of this application and therefore does not assist in determining whether a sufficient connection exists.

---

[9] Stipulation, Exhibit RWS-1 at pages 53 to 55 **[Tab 3]**.

C.     *There is Need for Recognition*

27.    The necessity of recognition of the Receiver's appointment in this jurisdiction is set out in Seiden 1 and above in paragraphs 15 to 17. There are two main concerns at this stage:

   (a)    The efforts of the Receiver are being undermined by the Individual Defendants, and particularly Shi, arguing in various forums that the Receiver lacks authority under Cayman Islands law as the law governing the Company. Obtaining recognition in the Cayman Islands will mean that the Receiver can operate with the imprimatur of Link Motion's 'home' court. This will greatly assist the Receiver's activities in other jurisdictions and take away the stick of private international law that has been wielded by the bad actors.

   (b)    Link Motion is in danger of being struck off the corporate register in the Cayman Islands for failure to pay annual fees and maintain a registered office. The Receiver understands that the fee for last year was not paid and that the registered office has resigned. The next annual fee is due by 31 January 2020. The Receiver currently has no standing to engage or direct a Cayman registered office provider for the Company or to pay the fees directly, and there is no indication that those persons with control of Link Motion in Cayman will make the necessary arrangements. Unless the Receiver's appointment and powers are recognized in this jurisdiction, he will be unable to correct this matter and prevent the likely administrative strike-off and dissolution of the Company, which would have a serious adverse impact on the receivership, the US Proceeding and the efforts to vindicate the wrongs alleged in the Complaint.

D.     *Recognition Sought is Within the Limits of the Court's Power*

28.    When recognizing a foreign receiver, this Court must not (*a*) grant the foreign receiver any power that the receiver could not exercise in its home jurisdiction; or (*b*) recognize a power of the foreign receiver that the Court could not grant under domestic law. These restrictions recognize both the limits on the Court's own common law power and that the purpose of recognizing a foreign receiver is to overcome the limits of the territorial jurisdiction of the foreign court.

29.   Both limitations are respected here. First, the Receiver is not seeking to exercise in the Cayman Islands any power that the Receiver could not exercise under the Receivership Order in the US. Indeed, the purpose of seeking recognition is to make more effective the very powers that the Receiver holds under US law.

30.   Second, the powers under the Receivership Order that the Receiver seeks recognition of are consistent with powers that this Court could and would grant to a local receiver appointed in similar circumstances. Generally, the Receiver is entitled to control the affairs of the Company, take possession and control of its assets, prevent the transfer and waste of corporate assets and exclude existing directors and officers from ongoing management of the Company. These are all standard powers that a Cayman Islands court would vest in a pre-judgment receiver appointed for the purpose of holding the ring pending determination of serious claims when there is a real risk of asset dissipation. Recognition of these powers raise no conflict with local substantive laws.

E.   *Recognition Would Not Offend Public Policy*

31.   When this Court is asked to recognize or give effect to an order from a foreign court, it should ask whether to do so would offend the public policy of the Cayman Islands. Here, no such concerns arise. The Receivership Order was made in circumstances that would justify the making of a pre-judgment receiver in this jurisdiction. As discussed above, the powers sought to be recognized are consistent with those that the Court would grant a local receiver. Unlike in *In re Philadelphia Alternative Asset Fund Limited*,[10] here there is no competition between a local winding up and recognition of a foreign receivership tasked with liquidating the company's assets. Finally, although some of the claims in the Complaint are based on US securities laws, the claims are private rights of action and so do not engage the common law prohibition on enforcing a foreign penal or public law.[11]

F.   *Conclusions on Recognition of the Receiver*

32.   As demonstrated above, the criteria for recognition by this Court of the Receiver's appointment and his powers under the Receivership Order are satisfied. There is a

---

[10] *In re Philadelphia Alternative Asset Fund Limited*, 2006 CILR Note 7 **[Tab 12]**.
[11] *Kalley v Manus*, 1999 CILR 566 at 574-575 **[Tab 10]**.

sufficient connection between Link Motion and the US through the Company's appearance in the US Proceeding and its share listing on the NYSE. There is a need for recognition in this jurisdiction to ensure that the purpose of the receivership may be carried out and that the interests of the Company's shareholders are protected. The Receiver's powers and functions are consistent with the local substantive law and public policy, and the Receiver is not seeking to expand his powers beyond those assigned to him by the Receivership Order.

33.   Accordingly, recognition of the Receiver's appointments and powers under the Receivership Order should be granted by this Court.

## IV.   Section 11A Receivership in Aid of US Proceeding

34.   In the alternative, if the Court is not prepared to recognize the Receiver's appointment under its common law jurisdiction, the Receiver asks that the Court make a local receivership order over the assets, business and undertaking of Link Motion in aid of the US Proceeding under section 11A of the Grand Court Law.[12] The Receiver proposes that he be appointed one of the joint receivers, together with a Cayman-resident insolvency practitioner to be nominated by the Receiver if required.

35.   Section 11A grants the court a statutory jurisdiction to appoint a receiver or grant other interim relief in support of foreign proceedings. Smellie CJ provided a comprehensive analysis of the applicable principles in *Classroom Investments Incorporated v China Hospitals Incorporated*.[13] If the gateway test under section 11A(1) is met, the court should consider whether it would grant the relief if the substantive proceedings were taking place in the Cayman Islands and if it would be unjust, inconvenient or inexpedient to grant the relief.[14]

36.   In light of the principles set out in *Classroom Investments* for the exercise of the section 11A jurisdiction and the factual background and legal position already described in this skeleton argument, it would be appropriate for this Court to make an order appointing joint receivers in aid of the US Proceeding:

---

[12] **[Tab 9]**
[13] *Classroom Investments Incorporated v China Hospitals Incorporated*, 2015 (1) CILR 451 **[Tab 8]**.
[14] *Classroom Investments* at paras 37-44 **[Tab 8]**.

(a)     The gateway test at section 11A(1) is met. The US Proceeding has been commenced, and the claims made in the Complaint are capable of giving rise to a final money judgment of the kind that would be enforceable in the Cayman Islands at common law.

(b)     A section 11A receivership would ultimately be in aid of the injunctive relief already granted by the US Court restraining the Individual Defendants and the Company from transferring or dissipating Link Motion's assets, and to further assist the Receiver in carrying out his efforts under the authority of the Receivership Order.

(c)     While the Court should always be concerned about the intrusiveness of the receivership remedy, here those concerns are mitigated because the US Court has already appointed the Receiver and the HK Court has already appointed joint receivers in aid of the US Proceeding. As demonstrated by the failure to pay the corporate fees and maintain a registered office, the bad actors have also effectively abandoned the Company.

(d)     Despite the 'freezing order' type provisions of the Receivership Order and the injunctive relief granted in Hong Kong, there is still a real risk of dissipation of assets and credible reports of breaches of the Receivership Order by the Individual Defendants that threaten the status of Link Motion and the integrity of the foreign proceedings. As described in Part III above, the US and Hong Kong orders have not prevented the obstructive and frustrative acts of the Individual Defendants and others. In these circumstances, a Cayman court would appoint a receiver to constrain the breach of the freezing order.

(e)     The Complaint, and the evidence gathered to date to support it and filed with this Court through Seiden 1, demonstrates serious issues of potential fraudulent dealing justifying the granting of relief. In these circumstances the Court should not be timid in exercising its jurisdiction to aid and facilitate the US Proceeding. The Court may take comfort from the fact that both the US Court and the HK Court found the seriousness and weight of the allegations sufficient to grant pre-judgment injunctive relief.

(f)   The US Court approved the engagement by the Receiver of Cayman Islands attorneys to pursue this application, so there is no concern that the US Court would not welcome the assistance requested from this Court.

(g)   The appointment of joint receivers to aid the US Proceeding would provide great assistance to the Receiver and the US Court for the same reasons detailed above that recognition of the Receiver is needed.

(h)   Accordingly, it could not be said to be unjust, inconvenient or inexpedient for this Court to make an order under section 11A appointing joint receivers over the assets, business and undertaking of Link Motion in aid of the US Proceeding.

37.   The Receiver has consented to acting as joint receiver if so appointed by this Court.[15]

## V.   Relief Sought

38.   Based on the above, the Receiver requests that the Court make an order in the form sought recognizing his appointment and powers under the Receivership Order. In the alternative, the Receiver requests that the Court make an order appointing a Cayman Islands insolvency practitioner and himself as joint receivers of the assets, business and undertaking of Link Motion under section 11A of the Grand Court Law in aid of the US Proceeding.

39.   All of which is respectfully submitted.

Mark A. Russell
**KSG Attorneys at Law**

Attorneys for the Plaintiff

22 January 2020

This Skeleton Argument is filed by KSG Attorneys at Law, attorneys for the Plaintiff, whose address for service is 4th Floor Harbour Centre, 42 North Church Street, PO Box 2255, Grand Cayman KY1-1107, Cayman Islands.

---

[15] Seiden 1 at para 48 **[Tab 2]**.