# EXHIBIT 16

IN THE GRAND COURT OF THE CAYMAN ISLANDS
FINANCIAL SERVICES DIVISION

CAUSE NO FSD 4 OF 2020 (MRHJ)

BETWEEN

**ROBERT SEIDEN,**
**IN HIS CAPACITY AS TEMPORARY RECEIVER OF LINK MOTION INC.**

**PLAINTIFF**

AND

**LINK MOTION INC.**

**DEFENDANT**

**Mr. Mark Russell of KSG for the Plaintiff**
**Defendant not appearing, not represented**
**Heard on the 3 February 2020**

**RULING**

1. This is an application brought by Robert W. Seiden, in his capacity as temporary receiver ("the **Receiver**") of Link Motion Inc. ("the **Company**"), for recognition of his appointment under an order ("the **Receivership Order**") of the United States District Court for the Southern District of New York ("the **US Court**") in aid of the US Court proceeding in which the Receivership Order was made ("the **US Proceeding**"). The defendant, Link Motion, is a Cayman Islands exempted company headquartered in the People's Republic of China ("**PRC**") carrying on a multinational business in the development, licensing and sale of technology and services in the smart car and smart ride industry. Up until January 2019, the Company was listed on the New York Stock Exchange ("**NYSE**") and had outstanding, to that date, nearly 100 million American Depositary Shares ("**ADS**"), each representing 5 Class A common shares in the capital of the Company. The Company also has commercial offices in the United States and Hong Kong.

**The US proceeding**

2.  In his affidavit sworn on the 18 January 2020 in support of his application for recognition by this Court, the Receiver sets out the relevant background to his appointment in the US Proceeding.

3.  A Verified Shareholder Derivative Complaint was filed by a Link Motion shareholder, Wayne Baliga, against three key directors and officers involved in the Company's business and resident in the PRC (the "**Individual Defendants**") in which Mr. Baliga alleged, *inter alia*, that the Individual Defendants were engaged in self-dealing, having transferred valuable Company assets to entities controlled by insiders for no, minimal or unknown consideration. He also alleged that they had mismanaged the Company, allowing the Company's shares to be delisted from the NYSE by failing to file required financial information for publicly-traded companies and precipitating the closure of offices in Dallas, Texas and China as well as a formerly profitable subsidiary in Finland.[1]

4.  In response to the Complaint, the US appointed a Receiver over the Company and granted broad injunctive relief against certain individuals. The Receiver states, in his affidavit, that while he has taken steps in Hong Kong and the PRC to fulfil his duties and prevent the dissipation of the Company's assets, the Individual Defendants have ignored, obstructed and frustrated the receivership.[2]

**This Application**

5.  The Receiver states further that the Company has failed to pay its corporate filings fee due in this jurisdiction for at least a year, and that a further failure to pay these fees when they fall due in January 2020 may result in the striking off and dissolution of the Company. Over the same period, the Company's registered office, Maples Corporate Services Limited, has resigned.



---

[1] Para 8 et seq
[2] Para 27 to 41

6.  He seeks the recognition of his appointment by this Court to allow him to protect the interests of the Company pending determination of the serious claims in the US Proceeding.

7.  In his submissions on behalf of the Receiver, Mr. Russell submits that the next annual fee will be due by 31 January 2020 and there is no reason to believe that the Individual Defendants will properly attend to the payment. Failure to pay the fees or maintain a registered office raises a significant risk that the Company will be struck-off the register and dissolved, putting its status and title to its assets in jeopardy and that, without recognised legal status in the Cayman Islands, the Receiver will not have the required authority to intervene and prevent the administrative strike-off.

**The Law**

8.  That the Grand Court has an inherent power to recognize a Receiver appointed by a Foreign Court was asserted by the Court of Appeal in the matter of *Kilderkin v Player* (1984-85) CILR 63 which cited the decision of *Schemmer v Property Resources Ltd.* [1975] Ch 273 with approval. The Court held that the jurisdiction falls to be exercised where the Court is satisfied that there is a sufficient connection between the defendant and the jurisdiction in which the foreign receiver was appointed.

9.  In *Kilderkin,* Carey JA adopted the four tests set out in *Schemmer* to establish whether such a sufficient connection exists which he summarised as follows:

    1. Has the company in respect of whose assets the receiver and manager has been appointed been made a defendant in the action in the foreign court?
    2. Has the company in respect of whose assets the receiver and manager has been appointed, been incorporated in the country which appointed the receiver and manager?
    3. Would the courts of the country of incorporation recognise a foreign appointed receiver?
    4. Has the company carried on business in [the jurisdiction of the appointment] or is the seat of its central management and control located there?

3 | Page

10. It is plain from the *Schemmer* judgment that not all four questions need be answered in the affirmative. On my reading of the judgment, incorporation in the jurisdiction of the Court appointing the Receiver or submission by the company to the jurisdiction of the foreign Court appointing the Receiver would suffice to establish a sufficient connection to ground the Court's jurisdiction to recognise a Receiver's appointment.

11. Mr. Russell submits that the recent decision of Smellie CJ *In re Silk Road Funds and Silk Road M3 Fund FSD 234 of 2017 (Unrep.)* suggests that the Court, when considering an application for recognition, should also consider,
    i. the reasons or necessity for seeking recognition,
    ii. whether the receiver is seeking to use the Court to do something it could not do in the appointing jurisdiction,
    iii. whether the receiver is seeking recognition of any powers that could or would not be granted under Cayman law and
    iv. whether recognition would raise any public policy concerns.[3]

## DECISION

12. In granting the order for recognition, I considered that the test of *"sufficient connection"* was met as,
    i. the Company was a defendant in the US proceedings, even though a nominal defendant;

    ii. while it did not carry on business there, the Company had commercial offices in the United States and was listed on the NYSE.

    Mr. Russell submits, and I accept, that by listing American depositary shares on the NYSE and opening up its stock for trading by the general public, the Company had, by virtue of its status as a listed company on an American stock exchange, certain

---

[3] *In re Silk Road* at para 69





filing obligations with the US Securities and Exchange Commission and was subject to certain US securities laws. By listing its shares on the NYSE and subjecting itself to US law, the Company opened itself up to the prospect of being sued for violations of US securities laws, just as Mr. Baliga has done in the US Proceeding. Accordingly, being a listed company on the NYSE creates a strong nexus between the US and the Company that weighs in favour of recognising the US receivership.

    iii.    That the Company is a Caymanian company would ordinarily weigh against the recognition of a foreign receivership order, but the Company has submitted to the jurisdiction of the US Court and withdrawn its opposition to the appointment of the temporary Receiver which supports, in my view, a finding of a *"sufficient connection"* between the Company and the jurisdiction of the Court appointing the Receiver to justify the recognition of the Receiver's appointment.[4]  The fact that the Company does not trade in Cayman, has no assets within the jurisdiction and no creditors here whose interests might be affected are factors that fortify my conclusion that it is appropriate to exercise the Court's jurisdiction in this case.

13.    In *Schemmer,* the Court asked the question whether the court of the country where the company was incorporated would recognise the foreign Receiver. In that case, the learned judge was considering an application to recognise a Receiver appointed by a US Court who sought to take control of assets in England which belonged to a company incorporated in the Bahamas, a company that was not a defendant to the US proceedings and had never carried on business there. It was in that context that he suggested that one of the factors the English Court should consider is whether the courts where the company was incorporated would recognise a receiver appointed by US Court.

14.    In *In re Silk Road,* the test appears to be framed in terms of reciprocity, with the question being whether the foreign Court which appoints the Receiver would recognise a Receiver

---

[4] *"Stipulation of non-opposition to preliminary injunction and Consent Order to extend time to....respond to the Complaint":* page 53 of 169 in the exhibit to the Receiver's affidavit.


appointed by this Court. There is no evidence before me that the US Court would do so but, in the absence of any clear evidence that it would *not*, I hold that comity requires that the appointment of a Receiver by a foreign Court of equivalent jurisdiction, on evidence that would have justified the appointment of a Receiver by this Court, be recognized, provided that the other conditions identified by Smellie CJ in *In re Silk Road* were satisfied.

15. One of those conditions is that the powers conferred upon the foreign Receiver be powers capable of being granted under Cayman Islands law. In this case, the powers conferred upon the Receiver are the same as could be granted by this Court, save for the power to appoint Directors which will be excluded from the Recognition Order.

16. With respect to the question of the reason for recognition, which was one of the factors considered by Smellie CJ in *In re Silk Road,* it is in the first instance, to ensure that all fees are paid and that the Company maintains a registered office. The fact is that the Individual Defendants against whom the allegations of misfeasance have been made have abandoned the Company and put it at risk of being struck off administratively and dissolved, a consequence which would, Mr. Russell contends, have a serious adverse impact on the receivership, the US Proceeding and the efforts to vindicate the wrongs alleged in the Complaint. Recognising the Receiver's appointment would, *inter alia*, give him the standing to engage or direct a Cayman registered office provider for the Company, to pay the necessary fees and costs directly and otherwise act on behalf of the Company.

17. Although not one of the additional factors set out in the Chief Justice's decision in *In re Silk Road*, I have considered whether the application for recognition is *ultra vires* as the Receiver is not specifically authorised to seek recognition by the order appointing him, in contrast to the Receiver in *In re Silk Road*. I consider, however, that such authorisation falls to be implied as his Appointment authorises him to do, among other things, any act to protect the status quo of the Company [5] and to appoint agents of the Company. [6] The

---

[5] At para 2
[6] At para 2 b.



Receiver's appointment would have to be recognised for the Appointment to be given full effect.

18. The final issue for consideration is whether recognising the Receiver would be consistent with public policy. The facts of this case are readily distinguishable from *In re Philadelphia Alternative Asset Fund Limited* (2006) CILR Note 7, where the Court refused to recognise a foreign Receiver in winding up proceedings commenced in the United States on the ground that the petitioner shareholders in Cayman had a legitimate expectation that a company which was domiciled in Cayman would be wound up in Cayman. There are no competing claims in this jurisdiction.

19. As a matter of public policy, this Court will not recognise foreign proceedings undertaken to enforce a foreign penal statute: *Kalley & Ors v Manus & Ors* (1999) CILR 566. While some of the allegations of wrongdoing in Mr. Baliga's Complaint are based on US securities laws, the claims are made by a private citizen on private rights of action and do not, therefore, offend that principle.

20. For these reasons the Order is made recognising the Receiver in terms of the Draft Order which is hereby approved.

DATED 4 FEBRUARY 2020

RAMSAY-HALE J

