UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.)<br><br>      Plaintiff,<br><br>-against-<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU,<br><br>      Defendants,<br><br>-and-<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.),<br><br>Nominal Defendant. | 1:18-cv-11642-VM-DCF<br><br>**DECLARATION OF DEFENDANT VINCENT WENYONG SHI IN SUPPORT OF MOTION TO DISCHARGE THE TEMPORARY RECEIVER AND DISSOLVE THE PRELIMINARY INJUNCTION** |

VINCENT WENYONG SHI declares, pursuant to 28 U.S.C. 1746, as follows:

1. I am an Individual Defendant in the above-captioned action. I make this declaration in support of my motion (i) to discharge Robert W. Seiden (the "**Receiver**") in his capacity as receiver for Link Motion Inc. f/k/a NQ Mobile Inc. ("**LKM**" or the "**Company**"); and (ii) to dissolve this Court's prior-issued preliminary injunction dated February 1, 2019.

2. The receivership should be dissolved because (i) the derivative claims on which the Court relied in appointing the Receiver have now been voluntarily dismissed by Plaintiff Wayne Baliga's ("**Plaintiff**" or "**Baliga**"); (ii) the allegations of misconduct on which the Court relied in appointing the Receiver have now been refuted; and (iii) continuation of the receivership will cause undue harm to the Company because Plaintiff now asserts only claims for money damages and continuation of the receivership will result in significant damage to the Company. Moreover,

the preliminary injunction should be dissolved because this is now an action for money damages only that lacks an adequate showing of likelihood of success on the merits, or irreparable harm, that would warrant a continuation of the preliminary injunction.

**The key grounds relied on by the Court in appointing the receiver and entering the preliminary injunction have been refuted:**

3. *First*, Baliga alleged that he was a shareholder with legal standing to sue derivatively (See Dkt. Nos. 1, 65).

4. In connection with the motion by China AI Limited ("**China AI**") to intervene, China AI submitted evidence demonstrating that Baliga was never a shareholder of LKM and only held American Depositary Shares ("**ADSs**" and each individually, an "**ADS**"). Under the laws of the Cayman Islands, which govern the internal affairs of LKM, holders of ADSs have no legal standing to sue derivatively.

5. Annexed hereto as **Exhibits A**, **B**, and **C** are true and correct copies of the register of shareholders of LKM and the first and second declarations of Katharine L. B. Pearson, Esq. Exhibits A, B, and C show that Baliga is not and has never been a shareholder with legal standing to sue derivatively.

6. Baliga has now withdrawn all of his derivative claims by failing to plead them in his Second Amended Complaint (Dkt. No. 166).

7. *Second, Baliga alleged improper transfers of legacy business units of the Company (i.e., FL Mobile, SyberOS, Rideshare and Showself. (See ¶¶ 3, 4 of the Cilento Aff, (Dkt. 92) and Memorandum of Law (Dkt. 94); see generally Complaint (Dkt. 1).*

8. The divestiture of the Company's legacy interests in these business entities were duly authorized by the Board in connection with the Company's 2015 plan to divest its legacy assets. (*See generally* Memorandum of Law (Dkt. 37); Reply Memorandum of Law (Dkt. 62; ¶¶ 33-43);

Proposed Complaint in Intervention (Dkt. 124); *see also* 2015 Form 20-F, at p. F-8 filed with Securities and Exchange Commission ("S.E.C.")[1]; 2016 Form 20-F, at pp.39-40 filed with S.E.C.[2]).

9. Baliga's allegation that the shares of these entities were improperly transferred is factually incorrect. Because of its VIE structure, the Company never owned shares of any of these entities. The Company's only interest in those entities was by way of contracts ("**Control Documents**") that gave to the Company contractual rights to control and receive the economic benefits of those businesses. Throughout the entire time the Company has had an interest in FL Mobile and Showself, the holders of shares of those companies have held them as mere nominees with no right to vote the shares or to receive economic benefits.

10. The Share Purchase Agreement with Tongfang Investment Fund Series SPC ("**Tongfang**") for the sale of FL Mobile and Showself was publicly disclosed as exhibit 4.33 to LKM's 2016 annual report filed with the S.E.C.[3] Annexed hereto as **Exhibit D** is a true and correct copy of the Share Purchase Agreement. The contract provides that the equity interests in FL Mobile would be transferred to Tongfang for "US$1."

11. Baliga's allegations about my ownership of shares of FL Mobile and Showself are also incorrect because I held shares of those entities only as a nominee for the benefit of the Company. Annexed hereto as **Exhibit E** is a true and correct copy of the Supplemental Agreement, dated March 31, 2017, between the Company and Tongfang. As stated in section 2.1 of the Supplemental Agreement, "[t]he parties agree and acknowledge that, NQ has hereby agreed to entrust SHI Wenyong to hold its legal shares in FL Mobile and Showself (the "Entrusted Shares") before the Closing of the Share Purchase Transactions, and SHI Wenyong agrees to accept NQ's entrustment to hold these Entrusted Shares on behalf of NQ."

---

[1] *https://www.sec.gov/Archives/edgar/data/1509986/000119312516532382/d158137d20f.htm*
[2] *https://www.sec.gov/Archives/edgar/data/1509986/000119312517137511/d346488d20f.htm*
[3] *https://www.sec.gov/Archives/edgar/data/1509986/000119312517137511/d346488dex433.htm*

12. As stated in section 2.3 of the Supplemental Agreement, "SHI Wenyong shall follow the instructions from NQ . . . to exercise the shareholder's rights of the Entrusted Shares." The purpose of this arrangement was to permit Tongfang time necessary to establish its own VIE structure in order to close the transactions.

13. Baliga has also withdrawn all claims based on the "SyberOS" and "Rideshare" transactions alleged in the Verified Shareholder Derivative Complaint and First Amended Shareholder Derivative Complaint by failing to plead them in the Second Amended Complaint (Dkt. No. 166).

14. *Third, Baliga alleged that Shi conspired to use Company funds to finance China AI's 2018 purchase of shares of the Company. (See pp.8-9 of Memorandum of Law in opposition to motion to intervene (Dkt. 141).*

15. In opposition to the motion by China AI to intervene, Baliga also alleged that Shi and China AI had conspired to secrete assets of the Company through a payment to a bank in Luxembourg. (See Dkt. No. 141, at pp.4-6). Baliga's allegations were based on letters from the Receiver setting forth his conclusions based on his so-called "investigation." Yet the investigation was wholly deficient, and the conclusions were meritless because the Receiver did not present all of the facts.

16. Specifically, in the Receiver's letter dated May 2, 2020 (Dkt. No. 142-1), and Plaintiff's Memorandum of Law dated May 4, 2020, Baliga falsely alleged that I orchestrated a scheme to divert $10 million of Company funds by way of a payment to the Luxembourg branch of China Merchants Bank Ltd ("**China Merchants Bank**"). These allegations are false because the payment referenced by Plaintiff and the Receiver was made with Company funds to pay a legitimate obligation the Company owed to China Merchants Bank.

17. In or around June and July 2016, the Company became obligated to repurchase its 4.00%

Convertible Senior Notes due October 15, 2018 (the "**Notes**").[4] This fact was disclosed in the Company's 20-F annual report.[5] The Company was obligated to repurchase these notes in United States Dollars, but most of LKM's cash reserves were held in Chinese Renminbi ("**RMB**").[6]

18.   Due to the severe restrictions in the Peoples' Republic of China (the "**PRC**") governing conversion of RMB denominated funds into foreign currencies (e.g., the U.S. Dollar), the Company entered into loan agreements with the Luxembourg branch of China Merchants Bank, which required the Company to pledge its RMB cash to the Beijing branch of China Merchants Bank as security for loans from the Luxembourg branch denominated in U.S. Dollars for the purpose of repurchasing the Notes.

19.   The loan agreements with China Merchants Bank specifically mention repurchase of the Notes and required that the Company repay these loans to the Luxembourg branch on or before July 31, 2018.[7]

20.   Once repaid, the Beijing branch returned to the Company the RMB cash pledged for the loan.

21.   Annexed hereto as **Exhibits F**, **G**, **H** and **I** are true and correct copies of loan documents and accounting vouchers evidencing the disbursement of loan proceeds and repayment in full in July 2018. These documents show that the allegations made by Baliga and the Receiver about the payment to China Merchants Bank lack any basis in fact or law.[8]

22.   Although Baliga (and the Receiver) incorrectly paint this transaction as suspicious, without any documentary support, these payments were nothing more than a commonplace international

---

[4] *See* Hua Decl., at ¶¶ 35-48; Ex. G.
[5] *See* Hua Decl., at ¶ 38; Ex. G.
[6] *See id*.
[7] *See* Hua Decl., at Ex. H, at § 2, and Ex. I.
[8] *See* Hua Decl., at Exs. H, I, J, K.

loan transaction for the purpose of obtaining foreign currency necessary to satisfy corporate obligations. (*See* Dkt. No. 155, at ¶¶5-48 of Hua Decl.)

23.     *Fourth*, Baliga alleged that Shi stole $88 million from the Company's PRC subsidiaries *(see July 17, 2020 letter from Receiver and exhibits thereto. (Dkt No. 161).*

24.     These allegations are without basis in fact or law because the payments referenced by the Receiver in his July 17, 2020 letter were payments made for the legitimate corporate purpose of repaying a corporate loan obligation. (*See* letter and attachments at Dkt. 159, 159-1, 159-2, 159-3).

25.     Annexed hereto as **Exhibits J**, **K**, **L** and **M** are true and correct copies of my counsel's letter dated July 22, 2020 and the exhibits thereto, which show that this payment was made for a legitimate corporate purpose.

**The receivership has caused great harm to the Company.**

26.     Beginning in 2019, the Receiver took possession of the Company's accounts in Hong Kong, as well as the Company's accounts with Apple and Google. Based on my recollection, I estimated that altogether these accounts had cash value equivalent to approximately US$2 million at the time the Receiver gained access to them.

27.     However, the Receiver, through his agent, Guo, began to shut down the operations of the Company in the PRC.[9] These actions resulted in judgments being entered against the Company in favor of former employees seeking wages in the approximate amount of ¥ 1,083,286. Instead of paying these judgments using the Company funds, Guo appealed them without any basis in law or fact.[10] Predictably, the judgments have now been affirmed.[11]

28.     I am now informed that all of the Company funds have been spent. But none of the funds

---

[9] *See* Hua Decl., at ¶¶ 49-68, 74-75.
[10] *See* Hua Decl., at ¶¶ 63-67; Exs. P, Q, R, S.
[11] *See* Hua Decl., at Exs. P, Q, R, S.

obtained by the Receiver were used to pay the former employees.

29.     These harms to the Company are wholly attributable to the Receiver, who retained Guo to act on his behalf in the PRC. (*See* Dkt. No. 71).

30.     Since March 2019, Guo has been the only Chairman and legal representative of the Company's PRC operating companies.[12] As such, only Guo, and no one else, can act legally on behalf of those entities.

31.     It was, therefore, Guo's wrongful decision to appeal the judgments, which led to the predictable denial by the appeals court. Guo and the Receiver have had access to the Company's other bank accounts and social media accounts for some time[13] and, therefore, could have paid the Company's former employees. Instead, they have been paying themselves from Company funds.[14]

32.     Further, the commencement of this action by Baliga, appointment of the Receiver and entry of the preliminary injunction, prevented the Company from completing its obligations to Tongfang with respect to the agreement to sell FL Mobile and Showself. Once the Receiver was appointed and the preliminary injunction entered on February 1, 2019, the FL Mobile and Showself shares were frozen and could not be transferred to Tongfang in accordance with the terms of the Share Purchase Agreement.

33.     In April 2019, Tongfang commenced an arbitration against the Company and me to rescind the purchases of FL Mobile and Showself (the "**Tongfang Arbitration**"). I am informed that the Receiver has told the Court that he intervened in this arbitration. But it appears that is untrue and the arbitrator granted Tongfang's request for recission without opposition, meaning that these sale

---

[12] *See* Hua Decl., at ¶¶ 63-67; Exs. P, Q, R, S.
[13] *See* Hua Decl., at ¶¶ 58-60; *see, e.g.*, Dkt. Nos. 78 (July 1, 2019 order authorizing Receiver to disburse funds for expenses), 97 (September 19, 2019 order authorizing Receiver to disburse funds for expenses), 100 (September 25, 2019 order directing Google to submit funds to the Receiver).
[14] *See id*.

of these business units is terminated and the Company will be obligated to return to Tongfang the consideration it paid to the Company.

34. As a result of Baliga's and the Temporary Receiver's improper and baseless interference with the Company's ability to transfer the shares to Tongfang, the arbitrator issued an award against the Company and me, jointly and severally,[15] in the amount of RMB 2,520,000. Annexed hereto as **Exhibit N** is a true and correct copy of the award.

I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 3, 2020

_____
Vincent Wenyong Shi

---

[15] I was named as a respondent in the arbitration because I personally guaranteed the Company's obligations under the Share Purchase Agreement in order to induce Tongfang to pay the agreed upon consideration for the sale of FL Mobile and Showself.