# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

      Plaintiff,
-against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN,
XIAO YU,

      Defendants,
-and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

Nominal Defendant.

Civil Action No.: 1:18-cv-11642

**SECOND DECLARATION OF KATHARINE L. B. PEARSON**

KATHARINE L. B. PEARSON declares, pursuant to 28 U.S.C. 1746, as follows:

A. **INTRODUCTION**

1. My name is Katharine Lucy Bladen Pearson and my work address is care of Harney Westwood & Riegels (*Harneys*), 3rd Floor, Harbour Place, 103 South Church Street, George Town, Grand Cayman in the Cayman Islands.

2. I am a partner of Harneys, a law firm, and a member of its litigation, insolvency and restructuring practice in the Cayman Islands. My professional background and qualifications, and my relationship to the Parties, remain as set out in my first declaration in these proceedings dated 3 March 2020 (*First Declaration*).

3. In my First Declaration I stated *inter alia*, that:

   a. Under Section 38 of the Cayman Islands Companies Law (*Companies Law*), there are two requirements that must be met for a person to become a member of a company incorporated in the Cayman Islands:

      i. *first*, the person must have agreed to become a member; and

1

   ii. *secondly*, the person's name must be entered on the company's register of members.

   b. In the light of the authorities cited in the First Declaration, it must now be considered settled as a matter of Cayman Islands law that a mere beneficial owner of shares ordinarily lacks standing to pursue legal or equitable claims in relation to the relevant shares.

   c. In my opinion, noting the content of Article 25 of the Company's articles, to the extent that Mr Baliga's ADS Holdings may amount to an equitable, contingent, future or partial interest in the Company's shares, the Company is not bound by such interest nor is it compelled in any way to recognise such interest.

   d. It was therefore my opinion that Mr Baliga did not have standing under Cayman Islands law to pursue a derivative action on behalf of the Company.

4. Capitalised terms used but undefined in this my *Second Declaration* have the meanings ascribed to them in my First Declaration.

5. The purpose of this Second Declaration is to address Plaintiff's Memorandum of Law in opposition to China AI Capital Ltd's Motion to Intervene filed on 4 May 2020 (*Plaintiff's Memorandum*) insofar as it concerns matter of Cayman Islands law, viz. the cases of *Schultz v Reynolds* [1992-1993 CILR 60] (*Schultz v Reynolds*), *Svanstrom v Jonasson* [1997 CILR 192] (*Svanstrom v Jonasson*) and *Zabusky & Ors v Virgtel Ltd & Ors* [2012] QCA 107 (*Zabusky v Virgtel*) cited at p15 to 16 thereof.

## B. PLAINTIFF'S MEMORANDUM

6. In support of Plaintiff's contention that Cayman Islands case law justifies standing, Plaintiff's Memorandum states that:

2

    a. The Court of Appeal in *Schultz v Reynolds* explained that the beneficial owner of shares in a company whose name does not appear on the register of its members could in certain situations bring a derivative action on behalf of the Company.

    b. The Court of Appeal in *Svanstrom v Jonasson* provided a clear rationale for that proposition, viz. that "*It does not seem logical to contend that the right of a person holding an equitable interest in shares should depend on the nature of the equitable interest and that the equitable interest of a person who has contracted to purchase is distinguishable from that of a shareholder who has opted to hold shares in the name of a nominee, so that in the one situation the equitable owner could file a derivative action and in the other situation he could not.*"

    c. More recent authorities analyzing the issue under Cayman Islands law and English common law principles have held that a rule prohibiting beneficial owners of shares from suing derivatively would "*not be sensible*" and works an "*injustice,*" and that, as a practical matter, forcing those beneficial owners to transform their shares could "*incur expense and delay which might ... diminish the value of the derivative action*". In support of this contention, Plaintiff's Memorandum cites *Zabusky v Virgtel*, an Australian decision of the Court of Appeal in Queensland.

## C. SCHULTZ v REYNOLDS

7. I disagree that the Court of Appeal explained that the beneficial owner of shares in a company whose name does not appear on the register of its members could in certain situations bring a derivative action on behalf of the Company. I note that the Plaintiff's Memorandum does not refer to the relevant extract from the Court of Appeal's ruling that supports such a contention.

8. To the contrary, and as set out at [27] of my First Declaration, the Court of Appeal's conclusion on this issue is clear (emphasis added): "*The Companies Law (Revised) recognizes only members who are registered. The appellant has no voting rights and **as a beneficial owner of the shares has no rights under the Law**... In my view it is only CMS, the registered shareholder of Newport Ltd., who can institute an action against Newport Ltd. **The appellant, as a beneficial owner of the shares, is not entitled to bring a derivative action against Newport Ltd**".*

3

9. Therefore, the proposition for which Plaintiff cites *Schultz v. Reynolds* is incorrect.

**D.** *SVANSTROM v JONASSON*

10. The *Svanstrom* decision is addressed at [28-29] of my First Declaration.

11. The extract to which Plaintiff refers in the Plaintiff's Memorandum does not, in my opinion, provide a clear rationale (or indeed *any* rationale) for the proposition that a beneficial owner of shares may in certain situations be able to bring a derivative action on behalf of the Company.

12. The context to the extract cited by the Plaintiff was a discussion and analysis of the ratio of three Australian decisions, each of which was held to provide support for the proposition that beneficial owners of shares could *not* bring derivative claims.

13. In my opinion, the Court of Appeal was making the point, in the extract cited by the Plaintiff, that it does not make sense for the *nature* of the equitable interest held to have any bearing on the issue whether the owner of that equitable interest should have standing to bring a derivative action; further or alternatively that, as a matter of principle, owners of equitable interests do not have standing to bring derivative actions, no matter the particular nature of the equitable interest in question.

14. As to this, I note that:

   a. in the *Svanstrom* case, legal title to the relevant shares was held by a nominee;

   b. in the *Maas* case, legal title to the relevant shares was held by a trustee;

   c. in the *Hooker* case, the plaintiffs were not beneficial owners of the shares but had contracted to purchase shares from a registered shareholder; and

   d. in the *Fulloon* case, equitable title was held as a result of unregistered share transfers.

4

15. In this regard it is worth setting out the relevant extract from *Svanstrom*, together with its context, in full (emphasis added):

> "*In three Australian cases there is support for the proposition that **only members whose names appear on the register of members of the company can bring a derivative action** seeking redress on behalf of the company. They are Maas v. McIntosh (8), Hooker Invs. Pty. Ltd. v. Email Ltd. (7) and Fulloon v. Radley (5). **It was contended that each of these cases on its facts could be distinguished from the case under consideration and this is indeed correct but that does not, in my view, weaken the support.***
>
> *In Maas v. McIntosh it would appear that the plaintiffs were registered shareholders in respect of 150 shares which had been transferred to them by order of the court. Their suit was in respect of dividends and shares registered in the names of trustees, two of whom were acting as directors of the company. The principal objection of the defendants on an application to strike out was that the statement of claim was not intelligible and that such remedies as were sought on behalf of the company were in relation to matters of internal management in regard to which the court had no jurisdiction. Harvey, C.J. in Eq. stated (28 S.R. (N.S.W.) at 446):*
>
>> *"It is quite true that in a suit by beneficiaries in which the company, and the shareholder trustees are parties, the Court may give effect to the rights of the beneficiaries and may protect their interests to prevent them being sacrificed, by the trustees and the company between them, **but under no circumstances can persons only beneficially interested in shares bring a suit on behalf of themselves and all other shareholders, because they are not themselves shareholders.**"*
>
> ***The statement may indeed be obiter. The application to strike out did not succeed. But it appears to me to be sound as a matter of principle.***
>
> *It was adopted and applied in Hooker Invs. Pty Ltd. v. Email Ltd. (7). That case is again on the facts distinguishable. The plaintiffs there were not beneficial owners of shares held in the name of a nominee. At the date of the suit they had contracted to purchase a large number of shares from a registered shareholder. Young, J. stated (10 A.C.L.R. at 445):*
>
>> *"Thus it seems that the better view is that the duty is a duty owed to the company, the company is normally the proper plaintiff, but in suitable circumstances the court will listen*

5

to proceedings brought in the name of a shareholder. However, with respect to this sort of duty it is clear that an equitable holder of shares is not permitted by the court to bring the action that the shareholder might bring. This was clearly decided by Harvey C.J. in Eq. in Maas & Anor v. McIntosh & ors...a decision, as far as I am aware, which has never been criticised on this point."

It does not seem logical to contend that the right of a person holding an equitable interest in shares should depend on the nature of the equitable interest and that the equitable interest of a person who has contracted to purchase is distinguishable from that of a shareholder who has opted to hold shares in the name of a nominee, so that in the one situation the equitable owner could file a derivative action and in the other situation he could not.

The position was carefully examined in Fulloon v. Radley (5). In that case the plaintiffs filed a derivative action based on their equitable title as trustees of shares held by the Fulloon Family Trust. They held these shares pursuant to certain unregistered share transfers referred to in notices of a general meeting of the company signed by Radley, one of two directors of the company. Again, the circumstances giving rise to the equitable interest are different from those in this case but the issue was decided on the basis that the plaintiffs did hold an equitable interest. Master White stated ([1992] 2 Qd. R. at 295):

> "There may arguably have been an allotment of shares by virtue of the matters pleaded in para. 7 of the amended statement of claim but no facts are pleaded which make the plaintiffs members of Datalog. The question is whether, as alleged, equitable owners of shares may maintain a derivative action against the company."

Master White quoted the statement from Pennington, Company Law already set out above and analysed the decisions cited as authority in support. He noted that Binney v. Ince Hall Coal & Cannel Co. (2) had been cited to Harvey, C.J. in Eq. in Maas v. McIntosh (8), who had held that in no circumstances could persons only beneficially interested in shares bring a suit on behalf of themselves and all other shareholders because they were not themselves shareholders. He noticed that that decision had been applied in Hooker Invs. Pty. Ltd. v. Email Ltd. (7). He concluded that the plaintiffs had no standing to sue as the alleged equitable owners of shares in Datalog. I am satisfied that the principle stated in these cases is correct.

6

16. The full context makes clear that *Svanstrom* does not support in any way the proposition for which Plaintiff has cited that decision.

E. *ZABUSKY v VIRGTEL*

17. Reference is made in Plaintiff's Memorandum to "*more recent decisions*" (plural) under Cayman Islands and English common law principles concerning these issues, but reference is then made only to *Zabusky*, which is a decision of the Supreme Court of Queensland, Australia dated 20 April 2012.

18. I am not qualified to practice Australian law and the scope of my First Declaration and this, my Second Declaration, is therefore restricted to matters of Cayman Islands law only.

19. As noted at [17] of my First Declaration, decisions of courts in other common law jurisdictions (such as Hong Kong or, in this case, Australia) are persuasive but not binding authority in the Cayman Islands. Were the issue of Plaintiff's standing to come before the Cayman Islands courts and the *Zabusky* decision cited, it would be taken into proper consideration (in the same way, for example, as the Court of Appeal gave due consideration to *Maas, Hooker* and *Fullon* in the *Svanstrom* decision).

20. My observations regarding the *Zabusky* decision are as follows:

    a. In Plaintiff's Memorandum, particular extracts of the *Zabusky* decision are cited to the effect that the operation of the rule (i.e. that beneficial owners lack standing to pursue derivative claims) may operate harshly or capriciously. However, so much was acknowledged and recognised by the Cayman Islands Court of Appeal itself in *Svanstrom* (as appears to have been acknowledged by the Queensland Court of Appeal in *Zabusky* at [41]). That did not, however, change the Court of Appeal's conclusion.

    b. Whilst the *Zabusky* decision may be persuasive it would not be binding on the Cayman Islands courts. By contrast the decisions in *Schultz* and *Svanstrom* would be binding at first instance, and highly persuasive at Court of Appeal level.

7

    c. It does not appear from my searches that Zabusky has been followed in Queensland, in Australia more widely, in England and Wales, or anywhere else in the common law world, in the circa 8 years since it was issued. To my knowledge, the *Zabusky* decision has not been brought to the attention of the Cayman Islands courts in any subsequent decision(s). It was not referred to, for example, in the 2019 Grand Court decision of *David Xiaoying Gao v China Biologic Products Holdings Incorporated* to which I refer at [30] of my First Declaration. The *Gao* decision post-dates *Zabusky* by some 7 years.

21. In light of the foregoing, it is my view that the Cayman Islands courts would follow the *Schultz* and *Svanstrom* decisions in precedence to the *Zabusky* decision.

## F. CONCLUDING REMARKS

22. In my First Declaration I concluded that it must now be considered settled as a matter of Cayman Islands law that a mere beneficial owner of shares ordinarily lacks standing to pursue legal or equitable claims in relation to the relevant shares. That conclusion remains unchanged.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is my honestly held opinion in relation to the matters on which I have been asked to opine.

                                                                          Katharine L. B. Pearson

Executed on 22 May 2020

8