**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.) <br><br> Plaintiff, <br><br> -against- <br><br> LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU, <br><br> Defendants, <br><br> -and- <br><br> LINK MOTION INC. (F/K/A NQ MOBILE INC.), <br><br> Nominal Defendant. | 1:18-cv-11642-VM-DCF |

**VINCENT WENYONG SHI'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISSOLVE THE**
**PRELIMINARY INJUNCTION AND DISCHARGE THE RECEIVER**

FELICELLO LAW P.C.
1140 Avenue of the Americas
9th Floor
New York, New York 10036
Tel. (212) 584-7806
*Attorneys for Defendant Vincent Wenyong Shi*

On the brief:   Michael James Maloney

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 3

PROCEDURAL HISTORY................................................................................................. 4

STATEMENT OF FACTS .................................................................................................. 7

    A.      Background......................................................................................................... 7

    B.      The Receiver's Allegations of Misconduct Lack any Basis in Law or Fact................ 11

    C.      The Receiver's Agent in the PRC Has Caused Damage to the Company ................... 13

ARGUMENT ...................................................................................................................... 16

I.           The Receiver Should Be Discharged ................................................................... 16

II.         The Preliminary Injunction Should Be Dissolved ............................................... 18

III.       The Court Should Return All Property, Rights and Claims to the Company and Its Board of Directors and Direct an Accounting ....................................................... 19

CONCLUSION ................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Chambers v. Time Warner, Inc*., No. 00 Civ. 2839 (JSR), 2003 U.S. Dist. LEXIS 3652 (S.D.N.Y. Mar. 10, 2003) ........................................................................................................................18

*Chi. Title & Tr. Co. v. Fox Theatres Corp*., 164 F. Supp. 665 (S.D.N.Y. 1958) ..............................17

*Fed. Sav. & Loan Ins. Corp. v. PSL Realty Co.*, 630 F.2d 515 (7th Cir. 1980) ....................18, 19, 20

*Hester Indus., Inc. v. Tyson Foods, Inc.*, 882 F. Supp. 276 (N.D.N.Y. 1995)...................................18

*Ramgoolie v. Ramgoolie*, 2017 WL 564680 (S.D.N.Y. Feb. 10, 2017)............................................16

*Ramgoolie v. Ramgoolie*, No. 16-CV-3345, 2016 WL 11281385 (S.D.N.Y. Dec. 20, 2016)...........16

*Roof v. Conway*, 133 F.2d 819 (6th Cir. 1943) ................................................................................20

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105 (2d Cir. 1997)........................................................................................................................6

*U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop LLC*, 859 F.Supp.2d 602 (S.D.N.Y. 2012)................16

*U.S. ex rel. Willoughby v. Howard*, 302 U.S. 445, 58 S. Ct. 309, 82 L. Ed. 352 (1938) ................20

*United States v. Bradley*, No. 4:05-cr-59, 2012 U.S. Dist. LEXIS 205081 (S.D. Ga. Feb. 9, 2012) ....................................................................................................................................19, 20, 21

*Varsames v. Palazzolo*, 96 F.Supp.2d 361 (S.D.N.Y. 2000) ...........................................................16

**Statutes**

28 U.S.C. § 959(a)..........................................................................................................................21

Defendant Vincent Wenyong Shi ("**Shi**"), by and through his undersigned counsel, hereby submits this memorandum of law in support of his motion (i) to discharge the Temporary Receiver; and (ii) to dissolve this Court's prior-issued preliminary injunction. Submitted herewith are the Declarations of Shi ("**Shi Decl.**") and Michael James Maloney, Esq. ("**Maloney Decl.**")

## PRELIMINARY STATEMENT

This motion raises the discrete issue of whether Robert W. Seiden ("**Seiden**"), the court-appointed receiver, should be discharged and the preliminary injunction dissolved.  The appointment of a receiver to take control of a public company is an extraordinary remedy available to protect the assets of a company when there is no adequate remedy at law. When Plaintiff Wayne Baliga ("**Plaintiff**" or "**Baliga**") applied for the receivership and preliminary injunction on December 14, 2018, he represented to the Court that he was suing derivatively as a shareholder of Link Motion Inc. f/k/a NQ Mobile Inc. ("**LKM**" or the "**Company**").  Plaintiff is not and has never been a shareholder of the Company and no longer acts derivatively on behalf of the Company because he has voluntarily dismissed all of his derivative claims. Plaintiff now seeks only money damages against the Company for legal claims.  There is now a direct conflict between Plaintiff and the receiver, who owes a fiduciary duty to the company.  The alleged misconduct alleged by Baliga, and on which the Court relied, has been refuted by admissible evidence submitted in litigation since the appointment of the receiver.  Moreover, the harm to the Company of a continuation of the receivership far outweighs any risk to Plaintiff because Seiden's agent in the People's Republic of China ("**PRC**") has caused, and will continue to cause, significant damage to the Company.

Finally, the preliminary injunction is improper because this is an action for money damages that lacks an adequate showing of likelihood of success on the merits, or irreparable harm, that would warrant a preliminary injunction.

## PROCEDURAL HISTORY

Baliga brought this action on December 13, 2018, (Dkt. No. 1), derivatively, on behalf of the Company against Defendants LKM, Shi, Jia Lian ("**Lian**") and Xiao Yu ("**Yu**").   Upon commencement of the action, Baliga sought a temporary restraining order, preliminary injunction, and temporary receiver. (Dkt. No. 94).  In support of his request, Baliga alleged that:

- Baliga was a shareholder of the Company having legal standing to sue derivatively on behalf of LKM;

- Shi, Lian, and Yu (collectively, the "**Individual Defendants**") grossly mismanaged LKM, breached fiduciary duties, and looted the company's assets in an attempt to exit the company;

- A preliminary injunction was needed to restrain and enjoin them from further dissipation of assets; and

- A temporary receiver was needed "to ensure the survival of the Company, including ensuring that LKM's employees are being paid and that LKM remedies its noncompliance with the New York Stock Exchange ("**NYSE**") in order to avoid being imminently delisted."

- The receiver is also needed "to ensure that the Individual Defendants no longer have authorization to represent the Company or transfer ownership of the Company's assets."

On December 14, 2018 the Court entered a temporary restraining order, and directed the parties to brief the issues of the preliminary injunction and receivership. (Dkt. No. 7).  On January 21, 2019, the parties (without the consent of the Board of Directors of the Company)[1] submitted a "stipulation of non-opposition to a preliminary injunction and consent order to extend time to answer, move, or otherwise respond to the complaint," whereby the parties stipulated that LKM did not oppose Baliga's request for a preliminary injunction and appointment of a temporary receiver. (Dkt. No. 22).  On January 24, 2019, Baliga submitted a reply affidavit in further support of a preliminary injunction and appointment of temporary receiver, (Dkt. No. 24), outlining alleged recent developments, and requesting that Seiden be appointed as the temporary receiver.  By Order dated

---

[1] *See* Maloney Decl. Ex. A, ¶¶ 12-16 (Dkt. No. 60).

December 1, 2019, (Dkt. No. 26), the Court issued a preliminary injunction and appointed Seiden as the Temporary Receiver.

On March 27, 2019, Shi moved to dissolve the preliminary injunction and to discharge the Receiver. (Dkt. No. 37).  He argued that (i) there is no evidence of consent by the Board to the appointment of a receiver and Baliga has not otherwise satisfied the standard for appointment of a receiver; and (ii) failing to discharge the receiver will destroy all remaining value in LKM.  On May 22, 2019, Shi submitted a reply memorandum of law in further support of his motion. (Dkt. No. 62).

 On June 11, 2019, the Court denied Shi's requests on the basis that "neither Link motion nor Shi ever opposed the motion leading to the Preliminary Injunction Order" and that Baliga's allegations remained "unrefuted." (Dkt. No. 64, at 21).  The Court stated that Baliga has provided evidence that (1) Link Motion has transferred substantial assets without notice to the Board; (2) Link Motion has failed to make required filings with the SEC; (3) employees have gone without pay; and (4) Shi has fired employees and ordered documents removed.  The Court also granted Shi's motion to dismiss the Complaint and directed Baliga to file an amended complaint.

Thereafter, Baliga filed his First Amended Shareholder Derivative Complaint, (Dkt. No. 68), alleging substantially the same facts and derivative claims.  On August 9, 2019, the parties submitted a "Joint Status Report," whereby Shi presented the question of whether the Receiver exceeded his authority by purporting to remove Shi from his office as a director of LKM. (Dkt. No. 90).  By letter dated March 27, 2020, (Dkt. No. 132), Shi set forth recent developments demonstrating that the receivership order was entered improperly.  Indeed, Baliga was never a shareholder of LKM with standing to sue derivatively.  At that time, Shi's counsel wrote to the court, (Dkt. No. 145), that he was continuing to investigate misconduct relating to the receivership.  He stated as follows:

> Since the receiver successfully obtained control over LKM, its Hong Kong subsidiary, and the WFOE [wholly foreign owned company] subsidiary, we have

received information suggesting that the receiver has shut down all business activities and terminated all employees.  We have also received information suggesting that the receiver and his agent, Mr. Guo Lilin, are refusing to pay judgments obtained by employees for unpaid wages.

*Id*.

By motion dated November 1, 2019, non-party China AI Capital Limited ("**China AI**") moved to intervene as of right in this action as a shareholder of LKM. (Dkt. No. 111).  In papers submitted in support of its motion, China AI argued that Plaintiff had falsely sworn to the Court that he was a shareholder of LKM. (Dkt. Nos. 123-1, 129).  Plaintiff, however, was only the holder of American Depositary Shares ("**ADSs**" and each individually an "**ADS**") and did not actually own any shares of the Company. (Dkt. Nos. 129, 131).  On March 26, 2020, China AI submitted a declaration from Katharine L. B. Pearson, a Cayman Islands attorney, who opined that holders of ADSs have no standing under Cayman Island law to sue derivatively on behalf of a Cayman Islands company. (Dkt. No. 131).

On May 4, 2020, Plaintiff submitted papers in opposition to China AI's motion, including a copy of a letter from the Receiver claiming that Shi stole $88 million from the subsidiaries operated by LKM in the PRC. (Dkt. No. 142-2).  By letter dated July 22, 2020, (Dkt. No. 159), Shi informed the Court that the Receiver's claims were false, setting forth in detail why these statements are false, and why the Receiver's letter should be stricken.

By Memorandum and Order dated September 4, 2020, (Dkt. No. 163), the Court reviewed the parties' submissions regarding Baliga's standing to sue derivatively and recognized that "because a federal court must satisfy itself that it has subject-matter jurisdiction over a case before it may act, it may consider the issue of standing *sua sponte* at any time." (Dkt. No. 163) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir. 1997)).  Because it was unclear whether Baliga was asserting derivative or direct

claims, or a combination of both, the Court directed Baliga to file a Second Amended Complaint, clarifying which of his claims are derivative, which are direct, and establishing a grounds sufficient to show that Plaintiff had standing to sue derivatively.

Plaintiff filed his Second Amended Complaint (the "**SAC**") on October 5, 2020. (Dkt. No. 166).  The SAC asserts only direct claims for violations of sections 10(b) and 20 of the Securities and Exchange Act of 1934, re-appointment of the receiver, unjust enrichment, fraud and negligent misrepresentation.  In a status conference held on October 15, 2020, counsel for Baliga confirmed that he was asserting only derivative claims in the SAC.

**STATEMENT OF FACTS**

**A.     Background**

The Company is organized under the laws of the Cayman Islands.[2]  In accordance therewith, the shareholders' identities are maintained on a Cayman Islands register.[3] Only shareholders identified on the register of shareholders have standing to sue derivatively on behalf of the Company. The Company operates as a "Variable Interest Entity" ("**VIE**"), whereby its wholly owned subsidiary in the PRC has by contract (the "**Control Documents**") control over and rights to the economic benefits of operating companies located in the PRC.[4]  The Company does not own and has never owned shares of the operating companies in the PRC.[5]  The VIE structure exists to permit foreign owned companies to obtain control over and rights to economic benefits of technology companies operating in the PRC that by PRC law may not be owned by non-PRC persons.[6]

---

[2] *See* Maloney Decl. Ex. B, at 2, 10, 53 (Dkt. No. 130-2); Maloney Decl. Ex. B (Dkt. No. 130-3).
[3] *See* Shi Decl. Ex. B, ¶¶ 22 (Dkt. No. 131).
[4] *See* Maloney Decl. Ex. B, at 2, 10, 48, 53 (Dkt. No. 130-2).
[5] *See* Maloney Decl. Ex. G, at p.97-98,224-25,227-33.
[6] *See* Maloney Decl. Ex. G, at p.97-98,224-25,227-33.

In 2011, the Company made an initial public offering of ADSs on the New York Stock Exchange ("**NYSE**").[7] ADS holders are not registered shareholders.[8] Upon its initial public offering in 2011, the Company disclosed this fact in its Form F-1:  "[w]e will not treat ADS holders as our shareholders and accordingly, you, as an ADS holder, will not have shareholder rights. Cayman Islands law governs shareholder rights."[9] Instead, each ADS represents rights and interests to five shares of common stock held in trust by a depositary.[10] Only the depositary is listed as a registered shareholder. *See* Shi Decl. Ex. A (Dkt. No. 130-1).

On December 13, 2018, Baliga filed his Verified Shareholder Complaint. Maloney Decl. Ex. C (Dkt. No. 1).  He alleged that he "is currently and has at all material times of this Action been a shareholder." Maloney Decl. Ex. C, ¶ 4 (Dkt. No. 1).  He purported to bring the action derivatively, in the right and for the benefit of the Company.  Maloney Decl. Ex. C, ¶ 32 (Dkt. No. 1).  He filed his complaint by and through his counsel, the Seiden Group.[11]  Baliga's allegations were false because he is not a registered shareholder and lacks standing to sue derivatively on behalf of the Company; rather he merely holds ADSs.[12]

On December 14, 2018, Baliga sought an order (i) preliminarily enjoining the Company and the individual defendants from taking certain corporate actions; and (ii) appointing Seiden as Receiver (Seiden is the managing director of the law firm representing Baliga).[13]  On January 24, 2019, Baliga filed an affidavit in support of his application for the preliminary injunction and the

---

[7] *See generally* Maloney Decl. Ex. B (Dkt. No. 130-2).
[8] *See* Maloney Decl. Ex. B, at 141.
[9] *See* Maloney Decl. Ex. B, at 141.
[10] *See* Maloney Decl. Ex. B, at 141.
[11] *See* Maloney Decl. Ex. C.
[12] *See* Shi Decl. Exs. A, B, C; Maloney Decl. Ex B, at 141.
[13] Dkt. No. 7.

appointment of Seiden.[14]   He stated therein, "I am fully familiar with the facts and circumstances surrounding this action."[15]   Baliga referred to himself as a "shareholder."[16]   Baliga further stated that "this Court should appoint Robert W. Seiden . . . as the temporary receiver over the Company. I specifically hired Mr. Seiden's law firm to pursue this action for me. . . ."[17]   Baliga failed to disclose to the Court that he was not a registered shareholder of the Company.

Without the consent of the Board of Directors of the Company ("**Board**"), the law firm of DLA Piper LLP (US) appeared on behalf of the Company and signed a consent to the preliminary injunction and appointment of a receiver. Maloney Decl. Ex. A, ¶¶ 12, 16 (Dkt. No. 60).  The Board did not have an adequate opportunity to oppose Baliga's application. (*Id.*)

On February 1, 2019, the Court entered an Order granting the preliminary injunction and appointing Seiden as receiver.[18]   The provisions of the February 1, 2019 Order were drafted by Baliga's counsel.  In that order, the Court preliminarily enjoined the Company and the individual defendants from entering into certain transactions relating to assets of the Company.[19]   The Court further enjoined the Company and the individual defendant to take certain "corrective" action.[20]   The February 1, 2019 Order also appointed the receiver and granted to him the power to take possession of the Company's assets and to "assume full control of the Company by removing . . . any director, officer, employee, independent contractor, or agent of the Company. . . ."[21]   The February 1, 2019 Order also granted the receiver the authority to appoint directors and officers for the Company.

---

[14] *See* Maloney Decl. Ex. D (Dkt. No. 24).
[15] Maloney Decl. Ex. D, ¶ 1 (Dkt. No. 24).
[16] Maloney Decl. Ex. D, ¶ 1 (Dkt. No. 24).
[17] Maloney Decl. Ex. D, ¶ 3 (Dkt. No. 24).
[18] Maloney Decl. Ex. E (Dkt. No. 26) (the "February 1, 2019 Order").
[19] Maloney Decl. Ex. E, ¶ 1 (Dkt. No. 26).
[20] Maloney Decl. Ex. E, ¶ 2 (Dkt. No. 26).
[21] Maloney Decl. Ex. E, ¶ 2.b (Dkt. No. 26).

These portions of the order were drafted by Baliga's counsel in connection with his application to the Court for the appointment of Seiden.

On March 14, 2019, the Receiver moved for an order of contempt against Shi. (Dkt. No. 29). Shi opposed the motion and moved to dismiss the Verified Shareholder Complaint on various grounds. (Dkt. Nos. 35-37).  Shi, in his capacity as a duly appointed director of the Company, also attempted to make arguments on behalf of the Company regarding lack of personal jurisdiction and discharge of the Receiver.  In a June 11, 2019 Decision & Order, the Court denied the application for contempt and granted in part Shi's motion to dismiss.[22]  The Court, however, denied Shi's arguments made on behalf of the Company.

Contemporaneously, the Receiver took possession of cash and other assets belonging to the Company.  In a Form 6-K filed with the Securities and Exchange Commission (the "**S.E.C.**") on March 26, 2019, the Receiver stated that he had removed Shi as Chairman and Chief Executive Officer, and appointed Mr. Lilin "Francis" Guo ("**Guo**") as his replacement, subject to the laws of the Cayman Islands." Maloney Decl. Ex F.  By Order dated June 20, 2019, the Court approved a request by the Receiver to approve a "compensation incentive agreement and promissory note" between the Company and Guo. (Dkt. No. 71).  At or around the same time, the receiver appointed Guo as the director and attorney-in-fact of the Company's PRC "wholly foreign owned entity," Beijing Technology.  None of the foregoing corporate actions were approved by the Board at any duly noticed meeting.  But for the appointment of the receiver pursuant to the February 1, 2019 Order, the foregoing actions would have ordinarily required the consent of the Board.  The Receiver has also charged fees for his "services" and retained Guo and other "professionals," all at the expense of the Company. (Dkt. Nos. 54, 59).

---

[22] Maloney Decl. Ex. F (Dkt. No. 64).

**B.      The Receiver's Allegations of Misconduct Lack any Basis in Law or Fact**

In arguing for the appointment of the receiver and the preliminary injunction, Baliga relied on allegations in the Verified Shareholder Derivative Complaint and First Amended Shareholder Derivative Complaint regarding alleged transfers of the Company's interests in the "FL Mobile," "Showself," "SyberOS" and "Rideshare" operating companies in the PRC.  Baliga alleged that Shi wrongfully transferred shares of "FL Mobile," "Showself," "SyberOS" and "Rideshare" operating companies to himself.  These allegations are without any basis in law or fact because, as fully disclosed in the Company's filings with the S.E.C., the Company never owned any shares of these companies to begin with.[23]  In accordance with the VIE structure, the Company only owned interest in these entities through Control Documents giving the Company the contractual right to control and receive the economic benefits from those businesses.[24]  The shareholders of "FL Mobile," "Showself," "SyberOS" and "Rideshare" held their shares merely as nominees for the benefit of the Company.

Although Baliga had alleged in his Verified Shareholder Derivative Complaint that Shi had wrongfully transferred LKM's interests in "SyberOS" and "Rideshare," Baliga  failed to allege any unlawful conduct with respect to those interests in his Second Amended Complaint filed on October 5, 2020.[25]

In opposition to the motion by China AI Limited ("**China AI**") to intervene, Baliga asserted new allegations that Shi and China AI had conspired to secrete assets of the Company through a payment to a bank in Luxembourg.  Baliga relied entirely on conclusions reached by the Receiver based on his so-called "investigation."   Yet the investigation was wholly deficient, and the

---

[23] *See* Maloney Decl. Ex. B, at p.9-10,29-31,53-56, Ex. G, at p.97-98,224-25,227-33.
[24] *See id*.
[25] *See* Second Amended Complaint.

conclusions were meritless.  In or around June and July 2016, the Company became obligated to repurchase its 4.00% Convertible Senior Notes due October 15, 2018 (the "**Notes**").[26]  This fact was disclosed in the Company's 20-F annual report.[27]  The Company was obligated to repurchase these notes in United States Dollars, but most of LKM's cash reserves were held in Chinese Renminbi ("**RMB**").[28]

Due to the PRC's severe restrictions governing conversion of RMB denominated funds into foreign currencies (*e.g.*, the U.S. Dollar), the Company entered into loan agreements with the Luxembourg branch of China Merchants Bank Ltd. ("**China Merchants Bank**"), which required the Company to pledge its RMB cash to the Beijing branch of China Merchants Bank as security for loans from the Luxembourg branch denominated in U.S. Dollars for the purpose of repurchasing the Notes.  The loan agreements with China Merchants Bank specifically mention repurchase of the Notes and required that the Company repay these loans to the Luxembourg branch on or before July 31, 2018.[29]  Once repaid, the Beijing branch returned to the Company the RMB cash pledged for the loan.  China AI has produced copies of these loan documents and accounting vouchers evidencing the disbursement of loan proceeds and repayment in full in July 2018.[30]  Although these payments were nothing more than a commonplace international loan transaction for the purpose of obtaining foreign currency necessary to satisfy corporate obligations, Baliga (and the Receiver) incorrectly paint this transaction as suspicious, without any documentary support.

---

[26] *See* Maloney Decl. Ex. G, ¶¶ 35, 48.
[27] *See* Maloney Decl. Ex. G, ¶ 38.
[28] *See* Maloney Decl. Ex. G, ¶ 38.
[29] *See* Shi Decl. Ex. F, § 2; Shi Decl. Ex G.
[30] *See* Shi Decl. Ex. F; Shi Decl. Ex. G; Shi Decl. Ex. H; Shi Decl. Ex. I.

C.      **The Receiver's Agent in the PRC Has Caused Damage to the Company**

Beginning in 2019, the Receiver, through his agent, Guo, began to shut down the operations of the Company in the PRC.[31]   These actions resulted in judgments being entered against the Company in favor of former employees seeking wages.   At the time Seiden took control over the Company's accounts, the Company had available to it cash balances in excess of $1 million.[32]   Instead of paying these judgments, Guo appealed them without any basis in law or fact.[33]   Predictably, the judgments have now been affirmed.[34]

These harms to the Company are wholly attributable to the Receiver, who retained Guo to act on his behalf in the PRC.   Since March 2019, Guo has been the only Chairman and legal representative of the Company's PRC operating companies.[35]   As such, only Guo, and no one else, can act legally on behalf of those entities.   It was, therefore, Guo's decision wrongfully to appeal the judgments, which led to the predictable denial by the appeals court.   Guo and the Receiver have had access to the Company's other bank accounts and social media accounts for some time[36] and, therefore, could have paid the Company's former employees.   Indeed, they have been paying themselves from Company funds instead of the former employees.[37]   For the reasons stated below, it is imperative that the Court remove the Receiver and permit the Board to resume control of the Company.

---

[31] *See* Maloney Decl. Ex. H, ¶¶ 49-68, 74-75.

[32] *See* Shi Decl., ¶ 26.

[33] *See* Maloney Decl. Ex. H, ¶¶ 63-67 (Dkt. No. 155); Maloney Decl. Ex. I (Dkt. No. 155-16); Maloney Decl. Ex. J (Dkt. No. 155-17); Maloney Decl. Ex. K (Dkt. No. 155-18); Maloney Decl. Ex. L (Dkt. No. 155-19).

[34] *See* Maloney Decl. Ex. I (Dkt. No. 155-16); Maloney Decl. Ex. J (Dkt. No. 155-17); Maloney Decl. Ex. K (Dkt. No. 155-18); Maloney Decl. Ex. L (Dkt. No. 155-19).

[35] *See* Maloney Decl. Ex. H, ¶¶ 63-67 (Dkt. No. 155); Maloney Decl. Ex. I (Dkt. No. 155-16); Maloney Decl. Ex. J (Dkt. No. 155-17); Maloney Decl. Ex. K (Dkt. No. 155-18); Maloney Decl. Ex. L (Dkt. No. 155-19).

[36] *See* Maloney Decl. Ex. H, ¶¶ 58-60 (Dkt. No. 155); *see, e.g.*, Dkt. Nos. 78 (July 1, 2019 order authorizing Receiver to disburse funds for expenses), 97 (September 19, 2019 order authorizing Receiver to disburse funds for expenses), 100 (September 25, 2019 order directing Google to submit funds to the Receiver).

[37] *See id.*

### D.      The Grounds for the Receivership Are Now Refuted in Fact

The key grounds upon which Baliga sought appointment of the receiver are as follows:

<u>First</u>, *Baliga alleged that he had standing to sue derivatively and request the appointment of a receiver on behalf of the Company. See Maloney Decl. Ex. C, ¶¶ 4, 32-35 (Dkt. No. 1) and Mem. of Law (Dkt. No. 94).*

In response, Shi maintains that Plaintiff's allegations as to his legal standing to sue derivatively were false because Plaintiff was never a shareholder of the Company. *See* Shi Decl. Ex. B (Dkt. No. 131) *and* Shi Decl. Ex. C (Dkt. No. 154).

<u>Second</u>, *Baliga alleged wrongful transfers of legacy business units of the Company (i.e., SyberOS, Rideshare and Showself. See Maloney Decl. Ex. M, ¶¶ 3, 4 (Dkt. No. 92) and Mem. of Law (Dkt. No. 94); see generally Maloney Decl. Ex. C.*

In response, Shi maintains that the Company never owned shares of these entities.  The transfers were duly authorized by the Board in connection with the Company's 2015 plan to divest its legacy assets and the transferees held shares of these entities merely as nominees subject to the rights of the Company in accordance with the VIE structure. *See generally* Mem. of Law (Dkt. No. 37); Reply Mem. of Law, ¶¶ 33-43 (Dkt. No. 62); Proposed Compl. in Intervention (Dkt. No. 124); *see also* 2015 Form 20-F, at F-8 filed with S.E.C.[38]; 2016 Form 20-F, at 39-40 filed with S.E.C.[39]. In his SAC, Baliga waived all claims with respect to SyberOS and Rideshare by failing to assert any claims concerning those assets.  Further, Shi submits that Baliga's allegations fail as a matter of law because he does not allege that any of the Company's rights under the Control Documents were transferred, terminated, or otherwise impaired by the transactions that occurred in connection with the Company's 2015 divestiture plan.  Shi has submitted S.E.C. filings demonstrating that the

---

[38] *https://www.sec.gov/Archives/edgar/data/1509986/000119312516532382/d158137d20f.htm.*

[39] *https://www.sec.gov/Archives/edgar/data/1509986/000119312517137511/d346488d20f.htm.*

Company has never owned any shares of these operating companies and, in fact, it would be against PRC law for the Company to own such shares.

Shi has further submitted sworn statements and records demonstrating that his role in connection with the transfers was as nominee for the benefit of the Company and personal guarantor of the Company's obligations in connection with the sale of FL Mobile and Showself to Tongfang Investment Fund Series SPC ("**Tongfang**").[40] In April 2019 Tongfang commenced an arbitration against the Company and Shi to rescind these divestitures (the "**Tongfang Arbitration**").[41] Although the Receiver has alleged that he intervened in this arbitration on behalf of the Company, it appears that this statement is untrue and the arbitrator granted Tongfang's request for recission without opposition, meaning that these business units will now be legally returned to the Company.[42]

> *Third, Baliga alleged that Shi conspired to use Company funds to finance China AI's 2018 purchase of shares of the Company. (See Mem. of Law in Opp'n to Mot. to intervene, at 8-9 (Dkt. No. 141)*

In response, Shi maintains that China AI submitted evidence refuting Plaintiff's claims. *See* Maloney Decl. Ex. H, ¶¶ 6-27 (Dkt. No. 155). The funds that Baliga references were Company funds used to repay a legitimate corporate loan obligation. *See* Maloney Decl. Ex. H, ¶¶ 35-48 (Dkt. No. 155)).

> *Fourth, Baliga alleged that Shi stole $88 million from the Company's PRC subsidiaries (see July 17, 2020 letter from Receiver and exhibits thereto (Dkt No. 161)).*

In response, Shi maintains that these payments referenced by the Receiver in his July 17, 2020 letter were payments made for the legitimate corporate purpose of repaying a corporate loan obligation. *See* Shi Decl. Exs. J, K, L, M (Dkt. Nos. 159, 159-1, 159-2, 159-3).

---

[40] *See* Shi Decl., at ¶¶ 9-12; Shi Decl. Exs. D, E.
[41] *See* Shi Decl., at ¶¶ 33-34; Shi Decl. Ex. N.
[42] *See* Shi Decl. Ex. N.

**ARGUMENT**

**I.     The Receiver Should Be Discharged**

"Appointment of a receiver is a 'drastic remedy usually imposed only where no lesser relief will be effective." *Ramgoolie v. Ramgoolie*, No. 16-CV-3345, 2016 WL 11281385, at *7 (S.D.N.Y. Dec. 20, 2016), adopted by *Ramgoolie v. Ramgoolie*, 2017 WL 564680 (S.D.N.Y. Feb. 10, 2017); *see Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000).  The following factors are considered in determining whether to appoint a receiver:

> [f]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Id*. (quoting *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop LLC*, 859 F. Supp. 2d 602, 610 (S.D.N.Y. 2012)).

The record demonstrates that all of these factors now weigh strongly in favor of discharge of the receiver.  Baliga and Seiden never disclosed to the Court that Link Motion is organized as a Variable Interest Entity ("**VIE**") and never owned any of the shares of FL Mobile, Showself, SyberOS or Rideshare that were allegedly transferred.  Plaintiff failed to disclose to the Court that (i) the Company pursuant to PRC law cannot legally own any shares of the operating companies in the PRC that Plaintiff alleges were improperly transferred, and (ii) that the Company's Control Documents respecting those operating companies were unaffected by the alleged transfers.  It is the Company's interests in the Control Documents, not the actual shares of the operating companies, that comprise the Company's real assets in the PRC.  Plaintiff has not alleged in any of his pleadings that any of the alleged transfers impaired or deprived the Company's interests in the Control Documents.  If Seiden, as receiver, took action to transfer shares of FL Mobile or Showself to the

16

Company, the Company's operations would be deemed illegal under PRC law[43] and thereby destroy the remaining value in the Company.  Accordingly, the Court should discharge the Receiver so as to prevent Link Motion from becoming illegal under PRC law.

It is now abundantly clear that Plaintiff's legal remedies are far more adequate than the equitable remedy of receivership.  Plaintiff lacks any standing to sue derivatively on behalf of the Company. And Plaintiff's SAC seeks damages of at most approximately $634,112.47.[44]  In contrast, the misconduct of the Receiver's agent, Mr. "Francis" Guo Lilin, has resulted in liabilities of the Company in excess of ¥1,083,286.[45]

Baliga sought this receivership without the knowledge and consent of the Board, without disclosing to the Court that he lacked standing to act derivatively, and for the express purpose of taking control of, and replacing, the existing Board.  In an affidavit submitted to the Hong Kong court, the Receiver's Cayman counsel, Rebecca Hume, stated that "[t]he Plaintiff [*i.e.*, the receiver] has consulted with me about the possibility of using the powers conferred upon him under the US Order to effect changes in the composition of Link Motion's board of directors." Maloney Decl. Ex. N, ¶ 5 (Dkt. No. 36-3). Under these circumstances, the Court has the inherent power to vacate the receivership order, dissolve the receivership, and direct an accounting of the Receiver's actions. *Chi. Title & Tr. Co. v. Fox Theatres Corp.*, 164 F. Supp. 665, 669 (S.D.N.Y. 1958) ("This is basically not a retention of jurisdiction over the equity receivership per se but the exercise of a power inherent in the court in any event to ferret out and rectify frauds committed upon it. The court cannot be foreclosed from exercising such power by lapse of time, laches, estoppel or technicalities.").

---

[43] Maloney Ex. G, at pp.80-81.

[44] As set forth more fully in Shi's accompanying motion to dismiss the Second Amended Complaint, Plaintiff is unlikely to succeed on any of his new claims.

[45] *See* Maloney Decl. Ex. I (Dkt. No. 155-16); Maloney Decl. Ex. J (Dkt. No. 155-17); Maloney Decl. Ex. K (Dkt. No. 155-18); Maloney Decl. Ex. L (Dkt. No. 155-19).

Plaintiff has no likelihood of success whatsoever on his derivative claims because he has now voluntarily dismissed all such claims. *See Chambers v. Time Warner, Inc*., No. 00 Civ. 2839 (JSR), 2003 U.S. Dist. LEXIS 3652, at *5 (S.D.N.Y. Mar. 10, 2003) ("[A] Rule 15(a) amendment eliminating a claim is the same as a Rule 41(a) voluntary dismissal of the claim.").

Moreover, at the time this Court appointed the Receiver, this Court lacked jurisdiction to do so because Plaintiff lacked standing to request such relief derivatively on behalf of LKM. (*See* Shi Decl. Exs. B, C).  Without proper jurisdiction at the time it was entered, the receivership order is *void ab initio*. *Fed. Sav. & Loan Ins. Corp. v. PSL Realty Co.*, 630 F.2d 515, 521 (7th Cir. 1980) ("[W]here, as here, the court lacks jurisdiction to adjudicate the principal matter, its orders purporting to grant the ancillary relief of temporary receivership are likewise beyond its jurisdiction and as such are void ab initio." (internal citations omitted)).

## II.      The Preliminary Injunction Should Be Dissolved

"In order to obtain a preliminary injunction in the Second Circuit the movant must make a showing of: (1) irreparable harm; and either (2) likelihood of success on the merits; or (3) sufficiently serious questions going to the merits to make them a fair ground for litigation; and (4) a balance of hardships tipping decidedly in favor of the movant."  *Hester Indus., Inc. v. Tyson Foods, Inc.*, 882 F. Supp. 276, 277 (N.D.N.Y. 1995) (citation omitted).  In making its determination the court must keep in mind that the issuance of a preliminary injunction is an extraordinary equitable remedy which should not be granted absent a clear showing that the moving party has met its burden of proof.  *See id.* (citation omitted).  "The Second Circuit has noted that the finding of irreparable harm is perhaps the single most important factor necessary to the proper issuance of a preliminary injunction.  *See id.* ("Irreparable harm is defined as an injury for which a monetary award cannot be adequate compensation.") (citation omitted).  "The party seeking preliminary injunctive relief must

show more than a mere possibility of irreparable harm, but rather it must show that such irreparable harm is likely if injunctive relief is denied." *Id.* (citation omitted).

In the instant matter, the preliminary injunction must be dissolved because it does not meet this standard.  First, Baliga does not have a likelihood of success on the merits on any derivative claim, because he lacked standing to bring such claims and has now voluntarily dismissed all derivative claims.  Without proper jurisdiction at the time it was entered, the issuance of ancillary equitable relief is *void ab initio*. *Fed. Sav. & Loan Ins. Corp.*, 630 F.2d at 521 ("[W]here, as here, the court lacks jurisdiction to adjudicate the principal matter, its orders purporting to grant the ancillary relief of temporary receivership are likewise beyond its jurisdiction and as such are void ab initio." (internal citations omitted)).

In any event, Plaintiff fails to allege any harm to the Company's interest in the Control Documents, the only interests the Company ever had in FL Mobile and Showself.  Thus, there is no risk of irreparable harm.  Even if his claims had merit, they could be adequately compensated by way of money damages.  Finally, the balance of hardships weighs heavily in favor of the Company and its Board of Directors *status quo ante*.  The preliminary injunction prevents the Board of Directors from exercising their right and duty to manage the affairs of the Company whereas, the potential harm to Baliga, *i.e.*, the prospect of an uncollectable judgment, is minimal.

**III.    The Court Should Return All Property, Rights and Claims to the Company and Its Board of Directors and Direct an Accounting**

Upon the dissolution of a receivership, the party under receivership is entitled to the return of property held by the receiver. *United States v. Bradley*, No. 4:05-cr-59, 2012 U.S. Dist. LEXIS 205081, at *9 (S.D. Ga. Feb. 9, 2012) ("Defendants are entitled to the return of their property in a condition that indicates the property received reasonable care and supervision").

As is evident from the Receiver's filings with the Court, he has taken possession of and control over accounts and other assets of the Company, including by way of recognition before the courts of the Cayman Islands and Hong Kong. (*See* Maloney Decl. Exs. O, P). As such, these properties and assets remain property of the Court until otherwise ordered by the Court. *See Fed. Sav. & Loan Ins. Corp.*, 630 F.2d at 521 ("[U]nless the receiver has made a disposition of the property by order of the court to the original owner or to another party, upon the receiver's discharge the property remains in the custody of the court."). Moreover, as a general principal of receivership, "[a]ll rights of action of a corporation in receivership remain in the custody of the court, until administration has been completed and the receivership terminated." *Roof v. Conway*, 133 F.2d 819, 823 (6th Cir. 1943).

For the reasons stated above, the Court should direct the Receiver to return to the Board of Directors (as it existed *status quo ante*) all property and assets now in the possession, control or custody of the Receiver. The Court should further direct the Receiver to (i) take all steps necessary to discharge and remove Mr. Guo "Francis" Lilin as director and legal representative of the Company's subsidiaries and VIE operating companies; (iii) take all steps necessary to lift any and all injunctions entered in other jurisdictions (e.g., Hong Kong);[46] and (iii) discontinue all powers of the Receiver pursuant to the recognition orders of the courts in the Cayman Island and Hong Kong.

Finally, the Court should direct the Receiver to account for all actions of the receivership. "By the common law every trustee or receiver of an estate has the duty of exercising reasonable care in the custody of the fiduciary estate. . . ." *Bradley*, 2012 U.S. Dist. LEXIS 205081, at *9 (quoting *U.S. ex rel. Willoughby v. Howard*, 302 U.S. 445, 450 (1938), 58 S. Ct. 309, 82 L. Ed. 352)). Accordingly, "[t]o the extent that the Receiver . . . breached [his duty of reasonable care and

---

[46] *See* Maloney Decl. Ex. Q (Dkt. No. 36-14).

20

supervision, Defendants' proper course of action lies against [him]. *See* 28 U.S.C. § 959(a)." *Bradley*, 2012 U.S. Dist. LEXIS 205081, at *9.

## CONCLUSION

For the foregoing reasons, the Court should enter an Order (i) dissolving the preliminary injunction in all respects; (ii) discharging the Receiver; (iii) directing the Receiver to take all actions and execute all instruments necessary to return the Board of Directors to the *status quo ante* before the appointment of the receiver; (iv) directing the Receiver to take all actions and execute all instruments necessary to return to the Board of Directors all rights to legal claims and control over the Company and its assets; (v) directing the Receiver to account for all actions taken and monies received in connection with the receivership; and (vi) dissolving the receivership.

Respectfully submitted,

/s/ Michael James Maloney
Michael James Maloney, Esq.
FELICELLO LAW P.C.
1140 Avenue of the Americas
9th Floor
New York, New York 10036
Tel. (212) 584-7806
mmaloney@felicellolaw.com
*Attorneys for Defendant Vincent Wenyong Shi*