IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BALIGA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>LINK MOTION INC. (f/k/a/ NQ MOBILE INC.), VINCENT WENYONG SHI, ROLAND WU, and ZEMIN XU,<br><br>　　　　　　Defendants. | No. 1:18-cv-11642-VM-DCF<br><br>The Honorable Victor Marrero<br>Magistrate Judge Debra C. Freeman |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
RECEIVER TO EFFECTUATE CONVERSION OF PLAINTIFF'S ADR**

In his Opposition, Defendant Vincent Wenyong Shi ("Shi") admits the Deposit Agreement is a contractual agreement between Link Motion Inc. (the "Company") and Deutsche Bank Trust Company Americas ("Deutsche Bank"). (Dkt. 206 ("Opp."), at 4.) Shi further admits that the Deposit Agreement was created for the primary purpose of creating a public market for the Company's equity securities. (*Id.*, at 5.) Both Deutsche Bank and the Receiver, on behalf of the Company, have indicated that converting Baliga's shares is simply "an 'administrative' act that the Receiver has the authority to carry out on behalf of the Company." (Dkt. 204 ("Resp."), at 2.) Plaintiff Wayne Baliga ("Baliga"), under the terms of the Deposit Agreement, is a beneficial owner of the shares held at Deutsche Bank with an absolute right to convert these shares. (Dkt. 207-1, at §§ 1.7, 2.6.) All of the interested parties, then, concur on what the appropriate outcome would be.

Nonetheless, Shi—who is not a party to the Deposit Agreement—raises two meritless arguments in opposition. First, rather than addressing the merits of a simple motion asking the Court to order the Receiver to take an administrative action it has acknowledged it would take for any other individual, Shi drafted a primer on Rule 23.1. Simply put, the question of whether Baliga—or any other plaintiffs—will have standing to bring a derivative action in a future Third

Amended Complaint is not before the Court today. Second, Shi advances the truly absurd position that, under Section 2.7(b) of the Deposit Agreement, a shareholder vote is required each and every time an ADR holder wishes to convert their shares. This position is not only contrary to the plain text of Section 2.7 of the Deposit Agreement, but also is contrary to "Instruction I.A.(1) of the General Instructions to Form F-6 Registration Statement" which is incorporated in Section 2.7 by way of Section 7.10. Neither of these provisions support Shi's request to require a shareholder vote.

## I.  SHI'S RULE 23.1 ANALYSIS HAS NO BEARING ON THIS MOTION.

Baliga's Motion for Receiver to Effectuate Conversion of Plaintiff's ADR ("Motion") raises one simple issue—does Baliga have the right to convert his ADR to common shares. If the Court finds that he does, then Baliga asks the Court to direct the Receiver to undertake this purely administrative act. This is, of course, the first step in the Parties' agreed upon schedule. (*See* Dkt. 197.) The Parties agreed that they would first brief the question of whether Baliga can convert his shares and, once that issue is resolved, Plaintiff could file a motion for leave to file a third amended complaint. (*Id.*) Given the limited scope of the Motion, the Parties agreed to a briefing schedule in which the entire issue would be addressed in less than 10 days. *Id.*

There is nothing in the Deposit Agreement which suggests that a conversion of ADRs requires an invocation of Rule 23.1; instead, it appears that Shi is unveiling his argument that Baliga's motion for leave to amend would be futile prior to Baliga's motion being filed. This Court should defer consideration of this argument until such time as it has a motion for leave and proposed Third Amended Complaint before it.

In the interest of allaying Shi's concerns that Baliga will be unable to bring derivative claims in the Third Amended Complaint, Baliga notes that the Second Circuit has long held that

beneficial ownership of shares is sufficient to establish standing to bring a derivative action under Rule 23.1. *Drachman v. Harvey*, 453 F.2d 722, 727 (2d Cir. 1971) (holding that beneficial shareholders have standing under Rule 23.1 to pursue a derivative action). Baliga, as an ADR holder, is a beneficial holder of the shares held by Deutsche Bank and, as such, has standing to bring a derivative action under U.S. law. Shi's argument fails under U.S. law.

Moreover, under Cayman Island law, a registered shareholder can bring as derivative claims any claim which the Company could bring itself. There is no contemporaneous ownership requirement. Once Baliga has converted his shares, he will have standing to bring all of the derivative claims previously plead in this action. Shi's argument fails, again, under Cayman Island law.

What Shi attempts to do in his opposition, however, is mix apples and oranges. Shi wants to pick and choose the most restrictive portions of U.S. law and of Cayman Island law to find some combination that bars Baliga's claims. The fact is, Baliga's claims would be viable under either U.S. law or Cayman Island law. The argument that under the combined application of U.S. law and Cayman Island law they would be barred is non-sensical.

Regardless, in addition to bringing the derivative claims under his own name, Baliga also intends to add another named plaintiff in his Third Amended Complaint who is—and has been—a registered shareholder.

Shi can rest assured that Baliga is prepared to address his concerns regarding standing under Rule 23.1 at the appropriate time, which is when Baliga files a motion for leave to file the Third Amended Complaint.

## II.     SHI'S READING OF SECTION 2.7 HAS NO BASIS IN FACT OR LAW.

Despite spending nine pages responding to a four-page motion, at no point did Shi provide

a complete quote of Section 2.7(b) of the Deposit Agreement upon which he rests his only substantive argument in opposition. This is likely because the actual text of the provision does not suggest that shareholders have a right to vote on any proposed conversion of ADRs to common shares.[1] Instead, the relevant text of Section 2.7(b) simply provides "the registration of transfers of receipts *may* be suspended":

> (b) <u>Additional Limitations</u>. The issuance of ADSs against deposits of Shares generally or against deposits of particular Shares *may* be suspended, or the issuance of ADSs against the deposit of particular Shares *may* be withheld, or the registration of transfer of Receipts in particular instances *may* be refused, or the registration of transfers of Receipts generally *may* be suspended, during any period when the transfer books of the Depositary are closed or if any such action is deemed necessary or advisable by the Depositary or the Company, in good faith, at any time or from time to time because of any requirement of law, any government or governmental body or commission or any securities exchange on which the Receipts or Shares are listed, or under any provision of this Deposit Agreement or provisions of, or governing, the Deposited Securities, or any meeting of shareholders of the Company or for any other reason, subject, in all cases, to Section 7.10 hereof.

(Dkt. 207-1, at § 2.7(b) (emphasis added).)

Nothing in Section 2.7(b) provides for a shareholder vote anytime a holder of ADRs seeks to transfer those ADRs. (*Id.*) Instead, it provides that Deutsche Bank or the Company *may* suspend the issuance of ADSs or the registration of ADR transfers. (*Id.*) Section 2.7(b) then goes on to list a variety of reasons for which Deutsche Bank or the Company might suspend the registration of ADR transfers. (*Id.*) Those reasons include "requirement[s] of law" and "provisions of this Deposit Agreement." (*Id.*) The list also mentions "any meeting of shareholders of the Company." (*Id.*) But neither Deutsche Bank nor the Company has, in fact, suspended transfer or registration of the shares.

---

[1] It is worth noting that the interpretation proposed by Shi is the height of absurdity. Under Shi's proposed interpretation, the "proper" outcome would be that every transfer of ADRs in the over the counter markets over the course of the past two years would require a shareholder vote.

Moreover, Section 2.7(b) is "subject, in all cases, to Section 7.10" which provides that:

> SECTION 7.10 Compliance with U.S. Securities Laws. Notwithstanding anything in this Deposit Agreement to the contrary, the withdrawal or Delivery of Deposited Securities will not be suspended by the Company or the Depositary except as would be permitted by Instruction I.A.(1) of the General Instructions to Form F-6 Registration Statement, as amended from time to time, under the Securities Act.

(Dkt. 207-1, at § 7.10.)

Thus, pursuant to the plain language of the Deposit Agreement, Section 2.7(b) is limited by Instruction I.A.(1) of the General Instructions to Form F-6 Registration Statement, which provides:

> ***The holder of the ADRs is entitled to withdraw the deposited securities at any time*** subject only to (i) temporary delays caused by closing transfer books of the depositary or the issuer of the deposited securities or the deposit of shares in connection with voting at a shareholders' meeting, or the payment of dividends, (ii) the payment of fees, taxes, and similar charges, and (iii) compliance with any laws or governmental regulations relating to ADRs or to the withdrawal of deposited securities;

(SEC Form F-6, *available at* https://www.sec.gov/files/formf-6.pdf (emphasis added).) Instruction I.A.(1) is clear, "The holder of ADRs is entitled to withdraw the deposited securities at any time." (*Id.*) Although Deutsche Bank and the Company could, pursuant to Section 2.7(b) and Instruction I.A.(1), temporarily delay Baliga's withdrawal of common shares "by closing transfer books of the depositary or the issuer of the deposited securities or the deposit of shares in connection with voting at a shareholders' meeting or the payment of dividends," that provision only allows Deutsche Bank or the Company to freeze the roles of registered shareholders temporarily in advance of a shareholder meeting. Section 2.7(b) does not, however, allow for freezing an ADR holder's right to acquire common shares for years for no justifiable reason, nor does it allow Shi to request a shareholder meeting for every such transaction.

## CONCLUSION

Pursuant to the Deposit Agreement—and the securities laws upon which it is based —

Baliga has an absolute right to convert his ADRs to common shares. While Shi tries to muddy the issues in this Motion by raising premature standing issues, those arguments are entirely irrelevant to the question presented in Baliga's motion and should be disregarded at this stage in this action.[2] For the reasons laid out herein and in the Motion, Baliga requests this Court order the Receiver to perform those actions necessary to effectuate Baliga's conversion of his ADRs to the common shares.

**WAYNE BALIGA**

Dated: December 24, 2020        By: */s/ Toby S. Soli*
                                    Attorney for Plaintiff

                                Toby S. Soli
                                MetLife Building
                                200 Park Avenue
                                New York, New York 10166
                                Telephone: (212) 801-9200
                                Email:  solit@gtlaw.com
                                *Counsel for Plaintiff*

---

[2] *See supra*, at 3.

## **CERTIFICATE OF SERVICE**

      I, Toby S. Soli, an attorney, certify that I electronically filed Plaintiff's Reply in Support of Motion for Receiver to Effectuate Conversion of Plaintiff's ADR with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record on this 24 day of December, 2020.

                                          */s/ Toby S. Soli*
                                          Attorney for Plaintiff