# FELICELLO

Michael James Maloney[*]
Partner

Felicello Law P.C.
1140 Avenue of the Americas
9th Floor
New York, NY 10036

Tel. +1 (646) 564-3510
mmaloney@felicellolaw.com

January 18, 2021

VIA ECF

Hon. Magistrate Judge Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *Baliga, et al. v. Link Motion Inc., et al.*, Case No. 1:18-cv-11642-VM-DCF (S.D.N.Y.); Opposition to December 18, 2020 request by Robert W. Seiden (the "Receiver") to authorize termination of Subscription Agreement with China AI Capital Limited ("China AI")

Dear Judge Freeman:

This firm represents Vincent Wenyong Shi ("Mr. Shi") in the above-referenced action ("Action"). In his capacity as director of Link Motion Inc. ("LKM"), Mr. Shi opposes the above-referenced letter motion by the Receiver (Dkt. Nos. 205),[1] in which the Receiver requests the Court's authorization to terminate a Subscription Agreement, dated July 19, 2018 (as amended on September 19, 2018, the "Subscription Agreement") between LKM and China AI. The Receiver's request should be denied for the following reasons.

### A. China AI Is Not in Default; Rather, LKM Failed to Satisfy the Conditions Precedent

In his letter of December 18, 2020, the Receiver states that "China AI was obligated to pay US$10 million as an initial payment and US$10 million by September 19, 2018" and that "China AI has been in default under the Subscription Agreement" because China AI did not make the second payment of US$10 million contemplated in the Subscription Agreement. (Dkt. No. 205, at 1). This statement is patently false based on the plain text of the Subscription Agreement itself and the papers on file with the Securities and Exchange Commission ("SEC").

---

[1] *See also* Dkt. No. 194.

There is no dispute that China AI satisfied its obligation to make the initial payment of US$10 million. With respect to the second payment of US$10 million, Section 2(d) of the Subscription Agreement sets forth 11 conditions precedent to the triggering of any obligation by China AI to make the second payment, including among others the condition that "the Issuer shall have prepared and filed with the Securities and Exchange Commission (the "SEC"), its annual report on Form 20-F for the year ended December 31, 2017. . . ." (*See* Dkt. No. 205-1, § 2(d)(iii)). It is indisputable that LKM was unable to and did not file with the SEC its annual report for the year ending December 31, 2017.[2] Therefore, China AI was *not at any time* obligated to make the second payment of US$10 million.

Because LKM failed to satisfy the conditions precedent necessary to trigger China AI's obligation to make the second payment of US$10 million, LKM and China AI entered into a First Amendment to Subscription Agreement, dated September 19, 2018 (the "Amendment").[3] Among other things, the Amendment states "the Issuer has notified Investor that it is not able to comply with the closing conditions set forth in Sections 2d(ii) and 2d(iii) of the Subscription Agreement (the "Subject Provisions") as of September 19, 2018 and, as a result, Investor is not required to consummate the Closing on or before the Closing Date." The Amendment extended LKM's time to satisfy – but did not waive – the conditions precedent to the second payment by China AI.

### B. The Subscription Agreement Constitutes a Valuable Corporate Opportunity that Should be Preserved

Despite LKM's inability to satisfy the conditions precedent within the time provided in the Amendment, LKM and China AI subsequently agreed in principle to further extend LKM's time to satisfy the conditions precedent.[4] Thus, the Subscription Agreement remains a valid and enforceable agreement providing to LKM the right to receive a payment from China AI of US$10 million upon satisfaction of the conditions precedent and, therefore, represents a corporate opportunity of substantial value to LKM.

The Court should, therefore, deny the Receiver's request as contrary to the best interests of LKM and the fundamental purpose of a receivership. Receiverships exist for the purpose of "preserv[ing] and protect[ing] the property pending [a] final disposition." *Gordon v. Washington*, 295 U.S. 30, 37, 55 S. Ct. 584, 588 (1935). A receiver appointed by a federal court holds property in trust and, therefore, has a duty to return the property upon the termination of the receivership. *See*, *e.g.*, *United States v. Bradley*, No. 4:05-cr-59, 2012 U.S. Dist. LEXIS 205081, at *9 (S.D. Ga. Feb. 9, 2012) ("Defendants are entitled to the return of their property in a condition that indicates the property received reasonable care and supervision"). Termination of the Subscription Agreement now would destroy a valuable corporate opportunity and preclude the return of that property upon conclusion of the receivership.

---

[2] *See* Search Results for Link Motion Inc. CIK# 0001509986, *available at* https://www.sec.gov/cgi-bin/browse-edgar?CIK=1509986
[3] *See* Exhibit A, annexed hereto.
[4] *See* ECF Dkt No. 172-2, at p.1.

Hon. Debra Freeman
January 18, 2021
Page 3 of 3

      The Receiver's argument that "China AI is reaping the benefits of owning these shares without having paid for them" by "exerting its rights and privileges as majority shareholder of Link Motion," (Dkt. No. 205, at p.1), is entirely without merit. While China AI remains a major shareholder of LKM, its status as shareholder gives rise to *no* influence over the management of LKM during the receivership. *See, e.g., SEC v. McGinn*, No. 10-CV-457 (GLS/DRH), 2012 U.S. Dist. LEXIS 47639, at *26 (N.D.N.Y. Apr. 4, 2012) ("Thus, while Geoffrey Smith remains the Trustee of the Trust as an entity, control and management over all assets of the Trust have been removed to the Receiver.")

      The Receiver's claim that he initiated termination of the Subscription Agreement "[s]eeking to recover the US$10 million that China AI owes to the Company," (Dkt. 205, at p.2), is demonstrably meritless. It is LKM, not China AI, that failed to satisfy the conditions precedent set forth in the Subscription Agreement. A receiver has "no greater rights or powers than the corporation itself would have." *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25 (1st Cir. 1990)). Accordingly, the Receiver has no grounds whatsoever to allege that China AI is in default of the Subscription Agreement or is obligated to make the second payment of US$10 million at this time.

      For the foregoing reasons, the Receiver's request should be denied.

                                  Respectfully submitted,

                                  */s/ Michael James Maloney*

                                  Michael James Maloney

cc:    All counsel of record (via ECF)