**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.) <br><br> Plaintiff, <br> -against- <br><br> LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU, <br><br> Defendants, <br> -and- <br><br> LINK MOTION INC. (F/K/A NQ MOBILE INC.), <br><br> Nominal Defendant. | Civil Action No.: 1:18-cv-11642 <br><br><br> DECLARATION OF KATHARINE L. B. PEARSON |

KATHARINE L. B. PEARSON declares, pursuant to 28 U.S.C. 1746, as follows:

A. <u>MY QUALIFICATIONS AND RELATIONSHIP WITH THE PARTIES</u>

1. My name is Katharine Lucy Bladen Pearson and my work address is care of Harney Westwood & Riegels (*Harneys*), 3rd Floor, Harbour Place, 103 South Church Street, George Town, Grand Cayman in the Cayman Islands.

2. I am a partner of Harneys, a law firm, and a member of its litigation, insolvency and restructuring practice in the Cayman Islands.

3. I obtained a Masters Degree from the University of Oxford in England in 2001. I obtained what is known as a "Double First" meaning that I was awarded First Class Honours (the highest grade) in both my final examinations and my mid-course examinations. I was also awarded a number of prizes by both my college and the university.

4. I then attended law school in London and completed my legal training with Freshfields Bruckhaus Deringer, one of the so-called "Magic Circle" of elite London firms. I qualified as a solicitor of the Supreme Court of England and Wales in 2006.

1

**Exhibit H**

5. I moved to the Cayman Islands in 2009 and was called to the Cayman Islands Bar in that year. I am admitted to practice as a Cayman Islands Attorney at Law.

6. Since 2009, I have practised exclusively in the Cayman Islands and have focused my practice on cross-border commercial litigation cases which are heard in the Financial Services Division of the Grand Court of the Cayman Islands. I regularly appear as advocate before the Cayman Islands courts. In particular I am often asked to advise in relation to shareholder disputes regarding listed and non-listed companies, and have appeared in a number of the leading cases in this area.

7. A copy of my curriculum vitae appears at the Appendix to this declaration and a copy of my web bio appears at https://www.harneys.com/people/katie-pearson/.

8. Harneys is an international law firm that practices the laws of the Cayman Islands and various other jurisdictions. I practice the laws of the Cayman Islands exclusively. Harneys practices complex commercial and insolvency litigation with a focus on international and cross border disputes. Harneys is one of the leading litigation firms in the Cayman Islands and its litigation team currently comprises six partners and over 15 fee earners.

9. I understand the parties to the First Amended Shareholder Derivative Complaint in the United States District Court for the Southern District of New York (18 Civ. 11642 (VM)) (*New York Proceedings*) are:

    a. Mr Wayne Baliga, (purportedly) acting derivatively on behalf of Link Motion Inc (formerly known as NQ Mobile Inc and referred to herein as the *Company*) as *Plaintiff*; and

    b. Mr Vincent Wenyong Shi, Mr Jia Lian, Mr Xiao Yu and the Company as *Defendants* (the Company as nominal defendant).

10. The Company is a limited company organized and existing under the laws of the Cayman Islands.

11. I am engaged on behalf of China AI Capital Limited. I understand that China AI Capital Limited as *Intervenor Plaintiff* has moved for leave to file a Complaint in Intervention against the following *Third Party Defendants*: Mr Baliga in his capacity as purported representative of

2

shareholders of the Company, LKMForward (an unincorporated association), Mr Henry Lin, Mr Matthew Mathison, Mr Omar Khan and John Does 1 through 100. I understand that China AI Capital is the registered shareholder of 70,175,439 Class B common shares in the Company.

B. **THE SCOPE OF THIS OPINION**

12. I am instructed to express my opinion on the issue of whether Mr Baliga has *locus standi*, as a matter of Cayman Islands law, to bring a claim derivatively on behalf of the Company.

13. For the purposes of preparing this opinion, I have been provided with and had regard to the following documents only:

    a. In connection with the Company:

        i. the Form F-1 Registration Statement filed by the Company with the SEC in and around 2011 (***Form F-1 Statement***).

        ii. Shareholder Register for the Company as at 22 October 2018 (***Register of Members***).

        iii. Sixth Amended and Restated Memorandum and Articles of Association of the Company (***Articles***).

    b. In connection with the New York Proceedings:

        i. Verified Shareholder Derivative Complaint dated 31 December 2018.

        ii. Affidavit of Mr Baliga in opposition to Mr Shi's motion to dismiss the New York Proceedings, sworn and filed on 26 April 2019.

        iii. First Amended Shareholder Derivative Complaint dated 20 June 2019 (***Amended Complaint***).

        iv. Complaint in Intervention referred to at paragraph 11 above.

C. **AN OVERVIEW OF THE LAWS OF THE CAYMAN ISLANDS**

14. The legal system in the Cayman Islands is based on the English legal system. The specific sources of Cayman Islands law include, relevantly for the purposes of this opinion, local statutes enacted by the Legislative Assembly of the Cayman Islands (including the Companies Law (2020 Revision) to which I refer in this opinion), and the common law. The term "common

3

law" in this context refers to the body of law that has developed over time through the decisions of the courts. I will refer to the decisions of courts extensively in this opinion. English statutes also apply in the Cayman Islands if specifically extended by either the English or the Cayman legislature.

15. The Grand Court of the Cayman Islands is the superior court of record of first instance in the Cayman Islands. The Grand Court is a court of both common law and equity. The Court of Appeal of the Cayman Islands hears appeals from the Grand Court. The Judicial Committee of the Privy Council, which sits in London, England, hears appeals from the Cayman Islands Court of Appeal and is the highest appellate court in the Cayman Islands legal system.

16. The judges appointed to the Privy Council are usually justices of the English Supreme Court. The presiding judge of the Cayman Islands Court of Appeal is usually a judge or retired judge from the English Court of Appeal. The judges of the Grand Court are usually appointed from the courts of other commonwealth legal systems, are retired senior members of the local legal profession or are barristers practicing in England.

17. The doctrine of judicial precedent applies in the Cayman Islands as it applies in England. Privy Council decisions on appeal from the Cayman Islands are binding on the Cayman Islands Court of Appeal and the Grand Court, and decisions of the Cayman Islands Court of Appeal are binding on the Grand Court. While previous decisions of the Grand Court are not binding on the Grand Court, they are generally followed unless the Grand Court is convinced that they are wrong. Decisions of courts in other common law jurisdictions (such as Australia and Hong Kong) are persuasive but not binding authority in the Cayman Islands.

18. Because the Cayman Islands is, relatively speaking, a smaller jurisdiction with a less well developed body of judicial decisions than many other jurisdictions, and because Cayman Islands law is founded on English law, the courts of the Cayman Islands invariably have regard to the decisions of the senior courts of England, namely the Supreme Court (and its predecessor, the House of Lords) and the Court of Appeal, unless the position under Cayman Islands law is obviously different because of local legislation or where local circumstances make it inappropriate to develop a field of common law in a manner similar to England. The

decisions of these higher English courts, while not strictly binding on the courts of the Cayman Islands, are of highly persuasive authority[1].

## D. WHETHER MR BALIGA HAS *LOCUS STANDI* AS A MATTER OF CAYMAN ISLANDS LAW TO BRING A CLAIM DERIVATIVELY ON BEHALF OF THE COMPANY

### *Derivative Claims under Cayman Islands law*

19. The Cayman Islands courts recognize the general principle, established in the 19th Century English case of *Foss v Harbottle*[2], that where a wrong has been done to a company, *prima facie* the only proper plaintiff is the company itself and that an action by a shareholder claiming relief for the company is not available. The plaintiff may only bring a derivative action if it falls within the exceptions to the rule in *Foss v Harbottle*.

20. In *Schultz v Reynolds and Newport Limited*[3], the Cayman Islands Court of Appeal recited with approval the English authorities concerning the rule in *Foss v Harbottle* as follows (emphasis added):

> In *Edwards v. Halliwell*[4] the rule in Foss v. Harbottle was considered. Jenkins, L.J. stated ([1950] 2 All E.R. at 1067):
>
> > "*The cases falling within the general ambit of the rule are subject to certain exceptions.* It has been noted in the course of argument that in cases where the act complained of is wholly ultra vires the company or association the rule has no application because there is no question of the transaction being confirmed by any majority. *It has been further pointed out that where what has been done amounts to what is generally called in these cases a fraud on the minority and the wrongdoers are themselves in charge of the company, the rule is relaxed in favour of the aggrieved minority who are allowed to bring what is known as a minority shareholders' action on behalf of themselves and all others. The reason for this is that, if they were denied that right, their grievance could never reach the court because the wrongdoers*

---

[1] In A. Woods (as Administrator of the Estate of NE Woods, deceased) v Francis [1986-87 CILR 207], the Cayman Islands Court of Appeal described decisions of the English House of Lords (now the Supreme Court) as "*certainly of much persuasive authority*". In Miller v R [1998 CILR 161], the Cayman Islands Court of Appeal explained that "*A decision of the English Court of Appeal, while not formally binding upon this court automatically, is necessarily one of great persuasive authority, especially where it is unanimous and is directed towards a doctrine of the common law*".

[2] (1843), 2 Hare 461; 67 E.R.
[3] [1992-93] CILR 59
[4] [1950] 2 All E.R. 1064

5

> *themselves, being in control, would not allow the company to sue. Those exceptions are not directly in point in this case, but they show, especially the last one, that the rule is not an inflexible rule and it will be relaxed where necessary in the interests of justice.*"

In Prudential Assur. Co. Ltd. v. Newman Indus. Ltd. (No. 2)[5] the court, comprising Cumming-Bruce, Templeman and Brightman, L.JJ. stated ([1982] 1 All E.R. at 357–358):

> "The classic definition of the rule in Foss v. Harbottle is stated in the judgment of Jenkins, L.J. in Edwards v. Halliwell [1950] 2 All E.R. 1064 at 1066–1067 as follows. (1) *The proper plaintiff in an action in respect of a wrong alleged to be done to a corporation is, prima facie, the corporation*. (2) Where the alleged wrong is a transaction which might be made binding on the corporation and on all its members by a simple majority of the members, no individual member of the corporation is allowed to maintain an action in respect of the matter because, if the majority confirms the transaction, cadit quaestio; or, if the majority challenges the transaction, there is no valid reason why the company should not sue. (3) There is no room for the operation of the rule if the alleged wrong is ultra vires the corporation, because the majority of members cannot confirm the transaction. (4) There is also no room for the operation of the rule if the transaction complained of could be validly done or sanctioned only by a special resolution or the like, because a simple majority cannot confirm a transaction which requires the concurrence of a greater majority. (5) *There is an exception to the rule where what has been done amounts to fraud and the wrongdoers are themselves in control of the company. In this case the rule is relaxed in favour of the aggrieved minority, who are allowed to bring a minority shareholders' action on behalf of themselves and all others. The reason for this is that, if they were denied that right, their grievance could never reach the court because the wrongdoers themselves, being in control, would not allow the company to sue.*"

In Wallersteiner v. Moir (No. 2) Lord Denning, M.R. stated ([1975] 1 All E.R. at 858):

> "To avoid that circuity, Lord Hatherley, L.C. held that the minority shareholders themselves could bring an action in their own names (but in truth on behalf of the company) against the wrongdoing directors for the damage done by them to the company, provided always that it was impossible to get the company itself to sue them. He ordered the fraudulent directors in that case to repay the sums to the company, be it noted, with interest. His decision was emphatically approved by this

---

[5] [1982] 1 All E.R.

6

> *court in Menier v. Hoopers' Telegraph Works; and Mason v. Harris. The form of the action is always 'AB (a minority shareholder) on behalf of himself and all other shareholders of the Company' against the wrongdoing directors and the company. That form of action was said by Lord Davey to be a 'mere matter of procedure in order to give a remedy for a wrong which would otherwise escape redress'; see Burland v. Earle.*
>
> *Stripped of mere procedure, the principle is that, where the wrongdoers themselves control the company, an action can be brought on behalf of the company by the minority shareholders, on the footing that they are its representatives, to obtain redress on its behalf. I am glad to find this principle well stated by Professor Gower in his book on companies in words which I would gratefully adopt:*
>
>> *'Where such an action is allowed the member is not really suing on his own behalf nor on behalf of the members generally, but on behalf of the company itself. Although . . . he will have to frame his action as a representative one on behalf of himself and all the members other than the wrongdoers, this gives a misleading impression of what really occurs. The plaintiff shareholder is not acting as a representative of the other shareholders but as a representative of the company . . . in the United States . . . this type of action has been given the distinctive name of a "derivative action," recognising that its true nature is that the individual member sues on behalf of the company to enforce rights derived from it.' "*

21. In a subsequent decision of the Cayman Islands Court of Appeal, *Svanstrom and Nine Others v Jonasson*[6] it was noted with approval, and by reference to *Foss v Harbottle*, *Edwards v Halliwell* and *Prudential Assur. Co. Ltd. v. Newman Indus. Ltd. (No. 2))*, that both sides were agreed as to the relevant principles concerning derivative actions. The issue in *Svanstrom* was whether the beneficial holder of the shares, whose name did not appear on the company's register of shareholders, could exercise the right to sue on behalf of the company in the circumstances set out at numbered paragraph 5 of the passage from *Prudential* set out (and highlighted) above.

---

[6] [1997 CILR 192]

### *Who may bring a derivative claim on behalf of the Company?*

22. Section 38 of the Companies Law (2020 Revision) provides:

    **"Definition of Member**

    *The subscribers of the memorandum of association of any company shall be deemed to have agreed to become members of the company whose memorandum they have subscribed, and upon the registration of the company shall be entered as members on the register of members hereinafter mentioned, <u>and every other person who has agreed to become a member of a company and whose name is entered on the register of members</u>, shall be deemed to be a member of the company."*

23. On its terms, therefore, there are two requirements for a person to become a member of a company incorporated in the Cayman Islands: *first*, the person must have agreed to become a member; and *secondly*, the person's name must be entered on the company's register of members.

24. By statutory definition, therefore, a member means a registered member[7].

25. In *Eclairs Group Ltd* v *JKX Oil & Gas plc*[8] Lord Justice Briggs sitting in the Court of Appeal of England and Wales stated that *"Companies are, in general, both entitled and obliged to deal only with those who are registered as having the legal ownership of their shares. Companies are, in general, entitled to decline to deal with mere beneficial owners."*

26. That principle also applies in the Cayman Islands. Two Court of Appeal decisions addressing the issue of standing are especially relevant: *Schultz* and *Svanstrom*.

27. In *Schultz*, shares in the relevant company (*"Newport"*) were held by a nominee company (*"CMS"*) under the terms of a nominee agreement. Zacca, P held[9]: *"The Companies Law (Revised) recognizes only members who are registered. The appellant has no voting rights and as a beneficial owner of the shares has no rights under the Law... In my view it is only CMS, the registered shareholder of Newport Ltd., who can institute an action against Newport Ltd. The appellant, as a beneficial owner of the shares, is not entitled to bring a derivative action against Newport Ltd."*

---

[7] See further *David Xiaoying Gao v China Biologic Products Holdings Incorporated* [2018 (2) CILR 591] at [55]. See further also paragraphs 36 and 37 below in relation to the Articles.
[8] [2014] EWCA Civ 640
[9] At p.69

8

28. In *Svanstrom*, the respondent brought a derivative action on behalf of himself and other shareholders. An application was brought to strike out the action on grounds, *inter alia*, that the respondent did not, as at the date of the commencement of the action, have *locus standi* to bring the action. At first instance, the Judge held that one of the Court of Appeal judges in *Schultz*, Georges J.A., had stated that a minority shareholder could bring a derivative claim by joining registered shareholders as defendants if they refused to take action themselves. On appeal, however, Georges J.A. himself stated that he did not accept that that was the effect of his earlier judgment.

29. Instead, the Court of Appeal unanimously held that no *locus standi* exists for beneficial owners to pursue shareholder claims. Georges J.A., giving the leading judgment, stated (emphasis added)[10]:

> "Gower's Principles of Modern Company Law, 4th ed., at 652-653 (1979) states:
>
>> "(v) The right to bring a derivative action is afforded the individual member as a matter of grace. Hence the conduct of a shareholder may be regarded by a court of equity as disqualifying him from appearing as plaintiff on the company's behalf. This will be the case, for example, if he participated in the wrong of which he complains. But the mere fact that the plaintiff was not a member at the time of the wrong will not bar him from bringing the action, for he is enforcing the company's rights, not his own, and without his intervention a wrong to the company might go unremedied. But he must be a shareholder of record at the time when he brings the action."
>
> This formulation rests on the principle clearly stated by the Court of Appeal in In re Perkins, ex p. Mexican Sta. Barbara Mining Co11. ... **that no doubt should be cast on the principle that companies are under no obligation to recognize any trust which may exist in relation to its shares. The relationship between a trustee whose name appears on the register of shareholders of a company and the beneficial owner of the shares is purely a matter for contractual arrangement between them.** This can be structured in such a way that the trustee or nominee can always be compelled to act on the instructions of the cestuis que trust or beneficial owner in matters concerning the filing of derivative actions to protect the company from damage inflicted by a majority in circumstances in which such an action may be filed.

---

[10] At p.203
[11] (1890) QBD 613

9

> *Where such arrangements do not exist it may well be the case that hardships may appear to arise because the beneficiary is unable to compel the nominee to transfer the shares to him or to induce him to file an action to remedy the alleged wrong. The temptation is strong to introduce what has been described as 'flexibility' in the application of exceptions to the rule in Foss v. Harbottle ... by permitting a beneficiary to file when his name does not appear on the register of members. Permitting this would, in my view, weaken the fundamental principle of non-recognition by the company of trusts affecting its share."*

30. In *David Xiaoying Gao v China Biologic Products Holdings Incorporated*[12], a case concerning an allegedly improper issuance of shares, the Grand Court was required to consider the extent to which it is possible for a beneficial owner of shares to enforce rights attaching to those shares in the modern context of a listed company with shares held by a depositary. Kawaley J, having considered what he described as the *"array of authorities before the court in support of the at first blush incontrovertible submission that the plaintiff as beneficial owner had no right to sue the company for breach of fiduciary duty"* (which authorities included Section 38 of the Companies Law, *Eclairs*, *Schultz* and *Svanstrom*) held that *"the preponderance of relevant authority clearly pointed to the conclusion that a beneficial owner of shares ordinarily lacks standing to pursue legal or equitable claims in relation to the relevant shares."*

31. In referring to two additional Cayman authorities concerning this issue, Kawaley J stated further:

> *"The suggestion by Mr. Meeson, Q.C. that an equitable shareholder ought in principle to be permitted to advance an equitable claim must accordingly be rejected. The Svanstrom case cannot properly be distinguished on the grounds that the claim in question was being brought as a derivative one.* ***The principle is clearly one of general application.*** *This is confirmed by the first instance decision of this court in Hannoun v. R Ltd (Henderson, J.)*[13]*; a just and equitable winding-up petition presented by a beneficial owner was struck out on standing grounds. More authoritatively still, in the context of winding-up proceedings, Martin, J.A. in In re Lancelot*[14] *opined as follows: "There is no doubt that in ordinary circumstances the rights attaching to shares may only be pursued by the registered shareholder."*

---

[12] [2018 (2) CILR 591]
[13] [2009 CILR 124]
[14] (2015 (1) CILR 328) at [17]

10

32. In the light of the authorities it must now be considered settled as a matter of Cayman Islands law that a mere beneficial owner of shares ordinarily lacks standing to pursue legal or equitable claims in relation to the relevant shares.

**The Register of Members and Articles**

33. There is no requirement for Cayman Islands exempted companies that do not hold a license to carry on business in the Cayman Islands under any applicable law, to keep their Register of Members open for public inspection.[15] I have been provided with a copy of the Company's Register of Members dated 22 October 2018 but have been unable to obtain a later version[16].

34. Mr Baliga's name does not appear on the Register of Members. Accordingly I do not consider that he would be deemed, as a matter of Cayman Islands law, to have been a member of the Company as at 22 October 2018.

35. I note that Deutsche Bank Trust Company Americas is listed on the Register of Members as the owner of 88.50% of the Class A Common Shares in issue. I understand from paragraphs 28-32 of the Complaint in Intervention and the Form F-1 Statement that Mr Baliga may instead hold American Depositary Shares (**ADSs**) that are intended to represent Class A Common Shares of the Company.

36. I note that the Articles provide (Article 25): *"No person shall be recognised by the Company as holding any share upon any trust and the Company shall not be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future, or partial interest in any share, or any interest in any fractional part of a share, or (except only as is otherwise provided by these Articles or the Statutes) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder."*

37. In my opinion, this so-called 'Non-Recognition of Trusts' Article reflects, as a matter of contract between the Company and its registered shareholders, the principles espoused by the authorities to which I refer above (e.g. *In re Perkins, ex p. Mexican Sta. Barbara Mining*, cited with approval in *Svanstrom*). To the extent that Mr Baliga's ADS holdings may amount to an equitable, contingent, future, or partial interest in any of the Company's shares, the Company is not bound by such interest nor is it compelled in any way to recognise such interest.

---

[15] Section 44 of the Companies Law (2020 Revision).
[16] Searches of the Cayman Online Registry Information System (known as **CORIS**) dated 12 February 2020 and 2 March 2020 reveal that the Company's Registered Office has resigned.

11

38. It is therefore my opinion that Mr Baliga does not have standing under Cayman Islands law to pursue a derivative action on behalf of the Company.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is my honestly held opinion in relation to the matters on which I have been asked to opine.

*K Pearson*

Katharine L. B. Pearson

Executed on 3 March 2020

**Appendix**

**Curriculum Vitae of Katharine L. B. Pearson**

# KATHARINE LUCY BLADEN PEARSON

**PROFESSIONAL EXPERIENCE**

**SEPTEMBER 2016 TO DATE**
**PARTNER (FROM 1 JANUARY 2019)/ SENIOR ASSOCIATE**
**HARNEYS, CAYMAN ISLANDS**

I am a partner in Harneys' Cayman Islands litigation and insolvency team. Current and recent cases include:

- *In the Matter of WeRide Inc* – acting for minority shareholders in a Cayman company developing self driving cars for the Chinese market, who allege that they have been wrongfully excluded from the Company and their shares wrongfully diluted. We made an application for a Norwich Pharmacal order in November 2019 which was settled by consent; and subsequently issued a winding up petition in January 2020. The winding up proceedings are ongoing.
- *Arcelormittal USA v Essar Steel* – obtained a Norwich Pharmacal order to obtain information for use in cross border litigation to enforce a US$1.5 billion arbitral award.
- *In the Matter of Trina Solar Limited* – acting for a Cayman Islands company, formerly listed in the US, with operations in China, in proceedings to determine the fair value of its shares under Section 238 of the Companies Law. Trial took place in May-June 2019 and judgment is awaited.
- *In the Matter of JA Solar Limited* – acting for a Cayman Islands company, formerly listed in the US, in proceedings to determine the fair value of its shares under Section 238 of the Companies Law.
- *Carlos Magno v Trident Trust Company (Cayman) Limited* – obtained a Norwich Pharmacal order in July 2019 to assist a Brazilian bankruptcy trustee in proving title to debtor's assets.
- *In the Matter of Global Cord Blood Corporation* – acted for a Cayman Islands company, listed in the US, in proceedings brought by minority shareholders with the aim of preventing a proposed merger proceeding.
- *In re Oi S.A.* – acting for Brazilian telecommunications giant, Oi S.A. on an application for an injunction to prevent a Cayman fund controlled by Aurelius Capital Management from interfering in its Brazilian judicial reorganization proceedings.
- *Abdulmagid Breish v Libyan Investment Authority and others* – applied for the appointment of receivers over property of the Libyan Investment Authority in the Cayman Islands.
- *Gerald Metals* – acted on an application to determine the status of proceedings under the Confidential Information Disclosure Law. I also advised on options for the enforcement of an arbitral award in Cayman.
- *In the Matter of Natural Dairy (NZ) Holdings Limited* – acting for the petitioning shareholder and subsequently for the provisional liquidators in relation to the restructuring of a Hong Kong Stock Exchange listed company. I appeared as advocate on a number of heavily-contested Court hearings.
- *In the Matter of Bangkok Land (Cayman Islands) Limited* –acting for the Company in

defending a winding-up Petition. I was able to negotiate the dismissal of the Petition and the payment of our client's costs on the indemnity basis.
- Advising an entrepreneur on a potential application for just and equitable winding up as a remedy for his exclusion from the management of a joint venture with Warburg Pincus.

I am the Director of Harneys' Articled Clerk Training Programme and the Partner with responsibility for our Legal Internship and Legal Scholarship Programmes.

I am a member of INSOL (International Association of Restructuring, Insolvency and Bankruptcy Professionals), IWIRC (International Women's Insolvency & Restructuring Confederation), and sit on the education committee of RISA (Recovery and Insolvency Specialists Association, Cayman).

I have published articles in publications including Global Restructuring Review, International Financial Law Review, the Hedge Fund Journal, Mondaq, Commercial Dispute Resolution and Asian Legal Business and authored the Cayman Islands chapter in Dispute Resolution Review.

I am regularly asked to speak on matters relevant to my practice, and have recently spoken at seminars for CILPA (Cayman Islands Legal Practitioners Association), 100 Women in Finance and IWIRC.

**SEPTEMBER 2009 TO JANUARY 2014**
**ASSOCIATE/ SENIOR ASSOCIATE**
**APPLEBY (CAYMAN) LIMITED**

Notable cases included:

- *In re Freerider Ltd:* acting for the Dutch inventor of a self-propelling wheel in relation to a dispute with his former business partner. We successfully applied for their jointly-owned Cayman company to be wound up on the just and equitable ground. I appeared with Leading Counsel on the trial and appeal and as advocate on a number of hearings in the liquidation including sanction applications and costs matters. We were ultimately able to negotiate and implement a settlement with the liquidators involving a sale of the company's intellectual property rights to an SPV thus enabling our client to regain control of his invention.
- *In re Fortune Nest Ltd*: acting for an American businessman seeking the recovery of his investment in a Cayman company. We successfully petitioned for the company to be wound up on the just and equitable ground and subsequently advised our client in relation to issues arising in the liquidation. I appeared as advocate on several interlocutory hearings and with Leading Counsel on the trial.
- *Tempo Group & Ors v Fortuna Development Corporation & Ors*: acting for a Cayman holding company in very long-running litigation by a minority shareholder challenging his removal from the board of directors.
- *In re Opus Trinity SPC:* acting for an investor in a Segregated Portfolio Company. I appeared on the hearing of the winding-up petition and also appeared on behalf the

liquidators (KPMG) on sanction and fee approval applications during the liquidation.
- *BTU Power Management Company v Hayat*: representing a shareholder in a dispute with his former business partner involving parallel proceedings in Cayman and Massachusetts.
- A number of contentious trusts matters, including applying for interlocutory and declaratory relief.

**APRIL 2006 TO AUGUST 2009**
**ASSOCIATE**
**PETERS & PETERS, LONDON**

Associate in Commercial Litigation/ Civil Fraud team; acted on a variety of claimant and defendant fraud cases, including making and defending applications for freezing and other interlocutory relief, and general commercial litigation matters.

**FEBRUARY 2004 TO FEBRUARY 2006**
**TRAINEE SOLICITOR**
**FRESHFIELDS BRUCKHAUS DERINGER, LONDON**

**EDUCATION**

| | | |
|---|---|---|
| 2002-2003 | Legal Practice Course<br>Distinction | BPP Law School, London |
| 2001-2002 | Postgraduate Diploma in Law<br>Commendation | City University, London |
| 1997-2001 | BA, Classics<br>First | Corpus Christi College, Oxford |
| | Placed third of approximately 130 students in finals and second in second year exams, and won several university and college prizes | |
| 1990-1997 | Lady Eleanor Holles School, London<br>10 GCSEs (all A*) 4 A-levels, one AS level (all A) | |