UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.)<br><br>      Plaintiff,<br> -against-<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.),<br>VINCENT WENYONG SHI,<br>JIA LIAN,<br>XIAO YU,<br><br>      Defendants,<br> -and-<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.),<br><br>      Nominal Defendant. | Civil Action No.: 1:18-cv-11642 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DECLARATORY RELIEF AND MOFIDICATION OF THE RECEIVERSHIP ORDER**


                       FELICELLO LAW P.C.
                       1140 Avenue of the Americas
                       9th Floor
                       New York, NY 10036
                       Tel. 212-584-7806

                       *Attorneys for Defendant*
                       *Vincent Wenyong Shi*

Of counsel:  Michael James Maloney
         Rosanne E. Felicello

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i
TABLE OF AUTHORITIES .................................................................................................... ii
PRELIMINARY STATEMENT ................................................................................................1
STATEMENT OF FACTS .........................................................................................................2
    A.    Background...................................................................................................2
    B.    The Baliga Action.........................................................................................3
    C.    The DLA Defendants' Malpractice ..............................................................3
    D.    The Receiver and His Agent in the PRC Has Caused Damage to the Company ............6
    E.    Shi Has Acted Diligently in Advancing the Interests of the Company But Has Been Stymied..........................................................................................................8
ARGUMENT................................................................................................................................8
I.    The Statute of Limitations Applicable to the Company's Legal Malpractice Claims Should be Tolled Pending the Dissolution of the Receivership ...................................................8
II.    The Court Should Modify the Existing Receivership Order to Permit Commencement of the Action ..........................................................................................................................9
CONCLUSION...........................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Citibank, N.A. v. Nyland (CF 8) Ltd.*, 839 F.2d 93 (2d Cir 1988) ............................................. 9

*Diaz v. Kelly*, 515 F.3d 149 (2d Cir. 2008) .................................................................................. 8

*FDIC v. Kisosoh Realty Corp.*, 1992 U.S. Dist. LEXIS 10966, 1992 WL 178600 (SDNY, J. Leisure) ..................................................................................................................................... 9

*Fed. Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*, 829 F. Supp. 82 (S.D.N.Y. 1993) ....... 9

*Pace v. DiGuglielmo*, 544 U.S. 408, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) ........................ 8

Defendant Vincent Wenyong Shi ("Defendant" or "Mr. Shi"), by and through his undersigned attorneys, hereby respectfully submits this memorandum of law in support of his motion for an Order (1) declaring equitably tolled pending the dissolution of the receivership all statutes of limitation applicable to claims by Link Motion Inc. (the "Company") against DLA Piper LLP (US) ("DLA"), Caryn Schechtman ("Schechtman"), and Marc A. Silverman ("Silverman" and together with DLA and Schechtman, the "DLA Defendants") for legal malpractice and, in the alternative, breach of fiduciary duty (the "Claims"); and (2) modifying paragraph 2(e) of the receivership order (Dkt. No. 26) to permit Shi authority to retain counsel to commence an action on behalf of the Company against the DLA Defendants for the Claims.

**PRELIMINARY STATEMENT**

This motion raises the following issue: On January 21, 2019, six weeks prior to making a motion to the Court to be relieved as counsel to the Company, the DLA Defendants signed and filed a stipulation purporting to agree to the appointment of Robert W. Seiden ("Mr. Seiden") as Receiver. At the time that the DLA Defendants made this filing with the Court, they had not provided the Company with material information that would allow the Company to provide informed consent to the stipulation. Specifically, the DLA Defendants had not informed the Company that Plaintiff Wayne Baliga ("Mr. Baliga") lacked standing to bring a derivative claim because he held merely ADSs and was not a registered shareholder. If the DLA Defendants had provided this critical information, the Company would have been able to move to dismiss Mr. Baliga's complaint instead of acceding to the appointment of Mr. Seiden as Receiver.

As a result of DLA Defendants' failure to provide competent legal advice to the Company and, instead, assuming that it had authority to enter into a stipulation agreeing to the receivership, the only person who has authority currently to bring an action against the DLA Defendants for

their faulty advice is the very Receiver who has benefited directly from the DLA Defendants' incompetence. To undo this incongruous situation in which Mr. Seiden is conflicted from bringing a legal malpractice claim on behalf of the Company against the DLA Defendants because it could result in the termination of his appointment, the Court should declare equitably tolled all statutes of limitation applicable to claims by the Company against the DLA Defendants pending the dissolution of the receivership and modify the Order of Receivership to grant Shi the power to retain counsel to commence an action on behalf of the Company against the DLA Defendants for the Claims with such action deemed commenced as of March 1, 2021.

## STATEMENT OF FACTS

### A.   Background

The Company is organized under the laws of the Cayman Islands.[1]  In accordance therewith, the shareholders' identities are maintained on a Cayman Islands register.[2] Only shareholders identified on the register of shareholders have standing to sue derivatively on behalf of the Company.[3]  The Company operates as a "Variable Interest Entity" ("**VIE**"), whereby its wholly owned subsidiary in the PRC has by contract (the "**Control Documents**") control over and rights to the economic benefits of operating companies located in the PRC.[4]  The Company does not own and has never owned shares of the operating companies in the PRC.[5]  The VIE structure exists to permit foreign owned companies to obtain control over and rights to economic benefits of technology companies operating in the PRC that by PRC law may not be owned by non-PRC persons.[6]

---

[1] *See* Dkt. No. 130-2, at 2, 10, 53.
[2] *See* Dkt No. 131, ¶¶ 22.
[3] *See* Declaration of Michael James Maloney, dated March 1, 2021, Ex. G.
[4] *See* Dkt. No. 130-2, at 2, 10, 48, 53.
[5] *See* Dkt. No. 178-7, at p.97-98,224-25,227-33.
[6] *See* Dkt. No. 178-7, at p.97-98,224-25,227-33.

In 2011, the Company made an initial public offering of ADSs on the New York Stock Exchange ("**NYSE**").[7] ADS holders are not registered shareholders.[8] Upon its initial public offering in 2011, the Company disclosed this fact in its Form F-1: "[w]e will not treat ADS holders as our shareholders and accordingly, you, as an ADS holder, will not have shareholder rights. Cayman Islands law governs shareholder rights."[9] Instead, each ADS represents rights and interests to five shares of common stock held in trust by a depositary.[10] Only the depositary is listed as a registered shareholder. *See* Shi Decl. Ex. A (Dkt. No. 130-1).

### B. The Baliga Action

On December 13, 2018, Baliga filed his Verified Shareholder Complaint. Maloney Decl. Ex. C (Dkt. No. 1). He alleged that he "is currently and has at all material times of this Action been a shareholder." Maloney Decl. Ex. C, ¶ 4 (Dkt. No. 1). He purported to bring the action derivatively, in the right and for the benefit of the Company. Maloney Decl. Ex. C, ¶ 32 (Dkt. No. 1). He filed his complaint by and through his counsel, the Seiden Group.[11] Baliga's allegations were false because he is not a registered shareholder and lacks standing to sue derivatively on behalf of the Company; rather he merely holds ADSs.[12]

### C. The DLA Defendants' Malpractice

On December 14, 2018, Baliga sought an order (i) preliminarily enjoining the Company and the individual defendants from taking certain corporate actions; and (ii) appointing Seiden as Receiver (Seiden is the managing director of the law firm representing Baliga).[13]

---

[7] *See generally* Dkt. No. 130-2.
[8] *See* Dkt. No. 130-2, at 141.
[9] *See* Dkt. No. 130-2, at 141.
[10] *See* Dkt. No. 130-2, at 141.
[11] *See* Maloney Decl. Ex. A.
[12] *See* Dkt. No. 181-1, 181-2, 181-3; Dkt. No. 130-2, at 141.
[13] *See* Dkt. No. 7.

3

On or about December 13, 2018, DLA received copies of the papers filed in the Baliga Action and correspondence from Baliga's counsel.[14] In an email to the Company dated December 14, 2018, Defendant Schechtman advised that DLA would send an associate to appear before the Court in connection with Baliga's application for a temporary restraining order (the "TRO").[15] Thus, DLA undertook to represent the Company in this matter. In doing so, DLA undertook the duty to represent the Company competently.

As a result of its representation of the Company, DLA knew or should have known at the time of its December 14, 2018 email to the Company that Baliga was not a registered shareholder and, therefore, lacked standing to bring any derivative claims or seek entry of the TRO.[16] In the same December 14, 2018 email, the DLA Defendants failed to advise the Company that Baliga was not a registered shareholder and, therefore, lacked standing to bring any derivative claims or seek entry of the TRO.[17] Indeed, the DLA Defendants never imparted this critical information to the Company.

Upon information and belief, DLA did not argue to the Court that Baliga's status as a holder of ADSs did not confer him status as a registered shareholder and, therefore, he lacked standing to bring any derivative claims or seek entry of the TRO.[18] The Court entered a TRO on December 14, 2018.[19]

On December 19, 2018, Defendants wrote to the Company regarding a request by counsel for Baliga to consent to an extension of the TRO until a ruling on Baliga's application for a preliminary injunction.[20] In the email, the DLA Defendants failed to advise the Company that

---

[14] *See* Maloney Decl., Ex. J; Declaration of Vincent Wenyong Shi, dated March 1, 2021 (the "Shi Decl."), ¶ 2.
[15] *See* Maloney Decl., Ex. J; Shi Decl., ¶ 2.
[16] *See* Maloney Decl., Ex. J; Shi Decl., ¶ 2.
[17] *See* Maloney Decl., Ex. J; Shi Decl., ¶ 2.
[18] *See* Maloney Decl., Ex. J; Shi Decl., ¶ 2.
[19] *See* Maloney Decl., Ex. B.
[20] *See* Maloney Decl., Ex. J; Shi Decl., ¶ 2.

4821-9624-4429, v. 5

Baliga was not a registered shareholder and, therefore, lacked standing to bring any derivative claims or seek entry of the TRO or a preliminary injunction.[21]

Notwithstanding the fact that Baliga had no standing to bring the Baliga Action, or to seek entry of the TRO, on December 21, 2018, DLA co-signed a "Joint Letter" that was filed in the Baliga Action at Docket No. 7 on December 21, 2018.[22] In the Joint Letter, the DLA Defendants state, purportedly on behalf of the Company, that "[the Company] *does consent*" to the TRO (emphasis added).[23] But the Company had not provided informed consent or authorization for this purported statement of consent.[24]

On January 15, 2019, the DLA Defendants wrote an email to the Company regarding the pending application by Baliga for entry of a preliminary injunction and appointment of a receiver.[25] In the email, the DLA Defendants failed to advise the Company that Baliga was not a registered shareholder and, therefore, lacked standing to bring any derivative claims or seek entry of the TRO, a preliminary injunction or entry of a preliminary injunction.[26]

On January 19, 2019, the DLA Defendants wrote an email to the Company advising that "if we do not hear back from you within 24 hours, DLA *will assume* that we have Link Motion's consent not to oppose the motion."[27] (emphasis added). In the email, the DLA Defendants failed to advise the Company that Baliga was not a registered shareholder and, therefore, lacked standing to bring any derivative claims or seek entry of the TRO, a preliminary injunction or entry of a preliminary injunction.[28] Nor was there any basis for DLA to make such a radical assumption.

---

[21] *See* Maloney Decl., Ex. J; Shi Decl., ¶ 2.
[22] *See* Maloney Decl., Ex. C, J; Shi Decl., ¶ 2.
[23] *See* Maloney Decl., Ex. C.
[24] *See* Maloney Decl., Ex. J; Shi Decl., ¶ 2.
[25] *See* Maloney Decl., Ex. J; Shi Decl., ¶ 2.
[26] *See* Maloney Decl., Ex. J; Shi Decl., ¶ 2.
[27] *See* Maloney Decl., Ex. J; Shi Decl., ¶ 2.
[28] *See* Maloney Decl., Ex. J; Shi Decl., ¶ 2.

DLA was aware that the officers of the Company were unfamiliar with U.S. litigation and were looking to DLA to provide appropriate legal advice and guidance.

On January 21, 2019, DLA signed a purported "Stipulation" filed in the Baliga Action at Docket No. 22., agreeing that the Company "does not oppose the Preliminary Injunction," while at the same time claiming to making only a limited appearance on behalf of the Company, reserving all "objections, defenses or responses to the Complaint."[29]

Defendants made this stipulation without the informed consent of the Company.

On February 1, 2019, granting Baliga's request, the Court entered an order appointing the Receiver, who also happens to be the managing partner of the law firm representing Baliga. Among other things, paragraph 2(e) of the receivership order delegated to the Receiver the exclusive authority to bring actions on behalf of the Company.[30]

By letter dated March 1, 2019, the DLA moved for leave to withdraw as counsel to the Company.[31] In support of their withdrawal, DLA claimed that the Company failed to cooperate in its representation, despite just six weeks prior having purported to enter a stipulation on behalf of the Company appointing a receiver. In moving for leave to withdraw, DLA did not advise the Court that it had not obtained the Company's informed consent prior to purporting to "consent" to the TRO, preliminary injunction and appointment of the Receiver on behalf of the Company.

D. **The Receiver and His Agent in the PRC Has Caused Damage to the Company**

Shortly after his appointment as Receiver, Seiden took possession of cash and other assets belonging to the Company. In a Form 6-K filed with the Securities and Exchange Commission (the "**S.E.C.**") on March 26, 2019, Seiden stated that he had removed Shi as Chairman and Chief

---

[29] *See* Maloney Decl., Ex. D.
[30] *See* Maloney Decl., Ex. E.
[31] *See* Maloney Decl., Ex. F.

Executive Officer, and appointed Mr. Lilin "Francis" Guo ("**Guo**") as his replacement, subject to the laws of the Cayman Islands." Maloney Decl. Ex F.  By Order dated June 20, 2019, the Court approved Seiden's request to approve a "compensation incentive agreement and promissory note" between the Company and Guo.[32] At or around the same time, Seiden appointed Guo as the director and attorney-in-fact of the Company's PRC "wholly foreign owned entity," Beijing Technology. None of the foregoing corporate actions were approved by the Board at a duly noticed meeting. But for the appointment of the receiver pursuant to the February 1, 2019 Order, the foregoing actions ordinarily would have required the consent of the Board.  Seiden has also charged fees for his "services" and retained Guo and other "professionals," all at the expense of the Company. (Dkt. Nos. 54, 59).

Beginning in 2019, the Receiver, through his agent, Guo, began to shut down the operations of the Company in the PRC.[33] These actions resulted in judgments being entered against the Company in favor of former employees seeking wages. At the time Seiden took control over the Company's accounts, the Company had available to it cash balances in excess of $1 million.[34] Instead of paying the judgments Seiden and Guo caused to be entered against the Company, Guo appealed them without any basis in law or fact.[35]  Predictably, the judgments have now been affirmed.[36]

These harms to the Company are wholly attributable to the Receiver, who retained Guo to act on his behalf in the PRC. Since March 2019, Guo has been the only Chairman and legal representative of the Company's PRC operating companies.[37]  As such, only Guo, and no one else,

---

[32] Dkt. No. 71.
[33] *See* Dkt. No. 182-8, ¶¶ 49-68, 74-75.
[34] *See* Dkt. No. 181 ¶ 26.
[35] *See* Dkt. No. 182-8, ¶¶ 63-67 (Dkt. No. 155); Dkt. No. 155-16; Dkt. No. 155-17; Dkt. No. 155-18; Dkt. No. 155-19.
[36] *See* Dkt. No. 155-16; Dkt. No. 155-17; Dkt. No. 155-18; Dkt. No. 155-19.
[37] *See*  Dkt. No. 155 ¶¶ 63-67; Dkt. No. 155-16; Dkt. No. 155-17; Dkt. No. 155-18; Dkt. No. 155-19.

7

can act legally on behalf of those entities. It was, therefore, Guo's decision wrongfully to appeal the judgments, which led to the predictable denial by the appeals court. Guo and the Receiver have had access to the Company's other bank accounts and social media accounts for some time[38] and, therefore, could have paid the Company's former employees. Indeed, they have been using Company funds to pay themselves instead of paying the judgments entered in favor of the former employees.[39] For the reasons stated below, it is imperative that the Court remove the Receiver and permit the Board to resume control of the Company.

> **E.    Shi Has Acted Diligently in Advancing the Interests of the Company But Has Been Stymied**

During the course of this action, Shi has diligently sought to act in the best interests of the Company. He has sought to argue on behalf of the Company in opposition to action taken by Plaintiff and has raised the issue of Baliga's lack of standing with the Court.

## ARGUMENT

> **I.    The Statute of Limitations Applicable to the Company's Legal Malpractice Claims Should be Tolled Pending the Dissolution of the Receivership**

Equitable tolling applies where petitioner "has been pursuing his rights diligently, and . . . some extraordinary circumstance stood in his way.'" *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)). Here, Shi has diligently sought to pursue the rights of the Company. Shi sought to argue on behalf of the Company in opposition to action taken by Plaintiff and has raised with the Court the issue of Baliga's lack of standing. But, the appointment of the Receiver is an extraordinary circumstance that has prevented Shi from pursuing the rights of the Company, including the right

---

[38] *See* Dkt. No. 155, ¶¶ 58-60; *see*, *e.g.*, Dkt. Nos. 78 (July 1, 2019 order authorizing Receiver to disburse funds for expenses), 97 (September 19, 2019 order authorizing Receiver to disburse funds for expenses), 100 (September 25, 2019 order directing Google to submit funds to the Receiver).
[39] *See id.*

of the Company to pursue a legal malpractice claim against DLA. In particular, paragraph 2(e) of the existing receivership order delegates solely to the Receiver the power to bring litigation on behalf of the Company.

## II. The Court Should Modify the Existing Receivership Order to Permit Commencement of the Action

The Court retains the power to modify the existing receivership order to permit Shi, as Director of the Company, authority to retain counsel to bring an action behalf of the Company against the DLA Defendants for the Claims. "A receiver acts 'as an officer of the court and has the duty to preserve and protect the property pending the outcome of the litigation. As a result, [the receiver's] authority is wholly determined by the order of the appointing court.'" *Fed. Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*, 829 F. Supp. 82, 85 (S.D.N.Y. 1993) (citing *Citibank, N.A. v. Nyland (CF 8) Ltd.*, 839 F.2d 93, 98 (2d Cir 1988)). "Subsequent to the appointment of a receiver, 'a court retains the equitable power to review the actions of the receiver and the propriety of continuing the receivership.'" *Fed. Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*, 829 F. Supp. 82, 85 (S.D.N.Y. 1993) (citing *FDIC v. Kisosoh Realty Corp.*, 1992 U.S. Dist. LEXIS 10966 at *7, 1992 WL 178600 (SDNY, J. Leisure)).

Here, the Court should exercise its power to modify paragraph 2(e) of the existing receivership order to permit Shi, in his capacity as Director of the Company, to retain counsel to bring an action behalf of the Company against the DLA Defendants for the Claims.

## CONCLUSION

For all the foregoing reasons, the Court should enter an Order (1) declaring equitably tolled pending the dissolution of the receivership all statutes of limitation applicable to claims by Link Motion Inc. (the "Company") against DLA Piper LLP (US) ("DLA"), Caryn Schechtman ("Schechtman"), and Marc A. Silverman ("Silverman" and together with DLA and Schechtman,

the "DLA Defendants") for legal malpractice and, in the alternative, breach of fiduciary duty (the "Claims"); or (2) modifying paragraph 2(e) of the receivership order (Dkt. No. 26) to grant Shi the power and authority to retain counsel to commence an action on behalf of the Company against the DLA Defendants for the Claims; and granting such other and further relief as the Court deems just and equitable.

| | |
|---|---|
| Dated: New York, New York<br>March 1, 2021 | Respectfully submitted,<br><br>FELICELLO LAW P.C.<br><br>By: __/s/ Michael James Maloney____<br>    Michael James Maloney<br>    Rosanne E. Felicello<br>1140 Avenue of the Americas<br>9th Floor<br>New York, NY 10036<br>Tel. +1 (646) 564-3510<br><br>*Attorneys for Defendant Vincent Wenyong Shi* |