# EXHIBIT 3

# Robert W. Seiden

Temporary Receiver for Link Motion Inc. Appointed by the Honorable Judge Victor Marrero of the United States District Court, Southern District of New York

469 Seventh Avenue, 5th Floor
New York, New York 10018
Tel: (212) 523-0686
Email: rseiden@seidenlegal.com

**VIA EMAIL**

Honorable Victor Marrero
Honorable Debra C. Freeman
United States Courthouse
500 Pearl Street
New York, New York 10007

May 20, 2020

**Re:** *Wayne Baliga v. Link Motion Inc. et al.,* **1:18-cv-11642 (S.D.N.Y.) (VM) (DCF)**

Dear Honorable Judge Marrero and Honorable Judge Freeman,

    First, I hope you are both doing well during these unprecedented times. I indulge your time to briefly write in response to the letter submitted by China AI Capital Limited ("China AI") on May 6th, 2020 (ECF No. 143) ("China AI's Letter"). I also write to seek the Court's assistance and direction concerning certain recent issues that have developed concerning actions taken in The People's Republic of China ("PRC") against Mr. Lilin Guo ("Mr. Guo") (the interim chairman appointed by the receiver and approved by the court), as a result of obstructive efforts to the Receivership committed by members of LKM's former management, including Defendant Shi and those acting at his direction.

1. **China AI Does Not Deny That It Is An Affiliate Of Shi's And Ignores The Receiver's Duties To This Court**

    On May 2nd, 2020 I submitted a letter to the Court setting forth, *inter alia*, the evidence uncovered showing the many financial, professional, and personal ties between China AI and Defendant Shi. This evidence gives rise to the logical deduction that China AI is an entity controlled by Shi. Ex. A. As a result of those ties, by China AI's motion to intervene (ECF No. 127), I indicated that Defendant Shi and China AI may be (intentionally or inadvertently) attempting to mislead the Court. On May 6th, 2020, China AI responded to the May 2nd Letter. ECF No. 143. By China AI's Letter, China AI makes certain material representations which I would respectfully seek to clarify here.

    *First*, I understand that China AI does not challenge that it is an entity controlled by Defendant Shi. China AI does not appear to dispute a single fact set forth in the May 2nd Letter that I provided to the Court which connects it to Defendant Shi. Notably, Defendant Shi in his May 8th, 2020 letter (ECF No. 145) also does not dispute the connections between himself and China AI. This bears highlighting and underscores the necessity for the Court to determine who China AI really is and what its real interests in this litigation are.

    *Second*, rather than demonstrate to the Court that it is independent of Shi, China AI maintains that the Court should not consider the facts set forth in my May 2nd letter because, it avers, I am purportedly impermissibly advocating on behalf of the Plaintiff here. China AI's position is misplaced.

As the court-appointed receiver over LKM, I am very cognizant of my fiduciary duty to LKM (and this court) and scrupulously honor this duty as it is the very foundation of the role of the receiver. Reporting material information to the Court is a corollary of this duty. The Court has ordered that the Receiver "shall provide interim reports to the Court […] as the Receiver deems appropriate under the circumstances[,]" that the reports shall include information on "the Receiver's activities and findings" or "such other information the Receiver deems appropriate or as the Court may direct." ECF No. 26 (the "Receivership Order"). That the Receiver brought to the Court's attention newly discovered material information suggesting that an entity with an interest that (evidence shows) is diametrically opposed to the Company sought to intervene here constitutes a primary reason why courts appoint receivers.[1]

### 2. Defendant Shi Controls The Bank Account Of LKM'S Wholly Owned Foreign Entity

As referenced in my May 2nd letter, I had intended to submit to the Court a separate letter for the purpose of updating the Court on all LKM-related proceedings that are ongoing in the PRC. However, because China AI, by its May 6th letter, has made various allegations concerning the Receivership's access to LKM's bank accounts, I would like to take this opportunity to correct China AI's misrepresentations to this Court.[2]

*First,* China AI maintains that the Receiver has control over all of LKM's Chinese bank accounts. This is wrong. The Receiver controls no bank accounts of LKM in China. Rather, defendant Shi, not the Receiver, is in control of the primary bank account of LKM's wholly foreign owned entity ("WFOE") in China. As such, Shi has been able to block Mr. Guo and the Receivership from lawfully accessing this bank account, thereby preventing the Receivership from preserving and safeguarding the Company's assets – frustrating the very purpose of this Receivership. For example, on April 26, 2019, Zemin Xu ("Xu"), the former legal representative of the Company's WFOE and a close associate of Shi's, without mentioning the existence of the receivership, filed an application to freeze this account with the People's Court of Haidian District Court in Beijing, China (the "Haidian Court"). The Haidian Court granted the application. The Receiver had no practical authority to object to this application.

*Second,* China AI also contends that the Receiver is purportedly using the same money which China AI had supposedly invested in LKM in 2018 "to pay himself, Mr. Guo, and his other friends to supposedly act as a neutral fiduciary." Again, this is wrong. In fact, as demonstrated in my May 2nd letter, on the very day (July 18th, 2018) that China AI paid LKM $5 million in connection with the Class B Shares Transaction to LKM's Hong Kong bank account, LKM then immediately paid $9,900,000 from this same bank account to a mystery bank account in Luxembourg. Whatever funds China AI paid to LKM were contemporaneously rushed to an account that is inaccessible to the Receiver.

### 3. Defendant Shi Has Harmed LKM Employees In China And Impaired The Receiver's Efforts

---

[1] *See, e.g., U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 610 (S.D.N.Y. 2012) (noting that one of the purposes of a receivership is to protect the plaintiff from "fraudulent conduct on [the] defendant"); *U.S. S.E.C. v. Amerindo Inv. Advisors, Inc.*, 2013 WL 1385013, at *13 (S.D.N.Y. Mar. 11, 2013) (quoting "courts have appointed receivers for several valid purposes, including "marshal[ing] the assets of the defendant [s]," "prevent[ing] the dissipation of [the defendants'] assets pending further action by the court," and "investigat[ing] the defendant[s'] transactions.").

[2] The Receiver still intends to submit a separate letter to the Court detailing all other relevant proceedings that sound in fraud in the PRC at a later time.

2

Defendant Shi's conduct in China has irreparably harmed LKM Employees. For example, Defendant Shi's aforementioned actions in improperly and secretly securing the freezing order against the WFOE bank account led to LKM employees not receiving their wages, in addition to causing the wrongful termination of employees, as detailed in my May 2nd letter and in Ms. Lingyun Guo's Declaration attached therewith. Relatedly, the receiver has uncovered and is in possession of at least 45 formal complaints lodged by former employees of LKM against the Company in the Haidian Court and the Beijing Labor and Personnel Dispute Arbitration Committee.[3] These complaints have sought recovery in connection with salary owed, lost wages, and reimbursement of certain living expenses as per these employees' respective employment agreements. All of these losses and the consequential harm to these innocent employees is directly attributed to the aforesaid actions of Shi and his associates.

Shi's actions in China have also significantly frustrated the Receivership's efforts and have caused significant harm to the Receiver's appointee in the PRC. For example, even though Defendant Shi and his associates control and or caused the freezing of the WFOE bank account, Mr. Guo, as the named legal representative of the WFOE, has been punished for the complaints filed by the Company's employees against Shi. Specifically, the Haidian Court issued a personal Spending Restriction Order (the "Restriction Order") against the receiver's appointee Mr. Guo due to his inability to satisfy the employment claims, which are to be paid from the WFOE account. This tragic and ironic personal penalty to the receiver's appointee for simply doing his job to try to preserve assets should be addressed. Under the heading "no good deed goes unpunished", Mr. Guo, who has tirelessly borne the burden inside China trying to fight for and help the LKM employees and the receivership is being harmed for his efforts. The Restriction Order is effectively a blacklist; it prohibits Mr. Guo from travelling by air, purchasing first class train tickets, checking into hotels, sending his children to private schools in the PRC or abroad, and visiting his family abroad. Simply put, Shi's actions have negatively impacted Mr. Guo's professional and personal life, while Shi continues to reap the benefits of controlling critical aspects of the Company in China.

Accordingly, the Receiver hereby respectfully seeks this Court's assistance and direction on how to resolve Mr. Guo's unjust treatment in the PRC, caused by Shi and his associates. At the minimum, the receiver requests that the Court issue a directive to defendant Shi to seek redress of these circumstances and use his resources and the truth to cause the penalty to be released from Mr. Guo.

Respectfully submitted,

Robert W. Seiden, Esq.
Court-Appointed Temporary Receiver for Link Motion Inc.

---

[3] Due to the inordinate size of the documents and related translation costs, I will respectfully not attach all the complaints to this letter. However, I will gladly do so should the Court so request.