UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE
INC.),

                Plaintiff,

-against-

LINK MOTION INC. (F/K/A NQ MOBILE
INC.), et al.,

                Defendants.

18cv11642 (VM) (DF)

**MEMORANDUM AND ORDER**

---

**DEBRA FREEMAN, United States Magistrate Judge:**

In the latest twist in this procedurally convoluted case, plaintiff Wayne Baliga ("Baliga") has moved for an Order instructing Robert W. Seiden, Esq. ("Seiden"), who is the Court-appointed Temporary Receiver (the "Receiver") for defendant Link Motion Inc. (the "Company"), to "effectuate conversion of [Baliga's] ADR shares [in the Company] to common shares."[1]  (Plaintiff's Motion For Receiver To Effectuate Conversion of Plaintiff's ADR, dated Dec. 14, 2020 ("Pl. Mtn.") (Dkt. 200), at 1.)  The background of Baliga's motion, as set out more fully below, is that, although Baliga initiated this action as a shareholder derivative suit, he amended his pleading to drop his derivative claims (and, instead, to assert only direct claims

---

[1] "An ADR [American Depositary Receipt] is a negotiable certificate that evidences an ownership interest in American Depositary Shares ('ADSs') which, in turn, represent an interest in the shares of a non-U.S. company that have been deposited with a U.S. bank." *Investor Bulletin: American Depositary Receipts*, https://www.sec.gov/investor/alerts/adr-bulletin.pdf (accessed May 21, 2021).  In this instance, the Company is based in Beijing, in the People's Republic of China, and it is undisputed that Baliga holds ADSs, representing an interest in the shares of the Company, that have been deposited with Deutsche Bank Trust Company Americas ("Deutsche Bank").  (*See* Declaration of Barbara A. Jones, Esq., dated Dec. 15, 2020 ("Jones Decl.") (Dkt. 201).)

against the Company and certain of its principals), after his standing to bring derivative claims based on his ownership of ADSs was challenged. Baliga contends that the conversion of his ADSs to common shares would remedy any potential standing defect and thereby enable him to proceed, once again, to assert derivative claims. He has made clear that, should his shares be converted, he would then promptly move for leave to amend his pleading again, to revive his previously dropped claims. For the reasons discussed below, Baliga's motion for an Order directing the Receiver to effectuate the conversion of Baliga's shares is denied.

## BACKGROUND

**A.     Baliga's Original Complaint, and the Court's Issuance
of a Preliminary Injunction and Appointment of the Receiver**

On December 13, 2018, Baliga commenced this action by filing a "Verified Shareholder Derivative Complaint," naming the Company as a nominal defendant, and asserting claims against its Chairman of the Board and Chief Operating Officer (Vincent Wenyong Shi ("Shi")), its acting Chief Executive Officer (Jia Lian ("Lian")), and one of its Directors (Xiao Yu ("Yu")) (collectively, the "Individual Defendants," and, together with the Company, "Defendants"). (Verified Shareholder Derivative Complaint, dated Dec. 13, 2018 ("Compl.") (Dkt. 1).) The core of Baliga's allegations was that defendant Shi, aided by Lian and Yu, had engaged in "gross mismanagement" of the Company, including by "egregious self-dealing"; had made false and misleading statements and omissions to the Company's Board, its shareholders, and the investing public; and had engaged in "outright fraud and theft of [Company] assets" over the period leading up to the filing of the Complaint. (*Id*. ¶ 2; *see generally id*.)

In his Complaint, Baliga pleaded derivative claims against the Individual Defendants for breaches of fiduciary duty (*see id*. ¶¶ 38-41; *see also id*. ¶ 16 (alleging that, '[i]n their recent rampage to destroy the Company and extract as much value for themselves as possible, the

Individual Defendants have breached their fiduciary duties to the Company, the Board, and its shareholders . . .")) and unjust enrichment (*see id.* ¶¶ 42-45), and against all Defendants for securities law violations (*see id.* ¶¶ 46-49 (alleging violations of Section 10(b) of The Exchange Act and Rule 10b-5), ¶¶ 50-54 (alleging violations of Section 20(a) of The Exchange Act)). As one of his stated claims, Baliga also asserted that a receiver should be appointed for the Company (*see id.* ¶¶ 36-37), specifically to:

> (a) prevent the further dissipation of the Company and its assets;
> (b) take the necessary steps in China to claw back the assets that were wrongfully transferred out of the ownership of the Company; and (c) manage the Company's operations, prevent the Company from being delisted from the [New York Stock Exchange ("NYSE")], and restore value to the Company and its shareholders

(*id.* ¶ 37).

At the outset of the case, based principally on the allegations in the Complaint that Shi and the other Individual Defendants were effectively looting the Company of its assets, Baliga moved before the Honorable Victor Marrero, U.S.D.J., for a temporary restraining order, as well as an order to show cause for a preliminary injunction and the appointment of a temporary receiver to protect the Company's assets. (*See ex parte* application filed on Dec. 14, 2018 and docketed on June 10, 2019 (Dkt. 63).) Specifically, Baliga's request for this preliminary equitable relief was grounded in his assertion that he was likely to prevail on the merits of his breach-of-fiduciary-duty claim. In fact, at the time, he argued that the Court need not even consider his likelihood of success on his other claims, stating:

> Here, in deciding whether the Plaintiff is likely to succeed on the merits, it is unnecessary for the Court to address each of the claims in the Complaint. While a clear reading of the facts, circumstances, and evidence surrounding this action unquestionably shows that the Individual Defendants are liable for the entirety of the action and all of the counts therein, it is undisputable that the Individual Defendants have unambiguously

> breached their fiduciary duties to [the Company] and its
> shareholders by inter alia: (a) grossly mismanaging the Company,
> and (b) transferring ownership of [the Company's] assets to third-
> parties without approval from the Board and for the personal gain
> of the Individual Defendants. These unquestionable breaches ae
> far and away enough to satisfy likelihood of success on the merits.

(Plaintiff's Memorandum of Law in Support of Temporary Restraining Order, Preliminary Injunction, and Temporary Receiver, dated Dec. 14, 2018 (Dkt. 63-3), at ECF 4[2];)

In light of Baliga's representations, Judge Marrero granted the proposed temporary restraining order on December 14, 2018 (Dkt. 7), and – without opposition by the Company (*see* Dkt. 23) – he proceeded to grant the proposed preliminary injunction and to appoint Seiden as Receiver on February 1, 2019 (Order Granting Preliminary Injunction and Appointing Temporary Receiver, dated Feb. 1, 2019 ("Preliminary Injunction and Receivership Order") (Dkt. 26)). The preliminary injunction was largely geared to enjoining the Individual Defendants from stripping assets from the Company (*see id.*, at § I(1)), and the receivership portion of the Order authorized Seiden, in the capacity of Temporary Receiver for the Company, "to protect the status quo of the Company, to prevent waste, dissipation, or theft of assets to the detriment of investors, and to assure timely and objective analysis of the financial condition of the Company" (*id.*, at § II(2)).

### B.     Baliga's First Amended Complaint

On June 11, 2019, Judge Marrero issued a Decision and Order (Dkt. 64), by which, *inter alia*, the Court dismissed Baliga's securities claims, with leave to amend to correct a pleading defect (*i.e.*, Baliga's initial failure to plead, as a necessary element of his claims, that he had actually purchased or sold Company ADSs). On June 21, 2019, Baliga then filed an

---

[2] As the pages of this filed document are not numbered, this Court has cited to the page numbers affixed to the document by the Court's Electronic Case Filing ("ECF") system.

Amended Complaint (First Amended Shareholder Derivative Complaint, dated June 20, 2019 ("Am. Compl") (Dkt. 68)), which was identical in all material respects to his original Shareholder Derivative Complaint, except that it added allegations regarding his ADS purchases (*see id.* ¶ 32).

      **C.**    **The Raising of Issues Regarding Baliga's Standing, and His Filing of a Second Amended Complaint, at This Court's Direction**

By motion that this Court deemed filed as of March 26, 2020 (*see* Dkt. 137), non-party China AI Capital Limited ("China AI") sought leave to intervene in this action (*see* Dkts. 111, 122, 127, 130, 131). By Memorandum and Order dated September 4. 2020 (Dkt. 163), this Court denied that motion for a number of reasons, not all of which are relevant here. What is important to note in connection with Baliga's now-pending motion is that China AI contended that, while it – as a *registered* shareholder in the Company – would have standing to assert derivative claims in this action under the governing law,[3] Baliga – as a *beneficial* shareholder (*i.e.*, the owner of ADSs) – actually lacked standing to bring such claims. (*See generally* China AI Mem.)

In response to China AI's motion, Baliga argued, *inter alia*, that, even if he lacked standing to assert his derivative claims (a point he did not concede), his Amended Complaint actually included both derivative *and* direct claims, and he contended that he certainly had standing to assert the latter. (*See* Plaintiff's Memorandum of Law in Opposition to China AI

---

[3] China AI asserted that, as the Company was incorporated in the Cayman Islands, the law of that jurisdiction would control on the issue of standing. (*See* Memorandum of Law of Intervenor-Plaintiff China AI Capital Limited in Support of Motion To Intervene as of Right," dated Mar. 5, 2020 ("China AI Mem.") (Dkt. 129), at 7-8 (arguing that such choice-of-law was dictated by the "internal affairs doctrine," under which "'the rights of shareholders of a foreign company (including the right to sue derivatively) are determined by the law of the place where the company is incorporated'" (quoting *Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 475 (S.D.N.Y. 2001))).)

Capital Limited's Motion to Intervene, dated May 4, 2020 (Dkt. 141), at 13 ("Although the Complaint is styled as a derivative action, the [First Amended Complaint] asserts numerous direct claims under common law and the federal securities laws. . . . Plaintiff has standing to bring these claims in New York and China AI has failed to demonstrate otherwise.")).  He also requested that, should the Court find that he lacked standing to maintain his derivative claims, he be permitted to file a second amended complaint, to "remove any derivative claims and allege direct claims only." (*Id.*, at 16.)

Although it denied China AI's motion to intervene, this Court nonetheless noted that a question as to Baliga's standing had been raised.  (*See* Dkt. 163, at 51.)  This Court pointed out that, as a plaintiff's lack of standing will deprive a court of subject-matter jurisdiction, a judicial inquiry regarding standing may be made even absent a motion.  (*See id.* (noting that, "because a federal court must satisfy itself that it has subject-matter jurisdiction over a case before it may act, it may consider the issue of standing *sua sponte* at any time" (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir. 1997)).)  At that point, however, this Court did not reach the question of Baliga's standing because, upon its review of the Amended Complaint, it was unable, as a threshold matter, to discern which of Baliga's claims he had supposedly intended to assert derivatively, and which directly.  Accordingly, this Court directed Baliga to file a second amended pleading, for the purpose of "clarifying which of his asserted claims [were] derivative claims, and which [were] direct claims." (*Id.*, at 53.)

On October 5, 2020, Baliga then filed his Second Amended Complaint (Second Amended Complaint, dated Oct. 5, 2020 ("2d Am. Compl.") (Dkt. 166)) – the current operative pleading in this action.  Baliga, however, did not adhere to this Court's instructions to file an amended

pleading so as to "clarify" which of his previously asserted claims were meant to be derivative and which direct; rather, his second amended pleading more than doubled the length of his prior pleading, and altered it obviously and substantially.

Most importantly, now seemingly conceding that he lacked standing to assert derivative claims, Baliga no longer captioned his pleading as a "Shareholder Derivative Complaint," and he removed all of his prior characterizations of this case as a derivative action. (*See generally id*.) Critically, he *dropped* his breach-of-fiduciary-duty claim against the Individual Defendants – the claim that had served as the focal point of his derivative claims and the basis for the Court's Order granting a preliminary injunction and appointing the Receiver. Further, although Baliga again asserted a claim against Shi for unjust enrichment (*id*. ¶¶ 156-59 (Count IV)), he modified that claim to allege that Shi was unjustly enriched not only "at the expense of and to the detriment of" the Company, but also at Baliga's *own* expense and to his *own* detriment (*compare* Am. Compl. ¶ 44 *with* 2d Am. Compl. ¶ 157).

Overall, Baliga transformed his pleading to make securities-fraud claims its centerpiece, asserting those claims directly against the Company as well as against the Individual Defendants (*see* 2d Am. Compl. ¶¶ 140-44 (Count I), 145-50 (Count II)), and devoting nearly 30 pages to laying out Defendants' allegedly false and misleading statements and omissions, as well as the facts purportedly showing scienter, loss causation, and reliance (*see id*. ¶¶ 25-126). He also added two common-law claims against all Defendants (including the Company) for fraud and negligent misrepresentation (*see id*. ¶¶ 160-64 (Count V), 165-76 (Count VI)).

Finally, in his Second Amended Complaint, Baliga asserted a claim for "Maintaining Or Re-Appointing The Receiver" (*id*. ¶¶ 151-55 (Count III)), which he described as a "claim for relief in equity as provided for in the Exchange Act and separately in connection with Plaintiff's

7

equitable claims" (*id.* ¶ 152). Baliga, however, neither acknowledged nor addressed, in any filing, the fact that, in initially obtaining the Preliminary Injunction and Receivership Order, he had relied primarily – arguably, exclusively – on the fiduciary-duty claim that he had now abandoned, and had told the Court that it need not consider how likely he was to succeed on any of his other claims.

In a telephone conference with counsel on October 15, 2020, counsel for Baliga confirmed that his client had intended to strip all of his derivative claims from his pleading, stating, at the outset of that conference: "In the Second Amended Complaint, we have asserted direct claims *only*, claims under the Exchange Act of 1934 and common law claims, both in law and in equity." (Telephonic case management conference, conducted Oct. 15, 2020 ("10/15/20 Conf.").[4]) When pressed by this Court to explain the nature of Baliga's modified unjust-enrichment claim (which, while referencing Baliga's own supposed losses, still referred to Shi's alleged "gain[ing] the benefit of ownership of certain assets belonging to [the Company] at the expense of [the Company's] losing said assets" (*id.* ¶ 158), Baliga's counsel conceded that he "[thought] this claim [could] and should be alleged both directly and derivatively" (1/15/20 Conf.). Nonetheless, it was apparent from counsel's initial statements at the conference that this was not what Baliga had intended to do at that juncture. Rather, it was clear that the Court now had before it a lawsuit in which Baliga was focusing on advancing direct claims, such that he was no longer nominally adverse to the Company, but actually adverse.[5]

---

[4] Both the October 2020 telephone conference and a later telephone conference conducted by this Court on December 3, 2020 ("12/3/20 Conf.") were recorded through the AT&T teleconference service that has been utilized by the Court during the period of the COVID-19 pandemic, and the recordings can be made available by the Court for transcription, should any party wish to order a transcript.

[5] Baliga was the one who had originally proposed to the Court that Seiden – a partner in the law firm that was representing Baliga in this action – be appointed as Receiver for the

### D. Baliga's Stated Intent To Seek Conversion of His Shares, and To Seek Leave To Amend Again, To Reassert Derivative Claims

Following Baliga's reframing of his pleading, the Company and Shi filed a motion to dismiss the Second Amended Complaint (Dkt. 177), as well as a motion to dissolve the preliminary injunction and discharge the Receiver (Dkt. 180). After those motions were filed, this Court held another telephone conference with counsel.

By the time of that conference, held on December 3, 2020, Baliga had retained new counsel (*see supra*, at n.5), who explained at the conference that, upon review of Baliga's amended pleading and the prior history of the action, her firm had determined that, in fact, it would be more appropriate to frame Baliga's claims as derivative claims. Counsel reported that Baliga was "in the process" of converting his ADSs to common shares in the Company (supposedly to cure any standing issues associated with him having only owned ADSs), and that, once the conversion was effectuated, counsel planned, "in all transparency," to file a motion for leave to amend Baliga's pleading for a third time, so as "to bring most of the claims derivatively." (12/3/20 Conf.)

At that conference, this Court questioned why, if Baliga planned to seek leave to modify his pleading again, and in material ways, the parties and the Court should expend any resources addressing the Company and Shi's then-pending motions, which were directed to the Second Amended Complaint. This Court stayed briefing on the pending motions, so as to afford the parties an opportunity to confer as to the best path forward. (*See* Dkt. 195.)

---

Company. Once Baliga amended his Complaint to make it clear that he wished to sue the Company directly, that law firm was placed in a conflicted position, which apparently then led to Baliga's retention of new counsel to represent him.

On December 10, 2020, the parties then filed a joint letter (Dkt. 196), proposing a briefing schedule for Baliga to file, first, a motion for the Receiver to effectuate the conversion of his shares, and, second (14 days after a decision on the conversion motion), a motion for leave to file a third amended complaint.  The parties also proposed that the Company and Shi's motions to dismiss the Second Amended Complaint and to dissolve the preliminary injunction and discharge the Receiver be held in abeyance, pending the outcome of Baliga's anticipated motions.  (*See id*.)  By Order dated December 14, 2020, this Court approved the proposed briefing schedule.  (Dkt. 197.)  Further, by separate Order dated December 15, 2020 (Dkt. 198), Judge Marrero denied the Company and Shi's motions without prejudice to renew, "in the event . . . those motions remain[ed] viable following the resolution of the conversion issue and any related motion by [Baliga] for leave to file a third amended complaint."

### E.     Baliga's Motion To Effectuate the Conversion of His Shares

Now before this Court is Baliga's motion, filed December 15, 2020, to effectuate the conversion of his shares in the Company from ADSs to common shares.  (Pl. Mtn.)  Despite the fact that, at the December 3 conference, Baliga's new counsel had reported that Baliga was in the process of securing the conversion, Baliga explains in his motion that Deutsche Bank (the Depositary Bank holding Baliga's ADSs (*see supra*, at n.1)) has "requested that the Company [provide] written instructions through the Receiver before it will effectuate the conversion" (Pl. Mtn., at 1), and that the Receiver has balked at issuing those instructions absent a Court order (*see id*., at 2; *see also* Declaration of Toby S. Soli, Esq., dated Dec. 14, 2020 ("Soli Decl.") (Dkt. 202) ¶ 3 (stating that, in a conference call, counsel for the Receiver had "cited the pendency of this litigation as the sole reason why the Receiver would require a Court order to authorize the Receiver to take steps to effectuate conversion of Baliga's ADRs to common

10

shares"[6])).  Under these circumstances, Baliga is asking the Court to find that he is entitled to the conversion under the Company's Deposit Agreement with Deutsche Bank, and to issue an Order directing the Receiver to instruct Deutsche Bank to convert his shares.  (*See generally* Pl. Mtn.)

Defendant Shi filed an opposition to Baliga's motion on December 22, 2020 (*see* Opposition to Plaintiff's Motion For an Order Authorizing the Receiver To Effectuate Conversion of Plaintiff's ADRs, dated Dec. 22, 2020 ("Shi Opp.") (Dkt. 206); Declaration of Michael James Maloney in Opposition to Motion For Authorization of Conversion of ADRs, dated Dec. 22, 2020 ("Maloney Decl.") (Dkt. 207)), arguing that Baliga's motion betrays "gamesmanship" that, as a matter of policy, the Court should not countenance (*see* Shi Opp., at 2-3, 8-9).  Shi additionally argues that, because the Company's ADRs were delisted from the NYSE in December 2018, which resulted in the closure of the books of the Depositary, Baliga's proposed conversion may not simply be effectuated by instructions from the Receiver, but rather would need to be submitted to a vote of the Company's shareholders.  (*See id.*, at 4-7, 9-10.) Finally, Shi contends that the conversion of Baliga's shares would not, in any event, give him standing to revive his originally pleaded derivative claims (as Baliga plainly wishes to do) because, under Rule 23.1 of the Federal Rules of Civil Procedure, a plaintiff asserting shareholder derivative claims must be able to demonstrate that he or she was a qualified shareholder at the time of the allegedly wrongful conduct, not thereafter.  (*See id.*, at 8-9; *see also* Fed. R. Civ. P. 23.1(b)(1) (stating that a derivative complaint "must [] allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law").)

---

[6] This Court notes that the evidence placed before this Court as to the Receiver's position on Baliga's desired conversion of his shares is hearsay, but that the Receiver's position is, in any event, irrelevant to this Court's decision on Baliga's motion.

On reply, Baliga describes as "absurd" Shi's contention that the conversion of Baliga's ADSs may only be effectuated through a shareholder vote (Plaintiff's Reply in Support of Motion for Receiver To Effectuate Conversion of Plaintiff's ADR, dated Dec. 24, 2020 ("Pl. Reply") (Dkt. 208), at 2; *see also id.*, at 3-5), and urges this Court to reject, as premature, any analysis under Rule 23.1 that might impact on the viability of the third amended pleading that Baliga has not yet proposed (*see id.*, at 2-3). On the latter point, Baliga notes that the parties had agreed to a briefing schedule that would tee up his anticipated motion to amend after the instant motion is decided, and argues that this Court should "defer consideration" of any futility-of-amendment argument "until such time as it has a motion for leave and proposed Third Amended Complaint before it." (*Id.*, at 2.)

## DISCUSSION

The fundamental problem with Baliga's motion is that it asks the Court to act on a matter that is outside the scope of any of the pleaded claims in this case, and that is thus outside the Court's jurisdiction. "[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Flast v. Cohen*, 392 U.S. 83, 96 (1968) (internal quotation marks and citation omitted). Here, Baliga's substantive claims, as currently alleged, are based on securities law violations, common-law fraud, and unjust enrichment. His operative pleading contains no claim that the Company has violated the terms of its Depositary Agreement with Deutsche Bank (which is apparently holding Baliga's ADRs) and that he, as a third-party beneficiary to that agreement, has suffered injury as a result. Indeed, none of Baliga's current claims turn, *in any way*, on the existence, provisions, or enforceability of the Depositary Agreement. Thus, Baliga's request that the Court examine the terms of the Depositary Agreement and make a determination that it affords him certain rights, enforceable in

the manner he describes (*i.e.*, without the shareholder vote that Shi contends would be necessary), would require the Court to engage in an impermissible advisory exercise.

Nor is the subject of Baliga's motion one as to which the Court should exercise ancillary jurisdiction. The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them," *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994), where the exercise of such jurisdiction is necessary, for example, to enable a court to "manage its proceedings, vindicate its authority, and effectuate its decrees," *id.*, at 379-80. Assisting Baliga in the process of effectuating the conversion of his ADSs to common shares in the Company could not reasonably be characterized as incidental to the matters now properly before the Court, nor would it affect the Court's ability to manage these proceedings or to vindicate its judicial authority.

The only argument that Baliga could advance in this regard (which he has not) is that an order directing the Receiver to take steps to enable the conversion of Baliga's shares by Deutsche Bank would be necessary to give meaningful effect to the Order by which the Court appointed the Receiver, and thereby vindicate the Court's judicial authority. As noted above, however, the Court appointed the Receiver for the purposes of (1) protecting the *status quo* of the Company, (2) protecting the Company's assets from being wasted, dissipated, or stolen, and (3) assuring a "timely and objective analysis" of the Company's financial condition. (Preliminary Injunction and Receivership Order, at § II(2).) Baliga has made no showing that any aspect of the Court's Order would be undermined, or its stated purposes thwarted, if his ADSs were not converted to common shares. This Court also notes that it may well be that the

Preliminary Injunction and Receivership Order should be vacated at this point, given the changed nature of Baliga's claims.

Finally, this Court notes that Baliga may be suggesting, at least implicitly, that, in order to "administer justice within the scope of its jurisdiction," the Court should invoke its ancillary jurisdiction, so as to assist him in converting his shares. In this regard, it does appear that Baliga believes that it would serve the interests of justice for the Court to assist him in securing a basis for a proposed motion to revive the derivative claims that he previously pleaded. This Court does not see the matter this way.

"The determination whether to exercise ancillary jurisdiction is discretionary, and is informed by considerations of judicial economy, convenience, and fairness to litigants." *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 66 (2d Cir. 1991). In this case, Baliga has made choices from the outset as to how to proceed. He chose to assert derivative claims when he now seems to concede he lacked standing to do so. He sought and obtained from the Court both a preliminary injunction and the appointment of a receiver based on an argument that he was likely to succeed on his claim that the Individual Defendants had breached their fiduciary duties to the Company. When his standing to bring derivative claims was challenged, he first sought to argue that – despite his characterization of his initial pleading as a "Shareholder Derivative Complaint" – some of the claims pleaded therein had actually been asserted derivatively and others directly, regardless of whether that would even have been permissible.[7] Then, when this

---

[7] "Although the Second Circuit has not held that there is a *per se* rule against bringing derivative and direct claims simultaneously, . . . courts in this District have applied a strict standard in scrutinizing direct and derivative actions for signs of conflict . . . ." *Tatintsian v. Vorotyntsev*, No. 16cv7203 (GHW), 2018 WL 2324998, at *2 (S.D.N.Y. May 22, 2018) (internal quotation marks and citations omitted). In most situations where the plaintiff's monetary recovery on a direct claim could result in a reduction of the corporation's potential recovery on

Court instructed him to clarify which of his claims were which, so that it could appropriately consider the standing issue, he did not do so, and instead chose to alter dramatically the entire character of his pleading, no longer identifying it as a derivative suit, dropping his fiduciary-duty claim altogether, and turning the action into what is now apparently intended to be solely a direct suit against the Company and its officers, predominantly based on allegations of securities fraud. With this history, this Court sees no reason – based on considerations of judicial economy, convenience, or fairness – why, even if issues regarding the conversion of Baliga's shares could be found to fall within the Court's ancillary jurisdiction, the Court should exercise its discretion to invoke such jurisdiction.

## **CONCLUSION**

For the foregoing reasons, Baliga's motion to effect conversion of his shares (Dkt. 200) is denied, and the Clerk of Court is directed to close that motion on the Docket of this action.

In light of this ruling, the Company and Shi may renew their motions (1) to dismiss the Second Amended Complaint, and (2) to dissolve the preliminary injunction and discharge the Receiver.  In the context of the latter of those motions, the parties are directed to address the ramifications of the fact that Baliga has now dropped the breach-of-fiduciary-duty claim on which his initial request for a preliminary injunction and the appointment of a receiver were

---

the derivative claim, the plaintiff will be found to have an "actual" (not merely a "theoretical") conflict, and will be disqualified from pursuing both types of claims in the same action.  *See id*.

premised. The parties are also directed to confer in good faith regarding a briefing schedule for the renewed motions, and to propose such a schedule to this Court.

Dated: New York, New York
   May 26, 2021

                SO ORDERED

                _____
                DEBRA FREEMAN
                United States Magistrate Judge

Copies to:

All counsel (via ECF)