## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**WAYNE BALIGA,**

Plaintiff,

v.

**LINK MOTION INC. (f/k/a/ NQ MOBILE INC.), VINCENT WENYONG SHI, ROLAND WU,** and **ZEMIN XU,**

Defendants.

**No. 1:18-cv-11642-VM-DCF**

**The Honorable Victor Marrero
Magistrate Judge Debra C. Freeman**

### PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S
### MAY 26, 2021 MEMORANDUM AND ORDER

Plaintiff Wayne Baliga ("Plaintiff" or "Baliga"), by his attorneys, Greenberg Traurig, LLP, respectfully files this Objection to Magistrate Judge Debra Freeman's May 26, 2021 Memorandum and Order (ECF 221 (hereinafter "May 26 Order")) pursuant to Rule 72(a).  In support of this objection, Plaintiff states as follows:

Pursuant to this Court's Order Granting Preliminary Injunction and Appointing Temporary Receiver ("Receivership Order") the Court retained "jurisdiction to interpret, construe, and enforce this Order, and any such other or further Orders of this Court." (ECF 26, at 7 § 10, 13.)  Magistrate Judge Debra Freeman's May 26 Order to the contrary is clearly erroneous and contrary to law. For that reason, and those more fully set forth below, Baliga objects to the May 26 Order and asks this Court to set that Order aside and determine the issue of the Receiver's authority which Magistrate Judge Freeman never reached.[1]

### BACKGROUND

Baliga is a purchaser and holder of American Depositary Receipts ("ADRs") of Link Motion Inc. (the "Company").  Baliga owned these ADRs dating back to at least January 21, 2014.

---

[1]   Baliga notes that he is required to file this objection to preserve the issue of whether the May 26 Order was correctly decided for appeal.

Based upon this ownership, Baliga filed a Verified Shareholder Derivative Complaint on December 13, 2018. (ECF 1 (hereinafter "Complaint").)  The derivative claims embodied by this Complaint have always been at the core of the action that Baliga intended to pursue.

Under *Morrison v. National Australia Bank, Ltd.*, "[t]he Supreme Court held that a private right of action under Section 10(b) and Rule 10b–5 of the Exchange Act could be maintained by foreign plaintiffs only if: (1) the security was listed on an American stock exchange or (2) the purchase or sale took place in the U.S." *Arco Capital Corps. Ltd. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 540 (S.D.N.Y. 2013) (citing *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 277 (2010).  It has always been clear, therefore, that jurisdiction of the securities claims has been appropriate.  Moreover, where a "court has original jurisdiction over plaintiff's securities law claims and the state claims 'are so related ... [to the federal securities law claims] that they form part of the same case or controversy,'" supplemental jurisdiction is properly exercised. *SST Glob. Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 463 (S.D.N.Y. 2003) (alterations in original).

Indeed, none of the Parties or the Company originally raised the issue of standing as it is well understood that "[a] shareholder need not be a shareholder of record in order to institute and maintain a stockholder's derivative action. As an equitable owner of stock in a corporation, *i.e.*, a non-record or equitable stockholder, he may maintain a derivative action under the laws of New York." *Marco v. Dulles*, 177 F. Supp. 533, 551 (S.D.N.Y. 1959).  Baliga owns ADR and, as a result, is an equitable shareholder.  The question of Baliga's standing was not raised until non-party China AI Capital Limited ("China AI") sought to intervene on March 26, 2020. (ECF 137.)

On September 4, 2020, despite denying China AI's motion, the Court raised the issue of standing and directed Baliga to file a second amended pleading to clarify which claims were brought derivatively and which were direct claims. (ECF 163.)  The issue in this case is that there

remains a question as to whether the law of the Cayman Islands applies to determine whether standing exists to bring derivative claims on behalf of the company.

Plaintiff's former counsel, without the informed consent of Plaintiff, filed the Second Amended Complaint dropping all derivative claims.[2] Baliga soon thereafter brought in new counsel to reassert his derivative claim and return this case to its former position. The first step in this process was a relatively routine motion to effectuate conversion of Plaintiff's ADR when the Receiver refused to exercise his power without a specific court order. (ECF 200.)

Notably, Plaintiff asserted that:

- "[u]nder the Order Granting Preliminary Injunction and Appointing Temporary Receiver, the Receiver has clear authority to effectuate the conversion of Baliga's shares by Deutsche Bank;" (ECF 200, at 1-2)

- "the Receiver has agreed that it has such authority and admitted that it would provide such instructions to Deutsche Bank for any other shareholder without Court approval;" (*id.*, at 2) and

- "[t]he only reason the Receiver is requesting prior Court approval in these circumstances is because Baliga is a party to this case." (*Id.*)

The Receiver found that providing the Company's authorization to convert the ADRs "is an 'administrative' act that the Receiver has the authority to carry out on behalf of the Company." (ECF 204, at 2.) Moreover, the Receiver specifically stated that "the Receiver would typically provide such authorization on behalf of the Company without seeking a court order." (*Id.*)

---

[2]     To be clear, Plaintiff has always insisted upon maintaining this action as a derivative claim on behalf of the company to benefit all shareholders who have been harmed by Defendant Shi's conduct. Plaintiff did not, and would not, consent to waiving the derivative claims.

Defendant Vincent Wenyong Shi ("Shi") argued that *even if* the Court granted the conversion it would not confer Plaintiff with standing to pursue derivative claims under Rule 23.1. (ECF 206, at 8-9.) Shi also raised the question of whether a shareholder vote is necessary to effectuate the conversion of ADRs to common shares. (*Id.*, at 9-10.) Baliga's reply clearly notes that such a restriction would be contrary to U.S. Securities Laws. (ECF 208, at 3-5.)

Magistrate Judge Freeman, in this case, opted not to decide any of those issues instead ruling that Baliga's motion was not "one as to which the Court should exercise ancillary jurisdiction." (ECF 221, at 13.) None of the parties had raised the question of whether Magistrate Judge Freeman had jurisdiction over the dispute. Indeed, each of the parties clearly assumed that Magistrate Judge Freeman had the capacity to determine the authority of the Receiver under the Receivership Order entered in this very case. Had Magistrate Judge Freeman requested additional briefing on this issue, Baliga would happily have noted that the basis for her jurisdiction lay in the Receivership Order itself.

On February 1, 2019, this Court entered the Receivership Order and granted the Receiver authority to "act through and in the name of the Company to carry out his duties" and "to execute and deliver (or cause to be executed and delivered) any document in the name of the Company, including but not limited to, contracts, deeds, other documents of title, and regulatory, administrative, and other governmental filings." (ECF 26, at 5 § 3.) Notably, this Court directed that "[t]he Receiver and the Parties to this action may, from time to time, on an ex-ante basis or noticed motion on shortened time, petition this Court for instructions in pursuance of this Order and further orders this Court may hereafter make." (*Id.*, at 7 § 10.) Indeed, the Receivership Order explicitly directs that "[t]his Court shall retain jurisdiction to interpret, construe, and enforce this Order, and any such other or further Orders of this Court." (*Id.*, at 7 § 13.)

**LEGAL STANDARD**

Under Rule 72(a), after a magistrate judge determines "a pretrial matter not dispositive of a party's claim or defense . . .[a] party may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). The objecting party carries a heavy burden as it must demonstrate that the order "is clearly erroneous or is contrary to law." *Id.* It is important to note that "[a] party may not assign as error a defect in the order not timely objected to." *Id.* As a result, any party seeking to preserve an issue for appeal must object in a timely manner.

In this case, the referral to Magistrate Judge Freeman was a general pretrial referral. (ECF 91.) The referral was not a referral for all purposes and the Parties did not consent to the referral. (*Id.*) Plaintiff has the right under Rule 72(a) to file an objection to Magistrate Judge Freeman's May 26 Order. Because this objection has been filed within 14 days, it is timely.  As such, the Court must consider the objection under Rule 72(a).

**ARGUMENT**

"The law of the case doctrine 'forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings.'" *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020) (quoting *United States v. Williams*, 475 F.3d 468, 471 (2d Cir. 2007)). "[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Id.* (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)).  In this case, the Court clearly ruled that "petition[s to] this Court for instructions in pursuance of this Order" were appropriately within the jurisdiction of this Court. (ECF 26.)

The motion at issue raised a simple question: does the Receiver appropriately have authority to carry out the administrative act of authorizing the conversion of an ADR holder's

5

ADRs into shares of the Company. (ECF 200, 2-3; ECF 204, 1-2.)  This Court, the Honorable Victor Marrero, already had ruled on whether the Court had jurisdiction to determine the proper scope of the Receiver's authority. (ECF 26, at 7 §§ 10, 13.)  Under the law of the case doctrine, the Court's ruling on the Receivership motion that the Parties may move for orders determining the authority of the Receiver and directing the Receiver to take certain actions "should generally be adhered to" by the Magistrate.  *E. Lyme Bd. of Educ.*, 962 F.3d at 662.  Failure to follow the law of the case on this issue was "clearly erroneous" or "contrary to law" as is required to set aside the Magistrate's order under Rule 72(a).

In fact, this Court has already granted letter motions by the Receiver for the disbursement of funds (ECF 54, 59, 71, 78, 97, 147), confirming his powers (ECF 89), hiring outside counsel (ECF 98), and requiring the disbursement of funds from third parties (ECF 100).  Plaintiff's motion on this matter was much the same.  In this instance, the Receiver refused to proceed without the Court clarifying its position and the Receiver asked Plaintiff to file the motion. The Receiver then filed a brief indicating agreement that it had the authority to proceed.  (ECF 204, at 2.)  It is unclear why the Court refused to address a relatively simple motion when it has handled more complex requests from the Receiver on a number of occasions in the past.

Federal Courts across the Second Circuit consistently find that they have jurisdiction to decide the scope, power, and authority of receivers they have appointed. *See, e.g.*, *Fed. Home Loan Mortg. Corp. v. Tsinos*, 854 F. Supp. 113, 116 (E.D.N.Y. 1994) (granting "Receiver's motion to be insulated from personal liability); *Sec. & Exch. Comm'n v. McGinn, Smith & Co., Inc.*, 110CV457GLSCFH, 2016 WL 6459795, at *4 (N.D.N.Y. Oct. 31, 2016) (granting a "Receiver's motion for an order approving of his distribution plan and authorizing interim distributions"); *Sec. & Exch. Comm'n v. Byers*, 08 CIV.7104 (DC), 2014 WL 12799633, at *6

(S.D.N.Y. Feb. 21, 2014) (granting "Receiver's motion to confirm authority to manage and sell the Property"); *S.E.C. v. Byers*, 08 CIV. 7104 DC, 2012 WL 954254, at *1 (S.D.N.Y. Feb. 28, 2012) (noting that the court had "granted the Receiver's motion to void [a] mechanic lien").  Once a court appoints a Receiver to act on behalf of a company, the court takes on ancillary jurisdiction over all sorts of business functions which occur in the ordinary course of business – including, in this case, the routine administrative task of effectuating the conversion of ADRs into common stock.

Even under Magistrate Judge Freeman's own logic, the "District court 'plainly had jurisdiction to interpret and enforce its own prior order.'" *In re Tronox Inc.*, 855 F.3d 84, 112 (2d Cir. 2017) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). Judge Freeman held that ruling on Baliga's motion "could not reasonably be characterized as incidental to the matters now properly before the Court, nor would it affect the Court's ability to manage these proceedings or to vindicate its judicial authority." (ECF 221, at 13.) Judge Freeman, however, focused on the question of whether a motion to effectuate the conversion of ADRs into common shares was within her jurisdiction rather than whether a motion to interpret the Receivership Order issued by this Court was within her jurisdiction.  Plainly a Court has jurisdiction to "effectuate its decrees." (ECF 221, at 13 (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379-80 (1994)).)

Plaintiff is not asking this Court to take any extraordinary measures. Indeed, Plaintiff plainly has the legal right to convert his shares as a matter of law. (*See* ECF 200.)[3] Pursuant to Section 2.6 of the Deposit Agreement between the Company and Deutsche Bank, all that is

---

[3]     While Plaintiff will provide a summary of his arguments here, Plaintiff incorporates by reference his briefing in support of his Motion which can be found at ECF 200 and ECF 208.

required of Plaintiff to create an entitlement to the common shares represented by his ADRs is that he: (1) surrender his ADRs; (2) pay the fees and charges associated with the withdrawal of the common shares and the cancellation of his ADRs; and (3) pay any applicable taxes and fees. (ECF 49-1, at Section 2.6.) Plaintiff has communicated his intention to undertake each of these steps with respect to 10,000 ADRs, however Deutsche Bank indicated that it requires email instructions from the Company before it will convert his ADRs. (ECF 202, at ¶ 3.)

Shi's only arguments against Plaintiff's right to conversion are that it would not confer standing – an argument which Plaintiff will confront fully on a motion for leave to amend, but involves the complicated interaction between U.S. law and the law of the Cayman Islands – and a misreading of Section 2.7 of the Deposit Agreement. (*See* ECF 206.) Section 2.7(b) of the Deposit Agreement simply provides that "the registration of transfers of receipts may be suspended." (ECF 49-1, at Section 2.7.) Neither Deutsche Bank nor the Company has, in fact, suspended transfer or registration of shares. More importantly, Section 2.7(b) is "subject, in all cases, to Section 7.10" which provides that "the withdrawal or Delivery of Deposited Securities will not be suspended by the Company or the Depositary except as would be permitted by Instruction I.A.(1) of the General Instructions to Form F-6 Registration Statement, as amended from time to time, under the Securities Act." (*Id.*, at Section 7.10.) That means, under Instruction I.A.(1) of the General Instructions to Form F-6 Registration Statement, "[t]he holder of the ADRs is entitled to withdraw the deposited securities at any time" subject only to a few limitations which do not apply here.

## **CONCLUSION**

For these reasons, Plaintiff asks that the Court set aside Magistrate Judge Debra Freeman's May 26, 2021 Memorandum and Order and confirm that the Receiver has authority under the

Receivership Order to carry out the purely administrative act of authorizing the conversion of an

ADR holder's ADRs into shares of the Company. (ECF 200, 2-3; ECF 204, 1-2.)

Dated:  New York, New York
         June 9, 2021                          **GREENBERG TRAURIG, LLP**

                                      By: _____
                                           Toby S. Soli
                                         MetLife Building
                                         200 Park Avenue
                                         New York, New York 10166
                                         445 Hamilton Ave.
                                         White Plains, New York 10066
                                         Telephone: (212) 801-9200
                                         Facsimile: (212) 801-6400
                                         Email:  solit@gtlaw.com

                                         *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

     I, Toby S. Soli, an attorney, certify that I electronically filed Plaintiff's Objections with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record on this 9th day of June, 2021.

                                       */s/ Toby S. Soli*
                                       Attorney for Plaintiff