# Exhibit E

# SUPPLEMENTAL AGREEMENT

**THIS SUPPLEMENTAL AGREEMENT** (this "**Agreement**") is made on March 31, 2017;

**AMONG**:

(1) **TongFang Investment Fund Series SPC for and on behalf of TongFang M&A Fund SP, being a segregated portfolio of TongFang Investment Fund Series SPC**, a company organized under the laws of the Cayman Islands (the "**Purchaser**");

(2) **Xinjiang NQ Mobile Venture Capital Investment, Co., Ltd. (新疆网秦移动创业投资有限公司)**, a company incorporated under the laws of the PRC (the "**FL Seller**");

(3) **Beijing NQ Technology Co., Ltd. (北京网秦天下科技有限公司)**, a company incorporated under the laws of the PRC (the "**Showself Seller**");

(4) **NQ Mobile Inc.**, an exempted company incorporated under the laws of the Cayman Islands ("**NQ**");

(5) **FL Mobile Jiutian Technology, Co., Ltd. (北京飞流九天科技有限公司)**, a company incorporated under the laws of the PRC ("**FL Mobile**");

(6) **Beijing Showself Technology Co., Ltd (思享时代（北京）科技有限公司)**, a company incorporated under the laws of the PRC ("**Showself**"); and

(7) **SHI Wenyong**, a PRC citizen with identification number 352124197711280513.

**WHEREAS**

(A) The Purchaser, the FL Seller and NQ have entered into a share purchase agreement (the "**FL Mobile SPA**") on March 30, 2017 in relation to the purchase of 63% equity interest in FL Mobile;

(B) The Purchaser, the Showself Seller and NQ have entered into a share purchase agreement (the "**Beijing Showself SPA**") on March 30, 2017 in relation to the purchase of 65% equity interest in Showself (the purchase of FL Mobile and Showself equity interest are collectively referred to hereunder as the "**Share Purchase Transactions**");

(C) The parties desire to make special arrangements in relation to the Share Purchase Transactions and other related matters.

**IT IS AGREED THAT:**

1. **DEFINITIONS AND INTERPRETATION**

1.1 In this Agreement, unless otherwise defined, capitalised terms used herein shall bear the meaning ascribed to them in the FL Mobile SPA and the Beijing Showself SPA.

1.2 In this Agreement, unless the context otherwise requires:

(a) every reference to a particular Applicable Law shall be construed also as a reference to all other Applicable Laws made under the Applicable Laws referred to and to all such Applicable Laws as amended, re-enacted, consolidated or replaced or as their application or interpretation is affected by other Applicable Laws from time to time provided that, as between the parties, no such amendment or modification shall apply for the purposes of this Agreement to the extent that it would impose any new or extended obligation, liability or restriction on, or otherwise adversely affect the rights of, any party;

(b) references to Clauses and Schedules are references to clauses of and schedules to this Agreement;

(c) references to the singular shall include the plural and vice versa and references to one gender include any other gender;

(d) references to a "**party**" means a party to this Agreement and includes its successors in title, personal representatives and permitted assigns;

(e) references to a "**person**" includes any individual, partnership, body corporate, corporation sole or aggregate, state or agency of a state, and any unincorporated association or organisation, in each case whether or not having separate legal personality;

(f) references to a "**company**" includes any company, corporation or other body corporate wherever and however incorporated or established;

(g) references to "**the Closing of the Share Purchase Transactions**" means [the date when the Purchaser completes all its payment obligations as provided in the FL Mobile SPA, Beijing Showself SPA and this Agreement, or other date agreed by the parties, unless otherwise determined by the applicable laws and regulations or the relevant governmental authorities of the PRC];

(h) references to "**US$**" are to United States dollars, and references to "**RMB**" are to Renminbi, the lawful currency from time to time of the PRC;

(i) references to times of the day are to Beijing time unless otherwise stated;

(j) references to writing shall include any modes of reproducing words in a legible and non-transitory form;

(k) words introduced by the word "**other**" shall not be given a restrictive meaning because they are preceded by words referring to a particular class of acts, matters or things; and

(l) general words shall not be given a restrictive meaning because they are followed by words which are particular examples of the acts, matters or things covered by the general words and the words "**includes**" and "**including**" shall be construed without limitation.

1.3 The headings in this Agreement are inserted for convenience only and shall not affect the construction of this Agreement.

1.4 The Schedule to this Agreement shall form part of this Agreement.

1.5 References to this Agreement include this Agreement as amended or varied in accordance with its terms.

1.6 Where any obligation in this Agreement is expressed to be undertaken or assumed by any party, that obligation is to be construed as requiring the party concerned to exercise all rights and powers of control over the affairs of any other person which it is able to exercise (whether directly or indirectly) in order to secure performance of the obligation.

1.7 Wherever in this Agreement provision is made for the payment by one party to another, such payment shall be effected by crediting for same day value the nominated payment account of the party entitled to the payment by way of telegraphic transfer on or before the due date for payment.

## 2. SHAREHOLDING ENTRUSTMENT

2.1 The parties agree and acknowledge that, NQ has hereby agreed to entrust SHI Wenyong to hold its legal shares in FL Mobile and Showself (the "**Entrusted Shares**") before the Closing of the Share Purchase Transactions, and SHI Wenyong agrees to accept NQ's entrustment to hold these Entrusted Shares on behalf of NQ.

2.2 SHI Wenyong agrees to be registered as the shareholder of FL Mobile and Showself. Shi Wenyong and each party acknowledges that the ownership of the Entrusted Shares registered under the name of SHI Wenyong shall be owned entirely for the benefit of NQ before the Closing of the Share Purchase Transactions, and shall be delivered to the Purchaser upon such Closing or other time agreed by the Parties.

2.3 As the nominated shareholder by NQ, SHI Wenyong shall follow the instructions from NQ (or the Purchaser after the Closing of the Share Purchase Transactions, if properly) to exercise the shareholder's rights of the Entrusted Shares.

## 3. SAFE REGISTRATION AND VIE STRUCTURE

Each party hereby agrees to use its commercially reasonable effort to cooperate with each other in completing the SAFE registration (including the Circular 37 registration) when required by Applicable Law, and to provide necessary assistance and to execute requested documents in order to set up the VIE structure of FL Mobile and Showself.

## 4. PAYMENT OF PURCHASE PRICE

4.1 The parties agree and the Purchaser hereby represents and warrants that, it shall pay the aggregate purchase price of the Share Purchase Transactions as provided in the FL Mobile SPA and Beijing Showself SPA to NQ no later than [February   ], 2018.

4.2 The parties agree that part or the whole of the purchase price may be paid in US dollars or RMB, within or outside PRC as the parties may deem fit.

## 5. WARRANTIES

Each party hereby warrants and undertakes to the other party and its successors in title that:

(a) (where applicable) it is a company duly incorporated and validly existing under its laws of incorporation or an individual with sound mind and full capacity;

3

    (b)    it has taken all necessary action and has all requisite power and authority to enter into and perform this Agreement to which it is party in accordance with its respective terms; and

    (c)    this Agreement to which it is party constitutes (or shall constitute when executed) valid, legal and binding obligations on it.

## 6. CONFIDENTIALITY

6.1    Subject to Clauses 6.2 and 6.3, each party:

    (a)    shall treat as strictly confidential the provisions of this Agreement and information received or obtained before, on or after the date of this Agreement as a result of entering into this Agreement ("**Confidential Information**") which relates to (i) the existence and the provisions of this Agreement, (ii) the negotiations relating to this Agreement, or (iii) the customers, business, assets or affairs of any other party; and

    (b)    shall not, except with the prior written consent of the other parties (which shall not be unreasonably withheld or delayed), make use of (save for the purposes of performing its obligations under this Agreement) or disclose to any person (other than its Affiliates and its and its Affiliate's directors, employees, officers, consultants and professional advisers in accordance with Clause 6.2) any Confidential Information.

6.2    Each party undertakes that it shall only disclose Confidential Information to its Affiliates, and its and its Affiliate's directors, employees, officers, consultants and professional advisers, where it is reasonably required for the purposes of performing its obligations under this Agreement, and where such recipients are informed of the confidential nature of the Confidential Information and the provisions of this Clause 6 and are instructed to comply with this Clause 6 as if they were a party to it.

6.3    Clauses 6.1 shall not apply if and to the extent that the party using or disclosing Confidential Information can demonstrate that:

    (a)    such disclosure is required by Applicable Laws or by any stock exchange or any supervisory, regulatory, Governmental Authority or anti-trust body (including, for the avoidance of doubt, any Tax authority) having applicable jurisdiction, provided that to the extent legally permitted, the disclosing party shall consult the other parties in advance as to the form, contents and timing of such disclosure;

    (b)    the Confidential Information concerned has come into the public domain other than through its fault or the fault of any person to whom such Confidential Information has been disclosed in accordance with this Clause 6; or

    (c)    such use or disclosure of Confidential Information is to a proposed underwriter, sponsor or broker and their respective advisers for the purpose of an initial public offering of the Company, provided that to the extent legally permitted, the disclosing party shall consult the other parties in advance as to the form, contents and timing of such disclosure and the disclosing party procures that any such recipient is made aware of the confidential nature of the Confidential Information and is bound by confidentiality obligations that are on substantially the same terms to those in this Agreement.

6.4    The provisions of this Clause 6 shall survive termination of this Agreement.

7.  **TERMINATION**

7.1 This Agreement:

    (a)    may be terminated at any time by mutual agreement in writing among the parties;

    (b)    shall terminate upon discharge of all obligations under this Agreement by the respective parties.

7.2 The termination of this Agreement howsoever arising shall not in any way prejudice or affect the operation of any of the provisions of this Agreement which contemplate or are capable of operation after the termination of this Agreement and accordingly all such provisions shall continue in full force and effect after the termination of this Agreement.

8.  **NOTICES**

All notices, demands or other communications required or permitted to be given or made hereunder shall be in writing in the English language and delivered personally or sent by prepaid registered post (by air-mail if to another jurisdiction) with recorded delivery, or by e-mail, or by facsimile transmission addressed to the intended recipient thereof at its address, e-mail address or facsimile number (or to such other address, e-mail address or facsimile number as a party to this Agreement may from time to time duly notify the other parties). Any such notice, demand or communication shall be deemed to have been duly served (if delivered personally or given or made by e-mail or facsimile) immediately or (if delivered by prepaid registered post in Hong Kong) 48 hours after posting or (if delivered by prepaid registered post to another jurisdiction) 10 days after posting and in proving the same it shall be sufficient to show that personal delivery was made or that the envelope containing such notice was properly addressed as a prepaid registered letter or that the e-mail or facsimile transmission was properly addressed and despatched.

9.  **GENERAL**

9.1 **Entire agreement and understanding**

This Agreement set out the entire agreement and understanding between the parties with respect to the subject matter of this Agreement, and supersede all prior oral or written communications, representations or agreements in relation to the subject matter of this Agreement.

9.2 **Variation**

No variation of this Agreement (or of any of the documents referred to in this Agreement) shall be valid unless it is in writing and signed by or on behalf of each of the parties to it. The expression "**variation**" shall include any amendment, supplement, deletion or replacement however effected.

9.3 **No assignment**

All rights and obligations under this Agreement are personal to the parties, and save as expressly provided for in this Clause 9.3, no party shall (nor shall purport to) assign, transfer, charge or otherwise deal with all or any of its rights and/or obligations under this Agreement nor grant, declare, create or dispose of any right or interest in it in whole or in part.

5

**9.4** **Costs**

The costs in connection with the preparation and negotiation of and entry into of this Agreement, including legal fees, shall be borne by each party itself.

**9.5** **Severability**

If any provision of this Agreement is held to be illegal, void or unenforceable, then such provision shall (so far as it is illegal, void or unenforceable) be deleted and shall be deemed not to be included in this Agreement but without invalidating any of the remaining provisions of this Agreement. The parties shall use all reasonable endeavours to replace the illegal, void or unenforceable provision by a valid and enforceable substitute provision the effect of which is the closest possible to the intended effect of the provision to be replaced.

**9.6** **Counterparts**

This Agreement may be executed in any number of counterparts, and by each party on separate counterparts. Each counterpart is an original, but all counterparts shall together constitute one and the same instrument. Delivery of a counterpart of this Agreement by e-mail attachment or facsimile shall be an effective mode of delivery.

**9.7** **Further assurance**

Each of the parties agrees to perform (or procure the performance of) all further acts and things, and execute and deliver (or procure the execution and delivery of) such further documents, as may be required by Applicable Laws or as may be necessary to implement and/or give effect to this Agreement and the transactions contemplated under it.

**9.8** **Waivers, rights and remedies**

(a) No failure or delay by a party in exercising any right or remedy provided by Applicable Laws under or pursuant to this Agreement shall impair such right or remedy or operate or be construed as a waiver or variation of it or preclude its exercise at any subsequent time and no single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.

(b) The rights and remedies of a party under or pursuant to this Agreement are cumulative, may be exercised as often as it considers appropriate and are in addition to its rights and remedies under general law.

**9.9** **Governing law and jurisdiction**

(a) This Agreement is governed by and shall be construed in accordance with the laws of PRC.

(b) The PRC courts have non-exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement and the parties submit to the non-exclusive jurisdiction of the PRC courts in connection herewith, but this Agreement may be enforced in any court of competent jurisdiction.

[Signature pages to follow]

## Execution Pages

**IN WITNESS** whereof the parties have duly executed this Agreement the day and year first above written.

**Purchaser**

**TongFang Investment Fund Series SPC**
for and on behalf of TongFang M&A Fund SP, being a segregated portfolio of TongFang Investment Fund Series SPC

Signature: _李忻弘_
Name:
Title:

*[Signature Page to Supplemental Agreement]*

## Execution Pages

**IN WITNESS** whereof the parties have duly executed this Agreement the day and year first above written.

**FL Mobile**

**FL Mobile Jiutian Technology, Co., Ltd.**
(北京飞流九天科技有限公司)

[Company seal: 北京飞流九天科技有限公司]

Signature: _____
Name:
Title:

*[Signature Page to Supplemental Agreement]*

## Execution Pages

**IN WITNESS** whereof the parties have duly executed this Agreement the day and year first above written.

**FL Seller**

**Xinjiang NQ Mobile Venture Capital Investment, Co., Ltd.**
(新疆网秦移动创业投资有限公司)

Signature: _____
Name:
Title:

*[Signature Page to Supplemental Agreement]*

## Execution Pages

**IN WITNESS** whereof the parties have duly executed this Agreement the day and year first above written.

**Showself Seller**

Beijing NQ Technology Co., Ltd.
(北京网秦天下科技有限公司)

Signature: _____
Name:
Title:

*[Signature Page to Supplemental Agreement]*

## Execution Pages

**IN WITNESS** whereof the parties have duly executed this Agreement the day and year first above written.

**Showself**

**Beijing Showself Technology Co., Ltd**
(思享时代（北京）科技有限公司)

Signature: _____
Name:
Title:

*[Signature Page to Supplemental Agreement]*

**Execution Pages**

**IN WITNESS** whereof the parties have duly executed this Agreement the day and year first above written.

**NQ**

**NQ Mobile Inc.**

Signature: _____
Name:
Title:

*[Signature Page to Supplemental Agreement]*

## Execution Pages

**IN WITNESS** whereof the parties have duly executed this Agreement the day and year first above written.

**SHI Wenyong**

Signature: _____

*[Signature Page to Supplemental Agreement]*