# Exhibit J

# FELICELLO

Michael James Maloney*
Partner

Felicello Law P.C.
1140 Avenue of the Americas
9th Floor
New York, NY 10036

Tel. +1 (646) 564-3510
mmaloney@felicellolaw.com

July 22, 2020

VIA ECF

Hon. Victor Marrero
Hon. Magistrate Judge Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *Baliga, et al. v. Link Motion Inc., et al.*, Case No. 1:18-cv-11642 (the "Action")

Dear Judge Marrero and Judge Freeman:

This firm represents Vincent Wenyong Shi ("Mr. Shi") in the above-referenced Action. I write to respond to the letter of July 17, 2020 from Robert W. Seiden (the "Receiver"), the Court-appointed receiver for nominal defendant Link Motion Inc. ("LKM"). In his letter and notations to the attached exhibits, the Receiver falsely claims that Mr. Shi "stole[]" U.S.$88 million from subsidiaries operated by LKM in the People's Republic of China (the "PRC").[1] For the reasons set forth below, the "facts" alleged by the Receiver are false and the Receiver's letter should be stricken and disregarded.

First, despite the Receiver's assertions to the contrary, Mr. Shi never receved, used, or benefited from any of the funds identified in the Receiver's letter. Indeed, Mr. Shi was never a signatory on the accounts identified by the Receiver. It appears that Mr. Zemin Xu, in his capacity as legal representative of the entities in question, had signatory power over those accounts. Further, upon review of the identified transactions, it is Mr. Shi's understanding that each of the transfers identified in the bank statements provided by the Receiver were made for the legitimate corporate purpose of repaying a loan from China Merchants Bank to LKM (the "CMB Loan") and secured by asset of LKM. A copy of the loan agreement, dated May 2, 2018, is annexed hereto as Exhibit 1. The CMB Loan was duly authorized action of LKM undertaken for the purpose of refinancing an existing obligation. Annexed hereto as Exhibit 2 is true and correct copy of a press release regarding the purpose of the CMB Loan.

The CMB Loan was due to be repaid in May 2019 in U.S. dollars. (*See* Ex. 1). Attached hereto as Exhibit 3 is a true and correct copy of an email from CMB demanding repayment of the CMB Loan by LKM, along with a translation. Because the CMB Loan was secured by assets of

---

[1] Mr. Shi reserves the right to challenge the translations submitted by the Receiver.

*Admitted to practice law in New York

Hon. Victor Marrero
Hon. Debra Freeman
July 22, 2020
Page 2 of 3

LKM, the failure of LKM to repay the loan in 2019 would have resulted in disastrous consequences for LKM, including but not limited to the attachment of LKM assets pledged as security for the loan, the issuance of freezing orders, and/or the commencement of legal proceedings in the PRC or elsewhere. It appears that Mr. Zemin Xu made the appropriate transfers necessary to repay in full the CMB Loan. The Receiver obviously has access to LKM's files but has selectively submitted only part of the relevant records in order to falsely accuse Mr. Shi.

Second, the Receiver's recitation of the procedural history of this case is flawed and one-sided. The Receiver makes numerous references to the Court's Receivership Order entered on February 1, 2019 (ECF Dkt. No. 26) and the Receiver's March 2019 application for an Order of contempt against Mr. Shi. The application for an order of contempt was duly denied because the Receiver never served Mr. Shi with process. (ECF Dkt. No. 64). The time to reargue or appeal the Court's decision vacating the order of contempt has long passed and there is no basis in law or fact to dispute the Court's rulings on that issue. Simply put, the Receiver's insinuations that Mr. Shi is somehow subverting an order of this Court are scurrilous. Plaintiff's motion for leave to serve Mr. Shi by alternative means remains *sub judice*. In good faith, Mr. Shi has advised the Court that he would be willing to accept service so long as such acceptance is on terms that will not prejudice Mr. Shi (*e.g.*, requiring the Receiver to cause LKM to comply with its indemnification obligations to Mr. Shi). (*See* ECF Dkt. No. 145, 145-1). The Court has not yet ruled on that motion. Mr. Shi deserves an opportunity to defend himself against the false claims asserted by the Plaintiff and the Receiver.

Third, the legal entity Beijing NQ Mobile Technology Limited ("Beijing NQ"), referred to in the Receiver's letter, is nothing more than another operating subsidiary of LKM. Like NQ Mobile (Beijing) Co., Ltd., LKM's wholly foreign owned entity (the "WFOE"), Mr. Zemin Xu was the duly appointed legal representative of Beijing NQ. Because he was not the legal representative of record, Mr. Shi never had signatory authority over any account belonging to Beijing NQ or the WFOE. It appears from the materials submitted by the Receiver that Mr. Zemin Xu controlled that account. Mr. Zemin Xu's declaration dated May 29, 2020, (ECF Dkt. No. 157), states that he acted independently of Mr. Shi. The Receiver's assertions otherwise are mere speculation contradicted by the written record and sworn statements.

Fourth, the Receiver's description of the actions of his agent, Mr. Lilin Guo, are inaccurate and omit relevant facts. As set forth in Mr. Zemin Xu's declaration and the declaration of Mr. Hua Jingyuan, (ECF Dkt. Nos. 155 ¶¶ 49-68), Mr. Guo falsified signatures and other papers in order to substitute himself as the legal representative of the WFOE in the place and stead of Mr. Zemin Xu, and thereby assert control over that entity. Upon learning of the obvious forgeries by Mr. Guo, Mr. Xu commenced legal proceedings against Mr. Guo. Ultimately, the Beijing Haidian District People's Court found that Mr. Guo had, in fact, forged Mr. Xu's signature but that the forgery would be overlooked because the Mr. Guo had been duly appointed by the board of directors as the legal representative of the WFOE. Thus, the legal proceedings commenced by Mr. Xu were nothing more than the action of a corporate officer seeking a judicial ruling as to the validity of action taken by Mr. Guo based on obviously forged corporate documents and the identity of the person who can act as the legal representative of the WFOE and, therefore, is responsible for the

Hon. Victor Marrero
Hon. Debra Freeman
July 22, 2020
Page 3 of 3

legal obligations that accompany that role. Mr. Shi was never a party to any of those legal proceedings, never sought to be appointed as the legal representative of the WFOE, and Mr. Xu's sworn statement confirms as much.

Finally, the Court should strike and disregard the Receiver's letter. In addition to the "threshold matters" now before Judge Freeman, there is also now pending before Judge Freeman the motion of China AI Capital Ltd. to intervene as of right and to discharge the Receiver on the grounds that, *inter alia*, the derivative claims underlying the Receiver's appointment must be dismissed because of the Plaintiff's utter lack of standing and the Receiver's lack of independence as a result of his indirect economic interest in Plaintiff's derivative claims. Mr. Shi respectfully submits that the submission of the Receiver's letter now, after the pending motions have been fully briefed and are *sub judice*, in combination with the clear bias evidenced in and the omission of relevant facts from the Receiver's letter, demonstrates that the true purpose of the Receiver's letter was to submit an impermissible supplemental sur-reply in further opposition to the motions. The Court should not permit such underhanded tactics. Accordingly, Mr. Shi respectfully requests that the Court strike and disregard the Receiver's letter of July 17, 2020.

Respectfully submitted,

*/s/ Michael James Maloney*

Michael James Maloney

cc: All counsel of record (via ECF)