UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.)<br><br>Plaintiff,<br>-against-<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU,<br><br>Defendants,<br>-and-<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.),<br><br>Nominal Defendant. | 1:18-cv-11642-VM-DCF<br><br>**DECLARATION OF LILIN "FRANCIS" GUO** |

LILIN "FRANCIS" GUO declares, pursuant to 28 U.S.C. 1746, as follows:

1.  I am a representative of Robert Seiden (the "Receiver") in his capacity as the Receiver over Link Motion Inc. ("LKM" or the "Company") in the People's Republic of China ("PRC"). In April 2019, the Receiver appointed me as the legal representative of an LKM subsidiary, NQ Mobile (Beijing) Co., Ltd., a wholly foreign owned entity (the "WFOE") in the PRC. I submit this declaration in response to Defendant Vincent Wenyong Shi's ("Shi") Motion to discharge the Receiver and dissolve the preliminary injunction (the "Motion").

**The Shutdown of LKM's Operations in China**

2.  I understand that in the Motion Shi contends that I began to shut down the operations of the Company in 2019. I have never shut down any operations of the Company in the PRC, nor fired any LKM employee in any form. Quite the contrary, beginning in December of 2018 (four months before my appointment as an agent of the Receiver in April

1

2019, as described further below), Shi forced the majority of employees to leave their jobs by suspending their wages.  Shi also ransacked the Company's office space in Beijing and removed its financial documents, carried away its business license and bank keys and company seals, formed new companies, and took the Company's software applications to take the Company's revenues.

3. Shi's removal of the Company's records caused damage to the Company.  For example, in May 2019, the Beijing Tax Authority launched an inquiry into the WFOE.  A copy of this inquiry with relevant translations is attached hereto as **Exhibit A**. Because Shi had refused to provide me with the WFOE's records and had concealed or destroyed the information, we were unable to provide the tax authority with the documentation that it requested.  As a result, the tax authority imposed an RMB10,000 yuan fine. A true and correct copy of the tax penalty with relevant translations is attached hereto as **Exhibit B**.

**The Disappearance of the Company's Cash**

4. In April of 2019, to secure and preserve LKM funds, in accordance with the shareholder resolution made by Link Motion International Limited in Hong Kong (a subsidiary of LKM), the Receiver appointed me as the legal representative of NQ Mobile (Beijing) Co., Ltd., the WFOE in the PRC.  The WFOE's previous legal representative was Zemin Xu ("Xu"), a close associate of Shi's.

5. On April 18, 2019, I went to China Merchants Bank, where the WFOE accounts were held, and requested that the bank change the WFOE's reserve seals, cancel Shi's designation as the Person in Charge of Finance for the WFOE (this designation allowed Shi to be in control of WFOE finances[1]), nullify the old reserve seals and keys, and not allow any

---

[1] Attached as **Exhibit C** is a true and correct copy of a State Administration of Taxation – Beijing document stating that Shi was the Person in charge of Finance at the time.

2

transfer of company funds without my approval as the new legal representative. This was incredibly important as the WFOE held the vast majority of the Company's funds in the PRC.

6.  Xu then immediately filed a lawsuit in the People's Court of Haidian District in Beijing, China (the "Haidian Court") against me and the WFOE challenging my appointment as the WFOE's legal representative. Soon after, Xu sought a conduct preservation order (the "Preservation Order") which would stop the WFOE from changing the seals. The Preservation Order was granted.[2] The Preservation Order stopped me from accessing WFOE funds to pay staff wages and legal expenses. Although the Preservation Order was granted, Xu was still discharged, Shi's status as the Person in Charge of Finance was still canceled, the seals and banking keys were still invalidated, and therefore Xu and Shi had no legal authority to access or transfer WFOE funds. I won both lawsuits on August 22, 2019 and December 24, 2019 respectively. Then the Receiver and I successfully changed the reserve seals and regained access to the Company's bank accounts.

7.  The Preservation Order was lifted in June of 2020, roughly a year after it was first issued. Upon completion of the change of reserve seals my team immediately investigated the Company's relevant bank accounts. My team thought there would be enough money to pay staff salaries and legal fees, but we quickly realized that the Company's funds were stolen. This surprised us because it was our understanding that the Company maintained nearly all of its cash balances in the PRC, and on February 7, 2018, Shi filed an open letter to the SEC stating that the "Company's cash, cash equivalents, term deposits and restricted cash as of the last reported results on September 30, 2017 totaled $248.8 million. Between September 30,

---

[2] Based upon my consultations with legal experts in the PRC, the issuance of the Preservation was improper. As discussed in paragraph 9 below, I have filed lawsuits seeking damages against the Haidian Court based upon the improper issuance of the Preservation Order and China Merchant's Bank based on the violation of their contract with the WFOE.

3

2017 and December 31, 2017, the Company also received approximately $220 million more in cash from Tongfang." A true and correct copy of this letter is attached hereto as **Exhibit D**.

8. Based upon my investigation, in 29 different transactions between May and November of 2019, Shi used the now-nullified seals and banking keys to transfer RMB 626 million (at the time valued at over USD $89 million) from the Company to a company called Beijing NQ Mobile Technology Limited (a wholly-owned subsidiary of LKM that Shi still had control of). A true and correct copy of these bank records are attached hereto as **Exhibit E**. Xu was the legal representative for Beijing NQ Mobile Technology Limited.

9. In his Motion, Shi contends that an approximately $88 million transfer was related to the Company's repayment of a legitimate loan. Shi is trying to confuse the court, the Receiver is challenging a different set of transfers totaling RMB 626 million (or approximately $89 million) that are discussed in paragraph 8 above that occurred between May and November 2019. These $89 million in transfers were unauthorized and illegal, because once I was appointed as the WFOE's legal representative in China in April 2019, Shi and Xu no longer had any legal authority over Company funds. They secretly and illegally made these transfers without the Receiver's consent. I have now filed lawsuits against the Haidian Court based on their improper issuance of the Preservation Order, and China Merchant's Bank based on their violation of their contract with the WFOE. This litigation is ongoing.

10. Indeed, my team has discovered numerous other transfers of the Company's equity investments and funds from the WFOE's accounts. This includes having an LKM subsidiary, Qingyun Infinite Venture Capital Management Co., Ltd. ("Tianjin"), borrow RMB 225 million between March 8 and March 15, 2017. Shi then transferred Tianjin to a third-party company in October 2018. This same tactic was done with Zhengding Fangxin ("Zhengding"), which

4

borrowed RMB 70 million from the Company between February 6, and July 27, 2018. Zhengding was transferred to one of Shi's third-party companies in February of 2019 without a third-party appraisal beforehand. LKM has never seen any return of Company funds from these transactions.

**Litigations by Former Employees Against the Company**

11. As stated above, beginning in December 2018, Shi stopped paying employee salaries, resulting in extensive labor litigation that began before the appointment of the Receiver. Some employees had won their labor arbitrations before I was appointed as the legal representative. However once appointed as the legal representative in April 2019, it became my duty to manage these litigations.

12. It was incredibly difficult to manage these litigations (and to determine whether these claims were valid) as Shi refused to provide me with company data and materials including labor and personnel files, employee lists, entry dates, employment contracts, salary records, as well as the Company's financial books. My attorneys advised me that because I couldn't confirm the lawsuits underlying facts, it was my duty as the Receiver's agent to protect the interests of the Company and appeal the judgments. This was the only way make sure a full and complete review of the facts was completed.

13. At the time I was appointed as the legal representative in April 2019, there were ample funds in WFOE accounts to pay any judgments and legal expenses. But Shi diverted the WFOE's funds. This has prevented the WFOE from paying any of the judgments issued in favor of the former employees.

14. As I am now the legal representative of the WFOE and the WFOE failed to meet its payment obligations, I have been placed on the spending restriction list (the "Restriction

List"). This Restriction List would be referred to as a blacklist in America. I cannot travel by air, purchase first class train tickets, check into hotels, send my kids to private schools, or even visit my family abroad. The Restriction List is still in place. The only way for Mr. Guo's designation on the Restriction List to be dismissed is for Shi to return the stolen WFOE funds so the Company can satisfy its debts. While Shi claims that the Receiver is paying me at the expense of the Company's employees, this is false. I have never paid myself with Company funds.

**The Criminal Investigation of Shi in the PRC**

15. In late 2020, criminal judgments were entered in the Beijing Chaoyang District People's Court against Kang Tianhui and Shang Fengqi (the "Kidnappers") for kidnapping LKM's Founder and former chief executive officer, Henry Lin in November of 2016. The judgments were affirmed on appeal. Attached hereto as **Exhibit F** is a true and correct copy of the lower court's ruling and a translation of relevant excerpts. Attached hereto as **Exhibit G** is a true and correct copy of the appeals court's ruling and a translation of relevant excerpts. As reflected in **Exhibit F**, the Kidnappers told Henry Lin that Shi had hired them. It is apparent that this was a part of Shi's scheme to gain control over the Company.

16. WFOE counsel has informed me that a criminal investigation of Shi has been initiated concerning Lin's kidnapping. Beijing Chaoyang District Police (the "Beijing Police") began the criminal case in August of 2018. As Shi misappropriated RMB440 million from an LKM subsidiary (Xinjiang NQ Venture Capital Co., Ltd.), the Beijing Police are also investigating Shi's embezzlement and misappropriation of Company funds. The National People's Congress of the PRC is supervising this action through the Ministry of Public Security of the PRC.

17.     The WFOE's counsel was informed by the Beijing police, and subsequently informed me, that Shi has fled the PRC through its southern border via illegal means and has avoided police detection.  The WFOE's counsel and I are cooperating with the Beijing Police on this matter and I will keep the Receiver informed of any further updates.

I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 19, 2021

<u>/s/ Lilin "Francis" Guo</u><br>
Lilin "Francis" Guo