**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

                             Plaintiff,

        -against-

LINK MOTION INC. (F/K/A NQ MOBILE
INC.), VINCENT WENYONG SHI, JIA LIAN,
XIAO YU,

                           Defendants,

        -and-

LINK MOTION INC. (F/K/A NQ MOBILE
INC.),

Nominal Defendant.

Civil Action No.: 1:18-cv-11642

**VINCENT WENYONG SHI'S REPLY BRIEF IN FURTHER**
**SUPPORT OF HIS MOTION TO DISSOLVE THE**
**PRELIMINARY INJUNCTION AND DISCHARGE THE RECEIVER**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.   The Receivership and Preliminary Injunction Must Be Dissolved Because Plaintiff's
     Withdrawal of His Derivative Claims Deprives the Court of Jurisdiction Necessary for the
     Receivership Order and Preliminary Injunction ...................................................................... 2

II.  Plaintiff's Direct Claims Do Not Support a Continuation of the Receivership ....................... 3

III. Because Plaintiff Lacked Standing to Assert the Derivative Claim on Which the Receivership
     Order Was Granted, the Receivership Order Must Be Dissolved ............................................ 9

IV.  Baliga's Lack of Derivative Standing Is Not a Mere Technicality That Can Be Retroactively
     Remedied ............................................................................................................................. 11

V.   ADR Holders Can Obtain Equitable Relief from U.S. Courts, by Following the Rules ......... 12

VI.  The Court Must Cut Through the Mud Slinging by Plaintiff and the Receiver ..................... 13

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

CASES

*Adler v. Aztech Chas. P. Young Co.*, 807 F. Supp. 1068 (S.D.N.Y. 1992) ....................................3

*Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197 (S.D.N.Y. 2020).....................4

*Batchelder v. Nobuhiko Kawamoto*, 147 F.3d 915 (9th Cir. 1998) ..............................................12

*Burnrite Coal Briquette Co. v. Riggs*, 274 U.S. 208 (1927)........................................................5, 10

*Chambers v. Time Warner, Inc.*, No. 00 Civ. 2839 (JSR), 2003 U.S. Dist. LEXIS 3652
    (S.D.N.Y. Mar. 10, 2003)................................................................................................3

*Debussy LLC v. Deutsche Bank AG*, 2006 U.S. Dist. LEXIS 16432
    (S.D.N.Y. Mar. 29, 2006) .............................................................................................17

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ....................................................................6

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187
    (2d. Cir. 2009) ...........................................................................................................7, 9

*Fed. Sav. & Loan Ins. Corp. v. PSL Realty Co.*, 630 F.2d 515 (7th Cir. 1980) ..........................10

*Ga. Malone & Co., Inc. v. Rieder*, 2012 NY Slip Op 5200, ¶ 4, 19 N.Y.3d 511, 950 N.Y.S.2d
    333,
    973 N.E.2d 743 (2012) .................................................................................................9

*Helmer v. Briody*, 721 F. Supp. 498 (S.D.N.Y. 1989) ....................................................................3

*Hester Indus., Inc. v. Tyson Foods, Inc.*, 882 F. Supp. 276 (N.D.N.Y. 1995) ...............................4

*In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9 (2d Cir. 2019) ............................6

*In re JMO Wind Down, Inc.*, No. 16-10682 (BLS), 2018 Bankr. LEXIS 1126 (Bankr. D. Del.
Apr. 13, 2018) ..........................................................................................................................17

*In re Luxottica Grp. S.p.A. Sec. Litig.*, 293 F. Supp. 2d 224 (E.D.N.Y. 2003) ............................9

*In re Puda Coal Secs. Inc.*, Nos. 11-cv-2598, 15-cv-2304, 2016 U.S. Dist. LEXIS 174504
(S.D.N.Y. Dec. 16, 2016) ...........................................................................................................5

*Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313 (2d Cir. 1973), *cert. denied*,
416 U.S. 986, 94 S. Ct. 2389, 40 L. Ed. 2d 763 (1974) ............................................................15

*JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75 (2d Cir. 1990)...................................4

*Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.)*, 320 F.3d 291, 297 (2d Cir. 2003) ..........12

*Kramer v. W. Pac. Indus.*, 546 A.2d 348 (Del. 1988) ...................................17

*Litman v. Prudential-Bache Props., Inc.*, 611 A.2d 12 (Del. Ch. 1992) ......................................17

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592 (S.D.N.Y. 2014) .................4

*Marco v. Dulles*, 177 F. Supp. 533 (S.D.N.Y. 1959) ....................................12

*Melgen v. Bank of Am. Corp. (In re Bank of Am. Corp. Sec.)*, No. 09 MD 2058 (PKC), 2013 U.S. Dist. LEXIS 176295 (S.D.N.Y. Dec. 11, 2013) ..........................................................................7

*NV Petrus SA v. LPG Trading Corp.*, No. 14-CV-3138 (NGG) (PK), 2017 U.S. Dist. LEXIS 69935 (E.D.N.Y. May 8, 2017) ....................................................................15

*Phoenix Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995) ....................................15

*Prudential Ins. Co. of Am. v. Hilton Hotels Corp.*, 1995 U.S. Dist. LEXIS 18900, 1995 WL 758781 (S.D.N.Y. Dec. 20, 1995) ...........................................................................4

*Rodriguez by Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1998)...................................4

*Rogers v. Guar. Tr. Co.*, 288 U.S. 123, 130, 53 S. Ct. 295, 297 (1933) ........................................5

*Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49 (1975)...................................4

*Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 112 S. Ct. 748 (1992) ............................10, 11

*Schwab v. E\*TRADE Fin. Corp.*, 752 F. App'x 56 (2d Cir. 2018) ...........................................6, 7

*Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328 (2d Cir. 1995) .......................................4

*Steginsky v. Xcelera Inc.*, 741 F.3d 365 (2d Cir. 2014) ......................................7, 8

*Sys. Fed'n No. 91 Ry. Emps' Dep't v. Wright*, 364 U.S. 642, 81 S. Ct. 368 (1961) ...............3, 10

*Taseko Mines Ltd. v. Raging River Capital*, 185 F. Supp. 3d 87 (D.C. Cir. 2016) .......................5

*Telestrata, LLC v. NetTALK.com, Inc.*, 126 F. Supp. 3d 1344 (S.D. Fla. 2015) ...........................6

*Varsames v. Palazzolo*, 96 F. Supp. 2d 361 (S.D.N.Y. 2000)........................................2

*Victrix S.S. Co., S.A. v Salen Dry Cargo A.B.*, 825 F2d 709 (2d Cir 1987) .................................15

*Woori Bank v. Citigroup Inc.*, 2013 U.S. Dist. LEXIS 47524 (S.D.N.Y. Mar. 27, 2013) ............9

STATUTES

9 U.S.C. § 201 et seq. (1982) ..................................................................15

15 U.S.C. § 78u-4(b)(1)...........................................................................7

15 U.S.C. § 78u-4(b)(2)(A) ......................................................................7

RULES

F.R.E. 106...............................................................................................15

Defendant Vincent Wenyong Shi ("Shi") submits the following memorandum in further support of his motion to dissolve the preliminary injunction and discharge the receiver.[1] All capitalized terms herein have the same meaning as in Shi's opening Memorandum of Law in Support of his Motion to Dissolve the Preliminary Injunction and Discharge the Receiver ("Opening Br.").

## PRELIMINARY STATEMENT

A federal court only has authority to impose a temporary receiver in rare circumstances and must discharge the receiver when the facts underlying the appointment change. Here, Plaintiff Wayne Baliga ("Plaintiff" or "Baliga") has voluntarily withdrawn the derivative claims that supported the original appointment of Robert W. Seiden as receiver ("Receiver"), after it was discovered that Baliga was not a registered shareholder and proposed intervenor China AI Limited submitted a Cayman legal opinion showing that, as an ADR holder, Plaintiff never had standing to assert derivative claims. Baliga's withdrawal of his derivative claims constitutes a material change in fact that requires dissolution of the Receivership Order nunc pro tunc.

Looking past Baliga's and the Receiver's baseless attacks on Shi's character, the procedural posture of this case is simple: The appointment of the Receiver and entry of the preliminary injunction, Dkt No. 26 (the "Receivership Order"), as Baliga concedes, Dkt. No. 241 at 10 n.2, was based *entirely* on Plaintiff's alleged standing as a derivative plaintiff and his claim – on behalf of LKM – for breach of a fiduciary duty owed to LKM, all as alleged in his Verified Shareholder Derivative Complaint. Dkt No. 1. Those allegations and claims have now been

---

[1] This Court and the parties previously recognized Shi's standing to challenge the Receivership Order and to represent LKM in connection with the motion to dismiss the Second Amended Complaint. Dkt No. 175.

1

voluntarily withdrawn, and such a withdrawal constitutes a material change in circumstances that requires the dissolution of the receivership and preliminary injunction.

Plaintiff's direct claims in the operative complaint cannot support a continuation of the receivership because those claims seek only money damages for the loss of the value of his investment in the ADRs. Money damages are insufficient to support a finding of irreparable harm. And, Plaintiff's allegations fail to show a likelihood of success, making preliminary injunctive relief unavailable.

Dissolving the receivership here will not have the dire effects that Plaintiff and the Receiver conjure in their papers. Plaintiff will still be able to pursue his direct claims against LKM and Shi (subject to the forthcoming motion to dismiss). ADR holders will still be able to enforce their rights in accordance with the terms of the operative documents that govern the ADRs. The Board of Directors[2] will be able to investigate and pursue claims, as they deem appropriate, pursuant to the business judgment rule, to protect LKM and its registered shareholders.

## ARGUMENT

### I.     The Receivership and Preliminary Injunction Must Be Dissolved Because Plaintiff's Withdrawal of His Derivative Claims Deprives the Court of Jurisdiction Necessary for the Receivership Order and Preliminary Injunction.

The appointment of a receiver and entry of a preliminary injunction are provisional remedies invoking the Court's equitable powers. *See Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) ("A federal court has the power in equity to appoint a receiver in order to protect a party's interest in property"). Provisional equitable remedies must be vacated upon "a showing of a change in the operative facts so that the [provisional equitable relief] is no longer

---

[2] It is Shi's understanding that only he has been removed as a director of LKM.

justified." *Helmer v. Briody*, 721 F. Supp. 498, 505 (S.D.N.Y. 1989). *See also Sys. Fed'n No. 91 Ry. Emps' Dep't v. Wright*, 364 U.S. 642, 647, 81 S. Ct. 368, 371 (1961) (a district court has the inherent power to modify or vacate "if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen").

The Court appointed the Receiver and entered the preliminary injunction based on Plaintiff's allegations of derivative standing and assertion of derivative claims, in particular Plaintiff's original derivative claim for breach of fiduciary duty. *See* Dkt No. 26 at 2 (referring to the Court's "review of all the papers submitted by Baliga in this action and in support of the request for a preliminary injunction and appointment of a temporary receiver"); *Adler v. Aztech Chas. P. Young Co.*, 807 F. Supp. 1068, 1073 (S.D.N.Y. 1992) (recognizing claims of "breaches of fiduciary duty" as "a claim that may invoke equitable relief"). By filing the Second Amended Complaint, Dkt No. 166, which asserted only direct claims sounding primarily in fraud, Plaintiff voluntarily withdrew his allegations of derivative standing and his derivative claims sounding in equity. *Chambers v. Time Warner, Inc.*, No. 00 Civ. 2839 (JSR), 2003 U.S. Dist. LEXIS 3652, at *5 (S.D.N.Y. Mar. 10, 2003) ("[A] Rule 15(a) amendment eliminating a claim is the same as a Rule 41(a) voluntary dismissal of the claim.").

Thus, the circumstances on which the Receivership Order and preliminary injunction were granted have changed fundamentally.

## II.     Plaintiff's Direct Claims Do Not Support Continuation of the Receivership.

Plaintiff's direct Exchange Act claims do not provide an independent basis for continuing the receivership. As Plaintiff himself concedes in his opposition brief, a preliminary injunction and temporary receiver based on his Exchange Act claim would still require Plaintiff to show irreparable harm and a likelihood of success under the same standard ordinarily applicable to

requests for the appointment of a temporary receiver and preliminary injunction. Pl.'s Br. 11

(citing *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61 (1975)). He can do neither.

    A.  <u>Baliga Cannot Demonstrate Irreparable Harm.</u>

    It is well-settled that irreparable harm is "the single most important prerequisite for the

issuance of a preliminary injunction." *Rodriguez by Rodriguez v. DeBuono*, 175 F.3d 227, 234

(2d Cir. 1998) (internal quotations and citations omitted). "Where money damages are adequate

compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.*,

917 F.2d 75 (2d Cir. 1990); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995);

*Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 209 (S.D.N.Y. 2020) (denying

preliminary injunction); *Prudential Ins. Co. of Am. v. Hilton Hotels Corp.*, 1995 U.S. Dist.

LEXIS 18900, at *5, 1995 WL 758781 (S.D.N.Y. Dec. 20, 1995); *Hester Indus., Inc. v. Tyson

Foods, Inc.*, 882 F. Supp. 276, 277 (N.D.N.Y. 1995). Plaintiff's Second Amended Complaint

alleges only that he purchased ADRs on the NYSE and that he has lost the value of that

investment purportedly as a result of allegedly fraudulent statements or omissions of material

fact by the defendants. Plaintiff alleges the loss of a total investment of a little more than

$634,000. Dkt No. 166 ¶ 126. This is a claim for money damages and, therefore, there is no

irreparable harm.

    Plaintiff trots out a request that the Court continue the receivership to "prevent

impairment of corporate assets." Pl.'s Br. 15. But not only has Shi submitted evidence refuting

the alleged impairment, Plaintiff's argument necessarily fails because he has asserted claims

against Shi, personally, and several parties other than LKM. *Marblegate Asset Mgmt. v. Educ.

Mgmt. Corp.*, 75 F. Supp. 3d 592, 608 (S.D.N.Y. 2014) (finding no irreparable harm when

plaintiff could obtain relief from other parties).

Baliga's citation to *Burnrite Coal Briquette Co. v. Riggs*, 274 U.S. 208, 212 (1927), a case that is nearly 100 years old, is misguided. *Burnrite* merely stands for the proposition that a federal court *may* have jurisdiction over a bill alleging wrongful divestment of corporate assets. Even so, the Supreme Court recognized in *Burnrite* that where appointment of a receiver is sought in a state other than the state of incorporation (as is the case here), the court may "decline to interfere as a matter of comity or for want of equity; or it may request the court to limit the scope of relief granted." *Burnrite*, 274 U.S. at 212 (citations omitted).

Shi is not arguing here that the Court lacks jurisdiction over Baliga's direct Exchange Act claims for money damages; Shi argues that without derivative claims, there is a "want of equity" sufficient to justify continuation of the Receiver. *Burnrite*, 274 U.S. at 213; *In re Puda Coal Secs. Inc.*, Nos. 11-cv-2598, 15-cv-2304, 2016 U.S. Dist. LEXIS 174504, at *2-3 (S.D.N.Y. Dec. 16, 2016). "It has long been settled doctrine that a court – state or federal – sitting in one State will as a general rule decline to interfere with or control by injunction or otherwise the management of the internal affairs of a corporation organized under the laws of another State. . . ." *In re Puda Coal*, 2016 U.S. Dist. LEXIS 174504, at *2 (quoting *Rogers v. Guar. Tr. Co.*, 288 U.S. 123, 130, 53 S. Ct. 295, 297 (1933)).

Plaintiff's reliance on *Taseko Mines Ltd. v. Raging River Capital*, 185 F. Supp. 3d 87 (D.C. Cir. 2016) is misplaced. In *Taseko Mines*, plaintiff alleged irreparable harm in the form of risk of a change of control. Baliga alleges that the loss of his investment resulted from looting of the company, *i.e.*, money damages, and has never alleged that there was an imminent change of control in LKM. *Taseko Mines* is also distinguishable because it concerned an insufficient disclosure of the entities who were seeking to obtain control, whereas Baliga alleges only that LKM was delisted because it was unable to file timely financial statements. Baliga does not cite,

and Shi has been unable to locate, any case in which a court imposed a preliminary appointment

of a receiver on the basis of a failure to timely file financial statements alone.

Plaintiff also relies on *Telestrata, LLC v. NetTALK.com, Inc.*, 126 F. Supp. 3d 1344 (S.D.

Fla. 2015), but that case is entirely inapposite because that case involved the dilution of a

majority stockholder to the status of a minority stockholder (and is nonprecedential in this

circuit). *Telestrata*, 126 F. Supp. 3d at 1350-54. Here, even if Baliga had converted his ADRs

into Cayman shares, he would have always been a minority shareholder with no claim to

majority ownership or even preemptive rights. The risk of dilution of minority ADR holders was

fully and adequately disclosed in LKM filings well before Baliga purchased his ADRs. *See*

Maloney Decl. Ex. B, at 41, 42-43.

      B.  <u>Baliga Cannot Demonstrate a Likelihood of Success.</u>

To establish a likelihood of success on his Exchange Act claims, Plaintiff must allege

"(1) a material misrepresentation (or omission), (2) scienter, (3) a connection with the purchase

or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation." *Schwab v.*

*E\*TRADE Fin. Corp.*, 752 F. App'x 56, 58 (2d Cir. 2018) (citing *Dura Pharms., Inc. v. Broudo*,

544 U.S. 336, 341-42 (2005)).

Unlike the derivative breach of fiduciary duty claim asserted in Plaintiff's original

Complaint, Plaintiff's direct Exchange Act claims are subject to a heightened pleading standard.

"[W]hen a complaint alleges securities fraud, the heightened pleading standards of Rule 9(b) of

the Federal Rules of Civil Procedure and the [PSLRA] . . . apply." *In re Express Scripts*

*Holdings Co. Sec. Litig.*, 773 F. App'x 9, 12 (2d Cir. 2019). "Under the PSLRA, the complaint

must 'specify each statement alleged to have been misleading, [and] the reason or reasons why

the statement is misleading,' and 'state with particularity facts giving rise to a strong inference

that the defendant acted with the required state of mind.'" *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d. Cir. 2009); *see also* 15 U.S.C. § 78u-4(b)(1); 15 U.S.C. § 78u-4(b)(2)(A).

Plaintiff cannot meet this high standard for two reasons. First, the overwhelming majority of Plaintiff's purchases of ADRs occurred before the alleged misconduct alleged in the Second Amended Complaint. *See* Second Amended Complaint ¶ 4 (alleging conduct beginning in March 2017), ¶ 126 (alleging only 13 purchases of ADRs occurring after March 2017, out of a total of 32 purchases). Therefore, it was impossible for Plaintiff to have relied on a "material misrepresentation (or omission)" in connection with those earlier purchases of ADRs. *Schwab*, 752 F. App'x at 58.

Second, Plaintiff fails to sufficiently allege reliance on any disclosures by LKM or Shi in connection with the few, later purchase of ADRs. *See Melgen v. Bank of Am. Corp. (In re Bank of Am. Corp. Sec.)*, No. 09 MD 2058 (PKC), 2013 U.S. Dist. LEXIS 176295, at *59-60 (S.D.N.Y. Dec. 11, 2013) (conclusory allegations "do not allege reliance on any purported misstatements or omissions" and are properly "rejected as insufficient"). None of Baliga's purchases correlate to any of the alleged fraudulent disclosures alleged in the Second Amended Complaint and the company's long-standing financial problems were well disclosed before the alleged misconduct in 2017. Accordingly, none of the allegations in the Second Amended Complaint would satisfy the likelihood of success standard necessary to justify preliminary injunctive relief.[3]

---

[3] In the September 4, 2020 Memorandum Order, the Court queried the impact of whether the Exchange Act claims in the Complaint and First Amended Complaint had been deemed to be direct breach of fiduciary duty claims by Baliga. Dkt No. 163 at 52-53, 52 n.13. *Steginsky v. Xcelera Inc.*, 741 F.3d 365 (2d Cir. 2014), originally cited by Plaintiff, and referred to by the Court, is inapposite because the plaintiff in that case was an actual shareholder, whereas Baliga is merely a holder of ADRs. Moreover, even though the duty against insider trading discussed in *Steginsky* was described in "fiduciary-like" terms, the damages for breach of such a duty were based entirely on the price differential of the shares at issue and, therefore, would not support the irreparable harm element necessary to

Even assuming Plaintiff could demonstrate actual reliance with respect to the few purchases of ADRs that occurred within the operative time period, the "facts" that Plaintiff marshals in support of his argument of likelihood of success on the merits have all been refuted by evidence previously submitted to this Court. *See* Opening Br. 10-12. Plaintiff's allegations regarding purported transfer of shares of FL Mobile, Showself, SyberOS and Rideshare cannot satisfy the heightened pleading standard because LKM never owned any shares of FL Mobile, Showself, SyberOS, and Rideshare. *See* Maloney Decl. Ex. B, at 9-10, 29-31, 53-56; Maloney Decl. Ex. G, at 97-98, 224-25, 227-33. LKM owned only a beneficial interest in those entities through the "Control Documents" disclosed in LKM's filings, *see id*., and Plaintiff has never alleged any alteration to LKM's beneficial interest in those entities. Accordingly, Plaintiff has failed to allege any plausible harm with respect to LKM's interest in those entities.

The alleged scheme involving payments to China Merchants Bank's Luxembourg branch is nothing more than the repayment of a loan to LKM made for purposes of foreign exchange to repay the company's 4.00% Convertible Senior Notes due October 15, 2018 (the "Notes"). *See* Maloney Decl. Ex. G, at 68-69, 137, 320-21; Maloney Decl. ¶¶ 35, 38, 48; Shi Decl. ¶ 18, Ex. F § 2, G, H, I. *See also* Opening Br. 11-12. In short, none of Plaintiff's alleged fraud claims survive the heightened pleading standard of Rule 9(b) and the PSLRA.

Plaintiff's argument that what was found to be a likelihood of success in February 2019 should be sufficient to support a likelihood of success in August 2021 is entirely disingenuous. In February 2019, Plaintiff needed only to prove a likelihood of success on a derivative claim of breach of fiduciary duty owed by Shi to LKM for allegedly looting the company, a claim subject

---

justify provisional equitable relief. Ultimately, the Court should conclude that for the same reasons stated herein, *i.e.*, lack of irreparable harm and a likelihood of success, Baliga's original Exchange Act claims, even if such claims were direct, would not have been sufficient, standing alone, to support the appointment of a temporary receiver or preliminary injunctive relief as originally requested by Plaintiff.

to the lenient notice pleadings standard of Rule 8. *In re Luxottica Grp. S.p.A. Sec. Litig.*, 293 F. Supp. 2d 224, 238 (E.D.N.Y. 2003) (Rule 9 does not apply to claim for breach of fiduciary duty alleging mismanagement of company).[4] In August 2021, Plaintiff's fraud-based claims are direct, sound in fraud[5], and therefore are subject to the heightened pleading standard of Rule 9(b) and the PSLRA, a fundamentally different standard of pleading. *See ECA & Local 134 IBEW Joint Pension Tr. of Chi.*, 553 F.3d at 196.

Plaintiff's claim for unjust enrichment, the only claim in the Second Amended Complaint not subject to the heightened pleading standard, also fails to show a likelihood of success because Shi was not enriched to the detriment of Plaintiff. Rather, Shi contributed a personal guaranty of LKM's obligations and is now subject to an arbitration award of $175 million on that guaranty. Nor does Plaintiff allege a sufficiently close relationship between Baliga and Shi, which is necessary for a claim of unjust enrichment. *See Ga. Malone & Co., Inc. v. Rieder*, 2012 NY Slip Op 5200, ¶ 4, 19 N.Y.3d 511, 516, 950 N.Y.S.2d 333, 336, 973 N.E.2d 743, 746 (2012) ("[A] plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party.").

### III.   Because Plaintiff Lacked Standing to Assert the Derivative Claim on Which the Receivership Order Was Granted, the Receivership Order Must Be Dissolved.

As this Court previously recognized in its September 4, 2020 Memorandum Order, there is now "a question as to whether Baliga has standing to maintain this action" based on his original pleadings. Dkt No. 163 at 51.[6] The discovery of Plaintiff's lack of standing in the first

---

[4] And in February 2019, Baliga presented the Court with the purported consent of the Company, which Shi has shown to have been given improperly by then-Company counsel DLA Piper.

[5] Plaintiff's claim for negligent misrepresentation is subject to the heightened pleading standards of Rule 9(b). *Woori Bank v. Citigroup Inc.*, 2013 U.S. Dist. LEXIS 47524, at *17 (S.D.N.Y. Mar. 27, 2013).

[6] During the July 28, 2021 conference, the Court requested further briefing as to whether the dissolution of the receivership should be *void ab initio*. Counsel for the parties are meeting and conferring regarding a briefing schedule on this issue.

instance constitutes an independent change in facts requiring dissolution of the receivership and preliminary injunction because this fact was not known to the Court at the time it originally granted preliminary equitable relief. Plaintiff's lack of standing was discovered when China AI Limited – a registered shareholder with full access to the company's current register of shareholders – sought to intervene. *See* Dkt Nos. 123, 123-2. Plaintiff's and the Receiver's argument based on the consent of LKM's prior counsel is without merit. Where, as here, the Court lacked jurisdiction in equity to impose a receiver, a party's counsel's consent cannot confer such authority.[7] *Burnrite*, 274 U.S. at 214 ("jurisdiction may not be acquired by acquiescence"); *see also Fed. Sav. & Loan Ins. Corp. v. PSL Realty Co.*, 630 F.2d 515, 521 (7th Cir. 1980). The power of a district court to modify or vacate a receivership and preliminary injunction exists "by force of principles inherent in the jurisdiction of the chancery." *Sys. Fed'n No. 91 Ry. Emps' Dep't*, 364 U.S. at 647, 81 S. Ct. at 371 (internal quotations and citations omitted). "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *Id. See also Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383, 112 S. Ct. 748, 760 (1992) (holding that consent decrees may be modified upon a showing of a "significant change in circumstances").

Further, as set out in Shi's motion papers, the Company's board of directors did not consent to the receiver; did not approve counsel supposedly representing the Company or that counsel's statements on behalf of the Company; and did not receive timely notice of what counsel was going to do (or not do) on the Company's behalf. Dkt No. 230, Opening Br. 8; Maloney Decl. ¶¶ 12, 16, Ex. A. Neither Shi nor the Court had knowledge of the falsity of Plaintiff's allegations that he was a shareholder at the time the Receivership Order was entered.

---

[7] Further, as discussed in Dkt Nos. 211-14, LKM has potential claims against its former counsel DLA Piper LLP (USA) in connection with the purported consent that DLA gave to the Receivership appointment.

Dkt No. 163 at 51-54. As set forth in the motion to protect LKM's legal malpractice claim

against its former counsel, neither LKM nor Shi were properly advised by counsel with respect

to the Receivership Order. Dkt Nos. 211-14. Neither Plaintiff nor the Receiver have any response

to those plain facts.

Accordingly, the Court should exercise its inherent power to dissolve the receivership

and preliminary injunction based on the material change in fact, *i.e.,* discovery of Baliga's lack

of derivative standing, regardless of whether the preliminary equitable relief had been granted on

consent. *See also Rufo*, 502 U.S. at 383, 112 S. Ct. at 760 (holding that consent decrees may be

modified upon a showing of a "significant change in circumstances").

## IV. Baliga's Lack of Derivative Standing Is Not a Mere Technicality That Can Be Retroactively Remedied.

The Magistrate Judge, in a well-reasoned decision, rejected Plaintiff's late attempt to

remedy his standing by converting some of his ADRs into Cayman shares. Dkt No. 221, May 26,

2021 Decision, at 12-15. As the Court found, and Shi laid out in opposition to Plaintiff's

objection to that decision, the Court cannot rule on a contract dispute that is not before it. *Id.*;

Dkt No. 234, Shi Opp. to Objection, at 3-4. In addition, even if the Court approved Plaintiff's

interpretation of the underlying agreement, the Company could not convert Plaintiff's ADRs into

Cayman shares because the books were closed. *See* Dkt No. 206, Pl.'s Opp'n Br. 6-7.

In any case, converting ADRs in 2021 would not confer on Baliga standing retroactively

to 2018, when he commenced this action. Simply put, a plaintiff suing derivatively must have

standing as a shareholder "at the time of the transactions of which the plaintiff complains."

*Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.)*, 320 F.3d 291, 297 (2d Cir. 2003) (internal

quotations and citations omitted). Plaintiff's citations to Cayman caselaw do not state otherwise

and conversion of Plaintiff's ADRs in 2021 cannot change the fact that he was not a registered

shareholder at the time of the transactions of which he complains in the Second Amended Complaint.

LKM is a Cayman Islands limited company governed by Cayman Islands law, which does not confer standing on beneficial owners. *See Batchelder v. Nobuhiko Kawamoto*, 147 F.3d 915, 923 (9th Cir. 1998) (affirming dismissal with prejudice on basis that plaintiff, an ADR holder, lacked standing to assert a derivative claim under Japanese law); Shi Decl. Ex. B, C. Baliga cannot rely on *Marco v. Dulles*, 177 F. Supp. 533, 551 (S.D.N.Y. 1959). Pl.'s Opp'n Br. 17. In *Marco*, the Court recognized that the law of the state of incorporation governs the standing of a beneficial owner to bring derivative claims. Plaintiff's citation to *Marco v. Dulles* is, in essence, a request that this Court make new law, in contravention to long-standing Second Circuit precedent, to give Plaintiff standing to sue derivatively *retroactively*. This argument does not address, but ignores, the fundamental change in circumstances resulting from the withdrawal of Plaintiff's derivative claims and should be rejected.

**V.      ADR Holders Can Obtain Equitable Relief from U.S. Courts, by Following the Rules.**

As its final argument to keep the Receiver in place, Plaintiff tries to scare the Court by claiming that granting this motion would mean that no ADR purchaser would ever be able to seek equitable remedies to prevent dissipation of assets if Plaintiff was not allowed to do so here. That argument is simply wrong. As Plaintiff admits, ADRs are a "regular feature of the market today." Dkt No. 241, Pl.'s Opp'n Br. 27. ADRs are not novel financial products that investors cannot understand. Any holder of ADRs can potentially obtain equitable relief (or other relief) by following the rules set up by the listing company when it registered its shares with a depositary in the United States. Sometimes that may mean that an ADR holder may sue as an ADR holder with all the same rights as shareholders (depending on the laws of incorporation).

Sometimes that may mean that the ADR holder needs to convert his ADRs into a company's shares *before* he obtains a shareholder's underlying rights. All the ADR holder needs to do is review the documentation.

Here, the Company's publicly available documents, available before Plaintiff purchased any ADR, tells potential investors that the Company "will not treat ADS holders as our shareholders and accordingly, you, as an ADS holder, will not have shareholder rights. Cayman Islands law governs shareholder rights." Maloney Decl. Ex. B, at 141. The Company's publicly available documents also describe the process by which Plaintiff could have converted his ADRs into Cayman shares. Maloney Decl. Ex. B, at 12 ("You may turn in your ADSs to the depositary in exchange for Class A common shares"). Had Plaintiff read the company's filings and exchanged his ADRs for common shares before filing this action, he would have had standing to sue derivatively. The Court is not an advocate for Plaintiff and is not responsible for correcting his errors. Therefore, Plaintiff's scare-tactics should be disregarded.

**VI.    The Court Must Cut Through the Mud Slinging by Plaintiff and the Receiver.**

Yet again, Plaintiff and the Receiver trot out the same conspiracy theories they have been alleging ever since Plaintiff's lack of standing was discovered. Yet again Shi is compelled to respond so as to avoid the misimpression that not responding to these baseless claims is an admission. The Receiver's and Plaintiff's pages of defamatory text are without basis for the reasons set forth in Shi's prior submissions.[8] Briefly, Shi has not drained the Company of funds, as the Receiver claims. Shi's name does not appear anywhere on any of the bank records and receipts submitted by the Receiver. Why? Because Shi was never a signatory to the account. As

---

[8] It is unclear why or on what basis the Receiver has filed a response to this motion, other than to further carpet-bomb the docket with unsubstantiated allegations. The Receiver should not be advocating for Plaintiff or even a continuation of his office. A receivership is "never an end in itself." *In re Wiand*, No. 8:10-cv-71-T-17MAP, 2011 U.S. Dist. LEXIS 113162, at *35 (M.D. Fla. June 7, 2011) (internal citations and quotations omitted).

previously explained, only Xu Zemin and Guo, the Receiver's agent in China, were signatories

to that account, and they litigated control over that account in the PRC courts. *See* Dkt Nos. 228-

10, 155 ¶¶ 50-54, 155-12, 155-13, 155-14. Shi was not a party to, or involved in, any of that

litigation. *Id*. If they were drained of money, it is the Receiver's agent or Xu Zemin who are to

blame. *Id*. Indeed, the Receiver conceded that the company's accounts have been exhausted to

pay his fees. Dkt. 239, Rec'r Br, at p.12 n.12.

The Receiver's claim that Xu Zemin is a "known associate of Shi's" is wholly

unsupported speculation that is insufficient to justify the exercise of the Court's equitable

powers. The Receiver's citation to an undated screenshot of a PRC tax website, Receiver's Br. 8,

is not evidence of anything. In the same submission the Receiver claims that the only signatory

to the LKM account in question was Xu Zemin, not Shi. Receiver's Br. 7.

The Tongfang arbitration and the Zhongzhi arbitration are related but not the same,

contrary to the Receiver's statements. *See* Receiver Resp. 3-4. In a submission to the Court on

March 2, 2021, the Receiver represented to the Court that he had intervened in an arbitration

brought by "[Zhongzhi] against Link Motion Inc. . . to recover the approximately $137 million

unpaid balance of a convertible note. . . ."  Dkt No. 210, at 1. The Receiver "asserted

counterclaims against Zhongzhi . . . including a claim that Zhongzhi aided and abetted Dr. Shi in

breaching his fiduciary duties to Link Motion. . . ." Dkt No. 210, at 1. The Receiver then claimed

that the arbitration award in that proceeding (i.e., the "Zhongzhi Arbitration") should be asserted

against Shi in this action. But Shi was never a party to the Zhongzhi Arbitration and that award

has no collateral estoppel effect on him or this Court in this action. Dkt No. 216 (citing the

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et

seq. (1982); *Victrix S.S. Co., S.A. v Salen Dry Cargo A.B.*, 825 F2d 709, 712-13 (2d Cir 1987);

*Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1319 (2d Cir. 1973), *cert. denied*, 416 U.S. 986, 94 S. Ct. 2389, 40 L. Ed. 2d 763 (1974)). Shi was harmed by the Receiver's actions in the Zhongzhi arbitration because he was precluded from participating in that arbitration.

The Tongfang Arbitration[9] referred to in Shi's moving papers is the arbitration brought against Shi, individually, based on his personal guaranty of LKM's obligations to Zhongzhi (*i.e.*, LKM's pledge to Zhongzhi of the proceeds of a transaction between LKM and Tongfang). LKM was not a party to the Tongfang Arbitration because that arbitration involved only the personal liability of Shi on his guaranty of LKM's obligations. Despite all of the mud-slinging by Plaintiff and Receiver, it is notable that only Shi offered to personally guaranty LKM's obligations and has now suffered for his contribution to the company.

The Receiver next refers to a judgment entered in a criminal proceeding in the PRC regarding a "kidnapping" of Henry Lin, but the Receiver submits to the Court only a partial translation of this document. Dkt No. 239-7. Litigants and the Court are entitled to complete and certified translations of foreign language documents offered by a party in support of their case. *See NV Petrus SA v. LPG Trading Corp.*, No. 14-CV-3138 (NGG) (PK), 2017 U.S. Dist. LEXIS 69935, at *6-8 (E.D.N.Y. May 8, 2017) (citing F.R.E. 106 and *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995)). Although the Receiver's submission is an obvious attempt to sway the Court based on translations of cherry-picked portions of the judgment, even this partial translation shows that Shi was a witness, not a defendant in that investigation, and that no charges were brought against Shi.

---

[9] Shi contributed his personal guaranty for LKM's obligations as secondary collateral for LKM's obligations to Zhongzhi. The primary security for those obligations was a note by Tongfang in favor of LKM.

Baliga also misstates the procedural history of this action. When the Court granted the Baliga's request for appointment of the Receiver and entry of the preliminary injunction, it did so based on false information provided by Baliga regarding his standing to assert derivative claims on behalf of LKM. And the purported consent given by LKM's then-counsel was not authorized by the board of directors. Dkt No. 60 ¶¶ 12-16. Thus, it should not be given effect here.

When Shi originally moved to dismiss the original Complaint for lack of personal jurisdiction, he had also sought to challenge the Receiver's authority. Dkt No. 37. But the Receiver challenged Shi's standing to do so. Plaintiff's lack of derivative standing was not disclosed on the docket until March 26, 2020, when China AI Limited submitted the opinion from Cayman counsel. Dkt No. 131. The Receiver's challenge to Shi's standing was not substantially resolved until this Court's Memorandum Order of September 4, 2020 and Shi was not served with process until September 11, 2020. During the interim period neither Shi nor this Court had access to the entire record of proceedings commenced by the Receiver in the Cayman courts. *See* Dkt No. 163 at 28-29. Thus, it cannot be said that Shi did not act timely in challenging the Receivership Order.

But most glaringly, Baliga's purported recitation of the procedural history omits the changed circumstances which led the Court to order the current briefing. When faced with clear evidence that, as a mere holder of ADRs, Baliga lacked standing to assert derivative claims—the house of cards on which the receivership was based—Baliga asserted a Second Amended Complaint omitting those very claims, but continuing to assert the viability of the receiver. The Receiver's contention that Shi has not yet filed a motion to dismiss the Second Amended Complaint is simply false. Shi filed such a motion on November 4, 2020 and, pursuant to the Court's directive, the parties stipulated to resolve the receivership issue first without waiving

Shi's right to file the motion to dismiss at a later date. Dkt Nos. 177-79, 197, 224; *see also* Dkt. No. 221 at 9.

Shi refuted the Receiver's allegations in previous submissions, as summarized above. But the Court does not have to make any factual determinations about Shi's alleged misconduct to resolve this motion because such claims are necessarily derivative in nature and, therefore, are for the Company's Board of Directors[10] to consider in the first instance, or for registered shareholders of the Company to bring derivatively. *See, e.g.*, *In re JMO Wind Down, Inc.*, No. 16-10682 (BLS), 2018 Bankr. LEXIS 1126, at *19-21 (Bankr. D. Del. Apr. 13, 2018) ("Director mismanagement claims are 'derivative in nature'" and cannot be brought as direct claims) (collecting cases); *Kramer v. W. Pac. Indus.*, 546 A.2d 348, 353 (Del. 1988) ("[W]here a plaintiff shareholder claims that the value of his stock will deteriorate and that the value of his proportionate share of the stock will be decreased as a result of alleged director mismanagement, his cause of action is derivative in nature."); *Litman v. Prudential-Bache Props., Inc.*, 611 A.2d 12, 17 (Del. Ch. 1992) (dismissing plaintiffs' claims where the injuries that defendants' alleged misconduct were not inflicted directly on plaintiffs, but rather on the entity, and "plaintiffs have not complied with the requirements of bringing a valid derivative claim."); *Debussy LLC v. Deutsche Bank AG*, 2006 U.S. Dist. LEXIS 16432, at *12-13 (S.D.N.Y. Mar. 29, 2006) (director mismanagement claim is "a derivative one and may be brought, if at all, only derivatively pursuant to the requirements set forth in Fed. R. Civ. P. 23.1 and not, as here, by means of a direct action").

---

[10] The Receiver removed only Shi from his office as a director (Dkt. 50-3) and, therefore, the other directors remain in office.

**CONCLUSION**

For all the foregoing reasons and those in Shi's opening papers, the Court should enter an Order (i) dissolving the preliminary injunction in all respects; (ii) discharging the Receiver; (iii) directing the Receiver to take all actions and execute all instruments necessary to return the Board of Directors to the status quo ante before the appointment of the receiver; (iv) directing the Receiver to take all actions and execute all instruments necessary to return to the Board of Directors all rights to legal claims and control over the Company and its assets; (v) directing the Receiver to account for all actions taken and monies received in connection with the receivership; and (vi) dissolving the receivership.

Dated:  New York, New York
       August 2, 2021

Respectfully submitted,

FELICELLO LAW P.C.

By:  _/s/ Michael James Maloney_____
Michael James Maloney
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806
mmaloney@felicellolaw.com
*Attorneys for Defendant Vincent Wenyong Shi*