```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                         Docket #18cv11642
 BALIGA, WAYNE,                     :

                    Plaintiff,      :

   - against -                      :

 LINK MOTION INC., et al.,          : New York, New York
                                      July 28, 2021
                    Defendants.     :

------------------------------------ :


                      PROCEEDINGS BEFORE
                THE HONORABLE DEBRA C. FREEMAN,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          GREENBERG TRAURIG, LLP
                        BY:  TOBY S. SOLI, ESQ.
                        200 Park Avenue
                        New York, New York 10166

                        GREENBERG TRAURIG, LLP
                        BY:  MIRIAM G. BAHCALL, ESQ.
                        77 West Wacker Drive, Suite 3100
                        Chicago, Illinois 60601

For Defendant Shi       FELICELLO LAW P.C.
and Link Motion:        BY:  MICHAEL JAMES MALONEY, ESQ.
                        366 Madison Avenue, 3rd Floor
                        New York, New York 10017


Transcription Service:  Carole Ludwig, Transcription Services
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES CONTINUED:

For the Receiver:              SEIDEN LAW GROUP LLP
                               BY:  AMIAD KUSHNER, ESQ.
                                    STEVEN SEIDEN, ESQ,
                               322 Eighth Avenue, Suite 1704
                               New York, New York 10001

### INDEX

## E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

## E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS              4

 2            THE COURT:  All right, this is Judge Freeman.

 3   This is Baliga versus Link Motion case, 18cv11642.  Could

 4   I have your appearances please starting with counsel for

 5   Mr. Baliga.

 6            MS. TOBY SOLI:  Toby Soli from Greenberg

 7   Traurig for the plaintiff, and I also have on the line

 8   with me my colleague Mimi Bahcall.  We just filed her pro

 9   hac papers yesterday.

10            THE COURT:  All right, I'll admit you pro hac

11   for purposes of this proceeding anyway.  And who do I have

12   for Mr. Shi?  Anyone?  All right –

13            MR. MICHAEL MALONEY:  Good morning, Your Honor,

14   good morning, Your Honor, this is Michael Maloney on

15   behalf of Mr. Shi.

16            THE COURT:  Okay, don't forget to unmute

17   yourself when you speak.  Who do I have for the company?

18            MR. MALONEY:  Your Honor, I believe that during

19   one of the prior conferences we had all agreed that I

20   would represent the company with respect --

21            THE COURT:  You're representing --

22            MR. MALONEY:  With respect to the motion to

23   dismiss, Your Honor, but technically speaking, it's my

24   understanding that because the receivership is still in

25   place, the receiver is representing the company with
```

```
 1                          PROCEEDINGS                    5

 2  respect to other matters.

 3             THE COURT:   Do I have counsel for the receiver

 4  on?

 5             MR. AMIAD KUSHNER:   Yes, good morning, Your

 6  Honor, this is Amiad Kushner from Seiden Law Group

 7  representing the receiver.  And my colleague Steve Seiden

 8  is on the line as well.

 9             THE COURT:   The receiver himself?

10             MR. STEVEN SEIDEN:   No, no, not to be confused

11  with Robert, the receiver, this is Steven.

12             THE COURT:   Okay, do we have the receiver on as

13  well or no?

14             MR. SEIDEN:   No.

15             THE COURT:   No, okay.  All right, I wanted to –

16  hold on one second.  I'm getting distracted by somebody

17  who's looking for me for something.  Can you just hang on

18  one moment please?

19             (pause in proceeding)

20             THE COURT:   Sorry.

21             (pause in proceeding)

22             THE COURT:   Okay.  I had wanted to have this

23  conference to talk about this motion that I have to toll

24  the statute of limitations.  I'm confused by the motion,

25  and I wanted to just hear a little bit further from the
```

1                              PROCEEDINGS                          6

2    parties.  I'm confused about the issue of Mr. Shi's

3    standing to bring that motion as Mr. Shi doesn't currently

4    have the ability to speak for the company and it would be

5    the company's claim against its prior counsel on which the

6    statute of limitations is being sought to be tolled.  And

7    I understand that Mr. Shi is taking the position that it's

8    unlikely that the receiver, who would have the ability to

9    act for the company in this regard, would be unlikely to

10   seek the tolling of the statute of limitations or to bring

11   the claim as the claim might suggest that the receivership

12   was invalidly instituted.  But, nonetheless, I'm not sure

13   I understand how Mr. Shi can be seeking this relief.

14           I originally asked, well, what statute of

15   limitations are we talking about and when would it expire

16   just so that I would understand how urgent the matter was.

17   But that really wasn't going to the merits of the issue.

18   And I also don't understand why it is necessarily a given

19   that the receiver would not have any interest in making

20   this application because the receiver presumably has a

21   fiduciary duty to the company.  If there is a potentially

22   viable claim that the company may have against its prior

23   counsel for not having raised a defense to the case or not

24   having informed the company about a standing issue and the

25   receiver choses not to pursue that relief, then it seems

PROCEEDINGS                                    7

1
2   that if the receiver ends up discharged and if that is a
3   viable claim that has been lost because the receiver
4   failed to act, then the receiver might find himself on,
5   you know, in some trouble with the company going after him
6   for breaching fiduciary duties and not pursuing something
7   that was a viable and perhaps valuable claim.  Unclear
8   whether it would be either of those things, but
9   potentially.
10          So I wanted to understand the position of the
11  receiver on this.  I wanted to understand, first, how Mr.
12  Baliga would have standing – not Mr. Baliga, I'm sorry –
13  Mr. Shi would have standing, and, second, I wanted to
14  understand why it was a given that the receiver would be
15  unwilling to pursue the matter even with respect to a
16  potential tolling of statute of limitations until such
17  time as the receivership issue was sorted out, as there's
18  currently a pending motion to discharge the receiver which
19  is not going to be decided that fast, I would suspect,
20  given that I would probably need to write a recommendation
21  on it and it would have to go to Judge Marrero and it
22  might be challenged, whatever decision there is, and so
23  on.
24          So if you add up all of the pieces of time that
25  might be required for a report and recommendation, a

```
 1                         PROCEEDINGS                    8
 2  decision, and potentially objections to a report and
 3  recommendation, motion for reconsideration, who knows
 4  what, it's possible this claim could be lost if the
 5  receiver doesn't seek to preserve it.
 6           Well, anyway, those are my questions.  Let me
 7  start with Mr. Maloney, how does Mr. Shi have standing?
 8           MR. MALONEY:   Thank you, Your Honor.  I guess
 9  the best way to start would be to reference, again, the
10  internal affairs doctrine which I'm sure you recall
11  basically stands for the proposition that the internal
12  affairs of the company should be governed by the laws of
13  its state of incorporation which is the Cayman Islands.
14  Under the Cayman Islands law only shareholders can appoint
15  or remove a director, and the actions of the receiver to
16  purportedly remove Shi as a director are null and void.
17  And, in fact, at docket 18216 --
18           THE COURT:   Well, wait a minute, there's been
19  no judicial finding to that effect.  So you can say it's
20  null and void, but there's been no court that has said
21  that it's null and void.  And at the moment we have a
22  situation where there is a receiver in place who has not
23  been discharged, and he's acting under the terms of a
24  court order appointing him.  That order may end up
25  vacated.  It may not end up vacated.  There are arguments
```

1
2   being made on both sides of that.  But just to say it is
3   null and void I can't accept that as a given without
4   making a determination and perhaps having Judge Marrero
5   make a determination as to whether it is null and void.
6             So Mr. Shi has been removed.  He may have been
7   removed without authority and that may yet to be
8   determined, but he has been removed.  He is no longer
9   chairman and CEO of this company.
10            MR. MALONEY:   I recognize the point that you're
11  making, Your Honor, however, the document I was
12  referencing is an order from the Grand Court of the Cayman
13  Islands dated 4th of February 2020 in which that court
14  refused to recognize the authority of the receiver to
15  remove or appoint a director.  And so I recognize the
16  point you're making, but there is an open question as to
17  whether a court has moved on that issue or not.  And I'm
18  saying that recognizing that there are further proceedings
19  that need to, further proceedings and determinations that
20  this Court needs to make on that issue.
21            THE COURT:   Well, first of all, there's also –
22  I also had asked previously for some explanation from the
23  receiver as to how he understood that order, and there was
24  some difference of opinion there.  And the receivership
25  order that was issued by Judge Marrero specifically said

```
 1                        PROCEEDINGS                    10
```

 2  the receiver had the authority to remove directors, and he

 3  acted pursuant to that order.  So there may be some

 4  conflict of law issues that have to be worked out.  This

 5  may be another confusing issue that has to be sorted out.

 6  But right now the situation is that I don't think you can

 7  take the position that Mr. Shi either is in charge of this

 8  company or even that he could act without a vote of the

 9  board of directors in order to on his own seek relief on

10  behalf of the company.

11          So I think it's very hard for you to say either

12  of those things, that he is currently CEO or chairman of

13  the board or that there's been board action, and he's

14  acting pursuant to that, or together, I don't think you

15  can say them together.  Right now there's a receiver.

16          MR. MALONEY:   Your Honor, if I could respond to

17  that.  I don't believe that I'm arguing that he's acting

18  on the vote of the board of directors.  What I'm arguing

19  here is that there's an open question as to whether his

20  purported removal was effective as a matter of law.  He

21  has an interest in the outcome of the company and this

22  case.  And this Court has the authority and power to

23  modify the receivership order to permit him to pursue the

24  malpractice claim on behalf of the company.  This Court

25  has the power and authority to appoint any person it deems

1                          PROCEEDINGS                    11

2    appropriate to pursue those sort of claims.  It just so

3    happens that right now the receiver is in that role with

4    respect to all interests and claims that may, the company

5    may have.

6              But as I will hopefully explain later, in our

7    view the receiver is so conflicted that we don't see it

8    possible that he would bring the claim that we believe the

9    company has.

10             THE COURT:   I'm not asking about bringing the

11   claim.  I'm asking about seeking to have the statute of

12   limitations tolled so that a claim could be brought later

13   if and when the receivership order is vacated.  I mean a

14   receivership order may be vacated at the end of the case.

15   It may be vacated in a few weeks.  It may not be vacated,

16   you know, I don't know what's going to happen there.  But

17   if and when the receivership order is vacated and the

18   company without the receiver wants to make a claim against

19   DLA Piper to say that, you know, we should never have had

20   all this happen in the first place and it's all your

21   fault, the claim could then be made if the statute of

22   limitations were tolled.

23             So assuming the Court should on its own without

24   DLA having notice of it and opportunity to be heard on it,

25   assuming all of that, the main motion that was made here,

1                           PROCEEDINGS                    12

2  the first relief sought is to toll the statute of

3  limitations.  Only secondarily did you say, oh, also,

4  Judge, you know what, you should just modify the

5  receivership order, have the receiver the only one who can

6  bring litigation on behalf of the company, except for this

7  claim where you should appoint Mr. Shi and let him bring a

8  claim, the whole point of which would be to undermine the

9  receivership or it would be part and parcel of it because

10 the argument would be that it was malpractice to allow the

11 case to have been brought.

12          It seems unlikely in the current posture that it

13 would make sense to keep the receivership order and modify

14 it to allow Mr. Shi to bring this particular claim.  But

15 the tolling of the statute of limitations is more modest

16 relief.  Why would the receiver, and I want to hear from

17 counsel for the receiver on this, why would the receiver

18 necessarily not seek that relief if it would not mean

19 bringing a suit at this point; it would only mean

20 preserving a potential claim for the company down the road

21 if and when he is discharged?  Let me hear from Mr.

22 Kushner or Mr. Seiden on that.

23          MR. KUSHNER:   Sure.  Your Honor, this is Mr.

24 Kushner.  I think Your Honor is correct that the

25 malpractice claim against DLA belongs to the company not

PROCEEDINGS                    13

1

2  any other party, and since the receiver at the moment has,

3  you know, controls the company's claims, then it's for the

4  receiver to determine whether or not to pursue this

5  proposed malpractice claim.

6          I think Your Honor's also correct that just

7  because there is a potential claim doesn't mean that it

8  makes sense to bring the claim or that the claim has any

9  merit.  I think in this case the need for a receiver is

10 manifest from the record.  The company was being looted by

11 Mr. Shi, and something needed to be done.  It's true that

12 later this issue of Cayman Islands law presented itself,

13 and now here we are, we're dealing with this kind of

14 difficulty in that, and they have been, this issue was

15 missed apparently at the time.  But, nevertheless, it's

16 more of an issue of form over substance.  The need for the

17 appointment of a receiver was clear.

18         And to the extent that the company was damaged,

19 the damage was done by Mr. Shi.  It was Mr. Shi who looted

20 the company.

21         THE COURT:   I'm not asking whether the claim

22 should be brought.  I'm asking whether the receive should

23 be taking steps to seek the tolling of the statute of

24 limitations to preserve the claim for a potential later

25 determination as to whether the claim should be brought,

PROCEEDINGS                    14

1
2    particularly if and when the receiver is discharged.  I've
3    got to tell you I think there is a strong argument for
4    discharge of the receiver.  I think I suggested as much in
5    the last opinion that I wrote because the receiver was
6    appointed based on certain allegations, based on certain
7    claims that were made based specifically on those claims
8    that were made with Mr. Baliga telling the Court it didn't
9    even have to look at any other claims.
10              Mr. Baliga then voluntarily withdrew those
11   claims.  They were not dismissed.  They were not dismissed
12   for lack of standing.  What I said in another opinion was
13   simply, look, you said you have derivative claims and
14   direct claims in the same pleading, by the way, unclear
15   whether he could do that but he said he did.  Right?  Just
16   please clarify which ones are direct and which one are
17   derivative because I'm having trouble reading this
18   pleading and understanding it.  He then chose to drop all
19   of his derivative claims.  So he chose without a court
20   ruling that there was no standing, he chose to pull them
21   all back, okay, and say I'll bring them another time after
22   I convert my shares.
23              Query whether he could have standing then
24   because at least under U.S. law you're supposed to have
25   standing at the time the suit is brought.  Query whether

1                          PROCEEDINGS                    15

2  he could even bring the suit as a derivative suit based on

3  an official ownership of shares in a foreign corporation,

4  not shares that are traded on the New York Exchange the

5  way his ADRs are traded.  Lots of queries.

6          But in any event, he had now chosen to withdraw

7  those claims and was proceeding on securities fraud

8  claims.  That's what the current case is.

9          So I think there is a very decent argument that

10 the basis for the appointment of the receiver is no more,

11 that the basis, it existed at the beginning of the case,

12 has disappeared because it was based on claims that have

13 been withdrawn, and there's a decent argument the

14 receivership should be vacated.

15          Now, I understand Mr. Baliga is saying no, no,

16 no, because under the exchange act there should be a

17 receiver so you should just like, you know, just through

18 shifting of your thought process, you should say the

19 receiver should be in place under that.  I don't know.  I

20 have to look at that.

21          But there is an argument that is certainly

22 colorable or more than colorable that the receiver should

23 be discharged.  If and when the receiver is discharged, if

24 it takes so long to do that that the claim against the

25 former counsel for the company becomes time-barred, that,

```
 1                          PROCEEDINGS                    16
 2   if it is a viable claim, somebody argues it's a valuable
 3   claim, again, maybe it's viable, maybe it isn't.  Maybe
 4   it's valuable, maybe it isn't.  But if it's gone because
 5   of the statute of limitations, the receiver bears the risk
 6   that the receiver let a potentially viable claim go
 7   because the receiver didn't take any steps to preserve the
 8   claim.  Whether or not he currently thinks that it should
 9   be brought, whether he thinks it's in the interest of the
10   company to bring it, he's taken no steps to preserve it.
11   And is it a potentially viable malpractice claim?  Unclear
12   to me.  Unclear.
13           I do think there are questions about standing at
14   the beginning of this case that were not raised that Mr.
15   Shi is making arguments as to how the company was harmed.
16   Mr. Baliga and the receiver clearly seem to think that the
17   company is being saved and not harmed.  But there are
18   arguments here being made.
19           So the question that I have is why is it so
20   evident, as Mr. Shi seems to suggest, that the receiver
21   would not have any interest in seeking to toll the statute
22   of limitations?
23           MR. MALONEY:   Your Honor, this is Michael - I'm
24   sorry.  This is Mr. Maloney --
25           THE COURT:   Go ahead, Mr. Maloney.
```

```
 1                         PROCEEDINGS                    17
 2              MR. MALONEY:   Okay, thank you.  From our point
 3    of view, the facts speak for themselves on this particular
 4    narrow question.  Former counsel had been retained by the
 5    company with respect to the issuance of shares, registered
 6    shares in the Cayman Islands to an investor.  Shortly
 7    after that engagement, the plaintiff brought this case and
 8    sought the appointment of the receiver.
 9              So if you consider that set of facts, former
10    counsel necessarily had knowledge of the identity of the
11    registered shareholders of the company on the register in
12    the Cayman Islands at the time the case was brought.
13    Former counsel then appeared in the case on behalf of the
14    company and as, you know, a large international law firm
15    should've exercised reasonable due care in --
16              THE COURT:   Okay, let met cut off because I'm
17    not really asking whether it's a good malpractice claim or
18    not a good malpractice claim.  I'm saying maybe it is and
19    maybe it isn't.  Okay?  But if maybe it is, why does Mr.
20    Shi take the position that the receiver absolutely no way,
21    no how would ever have any interest in seeking to toll the
22    statute of limitations on it?  The receiver has a
23    fiduciary duty to the company.  Why wouldn't the receiver,
24    knowing that there's at least an argument that's being
25    made that it's a decent malpractice claim, why wouldn't
```

1                          PROCEEDINGS                    18

2    the receiver be interested in seeking to toll the statute

3    of limitations on a potential claim of the company even if

4    he doesn't think it's a claim that should be brought at

5    this time?  If he thinks it should be brought at this

6    time, there's no reason to toll the statute.  Right?  It's

7    only if he thinks it should not be brought at this time

8    that it might make sense to toll the statute of

9    limitations to preserve it for later, future

10   consideration.

11          Why is Mr. Shi taking the position that it would

12   be futile to ask the receiver to make a motion to toll the

13   statute?  The receiver, it seems to me, should have an

14   interest in doing that if there is a potentially viable

15   claim.  If the receiver has analyzed and said I think it's

16   not potentially viable, I think it's all nonsense and, you

17   know, there's no way I'm going to have anything whatsoever

18   to do with that, the receiver's taking his chances that if

19   the receivership order is dissolved and if a board of

20   directors votes that it should pursue a claim against

21   former counsel and if it then cannot, because the claim is

22   time-barred, and if the receiver had fair notice of this

23   and did nothing to seek tolling, the receiver can be sued

24   himself for having breached his duties to the company and

25   maybe that claim goes somewhere and maybe that claims goes

1                          PROCEEDINGS                    19

2  nowhere.

3          But why is it a given that Mr. Shi, who I don't

4  think has standing to do this, says that I have to do it

5  because there's no way that the receiver would seek this

6  relief, why is that true?

7          MR. MALONEY:   Okay, I guess to shorten this up,

8  in our view there are actually two malpractice claims

9  here, one that belongs to the company as we described in

10  our papers.  We believe there's another one that belongs

11  to Mr. Baliga against his former counsel which is the firm

12  owned by the receiver.

13          THE COURT:   Oh, Mr. Shi doesn't have any

14  interest in protecting a claim that Mr. Baliga has.

15          MR. MALONEY:   We agree, however, the fact that

16  that claim may be out there, in our view, it directly

17  conflicts the receiver from pursuing a claim against DLA

18  because by definition making the allegations that needed

19  to be made against DLA would assist Baliga, would

20  essentially admit malpractice vis-à-vis Baliga.

21          THE COURT:   I'm sorry, I have completely lost

22  you.  Try that again.

23          MR. MALONEY:   In order for the receiver to

24  bring the claim against former counsel for the company, in

25  our view, in order to do that, the receiver would need to

```
1                          PROCEEDINGS                  20
2    make allegations that would constitute admissions of
3    malpractice vis-à-vis the receiver's law firm and its
4    relationship with Baliga.
5           THE COURT:   Okay, but, again, I'm not asking,
6    I'm not asking why the receiver would not be interested at
7    this time in bringing a malpractice claim.  I'm asking why
8    the receiver would have no interest in protecting himself
9    from a claim that he failed to act to try to get the Court
10   to toll statute of limitations.
11          MR. MALONEY:   On that question I completely
12   agree with that question.  I don't know why we couldn't
13   stipulate to toll the statute of limitations for the claim
14   against former counsel for the company.  It seems to me
15   that would be the most logical and practical solution.
16          THE COURT:   No, I'm not asking why you couldn't
17   stipulate to something.  I'm asking why it's a given that
18   the receiver would never want to take that step.  I'm not
19   even sure if you asked the receiver to take that step.
20   The receiver said no way, I'm not doing that.  Or if you
21   just assumed that the receiver would not take that step.
22   And I would like to hear from counsel for the receiver on
23   the narrow question of why the receiver would have no
24   interest in not in bringing the claim but in asking the
25   Court to toll the statute of limitations, assuming that's
```

1                          PROCEEDINGS                    21

2    something the Court can do and assuming that we wouldn't

3    have to bring in DLA Piper to get their take on anything,

4    etc., etc.  Just on that basic question of why only Mr.

5    Shi can bring the motion for tolling of the statute, why

6    the receiver would have no interest in bringing that

7    motion.

8             MR. KUSHNER:   This is Mr. Kushner again.  Your

9    Honor, there are numerous potential claims that are out

10   there, but the receiver is not asking the Court to toll

11   the statute of limitations on claims that the receiver

12   believes have no merit.  But now that Your Honor has

13   focused on this specific claim against, potential claim

14   against DLA for malpractice, the receiver would not oppose

15   a tolling of the statute of limitations with respect to

16   that claim, given, you know, the discussion that we've had

17   this morning on this call.

18            I mean to the extent that the Court has any

19   concern about, you know, a discharge of a receiver and

20   hypothetically the company took control again after a

21   potential vacating of the receivership order, if there was

22   a claim to be brought, you know, the receiver wouldn't

23   want to be responsible for the running of the statute of

24   limitations.  Again, completely independent of the

25   receiver's current view of the merits of the claim.

```
 1                         PROCEEDINGS                    22

 2              So we would not oppose --

 3              THE COURT:   Okay, so there's a difference

 4    between not opposing a motion where I don't think the

 5    parties that brought the motion has standing to have

 6    brought it and asking for the relief affirmatively on the

 7    receiver's behalf.  You have a client, the receiver is

 8    your client.  I think you need to talk to your client

 9    about what your client wants to do here.  But I would ask

10    that you do speak to your client and see what your client

11    wants to do here under these circumstances because I think

12    the receiver is at the moment properly the one to ask for

13    the relief in the motion.

14              Now, there are two pieces of relief sought in

15    the motion, although the motion is framed and put on the

16    docket as a motion for a declaration tolling the statute

17    of limitations.  At the end of the brief at least and

18    somewhere else in there too I believe, it says, oh, and

19    you should also, Court, modify the receivership order to

20    allow Mr. Shi to bring that claim.  I'm not talking about

21    that part.  I'm only talking about the part asking for

22    tolling of the statute of limitations on a legal

23    malpractice claim by the company against its former

24    counsel.

25              If the receiver is interested in bringing that
```

```
 1                          PROCEEDINGS                    23
 2   application affirmatively, I'd like to have something on
 3   the docket reflecting that.  Because my inclination is to
 4   say that Mr. Shi lacks standing to ask for that relief,
 5   but I'm not sure that the receiver, but I think the
 6   receiver would not lack standing and I'm not sure that the
 7   receiver would not want to do the same.  And I think that
 8   we should find out because it's been raised, and rather
 9   than just toss it on standing grounds and we have this
10   very convoluted situation right now and a lot of issues in
11   question with pending motions, I think we should find out
12   from the receiver what he wants to do under these
13   circumstances, and he should say so.  Okay?  Does that all
14   make sense?
15            MR. KUSHNER:   That makes sense.
16            THE COURT:   Okay.  So that was the purpose of
17   the call, to see if that would make sense and if we could
18   get some further clarity on that.  And then once I get
19   some further clarity on that, I will try to address that,
20   not to mention the motion to discharge the receiver.  All
21   right?
22            All right, that's all I got for the moment.
23   Anybody have anything for me while I've got you all?
24            MR. MALONEY:   Mr. Maloney, nothing further,
25   Your Honor.
```

```
 1                        PROCEEDINGS                24
 2            THE COURT:   Okay, Ms. Soli.
 3            MS. SOLI:   Nothing from --
 4            MR. SEIDEN:   I have one - I'm sorry, just one
 5   question.  This is Steve Seiden.  Are you saying the
 6   receivership is in place, the receiver still has the
 7   authority to act accordingly in the best interests of the
 8   company, correct?
 9            THE COURT:   Correct.  As of this moment in
10   time, the receivership order is in place and the receiver
11   is still in place.  I'm not sure it will last, and if the
12   receivership order ends up vacated, there's another big
13   question out there, and if anyone wants to put in any
14   supplemental briefing on this question, feel free, which
15   is if it were to be vacated, should it be vacated ab
16   initio or should it be vacated as of the present time?
17   And that to me is a very big difference because if you
18   vacate it from the outset, you turn back the clock and you
19   try to undo things a receiver has done and Mr. Shi gets
20   reinstated and I don't know what happens to the assets
21   that have been clawed back and you've got a big soup and a
22   big mess.  If it's vacated as of the date of the order
23   vacating it, then everything that's happened before has
24   happened before, and the company picks up at that point in
25   time.
```

1                        PROCEEDINGS                    25

2              And so it's unclear to me, if the reason to

3   vacate the receivership order is that the exchange act

4   doesn't provide – this is a hypothetical again.  I haven't

5   studied everything on this point, and I'm not sure which

6   way I'll go, and please understand that that is a true

7   statement, I'm not sure which way I'll go.  But if the

8   idea is the exchange act doesn't do it, the receivership

9   was grounded in claims that has since been withdrawn,

10  therefore, the receivership order should be vacated, don't

11  forget that the derivative claims were never found to be

12  defective by the Court.  They were voluntarily withdrawn

13  as I see it.

14             So arguably there was a basis for the

15  receivership at the beginning that may not still exist.

16  You know, I'm sure Mr. Shi wants to argue that there was

17  no basis at the beginning, and so the receivership order

18  should be vacated effectively, you know, nunc pro tunc to

19  the beginning or ab initio.  And I'm sure that the

20  receiver and Mr. Baliga would take the position that it

21  shouldn't be vacated at all, but if it is vacated, it

22  should just be because of changed circumstances, you know,

23  like at the end of the case, the receiver gets discharged,

24  it ends, but it's not necessarily turning back a clock.

25             So it seems to me there could be a major and

1                          PROCEEDINGS                    26

2    potentially disruptive difference in which way that would

3    go if the Court were to determine that the receivership

4    order should be vacated and the receiver should be

5    discharged.

6              And because that was an order that was entered

7    by Judge Marrero, I would not make the decision as to

8    whether the order should be vacated.  I would, on that

9    one, I would do a recommendation, make a recommendation to

10   Judge Marrero one way or the other, and it would

11   ultimately be his call.  It wouldn't be a matter of my

12   ordering something you're appealing to Judge Marrero.  It

13   would be my making a recommendation, and anyone who

14   doesn't like it file an objections with Judge Marrero

15   before he decides whether to adopt or not adopt my

16   recommendation.

17             So I haven't gotten to that one yet, and if

18   anyone wants to supplement their prior briefing on this

19   question I've just raised, I'll take supplemental papers,

20   and you can discuss among yourselves any kind of schedule

21   to submit those if there's anything further you want to

22   say on that particular issue.  Okay?

23             MR. MALONEY:   Your Honor, this is Michael

24   Maloney.  You have, you know, obviously anticipated Mr.

25   Shi's argument on that particular point.  We do --

```
1                          PROCEEDINGS                    27

2            THE COURT:   It's not hard to guess.

3            MR. MALONEY:   It's not hard to guess, I

4   understood.  I guess my concern is that, it's timing, and

5   you obviously are very aware of the timing issue here and,

6   you know, the amount of time necessary to resolve these

7   issues given the complexity of the case which, you know,

8   we completely understand here.  You know, basically my

9   point is we have a current deadline to submit a reply in

10  further support of the motion to discharge the receiver of

11  August 2.  I'd like to keep that date.  I'd like to

12  propose that we not delay a decision on the receiver, the

13  motion to discharge the receiver one way or the other on

14  the grounds of this issue of whether or not a possible

15  discharge of the receiver is void ab initio or not.

16            THE COURT:   I think you could manage to work it

17  out while basically keeping on the same schedule you're

18  on.  I think you should be able to talk to each other

19  about how you, if you want to supplement anything, how you

20  do it and make it all end up at the same point or very

21  close thereto.  Okay?  If it gets stretched out for a few

22  days or something, I don't think that's really much of an

23  issue.

24            I will say that I have some - I don't know the

25  facts of the case in terms of what's really happened.  I
```

```
 1                        PROCEEDINGS              28
 2   don't know whether Mr. Shi was really looting the company
 3   or not.  I don't know.  There's been no finding of fact on
 4   the subject.  The receiver has said certain things.  But I
 5   can't find --
 6            MR. SEIDEN:   There's been, I'm sorry, there's
 7   been an arbitration, I'm sorry --
 8            THE COURT:   I --
 9            (interposing)
10            THE COURT:   I understand that, so maybe, you
11   know, there's some force to that, but you don't even have
12   collateral estoppel unless everybody's had a full and fair
13   chance to litigate these issues.  So I have my suspicions
14   on the subject.  I suspect that there may have been things
15   that Mr. Shi did that were not in the company's best
16   interests, but that's not a finding by me.  And, you know,
17   if the receivership is just, if the receivership order is
18   vacated and the receiver is discharged, that might not
19   represent the Court's buying into Mr. Shi's argument that
20   the receiver has in any way harmed the company or Mr.
21   Baliga has in any way harmed the company.  The opposite
22   may be true.  But I'm going to look at the issues as
23   matters of law and procedure based on how we got where we
24   are and where we are.
25            You know, we have a plaintiff here who seemingly
```

```
 1                      PROCEEDINGS                   29
 2   has not done everything correctly, and it has turned into
 3   kind of a major mess.  We also have Mr. Shi who has not
 4   done things correctly and has continued to make arguments
 5   on behalf of an entity from which he has been removed from
 6   authority under, you know, an order of the court.  So we
 7   have everybody making arguments that they may not have
 8   standing to make.  We have the most convoluted and
 9   complicated procedural case with more conflicts of
10   interest that have arisen on behalf of everybody from
11   every turn than I've ever seen.  And I think there's
12   responsibility on both sides perhaps for the fact that we
13   have a major mess on our hands here.
14            And I'm just saying that you're going to have to
15   live with whatever major mess you made and the legal
16   consequences of that mess and the posture that we find
17   ourselves in.
18            So that's just, I'm just trying to say that if I
19   end up determining that the receivership be discharged,
20   that might not ultimately be in the best interests of the
21   company.  Query whether that's what the Court's
22   responsibility is or whether the Court's responsibility is
23   to determine whether there's a sufficient basis to
24   continue that order in place based on the claims that are
25   currently in the case.  And, you know, wherever the chips
```

```
 1                        PROCEEDINGS                    30

 2  fall it's where they fall on this.  All right?

 3           I'm going to --

 4           MR. SEIDEN:   Just one last - I'm sorry, just

 5  one last quick question in terms of DLA --

 6           THE COURT:   (indiscernible)

 7           MR. SEIDEN:   I'm sorry, Steven Seiden.

 8           THE COURT:   Okay.

 9           MR. SEIDEN:   DLA Piper, have they been notified

10  about this?  It occurs to me at least that, you know, we

11  should know why they did what they did.  I think they

12  probably have a good reason why they did what they did.

13  The receiver wasn't appointed yet at the DLA was in --

14           THE COURT:   So I --

15           MR. SEIDEN:   Yeah.

16           THE COURT:   Someone raised the question of

17  whether DLA would have to intervene with respect to the

18  motion to toll the statute of limitations.  It seems a

19  little bit odd to me to ask the opinion of the potentially

20  sued company as to whether they want to stretch out the

21  time in which they may be sued.  They're likely to say,

22  no, why would we want that?  But query what the case law

23  says with respect to applications to toll a statute of

24  limitations, whether such applications are typically and

25  appropriately made ex parte, meaning with the side that
```

1
2    wants to toll the statute on a claim against somebody else
3    and not involving the somebody else in that decision,
4    whether courts have said let's get that somebody else
5    involved in some way or other.  In what way do courts get
6    that somebody else involved?  Has anybody looked at any
7    law on applications to toll a statute?  What are the
8    grounds on which a court decides whether to toll a
9    statute?  What is the precedent with respect to tolling
10   the statute?

11           Because I might find, okay, now I have an
12   application that's duly made because it's made by the
13   receiver who has standing to make it as opposed to by Mr.
14   Shi whom I think probably does not, but now do I grant
15   that application or not?  What is the law under which I'm
16   supposed to analyze that?  What are the standards?  What
17   are the factors?  What is the procedural posture?  What am
18   I supposed to be doing with that?  Has anybody looked into
19   that?  Mr. Shi's motion was just basically, hey, this is
20   common sense.  You ought to do this.  Right?  Did you cite
21   cases where courts have tolled statute of limitations and
22   in what context?  Was it anything remotely resembling this
23   sort of situation?  What do the courts do procedurally?

24           So I'm just telling you that I want to know
25   whether the receiver wants to make the application so that

PROCEEDINGS                    32

I have somebody whom I think has standing to make it.

Whether that means I grant it or not is, again, another

question.  But at least you have somebody out of the

starting gate who could bring it.  If the receiver thinks

it's an appropriate motion to make and the receiver wants

to make it, then given the fact that there's a little time

before that statute apparently would expire because I

think Mr. Shi has said that the earliest or it could be as

early as December and we're only still in the end of July,

there might be time if the receiver thinks, oh, you know,

I want to avoid personal liability just in case, I want to

make that application, well, maybe then the receiver also

wants to make it right in a proper and legally supported

way and maybe the receiver wants to take a little bit more

time to research and brief it on his own behalf, meaning a

representative of the company, as representative of the

company.

        So that's something else also to consider

because right now what I've got seems to be a little bit

off the cuff.

        MR. SEIDEN:  And also, again, this is Steven

Seiden again, Judge.  Just in terms of DLA, again, when

the receiver was appointed, we reached out to DLA for

information, and they wouldn't, you know, they had

```
1                         PROCEEDINGS                    33
```

2  represented the company, so it was all privileged.  You

3  know, again, it just occurs to me that DLA, the reason,

4  you know, we don't know the reasons they did what they

5  did.  Mr. Maloney --

6              THE COURT:   You're welcome to investigate.  I

7  mean my --

8              (interposing)

9              THE COURT:   My question that, the core question

10  I was getting at was Mr. Shi brought a motion asking for

11  tolling of statute of limitations.  Mr. Shi said you have

12  to listen to me because there's nobody else out there who

13  will make this motion.  I started wondering whether that

14  was true because I don't think Mr. Shi was in a position

15  to make it.  Is it true that that he receiver would have

16  no interest?  If you asked, did the receiver think about

17  it?  Is the receiver potentially on the hook down the road

18  if he doesn't make this application?  Are we sure?

19              So I thought I would pose the question, does the

20  receiver have an interest?  This issue has been raised.

21  If the receiver has no interest in raising it, so be it.

22  And if I find Mr. Shi doesn't have standing to raise it,

23  so be it.  Then the whole question of whether the statute

24  should be tolled or not goes out the window because nobody

25  has standing to raise it who has bothered to raise it.

1                             PROCEEDINGS                    34

2  So, in other words, anybody who has standing did raise it,

3  and the one who did would not have standing.

4           So if the receiver has interest since this has

5  been raised, and I'm thinking about it, if the receiver

6  has interest in raising it, the receiver should through

7  counsel should research it and determine what the grounds

8  are for such a motion, whether it should be doing some

9  sort of diligence, whether it should be reaching out to

10  DLA and asking for their explanation, whether it thinks

11  it's a claim that really is viable or not, whether he

12  wants to take his chances down the road that if he's

13  discharged and a suit is brought against him, he's got a

14  good defense and doesn't have to worry about it.  He

15  should look into it and make an application if he wants to

16  that is an appropriate application.

17           And if you think that means DLA should get

18  involved in some way based on precedent, then you tell me.

19  If you think it meets the standard for tolling ex parte,

20  then you tell me.  If you think that he doesn't want to

21  make the motion at all and wants to just let it die on the

22  vine and he'll take his chances down the road even if the

23  receivership order is vacated, so be it.  Let me know

24  because –

25           MR. SEIDEN:  Yeah, I --

```
 1                         PROCEEDINGS                    35

 2            THE COURT:   Okay?  I'm not telling him what to

 3   do; I'm just asking questions.

 4            MR. SEIDEN:   Right.  No, I think just, you know,

 5   I think the DLA had whatever bases they had to do what

 6   they did, and they did, you know, the assumption here is

 7   that they should've known that, you know, a derivative

 8   case can't be brought under Cayman law.  But maybe there

 9   are other bases under which they were acting, and maybe

10   they knew about the breaches of fiduciary duty because

11   they were advising him not to breach the fiduciary duty.

12   In fact, that's what the arbitration panel found.

13            So what I'm saying is I don't know - these are

14   very complicated issues, and I don't know --

15            THE COURT:   Sure, I --

16            MR. SEIDEN:   -- resolution without them,

17   without their input.

18            THE COURT:   Well --

19            (interposing)

20            THE COURT:   That's for you to decide what ought

21   to be done and to tell me what you think the role of the

22   Court should be.

23            MR. SEIDEN:   Well, okay, on that note, I think

24   part of it is going to be that those confidences, those

25   privileges, those communications should be revealed to the
```

```
 1                      PROCEEDINGS                36
 2   receiver so we can make an informed decision.  We need to
 3   know that.
 4              THE COURT:   Well, I'm not going to --
 5              MR. SEIDEN:   We need to know what --
 6              THE COURT:   I'm not going to issue an order on
 7   this call without -
 8              MR. SEIDEN:  No, not on this call.
 9              THE COURT:   I'm not going to issue a ruling -
10   I'm not going to issue a ruling on this call that
11   attorney-client privilege is waived on a hypothetical
12   malpractice claim where it's not even clear what
13   communications would be put at issue because of the
14   malpractice claims.  I mean you're getting way ahead of
15   where I am here.  Okay, so if you research this and you
16   look into this and you determine that you need to speak
17   with DLA, you speak with DLA.  Put your heads together
18   with somebody from the firm and you figure out what ought
19   to happen.  If you think that you should not be speaking
20   with DLA based on the research you've done, then you
21   don't.
22              You figure out what you need to do.  You figure
23   out if you want to make an application, meaning the
24   receiver wants to make an application to toll the statute,
25   if he does, then make it in a proper way and tell me what
```

```
 1                         PROCEEDINGS                    37
 2  you think the Court ought to be doing and why and based on
 3  what authority.  If you don't think it ought to be made
 4  and you're not inclined to make it, then you don't make
 5  it, and so be it, the receiver has not made it, the
 6  receiver's on notice that there is a potential claim.  The
 7  receiver's on notice that the claim might be time-barred.
 8  The receiver takes his chances and maybe he's willing to
 9  do that because he thinks he's so solidly in the right
10  that he's not really in any kind of jeopardy here, which
11  is fine.  This is his decision to make.
12          As far as the current motion brought by Mr. Shi,
13  Mr. Shi is essentially asking me to determine that he can
14  still speak for the company because the receivership order
15  was void and because he should never have been stripped of
16  the authority to speak for the company before.  Query
17  whether he could've done that without a board vote.
18  Whatever.
19          Right now I don't think he has authority to
20  speak for the company.  I don't see how he possibly could
21  at the current stage we're at with rulings in this court
22  as they currently stand.  So I don't think he has standing
23  to bring the application.  So I think that's going to have
24  to be denied.  But whether the receiver wants to do
25  something is another question, and he might, and he might
```

PROCEEDINGS                    38

1

2   not, and you're going to go look into it.  And if there

3   are privilege issues that you think I ought to address,

4   you'll tell me and you'll give me support for it.  If you

5   think we ought to have a conference where DLA's on the

6   phone, you give the support for it and you tell me that.

7            You know, if you think that there's no reason to

8   do any of those things because you're satisfied from your

9   research that the right thing for the receiver to do in

10  the exercise of his fiduciary duty is not to seek tolling

11  of the statute, then that's what you decide and you don't

12  do it.  Okay?

13           But the receiver's the one who can act for the

14  company.  The issue has been raised about whether the

15  company might have a claim down the road that might end up

16  time-barred.  The receiver's alerted to it, the receiver

17  should decide what to do about it and what relief if any

18  to ask for and on what grounds.  Okay?

19           MR. SEIDEN:  Understood.  Thank you.

20           THE COURT:  All right?  All right, we are

21  adjourned, folks.  Thank you all.

22           MR. MALONEY:   Thank you.

23           MS. SOLI:   Thank you.

24           THE COURT:  Bye bye.

25           (Whereupon the matter is adjourned.)

                                                                    39

<u>C E R T I F I C A T E</u>


    I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of *Wayne Baliga v. Link Motion Inc., et al.,* Docket #18cv11642, was prepared using digital transcription software and is a true and accurate record of the proceedings.




Signature_____*Carole Ludwig*_____

            Carole Ludwig

Date:    August 3, 2021