

322 Eighth Avenue
Suite 1704
New York, NY 10001 USA
+1.212.523.0686
www.seidenlawgroup.com

Robert W. Seiden, Esq.
Steve E. Seiden, Esq.
Michael Stolper, Esq.
Amiad Kushner, Esq.
Jake Nachmani, Esq.
Dov B. Gold, Esq.
Jacob K. Jou, Esq.
Adam Rosen, Esq.
Richard Frankel, Esq.
Andrew Sklar, Esq.
Claudia Varner, Paralegal
Kayla Conway, Paralegal
Nat Francis, Snr. Investigator

August 19, 2021

**VIA ECF**

Honorable Magistrate Judge Debra C. Freeman
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re: *Baliga v. Link Motion Inc. et al.,* 1:18-cv-11642 (S.D.N.Y.) (VM) (DCF)

Dear Judge Freeman:

      Pursuant to the Court's direction at the July 28, 2021 teleconference ("July 28 Teleconference"), I write on behalf of the Court-appointed temporary receiver, Robert W. Seiden ("Receiver"), regarding issues raised by the motion of Defendant Vincent Wenyong Shi ("Shi") to toll the statute of limitations on Link Motion Inc.'s ("LKM" or the "Company") potential claim for legal malpractice against DLA Piper LLP and certain individual lawyers employed there (collectively, "DLA"). ECF 211-214 ("Motion to Toll").

      **I.    Defendant Shi's Motion To Toll**

      By way of background, on March 2, 2021, Shi filed his Motion to Toll, seeking to toll the three-year statute of limitations on LKM's potential legal malpractice claim against DLA. *See* ECF 211 at 1-2. The purported basis for Shi's motion was that, in January 2019, DLA stipulated and agreed to the appointment of the Receiver (ECF 22) while failing to inform LKM that Plaintiff Wayne Baliga ("Plaintiff" or "Baliga") was not a "shareholder" of LKM. *See* ECF 214 at 1. In Shi's view, because at the time of Plaintiff's filing of the Complaint Baliga was an owner of LKM's American Depository Shares ("ADS"), as opposed to being a registered owner of LKM shares, Baliga lacked standing to sue derivatively on behalf of the Company and seek the appointment of a Receiver over the Company. *See* ECF 214 at 3-6. Shi conjectures that had DLA informed LKM of this, LKM would never have consented to the appointment of the Receiver.

      In so doing, Shi maintains that up is down and black is white: that the Receiver, not Shi, is the villain of this story, purportedly causing financial harm to the Company. *See* ECF 214 at 7. This is the case even though, as the Receiver's submissions in this action have detailed, Shi shuttered the Company's offices, robbed the Company of tens of millions of dollars, did not pay Company employees' salaries, breached his fiduciary duties to the Company by pledging substantially all of the Company's assets for no consideration, cut off funding to the Receivership

to block the Receiver's work, fought the Receivership at every turn, and, upon information and belief, fled China due to an investigation into his kidnapping of LKM's co-founder and embezzling tens of millions of dollars of Company funds.  *See* ECF 239 at 4-13; *see generally* ECF 239-1; *see also* ECF 210-1 at ¶¶145-157, 199.

On April 23, 2021, the Court ordered Shi to provide supplemental briefing on the issue of what jurisdiction's statute of limitations Shi was seeking to toll and when that statute of limitations would otherwise expire.  ECF 217.  In his response dated April 26, 2021, Shi maintained that New York law governed LKM's legal malpractice claim against DLA.  *See* ECF 218 at 1.  While Shi did not definitively set forth when the malpractice claim would expire, he indicated that it would likely expire on December 21, 2021.  *See* ECF 218 at 2.

On April 27, 2021, counsel for Plaintiff responded to Shi's Motion to Toll, setting forth why Shi's arguments concerning Baliga's purported lack of standing were premature and why Shi lacked standing to bring any claims against DLA on behalf of LKM.  *See* ECF 219 at 1.  Plaintiff also maintained that Shi should not be allowed to stand in a fiduciary position with regard to the Company, given that he had already been found to have breached his fiduciary duties to LKM (ECF 210-1 at ¶¶149-58); *see* ECF 219 at 1.  Moreover, Baliga explained that it was the Receiver, not Shi, who was the appropriate person to evaluate and bring any malpractice claim against DLA under the Court's Receivership Order.  ECF 219 at 2; *see also* ECF 26.

## II.     The July 28 Teleconference

On July 13, 2021 and in response to counsel for Plaintiff's request for a conference on Shi's Motion to Toll (ECF 215), the Court ordered that a teleconference be held on July 28, 2021.  ECF 237.

During the July 28 Teleconference, the Court noted that in the event that the Receivership is discharged pursuant to Shi's motion (ECF 230) and the statute of limitations on LKM's malpractice claim against DLA expires, the Receiver could find himself "in some trouble with the company going after him for breaching fiduciary duties and not pursuing something that was a viable and perhaps valuable claim."  Transcript of July 28 Teleconference ("Tr."), 7:5-7[1]; *see also* Tr. at 15-16:23-8 ("If and when the receiver is discharged, if it takes so long to do that that the claim against the former counsel for the company becomes time-barred, that, if it is a viable claim … maybe it's viable, maybe it isn't … But if it's gone because of the statute of limitations, the receiver bears the risk that the receiver let a potentially viable claim go because the receiver didn't take any steps to preserve the claim."); Tr. at 18-19:15-1.  Accordingly, the Court sought guidance as to "why is it so evident, as Mr. Shi seems to suggest, that the receiver would not have any interest in seeking to toll the statute of limitations?"  Tr. at 16:19-22; *see also* Tr. at 17-18:23-5 ("Why wouldn't the receiver, knowing that there's at least an argument that's being made that it's a decent malpractice claim, why wouldn't the receiver be interested in seeking to toll the statute of limitations on a potential claim of the company even if he doesn't think it's a claim that should be brought at this time?"); Tr. at 20-21:16-7.

---

[1] All references to the transcript from the July 28 Teleconference are cited herein as "Tr. at __."  Unless otherwise noted, all internal quotations and citations are omitted.  All emphasis is added unless otherwise stated.

In response to the Court's inquiry, counsel for the Receiver explained that, as to a potential claim for malpractice against DLA, the Receiver would not object to the Court's tolling the statute of limitations. *See* Tr. at 21:8-17. The Court then directed counsel for the Receiver to discuss with the Receiver whether the Receiver would affirmatively seek a tolling of the statute of limitations on behalf of the Company; the Court noted that if the Receiver decided to seek such relief, the Court would "like to have something on the docket reflecting that." Tr. at 23:2-3; *see also* Tr. at 22:3-13; Tr. at 23:11-13 ("I think we should find out from the receiver what he wants to do under these circumstances, and he should say so."). Further, the Court requested case law on whether an application to toll a statute of limitations should be made *ex parte* or if DLA should be involved in the briefing. *See* Tr. at 30:16-31:10.

Pursuant to the Court's directive, the Receiver sets forth his position on these issues, as reflected below in Sections III, IV, and V of this submission.

### III. A Court Ruling on Tolling The Statute Of Limitations At This Time Would Be An Improper Advisory Opinion

The expiration of a statute of limitations is an "affirmative defense, the determination of which requires a consideration of the merit of both parties' claims and defenses." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 166 (E.D.N.Y. 2010); *see also Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 697 (S.D.N.Y. 2002) (Marrero, J.) ("the statute of limitations is an affirmative defense"). Accordingly, whether a statute of limitations is tolled should be addressed "on a motion for summary judgment or at the time of trial." *Garcia*, 268 F.R.D. at 166; *see also Calcutti*, 224 F. Supp. 2d at 697 ("Questions of fact that arise in applying a statute of limitations are for the trier of fact.").

Here, any ruling on the tolling of a statute of limitations for a potential malpractice claim against DLA would constitute an improper advisory opinion. There is no malpractice claim pending against DLA. The filing of any such claim is entirely hypothetical; Shi's mere desire to have LKM pursue such a claim in the future does not mean that there is any "live" controversy before the Court.[2] Likewise, at this time, any application by the Receiver to request that the Court toll the statute of limitations on a potential future claim would require the Court to rule on a hypothetical controversy. Further, DLA is not a party to this action and has not raised a statute of limitations affirmative defense. Under these circumstances and at the present time, any ruling on the tolling of a statute of limitations would be improper. *See U.S. v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986) (noting that a federal court cannot "sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before [them]."; vacating as premature an Eastern District of New York's "order that dealt with tolling [as it] affected no right of any party to the suit. That portion merely stated what the court might do if and when it may be confronted with an untimely claim."); *Gorelik v. U.S.*, 2008 WL 4773125, at *1 (E.D.N.Y. Oct. 30, 2008) (denying request to toll statute of limitations as "Defendants are requesting that

---

[2] "The burden of demonstrating the appropriateness of equitable tolling … lies with the plaintiff." *Zhongwei Zhou v. Wu*, 2017 WL 1233994, at *3 (S.D.N.Y. Mar. 31, 2017) (citing *Boos v. Runyon,* 201 F.3d 178, 185 (2d Cir. 2000)). As the Court indicated at the July 28 Teleconference, Shi likely lacks standing to toll the statute of limitations on a legal malpractice claim by the Company against its former counsel. *See* Tr. 23:3-4 ("Because my inclination is to say that Mr. Shi lacks standing to ask for that relief[.]").



this court render an advisory opinion on the validity of arguments to be offered in a hypothetical complaint."); *Corsello v. Verizon New York, Inc.*, 976 F. Supp. 2d 354, 357 (E.D.N.Y. 2013) (refusing to address an equitable tolling declaratory judgment claim as it was an "advisory opinion[] regarding the Defendants' anticipated defenses."); *Melendez v. Original Designs, Inc.*, 1987 WL 12018, at *3 (E.D.N.Y. June 1, 1987) (denying request to toll the statute of limitations for non-parties as such an order would constitute an advisory opinion); *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 527 (S.D.N.Y. 2015) ("the Court declines to render an advisory opinion [concerning equitable tolling] on what Plaintiff may allege in an amended complaint.").

### IV.   LKM Can Seek To Toll The Statute Of Limitations At A Later Time

Notwithstanding that for the reasons discussed above in Section III a decision to toll the statute of limitations at this time would be an impermissible advisory opinion, the Court would still have the authority to toll the statute of limitations at a later date — if and when the issue becomes ripe.

A court's authority to toll a statute of limitations derives from its power to resolve questions of equity. *See Upadhyay v. Sethi*, 2012 WL 1195233, at *1 (S.D.N.Y. Apr. 5, 2012). Under the doctrine of equitable tolling, the statute of limitations is extended "as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights[.]" *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir. 1996). While it is a fact-intensive inquiry, "[g]enerally, equitable tolling has been allowed where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period[.]" *Johnson v. Capra*, 2017 WL 8683606, at *4 (S.D.N.Y. Sept. 29, 2017). In determining whether to allow equitable tolling, courts consider whether the plaintiff "(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003).

Here, both elements can potentially be shown if LKM were to ever file a malpractice claim against DLA (and DLA were to contend that the statute of limitations had expired). LKM could argue that Shi acted with reasonable diligence by filing an application to toll the statute of limitations on the Company's claim for legal malpractice prior to December 21, 2021, even if the Court found that Shi lacked standing or otherwise declined to rule on the application. *See* ECF 214; 218; *Kelmetis v. Fed. Natl. Mortg. Assn.*, 2017 WL 395120, at *6 (N.D.N.Y. Jan. 27, 2017) (quoting *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)) ("Equitable tolling has been allowed in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period"). In the event that the Receiver were to be discharged and Shi were to regain the ability to cause the Company to bring claims, Shi's application will likely meet New York's standard for reasonable diligence. *See Ruiz v. Suffolk County Sheriff's Dept.*, 2008 WL 4516222, at *8 (E.D.N.Y. Oct. 2, 2008) (noting that reasonable diligence is shown by the petitioner taking an "affirmative action" to "preserve its right.").

As to the "extraordinary circumstances" prong, Shi maintains that the purportedly improper appointment by the Court of the Receiver prevented the Company's prior directors from



bringing a legal malpractice claim against DLA.  *See* ECF 214 at 8-9.  While the Receiver disagrees completely with the merits of Shi's claim, if the Receiver were to be discharged and Shi were to regain control of the Company, then the Company could plausibly argue that it faced extraordinary circumstances which prevented it from pursuing a malpractice claim against DLA, including that the Receiver (not Shi) controlled the Company.  *See Roundtree v. City of New York*, 2018 WL 443751, at *3 (S.D.N.Y. Jan. 16, 2018) ("The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period.").

### V.     New York Law Applies

New York law governs the statute of limitations for a legal malpractice claim, because the application of a statute of limitations is considered a "procedural" issue (as opposed to a "substantive" one) and is thus governed by the law of the forum.  *See Vincent v. Money Store*, 915 F. Supp. 2d 553, 568–69 (S.D.N.Y. 2013) (under New York law, "statutes of limitations are considered procedural," and "it has generally been held that the [s]tatute of [l]imitations of the forum rather than that of the jurisdiction where the cause of action accrued governs the timeliness of a cause of action"); *Gerena v. Korb,* 617 F.3d 197, 206 (2d Cir. 2010) ("New York still adheres to the traditional substantive/procedural dichotomy in its choice of law analysis and generally classifies statutes of limitations as procedural").  Under New York law, the statute of limitations for a legal malpractice claim is three years, "computed from the time the cause of action accrued to the time the claim is interposed."  *3rd & 6th, LLC v. Berg*, 53 N.Y.S.3d 78, 79 (2d Dept. 2017); *see also* CPLR § 214.  The statute of limitations begins to accrue on the day of an actionable injury.  *3rd & 6th, LLC*, 53 N.Y.S.3d at 79.

We are available to discuss the foregoing with the Court.

Respectfully Submitted,

*/s/* Amiad M. Kushner
Amiad M. Kushner

*Counsel for Robert W. Seiden*
*Court-Appointed Temporary Receiver*
*for Link Motion Inc.*

cc: All counsel of record (via ECF)