

Toby S. Soli
Tel 212.801.3196
solit@gtlaw.com

September 15, 2021

**VIA ECF**

The Honorable Debra C. Freeman
Magistrate Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    *Baliga v. Link Motion Inc. et al.*, 1:18-cv-11642 (S.D.N.Y.) (VM) (DCF)

Dear Judge Freeman:

    As Baliga noted in Opposition (the "Opposition") to Shi's Motion to Dissolve the Preliminary Injunction and Discharge the Receiver (the "Motion"), Shi's entire argument boils down to the assertion that because Baliga is not a registered shareholder, he cannot assert derivative claims and, as a result, Baliga's claims cannot sustain a preliminary injunction or a temporary injunction. (ECF 241, at 2-3, 8-24.) As Baliga demonstrated in the Opposition, Shi's argument is without any foundation. Shi, however, now extends it even further to argue that Baliga lacked any standing to bring his claims and, as a result, this Court lacks subject matter jurisdiction. (ECF 254, at 1.) Shi argues, therefore, that the Receiver's appointment is void *ab initio* and all of the Receiver's acts must be unwound. (*Id.*)

    Shi, however, has failed to point to a single case in which a Court ruled that a Receivership it ordered was *void ab initio.* (*See* ECF 241, 246, 254.) Moreover, Shi's argument is entirely without merit and crumbles under its own weight. There has been no finding that Baliga cannot assert a derivative complaint and Baliga has always asserted multiple bases for equitable relief, including a claim under Section 10b of the Exchange Act. (ECF 1, at ¶¶ 46-49; ECF 68, at ¶¶ 47-50; ECF 166, at ¶¶ 140-44.) Remarkably, in the three briefs Shi has submitted seeking to dissolve the Receivership, Shi fails to cite even a single case establishing that claims under the Exchange Act are insufficient to support the appointment of a Receiver. (*See* ECF 241, 246, 254.) Regardless of whether this Court determines that it ought to sustain the Receivership (and it should), it is clear that Baliga has always had standing to pursue equitable relief and that this Court has—and always has had—subject matter jurisdiction over this dispute.

    Shi's further argument that Baliga should be liable for damages arising from the Receivership is improper. This Court has made quite clear that it "will not consider new matters raised in replies for the first time." Individual Practices of U.S. District Court Judge Victor Marrero, at II.D.A (Feb. 3, 2020), available at https://www.nysd.uscourts.gov/sites/default/files/practice_documents/VM%20INDIVIDUAL%20PRACTICES%20OF%20USDJ%20VICTOR%20MARRERO.2020_0.pdf. In this case, Shi failed to even raise this argument in Reply and instead raised it for the first time in supplemental briefing on an unrelated issue. Should the Court seek briefing on this issue, Baliga will, of course, provide support for the position that (1) Link Motion was not damaged by the Receivership; and (2) because the Receiver was consented-to and

**Greenberg Traurig, LLP | Attorneys at Law**
77 West Wacker Drive  |  Suite 3100  |  Chicago, Illinois 60601  |  T +1 312.456.8400  |  F +1 312.456.8435

www.gtlaw.com

The Honorable Debra Freeman
United States District Court Magistrate Judge
Southern District of New York
September 15, 2021
Page 2

has benefitted Link Motion it would not be appropriate to charge the Receiver's costs and fees to Baliga.[1] There is ample evidence in the record that the Receiver's actions all conferred a genuine benefit on Link Motion, but if the Court reaches this issue, Baliga believes that the Receiver should be heard on how its actions benefitted the company. Shi again failed to cite a single case in which the Court held that a Plaintiff should pay costs related to a Receivership. (*See* ECF 241, 246, 254.)

Finally, as the Court requested, Baliga will discuss the significant ramifications of voiding the Receivership *ab initio*. Notably, Shi is asking the Court to return Link Motion to where it was before the Receiver was appointed—on the verge of being delisted and being run by a leader who has since been adjudged to have breached his fiduciary duties and engaged in self-dealing at the expense of the company.

### I.  Baliga Has Always Had Standing to Seek Equitable Relief; This Court Has Always had Subject Matter Jurisdiction

Shi fails to cite a single case in which a court discharged a Receiver void *ab initio* as he requests. Instead, Shi's argument is based entirely upon case law which stands for the simple proposition that "[l]ack of standing of the party bringing suit would result in a lack of jurisdiction of the Court to hear the matter and would require a dismissal of the action." *EMI Entm't World, Inc. v. Karen Records, Inc.*, 05 CIV. 390 LAP, 2013 WL 2480212, at *2 (S.D.N.Y. June 10, 2013).[2] That is to say, all of the cases Shi relies upon for his argument found that the Plaintiff had no standing to bring any claim at all and, as a result, the Court lacked subject matter jurisdiction over the dispute entirely. In this case, as Shi makes clear, he is asserting solely that "the parties and the Court were mistaken that Baliga had standing to bring claims derivatively." (ECF 254, at 2.) Even if Shi were correct, this does not deprive the Court of subject matter jurisdiction over the dispute.

Indeed, as Baliga has previously noted, "[i]t is well established that when a federal district court is asked to determine the appropriate remedy for a violation of the Securities Exchange Act, it sits as a court of equity." *Saunders Leasing Sys., Inc. v. Societe Holding Gray D'Albion, S.A.*, 507 F. Supp. 627, 636 (N.D. Ala. 1981) (*citing Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49

---

[1] "[E]xpenses that the corporation would have had to incur had there been no receiver, and expenses that confer a genuine benefit upon the corporation, should be charged to it." *Commodity Futures Trading Comm'n v. Frankwell Bullion Ltd.*, 99 F.3d 299, 306 (9th Cir. 1996) (quoting *Pioche Mines Consolidated, Inc. v. Dolman*, 333 F.2d 257, 276 (9th Cir. 1964)).

[2] Shi asserts that "Plaintiff never had such standing because he did not own shares of the company; he was merely an ADS holder, making him a beneficial holder without standing to assert derivative claims." (ECF 254, at 1.) Shi offers no citation to support that assertion. The Court has, in fact, specifically noted that it has made no finding on that point to date. (ECF 221, at 6.) More importantly, it is clear that under New York law, Baliga could have brought these derivative claims. (ECF 241, at 17.) "Where the parties fail to raise the issue of choice of law, the Court need not raise the issue *sua sponte*, and the parties are deemed to have acquiesced in the application of the law of the forum." *Elliott v. Nestle Waters N. Am. Inc.*, 13 CIV. 6331 RA, 2014 WL 1795297, at *9 (S.D.N.Y. May 6, 2014) (*quoting Keles v. Yale Univ.*, 889 F.Supp. 729, 733 (S.D.N.Y.1995), *aff'd*, 101 F.3d 108 (2d Cir.1996)).

Case 1:18-cv-11642-VM-DCF   Document 258   Filed 09/15/21   Page 3 of 5

The Honorable Debra Freeman
United States District Court Magistrate Judge
Southern District of New York
September 15, 2021
Page 3

(1975); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972)). "Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies." *SEC v. Lek Sec. Corp.*, 17CV1789 (DLC), 2020 WL 1316911, at *3 (S.D.N.Y. Mar. 20, 2020) (*quoting SEC v. Frohling*, 851 F.3d 132, 138 (2d Cir. 2016)).

In this case Baliga alleges violations of Section 10(b) of the Exchange Act arising from "devices, schemes, and artifices to defraud;" "untrue statements of material fact or omi[ssions] of material[] facts;" and "acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated." (ECF 166, at ¶ 142.) Shi's fraud—and in particular his "course of business that operated as a fraud or deceit" align with Judge Marrero's findings on June 11, 2019 that "Baliga has provided evidence that (1) Link Motion has transferred substantial assets without notice to the Board; (2) Link Motion has failed to make required filings with the SEC; (3) employees have gone without pay; and (4) Shi has fired employees and ordered documents removed." (ECF 64, at 21-22.) The Court specifically held that "[t]hese behaviors are precisely the kind of actions that warrant the appointment of a receiver." (*Id.*, at 22.)

As such, *EMI* is inapposite. Baliga has always maintained a claim for violations of Section 10(b) of the Exchange Act. (ECF 1, at ¶¶ 46-49; ECF 68, at ¶¶ 47-50; ECF 166, at ¶¶ 140-44.) Regardless of whether Baliga had standing to assert derivative claims, he has always had standing to seek equitable relief including the appointment of a Receiver and this Court has always had subject matter jurisdiction over this dispute. Because this is the sole argument that Shi advances to argue that the Receivership was void *ab initio*, it is clear that even if the Court discharges the Receivership it may and should maintain the good work that the Receiver has done to date.

Moreover, Shi ignores the fact that in this case Counsel for Plaintiff and Counsel for Link Motion jointly filed a letter in which they agreed to allow the Temporary Restraining Order to "remain[] in effect pending this Court's ruling on Plaintiff's request for a preliminary injunction and temporary receiver." (ECF 20, at 1.) More than a month after receiving notice that Baliga was moving for a Temporary Restraining Order, Link Motion entered a stipulation stating that it did not oppose the entry of a preliminary objection. (ECF 22.) Under New York law:

> It is a principle of long standing that conduct of litigation is the prerogative of counsel. As stated in *Hallock v. State,* 64 N.Y.2d 224, 230, 485 N.Y.S. 2d 510, 474 N.E.2d 1178, "From the nature of the attorney-client relationship itself, an attorney derives authority to manage the conduct of litigation on behalf of a client, including the authority to make certain procedural or tactical decisions (*see* Code of Professional Responsibility, EC–7–7; *Gorham v. Gale,* 7 Cow 739, 744; *Gaillard v. Smart,* 6 Cow 385, 388)."

*Mayes v. UVI Holdings, Inc.*, 280 A.D.2d 153, 158, 723 N.Y.S.2d 151, 154–55 (2001); *see also In re Mercury*, 280 B.R. 35, 50 (Bankr. S.D.N.Y. 2002), *aff'd,* 122 Fed. Appx. 528 (2d Cir. 2004).

Because Link Motion stipulated that it did not oppose appointment of the Receiver, it cannot now claim that the appointment of the Receiver was in error or seek purported damages arising from its decision. Indeed, as this Court has recognized, "neither Link Motion nor Shi ever opposed the motion leading to the Preliminary Injunction Order." (ECF 64, at 21.)

The Honorable Debra Freeman
United States District Court Magistrate Judge
Southern District of New York
September 15, 2021
Page 4

**II.      Voiding the Receivership Would Cause Immeasurable Harm to Link Motion**

The Receiver has provided this Court with detailed reports of its activities since it was appointed more than two-and-a-half years ago. These detailed status reports can be seen across the docket of this case. *See, e.g.*, ECF 30, 43, 74, 79, 93, 99, 109, 115, 161, 165, 173, 186, 188, 194, 205, 210, and 220. These status reports detail both the state that Link Motion was in when the Receiver was appointed, but also the actions that the Receiver has taken to improve the position of the company.[3]

Shi provided the Court with a list of tasks to reverse the progress that the Receiver has made, but he did not address the practical ramifications of voiding the Receivership.

   *A.      The Company's Pre-Receiver Status*

Baliga brought this action in 2018 because Shi and the individual defendants were stripping Link Motion of all of its value by transferring ownership and control of the company's most valuable assets to third parties controlled by Shi or his associates. (ECF 1, at ¶ 3.) Shi and his associates were in the process of allowing Link Motion to be delisted from the New York Stock Exchange and go dark, leaving stakeholders with no value and little hope of recovering any assets. (*Id.*) In August 2018, the company released a press release and 6K in which Link Motion's auditors announced that they could not complete their audit work for fiscal year 2017 until an ongoing independent investigation was completed. (*Id.*, at ¶ 15.)

In addition, the allegations made in the original complaint have been born out in subsequent litigation. The Hong Kong International Arbitration Tribunal ("Arbitration Tribunal") found that Link Motion's General Counsel and outside securities counsel both concluded that entering into the two pledge agreement with Zhongzhi "was improper and any director who approved that transaction would breach his or her fiduciary duties to the company." (ECF 210-1, at ¶ 151.) In fact, the Arbitration Tribunal found that Shi both breached his fiduciary duty of care in approving the pledge agreement and engaged in self-dealing as "he had a direct, personal financial interest in the repayment of the Note." (*Id.*, at ¶ 157.) As a result, they "conclude[d] that Dr. Shi breached his fiduciary duty of loyalty as well as his fiduciary duty of care." (*Id.*, at ¶ 158.) Prior to the Receiver intervening in the Arbitration Tribunal, Shi was attempting to expedite the proceedings despite the fact that he had failed to file an Answer. (*Id.*, at ¶¶ 17, 32, 34.) It appears that he was attempting to default the proceedings so that he could finish stripping Link Motion of its assets.

---

[3] In just the past week, the China International Economic and Trade Arbitration Commission ("CIETAC") issued an order requiring that Shi and Zhou Xu transfer their NetQin Tianxia registered shares to representatives designated by the Receiver. This will allow the Receiver to both further investigate and recover company funds stolen by Shi. CIETAC found that Shi signed the January 10, 2019 Agreement with China AI without the participation of Netqin Tianxia's controlling shareholder, Guo Lingyun, causing NQ Mobile (Beijing) Co., Ltd. to be unable to exercise its rights under the Equity Disposal Agreement—impacting the safety of the investor funds, the stability of the VIE structure, and corporate control. Given the timing, Plaintiff does not yet have a certified translation. Plaintiff will submit a certified translation upon completion.

The Honorable Debra Freeman
United States District Court Magistrate Judge
Southern District of New York
September 15, 2021
Page 5

As the Receiver advised this Court in April 2019, "[t]he Receiver has received and responded to many texts, calls, and emails from current employees of Link Motion, Inc., most of whom have reported that Vincent Shi has or is in the process of removing computers, valuable records, files, and assets of the company." (ECF 43, at 3 ¶ 15.) As the process went on, the Receiver reported that "it is clear that all the early indicators of a Chinese company going dark on its investors is right now taking place within LKM. The rogue Individual Defendants have now begun to transfer ownership of the valuable assets of the Company, and, again based on my experience, it is very likely that this situation will escalate to the point where the Individual Defendants will transfer ownership of the remaining assets and cash of LKM very shortly." (ECF 93, at ¶ 6.)

  B. *Voiding the Receivership Would Destroy All Value in Link Motion*

Quite simply put, the practical effect of voiding the Receivership would be to ensure that there is no value left for stakeholders (including Baliga)—whether they hold registered shares or ADR—to recover from Link Motion. As Baliga predicted in his original complaint and as the Receiver observed, the Individual Defendants, led by Shi, were actively looting the company and preparing to delist it and go dark.

Even despite the Receiver's best efforts, Shi and his associates have continued looting the company even in the face of the Preliminary Injunction. As the Receiver disclosed in August 2020, during a period from May 15, 2019 to November 5, 2019, Shi was able to illegally transfer $89 million dollars out of a company account in a series of transactions to a separate account held by an unrelated entity with a similar-sounding name. (ECF 161, at 2.)

If Shi and the Directors as of December 2019 are reinstated, Link Motion will return to the course of conduct which the Receiver halted for the time being.[4] Link Motion will be drained of all assets and the fraud and breaches of fiduciary duty which Baliga complained of in his original complaint will be complete. There will be no monies for Baliga or any other shareholder to recover.

         Respectfully submitted,

         GREENBERG TRAURIG, LLP

         By: _____
           Toby S. Soli
         MetLife Building
         200 Park Avenue
         New York, New York 10166
         Telephone: (212) 801-9200
         Email: solit@gtlaw.com
         *Counsel for Plaintiff*

cc: All counsel of record (via ECF)

---

[4] Baliga has, on a number of occasions, requested that the Receiver call a shareholder meeting to allow shareholders to vote on the Board, but Shi has opposed such requests.