声明

本人王青，拥有 英语 翻译资格，在北京百嘉翻译服务有限公司工作，该公司是
北京市高级人民法院指定的翻译机构。本人保证所附的英文译文内容真实有效，
与中文原文内容一致。

地址：北京市建内大街 18 号恒基中心办公楼 1 座 706 室
电话：01065187912
邮编：100005
翻译签字：
公司盖章：

北京百嘉翻译服务有限公司
日期：2021.9.23

## DECLARATION

I, Wang Qing, am an accredited translator working for Beijing Baijia Translation
Company, which company is a translation service provider appointed by Beijing High
People's Court. I undertake that the content of the English translation attached hereto
is true and valid and is consistent with that of the Chinese original.

Address: Suite 706, Office Tower 1, HENDERSON Centre, 18 Jianguomennei
Avenue, Beijing China.
Tel: 01065187912
Postcode: 100005
Signature of Translator
Company Seal:

Beijing Baijia Translation Company
Date：September.23.2021

# 裁 决 书

## Arbitral  Award



**CIETAC**

中 国 国 际 经 济 贸 易 仲 裁 委 员 会

CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

# Arbitral Award

**CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION**

# 中国国际经济贸易仲裁委员会

# 裁 决 书

申请人：网秦无限（北京）科技有限公司
地址：北京市海淀区东北旺西路 8 号院 4 号楼三层 317 室
仲裁代理人：王建新、辛宜耘　北京天驰君泰律师事务所
　　　　　　杨超、潘佳浔、张瀚文、杜明竹
　　　　　　北京安杰律师事务所


第一被申请人：史文勇（身份证号码：352124197711280513）
地址：北京市朝阳区外交部南街 8 号 16 层南座 18E
第二被申请人：周旭（身份证号码：110104196903103013）
地址：北京市宣武区小红庙 18 号院 4 号楼 603 号
共同仲裁代理人：李世良　北京市证信律师事务所


北　　京
二〇二一年九月四日

# CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

## ARBITRAL AWARD

Claimant: NQ (Beijing) Technology Co., Ltd.

Address: 317, Floor 3, Building 4, 8 West Dongbeiwang Road, Haidian District, Beijing

Arbitration Attorneys: Wang Jianxin and Xin Yiyun from Beijing Tianchi Juntai Law Firm

Yang Chao, Pan Jiaxun, Zhang Hanwen, Du Mingzhu from Beijing Anjie Law Firm

First Defendant: Shi Wenyong (ID Card No: 352124197711280513)

Address: 18E, South Wing, 8 South Waijiaobu Street, Chaoyang District, Beijing

Second Defendant: Zhou Xu (ID Card No: 110104196903103013)

Address: 603, Building 4, 18 Xiaohongmiao, Xuanwu District, Beijing

The Defendants' Arbitration Attorney: Li Shiliang from Beijing Zhengxin Law Firm

Beijing

September 4, 2021

2

# 裁 决 书

〔2021〕中国贸仲京裁字第 2304 号

中国国际经济贸易仲裁委员会（以下简称 "仲裁委员会"）根据申请人网秦无限（北京）科技有限公司（以下简称 "申请人" 或 "网秦无限"）和第一被申请人史文勇（以下简称 "第一被申请人"）、第二被申请人周旭（以下简称 "第二被申请人"，并与第一被申请人共同简称 "被申请人"）及案外人郭凌云、北京网秦天下科技有限公司（以下简称 "网秦天下"）于 2015 年 11 月签订的《经修订和重述的股权处置协议》（以下简称 "《股权处置协议》"）中仲裁条款的约定，以及申请人于 2019 年 11 月 12 日向仲裁委员会提交的书面仲裁申请，受理了申请人和被申请人之间上述合同项下的本争议仲裁案。本案编号为 DS20192260。

本案仲裁程序适用仲裁委员会自 2015 年 1 月 1 日起施行的《中国国际经济贸易仲裁委员会仲裁规则》（以下简称 "《仲裁规则》"）。鉴于本案争议不具有涉外因素，根据《仲裁规则》第六十五条的规定，本案适用《仲裁规则》第五章 "国内仲裁的特别规定"；该章没有规定的事项，适用《仲裁规则》其他各章的规定。

2019 年 12 月 16 日，仲裁委员会仲裁院（以下简称 "仲裁院"）以特快专递的方式分别向双方当事人寄送了本案仲裁通知、《仲裁规则》和《仲裁员名册》，同时向被申请人寄送了申请人提交的仲裁申请书及其附件。

后，前述寄送给被申请人的邮件被邮局以 "无人认领"

1

# Arbitral Award

[2021] CIETAC Jing Award No. 2304

According to the arbitration clause in the "Amended and Restated Share Disposal Agreement" (hereinafter referred to as "SDA") signed in November 2015 by and among NQ (Beijing) Technology Co., Ltd., the Claimant (the "Claimant" or "NQ" hereinafter) and Shi Wenyong, Defendant 1 ("Defendant 1" hereinafter), Zhou Xu, Defendant 2 ("Defendant 2" hereinafter, or the "Defendants" collectively along with Defendant 1), and the outside parties Guo Lingyun and Beijing NQ World Technology Co., Ltd. ("NQW" hereinafter), and the written arbitration application raised by the Claimant to China International Economic and Trade Arbitration Commission (hereinafter referred to as "CIETAC") on November 12, 2019, CIETAC has admitted and filed in office the arbitration case over the dispute under the above-stated contract. The case number is DS20192260.

The arbitration is subject to the "Arbitral Rules of China International Economic and Trade Arbitration Commission" (the "Arbitral Rules" hereinafter) in effect since January 1, 2015. In view that the dispute hereunder does not involve any foreign elements, "Special Regulations on Domestic Arbitration Cases" in Chapter V of the Arbitral Rules shall apply according to Section LXV thereof, or issues not exhausted therein shall be governed by provisions in other chapters of the Arbitral Rules.

On December 16, 2019, the arbitration court of CIETAC (the "Court" hereinafter) served to both parties the arbitration notice, the Arbitral Rules and the Register of Arbitrators by express mail, and additionally mailed to the Defendants the arbitration application submitted by the Claimant and the attachments thereto. However, the said mail to the Defendants was returned by the post office by reason of "Unclaimed" and "Rejected". After address confirmation with the Claimant, the Court mailed the said

1

"拒收"为由退回。经向申请人确认地址，2020 年 1 月 6 日，仲裁院按照申请人提供的新地址重新向被申请人寄送了前述材料。经查询，上述邮件被邮局再次退回。2020 年 1 月 10 日，仲裁院按照申请人提供的新地址再次向第二被申请人重新寄送了上述邮件。经查询，上述寄送给第二被申请人的邮件已妥投。

2020 年 1 月 14 日，第一被申请人提交"委托授权书"及附件。仲裁院向第一被申请人授权代理人当面递交前述仲裁文件。

由于被申请人系多方，且未在规定期限内共同选定或共同委托仲裁委员会主任指定一名仲裁员，仲裁委员会主任根据《仲裁规则》第二十九条第（三）款之规定，指定田辉女士、张国明先生担任本案仲裁员，指定寇立耘先生担任本案首席仲裁员。前述三位仲裁员在签署了接受指定《声明书》后，于 2020 年 4 月 15 日成立仲裁庭，共同审理本案。当日，仲裁院向申请人寄送了本案组庭通知及所附仲裁员签署的《声明书》。2020 年 4 月 22 日，仲裁院向第二被申请人授权代理人当面递交前述仲裁文件。2020 年 5 月 11 日，仲裁院根据申请人书面确认的地址，向第一被申请人寄送了前述仲裁文件。经查询，上述文件已妥投。

仲裁庭经商仲裁院，决定于 2020 年 6 月 18 日在北京对本案进行开庭审理。仲裁院于 2020 年 5 月 15 日向申请人和第一被申请人寄送了开庭通知。2020 年 5 月 18 日，仲裁院向第二被申请人授权代理人当面递交前述仲裁文件。

documents again to the Defendants on January 6, 2020 as per the new address from the Claimant. According to an inquiry, the mail was also returned by the post office. On January 10, 2020, the Court, as per the new address provided by the Claimant, sent the mail again to Defendant 2. Inquires show the mail to Defendant 2 has been properly delivered.

On January 14, 2020, Defendant 1 submitted a "Power of Attorney" and the attachments thereto. The Court delivered the abovementioned arbitration documents in person to the authorized representative of Defendant 1.

As there is more than one defendant, and as the Defendants have failed to jointly select or alternatively jointly authorize the chief of CIETAC to appoint an arbitrator, the CIETAC chief has appointed Madam Tian Hui and Mr. Zhang Guoming as arbitrators and Mr. Kou Liyun as the chief arbitrator of the present case pursuant to Section XXIX-(III) of the Arbitral Rules. The said three arbitrators, after signing their Declaration of Appointment Acceptance, set up the arbitral tribunal on April 15, 2020 to examine the case jointly. On the same day, the Court mailed the tribunal organization notice to the Claimant, with the Declaration signed by the arbitrators attached thereto. On April 22, 2020, the Court handed in person the said arbitration documents to the authorized representative of Defendant 2. On May 11, 2020, the Court, as per the address confirmed in writing by the Claimant, mailed the said arbitration documents to Defendant 1. Inquiries show the documents have been properly delivered.

The tribunal, after consultation with the Court, decided to open a court session to hear the case in Beijing on June 18, 2020. The Court mailed the court session notice to the Claimant and Defendant 1 on May 15, 2020. On May 18, 2020, the Court delivered the said arbitration documents in person to the authorized representative of Defendant 2.

2020 年 6 月 11 日，被申请人提交"申请书""北京第四中级人民法院受理案件通知书"，仲裁院将前述材料转寄申请人并抄送被申请人。上述寄送给被申请人的邮件被退回。

因新冠肺炎疫情影响，仲裁庭决定延期举行开庭审理。2020 年 6 月 15 日，仲裁院向双方当事人寄送延期开庭通知。上述寄送给被申请人的邮件被退回。

2020 年 6 月 15 日，北京市第四中级人民法院寄来(2020)京 04 民特 402 号函，通知中止本案仲裁程序。次日，根据《仲裁规则》第四十五条第（一）款和第（三）款的规定，仲裁庭决定本案仲裁程序自即日起中止。仲裁院向双方当事人发出书面中止通知。

2020 年 7 月 1 日，被申请人提交授权委托书，仲裁院向其寄送了前述被退回的仲裁文件。

2020 年 12 月 29 日，仲裁委员会收到北京市第四中级人民法院寄来的（2020）京 04 民特 402 号民事裁定书。2021 年 1 月 4 日，仲裁院书面致函双方当事人，鉴于北京市第四中级人民法院已经驳回被申请人要求确认仲裁条款无效的申请，根据《仲裁规则》第四十五条的规定，仲裁庭决定本案仲裁程序恢复进行。

仲裁庭经商仲裁院，决定于 2021 年 1 月 28 日在北京对本案进行开庭审理。仲裁院于 2021 年 1 月 4 日向双方当事人寄送了开庭通知。

2021 年 1 月 28 日，仲裁庭如期在北京开庭审理本案。

On June 11, 2020, the Defendants submitted "Application" and "Beijing No. 4 Intermediate People's Court Case Admission Notice", the Court forwarded them to the Claimant and sent copies of them to the Defendants by mail. The said mail to the Defendants was returned.

Due to the COVID-19 epidemic, the Court decided to adjourn the court hearing. On June 15, 2020, the Court mailed the adjourn notice to both parties. The mail to the Defendants was returned.

On June 15, 2020, Beijing No. 4 Intermediate People's Court delivered by mail "(2020)Jing04MinTe Letter No. 402", informing that the arbitration procedure of the present case was suspended. On the following day, the Court, according to Sections XLV-(I) and (II) of the Arbitration Rules, decided that the arbitration procedure suspended forthwith on the day. The Court then sent a written suspension notice to each party.

On July 1, 2020, the Defendants submitted a power of attorney, and the Court mailed to it the aforesaid arbitration documents that had been returned.

On December 29, 2020, CIETAC received "(2020)Jing04MinTe Civil Award No. 402" from Beijing No. 4 Intermediate People's Court. On January 4, 2021, the Court sent a written letter to each party, informing that, given Beijing No. 4 Intermediate People's Court had dismissed the Defendants' request for invalidating the arbitration clause, the tribunal decided to restart the arbitration procedure according to Section XLV of the Arbitration Rules.

After consulting with the Court, the tribunal determined to open a court session to examine the case in Beijing on January 28, 2021. The Court sent the court session notice to both parties on January 4, 2021.

On January 28, 2021, the tribunal held the court session in Beijing to hear the case as scheduled. The Claimant and the Defendants appointed their arbitration attorneys to appear at court. The Defendants delivered in court the "List of

申请人与被申请人均委派仲裁代理人出席庭审。被申请人当庭提交"证据材料清单"及附件，仲裁院将前述材料转交申请人。庭审中，申请人就其仲裁请求及所依据的事实和理由进行了陈述，被申请人发表了口头答辩意见。双方就证据进行了质证，就法律问题进行了辩论，并回答了仲裁庭的提问。

庭后，被申请人提交"代理意见""补充证据材料清单"及附件，申请人提交"庭后代理意见""补充证据目录"及附件。仲裁院将前述材料在双方当事人之间进行了交换。

2021年2月25日，申请人提交"对被申请人代理意见的反驳意见""质证意见"。2021年2月26日，被申请人提交"质证意见"。仲裁院将前述材料在双方当事人之间进行了交换。

因仲裁程序进行的需要，本会仲裁院院长同意并决定将本案作出裁决的期限延长至2021年9月4日。

本案仲裁文件均已按照《仲裁规则》第八条的规定有效送达双方当事人。

本案已审理终结。仲裁庭根据庭审情况和双方当事人提供的相关证据材料，经合议作出本裁决。

现将本案案情、仲裁庭意见和裁决结果分述如下：

## 一、案　情

Documentary Exhibits" and the attachments thereto, which the Court forwarded to the Claimant. During the court hearing, the Claimant made its statement in accordance with its arbitration claims and the supporting facts and grounds, and the Defendants gave oral replies. Both parties carried out cross-examination of the exhibits, debated legal issues, and answered the tribunal's questions.

After the hearing, the Defendants submitted "Attorney's Opinion" and "List of Additional Exhibits" along with the attachments thereto, and the Claimant delivered "After-court Attorney's Opinion", "List of Additional Exhibits" and the attachments therewith. The Court had the said documents exchanged between the parties.

On February 25, 2021, the Claimant raised "Rebuttals to the Attorney's Opinion from the Defendants" and "Cross-examination Opinions". On February 26, 2021, the Defendants submitted "Cross-examination Opinions". The Court had the said materials exchanged between the parties.

As needed by the arbitral procedure, the president of the Court agreed and determined to extend the decision deadline for the case to September 4, 2021.

Arbitration documents of the case have been effectively served to both parties according to Section VIII of the Arbitral Rules.

The trial has ended. The tribunal has reached this Award depending on the result of the court hearing and the pertinent exhibits from both parties.

The case facts, the tribunal's opinion and the arbitration outcome are hereby stated as follows respectively:

### I.   Case Facts

本案案外人网秦天下于 2005 年 10 月 21 日由三位自然人股东史文勇、周旭和林宇在中国注册成立，主要业务是提供移动互联网云服务。经过一系列的股东出资额、实收资本、投资人以及法定代表人和董事会成员的变更，目前网秦天下的注册资本和实缴资本为人民币 5,000 万元（以下金额均为人民币——仲裁庭注），登记股东为史文勇、周旭、郭凌云和郭力麟，其中本案被申请人史文勇和周旭名下分别持有网秦天下 14.75%和 33.25%的股权，对应出资额分别为 737.5 万元和 1,662.5 万元。

网秦天下的初始股东和投资人于 2007 年在开曼注册成立了 Link Motion Inc.（以下简称"凌动公司"）。2010 年，凌动公司作为 100%持股股东在香港注册成立了 Link Motion International Limited.（以下简称"香港凌动"）。凌动公司于 2007 年在中国注册成立本案申请人网秦无限。目前，香港凌动是网秦无限的 100%持股股东。

为实现境外上市融资目的，网秦无限与网秦天下及其股东签署了一系列 VIE 协议，包括《独家技术咨询和服务协议》、《业务经营协议》、《股权处置协议》、《借款协议》以及《股权质押协议》。由于增资和股东变更等原因，各方当事人在不同的时点对这些协议进行过修订和重述。本案涉及网秦无限与网秦天下以及网秦天下当时的注册股东史文勇、周旭和郭凌云共同于 2015 年 11 月签订的《股权处置协议》。

凌动公司于 2011 年 5 月 5 日在美国纽约证券交易所上市，后于 2019 年 1 月 9 日退市。网秦天下的股东之间围绕网秦天下控制权发生了一系列法律争议。

NQW, an outsider of the case, was registered and founded in China on October 21, 2005 by three natural-person shareholders, namely Shi Wenyong, Zhou Xu and Lin Yu, which was mainly engaged in provision of mobile Internet cloud services. Through a series of changes in shareholders' capital contributions, paid-in capital, investors, the legal representative, and board members, the company's registered, also being paid-in capital, is RMB¥50million at present (all amounts hereinafter are denoted in RMB—Note from the tribunal), its registered shareholders are Shi Wenyong, Zhou Xu, Guo Lingyun and Guo Lilin. Among them, Shi Wenyong and Zhou Xu, two defendants of the present case, respectively hold 14.75% and 33.25% of NQW's shares, corresponding to RMB¥7.375million and RMB¥16.625million of capital contribution.

NQW's initial shareholders and investors registered and founded Link Motion Inc. ("LMI" hereinafter) in Cayman Islands in 2007. In 2010, LMI registered and incorporated Link Motion International Limited ("LMIHK") in Hong Kong and held 100% of its shares. LMI registered and set up NQ, the Claimant, in China in 2007. At present, LMIHK is the holder of 100% shares of NQ.

For the purpose of financing through overseas listing, NQ signed a series of VIE Agreementss with NQW and its shareholders, including "Exclusive Technical Consulting and Service Agreement", "Business Operation Agreement", "Share Disposal Agreement", "Loan Agreement" and "Share Pledge Agreement". Due to capital increases and shareholder changes, among other reasons, the parties amended and restated the said agreements at different timepoints. The present case involves the "Share Disposal Agreement" signed in November 2015 by and between NQ as one side and NQW, NQW's registered shareholders at the time, being Shi Wenyong, Zhou Xu and Guo Lingyun.

LMI went public at New York Securities Exchange in U.S.A. on May 5, 2011 and exited on January 9, 2019. A series of legal disputes in connection with control of NQ occurred among NQ's shareholders.

5

（一）申请人的仲裁申请以及事实和理由

根据《股权处置协议》第一条和第二条约定，经向被申请人发出书面行权通知，申请人有权指定第三方随时购买被申请人名下全部或者部分网秦天下股权，被申请人应于收到申请人发出的行权通知之日起十个工作日内向申请人或申请人指定的第三方转让股权。申请人有权在行权通知中确定行权价格和支付方式，且全部行权价款应用于偿还申请人提供给被申请人的贷款。

2019 年 7 月 22 日，申请人根据《股权处置协议》约定向被申请人发出《行权通知》，要求被申请人向申请人指定的第三方郭力麟和郭凌云转让被申请人名下全部网秦天下股权。但被申请人未对申请人的通知作出任何回复，拒绝配合办理转让股权的过户手续。

申请人认为，根据《股权处置协议》，被申请人有义务依据申请人发出的行权函向申请人指定的第三方转让被申请人名下的网秦天下股权，并配合办理相关股权过户的工商变更登记手续。此外，按照《股权处置协议》的约定和行权通知，全部股权价款已用于偿还申请人向被申请人提供的贷款，申请人无需向被申请人支付任何股权转让款。现被申请人拒绝配合办理股权过户，已构成违约。

申请人提出仲裁请求如下：

1.第一被申请人向申请人指定的第三方郭力麟、郭凌云转让其名下网秦天下的股权，其中向郭力麟转让 10.325%的网秦天下股权，向郭凌云转让 4.425%的网秦天下股权；

(I)  Claimant's Arbitration Application & Facts and Grounds

According to Articles I and II of the Share Disposal Agreement, subject to service of a written notice on option exercise to the Defendants, the Claimant shall have the right to appoint a third party from time to time to purchase all or part of NQW's shares registered in the Claimant's name, in which event the Defendants shall transfer the shares to the Claimant or the third party designated by the Claimant within ten working days from the date of receipt of the option exercise notice from the Claimant. The Claimant shall have the right to determine in the exercise notice the exercise price and the terms of payment, and the exercise price shall used in full to pay the loans the Claimant has provided to the Defendants.

On July 22, 2019, the Claimant sent "Exercise Notice" to the Defendants as per the covenant in the Share Disposal Agreement, demanding the Defendants to transfer all their NQW shares to Guo Lilin and Guo Lingyun, the third parties designated by the Claimant. However, the Defendants gave no response to the Claimant's notice and refused to cooperate in the title transfer procedure for the shares.

In the Claimant's view, the Defendants under the Share Disposal Agreement are obliged to transfer their NQW shares to the third party (parties) designated by the Claimant according to the exercise letter from the Claimant, and to provide cooperation in the associated title transfer procedure for the shares with the administration for industry and commerce. Besides, as agreed in the Share Disposal Agreement and according to the exercise notice, the full price of the shares has been used to pay the loans provided by the Claimant to the Defendants, and the Claimant need not pay any share transfer price to the Defendants. The Defendants now refuse to cooperate in the title transfer of the shares, which act has constituted a default of the agreement.

The Claimant hereby raises the following arbitration claims:

1. Defendant 1 shall transfer its NQW shares to the Claimant's designated third parties, namely Guo Lilin and Guo Lingyun, comprising 10.325% to be transferred to Guo Liling and 4.425% to Guo Lingyun.

6

2.第二被申请人向申请人指定的第三方郭力麟、郭凌云转让其名下网秦天下的股权,其中向郭力麟转让 23.275%的网秦天下股权,向郭凌云转让 9.975%的网秦天下股权;

3.被申请人配合办理股权过户的工商变更登记手续;

4.被申请人承担本案全部仲裁费和申请人的律师费。

(二)被申请人庭后提交的代理意见

申请人的仲裁请求不成立,应予驳回,理由如下:

1.郭力麟等人利用凌动公司在 2019 年初从美国退市机会,通过虚假诉讼在美国骗取接管令,从而侵占凌动公司在国内资产。2019 年 4 月,通过伪造网秦无限前法人许泽民的签字,还谎称公章丢失等不正当方式欺骗海淀工商局,郭力麟出任网秦无限的法人,从而控制了网秦无限。本案中,郭力麟企图利用 VIE 协议将史文勇和周旭二人的股权变更至郭力麟本人名下,进一步侵占凌动公司在国内的股权。

2.就本案法律问题的意见

(1)网秦无限并非适格主体,无权以自己名义提出要求将股权过户给案外人的仲裁申请。根据《股权处置协议》约定,应由指定的第三方主张过户。法律规定只有债权人可以代位债务人向次债务人主张或者股东代位公司向高管等主张,其不符合法律规定的代位诉讼的条件。如案外人郭力麟主张权利,应当另行向法院起诉。

(2)案涉股权已被质押给网秦无限并办理了质押登记

2. Defendant 2 shall transfer its NQW shares to the Claimant's designated third parties, namely Guo Lilin and Guo Lingyun, comprising 23.275% to be transferred to Guo Liling and 9.975% to Guo Lingyun.

3. The Defendants shall cooperate in the procedure for title transfer of the shares with the administration for industry and commerce.

4. The Defendants shall bear the full arbitration fee of and the Claimant's attorney's fee for the present case.

(II) After-court Attorney's Opinion from the Defendants

The Claimant's arbitration claims are not justifiable and ought to be dismissed by the following reasons:

1. Guo Liling and others, by taking advantage of LMI's exit from the USA stock market in early 2019, obtained a takeover order by deceptively through a false lawsuit, and in turn seized LMI's assets in China. In April 2019, through cheating Haidian District Administration for Industry and Commerce by fabricating the signature of Xu Zemin, the former legal representative of NQ, falsely claiming a loss of the common seal, and otherwise undue means, Guo Lilin took office of the legal representative of NQ and thus gained control of NQ. In the present case, Guo Lilin attempted to have the shares of Shi Wenyong and Zhou Xu transferred to his name by making use of the VIE Agreements, and thus to further embezzle shareholding of LMI in China.

2. Opinion on Legal Issues

(1) NQ is not an eligible party of the present case and has no right to raise the arbitration application for transfer of the shares to the outside parties. As agreed in the Share Disposal Agreement, such transfer claim ought to be raised by the designated third party (parties). The requirement of law is that only a creditor may have the right to claim, in subrogation of the debtor, against secondary debtors, or a shareholder may subrogate its company to claim against the company's senior executives, and the subrogation action conditions required by law are therefore not satisfied in the present case. If Guo Lilin, as an outside party, is to claim any rights, he is supposed to institute a separate lawsuit before the court.

(2) The shares in question have been pledged to NQ and the pledge has been registered and filed on record. Pursuant to Section 443 of the "Civil Code of the

手续。依据《中华人民共和国民法典》（以下简称"《民法典》"）第四百四十三条规定，"股权出质后，不得转让，但是出质人与质权人协商同意的除外。"在股权已质押的情况下，除非申请人与被申请人协商一致，否则不能转让。

（3）史文勇因拖欠债务，其持有的网秦天下股权已被法院进行了多次查封、并面临被拍卖执行，所以史文勇无法进行股权过户，对方的行权要求在事实上不能履行。依据《民法典》第五百八十条规定，"当事人一方不履行非金钱债务或者履行非金钱债务不符合约定的，对方可以请求履行，但是有下列情形之一的除外：（一）法律上或者事实上不能履行。"对于不能履行的非金钱债务，应驳回对方的履行要求。

（4）《中华人民共和国公司法》（以下简称"《公司法》"）规定，"股东向股东以外的人转让股权，应当经其他股东过半数同意。股东应就其股权转让事项书面通知其他股东征求同意，"对郭力麟转让股权，应当通知其他股东并征求意见。《股权处置协议》第 2.5 款第（1）项也规定行权应召开股东会并作出决议。对方行权没有经过上述程序。

（5）2019 年 1 月 10 日，被申请人与网秦无限、网秦天下、凌动公司及其大股东 China AI Capital Limited（以下简称 "China AI"）签署《协议》。其中约定，涉及网秦无限和网秦天下的任何变更事宜，以及网秦无限、网秦天下和被申请人之间涉及 VIE 协议履行、变更和终止事宜，都必须经凌动公司和 China AI 一致同意，如有任何争议应通过诉讼解决。本案应由法院管辖。依据前述《协议》约定，申请人主张行权应经其实际控制人凌动公司和 China AI 一致同意，

People's Republic of China" (the "Civil Code" hereinafter), "Pledged shares are not transferrable, unless as negotiated and agreed upon by the pledgor and the pledgee." Given that the shares have been pledged, they shall not be transferred unless as agreed after negotiation between the Claimant and the Defendants.

(3) The NQW shares held by Shi Wenyong have been sealed up by the court on more than one occasions because of his indebtedness, and are subject to enforcement through auction, Shi Wenyong is therefore unable to transfer the title of the shares and the opposite party's exercise demand is in fact unenforceable. Pursuant to Section 580 of the Civil Code, "when either party fails to perform a non-monetary obligation or if its performance of such non-monetary obligation is inconsistent with what has been agreed upon, the opposite party may demand performance, unless: (I) the performance is impossible at law or in fact." Where a non-monetary obligation is impossible to perform, the opposite party's performance demand shall be dismissed.

(4) Pursuant to the Company Law of the People's Republic of China (the "Company Law" hereinafter), "a shareholder's transfer of its shares to any person other than other shareholders shall be subject to the consent of majority of all other shareholders. The shareholder shall give a written notice of the share transfer to all other shareholders for their consent", and the share transfer to Guo Lilin shall accordingly be notified to other shareholders and their opinion over the transfer shall be solicited. In addition, Article 2.5 (1) of the Share Disposal Agreement provides that an option exercise shall be raised to a shareholders' meeting, at which a resolution thereon shall be reached. The opposite party's option exercise has skipped the said procedure.

(5) On January 10, 2019, the Defendants and NQ, NQW, LMI and its major shareholder "China AI Capital Limited" ("China AI" hereinafter) signed an Agreement, whereby any changes involving NQ and NQW, and any matters between NQ, NQW and the Defendants regarding performance, change and termination of the VIE Agreements, shall all be subject to the unanimous consent of LMI and China AI, and that disputes, if any, shall be solved through legal actions. The present case ought to be subject to court jurisdiction. Pursuant to the covenants in the aforesaid Agreement, the Claimant's claim of option exercise shall be subject to the unanimous consent of LMI, i.e. its effective controller, and China AI, or such claim shall be void and invalid.

否则无效。

(6)《协议》合法有效

化景元在 2018 年底就参与 China AI 的事务，具有 China AI 及其股东李宇授权，完全有权代表 China AI 在《协议》上签字。《协议》签字和公章真实有效，没有法院否定其真实性。在其他案件中没有提交《协议》，与《协议》真实性无关；没有提交《协议》，也不能证明就是伪造的。

在原合同中有多个签署方的情况下，只有其中部分主体签署补充协议，补充协议的效力只是仅对签署方才产生效力，对未签署方不产生效力。本案即使郭凌云没有签署《协议》，影响的只是网秦无限对郭凌云行使权利时仍要按原协议履行，但对于史文勇、周旭行权时，就要按照《协议》去执行。本案并不涉及对郭凌云行权，所以郭凌云未签署《协议》不影响《协议》的效力和对本案的适用。同样在原合同中有多个签署方的情况下，如果只有其中部分主体变更合同，对签署方产生变更效力，对未签署方不产生效力。这种变更不属于单方变更的情况，是有效的。本案中，《协议》的签署方包含了《股权处置协议》的甲方、丙方及部分乙方，这就符合上述情况，即协议变更对于签署方有效，仅对未签署方郭凌云无效。

(三) 申请人的"庭后代理意见"

1. 仲裁庭应当根据《股权处置协议》审理本案争议

(1)《协议》是被申请人串通 China AI 利用已作废公章

(6) The Agreement is valid and effective.

Hua Jingyuan has been involved in China AI's matters since the end of 2018 and has been authorized an empowered by China AI and its shareholder Li Yu, and therefore has the full power to sign the Agreement for and on behalf of China AI. The signatures and the common seals on the Agreement are authentic and valid, with authenticity never denied by any court. The failure to deliver the Agreement in other lawsuits has no connection with authenticity of the Agreement, and such failure cannot prove the Agreement has been fabricated.

In the backdrop that the original contract has more than one contracting party and that only some of the contracting parties have signed the supplementary agreement, which shall be effective and binding only upon the signing parties thereto instead of those who have not signed it. In the present case, even if Guo Linyun had not signed the Agreement, the only effect would be that NQ's option exercise upon Guo Linyuan should continue to follow the original agreement, but the option exercise over Shi Wenyong and Zhou Xu shall be subject to the Agreement. As no exercise upon Guo Linyun is involved here, Guo Linyun's not signing the Agreement does not affect effectiveness of the Agreement, nor its applicability to the present case. Similarly, when the original contract has been executed by more than one party and if only part of the signing parties have changed the contract, such change shall take effect only upon those who have signed off the change, but not binding upon those who have not signed. Such change is not a unilateral change and is thus valid and effective. In the present case, the signing parties of the Agreement include Party A, Party C and some members of Party B under the Share Disposal Agreement, which situation meets the scenario described hereinabove, that is, the change of the Agreement shall take effect upon the signing parties and shall be nonbinding only upon Guo Linyun who has not signed thereon.

(III)"After-court Attorney's Opinion" from the Claimant

1. The tribunal shall examine the dispute in question here based on the Share Disposal Agreement.

(1) The Agreement is a document fabricated by the Defendants in collusion with China AI through making use of the nullified common seal and through false dating.

并倒签日期伪造的文件

China AI 的授权代表化景元于 2019 年 10 月才首次在该公司任职，根本不可能在 2019 年 1 月签署的协议中代表该公司出现。China AI 入股凌动公司存在程序违法、出资未到位等问题，China AI 能否以凌动公司股东身份签署相关文件在法律上本身就存疑；网秦无限的公章在 2019 年 5 月之前由被申请人掌握控制，但 2019 年 3 月之后即已被登报作废，史文勇系利用其持有的作废公章炮制《协议》；在围绕网秦天下控制权发生的一系列法律争议中，被申请人及其关联主体从未拿出该明显有利于己方的《协议》。2019 年 7 月 22 日，网秦天下召开股东会及董事会，选举郭力麟为董事长暨法定代表人。2020 年 5 月，史文勇就此提起公司决议效力确认之诉。在网秦天下提出应通过仲裁委员会解决争议的主管异议之后，本案被申请人在向北京市第四中级人民法院提起的申请确认仲裁协议效力之诉中才首次出示该《协议》。《协议》显然是由被申请人串通 China AI 利用已作废公章并倒签日期伪造的文件，其不可能亦不应当产生任何变更《股权处置协议》的法律效力。

（2）《协议》从形式上也不符合《股权处置协议》第 8.1 条约定的变更要求，不能构成对《股权处置协议》实体权利处置及争议解决条款的有效变更

《股权处置协议》与《协议》签约主体不同。根据《股权出资协议》相关条款约定，本案被申请人史文勇、周旭与案外人郭凌云共同构成《股权处置协议》项下的"乙方"和"授权方"，共同并相互承担连带责任。对《股权处置协议》

Hua Jingyuan, the authorized representative of China AI, has not joined the company until October 2019 and has been totally impossible to appear on behalf of the company on the agreement signed in January 2910. China AI's participation in LMI involves procedural noncompliance and capital contribution failure and it is intrinsically questionable at law whether LMI was qualified to sign the relevant documents in the capacity of LIM's shareholder. NQ's common seal was controlled by the Defendants before May 2919 but was nullified through a newspaper announcement in March 2019, but Shi Wenyong has fabricated the Agreement by making use of the nullified common seal on his hand. Throughout the series of legal disputes occurring on control of NQ, the Defendants and its related parties have never exhibited the Agreement that was obviously favorable to them. On July 22, 2019, NQW convened a shareholders' meeting and a board meeting to elect Guo Lilin board chairman and legal representative of the company. In May 2020, Shi Wenyong, in response to that, instituted the lawsuit demanding validation of effectiveness of the corporate resolution. It was after NQW posted the jurisdiction objection demanding the dispute to be referred to the arbitration commission that the Defendants showed the Exhibit for the first time. It is obvious that the Agreement is a document fabricated by the Defendants in collusion with China AI through making use of the nullified common seal and false dating, and that it cannot and shall not have any legal effectiveness in changing the Share Disposal Agreement.

(2) The Agreement, by its form, also fails to meet the change requirements set forth in Article 8.1 of the Share Disposal Agreement, and therefore cannot amount to a valid change of the terms in the Share Disposal Agreement regarding disposal of substantive rights and settlement of disputes.

The Share Disposal Agreement and the Agreement involve different contracting parties. According to pertinent clauses in the Capital Contribution Agreement, Shi Wenyong, Zhou Xu, the Defendants here, and Guo Linyun, an outside party, are collectively "Party B" and "Granting Party" under the Share Disposal Agreement, whereunder they jointly and severally bear responsibility to each other. Amendments or changes, if any, of the Share Disposal Agreement shall be made in writing by the

10

的任何修改变更必须经包括甲方网秦无限、乙方和丙方网秦天下在内的"协议各方"以书面方式进行，未经过乙方成员之一郭凌云的同意，史文勇、周旭亦不得对《股权处置协议》项下三人作为"乙方"共同的权利义务进行变更。《股权处置协议》中所要求的的变更条件，是不可动摇的强制性条件。《协议》在形式上不符合《股权处置协议》约定的变更要求，不能构成对《股权处置协议》的有效变更。

2. 《股权处置协议》约定有效且申请人已经发送行权通知，被申请人应依约向申请人指定的第三方转让股权

（1）《股权处置协议》的约定有效且具有可履行性

申请人和被申请人在签订《股权处置协议》时已经达成一致协议，申请人有权随时要求被申请人向申请人或者申请人指定的第三方转让股权，转让价格由申请人单方确定，且转让价款都将全部用来偿还、抵扣被申请人从申请人处获得的借款。本案各方通过事前的约定对于自己权利义务进行处置，《股权处置协议》不存在无效情形，应当得到支持。

（2）网秦无限是本案仲裁的适格申请人

根据《股权处置协议》约定，申请人有权随时要求被申请人向申请人或申请人指定第三方转让被申请人名下的股权，被申请人应当根据申请人的行权通知转让股权并配合办理工商过户手续。一旦申请人选择由第三方受让被申请人持有的标的股权，则属于《民法典》第五百二十二条第一款规定的向第三人履行合同义务。申请人有权要求申请人履行合同，依约向申请人指定的第三方转让股权。

"parties of the Agreement" including NQ (Party A), Party B, and NQW (Party C). Without the consent of Guo Lingyun, a member of Party B thereunder, Shi Wenyong and Zhou Xu may not make any change to the rights and obligations of the three members of "Party B" jointly under the Share Disposal Agreement. The change conditions required in the Share Disposal Agreement are unchangeable mandatory requirements. The Agreement, by its form, fails to meet the change requirements set forth in the Share Disposal Agreement, and therefore cannot become a valid change of the Share Disposal Agreement.

2. The covenants in the Share Disposal Agreement are valid and effective, the Claimant has served the exercise notice, and the Defendants ought to transfer the shares as agreed to the third parties designated by the Claimant.

(1) The covenants in the Share Disposal Agreement are valid and performable.

When entering into the Share Disposal Agreement, the Claimant and the Defendants have unanimously agreed that the Claimant shall have the right to demand the Defendants from time to time to transfer the shares to the Claimant or to its designated third parties, the transfer price shall be determined by the Claimant unilaterally, and the full transfer price shall be used to pay or offset the loans the Defendants have obtained from the Claimant. The parties of the present case have disposed of their respective rights and obligations through entering an agreement in advance, and the Share Disposal Agreement is not in any situation that will render it invalid, and shall therefore be supported.

(2) NQ is eligible to be the claimant in the present arbitration case.

According to the Share Disposal Agreement, the Claimant has the right to demand the Defendants from time to time to transfer their shares to the Claimant or to the third parties designated by the Claimant, and the Defendants shall make the transfer according to the exercise notice from the Claimant and provide cooperation in the title transfer procedure with the administration for industry and commerce. Once the Claimant opts to have any third party to be assigned the shares held by the Defendants, the act shall constitute such performance of the contractual obligations to the third party as referred to in Paragraph I of Section 522 of the Civil Code. The Claimant shall have the right to demand the Defendants to perform the contract and transfer the shares as agreed to the third parties designated by the Claimant.

（3）申请人已经根据《股权处置协议》约定向被申请人发送行权通知

申请人已两次发送《行权通知》与《行权通知（二）》，均通过 EMS 的方式向被申请人寄出。退一步来说，即使被申请人未于本案仲裁程序开始前收到该等行权通知，其亦已经通过审阅申请人提交的证据材料获知行权通知的内容。在此情况下，申请人已经履行完成《股权处置协议》中约定的前置行权程序。

综上，申请人提起本案仲裁的请求权基础条件已经满足。

3. 本案不存在影响申请人仲裁请求的其他障碍

（1）达成股东会决议并签署股权转让协议并非申请人应当完成的行权前置条件

目前网秦天下的登记股东共四位，分别为申请人指定受让标的股权的两位自然人郭力麟、郭凌云，以及本案被申请人史文勇及周旭。据此，本案中既不存在向股东以外的人转让股权的基本事实，也不存在被申请人之外的股东阻碍该等股权转让的抗辩前提。《股权处置协议》第 2.5 条约定并非申请人行权需要满足的前置程序，而是对被申请人配合申请人完成工商登记主管部门在进行股权变更登记时要求提交的全套书面文件的强制性事前约定。该等约定不应成为申请人主张权利的障碍，而恰恰是被申请人应当配合履行的事宜。

（2）标的股权存在质押及司法冻结的现状不影响申请人的仲裁请求

(3) The Claimant has sent the exercise notice to the Defendants according to the Share Disposal Agreement.

The Claimant has sent the Exercise Notice and the Exercise Notice (II), both mailed to the Defendants by EMS. To say the least, even if the Defendants had not received the said exercise notices before start of the arbitration proceedings hereof, they should have known the content of the notices through viewing the documentary exhibits submitted by the Claimant. In that context, the Claimant has fully performed the pre-exercise procedure set forth in the Share Disposal Agreement.

In view of the foregoing, the Claimant has satisfied the fundamental conditions on its raising of the arbitration claims hereof.

3. There is no other obstacle against the Claimant's arbitration claims.

(1) Concluding the underlying resolution at the shareholders' meeting and signing the share transfer agreement are not the pre-exercise conditions to be satisfied by the Claimant.

NQW currently has four registered shareholders, being the two natural persons the Claimant has appointed to be assigned the target shares, namely Guo Lilin and Guo Lingyun, and the Defendants, namely Shi Wenyong and Zhou Xu. Accordingly, there is no such fundamental fact that the shares are transferred to anyone other than the shareholders, nor any precondition of defense that any shareholder other than the Defendants has prevented the share transfer. Article 2.5 of the Share Disposal Agreement is not a pre-procedure to be satisfied by the Claimant before option exercise, but is instead a mandatory advance covenant regarding the full set of written documents to be delivered by the Defendants when cooperating with the Claimant in going through the shareholding change registration procedure with the administration for industry and commerce. The said covenant shall not be made an obstacle against the Claimant's claim of its rights, which is instead exactly the matter requiring the Defendants' cooperation.

(2) The current status of the target shares, that is, the shares involve a pledge and freezing by court, shall not affect the Claimant's arbitration claims.

标的股权上存在的质押本就是缔约各方在签约时为确保被申请人能够履行《股权处置协议》的约定而采取的限制交易措施，并不影响该等协议的履行。部分标的股权被司法冻结的现状亦不构成本案裁决作出的障碍。标的股权是否最终能够事实上变更登记至申请人指定的第三人名下应是本案裁决进入执行阶段、申请人具体实施工商登记变更时与史文勇的其他债务人及执行法院协商解决的后续事宜，不应反过来影响申请人的仲裁请求。

（四）申请人的"对被申请人代理意见的反驳意见"

即使抛开《协议》的真伪，由于其本身存在的形式上的瑕疵，《协议》亦不能构成对《股权处置协议》的有效变更，仲裁庭仍应根据《股权处置协议》的约定审理本案争议。

1.《股权处置协议》的缔约背景及缔约目的决定了对其进行任何变更均需要严格符合约定要件

《股权处置协议》的签署目的系为了在凌动公司上市前与国内各个相关主体之间有效分担风险，以达成上市公司通过申请人协议控制业务运营实体网秦天下及其股东的目的。正是因为如此，各方在《股权处置协议》之外又另行签署了《借款协议》《股权质押协议》等相关协议并办理了股权质押。在上述缔约背景及缔约目的之下，《股权处置协议》在条文措辞中着力强调网秦天下持股股东的"共同性"，将全部持股股东视为一体，对《股权处置协议》的有效变更更是要严格遵守约定、共同修改、书面变更。之所以如此，正是由于案涉交易结构的客观要求，即在协议控制的交易模式下，各个关

The pledge set on the target shares is inherently the trading restraint put in place by the contracting parties at the time of contracting for the purpose of ensuring the Defendants' performance of the Share Disposal Agreement, and shall not affect performance of the said agreement. The current status that some of the target shares have been frozen by court does not constitute an obstacle against conclusion of the award hereof. It shall be a follow-up step to determine whether the title of the target shares can be effectively transferred to and registered under the names of the third parties designated by the Claimant, which shall take place during the enforcement period of the present case, when the Claimant physically files the change registration with the administration for industry and commerce and seeks settlement through negotiation with other debtors of Shi Wenyong and with the enforcement court, and which step shall not affect the Claimant's arbitration claims.

(IV) The Claimant's "Rebuttals against the Attorney's Opinion from the Defendants"

No matter the Agreement is authentic or not, the intrinsic flaw in the form of the Agreement has rendered it impossible to constitute a valid change of the Share Disposal Agreement, and the tribunal shall continue to examine the dispute in question here based on the Share Disposal Agreement.

1. The background and the purpose of the Share Disposal Agreement have decided that any change of the agreement is subject to strict satisfaction of the agreed requirements.

The Share Disposal Agreement has been signed for the purpose of LMI's effective sharing of risks with the various parties in China before its going public, so that the company, after being listed, and through the agreement with the Claimant, control NQ, the entity running business operations, and the shareholders of NQ. That was why the parties, in addition to the Share Disposal Agreement, further signed other relevant agreements, including the Loan Agreement and the Share Pledge Agreement, and set the pledge on the shares. Given the aforesaid contracting background and purpose, the Share Disposal Agreement, in its wording, has strongly stressed "collectiveness" of the shareholders of NQW, and has treated all the shareholders as one single party, and more importantly, changes of the Share Disposal Agreement, if any, are subject to strict compliance with the covenants therein and shall be made and executed by all the parties jointly. The reason lies in the objective requirements of the structure of the transaction concerned, that is, in the trading model controlled by an

13

联交易主体之间的控制关系无法达到股权控制的稳定程度，故所有文件必须经过所有主体的一致行动才有可能最大限度的实现对交易结构稳定性的保障与监督作用。

2. 《协议》自身内容亦决定了如缺少郭凌云的签字则无法履行

郭凌云作为《协议》签署当日（2019 年 1 月 10 日）持有网秦天下 52%股份的股东未在《协议》中签字，而《协议》第一条仍约定："自[凌动公司]退市之日（2019 年 1 月 9 日）起，[网秦无限]和[网秦天下]任何变更，包括但不限于股权变更、股东更换、法定代表人变更、董事及高管及监事变更、注册地址变更、经营范围变更、注册资金变更、进行投资、进行利润分配、解散清算等任何事宜，必须经过[China AI]和[凌动公司]一致书面同意；否则，任何变更为无效，[网秦无限]与[网秦天下]及[史文勇、周旭]不得实施。"

3.《协议》本身存在重大伪造嫌疑。如仲裁庭拟认定《股权处置协议》已经被《协议》变更，申请人请求仲裁庭对此进行释明，由双方对《协议》的真伪进行充分举证和质证，并应要求化景元和李宇到庭作证

被申请人在庭后补充提交了一份由案外人 China AI 单方出具的《授权书》，其出现的时机、作出的主体、载明的内容及证明的事项不仅无法佐证《协议》的真实性，反而更加说明其伪造文件的胆量及能力。

在案外人中植高科外海投资公司针对凌动公司提起的香港仲裁中，仲裁庭最终在裁决书中认定史文勇在 2017 年

agreement, the control relationship among the related transaction parties cannot reach the level of stable shareholding control, and the only possible way to maximize the assurance and supervision upon trading structure stability is to require all documents to be executed unanimously by all the parties.

2. The content of the Agreement alone has also decided that it would be non-performable if without the signature of Guo Lingyun.

Guo Lingyun, as the holder of 52% of NQW's shares as at the signing date (January 10, 2019) of the Agreement, did not sign on the Agreement, while Article I of the Agreement nevertheless provides, "Effective from the exit date (January 9, 2019) of [LMI], any changes to [NQ] and [NQW], including but not limited to shareholding changes, shareholder replacements, legal representative replacements, changes of directors, senior executives and supervisors, changes of registered address, business scope or registered capital, or investments, profit distributions, dissolution liquidation, etc., shall be subject to the unanimous written consent of [China AI] and [LMI]; or any such changes shall be void and invalid and may not be implemented by [NQ], [NQW] and [Shi Wenyong, Zhou Xu]."

3. The Agreement itself is materially suspected to have been fabricated. If the tribunal intends to conclude the Share Disposal Agreement has been changed by the Agreement, the Claimant will request the tribunal to make a clarification thereon, to involve both parties to fully produce and cross-examine evidence regarding authenticity of the Agreement, and to demand Hua Jingyuan and Li Yu to present testimonies in court.

The Defendants additionally delivered, after court, a "Letter of Authorization" issued unilaterally by the outside party China AI, which, in view of the timing of appearance, the issuing party, the content therein and the fact proven thereby, is unable to support authenticity of the Agreement, but has instead demonstrated their courage for and capability of document fabrication.

In the HK arbitration action brought by Zhongzhi Hi-Tech Overseas Investment Ltd., against LMI, the tribunal ultimately concluded in the arbitration award that Shi Wenyong had had acts obviously against his loyalty and diligence obligations to the

14

至 2019 年之间实施了多项存在明显的违反对公司忠实勤勉义务的行为，其操纵凌动公司进行的多项行为均未经过董事会的决议，违反公司章程规定的决议程序，效力存在严重瑕疵。该等认定与中国法院在一系列网秦天下控制权争议中作出的认定是一脉相承的：史文勇在担任凌动公司、网秦无限、网秦天下实际控制人期间，进行了各类损害各个公司及股东的行为。该等事实可以进一步印证《协议》中加盖的凌动公司、网秦天下、网秦无限各公司的公章很显然是其个人行为，难以真正代表各个公司主体的意志，在效力上明显存在瑕疵。如仲裁庭拟依据该《协议》认定《股权处置协议》已经变更，申请人请求仲裁庭对该焦点问题书面释明，由双方对《协议》的真伪进行充分举证和质证，并要求化景元和李宇到庭作证。

# 二、仲裁庭意见

## （一）本案适用法律和审理范围

《民法典》于 2021 年 1 月 1 日正式施行。《最高人民法院关于适用<中华人民共和国民法典>时间效力的若干规定》第一条第二款规定，民法典施行前的法律事实引起的民事纠纷案件，适用当时的法律、司法解释的规定，但是法律、司法解释另有规定的除外。本案中，《股权处置协议》于 2015 年 11 月签订，申请人于 2019 年 7 月 22 日向被申请人发出《行权通知》，各方当事人订立合同的法律事实和申请人主张行权的法律事实均发生在民法典施行之前。据此仲裁庭认

company during 2017 to 2019, his acts of maneuvering LMI had been taken without the board's resolutions and were against the decision procedure set forth in the Articles of Association of the company, and their effectiveness were consequentially defective materially. The conclusion is consistent with what Chinese courts have concluded over a series of disputes regarding the control of NQW, that is, Shi Wenyong, when serving as the effective controller of LMI, NQ and NQW, has had acts of various sorts that harmed the companies and their shareholders. The facts are adequate to further prove his affixing the common seals of LMI, NQ and NQW on the Agreement was apparently his personal behavior and could hardly represent the real will of the parties, and effectiveness thereof is of manifest flaws. If the tribunal concluded based on the Agreement that the Share Disposal Agreement had been changed, the Claimant would ask the tribunal to give a written clarification on that focal point, to involve both parties to fully produce and cross-examine evidence regarding authenticity of the Agreement, and to require Hua Jingyuan and Li Yu to provide testimonies in court.

## II. Tribunal's Opinion

(I) Applicable Law & Coverage of Trial

The Civil Code was in effect officially on January 1, 2021. According to Paragraph II of Section I of the "Supreme People's Court Regulations on Time Effectiveness in Application of the Civil Code of the People's Republic of China, civil dispute cases caused by legal facts before effectiveness of the Civil Code shall be governed by the laws and judicial interpretations prevailing at the time, unless otherwise required in the laws or judicial interpretations. In the present case, the Share Disposal Agreement was signed in November 2015, the Claimant sent the Exercise Notice to the Defendants on July 22, 2019, both of the legal facts, i.e. the parties' signing of the contract and the Claimant's claim of exercise of its rights, had taken place before effectiveness of the Civil Code. Accordingly, the tribunal has concluded that, unless otherwise required by laws and judicial interpretations, the present case

定，除法律、司法解释另有规定外，本案应当适用《中华人民共和国合同法》（以下简称"《合同法》"）的相关规定。

仲裁庭注意到，本案背景涉及到多个法律主体之间的不同性质的法律争议和法律程序，如相关主体的控制权变化是否符合相关法律规定和公司章程约定，相关文件上的公章是否代表相关主体的真实意志以及由此引发的法律效力问题等等。仲裁庭认为，本案为《股权处置协议》争议案，对双方当事人各自申请和答辩的事实和理由应严格依据适用法律的规定和《股权处置协议》相关条款的约定进行审理。对于前述与本案背景相关但并非构成本案《股权处置协议》项下争议的事项，仲裁庭将不予考虑和评价。

（二）本案《股权处置协议》的约定和履行

申请人提交了如下证据：

1. 申请人、被申请人、案外人郭凌云、网秦天下于 2015 年 11 月签订的《股权处置协议》；

2. 申请人分别于 2019 年 7 月 22 日和 2019 年 9 月 10 日向被申请人发出的两份《行权通知》，以及 EMS 快递单、短信和邮件发送记录；

3. China AI 的公司注册文件；

4. 香港凌动于 2019 年 3 月 19 日作出的股东决议；

5. 申请人的工商变更登记信息，显示于 2019 年 4 月 17 日进行了法定代表人、股东名称和董事、经理、监事的变更；

shall be governed by the applicable provisions of the "Contract Law of the People's Republic of China" (the "Contract Law" hereinafter).

The tribunal has noticed that the background of the present case involves different natures of legal disputes and procedures among multiple legal parties, for instance, whether the change of control of the related party meets the requirements of applicable laws and the company's articles of association, whether the common seal on the document concerned represents the true will of the parties involved, and the resultant legal effectiveness issue, and so on. In the tribunal's opinion, the present case involves the dispute over the Share Disposal Agreement, the facts and grounds given by both parties in their claims and defense shall be examined strictly in accordance with the applicable laws and the pertinent clauses of the Share Disposal Agreement. The tribunal is not to consider, nor to comment on the above-mentioned matters that are in connection with the background of the present case but do not constitute disputes under the Share Disposal Agreement.

(II)Covenants in & Performance of Share Disposal Agreement

The Claimant has delivered the following exhibits:

1. the Share Disposal Agreement signed by the Claimant, the Defendants, the outside parties Guo Lingyun and NQW in November 2015;

2. the two Exercise Notices sent by the Claimant to the Defendants, one on July 22, 2019 and the other on September 10, 2019, and the underlying EMS waybills, SMS and email records;

3. the business registration document of China AI;

4. the shareholders' resolution made by LMIHK on March 19, 2019;

5. information about the Claimant's change registration with the administration for industry and commerce, which shows its change of its legal representative, shareholders' names, directors, managers and supervisors on April 17, 2019;

6.申请人公章作废登报声明和原法定代表人罢免公示;

7.申请人向仲裁委员会提交的仲裁申请书,显示史文勇控制下的网秦无限基于《股权处置协议》于 2018 年 10 月 12 日以郭凌云为被申请人向仲裁委员会提起仲裁;海淀法院作出的 (2019) 京 0108 民初 35030 号民事判决书和北京市一中院作出的 (2019) 京 01 民终 10118 号民事判决书,显示申请人原法定代表人许泽民起诉网秦无限及郭力麟,请求法院判决将网秦无限的法定代表人及董事长、董事注册登记为许泽民,一二审均败诉;海淀法院作出的 (2019) 京 0108 行初 812 号行政判决书和北京市一中院作出的 (2020) 京 01 行终 425 号行政判决书,显示申请人原法定代表人许泽民起诉北京市海淀区市场监督管理局,请求法院判决撤销变更登记,一二审均败诉;史文勇提交的《起诉状》与《证据清单》、网秦天下提交的《答辩状》、海淀区法院作出的 (2019) 京 0108 民初 56920 号民事判决书和北京市一中院作出的 (2020) 京 01 民终 7149 号民事判决书,显示史文勇针对 2019 年 7 月 22 日股东会决议起诉网秦天下,请求法院确认该股东会决议无效,一二审均败诉;

8.申请人与网秦天下、网秦天下注册股东于 2015 年签订的《经修订和重述的借款协议》及《经修订和重述的股权质押协议》。

被申请人提交了如下证据:

1.网秦天下工商档案,显示案涉股权已被质押给申请人并办理了质押登记手续;

6. the announcement on newspapers on nullification of the Claimant's common seal & the public announcement on dismissal of its existing legal representative;

7. the arbitration application raised by the Claimant to the arbitration commission, showing that NQ controlled by Shi Wenyong, based on the Share Disposal Agreement, applied to the arbitration commission on October 12, 2018 for arbitration with Guo Lingyun as the defendant; (2019)Jing0108MinChu Civil Judgment No. 35030 of the Haidian court and (2019)Jing01MinZhong Civil Judgment No. 10118 of Beijing No. 1 Intermediate People's Court, which show that Xu Zemin, the former legal representative of the Claimant, had sued NQ and Guo Lilin and asked for a court order for registering Xu Zemin as the legal representative, chairman and director of NQ, but had lost the case in both the first and the second instance proceedings; (2019)Jing0108XingChu Administrative Judgment No. 812 of the Haidian court and (2020)Jing01XingZhong Administrative Judgment No. 425 given by Beijing No. 1 Intermediate People's Court, showing that that Xu Zemin, the former legal representative of the Claimant, had sued Beijing Haidian District Market Supervision and Inspection Administration and asked for a court order for cancelling the change registration, but had lost the case in both the first and the second instance proceedings; the Complaint and the List of Exhibits submitted by Shi Wenyong, the Bill of Defense delivered by NQW, (2019)Jing0108MinChu Civil Judgment No. 56920 from the Haidian district court and (2020)Jing01MinZhong Civil Judgment No. 7149 from Beijing No. 1 Intermediate People's Court, showing that Shi Wenyong sued NQW in response to the resolution of the shareholders' meeting dated July 22, 2019 and asked the court for identifying invalidity of the resolution, but lost the case in both the first and the second instance proceedings;

8. the "Amended and Restated Loan Agreement" and the "Amended and Restated Share Pledge Agreement" signed by the Claimant, NQW and NQW's registered shareholders in 2015.

The Defendants have delivered the following exhibits:

1. NQ's file with the administration for industry and commerce, showing the shares in question have been pledged to the Claimant and the pledge has been registered;

2.网秦天下工商档案，显示史文勇持有的股权已被多家法院进行了多次查封；

3.本案双方当事人、网秦天下、凌动公司及 China AI 于 2019 年 1 月 10 日签署的《协议》；

4.China AI 及其股东李宇向化景元出具的"授权书"，授权其签署相关协议。

被申请人对前述申请人证据 2、3、4，即《行权通知》及 EMS 快递单、短信和邮件发送记录、China AI 公司注册文件和香港凌动股东决议的真实性不予认可；申请人对前述被申请人证据 3、4，即《协议》和"授权书"的真实性不予认可。仲裁庭认为，申请人提交的《行权通知》及 EMS 快递单、短信和邮件发送记录、China AI 公司注册文件和香港凌动股东决议具备客观性、关联性和合法性，在内容上亦可互相印证。被申请人只是单纯加以否认，并未提出合理理由或提交相反证据，仲裁庭不予采纳；被申请人提交的《协议》和"授权书"符合证据法定要求，申请人虽对其真实性提出多项质疑，但不足以推翻其表面内容的证明力，仲裁庭同样不予采纳。

根据双方当事人提交的证据，仲裁庭查明如下事实：

2015 年 11 月，网秦天下股东由史文勇、周旭和林宇变更为史文勇、周旭和郭凌云，就此网秦无限（甲方）、网秦天下（丙方）以及史文勇、周旭和郭凌云（共同乙方）同意修订重述并签订本案《股权处置协议》。《股权处置协议》主要约定如下：

2. NQ's file with the administration for industry and commerce, showing the shares held by Shi Wenyong have been sealed up for more than one time by various courts;

3. the Agreement signed on January 10, 2019 by the both parties of the present case, NQW, LMI, and China AI;

4. the "Letter of Authorization" issued by China AI and its shareholder Li Yu to Hua Jingyuan, authorizing the latter to sign relevant agreements.

The Defendants do not accept authenticity of the above-listed Exhibits 2, 3. 4 from the Claimant, namely the Exercise Notices and the EMS waybills, SMS and email records, China AI's business registration document and the resolution of LMIHK's shareholders; while the Claimant does not accept authenticity of Exhibits 3 and 4 from the Defendants, namely the Agreement and the Letter of Authorization. In the tribunal's view, the Exercise Notices and EMS waybills, SMS and email records, China AI's business registration document and LMIHK's shareholder resolution delivered by the Claimant are objective, relevant and legitimate, and their contents are inter-corroborative. The Defendants have simply denied them but have not given any reasonable grounds or submitted any evidence to the contrary, which denial is therefore not adopted by the tribunal; the Agreement and the "Letter of Authorization" produced by the Defendants meet the legal requirements regarding evidence, the Claimant has raised doubts regarding authenticity of the foregoing but the doubts are inadequate to overrule the probative force of the superficial contents of the documents and are therefore not adopted by the tribunal either.

According to the exhibits from both parties, the tribunal has identified the following findings:

In November 2015, NQW's shareholders were changed from Shi Wenyong, Zhou Xu and Lin Yu to Shi Wenyong, Zhou Xu and Guo Lingyun, for which purpose NQ (as Party A), NQW (as Party C) and Shi Wenyong, Zhou Xu and Guo Lingyun (as Party B collectively) agreed to amend and restate the Share Disposal Agreement. The key covenants in the Share Disposal Agreement are as follows:

"鉴于"部分第 3 条:"乙方各方为网泰科技（即网泰天下，下同——仲裁庭注）的股东（合称'授权方'）";

"鉴于"部分第 5 条:"甲方和乙方之间于 2015 年 11 月 18 日签署了新的股权质押协议（下称'股权质押协议'）取代原股权质押协议,在股权质押协议项下乙方将其在网泰科技的全部出资额作为网泰科技履行独家咨询和服务协议项下的义务提供担保。为确保该抵押权的安全,并考虑到甲方所提供给网泰科技的技术支持以及各方之间的良好合作关系,各方达成以下协议";

第 1.1 条 "授予":"本协议各方同意,自本协议生效之日起,除非已向甲方披露并经甲方事先明确书面许可,甲方拥有排他性的选择权,在符合本协议约定的条件下,以相当于[]万美元的价格由甲方或其指定的第三方随时购买授权方在网泰科技中所持有的全部股权的选择权";

第 2.1 条 "行权时间":"授权方一致同意,在中华人民共和国法律法规允许的前提下,甲方可于本协议签署并生效后任何时间行使本协议项下的部分或全部选择权"（第 2.1.1 条）;"授权方一致同意,甲方的行权次数没有限制,除非其已经收购并持有了网泰科技的全部股权"（第 2.1.2 条）;"授权方一致同意,甲方可以指定第三方作为其代表行使选择权,但行权时,甲方应当事先书面通知授权方"（第 2.1.3 条）;

第 2.2 条 "行权价款的处理":"授权方一致同意,在甲方行权时授权方因此获得的全部行权价款将偿还甲方根据借款协议（指 2007 年甲方与乙方之间签署的借款协议和协

19

Article 3 in "Whereas": The members of Party B (referred to as the "Granting Party" collectively) are the shareholders of NQ Technology (i.e. NQW, and similarly hereinafter –Note from the tribunal);

Article 5 in "Whereas": "Party A and Party B signed a new share pledge agreement (referred to as the "Share Pledge Agreement" hereinafter) on November 18, 2015 to supersede the original share pledge agreement, under which Party B pledged its full capital contribution in NQW to secure NQW's performance of the obligations under the exclusive consulting and service agreement. In order to guarantee security of the pledgee's rights, and in consideration of the technical support from Party A to NQW and the excellent cooperative relations among the parties, the parties hereby agree as follows";

Article 1.1 "Grant": "The parties of the Agreement consent that, from the effectiveness date of this Agreement, unless disclosure has been made to and the clear prior written permission has been obtained from Party A, Party A shall have the exclusive option to, subject to satisfaction of the conditions set forth in this Agreement, buy from time to time, either by itself or through its designated third parties, all NQW shares held by the Granting Party at the price equivalent to USD$[     ]";

Article 2.1 "Timing of Exercise": "The Granting Party unanimously agrees that, to the extent permitted by laws and regulations of the People's Republic of China, Party A may exercise the option under this Agreement either in part or in entirety at any time after signing and effectiveness of this Agreement" (Article 2.1.1); "The Granting Party unanimously agrees that the times of exercise of the option by Party A are not subject to any limit, unless it has acquired and become holder of all shares of NQW" (Article 2.1.2); "The Granting Party unanimously agrees that Party A may appoint a third party to exercise the option for and on behalf of it, provided that, when exercising the option, Party A shall give a prior written notice to the Granting Party" (Article 2.1.3);

Article 2.2 "Disposal of Exercise Price": "The Granting Party Unanimously agree that the full exercise price received by the Granting Party when Party A exercises the option will be used to pay the loans that Party A has provided to the Granting Party according to the loan agreement (the loan agreement signed by and between Party A and Party B in 2007 and the tri-party agreement signed by the parties of the agreement,

议各方之间签署的三方协议、2012 年 5 月 31 日甲方与乙方之间签署的借款协议以及 2015 年 11 月 18 日甲方与乙方之间签署的借款协议）提供给授权方的贷款"；

第 2.4 条 "行权通知"："若甲方行权，应于交割日（定义见下文）十个工作日前以书面方式通知授权方，通知应具体载明如下条款……协议各方同意，甲方可随时指定第三方并以该第三方的名义行使选择权、登记股权"；

第 2.5 条 "转让股权"："甲方每次行使选择权时，在收到甲方依据本协议第 2.4 条发出的行权通知之日起十个工作日内：（1）授权方应责成网泰科技及时召开股东会会议，在该会议上，应通过批准授权方向甲方和（或）其指定的第三方转让股权的股东会决议……"；

第 3.1 条 "授权方作出如下陈述及保证"："……"；

第 8.1 条 "全部协议"："各方在此确认本协议为各方在平等互利的基础之上达成的公平合理的约定。本协议构成协议各方关于协议所涉及主题的全部，先前所有的讨论、协商及协议若与本协议不一致，以本协议为准。自本协议生效之日起，本协议取代原股权处置协议。本协议应由协议各方以书面形式修改。本协议的附件为本协议的组成部分，与本协议具有相同的效力"；

第 8.2.2 条"通知及信函于以下情况时应当视为送达"："……若以专人送达（包括特快专递），则以签收日为准"（第 8.2.2.2 条）；

the loan agreement executed between Party A and Party B on May 31, 2012 and the loan agreement between Party A and Party B dated November 18, 2015)";

Article 2.4 "Exercise Notice": "If Party A is to exercise the option, it shall give a written notice to the Granting Party ten working days before the Delivery Date (as defined hereinafter), which notice shall clearly contain the following terms and conditions......The parties of the agreement consent that Party A may appoint a third party from time to time and exercise the option and register the shares in the name of the third party";

Article 2.5 "Share Transfer": "On each exercise of the option by Party A, within ten working days from the date of receipt of the exercise notice sent by Party A pursuant to Article 2.4 of this Agreement, (1) the Granting Party shall urge NQW to convene a shareholders' meeting in time, at which meeting the resolution shall be passed to approve the Granting Party to transfer the shares to Party A and (or) its designated third party......"

Article 3.1 "The Granting Party represents and warrants as follows": "......";

Article 8.1 "Entire Agreement": "The parties hereby acknowledge this Agreement is the fair and reasonable agreement reached by them on basis of equality and mutual benefit. This Agreement constitutes the entire agreement of the parties regarding the subject matter hereof and, in the event of any inconsistency between all prior discussions, negotiations or agreements and this Agreement, the latter shall prevail. This Agreement shall, from its effectiveness date, supersede the original Share Disposal Agreement. Amendments to this Agreement, if any, shall be made in writing and signed by all parties of the Agreement. The attachments to this Agreement are an integral part of and are of equal effectiveness as this Agreement";

Article 8.2.2 "Notices and letters shall be deemed as given": "on the sign-in date in the event of delivery in person (including express mail) (Article 8.2.2.2);

2019 年 1 月 10 日，China AI（甲方）、凌动公司（乙方）、网秦无限（丙方）、网秦天下（丁方）、史文勇和周旭（共同戊方）签订《协议》。《协议》主要约定如下：

第 1 条："自乙方退市之日（2019 年 1 月 9 日）起，丙方和丁方的任何变更，包括但不限于股权变更、股东更换、法定代表人变更、董事及高管及监事变更、注册地址变更、经营范围变更、注册资金变更、进行投资、进行利润分配、解散清算等任何事宜，必须经过甲方和乙方一致书面同意，否则，任何变更为无效，丙方与丁方及戊方不得实施"；

第 2 条："自乙方退市之日（2019 年 1 月 9 日）起，丙方与丁方及戊方之间任何涉及 'VIE 协议' 履行、变更、终止（包括但不限于关于股权的行权、股权转让、借款清偿、业务经营管理、代为召开股东会及董事会等一切事宜）必须经过甲方和乙方一致书面同意，否则，均属无效，丙方与丁方及戊方不得实施"；

第 4 条："丙方与丁方及戊方签署的 'VIE 协议'（包括《经修订和重述的借款协议》、《经再次修订和重述的业务经营协议》及其所附《授权委托书》、《经修订和重述的股权处置协议》及其所附的《股权转让协议》等全部文件）约定的争议管辖机构予以变更，由中国国际经济贸易仲裁委员会变更为丙方与丁方所在地北京市海淀区人民法院，关于 'VIE 协议' 任何争议均提交北京市海淀区人民法院管辖处理"。

2019 年 7 月 22 日和 2019 年 9 月 10 日，申请人分别通过特快专递方式向被申请人发送两份《行权通知》，同时也通

On January 10, 2019, China AI (as Party A), LMI (as Party B), NQ (as Party C), NQW (as Party D), Shi Wenyong and Zhou Xu (as Party E collectively) signed the Agreement. The key clauses of the Agreement are as follows:

Article 1: "Effective from the exit date (January 9, 2019) of Party B, any changes to Party C and Party D, including but not limited to shareholding changes, shareholder replacements, legal representative replacements, changes of directors, senior executives and supervisors, changes of registered address, business scope or registered capital, or investments, profit distributions, dissolution liquidation, etc., shall be subject to the unanimous written consent of Party A and Party B, or any such changes shall be void and invalid and may not be implemented by Party C, Party D and Party E";

Article 2: "Effective from the exit date (January 9, 2019) of Party B, all matters involving performance, change or termination of the "VIE Agreements" among Party C, Party D and Party E (including but not limited to exercise of share option, share transfer, loan payment, business management, convening shareholders' meetings and board meetings as authorized, etc.) shall be subject to the unanimous written consent of Party A and Party B, or shall be void and invalid and may not be implemented by Party C, Party D and Party E";

Article 4: "The arbitration authority set forth in the 'VIE Agreements' signed by Party C, Party D and Party E (incorporating the "Amended and Restated Loan Agreement", the "Re-amended and Restated Business Management Agreement" and the Letter of Authorization attached thereto, the "Amended and Restated Share Disposal Agreement" and the "Share Transfer Agreement" attached thereto) is changed from China International Economic and Trade Arbitration Commission to Beijing Haidian District People's Court in the place of location of Party C and Party D, and all disputes regarding the 'VIE Agreements' shall be referred to and be subject to jurisdiction of Beijing Haidian District People's Court".

On July 22, 2019 and September 10, 2019, the Claimant sent two Exercise Notices to the Defendants by express mail, whilst informing the Defendants by SMS

21

过短信和电子邮件方式通知被申请人，要求其注意查收。第一份《行权通知》中，申请人要求被申请人在指定期限内向指定受让方转让其名下持有的全部 48%网秦天下股权，并要求其配合完成召开股东会批准该股权转让、签署股权转让协议和办理工商变更登记；第二份《行权通知》中，申请人通知被申请人，基于被申请人向申请人出具的《授权委托书》，申请人已代被申请人与指定受让方签署《股权转让协议》，要求被申请人配合办理工商变更登记。

被申请人未按申请人要求在指定期限内转让股权并配合办理相关工商变更登记，申请人遂提起本案仲裁。

（三）本案争议焦点问题

仲裁庭认为，本案争议焦点问题为《协议》是否构成对《股权处置协议》的修改。

根据前述，申请人依据《股权处置协议》提出本案仲裁申请，被申请人依据《协议》主张申请人的行权要求无效。前已查明，本案《股权处置协议》与《协议》的签署当事方并不相同。《股权处置协议》约定史文勇、周旭和郭凌云三人向申请人网秦无限授予选择权，网秦无限或其指定第三方可以随时购买该三人在网秦天下所持有的全部股权。此种安排的主要背景是，各方为实现境外上市签订了一系列 VIE 协议，以使得上市公司对境内主要经营实体形成协议控制。其中，网秦天下与网秦无限签订了《独家咨询和服务协议》；网秦无限与史文勇、周旭和郭凌云三人签订了《借款协议》和《股权质押协议》，史文勇、周旭和郭凌云三人以其持有的网秦天

and email, reminding it to receive the notices. In the first Exercise Notice, the Claimant demanded the Defendants to transfer the entire 48% shares of NQW held by the Defendants to the designated transferee, to cooperate in holding a shareholders' meeting to approve the share transfer, sign the share transfer agreement and fulfill the change registration with the administration for industry and commerce; in the second Exercise Notice, the Claimant informed the Defendants that the Claimant had signed the Share Transfer Agreement with the designated transferee for and on behalf of the Defendants based on the Letter of Authorization the Defendants had issued to the Claimant, and required the Defendants' cooperation in the procedure for change registration with the administration for industry and commerce.

The Defendants failed to transfer the shares and cooperate in the change registration with the administration for industry and commerce within the specified period as required by the Claimant, and the Claimant then instituted the arbitration proceedings hereof.

(III)Focal Issue

In the tribunal's view, the focal issue of the present case is whether the Agreement constitutes a change of the Share Disposal Agreement.

As stated hereinabove, the Claimant has raised the arbitration application based on the Share Disposal Agreement, while the Defendants have asserted the Claimant's request for option exercise is void and invalid. It has been found that the parties signing the Share Disposal Agreement are not the same as those of the Agreement. The Share Disposal Agreement provides that Shi Wenyong, Zhou Xu and Guo Lingyun grant an unlimited option to the Claimant, i.e. NQ, whereby NQ or its designated third party may buy from time to time all the NQW shares held by the said three persons. The key backdrop of the arrangement is that the parties have signed a series of VIE agreements for the purpose of realizing overseas listing in order to enable the listed company to have agreements-based control over the major business entities in China. The agreements include the "Exclusive Consulting and Service Agreement" between NQW and NQ; the "Loan Agreement" and the "Share Pledge Agreement" between NQ and Shi Wenyong, Zhou Xu, Guo Lingyun, whereby the

22

下全部股份担保网秦天下履行《独家咨询和服务协议》项下
义务；网秦天下、网秦无限与史文勇、周旭和郭凌云三人签
订了本案《股权处置协议》。《协议》则签订于凌动公司退市
之日的第二天，其主要内容是对网秦无限和网秦天下包括股
权变更在内的任何变更，以及网秦无限和网秦天下以及史文
勇和周旭二人即本案被申请人之间任何涉及包括本案《股权
处置协议》在内的 VIE 协议的履行、变更和终止施加了限制：
必须经过 China AI 和凌动公司一致书面同意，否则无效。

仲裁庭认为，尽管相关公司和自然人具有股权上的关联
关系，无论在不同时点上是否因为控制权变化而具有一致或
不一致的利益，在法律上均为独立的公司法人或自然人，均
具有独立的人格和意志，因而在评价其在不同协议项下的权
利义务关系时，应严格依据协议自身约定分别进行判断和认
定。本案中，尽管网秦无限同时是《股权处置协议》和《协
议》的签署当事方，但是其在不同协议项下的权利义务相对
方并不一致。在《股权处置协议》项下，网秦无限行使购股
选择权的相对方是史文勇、周旭和郭凌云三人。史文勇、周
旭和郭凌云三人共同持有网秦天下的 100%股份，其合同地位
是共同乙方。尽管网秦无限可以部分或全部地行使其选择权，
但史文勇、周旭和郭凌云三人共同地、整体地、不可分割地
对网秦无限负有授权和配合行权的合同义务；在《协议》项
下，网秦无限承诺受限行使《股权处置协议》项下购股选择
权的相对方仅是史文勇和周旭二人。《协议》订立的目的在于
对包括本案《股权处置协议》在内的该等 VIE 协议的履行、
变更和终止加以限制，而《协议》签署之时，作为仍然持有
网秦天下 52%股份的股东和有关 VIE 协议的当事人，郭凌云

three persons pledged all their NQW sharesto secure NQW's performance of the obligations under the Exclusive Consulting and Service Agreement; and the Share Disposal Agreement between NQW, NQ and Shi Wenyong, Zhou Xu, Guo Lingyun. The Agreement was signed on the day immediately following LMI's exit from the stock market, the key content of which is to set restraint over all matters between NQ, NQW and Shi Wenyong, Zhou Xu, i.e. the Defendants here, regarding performance, change and termination of the VIE agreements including the Share Disposal Agreement, that is, all such matters shall be void and invalid unless with the unanimous written consent of China AI and LMI.

In the tribunal's opinion, although the companies and the natural persons concerned are of shareholding relations, they are nevertheless independent corporations or natural persons at law regardless whether they have concord or inconsistent interests at different points of time because of changes of control, they have independent personalities and wills, and their rights and obligations under different agreements shall be judged and identified respectively in strict compliance with the underlying agreements. In the present case, NQ, although being a signing party of the Share Disposal Agreement and the Agreement, its rights and obligations under the different agreements involve different opposite parties. Under the Share Disposal Agreement, the opposite party of NQ's exercise of the share option is Shi Wenyong, Zhou Xu and Guo Lingyun. The said three persons jointly hold 100% shares of NQW and they collectively appear as Party B in the agreement. Although NQ may exercise its option either in part or in entirety, Shi Wenyong, Zhou Xu and Guo Lingyun jointly, as a whole and indivisibly bear the obligation to grant the option and to cooperate in option exercise; under the Agreement, NQ has undertaken to limit its exercise of the share option under the Share Disposal Agreement to Shi Wenyong and Zhou Xu exclusively. The Agreement has been established for the purpose of setting restrictions over performance, change and termination of the VIE agreements, including the Share Disposal Agreement, while Guo Lingyun, although still holding 52% shares of NQ and being a party of the underlying VIE agreements, was excluded from the signing parties of the Agreement.

被排除在《协议》当事方之外。

仲裁庭认为,《协议》设定的限制客观上导致网秦无限可能无法行使其在《股权处置协议》项下的实体权利,而对《股权处置协议》项下授权方的相关义务进行任何限制,都必须由作为共同乙方的史文勇、周旭和郭凌云三人根据其共同意思表示进行处分。被申请人提出,《协议》仅对签署方发生效力,申请人在本案中对史文勇和周旭二人主张行权应适用《协议》,郭凌云未签署《协议》不影响《协议》的效力和适用。仲裁庭对此认为,考虑到案涉交易安排的整体商业背景和具体履行事实,不应认定《协议》相关内容对史文勇和周旭二人履行《股权处置协议》项下义务产生法律效力。本案《股权处置协议》是案涉 VIE 架构的基础性协议,作为网秦天下全部股东的史文勇、周旭和郭凌云三人共同承诺无条件配合网秦无限股权回购,对投资人的资金安全、VIE 架构和公司控制权的稳定性具有重要意义。如同前述,史文勇、周旭和郭凌云三人在《股权处置协议》项下是负有共同合同义务的一个整体,其中任何人单方拒绝履行或意图推翻该等约定义务,都可能对整个 VIE 架构以及各方当事人合同目的的实现造成根本性影响,其中任何人为此目的单独与第三方另行达成的协议,不能对其履行《股权处置协议》约定义务产生任何对抗效力。被申请人的这一主张不能成立。

仲裁庭同时认为,《股权处置协议》第 8.1 条约定,"本协议应由协议各方以书面形式修改",亦应理解为由《股权处置协议》的所有当事方共同以书面形式进行修改。基于前述分析,仲裁庭认为,在未经郭凌云参与和表态的情况下,《协议》不应被认定为构成对本案《股权处置协议》的修改。仲

24

According to the tribunal, the restraints imposed by the Agreement may have physically prevented NQ from exercising its substantive rights under the Share Disposal Agreement, while any restraints over the relevant obligations of the Granting Party under the Share Disposal Agreement shall be disposed of by Party B, i.e. Zhou Wenyong, Zhou Xu and Guo Lingyun, depending on their joint intent. The Defendants have pointed out that the Agreement is binding upon the signing parties only, the Agreement shall be applicable to the Claimant's claim of option exercise upon Shi Wenyong and Zhou Xu, and the fact that Guo Lingyun is not a signing party of the Agreement shall not affect effectiveness and applicability of the Agreement. The tribunal's view in that regard is that, considering the general business background of the trading arrangement concerned and the detailed facts of performance, the relevant content in the Agreement shall not be held to be of legal effectiveness upon performance of Shi Wenyong and Zhou Xu of their obligations under the Share Disposal Agreement. The Share Disposal Agreement is a basic agreement in the VIE framework concerned, Shi Wenyong, Zhou Xu and Guo Lingyun, as all shareholders of NQ, have jointly promised to unconditionally cooperate in NQ's share repurchase, which is of important significance to security of investors' funds and stability of the VIE structure and control of the company. As stated hereinabove, Shi Wenyong, Zhou Xu and Guo Lingyun are an integral party jointly bearing the contractual obligations under the Share Disposal Agreement, unilateral refusal of performance or attempt to overturn the obligations by any of the three persons may possibly result in substantial effects on the entire VIE structure and on attainment of the goal of the contracting parties, and any agreement that any of the persons individually reached with a third party for the said purpose cannot have any effectiveness against the obligations under the Share Disposal Agreement. The Defendants' proposition in that regard is unjustifiable.

The tribunal also opines that, according to Article 8.1 of the Share Disposal Agreement, "Amendments to this Agreement, if any, shall be made in writing by the parties thereto", which shall similarly be understood as that the amendments shall be made in writing by all parties of the Share Disposal Agreement jointly. Based on the aforesaid analysis, the tribunal holds the view that, without participation and expression of opinion by Guo Lingyun, the Agreement shall not be identified as a change of the Share Disposal Agreement. The tribunal further holds that, without Guo

裁庭进一步认为,在未经郭凌云参与和表态的情况下,《协议》第 4 条对约定争议管辖机构的变更亦不应发生法律效力。

(四)关于申请人的仲裁请求

1.关于申请人的第一项和第二项仲裁请求

《合同法》第六十条规定,当事人应当按照约定全面履行自己的义务。第一百零七条规定,当事人一方不履行合同义务或者履行合同义务不符合约定的,应当承担继续履行、采取补救措施或者赔偿损失等违约责任。仲裁庭认为,申请人要求被申请人分别向指定第三方进行股权转让的仲裁请求符合前述法律规定和《股权处置协议》相关约定。

被申请人提出,申请人并非适格主体,无权提出本案仲裁申请。仲裁庭认为,根据《股权处置协议》第 1.1 条约定,申请人享有购股选择权,而其仲裁申请正是要求行使该项合同约定权利。本案亦不符合所谓代位诉讼的情形。被申请人的这一主张不能成立。

被申请人提出,案涉股权已被质押,其中史文勇持有的股权已被法院查封和面临被拍卖执行,申请人的行权要求在事实上不能履行。仲裁庭认为,本案并不符合如标的物灭失等《合同法》第一百一十条规定的非金钱债务事实上不能履行的情形。被申请人的这一主张不能成立。

被申请人提出,转让股权应当按《公司法》规定通知其他股东并征求意见,申请人要求行权没有召开股东会并作出决议。仲裁庭认为,根据《股权处置协议》第 2.5 条约定,

25

Lingyun's involvement and express of attitude, Article 4 of the Agreement, which changes the agreed arbitration authority, shall similarly be without effectiveness at law.

(IV) The Claimant's Arbitration Claims

1. Claim 1 and Claim 2

According to Section 60 of the Contract Law, a party of an agreement shall fully perform its obligations thereunder as agreed. According to Section 107, when either party fails to perform its contractual obligations or its performance of the obligations is inconsistent with what has been agreed upon, the party shall bear responsibility for the default, including continuing performance, taking remedial measures or compensating losses, etc. In the tribunal's view, the Claimant's arbitration claim demanding the Defendants to make share transfer to the designated third parties respectively meets the requirements of the above-cited legal provisions and the pertinent covenants in the Share Disposal Agreement.

The Defendants have argued that the Claimant is not an eligible party and has no right to raise the arbitration application. In the tribunal's opinion, according to Article 1.1 of the Share Disposal Agreement, the Claimant is entitled to the share option, and its arbitration application is exactly a request for exercise of the agreed option. The present case does not fall in the category of the so-called subrogation actions. The Defendants' argument in that regard is unjustifiable.

The Defendants have pointed out that the shares in question have been pledged, of which the shares held by Shi Wenyong have been sealed up by courts and are to be enforced through auction, and the Claimant's option exercise request is in fact non-performable. The tribunal's view is that the present case does not fall in the category of such situations where non-monetary obligations cannot be effectively performed as specified in Section 110 of the Contract, for instance, the object of performance has been destroyed or lost. The Defendants' argument in that regard is groundless.

The Defendants have argued that the share transfer shall, as required by the Company Law, be subject to notification of all other shareholders and solicitation of their opinion, the Claimant has demanded the option exercise but no shareholders' meeting has been convened to pass a resolution thereon. The tribunal's view is that, according to Article 2.5 of the Share Disposal Agreement, when the Claimant

在申请人要求行权时，包括被申请人在内的授权方应责成网秦天下召开股东会并通过批准转让股权的股东会决议。这本身就属于被申请人应当给予配合的事项，不应影响申请人提出行权要求。被申请人的这一主张不能成立。

综上，仲裁庭决定对申请人的第一项和第二项仲裁请求予以支持。

2. 关于申请人的第三项仲裁请求

基于前述认定以及《股权处置协议》第2.5条等相关约定，被申请人有义务配合申请人办理股权过户的工商变更登记手续。仲裁庭决定对申请人的第三项仲裁请求予以支持。

3. 关于申请人的第四项仲裁请求

申请人并未提出要求被申请人承担律师费的金额，也未提交相应证据。仲裁庭决定对申请人的第四项仲裁请求不予支持。

（五）关于本案仲裁费

根据本案实际情况，仲裁庭决定，本案仲裁费用全部由被申请人共同承担。

## 三、裁　决

仲裁庭裁决如下：

demands exercise of the option, the Granting Party, including the Defendants, shall urge NQW to convene a shareholders' meeting to pass the resolution approving the share transfer. That is something the Defendants are supposed to cooperate in and shall not affect the Claimant's raising of the exercise request. The Defendants' argument in that regard is unjustifiable.

In view of the foregoing, the tribunal decides to support the first and the second arbitration claim of the Claimant.

2. Claim 3

Based on the above-stated conclusion and Article 2.5 of the Share Disposal Agreement, among other relevant covenants, the Defendants are obliged to cooperate with the Claimant in the procedure for change registration with the administration for industry and commerce for the purpose of title transfer of the shares. The tribunal decides to support the third arbitration claim of the Claimant.

3. Claim 4

The Claimant has not claimed the amount of attorney's fee to be borne by the Defendants, nor produced any underlying evidence. The Tribunal therefore decides not to support the fourth claim of the Claimant.

(V) Arbitration Fee

Depending on the circumstances of the present case, the tribunal decides that the arbitration fee shall be fully borne by the Defendants jointly.

### III. Award

The tribunal hereby gives its award as follows:

1.第一被申请人向申请人指定的第三方郭力麟（身份证号码：330121197006059712）、郭凌云（身份证号码：360121197603280525）转让其名下北京网秦天下科技有限公司的股权，其中向郭力麟转让 10.325%的北京网秦天下科技有限公司股权，向郭凌云转让 4.425%的北京网秦天下科技有限公司股权；

2.第二被申请人向申请人指定的第三方郭力麟（身份证号码：330121197006059712）、郭凌云（身份证号码：360121197603280525）转让其名下北京网秦天下科技有限公司的股权，其中向郭力麟转让 23.275%的北京网秦天下科技有限公司股权，向郭凌云转让 9.975%的北京网秦天下科技有限公司股权；

3.被申请人配合办理股权过户的工商变更登记手续；

4.驳回申请人其他仲裁请求；

5.本案仲裁费人民币 249,550 元,全部由被申请人承担。该仲裁费用已由申请人向仲裁委员会全额预缴，故被申请人应向申请人支付人民币 249,550 元，以补偿申请人代其垫付的仲裁费。

以上裁决项，被申请人应自本裁决作出之日起 30 日内履行完毕。

本裁决为终局裁决，自作出之日起生效。

1. Defendant 1 shall transfer the shares it holds in Beijing NQ World Technology Co., Ltd. to the third parties designated by the Claimant, namely Guo Lilin (ID Card No: 330121197006059712) and Guo Lingyun (ID Card No: 360121197603280525), including 10.325% to be transferred to Guo Lilin and 4.425% to Guo Lingyun.

2. Defendant 2 shall transfer the shares it holds in Beijing NQ World Technology Co., Ltd. to the third parties designated by the Claimant, namely Guo Lilin (ID Card No: 330121197006059712) and Guo Lingyun (ID Card No: 360121197603280525), including 23.275% to be transferred to Guo Lilin and 9.975% to Guo Lingyun.

3. The Defendants shall cooperate in the procedure for change registration with the administration for industry and commerce for the purpose of title transfer of the shares.

4. All other arbitration claims of the Claimant are dismissed.

5. The arbitration fee, being RMB ¥ 249,550, shall be fully borne by the Defendants. The Claimant has advanced the arbitration fee to the arbitration commission in full, so the Defendants shall r pay RMB ¥ 249,550 to the Claimant as reimbursement of the payment advanced by the Claimant.

The above shall be fully performed within 30 days from the date of issue of this Award.

This Award is final and conclusive and shall take effect on the date of issue.

（此页无正文）

首席仲裁员：

仲　裁　员：

仲　裁　员：



二〇　年　月　日于北京

(It is intentionally left blank hereinafter)

Chief Arbitrator: Kou Liyun

Arbitrator: Tian Hui

Arbitrator:Zhang Guoming

(seal) China International Economic and Trade Arbitration Commission

September 4, 2021, Beijing





CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION