# FELICELLO

Michael James Maloney[*]
Partner

Felicello Law P.C.
366 Madison Avenue
3rd Floor
New York, NY 10017

Tel. +1 (212) 584-7806
mmaloney@felicellolaw.com

February 14, 2022

VIA ECF

Hon. Magistrate Judge Debra Freeman
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: *Baliga, et al. v. Link Motion Inc., et al.*, Case No. 1:18-cv-11642-VM-DCF (S.D.N.Y.)
Interim Status Report, 2/04/2022 (Dkt No. 268) (the "Status Report") and
Additional Status Report, 2/09/2022 (Dkt. No. 269) (the "Additional Status Report")

Dear Judge Freeman:

We represent Defendant Vincent Wenyong Shi ("Mr. Shi"). We write to respond to certain mischaracterizations and inaccuracies contained in the above-referenced Status Report and Additional Status Report. We also write to clarify our current understanding of the various arbitrations referred to in the parties' prior submissions.

<u>The Receiver's Mischaracterizations and Inaccuracies</u>

First, the Status Report inaccurately describes the nature of the arbitration award issued by CIETAC on September 4, 2021. The Receiver claims that the arbitration award found that Mr. Shi executed an "unlawful" agreement and was liable for potentially "jeopardiz[ing] investor funds." But that is wrong: The CIETAC arbitration had nothing to do with outside investors. Rather, that dispute concerned whether an agreement signed in early 2019 effectively amended a 2015 agreement regarding rights to transfer of shares of stock of Beijing NQ World Technology Co., Ltd ("NQW"), a VIE company associated with Link Motion, Inc. ("LKM"). As a VIE company, the shareholders held shares of NQW merely as nominees for LKM pursuant to the VIE agreements discussed in our prior papers. The 2019 agreement sought to maintain the status quo as to NQW. Mr. Shi was a named respondent in the CIETAC arbitration and argued that the status quo should be maintained pending the outcome of other litigation (*i.e.*, this action). Inexplicably, despite the operative injunction in this action, the Receiver's representative took the opposite position and urged that Mr. Shi and Mr. Zhou be forced to transfer their shares to Guo Lingyun (the wife of Mr. Shi's co-founder) and Guo Lilin (the Receiver's agent). In particular, transfer of shares to Guo Lilin would effectively destroy LKM's VIE interest in NQW because Guo Lilin was not a signatory to any of the VIE agreements, thereby upsetting the status quo. The arbitrator determined that the transfer should proceed but did not award all the relief sought by the claimant.

Second, in the Additional Status Report, the Receiver claims that he "had no knowledge" of the arbitration commenced on April 23, 2019 by Tongfang Investment Fund Series SPC ("Tongfang") against LKM (the "Tongfang-LKM Arbitration") and one of its subsidiaries (together, the "Company") or the award subsequently issued by the Hong Kong International

[*]Admitted to practice law in New York

Arbitration Centre (the "HKIAC") on March 19, 2020 (the "Award"). That cannot be. The Receiver himself triggered the Tongfang-LKM Arbitration when he (in his own words), "[o]n April 3, 2019, . . . filed a statutory demand on TongFang." (*See* Dkt. No. 43 ¶ 4.) The Receiver's April 3, 2019 demand to Tongfang was for "$270 million on a promissory note to Link Motion, Inc.," the same note (the "Tongfang Note") that was rescinded in the Award. (*Id.*) Around the same time, the Receiver notified HKIAC that "a Receiver has been appointed for Link Motion, Inc. in both the United States and Hong Kong." (*See* Dkt. No. 43 ¶ 5.) Shortly thereafter, on April 23, 2019, Tongfang served its notice of arbitration concerning the rescission of the promissory note and other parts of the agreement with LKM to purchase FL Mobile. Thus, the Receiver was aware of the Tongfang-LKM Arbitration and likely received notice of the arbitration directly from the HKIAC, which had been made aware of the existence of the Receiver and his role as legal representative of LKM.

Further, the Receiver's claim that Mr. Shi somehow "arrogated to himself the authority to speak for the Company in the Tongfang[-LKM] Arbitration" is not accurate. The text of the Award itself explains that the arbitrator communicated with persons via "@lkmotion.com" email addresses. By the time the Tongfang-LKM Arbitration was commenced in late April 2019, Mr. Shi had lost control over his corporate email accounts. Beginning in February 2019, shortly after entry of the preliminary injunction and appointment of the Receiver here, Mr. Shi had transferred whatever corporate authority remained with him to Ms. Xu Ying, LKM's Secretary.[1] After that transfer, Mr. Shi lost access to his corporate email addresses. Ms. Xu Ying, as an officer of LKM, reported to the Receiver or his agents in the People's Republic of China ("PRC").

Clarification of References to Arbitrations

It is apparent that the papers submitted by the Receiver and the other parties in this action used terms that confused and conflated the various arbitrations arising from the commencement of this action and issuance of the TRO in December 2018, and the entry of the preliminary injunction and appointment of the Receiver in February 2019. In our view, there are three arbitrations that have become confused and conflated in the parties' briefs and letters:

1. The "ZhongZhi-LKM Arbitration": An arbitration commenced at the HKIAC on or about December 20, 2018 by Zhongzhi Hi-Tech Overseas Investment Ltd. ("ZhongZhi") against LKM concerning a 2016 convertible note signed by LKM (the "Convertible Note") and the pledge of an interest in the Tongfang Note as security for the Convertible Note;

2. The "ZhongZhi-Shi Arbitration": An arbitration commenced at the HKIAC on or about December 20, 2018 by Zhongzhi against Mr. Shi only for his personal guarantee of certain interest owed in connection with the Convertible Note; and

---

[1] Mr. Shi transferred his remaining powers to LKM's secretary (a PRC citizen) instead of the Receiver (a US citizen) based on his understanding of PRC law that would place him in personal legal jeopardy with PRC authorities for transferring his powers to a non-PRC citizen. As Mr. Shi has previously submitted to the Court, PRC law prohibits holders of certain telecommunications licenses from "providing any assistance, including providing resources, websites or facilities, to foreign investors." (Dkt. 60 ¶¶ 9-11, 17.)

3. <u>The Tongfang-LKM Arbitration:</u> The HKIAC arbitration commenced by Tongfang on April 23, 2019 against LKM and Xinjiang NQ Mobile Venture Capital Investment Co., Ltd., seeking rescission of the sale of FL Mobile and the Tongfang Note.

The Receiver had full knowledge of all of these arbitrations, but only intervened in the Zhongzhi-LKM Arbitration and did not seek to otherwise preserve the value of the Tongfang Note or LKM's interests. This conflicts with our understanding based on the Receiver's own statements to the Court that he understood he was obligated to intervene in pending arbitrations relating to the Company. (*See*, *e.g.*, Dkt. 239 at p.7.) Although the crux of the ZhongZhi-LKM Arbitration was a claim by ZhongZhi against LKM under the Convertible Note, the Receiver confusingly focused on the validity of the pledge of an interest in the Tongfang Note and other details concerning the sale of FL Mobile to Tongfang (*i.e.*, the subject of the Tongfang-LKM Arbitration). Although Mr. Shi was not a party to, and was not permitted to participate in, the ZhongZhi-LKM Arbitration, the Receiver improperly attempted to use the award obtained in that proceeding against Mr. Shi in this action. (Dkt. No. 216.)

As early as November 2020, our papers referenced the Tongfang-LKM Arbitration and the ZhongZhi-Shi Arbitration. To the extent those papers, and subsequent papers based on them, confuse or conflate the two arbitrations, they should be deemed amended as described herein.[2] Upon information and belief, the details of the Receiver's actions – and those of his agents in the PRC – will be revealed in an accounting upon his discharge.

In short, the facts here are consistent with Mr. Shi's assertion that the Receiver's actions were driven by his desire to justify his appointment not the preservation of the value of the Tongfang note or the interests of LKM. Instead of realizing the value of the Tongfang Note, the Receiver served a demand on Tongfang, thereby triggering the Tongfang-LKM Arbitration that resulted in its rescission. At the same time, the Receiver intervened in the ZhongZhi-LKM Arbitration in an ill-advised attempt to make a record to use against Mr. Shi without providing him due process. (*See* Dkt. Nos. 210, 216.)

Mr. Shi has addressed the Receiver's wrongful efforts to conduct an Extraordinary General Meeting ("EGM") in papers previously submitted to the Court.

Accordingly, Mr. Shi respectfully requests that the Court disregard the inaccurate and misleading assertions by the Receiver in the Status Report and Additional State Report, and grant Mr. Shi's motion to discharge the Receiver and motion to dismiss the Second Amended Complaint.

Respectfully submitted,

/s/ *Michael James Maloney*

Michael James Maloney

cc:   All counsel of record (via ECF)

---

[2] *See*, *e.g.*, references in Dkt. Nos. 181 ¶¶ 33,34, 210, 228 ¶¶ 33,34, 230 at 15 and 246 at 15.