# FELICELLO

Michael James Maloney*
Partner

Felicello Law P.C.
366 Madison Avenue
3rd Floor
New York, NY 10017

Tel. +1 (212) 584-7806
mmaloney@felicellolaw.com

March 7, 2022

VIA ECF

Hon. Magistrate Judge Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *Baliga, et al. v. Link Motion Inc., et al.*, Case No. 1:18-cv-11642-VM-DCF (S.D.N.Y.)
      Motion by Defendant Vincent Wenyong Shi ("Mr. Shi") to Discharge Receiver

Dear Judge Freeman:

We write in response to Your Honor's request, during oral argument earlier today, for a letter addressing the issue of standing and case law discussed during argument and answering Your Honor's question of whether plaintiff Baliga had standing to assert federal securities law claims at the time he filed his initial complaint.

The answer is Baliga did not have standing to assert federal securities claims. He failed to allege any distinct injury giving rise to a direct claim under the federal securities laws. Under federal law, including federal securities law, courts must look to state law to determine standing on Baliga's derivative claims. Because the real party in interest here is a Cayman Islands company, it is a corporation for purposes of the Federal Rules. Rule 17(b) must be analyzed with respect to a state's corporation law. Here, that law – Cayman law – states that beneficial shareholders, such as Baliga, lack standing to assert claims derivatively.

**The Court Must Look to Cayman Islands Law to Determine Baliga's Standing to Sue Derivatively**

The cases cited by your deputy support the proposition that standing to bring claims under federal statutes is determined by reference to federal law and policy. When conducting such an analysis, the Court should first look to Rule 17 of the Federal Rules of Civil Procedure. Rule 17(b)(2) provides that standing to sue on

*Admitted to practice law in New York

behalf of a corporation is determined by the law of the state of incorporation.[1] See Marsh v. Rosenbloom, 499 F.3d 165, 176-77 (2d Cir. 2007). This rule is consistent with the holdings of the Supreme Court in Burks v. Lasker and Kamen v. Kemper Financial Services., both of which involved questions of whether standing to bring derivative claims under the Investment Companies Act of 1940 (the "'40 Act") must be decided in reference to the laws of the state in which the company was incorporated.

In Burks, the Supreme Court held that "[i]t is true that in certain areas we have held that federal statutes authorize the federal courts to fashion a complete body of federal law. Corporation law, however, is not such an area." Burks v. Lasker, 441 U.S. 471, 477 (1979) (internal citations omitted). In Kamen, The Supreme Court "reaffirm[ed] the basic teaching of Burks v. Lasker, supra: where a gap in the federal securities laws must be bridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate *state* law into federal common law." Kamen v. Kemper Fin. Servs., 500 U.S. 90, 108 (1991).

Consistently, the Second Circuit has looked to state corporate law to define the contours of who may sue in the name of a corporation. For instance, in Halebian v. Berv, the Second Circuit explained that because corporate law is an area of law "in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards,' we entertain a strong presumption that 'state law should be incorporated into federal common law.'" Halebian v. Berv, 590 F.3d 195, 206 (2d Cir. 2009) (quoting Kamen). Similarly, in Jiminian v. Seabrook, the Second Circuit recently re-affirmed that "[t]he adequacy of a plaintiff's pre-suit demand efforts is determined by the relevant state substantive law." Jiminian v. Seabrook, 760 F. App'x 38, 41 (2d Cir. 2019) (citing Kamen).

Other federal courts have applied the same principles to derivative claims brought by ADR holders under the Securities Exchange Act of 1934 (the "Exchange Act"). E.g., Batchelder v. Nobuhiko Kawamoto, 147 F.3d 915, 920 (9th Cir. 1998) (holding that court must look to the law of incorporation to determine standing of ADR holder to bring derivative claims under common laws and Section 13 of the Exchange Act) (citing, *inter alia,* McDermott, Inc. v. Lewis, 531 A.2d 206, 214-217 (Del. 1987)).

---

[1] Because the real party in interest in this case, Link Motion Inc. ("LKM"), is a Cayman Islands exempt company, is a "corporation" for purposes of the Federal Rules of Civil Procedure. *See, e.g.,* Bautista Cayman Asset Co. v. Ferrer Grp., Inc., No. 15-2277 (GAG), 2016 U.S. Dist. LEXIS 56153, at *7 (D.P.R. Apr. 20, 2016) (Cayman Islands exempt company is a "corporation" for purposes of diversity jurisdiction); Dennis v. JPMorgan Chase & Co., 342 F. Supp. 3d 404, 410 (S.D.N.Y. 2018) (same).

Hon. Debra Freeman
March 7, 2022
Page 3 of 6

### *Drachman* is Inapposite

Plaintiff's reliance on *Drachman v. Harvey,* 453 F.2d 722, 730 (2d Cir. 1971) for the proposition that all security holders have standing to bring derivative claims under Section 10(b) of the Exchange Act, regardless of state law regarding standing to sue derivatively, is misplaced. While *Drachman* continues to be cited for its non-controversial proposition that federal courts must look to federal law when evaluating standing of a plaintiff to sue under federal statutes, *see, e.g.*, *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP,* 735 F.3d 114, 122-23 (2d Cir. 2013), or for its holding under Rule 12(b)(6), *see, e.g.*, *Chem. Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 946 (2d Cir. 1984) (dissent), we could not locate and Plaintiff has not pointed to any modern case citing to *Drachman* for its broader holding that would greatly expand federal common law and fly in the face of *Burks*, *Kamen*, and the cases that follow them.[2] The holdings in *Burks*, *Kamen*, and *Halebian* are controlling here, and require the Court to look to the law of the Cayman Islands when evaluating Baliga's standing to assert Section 10(b) and 20 claims on a derivative basis.

The approach urged by Plaintiff does not make any sense. It would mean that a court would look to state corporate law to determine if demand futility had been met under Rule 23.1, but would look to "federal common law" instead of state corporate law to determine if a party has the capacity to sue the corporation under Rule 17. Such an approach would lead to incongruent results. Nor is it consistent with Second Circuit precedent. *Marsh,* 499 F.3d at 176-77 ("The Federal Rules of Civil Procedure provide that state law governs a corporation's capacity to be sued . . .").

The right way to reconcile Supreme Court precedent such as *Burks* and *Kamen* with *Drachman* is, we think, to look to both relevant state law (e.g., demand futility, who is a shareholder, directors' powers) and federal law regarding standing (e.g., injury-in-fact, remedies). Courts in the Second Circuit that have cited to *Drachman* have done just this, looking at whether plaintiff has alleged an injury-in-fact that can be remedied under federal law for 10(b) claims. *See, e.g.*, *Frankel v. Slotkin,* 795 F. Supp. 76 (E.D.N.Y. 1992); *CILP Associates, L.P.*, 735 F.3d 114.

Article III standing requires a showing of "(1) . . . injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Boylan v. Sogou Inc.,* 2021 U.S. Dist. LEXIS 173751, at *15-16 (S.D.N.Y. Sept. 13, 2021) (internal citations and quotations omitted). Baliga has no standing to assert claims under Section 10(b) because he failed to allege any injury-in-fact that can be remedied by a favorable decision under

---

[2] *Drachman* is a product of the Second Circuit's activist period with respect to the securities laws. *See* ARTICLE: SECURITIES LAW IN THE SIXTIES: THE SUPREME COURT, THE SECOND CIRCUIT, AND THE TRIUMPH OF PURPOSE OVER TEXT, 94 Notre Dame L. Rev. 371, 430.

Section 10(b). The Exchange Act permits recovery of only "*actual* damages to *that person* on account of the act complained of." 15 U.S.C. § 78bb(a)(1) (emphasis added). Claims of "internal corporate mismanagement" are not the type of injury that Section 10(b) addresses. *Santa Fe Indus. v. Green,* 430 U.S. 462, 479 (1977). The Supreme Court has long held and "adhere[d] to the position that 'Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement.'" *Id*. (quoting and citing *Superintendent of Insurance v. Bankers Life & Cas. Co.,* 404 U.S. 6, 12 (1971)). The Section 10(b) and Rule 10b-5 claim (ECF Dkt. 1, Fourth Cause of Action, Compl. at ¶¶ 46-49) claimed that the mismanagement caused the Company's securities to be "artificially inflated" and then drop. Compl. at ¶ 48. In the following paragraph, Baliga alleges that the named directors "wrongfully transferred assets out of the Company to unknown third-parties." These are all allegations of "internal corporate mismanagement" that are not the subject of Section 10(b). *Santa Fe Indus.,* 404 U.S. at 12. Holding otherwise would improperly bring within Section 10(b) "a wide variety of corporate conduct traditionally left to state regulation." *Santa Fe,* 430 U.S. at 479. To find that plaintiff Baliga had standing would go contrary to the Supreme Court's strictures: "In addition to posing a 'danger of vexatious litigation which could result from a widely expanded class of plaintiffs under Rule 10b-5,' *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 740 (1975), this extension of the federal securities laws would overlap and quite possibly interfere with state corporate law." *Santa Fe,* 430 U.S. at 479-80.

**The Cases Cited by Plaintiff During Argument are Inapposite**

Plaintiff's reliance on *Langner v. Brown,* 913 F. Supp. 260 (S.D.N.Y. 1996) and *Carver v. Bank of N.Y. Mellon,* No. 15-CV-10180 (JPO), 2017 U.S. Dist. LEXIS 49199 (S.D.N.Y. Mar. 31, 2017) is misplaced. *Langner* involved a derivative claim under the `40 Act against the directors of an investment company. 913 F. Supp. at 263-64. Citing *Kamen*, the court looked to the law of the state of incorporation of the nominal corporate defendant to determine the plaintiff's standing to sue derivatively, finding that there was no standing. *Id*. Applying that reasoning here, Baliga has no standing.

*Carver* involved claims brought by participants and non-participants of "defined benefit plans" or "defined contribution plans" under the Employee Retirement Income Security Act of 1974 ("ERISA"). 2017 U.S. Dist. LEXIS 49199, at *7-8. The court in *Carver* found that as participants in the plans, the individual plaintiffs have standing to assert claims under ERISA on behalf of the plans. But defined benefit plans and defined contribution plans under ERISA are creatures of federal statute that do not require incorporation under state law. *See*, *e.g.*, *Belanger v. Wyman-Gordon Co.,* 71 F.3d 451, 454-55 (1st Cir. 1995). *Carver* is, therefore,

inapposite because there was not state law to look to regarding the standing of members to sue "on behalf" of the ERISA plans.[3]

**The Cases Cited by the Court Are Consistent
With Mr. Shi's Argument and Precedent**

The Court inquired regarding the cases *Feiner Family Tr. v. VBI Corp.*, 352 F. App'x 461 (2d Cir. 2009), *Walsh v. Rigas*, 2019 U.S. Dist. LEXIS 10959, at *1 (S.D.N.Y. Jan. 23, 2019), and *Holzman v. Guoqiang Xin*, No. 12-cv-8405 (AJN), 2015 U.S. Dist. LEXIS 125518, at *6-8 (S.D.N.Y. Sep. 18, 2015).

The *Feiner Family Trust* case does not offer any guidance here. In that case, there was no suggestion that the plaintiff lacked standing and the issue does not appear to have been before the court.[4]

*Walsh v. Rigas* involved claims by an investor in an offshore fund under Sections 10(b) and 20 of the Exchange Act and common law claims. *Walsh v. Rigas*, 2019 U.S. Dist. LEXIS 10959, at *1 (S.D.N.Y. Jan. 23, 2019). The court's decision states that the plaintiff asserted his Section 10(b) Exchange Act claims as "direct and/or derivative," *Walsh v. Rigas*, 2019 U.S. Dist. LEXIS 10959, at *1 (S.D.N.Y. Jan. 23, 2019), but a review of the First Amended Complaint shows that the plaintiff was actually asserting claims for injuries that were distinct to his own investments in the funds. *See* ECF Dkt. 52 ¶¶ 216-218, 258-259 (alleging that the plaintiff's losses were caused by his reliance on false and misleading statements when deciding to make his investments in the fund). Under Second Circuit precedent, injuries that are distinct to an individual shareholder are direct and not derivative. *See CILP Assocs.*, 735 F.3d at 122-23 (holding that investor in fund had standing to sue for direct injuries (*e.g.*, his individual investments) but not injuries "sustained in common" with other investors). Thus, the plaintiff in *Walsh v. Rigas* mislabeled his Section 10(b) claim as derivative when it was, in fact, direct.

---

[3] Similar rulings have been made with respect to derivative claims brought on behalf of federally chartered banks. *See*, *e.g.*, *Resolution Tr. Corp. v. Chapman*, 29 F.3d 1120, 1124 (7th Cir. 1994).

[4] The Second Circuit's decision in *Feiner Family Trust* was the result of several decisions at the trial court level regarding successive attempts by a shareholder of a Cayman Islands corporation to state direct and derivative claims against directors of the corporation. *See Feiner Family Tr. v. Xcelera.com, Inc.*, 2008 U.S. Dist. LEXIS 102019, at *2-5 (S.D.N.Y. Dec. 15, 2008). The Cayman Islands claim asserted in the original complaint was a special type of direct corporate claim that the plaintiff failed to state. *See Feiner Family Tr. v. VBI Corp.*, 2007 U.S. Dist. LEXIS 66916, at *17 (S.D.N.Y. Sep. 11, 2007). . The district court dismissed the plaintiff's later-added Exchange Act claims as too speculative and lacking particularity. *Feiner Family Tr. v. Xcelera.com, Inc.*, 2008 U.S. Dist. LEXIS 102019, at *14 (S.D.N.Y. Dec. 15, 2008).

*Holzman v. Guoqiang Xin* is a derivative action brought against certain directors and officers of a Cayman Islands exempt company headquartered in the People's Republic of China. *Holzman*, 2015 U.S. Dist. LEXIS 125518, at *6-8. It appears that the *Holzman* action was a "tag-along"[5] derivative action brought after the commencement of a securities class action and an S.E.C. enforcement proceeding, and that plaintiff in *Holzman* largely copied the allegations of wrongdoing from the prior actions along with cursory allegations of share ownership and derivative standing. *See id.*; ECF Dkt. No. 1, No. 12-cv-8405. Plaintiff in *Holzman* alleged that the Cayman company had undertaken an IPO in 2010 by issuing ADSs and that he was a continuous owner of stock since 2010, suggesting that he was merely a holder of ADSs and not a registered shareholder. But plaintiff in *Holzman* also alleged that he was "a current shareholder of SinoTech and has continuously held SinoTech stock at all relevant times." ECF Dkt. No. 1 ¶ 13, No. 12-cv-8405. Defendants successfully moved to dismiss on grounds of *forum non conveniens* but never raised with the trial court the issue of standing of an ADR holder to sue derivatively under Cayman Islands law. We submit that counsel for defendants in *Holzman* simply assumed the truth of the plaintiff's allegations that he was "a current shareholder" and inferred (but did not confirm) that Plaintiff was alleging he was a registered shareholder. There was no precedential finding that plaintiff would have had standing if he had asserted federal securities violations.

\* \* \*

Here the Court should start with the basic principle that "[s]hareholders generally lack standing to assert individual claims in their own name based on injury to the corporation and must instead bring such claims derivatively on behalf of the corporation." *See* CILP Assocs., 735 F.3d at 122. When evaluating standing to sue derivatively, the Court must then look to the law of the state of incorporation. *See* Burks, Kamen, Halebian. Under the laws of the Cayman Islands, Baliga, a beneficial owner of shares, lacks standing to sue derivatively. ECF Dkt. Nos. 131, 154. Pursuant to *Santa Fe*, Baliga otherwise lacks standing to sue for internal corporate mismanagement.

Respectfully submitted,

*/s/ Michael James Maloney*

Michael James Maloney

cc: All counsel of record (via ECF)

---

[5] *See* PURCHASE TIMING A WALL TO FACEBOOK DERIVATIVE LITIGATION DESPITE UNENFORCEABILITY OF FORUM SELECTION CLAUSE, https://blogs.orrick.com/securities-litigation/tag/shareholder-derivative-litigation/