GreenbergTraurig

Toby S. Soli
Tel 212.801.3196
solit@gtlaw.com

March 7, 2022

**VIA ECF**

The Honorable Debra C. Freeman
Magistrate Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:     *Baliga v. Link Motion Inc. et al.*, 1:18-cv-11642 (S.D.N.Y.) (VM) (DCF)

Dear Judge Freeman:

The cases cited by the Court, noting that the Second Circuit has found that standing to bring a claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") is determined pursuant to federal law remains good law. Nothing cited by Defendant Vincent Wenyong Shi ("Shi") alters that conclusion. Instead, Shi's authority stands solely for the proposition that substantive corporate law—as opposed to whether an ADR purchaser has standing to sue directly or derivatively for a violation of Section 10(b)—may be governed by state law.[1]

Indeed, the cases cited by Shi have done nothing to alter how the Second Circuit or the Southern District of New York address this issue. Indeed, as the Second Circuit held in *Drachman v. Harvey*, 453 F.2d 722, 729 (2d Cir. 1971):

> The mission to protect completely and effectively the rights of the investing public under the Exchange Act cannot cease at the implication of a private right of action under § 10(b) and Rule 10b-5. To permit diverse state law, reflecting conflicting or at least varying state policies, to define "who is a 'shareholder'" for purposes of a derivative action under § 10(b) "would limit severely the scope of that section in an area comprehended by the statutory scheme," and in many cases might render a nullity the very right which federal law has sought to provide.

*Id.* Shi may be correct that we look to state law, or in this case Cayman Island law, to determine the substantive duties of directors and officers. However, to find that Wayne Baliga lacks standing to bring a Section 10(b) claim—either directly or derivatively—would "render a nullity the very right which federal law has sought to provide." *Id.* The authority cited by Shi does nothing to alter this. In fact, the cases cited by Shi make clear that state law may fill in the gaps, but federal law controls where there is a conflict or where state law would be inconsistent with the federal policy underlying the cause of action.

---

[1] With regard to *Carver v. Bank of New York Mellon*, 15-CV-10180 (JPO), 2017 WL 1208598, at *6 (S.D.N.Y. Mar. 31, 2017), Plaintiff cited it solely for the purpose of noting that ADR holders "are, at least, beneficial owners of the underlying Deposited Securities." *Id.* As such, all of the authority which explains the rights of beneficial stockholders is equally applicable to Baliga.

The Honorable Debra Freeman
United States District Court Magistrate Judge
Southern District of New York
March 7, 2022
Page 2

## I.      The Cases Cited by the Court Regarding Standing Remain Good Law.

On Thursday, March 3, 2022, the Court contacted the Parties to schedule oral argument and specifically requested that the Parties be prepared to discuss Baliga's standing to assert federal securities claims and, in particular, how that analysis is impacted by: *Frankel v. Slotkin*, 795 F. Supp. 76, 79 (E.D.N.Y.1992); *Drachman v. Harvey*, 453 F.2d 722, 727-30 (2d Cir. 1971); *Farey-Jones v. Buckingham*, 132 F. Supp. 2d 92, 99 (E.D.N.Y. 2001); and *Glusband v. Fittin Cunningham Lauzon, Inc.*, 582 F. Supp. 145, 148-49 (S.D.N.Y. 1984).

This line of cases, which has its foundation in *Drachman*, stand for the proposition that "Federal law must be consulted to decide whether there is standing to sue under the Exchange Act, and that federal law confers standing upon beneficial shareholders such as [Plaintiff]." *Drachman v. Harvey*, 453 F.2d 722, 727 (2d Cir. 1971); *see also Glusband*, 582 F. Supp. at 148-49 ("[W]ith respect to the federal law claims, plaintiff's capacity to sue under state law is irrelevant."); *Frankel*, 795 F. Supp. at 79 ("To determine whether a party has standing to raise a claim under Section 10(b), the court looks to federal rather than state law."); *Farey-Jones v. Buckingham*, 132 F. Supp. 2d at 99 ("Contrary to the defendants' assertions, '[t]o determine whether a party has standing to raise a claim under Section 10(b), the court looks to federal rather than state law.'")

Notably, these cases—which include derivative claims brought where the Plaintiff was a beneficial owner—hold that in evaluating standing for a claim under Section 10(b), a court should not allow the Exchange Act to be "subordinated to or otherwise hindered by the interposition of state requirements and limitations inconsistent with overriding federal policy." *Drachman*, 453 F.2d at 729.

Shi has failed to identify any authority which suggests that *Drachman* and its progeny are no longer good law. Indeed, the Second Circuit cited *Drachman* as recently as 2013 for the holding that "[w]hether a party has standing to assert claims under Section 10(b) is a question of federal law." *CILP Associates, L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 122 (2d Cir. 2013).[2] Notably, the Supreme Court decided *Burks v. Lasker* in 1979. *Burks v. Lasker*, 441 U.S. 471, 99 S. Ct. 1831, 60 L. Ed. 2d 404 (1979). There is no reason to believe that *Drachman*—which was good law as recently as 2013—is not good law today.

## II.      Federal Rule of Civil Procedure 17 is Not Relevant to the Court's Question.

Shi's argument with regard to Federal Rule of Civil Procedure 17 makes no sense. Rule 17(b)(2) simply states that "Capacity to sue or be sues is determined as follows: ... (2) for a corporation, by the law under which it is organized." The only case which Shi cites regarding Rule 17(b)(2) stands for the proposition that "[t]he Federal Rules of Civil Procedure provide that state law governs a corporation's capacity to be sued." *Marsh v. Rosenbloom*, 499 F.3d 165, 176–77 (2d Cir. 2007). Nothing more. *Marsh* is a case relating to CERCLA claims and has absolutely nothing to do with derivative claims or securities law. Nowhere in the Rule—nor in the single case which

---

[2] While Shi argued that the *CILP Associates* Court found that derivative standing did not exist, that assertion was in error. Notably, the plaintiffs in that case had already voluntarily dismissed the derivative claims because another pending action brought those claims. *CILP Associates*, 735 F.3d at 121.

The Honorable Debra Freeman
United States District Court Magistrate Judge
Southern District of New York
March 7, 2022
Page 3

Shi relies on for this point—does it say that Rule 17(b)(2) will govern which jurisdiction's law will be used to determine a derivative plaintiff's standing to bring a derivative action.

Controlling Second Circuit authority tells us that Baliga's standing to bring a derivative action is determined under federal law. Shi has not cited any authority to the contrary—and Rule 17 certainly does not provide any. Indeed, both *Glusband* and *Farey-Jones* use Rule 17 to determine the capacity of the company to maintain an action, rather than using it to determine whether the receiver in *Glusband* or the partner in *Farey-Jones* had capacity to sue in a representative capacity. *See Glusband v. Fittin Cunningham Lauzon, Inc.*, 582 F. Supp. 145, 149 (S.D.N.Y. 1984); *Farey-Jones v. Buckingham*, 132 F. Supp. 2d 92, 99 (E.D.N.Y. 2001).

### III.   Shi's Authority is Not Relevant to the Question Posed by the Court.

Shi cites authority which stands for the unremarkable proposition that "[t]he fact that 'the scope of [respondents'] federal right is, of course, a federal question' does not, however, make state law irrelevant." *Burks v. Lasker*, 441 U.S. 471, 477, 99 S. Ct. 1831, 1836–37, 60 L. Ed. 2d 404 (1979). Of course, in *Burks*, the Supreme Court was not looking to state law to determine whether a plaintiff had standing to bring an action, but instead to determine what the duties and powers of corporate directors were. *Id.* ("Corporations are creatures of state law . . . and it is state law which is the font of corporate directors' powers.")

While *Burks* does not speak to the Exchange Act at all, it holds that "[t]he ICA and IAA . . . do not require that federal law displace state laws governing the powers of directors unless the state laws permit action prohibited by the Acts, or unless 'their application would be inconsistent with the federal policy underlying the cause of action ... .'" *Id.*, at 479. In *Burks*, the Supreme Court found that determining the powers of directors—including the power to terminate a derivative action—"[wa]s not a situation where federal policy requires uniformity and, therefore, where the very application of varying state laws would itself be inconsistent with federal interests." *Id.*, 441 U.S. at 480 n.6.

Similarly, the Supreme Court in *Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90, 98, 111 S. Ct. 1711, 1717, 114 L. Ed. 2d 152 (1991), was examining the necessity of pre-suit demand in derivative cases—and the powers of corporate directors in addressing those demands. *Id.* The *Kamen* court held that "a court should endeavor to fill the interstices of federal remedial schemes with uniform federal rules only when the scheme in question evidences a distinct need for nationwide legal standards." *Id.*

Notably, in *Drachman* the Second Circuit clearly enunciated their understanding of the federal policy underlying a Section 10(b) claim in the *Drachman* case and found that "the policy of uniformity within the federal system at least with respect to the issue at bar is paramount to any interests to be served by conformity with the variousness of state rules." *Drachman*, 453 F.2d at 728. That is to say, the Second Circuit has already found the standards for asserting a section 10b derivative claim is a "situation where federal policy requires uniformity" or "a distinct need for nationwide legal standards." *Burks*, 441 U.S. at 480 n.6; *Kamen*, 500 U.S. at 98. Instead of undermining the holding of *Drachman*, Plaintiffs' authority actually supports that the reasoning in *Drachman* is sufficient to identify a situation where state law is not a relevant consideration.

The Honorable Debra Freeman
United States District Court Magistrate Judge
Southern District of New York
March 7, 2022
Page 4

In addition, Shi cited to *Strougo v. Bassini*, 282 F.3d 162, 169 (2d Cir. 2002), without much discussion. The decision in *Strougo* follows *Kamen* and determines that in the context of an Investment Company Act claim—rather than any claim under the Exchange Act—the court would follow state law for determining whether Plaintiff had individual damages sufficient to support a direct shareholder action. *Id.* at 169-171. Indeed, the *Strougo* court—while determining that Maryland law applied to the question at hand—held that this approach did not apply where:

> (1) the scheme in question "evidences a distinct need for nationwide legal standards"; (2) "express provisions in analogous [federal] statutory schemes embody congressional policy choices readily applicable to the matter at hand"; or (3) "application of the particular state law in question would frustrate specific objectives of the federal programs."

*Id.*, at 168. Of course, the Second Circuit has already found that "the policy of uniformity within the federal system at least with respect to [Section 10(b) standing issue] is paramount to any interests to be served by conformity with the variousness of state rules." *Drachman*, 453 F.2d at 728.

Contrary to Shi's suggestions during oral argument, Shi's final authority, *Batchelder v. Kawamoto*, 147 F.3d 915 (9th Cir. 1998), *as amended* (July 15, 1998), is entirely inapposite. It is a case about whether an ADR holder can bring common law derivative claims under the law of Japan. *Id.* at 917-922. The only federal claim was a proxy claim under Section 14 of the Exchange Act, but there was no analysis of whether the court must apply state or federal law to that claim. Instead, the question was simply whether Batchelder's claim under federal proxy laws fails because Honda was a foreign private issuer and, therefore, exempt from the requirements of Section 14. It did not hold there was no standing to bring the claim and it in fact went on to analyze the claim under federal law. None of the reasoning or discussion in *Batchelder* has any relevance to the issue raised by the Court in this matter.

As the Court noted, the Second Circuit and Southern District of New York continue analyzing federal securities law claims under federal law and state claims under state law. *See, generally, Feiner Family Tr. v. VBI Corp.*, 352 Fed. Appx. 461 (2d Cir. 2009); *Walsh v. Rigas*, 17 CIV. 4089 (NRB), 2019 WL 294798 (S.D.N.Y. Jan. 23, 2019); and *Holzman v. Guoqiang Xin*, 12-CV-8405 AJN, 2015 WL 5544357 (S.D.N.Y. Sept. 18, 2015). None of these cases cited or discussed *Burks* or *Kamen*.

*Burks* and *Kamen* do not represent the sea-change that Shi suggested.[3] Shi has not cited any authority suggesting that they have in any way undermined the holding of *Drachman*.

Shi inaccurately suggests that *Langner v. Brown*, 913 F. Supp. 260, 270 (S.D.N.Y. 1996), cites *Kamen* for the proposition that standing is governed by state substantive law. Instead, *Langner* cites *Kamen* for the proposition that state law governs the demand requirement—that is to say the rights and duties of corporate defendants. *Id.* at 265. With regard to standing to bring a

---

[3] Shi's counsel did not mention any cases applying *Burks* or *Kamen* to a determination of standing in the context of a Section 10(b) claim. Plaintiff looked for and has been unable to find any cases from the Second Circuit Court of Appeals which applied *Burks* or *Kamen* to a determination of standing in the context of a Section 10(b) claim.

The Honorable Debra Freeman
United States District Court Magistrate Judge
Southern District of New York
March 7, 2022
Page 5

claim for injunctive relief under Section 10(b), *Langner* cites to federal law and follows "well-established Second Circuit precedent holding that, in seeking injunctive relief under a § 10(b) claim, a plaintiff does not have to show damages in connection with the purchase or sale of any security." *Id.* at 270.

*Drachman*, however, continues to be cited by courts in the Southern District of New York for its holding that standing for state derivative claims is determined under state substantive law and standing for claims under the Exchange Act are determined by reference to federal law. *See Int'l Bhd. of Elec. Workers Local 98 Pension Fund v. Hann*, 06 CIV. 14312 (DAB), 2008 WL 11515992, at *1 n.1 (S.D.N.Y. June 10, 2008) ("Second Circuit law favors Plaintiff's position, that the Court must analyze standing for the state and federal claims separately."). Indeed, as the Second Circuit announced in *Drachman*:

> That *Congress intended to establish uniform enforcement of the Exchange Act* is strongly indicated by § 27 of the Act, which confers exclusive jurisdiction on the federal courts.
>
> . . .
>
> More significantly, we are concerned here with an important enforcement provision of a federal statute intended not only to expand the common law but to create new, far-reaching and uniform law of shareholder-management relations in congressionally designated areas of substantive corporation law, which *must not under the Supremacy Clause of the Constitution be subordinated to or otherwise hindered by the interposition of state requirements and limitations inconsistent with overriding federal policy*. The Supreme Court has mandated the federal courts "'to adjust their remedies so as to grant the necessary relief,' where federally secured rights are invaded." The mission to protect completely and effectively the rights of the investing public under the Exchange Act cannot cease at the implication of a private right of action under § 10(b) and Rule 10b-5. *To permit diverse state law, reflecting conflicting or at least varying state policies, to define "who is a 'shareholder'" for purposes of a derivative action under § 10(b) "would limit severely the scope of that section in an area comprehended by the statutory scheme*," and in many cases might render a nullity the very right which federal law has sought to provide.

*Drachman v. Harvey*, 453 F.2d 722, 728–29 (2d Cir. 1971). The *Drachman* case explicitly hits each of the exceptions that the Supreme Court announced in *Burks* and *Kamen* to the application of state substantive law. Even if the court held that *Burks* or *Kamen* apply to Exchange Act claims, it is clear that they do not change whether the holding in *Drachman* applies here.

The Honorable Debra Freeman
United States District Court Magistrate Judge
Southern District of New York
March 7, 2022
Page 6

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____
      Toby S. Soli
One Vanderbilt Avenue
New York, New York 10166
Telephone: (212) 801-3196
Email:  solit@gtlaw.com
*Counsel for Plaintiff*

cc:      All counsel of record (via ECF)