**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.) | 1:18-cv-11642-VM-DCF |
| Plaintiff, | |
| -against- | |
| LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU, | |
| Defendants, | |
| -and- | |
| LINK MOTION INC. (F/K/A NQ MOBILE INC.), | |
| Nominal Defendant. | |

**RECEIVER'S RESPONSE TO DEFENDANT VINCENT WENYONG SHI'S**
**ORDER TO SHOW CAUSE TO ENJOIN EXTRAORDINARY GENERAL MEETINGS**
**AND STRIKE PROPOSED SHAREHOLDER RESOLUTIONS**

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................................................... 1

I.    **THE RECEIVER COMPLIED WITH THE COURT'S SEPTEMBER 4, 2020 ORDER**.................................................................................................................... 9

II.   **SHI HAD NOTICE OF THE CAYMAN PROCEEDING WHICH AUTHORIZED THE EGMS; THE CAYMAN COURT WAS INFORMED OF THE MOTION** ......... 11

III.  **THE RECEIVER DID NOT PLAN TO PARTICIPATE IN OR OTHERWISE INFLUENCE THE EGMS** ...................................................................................... 13

IV.  **SHI MISCHARACTERIZES THE EGM NOTICES**....................................................... 14

V.   **THE RECEIVER IS TAKING NO FURTHER ACTION WITH RESPECT TO THE EGMS, CONSISTENT WITH THE ORDERS OF THE COURT** ....................... 16

Robert Seiden (the "Receiver"), in his capacity as the temporary Receiver for Link Motion Inc. (the "Company" or "LKM") under the Receivership Order (ECF 26; the "Receivership Order"), by his undersigned counsel, respectfully submits this Response to Defendant Vincent Wenyong Shi's (the "Defendant" or "Shi") motion, via order to show cause, to enjoin extraordinary general meetings and strike proposed shareholder resolutions (ECF 276; the "OSC").[1]

## PRELIMINARY STATEMENT

The Receiver is an officer of the Court, and his authority is derived entirely from the Court.[2] Consistent with these principles, the Receiver takes no position with respect to the relief sought through the OSC. The Receiver submits this response for the limited purposes of responding to the OSC's factual allegations concerning the Receiver, including correcting the OSC's misrepresentations regarding the Receiver's work.

On February 1, 2019, the Court issued a preliminary injunction against Shi, appointed the Receiver, and instructed the Receiver to take "any action" necessary to preserve, safeguard, and prevent dissipation of LKM's assets:

> The Court hereby preliminarily restrains and enjoins [Shi] from: transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or other interest in, any assets belonging to [the Company], among other things, its subsidiaries, businesses, physical assets, and cash reserves.
>
> . . .

---

[1] All references to "ECF" are references to the docket in *Baliga v. Link Motion Inc., et al.* 1:18-cv-11642-VM-DCF (SDNY).

[2] *See Booth v. Clark*, 58 U.S. 322, 331 (1854) ("The receiver is but the creature of the court; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court []."); *Ledbetter v. Farmers Bank & Trust Co.*, 142 F.2d 147, 150 (4th Cir. 1944) ("It is well recognized that a receiver is the agent only of the court appointing him; he represents the court rather than the parties."); 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2981 (3d ed. 2020) ("The receiver is considered to be an officer of the court, and therefore not an agent of the parties[.]").

> The Receiver shall take any action necessary to preserve and safeguard the Company's assets, including monitoring and, if necessary to prevent dissipation, take sole control over the Company's assets, subsidiaries, and bank accounts.

ECF 26 at I. ¶ 1, II. ¶ (2)(a).

Since the Receiver's appointment, consistent with the Receivership Order, the Receiver has taken numerous actions designed to safeguard LKM's assets, including but not limited to the below:

- Negotiated with other significant LKM shareholders in the People's Republic of China ("PRC") to gain control over LKM's subsidiaries. ECF 220 at 2.
- Took appropriate steps to gain control of the Company's wholly-foreign-owned enterprise ("WFOE") in the PRC. *Id.*
- Filed the Company's required Form 6-K to the U.S. Securities and Exchange Commission. *Id.*
- Took control of the Company's Hong Kong subsidiary. ECF 220 at 3.
- Defended an international arbitration on behalf of LKM in Hong Kong and secured an arbitration award rescinding pledge agreements valued at $270 million that were made in breach of Shi's fiduciary duties. *Id.*; *see also* ECF 210; *see also* ECF 210-1, at ¶¶ 26, 199 ("It measures the damages as the value of the collateral, which it claims is approximately US$270 million.").
- Interviewed management at the Company's Finland entity to identify potential intellectual property assets controlled there. ECF 220 at 3.
- Investigated the transaction between the Company and China AI Capital Limited and sent a demand letter for the unpaid $10,000,000 consideration. *Id.*
- Investigated the Company's sale of its largest asset, Showself Technology Co., Ltd. *Id.* at 5.
- Initiated a series of legal actions (arbitration and litigation) in the PRC to gain control of LKM WFOE and its bank accounts. ECF 220-1.
- Changed the Company's seal to prohibit Shi's use of the corporate seal to obstruct the Receiver's efforts in the PRC. ECF 220 at 5.
- Continued to identify and investigate the facts related to the Company's assets. *Id.* at 2-5.
- Investigated Shi's misconduct in transferring the Company's assets and declining to defend arbitration claims which subject the Company to an approximately $400 million damage award. ECF 269.

In addition, the Receiver (as described further below) successfully obtained an Order from the Grand Court of the Cayman Islands (the "Cayman Court") on February 4, 2020 (the "Feb. 4 Cayman Order") recognizing the receivership as well as the Receiver's power to "exercise his

recognized powers and functions in the Cayman Islands to the exclusion of any other person." *See* ECF 173-17.

While the Receiver's efforts have benefitted and continue to benefit the Company, Shi has sought to obstruct the Receivership in the PRC at every turn. Specifically, because the Feb. 4 Cayman Order did not recognize the Receiver's power to "appoint or replace any director of Link Motion Inc." (*See* ECF 173-17 at ¶ 2) and instead only allowed the Receiver to exclude them from control of the Company, Shi sought to use his title on the Cayman Registrar to impede the Receiver's efforts. That is why the Receiver on November 13, 2020, wrote a letter (the "Nov. 13 Letter") to the Honorable Judge Debra C. Freeman requesting the Court's approval to call extraordinary general meetings ("EGMs") on behalf of the shareholders of the Company. *See* ECF 188. As discussed in the Nov. 13 Letter:

> While the Receivership Order has had some effect outside of the People's Republic of China ("PRC"), it has had no effect inside the PRC. Indeed, within the PRC, Shi continues to disregard the Court's orders and maintains full control of all Company assets. Apparently, **the only meaningful way to wrest control of the Company from Shi is to formally remove him from his role as Director of Link Motion. Pursuant to the advice of my U.S. and Cayman Islands counsel, the best method to do this, and the most equitable for all parties, including Shi, is to follow the Company's own by-laws and proceed to a shareholder vote.** It is for this reason that I request the Court's approval to call an EGM of the Company's shareholders.

*See* ECF 188.

On December 15, 2020, the Court issued its ruling that the Receiver's request to call an EGM, as well as four other motions, which were all denied "without prejudice to renew, in the event any or all of those motions remain viable following the resolution of the conversion issue and any related motion by Plaintiff for leave to file a third amended complaint." See ECF 198. In

line with the Receiver's duties to be an "officer of the court,"[3] the Receiver did not call an EGM and awaited Judge Freeman's ruling on Plaintiff Wayne Baliga's Motion for the Receiver to Effectuate Conversion of Plaintiff's ADRs (ECF 200; "Motion to Effectuate").

On May 26, 2021, Judge Freeman issued her ruling on Plaintiff's Motion to Effectuate and found in relevant part that "the fundamental problem with Baliga's motion is that it asks the Court to act on a matter that is outside the scope of any of the pleaded claims in this case, and that is thus outside the Court's jurisdiction." See ECF 221 at 12. In line with the court's reasoning that it could not "act on a matter that is outside the scope of any of the pleaded claims in this case," the Receiver did not renew his request to call an EGM with this Court.

On June 11, 2021, Shi filed a Motion to Dissolve the Preliminary Injunction and Discharge the Receiver (ECF 227, the "Motion"). On July 28, 2021, during a teleconference with Judge Freeman, the Receiver sought the Court's confirmation that the Receiver continued to have the authority to act during the pendency of the Motion:

> MR. SEIDEN:   Your Honor, are you saying the receivership is in place, the receiver still has the authority to act accordingly in the best interests of the company?
>
> THE COURT:   Correct. As of this moment in time, the receivership order is in place and the [R]eceiver is still in place.

ECF 247 at 24.[4]

Consistent with Magistrate Judge Freeman's direction, during the pendency of the Motion the Receiver continued to act in accordance with the Receivership order, including by seeking to preserve the Company's assets and preventing Shi from causing further harm to the Company. For example, in February 2022 the Receiver discovered evidence that Shi had caused the Company to

---

[3] 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2981 (3d ed. 2020).
[4] Mr. Seiden (quoted above) is Steven Seiden who is a partner in the Receiver's law firm.

default in an arbitration brought in April 2019 by Tongfang Investment Fund Series SPC in Hong Kong — exposing the Company to an approximately $400 million damage award — in violation of this Court's preliminary injunction which required Shi to surrender control over all legal proceedings involving LKM.  The Receiver promptly alerted the Court to this fact and inquired with the Hong Kong arbitrator in attempt to understand the circumstances in which Shi exposed LKM to such a massive liability.  ECF 269.

The Receiver continued to communicate with shareholders of the Company, and these shareholders requested that the Receiver convene an EGM of the Company's shareholders.  *See* Declaration of Mark Russell ("Russell Decl."), Ex. B at ¶¶ 17-18 ("Although Mr. [Lilin] Guo is a significant individual shareholder of the Company, he is unable to requisition an extraordinary general meeting under the Articles . . . Based on advice from my Cayman Islands and US attorneys, [the Receiver] understand[s] that the Receiver would have the authority to exercise the powers of the Company's directors under Article 55 to call an extraordinary general meeting based on the Receivership Order and the Recognition Order.  Mr. Guo requested [the Receiver] call such a meeting.").  In line with the Receiver's duties to act in the best interests of the Company and its shareholders, the Receiver informed Judge Freeman on February 3, 2022 that he was "preparing an application to the Cayman Court to seek approval to call the EGM in order to put forward resolutions to LKM shareholders for the appointment and removal of directors, the result of which will (in the Receiver's judgment) serve to safeguard and protect the Company's assets going forward."  *See* ECF 268.

The Receiver sought approval from the Cayman Court to call an EGM of the Company's shareholders on February 7, 2022 (the "Feb. 7 Application").  *See* Russell Decl. Ex. A.  The purpose of the EGM was to consider corporate actions consistent with the Receiver's prior request

to call an EGM (*see* ECF 188), including formally removing Shi and his followers from their roles as directors on the Cayman Registrar. Specifically, the Receiver submitted with the February 7 Application a Summons (Russell Decl., Ex. A), an affidavit from the Receiver (the "Receiver's Feb. 7 Aff.") (Russell Decl., Ex. B), and an exhibit package containing eighteen separate exhibits that covered a wide range of issues spanning Cayman and US Law. Russell Decl., Ex. C.

The Receiver's Affidavit (Russell Decl., Ex. B), as well as the accompanying Skeleton Argument submitted on February 18, 2022 (Russell Decl., Ex. F), explained in painstaking detail the need for the EGM as well as the details of the New York action. The Receiver's Affidavit and the Skeleton Argument gave the history of the Receivership and a detailed account of how Shi has used his title as Director on the Cayman Registrar to impede the Receiver's efforts. Russell Decl., Ex. B at ¶¶ 6-14; *see also* Russell Decl., Ex. F at ¶¶ 4-11. Specifically, Shi and his followers impeded the Receiver's efforts by (1) controlling the Company's WFOE bank accounts (Russell Decl., Ex. B at ¶ 12.1); (2) filed an action against the WFOE to freeze its bank accounts, which prevented "the Receiver's use of the WFOE account to pay employee salary" (*Id*. at ¶ 12.2); (3) transferred $89,000,000 out of Company accounts (*Id*., at ¶ 12.3); (4) used the Company's voided seals to execute LKM WFOE documents and appoint a new WFOE legal representative (*Id*., at ¶ 12.4); and (5) Shi has continued to use the Company's voided seal and held himself out as a formal director of the Company in "thirteen separate actions in China's courts and arbitral tribunals in an attempt to overturn or prevent the Receiver and Mr. [Lilin] Guo's ("Mr. Guo") performance," including in front of the China International Economic and Trade Arbitration Commission to change the Company's VIE agreements and stop the legal transfer of shares in LKM subsidiaries to Shi's followers. *Id.*, at ¶ 12.5.

The Receiver's Feb. 7 Aff. further explained how Mr. Guo requested the EGMs, the procedural history of the Receiver's efforts to call an EGM with the New York courts, and the details of the exact actions that would take place at the EGMs. *See* Russell Decl., Ex. B at ¶¶ 15-24. The Receiver's Feb. 7 Aff. ended by explaining "Other Matters for Consideration," including that "the US Court is currently considering a motion to discharge the Receiver" and included the full briefing and letters on the motion to discharge the Receiver as an exhibit. *See* Russell Decl., Ex. B at ¶ 25; *see also* Russell Decl. Ex. C at 157-217.

The Receiver then updated the Cayman Court and submitted another affidavit (Russell Decl., Ex. D), and another exhibit package containing a detailed account of how as a result of Shi defaulting on an arbitration involving the Company, "the Company is now subject to an approximately US$395,000,000 damage award," and that Shi, "without notifying the Receiver and without receiving any type of authorization from the Company, filed a bankruptcy petition against JiuTian on behalf of [] an indirect subsidiary of the Company." *See* Russell Decl., Ex. D at ¶¶ 5-7. Contrary to Shi's allegations in the OSC, the grounds for calling an EGM were fully disclosed to the Cayman Court, and the Cayman Court was informed of the pending Motion to discharge the Receivership.

On March 10, 2022 (ECF 275), Judge Freeman issued a Report and Recommendation that contained her proposed ruling on the Motion. Judge Freeman explained that as the action was no longer a derivative action, Plaintiff Baliga no longer could show irreparable harm and that the Receivership and temporary injunction should be ended. *See* ECF 275 at 36-38. Judge Freeman further stated that she did not recommend that Shi or any other former Directors of the Company should be reinstated to their prior positions, and that

> as for any retroactive effect that should be accorded to an order discharging the Receiver, I recommend that, in light of the fact that

> the receivership Order was properly authorized in the first instance, and as Shi has not persuasively shown that the actions of the Receiver, taken as a whole, have been detrimental to the Company (as opposed to detrimental to Shi, himself), none of the actions taken by the Receiver should be required by the Court to be unwound, as Shi proposes. *See* ECF 275 at 41.

The Report and Recommendation further stated that

> I do recommend [] that the Receiver be directed not to seek any extraordinary actions from the Company's Board, during the remaining period of the receivership, as the Receiver's work, during this time, should instead be focused on maintaining the Company's *status quo* and providing the accounting described above.

ECF 275 at 41.

Upon the issuance of the Report and Recommendation, the Receiver ceased any involvement in the EGMs, consistent with Judge Freeman's directive and with the Court's March 16, 2022 OSC order which formally enjoined the EGMs.

On March 15, 2022, Shi filed a proposed OSC to Enjoin the Extraordinary General Meetings and Strike Proposed Shareholder Resolutions. *See* ECF 276. On March 16, 2022, the Court signed the proposed OSC. *See* ECF 277.

The Receiver's Cayman counsel then took affirmative steps on the morning of March 17, 2022 to stop the EGM and informed all shareholders who responded to the Notice of the EGM that the Receiver "would not be distributing any Teams meeting information for the EGMs." *See* ECF 282. On March 17, 2022, the Court ordered that the parties "provide an update by March 18, 2022, regarding the status of actions taken to comply with the Court's OSC. *See* ECF 277. The Receiver responded on March 18, 2022 and informed the Court that the Receiver had taken affirmative steps to stop the EGMs and participated in a meet and confer with Shi's attorney regarding the briefing schedule in connection with the OSC. *See* ECF 282 at 1-2.

The Receiver awaits guidance from the Court as to whether any further action is required related to the matters at issue in the OSC. The Receiver submits the additional information within in order to correct certain errors and misrepresentations made in the OSC concerning the Receiver's work.

## I. THE RECEIVER COMPLIED WITH THE COURT'S SEPTEMBER 4, 2020 ORDER

In the OSC, Shi contends that the Receiver has attempted "to subvert the Court's directives and inquiries in its September 4, 2020 Memorandum and Order" and "fail[ed] to comply" with that Order. ECF 276-6 at 1, fn. 1. This is categorically false. In the September 4, 2020 order, the Court directed the Receiver to:

> make a submission to this Court, providing (a) an explanation as to why he made an application to the Grand Court of the Cayman Islands for an order "recognizing" his authority as Temporary Receiver, (b) copies of the papers that he submitted to the Grand Court of the Cayman Islands in connection with that application, and (c) an explanation, supported by legal authority, of his understanding of the ramifications of the Order that was then issued by the Grand Court of the Cayman Islands, with respect to his authority to remove or appoint directors of Link Motion, Inc.

ECF 163 at 54-55.

On October 10, 2020, the Receiver submitted an extensive letter responding to each of the Court's inquiries and attached twenty-one exhibits (including copies of all of the Cayman Court filings that the Court requested). ECF 173.

The Receiver's submission explained that the Receiver filed an application to the Cayman Court for an order recognizing the Receiver's authority to (i) prevent the Company from being dissolved in the Cayman Islands and engage the Company's registered agent; (ii) stop Shi from obstructing the receivership abroad; and (iii) to work with the Company's registered agent and exclude Shi and certain of the Company's other directors from continued participation in the

Company's affairs. *See generally* ECF 173. The Receiver expressly responded to the Court's inquires as to why recognition was necessary because:

- The Receiver needed authority, under Cayman law, to file required documents and to pay filing fees to the Cayman Registrar of Companies ("Registrar") to stop the Company from being dissolved as well as to work with the Company's registered agent, Maples Corporate Services Limited ("Maples"). As the Cayman Court held in its ruling "*[t]he fact is that [Shi] against whom the allegations of misfeasance have been made have abandoned the Company and put it at risk of being struck off administratively and dissolved.*"[5]

- The Receivership sought Cayman Islands recognition to stop Shi from obstructing the Receivership abroad, depleting the Company of its revenue and assets, and claiming that the Receivership was illegitimate.[6] Relying upon the falsehood that the Receivership is illegitimate, Shi took "*steps to force certain Company employees to resign, then offered to rehire them to continue their work on the Company's revenue generating applications through a different entity set up to receive those revenues; and (ii) Shi attended at the Company's offices to cause accounting and legal documents to be removed and to destroy and damage operating data systems and the Company's main contract management system.*"[7] The Receivership needed to be recognized to stop Shi's incorrect allegation that the Receiver did not have "*status under the law of the jurisdiction of incorporation of the company and therefore no valid claim to act on behalf of Link Motion.*"[8]

- In order to protect the Company's assets, the Receiver sought Cayman Recognition to exclude directors from the management of the Company and participation in any Company affairs.[9]

In sum, contrary to Shi's contentions in the Motion, the Receiver fully complied with Judge Freeman's directive in the September 4, 2020 order.

---

[5] *See* ECF 173 at 2; *see also* ECF 173-16, Cayman Court Ruling at ¶ 16.
[6] *See* ECF 173-2, Affidavit of Robert Seiden at ¶ 43 ("Shi claimed, via a Chinese social media platform, that the Receiver's appointment by a New York court "*does not have effect under Cayman Islands law and is therefore not binding on the Company or should not be recognized in other jurisdictions.*"); *see* ECF 173-6 6, Skeleton Argument at ¶ 17; *see also* ECF 173 at 3.
[7] *See* ECF 173-2, Affidavit of Robert Seiden at ¶ 39(b); *see also* ECF 173-3, RWS-1 at 119-122.
[8] *See* ECF 173-2, Affidavit of Robert Seiden at ¶ 44; *see also* ECF 173 at 4.
[9] *See* ECF 173-15; *see also* ECF 173 at 5-6.

## II. SHI HAD NOTICE OF THE CAYMAN PROCEEDING WHICH AUTHORIZED THE EGMS; THE CAYMAN COURT WAS INFORMED OF THE MOTION

Shi contends that "[t]he Receiver failed to give Shi notice of the Cayman Court proceeding." ECF 276-6 at 1. Contrary to Shi's contention, on February 3, 2022, the Receiver submitted a status report to Honorable Magistrate Judge Freeman indicating that "[t]he Receiver is preparing an application to the Cayman Court to seek approval to call the EGMs, in order to put forward resolutions to LKM shareholders for the appointment and removal of directors, the result of which will (in the Receiver's judgment) serve to safeguard and protect the Company's assets going forward." ECF 268.

Further, on March 3, 2022, the Receiver submitted another status report to the Honorable Magistrate Judge Freeman, reporting that "[o]n February 23, 2022, the Cayman Grand Court approved the Receiver's application," attaching a copy of the Grand Court's Order, and stating that "[t]he Receiver plans to send notice of the EGMs in accordance with the Company's bylaws." ECF 271. Thus, Shi (along with all parties to this action) was notified of the Cayman Court proceedings which authorized the EGMs.[10]

The Receiver also fully informed the Cayman Court of all pertinent information concerning New York and Cayman law, including that

> [b]ased on advice from [Receiver's] Cayman Island and US attorneys, [the Receiver] understand[s] that the Receiver would have the authority the powers of the Company's directors under Article 55 to call an extraordinary general meeting based on the Receivership Order and Recognition Order. Mr. Guo requested [the Receiver to] call such a meeting. *However, given [the Receiver's] position as a court-appointed office, in [the Receiver's] view, it would be inappropriate for the Receiver to call an extraordinary*

---

[10] There is no basis to Shi's contention that "[t]he Receiver appears to have delayed both alerting the Court of the Cayman Islands proceedings and the Notices calling the EGMs until *after* the Magistrate Judge informed the parties [on March 4, 2022] that she was preparing to issue her opinion on the Discharge Motion and requested oral argument on a discrete question of standing at the time the original complaint was filed." ECF 276-6 at 2. As noted above, prior to March 4, 2022, the Receiver submitted two status reports concerning the Cayman proceedings and the EGMs.

> *general meeting without the approval of either the US Court or this Court*.

Russell Decl. Ex. B at ¶ 18.

The Cayman Court was also made aware of the then pending motion to discharge the receiver and was provided copies of the submissions made by each party on that motion. The Receiver expressly referenced Shi's Motion to the Cayman Court:

> In considering this application, [the Cayman Court] should be aware of certain other matters: [] First, the [Southern District Court of New York] is currently considering a motion to discharge the Receiver: [] On 11 June 2021, Shi filed a motion to the US Court to discharge the Receiver and declare the receivership *void ab initio* A copy of the motion is at pages 156 to 158 of RWS-4. The Receiver filed a response to the motion, and Baliga (now represented by different counsel) filed an opposition to the motion. Copies of the responses of the Receiver and Baliga to the motion are at Page 159 to 206 of RWS-4. Subsequently, and in compliance with an order from the US Court, Shi and Baliga each filed additional letter briefs setting out their position on whether the discharge of the Receivership should be done on an *void ab initio* basis. Copies of those letters are at pages 207 to 216 of RWS-4. The US Court's decision on the application is pending. I do not know when a decision will be released.

*See* Russell Decl., Ex. B at ¶ 25-25.1.4.

The Receiver then went as far as to include in its submission to the Cayman Court all relevant submissions concerning the motion to discharge the Receiver. *See* Russell Decl., Ex. C at 157-217.

Accordingly, Shi's allegations that the Receiver failed to disclose Shi's Motion to the Cayman Court are false.

### III. THE RECEIVER DID NOT PLAN TO PARTICIPATE IN OR OTHERWISE INFLUENCE THE EGMS

Shi incorrectly suggests that the Receiver intended to control or influence the EGMs. *See, e.g.*, ECF 276-6 at 1 ("the Receiver seeks to hold an EGM on March 18, 2022 to stack the Board of Directors by appointing six new directors cherry-picked by the Receiver").

Contrary to Shi's contention, prior to issuing its February 23, 2022 order authorizing the Receiver to call the EGMs, the Cayman Court was advised that the Receiver did not intend to participate in or otherwise influence the outcome of the EGMs. As presented by Receiver's Cayman counsel, KSG Attorneys at Law ("KSG"), to the Cayman Court, the Receiver:

> is a neutral party in this exercise. [Its] role would be limited to calling and facilitating the EGMs in response to a request from a major individual shareholder, but otherwise [it] does not intend to participate in or otherwise influence the outcomes.

*See* Russell Decl., Ex. F at ¶ 16.

Further, the genesis of the Receiver's application to the Cayman Court was a request from Mr. Guo, who is the registered owner of shares representing approximately 40% of the Company's voting rights. See Russell Decl. Ex. B at ¶ 5; see also Russell Decl., Ex. C at 114. Mr. Guo explained to the Receiver, and the Receiver explained to the Cayman Court, that "if the Company's register of directors could be amended to remove Shi from it, Shi's ability to obstruct the Receivership in the PRC in the way that he has been doing will be severely curtailed." See Russell Decl., Ex. B, at ¶ 14.

The Receiver did not propose the resolutions set out in the notices of the EGMs. In fact, the notices of the EGMs explicitly state that

> [t]he Receiver is giving this notice in exercise of [its] powers and duties under the Court Order, upon the request of Requesting Shareholders, and with the authorization of the Grand Court of the Cayman Islands. The Receiver has not proposed the resolutions set

>out above and does not intend to attend at or otherwise participate in the meeting. The Receiver does not assume any responsibility or liability for any actions taken by the shareholders in the meeting.

*See* ECF 276-2 at 2; *see also* ECF 276-3 Notes at 2.

### IV. SHI MISCHARACTERIZES THE EGM NOTICES

Shi goes to great lengths to make numerous mischaracterizations in his OSC, including but not limited to that (1) Mr. Bruson Li is a Director of LKM under Cayman Law; and (2) that the "2nd Notice is also defective because it recommends that the shareholders resolve that the Company continue the receivership by vote of the shareholders[.]" *See* ECF 276-6 at 3. The Notices of the EGMs state no such things.

Shi falsely contends that the Second Notice (ECF 276-3; the "Second Notice") states that the EGM will force the "Company [to] continue the receivership by vote of the shareholders,"[11] and that the EGM will "absolve[e] the Receiver from liability."[12] Instead, the Second Notice states that five specific directors will be removed from the Company's Board, and that two specific resolutions concerning the Receiver would be put forward. First, that "the Company will take all steps reasonably necessary to comply with the" Receivership Order; and second, "[t]hat all actions taken by the Temporary Receiver appointed by the court Order, and the Temporary Receiver's agents, since his appointment on behalf of the Company were for the benefit of the Company and accordingly be and are ratified, sanctioned, adopted, and approved." *See* ECF 276-3 at 1-2. Nothing in the Second Notice requires that the Receivership be continued if the Receiver is discharged (as has now been recommended by Judge Freeman).

Further, the ratification of the Receiver's actions through shareholder resolutions was meant to assist the Receiver's efforts in the PRC, where US court orders are typically not given

---

[11] *See* ECF 276-6 at 3, 6; *see also* ECF 276 at ¶ b.
[12] *See* ECF 276-6 at 6.

effect. *See* Russell Decl., Ex. B at ¶ 13 ("Despite the legal effect of the Receivership Order and Recognition Order under US and Cayman law being that Shi has no control over the Company, I understand from Mr Guo, and from my own experience on other asset recovery matters, that many governmental and commercial entities in the PRC do not recognize the effect of foreign court orders but will continue to refer to and rely on corporate documents[.]").

Further, while Shi states that "Mr. Li previously resigned from the Board of Directors in February 2019," Shi leaves out the fact that Mr. Bruson Li is still a director of the Company on the Cayman Registrar. *See* Russell Decl., Ex. C at 124 (leaving "Date Resigned or Removed" for Mr. Li blank as no resignation was recorded). In February 2019 the Receivership did not have the authority to work directly with the Company's registered agent Maples, and it did not gain that ability until the Receivership Order was recognized. See ECF 173 at 2 ("The Receiver understood, based upon advice of Cayman counsel, that failure to engage a registered agent, such as LKM's registered agent before the Receivership, Maples Corporate Services Limited ("Maples"), would have resulted in the Company being removed from the Registrar and dissolved. However, before the Recognition Order, the Receiver was not able to act on behalf of LKM in the Cayman Islands as a matter of Cayman law."). It is immaterial whether Mr. Bruson Li resigned from his position in February 2019 if that resignation was not reflected on the Cayman registrar, and in light of the fact that Mr. Guo requested all of Shi's followers be removed from their positions to further the Receivership's efforts, the Receivership sought to officially remove Mr. Li and update the registrar accordingly. *See* Russell Decl., Ex. B at ¶ 18 ("Mr. Guo requested that [the Receiver] call such a meeting.").

## V. THE RECEIVER IS TAKING NO FURTHER ACTION WITH RESPECT TO THE EGMS, CONSISTENT WITH THE ORDERS OF THE COURT

On March 15, 2022 (after Judge Freeman had issued her Report and Recommendation but before the OSC was issued), the Receiver's counsel contacted Shi's counsel, Michael Maloney, to confirm that the Receiver would not attend or otherwise participate in the EGMs. On March 16, 2022, upon entry of the OSC, the Receiver informed his staff, agents, representatives, and counsel (including but not limited to Cayman Islands counsel and the Receiver's agent in the PRC, Mr. Guo) that the Court had issued the OSC and that, under the terms of the OSC, the Receiver and his representatives were prohibited from participating in or facilitating the EGMs that had been previously noticed for March 18 and 19, 2022, unless otherwise ordered by the Court. ECF 282.

The Receiver's Cayman counsel, KSG, received only one request for a Teams meeting link to the EGMs. That request was submitted by Mr. Michael Maloney on behalf of his client China AI Capital Limited. On March 17, 2022, KSG informed Mr. Maloney that in light of the OSC, the Receiver "would *not* be distributing any Teams meeting information for the EGMs." ECF 282.

In sum, the Receiver's involvement with the EGMs has been limited to seeking Cayman Court approval to call the EGMs and (after Cayman court approval was obtained) providing notice of the EGMs. The Receiver has ceased any involvement with the EGMs and awaits this Court's further instructions.

March 21, 2022
New York, NY

                              SEIDEN LAW GROUP LLP

                         By:  /s/ Amiad Kushner
                            Amiad Kushner
                            Andrew Sklar
                            Xintong Zhang
                            322 Eighth Ave, Suite 1704
                            New York, NY 10001
                            646-766-1914
                            akushner@seidenlawgroup.com
                            asklar@seidenlawgroup.com
                            xzhang@seidenlawgroup.com

                            *Counsel for Robert Seiden*
                            *Court-Appointed Temporary Receiver*
                            *for Link Motion Inc.*