```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/22/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

WAYNE BALIGA,

                                       Plaintiff,

                 -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI, ROLAND WU, and
ZEMIN XU,

                                   Defendants.
-----------------------------------------------------------------X

18-CV-11642 (VM) (VF)

**ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge**

Defendant Vincent Wenyong Shi brings this letter motion (ECF No. 306) requesting that certain "Sealed Documents,"[1] along with all supporting documents and any accompanying motions, be unsealed and publicly filed. For the reasons set forth below, Defendant's motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND[2]

In December 2018, Plaintiff sought the appointment of a receiver (ECF Nos. 1, 7), and on February 1, 2019, the Court appointed Robert W. Seiden, Esq., as the Receiver for Defendant Link Motion Inc. ("LKM") to, among other things, "preserve and safeguard [LKM's] assets" and "prevent waste, dissipation, or theft of assets to the detriment of investors."[3] See ECF No. 26 at

---

[1] Identified by Shi as ECF Nos. 27, 44, 74, 79, 99, 109, 118-20, and 255-56.

[2] The Court assumes the parties' familiarity with the facts of this case, which are recounted in the Report and Recommendation issued on August 10, 2022. See ECF No. 328.

[3] The Receiver removed Shi as Chairman of LKM in March 2019. See ECF No. 166 (Second Amended Complaint) ¶¶ 18, 75.

1

3. Lilin "Francis" Guo is the Receiver's agent in China, charged with undertaking activities in furtherance of the Receivership. See August 1, 2022 Hearing Transcript ("Tr.") (ECF No. 326) at 23, 81, 86; ECF No. 306 at 2. The Receiver had previously sought funding from Shi pursuant to the Receivership Order entered by the Honorable Victor Marrero. See ECF No. 26; ECF No. 309 at 1. Because Shi did not provide such funding, the Receiver sought "alternative funding" in the form of a Note Agreement with Guo.[4] See ECF No. 309 at 1-2; Tr. at 77-78, 86-87. The Note Agreement was the vehicle by which Guo was able to "personally loan[ ] money to fund the activities of the [R]eceivership," such as "litigation in mainland China designed to recover [LKM's] assets," and to otherwise "fund fees of lawyers, accountants, and other professionals that were trying to preserve [LKM's] assets." Tr. at 77-78, 86.

On May 26, 2022, Shi submitted the instant letter motion to unseal the Sealed Documents. See ECF No. 306. Those Sealed Documents were filed by the Receiver, or at the Receiver's request, and all relate to the activities of the Receivership. Id. at 1-2. On June 9, 2022, the Receiver filed a response, explaining that he did not oppose unsealing the documents, "[p]rovided that there is no risk to the physical safety of Mr. Guo or any of the receiver's other agents, and that the Receivership be allowed to redact personal or privileged information." ECF No. 309 at 3. The Receiver requested "additional time to review the Sealed Documents and to attempt to contact Mr. Guo." Id. On June 13, 2022, this Court granted the Receiver's request for additional time. ECF No. 310.

On July 8, 2022, the Receiver submitted a letter outlining the following three categories of documents that comprise the "Sealed Documents":

---

[4] The Court approved the Note Agreement on June 24, 2019. See ECF No. 71. The order describes the Note Agreement as "a compensation incentive agreement and promissory note between [LKM] and [Guo]." Id. In the words of the Receiver, the agreement provides that Guo would "lend money to LKM" and "have the right to convert th[at] debt into equity." Tr. at 87.

2

1. "Status reports, letters, and other written communications to the Court concerning the activities of the Receivership" ("Category 1 Documents");
2. "Detailed invoices submitted to the Court for work performed by the Receivership and Receiver's counsel in the United States and other jurisdictions since the Receiver's appointment in February 2019, as well as invoices of other professionals and agents who worked with counsel, including Mr. Guo" ("Category 2 Documents"); and
3. "Documents relating to Mr. Guo's court-approved note agreement (the 'Note Agreement') and any compensation provided to him thereunder" ("Category 3 Documents").[5]

See ECF No. 319 at 1-2.

On July 15, 2022, Shi reiterated his request that all of the Sealed Documents and accompanying filings be unsealed. See ECF No. 322. On August 1, 2022, the Court heard argument on the instant motion. See ECF No. 326.

## LEGAL STANDARD

There is a long-established "general presumption in favor of public access to judicial documents." Collado v. City of New York, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016) (citing Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006)). The Second Circuit has defined "judicial documents" as documents filed with a court that are "relevant to the performance of the judicial function and useful in the judicial process." Lugosch, 435 F.3d at 119 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995)); see also Lytle v. JPMorgan Chase, 810 F. Supp. 2d 616, 620-621 (S.D.N.Y. 2011). The presumption of access is "based on the need for federal courts . . . to have a measure of accountability and for the public to have

---

[5] To the Receiver's knowledge, the Sealed Documents relating to Mr. Guo's Note Agreement are ECF Nos. 74, 119, 120, and 255-56. See ECF No. 319 at 2 n.2.

confidence in the administration of justice." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995). Therefore, motions to seal documents must be "carefully and skeptically review[ed] . . . to [e]nsure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection. In re Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994). The Supreme Court has explained that "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 599 (1978) (citation omitted). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997) (citation omitted).

Under the federal common law presumption of access to court proceedings and records, a court must first determine whether "the documents at issue are indeed judicial documents" to which the presumption of access attaches. Lugosch, 435 F.3d at 119 (internal quotations omitted). If the documents at issue are judicial in nature, the court must then determine the weight of the presumption of access. Id. Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it," which include "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Id. at 120 (citation and internal quotation marks omitted). A party may overcome this presumption "by demonstrating that sealing will further other substantial interests such as a third party's personal privacy interests, the public's safety, or preservation of attorney-client privilege." Bernsten v. O'Reilly, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018) (citation and internal quotation marks omitted).

## DISCUSSION

### A. Category 1 Documents

The Receiver does not object to unsealing the documents in Category 1, "provided that information concerning the Note Agreement and Mr. Guo's compensation thereunder is redacted," because "public disclosure of such information may place Mr. Guo in jeopardy." ECF No. 319 at 2; see also Tr. at 72. Accordingly, the Receiver is directed to provide the Court, by no later than Monday, September 12, 2022: (1) proposed redactions to the Category 1 Documents; (2) copies of the unredacted documents; and (3) a letter explaining the basis for the proposed redactions. Following an *in camera* review of the proposed redactions, the Category 1 Documents will be unsealed and placed on the public docket.

### B. Category 2 Documents

The documents in Category 2—detailed invoices for work performed by the Receivership—will likely need to be reviewed, redacted, and made public "as part of the accounting process" to be ordered by the Court. Tr. at 71, 74, 86; ECF No. 319 at 2 n.4. Notably, on March 9, 2022, the Honorable Debra C. Freeman issued a Report and Recommendation, recommending that the Receiver be discharged and that the Receiver perform an accounting. See ECF No. 275 at 39-42; ECF No. 319 at 2 n.4. The Report and Recommendation and the parties' objections thereto are currently under consideration by Judge Marrero. See ECF Nos. 293-94, 299-300.

Defendant Shi agrees that the documents in this category will have to be "made public as part of the Receiver's accounting upon his discharge." ECF No. 322 at 1. Moreover, if Judge Marrero adopts Judge Freeman's recommendation, the Receiver, in all likelihood, will be required to publicly file copies of all invoices—the documents in Category 2. See Tr. at 71, 74,

5

86. Thus, as to the Category 2 Documents, the request to unseal is denied as premature, given that Judge Freeman's recommendation will necessitate the unsealing of those documents and that recommendation is still under consideration by Judge Marrero. Should that not turn out to be the case, Shi may renew his motion to unseal that category of documents.

### C. Category 3 Documents

The documents in this category relate specifically to Guo's court-approved Note Agreement. The Receiver opposes the unsealing of these documents out of concern that their disclosure would place the physical safety of Guo at risk. As the Receiver explains, Guo had feared that his safety in China would be jeopardized if he took actions to challenge Shi's takeover of LKM. See ECF No. 309 at 2. The Note Agreement is the source of Guo's ownership in shares of LKM, and the agreement and documents relating to it would detail the extent of Guo's equity interest.[6] Tr. at 77, 85-87. As Shi himself observes, the Note Agreement "was used by the Receiver to grant Mr. Guo a large equity position in [LKM]." See ECF No. 306 at 2; see also ECF No. 315 at 2.

The Receiver seeks to maintain the Note Agreement (and related documents) under seal because revealing Guo's ownership in LKM would have evidenced his having taken action against Shi. See Tr. at 75-76, 78-80. The Receiver claims that his concern for Guo's safety is justified based on the "sequence of events" that have unfolded. Id. at 75. Specifically, earlier this year, Guo had "wanted to call" an "extraordinary general meeting" to strip Shi "of whatever remaining powers" he had "over the operations of LKM." Id. at 75-76. "As part of the process of

---

[6] The Receiver clarified that Guo's stake is not "necessarily" in the "text of the [N]ote [A]greement," but that the agreement contains "a formula . . . that specifies how the debt under the [N]ote [A]greement is to be converted into equity." Tr. at 85. Pursuant to the agreement, there have been "a series of requests" to the Court "for equity to be issued" to Guo, such that one could determine from the documents "the number of shares" Guo has received. Id. at 85; see also id. at 86-87.

seeking Court approval to hold" that meeting, the Receiver, on March 22, 2022, publicly disclosed that "Guo had become the largest shareholder in LKM." See id. at 75; see also ECF No. 309 at 2 n.12. In April 2022, "within several weeks" of this disclosure, Guo "disappeared." See Tr. at 75.

Since around April 2022, the Receiver has been unable to reach Guo despite repeated efforts to contact him. ECF No. 309 at 2-3; ECF No. 319 at 1; Tr. at 79 (Receiver stating that he has attempted to track down Guo through "numerous channels" including "contacts in China" and Guo's family). According to the Receiver, Guo's lack of communication with his office is particularly unusual and concerning because, throughout the "several years" that Guo has worked with the Receivership, Guo has always "remained in close contact" with the Receiver and his office. ECF No. 309 at 3. Additionally, the Receiver notes that Guo has not posted anything on social media since April 16, 2022, "roughly three weeks after" the disclosure that Guo is LKM's largest shareholder. Id. The Receiver thus fears that Guo has "disappeared or been kidnapped." Id. In short, the Receiver is concerned that "[i]n light of Mr. Guo's sudden and unexplained disappearance," the "public disclosure of the Note Agreement or information concerning Mr. Guo's compensation" could "jeopardize or gravely aggravate Mr. Guo's safety." ECF No. 319 at 2.

First, there is no dispute that the documents in Category 3 are "judicial documents" to which the presumption of public assess applies. Bernsten, 307 F. Supp. 3d at 166. The Sealed Documents in this category were filed with the Court "by the Receiver or at the Receiver's request to report the Receiver's progress." ECF No. 306. The Second Circuit has held that documents submitted by a receiver updating the court on the status of the receivership are judicial documents because they are "relevant to the performance of the judicial function and

7

useful in the judicial process." See Amodeo, 44 F.3d at 145-46. Moreover, because the documents relate to matters that were adjudicated by the Court, "the presumption of public access" is accorded "great weight." Bernsten, 307 F. Supp. 3d at 167. Nevertheless, "[a] party may overcome the presumption of access by demonstrating that sealing will further other substantial interests." Id. at 168. Here, the Receiver has overcome that presumption as it relates to the Category 3 Documents.

Despite having been in active communication with the Receiver for several years during his diligent efforts to restore value to LMK, all of Guo's communications abruptly ceased shortly after the public disclosure that he had become the largest equity holder in LKM. Tr. at 75-77, 79; ECF No. 309 at 3. According to Shi, "[t]he most plausible explanation" for Guo's failure to communicate with the Receiver is that such communications "no longer serve[ ]" Guo's personal interests because he has "obtained all that he wanted from the Receiver." ECF No. 315 at 2; see also Tr. at 71-72. But Shi's purported explanation for Guo's sudden and unexplained disappearance is belied by Guo's track record of "very, very close contact" with the Receiver, "on a daily or hourly basis" for a period of several years. See Tr. at 75. Moreover, Guo has been "pursuing recovery" on behalf of LKM and the Receivership for several years, and he has done so by using "his own money" to fund the activities of the Receivership. Id. at 77-78. Additionally, as the Receiver explains, Guo was already a shareholder of LKM before the announcement convening an extraordinary general meeting, so Guo "could have left [the Receiver] a long time ago" because "he had been accumulating shares over time." Id. at 77.

Given Guo's sudden and unexplained disappearance, there is a compelling countervailing interest in maintaining the documents in this category sealed, in order to protect against potential harm to Guo. See United States v. Caicedo Velandia, No. 10-CR-00288-01, 2019 WL 6913524,

8

at *2 (E.D.N.Y. Dec. 19, 2019) (holding that in instances where "documents contain information that, if made public, would place certain individuals in danger . . . courts routinely permit the continued sealing of information when its release threatens the safety of those involved") (collecting cases); Walker v. City of New York, No. 15-CV-500 (NG) (ST), 2017 WL 2799159, at *6 (E.D.N.Y. June 27, 2017) (applying Lugosch and granting defendants' request to file certain papers under seal in order to protect identity of a witness, finding that the safety of the witness "constitute[d] a 'higher value'"). Public disclosure of the Note Agreement now would reveal the specific percentage of Guo's equity interest in LKM. See Tr. at 75-80, 85. That information could further jeopardize Guo's safety, because it would presumably demonstrate that Guo had acted against Shi. Accordingly, the Receiver has met his burden of presenting a compelling countervailing factor—the potential for physical harm to Guo—that overcomes the presumption of public access to the Category 3 Documents.

**CONCLUSION**

For the reasons set forth above, Defendant's motion is **GRANTED in part** and **DENIED in part**. In particular, it is hereby ordered that:

(1) The Category 1 Documents be unsealed, following this Court's *in camera* review of the Receiver's proposed redactions, to be provided to the Court by email no later than Monday, September 12, 2022;

(2) The Category 2 Documents will remain under seal at this stage, as these documents may be released following adjudication of the pending Report and Recommendation (ECF No. 275); and

(3) The Category 3 Documents will remain sealed.

The Clerk of Court is respectfully directed to close the motion at ECF No. 306.

**SO ORDERED.**

DATED:   New York, New York
         August 22, 2022

_____
VALERIE FIGUEREDO
United States Magistrate Judge