UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/25/22
```

---

WAYNE BALIGA,

                    Plaintiff,

          - against -

LINK MOTION INC. (F/K/A NQ MOBILE
INC.), VINCENT WENYONG SHI, ROLAND
WU, and ZEMIN XU,

                    Defendants.

---

18 Civ. 11642 (VM)


DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

     Plaintiff Wayne Baliga ("Baliga") brings this suit

against Link Motion, Inc. (f/k/a/ NQ Mobile Inc.) ("LKM"),

and several of LKM's executives and directors, including

Vincent Wenyong Shi ("Shi"), Roland Wu ("Wu"), and Zemin Xu

("Xu," collectively with Shi and Wu, "Individual Defendants,"

and together with LKM, "Defendants"). (See "Second Amended

Complaint" or "SAC," Dkt. No. 166.) The matter was referred

to Magistrate Judge Debra Freeman for general pretrial

issues, including scheduling, discovery, non-dispositive

pretrial motions, and settlement. (See Dkt. No. 91.)

     Presently before the Court are three separate issues.

First, Baliga and Shi filed objections, (see "Baliga Obj.,"

Dkt. No. 293; "Shi Obj.," Dkt. No. 294), to Magistrate Judge

Freeman's Report and Recommendation, dated March 29, 2022,

see Baliga v. Link Motion Inc., No. 18 Civ. 11642, 2022 WL

1

2531535 (S.D.N.Y. Mar. 9, 2022) (hereinafter "Baliga R&R").[1] In the Baliga R&R, Magistrate Judge Freeman granted in part and denied in part Shi's motion to dissolve the preliminary injunction and discharge the court-appointed temporary receiver, Robert Seiden ("Receiver"). Second, before Shi and Baliga filed their objections to the R&R, Shi moved for an order to show cause to enjoin the Receiver from convening shareholder meetings to vote on a new board of directors for LKM. (See Dkt. No. 276-6.) Third, the parties' disagreement regarding the conversion of LKM's American Depositary Receipts ("ADRs") into common stock in LKM.[2] (See Dkts. Nos. 304, 305, 307.)

For the reasons stated below, the Court adopts the recommendations in the Baliga R&R in their entirety. As for Shi's motion for an injunction, the Court defers consideration on this issue pending additional briefing from the parties regarding how this issue is impacted by the disappearance of a major shareholder, Lilin "Francis" Guo,

---

[1]   A copy of which is attached and incorporated herein.

[2]   An ADR is a "security that represents a share of a non-U.S. company that is held by a United States depositary bank outside the United States." Baliga R&R, 2022 WL 2531535, at *2 n.2 (quoting Investor Bulletin: American Depositary Receipts, U.S. SECURITIES AND EXCHANGE COMMISSION ("SEC"), (August 2012), https://www.sec.gov/investor/alerts/adr-bulletin.pdf.) An ADR is a "certificate that evidences an ownership interest in [American Depositary Shares] which, in turn, represent an interest in the shares of a non-U.S. company that have been deposited with a U.S. bank." Id.

who requested the that the Receiver convene the shareholder meetings. Lastly, the Court directs the Receiver to take no action regarding the conversion of ADRs in LKM to common stock.

## I.   BACKGROUND

### A. FACTUAL AND PROCEDURAL HISTORY

#### 1. Baliga's Initial Complaint

Baliga brought this action against LKM, Shi, and several of LKM's executives and directors.[3] (See "Complaint" Dkt. No. 1.) As a holder of ADSs in LKM, Baliga appeared to plead derivative claims against the Individual Defendants for breaches of their fiduciary duty, as well as unjust enrichment, (see id. ¶¶ 38-41, 42-45), and claims against all Defendants for securities violations, (see id. ¶¶ 46-49, 50-54).

Immediately after filing the Complaint, Baliga moved for a temporary restraining order, as well as an order to show cause for a preliminary injunction, and the appointment of the Receiver to protect LKM's assets. (See Dkt. No. 63.) Based on Baliga's representations, and absent opposition from Defendants, the Court granted the proposed Preliminary Injunction and Receivership Order. (See "Receivership Order,"

---

[3]  The individual defendants named in the Complaint were Shi, Jia Lian, and Xioa Yu. However, the Individual Defendants named in the Second Amended Complaint, (see "SAC," Dkt. No. 166), are Shi, Wu, and Xu.

Dkt. No. 26.) The preliminary injunction component of the Receivership Order was largely focused on enjoining the Individual Defendants from looting LKM's assets. (See id. at § I(1).) The Receivership Order also appointed the Receiver "to protect the status quo of [LKM], to prevent waste, dissipation, or theft of assets to the detriment of investors, and to assure timely and objective analysis of the financial condition of [LKM]." (Id. at § II(2).)

On June 11, 2019, the Court issued a Decision and Order dismissing Baliga's securities claims because he failed to plead that he purchased or sold LKM's ADSs, but the Court granted leave to amend the Complaint to correct this deficiency. (See Dkt. No. 64 at 18-19.) On June 21, 2019, Baliga filed a First Amended Complaint ("FAC"), (see Dkt. No. 68), which was materially identical to the Complaint but with the addition of allegations regarding Baliga's ADS purchases, (see id. ¶ 32).

2. Baliga's Second Amended Complaint

On August 13, 2019, the Court referred to Magistrate Judge Freeman the parties' anticipated motions regarding threshold issues in this case. (See Dkt. No. 91.) Subsequently, and several months after Baliga filed the FAC, non-party China AI Capital Limited ("China AI") moved to intervene in this action. (See Dkt. Nos. 111, 122, 127, 130,

131.) Among other arguments, China AI challenged Baliga's standing to assert derivative claims. China AI asserted that Cayman Islands law controls the issue of standing in this case, since LKM is incorporated there. In turn, Baliga lacked standing, according to China AI, because Cayman Islands law permits derivative actions only by registered shareholders, and Baliga's ADSs meant he was not a registered shareholder but instead a beneficial shareholder.[4] (See Dkt. No. 129 at 7-8.)

Magistrate Judge Freeman denied China AI's motion to intervene, but she noted that there was now a question about Baliga's standing to bring derivative claims. (See Dkt. No. 163 at 51.) She subsequently directed Baliga to file the SAC for the purpose of "clarifying which of his asserted claims [were] derivative claims, and which [were] direct claims." (Id. at 53.)

On October 5, 2020, Baliga filed the SAC but substantially altered the pleading from the Complaint and FAC. (See SAC.) Importantly, Baliga discarded his fiduciary duty claim against the Individual Defendants. He still asserted an unjust enrichment claim against Shi, but Baliga altered the claim to allege that Shi unjustly enriched himself

---

[4]   A registered shareholder (or record holder) holds shares directly with a company. Whereas a beneficial owner holds shares indirectly through a bank or broker-dealer.

"at the expense of and to the detriment of" LKM and Baliga.
(See id. ¶¶ 156-59.) Ultimately, Baliga made his securities
claims the focal point of the SAC, and asserted those claims
against all Defendants. (See SAC ¶¶ 140-44, 145-50.)

Magistrate Judge Freeman held a teleconference with the
parties on October 15, 2020, to discuss the SAC. See Baliga
R&R, 2022 WL 2531535, at *4. After asking Baliga's counsel to
answer several clarifying questions about the SAC's revised
allegations, Magistrate Judge Freeman determined that Baliga
now sought to assert only direct claims. See id.

B. THE REPORT AND RECOMMENDATION

Once the SAC became the operative pleading, and Baliga
asserted only direct claims, Shi filed a motion to dissolve
the preliminary injunction and to discharge the Receiver.
(See Dkt. No. 230.) Baliga filed his opposition on July 20,
2021, (see Dkt. No. 241), and Shi filed a reply on August 2,
2021, (Dkt. No. 246). At Magistrate Judge Freeman's request,
the parties filed supplemental submissions on August 25, 2021
(Dkt. No. 254), and September 15, 2021 (Dkt. No. 258).

On March 9, 2022, Magistrate Judge Freeman issued her
recommendation that Shi's motion to dissolve the preliminary
injunction and discharge the Receiver be granted in part and
denied in part. See Baliga R&R, 2022 WL 2531535. Specifically,

6

the  Baliga  R&R  enumerated  the  following  overarching

recommendations:

> (1)   find that it had subject-matter jurisdiction over
> this action when filed, and that the [Receivership
> Order] (Dkt. 26) was therefore duly authorized when
> issued;
>
> (2)   find that the filing of Baliga's Second Amended
> Complaint on October 5, 2020, by which Baliga
> abandoned his prior derivative claims and instead
> chose to plead direct claims against the Company,
> constituted a material change in these proceedings
> that warrants the dissolution of the preliminary
> injunction and the discharge of the Receiver;
>
> (3)   dissolve the preliminary injunction, effective
> immediately;
>
> (4)   discharge the Receiver, after the Receiver submits,
> by a date certain, a full and final accounting that
> shows the activities performed during the period of
> his appointment and the costs thereof;
>
> (5)   require the Company to pay the reasonable costs
> incurred by the Receiver in the performance of the
> duties authorized by the Court up to October 5,
> 2020, and give the parties the opportunity to brief
> the question of whether the cost of the Receiver's
> activities after that date should be borne by the
> Company or Baliga; and
>
> (6)   direct that the Receiver not be required to unwind
> any activities that have already been taken on the
> Company's behalf, but, at the same time, direct
> that the Receiver not seek any extraordinary
> actions from the Company's Board, during the
> remaining period of the receivership.

Baliga R&R, 2022 WL 2531535, at *20.

The parties filed timely objections to the Baliga R&R.

Baliga objects to the recommendations that (i) the Receiver

be discharged and (ii) that Baliga could be charged for costs

of the Receiver. (See Baliga Obj. at 2.) Shi objects to the following recommendations: (1) the Court had subject-matter jurisdiction over this action when filed; (2) LKM should pay any costs incurred by the Receiver; (3) none of the Receiver's actions should be unwound; and (4) an unenumerated recommendation that he should not be reinstated to his prior positions as Chairman of the Board. (See Shi Obj. at 1-3.)

C. SHI'S MOTION TO ENJOIN SHAREHOLDER MEETINGS

On March 15, 2022, Shi filed a motion for an order to show cause to enjoin the Receiver from convening LKM shareholder meetings called extraordinary general meetings ("EGMs"). (See Dkt. No. 276-6.) While the parties dispute several facts around whether the EGMs were properly authorized, it suffices to note that the Receiver petitioned a Caymans Islands court for permission to convene the EGM, at the request of one of LKM's shareholders, Lilin "Francis" Guo ("Guo"). (See Dkt. No. 285-3 ¶ 18 (stating, in the Receiver's petition to the Cayman Islands court, that "Mr. Guo requested [the Receiver] call" the EGM).) The Receiver's petition stated that Guo's shares in LKM "represent approximately 40% of the voting rights, but only approximately 13% of the *par value* of all issued shares," and he therefore could not call for a shareholder meeting on his own. (Id. ¶ 17.) On February 23, 2022, the Cayman Islands court approved the Receiver's

application for authority to convene the EGM. (See Dkt. No. 271.) However, since April 2022, the Receiver has been unable to reach Guo. The Receiver has made several attempts to contact Guo through numerous channels, but Guo has not responded and his whereabouts are unknown. (See Dkt. No. 309 as 3; Dkt. No. 319 at 1; Dkt. No. 326 at 79:18-23.)

## II.    **LEGAL STANDARD**

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Pursuant to Federal Rule of Civil Procedure 72(b)(2), a party may make "specific written objections to the proposed findings and recommendations" within fourteen days of being served a copy of the magistrate judge's recommended disposition. Fed. R. Civ. P. 72(b). However, a district court evaluating a magistrate judge's report may adopt those portions of the report to which no "specific written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law. Id.; Thomas v. Arn, 474 U.S. 140, 149 (1985). A district court is not required to review any portion of a magistrate judge's report that is not the subject of an objection. See Thomas, 474 U.S. at 149.

9

When a party does file an objection, a district court must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). But "an unsuccessful party is not entitled as of right to a de novo review by the judge of an argument never seasonably raised before the magistrate." Minto v. Decker, 108 F. Supp. 3d 189, 192 (S.D.N.Y. 2015) (quotation omitted). In other words, when an objection "simply reiterates the original arguments, the Court will review the Report strictly for clear error." George v. Prof'l Disposables Int'l, Inc., 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016) (quotation omitted).

By that same token, "a district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate." Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008). Consideration of new arguments is "disfavored absent a 'most compelling reason' for the failure to present" the arguments in the first instance. In re Consol. RNC Cases, No. 127, 2009 WL 130178, at *10 (S.D.N.Y. Jan. 8, 2009) (quoting Housing Works, Inc. v. Turner, 362 F. Supp. 2d 434, 439 (S.D.N.Y. 2005)). Review of new grounds for relief or new legal arguments not raised before the magistrate judge "would reduce the magistrate's work to something akin to a meaningless dress rehearsal."

<u>Michalow v. E. Coast Restoration & Consulting Corp.</u>, No. 09
Civ. 5475, 2018 WL 1559762, at *6 (E.D.N.Y. Mar. 31, 2018)
(quoting <u>RNC Cases</u>, 2009 WL 130178, at *10).

### III.   <u>DISCUSSION</u>

A. <u>SHI'S OBJECTIONS</u>

Shi raises several arguments not presented to Magistrate
Judge Freeman. In particular, Shi contends for the first time
in his objections that: (1) Baliga did not assert his federal
securities claims on a derivative basis, (<u>see</u> Shi Obj. at 9-
12); (2) Baliga lacked standing to bring a derivative
securities claim under Rule 23.1 of the Federal Rules of Civil
Procedure, (<u>see</u> <u>id.</u> at 21-26); (3) Baliga's federal
securities claims could not show a substantial likelihood of
success where they were dismissed for failure to plead his
purchases, (<u>see</u> <u>id.</u> at 26-29); and (4) Shi's removal as a
director was null and void, (<u>see</u> <u>id.</u> at 34-25). Shi fails to
present any reason, let alone a "most compelling" reason, for
why he did not raise these arguments before Magistrate Judge
Freeman. Therefore, it is inappropriate for the Court to
consider these arguments as grounds for setting aside
Magistrate Judge Freeman's findings. See <u>Michalow</u>, 2018 WL
1559762, at *6; <u>RNC Cases</u>, 2009 WL 130178, at *10.

Shi advances three additional objections that merely
rehash arguments that Magistrate Judge Freeman rejected.

11

Specifically, Shi argues that (1) Baliga lacked Article III standing to assert his derivative securities claims in the Complaint, (see Dkt. No. 272 at 3-4 (submission before Baliga R&R); Shi Obj. at 12-14); (2) Baliga lacked "derivative standing" to bring his derivative securities claims in the Complaint, (see Dkt. No. 272 at 1-6 (submission before Baliga R&R); Shi Obj. at 14-21); and (3) the Receiver's authority should be void *ab initio* and the Receiver's actions should be unwound, (see Dkt. No. 254 at 1-3 (submission before Baliga R&R); Shi Obj. at 31-34).

As to Shi's objections regarding Baliga's standing, the Court agrees with Magistrate Judge Freeman's thorough reasoning that Baliga had standing to bring his derivative securities claims, and that the Court therefore possessed subject matter jurisdiction over this matter. See Baliga R&R, 2022 WL 2531535, at *11-14. Furthermore, Magistrate Judge Freeman properly found that since the Court possessed subject matter jurisdiction over Baliga's derivative securities claims, the Receivership Order should not be vacated *ab initio*. See id. at *14. For the reasons stated in the Baliga R&R, the Court is unpersuaded by Shi's rehashed arguments, and concludes that Magistrate Judge Freeman's findings were not clearly erroneous.

Shi's final objection is to Magistrate Judge Freeman's recommendation that LKM should bear the cost of the Receiver up to October 5, 2020 — when Baliga filed the SAC and removed his derivative fiduciary duty claims — and that LKM could bear any costs of the Receiver after October 5, 2020. The Court addresses this objection further below, along with Baliga's analogous objection that LKM should fully bear the costs of the receivership. (See Baliga Obj. at 8-9.)

B. <u>BALIGA'S OBJECTIONS</u>

1. <u>Continuation of the Receivership Order</u>

Baliga objects to the recommendation that the Receiver should be discharged because, he argues, the Receivership Order is needed to help protect against the dissipation of LKM's assets. (<u>See</u> Baliga Obj. at 3.) Among several other factors, a party seeking a preliminary injunction must show irreparable harm. <u>See</u> <u>RiseandShine Corp. v. PepsiCo, Inc.</u>, 41 F.4th 112, 119 (2d Cir. 2022). A movant will fail to establish irreparable harm where money damages adequately compensate any alleged injury. <u>See</u> <u>Register.com, Inc. v. Verio, Inc.</u>, 356 F.3d 393, 404 (2d Cir. 2004) ("If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief."); <u>Wisdom Imp. Sales Co. v. Labatt Brewing Co.</u>, 339 F.3d 101, 113-14

(2d Cir. 2003) ("[O]nly harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.")

Simultaneously, the "purpose of a receivership is to protect a party's interest in property pending resolution of a dispute over ownership or control between it and another party with a claim to the property." Zyppah, Inc. v. Ace Funding Source, LLC, No. 19 Civ. 1158, 2019 WL 6647912, at *2 (S.D.N.Y. Nov. 6, 2019) (quoting Varsames v. Palazzolo, 96 F. Supp. 2d 361, 366 (S.D.N.Y. 2000). "[T]he appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." Rosen v. Siegel, 106 F.3d 28, 34 (2d Cir. 1997) (internal alterations and quotation omitted). Although the Securities Act of 1933 and the Securities Exchange Act of 1934 do not explicitly provide district courts with the authority to appoint trustees or receivers, "courts have consistently held that such power exists." Eberhard v. Marcu, 530 F.3d 122, 131 (2d Cir. 2008) ("District courts possess broad power to remedy violations of federal securities laws.").

As noted above, Magistrate Judge Freeman found that Baliga no longer asserts shareholder derivative claims but instead maintains only direct securities claims. Baliga R&R,

2022 WL 2531535, at *18. The <u>Baliga R&R</u> aptly notes that, under the Exchange Act, Baliga is entitled to recover losses resulting from decisions to buy or sale his ADSs, but not losses resulting from holding (i.e., not trading) his ADSs. <u>Id.</u> (citing <u>Gurgary v. Winehouse</u>, 235 F.3d 792, 799 (2d Cir. 2000)). As a result, Baliga's potential losses are circumscribed. <u>Id.</u> Additionally, Magistrate Judge Freeman found that Baliga failed to show how money damages would be insufficient to compensate him for injury caused by the Defendants' alleged securities fraud. <u>Id.</u>

Baliga objects to Magistrate Judge Freeman's recommendation on the grounds that she incorrectly concluded that LKM has sufficient funds to pay the damages Baliga asserts. (<u>See</u> Baliga Obj. at 4-8.) The Court is unconvinced that Baliga has adequately addressed why the Court should employ the drastic remedy of continuing the Receivership Order. Fundamentally, Baliga cannot show irreparable injury because he now alleges money damages. "Irreparable injury is one that cannot be redressed through a monetary award." <u>Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.</u>, No. 13 Civ. 1725, 2014 WL 4054240, at *7 (S.D.N.Y. Aug. 15, 2014) (quoting <u>JSG Trading Corp. v. Tray-Wrap, Inc.</u>, 917 F.2d 75, 79 (2d Cir. 1990)). Thus, "it is settled law that when an injury is compensable through

15

money damages there is no irreparable harm." <u>Id.</u> (quoting <u>JSG</u>
<u>Trading</u>, 917 F.2d at 79). Furthermore, Baliga fails to address
why any such judgment against LKM cannot be satisfied through
joint and several liability, given that he also asserts
securities claims against the Individual Defendants. (<u>See</u> SAC
¶¶ 146-50); 15 U.S.C. § 78t(a) (establishing joint and several
liability for securities claims). Therefore, the Court agrees
with Magistrate Judge Freeman's recommendation that the
Receivership Order should be dissolved, and the Receiver
discharged after a final accounting.

2. <u>Objections Regarding Costs of the Receivership</u>

The Court turns to the parties' remaining objections
regarding who should bear the costs of the receivership.
Magistrate Judge Freeman relied on <u>Pioche Mines Consolidated,</u>
<u>Inc. v. Dolman</u>, 333 F.2d 257 (9th Cir. 1964), to conclude
that Baliga should bear costs of the receivership that "would
not have arisen but for [the continuation of the Receiver's
appointment after October 5, 2020]," but even as to the period
after October 5, 2020, "expenses that the corporation would
have had to incur had there been no receiver, and expenses
that confer[red] a genuine benefit upon the corporation,
should be charged to it." <u>Baliga R&R</u>, 2022 WL 2531535, at *19
(quoting <u>Pioche Mines</u>, 333 F.2d at 276). The caveat to this
recommendation, however, is that Magistrate Judge Freeman

16

also found that the parties should have an opportunity to brief the question of "whether, for activities performed by the Receiver after [October 5, 2020], such costs should be borne by Baliga." Id.

The parties have now both briefed this issue in their objections to the Baliga R&R. Shi contends that the costs incurred by the Receiver, before or after October 5, 2020, should be charged to Baliga and not LKM. (See Shi Obj. at 29.) Shi primarily relies on the notion that the Receiver was void from the start, which the Court has already addressed above and rejected. (See id.) Shi next argues that Pioche Mines supports his position that LKM should not bear any costs of the receivership because the Pioche Mines court found that the receiver in that case was appointed erroneously. (See id. at 30.) On the other hand, Baliga asserts that Pioche Mines applies where a receiver was wrongfully appointed, and that the Receiver in this case was duly appointed. (See id.) He argues that "the general rule is that receivership fees and expenses 'are a charge upon the property administered.'" (Baliga Obj. at 9 (quoting Netsphere, Inc. v. Baron, 703 F.3d 296, 311 (5th Cir. 2012) (quotation omitted)).)

Shi and Baliga's arguments miss the mark. As addressed above, the Court finds that the Receiver was duly appointed up to October 5, 2020, but after that date there was no longer

17

a basis for the Receiver because Baliga no longer asserted any derivative claims. Baliga R&R, 2022 WL 2531535, at *17-19. In this regard, the Court finds that October 5, 2020, is the appropriate dividing line after which there was no proper basis for the appointment of the Receiver. The reasoning in Pioche Mines is relevant to whether Baliga or LKM should be charged for the Receiver's costs after October 5, 2020. Id. at 19. Therefore, Pioche Mines does not support Shi's argument that Baliga should be charged the costs of the Receiver for the period up to October 5, 2020.

The Court is also unpersuaded by Baliga's argument that LKM should be charged costs for the Receiver after October 5, 2020. Baliga asserts that Magistrate Judge Freeman misread or misquoted Pioche Mines because the Ninth Circuit found that a court has discretion to charge a receiver's expenses "either to the corporation or to the party who *wrongfully obtained* the receiver's appointment." (See Baliga Obj. at 9). Ultimately, Baliga contends that he did not act in bad faith when moving to appoint the Receiver, and thus the Receiver was not "wrongfully appointed." (See Baliga Obj. at 9).

Courts recognize that a receiver's expenses and fees are generally charged to the property administered when the "receivership is proper," but when it is improper "the party that sought the receivership at times has been held

18

accountable for the receivership fees and expenses." Netsphere, 703 F.3d at 311-12; Bowersock Mills & Power Co. v. Joyce, 101 F.2d 1000, 1003 (8th Cir. 1939) ("[W]here the appointment of the receiver was irregular or inequitable . . . the party who procured the appointment, and not the receivership fund, is liable for the expenses of the receivership.") In light of this rule, Baliga "misinterprets the meaning of 'wrongfully obtained,'" which "means that the receivership was improper, not that the party requested the receivership in bad faith." CFTC v. Frankwell Bullion Ltd., 99 F.3d 299, 306 (9th Cir. 1996). Therefore, the Court agrees that Baliga should bear costs of the receivership that "would not have arisen but for [the continuation of the Receiver's appointment after October 5, 2020]," but even as to the period after October 5, 2020, "expenses that the corporation would have had to incur had there been no receiver, and expenses that confer[red] a genuine benefit upon the corporation, should be charged to it." Baliga R&R, 2022 WL 2531535, at *19 (quoting Pioche Mines, 333 F.2d at 276).

Lastly, Shi argues that Baliga and the Receiver cannot establish that the costs of the receivership would have been incurred without the receivership or that there was any genuine benefit conferred to LKM. Issues about expenses LKM would have incurred had there been no receiver, and expenses

that conferred a genuine benefit upon LKM, are more appropriately deferred until there is an accounting of the Receiver's costs.

For the above reasons, and for the reasons set forth in the Baliga R&R, the Court fully adopts Magistrate Judge Freeman's recommendations as to the motion to dissolve the Receivership Order and discharge the Receiver.

C. PRELIMINARY INJUNCTION

As noted above, Shi moved to enjoin the Receiver from convening EGMs during which LKM shareholders were to vote on resolutions to remove and appointment directors to LKM's board. (See Dkt. No. 267-6.) At Guo's request, the Receiver petitioned a Cayman Islands court for permission to convene the EGMs. (See Dkt. No. 285 at 13; Dkt. No. 285-3 ¶¶ 17-18.) The Cayman Islands court granted the request on February 23, 2022. (See Dkt. No. 271.) However, the Receiver has been unable to reach Guo since April 2020, and it is unclear whether there remains a basis to convene the EGMs. Therefore, prior to ruling on the motion, the Court finds it appropriate for the parties to address whether Guo's disappearance renders Shi's motion to enjoin the EGMs moot.

D. CONVERSION OF LKM ADRs TO COMMON STOCK

The final issue before the Court is the parties' dispute about whether to permit shareholders to convert their ADRs

into ADSs. (See Dkt. Nos. 304, 305, 307.) On May 26, 2022, the Receiver notified the Court that Deutsche Bank Trust Company Americas ("Deutsche Bank") terminated the deposit agreement ("Deposit Agreement") between LKM and Deutsche Bank. (See Dkt. No. 304.) The Receiver explained that, pursuant to the Deposit Agreement, for up to six months after the termination of the Deposit Agreement, ADR holders have a right to surrender their ADRs and take possession of the underlying ADSs in LKM. (See id.) This six-month period is set to expire on October 20, 2022. (See id.) The Receiver added that ADR holders have contacted him for permission and guidance on how to convert their ADRs into LKM common stock. (See id.) Shi argues that the conversion of ADRs into common stock is beyond the Court's jurisdiction, (see Dkt. No. 305), while Baliga argues that permitting ADR holders to convert their shares would be part of maintaining the status quo prior to discharging the Receiver, (see Dkt. No. 307).

The Court previously addressed a similar issue when Baliga sought to convert his ADSs into LKM common shares. (See Dkt. No. 252 (overruling Baliga's objections to Magistrate Judge Freeman's ruling).) As the Court recognized then, courts are limited to deciding matters that "affect the rights of litigants *in the case before them*," North Carolina v. Rice, 404 U.S. 244, 246 (1971) (emphasis added), which

means federal courts do not have jurisdiction to adjudicate issues irrelevant to the substantive claims at hand, see Ass'n of Car Wash Owners Inc. v. City of New York, 911 F.3d 74, 85 (2d Cir. 2018). In turn, the Court rejected Baliga's arguments on the basis that he did not seek to effectuate the Receivership Order but actually "sought vindication of the Deposit Agreement between [LKM] and Deutsche Bank, which he argue[d] afford[ed] him 'the legal right to convert his shares.'" (See Dkt. No. 252 at 5.)

The rationale in the Court's prior order applies to the question of whether to permit ADR holders to convert their ADRs to common stock. Whether ADR holders are permitted to convert their ADRs is not germane to the claims Baliga is litigating. As the Court previously noted, "without an associated, justiciable dispute, courts are not authorized to answer legal questions." (Id. at 6 (citing In re Franchise Servs. of N. Am., Inc., 891 F.3d 198, 205 (5th Cir. 2018) ("But this does not license us to answer a question of law divorced from the facts of the case before us and broader than necessary to resolve that case.")).) Accordingly, the Court directs the Receiver to take no action on this issue.

## IV.   <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that, substantially for the reasons sets forth in the Report and Recommendation of Magistrate Judge Debra Freeman ("R&R," Dkt. No. 275), the Court adopts the R&R in its entirety as the Court's decision on the motion to dissolve the preliminary injunction and discharge the receiver filed by Defendant Wenyong Shi ("Shi") (Dkt. No. 227); and it is further

**ORDERED** that the objections from Plaintiff Wayne Baliga (Dkt. No. 293) and Defendant Vincent Wenyong Shi (Dkt. No. 294) are **DENIED**; and it is further

**ORDERED** that, within 30 days of the date of this order, the parties shall file a proposed schedule for conducting an accounting of the receivership prior to discharging the receiver, Robert W. Seiden ("Receiver"); and it is further

**ORDERED** that, within 14 days of the date of this order, the parties and the Receiver shall file separate letters, not to exceed three pages, that address the extent to which the disappearance of shareholder Lilin "Francis" Guo impacts whether the Receiver can convene a meeting of the shareholders in the defendant company, Link Motion Inc. ("LKM"); and it is further

23

**ORDERED** that the Receiver shall take no action regarding the conversion of American Depositary Receipts in LKM to common stock in LKM.

**SO ORDERED.**

Dated:     August 25, 2022
           New York, New York

_____
          Victor Marrero
          U.S.D.J.