# Robert W. Seiden

Court-Appointed Temporary Receiver for Link Motion Inc.
Pursuant to The Honorable Judge Victor Marrero of the
United States District Court, Southern District of New York

Robert W. Seiden, Esq. **|** The Seiden Group
469 7th Avenue, 5th Floor
New York, New York 10036
Tel: (646) 766-1724
Email: rseiden@seidenlegal.com

**VIA FAX (212) 805-6382**
Hon. Victor Marrero
Suite 1040
United States Courthouse
500 Pearl Street
New York, New York 10007

February 20, 2019

**Re: Wayne Baliga v. Link Motion Inc. et al. 1:18-cv-11642**

Dear Honorable Judge Marrero,

    I look forward to serving this Court and your Honor as the Temporary Receiver of Link Motion Inc. I write to you pursuant to your Honor's February 1, 2019 Oder to request approval to retain the law firm Kobre & Kim to perform certain work on behalf of Link Motion Inc. (or the "Company") to ensure your Honor's orders are complied with and that the Company's status quo is preserved. Attached to this letter, please find the proposed engagement agreement that the Receiver seeks approval of.

    Because the work that Kobre & Kim will be doing includes the filing of an ex-parte Mareva injunction to freeze Company bank accounts in Hong Kong (see page two, section 5 of the attached engagement agreement), I respectfully request that this engagement agreement be approved as soon as possible and the engagement agreement itself be kept confidential at this time in order to prevent giving the Individual Defendants notice of the planned ex-parte injunction request, which would allow them the opportunity to further transfer assets and withdraw cash from the very bank accounts that Kobre and Kim will be moving to freeze (if the Individual Defendants have not already taken such illegal actions).

    Please do not hesitate to contact me via email or telephone if your honor wishes to discuss this request in more detail.

Respectfully submitted,


Robert W. Seiden, Esq.
Court-Appointed Temporary Receiver for
Link Motion Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

       Plaintiff,
  -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI,
JIA LIAN,
XIAO YU,

       Defendants,
  -and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

       Nominal Defendant.

1:18-cv-11642

**ORDER**

On February 20, 2019, the Temporary Receiver in this action (the "Receiver") submitted a letter to the Court requesting approval of an engagement agreement in order to retain the law firm Kobe & Kim LLP ("Kobre & Kim") on behalf of Link Motion Inc. (the "Company") in order to provide certain legal services for the Company in Hong Kong and the People's Republic of China. I have reviewed the Receiver's submission, and, with good cause appearing, it is hereby:

ORDERED THAT, the request is approved, and the Receiver may retain Kobre & Kim to perform work on behalf of the Receiver and the Company, until such time as the Receiver deems appropriate or until further order from this Court.

**SO ORDERED.**

Dated: February 20, 2019
    New York, New York

                _____
                Hon. Victor Marrero
                United States District Judge

# KOBRE & KIM

ICBC TOWER, 6TH FLOOR
3 GARDEN ROAD
CENTRAL, HONG KONG
WWW.KOBREKIM.COM.HK

高博金律師事務所

香港中環花園道三號
中國工商銀行大廈六樓

TEL +852 2127 3288
FAX +852 2127 3280

NEW YORK
HONG KONG
LONDON
SEOUL
SHANGHAI
TEL AVIV
MIAMI
SAN FRANCISCO
WASHINGTON DC
BVI
CAYMAN ISLANDS

16 February 2019

**BY EMAIL**

Robert Seiden in his capacity as the appointed receiver for Link Motion Inc.
469 Seventh Avenue
New York, NY, 10018
USA
rseiden@seidenlegal.com

Steven Seiden
sseiden@seidenlegal.com

Re:     **Link Motion Inc. Receivership**

Dear Mr. Seiden:

    We understand that you ("you" or "Client") have chosen Kobre & Kim (the "Firm" or "Kobre & Kim") to represent and advise you personally in your capacity as the appointed receiver for Link Motion Inc. ("Link") in connection with this matter.[1] This letter, when read in conjunction with the standard Terms of Business provided, confirms our mutual understanding as to the scope and terms of this engagement.

*Scope of Engagement*

    Kobre & Kim is acting as lawyers to Client to take steps to obtain control of bank accounts in the name of Link and its subsidiaries[2] in Hong Kong and the Peoples Republic of

---

[1] Kobre & Kim expects to draw upon the services of other Kobre & Kim-affiliated entities as needed, including but not limited to Kobre & Kim LLP, a New York limited liability partnership practicing law from offices at 800 Third Avenue, New York, New York, U.S.A., and other locations.  Client is entering into an engagement and attorney-client relationship only with Kobre & Kim; however, by entering into this agreement Client consents to Kobre & Kim performing its services by drawing upon other Kobre & Kim -affiliated entities on non-Hong Kong law related matters.

[2] Link Motion Inc. subsidiaries include but are not limited to: Link Motion, NQ Mobile International AG, NQ International Limited, NQ Mobile (Shenzhen) co., Ltd, Best Partners Ltd., Yipai Tianxia Network Technology Limited, NQ (Beijing) Co., Ltd., Beijing NetQin Technology Co., Ltd., Linkmotion Holdings Ltd NQ Mobile US Inc., Shanghai Yinlong Information and Technology Co., Ltd, FL Mobile Inc.

KOBRE & KIM IS A FIRM OF SOLICITORS WHICH IS AN AFFILIATE OF KOBRE & KIM LLP. JOHN HAN AND RANDALL ARTHUR ARE RESIDENT PARTNERS.

Robert Seiden
Steven Seiden
16 February 2019
Page 2

China ("PRC"), and to prevent unauthorized dealings with such accounts. The scope of work will include the following:

1) Reviewing up to 500 pages of documents, including documents previously filed in the United States, in respect of the receivership order;

2) Preparing, translating and sending letters to various banks in Hong Kong and the PRC notifying them of your control over Link and its subsidiaries and the funds in their various accounts;

3) Liaising with the various banks in Hong Kong and China and the State Administration for Industry and Commerce (SAIC) in China over two rounds of correspondence with respect to the receivership order;

4) Discussing with you potential strategies to secure the funds in various accounts in Hong Kong and the PRC;

5) Commencing proceedings in Hong Kong in aid of the US proceedings under which you were appointed to freeze and obtain control of Link's assets in Hong Kong, including the bank account held with Standard Chartered Bank (Hong Kong) via an *ex parte* Mareva injunction and appointment of you as receiver in Hong Kong. This scope of work will include:

   a. preparing and filing papers in support of the Mareva injunction and receivership application; and

   b. attending the *ex parte* and the first return date hearings of the application.

We are not being retained for any other purpose.[3]

Client has also informed us that we may rely on instructions from any of the following persons without the need for approval from any other representative of Client: Robert Seiden and Steven Seiden.

We have reviewed our records in accordance with our customary procedures to prevent conflicts of interest and on the basis of this review we are not aware of any other representation

---

[3] In this regard, Kobre & Kim is not acting in any other role or for any other party than what is stated above. For example, Kobre & Kim is not acting as counsel to advise on any prospective transactions or in matters related to responses to audits, disclosure, compliance, employment, insurance coverage, or bankruptcy matters unless specifically agreed to herein. Unless specifically asked, Kobre & Kim is not advising on the running of limitations periods. To the extent that matters related to such or other matters beyond the scope of the engagement set forth in this letter arise in the course of our work, it is not intended that any opinions expressed by Kobre & Kim are for the purpose of providing independent legal advice. To that end, it is expected and agreed upon that Client will obtain formal advice from another law firm without relying on our opinions. Obviously, in its role as lawyers for this matter, Kobre & Kim relies upon the veracity of information provided to it by the Client. In addition, the mere fact that we are lawyers of record on a particular court case does not mean we are acting for the client on matters generally relating to the subject matter of the case. We note that where required by law, under certain limited circumstances we may be obliged to disclose information that Client provides, including evidence.

Robert Seiden
Steven Seiden
16 February 2019
Page 3

which would preclude us from undertaking this engagement or adversely affect our ability to complete it.

Kobre & Kim represents and in the future will represent many other clients. Some may be direct competitors of Client or otherwise may have business interests that are contrary to Client's interests. It is even possible that, during the time we are working for you, an existing or future client may seek to engage us in connection with an actual or potential transaction or pending or potential litigation or other dispute resolution proceeding in which such client's interests are or potentially may become adverse to your interests.

Kobre & Kim cannot enter into this engagement if it could interfere with our ability to represent existing or future clients who develop relationships or interests adverse to Client. We therefore ask Client to confirm that Kobre & Kim may continue to represent or may undertake in the future to represent any existing or future client in any matter even if the interests of that client in that other matter are directly adverse to Kobre & Kim's representation of Client, as long as that other matter is not substantially related to this or our other engagements on behalf of Client.

In other words, we request that Client confirm that no engagement that we have undertaken or may undertake on behalf of Client will be asserted by Client either as a conflict of interest with respect to, or as a basis to preclude, challenge or otherwise disqualify Kobre & Kim from, any current or future representation of any client in any matter, including litigation adverse to Client, as long as that other matter is not substantially related to any of our engagements on behalf of Client. It is also possible that a person or entity who is directly adverse to Client or affiliates/associates of Client in this engagement as a creditor or otherwise could engage us to render services in matters that are not substantially related to this engagement.

*Billing Matters*

Fees

Our fees for this engagement will be based upon the hourly billing rates assigned to the individuals performing the services. Our lawyers charge US $695 to US $1,550 per hour. Our non-lawyer professionals charge US $195 to US $695 per hour. The Firm charges for reasonable travel time spent by our professionals up to 8 hours per day.

Hourly rates are reviewed from time to time. We will inform Client of any changes in our periodic invoices. All legal fees and expenses are treated as earned and due when the work is performed and expenses are incurred. Please let us know at the inception of this engagement if Client would propose an alternate arrangement.

We customarily issue invoices providing summaries of the projects completed during the billing period and the total amount owed. Please let us know if Client wishes us instead to prepare more detailed invoices setting forth a detailed description of each time entry organized by timekeeper. We are foregoing retainer payments to satisfy all of the anticipated fees and expenses in this matter, on the understanding that Client will settle our invoices within 14 days

Robert Seiden
Steven Seiden
16 February 2019
Page 4

of receipt, and that all of our invoices that are in line with budgets provided to the Client in advance will be accepted as appropriate.

Any estimate given by the Firm in respect of the likely cost of legal services to be rendered by the Firm to Client is not intended to be fixed and will be a best estimate of likely cost based upon the facts then known to the Firm.

*Disbursements*

In this engagement, in lieu of routine disbursements (such as regular on-line legal research fees, court testimony transcripting program usage fees, international and domestic long-distance telecommunications fees, late night work expenses, routine duplication, and other items typically customarily charged as disbursements by other law firms), the Client and Kobre & Kim agree that such disbursements shall not be charged, and an administrative fee of 3% of the invoice is agreed upon, to include all such routine disbursements.  Please note that extraordinary disbursements, such as external counsel/barrister's fees,  such as expert witness fees, court filing fees, large amounts of duplication, court reporter fees, special database usage in electronic research services, travel expenses and the like will be invoiced separately and in addition to the routine administrative services fee.

The Client will advance funds for any fees and expenses associated with the retention of outside counsel/barristers or experts throughout the course of the representation which fees shall be considered in addition to and separate and apart from the fee arrangements contained herein.  Furthermore, the Client will be responsible for any fees incurred in connection with arbitrations which require payment of a user fee.

Although the Firm may at times coordinate payments from funds held for Client to third parties who provide services in relation to this engagement, Client acknowledges that it is within Kobre & Kim's discretion to make such payments.  The Client acknowledges that he is ultimately responsible for any and all payments to third parties, including vendors or legal services providers.

Please also refer to Section 6 of the attached Terms of Business for information regarding the potential assessment of other parties' costs in any Court proceedings.

If any items in this engagement letter do not comport with Client's understanding of the payment arrangements, please let us know in writing upon receipt of this letter.

Robert Seiden
Steven Seiden
16 February 2019
Page 5

*Terms of Payment*

Our invoices are due upon receipt. If the invoice is not settled by the Client upon receipt or at a mutually agreed upon date, we reserve the right to, subject to the relevant professional rules:

- Suspend work on which we are engaged on Client's behalf; and/or
- Seek or remove our name from the court record on any proceedings in which we may be acting for Client, consistent with the applicable rules of ethical and professional conduct.

Invoices are net of taxes, and billed in USD. It is the Company's responsibility to calculate and timely remit to the proper Chinese tax bureau in charge all applicable taxes (if any), which may include, but is not limited to, withholding tax, business tax, and sub-tax.

All amounts due to us will be paid in USD. Where funds are held by us in, or sent to our client account on Client's behalf, Client authorises us to make payment by deduction from such funds.

*Privilege*

We believe it is in the interest of our clients that the Firm has the protection of the privilege in connection with internal reviews of its work for Client. Client agrees that any communications between our lawyers and staff working on their matter and the lawyer at the firm who may be reviewing that work for compliance with professional conduct rules will be protected by the Firm's own attorney-client privilege and that any such review will not constitute a conflict between our interests and those of Client.

*Liability*

Advice given by the Firm is provided only to Client and only in relation to the matter on which Client has instructed the Firm to provide such advice. The Firm does not accept any liability for the use by any other person of such advice, or for the use by Client of such advice in relation to another matter and all legal advice given through the offices of the Firm will be rendered by Kobre & Kim, which will be primarily liable therefore.

*Data Privacy*

Kobre & Kim will take steps to ensure that any personal data transferred is treated in accordance with the Firm's privacy policy. This privacy policy was last reviewed and updated August 3, 2018 and can be accessed at this URL: https://www.kobrekim.com/footer/privacy/.

\*                                        \*                                        \*

Please refer to the attached standard Terms of Business for additional information regarding our engagement, which terms shall also apply to any other work we do for you which is not covered by a specific letter of engagement.

Robert Seiden
Steven Seiden
16 February 2019
Page 6


      If you wish to discuss any of the foregoing terms of engagement, please contact me in writing upon receipt of this letter.  Otherwise, we will proceed with our engagement on the terms set forth above.  Please sign below to acknowledge your receipt of this letter and return the same to us.  We look forward to working with you.

                                        Very truly yours,

                                        KOBRE & KIM


I agree to and accept the terms of engagement set out in this letter and in the Standard Terms.


      Signed:     _____
                      Robert Seiden, in his capacity as the appointed receiver to
                      Link Motion Inc.


      Dated:      _____


cc Steven Seiden

Robert Seiden
Steven Seiden
16 February 2019
Page 7


**Kobre & Kim**
**Terms of Business**
**Effective October 2014**

1. **GENERAL**
   1.1. The terms set out in the covering engagement letter and the following terms of business are the terms on which Kobre & Kim ("the Firm", "we", "us" or "our") will provide its services to its clients ( "you", or "Client").
   1.2. Any reference to any employee or consultant of the Firm shall be deemed to include a reference to an employee or consultant of any subsidiary of the Firm. Any advice given to you or other work undertaken for you by a member, employee or consultant of the Firm will be given or undertaken by that person on behalf of the Firm and not in his or her individual capacity. Our partners, employees and consultants do not owe a personal duty of care nor assume any personal responsibility for the advice or other work.
   1.3. The following terms of business and the covering engagement letter include all the information we are required by the relevant professional rules to provide. All work carried out for you is subject to these terms of business and the terms set out in the covering engagement letter, except to the extent that changes are expressly agreed to in writing by a member of the Firm.
   1.4. These terms and the covering engagement letter are effective from the outset of our relationship with you or after five business days from the date of supply of these terms to you if you are an existing client.
   1.5. Our aim is to make our terms of business as clear and concise as possible but please contact us if you would like a more detailed explanation of any of the terms.

2. **Confidentiality**
   2.1. Any information, not in the public domain or known to us, that we may receive from you while acting for you in connection with any matter is confidential. However in some circumstances we may be required to disclose confidential information and documents to the court or to regulatory or fiscal authorities. Should we be so required, we will, to the extent we are permitted, endeavour to give you as much advance notice as possible of the disclosures we are obliged to make.
   2.2. Where the fact of our representation of you is a matter of public record, you agree that Kobre & Kim shall be permitted to inform third parties of the representation.

3. **OUR RESPONSIBILITIES**
   3.1. Our responsibility is only to you as the client. We shall not be under a duty to, nor have responsibility towards, any other person in connection with the work we have agreed to undertake (unless that person is also a client in relation to the work), even if the objective of your instructions is to confer a benefit upon such a person.
   3.2. Should you appoint or have appointed another adviser in connection with the work we have agreed to undertake and the other adviser asks you or has asked you to limit or restrict their liability to you, you agree you will inform us. You also agree that our liability to you will be reduced by an amount equal to that which we are restricted from recovering from such other adviser and that our liability to you will not be increased by your decision not, or your inability, to recover amounts from that other adviser.
   3.3. Where we agree to accept service of documents on your behalf and do not agree specific terms and conditions for so acting, our obligations are only to use reasonable care to forward the document to you at your risk, or communicate to you the fact of its receipt by us, as promptly as reasonably possible at the address we last have for you. We will not be bound to consider the urgency or importance of the document or advise you concerning it (unless we have specifically agreed to do so). Nor shall we be liable for any delay or failure in communication due to circumstances beyond our control or be required to act in any respect contrary to law or to our professional obligations as lawyers. We may terminate our agreement to accept service on not less than one month's written notice to you.
   3.4. We shall not be liable for any delay in performing or inability to perform our services or obligations as a result of circumstances outside our reasonable control.
   3.5. The work we carry out for you will necessarily reflect the circumstances in which it is carried out.

Robert Seiden
Steven Seiden
16 February 2019
Page 8

   By way of example only, where work is carried out in restricted timescales or unusual circumstances, you accept that we may be unable to provide you with the same level of written advice or confirmation as may be appropriate where such restrictions or circumstances do not exist.

3.6. We are legal advisers and it is not part of our role to advise on business or financial matters. Nor will we advise on any disclosure, compliance, employment, insurance coverage, or bankruptcy aspects of a matter unless we specifically agree in writing. To the extent that matters related to such or other matters beyond the scope of the engagement set forth in these terms and in the engagement letter arise in the course of our work, it is not intended that any opinions expressed by Kobre & Kim or any Kobre & Kim affiliated entities are for the purpose of providing independent legal advice. To that end, it is expected and agreed upon that you will obtain formal advice from another law firm without relying on our opinions. Obviously, in its role as lawyers for this matter, Kobre & Kim relies upon the veracity of information provided to it by the Client. We note that where required by law, under certain limited circumstances we may be obliged to disclose information that you provide, including evidence.

3.7. Contact details of our professional indemnity insurer and details of territorial coverage of the insurance are available from our Director of Finance.

4. **Your Responsibilities**

4.1. You accept that we will be entitled to treat the person or persons instructing us as being fully authorised by you to do so, including in respect of accepting these terms and the terms of any engagement letter.

4.2. You must tell us as soon as possible if matters are or become particularly urgent or require action by a specific time.

4.3. You must provide us with timely, accurate and up to date information relating to the agreed services and notify us promptly of any material change in information or circumstances.

4.4. You accept that we may rely and act on advice or information provided directly, or through you, by other specialist advisers acting on your behalf.

5. **Payment of fees**

5.1. Our accounts are due for payment immediately.

5.2. A guarantee or agreement by a third party for payment of our fees and expenses does not absolve you from your ultimate responsibility for payment of our fees and expenses if the third party does not pay.

5.3. Payment in relation to these terms means the receipt by us of cleared funds in our bank account covering the relevant fees and disbursements.

5.4. We may, at our discretion, as a condition of acting or continuing to act for you, require payment, such as a retainer, on account of fees and disbursements and/or payment of interim accounts immediately on delivery. You accept that our engagement responsibilities will commence only upon the receipt of such payment.

5.5. Where funds are held by us in or sent to our client account on your behalf, for example as retainers for our services, you authorise us to make payment by deduction from such funds. You accept that, if circumstances change and your engagement appears to require a greater amount of effort than currently anticipated, in the future, we may request a larger retainer as appropriate for the circumstances. We understand that you will cause the retainer to be replenished promptly upon our request.

5.6. Where payment is not made in accordance with agreed terms, we reserve the right to charge interest and/or to cease further work (whether in respect of the particular matter upon which the relevant fees were charged or any other work being carried out by us for you) on informing you to that effect, in which case we accept no liability for any loss caused to you as a direct or indirect result of such delay. Interest where chargeable will be at the rate equivalent to that payable at the time on judgment debts.

5.7. We expect to send you an invoice periodically setting forth the legal services performed and disbursements incurred on your behalf.

5.8. All legal fees and expenses are treated as earned and due when the work is performed and expenses are incurred. Please let us know at the inception of this engagement if you would propose an alternate arrangement.

Robert Seiden
Steven Seiden
16 February 2019
Page 9

6. **OTHER PARTIES' COSTS**
    6.1. In any legal or arbitration proceedings the court or tribunal may order the other party to pay some of the fees and expenses incurred by you. However, you will remain responsible to us for payment of our charges.
    6.2. In some circumstances the court may order you to pay or contribute to the other party's legal fees and expenses, for example if you lose all or part of the case. Such fees and expenses would then be payable by you, in addition to our charges.

7. **ELECTRONIC COMMUNICATION**
    7.1. Unless otherwise directed by you, we may correspond by means of electronic mail.
    7.2. Both you and we agree to use commercially reasonable procedures to check for commonly known viruses before sending information electronically, but you and we recognise that such procedures cannot be a guarantee that transmissions will be virus free.
    7.3. You agree to accept the risks of using electronic mail, including but not limited to the risks of viruses, interception, unauthorised access, delay, mis-routing and breakdown of service providers.
    7.4. Electronic mail may be monitored for the purposes of ascertaining compliance with relevant regulations and statutes.

8. **CONFLICTS OF INTEREST**
    8.1. It is our practice to check for conflicts of interest before taking on work. We provide many different professional services to clients and we cannot be certain that we will identify all situations where there may be a conflict of interest. We, therefore, request that you notify us promptly of any potential conflict of which you are, or become, aware. Where a potential conflict is identified by you or us and we believe that your interests can be properly safeguarded by the implementation of appropriate procedures, we will discuss and agree upon such procedures with you.

9. **ANTI-MONEY LAUNDERING AND TERRORIST FINANCING**
    9.1. Our engagement is subject to these terms and effective upon completion of our normal intake procedures. To that end, we may require certain information from you and/or your affiliates in order to comply with our obligations under applicable anti-money laundering regulations and legislation and our internal policies and you undertake to provide us promptly with true and accurate copies of all such information following our written request for same. Please note that if this information is not received by us in a format that is satisfactory to us, we will be obliged to discontinue acting for you. We are also obliged to report to the relevant authorities if we become aware of certain suspicious transactions.

10. **DATA PROTECTION**
    10.1. All information that we hold concerning individuals will be held and processed by us strictly in accordance with the provisions of the relevant regulations and statutes. Such data will be used by us and our affiliate offices, including those in Hong Kong and the United States of America, for the provision of our legal services and for related business purposes. We will not, without the appropriate consent, supply individual names and addresses to any third party except (1) where this is a necessary part of the legal services that we undertake, or (2) where we are required to do so by operation of law or (3) for the purposes of anti-money laundering identity checks and credit checks.
    10.2. Individuals may have certain rights under the relevant regulations and statutes to obtain information we hold about him or her, including a description of the personal data that we hold. Should you have any queries concerning these rights, please contact our Data Protection Officer.

11. **STORAGE OF PAPERS AND DOCUMENTS**
    11.1. We may destroy physical copies of documents once we have made electronic copies for our file. You must make specific arrangements with us if you wish papers to be retained in physical copies.
    11.2. We will retain files and papers (including those in electronic form) relating to your affairs in storage on your behalf for such period as we consider to be reasonable, and in accordance with the proposed periods recommended by the relevant regulations and statutes, but have the right to destroy them

Robert Seiden
Steven Seiden
16 February 2019
Page 10

      without reference to you after such period. You must make specific arrangements with us if you wish papers to be retained.

11.3. When requested to do so, we will make available to you such papers as we may be legally and professionally required to deliver. If we retrieve files or documents from storage in relation to continuing or new instructions, we may make a charge for the printing, handling costs and any professional time reasonably involved and may require payment as a condition of delivery of such papers.

**12. TERMINATION**

12.1. You may terminate this engagement, and we may terminate this engagement, at any time for any reason by written notice, subject on our part to applicable rules of professional responsibility. Unless previously terminated, this engagement will terminate upon our sending you our final statement for services rendered. If, upon such termination, you wish to have documents returned, please advise us. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any documents retained by us.

12.2. If our relationship is ended by you or us, you will only be liable for our fees up until termination plus expenses. We will be entitled to retain all your files and documents while there is money owing to us.

**13. WHOLE AGREEMENT**

13.1. The covering engagement letter with its enclosures, if any, and these terms of business set out the entire agreement between us in connection with the work you have instructed us to do. Should you instruct us to carry out additional work and we do not prepare a separate engagement letter, these terms of business and the terms of the covering engagement letter, (with the exception of the paragraph(s) headed "Scope of Engagement" and any provisions relating to an agreed fee), will continue to apply and shall, with the agreement reached between us on the scope of the additional work, represent the entire agreement between us in connection with such additional work.

13.2. In the event that any part of the covering engagement letter or any of these terms of business is or shall become invalid, illegal or unenforceable, the remainder shall survive unaffected.

**14. THIRD PARTIES, APPLICABLE LAW AND JURISDICTION**

14.1. Unless otherwise provided herein or in the engagement letter, no third party may have the benefit of, or the right to enforce, these terms, the engagement letter, or any other term of our engagement.

14.2. Any dispute, controversy or claim arising out of or relating to these terms of engagement, including the validity, invalidity, breach or termination thereof, shall be settled by arbitration in Hong Kong under the Hong Kong International Arbitration Centre Administered Arbitration Rules in force when the Notice of Arbitration is submitted in accordance with these Rules. The number of arbitrators shall be one. The arbitration proceedings shall be conducted in English and the applicable law shall be the laws of Hong Kong.

                                                                                                          **October 2014**