**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

**WAYNE BALIGA,**

 Plaintiff,

 v.

**LINK MOTION INC. (f/k/a/ NQ MOBILE INC.), VINCENT WENYONG SHI, ROLAND WU,** and **ZEMIN XU,**

 Defendants.

**No. 1:18-cv-11642-VM-DCF**

**The Honorable Victor Marrero
Magistrate Judge Valerie Figueredo**

**PLAINTIFF'S RESPONSE TO DEFENDANT VINCENT WENYONG SHI'S
<u>OBJECTION TO THE AUGUST 10, 2022 REPORT & RECOMMENDATION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.      The Court Should Not Consider Shi's Arguments
        Raised for the First Time in His Objection. ........................................................ 3

II.     Shi's Remaining Arguments Re-Hash ArgumentsRaised Before
        Magistrate Judge Figueredo; As a Result the Challenged Recommendations
        Must Be Reviewed for Clear Error. ................................................................... 6

III.    Under Any Standard of Review, the Challenged
        Recommendations Were Correctly Decided.......................................................... 9

        A.      The Report and Recommendation Cites the Correct Legal Standard. ................... 9

        B.      The Report and Recommendation's Failure to Dismiss
                Wu and Xu Was Not Legal Error. ...................................................... 10

        C.      The Report and Recommendation Properly Found that Baliga Adequately
                Pleaded a Claim Under Section 10(b) of the Exchange Act and Rule 10b-5. ...... 11

                i.      The Report & Recommendation Did Not Err in Failing to
                        Consider the Content of Documents Outside of the Complaint. .............. 11

                ii.     The Report & Recommendation Did Not Err in
                        Finding That Baliga Plead Facts Sufficient to Allege Fraud
                        "In Connection With the Purchase or Sale of Any Security." ................. 14

                iii.    The Report & Recommendation Did Not Err in
                        Finding That Baliga Plead Facts Sufficient to Allege
                        Misleading Statements or Omissions of Material Facts. ........................ 15

                iv.     The Report & Recommendation Did Not Err in Finding That Baliga
                        Plead Facts Sufficient to Establish a Strong Inference of Scienter........... 17

                v.      The Report & Recommendation Did Not Err in Finding
                        That Baliga Adequately Pleaded Reliance................................. 20

                vi.     The Report & Recommendation Did Not Err in Finding That Baliga's
                        Allegations Appropriately Invoke the Affiliated Ute Presumption. ......... 21

                vii.    The Report & Recommendation Did Not Err in Finding
                        That Baliga Adequately Pleaded Loss Causation. .................................... 23

D.    The Report and Recommendation Properly Found that Baliga Adequately
Alleged a Section 20(a) Claim Against the Individual Defendants. ..................... 25

E.    The Report and Recommendation Did Not Err in Finding that
Baliga Adequately Pleaded a Claim for Common Law Fraud. ........................... 26

F.    The Report and Recommendation Did Not Err in Finding that Baliga
Adequately Pleaded a Claim for Negligent Misrepresentation. ........................... 27

CONCLUSION ................................................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                   **Page(s)**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972).................................................................................... *passim*

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*,
    690 F.3d 98 (2d Cir. 2012)..............................................................................9, 23

*Chao v. Int'l Broth. of Indus. Workers Health & Welfare Fund*,
    97 F. Supp. 3d 268 (E.D.N.Y. 2015) .....................................................................7

*City of Livonia Emps' Ret. Sys. v. Wyeth*,
    284 F.R.D. 173 (S.D.N.Y. 2012) ........................................................................23

*Doe v. Uber Techs., Inc.*,
    20-CV-8446 (LJL), 2021 WL 3193166 (S.D.N.Y. July 28, 2021)........................27

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)...........................................................................................15

*Fabricio v. Artus*,
    06 CIV. 2049 WHPGWG, 2009 WL 928039, at *1 (S.D.N.Y. Mar. 12, 2009).......6

*George v. Prof'l Disposables Int'l, Inc.*,
    221 F. Supp. 3d 428 (S.D.N.Y. 2016)....................................................................7

*Gonzalez v. Comm'r of Soc. Sec.*,
    No. 21-cv-800, 2022 WL 3348386 (S.D.N.Y. May 27, 2022) ................................4

*Hynes v. Squillace*,
    143 F.3d 653 (2d Cir. 1998)..................................................................................5

*Johnson v. Panetta*,
    953 F. Supp. 2d 244 (D.D.C. 2013) ......................................................................4

*Knight Sec. L.P. v. Fiduciary Tr. Co.*,
    5 A.D.3d 172 (2004) ...........................................................................................26

*Melgen v. Bank of Am. Corp. (In re Bank of Am. Corp. Sec.)*,
    No. 09 MD 2058 (PKC), 2013 U.S. Dist. LEXIS 176295
    (S.D.N.Y. Dec. 11, 2013)...............................................................................26, 27

*Michalow v. East Coast Restoration & Consulting Corp.*,
    No. 09-cv-5475, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018)...........................4, 5

*Minto v. Decker*,
    108 F. Supp. 3d 189 (S.D.N.Y. 2015)....................................................................4

*Morris v. Amalgamated Lithographers of Am., Local One,*
   994 F. Supp. 161 (S.D.N.Y. 1998) .......................................................................5

*Novak v. Kasaks,*
   216 F.3d 300 (2d Cir. 2000) ............................................................................18

*Ortiz v. Barkley,*
   558 F. Supp. 2d 444 (S.D.N.Y. 2008) .............................................................4

*Perez v. Superintendent of Attica Corr. Facility,*
   19 CIV. 5547 (LGS), 2021 WL 4710789 (S.D.N.Y. Oct. 8, 2021) ...................4

*Schiff v. Yayi Int'l Inc.,*
   No. 15-cv-359, 2020 WL 3893345 (S.D.N.Y. July 9, 2020) .............................5

*Shields v. Citytrust Bancorp, Inc.,*
   25 F.3d 1124 (2d Cir. 1994) ............................................................................18

*Sjunde AP-Fonden v. Goldman Sachs Group, Inc.,*
   545 F. Supp. 3d 120 (S.D.N.Y. 2021) .......................................................18, 25

*In re Synchrony Fin. Sec. Litig.,*
   988 F.3d 157 (2d Cir. 2021) .........................................................................9, 17

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
   551 U.S. 308 (2007) .................................................................9, 10, 17, 18, 19

*Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police*
   *Officers' & Firefighters' Ret. Plan,*
   21-909-CV, 2021 WL 5142702 (2d Cir. Nov. 5, 2021) ...................................18

*Vega v. Artuz,*
   2002 WL 31174466 (S.D.N.Y. Sept. 30, 2002) ...............................................7

**Statutes**

Section 10(b) of the Securities Exchange Act ...........................................2, 11, 25, 26

Section 20(a) of the Securities Exchange Act........................................................2, 25

**Other Authorities**

17 CFR § 229.404 ..............................................................................................16

Federal Rule of Civil Procedure 4(m)....................................................................11

Rule 10b-5.................................................................................................2, 11, 25

## INTRODUCTION

Shi's Memorandum of Law in Support of Defendant Link Motion Inc. f/k/a NQ Mobile Inc. and Vincent Wenyong Shi's Motion to Dismiss the Second Amended Complaint ("Motion to Dismiss")—and the subsequent briefing—attempt to argue that Plaintiff Wayne Baliga ("Baliga") cannot allege a single element of any of his claims. Fundamentally, Defendant Vincent Wenyong Shi ("Shi") does not believe that there is anything wrong or illegal about repeatedly giving half-truths to the investing public regarding a significant transaction that will completely alter the line of business of a publicly traded company. Indeed, Shi does not believe that the fact that such a transaction was self-dealing is a material undisclosed fact that investors might be interested in.

Magistrate Judge Valerie Figueredo had the benefit of reviewing over sixty-five pages of briefing; hundreds of pages of SEC filings, press releases, and media reports; and well over an hour of oral argument. Based on this voluminous record, Magistrate Judge Figueredo issued her considered opinion and reached a well-supported and legally-appropriate conclusion.

Ultimately, she found that Baliga adequately pleaded "materially false or misleading statements and omissions concerning: (1) the purported affiliation between Tongfang SPC and Tsinghua Tongfang; (2) Shi's financial interest in the Tongfang Transaction; and (3) Tongfang SPC's payment in full of the agreed-upon amount for the sale of FL Mobile and Showsell." (Dkt. 328, at 26-34.) Moreover, Magistrate Judge Figueredo found that Baliga adequately pleaded facts sufficient to create a strong inference that Defendants acted with the requisite scienter necessary to support a claim for securities fraud. Finally, Magistrate Judge Figueredo correctly found that Baliga alleged that this case "'primarily' involves 'a failure to disclose'" and, as a result, the *Affiliated Ute* theory of reliance applies. (Dkt. 328, at 42-45.)

On the basis of these and similar holdings, Magistrate Judge Figueredo rightly upheld Baliga's claims "alleging violations of Exchange Act §10(b) and Rule 10b-5 thereunder, Exchange Act §20(a), common law fraud, and negligent misrepresentation." (Dkt. 330, at 56.)

Undisputedly, Shi had ample opportunity to raise any arguments he wished to on the motion to dismiss below. Nonetheless, in Shi's Objections to the August 10, 2022 Report & Recommendation ("Shi's Objection"), he raises several new arguments for the first time. The remainder of the arguments in Shi's Objection are largely a re-hash of the argument he previously raised and Magistrate Judge Figueredo considered and addressed or rejected.

It is well-accepted that an unsuccessful litigant should not be allowed to raise new arguments in an objection to a report and recommendation. Indeed, as this Court has held, "[r]eview of new grounds for relief or new legal arguments not raised before the magistrate judge 'would reduce the magistrate's work to something akin to a meaningless dress rehearsal.'" Dkt. 331, at 10-11 (quoting *Michalow v. East Coast Restoration & Consulting Corp.*, No. 09-cv-5475, 2018 WL 1559762, at *6 (E.D.N.Y. Mar. 31, 2018)). As it did in Shi's previous Objection to Magistrate Judge Freeman's Report and Recommendation, this Court should not consider Shi's arguments raised for the first time in his objection.

Similarly, "when an objection 'simply reiterates the original arguments, the Court will review the Report strictly for clear error.'" Dkt. 331, at 10 (quoting *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016)). Just as this Court considered Shi's re-hashed arguments under a clear error standard before, the same should hold true here.

For these reasons—and further reasons laid out in this response brief—the Court should enter Magistrate Judge Figueredo's Report & Recommendation and deny Shi's motion to dismiss.

**ARGUMENT**

Shi's Objection jumps back and forth between raising entirely new arguments, which he failed to raise before Magistrate Judge Valerie Figueredo, and simply re-iterating the arguments that the Report & Recommendation considered and rejected. For the most part, Shi fails to properly identify and object to specific issues raised in the Report & Recommendation that would require this Court's *de novo* review. Given this, the Court should: (1) reject those arguments raised by Shi for the first time in his objection to the Report & Recommendation as untimely; and (2) review the Recommendations that are the subject of Shi's re-hashed arguments under a clear error standard.

Moreover, the Report & Recommendation was correct in holding that each of Baliga's claims—with the exception of the claim for unjust enrichment[1]—was adequately pleaded. The Court should enter Magistrate Judge Figueredo's Report & Recommendation in its entirety and deny Shi's Objection and motion to dismiss.

**I.     The Court Should Not Consider Shi's Arguments Raised for the First Time in His Objection.**

Shi has raised several arguments for the first time in his objections to the Report & Recommendations, including:

- that the relationship between Tongfang SPC and Shi was not material (Dkt. 330, at 27-28);

- that statements regarding Tongfang SPC's actions relating to the sale of FL Mobile and Showself were not actionable because they were forward-looking statements under the PLSRA safe harbor (Dkt. 330, at 28-31)[2]; and

---

[1]     Baliga chose not to file an objection to this finding. While Baliga does not agree with all of Magistrate Judge Figueredo's conclusions, Baliga believes that, overall, Magistrate Judge Figueredo was thorough and exacting in her consideration of the arguments put forward by the Parties.

[2]     While Shi used the phrase "forward-looking" in his opening brief, there was no mention of the PLSRA and no argument that the statements were protected by a safe harbor provision.

- that Baliga fails to allege a special relationship sufficient to support a claim for negligent misrepresentation (Dkt. 330, at 49-51).[3]

It is well-settled—and this Court has previously held in this case—that "[r]eview of new grounds for relief or new legal arguments not raised before the magistrate judge 'would reduce the magistrate's work to something akin to a meaningless dress rehearsal.'" (Dkt. 331, at 10-11 (quoting *Michalow*, 2018 WL 1559762, at *6).) Indeed, "[a] district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (collecting cases); *Perez v. Superintendent of Attica Corr. Facility*, 19 CIV. 5547 (LGS), 2021 WL 4710789, at *2 (S.D.N.Y. Oct. 8, 2021) (citing *Walker v. Stinson*, 205 F.3d 1327, 1372 (2d Cir. 2000) ("A district court should not . . . entertain new grounds for relief or additional legal arguments that were not before the magistrate judge."); *Minto v. Decker*, 108 F. Supp. 3d 189, 192 (S.D.N.Y. 2015) ("[A]n unsuccessful party is not entitled as of right to a de novo review by the judge of an argument never seasonably raised before the magistrate.") (quoting *Marache v. Akzo Nobel Coatings, Inc.*, 08 CIV. 11049, 2010 WL 3731124, at *3 (S.D.N.Y. Sept. 7, 2010)).

Although this Court "may entertain . . . new arguments when reviewing a report and recommendation, doing so is disfavored absent a most compelling reason for the failure to present such evidence or arguments in the first instance." *Michalow*, 2018 WL 1559762, at *6 (quotations

---

[3]  Shi stated in his opening brief without any citation to authority, that Shi does not have a special relationship to Baliga. (Dkt. 262, at 30.) This is not sufficient to raise an argument and the Court should deemed it waived. *Gonzalez v. Comm'r of Soc. Sec.,* No. 21-cv-800, 2022 WL 3348386, at *18 (S.D.N.Y. May 27, 2022), *report and recommendation adopted sub nom. Gonzalez v. Kijakazi*, No. 21-cv-800, 2022 WL 3348525 (S.D.N.Y. Aug. 12, 2022) ("Courts have deemed arguments waived and have declined to address them where a party does not cite to any authority in support and does not develop its argument."); *see also Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("It is not the obligation of this Court to research and construct the legal arguments available to the parties....To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."). Shi entirely ignored the issue in his reply brief. (Dkt. 266.)

and citation omitted). "Considerations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration, and we have upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's de novo review." *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998); *Schiff v. Yayi Int'l Inc.*, No. 15-cv-359, 2020 WL 3893345, at * 3 (S.D.N.Y. July 9, 2020) ("[T]he goal of the federal statute providing for the assignment of cases to magistrates is to increase the overall efficiency of the federal judiciary.").

In this case, Shi failed to raise these arguments in his 42 pages of briefing on his Motion to Dismiss (Dkts. 262, 266, 324), or in oral argument in front of Magistrate Judge Figueredo. There is no "most compelling" reason why each of these arguments could not have been raised previously—and Shi makes no argument that he could not have raised these arguments before. *See Michalow*, 2018 WL 1559762, at *6 (holding that entertaining "new arguments when reviewing a report and recommendation . . . is disfavored absent a most compelling reason for the failure to present such evidence or arguments in the first instance.")

Allowing Shi to proceed on these arguments would make a mockery of the *extensive* proceedings before Magistrate Judge Figueredo and "reduce [her] work to something akin to a meaningless dress rehearsal." *Michalow*, 2018 WL 1559762, at *6. Indeed, by submitting such extensive new briefing, Shi wastes the time of Magistrate Judge Figueredo, District Judge Marrero, and opposing counsel. *Morris v. Amalgamated Lithographers of Am., Local One*, 994 F. Supp. 161, 163 (S.D.N.Y. 1998).

Because each of Shi's new arguments could have been raised before Magistrate Judge Figueredo, this Court should not consider these new arguments raised for the first time as an objection.

## II.    Shi's Remaining Arguments Re-Hash Arguments Raised Before Magistrate Judge Figueredo; As a Result the Challenged Recommendations Must Be Reviewed for Clear Error.

Shi's remaining arguments simply re-hash arguments previously raised before Magistrate Judge Figueredo and considered in rendering the Report & Recommendation. As a result, the challenged recommendations must be reviewed for clear error. Dkt. 331, at 10 ("[W]hen an objection 'simply reiterates the original arguments, the Court will review the Report strictly for clear error.'") (quoting *George*, 221 F. Supp. 3d at 433); *see also Fabricio v. Artus*, 06 CIV. 2049 WHPGWG, 2009 WL 928039, at *1 (S.D.N.Y. Mar. 12, 2009) (same).

These arguments include:

- what the proper pleading standard for a motion to dismiss is in this contex (Dkt. 330, at 10-13; Dkt. 328, at 14-17; Dkt. 266, at 5-9);

- that individual Defendants Xu and Wu should be dismissed due to a failure to properly serve them (Dkt. 330, at 13-15; Dkt. 328, at 17; Dkt. 324, at 2-3)[4];

- that the Court must take judicial notice of a wide range of documents and consider them *for the truth of their contents* and not just for the fact that the documents stated those things (Dkt. 330, at 15-20; Dkt. 328, at 16-17; Dkt. 266 at 7-9);

- that none of Baliga's purchases of ADR were made "in connection with" any actionable conduct by Defendants (Dkt. 330, at 20-23; Dkt. 328, at 23, 41-42; Dkt. 266, 5, 10, 16; Dkt. 262, 13-14);

- that Baliga could not show materiality because the information was already publicly available (Dkt. 330, at 24-27; Dkt. 328, at 29-31; Dkt. 266, at 15; Dkt. 262, at 21-22)[5];

- that Baliga could not show reliance based upon either the fraud-on-the-market theory or *Affiliated Ute* (Dkt. 330, at 35-43; Dkt. 328, at 40-45; Dkt. 266, at 9-12; Dkt. 262, at 21-22);

---

[4]    This argument was raised for the first time in supplemental briefing after oral argument.
[5]    While the substance of this argument is rehashed, Shi raises specific disclosures for the first time in his objection. These disclosures constitute a new argument and should not be considered pursuant to the standard regarding new arguments. *See* Section I, *supra*.

- that Baliga could not show loss causation (Dkt. 330, at 43-46; Dkt. 328, at 45-48; Dkt. 266, at 11-12)[6]; and

- that Baliga cannot state a claim under Section 20 because the underlying primary violation fails (Dkt. 330, at 38; Dkt. 262, at 23).

"It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." *George*, 221 F. Supp. 3d at 433 (quoting *Ortiz*, 558 F. Supp. 2d at 451). Because Shi "raises arguments that were already addressed by the Magistrate Judge, the District Court need only review the Magistrate Judge's decision for clear error." *Chao v. Int'l Broth. of Indus. Workers Health & Welfare Fund*, 97 F. Supp. 3d 268, 275 (E.D.N.Y. 2015) (citing *Vega v. Artuz*, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to 'relitigate every argument which it presented to the Magistrate Judge.'" *Vega v. Artuz*, 97CIV.3775LTSJCF, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002).

While Baliga will not go point-by-point through these re-hashed arguments, one example that is particularly egregious relates to the point Shi raised with regards to the service of individual defendants Wu and Xu. In his supplemental briefing before Magistrate Judge Figueredo, filed on August 3, 2022, Shi argued:

Under *Paraguay*, Plaintiff was required to at least attempt service of process on Mr. Wu and Mr. Xu by January 3, 2021 (90 days from filing of the complaint). It is now August 3, 2022. It is our understanding that Plaintiff has taken no steps to effect service of process on either Mr. Wu and Mr. Xu, as confirmed by Plaintiff's

---

[6]  As the Report & Recommendation correctly identifies, Shi raises the issue of loss causation for the first time in Reply. Shi cites solely to an argument about whether or Baliga purchased "securities *in connection with* a false or misleading statement" as demonstrating that he raised the issue of loss causation previously. This is clearly insufficient. Moreover, while Shi asserts that his argument was in response to an argument raised by Baliga in his opposition papers, it is notable that he cannot cite to any discussion of loss causation in Baliga's briefing.

counsel at argument on Monday, August 1, 2022. Plaintiff's counsel admitted to the Court that no service on Mr. Wu or Mr. Xu has been effected. Plaintiff's counsel gave no grounds (because there can be none) on which Plaintiff may prosecute his claims against Mr. Wu and Mr. Xu without serving them with process.

(Dkt. 324, at 2.) In his Objection, Shi argued:

> Under *Paraguay*, Plaintiff was required to at least attempt service of process on Messrs. Wu and Xu by January 3, 2021, 90 days after the complaint was filed. At argument on Monday, August 1, 2022, Plaintiff's counsel confirmed that Plaintiff has not served either Mr. Wu or Mr. Xu. Dkt. No. 326 at 56:14-17. It is now August 24, 2022. Nowhere on the extensive docket of this action is a motion by Plaintiff for enlargement of time to serve Mr. Wu or Mr. Xu; nowhere is a motion for alternative service or indeed any mention of efforts by Plaintiff to serve either Mr. Wu or Mr. Xu. Plaintiff's counsel offered no grounds (because there are none) on which Plaintiff could prosecute his claims against Mr. Wu or Mr. Xu without serving them with process.

(Dkt. 330, at 14.) These paragraphs are substantively identical.

Despite the fact that Shi argued the issue of service in front of Magistrate Judge Figueredo both in oral argument and in a supplemental letter briefing, Shi is attempting to relitigate the issue. The same is true for each of the issues highlighted above. A comparison of the cited portion of Shi's Objection with the portions of the Report & Recommendation and the portions of Shi's briefing which are cited above, demonstrates that the arguments are substantively the same. Shi has, in many cases, lengthened the argument and reframed it as the Court's error, but at bottom Shi does not respond to errors introduced by the Report & Recommendation, as would be appropriate, but instead simply reiterates the positions which Magistrate Judge Figueredo's Report & Recommendation considered and rejected. For that reason, each of these arguments must be considered under a clear error standard.

III.   **Under Any Standard of Review, the Challenged Recommendations Were Correctly Decided.**

Should the Court decide to review each of the challenged recommendations in the Report & Recommendation *de novo* or any other basis, this Court should find that Magistrate Judge Figueredo was correct in each of her challenged holdings.

A.   **The Report and Recommendation Cites the Correct Legal Standard.**

Shi devoted more than three pages in his Reply Brief to arguing that Baliga misstated the legal standard on a motion to dismiss. (Dkt. 266, at 5-9.) The Report & Recommendation, as a result of this dispute, similarly spent more than three pages walking through the relevant legal standard. (Dkt. 328, at 14-17.) In his Objection, Shi complaint about the legal standard utilized by Magistrate Judge Figueredo, but it is unclear with what precisely Shi takes issue. Indeed, Shi leads off with the assertion—emphasized with both bold and italics that "[t]he PSLRA *requires* a court to 'take into account plausible opposing inferences.'" (Dkt. 330, at 11 (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323 (2007)).) But the Report & Recommendation cites *Tellabs* extensively including the fact that "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." (Dkt. 328, at 15 (quoting *Tellabs*, 551 U.S. at 324).)

In addition to quoting the standards from *Tellabs*, the Report & Recommendation discusses the standards established by the Second Circuit in controlling authority including *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157 (2d Cir. 2021), and *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98 (2d Cir. 2012).

Thus, it appears that the core of Shi's objection is that the Report & Recommendation followed controlling law with regard to how materials outside the complaint are appropriately considered. Shi contends that the Court should review those documents *and assume their contents*

*are true*, rather than taking notice of their existence and of what they say *without accepting what they say as true*. (Dkt. 330, at 12-13.) The law, however, is plain that SEC filings and other documents of which the Court may take judicial notice "are relevant not to prove the truth of their contents but only to determine what the documents stated." (Dkt. 328, at 16-17 (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).)

It follows, then, that the Report & Recommendation is correct that the Court's function "is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" (Dkt. 328, at 14 (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).) Instead of weighing the evidence, the Court's role on a motion to dismiss is to determine whether "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." (Dkt. 328, at 15 (quoting *Tellabs*, 551 U.S. at 324).)

Contrary to Shi's argument, a review of the Report & Recommendation demonstrates that Magistrate Judge Figueredo got the legal standard correct.

**B.     The Report and Recommendation's Failure to Dismiss Wu and Xu Was Not Legal Error.**

Shi raised the argument that Baliga had failed to serve individual defendants Wu and Xu for the first time in Reply, simply stating that "Plaintiff has presented no evidence that he has even tried to serve Mr. Xu or Mr. Wu with process, despite the time having expired." (Dkt. 266, at 17.) Shi further argued the point in his supplemental brief—which was supposed to be limited to whether Shi or Link Motion even had the right to raise arguments on behalf of individual defendants Wu and Xu—devoting nearly a page to the issue which he first raised, in passing, in the Reply.

Accordingly, Magistrate Judge Figueredo properly did not address this issue.

Moreover, neither Shi nor Link Motion have standing to assert defenses on behalf of individual defendants Wu and Xu. (Dkt. 325.) Second, as Shi has noted, Federal Rule of Civil Procedure 4(m) does not apply to the service of foreign defendants. As such, even if Shi has standing to raise these arguments on behalf of individual defendants Xu and Wu (which he does not), the burden is on Shi to show that Baliga's efforts to serve individual defendants Wu and Xu have been insufficient. Shi failed to carry this burden.

### C.   The Report and Recommendation Properly Found that Baliga Adequately Pleaded a Claim Under Section 10(b) of the Exchange Act and Rule 10b-5.

None of Shi's arguments with regard to Baliga's claims under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder withstands legal scrutiny.

#### i.   The Report & Recommendation Did Not Err in Failing to Consider the Content of Documents Outside of the Complaint.

Shi argues that Magistrate Judge Figueredo erred by "fail[ing] to analyze or even cite other, relevant content of [SEC] filings, including the portions cited by Defendants in support of the motion." (Dkt. 330, at 16.) Shi's objection ignores the law cited by both Magistrate Judge Figueredo and Baliga which makes clear that the Court can only take notice of the *fact* of the SEC filings and media reports—not the for the truth of their *contents*:

> "when a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC, particularly where [the] plaintiff has been put on notice by defendant's proffer of these public documents." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). Such filings "are relevant not to prove the truth of their contents but only to determine what the documents stated." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Similarly, courts can take judicial notice of news articles and media reports so long as they do "not take judicial notice of the documents for the truth of the matters asserted in them, but rather to establish that the matters [had] been publicly asserted." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008) (citation omitted) (alteration in original); *see also LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 155 (2d Cir. 2003) (taking judicial notice of National Underwriter article in evaluating whether plaintiffs had inquiry notice); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 436 (S.D.N.Y.

2018) ("[T]he Court may, and does, take judicial notice of the *fact* of these news reports . . . 'without regard to the truth of their contents.'") (citation omitted) (emphasis in original).

(Dkt. 328, at 16-17.) Magistrate Judge Figueredo was correct, then, to analyze only whether there were relevant prior disclosures without accepting as true any of the allegations of the documents it considered.

Nevertheless, an analysis of the contents of purported prior disclosures that Shi highlights demonstrates that these disclosures do not negate Baliga's allegations. For example, the fact that Shi already had an ownership interest in FL Mobile does not belie any of Baliga's allegations or theories. (Dkt. 330, at 17.) The undisclosed information was not that Shi had an ownership interest in FL Mobile, but that Shi owned and controlled Tongfang SPC and stood on both sides of the transaction. Shi's Objection does not explain how his prior interest in FL Mobile impacts Baliga's allegations or theories. Shi then goes on to ask the Court to credit the information provided in press releases issued by the Company on his behalf. (Dkt. 330, at 18.) The Court is neither obligated nor even allowed to consider inferences based upon the contents of documents outside the complaint as Magistrate Judge Figueredo correctly noted.

Moreover, Shi freely mischaracterizes both what the Second Amended Complaint alleges and what the documents he cites purportedly state in order to persuade the Court that the Report & Recommendation should have considered the truth of the contents of those documents. For example, Shi asserts that "Plaintiff alleges that Loeb & Loeb 'found that Shi had fraudulently induced Lin's resignation.'" (Dkt. 330, at 19 (quoting SAC ¶ 71).) This is an incomplete quotation which suggests that the allegation relates to Lin's resignation from *Link Motion*. The actual allegation in the Second Amended Complaint is that:

> in September 2019, LKM made public Loeb & Loeb's searing findings. Loeb & Loeb's investigation found that Shi had fraudulently induced Lin's resignation from LKM's subsidiary RPL by forging or causing the forgery of Lin's signature.

> Moreover, Loeb & Loeb also found that the Company's justification for Lin's resignation from the Company in 2014 was false and misleading; he did not resign for "personal reasons" but as a result of the "Chinese government investigation involving matters unrelated to the Company" – the purported anti-corruption campaign into which Lin got swept up.

(SAC ¶ 71.) The document matches Baliga's allegations regarding its contents:

> Loeb & Loeb reported its finding that a Company employee had custody of Dr. Lin's signature stamp, which she had used to "stamp" the letter of resignation as director of RPL. Loeb & Loeb further found that it was "more likely than not" that the employee had done so at the instruction of Dr. Shi. Dr. Lin was the sole director of RPL until the delivery of the letter announcing his resignation in 2016, at which time he was replaced in that capacity by Dr. Shi.

(Dkt. 178-14, at 3.)

Indeed, contrary to Shi's presentation of the Loeb & Loeb report, the Link Motion Board only acted to improve internal procedures and processes as a result of the Loeb & Loeb investigation in the hopes of preventing these kinds of situations in the future:

> Based in part on the findings of the investigation, the Board has concluded that the Company's internal procedures and processes with respect to its decision making and operations should be made more effective and transparent in order to avoid events in the future that could lead to allegations similar to those that have been investigated by the Special Committee. The anticipated improvements will be focused, among other things, on expanded and reinforced management and financial controls and review of financial and operational reporting.

(Dkt. 178-14, at 4.)

With regard to the final factual issue which Shi raised—which, again, is inappropriate for resolution on a motion to dismiss—Baliga never alleged that Link Motion had irrevocably given its interests in FL Mobile to Shi. (Dkt. 330, at 20.) Instead, Baliga has alleged that "Shi exercised total control of the Company, and no material corporate decision could be taken unless and until he approved them." (SAC ¶ 34.) It is notable that Shi does not cite to any pleading when asserting that Plaintiff made this allegation regarding the transaction.

As this discussion illustrates, allowing the Court to accept as true the contents of documents outside of the pleadings would require the type of weighing of the evidence that is simply inappropriate on a motion to dismiss. For this reason, Magistrate Judge Figueredo was correct in determining the Court could not consider these documents for the truth of their contents and rejecting Shi's arguments based upon the contents of those documents. For these reasons, Shi's Objection should be denied.

ii.     **The Report & Recommendation Did Not Err in Finding That Baliga Plead Facts Sufficient to Allege Fraud "In Connection With the Purchase or Sale of Any Security."**

The Report & Recommendation found that Baliga "adequately alleged that he purchased securities of LKM from 2014 through mid-2018." (Dkt. 328, at 23.) Rather than dispute this, Shi argues that Magistrate Judge Figueredo erred by failing to consider specifically whether Baliga's purchases were sufficiently close in time with the alleged misrepresentations. (Dkt. 330, at 20-23.) In so doing, Shi is confusing the necessity that Baliga was a purchaser of Link Motion securities (which Magistrate Judge Figueredo correctly found he was) with the element of reliance. The Report & Recommendation first analyzes the issue of whether or not Baliga was a purchaser of securities before proceeding to the question of reliance. (Dkt. 328, at 28, 40-45.) Indeed, in making his argument Shi cites authority discussing whether the misrepresentations caused a plaintiff to buy or sell shares. (Dkt. 330, at 22 (quoting *Atencio v. Smith Barney*, No. 04 Civ. 5653 (MBM), 2005 U.S. Dist. LEXIS 1526, at *12 (S.D.N.Y. Feb. 1, 2005)).) This question is the relevant analysis in determining whether or not Baliga can show "traditional" reliance. As the Report & Recommendation noted, "traditional" reliance is where a plaintiff is "'aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation' or omission." (Dkt. 328, at 40 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011)).)

14

In short, Shi is attempting to create an extra element that is not supported by any authority. Under Shi's argument, Baliga must show traditional reliance before the Court even gets to a fraud-on-the-market or *Affiliated Ute* analysis. Indeed, the very authority that Shi cites stands for the proposition that it is inappropriate to muddle the various theories of reliance—or transaction causation—with theories of loss causation. *Halliburton Co.*, 563 U.S. at 811-12.

Here Magistrate Judge Figueredo found that Baliga adequately plead that he purchased shares in connection with the purchase or sale of securities. None of the arguments Shi makes to refute this finding are supported by the law. As such, his objection should be denied.

### iii. The Report & Recommendation Did Not Err in Finding That Baliga Plead Facts Sufficient to Allege Misleading Statements or Omissions of Material Facts.

Shi objects to Magistrate Figueredo's conclusion that Baliga adequately plead that Shi made "misleading statements and omissions concerning (1) the purported affiliation between Tongfang SPC and Tsinghua Tongfang; (2) Dr. Shi's financial interest in the Tongfang Transaction; and (3) Tongfang SPC's payment in full of the agreed upon amount for the sale of FL Mobile and Showself." (Dkt. 328, at 26.) Shi argues that other disclosures undermine the conclusions of the Report & Recommendation. (Dkt. 330, at 25-26.)

Shi has failed to demonstrate how any of these disclosures even impact the analysis in the Report & Recommendation. Baliga has not alleged that the Board of Directors opposed the sale of FL Mobile or Showself. (Dkt. 330, at 26.) In fact, Baliga has not alleged that *he* opposed the sale of FL Mobile and Showself. Indeed, Baliga continued investing in Link Motion believing that a divestiture in an arms-length transaction could be beneficial to the company. As the Report & Recommendation notes, once again, the central issues in this case are: "(1) the purported affiliation between Tongfang SPC and Tsinghua Tongfang; (2) Dr. Shi's financial interest in the Tongfang Transaction; and (3) Tongfang SPC's payment in full of the agreed upon amount for the sale of

FL Mobile and Showself." (Dkt. 328, at 26.) None of the disclosures which Shi points to have any impact on any of these core issues.

The only fact that Shi can identify that has any impact on the central issues is that the June 2017 *Seeking Alpha* report found that it could not clearly determine the affiliation between Tongfang SPC and Tsinghua Tongfang, but "concludes that Tsinghua Tongfang holds more than a 60% stake in Neo-Neon Holdings Limited which, in turn, owns Tongfang Securities Limited, which, in turn, owns Tongfang SPC." (Dkt. 328, at 30 (citing Dkt. 178-12).) As Magistrate Judge Figueredo found, this does not, however, "disclose Shi's financial interest in the Tongfang Transaction or the lack of any clear or direct affiliation between Tongfang SPC and Tsinghua Tongfang." (Dkt. 328, at 30-31.)

Shi contends that there is no reason why Shi's financial interest or whether Tsinghua Tongfang is actually involved in the deal would be material. It is plain, however, that engaging in a large transaction with a large reputable company would increase investor confidence that the deal would actually close without significant hitches. Moreover, it is obvious that engaging in a self-dealing transaction with the Chairman and C.O.O. of the company would decrease investor confidence that they were getting the best deal or that the deal would close without the related party acting to take advantage. Indeed, that is why SEC rules expressly require the disclosure of related party transactions. *See* 17 CFR § 229.404.

Finally, Shi introduces for the first time in his objection to the Report & Recommendation an argument that the category of statements and omissions related to whether "Tongfang SPC would pay the remaining balance owed to LKM in connection with the Tongfang Transaction" are not actionable "under the PLSRA's [*sic*] safe harbor rule." (Dkt. 330, at 28.) There is not a single mention of a safe harbor for forward-looking statements in any of Shi's briefing. In an attempt to

suggest that he was not raising this argument for the first time, Shi states that "[t]he Magistrate Judge incorrectly relies on *In re Synchrony* to avoid application of the PSLRA's safe harbor rule." (Dkt. 330, at 30.) Interestingly, Shi does not cite to where this discussion of the safe harbor rule occurs in the Report & Recommendation. This is because Magistrate Judge Figueredo never discussed the safe harbor rule *because Shi never argued it.*

The Report & Recommendation does discuss forward-looking statements based on a passing reference by Shi. (Dkt. 328, at 32-33.) As Magistrate Judge Figueredo notes, Baliga has alleged that "LKM and Shi knew that the deal would never in fact be consummated under the agreed-upon terms." (Dkt. 328, at 32-33 (citing SAC ¶ 50).) The Report & Recommendation properly held that because Shi stood on both side of the transaction and knew that he never intended to compensate Link Motion for FL Mobile and Showself, that this was "more akin to misrepresentations of an existing fact than to projections or expressions of optimism." (Dkt. 328, at 33.)

None of Shi's arguments relating to the "materiality" of Baliga's claims are supported by the law. As such, his objection should be denied.

### iv.     The Report & Recommendation Did Not Err in Finding That Baliga Plead Facts Sufficient to Establish a Strong Inference of Scienter.

Courts in the Southern District of New York and the Second Circuit have construed *Tellabs* and its progeny and have determined that:

> [t]here are at least four circumstances that "may give rise to a strong inference of the requisite scienter":
>
>> where the complaint sufficiently alleges that the defendants (1) "benefitted in a concrete and personal way from the purported fraud"; (2) "engaged in deliberately illegal behavior"; (3) "knew facts or had access to information suggesting that their public statements were not accurate"; or (4) "failed to check information they had a duty to monitor."

*Sjunde AP-Fonden v. Goldman Sachs Group, Inc.*, 545 F. Supp. 3d 120, 142 (S.D.N.Y. 2021) (quoting *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009) (quoting *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000))).

Magistrate Judge Figueredo determined that Baliga adequately alleged that "Shi benefitted in a concrete and personal way from the purported fraud, engaged in deliberately illegal behavior, and knew facts or had access to information suggesting that LKM's public statements were not accurate." (Dkt. 328, at 35.) Shi, however, argues that the Report & Recommendation's citations to cases that came out prior to *Tellabs* is inappropriate—despite the fact that each of those cases has been cited favorably by the Second Circuit since the *Tellabs* decision was issued and are still good law. (Dkt. 330, at 31-32.) In fact, Shi goes so far as to say that the Report & Recommendation's reliance on *Novak* is improper and that the holding relied upon is no longer good law. (Dkt. 330, at 37.) Shi cannot cite *any* case law which has found this holding overturned. In fact, the Second Circuit has cited this very holding approvingly in the past year.[7]

Shi also takes issue with the fact that Magistrate Judge Figueredo cites Plaintiff's counsel's oral argument which simply summarized the allegations of the Second Amended Complaint. (Dkt. 330, at 32.)

Ultimately, Shi argues that the Report & Recommendation is deficient because it "fails to consider, the facts and documents pointed to by Defendants" and arguments based on an

---

[7]     *Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan*, 21-909-CV, 2021 WL 5142702, at *2 (2d Cir. Nov. 5, 2021) (quoting *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 309 (2d Cir. 2015) (quoting *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 108 (2d Cir. 2009) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)))). The holding Shi takes issue with in *Novaks*, is a direct quote from *Shields*. The Second Circuit cited that same holding favorably in *Town of Davie*.

assumption that the facts contained in documents are true. (Dkt. 330, at 33.)[8] Shi seeks to establish a summary judgment standard at the motion to dismiss stage and have the Court evaluate and determine the credibility of the documents and the various parties before the parties have even had an opportunity to engage in discovery. (*Id.*) Because Shi's counternarrative is again based on facts outside of the pleadings and would require the Court to accept the truth of the facts contained in the SEC filings and media reports—rather than simply accepting the fact of those filings and reports— Magistrate Judge Figueredo could not properly consider them.

Despite the fact that Magistrate Judge Figueredo and Shi cite the exact same legal rule from *Tellabs*, Shi argues that the Report & Recommendation misstates and misapplies the legal standard for scienter. (*Compare* Dkt. 330, at 34, *with* Dkt. 328, at 34.) Shi takes issue with the fact that the Report & Recommendation states that "[t]here is no requirement that the wrongdoer be motived by an intent to *specifically* harm or deceive *the plaintiff* or *any other shareholder of the company*." (Dkt. 328, at 37 (emphasis supplied).) It is interesting that the holding from *Tellabs* cited by Shi does not suggest that the intent to deceive be directed at a particular individual. Indeed, when Shi restated the rule he argued that "[t]he intent to deceive investors is a requirement." (Dkt. 330, at 34.) An "intent to deceive investors" is significantly different from "an intent to *specifically* harm or deceive *the plaintiff*."

None of Shi's arguments to negate Magistrate Judge Figueredo's finding regarding scienter are supported by the law. As such, his objection should be denied.

---

[8]   Shi takes a quote out of context to assert that Baliga admits that Tongfang Tsinghua had a controlling interest in Tongfang SPC. Baliga's briefing which Shi cites was reciting the information contained in the documents Shi proffered. (Dkt. 263, at 20) The same brief goes on to make clear that Shi "owned and controlled Tongfang SPC." (Dkt. 263, at 21.)

> **v.      The Report & Recommendation Did Not Err in Finding That Baliga Adequately Pleaded Reliance.**

In a rehash of his arguments presented in Reply, Shi argues that Baliga has failed to adequately plead reliance under a fraud-on-the-market theory. (Dkt. 330, at 35-37; Dkt. 266, at 5-6.) The Report & Recommendation finds that Plaintiff has adequately plead that the misleading statements or omissions were publicly known and material, that the security traded in an efficient market, and that Baliga traded the stock between when the misleading statements or omissions were made and when the truth was revealed. (Dkt. 328, at 40-41.) Magistrate Judge Figueredo notes—as does Shi—that Baliga made only one purchase during the time between when the alleged misrepresentations were made and when the truth was revealed. (*Id.*, at 42.)

Rather than specifically address Shi's attempts to rebut the presumption that the January 19, 2018 purchase is actionable under the fraud-on-the-market theory, the Report & Recommendation notes that because *Affiliated Ute* applies it is not important to sort out Shi's attempt to rebut this presumption. And, Magistrate Judge Figueredo was right that the issue is moot because of her correct finding of *Affiliated Ute* standing.

In any event, despite Shi's argument that the fraud-on-the-market theory cannot apply as a result of prior disclosures, the SEC filings, press releases, and prior reports in the media which Shi asserts constitute those "prior disclosures" do not disclose the key facts revealed in the February 8, 2018 report: (1) that Tongfang SPC and Tsinghua Tongfang are not related entities; or (2) that the Tongfang Transaction was self-dealing and that Shi stood on both sides of the transaction. None of the publicly available facts revealed the material facts disclosed in the February 8, 2018 report.

Shi also raised an argument regarding the lack of price impact for the first time in his reply brief. Baliga had noted that on the day of the February 8, 2018 report, the price of Link Motion securities dropped 41.2%. (SAC ¶¶ 7, 114, 118.) Shi responds with the fact that the stock went up

the next day. This, of course, does not refute that there was a price impact, instead, it simply introduces an issue of fact that is not properly resolved on a motion to dismiss. Similarly, Shi's argument—without citation to authority—that the Report & Recommendation failed to consider whether the price decline started before or after the moment of publication introduces another issue of fact. Moreover, the Report & Recommendation found that Baliga alleged that Link Motion and Shi "denied any wrongdoing and assured investors that the Tongfang Transaction was legitimate." (Dkt. 328, at 44.) Whether Baliga's reliance on the continued representations of Link Motion and Shi following the February 8, 2018 report "raises a question of fact not appropriate for resolution on a motion to dismiss." (*Id.*, at 45.) Indeed, each of these issues requires further factual development before they can be appropriately resolved.

None of Shi's arguments relating to fraud-on-the-market reliance are supported by the law. As such, his objection should be denied.

### vi.     The Report & Recommendation Did Not Err in Finding That Baliga's Allegations Appropriately Invoke the *Affiliated Ute* Presumption.

The Report & Recommendation finds that Baliga has "sufficiently pled reliance under the *Affiliated Ute* theory. (Dkt. 328, at 42-43. Shi, contrary to the law and Magistrate Judge Figueredo's finding, asserts that *Affiliated Ute* is not applicable where there is a mix of positive representations and omissions. (Dkt. 330, at 37-43.) The threshold is not, as Shi suggests, "no positive representations," but that the case "primarily" involves "a failure to disclose." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972). Where a plaintiff invokes *Affiliated Ute*, "positive proof of reliance is not a prerequisite to recovery." *Id.*

As the Report & Recommendation notes, one set of facts giving rise to a duty to disclose is when "a statement is made that would be 'inaccurate, incomplete, or misleading' without further context." (Dkt. 328, at 43 (quoting *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir.

2015).) In this case, Link Motion and Shi repeatedly made statements that were rendered "inaccurate, incomplete, or misleading" by an omission of material facts. (Dkt. 328, at 43.) Under *Affiliated Ute*, "once a plaintiff alleges facts sufficient to support an 'obligation to disclose' and the 'withholding of a material fact,' the plaintiff has sufficiently alleged 'the requisite element of causation in fact.'" (Dkt. 328, at 43 (quoting *Affiliated Ute*, 406 U.S. at 154).)

As the Report & Recommendation recognizes, contrary to Shi's argument that some affirmative misrepresentations exist does not preclude the application of *Affiliated Ute* on a motion to dismiss. (Dkt. 328, at 44.)

This is not a situation, as Shi argues, where subsequent omissions render prior statements misleading. (Dkt. 330, at 39.) Indeed, Baliga alleges that Shi and Link Motion repeatedly made statements which, at the time they were made, were rendered deceptive due to an omission of a material fact. (SAC ¶¶ 84-88; 90-94.) None of Shi's cases regarding prior statements later becoming false not being actionable is relevant to Baliga's assertion that Link Motion and Shi omitted material facts at the time the misleading statement was made.

Indeed, Shi's Objection confounds what a "positive misstatement" is. Shi cites to the statement that "Shi has equity interest in FL Mobile and will continue to participate with [Tongfang] in the future" as a positive misstatement. (Dkt. 330, at 41.) This, however, is an example of a statement that is rendered misleading by the omission of a material fact. This statement implies that Shi has an equity interest in FL Mobile and will maintain that equity interest with Tongfang following the transaction. This statement would be rendered not misleading by the additional disclosure that Shi currently controls Tongfang SPC and will be become the majority owner of FL Mobile following the Tongfang Transaction. None of Shi's authority is applicable to

22

actions where, as here, the case was "primarily about omissions." *City of Livonia Emps' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 182-84 (S.D.N.Y. 2012).

Magistrate Judge Figueredo rightly found this case is primarily a case about omissions. That being the case, the law is clear that the *Affiliated Ute* presumption applies—as Magistrate Judge Figueredo found. Shi's arguments to the contrary are unavailing and must be rejected.

### vii. The Report & Recommendation Did Not Err in Finding That Baliga Adequately Pleaded Loss Causation.

Shi argues both that Magistrate Judge Figueredo erred in determining that Shi had failed to raise loss causation until his reply brief and that Baliga adequately alleged loss causation. First, Shi never raised loss causation in his opening brief. He cites vaguely to a section on the timing of Baliga's purchases of ADR as evidence that he raised loss causation. This section is, as noted previously, a discussion of reliance which attempts to create a requirement of direct reliance regardless of what theory or theories Baliga may use to show reliance. (Dkt. 262, at 18-19.) Next, without any citation to Baliga's briefing, Shi simply asserts that Baliga recognized that his opening brief contained "a loss causation argument and respond[ed] with a counterargument in his opposition papers." (Dkt. 330, at 43.) The lack of citation is telling, because Baliga's response brief does not contain a section on loss causation—in fact, the phrase never appears in Baliga's brief. While it would be appropriate for Shi to respond to a new argument raised by Baliga, that did not occur here.

Magistrate Judge Figueredo rightly sets out the standard for pleading loss causation:

"Loss causation . . . requires a plaintiff to show that a misrepresentation that affected the integrity of the market price also caused a subsequent economic loss." *Halliburton*, 563 U.S. at 812 (emphasis in original); *Lentell [v. Merrill Lynch & Co., Inc.]*, 396 F.3d [161,] 172 [(2d Cir. 2005)] ("Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.") (citation and quotation marks omitted). To plead loss causation, a plaintiff must "allege not only that its loss was foreseeable, but also that the alleged misstatement or omission concealed something from the market that, when

23

disclosed, negatively affected the value of the security." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 677 (S.D.N.Y. 2007) (citation omitted). "In its simplest form, this may be achieved by alleging that the market reacted negatively to a corrective disclosure, which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted." *Id.* (internal quotation marks and citation omitted).

(Dkt. 328, at 45.) Particularly relevant to this case:

> while "[a] plaintiff cannot satisfy loss causation by pointing to 'a slow, steady decline' in stock prices," he can do so by pointing to "'a sharp drop' resulting from the announcement of concealed facts." *Sjunde AP-Fonden*, 545 F. Supp. 3d at 146 (quoting *In re Sec. Capital Assur., Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 599 (S.D.N.Y. 2010)). And "[t]he existence of intervening events that break the chain of causation, such as a general fall in the price of stocks in a certain sector, is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss." *Nathel v. Siegal*, 592 F. Supp. 2d 452, 467 (S.D.N.Y. 2008) (internal quotation marks and citation omitted); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 507 (S.D.N.Y. 2011) (holding that at the motion to dismiss stage, the complaint "need not rule out all competing theories for the drop in . . . stock price; that is an issue to be determined by the trier of fact on a fully developed record"); *In re Pronetlink Sec. Litig.*, 403 F. Supp. 2d 330, 336 (S.D.N.Y. 2005) ("Defendants' contentions that intervening causes . . . were to blame for the collapse of PNL's share price must await the trial.").

(Dkt. 328, at 46.)

As already discussed, Baliga alleged with specificity actionable misleading statements and omissions. Baliga alleged that the truth began to emerge with the February 2018 *Seeking* Alpha Report. (SAC ¶ 116.) Baliga alleged that the misleading statements and omissions affected the integrity of the market price of the security and that, upon the disclosure, prices of the Link Motion Securities dropped 41.2%. (SAC ¶¶ 7, 114, 118.) These allegations are sufficient to plead loss causation.

Shi offers several arguments regarding loss causation; none of which holds up. He asserts that Plaintiff's alleged loss is not tied to a specific misrepresentation, but Baliga has alleged specific misleading statements and omissions by Shi and Link Motion. *See* Sections C.v-C.vi, *supra*. It was entirely foreseeable that the disclosure of the fact that the Tongfang Transaction was

not with a well-respected third-party, but instead a self-dealing transaction with a Chairman who had already been embroiled in scandal would cause the price of Link Motion ADR to drop sharply. And the evidence is clear that it did drop sharply. Indeed, it is notable that Shi fails to get into the details of the price of ADR, because even after the slight recovery the following day the price of the security was still down *significantly* from prior to the publication of the *Seeking Alpha* article and this despite the fact that the Company and Shi were publicly refuting the veracity of the *Seeking Alpha* article.

Shi's references to artificially inflated prices in *Lentell* are inapposite. In this case, while Baliga does use the phrase artificially inflated, he does not assert that he was damage by the artificial inflation, but rather by the sharp drop in the price of securities when the truth was disclosed. A "sharp drop" in securities prices is one of the most common basis for showing loss causation. *Sjunde AP-Fonden*, 545 F. Supp. 3d at 146. It is unclear why Shi believes it is inappropriate here.

Moreover, as the Report & Recommendation finds, Shi's attempts to rebut the details of a drop in the price of Link Motion securities would only serve to create an issue of fact to be resolved following discovery. It is not appropriate for resolution on a motion to dismiss.

For each of these reasons, Shi's objections regarding loss causation should be denied.

### D.   The Report and Recommendation Properly Found that Baliga Adequately Alleged a Section 20(a) Claim Against the Individual Defendants.

Shi's only argument with regard to Baliga's claims under Section 20(a) of the Exchange Act is that is relies on his claims under Section 10(b) and Rule 10b-5. Because the claims under Section 10(b) and Rule 10b-5 survive for the reasons discussed above, Baliga's Section 20(a) Claims survive as well.

**E.      The Report and Recommendation Did Not Err in Finding that Baliga Adequately Pleaded a Claim for Common Law Fraud.**

The Report & Recommendation correctly concludes that Baliga's allegations "are sufficient to plausibly allege" the elements of a common law fraud claim. (Dkt. 328, at 53-54.) Shi argues, with only a passing reference to his arguments on Section 10(b), that Magistrate Judge Figueredo erred "in finding that Plaintiff's allegations 'plausibly allege a material misrepresentation or omission made with scienter.'" (Dkt. 330, at 46.) As discussed previously, the Report & Recommendation correctly determined that Baliga adequately alleged both the existence of material misrepresentations and omissions and a strong inference that Shi acted with scienter. The same is true here.

In addition to the application of the *Affiliated Ute* presumption, which the Report & Recommendation discusses, Baliga specifically alleges that he "reasonably relied on the materially false and misleading statements and omissions alleged herein in reaching investment decisions." (SAC, ¶ 119.) Indeed, Baliga has alleged that he "directly relied on Defendants' false and misleading statements." (SAC, ¶ 124.) "[O]n a motion to dismiss for failure to state a cause of action, "a plaintiff ... need only plead that he relied on misrepresentations made by the defendant ... since the reasonableness of his reliance [generally] implicates factual issues whose resolution would be inappropriate at this early stage." *Knight Sec. L.P. v. Fiduciary Tr. Co.*, 5 A.D.3d 172, 173 (2004).

Baliga has clearly alleged that he acted in reliance upon the Shi's false and misleading statements and omissions. The only case which Shi cited in his opening brief to rebut Baliga's reliance was *Melgen v. Bank of Am. Corp. (In re Bank of Am. Corp. Sec.)*, No. 09 MD 2058 (PKC), 2013 U.S. Dist. LEXIS 176295 (S.D.N.Y. Dec. 11, 2013). Notably, *Melgen* did not feature a single Plaintiff alleging that he personally relied upon a list of misrepresentations or omissions which he

had just alleged. Instead, *Melgen* features a group of Plaintiffs generally alleging that they would have sold their stock if they knew the whole truth. The individual nature of this action sets it apart from *Melgen*.

While Shi has previously argued that Baliga cannot allege reliance because his purchases did not correspond to any of the dates of Defendants' false statements, that argument is without merit (and without any citation to authority). Baliga purchased Link Motion ADRs in 32 separate transactions over the course of 4.5 years. Baliga stayed up to date with news regarding Link Motion and the market in general, and purchased Link Motion securities based upon the representations of Link Motion and Shi—including their strong denials following the February 8, 2018 Report.

Because Baliga adequately pleads his reliance on Defendants' misleading statements and omissions, Shi's objections should be denied.

### F.    The Report and Recommendation Did Not Err in Finding that Baliga Adequately Pleaded a Claim for Negligent Misrepresentation.

Shi's only objection to the Report & Recommendation's conclusions on the claim for negligent misrepresentation is that Baliga has not adequately pleaded a special relationship between Shi and Baliga. Notably, however, Shi never addressed Baliga's argument that Shi's position as Chairman of the Board gave him a duty to provide correct information to Link Motion and to investors in Link Motion. It was this duty that put him in a special relationship with Link Motion investors.

In *Doe v. Uber Techs., Inc.*, 20-CV-8446 (LJL), 2021 WL 3193166, at *19 (S.D.N.Y. July 28, 2021), the Court held that "Plaintiff has plausibly alleged that Uber made certain material misrepresentations about safety on which Plaintiff relied and which caused her harm, she has stated a viable claim for negligent misrepresentation." *Id.* That is to say, in *Uber*, Uber made statements that were directed at the plaintiff and which Uber intended the plaintiff to rely on.

27

The same holding applies here. Shi had a duty in his role as Chairman of the Board to give correct information to Link Motion and to investors in Link Motion. Nonetheless, as discussed previously, Shi made numerous materially false and misleading statements and omissions as he engaged in self-dealing transactions to loot the company. Shi knew that Link Motion investors, such as Baliga, desired accurate information for the purpose of making investment decisions. In this case, Baliga did rely on this information to his detriment.

The Report & Recommendation appropriately found that this argument at least raised an issue of fact regarding whether a special relationship existed:

> A corporation has a duty "upon choosing to speak" to speak "truthfully about material issues." *Caiola [v. Citibank, N.A., New York]*, 295 F.3d [312,] 331 [(2d Cir. 2002)]; see also *In re Lions Gate Entertainment Corp. Securities Litig.*, 165 F. Supp. 3d 1, 15 (S.D.N.Y. 2016). Similarly, a corporate director has a duty to "perform duties in good faith and with reasonable care." *Leighton v. Poltorak*, 2018 WL 2338789, at \*7 n.60 (S.D.N.Y. May 23, 2018). Here, whether a special relationship existed between Shi, given his role as Chairman, and Plaintiff is a fact-specific determination not suitable for resolution at the pleading stage. See *Joseph v. Mobileye, N.V.*, 225 F. Supp. 3d 210, 221 (S.D.N.Y. 2016) ("[W]hether the nature and caliber of the relationship between the parties is such that [Plaintiff's] reliance on a negligent misrepresentation is justified generally raises an issue of fact.") (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (N.Y. 1996)); *Century Pac., Inc. v. Hilton Hotels Corp.*, No. 03-CV-8258, 2004 WL 868211, at \*8 (S.D.N.Y. Apr. 21, 2004) ("Courts in this circuit have held that a determination of whether a special relationship exists is highly fact-specific and 'generally not susceptible to resolution at the pleadings stage.'") (quoting *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 536 (S.D.N.Y. 2001)); see also *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 705-06 (S.D.N.Y. 2012) (noting that a "sparsely pled special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where the complaint emphatically alleges" the other factors necessary to plead a claim) (internal quotation marks and citation omitted).

(Dkt. 328, at 55-56.)

For these reasons, Shi's objections to Magistrate Judge Figueredo's recommendations with regard to the claim for negligent representations should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should enter an order denying Shi's Objection, accepting the Report & Recommendation, and denying the motion to dismiss.

**GREENBERG TRAURIG, LLP**

Dated: September 19, 2022        By: <u>*/s/ Toby S. Soli*</u>

> Toby S. Soli
> One Vanderbilt Avenue
> New York, NY 10017
> Telephone: (212) 801-9200
> Email:  solit@gtlaw.com
>
> Miriam G. Bahcall
> (admitted *pro hac vice*)
> 77 W. Wacker Dr., Suite 3100
> Chicago, IL 60601
> Telephone: (312) 476.5135
> Email: bahcall@gtlaw.com
>
> *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Toby S. Soli, an attorney, certify that I electronically filed Plaintiff's Response to Defendant Vincent Wenyong Shi's Objection to the August 10, 2022 Report & Recommendation with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record on this 19th day of September, 2022.


_/s/ Toby S. Soli_ _____
Attorney for Plaintiff