**FELICELLO**  Michael James Maloney  Felicello Law P.C.
Partner  366 Madison Avenue
3rd Floor
New York, NY 10017

Tel. +1 (212) 584-7806
mmaloney@felicellolaw.com

**VIA ECF**  September 22, 2022

Hon. Victor Marrero
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: *Baliga, et al. v. Link Motion Inc., et al.*, Case No. 1:18-cv-11642-VM-DCF (S.D.N.Y.)

Dear Judge Marrero:

We represent Dr. Vincent Shi ("Dr. Shi") and Link Motion, Inc. (the "Company") in connection with the above-referenced matter. We submit this letter in response to the Court's directive, in Your September 15, 2022 Order, to "address []: (1) whether the [Company's] Board of Director's decision to meet in early September 2022[1] violates any of the Court's orders in this matter; and (2) the extent of the Court's jurisdiction to address (a) any purported violations of the Court's orders by the LKM Board and (b) the [] Board's ability to meet." Dkt. 338 at 13. In short, the Board of Directors (the "Board") did not violate any Court orders and any controversies concerning the recent actions of the Board are not before this Court.

### The Link Motion, Inc. Board Did Not Violate This Court's Orders

The Court's February 1, 2019 order (the "February 1, 2019 Order") appointed Robert W. Seiden as receiver (the "Receiver") for the Company and preliminarily enjoined the Company from taking certain actions. Specifically, Section I(2) of the Court's February 1, 2019 Order "preliminar[il]y enjoin[ed] Defendants" to "ensure that litigation or arbitration matters are directed and controlled by the Company's lawyers, the appointed Receiver, and/or the non-conflicted board members *as directed by the Receiver*." Dkt. 26 (emphasis added). This injunction prevented the Board from taking legal action except as directed by the Receiver. The February 1, 2019 Order did not, however, prevent the Board from meeting. There are no other orders enjoining the Company or the Board from taking action.

Your Honor's August 25, 2022 decision at Dkt. 331 dissolved the preliminary injunction "effective immediately." Dkt. 331 at 7 and 23. Dissolution of the preliminary injunction released the Board from any restrictions from taking legal action on behalf of the Company. Upon dissolution of the preliminary injunction, the Board was free to retain counsel for the Company and make its own decisions regarding legal matters, without oversight by the Receiver. Indeed, the Court has acknowledged that the Receiver's duties and function have been substantially narrowed.

---

[1] The Company notes that prior correspondence suggested that the meeting occurred on September 1, 2022. Those references are hereby amended to reflect that the Board met on August 31, 2022. The discrepancy arose because of the time difference between New York and Beijing. Counsel was informed of the action on September 1, 2022.

*Admitted to practice law in New York

Dkt. 338 at 3.[2] Further, Felicello Law P.C. had already been granted leave to represent the Company with respect to the motion to dismiss, Dkt. 175, and nothing in the Court's orders states or even suggests that the Company should be deprived of its right to legal representation while the Receiver is preparing his accounting. Thus, the Board did not violate any of this Court's orders in this action by meeting on August 31, 2022[3] and voting to take action regarding the Company's current legal matters.

The members of the Board were duly authorized to meet and take action. As this Court has acknowledged, "the Cayman Court did not recognize the Receiver's power to appoint or replace a director of LKM." Dkt. 338 at 7. Accordingly, the Receiver's purported changes to the Board were null and void. Five of the Company's duly appointed directors met on August 31, 2022 to consider the Company's legal matters. These directors constituted a quorum of the duly appointed directors. *See* Dkt. 36-4 at Article 99 (articles of association); Dkt. 285-4 at ECF pp.122-124 (registry of directors as of January 4, 2022) and Dkt. 334-1 (registry of directors as of August 29, 2022). Four of the directors (including two independent directors) voted in favor of proposals considered by the Board, none voted against, and one abstained. The Board authorized two of the independent directors to take action to carry out the Board's resolutions. The two independent directors then issued instructions to Felicello Law P.C. and signed a conflict waiver.

Once the preliminary injunction was dissolved, the Board had a duty to meet and act regarding the Company's legal matters. *See* Dkt. 36-4 at Article 88 (articles of association). Two of the legal matters requiring attention were the legal representation of the Company in this action and the derivative malpractice action commenced by China AI Capital Ltd., on behalf of the Company, in the action *China AI Capital Ltd. v. DLA Piper LLP (US)*, Case No. 1:21-cv-10911-VM (the "*China AI* Action"). It was proper for the Board to consider that legal malpractice claim because it belongs to the Company, not China AI, which acted only in a derivative capacity after having first made a demand on the Receiver.

The Board also had a duty to meet as quickly as possible. Magistrate Judge Freeman had previously declined to toll the statute of limitation applicable to the legal malpractice claim, Dkt. 274, and, by our calculations the Company's time to bring that claim would have expired on September 17, 2022. The Board had less than one month to act. Accordingly, the Board's August 31st meeting and the actions taken at that meeting regarding the Company's legal matters did not violate any orders of this Court.

### The Court Has Jurisdiction Over the Claims Asserted in the Operative Pleading But Does Not Have Jurisdiction over Controversies that Are Outside the Scope of That Pleading

As the Court recognized when it denied a prior application by Plaintiff, the scope of the Court's jurisdiction is limited by the scope of the controversies currently before the Court. *See*, *e.g.*, Dkt. 252 at 4-5 (denying a motion by Plaintiff to direct the Receiver to convert ADSs into shares, a function ordinarily reserved for the Board), citing *North Carolina v. Rice*, 404 U.S. 244,

---

[2] The Court reduced the scope of the Receiver's authority by directing him to "focus its efforts on the accounting" and not to "seek any extraordinary actions from the Company's Board." Dkt. 338 at 3.

[3] *See* footnote 1, *supra*.

246 (1971); *Flast v. Cohen*, 392 U.S. 83, 96 (1968); *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 85 (2d Cir. 2018).

As of October 5, 2020, the operative pleading in this case is Plaintiff's Second Amended Complaint, which asserts only legal claims for money damages. Dkt. 166 (Second Amended Complaint); Dkt. 331 at 14-15[4] (citing *Baliga v. Link Motion, Inc.*, 2022 U.S. Dist. LEXIS 43104 *13; 2022 WL 2531535, at *18). This Court clearly has subject matter and ancillary jurisdiction to resolve the controversies squarely presented by the legal claims in the Second Amended Complaint. But the Second Amended Complaint presents no controversies concerning any breach of any duty owed by the Board or the Board's management of the Company's current legal affairs.[5] Therefore, issues concerning the recent actions of the Board are not currently within the scope of the Court's jurisdiction. The Court correctly denied prior motions by plaintiff and the Receiver seeking ruling on matters outside the scope of the operative pleadings. *See Baliga* Action, Dkt. 252 at 4-5, *citing North Carolina v. Rice*, 404 U.S. 244, 246 (1971); *Flast v. Cohen*, 392 U.S. 83, 96 (1968); *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 85 (2d Cir. 2018); Dkt. 331 at 21-22. The same reasoning applies here.

Also, there is no irreparable harm that would support invocation of the Court's powers with respect to the Board's recent actions. Dkt. 275 at 37-39;[6] Dkt. 331 at 15.[7] *See also Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 60 (1975) (preliminary injunction not available for "persons who . . . have an adequate remedy by way of an action for damages, thus negating the basis for equitable relief"); *Minzer v. Keegan*, CV-97-4077 (CPS), 1997 U.S. Dist. LEXIS 16445, at *15 (E.D.N.Y. Sep. 22, 1997); *CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276, 287 (2d Cir. 2011) (presumption "that courts can use all available remedies" not applicable when there is no showing of irreparable harm). Indeed, the finding by Magistrate Judge Freeman that Plaintiff has failed to demonstrate any irreparable harm—and that he has adequate legal remedies for the harms alleged in the Second Amended Complaint—is the basis for the Court's decision to dissolve the preliminary injunction and discharge the Receiver. *See* Dkt. 331 at 15 ("Fundamentally, Baliga cannot show irreparable injury because he now alleges money damages"). Baliga (who is no longer purporting to represent any shareholders) has not suffered any harm as a result of the meeting of the Board decision to take action to pursue a legal claim against a third party.

Respectfully submitted,

*/s/ Michael James Maloney*

Michael James Maloney

cc: All counsel of record (via ECF)

---

[4] "As noted above, Magistrate Judge Freeman found that Baliga [Plaintiff] no longer asserts shareholder derivative claims but instead maintains only direct securities claims."

[5] Plaintiff's claim for "continuation" of the Receiver is a nullity and fails to provide a cognizable ground to exercise equitable powers over the Company or its Board.[5] *See Gordon v. Washington*, 295 U.S. 30, 38 (1935).

[6] "Given that . . . Baliga has made no showing that money damages would be insufficient to compensate him for the losses he allegedly suffered directly from Defendants' claimed securities fraud, he simply no longer has a basis to argue that, absent an injunction, he would suffer 'irreparable harm.'"

[7] "Magistrate Judge Freeman found that Baliga failed to show how money damages would be insufficient to compensate him for injury caused by the Defendants' alleged securities fraud."