UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE BALIGA,

                Plaintiff,

    - against -

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYOUNG SHI, JIA LIAN, XIAO YU,
                Defendants.

No. 1:18-cv-11642-VM-VF

**DECLARATION OF MICHAEL JAMES MALONEY IN FURTHER SUPPORT OF APPLICATION FOR A TEMPORARY INJUNCTION**

MICHAEL JAMES MALONEY declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am an attorney duly admitted to practice law before the United States District Court for the Southern District of New York. I am a partner of Felicello Law P.C. and counsel of record for Defendant Vincent Wenyong Shi ("**Dr. Shi**") and Link Motion Inc. (the "**Company**" or "**LKM**").

2. I make this declaration in further support of the emergency application by Dr. Shi and the Company, pursuant to Rules 60 and 65 of the Federal Rules of Civil Procedure, and Local Rule 6.3, for an order temporarily enjoining the court-appointed receiver, Robert W. Seiden (the "**Receiver**"), from taking any action to convene any extraordinary general meeting ("**EGM**") of the shareholders of the Company pending a final ruling on the Receiver's accounting and his discharge.

3. The basis for this declaration is my review of the record in this action, the documents and other information available to me, my personal knowledge, and information provided to me by my clients.

1

4. As set forth in our moving papers, the Court issued a Decision and Order on August 25, 2022 granting Dr. Shi's motion to dissolve the preliminary injunction and discharge the Receiver and directing him to prepare an accounting. Dkt. 331. The Court adopted the findings of Magistrate Judge Freeman, in her Report & Recommendation dated March 9, 2022 (the "**Report & Recommendation**"), that there is no longer any basis for continuation of the preliminary injunction or receivership because Plaintiff withdrew all of his derivative claims upon the filing of the Second Amended Complaint and ordered that, pending a full accounting, the Receiver take no "extraordinary action" in the interim. Dkt. 331 at 7 and 20-23.

**A.    The Status Quo When the Receiver Was Appointed**

5. The Company is incorporated under the laws of the Cayman Islands.

6. Under Cayman Islands law, only registered shareholders are recognized as having standing as shareholders. *See* Dkt. 131, 154.

7. A true and correct copy of the register of shareholders of LKM as of October 22, 2018 (the "**Original Investors**") was filed at ECF Dkt. ("**Dkt.**") 130-1.

8. This action was commenced on December 13, 2018, and the Receiver appointed on February 1, 2019 (the "**Appointment Order**"). Dkt. 26.

9. The order appointing the Receiver directed him "to protect the status quo of the Company, to prevent waste, dissipation, or theft of assets *to the detriment of investors*." Dkt. 26 at II.(1).

10. At the time of appointment, Deutsche Bank Trust Company Americas ("**Deutsche Bank**") was an Original Shareholder and the largest holder of Class A common stock of LKM, with 438,043,750 shares of class A stock, representing 88.50% of issued and outstanding shares from that class. Dkt. 130-1 at ECF page 3 of 10.

11.     At the time of appointment, China AI Capital Ltd ("**China AI**") was an Original Shareholder and the largest holder of Class B common stock of LKM, with 70,175,439 shares of class B stock, representing 92.91% of issued and outstanding shares from that class.[1] Dkt. 130-1 at ECF page 7 of 10.

12.     At the time of appointment, the Company's major assets included the Company's interests in certain "VIE" entities operating in China. Dkt. 178-6 at ECF pp.27-28; Dkt. 178-7 at ECF p.236.

13.     A VIE entity is one over which a reporting company exercises contractual control such that the financial results of the VIE entity is consolidated with the reporting company even though the reporting company does not own shares of the VIE outright.[2] *See*, *e.g.*, Dkt. 178-6 at ECF pp.27-28 and 32-33; Dkt. 178-7 at ECF pp.236.

14.     Before appointment of the Receiver, the Company recognized on its books significant revenues from several VIE entities in China. *See id.*

15.     For example, annexed hereto as **Exhibit A** is a true and correct of an April 10, 2018 report filed by the Company with the S.E.C. disclosing the Company's financial results for the fiscal year ending December 31, 2017, which reported consolidated revenues of $13.4 million. Exhibit A at p.3 and 14.

---

[1] China AI had acquired its Class B common stock by way of a Subscription Agreement dated July 19, 2018. Dkt. 209.; Dkt. 205-1; Dkt. 209-1. Pursuant to the terms of the Subscription Agreement, China AI paid the first installment of $10,000,000. Dkt. 209, 209-1. The Company used those funds to pay down corporate debt obligations. Dkt. 155 ¶¶ 40-46 (referring to Dkt. Nos. 155-8, 155-9, 155-10, 155-11). The Subscription Agreement required the Company to satisfy certain conditions precedent (including the filing of an annual report with the S.E.C.) before China AI was obligated to pay its second installment of $10,000,000. Dkt. 209, 209-1. The Company was unable to satisfy the conditions precedent to payment of the second installment under the China AI Subscription Agreement. Dkt. 209, 209-1. Accordingly, LKM and China AI entered into a First Amendment to Subscription Agreement, extending LKM's time to satisfy the conditions precedent to payment of the second installment. Id.
[2] *See generally In re Iconix Brand Grp., Inc.*, 2019 U.S. Dist. LEXIS 171591, at *10-11 (S.D.N.Y. Sep. 30, 2019) ("Under the variable interest entity model, a reporting company must consolidate another entity as a VIE where (1) the reporting company holds a variable interest in the other entity; (2) the other entity is a variable interest entity; and (3) the reporting entity is the primary beneficiary of that variable interest entity").

16. Accordingly, the Receiver was charged with protecting the Original Investors, such as Deutsche Bank and China AI, and the Company's interests in the VIE entities.

17. The Appointment Order did not grant to the Receiver the power to issue shares of stock of LKM or to sell shares of stock of LKM. *See* Dkt. 26.

**B.  The Receiver Engaged Lilin "Francis" Guo ("Guo") as an Agent for the Receivership in the People's Republic of China (the "PRC")**

18. When this action was commenced, Guo was not a registered shareholder of the Company and, therefore, not an Original Shareholder entitled to the Receiver's protection. *See* Dkt. 130-1; Dkt. 26.

19. Guo was not a Director of LKM when this action was commenced. *See* Dkt. 95; Dkt. 132.

20. In or around April 2019, the Receiver retained Guo as an agent in the PRC for the receivership. Dkt. 303-1 at ¶ 1; Dkt. 43 ¶ 10 at 3. *See also* Dkt. 50-3 at 2.[3]

21. Guo has affirmed that "I am a representative of Robert Seiden (the 'Receiver') in his capacity as the Receiver over Link Motion Inc. ('LKM' or the 'Company') in the People's Republic of China ('PRC')." Dkt. 239-1 ¶ 1 (July 19, 2021 affidavit).[4]

**C.  The Note Agreement**

22. In or around June 2019, the Receiver entered into a Note Agreement with Guo. *See* Dkt. 71 (the "**Note Agreement**").

---

[3] The Receiver's March 14, 2019 letter falsely describes Guo as a "shareholder" of the Company. As late as August 7, 2020, Guo was not a registered shareholder of the Company. *Compare* Dkt. 194-2 (August 7, 2020 shareholder list) at ECF pages 8-11 of 11 *to* Dkt. 285-4 (November 2, 2021 shareholder list) at ECF pages 115-16 of 283. *See also* Dkt. 142-2 (May 4, 2020 register of shareholders).

[4] Throughout this litigation, the Receiver and Guo have made false assertions against Dr. Shi which Dr. Shi categorically denies.

4

23. The Receiver submitted the Note Agreement to the Court *ex parte* and under seal. Dkt. 71. The Receiver requested that the Note Agreement be filed under deal based on unsubstantiated concerns about Guo's safety. *See* Dkt. 309.

24. Neither the Defendants nor any other person with an interest in the Company had an opportunity to review and object to the Note Agreement or its terms.

25. The Receiver later disclosed that the purpose of the note was to obtain "alternative financing." Dkt. 309 at 2.

**D.  The Receiver's Application for Recognition of his Powers in the Cayman Islands**

26. On or about January 13, 2020, the Receiver applied to the Cayman Court for recognition in that jurisdiction of his appointment as receiver. Dkt. 173-1.

27. Defendants were not served with notice of the Receiver's application to the Grand Court of the Cayman Islands (the "**Cayman Court**") and, therefore, did not have an opportunity to seek leave of this Court to be heard in the proceedings before the Cayman Court.

28. On February 4, 2020, the Cayman Court issued an order recognizing the Receiver's appointment. Dkt. 173-17.

29. The Cayman Court's order recognizing the Receiver stated that it was recognizing the powers and functions granted to the Receiver by this Court except to the extent such powers conflicted with Cayman law. Dkt. 173-16 at ¶15; 173-17.

**E.  The Court correctly denied the Receiver's prior attempts to convene an EGM pending the outcome of motions concerning the appointment of the Receiver**

30. On October 5, 2020, Plaintiff filed his Second Amended Complaint in which he withdrew all of his derivative claims because he was not a registered shareholder under Cayman law. Dkt. 166.

31. Soon after, Plaintiff advised the Court of his intention to move for an order directing

the Receiver to convert his ADSs into registered shares of the Company, Dkt. 196, 198, the purpose of which was to cure Plaintiff's lack of standing to sue derivatively. Dkt. 221 at 2, 252 at 3.

32. Defendants had also filed a motion to discharge the Receiver on the grounds that the basis for his appointment had terminated upon the filing of the Second Amended Complaint and Plaintiff's withdrawal of his derivative claims. Dkt. 180.

33. On November 12, 2020, the Receiver filed a letter motion requesting authority to call an EGM to appoint Guo as a director and to remove Dr. Shi. Dkt. 186.

34. In light of the motions by Plaintiff and Defendants, the outcome of which would have a substantial impact on the nature of the case and the receivership, the Court denied the Receiver's request for leave to convene an EGM without prejudice "to renew, in the event any or all of those motions remain viable following the resolution of the conversion issue and any related motion by Plaintiff for leave to file a third amended complaint." Dkt. 198 (docket text order).

35. The Court referred the motions to convert and to discharge to Magistrate Judge Freeman. Dkt. 187, 188.

36. In a memorandum and order dated May 26, 2021, Dkt. 221, Judge Freeman denied the Plaintiff's motion to convert Plaintiff's ADSs into shares. The denial of this motion was later affirmed by this Court. Dkt. 252. In accordance with Judge Freeman's prior text order, Dr. Shi promptly renewed his motion to discharge the Receiver. Dkt. 227.

**F.     Guo and the Receiver Circumvented Judge Freeman's Order**

37. When the Court affirmed Judge Freeman's denial of Plaintiff's motion for conversion, Defendants renewed their motion to discharge in accordance with the Court's prior directive. Dkt. 198, 227.

38. The Receiver, however, did not renew his motion before this Court for leave to convene an EGM. Instead, the Receiver filed an application to the Cayman Court for authority to convene an EGM.

39. The Receiver notified this Court, on February 4, 2022, of the application to the Cayman Court for authority to convene an EGM. Dkt. 268.

40. The Receiver had made this application to the Cayman Court without notice to Defendants or leave of this Court.

41. Also, the Receiver failed to disclose in his February 4, 2022 letter any details concerning the purpose of the EGMs or any other details concerning his application to the Cayman Court. Dkt. 268.

42. Reference is made to my declaration of March 7, 2022, Dkt. 276-1, in which I describe the Receiver's application to the Cayman Court for leave to issue the notices of two EGMs (the "**1st Notice**" and the "**2nd Notice**," and together the "**Notices**")[5].

43. The Notices purport to submit to a vote of the shareholders and directors proposed resolutions (in sequential order):

> To appoint Guo, Ming Dai, Weilin Guo, Hua Zeng, Xing Tang, and Li Wang as directors;
>
> To remove Dr. Shi, Jun Zhang, Bruson Li, Jia Lian, and Xiao Yu as directors; and
>
> "[T]hat the Company take all steps reasonably necessary to comply with the Order Granting Preliminary Injunction and Appointing Temporary Receiver dated 1 February 2019 made by the United States District Court for the Southern District of New York in case number 1:18-cv-11642 (the US Court Order); and"
>
> "[T]hat all actions taken by the Receiver, and the Receiver's agents, since his appointment under the US Court Order on behalf of the Company were for the

---

[5] These capitalized terms have the meanings assigned to them in my March 7, 2022 Declaration.

7

      benefit of the Company and accordingly be and are ratified, sanctioned, adopted and approved."

Dkt. 276-2, 276-3. *See also* Dkt. 271, 271-1.

44. In the Notices, the Receiver claimed to have called the EGMs at the request of unidentified "certain shareholders." Dkt. Nos. 276-2, 276-3.

45. In a copy of the Receiver's papers submitted to the Cayman Court (which were later produced here), the Receiver states that he made the application at the request of Guo. Dkt. 285-3 at ¶ 5 ("As explained in more detail below, ***the genesis of this application is a request from Mr Lilin Guo (Mr Guo)***") (emphasis added).

46. On March 16, 2022, the Court granted an Order to Show Cause to temporarily enjoin the EGMs (the "**EGM Order to Show Cause**"). Dkt. 277.

### G. The Share Issuance to Guo was an Unfair and Highly Damaging Expropriation of the Economic and Voting Interests of the Original Investors

47. The Receiver omitted to disclose in his affirmation to the Cayman Court how exactly Guo came to be a "shareholder" of the Company.

48. The Receiver later revealed that Guo had obtained these shares by exercise of a convertibility feature of the Note Agreement (which remains under seal). Dkt. 326 at 87:6 to 87:11; Dkt. 347.

49. A copy of LKM's register of shareholders as of November 2, 2021 was included with the papers submitted by the Receiver to the Cayman Court. Dkt. 285-4 at ECF pages 109 to 118.

50. The November 2, 2021 register of shareholders shows Guo as the owner of 86,272,750 shares of Class B common stock of LKM, representing 53.32% of the issued and outstanding Class B stock of LKM. Dkt. 285-4 at ECF pages 116.

51. Pursuant to Article 6(c) of the 6th Am. Memo. of Assoc., holders of Class B stock have super-voting power. Dkt. 130-3 at ECF page 7 of 32.

52. Accordingly, the shares granted to Guo provide to him 40% voting control over the Company and approximately 13% of the entire equity capital of the Company.

53. The issuance of the stock to Guo represents an expropriation from the existing shareholders of 40% of the shareholders' voting power and 13% of their economic interest in the Company.

54. Neither Defendants nor counsel were served with notice of any application, order, or judicial action by the Cayman Court or this Court approving the issuance of 86,272,750 registered shares of Class B stock to Guo.

### H. On information and belief, the conversion features of the Note Agreement were unlawful

55. The Note Agreement is currently sealed, but Dr. Shi and the Company have recently filed a motion for relief from the orders maintaining the Note Agreement under seal based on newly discovered evidence. Dkt. 356.

56. Based on status letters recently unsealed and filed on the docket, Dkt. 340-348, and the other records currently available, it appears that the Note Agreement contains a conversion feature the grants to Guo the power to elect conversion at his discretion. *See* Dkt. 347 ("Mr. Guo *elected* to convert a portion of the loan to shares in LKM in accordance with the terms of the loan agreement") (emphasis added).

57. Based on the massive number of shares that have been issued to Guo, as compared to services that he claims to have provided to the receivership, it also appears that the shares were issued to him at a massive discount compared to the book equity value of the Company. *See, e.g.*, Exhibit A at 12.

9

58. The New York Court of Appeals has ruled that the stock issued at a substantial discount to value, pursuant to convertible notes, may violate New York's criminal usury law, Penal Law § 190.40. See *Adar Bays, LLC v. GeneSys ID, Inc.*, 37 N.Y.3d 320 (2021).

59. Convertible notes resulting in the issuance of stock having a value in excess of the usury statute are *void ab initio*. *Id*.

I.   **Guo has received control and ownership of the Company's VIE entities for no or insufficient consideration.**

60. Defendants submit that Guo has also damaged the Original Investors' economic interests in the Company by other misconduct and wrongful action. Specifically, Guo damaged the Company by engaging in the misconduct set forth in my paragraphs 103 to 112 of my declaration dated March 24, 2022, which is incorporated herein. Dkt. 290.

61. Public records from China also show that at or around this time, shares of the Company's VIE entities in China were transferred to Guo for no consideration.

62. In China, the identities of owners, directors, and officers of corporations must be publicly disclosed. Websites such as Qichacha.com (qcc.com) make this information available for search by the public.

63. Annexed hereto as **Exhibit B** is true and correct copy of a search for the Company's VIE entity "NQ Mobile Inc." ("**NQ Mobile VIE**") on Qichacha.com (along with English translations). This search result shows that following appointment of the Receiver, ownership and control of the Company's NQ Mobile VIE entity in China was transferred to Guo.

64. More specifically, Exhibit B identifies Guo as the "actual controller" of the Company's VIE entity "NQ Mobile Inc." ("**NQ Mobile VIE**"). Ex. B at p.4. Guo's share ownership was 0% as of January 20, 2020, 26.69% as of January 22, 2020, 36.4% as of December 31, 2021, and is currently 59.67%. Ex. B at p.1

65. None of the Receiver's status reports filed in this action report any consideration paid by Guo for these shares of the NQ Mobile VIE.

66. There is nothing on the docket of this action showing that the Receiver retained any authority or control over Guo's exercise of control over the VIE entities.

67. These search results show substantial changes in Guo's ownership and control over the VIE entities at and around the same time the Court denied Plaintiff's motion to convert his ADSs into shares and when the Receiver was seeking authority from the Cayman Court to convene EGMs.

68. In a letter dated September 22, 2022, the Receiver recently disclosed for the first time that Guo has transferred to an unknown "Individual" power of attorney over the Company's VIE entities. Dkt. 351.

69. On information and belief, the Receiver has lost all control and authority over the Company's valuable VIE entities in the PRC.

70. Defendants submit that the granting of power of attorney to the unknown "Individual" referred to in the Receiver's September 22, 2022 operates as a fraudulent transfer of the Company's interests in the VIE entities without fair consideration to the Original Investors. Dkt. 351.

**J.    The dispute concerning EGMs is no longer moot**

71. On August 25, 2022, the Court issued a decision and order adopting the Report & Recommendation of Judge Freeman to grant the motion to discharge the Receiver. Dkt. 331.

72. The Court adopted Judge Freeman's finding that the purpose justifying the continuation of the Receiver terminated as of October 5, 2020 and directed that the Receiver "not seek any extraordinary actions from the Company's Board, during the remaining period of the

receiverships." Dkt. 331 at 7. The Court requested further briefing on the motion to enjoin the EGMs.

73. On September 15, 2022, the Court issued a decision and order denying the motion by Dr. Shi for a preliminary injunction to restrain the Receiver from convening the EGMs. Dkt. 338.

74. The Order denied the motion as "moot" on the ground that "both Shi and the Receiver agree that the EGMs should not move forward at this time." Dkt. 338 at 2.

75. But the Court found mootness only because of the claim by the Receiver that Guo had "disappeared" and that "it is unlikely that Guo will reappear in the short term such that the EGMs could be convened within 30 days of the entry of the D&O [ordering discharge of the Receiver] (i.e., September 24, 2022)."

76. In a letter filed on September 22, 2022, the Receiver disclosed for the first time that Guo had not, in fact, been disappeared or kidnapped. Dkt. 351. Rather, "Mr. Guo has been unreachable for reasons unrelated to LKM [i.e., the Company]" and will "reappear in the next 30-60 days." Dkt. 351.

**K.　An Injunction is Necessary to Prevent Further Harm to the Original Investors**

77. The transfer of voting power and equity interests from the Original Investors to a Guo who paid no or grossly insufficient consideration operates as an expropriation from the Original Investors.

78. On information and belief, the conversion of the Note Agreement into Class B shares issued to Guo likely violated New York's usury laws and rendered the Note Agreement *void ab initio*.

79. Permitting the Receiver to convene an EGM where Guo could exercise the voting power wrongfully given to him for the purpose of "ratifying" his and the Receiver's conduct would irreparably harm the Original Investors and interfere with this Court's supervisory powers over the Receiver. *See* Dkt. 276-3 ¶¶ 2.2 and 2.3.

80. Accordingly, a temporary injunction and preliminary injunction is required to prevent further interference with the rights of the Original Investors.

81. There will be little or no prejudice because this Court has already ordered the discharge of the Receiver and the Original Investors continue to have the right to requisition an EGM in accordance with the Company's governing documents and Cayman Islands law.

82. On September 29, 2022, I notified counsel for the Receiver and Plaintiff of Defendants' intent to seek a temporary restraining order and preliminary injunction and requested their consent to such relief.

83. Defendants make this application pursuant to Local Rule 6.3 and Rule 60(b) for reconsideration of the prior motion for an order enjoining the Receiver from convening EGMs (Dkt. 276, 290, and 291) and as a new motion pursuant to Rule 65 based on the matters discussed herein.

84. Wherefore, Dr. Shi and the Company respectfully request the Court to enter the accompanying proposed Order to Show Cause temporarily restraining the Receiver from convening any EGMs pending a hearing on the application for a preliminary injunction and granting such other and further relief and the Court deems appropriate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: September 29, 2022

                                                   */s/ Michael James Maloney*
                                                   Michael James Maloney