USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/5/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE BALIGA,

                Plaintiff,

- against -

LINK MOTION, INC. et al.,

                Defendants.

**18 Civ. 11642 (VM)**

**ORDER**

**VICTOR MARRERO, United States District Judge.**

Presently before the Court is a proposed Order to Show Cause ("OSC") by defendants Link Motion, Inc. ("LKM") and Vincent Wenyong Shi ("Shi") (together "Defendants") against the court-appointed receiver, Robert Seiden ("Receiver"), seeking — again — to enjoin the Receiver from convening certain extraordinary general meetings ("EGMs") of the LKM shareholders. (See Dkt. No. 361 & "OSC Motion," Dkt. No. 361-4.)

The OSC Motion seeks emergency relief and requests that the Court immediately enjoin the Receiver from convening the EGMs. It also moves the Court under Federal Rule of Civil Procedure 60(b) to reconsider its September 15, 2022 order. (See "September 15 Order," Dkt. No. 338.) The September 15 Order denied as moot Defendants' previous motion for a preliminary injunction seeking to restrain the Receiver and ordered that the Receiver could not convene the EGMs unless

1

and until Lilin "Francis" Guo ("Guo") (a major LKM shareholder who has disappeared) could attend. The September 15 Order concluded that the issue was moot because both Defendants and the Receiver agreed that the EGMs could not move forward in the short term. (See September 15 Order at 12.) Because the Court concluded that the issue was moot, it declined to assess the four preliminary injunction considerations (see September 15 Order at 6) but, because the parties also separately disputed the Receiver's general authority to convene the EGMs, the Court assessed the propriety of those claims and ruled on the issue.

    Defendants now contend that "newly discovered evidence" — including the Receiver's notice to the Court that Guo would reappear "in the next 30-60 days" and certain letters the Receiver recently filed unsealed, (see Dkt. Nos. 340-348, 351.) — makes the dispute a live controversy and asks the Court to reconsider three issues: (1) whether the four preliminary injunction considerations weigh in Defendants' favor; (2) whether the Receiver retains the authority to convene the EGMs; and (3) whether the time to convene the EGMs has expired under the LKM by-laws. Defendants alternatively renew their request to restrain the Receiver from convening the EGMs. The Court is not persuaded that Defendants are entitled to the requested relief and reaffirms

its conclusions from the September 15 Order. The Court DENIES Defendants' requests.

## I. LEGAL STANDARD

The OSC Motion is, at bottom, a motion for reconsideration under Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3, which is "intended to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" SEC v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). When assessing a motion for reconsideration, a district court must "narrowly construe and apply" Local Rule 6.3 to "avoid duplicative rulings on previously considered issues" and to prevent the rule from being used to advance theories not previously argued or as "a substitute for appealing a final judgment." Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); see also Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999).

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614

(S.D.N.Y. 2000). Accordingly, the Second Circuit has held that the standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. V. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257; see also Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (noting that reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple" (internal quotation marks omitted)).

    The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir.

2009) (quoting Nemaizer v. Baker, 793 F.2d 58, 61-62 (2d Cir. 1986)).

## II. DISCUSSION

### A. DEFENDANTS' REQUEST FOR AN INJUNCTION

Defendants urge the Court to reconsider its previous denial of the preliminary injunction and seek a new temporary restraining order ("TRO") and preliminary injunction barring the Receiver from convening the EGMs. The Court handles the dual requests as one.

"It is well established in this Circuit that the standard for entry of a TRO is the same as for a preliminary injunction." Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). Generally, to obtain a preliminary injunction, a movant must demonstrate (1) likelihood of success on the merits; (2) irreparable harm; (3) that the balance of hardships tips in the movant's favor; and (4) that a preliminary injunction serves the public interest. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

As to the first consideration, Defendants argue that they are likely to succeed on the merits because, in its August 25, 2022 Decision and Order adopting Magistrate Judge Freeman's Report and Recommendation (see "D&O," Dkt. No. 331), the Court approved the eventual discharge of the Receiver, "[t]hus, the power of the Receiver must [] be

terminated." (See OSC Motion at 12.) The Court disagrees. As explained in the September 15 Order, and reaffirmed here, the Court's D&O did "not nullify the Receiver's ability to call the EGMs" because the Receiver was not "required to unwind any activities that have already been taken on the Company's behalf." (September 15 Order at 9-10.) The Receiver maintains its authority, which the Cayman Court granted, until it is fully discharged upon this Court's approval of its final accounting, which has not occurred. (See Dkt. No. 359 (ordering schedule for approval of accounting).) Thus, and as explained in more detail below, the Receiver can convene the EGMs, but may not do so until Guo reappears and can attend. As a result, Defendants have not established they would succeed on the merits and the first preliminary injunction consideration does not weigh in their favor.

The second consideration is irreparable harm. "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transport Mahno AB v. Wabtec Corp., 559 F.3d 110, 116 (2d Cir. 2009). "The movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995).

Here, Defendants argue that "[i]f the EGMs are allowed to go forward as drafted, the Original Investors will suffer irreparable harm," thus the Court should "enjoin the EGMs to protect the Original Investors." (OSC Motion at 12.) Defendants define the Original Investors as the "26 registered shareholders of [LKM]." (OSC Motion at 2 (citing Dkt. No. 130-1).) LKM and Shi are not among the Original Investors, and none of the Original Investors are parties to this action.[1] (See Dkt. No. 130-1.) An "alleged harm to third parties d[oes] not provide [Defendants] a basis for a preliminary injunction." See Moore v. Consolidated Edison Co. of N.Y., Inc., 409 F.3d 506, 512 (2d Cir. 2005). Other than on behalf of the Original Investors, Defendants do not claim that they themselves would be irreparably harmed by the EGMs moving forward. Thus, the Court finds that Defendants fail to establish irreparable harm on that ground alone.

But even if the Court ignored that fatal defect, the purported injury Defendants insist the Original Investors face must also be actual and imminent. Here, the harm is both speculative and remote. Defendants claim that the Receiver and Guo "expropriated 40% of the total voting power" through a Note Agreement that Defendants allege "likely violates New

---

[1] The Court previously denied a motion to intervene by Original Investor, China AI Capital Limited. (See Dkt. No. 163.)

7

York's usury laws."[2] (OSC Motion at 12-13.) Yet, Defendants concede that there is "no evidence" regarding the consideration that Guo paid, save for, potentially, the Note Agreement that remains under seal.[3]

The harm that Defendants identify — that "the Original Investors will be unable to exercise the voting power they had before the appointment" of Guo at the EGMs (OSC Motion at 13) — depends, first, on Guo having obtained his voting power inappropriately, and second, a lack of consensus between Guo and the Original Investors on the composition of the LKM Board. Defendants must march through a parade of hypotheticals to establish this purported harm, revealing that it is speculative. First, the Note Agreement must be unsealed. Next, it must show what Defendants claim it shows, that Guo did not pay fair consideration for his shares. Then, a court would have to consider whether that violated New York usury laws. If all of that were true, then it is possible that convening the EGMs could harm the Original Investors. But that, too, is a red herring. For even if Guo's voting power was obtained inappropriately, there is nothing in the

---

[2] The Court previously reviewed and approved the compensation incentive agreement and promissory note that Defendants now claim is usurious. (See Dkt. No. 71.)

[3] Defendants have moved the Magistrate Court to unseal the Note Agreement and the dispute is currently pending. (See Dkt. No. 360.)

record establishing how all the Original Investors may vote. Indeed, they may very well agree with Guo. And, if all the Original Investors did disagree, and Guo retained his voting power, it is also certainly plausible the Original Investors could coalesce and overpower Guo, who, with only 40 percent of the vote, appears to lack the power to ratify any resolution by himself. In either setting, the Original Investors incur no harm. And neither is certain to occur: how the EGMs would play out, and what the Original Investors would do is not presented to the Court. Defendants thus fail to establish the purported harm is actual.

The purported harm is also not imminent. The Receiver does not know for certain when, exactly, Guo will reappear. The Receiver's letter states that an unidentified "Individual . . . believes Mr. Guo is in Hainan and will reappear in the next 30-60 days" but also that "Mr. Guo's reappearance may be delayed because of current Covid lockdowns in Hainan." (Dkt. No. 351 at 1.) The Receiver further expressed hesitation as to the "authenticity of the Individual's statements and the documents provided." (Id.)[4]

---

[4] On October 4, 2022, after Defendants filed the OSC Motion, the Receiver provided an update from the unidentified "Individual" indicating that "Guo is now estimated to re-appear by the end of October 2022," which falls within the initial time range the Receiver provided. (Dkt. No. 363.) The Receiver continues to express hesitation as to the "veracity of the Individual's statement." (Id.)

9

The September 15 Order makes clear that the EGMs "shall be postponed until [Guo] can attend the meetings." (September 15 Order at 13.) Consequently, when Guo will reappear remains hazy at best, rendering any purported injury remote.

The remaining considerations, both of which are neutral, do not outweigh the first two. The Court finds that the balance of the hardships favors neither party. While the Receiver's authority to take new actions has been limited, the notice of the EGMs was made by the Receiver prior to the Court's report and recommendation and D&O, and the Receiver is not required to unwind those activities. Defendants do not allege they would incur a hardship, and any hardship to the Original Investors is speculative. And finally, as stated, what harm the Original Investors may suffer is abstract, and thus the Court finds that the last consideration (whether the injunction is in the public interest) is neutral. Accordingly, the Court denies Defendants' request for reconsideration and their new request for a TRO and preliminary injunction.

B.  THE RECEIVER'S AUTHORITY

Defendants also argue that the Court should reconsider its conclusions as to (1) the Receiver's authority to convene the EGMs; and (2) the timeline on which the EGMs must be convened. On these issues, Defendants aver that the Court

10

issued an advisory opinion in the September 15 Order. Defendants say that because the Court determined that the preliminary injunction was moot, the issue of the Receiver's authority was not "an 'issue ripe for judicial resolution,' [because] the arguments regarding authority and the application of Article 55 were 'mere hypothetical question[s]' about what would happen if Guo reappeared." (See OSC Motion at 15.) Not so. First, the Receiver's authority to convene the EGMs was a separate issue from whether the EGMs should move forward. The Court's finding of mootness was limited to the parties' agreement that the EGMs could not move forward in the short term. (See September 15 Order at 12.) The parties vigorously disputed the Receiver's authority under the Cayman Court's order and the Company's by-laws, making that issue a live controversy and thus appropriate for the Court to address.

Second, an issue "is not moot if the underlying dispute between the two parties is 'capable of repetition, yet evading review.'" See Irish Lesbian and Gay Org. v. Giuliani, 143 F.3d 638, 648 (2d Cir. 1998) (quoting Neb. Press Ass'n v. Stuart, 427 U.S. 539, 546 (1976)). The September 15 Order established that the issue of the Receiver's authority to convene the EGMs was likely to recur; indeed, the Court ordered that the EGMs could eventually move forward if Guo

11

reappeared. (See September 15 Order at 13.) And Defendants' filing of the OSC Motion proves that the dispute was likely to recur and thus is now, as it was before, a "live . . . controversy" ripe for judicial review. Id. Thus, it was proper for the Court to address the issue in the September 15 Order.

The Court reached the correct conclusions in the September 15 Order and Defendants fail to "point to controlling decisions or data that the court overlooked" that would "alter the conclusion[s] reached." Shrader, 70 F.3d at 257. Thus, the Court reaffirms its decisions here. Indeed, Defendants' OSC Motion rehashes many of the same arguments regarding the effect of the D&O on the Receiver's authority that the Court previously considered and rejected. (See OSC Motion at 15-19.) Defendants argue that the Receiver lacks authority to convene the EGMs. They contend that the Cayman Court order granting that authority was issued prior to the Court's D&O discharging the Receiver upon completion of its accounting such that the Receiver's authority is terminated. (Id. at 15-17.) As explained above and in the September 15 Order, the D&O did not require the Receiver to "unwind any activities that have already been taken on the Company's behalf." (September 15 Order at 10 (quoting D&O at 7).) And the Receiver had already taken action to convene the EGMs

12

before either the Report and Recommendation or D&O were entered. Accordingly, the Court reaffirms its finding that the Receiver maintains its authority, until fully discharged after its accounting, to convene the EGMs.

Defendants also rehash their argument that the time to convene the EGMs has expired under Article 55(d) of the LKM by-laws. (See OSC Motion at 18-19; see also "LKM By-Laws," Dkt. No. 130-3.) Defendants argue that the "facts here fall under the 'requisition' provision of Article 55 of the Company's governing documents" because "it was Guo — acting as a shareholder — who requested the EGMs." (Id.) The Court remains unpersuaded.

As recognized in the September 15 Order (and which remains unrebutted here), the Receiver informed this Court and the Cayman Court that "Guo [is] 'unable to requisition an extraordinary general meeting.'" (September 15 Order at 9 (citation omitted).) Defendants nevertheless continue to contend that the EGMs are transformed into a requisitioned meeting because the Receiver was "acting at the request of Guo." (OSC Motion at 18.) A mere request to the Receiver by Guo, without more, does not satisfy Article 55's formalities, and Defendants' argument fails.

To qualify as an EGM called upon a shareholder requisition, the requisitioning member(s) must hold "at the

13

date of the deposit of the requisition not less than one-third in par value of the share capital of the Company." (LKM By-Laws ¶ 55(b).) It is not disputed that Guo holds only "approximately 13% of the par value of all issued shares" and thus cannot requisition the meeting by himself. (Dkt. No. 285-3 ¶ 17.4.) Thus, Guo's request was not a formal requisition and the time limits of Article 55(d) do not apply. The Court thus reaffirms its conclusions in the September 15 Order as to the Receiver's authority to convene the EGMs and the timeline on which they may be convened.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the defendants', Link Motion, Inc. and Wenyong Shi (together "Defendants"), proposed Order to Show Cause is **DENIED**; and it is further

**ORDERED** that Defendants' renewed request for a temporary restraining order and preliminary injunction is **DENIED**; and it is further

**ORDERED** that Robert Seiden ("Receiver") maintains the authority to convene the extraordinary general meetings ("EGMs") and may do so provided that Lilin "Francis" Guo ("Guo") reappears and is able to attend the EGMs, and that the EGMs are convened prior to the Court's approval of the

14

Receiver's accounting, which results in the Receiver's discharge.

**SO ORDERED.**

Dated:   October 5, 2022
         New York, New York

_____
                               Victor Marrero
                                  U.S.D.J.