USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/7/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE BALIGA,

                Plaintiff,

    - against -

LINK MOTION, INC. et al.,

                Defendants.

18 Civ. 11642 (VM)

DECISION AND ORDER

**VICTOR MARRERO, United States District Judge.**

Before the Court is a dispute regarding whether a meeting held by the Board of Directors of defendant, Link Motion, Inc. ("LKM") violates certain orders this Court issued in this action (hereinafter, "Baliga"). Through other filings in this and a related matter, (see 18 Civ. 11642, Dkt. Nos. 335 at 3 n.4, 336; 21 Civ. 10911, Dkt. Nos. 23, 27), the parties notified the Court that the LKM Board of Directors convened a meeting on or about September 1, 2022 to vote on whether to hire legal counsel to assume control over the related suit brought by LKM investor China AI Capital Limited ("China AI"). The parties dispute the propriety of the Board's actions and ask the Court to restrain the Board from taking further action.

As background, China AI brought a derivative suit against DLA Piper LLP ("DLA Piper"), LKM's original counsel in Baliga, for alleged legal malpractice. See China AI Capital

1

Ltd. v. DLA Piper (US) LLP, No. 21 Civ. 10911 (S.D.N.Y.) ("China AI"). After the LKM Board voted, China AI moved to voluntarily dismiss its case against DLA Piper (see 21 Civ. 10911, Dkt. Nos. 22, 23). In opposing the form of China AI's notice of voluntary dismissal, DLA Piper advised the Court that LKM had already refiled the malpractice suit in New York State Court. (See 21 Civ. 10911, Dkt. No. 27 at 1.) With the dispute coming to a head, the Court issued orders on September 14 (see 21 Civ. 10911, Dkt. No. 29) and September 15 (see 18 Civ. 11642, Dkt. No. 338) directing the parties to brief "(1) whether the LKM Board's decision to meet in early September 2022 violates any of the Court's orders in Baliga; and (2) the extent of the Court's jurisdiction to address (a) any purported violations of the Court's orders by the LKM Board and (b) the LKM Board's ability to meet."[1] (See, e.g., id.) This dispute is now ripe for adjudication.

Plaintiff in this action, Wayne Baliga ("Baliga"), the court-appointed receiver, Robert Seiden ("Receiver"), and DLA Piper argue that the LKM Board's decision to meet violated the following Court orders in Baliga: (1) the Order Appointing

---

[1] The Court asked an additional question of the parties in China AI regarding removal of the state court action to federal court. (See 21 Civ. 10911, Dkt. No. 29.) That action has since been removed to federal court and related to the Baliga action. (See Link Motion, Inc. v. DLA Piper (US) LLP, No. 22 Civ. 8313, Dkt. No. 1 and Oct. 5, 2022, minute entry accepting case as related.)

2

the Temporary Receiver ("Receiver Order," Dkt. No. 26 § II), Magistrate Judge Debra Freeman's March 9, 2022 Report and Recommendation ("R&R," Dkt. No. 275), and this Court's August 25, 2022 Decision and Order adopting the R&R in its entirety ("D&O," Dkt. No. 331) (together with the Receiver Order and the R&R, the "Orders"). (See "Receiver Ltr.," 18 Civ. 11642, Dkt. No. 350; "Baliga Ltr.," 18 Civ. 11642, Dkt. No. 352; "DLA Piper Ltr.," 21 Civ. 10911, Dkt. No. 31.) Baliga, the Receiver, and DLA Piper also assert that the Court should exercise ancillary jurisdiction over the issue to "manage its proceedings, vindicate its authority, and effectuate its decrees." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 380 (1994).

LKM and China AI counter that after the Court's D&O dissolved the preliminary injunction and began the process of discharging the Receiver, the LKM Board was free and "had a duty to" meet and act on behalf of LKM with respect to the China AI matter. (See "LKM Ltr.," 18 Civ. 11642, Dkt. No. 353 at 2; "China AI Ltr.," 21 Civ. 10911, Dkt. No. 33.) LKM and China AI also contest the Court's jurisdiction over the Board's ability to meet as being outside the scope of the operative pleadings (see LKM Ltr. at 3), and that disputes regarding Board operations are a matter of Cayman Islands law under the internal affairs doctrine (see China AI Ltr. at 3).

For the reasons stated below, the Court finds that it has jurisdiction over this dispute and the LKM Board's actions and concludes that the LKM Board's decision to meet and act under the circumstances presented here was premature because the Receiver has not yet been fully discharged. Accordingly, the Court orders that the LKM Board shall not convene and vote to take any new actions that have not been directed by the Receiver until the Receiver has been fully discharged.[2]

## I. DISCUSSION

### A. JURISDICTION

The Court has ancillary jurisdiction over this dispute. Ancillary jurisdiction "allows a district court to decide matters that are 'factually interdependent' with another matter before the court." Hendrickson v. United States, 791 F.3d 354, 358 (2d Cir. 2015). Generally, ancillary jurisdiction "enable[s] a court to function successfully, that is, to manage it proceedings, vindicates its authority, and effectuate its decrees." Garcia v. Teitler, 443 F.3d 202, 208 (2d Cir. 2006) (citation omitted); see also Kokkonen, 511 U.S. at 379-80 (explaining that ancillary jurisdiction is properly asserted "(1) to permit disposition by a single court

---

[2] The Receiver will be fully discharged after the Court approves of its accounting. The Court entered a schedule for the Receiver's accounting on September 29, 2022 and referred the issue to Magistrate Judge Figueredo. (See 18 Civ. 11642, Dkt. Nos. 359 & 362.)

4

of claims that are, in varying respects and degrees factually interdependent; and (2) to enable a court to function successfully.").

Here, the Court's ancillary jurisdiction derives mainly from its authority to manage its proceedings and effectuate its previous orders, including the Receiver Order, the R&R, and the D&O. To begin, the Receiver Order authorized the Receiver to "assume full control of the Company" and prevent "any director, officer . . . or agent of [LKM], including any Individual Defendant, from [having] *control of, management of, or participation in, the affairs of the Company*." (Receiver Order § II.2(b) (emphasis added).)[3] The Receiver Order also conferred upon this Court "jurisdiction to interpret, construe, and enforce this Order, and any such other or further Orders of this Court." (Id. § 13.) Accordingly, assessing the Board's recent actions is factually interdependent with interpreting and enforcing the Receiver Order, which remains operative per the R&R and D&O, so deciding this issue "enables [this Court] to administer

---

[3] The Grand Court of the Cayman Islands ("Cayman Court") recognized all of "the powers and functions granted to the US Receiver under the Receivership Order," except for one clause of Section II.2(b), which granted the Receiver authority "to appoint or replace . . . any such director[] [or] officer[.]" (See "Cayman Order," 18 Civ. 11642, Dkt. No. 132, Exh. 1 (referencing Receiver Order § II.2(b)).)

justice within the scope of its jurisdiction." <u>Levitt v. Brooks</u>, 669 F.3d 100, 103 (2d Cir. 2012) (citation omitted).

China AI posits that the "propriety of meetings of the Board is a matter of Cayman Islands law pursuant to the internal affairs doctrine" and should be "presented to the courts of the Cayman Islands to decide based on argument presented by Cayman Island attorneys." (China AI Ltr. at 3.) The Court sees no reason to have the parties expend additional resources to bring this issue before the Cayman Court. The Cayman Court has already approved of the Receiver Order and its explicit conferral of jurisdiction to this Court.

China AI's reference to the internal affairs doctrine does not sway the Court's opinion. The internal affairs doctrine is a choice of law rule that "recognizes that only one State should have the authority to regulate a corporation's internal affairs — matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders — because otherwise a corporation could be faced with conflicting demands." <u>Drenis v. Haligiannis</u>, 452 F. Supp. 2d 418, 427 (S.D.N.Y. 2006) (citation omitted).

Here, the Court does not choose between competing jurisdictions' laws. It determines only whether the Board's actions complied with the Court's previous Orders. And LKM

6

will not face "conflicting demands." The Cayman Court ratified the Receiver Order and the Receiver as the entity controlling LKM's internal affairs. Consequently, because the Receiver Order and Receiver control LKM's internal affairs, and this Court has jurisdiction over enforcement of the Receiver Order, the Court has jurisdiction over the Board's actions.

B.   THE LINK MOTION INC. BOARD'S MEETING

As established above, the Receiver Order gave the Receiver control over LKM's affairs. All the parties, including LKM and China AI, understood that was the case before August 25, 2022, and that the Receiver's authority, which in both substance and effect is temporary, would eventually dissolve. The dispute centers on what point in time the Board is freed from the Receiver's restraints. China AI and LKM assert that it is the date effecting the "dissolution of the preliminary injunction[] [that gave] the Board [] free[dom] to . . . make its own decisions . . . without oversight by the Receiver." (LKM Ltr. at 1; China AI Ltr. at 1.) China AI and LKM identify that date as August 25, 2022, the date of the Court's D&O.

Baliga, DLA Piper, and the Receiver counter that the proper date is when the Receiver is discharged, which has not yet come to pass. (See, e.g., DLA Piper Ltr. at 1 (arguing

7

that "[w]hile the Preliminary Injunction was recently lifted, the powers granted to the Receiver in the Receiver[] Order remain until the Receivership is dissolved.").)

The Court agrees with Baliga, DLA Piper, and the Receiver. The plain language and intent of the Court's Orders establish that the LKM Board cannot act on its own until the Receiver is fully discharged. The Court's lifting of the preliminary injunction does not alter that conclusion. To understand why, the Court examines the preliminary injunction order (see "PI Order," 18 Civ. 11642, Dkt. No. 26 § I) and the effect of its dissolution.

The PI Order and the Receiver Order, although issued together, are independent. The PI Order itself was bifurcated into forwards- and backwards-looking sections. And only the PI Order was lifted on August 25, 2022. The temporal differences in the PI Order illustrate why the Board's power to take new action has not yet been restored.

The first PI Order section acted prospectively. It restrained the Board from "transferring, liquidating, dissipating, assigning, and/or granting a lien or security interest or other interest in, any assets belonging to Link Motion." (PI Order § I.1.) In contrast, the next section looks backwards. It required the Board to take "corrective actions" to resolve issues already existing, including removing

8

Vincent Wenyong Shi from "oversight of [a pending] dispute and arbitration," and ensuring that "litigation or arbitration matters are directed and controlled by the Company's lawyers, the appointed Receiver, and/or the non-conflicted board members as directed by the Receiver."[4] (Id. § I.2.) In other words, it transferred direction of already pending disputes to the Receiver.

LKM and China AI point to the latter clause, ensuring that "litigation or arbitration matters are . . . directed by the Receiver," as indicating that, once the injunction was lifted, the Board was free to control and direct new litigation. The Court disagrees. That clause relates only to retrospective "corrective actions," such that the "litigation or arbitration matters" affected must be only those that were already pending at the time the injunction was entered. So, while the dissolution of the PI Order means the Board could have control over litigations or arbitrations filed pre-February 2019, it would not authorize them to vote to file new litigation.[5]

---

[4] The other backwards-looking "corrective actions" were "(i) restor[ing] the Company's compliance with the New York Stock Exchange's stock listing requirements; (ii) restor[ing] the ownership of the Company's smart ride businesses . . . ; [and] (iii) restor[ing] the Company's senior position in the underlying assets of [certain business]." (18 Civ. 11642, Dkt. No. 26 § I.2.)

[5] The Court is aware of only one pre-February 2019 matter, other than this action, that remains pending: an action in state court in Texas. See Matthew Mathison v. Link Motion US Inc., No. DC-18-18474 (191st Judicial

The PI Order can be harmonized with the Receiver Order, which gives explicit authority to the Receiver to take on new litigation. The Receiver Order provides that the "Receiver shall have the power to commence, continue, join in, and/or control any action . . . in the name of the Company." (Receiver Order § II.2(e).) This language is forward looking. And the R&R, as adopted by the Court, further establishes that the Board's powers to act prospectively are not yet restored. Most explicitly, the R&R recommended, and the Court endorsed, that the "current Board [would] be free to take whatever business actions it deems in the Company's interest" only "[o]nce the Receiver's discharge is effected." (Id.) China AI and LKM do not address this aspect of the R&R.

Of course, the Receiver has not yet been discharged. When the Court adopted the entirety of the R&R, it approved the recommendation that the Receiver not be discharged immediately. (See R&R at 1 ("[N]or do I recommend that the Receiver be discharged immediately.") The Receiver will not be discharged until its accounting is complete and approved by the Court, a process just getting underway. (See 18 Civ. 11642, Dkt. No. 359 at 2.) When the LKM Board met in early

---

District, Dallas County). But LKM took no action in that case until February 19, 2019, when it filed a general denial, and then the case was stayed pending the discharge of the Receiver. (See id. Dkt. entry dated Oct. 2, 2019.) The Court finds that the Mathison action is unaffected by lifting the PI Order.

10

September, only the Receiver maintained the power to commence new litigation. As a result, the Court concludes that the Board's decision to assume control of the China AI suit violated the Court's Orders. The Court restores the status quo under the Receiver Order and enjoins the Board from meeting and voting to take any new actions not directed by the Receiver until the Receiver is fully discharged.

Baliga, the party least effected by the Board's decision, asks the Court to go one step further. Baliga asks the Court to "stay the state court proceedings" and rule that the meeting and vote was a "nullity and its actions had no force or effect." (Baliga Ltr. at 3.) Baliga cites Kaplan v. Reed Smith LLP, 919 F.3d 154 (2d Cir. 2019) for this proposition. In Kaplan, the Second Circuit affirmed the district court's exercise of ancillary jurisdiction to order a stay of a state court proceeding brought to challenge the district court's earlier attorney fee order. Id. at 157-158. The Second Circuit accepted that the purpose of bringing the claims in state court were to "circumvent the district court's" order. Id. at 158. The Court declines to extend the rule in Kaplan to the circumstances presented by this action. The Court finds the issues here to be factually distinct, including because the malpractice suit has already been

11

removed from state court, has been formally related to Baliga, and is pending before the Court.

Accordingly, for the reasons stated above, it is hereby

**ORDERED**, that the meeting held by the Board of Directors (the "Board") of defendant, Link Motion, Inc. ("LKM") on or about September 1, 2022, as well as certain votes the Board took at such meeting as specified herein, violate orders this Court issued in this action, and it is further

**ORDERED** that the Board shall not convene and vote to take any action not directed by the court-appointed receiver, Robert Seiden ("Receiver"), until after the Receiver has been fully discharged upon the Court's approval of the Receiver's final accounting.

**SO ORDERED.**

Dated:   7 October 2022
         New York, New York

_____
                                         Victor Marrero
                                           U.S.D.J.