USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _11/04/2022_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WAYNE BALIGA,

                         Plaintiff,

             - against -

LINK MOTION, INC. (F/K/A NQ MOBILE
INC.), VINCENT WENYONG SHI, ROLAND WU,
and ZEMIN XU,

                      Defendants.

---

**18 Civ. 11642 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Wayne Baliga ("Baliga") brought this suit against Link Motion, Inc. (f/k/a NQ Mobile Inc.) ("LKM") and several of LKM's executives and directors, including Vincent Wenyong Shi ("Shi"), Roland Wu ("Wu"), and Zemin Xu ("Xu," together with Shi and Wu, "Individual Defendants," and collectively with LKM, "Defendants"). (See "Second Amended Complaint" or "SAC," Dkt. No. 166.) The matter was referred to Magistrate Judge Debra Freeman for general pretrial issues, including scheduling, discovery, non-dispositive pretrial motions, and settlement. (See Dkt. No. 91.) Those responsibilities were later reassigned to Magistrate Judge Valerie Figueredo. (See Minute Entry, Apr. 29, 2022.)

On August 10, 2022, Magistrate Judge Figueredo issued a Report and Recommendation, recommending that Shi's Motion to Dismiss the SAC be granted in part and denied in part. See

<u>Baliga v. Link Motion, Inc.</u>, No. 18 Civ. 11642, 2022 WL 3363787 (S.D.N.Y. Aug. 10, 2022) (Dkt. No. 328) (hereinafter "<u>R&R</u>").

Presently before the Court are Shi's[1] objections (<u>see</u> "Shi's Objections," Dkt. No. 330), timely filed on August 24, 2022, and Baliga's September 19, 2022 response to those objections (<u>see</u> "Baliga's Response," Dkt. No. 349).

For the reasons stated below, the Court adopts in part, rejects in part, and modifies in part the recommendations and findings set forth in the <u>R&R</u>.

## I.   **RELEVANT BACKGROUND**

### A.   <u>BALIGA'S COMPLAINT AND FIRST AMENDED COMPLAINT</u>

Baliga brought this action against LKM, Shi, and several of LKM's executives and directors on December 13, 2018.[2] (<u>See</u> "Complaint," Dkt. No. 1.) As a holder of American Depositary Shares ("ADSs") in LKM, Baliga appeared to plead derivative claims against the individual defendants named in the Complaint for breaches of their fiduciary duty and unjust enrichment (<u>see</u> <u>id.</u> ¶¶ 38-41, 42-45), as well as claims

---

[1] For conciseness, the Court will refer to both LKM and Shi throughout as just Shi, unless otherwise expressly noted.

[2] The individual defendants named in the original Complaint were Shi, Jia Lian, and Xioa Yu. However, the Individual Defendants named in the Second Amended Complaint are Shi, Wu, and Xu. (<u>See</u> "SAC," Dkt. No. 166.)

against all defendants named in the original Complaint for securities violations (see id. ¶¶ 46-49, 50-54).

Immediately after filing the Complaint, Baliga moved for a temporary restraining order, as well as an order to show cause for a preliminary injunction, and the appointment of a receiver to protect LKM's assets. (See Dkt. No. 63.) The Court appointed Robert W. Seiden (the "Receiver") as the Receiver based on Baliga's representations and absent opposition from Defendants and granted the proposed Preliminary Injunction and Receivership Order. (See "Receivership Order," Dkt. No. 26.) The preliminary injunction component of the Receivership Order focused on enjoining the individual defendants from looting LKM's assets. (See id. at § I.1.)

On June 11, 2019, the Court issued a Decision and Order dismissing Baliga's securities claims with leave to amend because he failed to plead that he purchased or sold any LKM securities. (See Dkt. No. 64 at 18-19.) On June 21, 2019, Baliga cured that defect in a First Amended Complaint (see "FAC," Dkt. No. 68), which was otherwise materially identical to the Complaint (see id. ¶ 32).

After the Court referred threshold issues in the case to Magistrate Judge Freeman (see Dkt. No. 91), and several months after Baliga filed the FAC, non-party China AI Capital Limited ("China AI") moved to intervene in the action. (See Dkt. Nos.

111, 122, 127, 130, 131.) China AI challenged Baliga's standing to assert his derivative claims because Cayman Islands law (as LKM's place of incorporation) controlled the issue of standing. China AI contended that, under Cayman Islands law, only registered shareholders could pursue derivative actions, while Baliga, a holder of only ADSs, was merely a beneficial shareholder.[3]

B.  BALIGA'S SECOND AMENDED COMPLAINT

Due to the questions raised by China AI,[4] Magistrate Judge Freeman directed Baliga to file the SAC to clarify the claims he was asserting, i.e., which were derivative claims, and which were direct. (See Dkt. No. 163 at 51.) Baliga filed the SAC on October 5, 2020, and in doing so, substantially altered the pleading from the Complaint and FAC. (See generally SAC.) The SAC focused on securities claims. It alleged violations of Section 10(b) ("Section 10(b)") of the Securities Exchange Act of 1934, 15 U.S.C. Section 78j(b) (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5"), 17 C.F.R. Section 240.10b-5, against Defendants; violations of Section 20(a) ("Section

---

[3] A registered shareholder (or record holder) holds shares directly with a company, whereas a beneficial shareholder holds shares indirectly through a bank or broker-dealer.

[4] Magistrate Judge Freeman eventually denied China AI's motion to intervene. (See Dkt. No. 163 at 51.)

20(a)"), 15 U.S.C. Section 78t(a), of the Exchange Act by the Individual Defendants; a New York state-law claim for unjust enrichment against Shi, individually; a New York state-law claim for common-law fraud against Defendants; and a New York state-law claim for negligent misrepresentation against Defendants. (See SAC ¶¶ 140-50, 156-76.) Shi moved to dismiss the SAC on December 1, 2021, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (See "Shi Br.," Dkt. No. 262.) Baliga filed his opposition on December 27, 2021 (see "Baliga Opp." Dkt. No. 263), and by January 14, 2022, the motion was fully briefed (see "Shi Reply," Dkt. No. 266).[5]

On April 29, 2022, the matter was reassigned to Magistrate Judge Figueredo for general pretrial issues. On August 1, 2022, Magistrate Judge Figueredo held oral argument on Shi's motion to dismiss.

C.   THE REPORT AND RECOMMENDATION

On August 10, 2022, Magistrate Judge Figueredo issued her Report and Recommendation denying in part and granting in part Shi's Motion to Dismiss. The R&R first denied Shi's

---

[5] The Court does not recite the rest of this case's tortured procedural history, which is largely irrelevant to the merits of Shi's motion to dismiss, and which it assumes the parties are familiar with. The procedural history of this case is discussed in more detail in the R&R, see R&R, at *6-7, the Court's September 15, 2022, Decision and Order (see Dkt. No. 338 at 2-5), and Magistrate Judge Debra Freeman's Report and Recommendation (see Dkt. No. 275 at 2-17).

Motion to Dismiss with respect to Baliga's claims arising under Exchange Act Section 10(b) and SEC Rule 10b-5, including with respect to the non-appearing defendants, Xu and Wu. The R&R determined that Shi did not have standing to assert a claim of dismissal on behalf of Xu and Wu and that the claims were timely. See R&R at *9-11.

The R&R then assessed Baliga's claim for securities fraud under Section 10(b) and Rule 10b-5. See id. at *11. Magistrate Judge Figueredo concluded that Baliga adequately pled these claims and recommended denying Shi's Motion to Dismiss. First, the R&R found that Baliga established he was a "purchaser and owner of LKM securities during the Relevant Period." Id. Then, Magistrate Judge Figueredo determined that the SAC adequately pled that Shi made materially false or misleading statements and omissions with respect to (1) the purported relationship between an entity known as Tongfang Investment Fund Series SPC ("Tongfang SPC") and another entity, Tsinghua Tongfang; (2) Shi's financial interest in a transaction by Tongfang SPC to acquire LKM's equity interest in two companies, FL Mobile Jiutian Technology Co., Ltd. ("FL Mobile") and Beijing Showself Technology Co., Ltd. ("Showself"), known as the "Tongfang Transaction"; and (3) Tongfang SPC's payment in full of the agreed-upon amount for the sale by LKM of its interest in FL Mobile and Showself.

Id. at *12-16. Next, Magistrate Judge Figueredo found that
Baliga adequately pled a strong inference of scienter, id. at
*17-19, and that the SAC sufficiently pled reliance under the
fraud-on-the-market theory of reliance, but also, and
primarily, under the so-called Affiliated Ute theory of
reliance, id. at *19-21. See Affiliated Ute Citizens of Utah
v. United States, 406 U.S. 128, 153 (1972) (holding that where
a case "primarily" involves "a failure to disclose, positive
proof of reliance is not a prerequisite to recovery").
Finally, the R&R found that Baliga alleged sufficient facts
to establish loss causation. Id. at *22-23.

Having found that Baliga adequately pled a Section 10(b)
claim, Magistrate Judge Figueredo also recommended denying
Shi's Motion to Dismiss Baliga's claims under Section 20(a)
of the Exchange Act, finding sufficient Baliga's allegations
that Shi exercised "total control" over LKM and that Shi
signed, and was culpable for, SEC filings made by LKM
containing misstatements and omissions. Id. at *23-24.

Magistrate Judge Figueredo also recommended denying
Shi's Motion to Dismiss with respect to Baliga's common law
fraud claim, finding that Baliga adequately pled that
Defendants made material omissions that Baliga relied upon in
connection with investment decisions, but under only the
Affiliated Ute theory of reliance. Id. at *25. Further,

Magistrate Judge Figueredo recommended denying Shi's Motion to Dismiss the negligent misrepresentation claims on the basis that determining whether a "special relationship" existed between Shi and Baliga is a "fact-specific determination not suitable for resolution at the pleading stage." Id. at *26.

However, Magistrate Judge Figueredo recommended granting Shi's Motion to Dismiss Baliga's claim for unjust enrichment, which was alleged only as against Shi. Id. at *24. Magistrate Judge Figueredo determined that Baliga could not rely on alleged damages to LKM to make his claim as the SAC now asserted only direct claims, as opposed to derivative claims, and that any benefit Shi may have received as a result of Baliga's purchase of LKM shares at artificially inflated prices was too attenuated. Id.

Magistrate Judge Figueredo concluded by recommending that "Shi's Motion to Dismiss be DENIED as to Plaintiff's claims alleging violations of Exchange Act § 10(b) and Rule 10b-5 thereunder, Exchange Act § 20(a), common law fraud, and negligent misrepresentation and GRANTED as to Plaintiff's claim alleging unjust enrichment." Id. at *27.

D.   THE PARTIES' ARGUMENTS

Shi raises objections to all but Magistrate Judge Figueredo's recommendation to grant the Motion to Dismiss the

unjust enrichment claims. Shi first objects to the legal standard applied in the R&R, primarily claiming that Magistrate Judge Figueredo failed to account for plausible opposing inferences. (See Shi's Objections at 10-13.) This failure, Shi claims, "infects each and every conclusion in the R&R concerning the viability of Plaintiff's securities claims," such that all of Magistrate Judge Figueredo's recommendations "must be rejected." (Id. at 13.) Shi also objects to Magistrate Judge Figueredo's failure to recommend that the claims against Xu and Wu be dismissed, arguing that the statute of limitations applies and that the claims should be dismissed *sua sponte* for failure by Baliga to effect service. (See id. at 13-15.)

Shi then objects to Magistrate Judge Figueredo's findings as to each of the elements of Baliga's Section 10(b) claim, arguing that (1) the R&R failed to consider plausible non-culpable explanations for the alleged conduct and that Shi's interest in Tongfang SPC and the relationship between Tongfang SPC and Tsinghua Tongfang were disclosed (id. at 15-20); (2) the R&R erred in finding that Baliga established a purchase of the securities "in connection with" the purported misstatements and omissions (id. at 20-24); (3) the R&R incorrectly found that the purported misstatements and omissions were material because the supposedly omitted

information was already publicly available (id. at 24-31);
(4) the R&R failed to assess competing considerations in
concluding the SAC established scienter (id. at 31-35); (5)
the R&R improperly found Baliga pled reliance and incorrectly
applied the Affiliated Ute theory (id. at 35-43); and (6) the
R&R incorrectly found loss causation was adequately pled
because the stock price increased after the alleged fraud was
revealed (id. at 43-46).

Shi next objects to the R&R's determination that Baliga
adequately pled a Section 20(a) claim on the basis that Baliga
failed to adequately plead primary violations under Section
10(b). (Id. at 46.) Then, Shi objects to the R&R's
recommendation that the common law fraud claims should move
forward, arguing that it erred in applying Affiliated Ute
(id. at 46-49), and finally that the negligent
misrepresentation claims should be dismissed because no
special relationship can exist between a company and a
beneficial shareholder, like Baliga (id. at 49-50).

Baliga's primary response, weaved throughout his brief,
is that Shi's objections either rehash the same arguments
that Magistrate Judge Figueredo already considered and
rejected or that the arguments are inappropriately raised for
the first time as objections. (See Baliga's Response at 8-
13.) Accordingly, Baliga argues that the proper standard for

this Court to apply is one of "clear error" and that the Court should adopt the R&R in its entirety. (Id.) Although Baliga states he disagrees with the conclusion, he does not raise any specific objection under Rule 72(b) to Magistrate Judge Figueredo's recommendation to dismiss the unjust enrichment claims. (Id. at 8 n.1.)

## II. **LEGAL STANDARD**

A district court evaluating a magistrate judge's report and recommendation may adopt those portions of the report to which no "specific written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law. Fed. R. Civ. P. 72(b); see also Thomas v. Arn, 474 U.S. 140, 149 (1985); Green v. WCI Holdings Corp., 956 F. Supp. 509, 513 (S.D.N.Y. 1997). The Court is not required to review any portion of a Magistrate Judge's report that is not the subject of a specific written objection. See Thomas, 474 U.S. at 149. A district judge may accept, set aside, or modify, in whole or in part, the findings and recommendations of the magistrate judge as to such matters. See Fed. R. Civ. P. 72(b); DeLuca v. Lord, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994).

Generally, and with respect to dispositive motions (like Shi's motion to dismiss) under Federal Rule of Civil Procedure

72(b) ("Rule 72(b)"), "[w]here a party makes a 'specific written objection' within '[fourteen] days after being served with a copy of the [Magistrate Judge's] recommended disposition,' [], the district court is required to make a de novo determination regarding those parts of the report." Cespedes v. Coughlin, 956 F. Supp. 454, 463 (S.D.N.Y. 1997) (quoting United States v. Raddatz, 447 U.S. 667, 676 (1980)).

De novo review applies only to "any part of the magistrate judge's disposition that has been *properly objected to*." Rule 72(b)(3) (emphasis added). In other words, De novo review does not apply where the objections are not properly made; in essence, where they are not "specific written objections" under Rule 72(b)(2). Courts in this district, and in others, have found that even in the context of a dispositive motion, a party's objections that merely rehash earlier arguments made in the original motion are not "specific" within the meaning of Rule 72(b)(2) and are reviewed only for clear error. See Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (discussing standard of review for dispositive motions under 28 U.S.C. Section 636(b)(1)) (citations omitted); George v. Professional Disposables Int'l, Inc., 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016) ("When a party makes only conclusory or general objections, or simply reiterates the original arguments, the

Court will review the report strictly for clear error.") (citation omitted); see also Nunez v. United States, 14 Crim. 130, 2021 WL 5494516, at *5 (D. Me. Nov. 22, 2021) (finding that an objection that "merely rehashes [] earlier arguments" was subject to clear error review because such objections "are not specific within the meaning of Rule 72(b)(2)"); Liggins v. G.A. & F.C. Wagman, Inc., No. 18 Civ. 0038, 2019 WL 4039635, at *2 (W.D. Va. Aug. 27, 2019) (adopting report and recommendation on basis that plaintiff "merely reiterates arguments already presented to the magistrate judge" making his objection a "general objection that fails to meet the standard of Rule 72(b)").

Objections that raise new arguments are also reviewed for clear error. "While 28 U.S.C. [Section] 636(b)(1) grants district courts discretion to consider additional *evidence* after a magistrate judge has issued her report . . . a district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate." Ortiz, 558 F. Supp. 2d at 451. Consideration of new arguments is "disfavored absent a 'most compelling reason' for the failure to present" the arguments in the first instance. In re Consol. RNC Cases, No. 127, 2009 WL 130178, at *10 (S.D.N.Y. Jan. 8, 2009) (quoting Housing Works, Inc. v. Turner, 362 F. Supp. 2d 434, 439 (S.D.N.Y. 2005)). Review

of new grounds for relief or new legal arguments not raised before the magistrate judge "would reduce the magistrate's work to something akin to a meaningless dress rehearsal." Michalow v. E. Coast Restoration & Consulting Corp., No. 09 Civ. 5475, 2018 WL 1559762, at *6 (E.D.N.Y. Mar. 31, 2018) (quoting RNC Cases, 2009 WL 130178, at *10).

### III. DISCUSSION

A.   THE UNJUST ENRICHMENT CLAIM

Count IV of the SAC raises a claim for unjust enrichment as against Shi in his individual capacity. The R&R recommended that this claim be dismissed. See R&R at *24-25. Neither party raised any objection to this recommendation. Accordingly, the Court adopts Magistrate Judge Figueredo's recommendation and dismisses Count IV of the SAC with prejudice.

B.   SHI'S OBJECTIONS

1.   The Legal Standard Objection

Shi's first objection is that the R&R failed to apply the correct legal standard. Shi asserts that "[t]he [Private Securities Litigation Reform Act ("PSLRA")] requires a court to 'take into account plausible opposing inferences,'" and Magistrate Judge Figueredo failed to do so. (Shi's Objections at 11.) Shi continues that the R&R failed to apply the three-step analysis required by Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 313 (2007). Shi raised these points

in his reply brief to Magistrate Judge Figueredo. (See Shi Reply at 5-9.) The Court thus reviews the R&R with respect to this objection for clear error. It finds none.

At bottom, Shi's argument is that the R&R paid only lip-service to Tellabs's requirement to consider "any opposing inferences one could draw from the facts alleged," 551 U.S. at 324, and insists that Magistrate Judge Figueredo was required to, but did not, consider opposing inferences for each of the Section 10(b) factors. (See, e.g., Shi's Objections at 13 (arguing that the "error in identifying and applying the legal standard for securities fraud claims infects *each and every conclusion* in the [R&R]" (emphasis added), 16 (arguing that the R&R was required to "take into account plausible opposing inferences" from any matter of which the court may take judicial notice).) Not so. Shi's argument expands Tellabs beyond its bounds. Tellabs's prescription limited the requirement to "take into account plausible opposing inferences" to only "whether the pleaded facts give rise to a 'strong' inference of scienter." 551 U.S. at 323. Accordingly, the Court finds the R&R did not clearly err in how it applied the legal standard it stated and adopts that portion of the R&R.

2.   Section 10(b) and Rule 10b-5 Objections

a)   Scienter

Because Shi's primary objection is the R&R's application
of the Tellabs standard, which applies to scienter
allegations, the Court moves next to Shi's objections
regarding scienter. The Court finds that the R&R correctly
applied the Tellabs standard to assess whether the SAC
adequately pled a strong inference of scienter. Indeed, in
discussing the issue, the R&R quotes extensively from
Tellabs, including the specific propositions that Shi
identifies as being absent. See R&R at *16-17.

Shi's objections regarding scienter are that Magistrate
Judge Figueredo failed to consider "the facts and documents
pointed to by Defendants" which debunk the allegations
regarding: (1) the purported improper benefit Shi received
for a debt he incurred from interest owed on a convertible
note agreement;[6] (2) the characterization of the Tongfang
Transaction as a sham for Shi's benefit; (3) Shi's position
on both sides of the Tongfang Transaction; (4) LKM's expected

---

[6] The debt Shi owed relates to a Note Purchase Agreement that Zhongzhi
Hi-Tech Overseas Investment Ltd. ("Zhongzhi") entered into with LKM, in
which Zhongzhi agreed to purchase a $220 million convertible note from
LKM. (See SAC ¶¶ 3, 38.) Baliga alleges that Shi "entered into a
cooperation agreement, by which Shi personally guaranteed to pay the
interest owed to Zhongzhi" (id.), and, given that both Shi and Zhongzhi
had an interest in Tongfang SPC, Shi "engineer[ed]" the sale of FL Mobile
and Showself to Tongfang SPC to "generate cash" to pay off Shi's debt on
the convertible note (id. ¶¶ 3, 29, 37, 39).

benefit of the Tongfang Transaction; and (5) Tsinghua Tongfang's controlling interest in Tongfang SPC. (See Shi's Objections at 33.) Shi raised each of these points in his reply brief before Magistrate Judge Figueredo and, in fact, explicitly cites to his reply in support of his argument that Judge Figueredo failed to consider these arguments.[7] (Id. (citing Shi Reply).) Because these points are now merely rehashed, the Court assesses the R&R on this issue for only clear error.

The Court is persuaded that the R&R considered Shi's arguments as well as the documents and opposing inferences those documents raised in determining that the SAC raised a strong inference of scienter. For example, the R&R discusses in detail Shi's financial obligations incurred by the Zhongzhi convertible note, see R&R at *2 & *17; discusses the structure of the Tongfang Transaction and Shi's arguments regarding the structure and disclosures made, see R&R at *14-

---

[7] Shi also cites to an exhibit to a declaration filed with Shi's original motion to dismiss the SAC in support of the argument that "LKM expected the Tongfang Transaction to be a net benefit for the shareholders" (Shi's Objections at 33 (citing Dkt. No. 178-7)), which the Court, at that time, denied without prejudice due to Baliga's motion for conversion of ADSs (see Dkt. No. 198). Magistrate Judge Figueredo cited to and thus considered Shi's original motion and the attached exhibits in the R&R. See, e.g., R&R at *15. Shi also argued extensively in his renewed motion to dismiss before Magistrate Judge Figueredo that, e.g., "the Tongfang Transaction was a disclosed part of the Company's ongoing business plan, meant to benefit all the Company's shareholders and ADS holders," and so the Court considers this argument to be rehashed as well. (See Shi Br. at 23.)

16; and discusses the issue of Tsinghua Tongfang's purported affiliation and controlling interest in Tongfang SPC, see R&R at *5, *13, *15 (citing Dkt. Nos. 263 and 178). In each instance, the Court finds that the R&R considered and rejected Shi's arguments and the opposing inferences he desires to have drawn. Accordingly, the Court finds that Magistrate Judge Figueredo did not clearly err in determining that the "totality of the circumstances" raised a strong inference of scienter.

A closer inspection of the opposing inferences Shi raises does not move the needle. For example, Shi argues that his personal guarantee of the Zhongzhi convertible note created no improper benefit because the Zhongzhi note was LKM's liability. (See Shi's Objections at 33; Shi Reply at 13-14.) This argument neither rebuts nor directly addresses the allegation that Shi needed to stand on both sides of the Tongfang Transaction to pay off the debt he personally owed Zhongzhi. In other words, even if the convertible note was LKM's liability, covering the liability through a self-dealing transaction would incur an improper benefit to Shi. Indeed, even the case Shi cited in his reply brief before Magistrate Judge Figueredo compels the opposite result Shi seeks. See PNC Capital Recovery v. Mechanical Parking Sys., 283 A.D.2d 268, 270 (N.Y. App. Div. 2001) (finding that

18

"officers or agents of a corporation" are liable where the terms of the guarantee "constitute a deliberately stated, unambiguous and separate expression personally obligating [the officer] for [the company's] debts"). The stronger inference to draw is that Shi manufactured the Tongfang Transaction to pay his debts. Magistrate Judge Figueredo's finding was not clearly erroneous.

Likewise, Shi's other arguments regarding the structure of and disclosures about Tongfang SPC, the relationship between Tongfang SPC and Tsinghua Tongfang, and the benefit expected from the Tongfang Transaction, are without merit. While Shi is correct that certain aspects of Shi's interest in FL Mobile and Tongfang SPC had been disclosed, this overlooks the fact that other significant aspects -- most importantly, that the interest in FL Mobile and Showself would transfer to Shi, personally, instead of to Tongfang SPC -- were not. (See, e.g., SAC ¶¶ 5, 39, 41, 49, 51.) And the inferences drawn from the allegations that "neither Neo-Neon's nor Tsinghua Tongfang's publicly-available financial records report any interest in or relationship to Tongfang SPC" and regarding Neo-Neon's inability to support the Tongfang Transaction (SAC ¶ 62) outweigh Shi's conclusory statement that "[Tsinghua] Tongfang [] did have a controlling

interest in Tongfang SPC."[8] (Shi's Objections at 33; Shi Reply at 14.) Further, that Shi doubled down on his insistence that Tongfang SPC was independent after the February 2018 report purportedly revealed the fraud, also supports that the prior statements were made "with the required state of mind." In re Synchrony Fin. Sec. Litig., 988 F.3d 157, 167 (2d Cir. 2021). Accordingly, the Court adopts the R&R's recommendation with respect to scienter in its entirety.

b)   Purchase or Sale of Securities Objection

Next, the Court addresses whether the R&R correctly found that Baliga had statutory standing to bring his Section 10(b) and Rule 10b-5 claims. "[O]nly those alleging fraud in connection with a purchase or sale of securities have standing to sue under [Section] 10(b)." Ingenito v. Bermec Corp., 376 F. Supp. 1154, 1174 (S.D.N.Y. 1974) (citing Haberman v. Murchison, 468 F.2d 1305, 1311 (2d Cir. 1972)). Shi objects to the R&R's determination that Baliga adequately alleged he purchased securities in connection with an alleged fraud between 2014 and 2018, arguing that the R&R "fails to consider whether any of those purchases were made 'in connection with'

---

[8] The SAC alleges that Neo-Neon is a publicly traded company in Hong-Kong. (SAC ¶¶ 62, 83.) According to the SAC, Shi represented that Tongfang SPC was an affiliate of Tsinghua Tongfang and also an affiliate of Tongfang Securities Limited; Tongfang Securities Limited is alleged to have been owned by Neo-Neon, and it is alleged that Tsinghua Tongfang had a 64 percent ownership share of Neo-Neon. (Id.)

the misstatements and omissions that Plaintiff claims to be 'actionable' in this case." (Shi's Objections at 20.) As Shi previously raised this same argument in his opening brief before Magistrate Judge Figueredo (see Shi Br. at 18-19), the Court reviews only for clear error.

Shi construes the "purchase or sale of securities" element as requiring a court to consider "whether any of those purchases were made 'in connection with'" the alleged fraud. (See Shi's Objections at 20.) Baliga counters that Shi conflates Baliga's standing to bring the securities fraud action with whether the elements of reliance are present. (See Baliga's Response at 19.) Baliga is correct. Shi citation to the Supreme Court's decision in Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 811 (2011) to support his argument that Baliga's claim "fails" "[w]ithout a connection between each individual purchase and an 'actionable' misrepresentation(s)" does not save him; the very page Shi cites discusses the reliance element -- not standing. (Shi's Objections at 23)

The Court finds the R&R properly analyzed this issue. Doctrinally, the "purchase or sale of securities" element operates at the threshold. As properly stated, the alleged fraud must be "committed 'in connection with the purchase or sale of any security.'" See Caiola v. Citibank, N.A., 295

F.3d 312, 322 (2d Cir. 2002). In other words, a fraud committed in connection with the purchase or sale of something else does not give rise to a claim under Section 10(b). That is why standing to bring Section 10(b) claims is "limited to actual purchasers or sellers of securities." Id. Of course, the remaining factors -- and in particular, the reliance factor on which Shi focuses -- operate to include or exclude which purchases are actionable. But plaintiffs must first plead that they actually purchased or sold a security of the entity they accuse of fraud before assessing which purchases are actionable. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 731-32 (1975) ("[T]he plaintiff [] for purposes of [Section] 10(b) and Rule 10b-5 private damages actions is limited to purchasers and sellers of securities.").

Magistrate Judge Figueredo determined that Baliga had sufficiently alleged standing by showing he made purchases of LKM ADSs beginning in January 2014 and through August 2018 at prices ranging from $1.03 to $12.00 per share. See R&R at *12. The Court counts 32 transactions during that time period (see SAC ¶ 126), and otherwise adopts the R&R's conclusions on this issue.[9]

---

[9] The Court notes the R&R indicates that Baliga made "33 total purchases"; this is an immaterial typographical error. Compare R&R, at *11, with (SAC ¶ 126).

      c)   <u>Misrepresentations or Omissions of Material Fact</u>

Shi argues that the <u>R&R</u> erred by concluding that Baliga alleged misrepresentations or omissions of material facts. (<u>See</u> Shi's Objections at 24.) Shi takes issue with three categories of alleged omissions: "(1) the purported affiliation between Tongfang SPC and Tsinghua Tongfang; (2) Dr. Shi's financial interest in the Tongfang Transaction; and (3) Tongfang SPC's payment in full of the agreed-upon amount for the sale of FL Mobile and Showself." (<u>Id.</u>)

As to the first two categories of alleged omissions, Shi makes two arguments. First, Shi argues that Magistrate Judge Figueredo ignored disclosures about the expected benefits of the divestiture of FL Mobile and Showself to LKM. (<u>See</u> <u>id.</u> at 26.) This argument is raised here for the first time and does not present "additional evidence" appropriately raised as an objection. <u>Ortiz</u>, 558 F. Supp. 2d at 451. The Court therefore reviews the <u>R&R</u> on this issue only for clear error.

The Court understands Shi's argument to be that the divestment of FL Mobile and Showself could not have been material because the "value of those businesses had been declining." (<u>See</u> Shi's Objections at 26-27.) Essentially, Shi argues that it would not have been material to an investor to know the full scope of the Tongfang Transaction if Shi and

23

Tongfang SPC were paying a "favorable price" on an asset with a declining value. (Id.) But, in attempting to blunt the impact of Baliga's allegations that the divestiture of FL Mobile and Showself represented a loss of LKM's "most valuable and revenue-generating assets," Shi previously argued the opposite position: that the loss of FL Mobile and Showself as revenue-generating companies was not a loss at all because LKM would continue to benefit financially from Shi's position as a nominee. See R&R at *14 & n.4.

Shi cannot have it both ways. These additional disclosures are about the potential (and unknown) future value of the FL Mobile and Showself. But the Court is persuaded that those disclosures do not lessen the materiality of the disclosure that the two companies, at the time of the Tongfang Transaction, represented a "significant portion" of LKM's operations and revenues. (See SAC ¶ 28); see also R&R at *14. Under either of Shi's arguments, the Tongfang Transaction was represented to the investing public as a net benefit for LKM. This representation supports a finding that statements about it would be material to an investor "in deciding whether to buy or sell shares of stock." Constr. Laborers Pension Tr. For S. Cali. v. CBS Corp., 433 F. Supp. 3d 515, 531 (S.D.N.Y. 2020).

The remaining argument that Shi raises regarding these categories of purported omissions is his rehashed contention that the relationship between Tongfang SPC and Tsinghua Tongfang was already disclosed. (See Shi's Objections at 27-28.) The Court reviews this issue for clear error and finds that Magistrate Judge Figueredo's conclusions were not clearly erroneous.

Magistrate Judge Figueredo assessed these disclosures in the R&R. Baliga alleged that the disclosures were made "for the purpose of masquerading the transaction as a legitimate business deal that was free of significant conflicts of interest and fraudulent self-dealing, while omitting critical information concerning the real identity of the buyer and Shi's actual interest in the deal." (SAC ¶ 41.) Baliga does not hide from the disclosures that Shi identifies but, instead, runs towards them to establish his allegations. He alleges that despite the disclosure of the attenuated connection between Tsinghua Tongfang and Tongfang SPC via Neo-Neon and Tongfang Securities, "neither Neo-Neon's nor Tsingua [sic] Tongfang's publicly-available financial records report any interest in or relationship to Tongfang SPC"; and he alleges with particularity how Shi structured the deal to conceal his position on both sides of the transaction. (Id. ¶¶ 62, 83-88.) Ultimately, Magistrate Judge Figueredo was

correct to find that the "crux of the alleged omissions in the SAC" was the failure of LKM "to disclose Shi's financial interest in the Tongfang Transaction or the lack of any clear or direct affiliation between Tongfang SPC and Tsinghua Tongfang." R&R at *15. In essence, LKM was required to disclose details regarding the Tongfang Transaction as a related party transaction and failed to do so. The Court adopts the R&R's finding that the omission of information about Shi's position within the Tongfang Transaction was material given the "context and manner of [its] presentation." Singh v. Cigna Corp., 918 F.3d 57, 63 (2d Cir. 2019).

Next, Shi challenges a third category of purported omissions, asserting that the statements regarding Tongfang SPC's ability to "pay the remaining balance 'owed to LKM in connection with the Tongfang Transaction'" are not actionable under the PSLRA's safe harbor rule. Shi did not specifically argue before Magistrate Judge Figueredo that these statements were subject to the safe harbor rule, and instead vaguely argued only that they were forward-looking statements. Accordingly, Magistrate Judge Figueredo addressed them as such and without direct reference to the PSLRA. See R&R at *16. Because this argument is arguably raised for the first

time here, the Court reviews for only clear error and finds
none.

Shi's argument fares no better under deeper analysis of
the PSLRA's safe harbor rule as the safe harbor rule does not
provide unlimited protection. The rule covers a defendant's
forward-looking statements from liability if "(1) the
forward-looking statement is identified and accompanied by
meaningful cautionary language, (2) the forward-looking
statement is immaterial, or (3) the plaintiff fails to prove
that the forward-looking statement was made with actual
knowledge that it was false or misleading." In re Vivendi
S.A. Sec. Litig., 838 F.3d 223, 245 (2d Cir. 2016) (internal
quotation marks and alterations omitted).

Not all statements (including those identified here)
qualify as forward-looking statements. The PSLRA defines
forward-looking statements as limited to the following:

> (A) a statement containing a projection of revenues,
> income (including income loss), earnings (including
> earnings loss) per share, capital expenditures,
> dividends, capital structure, or other financial items;
> (B) a statement of the plans and objectives of
> management for future operations, including plans or
> objectives relating to the products or services of the
> issuer; (C) a statement of future economic performance,
> including any such statement contained in a discussion
> and analysis of financial condition by the management or
> in the results of operations included pursuant to the
> rules and regulations of the Commission; (D) any
> statement of the assumptions underlying or relating to
> any statement described in subparagraph (A), (B), or
> (C); (E) any report issued by an outside reviewer

retained by an issuer, to the extent that the report
assesses a forward-looking statement made by the issuer;
or (F) a statement containing a projection or estimate
of such other items as may be specified by rule or
regulation of the Commission.

15 U.S.C. § 78u-5(i)(1)(A)-(F). The statements that Baliga
identifies as misleading regarding the Tongfang Transaction,
and which Shi argues are protected, relate specifically to
contractual performance and the expectation of payment by
Tongfang SPC. (See Shi's Objections at 30; SAC ¶¶ 89-94.)
Statements regarding expected contractual performance do not
address "a projection of revenues," a "statement of the plans
and objectives of management," "a statement of future
economic performance," or any other of the PSLRA's terms. 15
U.S.C. § 78u-5(i)(1)(A)-(F). Accordingly, LKM's statements
are not entitled to safe harbor protection.

At least three other courts, assessing similar
circumstances, agree with this analysis. In Burman v. Phoenix
Worldwide Indus., Inc., the district court for the District
of Columbia found that "[s]tatements . . . indicating that a
contract has been signed is not a forward-looking statement
or a statement of prediction, rather, they are statements of
the present business condition of the company," and "do not
fit into any of the categories of forward-looking statements
described in the safe-harbor provision." 384 F. Supp. 2d 316,
335-36 (D.D.C. 2005). Much like Baliga, the plaintiffs in

Burman focused their allegations on "learning that [the] contracts had purportedly been signed" and the transactions consummated, as opposed to basing their investment decisions on the "projected revenue from those contracts." Id. at 335; cf. Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 990 (9th Cir. 2008) (statements regarding whether contracts could be performed were a "snapshot" of "the present" and not a "forward-looking" statement); Nat'l Jr. Baseball League v. Pharmanet Dev. Grp. Inc., 720 F. Supp. 2d 517, 531-32 (D.N.J. 2010) (same).

Magistrate Judge Figueredo also found that the statements were not forward-looking. She explained that the "statements by LKM addressed a concrete event: a binding contractual agreement under which LKM was owed a specific sum of money to be paid by Tongfang SPC by a date certain." R&R at *16. This makes the "misstatements or omissions . . . more akin to misrepresentations of an existing fact than to projections or expressions of optimism." Id. (citing In re Synchrony, 988 F.3d at 168). Magistrate Judge Figueredo thus correctly found that the omissions were actionable. The Court adopts the R&R's conclusion that Baliga adequately pled that the alleged omissions concerning the Tongfang Transaction were material.

d)   Reliance

Shi makes two objections regarding the R&R's reliance analysis, attacking both the conclusion that the fraud-on-the-market theory was adequately pled and that the Affiliated Ute theory applies. (See Shi's Objections at 35-43.)

(1)   The Fraud-on-the-Market Theory

The so-called "fraud-on-the-market theory" creates a presumption of reliance that "is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business." Basic Inc. v. Levinson, 485 U.S. 224, 241-42 (1988). In such cases, a company's affirmative misleading statements will "defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." Id.

With respect to this theory of reliance, Shi argues that Baliga's purchases "outside of the March 30, 2017 to February 6, 2018 time period" are excluded, as they occurred before and after any alleged misstatements were made, and that Magistrate Judge Figueredo failed to consider "price impact" and the subsequent rebound of LKM stock after the purported fraud was revealed. (Id. at 35-37.) Shi made both arguments to Magistrate Judge Figueredo, who considered and rejected

them. (See Shi Br. at 18-19, 22.) The Court reviews for clear error.

The R&R makes no error as to what purchases could be actionable under the fraud-on-the-market theory. Magistrate Judge Figueredo explained that Baliga adequately pled the fraud-on-the-market theory by executing "a purchase of 5000 ADS shares on January 19, 2018, at a price of $3.58 per share, totaling $19,254.95." R&R at *20. As Shi concedes, this purchase falls "between the time the misrepresentations were made and the time the truth was revealed." (Shi's Objections at 27.)

The R&R also considered and rejected Shi's argument that the price of LKM ADSs rose the next day. The R&R considered this argument in the context of assessing the materiality factor, which was where Shi placed the argument in his briefing before the Magistrate Judge. R&R at *15; (Shi Br. at 22). To the extent that he raises it now with respect to reliance, the Court is persuaded that the R&R remains correct and its analysis would apply in assessing reliance at the pleading stage: "whether or not the rise in share price that occurred days after the alleged revelation . . . is a question of fact not suited for resolution on a motion to dismiss." R&R at *15. The Court adopts the R&R's findings with respect to the application of the fraud-on-the-market

theory of reliance. It also adopts the R&R's findings regarding whether Baliga's continued trading in LKM's shares after the purported fraud was revealed is actionable at this stage. However, it notes that in reaching the conclusion that reliance was adequately pled, the R&R primarily rests on its finding that the Affiliated Ute theory of reliance applies.

(2)   The Affiliated Ute Theory

Shi objects to the R&R's application of the so-called Affiliated Ute theory of reliance to allow all of Baliga's purchases to be actionable. The Affiliated Ute theory, derived from the Supreme Court's decision in Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972), applies in cases involving *primarily* -- not solely -- a failure to disclose, where the defendant both (1) had a duty to disclose; and (2) omitted a material fact. See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 159 (2008). Like the fraud-on-the-market theory, Affiliated Ute creates a presumption. When adequately pled, "positive proof of reliance is not a prerequisite to recovery." Affiliated Ute, 406 U.S. at 153. Unlike the fraud-on-the-market theory, Affiliated Ute applies where material facts required to be disclosed were omitted, as opposed to when a company makes affirmatively misleading statements.

The R&R concluded that Affiliated Ute applies because "[a]t its core, the complaint alleges material omissions regarding the self-dealing nature of the Tongfang Transaction." R&R at *21. Shi argues that under Second Circuit precedent, Affiliated Ute cannot apply because the purported "omissions [Baliga] lists in [the SAC] are directly related to the earlier statements [Baliga] also claim[s] are false," and that the omissions that Baliga points to are "simply the inverse of [Baliga's] misrepresentation allegation[s]." (Shi's Objections at 42 (quoting Waggoner v. Barclays PLC, 875 F.3d 79, 96 (2d Cir. 2017), and citing Wilson v. Comtech Telecomms. Corp., 648 F.2d 88 (2d Cir. 1981); Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc., 412 F.3d 103 (2d Cir. 2005); Schwab v. E*TRADE Fin. Corp., 752 F. App'x 56 (2d Cir. 2018)).) More simply stated, Shi argues Affiliated Ute does not apply because this case contains positive misstatements, not solely a failure to disclose. Shi raised these same arguments, and the cases he cites, before Magistrate Judge Figueredo. (See Shi Reply at 11-12.) The Court reviews for clear error.

The Court finds that the R&R's application of Affiliated Ute was not in clear error. There is ample support post-Waggoner and Schwab -- the cases Shi relies on most -- for the proposition that Affiliated Ute applies even "when a

complaint alleges both misstatements and omissions." <u>Puddu v.</u>
<u>NYGG (Asia) Ltd.</u>, No. 15 Civ. 8061, 2022 WL 2304248, at *4
(S.D.N.Y. June 27, 2022); <u>see also</u> <u>Hawaii Structural</u>
<u>Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.</u>,
338 F.R.D. 205, 216 (S.D.N.Y. 2021) (collecting cases).
Contrary to Shi's contentions, the Second Circuit in <u>Wilson</u>
and <u>Waggoner</u> did not foreclose such mixed-bag allegations,[10]
but rather reminded courts to focus on the rationale of
<u>Affiliated Ute</u>, that is, "reliance as a practical matter is
impossible to prove" where "no positive statement" of the
fact required to be disclosed exists. <u>See, e.g.</u>, <u>Waggoner</u>,
875 F.3d at 95-96.

While the SAC contains statements that Baliga
characterizes as affirmatively misleading, the Court agrees
with the <u>R&R</u> that this case is primarily about the failure to
disclose that the Tongfang Transaction was a related party
transaction. The failure to disclose the related nature of
the transaction impacts all three categories of misstatements
and omissions that Baliga alleges.

To begin, if, as alleged, Shi sat on both sides of the
Tongfang Transaction, then LKM had a duty to disclose that

---

[10] Shi states that under Waggoner and Wilson, "[t]he Affiliated Ute
presumption only applies to narrow situations where, because 'no positive
statements exist,' reliance is, 'as a practical matter[,] impossible to
prove.'" (Shi's Objections at 39 (emphasis added).)

position under, at minimum, relevant SEC reporting rules. See, e.g., 17 C.F.R. § 229.404 (requiring disclosure of any transaction exceeding $120,000 "in which any related person had or will have a direct or indirect material interest"). Courts regularly conclude, as the R&R did, that the Affiliated Ute presumption applies where parties fail to disclose related party transactions. See R&R at *21; see also Puddu, 2022 WL 2304248, at *4; Skeway v. China Nat. Gas, 304 F.R.D. 467, 475-76 (D. Del. 2014); In re Montage Tech. Grp. Ltd. Sec. Litig., No. 14 Civ. 722, 2016 WL 1598666, at *6-7 (N.D. Cal. Apr. 21, 2016); Beaver Cty. Emps'. Ret. Fund v. Tile Shop Holdings, Inc., No. 14 Civ. 786, 2016 WL 4098741, at *7 (D. Minn. July 28, 2016) (explaining with respect to related party transactions that "it is illogical to conclude that something completely omitted from a required corporate disclosure is merely 'misrepresented[,]'" even where the party made positive statements about the transactions in question). And, as discussed, Section III.B.2.c., supra, failing to disclose Shi's involvement on both sides withholds a material fact from investors such that Affiliated Ute is properly applied.

To avoid this conclusion, Shi characterizes the statements that Baliga identifies as being affirmative misstatements -- not omissions -- because each omission

"relate[s] back to prior positive statements alleged in the SAC," and because the truths omitted are "merely the inverse of the positive statements" made to the SEC and investors. (Shi's Objections at 41.) Shi's argument fails. The alleged omitted truth that Shi had a "significant ownership interest in Tongfang SPC" is not the inverse of the statement that Shi would "continue to participate with [Tongfang SPC] in the future." (SAC ¶¶ 47-48.) And while Shi is correct that the inverse of the statement characterizing the Tongfang Transaction as one made with an "independent third party" would be that the transaction involved related parties, that statement is alleged to have been made defensively by Shi *after* the February 2018 report revealed the purported truths of the transaction and is not a misstatement or omission that Baliga pleads was actionable.[11] (Compare Shi's Objections at 41, with SAC ¶ 68.) In that way, the February 2018 corrective disclosure of the Tongfang Transaction as a related party transaction does not "relate[] back to an earlier statement" and so it would not be "reasonable to think that [those] prior

---

[11] To the extent that Shi's defensive statements, rebutting the February 2018 report, may not be actionable under the Affiliated Ute theory -- since the inverse of Tongfang SPC being "independent" is that it was, in fact, "related" -- the Court is satisfied that Baliga has, at this stage, adequately pled reliance under the fraud-on-the-market theory and agrees with the R&R's conclusion that "whether Plaintiff's reliance was justified or whether his subsequent trades belie any reliance on LKM's alleged misrepresentations or omissions raises a question of fact not appropriate for resolution on a motion to dismiss." R&R at *21.

statement[s] still stand[]." <u>Waggoner</u>, 875 F.3d at 95. Accordingly, the Court agrees with the <u>R&R</u> and adopts its finding that Baliga adequately, and primarily, pled reliance under the <u>Affiliated Ute</u> theory.

e)   <u>Loss Causation</u>

Shi's objections to the <u>R&R</u>'s loss causation recommendation rehash the same arguments he made in both his original and his reply brief before Magistrate Judge Figueredo. (<u>See</u> Shi Br. at 22; Shi Reply at 15-16.) The Court reviews the <u>R&R</u> for clear error and finds that Shi's objections are meritless. No error was committed. The Court adopts the <u>R&R</u> as to loss causation in its entirety.

f)   <u>Actionable Transactions</u>

To the extent, however, that the <u>R&R</u> allows all of Baliga's transactions to be actionable, the Court disagrees. <u>See R&R</u> at *20 (noting that "each of Plaintiff's transactions in LKM ADS remain actionable"). As discussed, Section III.B.2.b., <u>supra</u>, Baliga made 32 purchases of LKM securities between January 21, 2014, and August 17, 2018. (SAC ¶ 126.) Not all of these transactions are actionable.

Baliga alleges that the Tongfang Transaction was first announced via press release on March 30, 2017. (<u>Id.</u> ¶ 40.) The company's duty to disclose the related party nature of the Tongfang Transaction was triggered coincident to the

March 30 press release. According to the SAC, then, 19 of Baliga's 32 transactions occurred before the Tongfang Transaction was announced, before any duty to disclose was triggered, and thus before the alleged deception began.

It is axiomatic that in Section 10(b) and Rule 10b-5 cases that plaintiffs "may recover only for losses that result from decisions to buy or to sell, not from decisions to hold or refrain from trading." First Equity Corp. of Fl. v. Standard & Poor's Corp., 869 F.2d 175, 180 n.2 (2d Cir. 1989) (citing Blue Chip Stamps, 421 U.S. at 748). Accordingly, "[b]ased on the plain language of [S]ection 10(b) and well-settled case law, [Baliga's] [pre-March 30, 2017] purchase[s] could not under any circumstances give rise to a Rule 10b-5 cause of action because th[ose] purchase[s] occurred before any alleged deception began, and therefore could not be in connection with the purchase or sale of a security." Gurary v. Winehouse, 235 F.3d 792, 799 (2d Cir. 2000), abrogated on other grounds by F.T.C. v. Actavis, Inc., 570 U.S. 136 (2013). To the extent that the R&R concluded otherwise, the Court modifies the R&R and finds that any of Baliga's purchases made prior to March 30, 2017, are not actionable and must be dismissed with prejudice.

### 3.   Section 20(a) Objections

Shi's argument regarding Baliga's Section 20(a) claims is only that the R&R incorrectly concluded that Baliga had adequately pled a primary violation under Section 10(b). (See Shi's Objections at 46.) Because the Court adopts the R&R's overarching conclusion that Baliga has adequately pled a Section 10(b) claim, the Court rejects Shi's objections and adopts in its entirety the R&R's recommendation that Baliga has adequately pled a Section 20(a) claim against the Individual Defendants.

### 4.   Common Law Fraud Objections

The R&R concluded that Baliga adequately pled his common law fraud claim based on an application of the Affiliated Ute theory of reliance and recommended denying Shi's motion to dismiss. Shi raises an objection to the R&R's application of Affiliated Ute and its conclusion that the claims could survive, specifically arguing that the New York state court cases cited in the R&R are not on point as they do not apply Affiliated Ute to common law fraud claims at the pleadings stage. (See Shi's Objections at 46-49.)

Before Magistrate Judge Figueredo, neither party directly addressed whether and to what extent Affiliated Ute

applies to state common law fraud claims.[12] In particular, the parties did not fully address how it applies where the securities allegations primarily focus on a failure to disclose, but the common law fraud claims, targeting the same misstatement and omissions, are pled as grounded in a more direct theory of reliance.[13]

The Court finds it would be appropriate for the parties to further address the application of Affiliated Ute to New York common law fraud claims. Accordingly, the Court will remand this issue for supplemental briefing and requests Magistrate Judge Figueredo to issue an amended report and recommendation based on the arguments.

5.   Negligent Misrepresentation Objections

Here, Shi reruns his argument that Baliga failed to plead the "special relationship" required to assert a claim for negligent misrepresentation. The Court finds no clear error with the R&R's recommendation and adopts it in full.

---

[12] The closest that any party came to arguing that Affiliated Ute does or does not apply was Baliga's reference to having "alleged fraud by omission" and a "duty to disclose" "with particularity" (Baliga Opp. at 26.)

[13] Baliga's common law fraud allegations are that he "reasonably relied on" or "directly relied on" LKM's statements in "reaching investment decisions." (SAC ¶¶ 119, 124, 162-63.)

6.   <u>Xu and Wu Objections</u>

Similarly, Shi's objections to the <u>R&R</u> with respect to Xu and Wu are nearly verbatim to the supplemental briefing he provided Magistrate Judge Figueredo. (<u>Compare</u> Dkt. No. 324 at 2, <u>with</u> Shi's Objections at 22.) The Court finds that Magistrate Judge Figueredo's recommendation as to Xu and Wu was not clearly erroneous and adopts the recommendation in full.

## IV.   **ORDER**

For the reasons stated above, it is hereby

**ORDERED** that, substantially for the reasons set forth in the Report and Recommendation of Magistrate Judge Valerie Figueredo ("<u>R&R</u>," Dkt. No. 328), the Court adopts in part the <u>R&R</u> as the Court's decision on the motion to dismiss the Second Amended Complaint ("SAC," Dkt. No. 166) filed by Defendants Wenyong Shi ("Shi") and Link Motion, Inc. ("LKM") (Dkt. No. 262) with respect to the <u>R&R</u>'s recommendations on (1) the appropriate legal standard; (2) scienter; (3) the purchase or sale of securities; (4) the misstatements and omissions of material fact; (5) reliance; (6) loss causation; (7) the Section 20(a) claims; (8) the negligent misrepresentation claims; and (10) the claims as to

individual defendants Roland Wu ("Wu"), and Zemin Xu ("Xu"); and it is further

**ORDERED** that the objections from Shi (Dkt. No. 330) are **DENIED** as to those recommendations the Court adopts above; and it is further

**ORDERED** that the Court rejects the recommendations set forth in the R&R with respect to which of Wayne Baliga's ("Baliga") purchases (see SAC ¶ 126) are actionable; and it is further

**ORDERED** that any of Baliga's purchases of LKM securities occurring before March 30, 2017, are non-actionable and are **DISMISSED** with prejudice; and it is further

**ORDERED** that Baliga's common law fraud claims are remanded to Magistrate Judge Figuleredo for further consideration, and directs the parties to file, within one week of the date of this order, a proposed briefing schedule for Shi's opening brief, not to exceed ten pages, in support of dismissal of the common law fraud claims, Baliga's opposition, not to exceed ten pages, and Shi's reply, not to exceed five pages; and it is further

**ORDERED** that the R&R's recommendation with respect to Baliga's claims for unjust enrichment is adopted in full and Shi's motion to dismiss the unjust enrichment claims pursuant to Rule 12(b)(6) is **GRANTED** with prejudice.

**SO ORDERED.**

Dated:      4 November 2022
            New York, New York

_____
            Victor Marrero
            U.S.D.J.