**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)                1:18-cv-11642-VM-VF

                               Plaintiff,

           -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI, JIA LIAN, XIAO YU,

                             Defendants,

           -and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

                       Nominal Defendant.

---

**RECEIVER'S MEMORANDUM OF LAW**
**<u>IN SUPPORT OF ACCOUNTING</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

    Procedural History................................................................................................................ 2

    Summary of Receipts and Expenses ................................................................................... 3

    Receipts ............................................................................................................................... 4

    Expenses............................................................................................................................... 5

    Post-October 5, 2020 Expenses........................................................................................... 6

    Unfunded Liabilities of the Receivership............................................................................ 9

    Shi's Domination Over The Company................................................................................. 9

ARGUMENT....................................................................................................................... 11

    I.    THE COURT SHOULD APPROVE THE RECEIVER'S ACCOUNTING .................... 11

    II.   THE COURT SHOULD HOLD SHI PERSONALLY LIABLE FOR THE UNFUNDED
LIABILITIES OF THE RECEIVERSHIP ............................................................................. 16

CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Markets N. Am., Inc.,*
   *841 F. Supp. 2d 762, 766 (S.D.N.Y. 2012)...……………………………………………………...*17

*Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.,*
   No. 04-cv-4971 (NG) (MDG), 2006 WL 2802092 (E.D.N.Y. Sept. 28, 2006)......................16

*Balmer v. 1716 Realty LLC,*
   No. 05 CV 839 NG MDG, 2008 WL 2047888, (E.D.N.Y. May 9, 2008).................. 17, 19, 20

*F.T.C. v. Consumer Health Benefits Ass'n,*
   No. 10-cv-3551 (ILG) (RLM), 2011 WL 5513182, (E.D.N.Y. Nov. 10, 2011)......................12

*Fed. Home Loan Mortg. Corp. v. S.E.A. Yonkers Assocs.*, 869 F. Supp. 187, (S.D.N.Y. 1994).. 15

*Fed. Nat. Mortg. Ass'n,* No. 04 CV 4971 NG MDG, 2006 WL 2802092 ................................... 19

*Fed. Trade Comm'n v. 4 Star Resolution, LLC,*
   No. 15-cv-112S, 2016 WL 4138229, (W.D.N.Y. Aug. 4, 2016)............................................. 15

*JDM Long Island, LLC v. U.S. Bank Nat. Ass'n,*
   No. 10-cv-5564 (JS) (AKT), 2014 WL 6632644, (E.D.N.Y. Nov. 21, 2014).…………………………11

*Morris v. New York State Dep't of Tax'n & Fin.,*
   82 N.Y.2d 135, 141, 623 N.E.2d 1157, 1160 (N. Y. Ct. App. 1993) ...................................... 17

*Pioche Mines Consol., Inc. v. Dolman,* 333 F.2d 257, 275 (9th Cir. 1964)…...………………………12

*S.E.C. v. Northshore Asset Mgmt.,*
   No. 05 CIV. 2192 (WHP), 2009 WL 3122608, at *1 (S.D.N.Y. Sept. 29, 2009).................... 15

*Sec. & Exch. Comm'n v. Amerindo Inv. Advisors Inc.,*
   No. 05-cv-5231 (RJS), 2015 WL 13678841, at *1 (S.D.N.Y. Sept. 14, 2015) ....................... 11

*Sec. & Exch. Comm'n v. Fifth Ave. Coach Lines, Inc.,*
   364 F. Supp. 1220, 1222 (S.D.N.Y. 1973)............................................................................. 16

*Sec. & Exch. Comm'n v. Morgan,* 504 F. Supp. 3d 221, 223 (W.D.N.Y. 2020) ......................... 11

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 08-01789,
   2021 WL 4994435, (Bankr. S.D.N.Y. Oct. 27, 2021) No. 08-01789, 2021 WL 4994435 .. 17,19

*United States Sec. & Exch. Comm'n v. Qin,*
   No. 20 CIV. 10849 (LGS), 2022 WL 3363234, at *2 (S.D.N.Y. July 25, 2022)....................... 13

Pursuant to the Court's September 29, 2022 order (ECF 359) requiring Robert W. Seiden (the "Receiver"), the Court-appointed Receiver over Link Motion Inc. ("LKM" or the "Company"), to submit an accounting, the Receiver respectfully submits this memorandum of law, together with the Declaration of Robert W. Seiden ("Seiden Decl."), in support of the Receiver's request that the Court (i) approve the Accounting, (ii) require Defendant Shi to pay the unfunded liabilities of the Receivership as reflected in the Receiver's accounting (the "Accounting") [1].

## PRELIMINARY STATEMENT

The Receiver respectfully seeks the Court's approval of the Accounting, which is supported by the detailed records submitted with the accompanying Seiden Declaration.

As more fully described herein, the fees and expenses incurred by the Receiver are appropriate and should be approved. The Receiverships' work has involved complex cross-border legal issues in multiple jurisdictions. The Receivership's actions provided genuine benefits to the company, including for example securing the appointment of a co-Receiver in Hong Kong (which recovered significant assets in the Company's Hong Kong bank accounts), working with LKM's registered agent in the Cayman Islands to ensure that LKM stayed in good standing, and engaging with Google, Facebook, Apple and other counterparties of the Company to take control of LKM's applications and maximize value for shareholders and creditors.

Throughout the Receivership, the Receiver's work has been complicated by Defendant Shi's egregious violations of this Court's orders. Shi diverted LKM's assets to himself wholesale (thereby frustrating the Receiver's asset recovery efforts) and sought to block the Receiver's work at every turn.

---

[1] As used herein, the "Accounting" refers to the Receiver's accounting of the receipts and expenses of the receivership (including cash disbursements and unfunded liabilities), as presented in the Seiden Declaration submitted with this brief and the exhibits annexed thereto.

Under well-established law, a corporate officer may be held personally liable for the debts of a corporation in Receivership, where the officer diverted the corporation's funds and thereby drained the assets available to the Receivership. Here, given Shi's extraordinary misconduct — including diverting over $80 million in LKM funds during the Receivership to companies that he controlled — the Court should hold Shi personally liable for the Receivership's unfunded liabilities.

For these reasons and as more fully explained below, the Receiver respectfully requests that the Court approve the Accounting and require Defendant Shi to pay the unfunded liabilities of the Receivership.

## **BACKGROUND**

### **Procedural History**

On February 1, 2019, the Court issued an order (the "Receivership Order") which appointed me as Receiver. *See* ECF 26. On March 9, 2022, Magistrate Judge Debra Freeman issued a Report and Recommendation and recommended that the Court:

> discharge the Receiver, after Receiver submits, by a date certain, a full and final accounting that shows the activities performed during the period of his appointment and the costs thereof.

ECF 275 (the "R&R"), at 42; *see also* Seiden Decl., at ¶ 5.

On August 25, 2022, Judge Marrero adopted the R&R in its entirety and ordered the parties to provide a proposed schedule for conducting an accounting of the Receivership prior to discharging the Receiver on or before September 25, 2022. ECF 331 (the "Accounting Order"), at 23; *see also* Seiden Decl., at ¶ 6.

On September 29, 2022, upon reviewing the parties' proposals, the Court ordered the Receiver to submit "an accounting of the receivership together with any supporting documents (the 'Accounting')" on or before November 18, 2022. *See* ECF 359, at 1. The Court permitted

the Receiver to file a memorandum of law in support of his Accounting.  *Id.*; *see also* Seiden Decl., at ¶ 7.

**Summary of Receipts and Expenses**

Since the Receiver was appointed, the Receiver's activities, as well as activities performed in furtherance of the Receivership Order by the Receiver's attorneys, staff, and agents in the United States and other jurisdictions (all such activities collectively, the "Receivership") have generated approximately $2 million in receipts and $3.2 million in expenses.  These receipts and expenses are summarized in the chart below.

| Receipts | $2,204,556.09 |
|---|---|
| Receipts from LKM bank accounts | $371,568.29 |
| Funds collected from commercial partners | $1,832,987.80 |
| **Expenses** | **$3,231,673.47** |
| Fees charged (and expenses incurred by) the Receiver and his counsel at SLG | $2,471,120.86 |
| Fees and expenses of Hong Kong International Arbitration Centre ("HKIAC") | $15,000.00 |
| Fees and expenses of Hong Kong co-receiver | $235,594.00 |
| Fees and expenses of Receiver's Hong Kong counsel | $379,952.61 |
| Fees of Receiver's translator(s) | $102,400.00 |
| Fees and expenses of Receiver's Cayman Islands counsel | $21,601.49 |
| Fees and expenses of LKM's Cayman Islands registration agent | $3,109.51 |

*See* Seiden Decl., at ¶ 8.

These receipts and expenses are more fully described below.  In addition, attached to the Seiden Decl. at Ex. A is an Excel spreadsheet listing all receipts and expenses of the Receivership from February 1, 2019 through the date of filing this declaration.

**Receipts**

Since February 1, 2019, the Receivership has recovered a total of $2,004,556.09, which includes (a) $371,568.29 from LKM and its Wholly Foreign-Owned Entities' ("WFOEs") bank accounts, and (b) $1,832,987.80 from Apple Inc., DAPP Global Limited, Facebook Ireland Ltd., ACH-Google LLC, and PayPal, Inc (collectively, the "Commercial Partners"). All funds recovered by the Receivership (*i.e.*, the $2,204,556.09) were deposited in SLG's attorney trust account. The Receiver has provided a further breakdown of the $2,204,556.09 that was recovered in his accompanying Declaration. *See* Seiden Decl., at ¶ 10.

After December 2020, the Receivership did not recover any further amounts. *See* Seiden Decl., at ¶ 15.

Significantly, the fact that the Receivership did not recover more than approximately $2 million is due to Shi's actions. Indeed, based upon the investigation conducted by the Receivership, Defendant Vincent Wenyong Shi ("Shi") diverted significant sums from LKM accounts, which dramatically limited the amounts of funds that could be recovered by the Receivership. For example, Shi secretly diverted approximately 626 million RMB (at the time valued at over $89 million) from LKM's WFOE accounts to an account owned by an LKM subsidiary under Shi's control. *See* ECF 220; *see also* ECF 239-1; *see also* Seiden Decl., at ¶¶ 16-17.

Further, as uncovered by Receiver's investigation, Shi formed a new company (that Shi controlled) to divert revenues from LKM's applications. *See* ECF 239-1. For this reason, the Receiver received no funds from LKM and WFOEs' Commercial Partners since the end of 2020. *See* Seiden Decl., at ¶ 18.

**<u>Expenses</u>**

As discussed below, since February 1, 2019, the Receiver has incurred a total of $3,231,673.47 in expenses. These expenses were incurred by:

a) the Receiver and his counsel at SLG;

b) the Receiver's Hong Kong counsel and Hong Kong co-receiver;

c) the HKIAC;

d) the Receiver's translators, and

e) Receiver's Cayman Islands counsel and LKM's Cayman registration agent.

*See* Seiden Decl., at ¶ 19. A detailed breakdown of each of these categories of expenses is provided in the accompanying Seiden Declaration. *See* Seiden Decl., at ¶¶ 20-35.

As more fully described in the Seiden Declaration, the primary expense of the Receivership has consisted of fees charged by counsel and other professionals in the United States, Hong Kong, and the Cayman Islands to carry out of the functions of the Receivership, including numerous actions designed to recover and safeguard LKM's assets. *See* ECF 210, ECF 220, ECF 269, and ECF 285; *see also* Seiden Decl., at ¶ 20.

The actions taken by the Receivership include: (i) negotiating with significant LKM shareholders in the People's Republic of China ("PRC") to gain control over LKM's subsidiaries, (ii) taking appropriate steps to gain control of the Company's WFOE in the PRC, (iii) filing the Company's required Form 6-K with the U.S. Securities and Exchange Commission, (iv) taking control of the Company's Hong Kong subsidiary, (v) defending an international arbitration on

behalf of LKM in Hong Kong and securing an arbitration award rescinding pledge agreements valued at $270 million that (as the arbitral tribunal determined) were made in breach of Shi's fiduciary duties, (the "International Arbitration") (vi) interviewing management at the Company's Finland entity to identify potential intellectual property assets controlled there, (vii) investigating a transaction between the Company and China AI Capital Limited ("China AI") and sending a demand letter to China AI seeking $10,000,000 in consideration owed to the Company, (viii) investigating the Company's sale of its largest asset, Showself Technology Co., Ltd., (ix) initiating a series of legal actions (arbitration and litigation) in the PRC to gain control of LKM's WFOE and its bank accounts, (x) changing the Company's chop to prevent Shi from using the chop to obstruct the Receiver's efforts in the PRC, (xi) investigating the whereabouts and disposition of the Company's assets, and (xii) investigating Shi's misconduct in diverting the Company's assets and declining to defend arbitration claims which subjected the Company to an approximately $400 million damage award. *See* ECF 285; *see also* Seiden Decl., at ¶ 21.

**Post-October 5, 2020 Expenses**

In the R&R, Judge Freeman recommended that the Court:

> require the Company to pay the reasonable costs incurred by the Receiver in the performance of duties authorized by the Court **up to October 5, 2020**, and give the parties the opportunity to brief the question of whether the cost of the Receiver's activities after the date should be borne by the Company or [Plaintiff]

ECF 275, at 42 (emphasis added).

On August 25, 2022, Judge Marrero adopted the R&R in the Accounting Order and held that "expenses that the corporation would have had to incur had there been no receiver, and expenses that confer[red] a genuine benefit upon the corporation, should be charged to it."  ECF 331 at 19; *see also* Seiden Decl., at ¶ 35.

As described above, since February 1, 2019, the Receiver has incurred a total of $3,231,673.47 in expenses.  These expenses can be sub-divided chronologically as follows

a) Between February 1, 2019 and October 5, 2020, Receiver incurred approximately $2,679,341.95 fees and expenses.

b) Between October 6, 2020 and November 16, 2022, Receiver incurred additional $552,331.52 fees and expenses.

*See* Seiden Decl., at ¶ 36.

Given that the R&R and Accounting Order raise the question of whether the Receiver's activities after October 5, 2020 should be borne by the Company or the Plaintiff, below is a description of the Receiver's activities after that date. *See* Seiden Decl., at ¶ 37.

The Receiver's activities after October 5, 2020, include, but are not limited to:

a) filing status report to the Court explaining the Receiver's application in Cayman seeking Cayman court's recognition of the Receivers' authority (ECF 173);

b) filing status report to the Court reporting the Receiver's latest efforts and progress (ECF 186);

c) filing status report to the Court notifying the Court that the Receiver, upon the Company's shareholders' requests, to call an EGM in Cayman (ECF 188);

d) filing motion to the Court requesting the Court's approval to cancel China AI's shares in the Company (ECF 194);

e) filing memorandum of law in response to Plaintiff's motion for conversion of Plaintiff's ADRs (ECF 204);

f) filing letter motion to the Court to cancel China AI's shares due to unpaid consideration of the subscription agreement (ECF 205);

g) filing status report to the Court notifying the Receiver's achievement in HKIAC arbitration (ECF 210);

h) filing status report to the Court reporting the Receiver's latest efforts and progress (ECF 220);

i) filing memorandum of law in opposition to Defendant's motion to discharge Receiver (ECF 241);

j)   appearing the Court's case management conference (ECF 247);

k)   filing letter to the Court in response to Defendant Shi's motion to toll (ECF 253);

l)   filing status report to the Court reporting the Receiver's latest efforts and progress (ECF 268);

m)  filing status report to the Court reporting a recent uncovered arbitration before HKIAC and communicating with HKIAC arbitrator (ECF 269);

n)   filing statues report to the Court reporting the Receiver's effort and progress in calling EGM in Cayman (ECF 271);

o)   filing status report to the Court notifying the Court about the Receiver's compliance with the Court's order (ECF 282);

p)   filing memorandum of law in opposition Defendant's Order to Show Cause (ECF 285);

q)   filing status report to the Court notifying the Court about the Receiver's compliance with the Court's order (ECF 297);

r)   filing status report to the Court seeking the Court's instructions and guidance on ADRs holders' request for conversion of shares (ECF 304);

s)   filing letter to the Court in response to Defendant Shi's request for unseal documents and inaccurate accusation (ECF 309);

t)   filing status report to the Court notifying the Court about the Receiver's agent's unreachable status (ECF 319);

u)   appearing the Court's conference held on August 8, 2022 (ECF 326);

v)   filing the letter to the Court address the Receiver's authority and legal issue related to the Company's EGM in Cayman (ECF 335);

w)  filing status report to the Court reporting Defendant Shi and LKM's board's violation of the Court's order (ECF 350);

x)   filing status report to the Court providing a proposed accounting schedule to the Court (ECF 354);

y)   filing status report to the Court seeking the Court's instructions and guidance on ADRs holders' request for conversion of shares (ECF 367);

z) filing memorandum of law in opposition to Defendant Shi's motion to unseal documents (ECF 368);

aa) appearing at the Court's hearing regarding Defendant Shi's motion to unseal (ECF 369); and

bb) reviewing, analyzing, and responding numerous documents, demands, and court filings (including Defendant Shi's Notice of Demand for Inspection Pursuant to N.Y. CPLR 6404 and Fed. R. Civ. Proc. 66 ("Shi's Demands"), dated October 3, 2022. *See* Seiden Decl., Ex. I.

*See* Seiden Decl., at ¶ 38.

**Unfunded Liabilities of the Receivership**

As noted above, the Receivership has incurred $3,231,673.47 in expenses. Of these expenses, $1,077,117.38 remain unpaid. *See* Seiden Decl., at Ex. A at 10; *see also* Seiden Decl., at ¶ 39.[2] The $1,077,117.38 in unpaid expenses can be characterized as an unfunded liability of the Receivership, given that there are no funds currently available to the Receivership that would enable the Receiver to pay these expenses.

**Shi's Domination Over The Company**

As discussed in multiple status reports and status updates submitted to this Court, Shi acted to frustrate the Receivership and exert his domination over the Company.

a) Shi formed a new company to divert revenues from LKM's applications. *See* ECF 239-1, at 2.

b) Shi failed to acknowledge or response any of the Receivers' letters and requests, as well as failed to provide funds to the Receivership. *See* ECF 30, at ¶¶ 3-10; *see also* ECF 50, at ¶ 3.

---

[2] As detailed in the Receiver's status reports, the Receiver's agent in China, Mr. Lilin (Francis) Guo ("Mr. Guo") has been missing since April 2022. ECF 309, at 3 and ECF 335 at 2-3. While the Receivership has attempted to contact Mr. Guo on multiple occasions over the past few months, and even as recently as this week, Mr. Guo still unreachable. Further, any documentation of the note agreement entered into between Mr. Guo and LKM is under seal. Therefore, the Receiver's Accounting does not include Mr. Guo's fees and expenses. *See* Seiden Decl., at ¶ 40. However, it should be noted that the Receivership did not make any cash payments to Mr. Guo. Rather, pursuant to Mr. Guo's note agreement (which was approved by this Court), Mr. Guo had the right to convert fees and expenses that he advanced to the Company into shares of LKM stock at a predetermined ratio that was approved by the Court. *See* Seiden Decl., at ¶ 41.

c) Shi failed to turn over the Company seal, financial statements, books and records, and business licenses to Receiver's agent.  *See* ECF 50.

d) Shi and his associates instructed the Company's employees to ignore and disregard the Receiver's demands and requests.  *See* ECF 50, at ¶ 4.

e) Shi secretly formed a new company to receive revenues for the Company's applications. *See* ECF 50, at ¶ 9.

f) Shi and his associates went to the Company's office and ordered the employees to remove accounting and legal documents, and to destroy and damage operating data system and the Company's main contract management system. *See* ECF 50 at, ¶¶ 11-12.; *see also* ECF 43.

g) Shi' associate, Zemin Xu, brought numerous frivolous lawsuits in China against the Receiver's agent with an attempt to prevent/delay the Receiver's control over the Company and WFOEs.  ECF 239-1, at ¶¶ 6-7.

h) Between May and November 2019, Shi secretly transferred approximately 626 million RMB (at the time valued at over $89 million) from the WFOE accounts to an account owned by an LKM subsidiary under his control.  ECF 239-1, at ¶¶ 8-9; *see also* ECF 161; *see also* ECF 173.

i) The Receivership was not provided with LKM's materials including labor and personnel files, employee lists, entry dates, employment contracts, salary records, as well as the Company's financial books and the Receiver's Delegates were forced to spend substantial time to make up for the position they were first put in.  *See* ECF 239-1, at ¶ 12.

j) Shi stopped paying employees of LKM and these employees filed claims against the Receiver's agent in China. Without the data that Shi stole from LKM headquarters, such as the LKM's materials including labor and personnel files, employee lists, entry dates, employment contracts, salary records, as well as the Company's financial books, the Receiver's agent was not able to confirm or fight against the lawsuits underlying facts. The Receiver's agent in China faced harsh penalties in China due to these lawsuits, including being on a "Restriction List," which is the equivalent of a blacklist in America.  *See* ECF 239-1, at ¶¶ 11-14; *see also* ECF 293.

k) Shi has sought to act on behalf of the Company by holding a meeting of the board of directors to take actions on behalf of LKM in further violation of this the Receivership Order.  *See* ECF 365.

l) Shi recently engaged his attorneys to file lawsuits on LKM's behalf.  *See* ECF 365.

m) Shi, without notifying the Receiver, Shi personally appeared (on behalf of LKM) in an arbitration proceeding filed by Tongfang Investment Fund Series SPC before HKIAC.

10

ECF 269, at 1-2; *see also* ECF 269-1, at ¶ 8.  Shi "confirmed to HKIAC that he was acting on behalf of [LKM]" and "did not file any statement of defense."  *Id*.  Shi completely surrendered a 2.52 billion RMB (approximately $400 million) dispute by simply emailed to HKIAC that "[LKM] would not be filing any closing submission."  *Id*. at ¶ 12.

n) Shi's counsel, Michael Maloney at Felicello Law P.C., has recently sent the Receiver the expansive Shi Demands ***on behalf of Shi and LKM***.  *See* Seiden Decl. at Ex. I.

## <u>ARGUMENT</u>

## I.    THE COURT SHOULD APPROVE THE RECEIVER'S ACCOUNTING

"A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred . . . [T]he reasonableness of a receiver's fee application is determined in the court's discretion." *Sec. & Exch. Comm'n v. Amerindo Inv. Advisors Inc.*, No. 05-cv-5231 (RJS), 2015 WL 13678841, at *1 (S.D.N.Y. Sept. 14, 2015).   In determining whether a receiver's fees are reasonable, the court may consider "the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed").   Courts further consider "(1) the complexity of problems faced, (2) the benefits to the Receivership estate, (3) the quality of the work performed, and (4) the time records presented." *Sec. & Exch. Comm'n v. Morgan*, 504 F. Supp. 3d 221, 223 (W.D.N.Y. 2020).[3]

Here, the fees and expenses incurred by the Receiver are appropriate under the foregoing standards.[4]

---

[3] The Receiver is also entitled to recover fees charged in connection with the Accounting, including in responding to any potential objections to the Accounting.  *See JDM Long Island, LLC v. U.S. Bank Nat. Ass'n*, No. 10-cv-5564 (JS) (AKT), 2014 WL 6632644, at *11 (E.D.N.Y. Nov. 21, 2014) ("Here, the Court finds that the Receiver is entitled to attorneys' fees for legal representation in connection with the final accounting. The Court ordered the Receiver to file a final accounting upon termination of the Receivership, the fees incurred were in furtherance of that order, and the fees were necessary given the duration of the Receivership and the many objections raised by Ellis to the Receiver's final accounting.").

[4] The Court has already approved of the Receiver's fee applications in this matter, for work through August 9, 2019. *See* ECF 54 at 2; ECF 59 at 2, ECF 78 at 1-2, ECF 97 at 2.

The Receiverships' work, as shown in the Seiden Declaration and the detailed invoices attached thereto, has involved complex cross-border legal issues in jurisdictions throughout the United States, China, Hong Kong, and the Cayman Islands.  This work has included preparing filings with the SEC, working hand in hand with a Hong Kong co-receiver, appearing and defending LKM in the International Arbitration, engaging Cayman counsel to seek recognition of the Receivership in the Cayman Islands, and working with the Receiver's agent in China to maintain the status quo and preserve Company assets to stop Shi's transfers of assets out of the Receivership.  *See, e.g.,* ECF 220 (presenting a detailed status report for the Receiver's activities since his appointment); *see also F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-cv-3551 (ILG) (RLM), 2011 WL 5513182, at *2 (E.D.N.Y. Nov. 10, 2011) (approving receiver's fees where "total time spent by the Receiver and her colleagues performing her considerable mandate under the . . . order . . . is reasonable as well and has been adequately substantiated with contemporaneous time records . . .").

Further, *all* of the Receivership's actions provided a genuine benefit to the company, including work performed after October 5, 2020.[5]  For example, in the Receivership Order, the Court directed the Receiver to defend LKM in an arbitration brought by Zhongzhi Hi-Tech Overseas Investment Ltd ("Zhongzhi").  *See* ECF 43, at ¶ 5.  The Receiver did so immediately. After extensive pre and post hearing written submissions and a two-day evidentiary hearing conducted by the Receiver's counsel, on February 16, 2021, a Hong Kong International Arbitration Centre ("HKIAC") tribunal issued an arbitration award finding that Zhongzhi aided and abetted

---

[5] In its August 25, 2022 Order (ECF 331), the Court held that LKM would bear the costs of the Receivership up until October 5, 2020, and that even as to the period after October 5, 2020, "expenses that the corporation would have had to incur had there been no receiver, and expenses that confer[red] a genuine benefit upon the corporation, should be charged to it." *See* ECF 331 at 18-19 (citing ECF 276 at 41) (*quoting Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 275 (9th Cir. 1964)).

Shi's breaches of his fiduciary duties when he pledged substantially all of LKM's assets (totaling roughly $270 million) for nothing in return. *See generally* ECF 210-1. The HKIAC further concluded that "Shi plainly disregarded counsel's advice in negotiating and approving the two agreements" and offered security to Zhongzhi "without consideration." ECF 210-1, at ¶¶ 151-153.

There are many other examples of the Receivership's actions that benefitted the Company, including securing the appointment of a co-Receiver in Hong Kong (which recovered significant assets in the Company's Hong Kong bank accounts), engaging counsel in the Cayman Islands and securing Cayman court recognition of the Receivership, working with LKM's registered agent in the Cayman Islands to ensure that LKM stayed in good standing, filing multiple letters and motions in front of this Court, and engaging with Google, Facebook, Apple and other counterparties of the Company to take control of LKM's applications and maximize value for shareholders and creditors. *See supra* at 7-9 (detailing the Receiver's activities after October 5, 2020); *see also,* ECF 220; *see also United States Sec. & Exch. Comm'n v. Qin,* No. 20 CIV. 10849 (LGS), 2022 WL 3363234, at *2 (S.D.N.Y. July 25, 2022) (the court granted receiver's fee application in part following showing of, *inter alia,* performance of work beneficial to Receivership estate, including negotiating and executing agreements to obtain Receivership property, identifying Receivership property, interviewing witnesses, issuing subpoenas to obtain information regarding Receivership property, and analyzing data).

Significantly, the Receiver's work has been complicated by Defendant Shi's egregious violations of this Court's orders and his brazen attempts to frustrate the work of the Receivership. As discussed in multiple status reports and status updates submitted to this Court:

- Shi failed to acknowledge or response any of the Receivers' letters and requests, as well as failed to provide funds to the Receivership as required under the Receivership Order. *See* ECF 30, at ¶¶ 3-10; *see also* ECF 50, at ¶ 3; *see also* ECF 26 at II(5).

- Shi failed to acknowledge or response any of the Receivers' letters and requests, as well as failed to provide funds to the Receivership as required under the Receivership Order.  *See* ECF 30, at ¶¶ 3-10; *see also* ECF 50, at ¶ 3; *see also* ECF 26 at II(5).

- Shi secretly formed a new company to receive revenues for the Company's applications. *See* ECF 50, at ¶ 9.

- Shi failed to turn over the financial statements, books and records, and business licenses to Receiver's agent.  *See* ECF 50, at ¶ 3.

- Shi and his associates instructed the Company's employees to ignore and disregard the Receiver's demands and requests.  *See* ECF 50, at ¶ 4.

- Shi and his associates went to the Company's office and ordered the employees to remove accounting and legal documents, and to destroy and damage operating data system and the Company's main contract management system. *See* ECF 50, at ¶¶ 11-12.; *see also* ECF 43.

- Shi' associate, Zemin Xu, brought numerous frivolous lawsuits in China against the Receiver's agent with an attempt to prevent/delay the Receiver's control over the Company and WFOEs. ECF 239-1, at ¶¶ 6-7.

- Between May and November 2019, Shi secretly transferred approximately 626 million RMB (at the time valued at over $89 million) from the WFOE accounts to an account owned by an LKM subsidiary under his control.  ECF 239-1, at ¶¶ 8-9; *see also* ECF 161; *see also* ECF 173.

- The Receivership was not provided with LKM's materials including labor and personnel files, employee lists, entry dates, employment contracts, salary records, as well as the Company's financial books and the Receiver's Delegates were forced to spend substantial time to make up for the position they were first put in.  *See* ECF 239-1, at ¶ 12.

- Shi, acting through his alter ego China AI, and through the same attorneys who represent him in this action, have filed numerous frivolous filings in this court and acted to impede the receivers efforts generally. *See generally* ECF 220; *see also* ECF 128; ECF 143.

- Shi stopped paying employees of LKM and these employees filed claims against the Receiver's agent in China. Without the data that Shi stole from LKM headquarters, such as the LKM's materials including labor and personnel files, employee lists, entry dates, employment contracts, salary records, as well as the Company's financial books, the Receiver's agent was not able to confirm or fight against the lawsuits underlying facts. The Receiver's agent in China faced harsh penalties in China due to these lawsuits, including being on a "Restriction List," which is the equivalent of a blacklist in America.  *See* ECF 239-1, at ¶¶ 11-14; *see also* ECF 293.

Federal courts in New York have held receiver's fees to be reasonable under circumstances such as this, where an alleged bad actor has disregarded court orders and forced the Receiver to expend fees to take control of the company. *See supra* at 12; *Fed. Trade Comm'n v. 4 Star Resolution, LLC*, No. 15-cv-112S, 2016 WL 4138229, at *6 (W.D.N.Y. Aug. 4, 2016) (approving Receivership fees and expenditures where the Receivership spent "significant time" to oppose "motions brought by the Judgment Creditors . . . and the Receiver's obligation to assume control and take custody of all [the defendants] assets, documents, and electronically stored information.").

The records attached to the Seiden Declaration and the Receiver's status reports to this Court are extensive, and detail the work done by the Receiver and his staff, agents, counsel, Hong Kong co-receiver, and translators. *See generally supra* at 6-10; *see also* Seiden Declaration Ex. B-H. Further, the fees and expenses charged by the SLG and the Receiver's Hong Kong and Cayman counsel are proper, as this Court has approved of their engagement agreements and/or hourly rates. *See, e.g.,* ECF 54; ECF 59, ECF 78, ECF 97 (holding that all "costs, hours, rates, and activities listed in the invoices to be reasonable"); *see also* ECF 339, 340 (approving of the engagement of counsel). Further, the Court was kept apprised of the Receiver's activities throughout the Receivership in the Receiver's regular status reports. *See e.g.,* ECF 43; ECF 220; ECF 220-1; ECF 220-2; ECF 220-3; ECF 220-4; ECF 268; ECF 339-348.

For all of the foregoing reasons, the Receiver respectfully requests this Court approve the Accounting. *See S.E.C. v. Northshore Asset Mgmt.*, No. 05 CIV. 2192 (WHP), 2009 WL 3122608, at *1 (S.D.N.Y. Sept. 29, 2009) (approving receiver's fees in part after "seven prior fee applications" which totaled "more than $11 million in fees and expenses"); *Fed. Home Loan Mortg. Corp. v. S.E.A. Yonkers Assocs.*, 869 F. Supp. 187, 188 (S.D.N.Y. 1994) (receiver entitled to compensation pursuant to the receiver's final accounting based on reasonable value of services

provided); *Sec. & Exch. Comm'n v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) (approving of receiver's fees which were "fair and reasonable").

## II.   THE COURT SHOULD HOLD SHI PERSONALLY LIABLE FOR THE UNFUNDED LIABILITIES OF THE RECEIVERSHIP

As the Accounting Order recognized, LKM is required to fund the costs of the Receivership through October 5, 2020.  LKM is also required to fund the Receivership's expenses after October 5, 2020 which LKM would have incurred had there been no receiver, and the Receivership's expenses for any activities which benefited the Company.  *See* ECF 331 at 19.  In this instance, however, LKM's funds were insufficient to fund the Receivership's expenses, and the Receivership is saddled with approximately $1 million in unfunded liabilities.

Given the extraordinary misconduct of Shi as detailed herein and in the Receiver's extensive status reports to the Court — including Shi's diversion of over $80 million in LKM funds during the Receivership to companies that Shi controlled — the Court should hold Shi personally liable for the Receivership's unfunded liabilities.

Significantly, a corporate officer may be held personally liable for the debts of a corporation in Receivership, particularly where the officer diverted the corporation's funds and thereby drained the assets available to the Receivership.  *See, e.g.*, *Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-cv-4971 (NG) (MDG), 2006 WL 2802092 at *8 (E.D.N.Y. Sept. 28, 2006) (permitting receiver to bring veil-piercing claims against corporate officer who "exercised total discretion with regard to [the] business and the use of its funds," "routinely disbursed [corporate] funds for personal rather than corporate purposes," and "used [corporate] funds as if it were their personal property").  A court's decision to pierce the corporate veil and impose such personal liability is equitable in nature and "necessarily depend[s] on the attendant facts and equities."  *Morris v. New York State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 141, 623

N.E.2d 1157, 1160 (N. Y. Ct. App. 1993); *see also Balmer v. 1716 Realty LLC*, No. 05 CV 839 NG MDG, 2008 WL 2047888, at \*4 (E.D.N.Y. May 9, 2008) (same).

"Under New York law, courts may pierce the corporate veil *either* in the event of a fraud *or* where the corporation has been so dominated by an individual or corporate parent that the subsidiary is relegated to the status of a mere shell, instrumentality, or alter ego." *Sec. Inv. Prot. Corp.*, No. 08-01789, 2021 WL 4994435, at \*6. The two most important factors are that "(1) the owners exercised complete domination over the corporation with respect to the transaction at issue; and (2) that this domination was used to commit a 'fraud or wrong'." *Balmer*, No. 05 CV 839 NG MDG, 2008 WL 2047888, at \*4. Likewise, British law (and accordingly Cayman Island law), "requires a finding that an individual 'interpose a company under his control'." *See Inv. Prot. Corp.*, No. 08-01789, 2021 WL 4994435, at \*8 (under Cayman law, "'where the abuse of the corporate veil to evade or frustrate the law can be addressed only by disregarding the legal personality of the company' piercing the veil 'is ... consistent with authority and with long-standing principles of legal policy.'").[6]

---

[6] Under New York choice of law rules, "the law of the state of incorporation of the corporation governs which law should be used to determine whether to pierce the corporate veil." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, 2021 WL 4994435, at \*6 (Bankr. S.D.N.Y. Oct. 27, 2021). Here, LKM is incorporated in the Cayman Islands the law of the Cayman Islands is applicable to piercing its corporate veil. *Sec. Inv. Prot. Corp.*, No. 08-01789, 2021 WL 4994435, at \*7). However, if there is no "actual conflict between the laws of the jurisdictions involved, there need not be a determination of which law to apply because the application of either jurisdiction's law would provide the same result." *Asesores y Consejeros Aconsec CIA, S.A. v. Glob. Emerging Markets N. Am., Inc.*, 841 F. Supp. 2d 762, 766 (S.D.N.Y. 2012) (internal citations omitted). Under the facts and circumstances of this case, veil piercing is appropriate under both New York and Cayman law. *See Sec. Inv. Prot. Corp.*, No. 08-01789, 2021 WL 4994435 at \*8 (holding that veil piercing was adequately pled under New York and Cayman law); *id.* ("To avoid paying the Trustee these funds or in order to frustrate the Trustee's collection efforts in his attempts to collect these funds, the [the alleged alter ego], knowingly, dismantled these companies and moved the corporate assets to new companies with different names . . . It is also alleged that the liquidation and/or dissolution of these companies was done without informing the Trustee, despite

Since day one of the Receivership, Shi and his cohorts have sought to frustrate the Receiver's authority to manage LKM and disobeyed the Court's orders.  In fact, immediately after the Receiver was appointed, Shi put out a press release on LKM's WeChat account declaring that "the Company believed neither U.S. nor Hong Kong courts had jurisdiction over LKM, that the Company has now authorized the board to pursue action against shareholders and other responsible individuals in the U.S, and that the board of directors is passing resolutions on behalf of the Company to actively thwart the Receiver's efforts."  *See* ECF 30 at ¶¶ 11-12; *see also supra* at 14 (describing Shi's violations of the Receivership Order which included instructing employees to disregard the Receiver's demand and requests, forming a new company to receive revenues from LKM applications, and stealing roughly $88 million from LKM's bank accounts.).  Further, in violation of the Court's Order, beginning in May 2019, without notifying the Receiver, Shi personally appeared (on behalf of LKM) in an arbitration proceeding filed by Tongfang Investment Fund Series SPC before HKIAC.  ECF 269, at 1-2; *see also* ECF 269-1, at ¶ 8.  Shi "confirmed to HKIAC that he was acting on behalf of [LKM]" and "did not file any statement of defense."  *Id*. Shi completely surrendered a 2.52 billion RMB (approximately $400 million) dispute by simply emailing HKIAC that "[LKM] would not be filing any closing submission."  *Id*. at ¶ 12.

Further, recently, Shi has purported to act on behalf of the Company by holding a meeting of LKM's board of directors to take actions on behalf of LKM in further violation of this the Receivership Order.  *See* ECF 365.  The overwhelming evidence suggests that Shi orchestrated the unauthorized LKM Board meeting in violation of the Court's orders – including the fact that it was Shi's own counsel orchestrated the meeting.  *See id.*  Likewise, Shi has engaged his attorneys to

---

his status as a creditor []. The Trustee alleges that the Mayers also hid the fact that the corporations were insolvent so that they could liquidate their assets without court supervision.").

file lawsuits on LKM's behalf.  *See id.*  Indeed, Shi's counsel, Michael Maloney at Felicello Law P.C., has recently sent the Receiver the expansive Shi Demands on behalf of Shi ***and LKM***.  *See* Seiden Decl. at Ex. I.  Under the circumstances, it is clear that Shi has complete domination over the Company and that this domination was used to commit wrongs upon the Company.  *See Sec. Inv. Prot. Corp*, No. 08-01789, 2021 WL 4994435, at *9 (alleging that veil piercing claims were adequately pled where the bad actor "knew of their legal obligation to turnover the [] funds and to provide whatever information was sought" and the bad actor then "created a new corporation and transferred corporate documents"); *see also Fed. Nat. Mortg. Ass'n,* No. 04 CV 4971 NG MDG, 2006 WL 2802092 at *8. (court denied defendants motion to dismiss receiver's crossclaims seeking to pierce corporate veil where the bad actors were finding receiver's veil piercing claims adequately pled where receiver alleged that the bad actors "did not observe corporate formalities," "exercised total discretion with regard to [the] business and the use of its funds," "routinely disbursed [corporate] funds for personal rather than corporate purposes," and where the alleged alter egos "used [corporate] funds as if it were their personal property").

This case is analogous to *Balmer,* No. 05-cv-839 NG MDG, 2008 WL 2047888.  In *Balmer,* the court granted the receiver's motion for summary judgment seeking a declaration that defendant entities were alter egos of Olympia Mortgage Corporation ("Olympia"), the company in Receivership that was alleged to have perpetrated a massive fraudulent scheme, and that Olympia was therefore the legal owner of the defendants' assets. The evidence demonstrated that defendants and Olympia were "inextricably intertwined entities and that, through their common owners, defendants completely dominated Olympia and used the corporate form to further personal rather than business ends." *Id.* at *5.  Further, the defendants siphoned off millions of dollars from Olympia while it was insolvent and facing increasing liability to its creditors. In reaching its

decision, the court considered that the defendants could not, "after using the corporate form to further their personal ends, seek to use the same corporate form to avoid their obligations and protect their assets." *Id* at \*7.  Indeed, as in *Balmer*, "[i]mposing liability here reaches an equitable result." *Id*.

The principles in *Balmer* apply here.  Shi has used his control over LKM for personal ends, stripping LKM's assets for his own benefit at the expense of thousands of shareholders and creditors, in brazen violation of this Court's orders.  Shi should be ordered to pay for the unfunded liabilities of the Receivership.

## <u>CONCLUSION</u>

The Receiver respectfully requests the Court to issue and order (1) approving the Accounting, and (2) requiring Shi to pay the unfunded liabilities of the Receivership as reflected in the Accounting.

Dated: November 18, 2022
     New York, NY

SEIDEN LAW GROUP LLP

By: /s/ Amiad Kushner
Amiad Kushner
Andrew Sklar
Xintong Zhang
322 Eighth Ave, Suite 1704
New York, NY 10001
646-766-1914
akushner@seidenlawgroup.com
asklar@seidenlawgroup.com
xzhang@seidenlawgroup.com

*Counsel for Robert Seiden*
*Court-Appointed Temporary Receiver*
*for Link Motion Inc.*