**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.)<br><br>                       Plaintiff,<br>  -against-<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU,<br><br>                       Defendants,<br>  -and-<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.),<br><br>                       Nominal Defendant. | 1:18-cv-11642-VM-VF<br><br>**DECLARATION OF**<br>**ROBERT W. SEIDEN** |

ROBERT W. SEIDEN declares, pursuant to 28 U.S.C. § 1746, as follows:

      1.      I am an attorney duly admitted to practice law before this Court. I am the managing partner of Seiden Law Group LLP ("SLG").

      2.      I submit this Declaration in my capacity as the temporary receiver (the "Receiver") of Link Motion, Inc. ("LKM" or the "Company"). I was appointed Receiver by this Court in a February 1, 2019 order. *See* ECF 26 ("Receivership Order").

      3.      As more fully described below, on September 29, 2022, the Court issued an order (ECF 359) requiring the Receiver to submit an accounting, together with supporting documents (the "Accounting"). I submit this declaration in furtherance of the Accounting, in order to provide the Court with a record of the receipts and expenses of the receivership, together with supporting documentation. This Declaration is based upon the following: my personal knowledge, inferences I have drawn from information provided to me based on my experience, documents in the

possession of SLG, and my staff's review of receivership records, which I supervised. The information presented herein is true and correct to the best of my knowledge.

**Procedural History**

4. On February 1, 2019, the Court issued the Receivership Order which appointed me as Receiver.

5. On March 2022, Magistrate Judge Debra Freeman issued a Report and Recommendation and recommended that the Court:

> discharge the Receiver, after Receiver submits, by a date certain, a full and final accounting that shows the activities performed during the period of his appointment and the costs thereof.

ECF 275 (the "R&R"), at 42.

6. On August 25, 2022, District Judge Marrero adopted the R&R in its entirety and ordered the parties to provide a proposed schedule for conducting an accounting of the receivership prior to discharging the Receiver on or before September 25, 2022. ECF 331 (the "Accounting Order"), at 23.

7. On September 29, 2022, upon reviewing the parties' proposals, the Court ordered the Receiver to submit "an accounting of the receivership together with any supporting documents" on or before November 18, 2022. *See* ECF 359, at 1. The Court also permitted the Receiver to file a memorandum of law in support of his Accounting. *Id.*

**Summary of Receipts and Expenses**

8. Since the Receiver was appointed, the Receiver's activities, as well as activities performed in furtherance of the Receivership Order by my attorneys, staff, outside professionals and agents in the United States and other jurisdictions (all such activities collectively, the "Receivership") have generated approximately $2 million in receipts and $3.2 million in expenses covering the approximate three (3) year period of the receivership. These receipts and expenses are summarized in the chart below.

| Receipts | $2,204,556.09 |
|---|---|
| Receipts from LKM bank accounts | $371,568.29 |
| Funds collected from commercial partners | $1,832,987.80 |
| **Expenses** | **$3,231,673.47** |
| Fees charged (and expenses incurred by) the Receiver and his counsel at SLG | $2,472,415.86 |
| Fees and expenses of Hong Kong International Arbitration Centre ("HKIAC") | $15,000.00 |
| Fees and expenses of Hong Kong co-receiver | $235,594.00 |
| Fees and expenses of Receiver's Hong Kong counsel | $379,952.61 |
| Fees of Receiver's translator(s) | $104,000.00 |
| Fees and expenses of Receiver's Cayman Islands counsel | $21,601.49 |
| Fees and expenses of LKM's Cayman Islands registration agent | $3,109.51 |

9. These receipts and expenses are more fully described below. In addition, attached as **Exhibit A** is an Excel spreadsheet listing all receipts and expenses of the Receivership from February 1, 2019 through the date of filing this declaration.

**Receipts**

10. Since February 1, 2019, the Receivership has recovered a total of $2,204,556.09, which includes (a) $371,568.29 from LKM and its Wholly Foreign-Owned Entities' ("WFOEs") bank accounts, and (b) $1,832,987.80 from Apple Inc., DAPP Global Limited, Facebook Ireland Ltd., ACH-Google LLC, and PayPal, Inc (collectively, the "Commercial Partners"). All funds recovered by the Receivership (*i.e.*, the $2,204,556.09) were deposited in SLG's attorney trust account. I provide a further breakdown of the $2,204,556.09 that was recovered below.

11. Between April and July of 2019, the Receiver recovered $371,568.29 from accounts owned by LKM and WFOEs. *See* Exhibit B.

12. Specifically, Receiver recovered:

   a) $1,373.32 from LKM's Citibank account (Texas) in April 2019;

   b) $181,808.88 from LKM's Standard Chartered Bank (Hong Kong) ("SCB") account on or about April 10, 2019;

   c) $173,214.65 from WFOE's SCB account on or about April 23, 2019; and

   d) $15,171.44 from WFOE's SCB account on or about July 8, 2019.

Attached to this declaration as **Exhibit B** is a true and correct copy of Citibank and SCB wire transfer records of the above-described $371,568.29 in recoveries, with supporting documentation.

13. Between June 2019 and December 2020, Receiver recovered $1,832,987.80 from LKM and WFOEs' Commercial Partners. *See* Exhibit C

14. Specifically, Receiver recovered:

4

      a) $110,952.01 from Apple Inc. on or about June 10, 2019;

      b) $195,581.25 from DAPP Global Limited. on or about July 8, 2019;

      c) $105,265.29 from Facebook Ireland Ltd. on or about August 27, 2019;

      d) $1,392,421.81 from ACH-Google LLC on or about October 29, 2019;

      e) $16,155.70 from Facebook Ireland Ltd. on or about November 21, 2019;

      f) $7,596.63 from Facebook Ireland Ltd. on or about December 23, 2019; and

      g) $5,015.11 from PayPal, Inc on or about December 22, 2020.

Attached to this declaration as **Exhibit C** is a true and correct copy of LKM and WFOEs' Commercial Partners' wire transfer records of the above-described $1,832,987.80 in recoveries, with supporting documentation.

15. After December 2020, the Receivership did not recover any further amounts.

16. Based upon the investigation conducted by the Receivership, it was determined that Vincent Wenyong Shi ("Shi") diverted significant sums from LKM accounts, which dramatically limited the amounts of funds that could be recovered by the Receivership.

17. For example, Shi secretly diverted approximately 626 million RMB (at the time valued at over $89 million) from LKM's WFOE accounts to an account owned by an LKM subsidiary under Shi's control. *See* ECF 220; *see also* ECF 239-1.

18. Further, as uncovered by Receiver's investigation, Shi formed a new company (that Shi controlled) to divert revenues from LKM's applications. *See* ECF 239-1. For this reason, the Receiver received no funds from LKM and WFOEs' Commercial Partners since the end of 2020.

**Expenses**

19. As discussed below, since February 1, 2019, the Receiver has incurred a total of $3,231,673.47 in expenses. These expenses were incurred by:

5

      a) the Receiver and his counsel at SLG;

      b) the Receiver's Hong Kong counsel and Hong Kong co-receiver;

      c) the HKIAC;

      d) the Receiver's translators, and

      e) Receiver's Cayman Islands counsel and LKM's Cayman registration agent.

I provide a breakdown of each of these categories of expenses below.

**Fees and Expenses Incurred by the Receiver and his Counsel at SLG**

20. The Receiver and his lawyers and staff at SLG have taken numerous actions designed to recover and safeguard LKM's assets. *See* ECF 210, ECF 220, ECF 269, and ECF 285.

21. The actions taken by the Receivership include: (i) negotiating with significant LKM shareholders in the People's Republic of China ("PRC") to gain control over LKM's subsidiaries, (ii) taking appropriate steps to gain control of the Company's WFOE in the PRC, (iii) filing the Company's required Form 6-K with the U.S. Securities and Exchange Commission, (iv) taking control of the Company's Hong Kong subsidiary, (v) defending an international arbitration on behalf of LKM in Hong Kong and securing an arbitration award rescinding pledge agreements valued at $270 million that (as the arbitral tribunal determined) were made in breach of Shi's fiduciary duties, (vi) interviewing many employees of LKM, including management at the Company's Finland entity to identify potential intellectual property assets controlled there, (vii) investigating a transaction between the Company and China AI Capital Limited ("China AI") and sending a demand letter to China AI seeking $10,000,000 in consideration owed to the Company, (viii) investigating the Company's sale of its largest asset, Showself Technology Co., Ltd., (ix) initiating a series of legal actions (arbitration and litigation) in the PRC to gain control of LKM's WFOE and its bank accounts, (x) changing the Company's "chop" (official seal) to prevent Shi

6

from using the chop to obstruct the Receiver's efforts in the PRC, (xi) investigating the whereabouts and disposition of the Company's assets, and (xii) investigating Shi's misconduct in diverting the Company's assets and inexplicably declining to defend arbitration claims which subjected the Company to an approximately $400 million damage award. *See* ECF 285.

22. In carrying the above-described tasks and all other activities of the Receivership since February 1, 2019, the Receiver and SLG have incurred approximately $2,472,415.86 fees and expenses. Attached to this declaration as **Exhibit D** is a true and correct copy of Receiver and SLG's invoices.

**Fees and Expenses Incurred by Receiver's Hong Kong Counsel and Hong Kong Co-receiver**

23. With the Court's approval, the Receiver engaged foreign professionals to assist in the Receivership. ECF 43, at 1.

24. The Receiver engaged Kobre & Kim LLP ("Kobre & Kim"), a respected global law firm, as its Hong Kong counsel. *Id.* The Receiver engaged KLC Corporate Advisory and Recovery Limited ("KLC"), a respected accounting and business advisory firm, as co-receiver in Hong Kong. *Id.*

25. Kobre & Kim and KLC have taken numerous actions on behlf of the Receiver designed to recover and safeguard LKM's assets, including but not limited to:

    a) Communicating with SCB and securing funds from LKM and WFOEs' accounts;

    b) Communicating with LKM and WFOEs' banks in China and Hong Kong;

    c) Reviewing Receivership documents and initiating legal actions in Hong Kong in assist the Receivership;

    d) Appearing before Hong Kong High Court for court hearings related to Receivership;

  e) Corresponding with Commercial Partners (in Hong Kong) and collecting funds from LKM and WFOEs' accounts;

  f) Preparing and filing Cayman registration documents in Hong Kong; and

  g) Assisting Receiver's agent in China to grant control over LKM's Hong Kong subsidiaries and WFOEs;

26. Since February 29, 2019, Kobre & Kim LLP and KLC have incurred approximately $615,546.61 fees and expenses. Attached to this declaration as **Exhibit E** is a true and correct copy of invoices of Kobre & Kim and KLC's services.

**Fees and Expenses Charged by HKIAC**

27. Between June 2019 and February 2021, Receiver and its counsel (on behalf of LKM) participated an extensive arbitration proceeding before the HKIAC and successfully protected the Company's interests. *See* ECF 210 and ECF 210-1.

28. In connection with the arbitration, the Receivership paid approximately $15,000 in fees and expenses to the HKIAC.

29. Attached to this declaration as **Exhibit F** is a true and correct copy of documentation reflecting these $15,000 in payments to HKIAC.

**Fees Charged by the Receiver's Translators**

30. Between March 2019 and July 2020, Receiver employed Jianfeng Li and Weiyi Zhu for professional services of English-Chinese translation. *See* ECF 220. Jianfeng Li assisted the Receiver in communicating with his agent in mainland China and translating Chinese language documents relevant to the Receivership's activities. Weiyi Zhu assisted SLG in live translation of Chinese language witness testimony during the HKIAC arbitration discussed above.

31. The Receiver incurred approximately $104,000 in fees related to Mr. Li and Mr. Zhu's translation services. Attached to this declaration as **Exhibit G** is a true and correct copy of invoices for these translation services.

## Fees and Expenses of Receiver's Cayman Counsel and LKM's Cayman Registration Agent

32. In October 2020, in order to prevent the Company from being dissolved and to stop Shi from obstructing the Receivership abroad, the Receiver sought Cayman court recognition of the Receivership. ECF 173. The Receiver engaged KSG Attorneys at Law ("KSG") as its Cayman counsel to apply for Cayman Islands recognition. *Id.* at 4.

33. KSG incurred approximately $21,601.49 fees and expenses in connection with seeking recognition of the Receivership as well as incurred $3,109.51 completing LKM's registration with Maples. Attached to this declaration as **Exhibit H** is a true and correct copy of invoices related to KSG's fees and expenses and documentation for these services.

## Post-October 5, 2020 Expenses

34. In the R&R, Judge Freeman recommended that the Court:

> require the Company to pay the reasonable costs incurred by the Receiver in the performance of duties authorized by the Court **up to October 5, 2020**, and give the parties the opportunity to brief the question of whether the cost of the Receiver's activities after the date should be borne by the Company or [Plaintiff]

ECF 275, at 42 (emphasis added).

35. On August 25, 2022, by insurance of the Accounting Order, Judge Marrero adopted the R&R and held that "expenses that the corporation would have had to incur had there been no receiver, and expenses that confer[red] a genuine benefit upon the corporation, should be charged to it." ECF 331 at 19.

9

36. As described above, since February 1, 2019, the Receiver has incurred a total of $3,231,673.47 in expenses. These expenses can be sub-divided chronologically as follows

   a) Between February 1, 2019 and October 5, 2020, Receiver incurred approximately $2,679,341.95 fees and expenses.

   b) Between October 6, 2020 and November 16, 2022, Receiver incurred additional $552,331.52 fees and expenses.

37. Given that the R&R and Accounting Order raises the question of whether the Receiver's activities after October 5, 2020 should be borne by the Company or the Plaintiff, I provide below a description of the Receiver's activities after that date.

38. The Receiver's activities after October 5, 2020, including but not limited to:

   a) filing status report to the Court explaining the Receiver's application in Cayman seeking Cayman court's recognition of the Receivers' authority (ECF 173);

   b) filing status report to the Court reporting the Receiver's latest efforts and progress (ECF 186);

   c) filing status report to the Court notifying the Court that the Receiver, upon the Company's shareholders' requests, to call an EGM in Cayman (ECF188);

   d) filing motion to the Court requesting the Court's approval to cancel China AI's shares in the Company (ECF194);

   e) filing memorandum of law in response to Plaintiff's motion to conversion of Plaintiff's ADRs (ECF 204);

   f) filing letter motion to the Court to cancel China AI's shares due to unpaid consideration of the subscription agreement (ECF 205);

   g) filing status report to the Court notifying the Receiver's achievement in HKIAC arbitration (ECF 210);

   h) filing status report to the Court reporting the Receiver's latest efforts and progress (ECF 220);

   i) filing memorandum of law in opposition to Defendant's motion to discharge Receiver (ECF 241);

   j) appearing the Court's case management conference (ECF 247);

k) filing letter to the Court in response to Defendant Shi's motion to toll (ECF253);

l) filing status report to the Court reporting the Receiver's latest efforts and progress (ECF 268);

m) filing status report to the Court reporting a recent uncovered arbitration before HKIAC and communicating with HKIAC arbitrator (EF269);

n) filing statues report to the Court reporting the Receiver's effort and progress in calling EGM in Cayman (ECF271);

o) filing status report to the Court notifying the Court about the Receiver's compliance with the Court's order (ECF 282);

p) filing memorandum of law in opposition Defendant's Order to Show Cause (ECF 285);

q) filing status report to the Court notifying the Court about the Receiver's compliance with the Court's order (ECF 297);

r) filing status report to the Court seeking the Court's instructions and guidance on ADRs holders' request for conversion of shares (ECF 304);

s) filing letter to the Court in response to Defendant Shi's request for unseal documents and inaccurate accusation (ECF 309);

t) filing status report to the Court notifying the Court about the Receiver's agent's unreachable status (ECF 319);

u) appearing the Court's conference held on August 8, 2022 (ECF 326);

v) filing the letter to the Court address the Receiver's authority and legal issue related to the Company's EGM in Cayman (ECF 335);

w) filing status report to the Court reporting Defendant Shi and LKM's board's violation of the Court's order (ECF 350);

x) filing status report to the Court providing a proposed accounting schedule to the Court (ECF 354);

y) filing status report to the Court seeking the Court's instructions and guidance on ADRs holders' request for conversion of shares (ECF 367);

z) filing memorandum of law in opposition to Defendant Shi's motion to unseal documents (ECF 368);

aa) appearing the Court's hearing regarding Defendant Shi's motion to unseal (ECF 369); and

bb) reviewing, analyzing, and responding numerous documents, demands, and court filings (including Defendant Shi's Notice of Demand for Inspection Pursuant to N.Y. CPLR 6404 and Fed. R. Civ. Proc. 66 ("Shi's Demands"), dated October 3, 2022. Attached to this declaration as **Exhibit I** is a true and correct copy of Shi's Demands).

39. To date, the Receivership still has $1,077,177.38 in unpaid expenses with $474,785.86 in expenses incurred prior to October 5, 2020. *See* Exhibit A at 6 and 10.

**Fees and Expenses of Receiver's Agent in Mainland China**

40. As detailed discussed in Receiver's status reports, Receiver's agent in China, Mr. Lilin (Francis) Guo ("Mr. Guo") has been missing since April 2022. ECF 309, at 3, and ECF 335, at 2-3. While my office has attempted to contact Mr. Guo on multiple occasions over the past few months, and even as recently as this week, Mr. Guo is still unreachable. Further, any documentation of the note agreement entered into between Mr. Guo and LKM is under seal. Therefore, the Receiver's Accounting does not include Mr. Guo's fees and expenses.

41. However, it should be noted that the Receivership did not make any cash payments to Mr. Guo. Rather, pursuant to Mr. Guo's note agreement (which was approved by this Court), Mr. Guo had the right to convert fees and expenses that he advanced to the Company into shares of LKM stock at a predetermined ratio that was approved by the Court.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: New York, New York
November 18, 2022

Robert W. Seiden

12