# Exhibit I

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.)<br><br>                              Plaintiff,<br>     -against-<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU,<br><br>                              Defendants,<br>     -and-<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.),<br><br>Nominal Defendant. | Civil Action No.: 1:18-cv-11642<br><br>**NOTICE OF DEMAND FOR INSPECTION PURSUANT TO N.Y. CPLR 6404 AND FED. R. CIV. PROC. 66** |

**PLEASE TAKE NOTICE** that pursuant to N.Y. CPLR 6404 and Fed. R. Civ. Proc. 66, Defendants Vincent Wenyong Shi ("Dr. Shi") and Link Motion Inc. f/k/a NQ Mobile Inc. (the "Company" and together with Dr. Shi, the "Defendants"), by their undersigned counsel, hereby demand that Robert W. Seiden (the "Receiver") produce the documents described herein (the "Document Requests") for inspection and copying at the offices of Felicello Law P.C., 366 Madison Avenue, 3rd floor, New York, New York 10017 or such other place as to which the parties may agree, within 30 days from the date of service, in accordance with applicable law and the definitions and instructions set forth below. This request may be satisfied by producing electronic copies of the described documents to the undersigned on or before the date specified for production; provided, however, that Plaintiff does not waive its right to review the original of any document. Plaintiff also expressly reserves the right to request the production of additional documents at a later time.

1

## DEFINITIONS

1.	"Dkt." refers to documents filed in the action *Baliga v. Link Motion Inc.*, Case No. 1:18-cv-11642 at the referenced ECF docket number.

2.	"Receivership" means the receivership resulting from the appointment of Robert W. Seiden as temporary receiver for the Company at Dkt. 26.

3.	"Receiver" refers to Robert W. Seiden in his capacity as court-appointed temporary receiver for the Company.

4.	"Plaintiff" has the meaning defined above.

5.	Any term defined in one request set forth below shall have the same meaning in respect of each other request.

6.	The uniform definitions set forth in Local Rule 26.3 are incorporated herein.

## INSTRUCTIONS

1.	The following requests for production and inspection (the "Requests") are continuous in nature, and require the Receiver to supplement or amend its production if the Receiver subsequently obtains documents related to these Requests, subsequently discovers that he has documents or information responsive to the Requests not previously provided, or any subsequent events require supplementation or amendment of his responses.

2.	Unless otherwise noted, these Requests require you to produce all responsive documents for the time period beginning December 13, 2018 up to and through the present.

3.	With respect to the documents produced, the Receiver shall:

	(a)	produce them as they are kept in the usual course of business, complete with the original file folders, binders, or other containers in which they are stored (or legible copies of the labels from those folders, binders, or containers); or

	(b)	organize and label them to correspond with each numbered paragraph and each lettered subparagraph of the Request for Production of Documents in response to which such documents are produced in which case each document or

set of documents from a particular file, binder, or other container should be accompanied by a legible copy of the label from that container or some other reliable indicator of the file from which it was taken; and

(c) identify the source of each document by department, division, and/or person.

4. Selection of documents from files and/or other sources and the numbering of such documents shall be performed in such a manner as to insure that the sources of each document may be determined, if necessary.

5. Produce electronically stored information ("ESI") as image files with full-text OCR readable with the integrity of the ESI's content (i.e., original formatting of the document, its metadata and, where applicable, its revision history).

6. If the Receiver considers any of the Requests or parts thereof to be objectionable, answer so much of each request and each part thereof as is not objectionable, in the Receiver's view, and separately state that part of each Request as to which the Receiver raises objection and each ground for each such objection.

7. Any description of documents requested that is specific in nature should not be interpreted to diminish the breadth of any more general request that may otherwise encompass such specified documents.

8. If any document requested in the Requests is known to have existed and cannot now be located, or has been destroyed or discarded, then identify the document and for each such document set forth: (a) the type of document, author, sender, recipients and addresses of the original and of any copies thereof; (b) the last known custodian of the document or copies thereof; (c) the subject matter and content of the document; (d) the date it was created, number of pages, attachments or appendices; (e) the Request(s) to which such document is or would have been responsive; (f) whether the document is missing or lost or was destroyed or discarded; (g)

the date of loss, destruction or discard; (h) the manner of destruction or discard; (i) the reasons for destruction or discard; (j) the persons authorizing or carrying out such destruction or discard; and (k) the efforts made to locate lost or misplaced documents.

9. All documents that are requested in the requests are to be produced in their entirety, without abbreviation, expurgation, or deletion.

10. For each document or portion of a document that is requested in the requests that the Receiver withholds or redacts on the basis of privilege: (a) identify the document; (b) identify the name and address of the creator(s) of the document; (c) identify the date of its creation; (d) identify the subject matter of the document that is withheld or of the portion of the document that is redacted, as well as any attachments or appendices, including the number of pages; (e) identify the person or persons who currently possess the document or any copy thereof; (f) identify each and every person who ever had access to the document, who was shown a copy of the document, or to whom any of the information in the document was distributed, shown, communicated, or explained; (g) specify the privilege or other ground(s) upon which the document is being withheld or redacted; and (h) specify the Request(s) to which the document responds.

11. Documents responsive to these requests that are attached to each other should not be separated.

12. All documents requested in the Requests, as well as any other documentary or other evidence relating to the claims asserted in this Action that would otherwise be subject to destruction, are to be preserved.

**REQUESTS FOR PRODUCTION**

1. All engagement letters regarding the retention of professionals in connection with

4

the Receivership, including but not limited to engagement letters with Kobre & Kim ("Kobre & Kim") (Dkt. 43), KLC Corporate Advisory and Recovery ("KLC") (Dkt. 43), KSG Attorneys at Law ("KSG") (Dkt. 220), and Maples Corporate Services Limited ("Maples") (Dkt. 220).

2. All documents, records, and communications with Kobre & Kim concerning the Receivership. *See* Dkt. 43, 220.

3. All documents, records, and communications with KLC concerning the Receivership. *See* Dkt. 43, 220.

4. All documents, records, and communications with KSG concerning the Receivership. *See* Dkt. 220.

5. All documents, records, and communications with Maples concerning the Receivership. *See* Dkt. 220.

6. The "statutory demand" to "Tongfang Investment Fund Series, SPC" referred to in Dkt. 43.

7. All communications with the Hong Kong International Arbitration Centre ("HKIAC"), including all communication referred to in Dkt. 43.

8. Copies of all letters issued by the Receiver to third parties, including but not limited to "formal letters to government offices in China and to commercial partners of Link Motion, Inc. in the United States notifying them of the Receivership Order in the U.S. and Hong Kong" as referenced in Dkt. 43.

9. All documents and records concerning the "Texas employment related lawsuit against Link Motion, Inc." referenced in Dkt. 43.

10. All documents and records concerning a "pending legal preceding brought by Link Motion, Inc. in Brazil" as referenced in Dkt. 43.

11. All communications to and from "former and current directors and officers of Link Motion, Inc." as referenced in Dkt. 43.

12. All communications to and from Mr. Francis "Lilin" Guo ("Guo") including but not limited to communications with Guo referenced in Dkt. 43, 220, 268, 344-347, and 351.

13. All documents, records, and communications concerning the "investigat[ion] of the legal and operational status of Link Motion, Inc. in China and the proper means to preserve the Chinese assets and entities." *See* Dkt. 43.

14. All documents, records, and communications concerning the Receiver's "formal control of Link Motion, Inc.'s Hong Kong subsidiary." *See* Dkt. 43.

15. All documents, records, and communications concerning "request[s] by the Receiver that certain Hong Kong and Cayman Islands banks with funds of Link Motion, Inc. freeze those accounts and remit funds to be preserved in the Receivership escrow trust account." *See* Dkt. 43.

16. All documents, records, and communications concerning "calls, emails, and letters from Company creditors." *See* Dkt. 43.

17. All documents, records, and communications concerning "texts, calls, and emails from current employees of Link Motion, Inc." and any "sworn statements" by same. *See* Dkt. 43.

18. All documents, records, and communications concerning "calls and emails from many U.S. shareholders." *See* Dkt. 43.

19. All documents, records, and communications concerning "issues inside the PRC and Hong Kong related to the assets which have been wrongfully transferred out of LKM, including corresponding with banks and courts inside the PRC." *See* Dkt. 220.

20. All documents, records, and communications concerning "Company assets, as

well other issues related to LKM's corporate governance in the Cayman Islands," "recogni[tion] in the Cayman Islands," "pay[ment] [of] required corporate fees," and "critical corporate documents." *See* Dkt. 220.

21. All documents, records, and communications concerning "lawsuits on behalf of the WFOE and secure LKM assets abroad." *See* Dkt. 220.

22. All documents, records, and communications concerning "efforts to secure the bank account of the WFOE in China," "the Variable Interest Entity ('VIE') contracts that maintain control over LKM's PRC subsidiaries," "negotiat[ions] with other significant LKM shareholders inside the PRC to assist in the process of gaining control of" the VIE contracts, and any agreements or understandings relating to any of the foregoing. *See* Dkt. 220.

23. All documents, records, and communications concerning "control of the WFOE in the PRC" and "corporate resolutions to make Mr. Guo the legal representative of the WFOE inside the PRC." *See* Dkt. 220.

24. All documents, records, and communications concerning "contracts, legal documents and emails produced by DLA Piper, Marcum, Skadden Arps, Loeb & Loeb, and all former professional services providers to the Company," "transactions entered into by LKM with various related and unrelated entities," and the "outside third-party vendor for the purpose of litigation e-discovery and search technology." *See* Dkt. 220.

25. All documents, records, and communications concerning "the Arbitration in Hong Kong." *See* Dkt. 220.

26. All documents, records, and communications concerning "the Company's assets, including sending formal letters and calls to commercial partners in the United States." *See* Dkt. 220.

7

27. All documents, records, and communications concerning "the Special Committee which was created in 2016 to deal with allegations concerning internal governance matters within LKM." *See* Dkt. 220.

28. All documents, records, and communications concerning "documents and communications produced by previously-engaged third party service providers in the U.S." *See* Dkt. 220.

29. All documents, records, and communications concerning "interview[s] [with] management from the Company's Finland entity" and "monetize[ation] [of] the Company's intellectual property assets controlled there." *See* Dkt. 220.

30. All documents, records, and communications concerning an "investigation into China AI." *See* Dkt. 220.

31. All documents, records, and communications concerning "actions of Defendant Shi in regards to Company bank accounts in China," "evidence in the possession of the Receiver indicat[ing] that these loans were never disclosed to LKM shareholders," "proper corporate governance protocols. "[r]ecords within China [] show[ing] that Defendant Shi has moved shares of LKM subsidiary companies out of the LKM corporate structure and into his own control," and any other "evidence in this regard." *See* Dkt. 220.

32. All documents, records, and communications concerning "an application for State Compensation in China against the Haidian District People's Court of Beijing Municipality." *See* Dkt. 220.

33. All documents, records, and communications concerning the sale of "Showself Technology Co., Ltd." to "Tongfang Investment Fund Series SPC," the claim by the Receiver that "Tongfang never fully paid LKM for the asset and was apparently prohibited from selling or

8

transferring it to a third party," and "the pledge agreements which transferred Showself Technology Co., Ltd." *See* Dkt. 220.

34. All documents, records, and communications concerning the referral by "Mr. Guo [] the actions of Defendant Shi and Defendant Xu to the Beijing Police who have accepted the evidence and continue to investigate." *See* Dkt. 220.

35. All documents, records, and communications concerning the "Extraordinary General Meeting ('EGM')" referred to in Dkt. 268.

36. All documents, records, and communications concerning the arbitration before "China International Economic and Trade Arbitration Commission ('CIETAC')" concerning "NQ World Technology Co., Ltd ('NQW')." *See* Dkt. 268.

37. All documents, records, and communications concerning Xu Zhou. *See* Dkt. 268.

38. All documents, records, and communications concerning "arbitration," and "assets and with other issues related to corporate governance" referenced in Dkt. 344 and Dkt. 345.

39. All documents, records, and communications concerning Guo's "elect[ion] to convert a portion of the loan to shares in LKM in accordance with the terms of the loan agreement." *See* Dkt. 346 and Dkt. 347.

40. All documents, records, and communications concerning the "trial (conducted virtually) before the HKIAC, Hong Kong International Arbitration Center. The Receivership is now fully engaged in preparing extensive briefing and submissions to the HK arbitration panel before a decision is to be rendered." *See* Dkt. 346 and Dkt. 347.

41. All documents, records, and communications concerning "efforts to secure the bank account of the WOFE from China Merchants Bank," "the Receiver used the passage of

9

corporate resolutions," "appoint[ment] [of] Mr. Lilin Guo to act as Chairman and legal representative of Link Motion, Inc. inside the PRC," "control of the VIE (Variable Interest Entity) contracts that ultimately maintain control over the Link Motion, Inc. PRC subsidiaries, "legal proceedings inside China. "work with Mr. Jianfeng Li who has provided invaluable English-Chinese and Chinese-English translation and advisory services inside China," and the "engage[ment] [with] Mr. Henry Liu to assist with issues in China and the U.S., especially to advise and consult on legal issues and matters as they relate to ongoing litigation in China." *See* Dkt. 346 and Dkt. 347.

42. All documents, records, and communications concerning all application submitted to the Grand Court of the Cayman Islands, including but not omitted to all affirmations of the Receiver and any exhibits thereto.

43. All documents, records, and communications concerning all application submitted to the High Court of the Hong Kong Special Administrative Region.

44. All documents, records, and communications concerning the disappearance of Guo. *See* Dkt. 309.

45. All documents, records and communications concerning any "e-mail[s]" from "an individual" regarding Guo, the "message that Mr. Guo will be reachable in the near future," the "handwritten documents," and the "power of attorney" referred to in Dkt. 351.

Dated: New York, New York  
October 3, 2022

FELICELLO LAW P.C.

By: ___/s/ Michael James Maloney___  
Michael James Maloney  
366 Madison Avenue, 3rd Floor  
New York, New York  10017  
Tel. (212) 584-7806  
Email: mmaloney@felicellolaw.com

*Attorneys for Defendants Vincent Wenyong Shi*

*and Link Motion Inc.*

To:

Amiad Kushner
Partner, Head of Litigation
Seiden Law Group LLP
322 Eighth Avenue, Suite 1704
New York, NY 10001
Office: (646) 766-1914
akushner@seidenlawgroup.com
*Attorneys for Receiver Robert W. Seiden*

Miriam G. Bahcall
Greenberg Traurig, LLP
77 West Wacker Drive Suite 3100
Chicago, IL 60601
T +1 312.476.5135
bahcallm@gtlaw.com
*Attorneys for Plaintiff Wayne Baliga*