UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.) <br><br> Plaintiff, <br> -against- <br><br> LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU, <br><br> Defendants, <br> -and- <br><br> LINK MOTION INC. (F/K/A NQ MOBILE INC.), <br><br> Nominal Defendant. | 1:18-cv-11642-VM-DCF <br><br> **DECLARATION OF MICHAEL JAMES MALONEY** |

MICHAEL JAMES MALONEY declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am an attorney duly admitted to practice law before the United States District Court for the Southern District of New York. I am a partner of Felicello Law P.C. and counsel of record for Defendant Vincent Wenyong Shi ("**Dr. Shi**") and Link Motion Inc., a Cayman Islands company (the "**Company**" or "**LKM**").

2. I make this declaration in response to: (i) the January 9, 2023 letter from Robert W. Seiden, the court-appointed receiver for LKM (the "Receiver") regarding an invoice from Maples and Calder in the amount of $3,219.51, (ii) the Courts' January 12, 2023 Order, (iii) the January 12, 2023 letter from the Receiver, and (iv) the Court's January 13, 2023 Order to Show Cause.

    A.  **There is no immediate threat to LKM**

3. In his January 12, 2023 letter, the Receiver claims that failure to pay the Maples Invoice by January 31, 2023 will result in LKM being "struck off the Cayman Register" and LKM

1

"may not (i) commence legal proceedings; (ii) carry on any business or in any way deal with the assets of the company; (iii) defend any legal proceeding; (iv) make any claim or claim any right for, or in the name of the company; or (v) act in any way with respect to the affairs of the company." Dkt. 382 at 1 and n.2. The Receiver refers to veil-piercing arguments in his November 18, 2022 memorandum of law.

4. Annexed hereto as **Exhibit A** is a true and correct excerpt of the Cayman Islands Companies Act (2022 Revision).

5. Section 168 and 169 of the Companies Act provide for the requirement to file an Annual Report and pay an annual fee, respectively.

6. Section 169(1) states that the annual fee shall be paid "in January of each year after the year of [the company's] registration."

7. But Section 169(3) provides that in the event of a failure to file in January, a penalty will be incurred the amount of which increases to 100% of the fee if filed between October 1 and December 31 of the year in which the Annual Return and Annual Fee are due.

8. While Section 170 provides that failure to comply with the Annual Report and Annual Fee requirement, will result in the company being "dealt with as such under Part VI" (Removal of Defunct Companies), Section 171 provides that the Cayman Registrar may not take any action against a defaulted company without first "giving one month's notice." If the Annual Return, Annual Fee, and any penalty are paid within the one month's notice period, then "sections 168 and 169 shall be deemed to have been complied with."

9. The Receiver has not reported that any notice pursuant to Section 171 has been issued.

10. Even if a company is "struck off the register," it may still apply to be reinstated under Section 159 of the Companies Act.

**B.  The Receiver fails to show domination by and transfers for the benefit of Dr. Shi.**

11. In a memorandum of law filed with his November 18, 2022 accounting, the Receiver argues that the Court should pierce the corporate veil to hold Dr. Shi personally liable for the costs of the Receivership based on the claims that Dr. Shi "dominated" LKM and transferred assets for his own benefit. *See* Dkt. 375 at 16-20.[1]

12. As set forth in the accompanying Declaration of Vincent Wenyong Shi, Dr. Shi did not dominate LKM. The bank accounts referenced by the Receiver were controlled by Mr. Xu Zemin.

13. In his papers, the Receiver refers to bank statements and transfer conformations filed with the court on July 20, 2020 and claims that Dr. Shi transferred to himself approximately ¥626,000,000 RMB (approximately $89 million) of LKM funds. Dkt. 375 at 10 subparagraph (h), citing Dkt. 161, 173, and 239-1.

14. The Receiver claims that the attachments to his July 20, 2020 letter, Dkt. 161, show that ¥626,646,612.37 RMB was transferred between the accounts of NQ Mobile (Beijing) Co., Ltd. ("NQ Mobile") and an account under the name of "Beijing NQ Mobile Technology Limited" in 29 transfers between May 2019 and November 2019. Dkt. 161 at ECF p.5.

15. None of the records submitted with Dkt. 161 show any transfers to Dr. Shi or to any third party.

16. None of the records show that Dr. Shi initiated any of the transfers.

---

[1] Dr. Shi and LKM requested supplementation of the Receiver's account by letter served on December 16, 2022.

3

17. Annexed hereto as **Exhibits B, C, D, and E** are true and correct copies of loan documents evidencing a 2018 secured loan transaction between LKM, NetQin Unlimited (Beijing) Technology Co., Ltd. ("NQ Unlimited"), and China Merchants Bank ("CMB"). Accompanying these documents are machine translations of the original Chinese documents. (Certified translations were not available within the time period provided by the Court to respond to the Order to Show Cause but will be provided upon request).

18. Based on my review of the records, NQ Unlimited is an LKM "WFOE" (a "wholly foreign owned entity").

19. The records show that Mr. Xu Zemin signed the Deposit Agreement annexed as Exhibit C (the "Deposit Agreement"), the security agreement annexed as Exhibit D (the "Security Agreement"), and the Pledge Contract annexed as Exhibit E (the "Pledge Contract" and together with the Deposit Agreement and the Security Agreement, the "Loan Documents") on behalf of NQ Unlimited.

20. The Loan Documents show that the loan was closed in May 2018 and came due in May 2019.

21. The Loan Documents show that NQ Unlimited pledged its bank account with CMB as security for the loan.

22. Comparison of the corporate names on the Loan Documents to the accountholder names on the statements and transfer confirmations annexed to Dkt. 161, shows that the company that signed the Loan Documents, NQ Unlimited, is the same company listed as the account holder on the statements and transfer confirmations annexed to Dkt. 161.

### C. The Receiver's other arguments lack merit.

23. The Receiver also argues that Dr. Shi was somehow involved in "frivolous lawsuits in China" brought by Mr. Xu against Mr. Guo in China. Dkt. 375 at 10 subparagraph (g). Dr. Shi was not a party to Mr. Xu's legal proceedings. *See* Dkt. 61-1 (Mr. Xu' complaint), 61-2 (translation of Mr. Xu's complaint), and 155-12 (preservation order issued by Chinese court identifying Mr. Xu's counsel). Mr. Xu's complaint alleges nothing about Dr. Shi. *See* Dkt. 61-2.

24. The Receiver also refers to a Final Award (the "Tongfang Arbitration") issued in the arbitration proceeding *Tongfang Investment Fund Series SPC (Cayman Islands) v. Xinjiang NQ Mobile Venture Capital Investment Co., Ltd. and Link Motion Inc.*, Case No. HKIAC/A19086 (the "Tongfang v LKM Arbitration"). *See* Dkt. 375 at 10-11 subpara. (m), citing Dkt. 269-1.

25. In support of his argument that Dr. Shi caused LKM to default in the Tongfang v LKM arbitration, the Receiver refers to statements by the arbitration regarding emails purportedly sent by Dr. Shi during the May 2019 to December 2019 time period.

26. Annexed hereto as **Exhibit F** is a true and correct copy of the Declaration of Dr. Shi dated October 24, 2022. In his declaration, Dr. Shi explains that he did not send the emails referred to in the Tongfang Final Award. Those emails were sent from LKM corporate accounts that he lost access to in April 2019.

27. Previously filed in this action at Dkt. 228-14 is a true and correct copy of the Final Award issued in the arbitration Zhongzhi Hi-Tech Overseas Investment Ltd. v. Vincent Wenyong Shi, Case No. HKIAC18222 (the "Zhongzhi v. Shi Arbitration").

28. In the Zhongzhi v. Shi final award, the arbitrator noted that he and the parties initially communicated with Dr. Shi through his corporate email addresses vincent@lkmotion.com and vincent@nq.com. Dkt. 228-14 ¶¶ 14, 15, 28, n.12 and n.13.

29. But on April 25, 2019, the arbitrator received an email from Dr. Shi's private email address, shiwenyong@263.net, requesting a change of his address. Dkt. 228-14 ¶ 42.

30. On May 14, 2019, the *claimant* in the Zhongzhi v. Shi arbitration requested that Dr. Shi's corporate email addresses be removed from circulation because of the claimant's belief that Dr. Shi "no longer had access to these accounts and that the Claimant was in ongoing disputes with Link Motion Inc." Dkt. 228-14 ¶ 47.

31. The Receiver refers to the Court's October 7, 2022 Decision and Order and claims that the meeting of the board of directors held on or about September 1, 2022 is somehow evidence of a failure to cooperate. But that Board meeting occurred after the Court granted the motion to discharge the preliminary injunction and discharge the Receiver. *See* Dkt. 331.

32. The Receiver refers to the March 14, 2019 affidavit of Matt Mathison. Dkt. 50. Based on my review of the file, Mr. Mathison was terminated by LKM in October 2018. He then brought a Sarbannes-Oxley retaliation claim against LKM before OSHA. It is my understanding that his retaliation claim was dismissed.

33. The Receiver also complains about a demand for records served pursuant to NY CPLR § 6404 on behalf of both Dr. Shi and LKM. Dkt. 375 at 11 subpara. (n). I was authorized to file a notice of appearance on behalf of LKM on October 23, 2020. Dkt. 175. And it is Dr. Shi's and LKM's position in this action that CPLR § 6404 applies to the receivership by way of Fed. R. Civ. Proc. Rule 66 (referring to "local rule"). CPLR § 6404 provides that the accounts of a temporary receiver "shall be open to inspection by any person having an interest in the property."

34.     Annexed hereto as **Exhibit G** is a true and correct copy of the judgment dated May 14, 2021 in *Hurstwood Properties (A) Ltd v Rossendale Borough Council [2021] UKSC 16*, which I obtained from the website https://www.supremecourt.uk/.[2]

35.     Wherefore, Dr. Shi respectfully requests the Court enter an Order denying the Receiver's request that Dr. Shi personally pay $103,219.51 in receivership costs, denying the Receiver's veil-piercing claims, and granting such other and further relief and the Court deems appropriate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: January 18, 2023

                                                       */s/ Michael James Maloney*
                                                        Michael James Maloney

---

[2] https://www.supremecourt.uk/cases/docs/uksc-2019-0071-judgment.pdf