**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.) <br><br>                   Plaintiff, <br>    -against- <br><br> LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU, <br>                  Defendants, <br>    -and- <br><br> LINK MOTION INC. (F/K/A NQ MOBILE INC.), <br><br> Nominal Defendant. | 1:18-cv-11642-VM-DCF |

**MEMORANDUM OF LAW IN OPPOSITION TO ORDER TO SHOW**
**CAUSE WHY VINCENT WENYONG SHI SHOULD NOT BE**
**PERSONALLY LIABLE TO FUND CERTAIN RECEIVERSHIP COSTS**

FELICELLO LAW P.C.
366 Madison Avenue 3rd Floor
New York, New York 10017
Tel. (212) 584-7806

*Attorneys for Defendant Vincent Wenyong Shi*

Of counsel:   Michael James Maloney
                 Rosanne E. Felicello

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................................................2

PRELIMINARY STATEMENT........................................................................................1

STATEMENT OF FACTS ...............................................................................................2

    A.    There is no imminent threat to the Company's ability to operate...............................2

    B.    Neither the pleadings filed in this action nor the Order appointing the Receiver require Dr. Shi personally to fund the Receivership.........................................................4

    C.    There is no basis to expand the scope of the Receiver's powers and authority at this late stage........................................................................................................................4

    D.    The Receiver's veil-piercing argument is refuted by documentary evidence...............5

ARGUMENT ...................................................................................................................10

POINT I. The Court should reject the Receiver's request to pierce the corporate veil. ...............10

    A.    The type of veil piercing requested by the Receiver is not permitted under Cayman Island law. ......................................................................................................................10

    B.    Even if New York law applied to the Receiver's claim, the Receiver's request is procedurally defective...................................................................................................11

    C.    The Receiver cannot plead the requisite elements to pierce the corporate veil under New York law.................................................................................................................12

    D.    There is no basis for the provisional relief against Dr. Shi...........................................14

CONCLUSION................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Apex Mar. Co. v. OHM Enters.*, 2011 U.S. Dist. LEXIS 35707 (S.D.N.Y. Mar. 30, 2011) .......... 12

*Balmer v. 1716 Realty LLC*, No. 05 CV 839 (NG) (MDG), 2008 U.S. Dist. LEXIS 38113 (E.D.N.Y. May 9, 2008) ........................................................................ 14

*Breeden v. Bennett (In re Bennett Funding Grp., Inc.)*, 220 B.R. 74 (Bankr. N.D.N.Y. 1997) ...... 11

*Epperson v. Entm't Express, Inc.*, 242 F.3d 100 (2d Cir. 2001) ...................................... 11

*Fannie Mae v. Olympia Mortg. Corp.*, No. 04 CV 4971 (NG) (MDG), 2006 U.S. Dist. LEXIS 70175 (E.D.N.Y. Sept. 28, 2006) ................................................................ 13

*Lakah v. UBS AG*, 996 F. Supp. 2d 250 (S.D.N.Y. 2014) ............................................. 12

*Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135 (1993) .................................... 12

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32 (2d Cir. 2018) ..... 16

*Peacock v. Thomas*, 516 U.S. 349 (1996) ........................................................... 11

*Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616 (S.D.N.Y. 2010) ............... 15

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ................................................... 15

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) .......................................................... 15

**Rules**

Fed. R. Civ. Proc. 7 ............................................................................... 11

Fed. R. Civ. Proc. 8 ............................................................................... 11

Fed. R. Civ. Proc. 9(b) ............................................................................ 11

**Other Authorities**

*Hurstwood Properties (A) Ltd v Rossendale Borough Council [2021] UKSC 16* ....................... 10

Defendant Vincent Wenyong Shi ("Dr. Shi") hereby submits this memorandum of law in opposition to the Order, dated January 13, 2023 (Dkt. 386) (the "Order"), to show cause why Dr. Shi should not be found personally liable to fund the Receivership of Link Motion Inc. ("LKM" or the "Company") in the amount of $103,219.51.

## PRELIMINARY STATEMENT

There is no authority that supports the Receiver's contention that this Court may now pierce the corporate veil to hold Dr. Shi liable for the receivership costs. First, under New York choice of law principles, the law of the Cayman Islands applies to a claim to pierce the corporate veil of LKM, a company incorporated under Cayman Island law. The Cayman Courts, which following U.K. decisional law, do not recognize piercing of the corporate veil to hold an owner or controller liable for corporate obligations. As such, there is no basis for the Receiver to hold Dr. Shi personally liable for liabilities incurred by LKM during the Receivership.

Even under New York law, it would be incorrect to allow the Receiver to pierce the corporate veil to hold Dr. Shi personally liable for LKM's liabilities. Although New York law does recognize the remedy of piercing the corporate veil to hold the corporate owner or controller personally liable for the corporate debt, it is an extreme remedy, which requires a showing both "complete domination" of the corporation by the owner and use of this domination to commit a fraud or wrong that caused plaintiff harm. Here the Receiver has not filed any pleading asserting a veil-piercing claim; Dr. Shi has not had any control over LKM assets during the period referenced by the Receiver; and Dr. Shi has not dominated LKM or done anything to cause harm to the Receiver. The bank account transfers complained of by the Receiver were made by Mr. Xu Zemin, not Dr. Shi. The funds were transferred between accounts owned by LKM subsidiaries and not to Dr. Shi. The smartphone app accounts referenced by the Receiver were controlled by "Wu Xiaohua," not Dr. Shi. Thus, there is no basis for the Court to grant the Receiver's request to find

1

Dr. Shi liable for receivership expenses.

And there is no imminent irreparable harm sufficient to justify preliminary relief on a veil-piercing claim. Under Cayman Island law, LKM has until December 31, 2023 to file its Annual Return and pay the associated fee. A penalty will also be required, but during this period LKM can still continue its business and act legally. Even after December 31, 2023, striking LKM from the Cayman companies register (the first step of dissolution) would not occur without at least 30 days' notice to LKM. The Receiver's accounting will be fully briefed by February 3, 2023 and his discharge should be completed well before January 31, 2024. The Receiver's claims of imminent dissolution are nothing more than scaremongering.

The Court should reject the Receiver's request that Dr. Shi – against whom no claims are made by the Receiver and who did not have control over LKM during the Receivership – personally fund the Receivership.

## STATEMENT OF FACTS

### A.      There is no imminent threat to the Company's ability to operate.

As this Court has previously recognized, LKM is a Cayman Islands corporation. In a January 9, 2023 letter, the Receiver notified the Court that LKM's Annual Report, a report required under the Cayman Islands Companies Law, is due on or before January 31, 2023. Dkt. 382. The Receiver submitted an invoice from LKM's Cayman agent, Maples and Calder, showing an amount due of $3,219.51 for the filing fee and work associated with the 2023 Annual Report. Dkt. 382-1. The Receiver claimed that if the report and fee are not submitted by January 31, 2023, "LKM will be struck off the Cayman Register" and "may not (i) commence legal proceedings; (ii) carry on any business or in any way deal with the assets of the company; (iii) defend any legal proceeding; (iv) make any claim or claim any right for, or in the name of the company; or (v) act in any way with respect to the affairs of the company." Dkt. 382 at 1 and n.2. These hyperbolic claims are

2

untrue.

Under Cayman Island law, every exempt company (like LKM) is required to file an Annual Return along with the associated fee in "January of each year after the year of its registration." *See* Ex.[1] § 168, 169(1); Maloney Decl.[2] ¶ 5 But failure to file by January 31st does *not* result in the immediate dissolution of a company. Maloney Decl. ¶ 7; Ex. A § 169(3); 171. Instead, a delayed filing results in a penalty that ranges from 0% to 100% depending on when the report is filed and fee is actually paid during the year of filing. Maloney Decl. ¶ 7; Ex. A § 169(3). Exempt Cayman companies have until December 31, 2023 to pay the fee and penalty and file their report. Maloney Decl. ¶ 7; Ex. A § 169(3). Even after December 31st, no action to strike the company from the register (akin to dissolution of a Delaware corporation) can take place until the issuance of 30 days' notice to the company. Maloney Decl. ¶ 8; Ex. A § 171. If the company files the Annual Report and pays the fee and penalties within 30 days of the notice, the Annual Return requirement is "deemed to have been complied with." Maloney Decl. ¶ 8; Ex. A § 171. Until the expiration of the 30 day notice period, exempt companies continues to have the authority to conduct business and legal affairs.[3]

There has been no notice issued by the Cayman authorities regarding LKM. *See* Maloney Decl. ¶ 9; Dkt. 382. Thus, there is no immediate threat to the LKM's existence or power to act and conduct business in the interim. LKM does not face the risk of being struck from the Cayman companies register until January 30, 2024 at the earliest. *See*, Ex. A § 171; Maloney Decl. ¶¶ 8-10.

---

[1] "Ex. _" refers to the exhibits to the Maloney Decl.
[2] "Maloney Decl." refers to the Declaration of Michael James Maloney dated January 18, 2023.
[3] Section 176 in not application here. Section 176 only applies to exempt companies that "carr[y] on business in the Islands." LKM does not carry on business in the Cayman Islands.

**B.      Neither the pleadings filed in this action nor the Order appointing the Receiver require Dr. Shi personally to fund the Receivership.**

Plaintiff Wayne Baliga ("Plaintiff") has filed three pleadings in this action. Dkt. 1, 65, 166. None of these pleadings have asserted veil-piercing claims or otherwise requested that Dr. Shi be found personally liable to fund costs of the Receivership.

The Receiver was appointed pursuant to an Order entered on February 1, 2019 (the "Appointment Order"). Dkt. 21. The Appointment Order provided that "the *Company* shall be responsible for funding the Receivership Account. . . ." (emphasis added). The Receiver has filed no pleadings against Dr. Shi whatsoever.

**C.      There is no basis to expand the scope of the Receiver's powers and authority at this late stage.**

On August 25, 2022, the Court granted Dr. Shi's motion to discharge the Receiver and dissolve the preliminary injunction. Dkt. 331. In the Decision and Order, the Court adopted a March 9, 2022 Report and Recommendation by Magistrate Judge Freeman (Dkt. 275), finding that the filing of Plaintiff's Second Amended Complaint on October 5, 2020 warranted dissolution of the preliminary injunction and discharge of the Receiver. Dkt. 331. The Court adopted the Report and Recommendation, in full, including "Magistrate Judge Freeman's recommendation that during the remaining period of the receivership the Receiver should be focused on maintaining the Company's status quo." Dkt. 386, citing Dkt. 275 at 41 and Dkt. 331 (quotations omitted).

On November 18, 2022, the Receiver filed his initial account and supporting papers. Dkts. 375, 376, and 376-1 to 376-9. Defendants timely requested supplemental documentation by letter served on December 16, 2022. Maloney Decl. at 3 n.1. The accounting is currently pending before Magistrate Judge Figueredo and will be fully briefed by February 3, 2023. Dkt. 359.

The Receiver's new request to commence a veil-piercing claim would be a change to the status quo.

**D.      The Receiver's veil-piercing argument is refuted by documentary evidence.**

Along with his account, the Receiver submitted a memorandum of law in which he, for the first time, argued that Dr. Shi should be personally liable for the costs of the Receivership. Dkt. 375 at 16-10. In his November 18, 2022 brief, the Receiver argues that Dr. Shi dominated LKM and used this domination to frustrate the receivership and transfer LKM assets for his own benefit. Dkt. 375 at 9-10, 16-20.

As detailed below, the Receiver's assertions are baseless:

1.      Dr. Shi did not dominate LKM.

At the time this case was commenced in December 2018, Dr. Shi was one of eight members of the Board of Directors of LKM. Shi Decl.[4] ¶ 8. Dr. Shi was not a direct shareholder of LKM. Dkt. 130-1 (shareholder registry). Dr. Shi was the acting Chief Operating Officer of the Company, but he had no signatory authority over any of the Company's bank accounts and has not had such access since before the Company's initial public offering in 2014. *See* Shi Decl. ¶ 9, 10. The Receiver refers to Chinese public records purporting to show Dr. Shi as the individual with financial control over LKM. Dkt. 161 at 2. But these records are mischaracterized. They stand only for the proposition that Dr. Shi was still listed as the Chairman of the Board of Directors of LKM at the time those records were accessed. Shi Decl. ¶ 20. Access to the relevant LKM bank accounts,[5] was under the control of Mr. Xu Zemin, who was the registered legal representative of those entities and their accounts until removed by Mr. Guo in or around 2019 and 2020. Shi Decl. ¶ 10; Dkt. 155-14 (Chinese court ruling finding the Mr. Xu was controller of the bank account of a wholly-owned Chinese subsidiary of LKM). In China, transactions in a bank account cannot be performed with consent of the registered legal representative of the account holder. Shi Decl. ¶ 10.

---

[4] "Shi Decl." refers to the Declaration of Vincent Wenyong Shi dated January 18, 2023.
[5] "WFOE" stands for wholly-foreign owned entity, a term with legal significance under Chinese law.

After the Receiver was appointed, Dr. Shi's access to company offices and resources was terminated. Shi Decl. ¶ 13. Dr. Shi had no authority or power over Mr. Xu. Shi Decl. ¶ 23.

2. <u>Dr. Shi did not strip any assets from LKM.</u>

The Receiver claims that "[b]etween May and November 2019, Dr. Shi transferred approximately 626 million RMB (at the time valued at over $89 million) from the WFOE accounts to an account owned by an LKM subsidiary under his control." Dkt. 375 at 10, subparagraph (h). "WFOE" is an acronym for "wholly-foreign owned entity," a Chinese legal term referring to Chinese companies that are owned by non-Chinese persons. Shi Decl. at 3 n.1. The WFOEs that the Receiver is referring to are NQ Mobile (Beijing) Co., Ltd. ("NQ Mobile") and NetQin Unlimited (Beijing) Technology Co., Ltd ("NQ Unlimited"). Shi Decl. ¶ 18; Dkt. 161; Maloney Decl. ¶ 22.[6] In support of this claim, the Receiver cites to the July 19, 2021 declaration of Mr. Guo (Dkt. 239-1) and a July 20, 2020 letter from the Receiver attaching records purporting to show certain funds transfers. Dkt. 161. The Receiver claims these transfers were for the personal benefit of Dr. Shi. This claim is false for two reasons.

First, the transfers at issue in the Receiver's claim were made from the account of NQ Mobile to the account of NQ Unlimited. Shi Decl. ¶ 19; Dkt. 161; Maloney Decl. ¶ 22. None of the records show any transfers to Dr. Shi personally. Shi Decl. ¶ 19; Dkt. 161. This is because Mr. Xu made the transfers to facilitate repayment of a foreign exchange loan from China Merchants Bank ("CMB"). Shi Decl. ¶ 24; Maloney Decl. ¶¶ 17-22; Exs. B, C, D, and E. In May 2018, LKM took out a loan from CMB in order to repay a prior loan obligation. Maloney Decl. ¶¶ 17-22; Exs. B, C, D, and E. To obtain the May 2018 loan, LKM obtained a cash-backed letter of credit in favor

---

[6] In Dkt. 161, the Receiver refers to a "Beijing NQ Mobile Technology Limited," but comparison of the accountholder name on the records submitted with Dkt. 161 and LKM loan documents (Exs. C, D, and E) shows that the Receiver's translation was incorrect and the relevant accountholder was NQ Unlimited.

CMB and pledged the account of NQ Unlimited (maintained by CMB) as security. Exs. B, C, D, and E. Mr. Xu signed the loan documents on behalf of NQ Unlimited. Maloney Decl. ¶ 19; Exs. C, D, and E. The first loan payments came due in or around May 2019. Maloney Decl. ¶ 20; Exs. B at 4 (see definition of "repayment date"). Dr. Shi did not initiate or cause any of the transfers referred to in Dkt. 161. Shi Decl. ¶ 22. Mr. Xu independently made transfers from the NQ Mobile account to the account of NQ Unlimited in order to repay the May 2018 loan. Shi Decl. ¶ 10, 20-24.

In or around 2019 and 2020, control over LKM subsidiaries was transferred to Mr. Guo. *See, e.g.*, Dkt. 155-15 (Hong Kong subsidiary); Shi Decl. ¶ 11. At or around the same time, Mr. Guo obtained control over the bank accounts, including accounts for NQ Mobile and NQ Unlimited. Shi Decl. ¶ 14; Dkt. 376 ¶¶ 10-12 (stating that the Receiver's recovered from the accounts of LKM and its WFOEs); Dkt. 155-14 (Chinese court ruling awarding control over WFOE account to Mr. Guo). Despite access to these accounts and their records, Mr. Guo and the Receiver have failed to submit any records showing any transfers to Dr. Shi personally. Moreover, the NQ Unlimited account referenced in Dkt. 161 was restricted by CMB's security interest and, therefore, funds in that account could not have been transferred out of CMB during the May 2019 to November 2019 period. *See* C, D, E.

Second, Dr. Shi never had signing authority on the accounts in question. Shi Decl. ¶¶ 9-10; Dkt. 155-14 (noting that Mr. Xu had originally had control over WFOE account as the registered legal representative). Without signatory authority, Dr. Shi could not access or make transfers in the accounts. Shi Decl. ¶ 21. These accounts were controlled by Mr. Xu Zemin at the time of the transfers. Shi Decl. ¶¶ 9, 10, 22; Dkt. 155-14. The Receiver claims that Mr. Xu is a "close associate" of Dr. Shi but this claim also is not supported by the record, which shows that Mr. Xu

acted independently of Dr. Shi and was represented by his own counsel in China. *See* Dkt. 61-1, 61-2, 155-12 (Chinese court papers filed by Mr. Xu without the involvement of Dr. Shi).

The Receiver also claims that Dr. Shi formed a new company and "divert[ed]" revenues from LKM. In support, the Receiver cites the March 28, 2019 Affidavit of Matt Mathison, Dkt. 50, in which Mr. Mathison, a disgruntled former employee of LKM, makes allegations against Dr. Shi based on hearsay communications with an unnamed individual in China and photos of files in boxes. Dkt. 50 ¶ 9. (Mr. Mathison was terminated from LKM's employment in October 2018 for cause and commenced an Sarbannes-Oxley retaliation claim against LKM before OSHA. Maloney Decl. ¶ 33) Mr. Mathison notes that LKM published many smartphone apps in China that generate revenue through Apple and Google. Dkt. 50 ¶ 7. Mathison then speculates that Dr. Shi seized control of the apps and redirected revenue from LKM's Apple and Google accounts to his own personal benefit. Dkt. 50 ¶ 9. This allegation is false. Indeed, Mathison's speculative allegation is contradicted by an email submitted with his affidavit, which states that the app accounts are controlled by "Wu Xiaohua," not Dr. Shi. Dkt. 50-4 at 1.

No later than September 2019, control over the relevant Apple and Google accounts was transferred to the Receiver who has acknowledged recovering $1,832,987 from these accounts. *See* Dkt. 100; Dkt. 376 ¶¶ 13-14. From that time forward, the Receiver and his agents have controlled LKM's smartphone app accounts. But the Receiver fails to describe any action that he took to maintain and preserve the apps published by LKM on Apple or Google.

   3. <u>Dr. Shi did not forfeit any defense against the Tongfang claim.</u>

The Receiver refers to a February 8, 2022 status report letter, Dkt. 269, in support of his claim that by emails sent during the period May 2019 to December 2019, Dr. Shi intentionally defaulted an arbitration claim brought by Tongfang Investment Fund Series SPC (Cayman Islands)

("Tongfang") against LKM and one of its WFOEs (the "Tongfang v LKM Arbitration"). Dkt. 375 at 10-11 subpara. (m). The arbitration related to a claim by Tongfang for breach of a March 2017 share purchase agreement between Tongfang, LKM, and one of LKM's WFOEs. Dkt. 228-14 (final award). This claim by the Receiver is unsupportable because the email communications on which it rests were sent from an LKM email server that was under the control of Mr. Guo and the Receiver at the time the emails were sent. Maloney Decl. ¶ 26; Ex. F.[7] Dr. Shi did not have access to those corporate LKM email addresses when the emails were sent to the arbitrator in the Tongfang v. LKM Arbitration. Ex. F. Dr. Shi's sworn statements are corroborated by the findings in the final award issued in the arbitration Zhongzhi Hi-Tech Overseas Investment Ltd. v. Vincent Wenyong Shi, Case No. HKIAC18222 (the "Zhongzhi v. Shi Arbitration"), where the arbitrator acknowledged an April 2019 request by Dr. Shi that communications be sent to his personal email address and a later request by the claimant in that proceeding that Dr. Shi's former corporate email addresses be removed from circulation. Dkt. 228-14 ¶¶ 14, 15, 28, n.12 and n.13. In any event, LKM had no defense to Tongfang's breach of contract claim, which ripened as a direct result of the commencement of this action, the entry of the preliminary injunction, and the service by the Receiver of a demand on Tongfang. *See* Dkt. 228-14; Dkt. 43 ¶ 4.

      4.    <u>The remainder of the Receiver's claims fail to support his veil-piercing claim.</u>

The remainder of the Receiver's claims are a mix of general and conclusory assertions that Dr. Shi failed to cooperate with the Receivership. These complaints mischaracterize the facts. For example, the Receiver claims that a lawsuit commenced by Mr. Xu in China was controlled by Dr. Shi and was brought to frustrate the receivership. Dkt. 375 at 10 subpara. (g). But the filings in the Chinese court show that (i) the lawsuit was brought by Mr. Xu, not Dr. Shi, (ii) Mr. Xu brought

---

[7] Ex F is a copy of a Declaration of Vincent Wenyong Shi dated October 24, 2022.

the lawsuit because Mr. Guo had forged Mr. Xu's signature, (iii) Dr. Shi was not a party to any of those litigations, and (iv) Mr. Xu was represented by his own counsel. Dkt. 61-1, 61-1, 155-12.

The Receiver's complaints of Dr. Shi's purported failure to provide documents and interference with employees are unsupported by any credible evidence. *See* Dkt. 50 (declaration of Mathison). At most, the Receiver offers hearsay from unidentified individuals and photos of files in cardboard boxes. *See* Dkt. 50-5 at 5-9. The Receiver's agents clearly had access to the files in order to photograph them. *See id*. The fact that Dr. Shi challenged service of process in this action is also not a basis for personal liability because he had a legitimate basis to challenge service of process. *See* Dkt. 64 (dismissing claims against Dr. Shi for lack of service).

The Receiver's claims of lack of cooperation are undercut by the fact that Dr. Shi never appeared in or opposed any of the foreign legal proceedings commenced by the Receiver for recognition of the receivership in Hong Kong or the Cayman Islands. Shi Decl. ¶ 12. Dr. Shi also took no action to interfere with the Receiver's action to assume control over LKM's Hong Kong subsidiaries, the Chinese WFOEs, and the VIEs. Shi Decl. ¶ 12; *see also* Dkt. 60-1, 60-2, 155-14 (Dr. Shi did not participate in the China litigation involving Mr. Xu).

## ARGUMENT

## POINT I.

**The Court should reject the Receiver's request to pierce the corporate veil.**

### A.     The type of veil piercing requested by the Receiver is not permitted under Cayman Island law.

The Receiver cites New York law in support of his veil-piercing claim on the assumption that there is no conflict between New York and Cayman law regarding piercing of the corporate veil. But this assumption is without basis. The Cayman Courts, which follow English law, do not recognize the principle of piercing the corporate veil to hold an owner or controller liable for

corporate obligations. *Hurstwood Properties (A) Ltd v Rossendale Borough Council [2021] UKSC 16*.[8] at ¶ 72. In *Hurstwood*, the United Kingdom Supreme Court recognized the remedy of holding a company liable for the actions of its controller or owner but declined to recognize the principle of piercing the corporate veil to hold a controller or owner liable for company obligations. *Id*. ¶ 72. ("we are not ourselves convinced that there is any real scope for applying such a principle in the opposite direction so as hold a person who owns or controls a company liable for breach of an obligation which has only ever been undertaken by the company itself"). The Receiver's request should be rejected on this basis.

### B.     Even if New York law applied to the Receiver's claim, the Receiver's request is procedurally defective.

The Federal Rules of Civil Procedure require claims for relief to be alleged in a pleading in compliance with Rules 7, 8, and 9(b), none of which permit claims to be brought by motion or memorandum of law. While in some cases a pleading can be deemed amended by way of an issue raised on a motion for summary judgment (*see Breeden v. Bennett (In re Bennett Funding Grp., Inc.)*, 220 B.R. 743, 753 (Bankr. N.D.N.Y. 1997)), there must first exist a pleading to amend. The Receiver also has not established any independent basis for jurisdiction over Dr. Shi on a claim for veil-piercing. *Peacock v. Thomas*, 516 U.S. 349, 357-58 (1996); *see Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 105 (2d Cir. 2001) (explaining that there must be an independent jurisdictional basis for veil-piercing claims).

Here, the Receiver has never filed any pleading against Dr. Shi in more than four years of litigation. Moreover, even if the Receiver was seeking to amend a non-existent pleading, he cannot meet the requirements of Rule 15 because the Receiver cannot allege with particularity domination of the corporation or a fraud or wrong sufficient to state a veil-piercing claim.

---

[8] https://www.supremecourt.uk/cases/docs/uksc-2019-0071-judgment.pdf

**C.** **The Receiver cannot plead the requisite elements to pierce the corporate veil under New York law.**

Courts in this district have recognized that "[p]iercing the corporate veil is a 'narrow exception'" and should only be permitted 'under extraordinary circumstances.'" *Apex Mar. Co. v. OHM Enters.*, 2011 U.S. Dist. LEXIS 35707, at \*6-7 (S.D.N.Y. Mar. 30, 2011). It is not enough to show complete domination of the corporation; there must also be a showing of a wrongful or unjust act towards the plaintiff. *Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 142, 603 N.Y.S.2d 807, 811, 623 N.E.2d 1157, 1161 (1993); *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 267 (S.D.N.Y. 2014) ("[E]ven where multiple . . .  factors cut in favor of piercing the corporate veil, courts are highly reticent to do so where evidence of domination is incomplete.")

Here, the Receiver cannot show that Dr. Shi dominated LKM. Dr. Shi never had control over the Company's bank accounts. From 2014 through 2019 and/or 2020, the bank accounts were controlled by Mr. Xu, the registered legal representative for those accounts. No transfers in those accounts could be made without Mr. Xu's consent. From some point in 2019 until the present, the Receiver's agent, Mr. Guo, took control of LKM's WFOEs, and Chinese VIE operating companies, and their respective bank accounts. The dispute between Mr. Xu and Mr. Guo regarding control over the Chinese bank accounts did not involve Dr. Shi in any way. Court decisions from China show that Mr. Xu was represented by his own counsel and acted independently.

The Receiver also cannot support his claims of asset stripping. The funds transfers in May through November 2019, identified by the Receiver in his November 18, 2022 memorandum (citing Dkt. 161), were made by Mr. Xu (not Dr. Shi) and related to payments due on a loan from CMB. The records submitted by the Receiver show that the funds were transferred from LKM account to another. NQ Unlimited could not have transferred the funds out of the CMB accounts to any person other than CMB. There are no records of any transfer of funds to Dr. Shi.

The Receiver's early 2019 claims of diverted smartphone app revenue are contradicted by the Receiver's own statements to the Court in which he acknowledges that he obtained control over the relevant Apple, Google, and similar accounts in 2019 (*see* Dkt. 100) and has recovered over $1,832,987 in funds from those accounts (*see* Dkt. 376 ¶¶ 13-15). Mr. Guo controlled LKM's WFOEs and Chinese operating companies from 2019 to the present. Thus, Mr. Guo is the person who must answer for app revenue during the receivership.

The Receiver's citation to *Fannie Mae v. Olympia Mortg. Corp.*, No. 04 CV 4971 (NG) (MDG), 2006 U.S. Dist. LEXIS 70175, at *6 (E.D.N.Y. Sept. 28, 2006), does not help him. In that case,  the question was whether the receiver had stated valid veil-piercing claims in a crossclaim filed against the corporate owners. The case does not support the contention, asserted by the Receiver, that a mere corporate officer rather than an owner may be held liable for debts incurred by a company in receivership. And it does not support the contention that such relief may be awarded before a trial on the merits. Here, there are no veil-piercing claims pending in any pleading filed in this action. The Receiver no longer has authority to bring new claims.

The receiver in *Fannie Mae* alleged particular facts showing the transfer of corporate funds to the individual defendants. Here, the Receiver cannot show that any corporate funds were transferred to Dr. Shi personally. The only transfers cited by the Receiver in his memorandum of law were transfers of funds pledged as security to CMB made from one LKM account to another for the purpose of satisfying legitimate corporate obligations owed to CMB. These transfers cannot support a claim for piercing the corporate veil.

The Receiver's citation to *Balmer v. 1716 Realty LLC*, No. 05 CV 839 (NG) (MDG), 2008 U.S. Dist. LEXIS 38113 (E.D.N.Y. May 9, 2008), is similarly inapposite. In *Balmer*, the principal defendant had "siphoned off millions of dollars . . . during a time when the company was insolvent

13

and faced increasing liability to its creditors," as shown by documentation and testimony submitted by the receiver in that case. *Id*. at *21. Here, the assets referred to by the Receiver were not "siphoned off" by Dr. Shi. The funds were transferred between LKM accounts in connection with repayment of a corporate loan. The Receiver acknowledges recovering all of LKM's other funds. Dkt. 376 ¶¶ 11-14. Ownership of LKM's WFOEs and VIE companies were transferred to Mr. Guo. Now that he has ownership, Mr. Guo has ceased communications with the Receiver.

Finally, the Receiver's claim for veil-piercing suffers from a causation problem. In order to state a veil-piercing claim, the Receiver must allege that wrongful acts or omissions of Dr. Shi *caused* the Receiver's "injuries." As stated above, the Receiver and Mr. Guo have controlled LKM, its subsidiaries (including the WFOEs), the VIE companies, and their related bank accounts since 2019 and 2020. Dr. Shi simply could not have used any of those entities or accounts to cause injuries to the Receiver. Also, the Receiver was well aware that Plaintiff's October 5, 2020 Second Amended Complaint obviated the basis for the receivership because the Receiver's own law firm drafted and filed that pleading. Continuing to act without a legal basis for continuation of the Receivership is an intervening cause that prevents the Receiver from demonstrating any "injury" to support a veil-piercing claim.

### D.     There is no basis for the provisional relief against Dr. Shi.

To the extent that the Receiver's letter dated January 12, 2023 is deemed to be a motion for the issuance of a provisional remedy under Title VIII of the Federal Rules of Civil Procedure or the Court's inherent powers, the facts fail to meet the strict requirements for such relief. Preliminary relief, granted before the merits can be determined, is only appropriate where plaintiff can show likelihood of success on the merits, a likelihood of an irreparable injury in the absence of the relief, the inadequacy of monetary damages to compensate for the injury, a balance of hardship in his favor, and that the "public interest would not be disserved" by the preliminary

14

relief. *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 620 (S.D.N.Y. 2010), quoting *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)(quotations omitted), *see also Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). The mere possibility of irreparable harm is insufficient to meet the standard for preliminary relief. *Winter*, 555 U.S. at22.

Where, as here, the preliminary relief requested is to alter the status quo (require Dr. Shi to make a payment), the standard to be met is even more exacting. A party seeking what is known as a "mandatory injunction" must "meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (internal citations omitted).

The Receiver cannot show a "clear or substantial likelihood of success on the merits" because the type of veil piercing he seeks is not permitted under Cayman Law and, even if the New York standard were to apply, the facts do not show that Dr. Shi exerted complete domination over LKM and caused harm to the Receiver or LKM itself. The record is replete with evidence that Mr. Xu has control over the LKM's Chinese bank accounts until 2020 and the Receiver and his agent have had full control over them afterwards. And the transfers referred to by the Receiver were not made by Dr. Shi and did not benefit him personally.

Moreover, there is no likelihood of imminent irreparable harm here. As explained in detail above, there is no likelihood that LKM will lose its corporate status on or before January 31, 2024, well after the Receiver is expected to be discharged. Ergo, any irreparable harm is nothing more than a mere possibility and insufficient to support awarding mandatory preliminary relief.

**CONCLUSION**

For all the foregoing reasons, the Court should enter an Order denying the Receiver's request to hold Dr. Shi personally liable for receivership costs, striking that part of the Receiver's accounting seeking the same relief, and granting such other and further relief as the Court deems just and proper.

Dated:  New York, New York
       January 18, 2023

Respectfully submitted,

FELICELLO LAW P.C.

By:   */s/ Michael James Maloney*
      Michael James Maloney
      Rosanne E. Felicello
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806
mmaloney@felicellolaw.com
rfelicello@felicellolaw.com
*Attorneys for Vincent Wenyong Shi*