**FELICELLO**

Michael James Maloney
Partner

Felicello Law P.C.
366 Madison Avenue
3rd Floor
New York, NY 10017

Tel. +1 (212) 584-7806
mmaloney@felicellolaw.com

**VIA ECF**                                                                                                April 21, 2023

Hon. Valerie Figueredo
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:  *Baliga, et al. v. Link Motion Inc., et al.*, Case No. 1:18-cv-11642-VM-VF (S.D.N.Y.)

Dear Judge Figueredo:

      I write on behalf of Dr. Vincent Wenyong Shi ("Dr. Shi") in response to the letter from the court-appointed receiver Robert W. Seiden (the "Receiver") regarding the status of Mr. Guo. Dkt. No. 405 *in response to* Dkt. No. 404. In his letter, the Receiver acknowledges that his "office" has had direct communication with Mr. Guo. The Receiver further acknowledges that he has "no specific information" to support the contention that Mr. Guo's safety is at issue. Dkt. No. 405. Given this acknowledgment, there is no basis for the Court to continue to seal the contract between the Receiver and Mr. Guo by which Mr. Guo obtained majority ownership of the Company.

      The only basis previously asserted by the Receiver for filing the contract under seal was Mr. Guo's "physical safety," which the Receiver previously contended might be the reason for his inability to communicate with Mr. Guo. *See*, *e.g.*, Dkt. No. 309 at 2. Now that the Receiver acknowledges a recent communication with Mr. Guo and "no specific information" to support any contention that Mr. Guo's safety would be put in danger, the agreement between the Receiver and Mr. Guo, and other sealed documents, should be disclosed.

      The evidence suggests that the actual purpose of Mr. Guo's request to maintain the seal is to hide from the Court the truth about what Mr. Guo has been doing with LKM's assets in China. *See generally* Dkt. No. 358 at 6-8, Dkt. 371 at 4-5; Dkt. 396 at 6-9 and 21-22. Mr. Guo now has complete control over LKM's operating companies in China. *See* Dkt. No. 394 ¶¶ 21-25 and 55-60. The only non-public information regarding Mr. Guo are the economic terms of his agreement with the Receiver and an accounting of Mr. Guo's activities since the Receiver granted him full authority over LKM's assets in China. *See* Dkt. No. 71; Dkt. 371 at 4-5; Dkt. 396 at 6-9 and 21-22. Neither Receiver nor Mr. Guo have ever explained how disclosure of the economic terms of their agreement, or Mr. Guo's activities respecting the receivership, could present a danger to Mr. Guo. There is no basis in law or equity to maintain under seal the economic terms of the contract with Mr. Guo or his activities regarding LKM's assets. *See* Dkt. Nos. 306, Dkt. 322, Dkt. 358 at 6-8, Dkt. 371 at 4-5; Dkt. 396 at 21-22.

*Admitted to practice law in New York

Hon. Valerie Figueredo
April 21, 2023
Page 2 of 2

      The assertion that Mr. Guo's true desire is to conceal from the Court his activities regarding LKM's assets in China is supported by an email regarding Mr. Guo, a true copy of which is annexed hereto as <u>Exhibit 1</u>.[1] This email chain was blind copied to my office without notice or request. The email was sent by an individual about whom we had no prior knowledge. The earliest emails in the chain show that timing of Mr. Guo's cessation of communications with the Receiver's office occurred after the Receiver notified Mr. Guo that he would "need to publicly release all information about the operation of the receivership." Ex. 1 at 5 (referring to a prior conversation with Mr. Guo regarding the March 9, 2022 Report & Recommendation at Dkt. No. 275). Later in the email chain, the sender requests payment from the Receiver's office, who advises that payment should be requested from Mr. Guo. Ex. 1 at 3-4. In the last email in the chain, sent on June 22, 2022, the sender discloses that he has received information that the receiver's agent (i.e., Mr. Guo) "just had his own company employees wages paid, but not any WOFE wages/Receivership Bills, which is a very similar style with Seiden professionals get paid but not us." Ex. 1 at 1. Exhibit 1 is further evidence that there was never any threat to Mr. Guo's safety and that the true reason for Mr. Guo's refusal to communicate with the Receiver is to conceal from the Court what, exactly, Mr. Guo has been doing with LKM's assets in China. Indeed, when the Receiver filed his account in November 2019, it failed to include any information about Mr. Guo's activities regarding LKM's assets in China.

      Dr. Shi has also discovered that the domain name www.nq.com—valuable intellectual property of LKM when the Receiver was appointed—is now for sale. *See* www.nq.com ("NQ.com - Now for Sale for a Limited Time"). LKM had originally purchased use rights to www.nq.com in 2011 for $1.6 million.[2] Internet records show that www.nq.com continues to be controlled by NetQin Mobile, Inc (*see* <u>Exhibit 2</u> annexed hereto), which is one of the LKM operating companies in China that has been under Mr. Guo's control since 2019. *See* Dkt. No. 394 ¶¶ 21-25 and 55-60. The domain names ww.linkmotion.com, lkmotion.com, and netqin.com also appear to be for sale. *See* www.linkmotion.com ("The domain linkmotion.com is for sale!").

      The Receiver was previously instructed to maintain the status quo pending the resolution of his accounting. Dkt. No. 26 § II(2), 275 at 42, 331. As agent for the Receiver, these prior Orders also apply to Mr. Guo. That LKM's domain names are now openly marketed for sale suggests that the Receiver and his agent, Mr. Guo, are neglecting to maintain the value of LKM's intellectual property, including its trademarks. Permitting Mr. Guo and the Receiver to continue to operate in secret only facilitates their flouting of the Court's orders and breach of their duty to preserve the assets of LKM.

      Respectfully submitted,

      */s/ Michael James Maloney*

      Michael James Maloney

cc:    All counsel of record (via ECF)

---

[1] Although Dr. Shi contends that Exhibit 1 is not confidential or privileged and request that the Court direct that Exhibit 1 be publicly filed, this document is submitted here under seal out of an abundance of caution.

[2] https://www.sec.gov/Archives/edgar/data/1509986/000119312512143756/d323503d20f.htm at p.68 (under "Investing Activities").