# EXHIBIT 1

# SEIDEN | LAW

322 Eighth Avenue
Suite 1200
New York, NY 10001
+1.646-766-1914
www.seidenlaw.com

May 26, 2023

**VIA ECF**

Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:     *Baliga v. Shi*, 23-827

Dear Ms. Wolfe,

We write on behalf of Robert Seiden in his capacity as the Court-appointed temporary receiver ("Receiver") over Link Motion Inc. ("LKM") in opposition to Vincent Shi's ("Shi") "emergency" motion ("Motion") filed yesterday seeking a stay pending appeal of an Extraordinary General Meeting ("EGM") of LKM shareholders scheduled to occur on May 30 and 31, 2023.

Shi's Motion is egregiously improper and should be denied on numerous grounds. As a threshold matter, ***at approximately 8 am this morning (May 26), Shi filed an Order to Show Cause in the District Court seeking the <u>exact same relief</u> – an order enjoining the EGM – that he is seeking through the Motion***.[1]  The District Court has not yet ruled on Shi's Order to Show Cause.  It is beyond peradventure that Shi cannot ask the Second Circuit to rule on a matter that is currently pending before the District Court.  Indeed, as explained further below, Shi contended in his Motion that he should be "excused" from seeking this relief in the District Court because it was "impracticable."  Shi's pending Order to Show Cause in the District Court fatally undermines that contention.  Shi's Motion should be denied for this reason alone.

Further, there is no "emergency" here.  Shi is appealing an order that the District Court entered over two weeks ago, on May 10, 2023.  There is no basis for Shi to seek "emergency" relief from this Court when he waited until the eleventh hour (days before the EGM, and on the eve of a holiday weekend) to seek relief.  Moreover, the Motion is fatally defective on numerous other grounds, including that (i) it fails to comply with Federal Rule of Appellate Procedure 8(a); (ii) this Court lacks jurisdiction; and (iii) Shi failed to show irreparable harm.

---

[1] A copy of the Order to Show Cause (ECF 421) is attached as Exhibit 1 to this letter.

# SEIDEN | LAW

## Background

On February 1, 2019, the District Court issued an order (the "Receivership Order") appointing Robert Seiden as temporary Receiver over LKM. See ECF 26. The Receivership Order directed, *inter alia*, that "[t]he Receiver shall assume full control of [LKM] by removing, as the Receiver deems necessary or advisable, any director, officer . . . of [LKM] . . . from control of, management, or participation in, the affairs of [LKM] []." *Id.* at II (2)(b). Acting pursuant to that authority, the Receiver has excluded Shi (a former director of LKM, who is not an LKM shareholder) from any management role at LKM, including displacing Shi and all other former LKM directors from their roles as directors of LKM. Since that time, based upon the Receivership Order, the Receiver has effectively assumed the functions of LKM's board of directors, including (as relevant here) the authority to convene an EGM.[2]

On September 15, 2022, the District Court issued an order (i) denying Shi's motion to enjoin the EGM, and (ii) authorizing the Receiver to proceed with the EGM once a missing LKM shareholder (who owns a substantial percentage of LKM's shares, and who had requested the Receiver to convene the EGM) had reappeared and was able to attend the EGM. ECF 338, at 13.[3]
On September 29, 2022, Shi moved (again) to enjoin the EGM. ECF 361. On October 5, 2022, the District Court issued an order denying Shi's motion (again). *See* ECF 364.[4] Shi did not appeal those orders nor seek reconsideration. Months later, on March 15, 2023, Shi filed a letter application seeking to have LKM's former board reinstated, which was (in effect) a third attempt to prevent the Receiver from convening the EGM. ECF 401. On April 3, 2023, the District Court issued an order denying that application. ECF 403. Shi did not appeal that order.

On May 3, 2023, in a fourth attempt to prevent the EGM from being convened, Shi filed a letter motion seeking to dissolve the receivership. *See* ECF 414. The motion was predicated on false allegations that the Receiver was purportedly selling off LKM's "valuable intellectual property" of certain internet domain names, which Shi maintained was supposedly new information permitting him to renew his motion. *Id*. Shi's contentions were meritless; Shi never provided the Receiver with the credentials to access those domains, and far from being "valuable," one of the domains was acquired for less than $1,500 and was being offered for less than $10. *See* ECF 416. Accordingly, on May 10, 2023, the District Court denied Shi's motion. ECF 417. Shortly thereafter, on May 18, 2023, notice of the EGM was sent to LKM shareholders; the EGM was scheduled for May 30 and 31, 2023—*i.e., starting one business day from today*. ECF 418.

## The Motion Should Be Denied On Multiple Grounds

This Court should deny the Motion for the following reasons.

---

[2] The District Court has ordered that the Receiver will be discharged following the completion of an accounting; the accounting has not been completed.

[3] A copy of the September 15, 2022 Order (ECF 338) is attached hereto as Exhibit 2.

[4] A copy of the October 5, 2022 Order (ECF 364) is attached hereto as Exhibit 3.

# SEIDEN | LAW

*First*, the Motion improperly seeks a stay directly from this Court without having first requested that relief from the District Court, as required by Federal Rule of Appellate Procedure 8(a)(1). Indeed, Shi misrepresents to this Court that he followed the required procedure: on the Motion's Information Statement he maintains that this prerequisite was met, yet on the bottom of page 12 of his memorandum of law Shi admits that he did not follow proper procedure and is seeking to be excused because of the "short time frame" between the order being appealed and the EGM. Mot. at 12. Shi's misrepresentation notwithstanding, his purported reasons for being excused from following the required procedure are meritless. The order that is being appealed was issued on May 10. It is now May 25. Nowhere does Shi even attempt to explain why he *waited over two weeks* to seek this relief just days before the EGM. The Court should decline to entertain the request for this reason alone. *See Hirschfeld v. Bd. of Elections in N.Y.*, 984 F.2d 35, 38 (2d Cir. 1993) (denying stay motion after appellant waited four weeks until "the Wednesday before the Tuesday" of the event he wished to enjoin to file a stay request); *Agudath Israel of Am. v. Cuomo*, 980 F.3d 222, 225 (finding no showing of impracticality where "a full eleven days elapsed after the district court's ruling before [appellant] sought relief from this Court.").

Moreover, as noted above, this morning (May 26), Shi filed an Order to Show Cause in the District Court seeking the exact same relief that he is seeking through the Motion. Shi's pending Order to Show Cause demonstrates that, in fact, it was not "impracticable" for Shi to first seek to enjoin the EGMs in the District Court, before coming to the Second Circuit. This Court should deny the Motion given Shi's abject failure to comply with FRAP 8(a)(1).

*Second*, this Court lacks jurisdiction. Shi asserts that the District Court's May 10, 2023 Order is appealable under 28 U.S.C. §1292(a)(1) and (a)(2) because it was a purported "refusal" by the District Court "to modify its Receiver Order." Mot. at 10. But as noted above, on September 15, 2022 and October 5, 2022, the District Court twice denied Shi's requests to enjoin the EGM. Then on April 3, 2023, the District Court issued an order denying Shi's March 2023 application to have LKM's former board reinstated, which was (in effect) yet another attempt to prevent the Receiver from convening the EGM. Shi did not appeal any of those three orders. While this Court may hear interlocutory appeals from orders refusing to dissolve injunctions or wind down receiverships, that is not the case here, where the instant motion is a refiling of three prior applications in the District Court to enjoin the EGM, all of which were denied, and none of which were timely appealed. *See Gill v. Monroe Cnty. Dep't of Soc. Servs.*, 873 F.2d 647, 648 (2d Cir. 1989) ("The instant motion . . . can be construed only as a refiling of the same motion . . . which had been denied twice before."). "An appeal from an order denying a successive motion . . . where the motion is simply the same as the earlier motion, is untimely under Fed. R. App. P. 4(a)(1) unless the notice of appeal was filed within thirty days of the original denial." *Id.* (collecting cases and characterizing successive motions as a "means merely to extend the thirty-day period for appeal.").

*Third*, Shi fails to allege any cognizable injury to himself, let alone irreparable harm. Shi claims that LKM directors have "important legal rights and roles under LKM's corporate documents." Mot. at 18. But the "rights" he cites are merely powers delegated by LKM to its directors. They attach to the *position*, not to the *person*. Shi cites no authority for the proposition that a director *who is not also a shareholder* has any legal right to maintain the position and retain the powers that accompany it. *Wisdom Import Sales Co., LLC v. Labatt Brewing Co. Ltd.,* 339

3

# SEIDEN | LAW

F.3d 101 (2003), cited by Shi (Mot. at 18) concerned a dispute between co-owners of a joint venture and *their* ability to select a certain number of directors.

      For all of the foregoing reasons, this Court should deny the Motion.

Respectfully submitted,

/s/ *Amiad Kushner*
Amiad Kushner

*Counsel for Robert Seiden in his capacity as the Court-appointed temporary Receiver over Link Motion, Inc.*

cc: All Counsel (via ECF)

4

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WAYNE BALIGA,

                                Plaintiff,

            - against -                                          **No. 1:18-cv-11642-VM-DCF**

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYOUNG SHI, JIA LIAN, XIAO YU,

                                Defendants.

**ORDER TO SHOW CAUSE**

Upon the declaration of Michael James Maloney, dated May 26, 2023, and all exhibits

attached thereto, and the accompanying memorandum of law dated May 26, 2023, all documents

referenced therein, and all prior proceedings, it is

**ORDERED** that Robert W. Seiden, the court appointed temporary receiver ("Receiver")

of Link Motion Inc., f/k/a NQ Mobile Inc. (the "Company"), and the Receiver's agent in China,

Mr. Fancis "Lilin" Guo, show cause before a motion term of this Court at room ___, United States

Courthouse, 500 Pearl Street, in the City, County, and State of New York on

_____, 2023 at ___ o'clock in the _____noon thereof, or as soon

thereafter as counsel may be heard, why an order should not be issued pursuant to Federal Rule of

Civil Procedure 65 enjoining the Receiver, Mr. Guo, and all persons acting at their direction or

control from:

(a) proceeding with any extraordinary general meetings (the "EGMs" and each separately
    an "EGM") of the shareholders of LKM including but not limited to the EGMs
    noticed for May 30, 2023 and May 31, 2023,

(b) taking any other corporate action respecting LKM,

1

(c)  exercising any rights as a shareholder of LKM,

(d)  issuing shares of LKM;

(e)  voting shares of LKM;

(f)   transferring any assets or interests of LKM; and

(g)  failing to preserve assets or interests of LKM,

pending a final determination of the objections to the Receiver's accounting and his discharge; and

it is further

**ORDERED** that, sufficient reason having been shown therefor, pending the hearing of

Dr. Shi's application for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65,

the EGMs of the Company called for May 30, 2023 and May 31, 2023 are hereby temporarily

enjoined.

**ORDERED** that service by email and ECF upon Plaintiff or his counsel and Receiver or

his counsel on or before _____ shall be deemed good and sufficient service

thereof.

Dated: New York, New York

_____, 2023

_____

United States Magistrate Judge

# EXHIBIT 2

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/15/2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
──────────────────────────────────
WAYNE BALIGA,

                    Plaintiff,

        - against -

LINK MOTION INC. (f/k/a NQ MOBILE
INC.), et al.,

                    Defendants.
──────────────────────────────────
```

**18 Civ. 11642 (VM)**

<u>**ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

Presently before the Court is a motion by Defendant Vincent Wenyong Shi ("Shi") for a preliminary injunction against the court-appointed receiver, Robert Seiden ("Receiver"), restraining him from convening extraordinary general meetings ("EGMs") of the shareholders of Defendant Link Motion, Inc. (f/k/a/ NQ Mobile Inc.) ("LKM"). (<u>See</u> "Motion," Dkt. No. 276-6.)

On August 25, 2022, the Court issued a Decision and Order ("D&O") adopting Magistrate Judge Debra Freeman's Report and Recommendation in its entirety. <u>See</u> Baliga <u>v. Link Motion, Inc.</u>, No. 18 Civ. 11642, 2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022) (hereinafter, "<u>D&O</u>"). In the <u>D&O</u>, the Court ordered that, prior to ruling on Shi's Motion, the parties should address whether and to what extent the disappearance of a major LKM shareholder, Lilin "Francis" Guo ("Guo") -- who

1

requested the Receiver to convene the EGMs -- renders the Motion moot. See D&O at *7. The parties' additional briefing on the issue is now before the Court, (see "Shi Ltr.," Dkt. No. 334; "Receiver Ltr.," Dkt. No. 335; "Baliga Ltr.," Dkt. No. 336), and two issues remain. First, whether the Receiver maintains the authority to convene the EGMs. Second, whether the Receiver's position that the EGMs should not be convened until Guo can attend renders the Motion moot.

For the reasons stated below, the Court finds that the Receiver has authority to convene the EGMs. The Court also finds that because both Shi and the Receiver agree that the EGMs should not move forward at this time, Shi's Motion is moot. Finally, the Court orders that regardless of the Receiver's authority to do so, the EGMs shall be postponed until Guo reappears and can attend the meetings.

## I.  BACKGROUND

On February 3, 2022, the Receiver informed the Court that it had applied to the Grand Court of the Cayman Islands ("Cayman Court") to seek authority to convene EGMs. (See Dkt. No. 268.) On February 23, 2022, the Cayman Court approved the Receiver's application and "authorized [the Receiver] to call an extraordinary general meeting of the shareholders of the Company for the purpose of putting [] resolutions to the shareholders" regarding the appointment and removal of

certain directors of LKM, including Shi. ("Cayman Order," Dkt. No. 271-1 §§ 1.1-1.2.)

On March 9, 2022, Magistrate Judge Freeman issued a Report and Recommendation that, in relevant part, recommended that the Receiver be discharged after an accounting. See Baliga v. Link Motion Inc., No. 18 Civ. 11642, 2022 WL 2531535 (S.D.N.Y. Mar. 9, 2022) (hereinafter "R&R"). While Magistrate Judge Freeman explained that a discharge Order "does not mean that the Court must require the Receiver to halt all activities at once," she offered two additional recommendations. First, she recommended against "Shi be[ing] reinstated to his prior positions of Chairman of the Board . . . or that any other former Directors of the Company who may have been removed by the Receiver be ordered reinstalled." Id. at *19. Second, she recommended that the "Receiver be directed not to seek any extraordinary actions from the Company's Board, during the remaining period of the receivership, as the Receiver's work, during this time, should instead be focused on maintaining the Company's status quo and providing the accounting described above." Id. at *20.

On March 15, 2022, Shi moved for an order to show cause to temporarily enjoin the Receiver from convening EGMs during which LKM shareholders were to vote on the resolution to

remove and appoint directors, including Shi, to LKM's board. (See Motion.) Shi requested that the Receiver be restrained "from holding the EGM until at least (30) days after the Court's decision on objections to the Report & Recommendation." (Id. ¶ 38.) On March 16, 2022, the Court entered an order to show cause temporarily enjoining the Receiver from convening the EGMs. (See Dkt. No. 277). On March 22, 2022, the Receiver responded to Shi's Motion, and disclosed, for the first time, that Guo had requested that the Receiver convene the EGMs regarding the appointment and removal of certain LKM directors. (See Dkt. No. 285.) On April 5, 2022, the Court extended the temporary restraining order enjoining the Receiver from convening the EGMs until it entered a ruling on the objections to the R&R. (See Dkt. No. 298.) Then, on June 9, 2022, the Receiver informed the Court that Guo had disappeared and had been unreachable since April 2022. (See Dkt. No. 309.)

On August 25, 2022, the Court entered the D&O, adopting the R&R in its entirety. See D&O, at *1. The Court ordered the parties to provide additional briefing addressing the extent to which the disappearance of shareholder Guo impacted whether the Receiver can convene the EGMs to vote on the appointment and removal of the LKM directors. See Id. at *7-8.)

On September 7 and 8, 2022, the parties submitted additional briefing. (<u>See</u> Dkt. Nos. 334, 335, 336.) Shi argues that the EGMs should not be convened because the Cayman Order that gave the Receiver authority to call the EGMs has expired, and because the Court terminated the Receiver's authority to act on behalf of LKM, except for the limited purposes of preparing an accounting. (<u>See</u> <u>generally</u> Shi Ltr.) The Receiver argues that it maintains the authority to convene the previously noticed EGMs under the Cayman Order, but that the EGMs should not move forward unless and until Guo can attend. (<u>See</u> <u>generally</u> Receiver Ltr.) Plaintiff, Wayne Baliga ("Baliga"), asserts that Guo's disappearance has no impact on the Receiver's authority to convene the meeting, and adopts the Receiver's arguments on this issue. (<u>See</u> Baliga Ltr. at 1.) Unlike Shi and the Receiver, Baliga asserts that the EGMs should move forward. (<u>Id.</u> at 2.)[1]

## II.  **LEGAL STANDARD**

Four factors are required for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm; (3) that the balance of hardships tips in the movant's favor;

---

[1] Baliga requests that the Court "grant the Receiver authority sufficient to grant U.S. investors the right to convert their ADRs in advance of the EGM." (Baliga Ltr. at 2.) The Court has already rejected Baliga's request to convert the American Depository Receipts and ordered that the "Receiver shall take no action regarding the conversion of the American Depository Receipts in LKM to common stock in LKM," <u>See</u> <u>D&O</u> at *8. The Court again rejects the invitation to order conversion of the shares. <u>Id.</u>

and (4) that a preliminary injunction serves the public interest. <u>See</u> <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008). However, "[v]oluntary cessation is an important factor bearing on the question of whether a court should grant a preliminary injunction or consider the request moot." <u>Abbott Labs v. Adelphia Supply USA</u>, No. 15 Civ. 5826, 2015 WL 10906060, at *13 (E.D.N.Y. Nov. 6, 2015) (citing <u>Holland v. Goord</u>, 758 F.3d 215, 223 (2d Cir. 2014)). The question is whether the record evinces "some cognizable danger of recurrent violation." <u>Robert Stigwood Grp. Ltd. V. Hurwitz</u>, 462 F.2d 910, 913 (2d Cir. 1972).

## III. <u>DISCUSSION</u>

The questions before the Court are narrow: (1) whether the Receiver, regardless of Guo's ability to attend, maintains the authority to convene the EGMs; and (2) whether the Receiver's position that it will not convene the EGMs until Guo can attend the meetings renders the Motion moot. Because the Court finds that the Motion is moot, it does not address the four preliminary injunction factors.

### A.   <u>THE RECEIVER'S AUTHORITY</u>

First, the Court must decide whether the Receiver, regardless of Guo's presence, can convene an EGM. The Court finds that the Receiver has that authority. The Court's grant of authority to the Receiver was broad, providing the Receiver

with full authority "to do any acts to protect the status quo
of the Company" including "removing, as the Receiver deems
necessary or advisable, any director." ("Receiver Order,"
Dkt. No. 26 ¶ II.2(b).) While the Court acknowledges that the
Cayman Court did not recognize the Receiver's power to appoint
or replace a director of LKM (see Dkt. No. 132-1 at 2), the
Cayman Court later provided the Receiver with the explicit
authority to convene the EGMs that would allow LKM's
shareholders to vote on the same (see Cayman Order at §§ 1.1-
1.2). Thus, the Court concludes that the Receiver had the
authority, initially, to issue the notices convening the
EGMs.

Next, the Court must address whether the Receiver's
authority to convene the EGMs remains valid. To that end, Shi
argues that under LKM's corporate by-laws, the Receiver's
authority to convene the EGMs expired in June 2022. Shi argues
the Receiver's authority expired because Guo requested that
the Receiver convene the meetings, and the by-laws require
that an EGM requisitioned by a shareholder be held within
three months' time; Shi says that time has since passed. (See
Shi Ltr. at 1 (citing "LKM By-laws," Dkt. No. 130-3 ¶ 55(d)).)
The Receiver counters the time-bar has no effect because it
applies only to EGM's called upon a shareholder requisition
to LKM's directors, which did not occur here. (See Receiver

Ltr. at 2 n.2.) The Court is persuaded that the time-bar does not apply.

The LKM By-laws establish two different paths for calling an EGM.[2] First, "[t]he Directors may call general meetings" on their own accord. (LKM By-laws ¶ 55.) Second, the Directors also "shall on a Members requisition forthwith proceed to convene an extraordinary general meeting of the Company." (Id.) After a "Members requisition," the Directors are allowed "21 calendar days from the date of the deposit of the requisition" to convene the EGM, and that EGM must be "held within a further 21 calendar days." (Id. ¶ 55(d).) After the second 21-day period passes, the requisitioning parties may themselves convene a general meeting" and that meeting must be convened within "three months," from the end of the second 21-day period. (Id.) The Court agrees with the Receiver's assertion that no such temporal limitation is implicated when a Director calls for a general meeting. The provision of two different means for calling an EGM is bolstered by the LKM By-laws, which also require that any EGM convened by the requisitioning parties must be convened "in

---

[2] The by-laws use the terms "general meeting" and "extraordinary general meeting" interchangeably. (See Dkt. No. 130-3 ¶ 53 ("All general meetings of the Company other than annual general meetings shall be called extraordinary general meetings.").)

the same manner as nearly as possible as that in which general meetings are to be convened by Directors." (Id.)

In its response to the Motion, the Receiver notified this Court and, previously, the Cayman Court, that Guo was "unable to requisition an extraordinary general meeting." (See Dkt. No. 285 at 5; Dkt. No. 285-3 ¶¶ 15-17.) The parties do not dispute that point here. As such, any EGM that the Receiver sought to convene following Guo's request is not made "on a Members requisition," and is thus more akin to a Director calling the meeting, meaning the temporal aspects of paragraph 55(d) of the LKM By-laws would not apply. Accordingly, the Court finds that the Receiver's authority to convene the EGMs is not subject to the time limitations of paragraph 55(d) of the LKM By-laws.

Next, the Court addresses whether Guo must be present at the meeting. Nothing in the parties' briefing, the LKM By-laws, or the Cayman Order indicates that Guo's attendance is necessary to convene the EGMs. The Receiver indicates only that Guo's attendance is preferred. (See Receiver Ltr. at 3.) The Court finds that the EGMs could move forward without Guo.

Finally, the Court finds that the Court's adoption of the R&R, which discharges the Receiver upon a final accounting, does not nullify the Receiver's ability to call the EGMs. In the D&O, the Court enumerated Magistrate Judge

9

Freeman's "overarching recommendations," which it would adopt. See D&O, at *3. One of those recommendations was to "direct that the Receiver not be required to unwind any activities that have already been taken on the Company's behalf, but, at the same time, direct that the Receiver not seek any extraordinary actions from the Company's Board, during the remaining period of the receivership." Id. This provision looks backwards, to activities the Receiver has already undertaken, and forward, asking the Receiver to focus its efforts on the accounting.

By the time Magistrate Judge Freeman had issued the R&R on March 9, 2022, the Receiver had already set in motion its plan to convene the EGMs. First, the Receiver had already put the Court on notice of its intent to seek from the Cayman Court the authority to convene the EGMs. (See Dkt. No. 268, dated February 3, 2022.) Second, the Receiver had already been granted the authority to notice the EGMs via the Cayman Order. (See Cayman Order, dated February 23, 2022) And third, the Receiver had already issued the notices to LKM's shareholders regarding the resolutions to appoint and remove certain LKM directors that would be addressed at the EGMs. (See Dkts. Nos. 276-2, 276-3, both dated March 4, 2022.) Because the Receiver's attempts to convene the EGMs were already underway prior to the time the R&R was issued, the

Court finds its adoption of the R&R (which does not require the Receiver to unwind actions already taken (see D&O, at *3)) allows the Receiver to maintain its authority to convene the EGM's until the Receiver is discharged, after providing its full and final accounting. And the Receiver maintains the authority to convene the EGMs regardless of Guo's attendance.

   B.   SHI'S MOTION

   With the Receiver's authority settled, the Court must now decide whether Shi's Motion to enjoin the EGMs from being convened is moot. Although the Court finds the Receiver maintains the authority to convene the EGMs, the Receiver has affirmed it will not do so until Guo can be located. The Receiver's position on behalf of himself thus moots Shi's Motion. The issue Shi complains of is also not likely to recur in the near future because the Court also orders that the EGMs shall be postponed unless and until Guo reappears and can attend, ensuring that the Receiver maintains its position on when the EGMs can be convened.

   Shi's Motion is temporally limited. Shi requested that the Receiver be restrained "from holding the EGM until at least (30) days after the Court's decision on objections to the Report & Recommendation." (Dkt. No. 276-1 ¶ 38.). The Court issued that decision, the D&O, on August 25, 2022, meaning that Shi's Motion requests that the EGMs not be

11

convened before at least September 24, 2022, which is imminently approaching.

Further, Shi and the Receiver agree that the EGMs should not be convened in the immediate future, albeit for different reasons. Shi argues the EGMs should not be convened due to the Receiver's lack of authority, arguments the Court disposes of above. (See Shi Ltr. at 1-2.) The Receiver argues that if Guo (who has forty percent of the vote) cannot attend the EGMs the shareholders' ability to pass the resolutions regarding the appointment or removal of the certain directors is impacted, and that holding the EGMs without Guo could also lead to conflicts of interest should Shi (who would be considered for removal) preside over the EGM. (Receiver Ltr. at 3.)

Despite the difference in reasons, the Court is persuaded that the agreement between Shi and the Receiver that the EGMs should not move forward at this time is sufficient to moot the issue. According to the Receiver, Guo has been unreachable since April 2022. The Court finds that it is unlikely that Guo will reappear in the short term such that the EGMs could be convened within 30 days of the entry of the D&O (i.e., September, 24, 2022). Because no EGM will be held within this time period, Shi's Motion to enjoin the Receiver from convening the EGMs is moot.

**IV.   ORDER**

For the reasons stated above, it is hereby

    **ORDERED** that Defendant Wenyong Shi's Motion to enjoin the Receiver from convening extraordinary general meetings of the Link Motion, Inc. shareholders to vote on resolutions to remove and appoint directors of the Link Motion, Inc. board (Dkt. No. 276) is **DENIED AS MOOT**; and it is further

    **ORDERED** that the extraordinary general meetings sought to be convened by Robert W. Seiden ("Receiver") shall be postponed until Lilin "Francis" Guo ("Guo") can attend the meetings, provided that Guo reappears prior to the full discharge of the Receiver's authority, following its provision of a full accounting of the receivership's activities; and it is further

    **ORDERED** that within seven (7) days of the date of this order, the parties and the Receiver shall file separate letters, not to exceed three pages, that address the following: (1) whether the LKM Board's decision to meet in early September 2022 violates any of the Court's orders in this matter; and (2) the extent of the Court's jurisdiction to address (a) any purported violations of the Court's orders by the LKM Board and (b) the LKM Board's ability to meet.

**SO ORDERED.**

Dated:     September 15, 2022
           New York, New York

_____
              Victor Marrero
                U.S.D.J.

# EXHIBIT 3

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/5/2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WAYNE BALIGA,

                 Plaintiff,

       - against -

LINK MOTION, INC. et al.,

              Defendants.

---

**18 Civ. 11642 (VM)**

**ORDER**

**VICTOR MARRERO, United States District Judge.**

     Presently before the Court is a proposed Order to Show Cause ("OSC") by defendants Link Motion, Inc. ("LKM") and Vincent Wenyong Shi ("Shi") (together "Defendants") against the court-appointed receiver, Robert Seiden ("Receiver"), seeking — again — to enjoin the Receiver from convening certain extraordinary general meetings ("EGMs") of the LKM shareholders. (See Dkt. No. 361 & "OSC Motion," Dkt. No. 361-4.)

     The OSC Motion seeks emergency relief and requests that the Court immediately enjoin the Receiver from convening the EGMs. It also moves the Court under Federal Rule of Civil Procedure 60(b) to reconsider its September 15, 2022 order. (See "September 15 Order," Dkt. No. 338.) The September 15 Order denied as moot Defendants' previous motion for a preliminary injunction seeking to restrain the Receiver and ordered that the Receiver could not convene the EGMs unless

and until Lilin "Francis" Guo ("Guo") (a major LKM shareholder who has disappeared) could attend. The September 15 Order concluded that the issue was moot because both Defendants and the Receiver agreed that the EGMs could not move forward in the short term. (See September 15 Order at 12.) Because the Court concluded that the issue was moot, it declined to assess the four preliminary injunction considerations (see September 15 Order at 6) but, because the parties also separately disputed the Receiver's general authority to convene the EGMs, the Court assessed the propriety of those claims and ruled on the issue.

Defendants now contend that "newly discovered evidence" — including the Receiver's notice to the Court that Guo would reappear "in the next 30-60 days" and certain letters the Receiver recently filed unsealed, (see Dkt. Nos. 340-348, 351.) — makes the dispute a live controversy and asks the Court to reconsider three issues: (1) whether the four preliminary injunction considerations weigh in Defendants' favor; (2) whether the Receiver retains the authority to convene the EGMs; and (3) whether the time to convene the EGMs has expired under the LKM by-laws. Defendants alternatively renew their request to restrain the Receiver from convening the EGMs. The Court is not persuaded that Defendants are entitled to the requested relief and reaffirms

its conclusions from the September 15 Order. The Court DENIES Defendants' requests.

## I.   LEGAL STANDARD

The OSC Motion is, at bottom, a motion for reconsideration under Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3, which is "intended to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" SEC v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). When assessing a motion for reconsideration, a district court must "narrowly construe and apply" Local Rule 6.3 to "avoid duplicative rulings on previously considered issues" and to prevent the rule from being used to advance theories not previously argued or as "a substitute for appealing a final judgment." Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); see also Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999).

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614

(S.D.N.Y. 2000). Accordingly, the Second Circuit has held that the standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. V. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257; see also Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (noting that reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple" (internal quotation marks omitted)).

The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir.

2009) (quoting Nemaizer v. Baker, 793 F.2d 58, 61-62 (2d Cir. 1986)).

## II.  DISCUSSION

### A.  DEFENDANTS' REQUEST FOR AN INJUNCTION

Defendants urge the Court to reconsider its previous denial of the preliminary injunction and seek a new temporary restraining order ("TRO") and preliminary injunction barring the Receiver from convening the EGMs. The Court handles the dual requests as one.

"It is well established in this Circuit that the standard for entry of a TRO is the same as for a preliminary injunction." Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). Generally, to obtain a preliminary injunction, a movant must demonstrate (1) likelihood of success on the merits; (2) irreparable harm; (3) that the balance of hardships tips in the movant's favor; and (4) that a preliminary injunction serves the public interest. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

As to the first consideration, Defendants argue that they are likely to succeed on the merits because, in its August 25, 2022 Decision and Order adopting Magistrate Judge Freeman's Report and Recommendation (see "D&O," Dkt. No. 331), the Court approved the eventual discharge of the Receiver, "[t]hus, the power of the Receiver must [] be

terminated." (See OSC Motion at 12.) The Court disagrees. As explained in the September 15 Order, and reaffirmed here, the Court's D&O did "not nullify the Receiver's ability to call the EGMs" because the Receiver was not "required to unwind any activities that have already been taken on the Company's behalf." (September 15 Order at 9-10.) The Receiver maintains its authority, which the Cayman Court granted, until it is fully discharged upon this Court's approval of its final accounting, which has not occurred. (See Dkt. No. 359 (ordering schedule for approval of accounting).) Thus, and as explained in more detail below, the Receiver can convene the EGMs, but may not do so until Guo reappears and can attend. As a result, Defendants have not established they would succeed on the merits and the first preliminary injunction consideration does not weigh in their favor.

The second consideration is irreparable harm. "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transport Mahno AB v. Wabtec Corp., 559 F.3d 110, 116 (2d Cir. 2009). "The movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995).

Here, Defendants argue that "[i]f the EGMs are allowed to go forward as drafted, the Original Investors will suffer irreparable harm," thus the Court should "enjoin the EGMs to protect the Original Investors." (OSC Motion at 12.) Defendants define the Original Investors as the "26 registered shareholders of [LKM]." (OSC Motion at 2 (citing Dkt. No. 130-1).) LKM and Shi are not among the Original Investors, and none of the Original Investors are parties to this action.[1] (See Dkt. No. 130-1.) An "alleged harm to third parties d[oes] not provide [Defendants] a basis for a preliminary injunction." See Moore v. Consolidated Edison Co. of N.Y., Inc., 409 F.3d 506, 512 (2d Cir. 2005). Other than on behalf of the Original Investors, Defendants do not claim that they themselves would be irreparably harmed by the EGMs moving forward. Thus, the Court finds that Defendants fail to establish irreparable harm on that ground alone.

But even if the Court ignored that fatal defect, the purported injury Defendants insist the Original Investors face must also be actual and imminent. Here, the harm is both speculative and remote. Defendants claim that the Receiver and Guo "expropriated 40% of the total voting power" through a Note Agreement that Defendants allege "likely violates New

---

[1] The Court previously denied a motion to intervene by Original Investor, China AI Capital Limited. (See Dkt. No. 163.)

7

York's usury laws."[2] (OSC Motion at 12-13.) Yet, Defendants concede that there is "no evidence" regarding the consideration that Guo paid, save for, potentially, the Note Agreement that remains under seal.[3]

The harm that Defendants identify — that "the Original Investors will be unable to exercise the voting power they had before the appointment" of Guo at the EGMs (OSC Motion at 13) — depends, first, on Guo having obtained his voting power inappropriately, and second, a lack of consensus between Guo and the Original Investors on the composition of the LKM Board. Defendants must march through a parade of hypotheticals to establish this purported harm, revealing that it is speculative. First, the Note Agreement must be unsealed. Next, it must show what Defendants claim it shows, that Guo did not pay fair consideration for his shares. Then, a court would have to consider whether that violated New York usury laws. If all of that were true, then it is possible that convening the EGMs could harm the Original Investors. But that, too, is a red herring. For even if Guo's voting power was obtained inappropriately, there is nothing in the

---

[2] The Court previously reviewed and approved the compensation incentive agreement and promissory note that Defendants now claim is usurious. (See Dkt. No. 71.)

[3] Defendants have moved the Magistrate Court to unseal the Note Agreement and the dispute is currently pending. (See Dkt. No. 360.)

record establishing how all the Original Investors may vote.
Indeed, they may very well agree with Guo. And, if all the
Original Investors did disagree, and Guo retained his voting
power, it is also certainly plausible the Original Investors
could coalesce and overpower Guo, who, with only 40 percent
of the vote, appears to lack the power to ratify any
resolution by himself. In either setting, the Original
Investors incur no harm. And neither is certain to occur: how
the EGMs would play out, and what the Original Investors would
do is not presented to the Court. Defendants thus fail to
establish the purported harm is actual.

The purported harm is also not imminent. The Receiver
does not know for certain when, exactly, Guo will reappear.
The Receiver's letter states that an unidentified
"Individual . . . believes Mr. Guo is in Hainan and will
reappear in the next 30-60 days" but also that "Mr. Guo's
reappearance may be delayed because of current Covid
lockdowns in Hainan." (Dkt. No. 351 at 1.) The Receiver
further expressed hesitation as to the "authenticity of the
Individual's statements and the documents provided." (Id.)[4]

---

[4] On October 4, 2022, after Defendants filed the OSC Motion, the Receiver
provided an update from the unidentified "Individual" indicating that
"Guo is now estimated to re-appear by the end of October 2022," which
falls within the initial time range the Receiver provided. (Dkt. No. 363.)
The Receiver continues to express hesitation as to the "veracity of the
Individual's statement." (Id.)

The September 15 Order makes clear that the EGMs "shall be postponed until [Guo] can attend the meetings." (September 15 Order at 13.) Consequently, when Guo will reappear remains hazy at best, rendering any purported injury remote.

The remaining considerations, both of which are neutral, do not outweigh the first two. The Court finds that the balance of the hardships favors neither party. While the Receiver's authority to take new actions has been limited, the notice of the EGMs was made by the Receiver prior to the Court's report and recommendation and D&O, and the Receiver is not required to unwind those activities. Defendants do not allege they would incur a hardship, and any hardship to the Original Investors is speculative. And finally, as stated, what harm the Original Investors may suffer is abstract, and thus the Court finds that the last consideration (whether the injunction is in the public interest) is neutral. Accordingly, the Court denies Defendants' request for reconsideration and their new request for a TRO and preliminary injunction.

B.  THE RECEIVER'S AUTHORITY

Defendants also argue that the Court should reconsider its conclusions as to (1) the Receiver's authority to convene the EGMs; and (2) the timeline on which the EGMs must be convened. On these issues, Defendants aver that the Court

issued an advisory opinion in the September 15 Order. Defendants say that because the Court determined that the preliminary injunction was moot, the issue of the Receiver's authority was not "an 'issue ripe for judicial resolution,' [because] the arguments regarding authority and the application of Article 55 were 'mere hypothetical question[s]' about what would happen if Guo reappeared." (See OSC Motion at 15.) Not so. First, the Receiver's authority to convene the EGMs was a separate issue from whether the EGMs should move forward. The Court's finding of mootness was limited to the parties' agreement that the EGMs could not move forward in the short term. (See September 15 Order at 12.) The parties vigorously disputed the Receiver's authority under the Cayman Court's order and the Company's by-laws, making that issue a live controversy and thus appropriate for the Court to address.

Second, an issue "is not moot if the underlying dispute between the two parties is 'capable of repetition, yet evading review.'" See Irish Lesbian and Gay Org. v. Giuliani, 143 F.3d 638, 648 (2d Cir. 1998) (quoting Neb. Press Ass'n v. Stuart, 427 U.S. 539, 546 (1976)). The September 15 Order established that the issue of the Receiver's authority to convene the EGMs was likely to recur; indeed, the Court ordered that the EGMs could eventually move forward if Guo

reappeared. (See September 15 Order at 13.) And Defendants'
filing of the OSC Motion proves that the dispute was likely
to recur and thus is now, as it was before, a
"live . . . controversy" ripe for judicial review. Id. Thus,
it was proper for the Court to address the issue in the
September 15 Order.

The Court reached the correct conclusions in the
September 15 Order and Defendants fail to "point to
controlling decisions or data that the court overlooked" that
would "alter the conclusion[s] reached." Shrader, 70 F.3d at
257. Thus, the Court reaffirms its decisions here. Indeed,
Defendants' OSC Motion rehashes many of the same arguments
regarding the effect of the D&O on the Receiver's authority
that the Court previously considered and rejected. (See OSC
Motion at 15-19.) Defendants argue that the Receiver lacks
authority to convene the EGMs. They contend that the Cayman
Court order granting that authority was issued prior to the
Court's D&O discharging the Receiver upon completion of its
accounting such that the Receiver's authority is terminated.
(Id. at 15-17.) As explained above and in the September 15
Order, the D&O did not require the Receiver to "unwind any
activities that have already been taken on the Company's
behalf." (September 15 Order at 10 (quoting D&O at 7).) And
the Receiver had already taken action to convene the EGMs

before either the Report and Recommendation or D&O were entered. Accordingly, the Court reaffirms its finding that the Receiver maintains its authority, until fully discharged after its accounting, to convene the EGMs.

Defendants also rehash their argument that the time to convene the EGMs has expired under Article 55(d) of the LKM by-laws. (See OSC Motion at 18-19; see also "LKM By-Laws," Dkt. No. 130-3.) Defendants argue that the "facts here fall under the 'requisition' provision of Article 55 of the Company's governing documents" because "it was Guo — acting as a shareholder — who requested the EGMs." (Id.) The Court remains unpersuaded.

As recognized in the September 15 Order (and which remains unrebutted here), the Receiver informed this Court and the Cayman Court that "Guo [is] 'unable to requisition an extraordinary general meeting.'" (September 15 Order at 9 (citation omitted).) Defendants nevertheless continue to contend that the EGMs are transformed into a requisitioned meeting because the Receiver was "acting at the request of Guo." (OSC Motion at 18.) A mere request to the Receiver by Guo, without more, does not satisfy Article 55's formalities, and Defendants' argument fails.

To qualify as an EGM called upon a shareholder requisition, the requisitioning member(s) must hold "at the

date of the deposit of the requisition not less than one-third in par value of the share capital of the Company." (LKM By-Laws ¶ 55(b).) It is not disputed that Guo holds only "approximately 13% of the par value of all issued shares" and thus cannot requisition the meeting by himself. (Dkt. No. 285-3 ¶ 17.4.) Thus, Guo's request was not a formal requisition and the time limits of Article 55(d) do not apply. The Court thus reaffirms its conclusions in the September 15 Order as to the Receiver's authority to convene the EGMs and the timeline on which they may be convened.

### III. **ORDER**

For the reasons stated above, it is hereby

**ORDERED** that the defendants', Link Motion, Inc. and Wenyong Shi (together "Defendants"), proposed Order to Show Cause is **DENIED**; and it is further

**ORDERED** that Defendants' renewed request for a temporary restraining order and preliminary injunction is **DENIED**; and it is further

**ORDERED** that Robert Seiden ("Receiver") maintains the authority to convene the extraordinary general meetings ("EGMs") and may do so provided that Lilin "Francis" Guo ("Guo") reappears and is able to attend the EGMs, and that the EGMs are convened prior to the Court's approval of the

Receiver's accounting, which results in the Receiver's discharge.

**SO ORDERED.**

Dated:      October 5, 2022
            New York, New York

_____
            Victor Marrero
            U.S.D.J.