```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #18cv11642
 BALIGA,                            :

                    Plaintiff,      :

   - against -                      :

 LINK MOTION INC., et al.,          :
                                         New York, New York
                    Defendants.     : May 24, 2023

------------------------------------:


                      PROCEEDINGS BEFORE
                THE HONORABLE VALERIE FIGUEREDO
                UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiffs:        GREENBERG TRAURIG, LLP
                       BY:  MIRIAM BAHCALL, ESQ.
                       77 West Wacker Drive, Suite 3100
                       Chicago, Illinois 60601

For Defendants:        FELICELLO LAW P.C.
                       BY:  MICHAEL MALONEY, ESQ.
                            ROSANNE FELICELLO, ESQ.
                       366 Madison Avenue, 3rd Floor
                       New York, New York 10017
```

```
Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street, #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---|---|---|---|---|---|
| None | | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

1

```
 1                        PROCEEDING              3
 2            THE CLERK:  Judge, this is the matter of Baliga
 3  versus Link Motion Inc., case number 18cv11642.
 4            Counsel, please note your appearance for the
 5  record starting with the plaintiff.
 6            MS. MIRIAM G. BAHCALL:  Yes, your Honor, Miriam
 7  Bahcall on behalf of the plaintiff, Mr. Baliga.
 8            HONORABLE VALERIE FIGUEREDO (THE COURT):  Good
 9  morning, Ms. Bahcall.
10            MR. MICHAEL J. MALONEY:  Good morning, your
11  Honor.  This is Michael James Maloney, with my partner
12  Rosanne Felicello on behalf of defendants, Dr. Vincent
13  Wenyong Shi, and on this motion, Link Motion Inc.
14            THE COURT:  Good morning, Mr. Maloney and
15  Ms. Felicello.
16            MS. ROSANNE FELICELLO:  Good morning, your
17  Honor.
18            THE COURT:  So this is a bit of a different
19  format for an oral argument.  There's really one topic
20  or question that I'd like the parties to just discuss
21  with me.  So you're all aware of the R & R and Judge
22  Marrero's like limited, basically let's call it a
23  remand, for purposes of just the state common law fraud
24  claim.  And I don't know if you recall, but in his
25  Decision and Order at page 39 through 40 he specifically
```

PROCEEDING                4

 1

 2  says neither party had addressed the Affiliated Ute

 3  presumption and how the presumption applies, and this is

 4  -- I'm quoting what his language is -- "where the

 5  securities allegations primarily focus on a failure to

 6  disclose but the common law fraud claims targeting the

 7  same misstatement and omissions are pled as ground in a

 8  more direct theory of reliance."

 9          So I know the parties briefed the issue of

10  what's required under the state common law fraud claim.

11  I think, you know, we've extensively reviewed the New

12  York state cases, and it seems pretty clear that you

13  need direct reliance for a state common law fraud claim.

14  In the state courts there's no Affiliated Ute

15  presumption.  I think that aspect of it, you know, I

16  don't think we need to discuss today.

17          My focus really is I read Judge Marrero to be

18  saying you've got these federal securities loss claims

19  that for all intents and purposes the Court has already

20  issued an R & R that was predominately based on these

21  material omissions.  The R & R was adopted by Judge

22  Marrero.  He found that the claim was basically a

23  failure to disclose the related nature of that Tongfang

24  transaction, right?  In the statement sending it back to

25  us for the common law fraud claim he seems to be talking

2  about the common law fraud claims, the state ones, being

3  grounded in a more direct theory of reliance.  And so

4  the reason I wanted to talk to the parties is if we are

5  all working on the assumption that for a common law

6  fraud claim you have to plead direct reliance; we're not

7  looking at an Affiliated Ute presumption.

8         How does that work in the context of these

9  allegations here?  Because we have at right -- at any

10  point anyone can feel free to chime in -- but we have,

11  you know, the 33 total purchases, which Judge Marrero

12  has already said only 13 are actionable, right?  So

13  that's also like not open for discussion.  And there's

14  only one -- so the Tongfang transaction is in March of

15  2017.  Mr. Baliga makes the one purpose in January 19th

16  of 2018.  So that's one purchase after the Tongfang

17  transaction but before the Seeking Alpha report in

18  February of 2018.  And then after February of 2018, as

19  you know, he makes several purchases from June through

20  August of 2018.

21         So I guess in a nutshell -- I know I have been

22  talking for a while -- but I want to hear the parties

23  out based on the allegations in the Complaint, you know,

24  for this common law fraud claim where we have to show

25  direct reliance, has Mr. Baliga made out enough.  And is

1

2     there some disconnect with saying -- this was more

3     fundamentally my question -- is there some disconnect

4     with saying that his federal securities law claims are

5     based on this theory of a material omission; whereas,

6     his state law, state common law fraud claim, is there a

7     disconnect if we potentially say that's grounded more in

8     a direct theory of reliance, i.e., a direct -- he relied

9     on a misrepresentation?

10              MS. BAHCALL:  May I respond first --

11              THE COURT:  Yes.  And, as I said --

12              MS. BAHCALL:  -- since I think it's kind of

13    directed at the plaintiff?

14              THE COURT:  -- I'm obviously happy to hear from

15    anyone.  And, you know, this was really -- I know we're

16    in this setting, but I was hoping to have, you know, an

17    open discussion about this.

18              MS. BAHCALL:  Okay, so I think, yes, I think we

19    can state and have state a claim.  And we do base

20    reliance, and under New York state law you can base

21    reliance on an omissions claim or a mixed claim.  And we

22    think we've done that.  And the fact -- it doesn't

23    become -- we're not saying it's a misrepresentation case

24    for the common law fraud claims and it's an omissions

25    case for the securities law claims.  It's the same case.

PROCEEDING                    7

1
2   The reason we made it clear -- and I think when we
3   appeared here the last time -- and I reviewed the oral
4   argument -- I'm pretty sure I said we are looking at
5   reliance on three bases, I said -- and it's true, and
6   they're compliant.  I mean, it wasn't just something.
7   It was one, we thought we were entitled to fraud on the
8   market for the misreps, for the securities law claim
9   misreps; we thought we were entitled to Affiliated Ute
10  because the securities law claims were predominantly
11  (indiscernible).  And then we did say we also had direct
12  reliance under misreps and the omissions, and we did
13  plead that for common law fraud claim, as well and for
14  negligent misrep.  And the judge has already found
15  there's no difference in reasonable reliance for
16  negligent misrep and common law fraud.  And in the
17  negligent misrep claim you found reliance was adequately
18  pled, and the Court adopted it, and they didn't object.
19          So I think we have -- and we are claiming it is
20  a misrepresentation but mainly an omissions claim, and
21  we're relying on it.  And your Court's recognized you
22  can rely on an omission; you have to plead direct
23  reliance, which we've done.  And the way it works is --
24  and Mr. Maloney at the last argument, in fact, admitted
25  he understood it from our pleadings.  And, after all,

1

2    that's what Rule 9(b) is about, that we're saying that

3    Mr. Baliga, which we can do here -- I mean, a lot of the

4    cases go off, and whether you need the presumption,

5    mainly because they're a class action on these

6    certifications, and to have one person did, one person

7    didn't, it's hard to show the whole class read

8    everything.  But he understands that -- when I say "he,"

9    I mean she, based on the argument -- we pled that he

10   relied on the statements that came up.  He read them; he

11   relied on them.

12            THE COURT:  So just to be more specific,

13   because I -- and I have your Second Amended Complaint

14   here -- as I reviewed the Complaint, I thought you pled

15   -- your allegations of direct reliance for purposes of

16   the common law fraud claim, I found at Paragraph 119 and

17   Paragraph 124.

18            MS. BAHCALL:  Yeah, we had it in Paragraph --

19   but it was 119, 124, and also Paragraph 2 and 120.  So

20   at Paragraph 2:  "Baliga has alleged that he relied on

21   defendants' misstatements and omissions concerning the

22   various corporate transactions entered into LKM."  1119:

23   "Baliga specifically alleged that he relied on the

24   material false and misleading statements and omissions

25   alleged herein in reaching investment decisions."

```
 1                          PROCEEDING                 9
 2   Paragraph 120:  "Baliga purchased LKM securities between
 3   the time defendants misrepresented or failed to disclose
 4   material facts and the time the two facts were disclosed
 5   without knowledge of the misrepresented or omitted
 6   facts."  So --
 7             THE COURT:  Sorry, that was Paragraph 120?
 8             MS. BAHCALL:  Yes, Second Amended Complaint.  I
 9   have -- I may have taken it down wrong, but that's what
10   I have.
11             THE COURT:  So --
12             MS. BAHCALL:  And 124.
13             THE COURT:  Right.  And so all of those, again,
14   are -- they're general, right?  You're saying he
15   directly relied on the misreps or omissions; you're not
16   giving me specific statements he relied on, you're not
17   providing specific actions he took in reliance on those
18   statements or on the fact that the company hadn't
19   disclosed the related nature of the transaction.  One
20   could view those allegations as a bit boilerplate.  And
21   so I'm wondering if you have more specific allegations
22   of direct reliance?
23             MS. BAHCALL:  Well, I will say that the Court
24   also found that we had, and in fact, Mr. Maloney
25   admitted it, initial admission here, that we went
```

```
 1
 2  through and we listed every single fact or disclosure
 3  that came out and what they said and what they were in.
 4  We gave a laundry list of them and then said he reviewed
 5  them.  And I will say that, again, at the argument --
 6          MS. BAHCALL:  But are those -- I'm sorry to cut
 7  you off; I just want to make sure that I'm clear on
 8  exactly what you're pointing to -- when you talk about
 9  those laundry lists of statements, are those all during
10  the -- so I guess near in time or some -- because we're
11  talking about the more limited actionable trades, as
12  Judge Marrero circumscribed them or whatever.  We're
13  really talking about some time period before that
14  January 2018 purchase?
15          MS. BAHCALL:  Yeah.  We list all of them he
16  relied on and the dates.
17          THE COURT:  And where do you list that?
18          MS. BAHCALL:  Let me find it for you.  I have
19  them listed out.  Unfortunately, Ms. Soli was supposed
20  to join me and had car trouble, and I told her to bring
21  the Second Amended Complaint so I wasn't just working
22  off of my outline.  But I will find it for you.
23          THE COURT:  Okay, sure.  And I mean, as I said,
24  like this is a bit of an unorthodox format, so if
25  Mr. Maloney or Ms. Felicello want to chime in while
```

```
 1                        PROCEEDING                11
 2   you're looking for it, I'm happy to do a back-and-forth.
 3              MR. MALONEY:  Yes, your Honor.  Thank you.
 4              I'd like to address first your question about
 5   whether plaintiff has adequately alleged direct reliance
 6   here.  I submit that the relevant cases before you are
 7   the *Doubleline vs. Odebrecht* case and the *In re Fire
 8   Festival* cases.  You know, these cases both address a
 9   situation that is very similar to here where plaintiff
10   alleges a laundry list of statements and then alleges
11   that he or she relied on all of them generally in trying
12   to make out at common law New York fraud claim.  And the
13   Courts both rejected that argument.  The Courts are
14   saying that the plaintiff, in order to make out a New
15   York common law fraud claim must link each purchase with
16   an identifiable statement.  And that's direct actual
17   reliance under New York law.  And the Courts rejected
18   these general laundry list allegations and boilerplate
19   allegation of direct reliance on that laundry list.
20   That's the correct legal principle here that should be
21   applied, and that's one of the reasons why plaintiff has
22   not been able to adequately allege direct reliance.
23              There's another point that is relevant and
24   which these cases teach us.  That is a failure to plead
25   reliance under Rule 8.  It does not satisfy even the
```

1                              PROCEEDING                    12

2  minimal requirement of Rule 8, let alone the heightened

3  pleading standard under Rule 9.

4            Both of those cases involved claims where

5  common law fraud claims were brought also in parallel

6  with the securities claims.  You know, the *Doubleline*

7  case, in particular, dealt with the presumption issue.

8  Your Honor has already mentioned that; you don't an

9  argument on that, so I won't go into that.  But those

10 are the relevant cases here.

11            There's another issue with reliance here, as

12 well, another defect, we submit.  Plaintiff's reliance

13 must be justifiable.  And that means basically that a

14 reasonable person, you know, could have relied on the

15 statements that they're claiming to have been

16 fraudulent.  And in this particular case, no transaction

17 after February 18 could be justifiably -- could be based

18 on the justifiable reliance on a misstatement here

19 because that's the time when plaintiff himself alleges

20 that the truth was disclosed.

21            THE COURT:  But what about Shi's affirmative

22 misrepresentations after the Seeking Alpha report?  Why

23 couldn't he justifiably rely on that?

24            MR. MALONEY:  He hasn't alleged that.  He's

25 alleged, again, a laundry list.  And he's failed to

```
1                        PROCEEDING              13
2    connect his purchases to an identifiable statement.  And
3    that fails the standard of Rule 8.
4              And then just to make a record here -- I
5    apologize -- but I have the Second Amended Complaint in
6    front of me, and my Paragraph 120 does not read as
7    plaintiff's counsel read it.  Paragraph 120 here talks
8    about fraud on the market.  I'm sure that's just a typo
9    and there's another paragraph that counsel is referring
10   to.
11             And then I know there are references to
12   judicial admissions.  I reject any judicial admissions.
13             MS. BAHCALL:  Okay, can I quickly respond?
14             THE COURT:  Sure.
15             MS. BAHCALL:  So, first of all, in terms of --
16   and, again, I will try to find the Second Amended
17   Complaint -- but the judicial admissions, what I'm
18   talking about here is that in the argument he admitted
19   that by Paragraph 21 means the plaintiff's saying I
20   looked at the SEC filings, I looked at the press
21   releases, etc.
22             He also said that the Complaint sets out --
23   this is transcript at 63 -- "in an organized fashion
24   misrepresentations and omissions he believed to occur."
25   And he said again where plaintiff's saying that he'd
```

```
 1                          PROCEEDING               14
 2    read these things and decided to invest.  So he
 3    understood it.  And that's what the pleading
 4    requirements are about.
 5              In terms of connecting this list to his
 6    purchases, etc., I think, as we explained, I mean the
 7    overall admission here that was not cleared up till we
 8    filed, which is why the judge allowed and agreed that
 9    all the purchases after March 2017 were allowed even
10    though, you know, we've heard that some of it came out,
11    is because we relied on what was in the public, which
12    was basically that it was an arm's length transaction.
13    We didn't know she was on both sides; we didn't know she
14    wasn't going to pay back the money, etc.  That is
15    material; it's an omission whether or not, you know,
16    justifiable reliance, as the Court found and you found
17    is an issue of fact.  But that was out there.  That's
18    what we relied on, that omission.
19              And --
20              THE COURT:  Can I just ask you:  Isn't that
21    what the -- the fact that she was on both sides of the
22    transaction and it wasn't arm's length, isn't that what
23    Seeking Alpha revealed in February of 2018?
24              MS. BAHCALL:  But then -- I may have my -- but
25    then what happened is the company put out a statement
```

1                          PROCEEDING                    15

2    Shi again -- and we believe (indiscernible).

3            THE COURT:  But then that's no longer -- why is

4    that no longer -- that's no longer reliance on an

5    omission; it's reliance on a direct misstatement by the

6    company.

7            MS. BAHCALL:  You could put it either way.  The

8    omission didn't get cleared up or it is another

9    statement, and we said we relied on it.

10           THE COURT:  But this -- and this is where I'd

11   like to be more specific, because as I read the

12   Complaint -- and, you know, I understood whatever

13   arguments counsel might have made at the last hearing we

14   had on the motion to dismiss -- I mean, you still need

15   to plead under Rule 9, especially for a fraud claim

16   there's a heightened pleading standard, so it still

17   needs to be contained within the four corners of the

18   Complaint.  And so what I'm focused on is when you say

19   that you pled reliance, other than these paragraphs that

20   we've talked about, I think 124, 119, Paragraph 2, and

21   potentially this might be misnumbered 120, those all

22   talk about reliance generally in terms of the statement

23   "we directly relied."  But there's no concrete factual

24   allegations to support that statement.  So he doesn't go

25   on to say, "I read the statement from Shi; it said this

1                              PROCEEDING                    16

2    transaction was actually arm's length, and I relied on

3    that in making my purchase on June 2018."  There's

4    nothing like that in the Complaint.

5              MS. BAHCALL:  No, it doesn't tie -- you're

6    right -- specific purchases other than saying we

7    purchased all of these.  He was buying over time based

8    on the information out there.  He didn't -- he claims

9    that based on the information out there, which was the

10   omission which remained and then the, as you said,

11   whether you called it "misrep" or "omission," when Shi

12   then went and tried to claim that Seeking Alpha was

13   wrong, that that was the information that was out there,

14   that he bought on it.  But he was buying based on the

15   information that was out there, which was basically that

16   it was -- the transaction was arm's length, not that it

17   never was disclosed by Shi that he was on both sides.

18   So we don't tie it to specific purchases, you're

19   correct.  What we do say is there was a material misrep

20   -- I mean a material omission out there, which the Court

21   found -- you did.  And we bought securities over time

22   based on that, all the while it wasn't corrected.  So

23   they all fall within that period.  And that is what, you

24   know, we allege.

25              And because it is an omission, it's hard to

 1
 2    allege ae lot more specifics.  We allege that -- and he
 3    understood, we reviewed these things, we understood
 4    this, and we bought.
 5              MR. MALONEY:  If I could --
 6              MS. BAHCALL:  Or we held.  I mean, that's
 7    another thing.  Common law fraud, unlike the securities
 8    laws -- and we do allege a holding claim, too -- but the
 9    fact is we bought and held our shares believing the
10    information that was out there.
11              THE COURT:  Mr. Maloney, I'm going to let you
12    interject -- I just wanted to ask, because you had said
13    it's an omission, it's hard to allege more, and I guess
14    it's a two-part question, but is there any state law,
15    New York state law case that you can point me to or
16    federal case interpreting New York state law on this
17    common law fraud claim that would say that's enough?
18    Because -- and the reason I ask -- and then maybe this
19    is the second part of my question -- I think the parties
20    cite *Towne v. Kingsley*, which is also a common law fraud
21    claim also based on an omission.  I believe it was
22    either the Third Department or it was one of the
23    appellate divisions.  And that case seems particularly
24    helpful -- yes, it's a Third Department case -- I'm
25    sorry -- particularly helpful because in the context of

1
2   the omission there, the Court found that the plaintiff

3   had -- and I understand that was after trial, but it was

4   helpful to see what the Court would rely on for purposes

5   of showing direct reliance in an omission case, right.

6   And there the Court points to all these things that the

7   plaintiff did on the assumption that this property

8   hadn't been transferred and sold without his knowledge.

9           And I read that case as saying like these are

10  the things you could allege to show direct reliance on

11  the failure to disclose a material fact.  But I don't --

12  and I'm happy to have you distinguish *Towne* or the like,

13  but there's none of those allegations here or similar

14  allegations.

15          MS. BAHCALL:  See, now, we think there is,

16  which is, I think, what we argued in our briefing.

17  These --

18          THE COURT:  And what are those allegations?

19          MS. BAHCALL:  So, in *Towne* what they say and

20  other New York cases dictate, the element of justifiable

21  reliance is linked to whether the plaintiff has the

22  means available to know by the exercise of ordinary

23  intelligence the truth or real quality of the omission

24  but failed to make this use.  So -- and I think she

25  attempted to distinguish *Towne* because it's, you know,

```
 1                       PROCEEDING              19
 2    based on the argument that there was no duty to
 3    disclose, which the Court found.  But we did say and we
 4    did allege that it was material the Court found it; that
 5    it was Shi on both sides, that we read everything and we
 6    didn't know that Shi was on the other side.  And that
 7    was in --
 8              THE COURT:  Why didn't the issue --
 9              MS. BAHCALL:  -- Shi's possession to know that.
10              THE COURT:  Right.  And I don't dispute that.
11    But why doesn't that go to whether there's -- so, as I
12    read New York state law on this, you both in an omission
13    case -- right?
14              MS. BAHCALL:  Yes.
15              THE COURT:  An element of a common law fraud
16    claim is you have to plead not only direct reliance but
17    you have to plead a duty when we're talking about an
18    omission.  So why isn't the Court's statement about
19    whether they had -- whether the plaintiff had the means
20    available to know by the exercise of ordinary
21    intelligence the truth or the real quality of the
22    subject of the omission but fails to make use of those
23    means, why is that not really the Court talking about
24    the duty to disclose, which itself is like almost a
25    separate or added element when you're talking about the
```

1

2  common law fraud claim in the context of an omission?

3         MS. BAHCALL:  And I agree with you.  And I do

4  think the Court found that there was a duty to disclose

5  a related-party transaction.

6         THE COURT:  But if you agree with me, then, the

7  Court goes on after that and talks about, "Here the jury

8  was provided extensive correspondence between the

9  parties, including letters from defendant t plaintiff

10  expressing defendant's interest in the subject property

11  and a subsequent letter from plaintiff to defendant

12  wherein plaintiff indicated that he was unwilling to

13  transfer ownership of the subject property," this, of

14  course, plaintiff thinking he still had ownership of the

15  subject property.  The jury also heard testimony from

16  plaintiff that defendant never asserted that he was the

17  sole owner of the subject property.  Plaintiff averred

18  that he did not think that defendant could transfer

19  title of the property."

20         And then you also had a letter approximately 10

21  months after defendant executed the deed transferring

22  the subject property in which plaintiff suggested that

23  the parties sell the subject property and rent space to

24  defendant when he continued to practice" -- these are

25  all things that they introduced as evidence showing

1

2  plaintiff's state of mind that showed his reliance on

3  the fact that he thought he still owned the subject

4  property, which was the omission, the fact that he

5  didn't actually own it because defendant had sold it --

6          MS. BAHCALL:  Right.

7          THE COURT:  But this is all separate from the

8  duty to disclose.  This is all things that he pointed to

9  that concretely showed direct reliance on the omission.

10  And so that's what I was asking, like why does this case

11  help you?  Because it reads to me as if like the Court

12  is saying you must show both a duty to disclose because

13  we're talking about an omission and not a misstatement;

14  and, in addition, you have to show direct reliance even

15  in an omission case with actual factual allegations that

16  support that.

17          MS. BAHCALL:  See, how I read it -- and then,

18  obviously, you know, I don't mean to sort of quibble,

19  but at the pleading stage -- and, again, that was at --

20          THE COURT:  At the trial.

21          MS. BAHCALL:  -- trial.  And the question I

22  understood at trial was whether it was the justifiable

23  reliance element as fraud is not satisfied where the

24  plaintiff has the means available to know by the

25  exercise of ordinary intelligence the truth or the real

 1
 2  quality of the subject of the omission.  And that's what
 3  the proof went to later on.
 4          THE COURT:  Well, doesn't that go -- so it's
 5  justifiable reliance.  So doesn't the fact he relied,
 6  and then was it justifiable.  And the fact that he
 7  couldn't have otherwise gotten the information on his
 8  own because it was knowledge exclusively within the
 9  defendant's possession, that goes to whether it was
10  justifiable.  But he still had allegations that
11  supported reliance.
12          MS. BAHCALL:  Right.  The way I see it is the
13  reliance -- and, again, this is where, you know,
14  although they haven't -- and I was prepared to actually,
15  before your introduction, talk about I do think the
16  concept of Affiliated Ute, although not the --
17          THE COURT:  I mean, I'm happy to go down that
18  road, but I will say --
19          MS. BAHCALL:  I know.  I know.  But my point is
20  it's not that far off in an omissions case like this
21  that at this point they sort of come together because,
22  in order to plead reliance in an omission case like this
23  with *Towne*, we have to plead that there was an omission,
24  that there was a duty to disclose, and we have to say we
25  justifiably relied on sort of the quality of the

1                              PROCEEDING                    23

2    statement and the, you know, the fact in this case, I

3    guess the omission which sort of took away from the

4    quality.  But when you then take the next step of

5    whether it was justifiable there is other information

6    out there, I believe that your Honor, and I think the

7    Court as well adopted -- and I'll find it -- is that's

8    an issue of fact.  And --

9              THE COURT:  Yes.  And I don't dispute that.

10             MS. BAHCALL:  -- so I think that goes -- those

11   sort of facts we alleged reliance under this case, we

12   alleged that it was justifiable.  I mean, granted we say

13   it's justifiable because do we have a debate in fact

14   about why it's justifiable?  That's an issue of fact for

15   later on, which is what happened here.  Clearly, it got

16   past a motion to dismiss.  And then it's at trial.  So

17   that's how I think this case absolutely helps us because

18   I think we've shown there was a duty to disclose.  I

19   think it was in their possession.  You know, whether or

20   not they can show facts later on or something to

21   suggest, you know, it wasn't justifiable because we

22   could have found out, too, or something, I think that's

23   for down the road.

24             That being said, this is the first time -- and,

25   again, it was exception and negligent misrep that the

```
 1
 2    issue of whether or not we have given enough facts to
 3    explain our justifiable reliance or reliance in the case
 4    of omission and common law fraud in New York law, I
 5    think we did say in our brief we would appreciate the
 6    opportunity to amend.  And I know, and we're going to
 7    hear from him that, yes, we're on the Second Amended
 8    Complaint.  However, when you go through it, the first
 9    Complaint, we were asked to amend to give purchase
10    dates.  So we amended specifically for purchase dates;
11    otherwise, it was exactly the same.  Issue not raised.
12    So that was the First Amended Complaint.  The Second
13    Amended Complaint, the magistrate asked that
14    counsel -- and not that it matters, but it was prior
15    counsel to us -- counsel distinguish between the direct
16    and the derivative claims.  So that's how we got to the
17    Second Amended Complaint.  This issue is new; and if
18    your Honor would like additional facts on this issue, we
19    would request the opportunity to amend the common law
20    fraud claim to address them.
21              THE COURT:  Well, just so there's no ambiguity,
22    it's not so much what I want.  I guess, you know, given
23    the cases I've indicated, why I thought *Towne* was
24    somewhat distinguishable -- and I'm not trying to -- I
25    don't want to confuse the issue -- I'm not trying to
```

```
 1                        PROCEEDING                25
 2  reargue justifiable reliance, because as I said in that
 3  prior R & R, whether it's justifiable question of fact,
 4  I think there's -- it's pretty well established it
 5  doesn't get thrown out on a motion to dismiss there --
 6  but I'm talking about the direct reliance element, which
 7  I think is different from whether the reliance was
 8  justifiable.  And that's where I see Towne as -- and
 9  granted, it's after a jury trial, but I think it gives
10  you a flavor of potentially what you would have had to
11  have alleged to say he directly relied on the omission.
12  So something -- again, because we're talking about the
13  transaction -- it's not the whole 33 transactions; it's
14  starting with the January 2018.  And really, if it's an
15  omission, you're really talking about just the one
16  purchase, right?  Because in February 2018, arguably
17  everything gets disclosed; and then after that, you're
18  just talking about misrepresentations or, I'm sorry,
19  reliance on Shi's misrepresentation.  But, in either
20  case, Mr. Maloney, I didn't give you a chance to chime
21  in.
22           MR. MALONEY:  That's okay.  You can finish.
23  I'm making notes.
24           THE COURT:  No, no, go ahead.
25           MR. MALONEY:  Okay.  Thank you, your Honor.  So
```

1                              PROCEEDING                    26

2      I guess the first place to start here is with

3      plaintiff's argument that Mr. Baliga was relying on

4      everything that was in the public.  That is the fraud on

5      the market theory of reliance, which is a presumption

6      permitted under the securities laws but not permissible

7      under the New York common law.  Saying that he is

8      relying on everything in the public is saying the same

9      thing as fraud on the market, just not using the words.

10     And so, you know, we reject that argument for that

11     reason.

12             New York law requires direct reliance, as we've

13     established.  And the cases we've cited do not make a

14     distinction at the pleading stage between a claim that's

15     based on an affirmative misstatement or a claim of

16     omission, for example, the *Doubleline* case, the

17     *International Fund Management* case that we cite.  Those

18     cases both involved allegations of fraudulent

19     misstatements and fraudulent omissions.  And there's no

20     distinction about the standard of reliance, direct

21     reliance required under New York law for those claims.

22     So we do submit that plaintiff must link each

23     misstatement/omission with an identifiable statement to

24     meet the standard under New York law and Rule 8.

25             The *Townes* case we do believe is

1                          PROCEEDING                    27

2    distinguishable for substantially the same reasons that

3    your Honor has mentioned.  The plaintiff in that case

4    established at trial very specific facts demonstrating

5    his direct reliance.  And it's not for this Court to

6    assume that he, you know, survived a motion to dismiss

7    in that case based on allegations of general reliance

8    because that's not in the decision.  For all we know,

9    the plaintiff in that case alleged all the specific acts

10   in his Complaint in that case and survived a motion to

11   dismiss for that reason.

12          Again, this all leads back to that standard

13   that we see in *Doubleline*, *In Re Fire Festival*, where

14   the plaintiff must link his purchases, his actions to

15   identifiable misstatements and omissions.  He had not

16   done that here.  He has, as your Honor noted earlier,

17   asserted a laundry list of statements and then alleged

18   general reliance on all of that information.

19          We recognize that justifiable reliance is an

20   issue of fact.  We do think that in certain cases it can

21   be ruled on on a motion to dismiss.  We do think this is

22   one of those cases.  And we do think actually

23   plaintiff's allegations support that concept here.

24   Right?  He's implicitly alleging that he's relying on

25   all the information in the public, which includes that

1

2   February 2018 disclosure.

3           We also object to plaintiff's request for an

4   opportunity to amend here.  There's been two

5   opportunities to amend.  The first amendment was based

6   on the lack of specificity, which is why plaintiff had

7   to allege the transaction dates.  Obviously, those

8   transaction dates relates to the securities claim.  They

9   also relate to the common law fraud claim.  Plaintiff

10  had an adequate opportunity to allege direct reliance in

11  that first amendment and elected not to.  Obviously, the

12  record shows the second amendment was primarily related

13  to the question of direct versus derivative claims.

14  It's, nonetheless, an opportunity to amend, and

15  plaintiff declined to provide more allegations of direct

16  reliance.  We don't think any further opportunities to

17  amend are appropriate here.

18          It is also worth noting that this case was

19  filed in 2018.  It's now 2013 -- 2023, and, you know,

20  the pleading should be resolved at some point, and we

21  don't think an opportunity to amend here is appropriate.

22          THE COURT:  I've pretty much asked all my

23  questions.  If there's anything either side wants to

24  add?

25          MR. MALONEY:  Your Honor, I would like to just

PROCEEDING                          29

1

2    address one minor point.  In the briefing, plaintiffs

3    complained that we did also touch on the issue of loss

4    causation.  In our reading of the cases, the Courts do

5    consider, they tend to consider reliance on common law

6    fraud claims and loss causation together.  We think

7    that's because the analyses overlap; you really can't

8    have one without the other.  Reliance is a link in the

9    chain of causation.  So in our reading of the cases,

10   they do tend to consider them together.  We would submit

11   that the findings as to loss causation on the securities

12   claims do not directly translate to the common law fraud

13   claim because loss causation on securities necessarily

14   relies on the presumptions of reliance.  And so, on the

15   securities claims the plaintiff need only show that, you

16   know, the fraud resulted in an economic loss; whereas,

17   in a common law claim a plaintiff must show a complete

18   chain of causation, which includes many of the elements

19   that were talked about in the *Townes* case where the

20   plaintiff had these interactions with the defendant and

21   relied on them and all those things were a link in the

22   chain of causation.  I do understand that you want to

23   limit discussion, but I did want to point that out.  And

24   I'll refer to our papers.

25          THE COURT:  Well, let me ask you if -- it

 1

 2    sounds like what you're saying is it's really almost the

 3    -- it's the flip of the same coin -- whatever the

 4    analogy is -- it's the same argument, right?  Like, if

 5    he hasn't pled direct reliance, he's necessarily not

 6    going to be able to plead proximate causation.

 7             MR. MALONEY:  That's how we see it, your Honor,

 8    yes.  The way we see loss causation is he must first

 9    plead facts showing that he read a statement, relied on

10    it in making a purchase and then the purchase resulted

11    in an economic loss.  And that's how they overlap.

12             THE COURT:  Right.  And I think as I've

13    indicated through my questioning, I agree that under

14    state common law fraud, he has to plead direct reliance.

15    We searched the case law extensively, and there just is

16    no state case applying Affiliated Ute.  And there's SDNY

17    cases that say it doesn't apply.  But I wonder if we

18    don't -- you know, I guess depending on the outcome of

19    the reliance, proximate causation might not even have to

20    be reached, really, because it is really -- like, if

21    there's no direct reliance, it's -- by extension, you're

22    not going to get causation.

23             MR. MALONEY:  We agree -- we agree with that

24    analysis.

25             THE COURT:  I'm happy to --

```
 1                          PROCEEDING                    31
 2              MS. BAHCALL:  All right, I would just like to
 3  say, one, I just want to correct, since we're correcting
 4  statements that were made.  In the reply Shi represented
 5  that the judge had already determined that Baliga's
 6  allegations of reliance were sufficient only under the
 7  Affiliated Ute theory of reliance.  And the judge didn't
 8  find that.  The judge just recognized and said that --
 9  your Honor found that defendants made material omissions
10  but -- that Baliga relied upon in connection with
11  investment decisions but only under -- you only reached
12  the Affiliated Ute issue.  He didn't make a
13  determination.  So I think it's an open question for the
14  judge, where it was suggested it was closed.
15              And I'd like to close with again -- and I am
16  going to cite a few New York cases -- that Mr. Baliga's
17  allegations are more than sufficient to allow a reliance
18  for a claim under New York common law.  New York Courts
19  have held -- and I'm citing again *Towne*, but there are
20  other cases, as well -- that in the context of claims
21  for omissions, the elements of justifiable reliance is
22  inextricably linked to whether the plaintiff has the
23  means available to know by the exercise of ordinary
24  intelligence the truth or the real quality of the
25  subject of the omissions but fails to make use of it.
```

1                          PROCEEDING                    32

2   And the Court found that you were correct, that the

3   error -- the crux of the alleged omissions in the

4   statement of claims was the failure of LKM to disclose

5   Shi's financial interests in the Tongfang transaction or

6   the lack of any clear or direct affiliation between

7   Tongfang, SPC and Tsinghua Tongfang.

8            And then the Court went on to hold that

9   defendants had a duty to disclose regarding the

10  transaction.  And the Court also found that Shi's

11  statements -- of omissions regarding the ability to pay

12  were also actionable.  So we believe on New York law we

13  have alleged enough.  However, if more detail is

14  required on direct reliance, we are prepared to link it

15  up.  And we will say that we did not have the ability to

16  know based on the information out there that Shi was on

17  both sides.

18           THE COURT:  But so this is, I think, maybe

19  where -- and you should point me to any case you want me

20  to look at that you think is helpful here.  And we've

21  already discussed *Towne* and why I think it's

22  distinguishable --

23           MS. BAHCALL:  Ad nauseam, I know.

24           THE COURT:  No, no, it's all right.  But, as I

25  read the state cases and the federal cases that look at

the state common law fraud, you know, you have the

elements for a common law fraud claim.  And if this were

a misrepresentation case, you wouldn't even be looking

at whether there was a duty to disclose, right?  For a

common law fraud you would just be looking -- so to

state a common law fraud claim in New York, was there a

misrepresentation or material omission made for the

purpose of inducing the other party to rely upon it,

justifiable reliance of the other party on the

misrepresentation or material omission, and injury.

Those are your basic elements, right?

        MS. BAHCALL:  Correct.

        THE COURT:  If we don't have an omission, we

don't even look at a duty to disclose.  You don't

disagree with me there?

        MS. BAHCALL:  No.

        THE COURT:  Okay.  So then let's talk about

what happens to these elements in the context of an

omission case.  And that's where I think the case law is

clear that in the omission case you have to have, in

addition to these four, a duty to disclose.  You don't

disagree, right?

        MS. BAHCALL:  No.

        THE COURT:  Okay.  So then -- and then,

1
2  obviously, there's like the elements that you look at

3  for whether there's a duty or not.  And we can argue in

4  this case, you know, it seems Shi was a chairman, board

5  member.  Arguably, there's a duty.  There might be an

6  issue about whether you've alleged circumstances that

7  establish a duty for Link Motion.  But at least as to

8  Shi, I think there might be enough to say there's a

9  duty, right?

10         MS. BAHCALL:  Right.  The Court found there was

11  a duty --

12         THE COURT:  Right.

13         MS. BAHCALL:  -- because the securities laws

14  require you to disclose related-party transactions when

15  you disclose a transaction.

16         THE COURT:  Right.  So -- but now -- but we

17  still have -- again, going back to the fundamental

18  elements of a common law fraud claim, you still have to

19  show justifiable reliance of the other party on the, in

20  this case, omission, plus a duty to disclose.  And I

21  think *Towne* makes clear that whether we have a duty to

22  disclose and justifiable reliance are separate and it's

23  not enough to just say there's a duty to disclose and

24  that by extension establishes your factual allegations

25  for justifiable reliance.  But I'll point you also

1                          PROCEEDING                    35

2   there's an SDNY case that looks at the common law fraud

3   claim.  It's 904 Tower Apartment, which I think you said

4   --

5          MS. BAHCALL:  Yes, I have that, too.

6          THE COURT:  Yes, and so, again, this is another

7   instance where I think if we are examining with the

8   understanding that we've got the four elements for a

9   reliance claim plus duty to disclose in the context of

10  an omission, you've got this case where there's

11  allegations that go directly to justifiable reliance

12  that are separate from the duty to disclose.  And those

13  are the fact that the plaintiff stopped looking for

14  alternative living arrangements, performed their other

15  obligations under the purchase agreement, hired a

16  consultant to help perform pre-closing inspection.  This

17  was the -- they were trying to purchase an apartment and

18  there was -- it was a material omission case.  And

19  there's allegations that the plaintiff took specific

20  actions, being stopped looking for alternative living

21  arrangements, hired this consultant, in reliance on the

22  fact the defendants had not disclosed the existence of

23  these financing agreements, the financing and loans that

24  would affect the value of the apartment.  So they

25  thought they were purchasing apartments with a certain

1
2   value; defendants didn't disclose a material fact, which
3   is these financing arrangements that would have like
4   changed the value of the property they were purchasing.
5   And thinking that the property was still valued at X,
6   they took these actions, namely, they didn't look for
7   other living arrangements, they hired a consultant.
8   They were going forward with the act of purchasing the
9   property.
10          And that's what -- when you say you would
11  amend -- but that's different than whether there's a
12  duty to disclose.  Those are specific actions --
13          MS. BAHCALL:  No, agree.
14          THE COURT:  Right.  So when you were talking
15  just now, you were saying in the -- you've alleged that
16  Mr. Baliga couldn't have known, he didn't have this
17  information, it was -- there's no question that, you
18  know, those allegations all go to whether there's a duty
19  to disclose.  But are you going to be able to plead
20  allegations that show Mr. Baliga relied on the fact that
21  he didn't have the omission -- that he didn't have this
22  information, apart from the facts that show there was a
23  duty?  Does that make sense?
24          MS. BAHCALL:  No, it makes absolute sense.  And
25  I think we have and we will, we could give more detail.

PROCEEDING                        37

1
2   But what I was going to is the tests they seem to use in

3   those cases, the two cases we talked about, the New York

4   law cases, is an omissions case.  What we have to be

5   able to allege -- and I believe we did, but we would

6   certainly allege it with more specificity if given the

7   chance, is that -- and this goes to justifiable reliance

8   -- that we didn't have -- it was exclusively in their

9   control.  They needed to disclose it because we couldn't

10  know.

11          THE COURT:  And you've already alleged all

12  that.  And I think --

13          MS. BAHCALL:  And that's what we're saying is

14  the main thing is required.

15          THE COURT:  But that -- okay, so let's -- and,

16  you know, I think those allegations for his inability to

17  find out are there.  And as I was trying to indicate, I

18  think they go to whether there was a duty to disclose in

19  the first instance.  I'm wondering what specifically you

20  can point to, actions that Baliga took that would show

21  he relied on the fact that he thought this Tongfang

22  transaction was arm's length, was good for the company,

23  was not some way to like take FL Mobil and ShowSelf and

24  like squander the value for the company, etc., whatever

25  you want to describe the transaction as.

2          MS. BAHCALL:  I got it.  So, respectfully, I

3 read that as not whether there's a duty.  I think the

4 duty arises as law, etc.  It's whether or not we've pled

5 justifiable reliance, that we relied because we couldn't

6 know and they knew.  The duty comes, as the judge found,

7 out of the law and also if you give a half-truth, you

8 have to tell the rest of the truth.  Right?  So that's

9 where that comes.

10          In terms of whether we've relied -- you know,

11 in this case they said, well, what he did in reliance.

12 Well, what we've alleged Mr. Baliga did in reliance.

13 And, again, we could be more specific about it.  But

14 clearly, you know, she understood from our pleadings too

15 what we allege is he bought and held shares based on the

16 report that they were going to do an arm's length sale

17 and it was good for the company and etc., etc., and that

18 they were going to pay the money.  We bought shares, we

19 held shares, so we didn't sell shares --

20          THE COURT:  Well, you only bought -- if we're

21 just talking about you bought shares in reliance on the

22 Tongfang transaction being solid, you only have the one,

23 the January 2018, right?

24          MS. BAHCALL:  Well, see, I would say you could

25 do it either as a misrepresentation or omission.  We

1
2  continue to believe it and we will allege it with more
3  specificity because what we would be able to show is
4  that Mr. Baliga in fact had meetings with Shi's
5  representatives, when this information started to come
6  out, where he was told, "No, it's not true."  And so he
7  continued to believe that it was arm's length based on
8  the information he was given.  And then they continued
9  to publicly defend, and privately they were sending out
10 emails to investors defending it.  So he continued to
11 believe it was arm's length, so he continued to do his
12 regular activity of buying shares over time.  And even,
13 by the way, you buy shares at the price.  So the fact
14 that you may buy it after some of the information is out
15 doesn't mean you didn't rely; it meant that you wouldn't
16 have ever paid that price had you known that it was on
17 both sides.
18         So we do believe we've alleged he did take
19 actions based on it.  He bought shares, he continued to
20 hold share, which unlike the securities laws, under
21 common law fraud we've alleged holding is an action,
22 too.  So I think it goes beyond the one purchase; it
23 goes throughout that time period, whether you're calling
24 it an omission or misrepresentation.  That's what we
25 did.  I mean, it's not like it's super-complicated where

```
 1                            PROCEEDING                   40

 2   in some things you kept changing your position and doing

 3   other things.  We bought shares, we continued to hold

 4   shares, we didn't sell shares, we bought more shares, we

 5   --

 6            THE COURT:  Do you have any statements in the

 7   Complaint that say that, for instance, "I continued to

 8   hold or didn't sell," that link -- specifically,

 9   Mr. Baliga continued to hold the shares or didn't sell

10   shares because he believed Shi's statement that this was

11   an arm's-length transaction?

12            MS. BAHCALL:  In general sense, yes.  If you're

13   asking with -- you're right; we don't say with respect

14   to this purchase we bought it, continuing to believe

15   this.  We say over this time period he bought and

16   continued to hold share believing what was out there,

17   that, you know, it was an arm's-length transaction.

18   That is what we say.  We do not link up each one and

19   continue to say it each time.

20            THE COURT:  And why is that sufficient to meet

21   the specificity requirement for a fraud claim?

22            MS. BAHCALL:  Well, I would say, and

23   particularly in this case, because we listed that these

24   other things he -- it didn't really change that much.

25   The information was continuing -- was out there in terms
```

```
 1                         PROCEEDING                    41
 2   of it being arm's length and not corrected or defended;
 3   that saying it all together, I think is probably
 4   adequate because, clearly, the purpose of Rule 9(b)
 5   where it says you have to do it with specificity is so
 6   that the defendant knows what he's being charged with.
 7   And clearly the defendant here knows it.  That being
 8   said, we can separate it out by transaction.  We're
 9   going to say a lot of the same things because it
10   remained the same throughout the time period.  He
11   continued to believe, based on the information out there
12   when he bought these shares, that it was an arm's-length
13   transaction.  He continued to believe it.  He continued
14   when he heard this, this came out, he heard this from
15   Shi.  So he continued to believe it.  But we are
16   prepared to provide that detail.
17             THE COURT:  And --
18             MS. BAHCALL:  And nothing will be surprise to
19   him.  So there's no prejudice.  He understands the case.
20             THE COURT:  And you indicated you had other
21   communications beyond just the Shi public statement;
22   there were emails to shareholders?
23             MS. BAHCALL:  That we can show a direct
24   reliance on, yes.
25             THE COURT:  Mr. Maloney, is there anything you
```

1                           PROCEEDING                    42

2  want to add?

3           MR. MALONEY:  Yes.  Yes, your Honor.  On the

4  issue of the duty to disclose in an omissions case, I

5  think, you know, this duty issue is obscuring the real

6  question on the reliance element of the common law fraud

7  claim.  You know, like plaintiff's counsel said, you

8  know, the real issue here is when you state the rule is

9  when you state a half-truth, you must tell the full

10 truth.  That's really what's going on here.  And in this

11 particular case, plaintiff has alleged a laundry list of

12 what they claim to be half-truths because, you know,

13 this information that they allege was omitted from each

14 of those laundry lists of statements.  And that's the

15 fundamental flaw with their common law fraud

16 allegations.  They  must still link up their actions of

17 reliance with the particular half-truths that they're

18 alleging in the Complaint.  And they have not done that

19 here.  That's not only a Rule 9 deficiency, it's a Rule

20 8 deficiency under *Doubleline* and *In Re Fire Festival*.

21           I'm not aware what specifically plaintiff is

22 referring to about emails to investors, but, you know,

23 emails to the investors are not all that different from,

24 you know, public press releases.  So that's simply

25 another example of what plaintiff is alleging to be out

PROCEEDING                                43

there in the public that he relied on generally and not

identifiably.  So that also would not satisfy the

requirements of Rule 8 as taught in the *Doubleline* and

*In Re Fire Festival* cases.

THE COURT:  So, wait, if he had specifically

alleged -- so prior to his June 2018 purchases -- this

is after Seeking Alpha comes out and after Shi makes his

first, his statement defending the Tongfang transaction,

if he says, you know, I read Shi's statement and then

had other communications from Shi to investors

explaining that the Seeking Alpha report for whatever

reason doesn't have the transaction adequately

described, I believed the company and still believe that

the Tongfang transaction was arm's length and then he

continues to buy, you don't think that's enough for

reliance?

MR. MALONEY:  No.  No, your Honor.  That --

THE COURT:  And why is that?

MR. MALONEY:  -- goes back -- I'm sorry.

THE COURT:  No, no, why is that?

MR. MALONEY:  That goes back to this

essentially fraud on the market theory.  Right?  This is

a reliance on all the information in the market in

general.  Right?  He's talking about the February 2018

```
 1                          PROCEEDING                    44
 2  Seeking Alpha disclosure, he's talking about the prior
 3  disclosures, and he's talking about Dr. Shi's
 4  disclosure, all of them together, in general.
 5           THE COURT:  But he's tying it -- he's -- he's
 6  an investor, he's looking at the publicly released
 7  statements of the company, and he's tying it to specific
 8  actions he took -- because there are specific
 9  transactions.
10           MR. MALONEY:  Well, first, to be clear, he
11  hasn't alleged that in the Complaint.
12           THE COURT:  No, no.  Yes, this is --
13           MR. MALONEY:  Right?  This is all hypothetical?
14           THE COURT:  -- a hypothetical.
15           MR. MALONEY:  Right.  But at the end of the
16  day, you know, he still has knowledge of that February
17  2018 disclosure.
18           THE COURT:  So what does he need, then, in
19  your -- in this hypothetical, what does he need to prove
20  -- what does he need to allege direct reliance?
21           MR. MALONEY:  To allege direct reliance in this
22  case, he would have to link each purchase with a
23  particular half-truth, as plaintiff's counsel describes
24  it, alleged in the Complaint.
25           THE COURT:  So why isn't that linking up the
```

```
 1                         PROCEEDING                    45
 2   June 29, 2018, purchase with the half-truths or the
 3   misrepresentations from Shi?
 4         MR. MALONEY:  Because he still has knowledge of
 5   those prior disclosures.  He can't -- you know, this
 6   does overlap with justifiable reliance in a way, right?
 7   He has knowledge of the February 2018 disclosure.  Then
 8   he reads these other statements.  Right?  And there were
 9   other public disclosures that were relevant, as well,
10   also from Seeking Alpha that, you know, tend to go in
11   Shi's favor.  So --
12         THE COURT:  But why doesn't that go to whether
13   his reliance was justifiable, which again I think, given
14   even this hypothetical, it sounds like that's a factual
15   issue?  But that, to me, would be different whether he's
16   -- different from him having said, "I heard these
17   statements from Seeking Alpha and Shi.  I believed Shi.
18   And because I believed that he was telling me the truth,
19   I bought these shares"; why is that not sufficient for
20   direct reliance?  It may not be justifiable, and that
21   might be an issue you then litigate.
22         MR. MALONEY:  The other -- so I think probably
23   the best way to illustrate this is to go back to In Re
24   Fire Festival.  The Court there, you know, talked about
25   the who, what, where, when and how.  Right?  And there's
```

```
 1                          PROCEEDING                46

 2  a time element here.  None of plaintiff's purchases line

 3  up with these disclosures.  He can't link the purchases

 4  to the disclosures.  He wasn't considering the

 5  disclosures when he made the purchases.  We know from

 6  plaintiff's briefing that what was really going on is he

 7  would just buy when he had cash available.  He wasn't

 8  considering the disclosures that he received from these

 9  various sources alleged in the Complaint, thinking about

10  them and then deciding to make a purchase that evening.

11          THE COURT:  So you're basically saying there

12  has to be a tighter temporal connection --

13          MR. MALONEY:  Yes.

14          THE COURT:  -- between the -- and just remind

15  me when was Shi's misrepresentation -- or the alleged

16  misrepresentation?

17          MR. MALONEY:  One moment?

18          MS. BAHCALL:  March of 2017.

19          THE COURT:  Well, March 2017 is Tongfang.

20          MS. BAHCALL:  Oh, in 2018.

21          THE COURT:  March 2018?  So you're saying

22  between March 2018 and June 29th of 2018, there's too

23  big of a temporal gap?

24          MR. MALONEY:  Yes, your Honor, yes.

25          THE COURT:  Okay.  Is there anything else from
```

```
 1                     PROCEEDING                 47
 2  either side?
 3            MR. MALONEY:  I think I've said for everything
 4  I've hoped to say.  Thank you.
 5            MS. BAHCALL:  And I would only -- I would say
 6  the same.  The only thing I would say is to
 7  Mr. Maloney's points, one, I don't think there's
 8  anything in the law that says you have to buy within a
 9  week or a month.  The information is out there, it's not
10  corrected, he buys.  And in fact, he splits it up
11  because he -- he thinks it's still a good buy based on
12  the information out there.  I don't think that that
13  takes away.
14            And I think that direct reliance, the
15  information we would provide in the Amended Complaint,
16  that you have an email from Shi after this comes out
17  refuting it.  I think that is what direct reliance is,
18  where a lot of these fraud in the market and stuff are
19  to everybody.  This is to Baliga.  And I think that is
20  the quintessential direct communication he relied on,
21  etc.
22            THE COURT:  And on the temporal issue, you
23  think it would be sufficient even if the email was sent
24  several months before the purchase?
25            MS. BAHCALL:  Well, what I'm saying is the
```

1

2  email that I'm talking about is around the time -- after

3  the disclosure in Seeking Alpha, there was communication

4  saying, you know, showing him that it was in -- again

5  denying the allegations of seeking Alpha, saying it was

6  arm's length, etc.  And he truly believed it continued,

7  that it was arm's length.

8            THE COURT:  Well, this was super-helpful.  I

9  appreciate everyone taking their time.  And, you know, I

10 think we'll get a decision out relatively soon.  If

11 there's nothing else from either side?

12           MR. MALONEY:  No, your Honor.

13           MS. BAHCALL:  Thank you for the opportunity.

14           THE COURT:  Thank you so much.  Yes, no, thank

15 you so much.

16           (Whereupon the matter is adjourned.)

17

18

19

20

21

22

23

24

25

49

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, Baliga versus Link

Motion Inc., et al., Docket #18cv11642, was prepared

using PC-based transcription software and is a true and

accurate record of the proceedings.


Signature_____

                    Carole Ludwig

Date:  May 31, 2023