**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.) | 1:18-cv-11642-VM-VF |
| Plaintiff, | |
| -against- | |
| LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU, | |
| Defendants, | |
| -and- | |
| LINK MOTION INC. (F/K/A NQ MOBILE INC.), | |
| Nominal Defendant. | |

**RECEIVER'S MEMORANDUM OF LAW IN OPPOSITION TO ORDER TO SHOW CAUSE TO ENJOIN ROBERT W. SEIDEN AND FRANCIS "LILIN" GUO PENDING A FINAL DETERMINATION OF DR. SHI'S OBJECTIONS TO THE ACCOUNTING AND <u>DISCHARGE OF THE RECEIVER</u>**

Amiad Kushner
Xintong Zhang
SEIDEN LAW LLP
322 Eighth Avenue
Suite 1200
New York, New York 10001
(646) 766-1914

*Attorneys for the Court-Appointed Temporary Receiver Robert W. Seiden*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ...............................................Error! Bookmark not defined.

**RELEVANT BACKGROUND** ....................................................................................... 3

**LEGAL STANDARD** ....................................................................................... 5

**ARGUMENT** ....................................................................................... 5

    **I.  SHI HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS** ....................................................................................... 5

        A.  Shi's Request to Vacate the Court's Approval of the Note and Share Conversions is Time-Barred and Meritless .......................................................... 5

        B.  The Note Is Neither Usurious Nor a Fraudulent Transfer ............................... 9

    **II.  SHI FAILS TO SHOW IRREPARABLE HARM** ................................................. 13

**CONCLUSION** ....................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*,
   1999 WL 436462 (S.D.N.Y. June 24, 1999) ........................................................................... 7

*Adar Bays, LLC v. GeneSYS ID, Inc.*,
   37 N.Y.3d 320 (N.Y. Ct. App. 2021). ............................................................................... 9-11

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016) ................................................................................................ 13

*DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*,
   2023 WL 199196 (S.D.N.Y. Jan. 17, 2023) ......................................................................... 10

*Esposito v. New York*,
   698 F. App'x 624  (2d Cir. 2017). ......................................................................................... 6

*In re CIL Ltd.*,
   2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018) .......................................................... 13

*Giventer v. Arnow*,
   37 N.Y.2d 305 (N.Y. Ct. App. 1975) ................................................................................... 11

*Gleason v. Jandrucko*,
   860 F.2d 556 (2d Cir. 1988) .................................................................................................. 8

*Glob. Crossing Est. Representative v. Winnick*,
   2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) ....................................................................... 12

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
   2022 WL 2297768 (S.D.N.Y. June 27, 2022) ..................................................................... 10

*Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*,
   609 F.3d 122 (2d Cir. 2010) .................................................................................................. 6

*Jackson v. Kristal Cadillac Corp.*,
   1996 WL 148430 (E.D.N.Y. Mar. 20, 1996) ......................................................................... 6

*In re Joint E. & S. Dist. Asbestos Litig.*,
   774 F. Supp. 116 (S.D.N.Y. 1991) ........................................................................................ 7

*Jones v. Caputo*,
   2023 WL 2436039 (S.D.N.Y. Feb. 16, 2023) .................................................................... 6, 8

*Kotlicky v. U.S. Fidelity & Guar. Co*,
  817 F.2d 6 (2d Cir. 1987) .................................................................................................. 6

*LinkCo, Inc. v. Naoyuki Akikusa*,
  367 F. App'x 180 (2d Cir. 2010) ................................................................................... 7-8

*In re Med Diversified, Inc.*,
  334 B.R. 89 (Bankr. E.D.N.Y. 2005) ............................................................................. 11

*Metro. Taxicab Bd. of Trade v. City of New York*,
  615 F.3d 152 (2d Cir. 2010) ............................................................................................ 5

*Moore v. Consol. Edison Co. of New York*,
  409 F.3d 506 (2d Cir. 2005) .................................................................................... 13, 14

*Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.*,
  141 N.Y.S.3d 319 (N.Y. App. Div. 2021) ..................................................................... 10

*Rajamin v. Deutsche Bank Nat'l Tr. Co.*,
  757 F.3d 79 (2d Cir. 2014) ............................................................................................ 13

*In re Roco Corp.*,
  701 F.2d 978 (1st Cir.1978) ..................................................................................... 12-13

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*,
  374 F.3d 158 (2d Cir. 2004) ........................................................................................ 6, 7

*Streamlined Consultants, Inc. v. EBF Holdings*,
  2022 WL 4368114 (S.D.N.Y. Sept. 20, 2022) ............................................................... 10

*Stuyvesant v. Conway*,
  2023 WL 348469 (S.D.N.Y. Jan. 20, 2023) ..................................................................... 8

*Sussman v. Crawford*,
  488 F.3d 136 (2d Cir. 2007) ............................................................................................ 5

*Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs*,
  228 F.R.D. 125 (N.D.N.Y. 2005), *aff'd sub nom. Travelers Cas. & Sur. Co. v. Crow
  & Sutton Assocs., Inc.,* 172 F. App'x 382 (2d Cir. 2006) ............................................... 7

*United States v. Beggerly*,
  524 U.S. 38 (1998) ........................................................................................................... 8

*United States v. Mercedes*,
  179 F.R.D. 136 (S.D.N.Y. 1998) ..................................................................................... 7

*United States v. Potamkin Cadillac Corp.*,
    697 F.2d 491 (2d Cir. 1983) ............................................................................................... 6

*Vikas Goel & Rainforest Trading Ltd. v. Am. Digital Univ., Inc.*,
    2015 WL 5037002 (S.D.N.Y. Aug. 26, 2015), *vacated sub nom. Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016) ............................................................................................ 12

*Wisdom Import Sales Co., LLC v. Labatt Brewing Co. Ltd.*,
    339 F.3d 101 (2003) ........................................................................................................ 14


**Rules and Statutes**

Federal Rule of Civil Procedure 60 .................................................................................. 5, 6, 7, 8
New York General Obligations Law § 5-521. ........................................................................... 10
New York Penal Law § 190.40. ................................................................................................. 10

Receiver Robert W. Seiden ("Receiver"), the court-appointed temporary receiver of Link Motion, Inc. ("LKM" or the "Company") respectfully submits this memorandum of law (i) in response to the Court's May 26, 2023 Order (ECF. 425), (ii) in opposition to Defendant Vincent Wenyong Shi's ("Shi") motion by order to show cause (ECF 421, the "Brief" or "Br.") seeking to enjoin the Receiver, Francis "Lilin" Guo ("Guo"), and all persons acting on their behalf pending a final determination of Shi's objections to the Receiver's accounting and his discharge, and (iii) in opposition to Shi's supplemental letter request dated May 26, 2023 (ECF 423).

## PRELIMINARY STATEMENT

Shi's motion represents his fifth attempt to enjoin the extraordinary general meetings of LKM shareholders ("EGMs") that were authorized by this Court and the Cayman court. The Court should reject Shi's latest last-ditch effort to derail the EGMs and stave off his removal from the Board of Directors by impugning the Receiver's representations and actions before this Court. The Court should see Shi's filing for what it is—the continuation of a pattern of frivolous and vexatious motion practice designed to undermine the receivership and its asset recovery efforts.

Shi's motion is particularly egregious given the context in which he comes before the Court. The very reason that the Receiver was put in place by this Court is because of the evidence that Shi and his cronies had looted LKM—and left what was once a significant public company completely dark and without assets, cash, or any shot at recovery save the Receiver. To this day, Shi has never appeared under oath to face questioning regarding his misconduct, including for example his diversion of $89 million of LKM's funds to himself and his entities. ECF 239-1, at ¶¶ 8-9; *see also* ECF 161; *see also* ECF 173. Shi's latest attempt to block the EGMs is merely one more attempt to evade accountability for his actions.

As with his prior attempts to block the EGMs, Shi's motion is meritless. Shi fails to show a likelihood of success on the merits or that he would suffer any irreparable harm absent injunctive relief.

Preliminarily, Shi's claims regarding Guo's note agreement are untimely. The Court approved the note in 2019, as reflected on the public docket. Shi never objected to the note at the time or sought a copy of it. With reasonable diligence, Shi could have discovered all of the facts underlying his current claims years ago; his failure to do so does not give rise to an "emergency" today.

In any event, all of Shi's claims are meritless.

Contrary to Shi's claims, Guo has expended the funds he loaned to LKM—at great financial and personal risk—in legitimate recovery efforts. As the Court requested, through the attached affirmation of Francis Guo ("Guo"), the Receiver herewith provides extensive documentation of the fees and expenses occurred by Guo in his efforts to locate and wrest back LKM's assets in mainland China for the benefit of LKM and its shareholders.

Also contrary to Shi's false claims, Guo—unlike Shi—*is* a pre-existing LKM shareholder who held over 10 million dollars' worth of unconverted American depository shares ("ADS") whose value plummeted to near-zero when the Company's shares were delisted. Guo Decl. ¶¶ 2-3, Ex. 1.

Shi's argument that the Note is usurious and void is similarly unfounded. The interest rate on the Note was disclosed to and approved by the Court, and is proper under New York law. Shi's reliance on the arbitrary price at which LKM's shares were trading before its trading was suspended in 2018 as the basis for an alleged "discount" that he argues should be treated as additional interest (based on a change in New York law that post-dated the agreement)

fundamentally misunderstands corporate share valuation and ignores that LKM is currently insolvent, with no known present assets that will generate any future revenue stream, and that its shares are illiquid. The $.10 per ADS conversion price—which again, was disclosed to and approved by this Court—represented a more-than-fair and reasonable valuation for the shares, if not a windfall for the Company at the time the agreement was executed.

Shi also fails to show that he would suffer any irreparable harm absent injunctive relief.

Because he is not an LKM shareholder, Shi lacks standing to assert alleged harm to LKM shareholders. The possibility that the EGMs may result in Shi's removal as a director is not irreparable harm. Shi cites no authority for the proposition that a director *who is not also a shareholder* has any legal right to maintain the position.

For these reasons and as more fully explained below, the Court should, as it has done four times already, deny Shi's motion in its entirety as well as his letter request for a stay pending appeal.

## **RELEVANT BACKGROUND**

In June 2019, the Receiver entered into a proposed convertible note agreement with Guo (the "Note"). ECF 419-1. The purpose of the Note was to provide a mechanism for Guo to fund the Receivership's asset recovery efforts in mainland China. At the time, LKM had been delisted and was placed into receivership by this Court. Further, the Receiver determined that LKM had been stripped of its most valuable assets and was unable to identify any accessible revenue-producing assets and had no expectation of any assets to generate revenue in the future. *See* Affidavit of Matt Mathison ("Mathison Aff.") ¶¶ 3-4. Coupled with its massive debt load, LKM was insolvent. Under the circumstances, LKM shares were effectively worthless. *Id.* ¶ 4.

On June 18, 2019, the Receiver submitted the proposed Note to this Court. On June 20, 2019, the Court issued an order on the public docket approving the Note. ECF 71.[1] The Court's June 2019 order provided as follows:

> On June 18, 2019, the Temporary Receiver in this action (the "Receiver") submitted a letter to the Court requesting approval of a compensation incentive agreement and promissory note between Link Motion Inc. and Mr. Lilin "Francis" Guo (the "Note Agreement"). I have reviewed the Receiver's letter submission and the Note Agreement, and, with good cause appearing, it is hereby:
>
> ORDERED THAT, the request is GRANTED. The Note Agreement entered into by the Receiver is approved.

ECF 71.

Under the terms of the Note, Guo had the option to convert the balance of the Note into Class B shares of LKM, at a conversion rate provided in the Note.

On June 1, 2020, the Receiver filed an application seeking the Court's approval to convert the balance under the Note into LKM shares. ECF 419-3. The application included the share conversion price and attached a detailed list of Guo's expenses incurred as of that date. *Id*. The Court approved that request. *Id*. The Court approval was submitted to the Cayman court, which also approved the conversion and authorized issuance of the shares. ECF 419-5 and 6.

On August 3, 2021, the Receiver submitted a second application to convert an additional loan balance into LKM shares, along with a detailed list of Guo's additional expenses incurred through that date. ECF 419-8. The Court approved that request. *Id*. The second Court approval was also submitted to the Cayman court, which also approved the conversion and authorized issuance of the shares. ECF 419-10 and 11.

---

[1] The Receiver initially filed the Note agreement with the Court under seal. On April 25, 2023, the Honorable Valerie Figueredo ordered that documents related to the Note should be filed on the public docket. ECF 410. On May 24, 2023, the Receiver filed copies of the Note and related communications on the public docket. ECF 419.

## **LEGAL STANDARD**

In order to obtain a preliminary injunction or temporary restraining order, a movant must demonstrate "1) irreparable harm absent injunctive relief; 2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the [movant's] favor; and 3) that the public's interest weighs in favor of granting an injunction." *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010).  A preliminary injunction or temporary restraining order is a drastic remedy and should not be granted "unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (emphasis in original).

## **ARGUMENT**

**I.   SHI HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS**

   **A. Shi's Request to Vacate the Court's Approval of the Note and Share Conversions Is Time-Barred and Meritless**

Shi contends that there are "grounds under Rule 60(b) to vacate the Court's prior rulings regarding the Convertible Note and to temporarily restrain and preliminarily enjoin the Receiver and Mr. Guo." Br. at 2.   Setting aside the fact that Shi has not formally moved under Rule 60(b) — and thus, cannot invoke relief under that Rule — Shi's motion fails to demonstrate a likelihood of success under Rule 60(b), even if his application had been brought under that Rule.

Federal Rule of Civil Procedure 60(b) permits a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" on the basis of "(2) newly discovered evidence that, with reasonable diligence, could not have been discovered . . . [or] "(3) fraud . . . misrepresentation, or misconduct by an opposing party."   Relief under Rule 60(b) is "generally not favored and is properly granted only upon a showing of exceptional circumstances." *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010) (citation omitted).  Rule

5

60(b)(2) requires a movant to present evidence that is "truly newly discovered or could not have been found by due diligence." *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983) (citation omitted). Such evidence must also be "highly convincing." *Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir.1987). To prevail under Rule 60(b)(3), a movant must show "that the conduct complained of prevented [him] from fully and fairly presenting his case." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (internal quotation marks omitted). The standard is "extremely high." *Jones v. Caputo*, 2023 WL 2436039, at *1 (S.D.N.Y. Feb. 16, 2023). A motion made under either 60(b)(2) or (b)(3) "must be made within a reasonable time . . . and [] no more than a year after the entry of the judgment or order . . . ." Fed. R. Civ. P. 60(c)(1).

Here, Shi has not shown a likelihood of success on any potential Rule 60(b) motion to vacate the Court's orders approving the Note (and the share issuances to Guo thereunder).

Preliminarily, because the Court's orders authorizing the Receiver to enter into the Note and approving the share conversions were issued in 2019, 2020 and 2021, Shi's motion is untimely. *See Jackson v. Kristal Cadillac Corp.*, 1996 WL 148430, at *2 (E.D.N.Y. Mar. 20, 1996) (motion to vacate under Rule 60 filed over one year after entry of judgment "untimely and inappropriate"); *see also Esposito v. New York*, 698 F. App'x 624, 626 (2d Cir. 2017) (motions based on newly discovered evidence and fraud . . . pursuant to Rules 60(b)(2) and (b)(3) "subject to the one year time limit of Rule 60(c)").

Shi also cannot establish that there is any "new" evidence that could not have been discovered earlier. Even if the sealed filings related to the Note were not served on Shi at the time they were originally filed between 2019 and 2021,[2] in June 2019 the Court issued a public order

---

[2] The Receiver has searched its files and has not identified any correspondence transmitting the sealed documents to Shi, nor any correspondence from Shi's counsel requesting a copy of the sealed documents.

6

approving the Note. *See* ECF 71. At the time the Court issued its June 2019 order approving the Note, Shi made no effort to obtain a copy of the Note or inquire into its terms. As such, he fails to demonstrate that the evidence was not discoverable with "reasonable diligence" within the time period prescribed by Fed. R. Civ. P. 60(b)(2). *Cf. In re Joint Eastern*, 774 F. Supp. at 119 (denying request under Rule 60(b)(2) where party "was on notice" by virtue of interrogatory answers "of [the new evidence] and could have pursued acquiring [it]"); *United States v. Mercedes*, 179 F.R.D. 136, 139 (S.D.N.Y. 1998) (denying Rule 60 motion where moving party was "on notice of the factual basis for the Court's [prior] decision" and was on notice that certain relevant evidence was missing).

Further, Shi cannot demonstrate that recent public disclosure of the full text of the Note "prevented [him] from fully and fairly presenting his case." *State St. Bank & Tr. Co.*, 374 F.3d at 176. The Note terms Shi complains of were fully disclosed to and considered by the Court in granting approval of the Note and the share conversions thereunder; thus, any Rule 60(b) motion would not provide the Court with any "new" evidence. *See Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs.*, 228 F.R.D. 125, 129 (N.D.N.Y. 2005), *aff'd sub nom. Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs., Inc.*, 172 F. App'x 382 (2d Cir. 2006) (denying motion where new evidence was previously "considered by the court in rendering its decision on summary judgment"); *Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*, 1999 WL 436462, at *3 (S.D.N.Y. June 24, 1999) ("Rule 60 relief is thus unavailable to Abner . . . because the allegedly relevant information contained within the newly-discovered Lease is the same as that contained within the lease already submitted to this Court in connection with GSA's motion for summary judgment").

Shi's allegation that there has been a "fraud on the court" is no more availing. "Rule 60(d) actions are warranted only when necessary 'to prevent a grave miscarriage of justice.'" *LinkCo,*

7

*Inc. v. Naoyuki Akikusa*, 367 F. App'x 180, 182 (2d Cir. 2010) (quoting *United States v. Beggerly*, 524 U.S. 38, 47 (1998)). "[A]s with motions under Rule 60(b)(3), the "standard to prove 'fraud on the court' is extremely high," and is "limited to 'fraud that seriously affects the integrity of the normal process of adjudication.'" *Jones v. Caputo*, 2023 WL 2436039, at *1 (S.D.N.Y. Feb. 16, 2023) (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 558-59 (2d Cir. 1988)). A party bringing such a motion "must establish by clear and convincing evidence that the opposing or adverse party engaged in fraud or similar misconduct." *Stuyvesant v. Conway*, 2023 WL 348469, at *3 (S.D.N.Y. Jan. 20, 2023).

Shi does not come close to meeting this standard. Shi's allegations of alleged misrepresentations to the Court are either outright false or based on based on contorted readings of documents already on file on the docket.

Contrary to Shi's allegation, Guo was not an "outsider whose interests were contrary to existing shareholders." *See* Br. at 4. Guo was a large holder of LKM's ADS, which ***Guo purchased for over $10 million (including nearly $2 million in 2018 under an agreement signed by Shi) prior to being appointed by the Receiver as his agent***. *See* Guo Decl. ¶¶ 2, 3, Ex. 1. Those ADS were convertible into LKM shares and likely would have been had Deutsche Bank not ceased performing those conversions after LKM's common stock was delisted in January 2019. Guo's interests are therefore aligned with those of other shareholders. Indeed, the Court held that the plaintiff in this action (an ADS holder) had standing to assert federal securities claims, rejecting Shi's arguments that an ADS holder lacked standing. *See, e.g.*, ECF 275 at 23, ECF 331 at 12.

Shi also falsely alleges that "no funds" were provided by Mr. Guo. Contrary to Shi's allegations, as previously reported to the Court, Mr. Guo paid approximately $1.5 million in expenses related to the Receivership's asset recovery efforts in mainland China, including for

8

example the cost of attorneys, accountants, and translators.[3] *See* Guo Aff. ¶¶ 8-13. In his declaration submitted herewith, Mr. Guo has provided voluminous documentation of these expenses. *Id.* Exs. 2-4.[4]

Shi also contorts a statement by a translator working with Guo (that was also previously filed with this Court, *see* ECF 408-1, who at the time had not been paid out of receivership funds on account of Guo's absence. Her reference to having "just had his own company employees [sic] wages paid" concerned Guo's management of an unrelated business. It was not an allegation that Guo was using receivership funds to pay those employees. As demonstrated by the receipts submitted in connection with this filing, Guo did in fact loan $1.5 million to LKM and has expended those funds as previously documented in the Receiver's filings in connection with the share conversion approval requests.

## B. The Convertible Note is Neither Usurious Nor a Fraudulent Transfer

Shi has failed to show a likelihood of success on his claims that the Note is usurious and/or a fraudulent transfer. *See* Br. at 8-9. Citing *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 335 (2021), Shi claims that a purported "discount" in the share conversion should be treated as

---

[3] Given that the Receivership has no funds and that the cost of translating the Chinese language documentation is significant, the Receiver has not translated this documentation. To the extent Shi (or the Court) desires an English translation, the Receiver respectfully requests that the Court order Shi to advance funds to the Receiver for this purpose, particularly given that Shi is the only party contesting the Receivership's expenses.

[4] Shi alleges that paragraphs 10-12 of the Receiver's declaration in support of the accounting (ECF 376) constitute "evidence" that Guo never loaned funds to LKM. Br. at 3. Those paragraphs show no such thing; they concern funds *recovered by the Receiver* and have nothing to do with Mr. Guo's expenditures related to the Note. As the Receiver stated in that very same declaration, "any documentation of the note agreement entered into between Mr. Guo and LKM is under seal" and "[t]herefore, the Receiver's Accounting does not include Mr. Guo's fees and expenses." ECF 376, ¶ 40. As noted above, the attached declaration from Mr. Guo provides extensive documentation of Mr. Guo's fees and expenses. In any event, Shi nowhere explains how any purported issue with the Receiver's November 2022 accounting is basis for seeking emergency relief now.

additional interest on the Note, rendering it usurious and therefore void under New York Penal Law § 190.40, which sets a presumptive limit at 25%.

Shi's claim fails on multiple grounds.

As an initial matter, and assuming Shi even had standing to assert such a claim on behalf of LKM (which he does not), New York courts have uniformly construed § 190.40 when raised by a corporation as limited to an affirmative defense, and have "prohibited corporations from bringing affirmative claims or counterclaims alleging criminal usury and seeking to invalidate an agreement." *Streamlined Consultants, Inc. v. EBF Holdings*, 2022 WL 4368114, at * 3 (S.D.N.Y. Sept. 20, 2022) (quoting *Haymount Urgent Care PC v. GoFund Advance, LLC*, 2022 WL 2297768, at *12 (S.D.N.Y. June 27, 2022) (collecting cases)); *see also Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.*, 141 N.Y.S.3d 319, 320 (N.Y. App. Div. 2021) ("General Obligations Law § 5-521 bars a corporation such as the plaintiff from asserting usury in any action, except in the case of criminal usury as defined in [ ] § 190.40, and then *only as a defense to an action to recover repayment of a loan*, and not as a basis for a cause of action asserted by the corporation for affirmative relief.") (emphasis added). *Adar* did not change this. *See DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*, 2023 WL 199196, at *7 (S.D.N.Y. Jan. 17, 2023) ("Nowhere in its opinion, however, did the *Adar Bays* court suggest that a plaintiff may use § 190.40 affirmatively; rather, the opinion exclusively characterizes usury as a defense.").

Shi's attempt to affirmatively invoke § 190.40 when no demand under the Note has been sought to be enforced is therefore not permitted under New York law.

Second, § 190.40 only prohibits the charging of high interest by a lender "not being authorized or permitted by law to do so." The Note *was* authorized. It and the subsequent share

conversion agreements were submitted to this Court and approved, and were further approved by the Cayman court.

In any event, the Note is not usurious. It is "the established principle" that "the usury defense must be established by clear evidence as to all the elements essential thereto," that the court "will not assume that the parties entered into an unlawful agreement," and that "[o]n the contrary when the terms of the agreement are in issue, and the evidence is conflicting, the lender is entitled to a presumption that he did not make a loan at a usurious rate." *Adar Bays*, 37 N.Y.3d at 347–48 (citing *Giventer v. Arnow*, 37 N.Y.2d 305, 308-309 (N.Y. Ct. App. 1975)). Shi's allegations fail to meet this standard. In *Adar*, the agreement at issue gave the lender the option to convert the loan balance to shares at a specified discount to their then-prevailing market price. *See* 37 N.Y.3d at 324 (the note "included an option for Adar Bays to convert some or all of the debt into shares of GeneSYS stock at a discount of 35% from the lowest trading price for GeneSYS stock over the 20 days prior to the . . . conversion").

Here, by contrast, Guo was not given any discount on the shares. When LKM trading was suspended in 2018, its ADS were valued slightly above $.15 each. Since that time, the value of shares has only declined, because (i) LKM is insolvent, (ii) it generates no revenue; (iii) it possesses no identifiable assets that might generate any future revenue[5]; and (iii) having been delisted, the shares are illiquid. Mathison Aff. ¶¶ 3-4. LKM's value has no doubt further plummeted as a result of Shi's continued stripping of LKM's assets and other misconduct that precipitated this action to begin with, including:

- Shi secretly formed a new company to divert revenues from LKM's intellectual property applications. *See* ECF ECF 50, at ¶ 9; 239-1, at 2.

---

[5] As such, the Company would have a discounted cash flow value, which is the "most reliable" and a commonly used method for determining the value of a privately held company, of zero. *See In re Med Diversified, Inc.,* 334 B.R. 89, 98–99 (Bankr. E.D.N.Y. 2005).

- Between May and November 2019, Shi secretly transferred approximately 626 million RMB (at the time valued at over $89 million) from the WFOE accounts to an account owned by an LKM subsidiary under his control. ECF 239-1, at ¶¶ 8-9; *see also* ECF 161; *see also* ECF 173.

- Shi and his associates went to the Company's office and ordered the employees to remove accounting and legal documents, and to destroy and damage operating data system and the Company's main contract management system. *See* ECF 50 at, ¶¶ 11-12.; *see also* ECF 43.

- Shi's associate, Zemin Xu, brought numerous frivolous lawsuits in China against Guo, causing LKM to expend unnecessary defense funds. ECF 239-1, at ¶¶ 6-7.

- Shi stopped paying employees of LKM and these employees filed claims against the Receiver's agent in China. Without the data that Shi stole from LKM headquarters, such as the LKM's materials including labor and personnel files, employee lists, entry dates, employment contracts, salary records, as well as the Company's financial books, the Receiver's agent was not able to confirm or fight against the lawsuits underlying facts. The Receiver's agent in China faced harsh penalties in China due to these lawsuits, including being on a "Restriction List," which is the equivalent of a blacklist in America. *See* ECF 239-1, at ¶¶ 11-14; *see also* ECF 293.

- Shi, without authorization and notifying the Receiver, personally appeared on behalf of LKM in an arbitration proceeding filed by Tongfang Investment. ECF 269, at 1-2; *see also* ECF 269-1, at ¶ 8. Shi "did not file any statement of defense" and completely surrendered a 2.52 billion RMB (approximately $400 million) dispute by simply emailing to HKIAC that "[LKM] would not be filing any closing submission." *Id*. at ¶ 12.

As an insolvent entity with no assets or revenue and no foreseeable prospect for future revenue, LKM's shares are effectively worthless. Mathison Aff. ¶ 4. *See Vikas Goel & Rainforest Trading Ltd. v. Am. Digital Univ., Inc.*, 2015 WL 5037002, at *6 (S.D.N.Y. Aug. 26, 2015), *vacated sub nom. Goel v. Bunge, Ltd*., 820 F.3d 554 (2d Cir. 2016) ("Deloitte determined that eSys had been technically insolvent [for nearly two years], and hence, the equity value of the eSys shares pledged to SBI was 'nil'"); *cf. Glob. Crossing Est. Representative v. Winnick*, 2006 WL 2212776, at *9 (S.D.N.Y. Aug. 3, 2006) ("While it is true that under certain circumstances the stock of an insolvent corporation may have value based on its estimated future profitability, that is not the case where the fundamental premise of the complaint is that the corporation was doomed to fail. And that is indeed what the complaint here repeatedly and emphatically asserts.") (citing *In re Roco*

12

*Corp.,* 701 F.2d 978, 982 & n. 7 (1st Cir.1978) (concluding that stock of insolvent corporation was "virtually worthless," and citing cases "holding that shares of stock sold back to the corporation were valueless, largely due to the insolvency of the corporation")); *In re CIL Ltd.,* 2018 WL 3031094, at *4 (Bankr. S.D.N.Y. June 15, 2018) (equity securities of insolvent company might have had value where the company had "revenues in the $7 to $8 billion range."). The agreed-upon price of $.10 per ADS was considered a windfall for the Company, not a "discount." *Id.* ¶ 5. Shi's facile comparison to an outdated earlier share price does not establish usury by "clear evidence."[6]

## II.  SHI FAILS TO SHOW IRREPARABLE HARM

Shi fails to make the requisite showing of irreparable harm to warrant injunctive relief.

Preliminarily, Shi is not an LKM shareholder and has no authority to act on behalf of LKM. As such, Shi cannot predicate his motion on claims of irreparable harm to **"[t]he Company's existing registered shareholders**." Br. at 7. No LKM shareholder has intervened in this action, let alone asserted the claims Shi seeks to advance, and Shi nowhere explains why those shareholders are incapable of doing so. Shi's application must be denied for this reason alone. *See Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014). "[T]he usual rule is that a party does not have standing to assert the rights of third parties absent a reason why the third parties are unable to assert their rights themselves." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016); *Moore v. Consol. Edison of New York*, 409 F.3d 506, 511 (2d Cir. 2005) (affirming denial of preliminary injunction because "alleged harm to third parties did not provide plaintiff a basis" for relief).

---

[6] Because the share transfer was in fact done at a fair price for valuable consideration—namely, a needed infusion of cash to fund LKM's asset recovery efforts, Shi also cannot establish that the conversion was a fraudulent transfer, or that the Court has any basis to issue a surcharge on the Receiver.

Even if Shi was an LKM shareholder (which he is not), Shi fails to allege any cognizable injury to himself, let alone irreparable harm. Shi claims that LKM *directors* have "important legal rights and roles under LKM's corporate documents." Br. at 7. But the "rights" he cites are merely powers delegated by LKM to its directors. They attach to the *position*, not to the *person*. Shi cites no authority for the proposition that a director *who is not also a shareholder* has any legal right to maintain the position and retain the powers that accompany it. *Wisdom Import Sales Co., LLC v. Labatt Brewing Co. Ltd.*, 339 F.3d 101 (2003), cited by Shi (Br. at 7) concerned a dispute between co-owners of a joint venture and *their* ability to select a certain number of directors. The only possible harm to Shi—unalleged in his Motion—is loss of his employment, which is routinely held to not constitute irreparable harm. *See Moore*, 409 F.3d at 511.

## CONCLUSION

For the reasons above, Shi's motion should be denied in its entirety as well as his separate request for a stay pending appeal.

Dated: June 1, 2023                                 Respectfully submitted

**/s/ Amiad Kushner**
Amiad Kushner
Xintong Zhang
SEIDEN LAW LLP
322 Eighth Avenue
Suite 1200
New York, New York 10001
(646) 766-1914

*Attorneys for the Court-Appointed
Temporary Receiver Robert W. Seiden*