UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE BALIGA,

        Plaintiff,

- against -

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYOUNG SHI, JIA LIAN, XIAO YU,

        Defendants.

No. 1:18-cv-11642-VM-DCF

# REPLY MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO ENJOIN ROBERT W. SEIDEN AND FRANCIS "LILIN" GUO

FELICELLO LAW P.C.
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806

*Attorneys for Vincent Wenyong Shi*

Of counsel:    Michael James Maloney
                    Rosanne E. Felicello
                    Kristie M. Blase

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... 2

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS IN REPLY .................................................................................. 2̶3̶

ARGUMENT ........................................................................................................................ 6̶7̶

    A.    Dr. Shi's request that the Court vacate its prior orders regarding the Convertible Note and the issuance of shares to Guo is timely. .................. 6̶7̶

    B.    Guo did not pay for his shares. ................................................................ 8̶9̶

    C.    Dr. Shi is likely to succeed on his claim that Convertible Note is *void ab initio* as a fraudulent transfer. ................................................................ 8̶1̶0̶

    D.    Dr. Shi has shown that LKM will suffer irreparable harm if the EGMs are allowed to proceed. ................................................................................. 9̶1̶1̶

CONCLUSION ................................................................................................................. 1̶0̶1̶2̶

## TABLE OF AUTHORITIES

**Cases**

*Arizona v. California*,
   460 U.S. 605 (1983) ................................................................................................................7

*Davis v. Rondina*,
   741 F. Supp. 1115 (S.D.N.Y. 1990) ......................................................................................12

*In re ShengdaTech, Inc. Sec. Litig.*,
   11 Civ. 1918 (LGS), 2015 U.S. Dist. LEXIS 69395 (S.D.N.Y. May 28, 2015) .........................7

*Mony Grp., Inc. v. Highfields Capital Mgmt., L.P.*,
   368 F.3d 138 (2d Cir. 2004) ..................................................................................................11

*Pridgen v. Andresen*,
   Civ. 3:94CV851(AVC), 1994 U.S. Dist. LEXIS 21383 (S.D.N.Y. June 13, 1994) ................12

*Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs.*,
   228 F.R.D. 125 (N.D.N.Y. 2005) ............................................................................................8

*Vides v. Amelio*,
   265 F. Supp. 2d 273 (S.D.N.Y. 2003) ...................................................................................12

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992) ..................................................................................................7

**Rules**

Fed. R. Civ. P. 54 .........................................................................................................................7

Fed. R. Civ. P. 60 .........................................................................................................................7

Fed. R. Civ. P. 65 .........................................................................................................................1

Defendant Vincent Wenyong Shi ("Dr. Shi") respectfully submits this reply memorandum of law in further support of his motion, pursuant to Rule 65 of the Fed. R. Civ. Proc., to enjoin Robert W. Seiden (the "Receiver"), the court appointed receiver of Link Motion Inc. f/k/a NQ Mobile Inc. ("LKM" or the "Company"), Mr. Francis "Lilin" Guo ("Guo"), and all persons acting on their behalf, from holding extraordinary general meetings ("EGMs") pending a final determination of Dr. Shi's objections to the Receiver's accounting and his discharge and pending a decision on Dr. Shi's appeal of the Order granting the Receiver the right to notice the EGMs.

## PRELIMINARY STATEMENT

In response to the Court's temporary restraining order and directive to respond, the Receiver and Mr. Guo disclosed for the first time in this 4 ½ year litigation that Mr. Guo had a prior, undisclosed consulting agreement (the "Consulting Agreement") with LKM. The Consulting Agreement was entered into in connection with a "buyback" program disclosed to the S.E.C. on November 13, 2017. Mr. Guo was not an independent party. He was a self-interested actor seeking to maximize his own interests over those of the registered shareholders and other creditors of LKM. There is strong circumstantial evidence showing that Mr. Guo *paid* the Receiver to achieve this outcome.

The Court should enjoin the Receiver and Mr. Guo to prevent irreparable harm. The Receiver's arguments based on Rule 60 and prior Orders are meritless because the Receiver made misrepresentations and omissions to the Court and ignored the Court's orders to serve copies of papers on counsel for Dr. Shi. This Court has the power to amend its prior orders at any time before final judgment and Dr. Shi acted promptly and diligently after learning of the convertibility feature and other omissions.

The purported evidence presented by the Receiver in response to the Court's May 26, 2023 Order is not admissible as evidence in New York courts and does not address the issues. Mr. Guo's

declaration is riddled with mistranslations and demonstrably false claims. The evidence he submits supports Dr. Shi's contention that the "loan" from Mr. Guo to the receivership was a sham.

The Receiver also submits as "evidence" a purported affidavit of Matt Mathison, an affiliate of the LKMForward shareholder group (likely comprised of Guo and Baliga) that initially hired the Receiver's law firm. Mathison, who is not qualified as an expert, purports to give his opinion as to the value of the LKM's ADS at the time of the execution of the Guo note. This opinion should be rejected.

The available record shows that Mr. Guo had targeted LKM's valuable VIE, Beijing Technology, from the very beginning and that the Receiver transferred that entity to Mr. Guo by no later than December 2019. The Receiver and Guo have failed to report any facts regarding the revenues, assets, or valuation of that entity, but now purport to hold EGMs to replace the board and ratify the fraudulent transfer of that valuable asset to Mr. Guo. The harm to LKM, its original shareholders, and its duly appointed directors is imminent and clear. The Court should act to prevent this harm.

**STATEMENT OF FACTS IN REPLY**

The Receiver made material misrepresentations to the Court in support of his application for approval of the Convertible Note:

(iv)    Guo was "a large original Link Motion shareholder. . . ." Dkt. 419-1 at ECF 3 of 10;

(ii) "The [loan] funds will be held in the WFOE's bank account in China controlled by the Receivership." Dkt. 419-1 at ECF 5 of 10;

(iii) "Guo has further agreed that repayment of the Note Agreement is contingent on the Receivership successfully recovering and securing liquid funds of the Company." Dkt. 419-1 at ECF 5 of 10 (emphasis in original); and

(iv) "Guo can choose to convert his RMB equivalent of $1,500,000 into equity of the Company

2

at $.10 per ADS equivalent," "the ADS was trading at $0.15/ADS prior to being delisted," the "conversion option at $.10 per ADS is completely justified and fair." Dkt. 419-1 at ECF 6 of 10.

Contrary to statements and other representations of the Receiver, the facts are:

(i) Guo was not a large original LKM shareholder. He was not a registered shareholder at all until sometime in 2020 when the Receiver issued Class B shares to Guo; prior to that conversion, Guo held only LKM ADS.[1] Shi Decl. at ¶¶7-8; Dkt. No. 428 ¶2. This misrepresentation is material because registered shareholders have materially different rights compared to ADS holders.

(ii) No funds from Guo were ever deposited into a WFOE account in China. Dkt. No. 376-1 at ECF 1-6 of 11 (no WFOE accounts in China reported); *see also* Dkt. No. 376-1 at ECF 3 of 11, line 13 (reporting $15,171.44 "recovered" from a WFOE account in Hong Kong on 7/8/2019). Guo failed to provide records to prove compliance with this term of the Convertible Note, and the records submitted by Guo on June 1, 2023 show that the alleged expenses he paid were from his personal account, not the WFOE account. Dkt. No. 428 at ¶¶8-15; Shi Decl. at ¶32(d).

(iii) Guo never recovered "liquid funds" for the benefit of LKM's WFOE and other business operations in China. *See* Dkt. No. 419-1 at ECF at 3-4 of 10; Dkt. No. 419-2 at 3 of 7 (amending the note to limit its scope to activities in China); Dkt. No. 428 ¶5. As such, the requirements for repayment of the note were never satisfied. Dkt. No. 419-1 at ECF at 3-4 of 10.

(iv) In light of the discounted conversion price, and the inherent difference in value between

---

[1] Under Cayman law, a holder of ADRs does not have the same legal rights as a registered shareholder. *See, e.g.*, Dkt. 194-1, 194-3; *see also* Dkt. 142-2 at 7; Dkt. 209-1.

Class B and Class A shares of LKM stock, the conversion rate in the Convertible Note is criminally usurious under New York law.

(v) The Receiver misrepresented that the conversion feature of the Convertible Note was "ADS equivalent." Dkt. 419-1 at ECF 6 of 10 and 10 of 10. This representation was false because an ADS holder is only entitled to convert into "five Shares" of Class A LKM stock. Dkt. 142-6 at 2-3, 6 (recitals and Section 1.3, 1.35 of the Deposit Agreement for LKM ADS). The Receiver granted Guo Class B shares, which are much more valuable. The Company's Class B shareholders are entitled to ten (10) votes per share. Class A shareholders are entitled to only one (1) vote per share.

The Receiver violated the Court's orders by failing to comply with the Court's June 19, 2019 and January 17, 2020 directives to serve copies of relevant papers on counsel for Dr. Shi. Dkt. 419-1 at ECF 2 of 10 (fax Message); Dkt. 419-2 at ECF 2 of 7; Dkt. No. 430 at n.2 (admitting that the Receiver did not serve the documents on Dr. Shi or his counsel). The information disclosed on the docket was not sufficient to apprise Dr. Shi, or any other interested party of the necessary details regarding the terms of the Convertible Note.[2] See Dkt. No. 71.

It was only much later, in April 2022, that Guo disclosed that the Convertible Note "that was the subject of this Court's order on June 24, 2019 is the source of my ownership of registered shares in the Company." Dkt. Nos. 300 & 301. Within days of Guo's disclosure, counsel for Dr. Shi sent a letter to Amiad Kushner, the Receiver's counsel, requesting a copy of the Note Agreement. Maloney Reply Decl. Ex. N (April 25, 2022 Letter to Receiver re: Note agreement). The Receiver opposed disclosure of the Convertible Note and other relevant facts until ordered to make disclosure by the Hon. Valerie Figueredo. Dkt. 413. Even then, the Receiver omitted to

---

[2] I.e. the interest rate, the use of funds, the conversion feature into Class B registered shares, or that Guo had a prior legal relationship with LKM.

4

disclose the prior Consulting Agreement between Guo and LKM. *See* Dkt. 428-1 (filed on June 1, 2023).

The Receiver and Guo manipulated the Court into approving the conversion of the alleged loan into Class B shares by omitting material facts (*i.e.*, that Guo had not deposited any loan proceeds into the LKM WFOE account and had not recovered any "liquid funds"). Dkt. 419-3 at ECF 2 and 31 of 34; Dkt. 419-8.

In opposition to this motion, the Receiver's counsel has submitted a purported affidavit of Matt Mathison, an "Official Advisor" to the Receiver, in which Mathison offers his opinion of the value of each ADS at the time of the execution of the Convertible Note. Dkt. 429. Mathison claims that "Link Motion's debt and other creditor obligations exceeded its assets by orders of magnitude," Dkt. 429 ¶3, but he fails to disclose what records were reviewed or analyses performed in reaching this conclusion.

Mathison further claims that the Receiver "had no visibility into any additional accessible assets or revenue-producing assets and no expectation of any assets expecting to produce in the future." Dkt. No. 429 at ¶3. This is a lie. In papers submitted to the Cayman Court, the Receiver that Mathison himself had been "able to confirm . . . that Link Motion had substantial operations outside of the PRC," Dkt. 173-2 at ¶30, and that the Receiver had been able to obtain control over two Company bank accounts in Hong Kong. Dkt 173-2 at ¶¶33-34. Other evidence collected by counsel strongly suggests that Mathison, the Receiver, and Guo acted in concert to *retain* and *pay* Seiden for the purpose of obtaining control over and transferring to Guo majority ownership and control over LKM's valuable China-based VIE, Beijing Technology. *See* Maloney Reply Decl. ¶¶3-15. Contrary to Guo's false statements in his June 1, 2023 declaration, the Receiver and Guo succeeded in transferring Beijing Technology to Guo in January 2020, Maloney Reply Decl. ¶¶16-20, Dkt. 394-6, and ever since have refused to disclose any information about its value, assets, or

5

revenues.

LKM, its original registered shareholders, Dr. Shi, and the current board members would all be irreparably harmed if the Receiver and Guo are permitted to hold the EGMs to replace the board and pass the shareholder resolutions ratifying their prior actions.

**ARGUMENT**

**A. Dr. Shi's request that the Court vacate its prior orders regarding the Convertible Note and the issuance of shares to Guo is timely.**

The Receiver's suggestion that this Court lacks the power to revise its prior interlocutory order authorizing the Convertible Note and share conversions is wrong as a matter of law. *See* Fed. R. Civ. P. 54; *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (Court has the "power to reconsider its own decisions prior to final judgment"), quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) (the "law of the case directs a court's discretion, it does not limit the tribunal's power"). There has been no final judgment in this matter and, therefore, the prior orders "may be revised at any time before entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54.

The time limit for bringing a motion under Rules 60(b)(2) and 60(b)(3) does not apply here because the Court has not entered a final judgment. *In re ShengdaTech, Inc. Sec. Litig.*, 11 Civ. 1918 (LGS), 2015 U.S. Dist. LEXIS 69395, at *10-11 (S.D.N.Y. May 28, 2015). Rather, it is within the Court's discretion to revise its prior order. Under Second Circuit precedent, "major grounds" for the Court to reconsider its prior rulings include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl.*, 956 F.2d at 1255 (citations omitted).

The Contingent Note was not served on Dr. Shi until May 24, 2023. Contrary to the assertions made by the Receiver's counsel, as detailed above, Dr. Shi made numerous attempts to obtain a copy of the Contingent Note. Instead of providing a copy, the Receiver's counsel fought

its disclosure, claiming that allowing Dr. Shi to view the Contingent Note would somehow harm Guo, who was not in contact with the Receiver for approximately one year.

The Receiver previously purposefully withheld the information that would cause Dr. Shi to ask the Court to reconsider its prior Order approving the Contingent Note and, now that the relevant information has been provided, contends that it is too late for Dr. Shi to question its validity or accuracy because he should have done so when the Receiver presented his accounting (which did not contain the information) back in November 2022. Dkt. 430 at n.4. This circular reasoning defies logic. Within days of the May 24, 2023 disclosure, Dr. Shi sought an Order to Show Cause to modify the Order allowing the Contingent Note and the orders permitting the conversion. There was no undue delay. And permitting the Receiver and Guo to continue with their plan to hold the EGMs and wrest control and ownership of LKM from its duly appointed directors and rightful shareholders would be a manifest injustice.

The cases relied on by the Receiver do not lead to a different conclusion.[3] In *Travelers Casualty & Surety*, the defendant had the supposedly "newly discovered" evidence in his possession before the court issued its judgment and the evidence showed that the defendant had not been diligent in attempting to obtain the evidence earlier. *Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs.*, 228 F.R.D. 125, 129-130 (N.D.N.Y. 2005). Similarly, in *Abner Realty, Inc.*, the information allegedly "newly discovered" was the same information contained in another document that was submitted in connection with the motion and due diligence would have disclosed the information later claimed to be "newly discovered." *Abner Realty, Inc. v. Adm'r of GSA*, 97 Civ. 3075 (RWS),1999 U.S. Dist. LEXIS 9400, at *7 (S.D.N.Y. June 21, 1999). In contrast, here the evidence shows that as soon that Dr. Shi learned that Guo had obtained an

---

[3] All of the cases cited by the Receiver relate to Rule 60(b), but the relevant standard is Rule 54(b) because there has not been a final judgment here.

7

ownership interest in LKM by the Contingent Note, he tried to obtain a copy of it and the application documents, but that Receiver's counsel blocked those attempts until Dr. Shi obtained Court intervention. Because Dr. Shi exercised due diligence and only obtained the relevant information on May 24, 2023, and because allowing Guo to obtain control over LKM by way of misrepresentations to this Court would be manifest injustice, Dr. Shi's request is timely.

**B. Guo did not pay for his shares.**

As Guo admits, he acquired his registered shares in the Company by way of the Convertible Note. Dkt. Nos. 300-301. Under the terms of the Convertible Note, Guo was only supposed to receive shares in LKM if he met the contingencies, *i.e.*, he deposited funds in LKM's WFOE account *and* recovered "liquid funds." Guo did neither. The claim that Guo "paid approximately $1.5 million in expenses related to the Receivership's asset recovery efforts," Dkt. No. 430 at ECF 13, is materially different than saying that the money was transferred to the Company's accounts for use by the Company. The documentation provided by the Receiver and Guo[4] is not properly translated and barely legible. What is legible shows that Guo lived in luxury hotels in Beijing, paid personal expenses, and transferred money to himself. Shi Decl. at ¶32. Thus, Guo failed to submit evidence sufficient to prove that the expenses were incurred for the LKM receivership, rather than for his own business interests. Dr. Shi is likely to succeed on his claim that Convertible Note is *void ab initio* as a fraudulent transfer.

The Receiver argues that criminal usury cannot be asserted as a separate cause of action.[5] The Receiver's argument is logically flawed and self-serving. Dr. Shi, as a registered director, is

---

[4] The Receiver admitted that he has "has not translated this documentation." Dkt. No. 430 at n.30. He contends that Dr. Shi should be required to pay for any translation. But it is the Receiver's obligation to provide an accurate accounting and the accuracy of his accounting cannot be determined without a certified translation of the "evidence" provided in support of the accounting.

[5] Dr. Shi has standing to request that the Convertible Note be found *void ab initio*. First, as a registered director, Dr. Shi has standing to move on behalf of the Company. Further, Dr. Shi has standing derived from his standing to object to the accounting.

an interested party who has standing to assert objections to the Receiver's accounting. In that capacity, Dr. Shi asserts the affirmative defense of criminal usury as a basis to hold the Convertible Note *void ab initio* and to rescind all consideration granted to Guo under that note, including canceling the issued shares. The Receiver's claim that "no demand under the Note has been sought to be enforced" is inaccurate because it is the enforcement of a demand under the Note that allowed Guo to convert what was purportedly owed to him to shares. And the Receiver provides no support for his contention that the Court's prior Orders authorizing the Convertible Note and issuance of shares absolved any usury from the note when the Receiver failed to serve notice on Dr. Shi.

The Court should not rely on the purported opinion of Mathison to support the Receiver's new contention that "Guo was not given any discount on the shares." Dkt. No. 430 at ECF 16. Mathison is self-interested, lacks independence, and his report fails to comply with Rule 701 and 702 of the Federal Rules of Evidence. As set forth above, the conversion feature provided to Guo Class B shares at an unfairly discounted value. That discount, when added to the interest rate of 25% as required by *Adar Bays, LLC v. GeneSys ID, Inc.*, 37 N.Y.3d 320 (2021), violated New York's criminal usury law.

The Receiver should be estopped from arguing that the conversion price in the note did not result in a valuable discount to Guo because the Receiver has failed to account for the revenues and business operations of the WFOE and Beijing Technology, which were transferred to Guo. *See* Dkt. 428 ¶6.[6]

### C. Dr. Shi has shown that LKM will suffer irreparable harm if the EGMs are allowed to proceed.

Dr. Shi is registered director of LKM and a beneficial owner of Class B shares of stock in

---

[6] It is likely that the Receiver and Guo have also violated the federal securities laws by (1) making false statements to the Court in order to obtain approval of the Contingent Note and the specific conversions and (2) and engaging in a scheme to improperly obtain securities of LMK. *See e.g.*, *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450 (S.D.N.Y. 2017).

via his interest in RPL. Shi Decl. at ¶4. As an interested party, Dr. Shi has standing to assert objections to the accounting of the Receiver. There is no basis to the Receiver's suggestion that some other party, not Dr. Shi, must step forward to assert the rights of LKM to avoid the irreparable harm that the Receiver and Guo plan to cause. Dkt. 430 at ECF 18.

If the EGMs are allowed to go forward, the Receiver and Guo will change out the board and ratify shareholder resolutions that will irreparably: dilute the original registered shareholders as they existed when this case was commenced; waive any affirmative defenses to the Receiver's and Guo's actions under the Convertible Note; and permit Guo to retain majority ownership and control over Beijing Technology. This would be against the interests of the pre-Guo and pre-Receiver shareholders as well as the duly-appointed board. *See Mony Grp., Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 147 (2d Cir. 2004) (a change of control transaction can constitute irreparable harm to shareholders). The Court should not permit this to happen.

Further, where a special meeting of shareholders is called without providing "accurate and full disclosure" of relevant facts, such as the backgrounds of proposed new directors or their relationships to the company and its affiliates where an election is called, holding a shareholder vote constitutes irreparable harm. *Pridgen v. Andresen*, Civ. 3:94CV851(AVC), 1994 U.S. Dist. LEXIS 21383, *14 (S.D.N.Y. June 13, 1994); *see also Vides v. Amelio*, 265 F. Supp. 2d 273, 276 (S.D.N.Y. 2003). The EGM Notices omit the material information described above. Failing to provide that information is irreparable harm to the shareholders, *id.*, and irreparable harm to the directors, including Dr. Shi, who the Receiver is attempting to remove, *id.* at 14-15 (citing *Davis v. Rondina*, 741 F. Supp. 1115, 1125 (S.D.N.Y. 1990) (irreparable harm to directors).

## CONCLUSION

For all the reasons set forth above, the Court should grant Dr. Shi's request for a preliminary injunction.

Dated: New York, New York  
       June 13, 2023

Respectfully submitted,

FELICELLO LAW P.C.

By:   */s/ Michael James Maloney*
      Michael James Maloney
      Rosanne E. Felicello
      Kristie M. Blase
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806
mmaloney@felicellolaw.com
rosanne@felicellolaw.com
kristie@felicellolaw.com
*Attorneys for Vincent Wenyong Shi*