CERTIFICATE OF TRANSLATION

      I, Tian Liang, hereby certify, pursuant to 28 U.S.C. § 1746, that I am competent to translate from Mandarin Chinese into English and that the attached is, to the best of my abilities, a true and accurate translation of the original Pledge Agreement.

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:    June 20, 2023

                                        Tian Liang

Annex 11                                                                                                                         WX-2018-39

# Pledge Contract

(For Pledge under Bank Guarantee)

No.: 20182 GTZY ZI No. 001

**Pledgee:** China Merchants Bank Co., Ltd. <u>Beijing Gongti Sub Branch</u> (hereinafter referred to as "Party A")
Responsible person: Huang Meng

**Pledgor:** NQ Wireless (Beijing) Technology Co., Ltd.          (hereinafter referred to as "Party B")
Legal representative / responsible person: Xu Zemin
or
**Pledgor:**
ID Card No.:

Whereas,

1.√ Party A and Party B, on the application of Party B (also the Client), entered into the *Guarantee Agreement* No. ▆▆▆008 dated <u>May 28, 2018</u> (hereinafter referred to as the "*Guarantee Agreement*"). or

2. Party A and _____ (hereinafter referred to as the "Client"), on the application of the Client, entered into the *Guarantee Agreement* No. _____ dated _____ (hereinafter referred to as the "*Guarantee Agreement*").

Thereby, Party A agrees to issue a Letter of Guarantee / Standby Letter of Credit No ▆▆▆008 (hereinafter referred to as the "Letter of Guarantee") to <u>China Merchants Bank Luxembourg Branch</u> (hereinafter referred to as the "Beneficiary") in respect of the <u>Financing Letter of Guarantee</u>, and to assume the guarantee liability within the limit of <u>US$</u> <u>EIGHTY-EIGHT MILLION EIGHT HUNDRED AND EIGHTY THOUSAND</u> (US$ 88,800,000).

Party B is willing to pledge all its property or rights in its possession or which it is legally entitled to dispose of for the purpose of guaranteeing the timely and full payment of all debts owed by Party B (or the Client) to Party A under the *Guarantee Agreement*; Party A, upon examination, agrees that Party B uses the said property or rights as the Pledge. The parties, in accordance with relevant laws and regulations and after equal consultation, agree on the following terms, and hereby enter into this contract:

Article 1 Party B's Pledge

1.1 Name: Fixed deposit receipt (structured deposit)

1.2 Quantity: One (1)

1.3 Value and discount rate: RMB SIX HUNDRED AND THREE MILLION FIVE HUNDRED THOUSAND ONLY, 95%

1.4 Period: 358 days

1.5 Ownership certificate: Self-owned

1.6 Ownership certificate No.: _____4326

Article 2 Scope of Pledge Guarantee

This contract covers all payments payable by Party B (or the Client) to Party A under the *Guarantee Agreement*, including, but not limited to, the principal amount of advances, interest, penalty interest, compound interest, default interest and costs of realizing the right of pledge which Party A pays on behalf of Party B (or the Client) to the Beneficiary by assuming the payment responsibility under the Letter of Guarantee, as well as the guarantee fees payable by Party B (or the Client) to Party A under the *Guarantee Agreement*.

Article 3 Contract Independence

**This pledge guarantee is independent and is not affected by the validity of the *Guarantee Agreement*, nor is it affected by any guarantee issued by a third party for Party B (or the Client), any agreement or document signed with any entity, nor is it subject to any change due to various changes such as fraud, reorganization, acquisition, winding up, dissolution, liquidation or bankruptcy of Party B (or the Client), nor is it affected in any way by any time grace and extension or delay granted by Party A to Party B (or the Client) to enforce the collection of the amount owed by Party B (or the Client) in accordance with the relevant agreement. Party B shall be liable to Party A for the pledge guarantee in accordance with the provisions of this pledge contract, even if Party A, while having another collateral or pledge guarantee or guarantor, renounces the mortgage right priority, renounces, changes or releases other collateral or pledge guarantee, changes or releases the guarantor's guarantee liability, or chooses to request Party B to assume the pledge guarantee liability with the Pledge first.**

Article 4 **Party B fully accepts and approves the contents of the Letter of Guarantee issued by Party A to the Beneficiary and agrees that Party A shall handle all matters under the Letter of Guarantee in accordance with the relevant regulations and international conventions. Any supplementary agreement reached between Party A and the Client or the Beneficiary on the extension of the term of the Letter of Guarantee or any other matters during the validity of the Letter of Guarantee shall not affect Party B's responsibility for the pledge guarantee, and Party B shall recognize it retroactively, and Party A shall not be required to notify Party B in this respect.**

Article 5 Transfer and Delivery of the Pledge / Registration of Pledge

5.1 Party B shall transfer the Pledge to Party A for possession on the date of signing this contract if the Pledge hereunder is movable property.

Should the Pledge be deposited with a third party other than Party B, a *Notice of Pledge* shall be issued by Party B to that third party on the date of signing this contract, and the Pledge shall be deemed to be transferred to Party A's possession upon service of the notice on that third party.

Party B shall, if it provides the Pledge for the business hereunder with a margin, deposit that margin as agreed to its account with Party A (the margin account number shall be the one automatically generated by Party A's system at the time of deposit) at the request of Party A.

Such act shall be deemed to specify and transfer the funds to Party A's possession in the form of margin as security for Party B's (or the Debtor's) obligations under the *Guarantee Agreement*.

5.2 Party B shall, on the date of signing this contract, deliver to Party A the document of title if the Pledge hereunder is a title.

5.3 Party B shall, within the period required by Party A, cooperate with Party A to register the Pledge with the corresponding registration authority with this contract and relevant information if the Pledge hereunder must be registered in accordance with law before it can be established.

5.4 Party B shall, in good faith, actively cooperate with Party A to handle the relevant procedures in accordance with the aforementioned provisions, and be liable for any loss suffered by Party A if it fails to transfer or deliver the Pledge/document of title or complete the pledge registration procedures in due time in accordance with the provisions.

Article 6 Period of Pledge

The pledge is valid from the effective date of this contract to the expiration of the statute of limitations for the claims of principal and interest on advances paid by Party A to the Beneficiary on behalf of Party B (or the Client) under the *Guarantee Agreement* and the Letter of Guarantee and the other claims under the *Guarantee Agreement*.

Article 7 Custody of the Pledge and Responsibilities:

7.1 Party A shall take proper custody of the Pledge during the period of pledge, and shall bear civil liability for loss or destruction of the Pledge due to poor custody;

7.2 Party B may request Party A to lodge the Pledge or return it by settling the debt in advance, if the Pledge is likely to be lost or destroyed due to Party A's failure to properly keep it.

Article 8 Insurance

Party B shall, in accordance with the insurance coverage required by Party A, apply for full property insurance of the Pledge with the insurance company designated by Party A, with Party A as the first beneficiary, and submit the insurance policy to Party A for preservation. The insured period shall expire on a date later than the expiration of the effective period of the Letter of Guarantee. Party A shall, in the event of loss of the insured property, be entitled to recover the principal and interest of the advance and all other related expenses from the insurance compensation on a priority basis, alternatively, the insurance compensation shall be deposited into the margin account (the margin account number shall be the one already exists with Party A or automatically generated by Party A's system at the time of deposit, the same below), so that Party A can be compensated from that insurance compensation after assuming the payment responsibility under the Letter of Guarantee.

Party A is entitled to go through the procedures of insuring the Pledge directly on behalf of Party B if the latter fails to do so.

Article 9 Collection of Fruits

Party A shall have the right to collect the fruits of the Pledge, which shall first be used to offset the cost of the fruits.

Article 10 Cost Bearing

The entrusting party shall bear the related costs if this contract involves notarization (except for the enforcement of notarization) or other matters for which a third party is entrusted to provide services. Each of the parties will bear 50% if they are jointly acting as the clients.

Article 11 Party A may request Party B to provide relevant guarantees, if, within the validity period of this contract, the Pledge has the possibility of damage or obvious reduction in value and endangers the rights of Party A. Party A is entitled to dispose of the Pledge in advance if Party B fails to provide such guarantees.

Article 12 If, during the term of this contract, Party B undergoes a separation or merger, its obligations hereunder shall be assumed or separately assumed by the institution or institutions after the change; Party A shall have the right to dispose of the Pledge in advance if Party B is declared dissolved or bankrupt.

Article 13 Where the Pledge under this contract is a document of title (including, but not limited to, bills, bonds, deposit receipts, warehouse receipts, bills of lading), Party A shall have the right to cash in or withdraw the goods for realization upon the expiration of such document of title and deposit the full amount recovered into the margin deposit account opened by Party B with Party A, provided that such document of title expires earlier than the obligations under the *Guarantee Agreement*, and such funds shall be deemed to be specified and transferred to Party A's possession and continue to serve as a pledge guarantee for Party B's (or the Client's) debts under the *Guarantee Agreement*; or Party A shall negotiate with Party B to withdraw the goods under the document of title and handle the withdrawal. Party B has no objection to this and shall cooperate in the relevant procedures in accordance with Party A's requirements.

Where the Pledge under this contract is a deposit receipt, it shall continue to be served as the pledge guarantee under the *Guarantee Agreement* after automatic transfer and deposit within the period of pledge, and the changes to the certificate number, amount or period incurred by the transfer and deposit shall have no influence on the effect of pledge.

Where the Pledge is a deposit receipt or warehouse receipt that expires later than the specific matters under the *Guarantee Agreement*, Party A shall be entitled to withdraw relevant funds or organize the auction/sales of relevant goods in advance, and pay off the debts of Party B (or the Client) under the *Guarantee Agreement* with the collected funds in advance.

Article 14 Party A may dispose of the Pledge in accordance with the laws, if,

14.1 Party B or the Client fails to deposit the full amount of margin pursuant to the *Guarantee Agreement* or the balance of its margin account is insufficient or is frozen or withheld by judicial authorities after Party A assumes the responsibility of payment under the Letter of Guarantee, resulting in the principal and interest of Party A's advance cannot be recovered in time;

14.2 Party B's or the Client's place of business is seized or closed by judicial or administrative authorities; or ceases to operate for more than 2 months without valid reasons, cancels or has its business license revoked;

14.3 Party B or the Client is declared dissolved or bankrupt;

14.4 Party B, when a natural person, dies without an inheritor or legatee, or if his/her inheritor or legatee renounces the inheritance or legacy and refuses to fulfill this contract;

14.5 Any of the events specified in Articles 11 and 12 hereof occur;

14.6 Other events occur that impede the fulfillment of the *Guarantee Agreement*.

Article 15 Realization of Pledge Right

Party A shall return the Pledge, and the pledge right shall be revoked, if Party B or the Client has deposited sufficient amount of margin or has sufficient balance in its deposit account according to the provisions of the *Guarantee Agreement*, so that Party A does not need to make any advance when assuming the payment responsibility under the Letter of Guarantee, or if Party B or the Client has raised sufficient funds to pay off the principal and interest of Party A's advance and all other related expenses after Party A has made the advance.

In the event of any of the circumstances specified in Articles 11, 12 and 14 hereof, Party A may negotiate with Party B to repay the principal and interest of Party A's advance and all other related expenses by discounting the Pledge, or auctioning or selling the Pledge, or depositing the funds into the margin account opened by Party B with Party A for the payment of the amount payable under the Letter of Guarantee, and such funds shall be deemed to be specified and transferred to Party A's possession from the date of entering the margin account as pledge guarantee for the obligations under the *Guarantee Agreement*.

Party B shall own any portion of the price exceeding the principal and interest of Party A's advance and all other related expenses after the discount or auction or sale of the Pledge;   in case of shortage, Party A can recover the amount separately.

Article 16 Alteration and Cancellation of the Contract

After this contract takes effect, any party shall not unilaterally modify or cancel the contract without the consent of the other party. If the contract needs to be changed or cancelled, a written agreement shall be reached between both parties through consultation. Before reaching that agreement, the terms of this contract shall still be valid.

Article 17 Notice

Notices, requests, etc. from Party A and Party B regarding this contract shall be sent in writing.

Party A's contact address: No. 10 Xindong Road, Chaoyang District, Beijing

Party B's contact address: Building 1, No. 11 Yard, East Hepingli Ave, Dongcheng District, Beijing

The notice shall be deemed to be served, on the date of receipt by the recipient if it is delivered by personal service (or on the date of refusal if it is refused by the recipient), or seven days after it is sent if it is delivered by mail, or upon receipt by the recipient's fax system if it is delivered by fax.

Either party shall promptly notify the other party of any change in its contact address, otherwise it shall bear the losses that may arise as a result.

Article 18 Terms

All terms in this contract shall have the same meaning as set forth in the *Guarantee Agreement*, unless otherwise expressly stated.

Article 19 No Waiver

During the period of pledge, any indulgence, leniency or deferment by Party A of any default or delay by the Debtor and Party B in enforcing the *Guarantee Agreement* and the interests or rights to which Party A is entitled within this contract shall not impair, affect or restrict all the rights and interests to which Party A is entitled as a creditor under the relevant legal provisions and this contract, nor shall it be deemed a waiver of Party A's right to take action against existing or future defaults.

Article 20 Dispute Settlement

Any dispute arising between Party A and Party B in the performance of this contract shall be settled by negotiation; if negotiation fails, the parties agree to resolve the dispute in accordance with the dispute resolution method agreed in the *Guarantee Agreement*.

Article 21 Effectiveness

This contract takes effect from the date of signature/name seal of the legal representative/responsible person or authorized agents of the parties and the official seal/contract seal of the units (if Party B is a natural person, this contract takes effect from the date of signature/name seal of the legal representative/responsible person or authorized agent of Party A and its official seal/contract seal and Party B's signature), and expires when the principal and interest of Party A's advance and all other related expenses under the *Guarantee Agreement* and the Letter of Guarantee are paid off.

Article 22 Supplementary Terms

22.1 _____

_____

22.2 _____

_____

22.3 _____

_____

Article 23 Supplementary provisions

This contract is in <u>duplicate</u>, Party A, Party B and _____, _____ each party holds one copy.

Special Notes:

1. All the terms of this contract are fully negotiated by the parties. The bank has also requested other parties to pay special attention to clauses related to the exemption or restriction of bank responsibilities, certain rights unilaterally owned by the bank, the increase in other parties' responsibilities or the restriction of other parties' rights, and then understand them comprehensively and accurately. The bank has provided corresponding explanations for the aforementioned clauses upon the request of other parties. The parties have completely identical understandings of the articles in this contract.

2. The Guarantor acknowledges that the operations of the bank for the specific business of the guaranteed person and the operations of the bank involving this guarantee document can be handled by, and relevant letters can be generated and issued any business branch under the jurisdiction of the bank, and the business operations and letters of such branches are regarded as the bank's acts and are binding on the bank and the Guarantor.

(This page is for signature only)

Party A: China Merchants Bank Co., Ltd. Beijing Gongti Sub Branch    (Seal)

Responsible person or authorized agent (signature/name seal): *[signature]*

Sign here when the Pledgor is a juridical person:

Party B: NQ Wireless (Beijing) Technology Co., Ltd.    (Seal)

Legal representative / responsible person / authorized agent (signature/seal): Seal of Xu Zemin

Sign here when the Pledgor is a natural person:

Party B (signature):

ID Card No.:

Date of signing: May 28, 2018

00 1530

Zhao Yang

附件11                                                                                        WX-2018-39

# 质 押 合 同

（适用于银行担保项下的质押）

编号：2018工体质押字第001号

**质权人**：招商银行股份有限公司<u>北京工体支行</u>（以下简称甲方）

负责人：黄猛

**出质人**：网秦无限（北京）科技有限公司　　　（以下简称乙方）

法定代表人/主要负责人：许泽民

或

**出质人**：

身份证号：

鉴于：

1. 甲方根据乙方（同时亦是委托人）的申请，与乙方于<u>2018</u>年<u>5</u>月<u>28</u>日签订了编号为<u>████008</u>的《担保协议》（以下称《担保协议》）。或

2. 甲方根据＿＿＿＿＿＿＿＿＿＿＿＿（以下称"委托人"）的申请，与委托人于＿＿＿年＿＿月＿＿日签订了编号为＿＿＿＿号《担保协议》（以下称《担保协议》）。

甲方据此同意就<u>融资性保函</u>一事向<u>招商银行卢森堡分行</u>（即"受益人"）出具编号为<u>████008</u>的保函/备用信用证（以下简称《保函》），在<u>美</u>币<u>捌仟捌佰捌拾捌</u>万元限额内承担保证责任。

为确保乙方（或委托人）及时足额地偿还其在《担保协议》项下所欠甲方的一切债务，乙方愿意以其所有或依法有权处分的财产或权利作为质物；经甲方审查，同意乙方以其所有或依法有权处分的财产或权利作为质物；甲乙双方依照有关法律规定，经平等协商，就下列条款达成一致，特订立本合同：

第1条　乙方用于质押的质物

1.1 名称：定期存款存单（结构性存款）

1

1.2 数量：壹

1.3 价值及折扣率：人民币陆仟零叁佰肆拾万元正　95%

1.4 期限：358天

1.5 权属证明：自有

1.6 权属证明编号：■■■■4326

第2条　质押担保的范围

本合同担保的范围为乙方（或委托人）根据《担保协议》应向甲方支付的一切款项，包括但不限于甲方承担《保函》项下付款责任而为乙方（或委托人）向受益人支付的垫款本金、利息、罚息、复息、违约金、实现质权的费用及乙方（或委托人）依据《担保协议》应向甲方支付的担保费等相关费用。

第3条　本合同的独立性

本质押担保具有独立性，不受《担保协议》效力的影响，也不受第三人为乙方（或委托人）出具的担保书、与任何单位签订的任何协议、文件的影响，不因乙方（或委托人）的欺诈、重组、被收购、停业、解散、清算、破产等各种变化而发生任何改变，也不因甲方给予乙方（或委托人）任何时间上的宽限和延期或延缓行使依据有关协议追讨乙方（或委托人）所欠款项而受任何影响。即使在甲方债权同时另有抵、质押担保或保证人的情况下甲方放弃抵押权顺位，放弃、变更或解除其他抵、质押担保，变更、解除保证人保证责任，或甲方选择先行要求乙方以质物承担质押担保责任，乙方依然依本质押合同规定内容对甲方承担质押担保责任。

第4条　乙方完全接受和认可甲方向受益人开立的保函的内容，同意甲方按有关规定和国际惯例办理保函项下一切事宜；在保函有效期内甲方与委托人或受益人之间就保函期限展期或任何其他事项达成的补充协议，均不影响乙方的质押担保责任，乙方均予以追认，甲方可无须通知乙方。

第5条　质物的移交与交付/质押登记：

5.1 本合同项下的质物为动产的，在签订本合同之日，乙方须将质物移交甲方占有。

若质物存放于乙方以外的第三方处，乙方应在签订本合同之日向该第三方发出《出质通知》，质物自《出质通知》送达第三方时视为移交甲方占有。

乙方以保证金为本协议项下业务提供质押的，乙方应按甲方要求向其在甲方

2

开立的账户（保证金账号以保证金存入时甲方系统自动生成的帐号为准）存入约定的保证金，该行为视同将资金以保证金的形式特定化并移交甲方占有，作为乙方（或债务人）在《担保协议》项下债务的担保。

5.2 本合同项下质物为权利的，在签订本合同之日，乙方须将权利凭证交付给甲方。

5.3 本合同项下质物依法必须办理出质登记质权方能设立的，乙方应在甲方要求的期间内，配合甲方持本合同及有关资料到相应的登记管理机构办理出质登记。

5.4 乙方应本着诚实信用的原则，积极配合甲方按照前述规定办理相关手续，乙方未根据规定及时移交或交付质物/权利凭证或的办妥质押登记手续的，应对甲方因此遭受的损失承担赔偿责任。

第6条   质押期间

质押期间为从本合同生效之日起至《担保协议》及《保函》项下甲方为乙方（或委托人）向受益人支付的垫款本息债权及《担保协议》项下其他债权诉讼时效届满的期间。

第7条   质物的保管及责任：

7.1 在质押期间，甲方须妥善保管质物，因保管不善致使质物灭失或毁损的，甲方应承担民事责任；

7.2 因甲方不能妥善保管质物而可能致使其灭失或毁损的，乙方可以要求甲方将质物提存，或者要求提前清偿债务而返还质物。

第8条   保险

乙方应按甲方要求的险别、以甲方为第一受益人、将质物向甲方接受的保险公司办理足额的财产保险，并将保险单交甲方保存；投保期限应长于《保函》有效期限届满之日；投保财产若发生损失，甲方有权从保险赔偿中优先收回垫款本息及其他一切相关费用；或将保险赔偿金存入保证金账户（保证金账号为乙方在甲方已实际开立的保证金账户的账号，或为保证金存入时甲方系统自动生成的账号，下同），以备甲方承担《保函》项下付款责任后，从该项赔偿金中获得受偿。

如乙方未办理质物投保手续，甲方有权代理乙方直接办理。

第9条   孳息收取

3

甲方有权收取质物所生的孳息，此项孳息收入应先行用于充抵孳息的费用。

第10条　费用承担

本合同涉及公证（强制执行公证除外）或其他委托第三方提供服务的事项的，相关费用由委托方自行承担。如双方共同作为委托人的，则各承担50%。

第11条　在本合同有效期内，质物有损坏或者价值明显减少的可能、危害甲方权利的，甲方可以要求乙方提供相应的担保；乙方不提供的，甲方有权提前处分质物。

第12条　在本合同有效期内，乙方如发生分立或合并，由变更后的机构承担或分别承担本合同项下义务；若乙方被宣布解散或破产，甲方有权提前处分质物。

第13条　本合同项下质物为权利凭证（包括但不限于票据、债券、存单、仓单、提单等）的，如该权利凭证到期日早于《担保协议》项下债务到期日，甲方有权于该权利凭证到期时兑现或提货变现，并以所收回的款项全额存入乙方在甲方开立的保证金账户，该等资金自进入保证金账户之日起视为特定化及移交甲方占有，继续作为乙方（或委托人）在《担保协议》项下债务的质押担保，或与乙方协商提取权利凭证项下货物并办理提存，乙方对此无异议，并应按照甲方的要求配合办理相关手续。

本合同项下质物为存单的，质押期间内存单自动转存后继续作为为《担保协议》项下债务提供质押担保的质物，因转存而产生的存单编号、金额或期限的变化对于质押效力不发生影响。

本合同项下质物为存单或仓单的，存单或仓单到期日晚于《担保协议》项下各具体业务到期日的，甲方有权提前支取有关款项或提前拍卖/变卖有关货物，并以所收回的款项提前清偿乙方（或委托人）在《担保协议》项下债务。

第14条　出现下列情况之一时，甲方可以依法处分质物：

14.1　甲方承担《保函》项下付款责任后，乙方或委托人未能按《担保协议》交足保证金或其存款账户存款余额不足或被司法机关采取冻结、扣划措施，致甲方垫款本息不能及时收回的；

14.2　乙方或委托人经营场所被司法或行政机关查封或关闭；或无正当理由停止营业2个月以上、注销或被吊销营业执照的；

14.3　乙方或委托人被宣布解散、破产的；

14.4　乙方为自然人时，发生死亡而无继承人或受遗赠人的情形，或其继承

4

人或受遗赠人放弃继承或遗赠，拒绝履行本合同的；

14.5 发生本合同第11、12条规定的事由；

14.6 危及《担保协议》履行的其他事由。

第15条 质权的实现

乙方或委托人按《担保协议》规定存足保证金或其存款账户上存有足够的存款余额，使甲方承担《保函》项下付款责任时无须垫款的；或甲方垫款后，乙方或委托人筹足资金还清了甲方垫款本息及其他一切相关费用的，质权随之消灭，甲方应当返还质物。

发生本合同第11、12、14条规定的任一种情况，甲方可以与乙方协商以质物折价，或拍卖、变卖质物，以偿还甲方垫款本息及其他一切相关费用，或存入乙方在甲方开立的保证金账户，以备支付《保函》项下应付款项，该等资金自进入保证金账户之日起视为特定化及移交甲方占有，作为担保协议下债务的质押担保。

质物折价或者拍卖、变卖后，其价款超过甲方垫款本息及其他一切相关费用数额的部份归乙方所有；不足部份，甲方另行追偿。

第16条 合同的变更和解除

本合同生效后，未经对方同意，任何一方不得擅自变更或解除本合同。需要变更或解除合同时，应经双方协商一致，达成书面协议。协议未达成前，本合同条款仍然有效。

第17条 通知

甲方和乙方关于本合同的通知、要求等应以书面形式发送。

甲方联系地址为：北京市朝阳区新东路10号

乙方联系地址为：北京市东城区和平里东路11号院4号楼

由专人递送的，收件方签收视为送达（收件方拒收的，于拒收日视为送达）；以邮寄信函方式递交的，寄出后满七日视为送达；以传真方式递交的，收件方传真系统接收传真后视为送达。

任何一方变更联系地址，应当及时通知对方，否则自行承担因此可能产生的损失。

第18条　术语

本合同所使用术语，除另有明确说明外，均具有与《担保协议》规定相同的含义。

第19条　不视为弃权

在质押期间，甲方对债务人和乙方的任何违约或延误行为施以任何宽容、宽限或延缓执行《担保协议》和本合同内甲方应享有的权益或权利，均不能损害、影响或限制甲方依有关法律规定和本合同作为债权人应享有的一切权益和权利，也不能视为甲方放弃对现有或将来违约行为采取行动的权利。

第20条　争议的解决方式

甲、乙双方在履行本合同中发生的争议，由双方协商解决；协商不成的，双方同意按《担保协议》约定的纠纷解决方式解决。

第21条　质押合同的生效

本合同自双方法定代表人/主要负责人或其授权代理人签字/盖名章并加盖单位公章/合同专用章（如乙方为自然人，则本合同自甲方法定代表人/主要负责人或其授权代理人签字/盖名章并加盖公章/合同专用章及乙方签字）之日起生效，至《担保协议》及《保函》项下甲方垫款本金、利息及其他一切相关费用全部还清时失效。

第22条　其他补充条款

22.1 _____

_____

22.2 _____

_____

22.3 _____

_____

第23条　附则

本合同一式　**贰**　份，甲、乙双方及 _____ 、_____ 各执一份。

6

特别提示：

1、本协议的所有条款由各方进行了充分的协商。银行已提请其他当事方特别注意有关免除或限制银行责任、银行单方拥有某些权利、增加其他当事方责任或限制其他当事方权利的条款，并对其作全面、准确的理解。银行已应其他当事方的要求对上述条款作出相应的说明。签约各方对本协议条款的理解完全一致。

2、担保人确认，银行为被担保人办理具体业务的各项操作，以及银行涉及本担保文本各项操作，可由银行辖内任一营业网点处理并生成、签发或出具相关函件，银行辖内网点的业务操作及函件视同银行行为，对银行和担保人具有约束力。

（本页为签署页）

甲方： （盖章） 
主要负责人或授权代理人（签字/盖名章）：

出质人为法人时，签署此栏：
乙方： （盖章）   
法定代表人/主要负责人或授权代理人（签字/盖名章）：

出质人为自然人时，签署此栏：
乙方（签字）
身份证号：

签署日期：2018年 5 月 28 日



8