UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

WAYNE BALIGA,

                      Plaintiff,

            -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI, ROLAND WU, and
ZEMIN XU,

                      Defendants.

----------------------------------------------------------------X

18-CV-11642 (VM) (VF)

**REPORT &
RECCOMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO THE HONORABLE VICTOR MARRERO, United States District Judge:**

        On December 12, 2022, Defendants Link Motion Inc. ("LKM") and Vincent Wenyong Shi (collectively, "Defendants") moved to dismiss, in relevant part, Plaintiff Wayne Baliga's common-law-fraud claim pursuant to Federal Rule of Civil Procedure 12(b)(6). See ECF No. 381. On August 10, 2022, the Court issued a Report and Recommendation (the "R&R"), recommending that Defendants' motion to dismiss Plaintiff's Second Amended Complaint ("SAC") be granted in part and denied in part. See ECF No. 328. Specifically with respect to Plaintiff's common-law-fraud claim (Count V of the SAC), the Court recommended that the motion to dismiss be denied. See id. at 52-54.

        On November 4, 2022, the Honorable Victor Marrero issued a Decision and Order adopting in part, rejecting in part, and modifying in part the recommendations set forth in the R&R. See ECF No. 372 (the "Decision and Order"). With respect to Plaintiff's common-law-fraud claim, Defendants raised an objection to the R&R, arguing that the Court had erred in concluding that Plaintiff had adequately pled reliance based on the presumption in Affiliated

1

Ute.[1] See ECF No. 330 (Shi's objection to the R&R). In responding to Shi's objections, Judge Marrero noted that "neither party [had] directly addressed whether and to what extent Affiliated Ute applies to state common law fraud claims" in briefing the motion to dismiss. Decision and Order at 39. Further, Judge Marrero noted that neither party had addressed how the presumption "applies where the securities allegations primarily focus on a failure to disclose, but the common law fraud claims, targeting the same misstatement and omissions, are pled as grounded in a more direct theory of reliance." Id. at 39-40. Accordingly, Judge Marrero directed the parties to submit supplemental briefing "to further address the application of Affiliated Ute to New York common law fraud claims," and for the undersigned to "issue an amended report and recommendation based on the arguments" contained therein. Id. at 40.

The Court assumes the parties' familiarity with the factual and procedural background of this case, which are recounted in the R&R and the Decision and Order. See R&R at 1-14; Decision and Order at 2-8. As is relevant to the instant motion, on December 12, 2022, Defendants submitted their supplemental memorandum of law in further support of their motion to dismiss Plaintiff's common-law-fraud claim. See ECF No. 381. Plaintiff submitted his response on January 9, 2023, see ECF No. 383, and briefing was completed on January 23, 2023, see ECF No. 392. The Court held oral argument on the instant motion on May 24, 2023. See

---

[1] Under the Affiliated Ute presumption, where a claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) "primarily" involves "a failure to disclose, positive proof of reliance is not a prerequisite to recovery." See Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153 (1972). In other words, the "Affiliated Ute presumption of reliance" applies "in fraudulent omission cases." See Strougo v. Barclays PLC, 312 F.R.D. 307, 312-14, 319 (S.D.N.Y. 2016) (internal quotation marks omitted); Waggoner v. Barclays PLC, 875 F.3d 79, 93 (2d Cir. 2017) ("[T]he Affiliated Ute presumption [] allows the element of reliance to be presumed in cases involving primarily omissions, rather than affirmative misstatements, because proving reliance in such cases is, in many situations, virtually impossible.") (citations omitted).

ECF No. 426 ("Tr."). For the reasons set forth below, I recommend that the Court dismiss Plaintiff's common-law-fraud claim because Plaintiff's allegations do not adequately plead reliance as required under New York law. However, I recommend that Plaintiff be afforded leave to amend his common-law-fraud claim to add additional factual detail with respect to the element of justifiable reliance.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). In determining if a claim is sufficiently plausible to withstand dismissal, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); see also Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322, 323-24 (2007). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

## DISCUSSION

A. The presumption of reliance under *Affiliated Ute* does not apply to common-law-fraud claims under New York law.

As a threshold matter, Defendants argue that the Affiliated Ute presumption does not apply to common-law-fraud cases. See ECF No. 381 at 5-8; ECF No. 392 at 4-7. Under

3

Affiliated Ute, a plaintiff in a securities-fraud action under Section 10(b) of the Exchange Act may rely on a presumption of reliance where the defendant had a "duty to disclose" and the omitted facts are material "in the sense that a reasonable investor might have considered them important" in making investment decisions. See Affiliated Ute, 406 U.S. at 153-54; Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 159 (2008) (citation omitted); Strougo, 312 F.R.D. at 319. In short, a plaintiff asserting a securities-fraud claim based on a failure to disclose a material fact need not plead actual reliance because Affiliated Ute allows for the application of a presumption of reliance. See Strougo, 312 F.R.D. at 312-14, 319; Waggoner, 875 F.3d at 93, 95.

Defendants are correct that courts in this District have declined to apply the Affiliated Ute presumption to common-law-fraud claims under New York law. See, e.g., Ramiro Aviles v. S & P Glob., Inc., 380 F. Supp. 3d 221, 283 (S.D.N.Y. 2019) (noting that "in fraud cases arising under the federal securities laws, reliance on . . . omitted information may be presumed where such information is material," but that "courts have repeatedly refused to import this presumption into New York common law") (citation and internal quotation marks omitted); Int'l Fund Mgmt. S.A. v. Citigroup Inc., 822 F. Supp. 2d 368, 386-87 (S.D.N.Y. 2011) (noting that courts in this District "have repeatedly refused to import this presumption into New York common law"); In re Lehman Bros. Sec. & ERISA Litig., No. 09-MD-2017 (LAK), 2013 WL 5730020, at *4 n.44 (S.D.N.Y. Oct. 22, 2013) (noting that courts in this District have "declined to apply the Affiliated Ute presumption of reliance to claims for common law fraud under New York law"); Feinberg v. Katz, No. 01-CV-2739 (CSH), 2007 WL 4562930, at *5-6 (S.D.N.Y. Dec. 21, 2007) (opining that it is "doubtful New York courts would apply to a common law fraud claim that presumption

of reliance found in Affiliated Ute," but declining to decide the issue).[2] Accordingly, a common-law-fraud claim in New York requires allegations of "actual reliance, not the presumed reliance of a Section 10(b) action." Int'l Fund Mgmt., 822 F. Supp. 2d at 387 (citing Secs. Investor Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 73 (2d Cir. 2000)). A plaintiff alleging a common-law-fraud claim must therefore "show actual reliance for [both] misrepresentations *and* omissions." Id.

Plaintiff acknowledges that decisions in this District do not apply the Affiliated Ute presumption to claims of common law fraud under New York law. See Pl.'s Br. at 8, ECF No. 283. Instead, Plaintiff argues that the "principles" of Affiliated Ute apply where, as here, the alleged fraud involves matters peculiarly within a defendant's knowledge and the defendant had knowledge of the material omission. Id. at 8-9. Stated differently, Plaintiff contends that direct reliance is adequately alleged for a common-law-fraud claim in New York where the defendant had a duty to disclose the material omission but failed to do so, and the defendant had knowledge of the omission. See Tr. at 18-19, 21-23, 31. For the reasons explained in the next section, Plaintiff is mistaken.

B. Plaintiff has not alleged facts demonstrating actual reliance as required to adequately plead a common-law-fraud claim under New York law.

A claim of fraud under New York law requires: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose

---

[2] See also In re Motel 6 Sec. Litig., No. 93-CV-2183 (JFK), 1997 WL 154011, at *5-6 (S.D.N.Y. Apr. 2, 1997) ("Common law fraud cases . . . are therefore to be distinguished from cases that involve[] . . . theories in which reliance on a material omission is presumed to have existed and which are applicable primarily in the context of federal securities fraud claims . . . .") (citations omitted); Eugenia J. Fiala v. Metropolitan Life Insurance, No. 0601181/2000, 2006 WL 4682149 (N.Y. Sup. Ct. May 2, 2006) (explaining that although "proof of reliance is not required" in federal securities actions, "such actions are distinct from claims of common law fraud") (citation omitted).

of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (citation omitted); Pasternack v. Lab'y Corp. of Am. Holdings, 27 N.Y.3d 817, 827 (2016) (citation omitted). Pursuant to CPLR 3016(b), the circumstances constituting fraud must be pled with particularity. See Orix Credit All., Inc. v. R.E. Hable Co., 256 A.D.2d 114, 116 (1st Dep't 1998).

       Under New York law, a common-law-fraud claim can be based on "a misrepresentation or a material omission of fact." Ambac Assurance Corp. v. Countrywide Home Loans, Inc., 31 N.Y.3d 569, 578 (2018) (citation omitted). For a case involving an alleged misrepresentation, a plaintiff must allege facts from which it can be inferred that the plaintiff "reasonably relied on the misrepresentation." P.T. Bank Cent. Asia v. ABN AMRO Bank N.V., 301 A.D.2d 373, 376 (1st Dep't 2003); see also ACA Fin. Guar. Corp. v. Goldman, Sachs & Co., 25 N.Y.3d 1043, 1044 (2015) (explaining that to support fraudulent-inducement claim, "plaintiff must allege facts to support the claim that it justifiably relied on the alleged misrepresentations"). And as is principally the case here, where the fraud claim turns on an omission or concealment rather than an affirmative misrepresentation, the plaintiff must also prove that the "defendant owed a duty to disclose the material fact alleged to be omitted or concealed." Towne v. Kingsley, 163 A.D.3d 1309, 1311 (3d Dep't 2018) (citation and internal quotation marks omitted). In other words, a cause of action for common law fraud in New York may be predicated on an omission if the defendant had a "duty to disclose the matters that were allegedly withheld." Aviles, 380 F. Supp. 3d at 299 (internal quotation marks omitted) (citing Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 179 (2011)); see also Gomez-Jimenez v. New York Law School, 103 A.D.3d 13, 18 (1st Dep't 2012) (noting that fraud claim based on concealment requires "an allegation that the

6

defendant had a duty to disclose material information and that it failed to do so") (citation and internal quotation marks omitted); MBIA Ins. Corp. v. J.P.Morgan Sec. LLC, No. 64676/2012, 2014 WL 1797065, *27 (N.Y. Sup. Ct. May 6, 2014) (same).

A duty to disclose material facts under New York law arises in three situations: (1) "where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth"; (2) "when the parties stand in a fiduciary or confidential relationship with each other"; and (3) "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Aviles, 380 F. Supp. 3d at 299 (quoting Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc., 429 F. Supp. 2d 582, 609 (S.D.N.Y. 2006)); see also Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006) (fraudulent concealment in the context of business negotiations); MBIA Ins. Corp., 2014 WL 1797065, at *28 ("[A] potential viable fraud claim may be predicated either upon the theory that Bear Stearns had special knowledge not available to MBIA or that Bear Stearns' responses to MBIA's requests for delivery of the due diligence information were misleading in that they failed to disclose the problems known to Bear Stearns.").

Indeed, even absent a fiduciary relationship between the parties, under the "special facts" doctrine, "there is nonetheless a duty to disclose when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." Sports Tech. Applications, Inc. v. MLB Advanced Media, L.P., 188 A.D.3d 619, 620 (1st Dep't 2020) (citation and internal quotation marks omitted); see also Hotel Cap. LLC v. Wells Fargo Bank, No. 18319/11, 2012 WL 1506120, *6 (N.Y. Sup. Ct. Apr. 26, 2012). This doctrine requires satisfaction of a two-prong test: that the material omission was information "peculiarly within

the knowledge" of defendant, and that the information was not such that could have been discovered by plaintiff through the "exercise of ordinary intelligence." MBIA Ins. Corp., 2014 WL 1797065 at *28 (citation and internal quotation marks omitted); Sports Tech. Applications, 188 A.D.3d at 620; Hotel Cap. LLC, 2012 WL 1506120, *8, 10 (finding that plaintiff "sufficiently alleged that the defendants had superior and exclusive knowledge of [material] facts"); Barrett v. Freifeld, 77 A.D.3d 600, 601-02 (2d Dep't 2010) (finding that "plaintiff did not justifiably rely on the appellants to disclose th[e] information" because the alleged omissions "could have been discovered through the exercise of ordinary diligence"); accord Towne, 163 A.D.3d at 1311-12.

As already discussed, because a presumption of reliance under Affilated Ute does not apply to common-law-fraud claims in New York, a plaintiff alleging a fraud claim based on an omission must allege facts from which to infer that the plaintiff directly relied on a defendant's alleged material omission and that the defendant had a duty to disclose the material omission. See In re Motel 6, 1997 WL 154011, at *5-6 (noting that "[c]ommon law fraud claims must be supported by factual allegations demonstrating plaintiff's actual, direct reliance on the misrepresentation or omission" and finding that plaintiffs "failed to allege[] facts to support a claim that they directly relied on Defendants' omissions"); see also Paolucci v. Mauro, 74 A.D.3d 1517, 1520 (3d Dep't 2010) (finding allegations that Defendants used "trickery" and "deceit" to procure plaintiff's withdrawal from their partnership were "necessarily premised on [plaintiff's] justifiable reliance on the material omissions allegedly made by his partners") (internal quotation marks omitted); Wells Fargo Bank, Nat. Ass'n v. Conestoga Title Ins. Co., No. 1534/2013, 2013 WL 6583958, *3 (N.Y. Sup. 2013) (finding plaintiff pleaded a cause of

action for common law fraud where defendant's concealment of a prior mortgage "induce[d] it to lend funds [for] the purchase" of property).

Plaintiff nevertheless argues that the element of justifiable reliance in a common-law-fraud claim is "inextricably linked" to whether the plaintiff had the means available to uncover the omission but failed to make use of those means. See Pl.'s Br. at 5; see also Tr. at 18-19, 21-23, 31. Stated differently, Plaintiff contends that he has pled justifiable reliance because he has alleged that Defendants knew of the self-dealing nature of the Tongfang Transaction, they had a duty to disclose that information, and Plaintiff did not have the means to uncover the true nature of the deal. See id. at 5-6, 9. The cases Plaintiff cites, however, do not support that argument. Instead, Plaintiffs own cited authority demonstrates that a plaintiff asserting a common-law-fraud claim must allege facts from which justifiable reliance could be inferred, in addition to, and independent of, the facts establishing that the defendant had a duty to disclose the material omission.

For example, in 904 Tower Apartment LLC et al. v. Mark Hotel LLC et al., 853 F. Supp. 2d 386, 389, 398-99 (S.D.N.Y. 2012), plaintiffs alleged that defendants fraudulently induced them to enter into a purchase agreement for two luxury apartments by failing to disclose certain loans and financing arrangements entered into by defendants that would affect the value of the apartments. In concluding that plaintiffs had plausibly alleged justifiable reliance, the court pointed to allegations that plaintiffs had "stopped looking for alternative living arrangements, performed their other obligations under the Purchase Agreements, and hired consultants to help perform the pre-closing inspection." Id. at 399. The plaintiffs thus pointed to specific actions they took in reliance on their mistaken belief about the existence of financing agreements that defendants had failed to disclose. Id. Those actions, though, were separate and independent of

9

whether the information about the financing agreements was material information which was not readily available to the plaintiffs. Id.

Similarly, in Towne v. Kingsley, the plaintiff alleged facts demonstrating his justifiable reliance on the defendant's omission, separate and apart from the facts establishing a duty to disclose the material omission. 163 A.D.3d at 1312. As is relevant here, the plaintiff in Towne asserted a fraud claim based on defendant's failure to disclose that he had conveyed the subject property from the parties' limited liability company to himself. Id. at 1309-10. The defendant argued that he did not have a duty to disclose that information to the plaintiff. Id. at 1310. After concluding that the evidence before the jury established that defendant owed plaintiff a duty to disclose, the court examined whether the evidence also established plaintiff's justifiable reliance. Id. at 1311-12. In that regard, the court noted that "the jury . . . heard testimony from plaintiff that defendant never asserted that he was the sole owner of the subject property" and that he "did not think that defendant could transfer title of the subject property without his consent." Id. at 1312. The jury also heard that the parties exchanged correspondence where "plaintiff indicated that he was unwilling to transfer ownership of the subject property without the parties resolving other outstanding issues." Id. And, the jury saw a letter from plaintiff to defendant, "dated approximately 10 months after defendant executed the deed transferring the subject property to himself, in which plaintiff suggested that the parties sell the subject property and rent space to defendant." See id. The court concluded that collectively, all of that evidence established "that plaintiff justifiably relied on" defendant's failure to disclose that he had transferred the property. Id. As Towne illustrates, the question of whether a plaintiff justifiably relied on an alleged omission is distinct from the question of whether the defendant had a duty to disclose. In other words, Towne does not support Plaintiff's position that the element of justifiable reliance can be

pled with allegations that the plaintiff did not have the "means available to know by the exercise of ordinary intelligence the truth" or the existence of the omission. See Tr. at 18-19, 21-23, 31.

Plaintiff's reliance on MP Cool Invs. Ltd. v. Forkosh, 142 A.D.3d 286 (1st Dep't 2016), is also misplaced. Plaintiff cites MP Cool for the proposition that pleading justifiable reliance where the fraud claim is based on an omission requires only an allegation that the plaintiff did not have the means to discover the "truth through the exercise of reasonable diligence." See Pl.'s Br. at 6. To be sure, the court in MP Cool concluded that the plaintiff's allegations there did not establish a claim for common law fraud because the plaintiff was a "sophisticated investor" that "had total, unfettered access" to the information relating to "the true nature" of the company in which it had purchased a majority interest. 142 A.D.3d at 287, 291-92. As the court explained, "[t]here is no factual basis on which to conclude that the alleged fraud involved matters peculiarly within defendants' knowledge, because plaintiff had the means to discover the truth behind any false claims about the condition of the company and whether this was a feasible investment." Id. at 292. But MP Cool merely illustrates that the plaintiff there could not allege a common-law-fraud claim based on an omission because plaintiff had not alleged the existence of a duty requiring defendant to disclose the material omission. As already discussed, a common-law-fraud claim based on an omission requires allegations establishing the existence of a duty to disclose, in addition to allegations establishing the other elements of a fraud claim. See supra pp. 5-10.

In short, a claim of common-law fraud in New York premised on an omission requires allegations from which one can infer that the plaintiff justifiably relied on the omission, coupled with allegations that the defendant had a duty to disclose the material omission. Plaintiff has pointed to no case where the element of justifiable reliance under New York law was adequately

pled or established merely by pointing to facts showing that the defendant had a duty to disclose the material omission. Against that background, I now consider whether Plaintiff has adequately pled justifiable reliance.[3]

At bottom, Plaintiff's fraud claim is premised on the alleged omissions by Defendants of material facts. As the R&R found, Plaintiff sufficiently alleged that Defendants failed to disclose the self-dealing nature of the Tongfang Transaction undertaken by LKM and Shi (LKM's Chairman of the Board during the relevant period), in that Defendants did not disclose Shi's significant ownership interest in Tongfang SPC and that he would receive an equity interest in both FL Mobile and Showself as a result of the Tongfang Transaction. See R&R at 23-34. The Court reasoned that the alleged self-dealing nature of the transaction that transferred two of LKM's most valuable asserts to an entity controlled by Shi was information a reasonable investor might want to know in connection with his investment decision. Id. at 26-31.

In reviewing the R&R following Defendants' objections, Judge Marrero agreed "that the 'crux of the alleged omissions in the SAC' was the failure of LKM 'to disclose Shi's financial interest in the Tongfang Transaction or the lack of any clear or direct affiliation between Tongfang SPC and Tsinghua Tongfang.'"[4] See Decision and Order at 26 (citing R&R at 30-31); see also R&R at 43 (citing SAC ¶¶ 76-94, 123); Decision and Order at 34 ("[T]he Court agrees with the R&R that this case is primarily about the failure to disclose that the Tongfang

---

[3] For the reasons stated in the R&R, Plaintiff has sufficiently alleged: (1) numerous materially false or misleading statements and omissions (see R&R at 23-34; see also SAC ¶¶ 76-94, ECF No. 166); and (2) scienter (see R&R at 34-39; see also SAC ¶¶ 102-13). Judge Marrero adopted each of those findings. See Decision and Order at 16-29. Consequently, the limited question presented here is whether Plaintiff has adequately pled reliance to support his common-law-fraud claim.

[4] At oral argument on the instant motion, counsel for Plaintiff reiterated that the common-law-fraud claim, like the securities claim, is based on a material omission. See Tr. at 6.

Transaction was a related party transaction."). Judge Marrero also adopted the R&R's finding "that the omission of information about Shi's position within the Tongfang Transaction was material given the context and manner of its presentation." See Decision and Order at 26 (citation and alteration omitted). Having already determined that Plaintiff's allegations primarily rely on material omissions, I turn to whether Shi and LKM had a duty to disclose those omissions and whether Plaintiff has alleged that he justifiably relied on a failure to disclose.

Beginning with whether a duty to disclose exists, as Chairman of LKM's Board during the relevant period (see SAC ¶¶ 18, 34), Shi owed a fiduciary duty to LKM's shareholders. See Quasha v. American Natural Beverage Corp., 171 A.D.2d 537, 537 (1st Dep't 1991) (noting that "corporate officers and directors of the defendant corporation [] owe a fiduciary duty to the plaintiff as a shareholder" and that "silence as to material facts may constitute fraud where there is a fiduciary relationship"); State v. McLeod, No. 403855/02, 2006 WL 1374014, *10 (N.Y. Sup. Ct. Feb. 9, 2006) (finding defendant's "fiduciary obligations as the controlling shareholder, board president and CEO of McLeodUSA . . . include[d] the duty to disclose" certain stock allocations and trades); see also Berkowitz v. 29 Woodmere Blvd. Owners', Inc., 50 Misc. 3d 843, 848 (N.Y. Sup. Ct. 2015) ("In their role as members of a board, the directors owe a fiduciary duty to the corporation's shareholders to act solely in the best interest of all shareholders.") (citations and internal quotation marks omitted); Blank v. Blank, 256 A.D.2d 688, 694-95 (3d Dep't 1998) (noting that officers and directors are fiduciaries of their corporation, owe it their undivided and unqualified loyalty, and may not profit personally at its expense, and finding that "Defendant's status as a shareholder and officer of the corporations imposed a fiduciary responsibility to decedent as a shareholder"). Shi thus had a duty to disclose material facts, such as his own financial interest in the Tongfang Transaction.

As for LKM, generally no fiduciary relationship exists between a corporation and its shareholders. See Hersh v. One Fifth Ave. Apartment Corp., 163 A.D.3d 500, 501 (1st Dep't 2018) ("[A] corporation owes no fiduciary duty to its shareholders."); Kleinerman v. 245 E. 87 Tenants Corp., 105 A.D.3d 492, 493 (1st Dep't 2013) (same). And in the context of a claim for common law fraud, the Court is not aware, and neither party has cited, a case where a New York court concluded that a corporation owed a fiduciary duty to its shareholder in connection with the purchase of securities. Instead, corporations are found to have a fiduciary duty, for example, where the corporate entity is a party to a loan transaction, or where a fiduciary relationship was created pursuant to a contractual agreement with the corporate entity. See, e.g., People ex rel. Schneiderman v. Bank of New York Mellon Corp., No. 114735/09, 2013 WL 4516209, at *19-20, *24-25 (N.Y. Sup. Ct. Aug. 5, 2013) (finding corporate defendant had a duty to disclose information where contractual agreement imposed a fiduciary duty); P.T. Bank, 301 A.D.2d at 378 (noting that corporate defendant may ultimately demonstrate that the information it allegedly had withheld regarding certain loan transactions was either nonexistent or available to plaintiff with the exercise of reasonable diligence).

In any case, even if LKM, in addition to Shi, had a duty to disclose the true nature of the Tongfang Transaction, Plaintiff has not sufficiently alleged justifiable reliance. In Count V of the SAC (the common-law-fraud cause of action), Plaintiff alleges that Defendants intentionally or recklessly "made material misrepresentations of material fact and/or omitted material facts" to "induce" his "reliance" in connection with investment decisions "in LKM securities," and that "[t]hese misrepresentations and/or omissions constitute fraud and deceit under the common law." See SAC ¶¶ 162-64. The SAC further alleges that "Plaintiff *directly* relied on Defendants' *false and misleading statements* alleged herein when deciding to purchase LKM securities and/or hold

14

LKM securities." See SAC ¶ 124 (emphasis added); see also id. ¶ 119 ("During the Relevant Period, Plaintiff reasonably relied on the materially false and misleading statements and omissions alleged herein in reaching investment decisions concerning LKM securities.").

Plaintiff made 33 total purchases of LKM securities between January 21, 2014, and August 17, 2018. See SAC ¶ 126. But Judge Marrero concluded that only the 13 transactions made after the March 30, 2017 press release announcing the Tongfang Transaction are actionable. See Decision and Order at 37-38. As Judge Marrero explained, those are the only actionable purchases of LKM securities, because "[t]he company's duty to disclose the related party nature of the Tongfang Transaction was triggered coincident to the March 30 press release."[5] See id. On February 6, 2018, the "Seeking Alpha Report" was issued, and Plaintiff alleges that the report "revealed that Shi was fraudulently on both sides of the Tongfang Transaction." SAC ¶¶ 57-58. Plaintiff engaged in a single transaction between March 30, 2017, and February 6, 2018—a purchase of stock on January 19, 2018. See SAC ¶ 126. Following the Seeking Alpha Report, the complaint alleges that Shi issued a misleading statement in a press release, falsely explaining that the transaction was not self-dealing. See, e.g., SAC ¶ 68. Plaintiff made several purchases after that statement, beginning on June 29, 2018. See SAC ¶ 126.

Nowhere in the SAC does Plaintiff specifically allege that he made the January 2018 purchase of stock in reliance on the announcement of the Tongfang Transaction, believing that it was a favorable, arms-length deal for LKM. For instance, Plaintiff does not explain that he purchased shares of LKM after announcement of the transaction because he believed that the

---

[5] Plaintiff's allegations concerning Defendants material misrepresentations and omissions include statements made by Defendants in various public filings and press releases relating to the Tongfang Transaction. See, e.g., SAC ¶¶ 43-45, 48, 53-56, 78-82, 85-87, 90-93.

transaction was advantageous for the company and could lead to a rise in its share price. Nor does Plaintiff specifically allege that he purchased shares in June 2018, following Shi's misrepresentation and failure to disclose the nature of the transaction, because he believed Shi's false narrative about the transaction. Instead, Plaintiff's allegations with respect to his justifiable reliance are conclusory and merely restate the element of the cause of action. See SAC ¶¶ 119, 124. And "conclusory allegations do not suffice to plead reliance." DoubleLine Capital LP v. Odebrecht Fin., Ltd., 323 F. Supp. 3d 393, 463 (S.D.N.Y. 2018) (citing cases); MP Cool Invs. Ltd., 142 A.D.3d at 291 ("[B]undled, bare-boned and conclusory allegations do not establish the basic elements of fraud."); In re Fyre Festival Litig., 399 F. Supp. 3d 203, 216-17 (S.D.N.Y. 2019) (concluding that "generality" of reliance allegations in complaint were insufficient to plead "with particularity" that plaintiff "actually relied" on alleged misstatements by defendants); see also Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (explaining that a complaint must provide sufficient factual allegations "to give the defendant fair notice of what the claim is and the grounds upon which it rests") (citation omitted).

Although Plaintiff states that he "reasonably relied on the materially false and misleading statements and omissions . . . in reaching investment decisions concerning LKM securities," SAC ¶ 119, plaintiff provides no factual detail explaining how he relied and what actions he took in reliance on the news of the Tongfang Transaction. See, e.g., In re Fyre Festival Litig., 399 F. Supp. 3d at 217 (in describing allegations that might plead reliance, court pointed to absence of allegations that any plaintiff "purchased tickets" to Festival "or that they placed money on their cashless wristbands" before Festival in reliance on false Twitter post). Nor does the SAC specifically allege that Plaintiff's continued purchase of LKM stock following news concerning

16

the alleged fraud was rooted in reliance on Shi's false statements defending the transaction after the Seeking Alpha Report. In sum, Plaintiff has failed to plead facts to support the direct reliance element of a common-law-fraud claim.

### C. Leave to amend should be granted.

Plaintiff requests "an opportunity to replead and provide additional allegations regarding the materials he relied on in making his investment decisions." See Pl.'s Br. at 5 n.3; see also Tr. at 39-41. The Federal Rules of Civil Procedure instruct that a court shall "freely" grant leave to replead "when justice so requires." Fed. R. Civ. P. 15(a)(2); see J.S. Serv. Ctr. Corp. v. Gen. Elec. Tech. Servs. Co., 937 F. Supp. 216, 225 (S.D.N.Y. 1996) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Indeed, "[p]rior to trial, leave to file an amended complaint 'shall be freely given' in the absence of factors such as 'undue delay, bad faith, or dilatory motive'" as well as "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Hinds County v. Wachovia Bank N.A., 291 F.R.D. 73, 74 (S.D.N.Y. 2013) (quoting Foman, 371 U.S. at 182); see also Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).

Plaintiff originally filed a Verified Shareholder Derivative Complaint on December 13, 2018. See ECF No. 1. On June 11, 2019, the Court granted in part Defendant Shi's motion to dismiss and directed Plaintiff to file an amended complaint. See ECF No. 64. On June 20, 2019, Plaintiff filed his First Amended Shareholder Derivative Complaint. See ECF No. 65. On September 4, 2020, the Court directed Plaintiff to file a Second Amended Complaint "clarifying" which claims were "asserted as shareholder derivative claims, and which [were] being asserted as direct claims," and to add any "new factual allegations" that are "material" to the claims. See

ECF No. 163 at 54. On October 5, 2020, Plaintiff filed the operative Second Amended Complaint as a direct shareholder action. See SAC.

To be sure, this case was originally filed in 2018 and this would be Plaintiff's third amendment to his complaint. But, discovery has not yet commenced in this case, Plaintiff is not seeking to add a new claim or a new defendant, and courts have routinely granted leave to amend even in cases where there has been significant delay between the filing of the initial complaint and the request for leave to amend. See Blagman v. Apple, Inc., No. 12 Civ. 5453 (ALC) (JCF), 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014) (collecting cases where leave to amend was granted after delays of up to seven years); cf. Frenkel v. New York City Off-Track Betting Corp., 611 F. Supp. 2d 391, 398 n.10 (S.D.N.Y. 2009) ("Normally, an amendment based on factual circumstances not raised by the original complaint would prejudice [defendant] if it required additional discovery after the discovery period had closed . . . ."), report and recommendation adopted, 701 F. Supp. 2d 544 (S.D.N.Y. 2010); Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998) ("[A] proposed amendment . . . [is] especially prejudicial . . . [when] discovery had already been completed . . . .") (alterations in original) (quoting Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985)).

Moreover, Plaintiff is merely adding additional factual allegations to support the element of reliance for his common-law-fraud claim—a claim that Defendant has been aware of for quite some time. See, e.g., Community Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp., No. 18 Civ. 4273 (PMH) (JCM), 2020 WL 5089444, at *4 (S.D.N.Y. Aug. 28, 2020) (granting leave to amend, in part, because the "[d]efendant had prior notice of [p]laintiff's proposed amendment" which arose "from the same facts pled in the original complaint") (citation and internal quotation marks omitted). And because discovery has not commenced, Defendants will

18

not be unduly prejudiced by an amendment, as they will be given a full opportunity to engage in discovery as it relates to the common-law-fraud claim. See Community Ass'n Underwriters, 2020 WL 5089444, at *3-4; Keane v. Keane, No. 08-CV-10375 (WCC), 2009 WL 1490686, at *5 (S.D.N.Y. May 27, 2009) (allowing leave to amend where plaintiff had not pled fraud claim with particularity, in part, because there was "no prejudice to defendant"); DiBella v. Hopkins, 187 F. Supp. 2d 192, 202 (S.D.N.Y. 2002) (granting leave to amend the first amended complaint because "[t]he case [was] at an early stage of the litigation" and "[defendant] ha[d] pointed to no prejudice that would result from the granting of leave to amend"). Simply put, Defendants will not be deprived of a fair opportunity to defend against Plaintiff's common-law-fraud claim if an amendment were permitted. As such, I recommend that Plaintiff be afforded one final opportunity to amend his complaint in order to allege additional facts to support the element of reliance in his common-law-fraud claim.

## CONCLUSION

For these reasons, I respectfully recommend that Defendants' motion to dismiss Plaintiff's common-law-fraud claim be **GRANTED** without prejudice and that Plaintiff be permitted one final opportunity to amend his complaint.

**SO ORDERED.**

DATED:   New York, New York
         June 21, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Victor Marrero. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**