# Robert W. Seiden

**Court-Appointed Temporary Receiver for Link Motion Inc.
Pursuant to The Honorable Judge Victor Marrero of the
United States District Court, Southern District of New York**

322 Eighth Avenue Suite 1200 New York, NY 10001 (212) 523–0686  rseiden@seidenlaw.com

**VIA ECF**

Hon. Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

July 24, 2023

Re: *Baliga, et al. v. Link Motion Inc., et al.*, 1:18-cv-11642-VM-VF (S.D.N.Y.)

Dear Judge Marrero,

     I write (1) in response to Your Honor's order dated July 18, 2023 (ECF 455) directing me to respond to the allegations made by Vincent Wenyong Shi ("Shi") in his letter to the Court dated July 17, 2023 (Dkt. No. 454) regarding the payments made by the Receiver's agent in China, Francis "Lilin" Guo ("Mr. Guo"), to Baliga's counsel at Greenberg Traurig, LLP, (2) to inform the Court of a new litigation in China which seeks a judgment of $163 million against LKM in connection with a transaction orchestrated by Shi, and (3) to provide additional information to the Court regarding the risk that LKM may be struck off the Cayman register at any time, contrary to Shi's assertions.

     Preliminarily, as further explained below, Shi's most recent allegations regarding Mr. Guo are nothing but a smokescreen, seeking to distract the Court from Shi's misconduct, including his diversion of tens of millions of dollars of LKM's cash to himself,[1] pledging all of LKM's assets for no consideration in breach of his fiduciary duties,[2] and cutting off the Receivership's access to LKM's remaining assets (which, as described below, has now left LKM at imminent risk of being struck off).  While Shi has demanded an accounting of the Receivership, to this day, Shi has never been held to account for his looting of LKM.  It is precisely because Mr. Guo has been actively and openly seeking to remove Shi as director of LKM (by convening an extraordinary general meeting of LKM's shareholders, with this Court's approval) that Shi has been seeking to discredit Guo with false allegations.  Shi's real objective is to derail Mr. Guo's efforts (as an agent of the Receiver) to regain control of LKM's remaining assets in China, consistent with the manner in which Shi has frustrated the Receivership at every turn for years.

---

[1] *See, e.g.*, ECF 161, 239 at 8-9, and 446.

[2] ECF 210-1 (HKIAC Award) ¶¶ 132, 145, 152 ("Dr. Shi plainly disregarded counsel's advice in negotiating and approving the two agreements. All of these facts establish that he breached his fiduciary duty to Link Motion in negotiating the two pledge agreements with Zhongzhi."), 155, 156, 158.  This Award is discussed further below.

1

**Robert W. Seiden**  Court-Appointed Temporary Receiver for Link Motion Inc. Pursuant to The Honorable Judge Victor Marrero of the United States District Court, Southern District of New York

**Shi's False Allegations Regarding Mr. Guo**

Shi's most recent filing is only the latest in a string of meritless accusations against Mr. Guo. The Receiver notes at the outset that the $50,000 at issue is not a Receivership expense, did not come out of any funds advanced to LKM by Mr. Guo pursuant to the Note agreement that was later converted to LKM shares, and neither the Receiver nor Mr. Guo is seeking any reimbursement for that payment in this action. *See* attached affirmation of Lilin Guo ¶ 11.

This was not a payment the Receiver was previously aware of and only learned of it when Shi's counsel raised it at the June 27, 2023 hearing before Magistrate Judge Figueredo concerning the accounting. After inquiring with Mr. Guo, my office learned that the payment was only inadvertly included by Mr. Guo with the hundreds of receipts that he submitted to the Court in the short turnaround time the Court had given the Receiver to respond to one of Shi's many prior submissions. Mr. Guo's payment to Greenberg Trauring *was not made* in Mr. Guo's capacity as the Receiver's agent, and it is *not* part of the Receivership's expenses.

There is also no basis for Shi's new allegations that Mr. Guo has a purported conflict. As the Receiver noted in a prior submission, Shi's allegation relies on a false dichotomy between Baliga's claims in his shareholder derivative action on the one hand (which expressly sought to stop Shi from looting LKM), and the Receivership on the other hand, which was established (at Baliga's request) with a mandate to "preserve and safeguard the Company's assets," ECF 26 at 3.[3] Indeed, Mr. Guo was appointed to his position as Receiver's agent precisely because, as someone with a large financial interest in the company as an ADR holder, he was willing to advance necessary funds and expend his time working for the benefit of LKM. Indeed, between 2015 and early 2018, Mr. Guo purchased 6,022,203 LKM ADRs from the secondary market and is still holding these ADRs.[4] Guo Aff. ¶ 2. Mr. Guo is part of a group of LKM ADR holders who have supported Mr. Baliga's litigation, and it was in his capacity as a shareholder that he made this payment.

There is also no merit to Shi's claim that extending this payment somehow multiplied litigation in this proceeding. Shi cites nothing supporting his contention that Mr. Guo's mere payment of legal expenses satisfies any standard under which a court analyzes multiplicity of proceedings. Indeed, the Second Circuit has held that an award under 28 § 1927 is proper only when "the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *United States v. International Bhd. of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991). In other words, it depends on the merits of the legal action that was taken, not who paid for them. There has been no finding in the shareholder action that Baliga's arguments were frivolous.

Moreover, Greenberg Traurig, despite taking over as counsel for Baliga after Baliga's

---

[3] It is thus unsurprising that Baliga opposed discharge of the Receiver, particularly while Shi remains in a position to regain *de facto* control of LKM's board once the Receivership terminates. Baliga was the one who successfully moved for the Receiver's appointment in the first place, for the purpose of removing a bad actor—Shi—from control of the Company.
[4] *See* Exhibit B to this Letter – A true and accurate copy of the screenshot of Mr. Guo's securities account with Guotai Junan (Hong Kong) Limited.

Case 1:18-cv-11642-VM-VF   Document 460   Filed 07/24/23   Page 3 of 5

**Robert W. Seiden**  Court-Appointed Temporary Receiver for Link Motion Inc.
Pursuant to The Honorable Judge Victor Marrero of the
United States District Court, Southern District of New York

amended his complaint in October 2020, never signed any pleadings in this action; both the initial and amended complaints were filed by Seiden Law. Nor did Greenberg Traurig instigate the proceedings before the Court regarding Baliga's conversion of ADRs into LKM shares. Greenberg Traurig asked the Receiver to authorize Deutsche Bank (LKM's depositary bank) to make the conversion without Court involvement. Because the Receiver was concerned that converting the shares would alter the status quo, *the Receiver* asked for Court approval to convert the shares. *See* ECF 204. The Receiver said in his letter that ordinarily, he would authorize the conversion of ADRs into shares as an administrative matter that would be done in the ordinary course, without Court involvement. The point is that the Receiver expressly declined to act on Greenberg Traurig's request to convert the shares. If there was any delay, it was not due to Greenberg Traurig.[5]

If anyone has been needlessly multiplying litigation in this proceeding, it is Shi and his counsel, who continue to file baseless seriatim letter motions to this Court to assert arguments Shi does not have standing to pursue because he is not an LKM shareholder—while simultaneously disavowing any liability for the costs that he is imposing on LKM and its shareholders by raising arguments that they are not themselves raising and forcing an unfunded Receiver to continue to respond to them. Indeed, although this Court has now twice authorized LKM to proceed with an extraordinary general meeting of LKM *shareholders*, Shi has filed no fewer than four applications to this Court to enjoin it, purportedly on shareholders' behalf, as well as an improper appeal to the Second Circuit. *See* ECF 422, , 443 at 7-8. While Shi has raised objections regarding post-October 5, 2020 expenses by the Receiver, the vast majority of them were incurred responding to Shi's never-ending filings designed to delay his removal from his Board position, or defending actions instituted in China by Shi's associates to frustrate the Receiver's efforts to recover and preserve LKM's assets. Shi has already been adjudged to have breached his fiduciary duties to the Company, *see infra* at 4-5. It is the height of irony that he is now attempting to advance that argument against the Receiver in further support of his bad faith filings.

**LKM's Registration Status**

The Receiver has consulted his Cayman counsel and is advised that even if LKM was not struck off immediately after it did not pay the 2023 annual fee, there is now a real, serious, and imminent risk that LKM will be struck off the register. Indeed, Cayman counsel has advised that the Cayman Registrar of Companies may take administrative action at any time to strike LKM off and has recently become more aggressive about striking companies off after nonpayment of fees. For example, Cayman counsel is aware of at least one example of a case in which a Cayman company was struck off in March 2023 after failing to pay fees owed for 2023.

Based on the advice of Cayman counsel, the Receiver understands that LKM is subject to a serious and imminent risk of being struck off from the Cayman Register. In light of this new information, the Receiver respectfully requests that the Court reconsider the Receiver's renewed request that the Court order Shi to deposit $103,219.51 with the Receiver in order to facilitate payment to Maples and the minimum balance in the Receivership Account. Such an order would preserve the *status quo*.

---

[5] Further, we understand that Mr. Guo has made no payment to Greenberg Traurig since 2021.

Case 1:18-cv-11642-VM-VF   Document 460   Filed 07/24/23   Page 4 of 5

**Robert W. Seiden**  **Court-Appointed Temporary Receiver for Link Motion Inc. Pursuant to The Honorable Judge Victor Marrero of the United States District Court, Southern District of New York**

## New Action Against LKM in Beijing

On July 19, 2023, my office learned that Zhongzhi Hi-Tech Overseas Investment Ltd. ("Zhongzhi") initiated a new action ("Chinese Petition") against LKM before the Beijing No. 4 Intermediate People's Court ("Chinese Court"), seeking recognition and enforcement of a Hong Kong International Arbitration Centre award ("HKIAC Award") dated February 16, 2021.  In late 2018, LKM defaulted on a 2016 convertible loan that had been orchestrated by Shi.  Shortly thereafter (prior to the Receiver's appointment), Zhongzhi initiated the arbitration.  After the Receiver was appointed, Shi attempted improperly to represent LKM in the arbitration.  With the Court's authorization, the Receiver took over the defense of the arbitration.  (ECF 26) (Receivership Order).  In the new action in the Chinese Court, Zhongzhi is seeking to have the Chinese Court confirm the HKIAC Award and enter an approximately $163 million damages award against LKM.  This amount represents the amount that the tribunal determined to be balance owed by LKM to Zhongzhi on the convertible loan, plus applicable interest.

Significantly, the HKIAC Award determined that in 2018, Shi had breached his fiduciary duties to LKM by pledging substantially all of LKM's assets to Zhongzhi to secure LKM's payment obligations under the convertible loan, without obtaining any consideration in return.  The HKIAC Award (which has been filed on the docket at ECF 210-1) concluded that ***Dr. Shi plainly breached his fiduciary duties and Zhongzhi substantially assisted him in doing so***." ECF 210-1 at ¶ 145 (emphasis added).

HKIAC found in relevant part:

- "[T]he Two Pledge Agreements lacked any consideration. That fact is particularly stark in light of the undisputed fact that the Tongfang Note, and Link Motion's shares in its subsidiary NQ International, comprised substantially all of its assets." ECF 210-1 at ¶ 132.

- "***Dr. Shi plainly disregarded counsel's advice in negotiating and approving the two agreements. All of these facts establish that he breached his fiduciary duty to Link Motion in negotiating the two pledge agreements with Zhongzhi***. The fact that Link Motion's Chief Executive Officer, President and General Counsel and Chief Financial Officer resigned their positions in connection with the issuance of the Two Pledge Agreements reinforces this conclusion." ECF 210-1 at ¶ 152 (emphasis added).

- "[N]othing in the record shows that [LKM's] two new directors – who had joined the Board the day before – were aware that the transaction they were being asked to approve in fact lacked any consideration." ECF 210-1 at ¶ 155.

- "The record also does not show that the two new directors were made aware that the company's General Counsel, Chief Financial Officer, and outside securities counsel each opposed the Two Pledge Agreements and believed that approval violated the directors' fiduciary duties." ECF 210-1 at ¶ 156.

Robert W. Seiden

Court-Appointed Temporary Receiver for Link Motion Inc.
Pursuant to The Honorable Judge Victor Marrero of the
United States District Court, Southern District of New York

- "***Dr. Shi's misconduct extends far beyond simply voting in favor of the Two Pledge Agreements at the Board meeting***. The record shows that he was the principal negotiator of the agreements on behalf of Link Motion, and, as Chairman of the Board, it can reasonably be inferred that he was responsible for the deeply flawed manner in which that meeting was conducted. ***As a result, we conclude that Dr. Shi breached his fiduciary duty of loyalty as well as his fiduciary duty of care***." ECF 210-1 at ¶ 158 (emphasis added).

In its Chinese Petition, Zhongzhi is seeking to enforce an approximately $163 million HKIAC award in China. This underscores the fact that LKM likely has valuable assets in China. As the Receiver has extensively documented, Shi's efforts to frustrate Guo have prevented the Receivership from recovering those China assets.

Shi's obstruction of Guo's asset recovery efforts in China was a principal basis for Guo's request to convene the Extraordinary General Meeting. ECF 285 at 6. Specifcially, Shi and his associates impeded the Receiver's efforts by (1) controlling the Company's WFOE bank accounts (ECF 285-3 ¶ 12.1); (2) filing an action against the WFOE to freeze its bank accounts, which prevented "the Receiver's use of the WFOE account to pay employee salary" (*Id*. ¶ 12.2); (3) transferring $89,000,000 out of Company accounts (*Id*. ¶ 12.3); (4) using the Company's voided seals to execute LKM WFOE documents and appoint a new WFOE legal representative (*Id*. ¶ 12.4); and (5) Shi's continuing to use the Company's voided seal and holding himself out as a formal director of the Company in "thirteen separate actions in China's courts and arbitral tribunals in an attempt to overturn or prevent the Receiver and Mr. Guo's performance," including in front of the China International Economic and Trade Arbitration Commission to change the Company's VIE agreements and stop the legal transfer of shares in LKM subsidiaries to Shi's followers. *Id*. ¶ 12.5.

Importantly, if LKM submits no defense to the Chinese Petition, that is likely to result in a default judgment in the amount of $163 million against LKM in China. In light of the Court's order requiring the Receiver to preserve the "*status quo*" (ECF 331), my office has not taken any actions in response to the Chinese Petition. In addition, as I previously reported to the Court, the Receiver has no funds in its estate to defend the Chinese Petition unless Mr. Guo agrees to provide additional funds to retain counsel for the Chinese Petition. However, considering Shi's repeated and meritless false assertions against him, Mr. Guo may be unwilling to advance further funds to the Receivership absent a Court-approved mechanism for reimbursement of his expenses.

Please do not hesitate to contact me via email or telephone if you Honor wishes to discuss this matter in more detail.

Robert W. Seiden, Esq.
Court-Appointed Temporary Receiver for Link Motion Inc.

cc: All Parties (via ECF)