UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

                Plaintiff,

-against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI, JIA LIAN, XIAO YU,

                Defendants,

-and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

                Nominal Defendant.

1:18-cv-11642-VM-VF

**DECLARATION OF
LILIN "FRANCIS" GUO**

---

LILIN "FRANCIS" GUO, pursuant to 28 U.S.C. §1746, declares as follows:

1.      My name is Lilin "Francis" Guo.  I am a citizen of the People's Republic of China ("PRC").  I am a representative of Mr. Robert W. Seiden (the "Receiver"), in his capacity as the court-appointed receiver over defendant, Link Motion Inc. ("LKM" or the "Company") in the PRC.  I submit this declaration in response to allegations made by defendant Vincent Wenyong Shi ("Shi") in his letter to the Court dated July 17, 2023. (ECF 454).

**My Shareholder Position**

2.      I am one of LKM's largest original ADR holders.  Between 2015 and early 2018, I purchased 6,022,203 LKM ADRs from the secondary market and I am still holding these ADRs.  At the time I purchased LKM's ADRs, the price for each ADR was between $3.75 and $4.00.  To the best of my recollection, between 2017 and 2018, my total investment in these LKM ADRs was approximately $20 million.  In late 2018, after the exposure of Shi and his associates' misconduct, the value of my investment in LKM ADRs went from $20 million to zero.

1

3.      A true and accurate screenshot of my securities account with Guotai Junan (Hong Kong) Limited is attached as **Exhibit A** to this declaration.

**My Position as Receiver's Agent**

4.      In or about April 2019, I was appointed by the Receiver as his agent in the PRC to protect LKM's assets in the PRC from further misappropriation and to seek to recover those already misappropriated.

5.      To the best of my recollection, at that time, no one wanted to take the role of the agent of the Receiver in China because his or her work would be extremely difficult in the absence of the Chinese courts' recognition of the receivership order.  Indeed, Chinese courts do not recognize a receivership unless it is in the context of a liquidation proceeding.  Further, PRC courts are not typically inclined to enforce United States court orders.  Also, at that time, everyone had lost confidence in LKM and observed that the Company went dark.

6.      I agreed to be the Receiver's agent in China because I had a significant investment in LKM (and if the Company could recover its assets and get back to normal business, then my investment would potentially be recovered) and because I believed Shi and his associates should be held responsible for their misconduct.

7.      In or about June 2019, the Receiver, on behalf of LKM, entered into a convertible promissory note with me under which I agreed to provide no more than a $1.5 million loan to LKM to pay for professional services (legal and accounting, etc.) incurred in the PRC (including Hong Kong) and PRC team management-related and other lawful expenditures ("Note"). *See* ECF 419-1.  On June 25, 2019, the Court approved the Note. ECF 419-2.

8.      On June 1, 2020, I notified the Receiver of my intention to convert the outstanding loan balance under the Note to LKM's Class B shares in accordance with a conversion ratio set

forth in the Note. I provided the Court with a detailed total expenses summary for 2019 in both English and Chinese. *See* ECF 419-3. On June 5, 2020, the Court approved my conversion application. ECF 419-4.

9. On August 30, 2021, I, for the second time, notified the Receiver of my intention to convert the outstanding loan balance under the Note to LKM's Class B shares in accordance with the terms of the Note. I further provided the Court with a detailed total expenses summary for 2020 and 2021 in both English and Chinese. *See* ECF 419-8. On September 8, 2021, the Court approved my second conversion application. ECF 419-9.

**Payment to Greenberg Traurig**

10. On June 1, 2023, in response to Shi's fourth motion to enjoin the Receiver from proceeding with extraordinary general meetings (the "EGMs"), I provided the Court with over 400 pages of invoices and other documentation of my expenses that I believed were related to the LKM matter. The Court requested the Receiver and I provide all receipts for expenses incurred by the Receivership for its work in the PRC for the past five years in six days. I (through my assistant) inadvertently included a payment record to Greenberg Traurig in the amount of $50,000.

11. In or about November 2020, I made a $50,000 payment to Greenberg Traurig in my capacity as an LKM ADR holder, not as the Receiver's agent, and the source of these funds was separate from the $1.5 million contemplated by the Note. I am a part of a group of LKM ADR holders who have supported Mr. Baliga's litigation. I never sought reimbursement for this $50,000 payment in my conversion application. *See* ECF 419-4; 419-8. This payment is not a part of the Receivership's expenses in the PRC. I have not sought (and will not seek) reimbursement for this expense as part of the Receiver's accounting.

12. I understand that Shi alleges I have a purported conflict in making payment to Greenberg Traurig, Baliga's counsel. This is wrong. Contrary to Shi's allegations, if I did not have my $20 million investment in LKM, I would not have accepted Receiver's offer to be his agent in the PRC to step into massive legal battles with Shi and his associates. If I did not have my $20 million investment in LKM, I obviously would not have provided any funds to LKM, a dead company with no collateral.

13. Indeed, I, the Receiver, and Mr. Baliga all have the same interest, *i.e.*, to recover the Company's assets and to get LKM back to its normal business. The only party who is trying to prevent the Company's assets from being recovered is Shi. As I previously reported to the Court, between May and November 2019, approximately $89 million was transferred from NQ Infinity to NO Mobile, which was under Shi's control at that time, and then was immediately wired from NQ Mobile to Zhejiang Xinbao Technology Co., Ltd., an entity that has since been dissolved and is tied to a convicted criminal. *See* ECF 446; 443-7; *see also* ECF 161. According to a diligent investigation concluded by my professional team, we uncovered that all of LKM's funds and assets in the PRC had been misappropriated by Shi and his associates.

I do not speak, read, or write English. This Declaration has been translated into Mandarin Chinese. I understand its content. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 24, 2023

Lilin "Francis" Guo