**FELICELLO**

Michael James Maloney
Partner

Felicello Law P.C.
366 Madison Avenue
3rd Floor
New York, NY 10017

Tel. +1 (212) 584-7806
mmaloney@felicellolaw.com

**VIA ECF**　　　　　　　　　　　　　　　　　　　　　　　　　　　August 4, 2023

Hon. Valerie Figueredo
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:　*Baliga, et al. v. Link Motion Inc., et al.*, Case No. 1:18-cv-11642-VM-VF (S.D.N.Y.)
　　　Notice of new evidence

Dear Judge Figueredo:

　　　I represent Dr. Vincent Wenyong Shi ("Dr. Shi"). I write to alert Your Honor of new facts relevant to Dr. Shi's objections to the Receiver's[1] accounting of the receivership and other matters referred to Your Honor by the Hon. Victor Marrero. *See* Dkt. 362; 440 at 3.

**The Newly Disclosed Facts.**

　　　At the June 27, 2023 conference, Dr. Shi advised Your Honor of the recent disclosure by the Receiver, that his agent, Mr. Francis "Lilin" Guo, had paid $50,000 to Plaintiff's legal counsel in or around November 2020. Subsequently, Dr. Shi brought the $50,000 payment to the attention of Hon. Victor Marrero, and Judge Marrero directed the Receiver and Plaintiff Wayne Baliga to respond. Dkt. 454. On July 24, 2023, Plaintiff and Mr. Guo filed their responses to Judge Marrero's directive. Plaintiff conceded that a group of "LKM investors have shared the cost of this litigation" and that "Mr. Guo has paid for a portion of the costs of this litigation." Dkt. 459 ¶¶7,10. Mr. Guo disclosed that he "is a part of a group of LKM ADR holders who have supported Mr. Baliga's litigation," Dkt. 460-1 ¶11, and Mr. Guo "agreed to be the Receiver's agent in China because [he] had a significant investment in LKM (and if the Company could recover its assets and get back to normal business, then my investment would potentially be recovered). . . ." Dkt. 460-1 ¶6. In short, Mr. Guo helped fund the legal cost to commence this action for the purpose of getting access to LKM's assets. Until July 24, 2023, these facts were known only by Mr. Guo, Plaintiff, and the Receiver (Plaintiff's former counsel).

---

[1] The "Receiver" is Robert W. Seiden.

*Admitted to practice law in New York

**<u>The newly discovered facts are relevant to matters currently pending before Your Honor.</u>**

*Dr. Shi's 4th Objection*

The new facts are relevant to Dr. Shi's 4th objection to the Receiver's accounting—that the Receiver granted to Mr. Francis "Lilin" Guo excessive and unreasonable compensation at the expense of LKM, see Dkt. 393 at No. 4, because the new facts show that the Receiver and Mr. Guo failed to fully and completely disclose all of the relevant facts to the Court regarding Mr. Guo's compensation when the Receiver first moved for approval of the Convertible Note. The Receiver's application for approval failed to disclose that Mr. Guo had paid a part of the legal fees to commence the action and have the Receiver appointed or that Mr. Guo had significant, personal financial incentive to gain access to LKM's assets. The Receiver, as a court-appointed fiduciary, owed to the Court the duties of loyalty and candor. *Phelan v. Middle States Oil Corp.*, 154 F.2d 978, 991 (2d Cir. 1946). These duties required the Receiver to disclose all relevant facts and to faithfully serve of the Court with undiluted loyalty. *Id*.

By concealing the truth, and working to advance Mr. Guo's personal interests, the Receiver breached his fiduciary duties as an officer of the Court. The same is true for each application on which the Receiver and Mr. Guo applied for approval of the conversion of Mr. Guo's "debt" into shares of LKM.[2] On each of these prior applications, the Receiver and Mr. Guo failed to disclose and concealed from the Court relevant facts, including that Mr. Guo was paying Plaintiff's legal costs, that Mr. Guo was self-interest, and that Mr. Guo intended to transfer to himself majority ownership of Beijing Technology, LKM's most valuable operating asset in China. *See* Dkt. 435 ¶¶16-20; 395-6; 130-2 at ECF p.9 of 32.

In his July 24, 2023 declaration, Mr. Guo claims that he just wants to "expose" Dr. Shi's alleged misconduct, but Mr. Guo fails to explain why it was necessary to transfer to himself a majority of the equity ownership of Beijing Technology or a major block of registered shares of LKM. Mr. Guo's declaration makes clear that his decision to fund the Baliga litigation was directly related to his personal and self-interested desire to gain access to LKM's assets. *See* Dkt. 460-1 ¶¶12-13. The failure of the Receiver and Mr. Guo to fully disclose to the Court all material facts and to serve faithfully the interest of the Court (instead of Mr. Guo's personal interests) constitute breaches of fiduciary duty that merit the rejection of all the compensation claimed by Mr. Guo and the Receiver in the accounting. *See generally Phelan*, 154 F.2d at 991.

*Dr. Shi's 1st Objection*

These newly disclosed facts are also relevant to Dr. Shi's 1st Objection to the Receiver's account—that the Receiver failed to meet his "burden to justify his account." Dkt. 393 at No. 1, citing *Sherry v. United States Bank Nat'l Ass'n*, 662 F. App'x 39, 41 (2d Cir. 2016). In order to satisfy this burden, the Receiver must submit a true and accurate account of all receivership proceedings. *See* 3 Clark, TREATISE ON THE LAW & PRACTICE OF RECEIVERS (1959) §

---

[2] *See* Dkt. 419-1 at ECF p.6; 419-4 at ECF p.2-4; Dkt. 419-9 at ECF p.2-4.

699.1, p. 1285 (A receiver must report and account for all property that "he has received, and give the reason why, if any, he failed to receive and account for any or all the property as ordered by the court") (citation omitted). In his November 18, 2023 accounting, the Receiver acknowledged that he had no knowledge of the fees or expenses incurred by Mr. Guo as agent to the receiver. *See* Dkt. 376 ¶40-41. Disregarding his duties as a fiduciary of the Court, the Receiver had simply transferred to Mr. Guo all control over LKM's assets in China without any supervision. Shortly after taking majority ownership of Beijing Technology, Mr. Guo then "disappeared" and did not "reappear" until June 1, 2023. *See*, *e.g.*, Dkt. 428. A failure to supervise is a breach of the Receiver's fiduciary duty. *See*, *e.g.*, 3 Clark, TREATISE ON THE LAW & PRACTICE OF RECEIVERS (1959) § 699.1, p. 1285.

The new records further demonstrate that the Receiver's and Mr. Guo's accounts are inaccurate and unreliable. In his June 1, 2023 declaration, Mr. Guo submitted three voluminous exhibits purporting to support his claims for expenses incurred on behalf of the receivership. Dkt. 428 ¶¶9-14; Dkt. 428-2, 428-3, and 428-4. On June 26, 2023, Mr. Guo submitted translations of his expense backup. Dkt. 448, 448-1, 448-2, and 448-3. In these submissions, Mr. Guo states the records submitted are true and accurate records of expenses *he* incurred "for the benefit" of the receivership. Dkt. 428¶8, ¶9 (referring to "my expenditures"), ¶10 ("I spent"), ¶11 ("related to the Receiver's expenditures"), ¶12 ("I spent"), ¶13 ("my expenditures"). But in his July 24, 2023 declaration, Mr. Guo now claims that inclusion of the record showing payment to Mr. Baliga's counsel was "inadvertent," Dkt. 460-1 ¶10, and Mr. Guo never intended to disclose those facts to the Court. This new disclosure renders all of Mr. Guo's prior statements unreliable. Mr. Guo has admitted to concealing information from the Court, and the Court should now decline to give any credit to any of the materials Mr. Guo has submitted in support of his claims.

A review of the other records submitted by Mr. Guo shows that many of them also fail to support his claims of expenses incurred for the benefit of the Receivership. For example, Mr. Guo submitted in support of his expense claims a copy of VAT receipt dated June 26, 2019 at Dkt. 448-1 ECF p.36 of 370. But that VAT receipt reflects a payment made out of an account held in the name of "NetQin infinity (Beijing) Technology Co., Ltd." not Mr. Guo.[3] In other words, Mr. Guo is claiming funds paid from a LKM corporate account as an expense that he personally incurred.[4] The vast majority of "expense" records submitted by Mr. Guo comprise VAT receipts showing payments made out of LKM corporate accounts. *See generally* Dkt. 448-1, 448-2, 448-3. Dr. Shi is continuing to compile a list of records showing that Mr. Guo's "expenses" were actually corporate funds belonging to LKM's affiliates, not Mr. Guo. All of these transactions demonstrate that Mr. Guo's claims of personal expenditures are meritless.

*Dr. Shi's opposition to the veil-piercing motion*

---

[3] As Mr. Guo has conceded, the VAT receipts are automatically generated upon payment and, therefore, accurately reflect the accounts out of which funds were transferred. Dkt. 428 at 6 n.4.

[4] The record shows that Mr. Guo never deposited any of his own funds into the LKM-related bank accounts. *See* Dkt. No. 376-1 at ECF 1-6 of 11 (no WFOE accounts in China reported); see also Dkt. No. 376-1 at ECF 3 of 11, line 13 (reporting $15,171.44 "recovered" from a WFOE account in Hong Kong on 7/8/2019).

The new evidence also supports Dr. Shi's arguments in opposition to the Receiver's motion to "pierce" the corporate veil of LKM to hold Dr. Shi liable for unfunded receivership expenses. Not only is there no legal authority to support his request (as the Receiver conceded at the June 27, 2023 conference), the legal authority that does exist stands for the proposition that "'[w]here the appointment of the receiver was irregular or inequitable . . . the party who procured the appointment, and not the receivership fund, is liable for the expenses of the receivership.'" *Baliga v. Link Motion Inc.*, 2022 U.S. Dist. LEXIS 153203, at *19 (S.D.N.Y. Aug. 25, 2022), quoting *Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000, 1003 (8th Cir. 1939).

Based on the newly disclosed evidence, the party responsible for the irregularities of this receivership is Mr. Guo. He is the one who helped fund the commencement of this litigation. The true extent of his influence on the commencement of this case, and his selection as the Receiver's agent in China, is shown by the November 5, 2018 pre-commencement letter from the Receiver to LKM and DLA Piper which even at that early date identifies Mr. Guo as the individual that the Receiver intended to give control over LKM. Dkt. 435-10. Mr. Guo paid the Receiver to do that. And it is Mr. Guo who even today, nearly three years after Plaintiff dropped his derivative claims, continues to ask the Court to maintain the receivership without any legal basis. Accordingly, Mr. Guo is the party who should be responsible for any unfunded receivership expenses. *See generally Baliga v. Link Motion Inc.*, 2022 U.S. Dist. LEXIS 153203, at *19, citing *Bowersock Mills & Power Co.*, 101 F.2d at 1003 and *Netsphere, Inc. v. Baron*, 703 F.3d 296, 311 (5th Cir. 2012).

*Dr. Shi's application to vacate the June 18, 2019, June 5, 2020, and September 8, 2021 orders*

Finally, the newly discovered evidence further supports Dr. Shi's prior application (Dkt. 421) to vacate the Court's prior orders that (1) approved the convertible note entered into with Mr. Guo (Dkt. 419-1 at ECF p.6), and (2) approved the conversions of that note into shares (Dkt. 419-4, 419-9). Based on the text of Judge Marrero's June 20, 2023 Order, it is our understanding that the disputes concerning Mr. Guo's compensation are now referred to Your Honor to report and recommend. Dkt. 440 at 3. Accordingly, Dr. Shi respectfully refers Your Honor to his prior arguments in support of his application to vacate these prior orders and cancel the shares previously issued to Mr. Guo. *See* Dkt. 421, 435, 436, 437. These prior orders should be vacated.

\* \* \*

For the foregoing reasons, and the reasons provided in Dr. Shi's prior papers, the Court should:

(1) Vacate the memo endorsement dated June 18, 2019 (*see* Dkt. 419-1 at ECF p.6 of 10), the Order dated June 5, 2020 (*see* Dkt. 419-4 at ECF p.2-4), and the Order dated September 8, 2021 (*see* Dkt. 419-9 at ECF p.2-4);

(2) Reject Mr. Guo's expense claims;

(3) Cancel the Convertible Note executed by the Receiver in favor of Mr. Guo as *void ab initio*;

(4) Reject $3,213,563.96 of the Receiver's expense claims or, in the alternative, finding Plaintiff and/or Mr. Guo liable for any unpaid receivership expenses;

(5) Allow the Receiver's claims for $15,000 (arbitration fees to the HKIAC) and $3,109.51 (fees to the Cayman registrar);

(6) Directing that the Receiver be surcharged for any undisclosed tax or other liabilities discovered after his discharge;

(7) Direct that the Receiver be surcharged for the value of the assets lost to Mr. Guo;

(8) Deny the Receiver's claims for personal liability of Dr. Shi;

(9) Discharge the Receiver;

(10) Direct the Receiver to return control of LKM and its assets to the Board of Directors; and

(11) granting such other and further relief and the Court deems appropriate.

Respectfully submitted,

*/s/ Michael James Maloney*

Michael James Maloney

cc: All counsel of record (via ECF)