# SEIDEN | LAW

**VIA ECF**

Hon. Valerie Figueredo
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

August 11, 2023

Re: *Baliga, et al. v. Link Motion Inc., et al.*, 1:18-cv-11642-VM-VF (S.D.N.Y.)

Dear Judge Figueredo,

We write on behalf of Robert Seiden in his capacity as the Court-appointed temporary receiver ("Receiver") over Link Motion Inc. ("LKM") in response to Vincent Wenyong Shi's ("Shi") August 4, 2023 (filed August 7, 2023) letter in which he purports to bring "new facts" to Your Honor's attention that Shi claims are relevant to his pending objections to the Receiver's accounting and veil-piercing requests as well as to Shi's application to vacate Court-approved share conversions to the Receiver's agent, Lilin "Francis" Guo ("Guo"). Shi further improperly accuses the Receiver by non-motion letter of an alleged breach of fiduciary duty and states that such breach "merit[s] the rejection of all the compensation claimed by Mr. Guo and the Receiver in the accounting" and even further demands that Guo be held liable for receivership expenses. Dkt. 492 at 2, 4.

Shi and his counsel, who apparently has not been chastened by this Court's recent finding that counsel's behavior in a related case on behalf of a related client "unnecessarily prolong[ed] the case," and was "objectively unreasonable and can only be viewed as an attempt to harass Defendants and cause reputational harm," *see China AI Cap. Ltd. v. DLA Piper LLP (US) et al.*, 2023 WL 5106492, at *15 (S.D.N.Y. July 28, 2023); *see also Link Motion Inc. v. DLA Piper LLP (US)*, 2023 WL 3687731, at *6-7 (S.D.N.Y. May 26, 2023) ("Shi's crusade to vindicate his interests through counsel has been consistent. And the overlapping nature of legal representation as between LKM, Shi and China AI raises the specter that Shi has been the one pulling the strings all along"), continue to harass the Receiver and Receiver's agent Guo and impugn their reputation with baseless accusations. The attacks have only become more frequent and acute since the Receiver requested leave of court to convene an Extraordinary General Meeting of LKM shareholders ("EGM") to remove Shi from his position. There is no merit to the accusations in Shi's latest filing, which do not contain "facts" but rather unsupported and irrational speculation, and in any event are not "new."

*First*, Shi compiles statements from recent submissions by the Receiver and Plaintiff Baliga regarding a group of concerned LKM shareholders who had banded together to commence Baliga's derivative lawsuit to appoint a receiver and remove Shi for defrauding LKM, as well as Guo's unremarkable statement that, as a shareholder in LKM, LKM's recovery of assets and

# SEIDEN | LAW

return to profitability may allow him to recover his investment, and contorts it into a conclusion that "[i]n short, Mr. Guo helped fund the legal cost to commence this action for the purpose of getting access to LKM's assets." ECF 462 at 1. Nowhere does Shi explain how Guo's efforts to recover his own investment would be at odds with the interests of any other LKM shareholder, or of the Receiver, who was appointed to "preserve and safeguard the Company's assets." *See* ECF 460 at 2.[1] Indeed, Courts in this Circuit have found no inherent conflict of interest between the interests of a company and those who have a financial interest in the company. *See, e.g.*, *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 290-91 (E.D.N.Y. 2012) ("the Court finds nothing 'inherent[ly]' improper about the Receiver's appointment . . . Indeed, such an arrangement is consistent with a receiver's charge to "step[] into the shoes of the debtor, and [to be] vested with his property as the arm of the Court for the benefit of the creditor.") (citing *United States v. Mr. Hamburg Bronx Corp.*, 258 F. Supp. 115, 124 (S.D.N.Y. 1964). The *Friedman* court further went on to note that "in the context of appointing receivers for the purpose of collecting a judgment, New York's receiver statute . . . specifically allows for the appointment of the judgment creditor as receiver to the judgment debtor." *Friedman*, 848 F. Supp. 2d at 291, and determined that the movant had failed to establish "why acting on behalf of the [corporation] . . . would be at odds with the interests of [a creditor]." *Id.*

Moreover, the existence of LKMForward and Guo's affiliation with it is not new. Shi's claim that "[u]ntil July 24, 2023, these facts were known only by Mr. Guo, Plaintiff, and the Receiver (Plaintiff's former counsel)," ECF 462 at 1, is false. The Court need look no further than the very first paragraph of the Complaint in this action (ECF 1) to see that Baliga disclosed to the Court that he was acting on behalf of a group of interested shareholders ("Mr. Baliga's information and belief is based on, among other things, the investigations conducted by himself and similarly situated shareholders organized under the name LKMForward"). Indeed, Shi's counsel helpfully provided a sworn declaration to the Court earlier this year walking through his knowledge of these facts back in 2019. *See* ECF 435, disclosing that "[u]pon my retention in this

---

[1] Shi repeats his already-debunked arguments that the Note conversions somehow constituted improper self-dealing. As the Receiver and Guo have already explained, however, the Note conversions were done for value that was documented to and approved by this Court. Additionally, the conversion does not put Guo into an adverse position with respect to any LKM shareholder, who all have equal rights to share in the proceeds of any assets that LKM may recover. Shi's claim that Guo's inclusion of his receipt to Greenberg Traurig must somehow cast doubt on the entirety of his submitted expenses is baseless. The Receiver submitted a detailed list of expenses, including his legal expenses. The Greenberg Traurig payment *was not* included among those expenses because it was done in Guo's personal capacity and is unrelated to the Receivership. All of the submitted legal expenses have their own documentation. For example, Guo's application for conversion indicates that, in June 2020, he paid Kobre & Kim Shanghai RMB 378,386.43 (ECF 419-10 at 11 No. 6), and it is evidenced by the VAT invoices issued by Kobre & Kim Shanghai dated June 4, 2020, *i.e.*, Invoice No. 23587384 – RMB 100,000 (ECF 448-2 at 53), Invoice No. 23587386 – RMB 100,000 (ECF 448-2 at 54), Invoice No. 23587387 – RMB 78,386.43 (ECF 448-2 at 55), and Invoice No. 23587385 – RMB 100,000 (ECF 448-2 at 56). **Accordingly, the invoices issued by Kobre & Kim Shanghai indicate the exact same number Guo reported to the Court.** The "inadvertent" inclusion was of a receipt that had nothing to do with the Receivership when the Receiver was given mere days to submit receipts documenting hundreds of expenditures.

# SEIDEN | LAW

action by Dr. Shi in 2019, I investigated a website regarding this action formerly operating at the address http://lkmforward.com by a group referring to itself as "LKMForward" (¶ 1); that he printed on February 8, 2020 pages of the website that disclosed that "the publisher of the website describes LKMForward as 'a small group of LKM Shareholders' who have 'spearheaded the appointment of a Receiver in New York . . . with help from colleagues in China.'" (¶¶ 5, 6); that LKMForward "has retained the Seiden Group as it [sic] legal counsel in this matter," (¶ 7) and that LKMForward, on its website, requested that shareholders "donate funds to pay legal fees to the Seiden Group." (¶ 9). LKMForward has in fact been a third-party defendant in this action, which was named when China AI, a party the Court has already indicated there is reason to believe has been acting at Shi's direction and who shares counsel with Shi, *see Link Motion Inc.*, 2023 WL at *6-7, sought to intervene in this action. Shi has also been aware of Guo's relationship with LKMForward since before the commencement of Baliga's lawsuit, as he was the recipient of correspondence from LKMForward seeking to install Guo as a replacement director for Shi back in 2018. *See* ECF 459-1. Shi nowhere explains how the fact that Guo may have contributed—like many LKM shareholders—funds to LKMForward somehow changes the alignment of Guo's interests with these other shareholders (and the Receiver) or makes him adverse. Trying to spin this as new information or a purported undisclosed conflict is nothing more than a transparent attempt to continue to disparage the Receiver and Guo and to further delay the Receiver's convening of the EGM.

If anyone here has a conflict, it is Shi, who has spent this year filing repeated motions, appeals and letter requests to enjoin an EGM that would benefit LKM shareholders but would deprive him of his position on LKM's board and prevent him from continuing to block access to evidence of his misconduct. *See United States v. Shapiro*, 2007 WL 2914218, at *7 (S.D.N.Y. Oct. 1, 2007) ("Finally, I note that if anyone here has a conflict, it is [defendant], who seeks to [act on behalf of the corporation] not to protect the corporation but to thwart his own criminal prosecution. . . ."). This vexatious motion practice only causes more harm to LKM by needlessly prolonging this proceeding and causing LKM to incur more expenses that Shi actively argues should not be borne by him.

*Second*, Shi falsely contends that Guo's submissions "fail to support his claims of expenses incurred for the benefit of the Receivership." ECF 462 at 3. **Without any supporting authorities**, Shi cited one of the VAT invoices from Guo's submissions (ECF 448-1 at 36) for the proposition that "the VAT receipt reflects a payment made out of an account held in the name of 'NetQin Infinity (Beijing) Technology Co., Ltd.' not Guo." This is wrong. The invoice Shi cited is shown below in the red box (both English and Chinese):

3

# SEIDEN | LAW

Beijing Value Added Tax Electronic General Invoice
(seal)

No. 14186274
1100183130
14186274
Invoiced Date: 6/26/2019

| Purchaser | Name: | NetQin Infinity (Beijing) Technology Co., Ltd. | passcode | | | | |
|---|---|---|---|---|---|---|---|
| | Taxpayer Identification No.: | 911101086615514831 | | | | | |
| | Address and Phone | Beijing City, Haidian District North Sanhuan West Road No.31 Building 23, Fl 1, Room 103 | | | | | |
| | Bank Account No.: | China Merchants Bank, Beijing Chaowaidajie Branch | | | | | |
| The name of the Goods or Taxed Labor or Service | | Specification Model | Unit | Number | Price | Total | Tax Rate | Taxes |
| Commercial Lease: Rent | | | | | | 95238.10 | 5% | 4761.90 |
| | | | | | | | | |
| | | | | | | 95238.10 | | 4761.90 |
| | | | | Total | 100000 | | | |
| Amount | | | | | | | | |
| Seller | Name: | Beijing Could Valley Technology Development Co., Ltd | | Note | 6.20-2019 | Beijing City, Haidian District North Sanhuan West Road No.31 Building 23, Fl 1, Room 103 | |
| | Taxpayer Identification No.: | .911101080628163981 | | | [SEAL] | | |
| | Address and Phone | | | | | | |
| | Bank Account No.: | Bank of Communications | | | Issuer: | | |



  Shi misrepresents to the Court the nature and the context of the information contained in the VAT invoices. As shown by the VAT invoice, the section Shi quoted is simply "customer details" of the "purchaser." Indeed, "***for general VAT [invoice], only the entity name and tax number are required; for special VAT [invoice], the address, telephone, and entity bank details shall be completed***." *See* Horizons Corporate Advisory, *China business: understanding 'fapiao'*

4

# SEIDEN | LAW

*and the taxation invoice system* (Aug 8, 2023, 5:45 PM).[2] Because of the different requirements for the "general VAT [invoice]" and "special VAT [invoice,]" some invoices provided by Mr. Guo contain NetQin Infinity (Beijing) Technology Co., Ltd.'s bank details.[3] However, it cannot be disputed that the VAT invoice does not indicate which account made the payment.[4] Simply put, the name, address, phone number, and bank details on the VAT invoice are used to identify the purchaser instead of indicating the payment information.

Shi further mischaracterized Guo's testimony and alleged that "the VAT receipts are automatically generated upon payment, and therefore, accurately reflect the accounts out of which funds were transferred." ECF 462 at 3 fn. 3 (citing ECF 428 at 6 fn 4). Contrary to Shi's contention, nowhere in Guo's declaration did he represent that the VAT invoices "accurately reflect the accounts out of which funds were transferred." *See* ECF 428.

As in the *DLA Piper* proceeding, it is clear that Shi and his counsel have and continue to engage in a pattern of frivolous filings before this Court that needlessly waste judicial resources, prolong this litigation and frustrate legitimate and authorized Receivership activities. Shi and his counsel have repeatedly submitted false statements presented as fact, all in service of the improper purpose of harassing and disparaging the Receiver and Guo and furthering Shi's own personal interests despite nominally purporting to act on behalf of LKM. The Receiver reserves its right to seek sanctions against both Shi and his counsel for this activity. As an agent of the Court, the Receiver will be guided by the Court with respect to whether any such sanctions should be sought in the interests of preventing Shi and his counsel from continuing to waste this Court's (as well the Receivership's) resources.

Respectfully submitted,

*/s/ Jennifer Blecher*
Jennifer Blecher

cc:

Hon. Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

---

[2] *See* http://www.thesquare.blog/2019/01/16/china-business-understanding-fapio-and-the-taxation-invoice-system%EF%BB%BF/?utm_source=mondaq&utm_medium=syndication&utm_term=Tax&utm_content=articleoriginal&utm_campaign=article

[3] *See* https://nhglobalpartners.com/vat-in-china-explained-what-is-fapiao-invoice/

[4] *See* Exhibit A to this Letter, guidance issued by Guangzhou Municipal Tax Bureau, Goods and Labor Tax Division, *Fundamental Knowledge of VAT Invoices* (at https://guangdong.chinatax.gov.cn/gdsw/gzsw_kcxz/201811/2df100073bfa4d8a9d68c5ca53a45e98/files/61e2a08af6f64ae59f8ab114756468d4.pdf).