**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE
INC.)

               Plaintiff,

     -against-

LINK MOTION INC. (F/K/A NQ MOBILE
INC.), VINCENT WENYONG SHI, JIA
LIAN,
XIAO YU,

               Defendants,

     -and-

LINK MOTION INC. (F/K/A NQ MOBILE
INC.),

Nominal Defendant.

1:18-cv-11642-VM-VF


### VINCENT WENYONG SHI'S OBJECTIONS TO THE COMPENSATION AND EXPENSE CLAIMS OF LILIN "FRANCIS" GUO


FELICELLO LAW P.C.
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806
*Attorneys for Defendant Vincent*
*Wenyong Shi*


On the brief:     Michael James Maloney
                    Rosanne E. Felicello

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................i

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF RELEVANT FACTS........................................................................2

ARGUMENT ...........................................................................................................10

A.   The Court has the power to deny compensation to agents retained by the
     Receiver. .....................................................................................................10

B.   The Court's prior orders concerning the Convertible Note and Class B
     shares should be vacated based on the newly disclosed evidence and
     because those orders have no precedential value. .....................................11

C.   The Court should find that Guo did not pay for the shares he received....15

D.   The Convertible Note should be cancelled. ..............................................16

E.   Guo's accounts are inaccurate, contradictory, and unreliable. .................19

F.   The issuance of Class B shares to Guo was inherently unfair and
     inequitable to the existing shareholders of LKM.......................................21

G.   The Court should reject Guo's compensation because he failed to disclose a
     conflict of interest. ....................................................................................22

H.   The Court should find that any presumption that the Receiver's acts were
     independent and in furtherance of the Receivership has been rebutted by
     the newly discovered evidence. .................................................................23

CONCLUSION........................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Abner Realty, Inc. v. Adm'r of GSA,*
   97 Civ. 3075 (RWS), 1999 WL 436462 (S.D.N.Y. June 21, 1999) ...........................16

*Adar Bays, LLC v. GeneSys ID, Inc.,*
   37 N.Y.3d 320 (2021) ..................................................................................................18

*Adelphia Recovery Tr. v. HSBC Bank USA (In re Adelphia Recovery Tr.),*
   634 F.3d 678 (2d Cir. 2011) ........................................................................................23

*Allstate Ins. Co. v. Stolarz,*
   81 N.Y.2d 219 (1993) ..................................................................................................18

*CFTC v. Eustace*, Nos. 05-2973, 06-1944,
   2007 WL 1314663 (E.D. Pa. May 3, 2007) ..........................................................10, 24

*EMA Fin., LLC v. Chancis*, No. 22-274,
   2023 WL 5729838 (2d Cir. Sept. 6, 2023)....................................................................19

*In re Angelika Films 57th, Inc.,*
   246 B.R. 176 (S.D.N.Y. 2000)..................................................................................10, 25

*In re Eletrobras Sec. Litig.,*
   245 F. Supp. 3d 450 (S.D.N.Y. 2017)............................................................................21

*In re The Leslie Fay Cos.,*
   175 B.R. 525 (Bankr. S.D.N.Y. 1994) ....................................................................10, 24

*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, No. 01 CIV. 2946 (DLC),
   2004 WL 359138 (S.D.N.Y. Feb. 26, 2004)..................................................................12

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999) .....................................................................................................20

*Leber-Krebs, Inc. v. Capitol Records,*
   779 F.2d 895 (2d Cir. 1985)..........................................................................................13

*Mony Grp., Inc. v. Highfields Capital Mgmt., L.P.,*
   368 F.3d 138 (2d Cir. 2004)..........................................................................................23

*People v. Bilsky,*
   95 N.Y.2d 172 (N.Y. 2000) ...........................................................................................12

*Phelan v. Middlestates Oil Corp.,*

154 F.2d 978 (2d Cir. 1946)........................................................................................10

*RCI HV, Inc. v. Transtec (RC) Inc.*, No. 02 CIV. 4307 (CSH),
2004 WL 1197246 (S.D.N.Y. May 28, 2004)............................................................13

*Sherry v. United States Bank Nat'l Ass'n*,
662 F. App'x 39 (2d Cir. 2016) ................................................................................22

*Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs.*,
228 F.R.D. 125 (N.D.N.Y. 2005) ..............................................................................16

*United States v. Moseley*,
980 F.3d 9 (2d Cir. 2020)..........................................................................................18

*Westerbeke Corp. v. Daihatsu Motor Co.*,
304 F.3d 200 (2d Cir. 2002).....................................................................................12

*Zeevi & Sons v Grindlays Bank*,
37 NY2d 220 (1975) .................................................................................................18

**Statutes**

11 U.S.C. §§ 85-86                                                                                                17

N.Y. Penal Law § 190.40                                                                                          17

**Other Authorities**

3 Clark, TREATISE ON THE LAW & PRACTICE OF RECEIVERS (1959) § 699.122

Defendants Vincent Wenyong Shi ("Dr. Shi") for himself and as director of Link Motion, Inc. ("LKM" or "Company"), by and through their undersigned counsel, hereby submit the following objections to the compensation and expense claims of Lilin "Francis" Guo ("Guo") submitted at ECF Nos. 428 and 448.

## PRELIMINARY STATEMENT

The issue presently before the Magistrate Judge is the propriety of compensation paid to and expenses claimed by Guo in his purported capacity as agent in China to Robert W. Seiden, the Court-appointed receiver (the "Receiver") for Link Motion Inc. ("LKM"). In his original accounting, the Receiver failed to account for the compensation paid to Guo, claiming that the Receiver had not contact with Guo and other records were sealed. *See* ECF No. 376 ¶¶40-41 (the "Accounting"). After the Court directed the Receiver to unseal prior submissions to the Court regarding Guo, ECF No. 410, the Receiver served on counsel for Dr. Shi papers revealing the contents of a June 18, 2019 Secured Convertible Promissory Note (as amended, the "Convertible Note" or "Note"), certain expenses claimed by Guo, and prior orders (the "Prior Orders")[1] of the Court authorizing the Receiver to sign the Note on behalf of LKM and convert the Note into a controlling block of Class B shares issued to Guo. *See* ECF Nos. 419, 419-1, 419-2, 419-3, 419-4, 419-8. Dr. Shi and LKM promptly moved the Court for an Order vacating the prior orders and the Convertible Note, and to cancel the Class B shares issued to Guo. *See* ECF Nos. 421, 425. The Hon. Victor Marrero apparently intended this issue

---

[1] The "Prior Orders" are (i) the memo endorsement appearing at ECF No. 419-1 at ECF page 6 of 10, (ii) the memo endorsement appearing at ECF No. 419-2 at ECF page 7 of 7, (iii) the Order filed at ECF No. 419-4, and (iv) the Order filed at ECF No. 419-9.

to be referred to Magistrate Judge Valerie Figueredo for report and recommendation. *See generally* ECF No. 440 at 3.

The Court should vacate the Prior Orders because they were issued *ex parte* without a full and fair opportunity for Dr. Shi or LKM to litigate the issues raised by the Receiver's *ex parte* applications to the Court. The Receiver failed to comply with the Court's directive that copies of those papers be served on counsel of record. Accordingly, the Prior Orders have no precedential value.

The Court should cancel the Convertible Note because it was issued in violation of the Court's orders, without full and accurate disclosure of the facts, violates New York's criminal usury law, and operated as a fraudulent conveyance of the existing shareholders' equity in LKM to Guo.  The Court should also cancel the Class B shares issued to Guo under the Convertible Note because he has failed to demonstrate his entitlement to payment or conversion under the Note and granting shares to Guo compensation was unfair and inequitable to the existing shareholders of LKM. Finally, the Court should reject all of Guo's claimed expenses because they fail are unreliable, contradictory, and Guo has failed to demonstrate that the claims expenses are legitimate.

## STATEMENT OF RELEVANT FACTS

Dr. Shi and LKM refer the Court to their prior recitations of the facts. *See* ECF Nos. 421-5 at 1-5; 438 at 2-5; 454; 462; *see also* ECF No. 456 at 22:8-23:13, 34:4-35:5, 57:20-62:23. In summary, because the basis for the continuation of the Receivership ceased to exist on October 5, 2020, ECF No. 275 at 42 para. (2), the Court directed the Receiver to account for his proceedings. ECF Nos. 331 at 23-24; 359. In his accounting

filed on November 18, 2022, the Receiver failed to account for the activities of this agent in China, Guo. *See* ECF No. 376 ¶¶40,41. On April 25, 2023, the Court ordered that certain papers previously filed by the Receiver under seal be unsealed and filed on the docket. ECF No. 410. On May 24, 2023, the Receiver filed the Convertible Note, his prior applications to the Court concerning the Note, and the Prior Orders. *See* ECF Nos. 419, *et seq*.

The newly filed papers revealed that although the Court had initially granted the Receiver's June 18, 2019 request that *ex parte* papers concerning the Note be sealed from the public, the Court had also ordered that copies of the Receiver's June 18, 2019 *ex parte* application be served on counsel for all the parties:

> FROM:   **JUDGE VICTOR MARRERO**
>
> **NO. OF PAGES : 9**
> **(including cover page)**
>
> **MESSAGE:   It is ORDERED that counsel to whom this Order is sent is responsible for faxing/mailing copy to all counsel and retaining verification of such in the case file. DO NOT FAX SUCH VERIFICATION TO CHAMBERS.**

ECF No. 419-1 at 1 (emphasis added).

The Receiver never served copies of the papers to counsel for Dr. Shi. *See* ECF No. 421-1 ¶¶1-9. The Receiver also ignored the Court's similar order of January 17, 2020 requiring copies of those papers be served on counsel. ECF No. 419-2; ECF No. 421-1 ¶¶10-12. Accordingly, Dr. Shi was deprived of his right to notice of and an opportunity to fully and fairly litigate the Receiver's application for leave to sign the Note on behalf of LKM and the Receiver's August 30, 2021 application for leave to convert the Note into Class B shares issued to Guo. Dr. Shi did not have notice of the

terms of the Convertible Note, or the exact nature of the conversions, until these records were finally disclosed on May 24, 2023, (ECF No. 419) two and one-half years after the basis for continuation of the receivership ceased to exist. ECF No. 275 at 42 para. (2); 331 at 23.

The newly disclosed records show that the Convertible Note was a sham. First, the Convertible Note provides that the amount Guo claimed to be lending to the receivership could only be used for purposes determined by Guo and not for any receivership expenses outside of China. *See* ECF No. 419-1 at ECF page 3 of 10 ("My team inside China . . . has been led by Mr. Guo"), ECF No. 419-2 at ECF page 4 of 7 (amended note) ("The [funds] will only be used to pay for professional services . . . incurred in mainland PRC (excluding HK) and PRC Team management"). The records show that Guo actually used the funds to pay for luxury hotel rooms, a generous "salary" to himself, and other personal expenses. *See* ECF No. 428-1 at ECF pages 55-62, 67, 71-83, 138 of 370, 428-2 at 21 of 321, 428-3 at ECF page 49, 51, 55 of 155. *See also* ECF No. 419-10 at ECF 18 of 39 and Appendix A.

Second, in his original June 2019 application, the Receiver falsely told the Court that the proceeds of the loan from Guo "will be held in the WFOE's bank account within China controlled by the Receivership." ECF No. 419-1 at ECF 5 of 10.[2] This statement was false because the Receiver's November 18, 2022 accounting identified two "WFOE" bank accounts in China but reported **no** funds being deposited into either of the WFOE accounts in China during the course of the receivership. ECF No. 376 ¶¶10-12(c) and

---

[2] "WFOE" is an acronym for "wholly foreign owned company," meaning a Chinese company wholly owned by a non-Chinese entity.

12(d). The Receiver, via his agent Guo, has had control over the WFOE account since April 16, 2019. *See* ECF No. 419-1 at ECF page 4 of 10;[3] *see also* ECF No. 396 at (vi); ECF No. 394-4 at Change Log No. 3; ECF No. 394 ¶¶15-23. Therefore, had the funds been deposited into either of the WFOE accounts, the Receiver would have submitted records to the Court demonstrating this fact.

In the June 18, 2019 request, the Receiver falsely states "My team in China . . . has been led by ***Mr. Guo, a large original Link Motion shareholder*** . . . ." ECF No. 419-3 at 1. This statement is demonstrably false because the register of shareholders of LKM produced in this case show that Guo was **not** a registered shareholder of LKM at the time the Receiver made that statement. ECF No. 290 ¶¶82-84, citing  ECF Nos. 142-2, 194-2 at ECF pages 8-11 of 11, and 285-4 at ECF pages 115-16 of 283. The Receiver gave the Court the false impression in June 2019 that Guo was already a large owner of registered shares and, therefore, his personal interests would be aligned with the interests of all of the other registered shareholders. In truth, Guo was an outsider whose interests were contrary to existing registered shareholders who had paid actual consideration for their shares.[4] *See*, *e.g.*, ECF No. 462.

After the Note was executed, the Receiver and Guo failed to comply with and ignored the terms of the Note that the Court had approved. Specifically, the Note provides that "Any single expenditure above RMB equivalent of USD 10,000 out of the

---

[3] "Mr. Guo . . . was instrumental in securing under the Receiver's control Link Motion's wholly owned entity Link Motion in Beijing Co. Ltd. (the "WFOE")."

[4] Plaintiff Baliga also falsely alleged that he was a "shareholder" of LKM for the purpose supporting his application to be appointed as receiver for LKM. *See* ECF No. 1 ¶4; *see also* ECF No. 131; 435 ¶¶5-21.

amount should be approved in writing by Temporary Receiver in advance, and the general expenditures should be sent to KLC Certified Public Accountants at end of each month for review." ECF No. 419-2 at ECF 4 of 7. This term provided important protection to the receivership. In his June 18, 2019 application, the Receiver affirmed that "All expenses using this money will be reviewed by the Receiver and his accounting professionals." ECF No. 419-1 at ECF page 5 of 10. But none of the Receiver's or Guo's submissions contain any prior approvals by the Receiver or review by KLC Certified Public Accountants. *See* ECF No. 419-3, 419-8. The Receiver's Accounting confirms that he had in his possession **no** records regarding Guo's activities other than those submitted on June 1, 2020 and August 30, 2021 in connection with the conversion. *See* ECF 376 at ¶¶40-41 (claiming the Receiver could not produce records of Guo's activities except what had been filed under seal); 419-3 at ECF pages 27-31 of 34 (records filed under seal); 419-8 at ECF pages 31-40 of 43 (records filed under seal).  Therefore, the Receiver did not "review[]" the expense before they were purportedly incurred (otherwise he would have produced them). And none of these expense records regarding Guo's expense claims were audited by KLC Certified Public Accountants. Guo and the Receiver ignored and never complied with the provision of the Note requiring prior approval and auditing of expenses.

The Receiver and Guo requested conversion of the Note into stock but failed to demonstrate that any of the conditions for repayment had been met. The Note provides that "payment on this Note shall be contingent on successful recovery of liquid funds as a result of ongoing efforts." ECF No. 419-2 at ECF page 5 of 7. In his application for

approval of the Note, the Receiver stated "repayment of the Note Agreement is <u>contingent on the Receivership successfully recovering and securing liquid funds of the Company</u>." ECF No. 419-1 at ECF page 5 of 10 (emphasis in original). The Receiver stated that if the receivership "cannot recover any funds, Guo will not be entitled to any repayment of these advances funds." ECF No. 419-1 at ECF page 5 of 10. The Receiver and Guo never recovered any liquid funds, *see* ECF No. 443-7 ¶43, and, therefore, Guo never became entitled to repayment of amounts he allegedly advanced under the Note. Despite this condition not being met, the Receiver represented to the Court that Guo was entitled to repayment (*see* ECF Nos. 419-3 at ECF pages 2-3 of 34, 419-8 at ECF pages 2-3 of 43, falsely and implicitly suggesting that the condition had been met) and sought the Court's approval of conversion of the alleged "loan balance" to Guo into 86,272,750 Class B shares of the Company.

The Receiver and Guo manipulated the Court into approving the conversion of the alleged loan into Class B shares by omitting material facts (*i.e.*, that Guo had not deposited any loan proceeds into the LKM WFOE account and had not recovered any "liquid funds"). ECF No. 419-3 at ECF pages 2 and 31 of 34; ECF No. 419-8.

The records also show that expense records submitted by Guo fail to support his claims. In support of his request for conversion, Guo submitted limited records concerning amounts he claimed to have paid in China, ECF No. 419-3 at ECF pages 2-3 of 34, 419-8 at ECF pages 2-3 of 43. Certain of Guo's expense claims were falsely attributed to the receivership because communications from unpaid receivership vendors in China show that expenses claimed by Guo were actually for his own, entirely

unrelated business interests in China. ECF No. 408-1 at 1 ("Dear Receiver, I was informed by [LKM] WOFE employees that your agent just had his own company employees wages paid, but not any WOFE wages/Receivership bills, which is a very similar style with Seiden professionals get paid but not us"). And Guo claim reimbursement for paying himself a salary.

Many of the records subsequently submitted by Guo comprise "VAT Invoices." ECF No. 428 at 6 fn.4. According to Guo, the VAT Invoices are issued on government controlled software and forms and "provide[] proof of the purchase of goods or services." ECF No. 428 at 6 fn.4. A review of the translated VAT Invoices show that a substantial number of the expenses he claims were actually aid out of LKM accounts using LKM funds and not amounts advanced by Guo. *See*, *e.g.*, ECF No. 448-1 at ECF p.36 of 370 (payment made from account belonging to LKM VIE company NetQin Infinity (Beijing) Technology Co.,Ltd.). A chart identifying similar expense claims that should be rejected is annexed hereto as Appendix A. *See* Appendix A at A-1 through A-4.

Guo himself now admits that some of the expenses he paid were made "in [his] capacity as an LKM ADR holder, not as the Receiver's agent." ECF 460-1 ¶11. It is the Court's role to determine which payments are properly allocable to the receivership, and Guo and the Receiver were obligated to make a full disclosure of all relevant records to permit the Court to make this determination. They did not.

The issuance of Class B shares to Guo was also unfair and inequitable to the existing shareholders of LKM. The issuances to Guo of 86,272,750 shares of Class B stock under the guise of the Convertible Note resulted in the expropriation from the

other registered shareholders of 40% of the voting control and 13% of the economic interests of the Company by issuing. *See* ECF No. 290 ¶81. LKM received no new capital and no economic benefit in exchange for the issuance of these Class B shares. *See* ECF No. 376 at ¶12(c) and (d) (showing no deposit of cash into the WFOE accounts).

The motivation for this conduct is evident from the Receiver's and Guo's efforts to call extraordinary general meetings ("EGMs") of the shareholders for May 30, 2023 and May 31, 2023 where they intended to remove the existing directors—who had been appointed by the shareholders of record when this action began in 2018—and to "ratify" their fraudulent conduct and continue the receivership by shareholder resolution. See ECF Nos. 421-1, 421-2, 421-3, 425.

Guo and the Receiver failed to disclose and concealed the fact that Guo had retained the Receiver as a partial advocate before the commencement of this action. *See* ECF No. 435. The Receiver's role as a partial advocate is evidenced by his Receiver signature of a November 5, 2018, letter to LKM in his capacity as "Counsel for LKM Forward Shareholders." *See* ECF No. 435-10 at 1. From before this action was commenced, Guo has been a member of the LKM Forward shareholder group and has paid legal fees to the Receiver and his law firm Seiden Law Group ("SLG") on behalf on the LKM Forward shareholder group. *See* ECF No. 459 ¶¶7,10, 460-1¶11; 462 at 1. Guo's primary motivation was to obtain control over LKM. *See* ECF No. 43 ¶10, 435 ¶¶11-12, 435-8. The Receiver served his fee-paying client, Guo, by appointing him as the individual with control over LKM's assets in Asia. *See* ECF No. 394 ¶15, 394-1 at 4. By December 2019, Guo had obtained control over LKM's primary operating entity

in China. ECF No. 394 ¶¶55-61, citing ECF No. 394-6.

## ARGUMENT

**A. The Court has the power to deny compensation to agents retained by the Receiver.**

A receiver appointed by a federal court is subject to the "highest kind of fiduciary obligations." *CFTC v. Eustace*, Nos. 05-2973, 06-1944, 2007 WL 1314663, at *7 (E.D. Pa. May 3, 2007), quoting *Phelan v. Middlestates Oil Corp.*, 154 F.2d 978 (2d Cir. 1946). These obligations include the duty to fully and completely disclose to the court all facts concerning a possible conflict of interest. *Eustace*, 2007 WL 1314663, at *29 ("it was for the court, and not the law firm, to determine whether in fact a conflict existed and, if so, what the remedy should be. The decision should not be left to counsel, whose judgment may be clouded by the benefits of potential employment"), quoting *In re The Leslie Fay Cos.*, 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994).

The Court has the power to deny compensation and expenses where an officer of the court, such as a court-appointed receiver, fails to disclose a conflict of interest. *See, e.g.*, *In re Angelika Films 57th, Inc.*, 246 B.R. 176, 179 (S.D.N.Y. 2000) (collecting cases). The Receiver submits that Guo was his agent in China. But the Receiver failed to disclose that the Receiver was actually Guo's agent because of their fee-based attorney-client relationship. From the beginning, Guo had funded the litigation that led to the appointment of the Receiver for the very purpose of having the Receiver appoint Guo as agent with control over LKM in China and arrange for issuance of

registered shares to Guo. *See* ECF No. 460 at 2[5]; 460-1 ¶11[6]; *see also* ECF No. 459 ¶5,7[7]. This "takeover by litigation" was a conflict of interest and a perversion of the legal process. Accordingly, the Court has the power to deny compensation to Guo and prevent Guo and the Receiver from manipulating the legal system to their own personal benefit.

**B. The Court's prior orders concerning the Convertible Note and Class B shares should be vacated based on the newly disclosed evidence and because those orders have no precedential value.**

In support of his expense claims, Guo relies on the Prior Orders, *see* ECF No. 419-1 at ECF page 6 of 10; ECF No. 419-4 at ECF page 2-4; ECF No. 419-9 at ECF page 2-4, which authorized the Receiver to execute the Convertible Note and issue Class B Shares to Guo as payment under the Convertible Note. The Could should not approve the expenses based on the Prior Orders because they were issued *ex parte*, without a full and fair opportunity to litigate the issues presented, based on false and misleading information given to the Court by the Receiver and Guo, and, therefore, the Prior Orders have no precedential value.

"[T]he 'law of the case' doctrine may be properly invoked only if 'the parties had a 'full and fair' opportunity to litigate the initial determination.'" *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002), quoting *People v. Bilsky*, 95

---

[5] "Mr. Guo is part of a group of LKM ADR holders who have supported Mr. Baliga's litigation, and it was in this capacity as a shareholder that he made this payment [to Baliga's counsel]." ECF No. 460 at 2.

[6] "I am a part of a group of LKM ADR holders who have supported Mr. Baliga's litigation." ECF No. 460-1 ¶11.

[7] "The LKMForward investor group is comprised of more than twenty investors." "In pursuit of those goals, the LKMForward investors have shared the costs of this litigation from the beginning." ECF No. 459 ¶5,7.

N.Y.2d 172, 175 (N.Y. 2000) (quotation marks omitted). *See also Kingdom 5-KR-41, Ltd. v. Star Cruises PLC,* No. 01 CIV. 2946 (DLC), 2004 WL 359138, at *6 (S.D.N.Y. Feb. 26, 2004) ("The law of the case doctrine should not be invoked unless the parties had a "full and fair" opportunity to litigate the initial determination.").

Here, each of the Court's Prior Orders regarding the Convertible Note and issuance of the Class B shares to Guo were made *ex parte*. *See* Prior Orders. *See also* Docket ECF No. 421-1 ¶¶3-12. These *ex parte* applications were not served on undersigned counsel, in contravention of the Court's orders. *See* ECF No. 74, 78. And Dr. Shi did not have any opportunity, let alone a full or fair opportunity, to litigate those issues. Accordingly, the law of the case doctrine does not apply to those prior orders and they have no precedential value.

The prior orders also should be vacated because the newly disclosed evidence shows that the Receiver made material misrepresentations to the Court in support of his application for approval of the Convertible Note. *See RCI HV, Inc. v. Transtec (RC) Inc.*, No. 02 CIV. 4307 (CSH), 2004 WL 1197246, at *11 (S.D.N.Y. May 28, 2004) (holding that where an attorney "misrepresents or *omits material facts to the court*, or acts on a client's perjury or distortion of evidence, his conduct may constitute fraud on the court") (citations omitted); *Leber-Krebs, Inc. v. Capitol Records*, 779 F.2d 895, 899-900 (2d Cir. 1985) (finding "fraud on the court" where misrepresentations to the court caused the court to deny initial confirmation of an attachment order).

Here, the newly disclosed records show that:

(i)     *Guo was "a large original Link Motion shareholder. . . ."* ECF No. 419-1 at

ECF 3 of 10. This representation was false because Guo was not a registered shareholder at all until sometime in 2020 when the Receiver issued Class B shares to Guo. Prior to that conversion, Guo held only LKM ADS.[8] ECF No. 290 ¶¶82-84], citing ECF Nos. 142-2., 194-2 at ECF pages 8-11 of 11, and 285-4 at ECF pages 115-16 of 283; ECF No. 428 ¶2. The Receiver knew Guo was not a registered shareholder because Guo had retained the Receiver has litigation counsel before this action was brought. *See* ECF No. 435-10 at 1, 460 at 2, 460-1 ¶11; *see also* ECF No. 459 ¶5,7. The Receiver's characterization of Guo as "a large original Link Motion shareholder is material because registered shareholders have materially different rights compared to ADS holders. *See* ECF Nos. 206, 207, 290 ¶80.

(ii)     *"The [loan] funds will be held in the WFOE's bank account in China controlled by the Receivership."* ECF No. 419-1 at ECF 5 of 10. No funds from Guo were ever deposited into a WFOE account in China. *See* ECF No. 376 ¶12(c) and 12(d); 376-1 at ECF pages 1-6 of 11 (no WFOE accounts in China reported); *see also* ECF No. 376-1 at ECF page 3 of 11, line 13 (reporting $15,171.44 "recovered" from a WFOE account in Hong Kong on 7/8/2019). Guo failed to provide records to prove compliance with this term of the Convertible Note, and the records submitted by Guo on June 1, 2023 show that the alleged expenses he paid were from his personal account, not the WFOE account. ECF No. 428 at ¶¶8-15; 436 at ¶32(d).

(iii)     *"Guo has further agreed that repayment of the Note Agreement is contingent on the Receivership successfully recovering and securing liquid funds of the*

---

[8] Under Cayman law, a holder of ADRs does not have the same legal rights as a registered shareholder. *See, e.g.*, ECF No. 194-1, 194-3; *see also* ECF No. 142-2 at 7; ECF No. 209-1.

*Company."* ECF No. 419-1 at ECF 5 of 10 (emphasis in original). Guo never recovered "liquid funds" for the benefit of LKM's WFOE and other business operations in China. *See* ECF No. 443-7 ¶43.[9] As such, the requirements for repayment of the note were never satisfied and no payment was ever due.

(iv)     *"Guo can choose to convert his RMB equivalent of $1,500,000 into equity of the Company at $.10 per ADS equivalent," "the ADS was trading at $0.15/ADS prior to being delisted,"* the *"conversion option at $.10 per ADS is completely justified and fair."* ECF No. 419-1 at ECF page 6 of 10.  In light of the discounted conversion price, and the inherent difference in value between Class B and Class A shares of LKM stock, the conversion rate in the Convertible Note is criminally usurious under New York law. *See* ECF No. 421-5 at 8-9, 12, citing *Adar Bays, LLC v. GeneSys ID, Inc.*, 37 N.Y.3d 320 (N.Y. 2021).

(v)     *The Receiver misrepresented that the conversion feature of the Convertible Note was "ADS equivalent."* ECF No. 419-1 at ECF 6 of 10 and 10 of 10. This representation was false because an ADS holder is only entitled to convert into "five Shares" of Class A LKM stock. ECF No. 142-6 at 2-3, 6 (recitals and Section 1.3, 1.35 of the Deposit Agreement for LKM ADS). The Receiver granted Guo Class B shares, which are much more valuable. The Company's Class B shareholders are entitled to ten (10) votes per share. *See* ECF No. 290 ¶80, citing ECF No. 130-3 at ECF page 7 of 32. Class A shareholders are entitled to only one (1) vote per share. *See* ECF No. 130-3 at ECF page 7 of 32. Therefore, the Note purported to grant to Guo rights that he

---

[9] But see ECF No. 436 ¶¶13-18.

would not have as an ADS holder.

The cases relied on by the Receiver do not lead to a different conclusion.[10] In _Travelers Casualty & Surety,_ the defendant had in his possession the supposedly "newly discovered" evidence before the court issued its judgment and the evidence showed that the defendant had not been diligent in attempting to obtain the evidence earlier. _Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs.,_ 228 F.R.D. 125, 129-130 (N.D.N.Y. 2005). Similarly, in _Abner Realty, Inc_., the information allegedly "newly discovered" was the same information contained in another document that was submitted in connection with the motion and due diligence would have disclosed the information later claimed to be "newly discovered." _Abner Realty, Inc. v. Adm'r of GSA_, 97 Civ. 3075 (RWS), 1999 WL 436462, at *3 (S.D.N.Y. June 24, 1999). In contrast to the cases cited by the Receiver, here the evidence shows that as soon as Dr. Shi learned that Guo had obtained an equity interest in LKM, Dr. Shi promptly moved the Court to vacate the prior orders and cancel the Class B shares. ECF No. 421, 425.

## C. The Court should find that Guo did not pay for the shares he received.

As Guo admits, he acquired his registered shares in the Company by way of the Convertible Note. ECF Nos. 300-301. Under the terms of the Convertible Note, Guo was entitled to repayment **_only_** if he met the contingencies set forth in the text of that document, _i.e._, if Guo deposited funds in LKM's WFOE account _and_ recovered "liquid funds" for LKM. ECF No. 419-2 at ECF page 5 of 7 ("The Borrower [i.e., LKM] will be paid inside China") ("payment on this Note shall be contingent on successful recovery

---

[10] All of the cases cited by the Receiver relate to Rule 60(b), but the relevant standard is Rule 54(b) because there has not been a final judgment here. _See_ ECF No. 430 at 5.

of liquid funds as a result of ongoing efforts").

Guo did not satisfy either of the contingencies. No liquid funds were ever recovered by the receivership. *See* ECF No. 443-7 ¶43. And no funds were ever deposited into the WFOE's account. The claim that Guo "paid approximately $1.5 million in expenses related to the Receivership's asset recovery efforts," ECF No. 430 at ECF page 13, is materially different than saying that Guo transferred $1.5 million into LKM's accounts in China. The Receiver's Accounting shows that no such funds were ever deposited into LKM's accounts in China. ECF No. 376. And the documentation provided by the Receiver and Guo[11] shows that much of the "expenses" claimed by Guo as amounts he advanced personally were actually paid out of LKM accounts with LKM funds, not funds provided by Guo. *See* Appendix A at A-2 to A-4.

The claimed expenses were also not reasonable or justifiable. Records show that Guo lived in luxury hotels in Beijing, paid personal expenses, and transferred money to himself. ECF No. 436 ¶¶31-32; Appendix A at A-5 to A-7. Guo claims legal expenses but has provided not time entries or legal invoices to substantiate that these purported legal fees were incurred for the benefit of LKM and not himself personally. *See* Appendix A at A-8. Thus, Guo failed to submit evidence sufficient to prove that the expenses were incurred for the LKM receivership, rather than for his own personal and business interests separate from LKM.

## D. The Convertible Note should be cancelled.

In *Adar Bays*, the New York Court of Appeals addressed the legal treatment of

---

[11] Guo first submitted untranslated documentation. *See* ECF Nos. 428-2, 428-3, 428-4. Translations were filed at 448-1, 448-2, 448-3.

loan conversion provisions permitting lenders to convert debt into stock at a discount in the context of New York criminal usury law, N.Y. Penal Law § 190.40. *See Adar Bays, LLC v. GeneSys ID, Inc.*, 37 N.Y.3d 320 (2021). The New York Court of Appeals held that when the conversion provision permits a lender to convert at a discount, the quantum of the discount must "be treated as interest for the purpose of determining whether the transaction violates N.Y. Penal Law § 190.40, the criminal usury law." *Adar Bays, LLC*, 37 N.Y.3d at 323.

Here, New York law applies to the Convertible Note because it was entered into by a receiver appointed by a federal court sitting in New York and exercising jurisdiction over the parties in New York. *See generally United States v. Moseley*, 980 F.3d 9, 23-24 (2d Cir. 2020); *Allstate Ins. Co. v. Stolarz,* 81 N.Y.2d 219, 226 (1993), citing *Zeevi & Sons v Grindlays Bank*, 37 NY2d 220, 227 (1975). *See also* 11 U.S.C. §§ 85 (applying state usury laws to national lenders). And because the terms of the Convertible Note provide Guo the discretion to convert at a discount fixed in the contract, the conversion discount of 61.58% resulting from his conversions (*see* ECF No. 421-5 at 12) summed with the 25% interest in the Convertible Note, exceeds the criminal usurious rate under N.Y. Penal Law § 190.40. In this case, the Court should also consider the fact that the Note provided the right to convert into Class B shares, which would have greater value that ADSs or Class A shares. That additional value would also count towards the 25% limit under N.Y. Penal Law § 190.40.

Therefore, the Convertible Note is *void ab initio. Adar Bays, LLC,* 37 N.Y.3d at 323. The defense of criminal usury under *Adar Bays* was timely raised as soon as Dr.

Shi learned of the Convertible Note. *See*, *e.g.*, *EMA Fin., LLC v. Chancis*, No. 22-274, 2023 WL 5729838, at *8 (2d Cir. Sept. 6, 2023). *See also* ECF No. 421, 425.

The Receiver argues that criminal usury cannot be asserted as a separate cause of action.[12] The Receiver's argument is logically flawed and self-serving. Dr. Shi, as a registered director, is an interested party who has standing to assert objections to the Receiver's accounting. In that capacity, Dr. Shi asserts the affirmative defense of criminal usury as a basis to hold the Convertible Note *void ab initio* and to rescind all consideration granted to Guo under that note, including cancelling the issued shares. The Receiver's claim that "no demand under the Note has been sought to be enforced" is inaccurate because it is the enforcement of Guo's demand for conversion under the Note that resulted in the issuance of shares to Guo. And the Receiver provides no support for his contention that the Court's prior Orders authorizing the Convertible Note and issuance of shares absolved any usury from the Note when the Receiver failed to serve notice on Dr. Shi.

The Court should not rely on the purported opinion of Mathison to support the Receiver's new contention that "Guo was not given any discount on the shares." ECF No. 429, 430 at ECF page 16. Lacking personal knowledge of the facts, Mathison recites his undergraduate education and employment in the financial industry in an attempt to qualify as an expert witness. ECF No. 429 ¶2. Mathison's declaration and opinions should be rejected and disregarded because he is self-interested, lacks independence.

---

[12] Dr. Shi has standing to request that the Convertible Note be found *void ab initio*. First, as a registered director, Dr. Shi has standing to move on behalf of the Company. Further, Dr. Shi has standing derived from his standing to object to the accounting.

*See* ECF No. 435  ¶10 (describing Mathison's self-interest) Mathison's report fails to establish that he is an expert in debt conversion instruments or stock discounts and fails to describe what records he reviewed and what analysis he performed. *See* ECF No. 429. Accordingly, Mathison's report fails comply with Rule 701 or 702 of the Federal Rules of Evidence. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149-150 (1999). As set forth above, the conversion feature gave Guo the Class B shares at an unfairly discounted value. That discount, when added to the interest rate of 25% as required by *Adar Bays, LLC v. GeneSys ID, Inc.*, 37 N.Y.3d 320 (2021), violated New York's criminal usury law.

In addition, the Receiver should be estopped from arguing that the conversion price in the note did not result in a valuable discount to Guo because the Receiver has failed to account for the revenues and business operations of the WFOE and Beijing Technology, which were transferred to Guo. *See* ECF No. 428 ¶6.[13] Throughout his declarations, Guo makes reference to his review of LKM account statements and other records that are solely in his possession and that have not been produced. As agent of the Receiver, Guo had a duty to fully and completely disclose all of the facts.

### E. Guo's accounts are inaccurate, contradictory, and unreliable.

The new records further demonstrate that the Receiver's and Mr. Guo's accounts are inaccurate and unreliable. In his June 1, 2023 declaration, Guo submitted three voluminous exhibits purporting to support his claims for expenses incurred on behalf

---

[13] It is likely that the Receiver and Guo have also violated the federal securities laws by (1) making false statements to the Court in order to obtain approval of the Contingent Note and the specific conversions and (2) and engaging in a scheme to improperly obtain securities of LKM. *See e.g.*, *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450 (S.D.N.Y. 2017).

of the receivership. ECF No. 428 ¶¶9-14; ECF No. 428-2, 428-3, and 428-4. On June 26, 2023, Guo submitted translations of his expense backup. ECF No. 448, 448-1, 448-2, and 448-3. In these submissions, Guo states that the records submitted are true and accurate records of expenses *he* incurred "for the benefit" of the receivership. ECF No. 428 ¶8, ¶9 (referring to "my expenditures"), ¶10 ("I spent"), ¶11 ("related to the Receiver's expenditures"), ¶12 ("I spent"), ¶13 ("my expenditures"). But in his July 24, 2023 declaration, Guo walks back from his prior statements and now claims that inclusion of the record showing a $50,000 payment to Baliga's counsel was "inadvertent," ECF No. 460-1 ¶10, and Guo never intended to disclose those facts to the Court. This new disclosure renders all of Guo's prior statements unreliable. Guo has admitted to concealing information from the Court, and the Court should now decline to give any credit to any of the materials Guo has submitted in support of his claims. *See Sherry v. United States Bank Nat'l Ass'n*, 662 F. App'x 39, 41 (2d Cir. 2016); 3 Clark, TREATISE ON THE LAW & PRACTICE OF RECEIVERS (1959) § 699.1, p. 1285 (A receiver must report and account for all property that "he has received, and give the reason why, if any, he failed to receive and account for any or all the property as ordered by the court") (citation omitted).

A review of the other records submitted by Guo shows that many of them also fail to support his claims of expenses incurred for the benefit of the Receivership. For example, Guo submitted in support of his expense claims a copy of VAT receipt dated June 26, 2019 at ECF No. 448-1 ECF p.36 of 370. But that VAT receipt reflects a payment made out of an account held in the name of "NetQin infinity (Beijing)

Technology Co., Ltd." not Guo.[14] In other words, Guo is claiming funds paid from an LKM corporate account as an expense that he personally incurred.[15] The vast majority of "expense" records submitted by Guo comprise VAT receipts showing payments made out of LKM corporate accounts. *See generally* ECF No. 448-1, 448-2, 448-3. A list of expense claims that should be rejected as fraudulent VAT invoice records is annexed hereto as Appendix A at A-1 to A-4. The records also show substantial claims for personal expenditures that are meritless and should be rejected. *See* Appendix A at A-1, A-5 to A-7. Finally, Guo claims reimbursement for legal fees but has failed to submit any time entries to support these claims or otherwise demonstrate that these claims relate to work performed for the benefit of LKM. *See* Appendix A at A-1, A-8. Even if the Court declines to reject all of Guo's expense claims in toto, the Court should reject the fraudulent VAT, personal, and legal claims.

## F. The issuance of Class B shares to Guo was inherently unfair and inequitable to the existing shareholders of LKM.

The Court should also cancel the Note on the ground that it operates as fraudulent conveyance for lack of fair consideration. *See Adelphia Recovery Tr. v. HSBC Bank USA (In re Adelphia Recovery Tr.)*, 634 F.3d 678, 692 (2d Cir. 2011) (noting that the traditional remedy for fraudulent conveyance is rescission). The Company's existing registered shareholders would suffer expropriate of their equity if Guo is permitted to retain the Class B shares. *See, e.g., Mony Grp., Inc. v. Highfields Capital*

---

[14] As Guo has conceded, the VAT receipts are automatically generated upon payment and, therefore, accurately reflect the accounts out of which funds were transferred. ECF No. 428 at 6 fn.4.

[15] The record shows that Guo never deposited any of his own funds into the LKM-related bank accounts. *See* ECF No. 376-1 at ECF 1-6 of 11 (no WFOE accounts in China reported); *see also* ECF No. 376-1 at ECF page 3 of 11, line 13 (reporting $15,171.44 "recovered" from a WFOE account in Hong Kong on 7/8/2019).

*Mgmt., L.P.*, 368 F.3d 138, 147 (2d Cir. 2004) (finding that a change of control transaction can constitute irreparable harm to shareholders). The Company's shareholders have been significantly diluted by the acts of the Receiver to hand majority voting control of the Company to his agent (Guo). *See* ECF No. 290 ¶¶77-84. Courts have recognized this type of expropriation as harm to existing shareholders (such as Deutsche Bank and China AI Capital Limited), whose interests Dr. Shi and the other directors are seeking to protect.[16] *See Mony Grp. Inc.*, 368 F.3d at 147. And in this case, LKM has not received any capital or other benefit that would constitute fair value exchanged for the Class B shares issued to Guo. *See* Section B *supra* at page 14 (no funds deposited into WFOE accounts and no repayment due under the Note).

### G. The Court should reject Guo's compensation because he failed to disclose a conflict of interest.

As discussed above, at Section A, the Receiver and his agent Guo were required to fully disclose to the Court all potential conflicts. *Eustace*, 2007 WL 1314663, at *29, quoting *In re The Leslie Fay Cos.*, 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994). Guo has now admitted that he intended to conceal from the Court the fact that Guo has been funding Plaintiff Baliga's attorney's fees to maintain this litigation. *See* ECF No. 460 at 2; 460-1 ¶11; *see also* ECF No. 459 ¶5,7.

Further, Dr. Shi and LKM submitted evidence showing that, shortly before the commencement of this action, Guo had retained the Receiver in the capacity as a partial advocate to represent Guo and the other "LKM Forward" shareholders. *See* ECF

---

[16] Contrary to the Receiver's false and unsubstantiated contentions, Dr. Shi does not control China AI. *See* ECF No. 290 ¶¶ 102-108.

No. 435 ¶¶3-23; 435-10 at 1.

Neither Guo nor the Receiver disclosed to this Court the facts concerning the retention of the Receiver by Guo, Baliga, and the other LKM Forward shareholders as a paid advocate. *See* ECF Nos. 92, 93. These facts were not disclosed to the Court until 2023. *See* ECF Nos. 459 ¶¶7,10; 460-1 ¶¶6,11, 462. The Court should reject that compensation and expenses here on the grounds that the Receiver and Guo failed to disclose his conflict of interest. *See In re Angelika Films 57th, Inc.*, 246 B.R. at 179.

**H. The Court should find that any presumption that the Receiver's acts were independent and in furtherance of the Receivership has been rebutted by the newly discovered evidence.**

The Court should find that the presumption in the Receivership Order, ECF No. 26 § II(12), that the Receiver's conduct was appropriate has been rebutted. ("actions taken by the Receiver are 'presumed to have been on an informed basis, in good faith, and in the honest belief that such action were taken appropriately'"). The ample evidence discussed above shows that the Receiver was operating under an undisclosed conflict of interest that was concealed from the Court.

## CONCLUSION

For the foregoing reasons, the Court should issue an Order as follows:

(1) vacating the Prior Orders;

(2) declaring the Convertible Note null and void;

(3) rejecting the expense claims submitted by Guo;

(4) cancelling all Class B shares issued to Guo; and

(5) granting such other and further relief and the Court deems appropriate.

Dated:  New York, New York
   September 18, 2022

Respectfully submitted,

FELICELLO LAW P.C.

*/s/ Michael James Maloney*
Michael James Maloney
Rosanne E. Felicello
FELICELLO LAW P.C.
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806
mmaloney@felicellolaw.com
rosanne@felicellolaw.com
*Attorneys for Defendant Vincent*
*Wenyong Shi and Link Motion Inc.*