**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAYNE BALIGA, derivatively on behalf of LINK MOTION INC. (F/K/A NQ MOBILE INC.)<br><br>                        Plaintiff,<br>     -against-<br><br>LINK MOTION INC. (F/K/A NQ MOBILE INC.), VINCENT WENYONG SHI, JIA LIAN, XIAO YU,<br><br>                   Defendants, | 1:18-cv-11642-VM-VF<br><br>**REPLY DECLARATION OF MICHAEL JAMES MALONEY IN FURTHER SUPPORT OF OBJECTIONS TO GUO COMPENSATION CLAIMS** |

MICHAEL JAMES MALONEY declares, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am an attorney duly admitted to practice law before the United States District Court for the Southern District of New York. I am a partner of Felicello Law P.C. and counsel of record for Defendant Vincent Wenyong Shi ("**Dr. Shi**").

2.     I make this declaration in further support of objections to the expense and compensation claims asserted by Mr. Francis "Lilin" Guo ("**Mr. Guo**").

3.     A copy of the Memorandum of Association of Link Motion Inc. (f/k/a NQ Mobile Inc.) ("**LKM**" or the "**Company**") was previously filed at ECF No. 36-4.

4.     Equity interests in LKM are divided into Class A and Class B Common Shares. ECF No. 36-4 §6; 130-1.

5.     The rights and interests of each of the holders of Class A Common Shares and Class B Common are set forth in the Memorandum of Association. *See* ECF No. 36-4.

6.     Only registered Class A and Class B shareholders had direct voting rights, ECF No. 36-4 §1 (definition of "Member") and §6(c).

1

7.     Registered holders of Class A and Class B Common Shares may transfer their shares subject to limitations set forth in the Memorandum of Association. *See* ECF No. 36-4 §13.

8.     Katharine L. B. Pearson, a qualified Cayman Islands attorney, has opined that registered holders of Class A and Class B Common Shares had certain rights under Cayman Islands law not available to ADR holders. *See* ECF No. 131, 154.

9.     A list of registered shareholders of LKM as of October 2018 was previously filed at ECF No. 130-1.

10.     As of October 2018 (before the Receiver was appointed), there were 75,528,407 registered Class B shareholders of LKM and 494,984,412 registered Class A shareholders, for a total number of Common Shares of 570,512,819. *See* ECF No. 130-1 at 5, 9.

11.     A majority of LKM's Class A Common Shares were deposited with Deutsch Bank Trust Company Americas ("**Deutsche Bank**") to be held under the terms of the Deposit Agreement in trust for holders of American Depositary Receipts ("**ADRs**" or, individually, an "**ADR**"). ECF No. 130-1 at 2; ECF No. 142-6.

12.     The rights and interests of ADR holders were represented by the depositary, Deutsch Bank. *See* ECF No. 142-6 §4.8.

13.     The Deposit Agreement with Deutsch Bank governs the rights and interests of each of the holders of ADR. *See* ECF No. 142-6 §§ 1.3 (definition of "ADS"), §1.16 (definition of "Deposited Securities"), §1.23 (definition of "Holder"), §1.25 (definition of "Memorandum"), §1.28 (definition of "ADR"), §1.35 (definition of "Shares"), §2.6 (surrender of ADRs for Shares), §2.7 (limitations), §4.1 (cash distributions), and §4.8 ("Voting of Deposited Securities").

14.     Until delisting, ADR holders could trade their ADRs on the NYSE, whereas registered shareholders could not. *See* ECF No. 178-7 at 3.

15.     Guo claims that he held 6,022,203 ADRs of LKM. ECF No. 460-1 ¶2.

16.     Pursuant to the terms of the Deposit Agreement 6,022,203 ADRs would represent an interest in 30,111,015 Class A Common shares. *See* ECF No. 142-6 §§1.3, 1.28 (each ADR represents one ADS which represents 5 Class A shares); *see also* ECF No. 477 at 4.

17.     Thus, Guo's 6,022,203 ADRs represented a 1.06% beneficial equity interest in LKM (i.e., the product of 30,111,015 shares divided by 570,512,819 total shares multiplied by 100). *See* ¶9 *supra*.

18.     Annexed hereto as **Exhibit Q**[1] is a true and correct copy of an excerpt of the Cayman Islands Companies Law.

19.     Cayman Islands Law provides that upon a winding up, each shareholder would be entitled to their proportional interest in LKM's net assets after payment of liabilities. Ex. Q §140(1) ("the property of the company shall be applied in satisfaction of its liabilities pari passu and subject thereto shall be distributed amongst the members according to their rights and interests in the company").

20.     Annexed hereto as **Exhibit R** is a true and correct copy of webpage maintained by Deutsche Bank and showing the last closing price of LKM ADRs.

21.     On November 18, 2022, the Receiver submitted to the Court *ex parte* copies of certain time entries purportedly relating to the receivership. *See* ECF No. 378-4 (the "Time Entries").

22.     At the time they were filed, the Time Entries were not accessible to undersigned counsel and were not otherwise served on me.

---

[1] Exhibits A through C are annexed to the Declaration of Michael James Maloney, dated May 26, 2023. ECF No. 421-1. Exhibits D through P are annexed to the Declaration of Michael James Maloney, dated June 13, 2023. ECF No. 435.

23.     On September 20, 2023, the Court denied the Receiver's motion to seal the Time Entries. *See* ECF No. 474.

24.     Copies of the Time Entries were served on me by email on October 13, 2023. However, upon initial review my office learned that certain pages of the copy served on me were corrupted.

25.     On October 24, 2023, I received from Receiver's counsel a corrected copy of the Time Entries.

26.     In his declaration, Guo claims that "[t]he alleged 'unpaid receivership vendor,' Ms. Shuang Liu ("Liu") has no contractual or employment relationship with the Receivership."

27.     The Receiver's Time Entries refer to "translator Shuong Liu" and "Shuang" at ECF No. 378-4 pages 137 (6/8/21 time entry) and 165 (5/25/22 time entry).

28.     Based on my review of the Time Entries, I concluded that none of the entries reflect the review by the Receiver's team of any requests by Guo for prior approval of expenses.

29.     Based on my review of the Time Entries, I concluded that none the entries reflect the receipt or review by the Receiver's team of any monthly audits of the expenses that Guo claims to have incurred on behalf of the receivership.

30.     Based on my review, the Time Entries appear to show that Guo first invoked the conversion feature of the Note on April 2, 2020. ECF No. 378-4 at ECF page 90 (2nd time entry).

31.     It appears from the Time Entries that the Receiver did not request backup for Guo's claimed expenses until April 10, 2020. ECF No. 378-4 at ECF page 91 (2nd entry requesting "letter" from Guo).

32.     Based on the contents of the Receiver's June 1, 2020 *ex parte* letter to the Court (ECF No. 419-3), it appears that the only supporting materials provided by Guo was a letter enclosing a chart of his claimed expenses. ECF No. 419-3 at ECF pages 31-40.

33.     Substantially the same process was followed for the August 30, 2021 conversion application. *See* ECF No. 378-4 at ECF pages 143-144.

34.     The chart submitted by Guo in support of his June 1, 2020 conversion claim, ECF No. 419-3, claims expenditures of RMB2,877,416.92 for the period January 9, 2020 through May 9, 2020. ECF No. 419-3 at ECF page 29-34.

35.     Applying the same exchange rate of "7.11RMB per USD" as in ECF No. 419-3, this amounts to $404,699.99 for the period January 9, 2020 through May 9, 2020. *See* ECF No. 419-3 at ECF page 29-34.

36.     The chart submitted by Guo in support of his August 30, 2021 conversion claim (ECF No. 419-8), claims receivership expenditures of approximately $377,910.29[2] for the period May 10, 2020 through December 31, 2020. *See* ECF No. 419-8 at ECF pages 33-37.

37.     Together, these two submissions claim that Guo had spent a total of $782,610.28 in receivership expenses in 2020. *See* ECF No. 419-3 at ECF page 29-34 and ECF No. 419-8 at ECF pages 33-37.

38.     Of this total amount for 2020, Guo claimed "salary" of $165,000.[3] *See* ECF No. 419-3 at 31; 419-8 at 35.

---

[2] *See* May 2020 expenses of RMB3,497.80, June 2020 expenses of RMB81,294.35, July 2020 expenses of RMB184,144.35, August 2020 expenses of RMB936,437.11, September 2020 expenses of RMB530,371.49, October 2020 expenses of RMB145,356.38, November 2020 expenses of RMB152,919.84, and December expenses of RMB407,279.13, which total to the amount of RMB2,441,300.45. Applying the same exchange rate of "6.46RMB per USD" as in ECF No. 419-8, this amounts to $377,910.29.

[3] ECF No. 419-3 at ECF page 31 of 34 (five months salary at "USD$15,000/month" amounting to $60,000); ECF No. 419-8 at ECF page 35 of 43 ($60,000 for "May,June,July,August 2020 Salary"), page 37 of 43 ($45,000 for "Sept, Oct, Nov 2020 Salary").

39.     Excluding Guo's claimed "salary," Guo's June 1, 2020 and August 30, 2021 charts claim receivership expenses in 2020 of $617,610.28.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 24, 2023

  /s/ Michael James Maloney
Michael James Maloney
