IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Wayne Baliga,<br><br>    Plaintiff,<br><br>  - against –<br><br>Link Motion, Inc. (f/k/a NQ Mobile Inc.),<br>Vincent Wenyoung Shi, Jia Lian, Xiao Yu,<br><br>    Defendants. | No. 1:18-cv-11642-VM-DCF |

**RECEIVER'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT SHI'S SUPPLEMENTAL OBJECTIONS
TO THE AUGUST 11, 2023 REPORT & RECOMMENDATION
REGARDING THE RECEIVER'S ACCOUNTING**

                 Amiad Kushner
                 Jennifer Blecher
                 Xintong Zhang
                 SEIDEN LAW LLP
                 322 Eighth Avenue
                 Suite 1200
                 New York, New York 10001
                 (212) 337-3502

                 *Attorneys for the Court-Appointed*
                 *Temporary Receiver Robert W. Seiden*

Robert W. Seiden ("Receiver"), in his capacity as the court-appointed temporary receiver of Link Motion, Inc. ("LKM" or the "Company"), through his undersigned counsel, respectfully submits this memorandum of law in opposition to Defendant Vincent Wenyong Shi's ("Shi") Supplemental Objections to the August 11, 2023 Report & Recommendation Regarding the Receiver's Accounting ("Supplemental Objection" or "Opp."; ECF 494).

## PRELIMINARY STATEMENT

Despite the fact that this Court—while in possession of the Receiver's detailed billing records and time entries—has already approved the Receiver's invoices, costs, and expenses nine times (*e.g.*, ECF 54, 59, 78, 79, 97, 99, 109, 339, and 340) and in so doing found the Receiver's expenses reasonable and for the benefit of LKM, Shi now attempts to use the Receiver's recent production of those time entries to regurgitate arguments already rejected by the Court as well as make baseless claims that the Receiver's billable hours are excessive. Shi, who looted LKM and frustrated the Receivership at every turn, continues to burden the Court and Receiver with frivolous filings that cause the Receivership (which has been unfunded for years) to accrue significant attorneys' fees and out of pocket expenses.

Shi offers nothing other than speculation and mischaracterization of the time entries in support of his instant claim that the time entries are improper. Shi claims the Receiver's invoices, costs, and expenses should be rejected because the Receiver (1) spent "114.2 hours" to a "meeting of shareholders to effect a liquidation of LKM"; (2) spent "44.6 hours" to assist "Baliga's legal claims"; and (3) "gross[ly] overbill[ed]" his works in the operation of the receivership. *See* Opp. at 5-6. As detailed *infra*, none of these statements are accurate. The Court should dismiss Shi's meritless objections as continued harassment of the Receiver and once again approve the Receiver's reasonable invoices, costs, and expenses for the following reasons:

*First*, no "meeting of shareholders to effect a liquidation of LKM" ever happened; this claim *is fabricated by Shi*. The time entries Shi alleges as examples of the Receiver's work relating to this alleged "liquidation" meeting (*e.g.*, the Receiver's time entries in October and November 2020) all relate to the Receiver's attempts to call an extraordinary general meeting ("EGM") of LKM shareholders to remove Shi and his associates from LKM's board (*see, e.g.*, Receiver's status report dated November 12, 2020 (ECF 186) disclosing the purposes of the EGM), as was approved by this Court. These entries have nothing to do with a "liquidation."

*Second*, the Receiver and his professionals were not involved in litigating the Plaintiff's legal claims. As this Court is aware, during the portion of this litigation in which Seiden Law LLP (f/k/a Seiden Law Group LLP; hereafter "Seiden Law" or "the firm") represented Plaintiff Baliga separately but at the same time as the Receiver, the firm maintained a bright line wall between the professionals handling each matter. Once Baliga obtained new counsel, Seiden Law ceased performing any substantive legal work beyond that related to the transition, and any time entries related to that were not included in the Receiver's accounting. Shi's characterization of certain generic time entries related to discussion of receivership strategy (*e.g.*, "Call with A. Sklar to discuss the next steps following the court conference call; review emails regarding case administration and settlement discussions and provide factual analysis" and "Call with internal team re: next steps in response to teleconference with Court") as somehow "assisting Plaintiff Baliga" are meritless and nonsensical. The Court should not accept Shi's repeated misrepresentations of Receiver's work, where, as here, the Receiver was responding to Plaintiff's inquiry about facts and information that came into the Receiver's possession through the normal course of his investigation of the Company's records.

*Finally*, there is nothing "overbill[ed]" or "waste[d]," *see* Opp. at 6, about the Receiver's invoices, costs, and expenses, which have already been reviewed and approved by this Court. Shi ignores that the Receiver's multi-jurisdictional work frequently required the involvement of non-English speakers in the People's Republic of China ("China") and Hong Kong Special Administrative Region ("Hong Kong"), and therefore the involvement of translators. As such, calls and correspondence took longer than they otherwise would, as was the case with the entry Shi complains of consisting of "3.4 hours for a telephone call and reviewing letters and emails." Opp. at 7. Indeed, as detailed below, the Receiver's 3.4-hour time entry included (i) two conference calls with the participation of an English-Chinese interpreter, (ii) reviewing, editing, and sending demand letters to numerous banks, and (iii) drafting and sending email updates to New York and global teams working on the matter. Shi, once again, egregiously mischaracterizes the Receiver's time entry and baselessly accuses the Receiver of "overbilling" for his work[1]. Shi disregards the fact that this receivership involves a company operating in China, outside of the reach of US law, that has been controlled and looted, according to the evidence uncovered, by Shi and his associates. These circumstances pose enormous challenges that are not typical in most receiverships, especially so when the receivership was operating on a very limited budget with no access to the funds of the company. Shi offers no evidence in support of his claims but only speculation and misrepresentation of the Receiver's time entries, and thus, the Court should not accept his Supplemental Objection.

---

[1] It is worth noting that the Receiver has been appointed on over 30 cases across the United States in federal and state courts and has never been accused of overbilling and has never had an invoice denied by a court. Indeed, the Receiver has previously been recognized for the reasonableness of his fees and expenses, including by Vice Chancellor Travis Laster of the Delaware Chancery Court in an order granting approval of fees and expenses concerning a company inside China: "The receiver continues to show admirable resourcefulness and perseverance in pursuing this matter despite recurring challenges. In the context of the difficulties that the receiver has encountered and continues to face, the fees and expenses are well within the range of reasonableness." *See Peter E. Deutsch, ZST Digital Networks, Inc.*, Case No. CA. No. 8014-VCL, File ID: 56124405.

**STATEMENT OF FACTS**

The Receiver understands this Court's intimate familiarity with the procedural background and will avoid repetition for the sake of brevity but further refers the Court to its prior submissions on the instant issues. *E.g.*, ECF 54, 59, 78; 79, 97, 99, 109 and 375. In summary, this Court has previously been provided with and subsequently approved each and every one of the Receiver's fee applications by a series of orders. *See* ECF 54 (April 29, 2019); ECF 59 (May 22, 2019); ECF 78 (July 1, 2019); ECF 79 (July 9, 2019); ECF 97 (September 11, 2019); ECF 99 (September 20, 2019); and ECF 109 (October 17, 2019). In connection with these applications, the Receiver submitted unredacted detailed time entries that reflected the work necessary under the facts and circumstances at that time.

On November 18, 2022, the Receiver filed the Accounting Brief ("Accounting"; ECF 375) together with supplemental documents including a redacted version of the Receiver's time entries. ECF 376-1 to 376-9. On February 3, 2023, Shi filed his Opposition to Accounting Submitted by Court-Appointed Temporary Receiver Robert W. Seiden. ECF 396.

In his objection to the Receiver's Accounting, Shi contended, among other things, that (i) "the Receiver submitted copies of time entries that were entirely redacted except for hourly rates and times expended on each entry," and therefore, "it is impossible to evaluate the necessity or reasonableness of any of the work reflected in those time entries" (ECF 396 at 5); (ii) "Receiver and [Seiden Law] spent substantial time … supporting Plaintiff's [] litigation activities concerning his derivative claims" and "[t]hese activities were not in furtherance of the receivership but were part of [Seiden Law's] representation of the Plaintiff" (*id*. at 9); and (iii) "[a]ctivities concerning the Receiver's efforts to call [an] extraordinary general meeting ("EGM") of LKM" are "unnecessary, unreasonable, and did not confer a benefit on the Company." *Id*. at 10.

4

On August 11, 2023, Honorable Magistrate Judge Valerie Figueredo (the "Magistrate Judge") issued the Report & Recommendation Regarding Receiver's Accounting ("R&R"; ECF 466) recommending that the Receiver's Accounting be approved. In the R&R, the Court, once again, reviewed the Receiver's invoices for work between September 22, 2019 and October 5, 2020 and found "the work performed by the Receiver and his professionals is fully documented, described in detail, and **does not appear excessive or unreasonable**." ECF 466 at 18 (emphasis added).[2]

In contrast to Shi's objections to the Receiver's post-October 5, 2020 expenses, the Court found the Receiver's post-October 5, 2020 activities "provided a genuine benefit to LKM." *See id*. at 24. The Court detailed this benefit in citing as an example "prosecuting an administrative action on behalf of [an LKM] subsidiary to protect its assets from being looted by Shi, and attempting to recover funds that had been looted by Shi from another LKM subsidiary … and attempting to call an [EGM]." *Id*. at 24.

On September 15, 2023, Shi filed his objection to the R&R (ECF 472) and argued, among other things, that the Magistrate Judge should not rely on the Court's "prior *ex parte* orders in approving [Receiver's] compensation" and the Receiver's "investigation … served to support Plaintiff's [] legal efforts." *See id* at 7, 9.

---

[2] In response to Shi's contentions that Receiver and Seiden Law spent "substantial time (i) attacking China AI's share ownership and standing to bring a motion to intervene to seek dismissal of the derivate claims … and (ii) supporting Plaintiff's other litigation activities," the Court concluded, "the opposition to China AI's motion to intervene was prepared by [Seiden Law] and submitted on behalf of Plaintiff, ***not*** Receiver." ECF 466 at 13 fn 8 (emphasis added). The Court further concluded that the "Receiver is ***not*** seeking reimbursement for any expenses incurred in opposing China's motion to intervene" but for "his investigation into China AI share purchase." *Id*. (emphasis added). As the Court correctly identified, "Plaintiff was represented by an experienced senior attorney at [Seiden Law], Jake Nachmani, see ECF No. 142, whose name ***does not appear as a timekeeper*** for whom the Receiver is seeking an award for fees." *Id*. (emphasis added).

5

On October 2, 2023, the Court directed the Receiver to serve an unredacted version of Receiver's invoices on Shi (ECF 476), and the Receiver produced the unredacted version of the invoices to Shi on October 13, 2023.

On October 31, 2023, Shi filed a letter motion requesting leave to supplement his objection to the R&R. ECF 493. On the same day, without the Court's permission, Shi filed his Supplemental Objection (ECF 494).

## ARGUMENT

**I.    THE COURT SHOULD RE-APPROVE THE RECEIVER'S POST-OCTOBER 5, 2020 EXPENSES AND COSTS**

In his Supplemental Opposition, Shi completely misconstrues attorney Andrew Sklar's time entry (4.0 hours) on November 12, 2020 ("[c]onference call w/R. Seiden, S. Seiden, A. Kushner to discuss extraordinary general meeting; legal strategy; cases admin; revisions to letter to court re extraordinary meeting") for the proposition that the Receiver "spent a substantial amount of time organizing a meeting of shareholders to effect a liquidation of LKM." *Id*. Nothing in this or any of the Receiver's staff time entries indicates that the Receiver organized a meeting to "liquidat[e]" the Company. *See* Opp. at A-1 to A-6. Over 100 hours of the time entries at issue related to the EGM. Approximately ten hours of the time entries at issue related to research regarding a *potential* liquidation proceeding in the Cayman Islands ("the Caymans"), which never happened.[3] **On the same day** attorney Andrew Sklar made the time entry, the Receiver filed his status report to the Court and detailed that the purpose of the EGM would be:

---

[3] In response to Shi's challenges to this Court's jurisdiction over him and LKM, the Receiver, his counsel and Cayman counsel conducted preliminary research into whether the jurisdictional issue could be resolved by filing a liquidation proceeding in the Cayman Islands (where the Company is incorporated). According to the Receiver's Cayman counsel, a Cayman liquidator would have broader powers than a New York receiver in recovering the Company's assets and prosecuting claims against the Company's bad actors including Shi. As noted above, however, no liquidation was ever commenced in Cayman.

6

> 1) Call a vote of all the shareholders equitably allowing them to consider formally removing Shi from the board of directors of the Company to prevent his continued obstructive and irreparable actions; 2) Call a vote to allow the shareholders to consider the removal of the alleged Shi loyalists and co-conspirators from the board of directors of the Company; 3) Call a vote to allow the shareholders to consider the replacement of any and all directors who are removed at the EGM with directors appointed by the shareholders of the Company; 4) Call a vote to allow the shareholders to consider the formal appointment of shareholder Francis Guo as Chairman and Director of Link Motion; and 5) Call a vote to allow the shareholders to consider the ratification that Francis Guo, as Chairman of the Company, be granted the rights and authorities of Chairman and Director to lead the efforts of recovery of all of the Company's assets, businesses, subsidiaries, and positions for the full and complete restoration of Link Motion to full compliance for all parties involved, including all harmed shareholders, employees, business partners, and creditors.

ECF 186 at 1-2. The Company's bylaws have notice requirements in order to validly convene an EGM, including specifying its purpose. Nowhere did the proposed notice state that the EGM would consider any Cayman liquidation proceeding. *See id*. A close review of Shi's "Appendix A-1" to his Supplemental Objections – "Time Entries regarding Liquidation / EGM work" reveals that over 104 hours of 114.2 hours that Shi contends to be related to "a meeting of shareholders to effect a liquidation of LKM" are, in fact, related to Receiver's efforts to call for an EGM to replace Shi and his associates from the LKM board. *See* Opp. at A-1 to A-9.

Further, there is no basis for Shi's contention that "the Receiver appears to have changed strategy to pursue an EGM to continue the receivership by shareholder vote." (citing ECF 271 and 276-3). Opp. at 5. As an initial matter, the purpose of the EGM was to allow LKM shareholders to vote on board positions for the Company on a going-forward basis after the termination of the receivership; the Receiver neither had any say in the future board make-up nor submitted himself as a candidate for any board position. Moreover, contrary to Shi's unsupported assertion, the EGM was in fact requested by LKM's shareholders. *See e.g.*, ECF 276-3 ("[a]t the request of certain

7

shareholders and holders of American Depositary Shares in the Company"); ECF 188 ("the only meaningful way to wrest control of the Company from Shi is to formally remove him from his role as Director of [LKM] … the most equitable for all parties, including Shi, is to follow the Company's own by-laws and proceed to a shareholder vote). The Receiver has previously stated in numerous filings that his investigation has uncovered incontrovertible evidence that Shi has engaged in misconduct and looted tens of millions of dollars from the Company (*See* ECF 161, 239, 375, 443, and 446) and therefore has taken necessary steps to allow LKM shareholders to vote on board members now that they have this information; however, as an officer of the Court, the Receiver takes no position with respect to whether an EGM needs to be held by LKM's shareholders (*See* ECF 285 at 1) and does not intend to participate in or otherwise influence the outcome of the EGM. *See id*. at 13; ECF 285-7 ¶ 16.

In sum, as this Court has repeatedly found, the Receiver's "attempt[] to call an EGM" provided a "genuine benefit to LKM." *See* ECF 466 at 24. Accordingly, the Receiver's invoices related to his attempt to call an EGM should be re-approved.

Shi also misrepresents the contents of the Receiver's time entries to claim that the Receiver allegedly spent "44.6 hours of time devoted to Baliga's legal claims." Opp at 6 (citing Appendix A-2). That is not, however, what Appendix A-2 says. For example, Shi characterizes the following time entries related to the receivership's efforts as related to "Baliga's legal claims":

> Call with A. Sklar to discuss the next steps following the court conference call; review emails regarding case administration and settlement discussions and provide factual analysis;
>
> Call with internal team re: next steps in response to teleconference with Court;
>
> Teleconference with team re: preparation for call with Court and response to Baliga's inquiry re: shares;

8

>Teleconference with F. Guo, R. Seiden and S. Seiden; confer with R. Seiden and S. Seiden re: strategy; call with Shi counsel and GT re: briefing schedule; review and comment re: letter to the Court re same;
>
>Edits to letter to file; communication with team re: Mr. Koo call with M. Mathison re: same; communications with clerk re: filing;
>
>Finalize edits to letter; call with w. Baliga's counsel; collect and begin reviewing status reports to file with the Court.

ECF 494, at A-7 to A-9. Shi provides no basis to claim that these time entries demonstrate that the Receiver was "act[ing] as counsel for Plaintiff." Opp. at 6. The Receiver, although formally a non-party, is a participant in this proceeding, and in the normal course of events must have his counsel coordinate with counsel for both Plaintiff and Shi regarding a litany of matters, including court filings, responding to inquiries, scheduling, communications and appearances, which is the sum and substance of what all of these entries reflect.

Shi further misquotes the Receiver's time entries dated February 7, 2019 and April 3, 2019 for the proposition that "other post-October 5, 2020 time entries by the Receiver and his counsel evidence gross overbilling and waste." Opp. at 6-7. Preliminarily, Shi's arguments regarding *post* October 5, 2020 time entries obviously cannot be based upon *pre* October 5, 2020 time entries. In any event, there is no basis for Shi's accusation, *see* Opp. at 6-7, that one junior attorney spending four hours conducting two conference calls with Deutsche Bank and DLA Piper, completing a review of LKM's note agreement with Zhongzhi Group, and sending numerous demand letters to third parties constitutes "gross overbilling and waste." *See id.* at 6. Contrary to Shi's false accusation that the Receiver "billed 3.4 hours for a telephone call and reviewing letters and emails," *See id*. at 7, the Receiver's time entry indicates that he spent 3.4 hours for (i) two conference calls with the participation of an English-Chinese interpreter, (ii) reviewing, editing,

9

and sending demand letters to numerous banks, and (iii) drafting and sending email updates to New York and global teams. Under the circumstances, these entries are reasonable.

## II. THE COURT SHOULD APPROVE THE RECEIVER'S PRE-OCTOBER 5, 2020 EXPENSES AND COSTS

Shi also attempts to challenge Receiver's invoices dated prior to October 5, 2020 on similarly frivolous grounds. Opp. at 9. Specifically, by citing Appendix A-3, Shi contends that the Receiver spent "**48.6 hours**" on "work for Plaintiff." *Id*. (emphasis added). However, the time entries in Appendix A-3 only add up to **24.3 hours**. *See* ECF 494 at A-10. These include time entries that in fact are related to receivership efforts, such as "[t]eleconference with A. Kushner, S. Seiden, N. Francis re: responding to the Judge's last [o]rder; caselaw research and follow up conversations with A. Kushner" and "[d]rafting letters to the court; teleconferences with S. Seiden re: submitting the letters; mailing the letters."). *Id*. In sum, at minimum, 11 hours of the 24.3 (not 48.6) hours that Shi claims as hours to "assist Plaintiff in preparing his Second Amended Complaint" are clearly related to receivership efforts (*e.g.*, Receiver's counsel's time entries for "call with F. Guo and Receiver's counsel regarding updates on progress in China and US" and "[t]eleconference with team re: issues for [r]eceivership [in] Baliga action.").

As to the remaining 13.3 hours of misconstrued entries, prior to November 16, 2020, as the Court knows, Seiden Law represented the Plaintiff and separately the Receiver in this action. Seiden Law implemented an internal wall between attorney Jake Nachmani, who represented Baliga, and the members of the Receiver's legal and investigative teams. The Receiver took steps to ensure that the Receiver's invoices would only include the work of the Receiver's professionals on Receivership issues. *see supra* at 3. Indeed, contrary to Shi's contention, *See* Opp at 9, the Receiver never sought any reimbursement for any expenses incurred in filing the Second Amended Complaint. These 13.3 hours were recorded by the Receiver's investigative team as part of its

investigation of the factual allegations set forth in the Second Amended Complaint,[4] which were separately relevant to the Receiver's work.

Lastly, Shi contends that the Receiver "gross[ly[ overbill[ed]" for his time related to responding to Magistrate Judge Freeman's September 4, 2020 order, Opp. at 9, to which Shi claims the Receiver billed "44.5 hours." *Id*. (citing Appendix A-4). This, once again, misleads the Court by mischaracterizing the Receiver's invoices. First, in Shi's Appendices, he claims the following time entries constitute both Receiver's "work for the [P]laintiff" *and* Receiver's overbilling related to his "response to Judge Freeman." *Compare* Opp. A-10, *with* A-11. Both of these characterizations are false; the below entries unambiguously refer to receivership tasks, and there is nothing in them that suggests overbilling:

| Date | Timekeeper | Description | Rate | Hour(s) |
|---|---|---|---|---|
| 09/15/2020 | AK | Teleconference with team re: issues for Receivership [in] Baliga action | $675.00 | 1.0 |
| 09/15/2020 | AS | Teleconference with A. Kushner, S. Seiden, N. Francis re: responding to the Judge's last Order; caselaw research and following up conversation with A. Kushner | $450.00 | 5.2 |
| 10/1/2020 | AS | Draft and edit letters to the court; teleconference with N. Francis; review Pacer case file | $450.00 | 3.8 |

Excluding the above three time entries, the remaining 34.5 hours that Shi challenges consist of: (i) numerous conference calls with the Receiver's overseas Chinese-speaking agent discussing the facts, process, impact and nuances of the potential Cayman proceeding; (ii) drafting letters to

---

[4] The Receiver takes the position that all of the invoices he submitted to the Court are related to his efforts in the receivership. Invoices were scrupulously reviewed at the time to remove entries related to the representation of Baliga. However, given that both individuals are no longer at Seiden Law and in order to avoid confusion and unnecessary motion practice, the Receiver would agree to withdraw the disputed time entries that on their face appear to relate to Plaintiff's Second Amended Complaint, *i.e.*, part of investigator Nathanial Francis and attorney Andrew Sklar's time entries listed on Appendix 3 to Shi's Supplemental Objections.

11

the Court reporting on the Receiver's Cayman recognition proceeding; (iii) numerous conference calls with the Receiver's Cayman counsel regarding the Cayman recognition proceeding; and (iv) drafting response papers related to Cayman recognition proceeding. *See* Opp. at A-11 to A-12. All of these time entries relate to receivership tasks, not Baliga.

Shi attempts to minimize the Receiver's work by referring to his responsive submission to Judge Freeman as "a six-page letter" and omits the fact that Receiver's Cayman recognition proceeding was a landmark, complex proceeding.[5] The Receiver's submissions (ECF 173) in response to Judge Freeman's inquiry about the Cayman recognition proceeding contain a six-page single-spaced letter motion accompanied by over 400 pages of supporting documents including the Originating Summons, Receiver's Affidavit (20 pages), Receiver's Exhibits (171 pages), Cayman Counsel's Affidavit, Proposed Order, Receiver's Skeleton Argument (16 pages), and the Receiver's Supporting Authorities, among other evidence. ECF 173-1 to 173-21. In addition, in responding to Judge Freeman's inquiry, the Receiver was required to explain the Cayman law to the Court, and thus, the Receiver had to engage in rounds of comprehensive discussions with his Cayman counsel. *See* ECF 173. Accordingly, there is no basis for Shi's contention that the Receiver's time entries in connection with responding to the Court's order are "overbilling and waste."

## III.  THE RECEIVER'S RIGHT TO HIS FEE IS NOT DEPENDENT ON RESULTS OBTAINED

There is no merit to Shi's argument that the Receiver's fee should be reduced or rejected because of alleged "poor 'results obtained' for the work performed by the Receiver." Opp. at 10. Shi cites only to *United States v. Code Prods. Corp.*, 362 F.2d 669, 673 (3d Cir.1966), but that

---

[5]   *See*   https://www.linkedin.com/pulse/seiden-v-link-motion-inc-foreign-receiver-cayman-grand-a-russell/ (Receiver's Cayman recognition proceeding was the "first public written judgment in which a Cayman Islands court has granted recognition to a foreign receiver appointed over a Camay-incorporated entity.")

almost-60-year-old case concerned a receiver's application for "additional compensation" above his fee in connection with a sale of property. *Id.* The Third Circuit rejected that claim because the proposed compensation constituted "duplicate services" and should not be charged against an estate in receivership. *See id.* at 673. The Third Circuit did not otherwise reduce the receiver's fee. Here, the Receiver seeks no "additional compensation," but rather only recoupment of its reasonable invoices, costs, and expenses necessarily incurred during the term of the receivership.[6]

Shi also contends that "the results of the Receiver's activities are [] transfer to Guo of complete control over LKM's China assets; transfer to Guo a majority interest in LKM's primary asset in China, Beijing Technology; issuance to Guo 86, 272,750 shares of Class B common stock of LKM; dilution of existing shareholder's voting power by 40% and dilution of existing shareholders' equity interests by 13%." Opp. at 7. Shi not only misstates the Receiver's efforts but also omits the critical fact that the Receiver was unable to secure substantial LKM assets because Shi and his associates continuously frustrated the Receivership by, among other misconduct: (1) improperly and covertly transferring approximately $89 million out of LKM's accounts before the Receiver's agent was able to access LKM's subsidiaries' accounts in China, (2) using an invalid LKM Hong Kong subsidiary seal to contact Chinese authorities and producing false company documents in an attempt to restore Shi's authority in LKM's Chinese subsidiaries, and (3) filing numerous frivolous, costly and burdensome proceedings in China against the Receiver's local agent. *See* ECF 30, 43, 50, 128, 143, 161, 173, 220, 239-1, 269, 365, and 443.[7]

As detailed in the Receiver's prior submissions, the Receivership has been unfunded for years. *See* ECF 375 at 4; 376 at ¶ 15. In order to have the Receiver's team in China establish

---

[6] Indeed, the Receiver has not submitted his latest invoices which reflect a significant amount of time spent responding to Shi's frivolous motions.

[7] As the Court noted the "[Receiver's] work was complicated by Shi's numerous attempts to frustrate the work of the Receivership." ECF 466 at 20 (citing ECF 30, 43, 50, 128, 143, 161, 173, 220, 239-1, 269, 293, and 365).

control, manage, and pursue preservation efforts on behalf of LKM's Chinese subsidiaries, the Receiver entered into a convertible note (the "Note") with Lilin Guo ("Guo") to fund its operations in China. *See* ECF 71 and 421. The Court reviewed and approved the Note and further approved Guo's applications for converting the unpaid loan into LKM's currently worthless Class B shares. *See* ECF 74, 419, 419-3, 419-4, 419-8, 419-9, and 421. The Court should reject Shi's attempt to further benefit from his own malfeasance by relying on the success of his obstructionist tactics to reduce or negate the Receiver's fee, which Shi knows the Receiver is attempting to recover from him personally since he looted all of the Company's assets.

Moreover, as noted *supra* at 6, the Receiver engaged in substantial actions after October 5, 2020, that provided a "genuine benefit to LKM" (ECF 466 at 24), included "continuing litigation on behalf of LKM subsidiary against a former legal representative for breach of fiduciary duties, prosecuting an administrative action on behalf of [LKM subsidiary] to protect its assets from being lotted by Shi, attempting to recover funds that had been looted by Shi from another LKM subsidiary," "preserving LKM shareholder value by seeking to cancel the portion of shares issued by LKM to China AI for which China AI had not provided payment, and attempting to call an Extraordinary General Meeting of LKM shareholders." *See id*.

## CONCLUSION

For the foregoing reasons, Shi's Supplemental Objection is without merit, and this Court should adopt the Magistrate Judge's Report & Recommendation in its entirety.

Dated: November 30, 2023                             Respectfully submitted

/s/ Amiad Kushner
Amiad Kushner
Jennifer Blecher
Xintong Zhang

14

SEIDEN LAW LLP
322 Eighth Avenue
Suite 1200
New York, New York 10001
(212) 337-3502

*Attorneys for and on behalf of the Court-Appointed Temporary Receiver Robert W. Seiden*