**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

                            Plaintiff,

            -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI, JIA LIAN,
XIAO YU,

                          Defendants,

            -and-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),

Nominal Defendant.

1:18-cv-11642-VM-DCF

---

**VINCENT WENYONG SHI'S REPLY BRIEF IN RESPONSE TO THE RECEIVER'S JUNE 20, 2024 SUPPLEMENTAL BRIEF REGARDING ALLOCATION OF RECEIVERSHIP COSTS**

 

FELICELLO LAW P.C.
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806
*Attorneys for Defendant Vincent Wenyong Shi*

On the brief:  Michael James Maloney
                Rosanne E. Felicello

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......................................................... i

PRELIMINARY STATEMENT ..................................................... 1

STATEMENT OF FACTS IN REPLY ........................................... 4

ARGUMENT ................................................................................ 11

I.       THE COURT SHOULD NOT EXERCISE DISCRETION TO ALLOCATE COSTS AGAINST DR. SHI ON THIS RECORD ............ 11

II.     THE COURT SHOULD REJECT THE RECEIVER'S REQUEST TO PIERCE THE CORPORATE VEIL ......................................... 15

    A.    There Have Been No Findings of Fact that Would Support Piercing the Corporate Veil. ...................................................... 16

    B.    Cayman Island law does not permit veil piercing. ..................................... 17

    C.    The Receiver's piercing claim is procedurally defective ............................ 18

III.    THERE IS NO BASIS FOR AN AWARD OF FEES AS SANCTIONS PURSUANT TO THE COURT'S INHERENT POWERS .................... 19

CONCLUSION ............................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Apex Mar. Co. v. OHM Enterprises, Inc,*
    No. 10 CIV. 8119 SAS, 2011 WL 1226377 (S.D.N.Y. Mar. 31, 2011) .................... 16

*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.,*
    385 F. Supp. 3d 212 (S.D.N.Y. 2019) .......................................................... 5

*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, No. 18CV11642 (VM) (DF),
    2020 WL 5350271 (S.D.N.Y. Sept. 4, 2020) ......................................................... 5, 7

*Baliga v. Link Motion Inc.*, 2022 WL 2531535 (S.D.N.Y. Mar. 9, 2022) ......... 8, 15, 19

*Big Cat Rescue Corp. v. G.W. Exotic Animal Mem'l Found.,*
    No. CIV-14-377-SLP, 2018 WL 11386382 (W.D. Okla. July 11, 2018) ................. 12

*Coskery v. Roberts & Mander Corp,*
    200 F.2d 150 (3d Cir. 1952) ....................................................................... 23

*Fulp v. McCray,*
    21 F.2d 951 (8th Cir. 1927) ....................................................................... 13

*Glob. Gaming Philippines, LLC v. Razon,*
    No. 21 CIV. 2655 (LGS), 2022 WL 836716 (S.D.N.Y. Mar. 21, 2022) ................... 18

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.,*
    991 F.3d 361 (2d Cir. 2021) ....................................................................... 19

*Key Bank National Association v. Monolith Solar Assoc.*, Civ. No. 1:19-1562, 2022
    WL 19335877 (N.D.N.Y. May 23, 2022) ................................................... 16

*KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC,*
    No. 1:19-CV-1562, 2022 WL 19335877 (N.D.N.Y. May 23, 2022) ....................... 12

*Lakah v. UBS AG*, 996 F. Supp. 2d 250 (S.D.N.Y. 2014) ......................................... 16

*Lewis Fam. Group Fund LP v. JS Barkats PLLC,*
    No. 16-CV-5255 (AJN), 2018 WL 3579844 (S.D.N.Y. July 25, 2018) .................... 15

*Morris v. State Dep't of Taxation & Fin.,*
    82 N.Y.2d 135 (1993) ................................................................................ 16

*Pescatore v. Pan Am. World Airways, Inc.,*
    97 F.3d 1 (2d Cir. 1996) ............................................................................. 15

*S.E.C. v. Elliott*,
   953 F.2d 1560 (11th Cir. 1992) ................................................................................ 11

*Skaff v. Progress Int'l, LLC*, No. 12 CIV. 9045 KPF,
   2014 WL 5454825 (S.D.N.Y. Oct. 28, 2014)............................................................ 11

*Tanzer v. Huffines*,
   315 F. Supp. 1140 (D. Del. 1970) ............................................................. 13, 14, 22

*United States v. Code Prods. Corp.*,
   362 F.2d 669 (3d Cir. 1966) ..................................................................................... 23

A-11

Defendant Vincent Wenyong Shi ("Dr. Shi") in his own capacity and as a registered director of Link Motion, Inc. ("LKM" or "Company"), by and through the undersigned counsel, hereby submits the following memorandum in response to the Court's Order (ECF No. 511) requesting supplemental briefing regarding the request of Robert W. Seiden, the court appointed receiver (the "Receiver") for Link Motion Inc. ("LKM"), to pierce the corporate veil of LKM and otherwise apportion receivership costs against Dr. Shi.

## PRELIMINARY STATEMENT

By March 2019, less than two months after his appointment in this case, the Receiver had transferred all of LKM's corporate assets to Lilin "Francis" Guo, the same individual who paid the Receiver's law firm to bring this action and seek the Receiver's appointment. The Receiver then paid his own law firm $1,593,455.09 in legal fees from cash recovered from LKM's bank accounts and accounts receivable.[1] Now the Receiver seeks to apportion the remaining, unfunded costs of the receivership to Dr. Shi — who has not had any control over the Company or its bank accounts since March 2019. There is no basis for the Court to do so.

***First***, the Receiver claims that Dr. Shi is liable for the costs based on the Receiver's *allegations* that Dr. Shi's conduct "necessitated the appointment of the Receiver." ECF No. 518 at 3. But there has never been any finding of fact or even any discovery as to whether the allegations against Dr. Shi have any merit. It would be improper for the Court to award costs against an individual defendant based on mere

---

[1] *See* ECF No. 376 ¶8 (showing fees charged by Seiden Law Group ("SLG") of $2,472,415.86); ECF No. 376-1 at 10 (showing unpaid balance of $878,960.77 owed to SLG).

allegations untested by discovery or an evidentiary hearing. In this case, the Receiver has claimed to have collected thousands of pages of LKM records but has refused to provide any of those records to Dr. Shi. Instead, the Receiver has shown the Court limited excerpts of the record, cherry-picked to tell only the Receiver's version of the story. The Receiver had an opportunity to produce the records in his possession but declined to do so. Entry of an order finding Dr. Shi liable for millions of alleged receivership costs without fulsome discovery or an evidentiary hearing would be an egregious violation of Dr. Shi's constitutional right to due process.

**Second**, the Receiver asserts that the court should "exercise its equitable power to assess receiverships costs against" Dr. Shi. This argument is the same as the Receiver's prior argument: asking the Court to make a ruling — exercising its equitable power no less — based on mere allegations. There have been no findings of fact in this matter, which has not even proceeded to discovery. There is no basis for the Court to exercise its equitable powers here.

**Third**, the Receiver suggests that Dr. Shi is liable based on an unpled alter ego theory asserted for the first time after the Court ordered discharge of the Receiver. This theory fails because there is no dispute that the Receiver and his agent have been in control of LKM and its bank accounts since at least March 2019. Any costs of the Receivership were incurred by the Receiver and his agent, Mr. Guo. They were in control of the business of Link Motion. The Receiver's allegations that Dr. Shi was acting behind the strings are unfounded.

***Fourth***, the Receiver argues that the costs should be allocated to Dr. Shi pursuant to the Court's inherent authority to issue sanctions for bad faith litigation conduct. Not only is this argument premised on the same unvetted and undetermined allegations as the prior arguments, but the Receiver's examples of purported bad faith litigation conduct are entirely unsupported. The Receiver argues that Dr. Shi failed to comply with the Receiver's requests to turnover books and records, but the supposed period of "non-compliance" was before Dr. Shi was properly served  and this Court has already determined that Dr. Shi was not required to comply with this Court's orders until he was served. And Dr. Shi was largely successful on the motions that the Receiver calls "frivolous": Dr. Shi successfully moved (i) to dismiss the original Complaint, (ii) to remove and discharge the Receiver, and (iii) to enjoin the Receiver from calling emergency general meetings ("EGMs") of the shareholders of LKM. The Receiver's assertion that the claim against DLA Piper was "unauthorized" is a mischaracterization. While the District Court found that it was premature for the board to meet and take corporate action, the Court declined to vacate the board's action to commence the DLA Piper claim and further concluded that a separate order clarifying the August 25, 2022 Decision and Order was necessary.

***Finally***, the Receiver's arguments based on his allegations that Dr. Shi somehow controlled Tongfang Investment Fund Series SPC ("Tongfang SPC") also fail to support his argument to apportion costs against Dr. Shi. Like the Receiver's other arguments, this argument is untested by discovery or any evidentiary hearing and was previously found insufficient to merit continuation of the Receivership. The Receiver's

submission of a March 2023 register of the directors of Tongfang SPC does not change any of the facts. As Dr. Shi previously disclosed, Tongfang SPC is a segregated portfolio company that acted on behalf of Tongfang M&A Fund SP ("Tongfang M&A"), *see* ECF No. 388-6 ¶10, and had two additional directors who controlled Tongfang SPC during the relevant time period. Ultimately, the question of who controlled Tongfang SPC during the relevant time period remains a highly disputed issue of fact that has not been vetted by discovery or determined in an evidentiary hearing.

## STATEMENT OF FACTS IN REPLY

Plaintiff Wayne Baliga commenced this action on December 14, 2018, asserting derivative claims on behalf of LKM and against Dr. Shi, alleging that he had engaged in "gross mismanagement," "egregious self-dealing," and theft of corporate assets. ECF No. 1 ¶¶2,16. The Complaint did not assert a claim to pierce the corporate veil. Based on Plaintiff's allegations against Dr. Shi, Robert W. Seiden was appointed as the temporary Receiver for LKM on February 1, 2019. ECF No. 26. Shortly after his appointment, the Receiver (i) retained Mr. Guo as his agent in China (*see* ECF Nos. 30 ¶2-3), (ii) issued demand letters to Dr. Shi (*see* ECF Nos. 30 ¶¶5-7), and (iii) transferred to Mr. Guo control over all of LKM's foreign assets (*see* ECF No 285-3 ¶11; ECF No. 394 ¶¶15-16,18-27,55-61, 85-93; 394-6 at ECF page 3 of 12).

On March 14, 2019, the Receiver moved for an order of contempt against Dr. Shi. The alleged basis for the motion were the Receiver's allegations that Dr. Shi had violated the receivership order, removed books and records of the company, and was failing to cooperate with the Receiver. *See* ECF No. 32 at 1; ECF No. 50 ¶¶8-12. Dr. Shi

opposed the motion for an order of contempt and moved to dismiss the Complaint for lack of jurisdiction and failure to state a claim. *See* ECF No. 35, 37.

In support of his contempt motion, the Receiver submitted the affidavit of Matthew Mathison. Mr. Mathison claimed that he "was told" by an unnamed source that Dr. Shi had destroyed or refused to transfer LKM's books and records. *See* ECF No. 50 ¶¶10-12. Mr. Mathison is an aggrieved former employee that previously sued LKM and who is on the Receiver's payroll. *See* ECF No. 388 ¶32; ECF No. 50-1.

The Court denied the Receiver's contempt motion on the grounds that Plaintiff had not served process on Dr. Shi and the Court lacked jurisdiction over Dr. Shi. *See* [*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 219 (S.D.N.Y. 2019)](#). The Court also granted Dr. Shi's motion to dismiss, without prejudice, on the ground that Plaintiff had failed to state a 10(b) claim. [*Baliga*, 385 F. Supp. 3d at 221](#).

Pursuant to the Private Securities Litigation Reform Act, the Court stayed discovery on May 1, 2019. *See* ECF No. 56 (memo endorsement staying discovery). Plaintiff filed a First Amended Complaint on June 21, 2019. ECF No. 68. The parties then disputed "threshold" issues regarding service of process and legal representation. *See* [*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, No. 18CV11642 (VM) (DF), 2020 WL 5350271, at *1 (S.D.N.Y. Sept. 4, 2020)](#).

While the parties were litigating the "threshold" issues and other matters on the public docket, the Receiver was submitting *ex parte* reports to the Court without copy

to counsel for Dr. Shi. *See*, *e.g.*, ECF No. 345. In a January 14, 2020 *ex parte* submission, the Receiver reported that:

> The Receiver and his team continue to analyze documents and communication records produced by third party service providers in the US that had previously been engaged by the Company. In addition, the Receiver and his team have received large volumes of discovery in the Hong Kong arbitration proceedings and are actively reviewing and analyzing these documents and emails. In this regard, my office has engaged an outside third party vendor for the purpose of litigation ediscovery and search technology ("DISCO" is the name of the third party service provider);

ECF No. 345. None of this discovery was copied to or shared with counsel for Dr. Shi.

Also without notice to Dr. Shi, the Receiver applied to the Grand Court of the Cayman Islands, Financial Services Division (the "Cayman Grand Court"), for an order recognizing the receivership in the Cayman Islands. ECF No. 132-1. In a ruling dated February 4, 2020, the Cayman Grand Court specifically declined to recognize any power of the Receiver to appoint or remove directors of the Company. ECF No. 132-1 ¶ 2 ("Notwithstanding paragraph 1 of this Order, the power granted to the US Receiver in paragraph II.2(b) of the Receivership Order to appoint or replace any director of Link Motion Inc. is not recognized").

When Dr. Shi learned about the proceedings in the Cayman Islands, he argued that the Receiver lacked any power to remove Dr. Shi as a director of LKM. *See* ECF 290 ¶41. On March 10, 2020, Dr. Shi sent a letter to Plaintiff asserting that Plaintiff's allegation of share ownership was false and misleading and that Plaintiff lacked standing under Cayman Islands law to assert derivative claims. Exhibit A to the Declaration of Michael James Maloney dated July 5, 2024 (the "Maloney Decl.").

On September 4, 2020, the Hon. Magistrate Judge Debra Freeman issued a Memorandum and Order directing Plaintiff to file a Second Amended Complaint "clarifying which of his claims are being asserted as shareholder derivative claims, and which are being asserted as direct claims" and granting time to respond, including regarding the issue of standing. *Baliga*, 2020 WL 5350271, at *26. Judge Freeman also directed the Plaintiff and Receiver to make further submissions regarding this issue of the Receiver's power, or lack thereof, to remove directors. *Id.* at *13-14. In his later submission, the Receiver conceded that he lacked any power under Cayman Islands law to remove or appoint a director. *See* ECF No. 173 at 5 ("under Cayman Islands law, the power to appoint or remove a director from his or her official title is typically reserved for shareholders and is not a power a local receiver typically has. . . . Stated differently, the Cayman Court could not recognize a power granted to a receiver by a foreign court where that power is not capable of being granted to a receiver under Cayman Islands law").

On October 5, 2020, Plaintiff filed a Second Amended Complaint, in which he voluntarily dismissed all of his derivative claims and asserted only direct claims against LKM and Dr. Shi. Plaintiff did not assert any claims to pierce the corporate veil of LKM. Dr. Shi moved to dismiss the Second Amended Complaint and moved to vacate the preliminary injunction and discharge the Receiver. ECF Nos. 177, 227. On his motion to vacate the preliminary injunction and discharge the Receiver, Dr. Shi argued, among other things, that all of the costs of the receivership should be paid by Baliga on the grounds that he had wrongfully obtained appointment of the Receiver.

In opposition to Dr. Shi's motion to discharge the Receiver and vacate the preliminary injunction, the Receiver and Baliga asserted essentially the same arguments asserted on the current application, including unsubstantiated claims that Dr. Shi removed accounting and legal documents, "carried away" the company corporate seals, "removed Financial documents," "sought to gain control over the Company's Chinese bank account," wrongfully transferred $89 million of company funds, and acted improperly in connection with the Tongfang SPC arbitration. *See* ECF No. 239; 239-1; 240. The Receiver's claims were based the allegations in the Complaint, the papers submitted in support of the motion to appoint the Receiver, and statements of Mr. Guo. *See* ECF No. 239, 239-1 ¶¶6, 9.

Judge Freeman found the Receiver's and Plaintiff's arguments insufficient to justify continuation of the receivership. *Baliga v. Link Motion Inc.*, 2022 WL 2531535, at *7 (S.D.N.Y. Mar. 9, 2022). In a March 9, 2022 Report and Recommendation, Judge Freeman recommended that the preliminary injunction (which had enjoined the board from taking action) be vacated, the Receiver be discharged, and that the Receiver's duties be limited during accounting proceedings. *See Baliga*, 2022 WL 2531535, at *16-19, 20 ("I do recommend, however, that the Receiver be directed not to seek any extraordinary actions from the Company's Board, during the remaining period of the receivership, as the Receiver's work, during this time, should instead be focused on maintaining the Company's *status quo* and providing the accounting described above"). Judge Freeman provided the parties the opportunity to brief the issue of allocation of costs of the receivership and recommended that a portion of the costs be borne by LKM,

and recommended that the parties should brief whether the other portion be borne by Plaintiff. *Id.*, at \*19-20. Judge Marrero adopted the report and recommendation in its entirety. No. 18 CIV. 11642 (VM), 2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022), at \*1 ("the Court adopts the recommendations in the Baliga R&R in their entirety"). Neither Judge Freeman nor Judge Marrero suggested that any of the costs be borne by Dr. Shi.

Because discovery was and remains stayed, Dr. Shi lacked access to the records and information in the possession of the Receiver and Mr. Guo. In order to facilitate a full and complete accounting of the activities of the receivership, Dr. Shi served demands for the production of records relating to the receivership. See ECF No. 376-9. In a letter dated November 2, 2022, the Receiver refused to produce any records in response. Exhibit B to the Maloney Decl.

The Receiver filed his initial accounting on November 18, 2022. See ECF No. 375-377. The Receiver's initial accounting shows that he had collected $2,204,556.09 from LKM and paid to $1,593,455.09 in legal fees to his own law firm.[2] The Receiver failed, however, to include with his initial accounting any record of the activities of Mr. Guo. The Receiver's November 18, 2022 accounting is the first time when he suggested that the corporate veil of LKM should be pierced, and costs of the receivership be assessed against Dr. Shi. Dr. Shi filed his objections to the accounting on February 3, 2023. *See* ECF No. 393-396.

After Dr. Shi filed his February 3, 2023 objections to the accounting, the Court unsealed the Receiver's prior *ex parte* submissions and directed the Receiver to file

---

[2] *See* ECF No. 376 ¶8 (showing fees charged by Seiden Law Group ("SLG") of $2,472,415.86); ECF No. 376-1 at 10 (showing unpaid balance of $878,960.77 owed to SLG).

them on the docket. *See* ECF No. 410. Upon the Receiver's filing of the *ex parte* submissions, Dr. Shi moved for a temporary restraining order and preliminary injunction enjoining the Receiver from calling an extraordinary general meeting of the shareholders of LKM. *See* ECF No. 421, 421-5. In opposition, the Receiver submitted a declaration from Mr. Guo attaching voluminous receipts. Upon review of the translated versions of the receipts, Dr. Shi discovered that Mr. Guo had paid Plaintiff's legal fees. *See* ECF No. 448-2 at 97. Subsequent submissions revealed that Mr. Guo has been paying legal fees to maintain this suit since before it was filed. *See* ECF No. 459 ¶¶7-8, 460-1¶11; 462 at 1. On June 21, 2023, the Court enjoined the Receiver from calling any EGM pending resolution of the accounting. *See* ECF No. 440 at 2-3.

The Hon. Magistrate Judge Figueredo issued a Report & Recommendation on August 11, 2023 recommending that the Receiver's accounting be approved and the costs of the receivership be borne by LKM. *See* ECF 466; 508 at 4. Judge Figueredo requested supplemental briefing regarding the objections to Guo's expenses and compensation and the Receiver's veil-piercing argument. *See* ECF 466. Dr. Shi filed objections on September 15, 2023. ECF No. 472.

On May 21, 2024, the Hon. Victor Marrero issued a Decision and Order describing the procedural history leading up to the objections to the August 11, 2023 report and recommendation and other related matters that arose after the filing of the Receiver's initial account and otherwise remain open. ECF 508. Judge Marrero "conclude[d] that the public interest in judicial efficiency counsels in favor of an approach that would consolidate the issues in this matter for a global resolution that

would both settle the dispute over control of Link Motion and move this case into discovery." ECF 508 at 9-10. Judge Marrero overruled with prejudice Dr. Shi's objection to Judge Figueredo's recommendation to not discharge the Receiver until the other accounting disputes are resolved. But Judge Marrero overruled all of Dr. Shi's other objections *without prejudice* and "recommit[ted] this matter to Judge Figueredo with instructions to consolidate as many issues in this case as reasonably possible and to resolve all issues so consolidated in one global Report & Recommendation."

## ARGUMENT

## I.   THE COURT SHOULD NOT EXERCISE DISCRETION TO ALLOCATE COSTS AGAINST DR. SHI ON THIS RECORD

In his brief, the Receiver argues that the Court has "broad discretion" to allocate the costs of the receivership against Dr. Shi, an individual defendant who did not seek appointment of the receiver, and that the facts and circumstances of this case merit exercise of that discretion. The Receiver is wrong on both points.

First, the authorities cited by the Receiver do not support his assertion that the Court has "broad" discretion to allocate receivership costs against an individual defendant who had not role in the appointment of the receiver and did not benefit from the appointment. *Skaff v. Progress Int'l, LLC*, No. 12 CIV. 9045 KPF, 2014 WL 5454825, at *9 (S.D.N.Y. Oct. 28, 2014), cited by the Receiver, addressed only whether the Court had discretion to order a liquidation of the company in receivership—fees were not at issue in that order. *S.E.C. v. Elliott*, 953 F.2d 1560, 1576–77 (11th Cir. 1992) involved only the question how receivership costs should be allocated as between

secured and unsecured creditors of the company in receivership. Creditors are parties who are ordinary expected to request and benefit from appointment of a receiver.

Contrary to the Receiver's assertions, *KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC*, No. 1:19-CV-1562, 2022 WL 19335877, at *4 (N.D.N.Y. May 23, 2022), does not support his argument that it would be proper to allocate fees to Dr. Shi. In that case, the Court was clear that it would be inappropriate to allocate costs unless the factual disputes are aired and determined.

The out-of-circuit authorities cited by the Receiver also fail to support his contentions. *Big Cat Rescue Corp. v. G.W. Exotic Animal Mem'l Found.*, No. CIV-14-377-SLP, 2018 WL 11386382, at *2 (W.D. Okla. July 11, 2018), cited by the Receiver also stands for the basic proposition that the "in most circumstances the fees and costs of a receiver are borne by the entity subject to receivership." The court there allocated a portion of the receivership costs to the corporate entity given the "lack of unusual issues presented by the Receiver's request." *Big Cat Rescue Corp.*, 2018 WL 11386382, at *2-3. Importantly, the court in *Big Cat Rescue Corp.* also recognized that no party should be held responsible for receivership costs relating to matters for which the party did not have sufficient notice and a meaningful opportunity to be heard before the entry of an adverse judgment. *Id.*, at *2.

Here, the Receiver's accounting in this case contains numerous unusual issues, including a request to confirm the Convertible Note agreement entered into with Mr. Guo and the Receiver's request to apportion receivership costs against an individual defendant, Dr. Shi, who did not request the receivership and based only on allegations

that have not been vetted through discovery or an evidentiary hearing. Dr. Shi has been denied a meaningful opportunity to be heard because he has been denied discovery of the records in the Receiver's possession and the actions of the Receiver's agent in China who has maintained control over LKM since February 2019.

Another case cited by the Receiver, *Fulp v. McCray*, 21 F.2d 951, 951–52 (8th Cir. 1927), addressed only the question of whether receivership costs should be allocated as between the company in receivership or the party who wrongfully obtained the receivership. That case did not address the legal issue of whether costs could be allocated against an individual defendant.

The only authority cited by the Receiver that discusses allocation of receivership costs against an individual defendant is the District of Delaware case *Tanzer v. Huffines*, 315 F. Supp. 1140 (D. Del. 1970). But contrary to the Receiver's contentions, the *Tanzer* case teaches that the movant seeking exercise of this discretion must meet a high bar and any exercise of discretion should be discrete and limited.

In *Tanzer*, the plaintiff asserted derivative claims against the individual defendants who allegedly controlled the company. The plaintiff requested and obtained an order appointing a receiver to manage the affairs of the company pending a final judgment. Upon discharge of the receiver, the plaintiff moved to tax the receivership costs against the individual defendants on the ground that their acts "necessitated the receivership." *Id*. at 1142. The individual defendants opposed. The court declined to reject outright the proposition that a district may, "governed by a sense of what is fair

and just under the circumstances," tax costs against individual defendants. *Tanzer, 315 F. Supp. at 1143*.

In *Tanzer*, however, the District of Delaware *declined* to apportion costs against the individual defendants on the ground that a more complete record is required before a court could exercise its discretion to award such a drastic remedy. In particular, the court recognized that the parties sharply dispute the facts and that the only record before the court at that time was the motion resulting in the appointment of the receiver. *Tanzer*, 315 F. Supp. at 1143.

Like *Tanzer*, this Court lacks a sufficient record to tax receivership costs against Dr. Shi. There has been zero discovery in this case. Despite the voluminous motion practice, Dr. Shi's motions to dismiss the pleadings are still pending and discovery has remained stayed since May 1, 2019. *See* ECF No. 56 (memo endorsement staying discovery), ECF No. 480 (notice of motion to dismiss third amended complaint), *see also* ECF No. 508 at 5-6. Despite the Receiver's admission that he has voluminous LKM records in his possession, he has rejected all requests by Dr. Shi for the production of records regarding the activities of the receivership. *See* Exhibit B to the Maloney Decl. (letter from Receiver refusing to produce documents and records in response to request served by Dr. Shi). And the limited documents the Receiver has submitted with his motion papers are clearly excerpts of the record cherry-picked to paint a picture most favorable to his contentions.

Indeed, the most damning evidence of the Receiver's bad faith—evidence showing that Mr. Guo has been funding this case from its inception—was produced by

accident. ECF No. 454. Mr. Guo's own declarations make clear that he had intended to conceal from the Court the fact that he had been paying Plaintiff's legal fees and that Mr. Guo had paid substantial fees to the Receiver's law firm. ECF No. 460-1 ¶¶10-11 (claiming to have produced the payment record "inadvertently"). There are likely other records in the possession of the Receiver that would be relevant to his request to tax costs that have not been produced.

Finally, the doctrine of law of the case weighs heavily against apportionment of receivership costs against Dr. Shi. The Receiver raised the same issue of apportionment of receivership costs before Magistrate Judge Debra Freeman. *Baliga*, 2022 WL 2531535, *19-20. In his papers submitted to Judge Freeman, the Receiver asserted substantially the same arguments that he asserts here. *See* ECF No. 239; 239-1; 240. After considering the parties contentions, Magistrate Judge Freeman recommended, and Judge Marrero accepted, the only question to be determined is "whether the costs of the receivership should all be borne *by the Company, or a portion borne by Baliga.*" *Baliga*, 2022 WL 2531535, *19-20 (emphasis added). The Receiver had an opportunity to assert the veil piercing argument before Judge Freeman but elected not to do so. Therefore, Judge Freeman's ruling on this issue is law of the case and there is no basis in fact or law to reopen that ruling now. *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 8 (2d Cir. 1996), quoted in *Lewis Fam. Group Fund LP v. JS Barkats PLLC*, No. 16-CV-5255 (AJN), 2018 WL 3579844, at *1 (S.D.N.Y. July 25, 2018).

## II.     THE COURT SHOULD REJECT THE RECEIVER'S REQUEST TO PIERCE THE CORPORATE VEIL.

The Receiver has provided no support for his contention that an alter ego theory of liability should be applied in the context of allocating costs related to a receivership. We have not been able to locate any legal support for this contention. The Receiver's reliance on New York and Cayman law is inappropriate. "Rule 66 commands that federal receiverships be governed by federal law, and that is the end of the matter." *Key Bank National Association v. Monolith Solar Assoc.*, Civ. No. 1:19-1562, 2022 WL 19335877 * 2 (N.D.N.Y. May 23, 2022) (rejecting the intervenor's suggestion that costs of a receivership should be allocated in accordance with New York law).

### A.   There Have Been No Findings of Fact that Would Support Piercing the Corporate Veil.

Even if New York law were applicable, the Receiver cannot plead the elements to pierce the corporate veil required to meet the state law standard. Courts in this district have recognized that "[p]iercing the corporate veil is a 'narrow exception'" and should only be permitted "'under extraordinary circumstances.'" *Apex Mar. Co. v. OHM Enterprises, Inc*, No. 10 CIV. 8119 SAS, 2011 WL 1226377, at *2 (S.D.N.Y. Mar. 31, 2011)*. It is not enough to show complete domination of the corporation; there must also be a showing of a wrongful or unjust act towards the plaintiff. *Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 142 (N.Y. 1993); *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 267 (S.D.N.Y. 2014) ("[E]ven where multiple . . . factors cut in favor of piercing the corporate veil, courts are highly reticent to do so where evidence of domination is incomplete.").

As the record shows, and the Receiver concedes, Dr. Shi has not been in control of the company or its bank accounts since March 2019. *See* ECF No 285-3 ¶11; ECF

No. 394 ¶¶15-16,18-27,55-61, 85-93; 394-6 at ECF page 3 of 12. Thus, after March 2019, there is no way that Dr. Shi could have dominated LKM to the degree that would merit piercing the corporate veil under New York legal standard. The undisputed fact that the Receiver and his agent Mr. Guo had control over LKM since at least March 2019 shows why an alter ego theory is a bad fit to the question of allocation of receivership costs.

And, as described above, the Receiver's mere allegation that Dr. Shi continued to control LKM from behind the scenes are unvetted by discovery, have not been determined in any evidentiary hearing, and were found insufficient to justify a continuation of the receivership.

### B.    Cayman Island law does not permit veil piercing.

In his brief, the Receiver suggests that the legal standard for veil piercing under English law is no different than the standard under New York. The Receiver is wrong. The *Hurstwood Properties (A) Ltd v Rossendale Borough Council, [2021] UKSC 16* case stands for the proposition that English law recognizes veil piercing claims only when a corporate entity is "interpos[ed]" with respect to an pre-existing legal obligation. *See Hurstwood* at ¶72. In *Hurstwood*, the United Kingdom Supreme Court *declined* to recognize the principle of piercing the corporate veil to hold a controller or owner liable for obligations originally incurred by the company. *Id.* ¶72 ("we are not ourselves convinced that there is any real scope for applying such a principle in the opposite direction so as to hold a person who owns or controls a company liable for breach of an obligation which has only ever been undertaken by the company itself"). Here, the

obligations were "undertaken by the company itself" and, therefore, are not the proper basis for a piercing claim under English or Cayman law.

The Receiver's citation to *Glob. Gaming Philippines, LLC v. Razon*, No. 21 CIV. 2655 (LGS), 2022 WL 836716 (S.D.N.Y. Mar. 21, 2022) is misplaced. In *Glob. Gaming*, the court recognized that viable piercing claims under English law are "vanishingly rare" and "probably equally – if not more – stringent than that of New York or Delaware." *Glob. Gaming*, 2022 WL 836716, at *7. The *Glob. Gaming* court declined to apply Cayman or British Virgin Islands law and rejected the veil piercing claims. *Id.*

**C.      The Receiver's piercing claim is procedurally defective.**

The Receiver cites to various prior demands and litigation papers for the proposition that he previously provided notice of his claim to pierce the corporate veil to hold Dr. Shi liable for receivership costs. But none of those prior papers explicitly assert the claim that the corporate veil should be pierced to hold Dr. Shi liable for *receivership costs*. The Receiver has never filed a pleading asserting this claim and otherwise complying with the requirements of Rules 7, 8, and 9(b).

The Receiver's reliance on the text of the Receivership Order itself also does not support his argument. Paragraph 5 of the Receivership Order directed the "Company" to fund the receivership, not Dr. Shi in his individual capacity. ECF No. 26 ¶5. And, as discussed above, the other papers cited by the Receiver merely recite the same allegations that were made originally to support his appointment as receiver and which Judge Freeman found insufficient to justify a continuation of the receivership.

### III.   THERE IS NO BASIS FOR AN AWARD OF FEES AS SANCTIONS PURSUANT TO THE COURT'S INHERENT POWERS

The Receiver also asserts the theory that receivership costs should be allocated to Dr. Shi as a sanction pursuant to the Court's inherent powers. Citing *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367-8 (2d Cir. 2021), the Receiver argues that Dr. Shi's filings in this case were frivolous and that he failed to comply with the Court's prior orders. Receiver Br. at 20.

Contrary to the Receiver's contentions, Dr. Shi's legal actions in this case cannot be characterized as "frustrating" the receivership, frivolous, or in bad faith. Since his appearance in this case, Dr. Shi took steps to identify the fundamental flaw in the appointment of the Receiver—that Baliga lacked standing to assert his original derivative common law claims (*see* Exhibit A to the Maloney Decl.)—and successfully persuaded the Court to terminate the receivership. *See Baliga*, 2022 WL 2531535, at *1 ("Specifically, I recommend that the preliminary injunction be dissolved and that Robert W. Seiden, Esq. ('Seiden'), who was appointed Temporary Receiver for the Company (the 'Receiver') be discharged").

The purported examples of frivolous and bad faith conduct asserted by the Receiver, Receiver Br. at 20, are neither frivolous nor bad faith. The calling of a board meeting in August of 2022 was not frivolous or in bad faith because the Court's August 25, 2022 Decision and Order adopting Magistrate Judge Freeman's report and recommendation vacated the preliminary injunction that had previously restrained the board from taking action and suggested that the Receiver's powers had been modified and limited pending an accounting. *See Baliga*, 2022 WL 2531535, at *20 ("I do

recommend, however, that the Receiver be directed not to seek any extraordinary actions from the Company's Board, during the remaining period of the receivership, as the Receiver's work, during this time, should instead be focused on maintaining the Company's *status quo* and providing the accounting described above"), *report and recommendation adopted,* No. 18 CIV. 11642 (VM), 2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022), at *1 ("the Court adopts the recommendations in the Baliga R&R in their entirety"). The Court ultimately found the Board's decision to meet and act was premature but declined to vacate the Board's action. *See* ECF No. 365 at 3-4. The Court also found it appropriate to issue a separate Order clarifying the August 25, 2022 Decision and Order. *See* ECF No. 365.

The prior motion practice concerning the Receiver's attempts to call an emergency general meeting (an "EGM" or "EGMs") of the shareholders of LKM also fail to support the Receiver's bad faith argument. The motion practice regarding the EGMs was not in bad faith or improper because the Court ultimately agreed to enjoin the Receiver from calling any EGM pending resolution of the accounting. *See* ECF No. 425, 440 at 2-3. The Receiver will, of course, be fully discharged upon the resolution of his accounting. *See* ECF No. 365 n.2.

The Receiver's argument that Dr. Shi has "continued" to violate the Receivership Order lack merit. First, the Receiver claims that Dr. Shi "failed to provide the Receiver with LKM's books and records" and allegedly took other steps to destroy or remove corporate records. But there is no longer any dispute that the Receiver and his agent, Guo, assumed control over LKM and its Chinese affiliates by no later than March 2019.

ECF No. 394 ¶¶15-16,18-27,55-61, 85-93; 394-6 at ECF page 3 of 12; 395 ¶8. The Receiver's claims that Dr. Shi destroyed or refused to transfer LKM's books and records is merely unsubstantiated hearsay from an unidentified person (*see* ECF No. 50-5) to Matthew Mathison, who is an aggrieved former employee that previously sued LKM and who is on the Receiver's payroll (*see* ECF No. 388 ¶32; ECF No. 50-1). Magistrate Judge Freeman also found this claim insufficient to continue the receivership.

Thus, at this stage—without full discovery or an evidentiary hearing, all of the Receiver's assertions remain mere allegations. And because these assertions were insufficient to justify a continuation of the receivership, they are also insufficient to justify apportionment of costs against Dr. Shi.

The Receiver's argument that Dr. Shi controlled the actions of Tongfang Investment Fund SPC ("Tongfang SPC") is also insufficient to justify apportioning the costs of the receivership. The Receiver submits an excerpt of the Cayman Islands register of the directors of Tongfang SPC—dated as of March 2023—but fails to dispute or adequately rebut the other evidence and contentions previously submitted by Dr. Shi showing that others controlled Tongfang SPC during the relevant time period. The relevant time period is 2017 to 2019, when LKM originally entered into the agreement with Tongfang SPC for the purchase and sale of FL Mobile and Showself and when Tongfang SPC commenced the arbitrations against LKM and Dr. Shi. At that time, there were three directors of Tongfang SPC. *See* Exhibit C to Maloney Decl. It was the two other directors who signed the transaction documents with LKM and who commenced the Tongfang SPA-LKM arbitration. *See* Exhibit D to Maloney Decl. at 8

(fixed rate senior note signed by Daniel Li and Zhou Hongbin in their capacities as directors) and ECF No. 269-1 ¶10 n.5[3], ECF No. 269-1 ¶¶16(1), 19(1) (findings by arbitrator that Mr. Zhou had submitted witness statement in his capacity as director and evidence showing that Tongfang SPC was funded by separate investors).

Finally, in the Tongfang-LKM arbitration Award, the arbitrator noted that a different director, Mr. Zhou Hongbin, initiated the arbitration on behalf of Tongfang SPC, *see* ECF No. 269-1 ¶¶10 and n.5, and that Mr. Zhou had submitted evidence showing that Tongfang SPC was funded by separate investors, *see* ECF No. 269-1 ¶¶16(1), 19(1).

The Receiver's submission also ignores the evidence previously submitted by Dr. Shi showing that his role in Tongfang SPC was merely as a nominee for the ultimate investors who were funding the purchase and sale of FL Mobile and Showself. Specifically, the Supplemental Agreement and other transaction documents show that Dr. Shi held his interest as a nominee subject to a control agreement that obligated him to follow the directions of the buyer (Tongfang SPC) and seller (NQ Mobile). *See* ECF No. 181 ¶¶11-12, ECF No. 228 ¶11, 12, 228-5 §2.1-2.3.

Thus, the issue of who controlled Tongfang SPC during the relevant time period remains a highly contested issue of fact that has been neither vetted by discovery nor determined an evidentiary hearing. Allocation of receivership costs without discovery or an evidentiary hearing would be an inappropriate exercise of discretion. *See Tanzer, 315 F. Supp. at 1143*. And given the Receiver's undisclosed conflicts of interest (*see*,

---

[3] There is a sharply disputed issue of fact as to the true author of the emails referenced in ¶¶9, 11, and 12 of the Tongfang-LKM arbitration Award. *See* ECF No. 388-6 ¶¶1-10.

*e.g.*, ECF Nos. 421-1, 435, 454, 472 at 3-8), the Receiver's allegations as to Dr. Shi are neither entitled to any presumption of good faith nor sufficient to make findings of fact.

Finally, the Court should also consider the Receiver's arguments in light of "the result obtained." *United States v. Code Prods. Corp.*, 362 F.2d 669, 673 (3d Cir. 1966), quoting *Coskery v. Roberts & Mander Corp*, 200 F.2d 150, 154 (3d Cir. 1952). Here, the results speak for themselves: The Receiver transferred all of LKM's asserts to Guo, the individual who paid legal fees to the Receiver's law firm and who funded the lawsuit brought by Plaintiff Baliga that caused the Receiver to be appointed.

## CONCLUSION

For the foregoing reasons, the Court should deny in all respects the request by the Receiver to pierce the corporate veil or otherwise allocate the costs of the receivership against Dr. Shi.

Dated:  New York, New York
July 5, 2024

Respectfully submitted,

FELICELLO LAW P.C.

*/s/ Michael James Maloney*
Michael James Maloney
Rosanne E. Felicello
FELICELLO LAW P.C.
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806
mmaloney@felicellolaw.com
rosanne@felicellolaw.com
*Attorneys for Defendant Vincent Wenyong Shi*