EXECUTION COPY

DATED 14 DECEMBER 2017

**TONGFANG INVESTMENT FUND SERIES SPC**
**on behalf of**
**TONGFANG M&A FUND SP**
**a segregated portfolio of**
**TONGFANG INVESTMENT FUND SERIES SPC**
(as the Issuer)

---

**INSTRUMENT**

constituting

FIXED RATE SENIOR NOTES
IN THE AMOUNT OF RMB1,770,000,000

---

# MAYER·BROWN
# JSM

**Hong Kong**

.

56228969.7

**Table of Contents**

**Clause**                                                                                                                           **Page No.**

1.      INSTRUMENT......................................................................................................... 1
2.      DEFINITIONS........................................................................................................ 1
3.      PRINCIPAL AMOUNT........................................................................................... 2
4.      INTEREST.............................................................................................................. 2
5.      PAYMENTS ........................................................................................................... 2
6.      CERTIFICATES ..................................................................................................... 3
7.      CONDITIONS ........................................................................................................ 3
8.      COVENANTS ........................................................................................................ 3
9.      NOTICE OF EVENT OF DEFAULT...................................................................... 4
10.     CONDITIONS AND SCHEDULES......................................................................... 4
11.     INVESTMENT EXCHANGE .................................................................................. 4
12.     NOTICES................................................................................................................ 4
13.     DISTINCT PROVISIONS ....................................................................................... 5
14.     VARIATION ........................................................................................................... 5
15.     GOVERNING LAW AND JURISDICTION ............................................................ 5
16.     DELIVERY.............................................................................................................. 6
17.     RIGHTS OF THIRD PARTIES ............................................................................... 6

Schedule 1                                                                                                                                      7

        Certificate.................................................................................................................. 7
        Conditions ................................................................................................................. 9
        Annex to the Certificate ............................................................................................ 9

Schedule 2  Register and Transfers                                                                                              13

Schedule 3  Form of Transfer                                                                                                        15

56228969.7

**THIS INSTRUMENT** is dated 14 December 2017 and entered into by **TONGFANG INVESTMENT FUND SERIES SPC (on behalf of TONGFANG M&A FUND SP, being a segregated portfolio of TONGFANG INVESTMENT FUND SERIES SPC)**, an exempted company incorporated with limited liability and registered as a segregated portfolio company under the Cayman Islands Companies Law (the **"Company"**).

**WHEREAS:**

The Company will acquire 79.34% equity interest in FL Mobile Jiutian Technology Co., Ltd.(北京飛流九天科技有限公司) ("Jiutian Technology") and 65% equity interest in Beijing Showself Technology Co., Ltd. (思享時代（北京）科技有限公司) ("Showself Technology") (Jiutian Technology and Showself Technology collectively called the "Assets") at the closing of this Notes, and has resolved to issue fixed rate senior notes in the aggregate amount of RMB1,770,000,000 pursuant to a resolution of its board of directors passed on or around the date of this Instrument, among which such notes in the amount of RMB1,770,000,000 are issued to the Subscribers.

**THIS DEED NOW WITNESSES** as follows:

1.  **INSTRUMENT**

    This Instrument constitutes the Note.

2.  **DEFINITIONS**

2.1  In this Instrument, the Conditions and the Schedules, the following expressions shall bear the meanings set against them:

| | |
|---|---|
| **"Business Day"** | means any day (excluding a Saturday, Sunday and public holiday) on which banks in Hong Kong are generally open for business throughout their normal business hours; |
| **"Certificate"** | means the certificate issued to the holder of the Notes in respect of its registered holding of the Notes; |
| **"Conditions"** | means the Conditions set out in the annex to the Certificate in Schedule 1 and the word **"Condition"** followed by a number refers to that one of the Conditions so numbered; |
| **"Event of Default"** | means any event or circumstance specified as such in Condition 4.1; |
| **"Group"** | means the Company, together with its subsidiary, and **"Group Company"** shall be construed accordingly; |
| **"Instrument"** | means this Instrument (including the Conditions and the Schedules); |
| **"Notes"** | means the fixed rate senior notes due 2018 of the Principal Amount constituted by this Instrument and to be issued pursuant to a resolution of the Company's board of directors passed on or around the date of this Instrument, as outstanding from time to time; |
| **"PRC"** | means the People's Republic of China; |
| **"Principal Amount"** | means RMB1,770,000,000 or such lesser amount as is outstanding under this Instrument from time to time;**"Redemption Amount"** |

means the Principal Amount, plus accrued but unpaid interest up to, but excluding, the relevant redemption date;

**"Register"** means the register of senior notes to be maintained under paragraph 1 of Schedule 2;

**"Subscribers"** means NQ International Limited or any holder of the Senior Notes from time to time;

**"Subscription Agreement"** means the subscription agreement dated 13 December 2017 entered into between the Company and the Subscribers in relation to the subscription and issue of the Notes; and

**"Transaction Documents"** has the meaning given to it in the Subscription Agreement.

2.2 Capitalised terms not otherwise defined shall have the same meanings as ascribed to such terms in the Subscription Agreement.

2.3 Unless the context otherwise requires, in this Instrument words denoting persons shall include corporations; words denoting the masculine gender shall include the feminine; and words denoting the singular shall include the plural and vice versa.

2.4 Headings in this Instrument are for convenience only and shall not affect its interpretation.

2.5 References in this Instrument to:

(a) Schedules, Clauses and paragraphs are to Schedules, Clauses and paragraphs of this Instrument;

(b) any enactment include all amendments, extensions, re-enactments, consolidations or replacements of it; and

(c) defined parties include their respective successors, assigns and transferees.

## 3. PRINCIPAL AMOUNT

The Company shall pay the Principal Amount to the Subscribers (or as they may direct) in accordance with the Conditions.

## 4. INTEREST

The Company shall pay interest on the Principal Amount to the Subscribers (or as they may direct) in accordance with the Conditions.

## 5. PAYMENTS

Any interest or other monies payable on or in respect of the Notes shall be paid in such manner and in such place as the Subscribers shall reasonably direct and, if no such direction is given to the Company in writing at least 10 Business Days prior to the relevant payment, may be paid by crossed cheque or warrant sent through the post to the registered address of the Subscribers or to such person at such address as the Subscribers may in writing direct. Every such cheque or warrant shall be made payable to the person to whom it is sent or to such person or persons as the Subscribers may in writing direct and payment of the cheque or warrant shall be satisfaction of the monies represented by it. Every such cheque or warrant shall be sent at the risk of the person entitled to the monies represented by it.

6.    **CERTIFICATES**

The Company shall issue to each of the Subscribers a certificate, executed by the Company as a deed, in respect of the Notes held by it. The certificate shall be substantially in the form set out in Schedule 1 and shall bear a denoting number and have the Conditions endorsed on it.

7.    **CONDITIONS**

The Notes shall be held subject to the Conditions and the provisions of this Instrument, which shall be binding on the Company and the Subscribers and all persons claiming through or under them.

8.    **COVENANTS**

8.1    For so long as the Notes remain outstanding, the Company shall:

    (a)    not have any indebtedness or liabilities other than the Notes and the Mezzanine Notes without the prior written consent from the Subscribers; and

    (b)    supply to the Subscribers:

        (i)    all documents dispatched by the Company to its shareholder(s) (or any class of them) at the same time as they are despatched;

        (ii)    promptly upon becoming aware of them, details of any litigation, arbitration or administrative proceedings which are current, threatened or pending against any Group Company, and which might, if adversely determined, have a Material Adverse Effect;

        (iii)    as soon as they are available, but in any event within 30 calendar days after the end of each quarter, copies of the management account of the Company in respect of such period.

        (iv)    promptly, such further information regarding the financial condition, business and operations of any Group Company as the Subscribers may reasonably request;

        (v)    promptly, notice of any change in authorised signatories of the Company signed by a director or company secretary of the Company accompanied by specimen signatures of any new authorised signatories;

        (vi)    promptly, any notice being received from any competent authority amending, terminating or suspending or threatening to amend, terminate or suspend any Authorisation where such action (or implementing the result thereof) constitutes a Material Adverse Effect; and

        (vii)    promptly, upon becoming aware of them, details of any circumstances which may lead to:

            (A)    any Authorisation not being obtained or effected or not remaining in full force and effect (other than in accordance with its terms); or

            (B)    any Authorisation not being obtained, renewed or effected when required,

        where failure to obtain and/or maintain the same constitutes a Material Adverse Effect.

- 3 -

56228969.7

9. **NOTICE OF EVENT OF DEFAULT**

The Company shall give notice to the Subscriber upon it becoming aware that any of the events specified in Condition 4 has occurred.

10. **CONDITIONS AND SCHEDULES**

The Company shall at all times observe and perform the Conditions and the provisions set out in Schedule 2.

11. **INVESTMENT EXCHANGE**

No application shall be made to any stock exchange (whether recognised or not) for permission to deal in or for an official or other listing or quotation in respect of the Notes.

12. **NOTICES**

12.1    Any notice, claim, demand, court process, document or other communication to be given under this Instrument (collectively "**communication**" in this Clause) shall be in writing in the English language and may be served or given personally or sent to the facsimile numbers (if any) of the relevant party and marked for the attention of such person as specified in Clause 12.4.

12.2    A change of address or facsimile number of the person to whom a communication is to be addressed or copied pursuant to this Instrument shall not be effective until five days after a written notice of change has been served in accordance with the provisions of this Clause 12 on all other parties to this Instrument with specific reference in such notice that such change is for the purposes of this Instrument.

12.3    All communications shall be served by the following means and the addressee of a communication shall be deemed to have received the same within the time stated adjacent to the relevant means of despatch:

| Means of despatch | Time of deemed receipt |
|---|---|
| Local mail or courier | 24 hours· |
| Facsimile | on despatch |
| Air courier/Speedpost | 3 days |
| Airmail | 5 days |

12.4    The initial address and facsimile number of the Subscribers for the service of communications and the person for whose attention such communications are to be marked are set out in the certificate issued in accordance with Clause 6. The initial address and facsimile number of the Company for the service of communications and the person for whose attention such communications are to be marked are as follows:

**To Company:**

Address:       Units 2102-3 of 21/F, Golden Centre, 188 Des Voeux Road Central, Hong Kong
Facsimile no.: (852) 2320 3408
Attention:     Directors

- 4 -

**To NQ International Limited:**

| | |
|---|---|
| Address: | Unit 826, 8/F., Ocean Centre, Harbour City, 5 Canton Road, Tsim Sha Tsui, Kowloon, Hong Kong |
| Facsimile no.: | : (8610) 8565 5518 |
| Attention: | Directors |

12.5 A communication served in accordance with this Clause 12 shall be deemed sufficiently served and in proving service and/or receipt of a communication it shall be sufficient to prove that such communication was left at the addressee's address or that the envelope containing such communication was properly addressed and posted or despatched to the addressee's address or that the communication was properly transmitted by facsimile to the addressee. In the case of facsimile transmission, such transmission shall be deemed properly transmitted on receipt of a report of satisfactory transmission printed out by the sending machine.

12.6 Nothing in this Clause shall preclude the service of communication or the proof of such service by any mode permitted by law.

## 13.   DISTINCT PROVISIONS

Each of the provisions of this Instrument shall be severable and distinct from one another, and the validity, legality and enforceability of none of the provisions of this Instrument shall be affected or impaired in any way by any other provision of this Instrument being or becoming invalid, illegal or unenforceable.

## 14.   VARIATION

Subject to the terms of the Transaction Documents, the provisions of this Instrument and the Notes may be varied or modified with the sanction of the Subscribers.

## 15.   GOVERNING LAW AND JURISDICTION

15.1 This Instrument is governed by and shall be construed in accordance with Hong Kong laws.

15.2 The courts of Hong Kong are to have jurisdiction to settle any disputes which may arise out of or in connection with this Instrument and accordingly any legal action or proceedings arising out of or in connection with this Instrument may be brought in such courts. The Subscribers have the right to take proceedings in any court of competent jurisdiction and the taking of proceedings in any one or more jurisdictions shall not preclude the taking of proceedings in any other jurisdiction (whether concurrently or not).

The Company shall at all times maintain an agent for service of process and any other documents in proceedings in Hong Kong or any other proceedings in connection with this Agreement. Such agent shall be Tongfang Securities Limited of Units 2102-3, 21/F, Golden Centre, 188 Des Voeux Road, Central, HK and any claim form, judgment or other notice of legal process shall be sufficiently served on the Company if delivered to such agent at its address for the time being.

15.3 The Subscribers shall at all times maintain an agent for service of process and any other documents in proceedings in Hong Kong or any other proceedings in connection with this Agreement. Such agent shall be Tongfang Securities Limited of Units 2102-3, 21/F, Golden Centre, 188 Des Voeux Road, Central, HK and any claim form, judgment or other notice of legal process shall be sufficiently served on the Subscribers if delivered to such agent at its address for the time being.

15.4 The Company irrevocably waives, to the extent permitted by applicable law, with respect to itself and its revenues and assets (irrespective of their use or intended use), all immunity on the grounds of sovereignty or other similar grounds from:

- 5 -

- 6 -

(a)      suit;

(b)      jurisdiction of any court;

(c)      relief by way of induction or order for specific performance or recovery of property;

(d)      attachment of its assets (whether before or after judgment); and

(e)      execution or enforcement of any judgment to which it or its revenue or assets might otherwise be entitled in any proceedings in the courts of any jurisdiction (and irrevocably agrees, to the extent permitted by applicable law, that it will not claim any immunity in any such proceedings).

## 16.    DELIVERY

This Deed shall be treated as delivered upon being dated.

## 17.    RIGHTS OF THIRD PARTIES

The parties do not intend any term of this Agreement to be enforceable pursuant to the Contracts (Rights of Third Parties) Ordinance (Chapter 623 of the Laws of Hong Kong).

56228969.7

**Schedule 1**

**Certificate**

Note No. 1

**TONGFANG INVESTMENT FUND SERIES SPC**
**on behalf of**
**TONGFANG M&A FUND SP**
**a segregated portfolio of**
**TONGFANG INVESTMENT FUND SERIES SPC**
(*incorporated under the laws of the Cayman Islands with limited liability*)
(the "**Company**")

THIS IS TO CERTIFY THAT the undermentioned is the registered holder (the "**Holder**") of the amount set out below of the fixed rate senior notes ("**Notes**") constituted by an instrument executed by the Company dated 14 December 2017 ("**Instrument**") and issued with the benefit of and subject to the provisions contained in the Instrument and the Conditions annexed.

| *Name and Address of Holder* | *Amount of Note* |
|---|---|
| NQ International Limited | RMB1,770,000,000 |

Subject to the foregoing, the Company for value received promises to redeem the Notes and pay the principal sum stated above together with any interest and additional amounts as may be payable to the Holder of the Notes under and in accordance with the Conditions.

This Certificate is not a document of title. Entitlements are determined by entry in the Register and only the duly registered holder from time to time is entitled to payment in respect of this Certificate.

The initial address and facsimile number of the Holder for the service of communications and the person for whose attention such communications are to be marked are as follows:

| Address: | Unit 826, 8/F., Ocean Centre, Harbour City, 5 Canton Road, Tsim Sha Tsui, Kowloon, Hong Kong |
|---|---|
| Facsimile no.: | (8610) 8565 5518 |
| Attention: | Directors |

1.    The Notes are payable in accordance with the Conditions.

2.    Any change of address of a Holder must be notified in writing signed by the Holder to the Company at the registered office of the Company from time to time.

3.    A copy of the Instrument constituting the Notes are available for inspection at the registered office of the Company.

4.    Words and expressions defined in the Instrument shall have the same meanings when used herein.

Dated:

- 7 -

56228969.7

EXECUTED as a deed by )

TONGFANG INVESTMENT )
FUND SERIES SPC )
for on behalf of TONGFANG M&A FUND SP, )
being a segregated portfolio of )
TONGFANG INVESTMENT FUND SERIES SPC )
)
and SIGNED by )

in the presence of:

Name: Daniel C
Title: Director

Signature of witness:
Name:    LUPK CHAK HING
Title:    Director

- 8 -

**Conditions**

**Annex to the Certificate**

1.  **STATUS AND MATURITY DATE**

1.1  The Notes constitute the direct, senior, and unconditional general obligations of the Company and shall at all times rank *pari passu* and without any preference among themselves. The payment obligations of the Company under the Notes shall, save for such exceptions as may be provided by applicable legislation, at all times rank senior than all its other present and unsubordinated obligations. It is understood and agreed that the Assets of the Company, without limiting the rights of the Holders of the Notes, underlies the value of the Notes in such that the Assets or any proceeds arising from the disposal of the Assets should be first used to pay to the Holder and that the rights of the Holders of Notes should at all times rank senior to all other obligations of the Company until such time that the obligations of the Company toward the Holders of the Notes are fully satisfied.

1.2

1.3  Unless previously redeemed, or purchased and cancelled under the following Conditions, the Notes shall be redeemed at the Principal Amount, on the date falling on the twelfth month after 14 December 2017 (the **"Issue Date"**) , being 14 December 2018 (the **"Maturity Date"**) (provided that, if the Holder agrees in writing, the Maturity Date may be extended to the date falling on the twelfth month after the Issue Date), together with accrued but unpaid interest (up to but excluding that date).

1.4  If the Maturity Date is not a Business Day, relevant paymnet shall be made on the next succeeding Business Day.

2.  **CANCELLATION**

Any portion of the Notes which is redeemed by the Company shall be cancelled and shall not be capable of being reissued.

3.  **INTEREST**

3.1  Until the Notes are fully redeemed in accordance with these Conditions and the provisions of the Instrument, the Company will pay interest on the Principal Amount to the Holder from and including the Issue Date at a rate of 8% per annum, payable annually in arrear on 12 December in each year (each an **"Interest Payment Date"**). In these Conditions, the period beginning on and including the Issue Date and ending on but excluding the first Interest Payment Date and each successive period beginning on and including an Interest Payment Date and ending on but excluding the next succeeding Interest Payment Date is called an **"Interest Period"**.

3.2  Interest on the Notes shall accrue daily and be calculated on the basis of a 360-day year consisting of 12 months of 30 days each and, in the case of an incomplete month, the actual number of days elapsed in the relevant period, rounding the results figure to the nearest cent.

3.3  All payments due in relation to the Notes shall be paid in full on the due date for payment, without set-off or counterclaim and free and clear of and without deduction for any present or future taxes, duties, levies, imposts, fees or other charges or withholdings of any nature whatsoever now or hereafter imposed by any governmental, fiscal or other authority. If the Company is obliged to make any such deduction or withholding, it will ensure that the deduction or withholding does not exceed the minimum required by law.

- 9 -

4.     **EVENTS OF DEFAULT**

4.1    If:

(a)    the Company fails to pay any principal or interest payable under the Notes and the Mezzanine Notes within 15 days after the due date of such payment;

(b)    any requirement of Clause 8 (Covenants) of the Instrument is not satisfied and such breach sustained and is not cured within 30 days after the occurrence;

(c)    the Company fails to comply with its obligations in Condition 5 (Negative Pledge);

(d)    the Company does not comply with any provision of any of the Transaction Documents (other than that referred to in Conditions 4.1(a) to 4.1(c)), provided that no Event of Default under this Condition 4.1(d) will occur if the failure to comply is capable of remedy and is remedied within five Business Days of the earlier of (i) the Holder giving notice to the Company and (ii) the Company becoming aware of the failure to comply;

(e)    the Company guarantees Financial Indebtedness of any person other than a Group Company;

(f)    any representation, warranty, undertaking or other statement made or deemed to be made by the Company in any Transaction Document or any other document delivered by or on behalf of the Company under or in connection with any Transaction Document is breached or proves to have been incorrect or misleading in any material respect when made or deemed to be made;

(g)    (i)    any Group Company is or is presumed or deemed to be unable or admits inability to pay its debts as they fall due, suspends making payments on any of its debts or, by reason of actual or anticipated financial difficulties, commences negotiations with one or more of its creditors with a view to rescheduling any of its indebtedness; or

      (ii)   the value of the assets of any Group Company is less than its liabilities (taking into account contingent and prospective liabilities); or

      (iii)  a moratorium is declared in respect of any indebtedness of any Group Company;

(h)    any corporate action, legal proceedings or other procedure or step is taken in relation to:

      (i)    the suspension of payments, a moratorium of any indebtedness, winding-up, dissolution, administration, provisional supervision or reorganisation (by way of voluntary arrangement, scheme of arrangement or otherwise) of any Group Company;

      (ii)   a composition or arrangement with any creditor of any Group Company, or any assignment for the benefit of creditors generally of any Group Company or a class of such creditors;

      (iii)  the appointment of a liquidator, receiver, administrator, administrative receiver, compulsory manager, provisional supervisor or other similar officer in respect of any Group Company or any of its assets; or

      (iv)   enforcement of any Security over any assets of any Group Company,

or any analogous procedure or step is taken in any jurisdiction, provided that paragraph (i) of this Condition 4.1(h) shall not apply to any winding-up petition which is frivolous

- 10 -

or vexatious and is discharged, stayed or dismissed within 14 Business Days of commencement;

(i)      any expropriation, attachment, sequestration, distress or execution affects any asset or assets of any Group Company and is not discharged within 14 Business Days;

(j)      (i)      any Group Company suspends or ceases or threatens to suspend or cease to carry on all or a material part of its business; or

              (ii)     any Group Company changes or threatens to change a material part of its business;

(k)      any Transaction Document is not, or ceases to be, in full force and effect;

(l)      it is or becomes unlawful for the Company or any of the Other Companies to perform any of its obligations under the Transaction Documents;

(m)     the Company repudiates a Transaction Document or evidences an intention to repudiate a Transaction Document except where such repudiation is permitted under the provisions of the relevant Transaction Document;

(n)      any litigation, arbitration or administrative proceedings of or before any court, arbitral body or agency which, if adversely determined, might reasonably be expected to have a Material Adverse Effect have been started against any Group Company;

(o)      the Company fails to use the proceeds received from issuance of the Senior Notes and Mezzanine Notes in accordance with the Subscription Agreement;

(p)      to the extent not covered by any other provisions of this Condition 4.1, the occurrence of any event or circumstance which has or, in the reasonable opinion of the Holder, is likely to have, a Material Adverse Effect,

such event shall constitute a default and at any time whilst such default remains unremedied, if the Holder shall so demand in writing to the Company, the Redemption Amount shall become immediately due and payable and the Company shall pay such amount.

## 5.      NEGATIVE PLEDGE

For so long as the Notes remain outstanding, the issued share capital of the Company (i) shall not be the subject of any Encumbrance and (ii) shall not be transferred, withdrawn or sold to any third party.

For the purpose of this Condition 5, "**Encumbrance**" means a mortgage, charge, pledge, lien, other encumbrance or security interest of any kind, having similar effect and any agreement or obligation to create or grant any of the aforesaid.

## 6.      Grant of Security Interest

6.1      To secure the prompt payment and performance in full when due, whether by lapse of time, acceleration, mandatory prepayment or otherwise, the Company hereby grants to the Holder a continuing security interest in and to the Assets according to the Security and Pledge Agreement.

## 7.      EARLY REDEMPTION BY THE COMPANY

7.1      At any time month after the Issue Date, the Company may, at its option, redeem the Notes in whole or in part at a redemption price equal to the Principal Amount plus accrued and unpaid interest, if any, to (but excluding) the redemption date.

- 11 -

7.2     The Company will give not less than 30 days' notice of any redemption.  If less than all of the Notes are to be redeemed at any time, each Holder's Notes will be reduced on a pro rata basis.

7.3     If redeemed in part only, a new Note in principal amount equal to the unredeemed portion will be issued upon cancellation of the original Note. On and after the redemption date, interest will cease to accrue on the Notes or portions of them called for redemption.

7.4     Any Notes that are redeemed pursuant to the terms of this Condition 6 will be cancelled.

**8.      FEES AND EXPENSES**

The Company shall be responsible and pay all taxes and/or capital, stamp, issue and registration and transfer taxes and duties, payable in the Cayman Islands and Hong Kong, in respect of the allotment and issue of the Notes and all expenses arising on the issue of the Notes, including all properly incurred expenses and charges in connection thereon.

**9.      GOVERNING LAW AND JURISDICTION**

9.1     The Conditions are governed by and shall be construed in accordance with Hong Kong law.

9.2     The courts of Hong Kong are to have jurisdiction to settle any disputes which may arise out of or in connection with the Conditions and accordingly any legal action or proceedings arising out of or in connection with this Instrument may be brought in such courts.  The Holder has the right to take proceedings in any court of competent jurisdiction and the taking of proceedings in any one or more jurisdictions shall not preclude the taking of proceedings in any other jurisdiction (whether concurrently or not).

9.3     The Company irrevocably waives, to the extent permitted by applicable law, with respect to itself and its revenues and assets (irrespective of their use or intended use), all immunity on the grounds of sovereignty or other similar grounds from:

(a)      suit;

(b)      jurisdiction of any court;

(c)      relief by way of induction or order for specific performance or recovery of property;

(d)      attachment of its assets (whether before or after judgment); and

(e)      execution or enforcement of any judgment to which it or its revenue or assets might otherwise be entitled in any proceedings in the courts of any jurisdiction (and irrevocably agrees, to the extent permitted by applicable law, that it will not claim any immunity in any such proceedings).

- 12 -

**Schedule 2**

**Register and Transfers**

1.   **REGISTER**

1.1   The Register shall be kept by the Company at the office of its registered agent and there shall be entered in it in respect of the Notes:

    (a)   the name and address of the Holder;

    (b)   the principal due on the Notes on issue and the dates on which any parts of such principal are repaid; and

    (c)   the date on which the name of the Holder was first entered in respect of the Notes.

1.2   Upon any change of address of the Holder being notified to the Company, the Register shall be altered accordingly.  The Holder or any person authorised by the Holder shall be at liberty at all reasonable times to inspect, copy and take extracts from the Register.

2.   **ABSOLUTE OWNER**

Except as required by law, the Company will recognise the registered holder of the Notes as its absolute owner and shall not be bound to take notice or see to the execution of any trust (whether express, implied or constructive) to which the Notes may be subject and the receipt by the Holder of the interest from time to time accruing due in respect of the Notes or for any other monies payable in respect of it shall be a good discharge to the Company notwithstanding any notice it may have (whether express or otherwise) of the right, title, interest or claim of any other person to or in the Notes, interest or monies.  No notice of any trust (express, implied or constructive) shall be entered on the Register in respect of the Notes.

3.   **TRANSFER**

3.1   The Holder shall be entitled to transfer the Notes in whole or in part to any person by instrument in writing, a form of which is set out in Schedule 3 (Form of Transfer) in this Instrument.

3.2   Where the Holder is proposing to transfer the Notes (or a portion thereof) to any independent third party, such Holder shall give the Company at least five Business Days' notice of the Holder's intention to lodge the applicable instrument of transfer with the Company for registration which notice shall include brief information about the identity of the proposed transferee.

3.3   Every instrument of transfer must be signed by the transferor and the Holder shall be deemed to remain the owner of the Notes until the name of the transferee is entered in the Register in respect of it.

3.4   Every instrument of transfer must be sent to or left for registration at the office of the registered agent for the time being of the Company accompanied by the certificate in respect of the Notes to be transferred and such other evidence as the directors of the Company may require to prove the title of the Holder or its right to transfer the Notes.

3.5   All instruments of transfer which have been registered will be retained by the Company.

3.6   Upon receiving a request from the Holder for the transfer of Notes, the Company shall do all things necessary to effect the entries into the Register and/or to update the Register, if appropriate, and issue new Certificate and arrange for the new Certificate to be delivered.

56228969.7

4.      **DEFACED NOTE**

If any certificate representing the Notes shall be worn out or defaced it may be surrendered to the directors of the Company, who shall cancel it and issue a replacement.  If any certificate representing the Notes has been lost or destroyed then, provided the Holder complies with such terms as to evidence and indemnity and the payment of out-of-pocket expenses of the Company in investigating the evidence as the directors of the Company may deem adequate, a new certificate in lieu of the lost or destroyed one may be issued to the Holder.  An entry as to the issue of the new certificate, and a note of the indemnity (if any), shall be made in the Register. There shall be paid to the Company in respect of any replaced certificate issued under this paragraph such sum not exceeding RMB10 as the directors of the Company shall determine.

56228969.7

**Schedule 3**

**Form of Transfer**

FOR VALUE RECEIVED the undersigned hereby transfers the following principal amount of the fixed rate senior notes issued by **TONGFANG INVESTMENT FUND SERIES SPC (on behalf of TONGFANG M&A FUND SP, being a segregated portfolio of TONGFANG INVESTMENT FUND SERIES SPC)** and all rights in respect thereof, to the transferee(s) listed below:

**Principal Amount transferred**                        **Name, address and account for payments of transferee**

Dated :      ………………………………………

Name:        ………………………………………

Certifying Signature: …………………………..

Notes:

(i)      A representative of the holder should state the capacity in which he signs e.g. executor.

(ii)     The signature of the person effecting a transfer shall conform to any list of duly authorized specimen signatures supplied by the registered holder or be certified by a recognised bank or notary public.

- 15 -

56228969.7

IN WITNESS of which the Company has executed this Instrument as a deed and has delivered it upon dating it.

| | |
|---|---|
| EXECUTED as a deed by | ) |
| | ) |
| TONGFANG INVESTMENT | ) |
| FUND SERIES SPC | ) |
| for on behalf of TONGFANG M&A FUND SP, | ) |
| being a segregated portfolio of | ) |
| TONGFANG INVESTMENT FUND SERIES SPC | ) |
| | ) |
| and SIGNED by | ) |

Name: _Daniel C_
Title: _Director_

in the presence of:

Signature of witness:
Name: _JUNG CHAE YUNG_
Title: _Director_

- 16 -

56228969.7