USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/19/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WAYNE BALIGA,

                              Plaintiff

          - against -

LINK MOTION INC. (F/K/A NQ MOBILE
INC.), VINCENT WENYONG SHI, ROLAND WU,
and ZEMIN XU,

                              Defendants.

---

18 Civ. 11642 (VM)

DECISION AND ORDER

**VICTOR MARRERO, United States District Judge.**

Plaintiff Wayne Baliga ("Baliga") initiated this action against Link Motion, Inc. (f/k/a/ NQ Mobile Inc.) ("Link Motion"), and several of Link Motion's executives and directors, specifically Vincent Wenyong Shi ("Shi"), Roland Wu, and Zemin Xu ("Xu"). (See Dkt. No. 470.)

Currently pending before the Court are the objections of Shi and Link Motion's court-appointed receiver Robert W. Seiden (the "Receiver") to two Reports and Recommendations ("R&Rs") by Magistrate Judge Valerie Figueredo, which were issued on August 11, 2023 (the "August Report"), (see "August Report," Dkt. No. 466), and November 25, 2024 (the "November Report"), (see "November Report," Dkt. No. 529). The R&Rs primarily addressed the propriety of the Receiver's accounting and expenses throughout the course of the Receivership and who should be liable for such expenses. The

1

R&Rs also addressed the issue of whether Shi's law firm, Felicello Law, P.C., could represent Link Motion in connection with its motion to dismiss Baliga's common law fraud claim (the "Motion to Dismiss"). In short, the R&Rs approved the Receiver's accounting and most of the submitted expenses, denied a subset of the expenses, and allowed Felicello to represent Link Motion in connection with the Motion to Dismiss. Shi and the Receiver now object to several findings in these respective R&Rs. (See "Shi's Objs. to August Report," Dkt. No. 472[1]; "Shi's Supplemental Objs. to August Report," Dkt. No. 494; "Receiver's Objs. to November Report," Dkt. No. 532; "Shi's Objs. to November Report," Dkt. No. 538.)

For the reasons stated below, the Court adopts both Reports and Recommendations in substantial part but declines to adopt them with respect to the approval of some of the Receiver's fees, the rejection of certain expenses submitted by the Receiver's agent, Lilin "Francis" Guo ("Guo"), and, in part, their denial of Guo's compensation.

## I.    BACKGROUND

The Court assumes the parties' familiarity with the August Report and the November Report, as well as the facts

---

[1] The page numbers referenced herein for citations to the electronic docket ("Dkt.") are to the ECF-generated pagination in those documents except for citations to Dkt. No. 472, which reference the original pagination in that document.

and procedural background detailed therein. (See August Report at 1-7; November Report at 1-7.)

On February 1, 2019, the Court appointed Seiden as a temporary receiver for Link Motion. (See Dkt. No. 26 [hereinafter "Receivership Order"].) The Receivership Order authorized the Receiver to protect the status quo of the Company and to prevent waste, dissipation, and theft of Link Motion assets. (See id. § II(2).) In April 2019, the Receiver appointed Guo as the Receiver's agent in China. (See Dkt. No. 43 at ¶ 10.) At the time of his appointment, Guo held over six million American Depository Shares ("ADSs" or "ADS")[2] of Link Motion, for which his total investment was approximately $20 million between 2017 and 2018. (See Dkt. No. 477-1 at ¶ 2.)

On October 5, 2020, Baliga filed his Second Amended Complaint in which he abandoned his shareholder derivative claims and asserted only direct claims. Subsequently, the Court found that, based on Baliga's abandonment of his derivative claims, there was no longer a basis for the Receivership and ordered the Receiver to be discharged following a full accounting of the activities performed

---

[2] ADSs "represent an interest in the shares of a non-U.S. company that have been deposited with a U.S. bank." SEC, Investor Bulletin: American Depository Receipts (2012), https://www.sec.gov/investor/alerts/adr-bulletin.pdf.

during the Receivership and the costs thereof. (See Dkt. No. 331 at 23.) Accordingly, the Court directed that expenses be allocated based on when they were incurred and their purpose. In accordance with the Receivership Order, any expenses incurred by the receivership up to October 5, 2020, would be borne by Link Motion. (Id. at 17-19.) Further, Link Motion would be charged expenses incurred after October 5, 2020, that the corporation would have incurred had there been no receiver, provided that the expenses conferred a genuine benefit on the corporation. (Id. at 19.) Given that Baliga abandoned his derivative claims in his Second Amended Complaint and those claims were the basis of the receivership, Baliga would be responsible for any remaining receivership costs after October 5, 2020. (Id. at 16.)

The Court subsequently ordered the Receiver to submit an accounting of the receivership with supporting documentation, (see Dkt. No. 359 at 1) and referred the accounting proceedings for a Report and Recommendation by Magistrate Judge Figueredo. (See Dkt. No. 362.) The Receiver submitted his accounting, along with a memorandum of law, and argued that the Court should pierce the corporate veil and hold Shi personally liable for more than $1 million in "unfunded liabilities of the receivership." (Dkt. No. 375 at 9, 16-20.) Shi opposed the Receiver's accounting and objected to fees,

4

expenses, and compensation that the Receiver paid to his agent, Guo. (See Dkt. No. 396.) Shi argued that under a promissory note (the "Note Agreement") between Link Motion and Guo and approved by the Court in 2019 upon the request of the Receiver, Guo exercised a right to convert his compensation into shares of Link Motion, thereby allegedly "massively dilute[ing] the voting rights and equity interests of existing shareholders of" Link Motion. (Dkt. No. 394 ¶ 82.) The Receiver said his accounting did not include Guo's fees and expenses because the "note agreement entered into between Mr. Guo and [Link Motion] is under seal." (Dkt. No. 376 ¶ 40.)

On May 26, 2023, Shi sought a Court order enjoining the Receiver and Guo from convening a meeting of Link Motion shareholders pending a final determination with respect to the Receiver's accounting. (See Dkt. No. 421.) Shi contended that the Receiver had recently disclosed records related to the Convertible Note Agreement between the Receiver and Guo that warranted emergency relief. (Dkt. No. 421-5 at 1.) The same day, the Court temporarily enjoined the Receiver and Guo from proceeding with any Link Motion shareholder meeting. (See Dkt. No. 434.) On June 21, 2023, the Court extended the injunction until the Receiver's accounting of expenses, including Guo's, was resolved. (See Dkt. No. 440 at 1.) The

Receiver then filed voluminous receipts of Guo's expenses related to the Convertible Note Agreement. (See Dkt. No. 443.)

Magistrate Judge Figueredo issued the August Report on August 11, 2023, which recommended approval of the Receiver's accounting and expenses as of November 18, 2022, and that those costs be borne by Link Motion. (See August Report at 1.) However, Magistrate Judge Figueredo called for supplemental briefing on (1) Shi's objections to Guo's expenses and compensation and (2) the Receiver's veil piercing argument, intending to resolve those issues in a separate R&R. (See August Report at 27-28.) Further, the August Report recommended that the Receiver "not be discharged until these remaining issues are resolved by the Court following supplemental briefing." (Id.) That briefing was completed by October 2023. (See Dkt. Nos. 473, 477, 486.) Shi filed objections to the August Report. (See generally Shi's Objs. to August Report; Shi's Supplemental Objs. to August Report.)

Meanwhile, on September 11, 2023, Baliga filed his Third Amended Complaint. (See "TAC," Dkt. No. 470.) On October 11, 2023, Shi, through his counsel Felicello, moved to partially dismiss the TAC. (See Dkt. No. 480.) Felicello also purported to file the motion on behalf of Link Motion. (See id.) On October 16, 2023, the Court referred the motion to dismiss to

Magistrate Judge Figueredo. (See Dkt. No. 483.) On October 25, 2023, Baliga notified the Court that he objected to Felicello's authority to file the motion on behalf of Link Motion and Judge Figueredo ordered briefing on the issue. (Dkt. No. 489.)

Given the many pending issues before Judge Figueredo, this Court issued an order on May 21, 2024, instructing Judge Figueredo to "consolidate as many issues in this case as reasonably possible and to resolve all issues in one global Report & Recommendation." (Dkt. No. 508 at 11.) The Court clarified that Magistrate Judge Figueredo could simply incorporate the August Report regarding  the Receiver's accounting.

On November 24, 2024, Judge Figueredo issued the November Report, which recommended that (1) Guo's expenses be approved, (2) the Receiver's request to hold Shi personally liable for those expenses be denied, and (3) Baliga's objection to Felicello's representation of Link Motion and Shi for purposes of moving to dismiss the TAC be denied. (See generally November Report.) Both the Receiver and Shi filed objections to the November Report. (See Receiver's Objs. November Report; Shi's Objs. to November Report .)

In sum, Magistrate Judge Figueredo has issued a report and parties have filed various objections on the following

issues that are now ripe for this Court to resolve: (1) approval of the Receiver's accounting and (2) approval, in part, and disapproval, in part, of Guo's expenses. The parties do not object to the recommendations that (3) Baliga cannot pierce the corporate veil and hold Guo liable for the Receiver's expenses, and (4) that Felicello Law be allowed to represent Link Motion in connection with its Motion to Dismiss.

## II.  LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Pursuant to Federal Rule of Civil Procedure 72(b)(2), a party may make "specific written objections to the proposed findings and recommendations" within fourteen days of being served a copy the magistrate judge's recommended disposition. Fed. R. Civ. P. 72(b). However, a district court evaluating a magistrate judge's report may adopt those portions of the report to which "no specific written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law. Id.; Thomas v. Arn, 474 U.S. 140, 149 (1985). A district court is not required to review

any portion of a magistrate judge's report that is not the subject of an objection. See Thomas, 474 U.S. at 149.

When a party does file an objection, a district court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). But "an unsuccessful party is not entitled as of right to a de novo review by the judge of an argument never seasonably raised before the magistrate." Minto v. Decker, 108 F. Supp. 3d 189, 192 (S.D.N.Y. 2015) (internal quotation marks omitted). In other words, when an objection "simply reiterates the original arguments, the Court will review the Report strictly for clear error." George v. Prof'l Disposables Int'l, Inc., 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016) (internal quotation marks omitted).

By that same token, "a district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate." Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008). Consideration of new arguments is "disfavored absent a 'most compelling reason' for the failure to present" the arguments in the first instance. In re Consol. RNC Cases, No. 127, 2009 WL 130178, at *10 (S.D.N.Y. Jan. 8, 2009) (quoting Housing Works, Inc. v. Turner, 362 F. Supp. 2d 434, 439 (S.D.N.Y. 2005)). Review of new grounds for relief or legal arguments not raised before

9

the magistrate judge "would reduce the magistrate's work to something akin to a meaningless dress rehearsal." Michalow v. E. Coast Restoration & Consulting Corp., No. 09 Civ. 5475, 2018 WL 1559762, at *6 (E.D.N.Y. Mar. 31, 2018) (quoting RNC Cases, 2009 WL 130178, at *10).

## III. DISCUSSION

### A. SHI'S OBJECTIONS TO THE AUGUST 2023 REPORT

The August Report recommended approval of the Receiver's accounting as of November 18, 2022, and that all of the costs and expenses contained therein be borne by Link Motion. (See August Report at 29.) Shi filed objections and supplemental objections raising a variety of arguments disputing the Receiver's accounting and requested fees and costs. (See Shi's Objs. to August Report; Shi's Supplemental Objs. to August Report.)

"It is an indispensable part of a receiver's duties to file an accounting with its appointing court." 65 Am. Jur. 2d Receivers § 176 (2023). Indeed, a final accounting by a receiver ordinarily precedes the receiver's discharge because "a court must ensure that a receiver will be compensated for his time managing the property of one of the parties." WB Music Corp. v. Royce Int'l Broad Corp., No. 16-EDCV-600, 2021 WL 3721342, at *2 (C.D. Cal. Mar. 18, 2021); see also SEC v.

Kirkland, No. 06 Civ. 183, 2012 WL 3871922, at *1 (M.D. Fla. Aug. 6, 2012).

"A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred." SEC v. Byers, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008). Like fee awards in other contexts, the reasonableness of a receiver's fee application is determined in the court's discretion, SEC v. Northshore Asset Mgmt., No. 05 Civ. 2192, 2009 WL 3122608, at *3 (S.D.N.Y. Sept. 29, 2009), and is judged by, among other things, the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed. Byers, 590 F. Supp. 2d at 644.

The Court addresses the August Report's recommendations relevant to Shi's objections in turn.

i.   Purported Conflict of Interest of the Receiver and Guo

As a general matter, Shi objects to the August Report's failure to address the Receiver and Guo's purported conflict of interest surrounding the Receiver's law firm, Seiden Law Group ("SLG"). SLG represented an activist shareholder group LKMForward, of which Guo and Baliga were active members prior to Guo's appointment as agent and Baliga's initiation of this action. LKMForward had pushed for Shi's removal as chairman

of Link Motion before Baliga brought this lawsuit. (See Dkt. No. 435-10.) Shi argues that Guo's past payment, as a member of LKMForward, of legal fees to SLG and his subsequent appointment as the Receiver's agent creates a conflict of interest that justifies rejecting the Receiver's expenses. (See Shi's Objs. to August Report at 4-7.) Relatedly, Shi objects to the recommendation to approve the Receiver's expenses for investigating the China AI transaction, as this work was tied to Baliga's opposition to China AI's motion to intervene in this action, which was filed by SLG, allegedly creating another conflict of interest. (See id. at 6-7.) Finally, Shi objects to the August Report's failure to consider that the Receiver himself, Robert W. Seiden, personally represented LKMForward as evidenced by his signing of a letter on behalf of the group. (See id. at 4-5.) Shi contends that this conflict of interest warrants rejecting all of the Receiver's accounting, regardless of when any expenses were incurred.

Shi's arguments are tenuous and strained. Magistrate Judge Figueredo addressed these arguments in the November Report and the Court agrees with her analysis. (See November Report at 19-20.) Guo's work on behalf of Link Motion is fully consistent with his role as a shareholder. His participation in LKMForward reveals only that his interests

12

as an active shareholder are aligned with those of other shareholders of Link Motion. There is otherwise no evidence that Guo's work on behalf of the Receiver resulted in his personal enrichment at the expense of the Company. Regarding Seiden's representation of LKMForward, Shi puts forward a dubious chain of inferences. According to Shi, because Seiden had represented an activist shareholder group of which Guo and Baliga were members, Guo's payment of legal fees to SLG was made in consideration for being appointed as the Receiver's agent. (See Shi's Objs. to August Report at 6.) Essentially, Shi alleges a *quid pro quo* relationship between Guo and the Receiver in the form of legal fees for control over Link Motion. There is no evidence in the record to suggest such a transaction.

Moreover, the Court agrees with Magistrate Judge Figuredo that the alleged conflict of interest related to the China AI investigation is of little concern. As the August Report noted, the Receiver is seeking reimbursement of expenses in connection with his investigation into the China AI share purchase, not for expenses incurred in SLG's opposition to China AI's motion to intervene. (See August Report at 13 n.8) Just because an SLG attorney for Baliga referenced the Receiver's investigation into China AI in opposing China AI's motion to intervene does not demonstrate

that the Receiver is seeking to recoup expenses related to
the motion's opposition. That letter in opposition discussed
the Receiver's investigation only as an additional argument
against China AI's motion. (See Dkt. No. 115.) The letter
does not otherwise suggest that the Receiver's fees are linked
to work on the opposition, which was handled by a different
SLG attorney. (See Dkt. No. 142.) Shi's objection to the
August Report's failure to consider the Receiver's conflict
of interest in the context of his accounting and expenses is
overruled.

  ii.  The Receiver's Purported Control of Link Motion's
       Assets in China

    Shi objects to the August Report's conclusion that the
Receiver did not account for valuable Link Motion assets in
China - NQ Mobile, Beijing Technology, and Link Motion
Technology - because Guo ultimately did not obtain control
over those assets. (See Shi's Objs. to August Report at 8-
9.) In support, Shi cites a declaration of the Receiver
stating that he recovered funds from certain Wholly Owned
Foreign Entities ("WFOE") Standard Chartered Bank ("SCB")
accounts. (See Dkt. No. 376 at 4.) Shi then references account
records submitted by Guo, allegedly from one of Link Motion's
Chinese entities, claiming these records show that both the
Receiver and Guo had access to them. (See Shi's Objs. to

14

August Report at 8.) In short, Shi argues that because the Receiver obtained control over these bank accounts, he gained control over the assets and should have accounted for them.

The Receiver's declaration does not specify which WFOE bank account the funds were recovered from, and Shi has not shown why the Receiver's success with some WFOE accounts implies he gained control of the actual assets. The Receiver's accompanying brief clarifies that while he recovered $371,568.29 from Link Motion's WFOE's, he was unable to obtain possession of the corporate seal or corporate documents for Beijing Technology, NQ Mobile or Link Motion Technology because of Shi's obstruction efforts. (See Dkt. Nos. 443 at 1-3, 443-7.) This outcome is wholly consistent with the Receiver's status updates to the Court regarding its efforts to secure the bank accounts of certain WFOEs (see Dkt. No. 220 at 2), and the Court sees no reason to set aside the presumption that the Receiver acted in good faith in recovering those assets. (See Receivership Order § II(12).)

Shi's reference to the NQ Mobile records does not establish that the Receiver's accounting is otherwise hiding recovered assets. The records Shi references are that of NQ Mobile's bank account, which Guo was able to retain control of in July 2020, as a result of protracted litigation with Shi over the changing of the corporate seals. (See Dkt. No.

15

443 at 1-2.)  As the August Report recognized, "Guo and the Receiver ultimately obtained control over NQ Mobile in July 2020, but only after Shi had looted the company of nearly $89 million." (See August Report at 21 n.19.) Moreover, the Court independently reviewed the record and also finds that Guo was also unable to account for NQ Mobile because, although he had access to its bank account, his team never received any documents from NQ Mobile's executives or employees regarding its assets or liabilities. (See Dkt. No. 443-7 ¶ 39.)

Shi also argues that Guo falsely characterized certain debits in the account records as suspicious, but this argument is irrelevant to whether the Receiver accounted for the WFOEs. Shi's objection to the August Report's conclusion that the Receiver should have accounted for Link Motion's assets in China is overruled.

Shi further objects to the August Report's partial reliance on Guo's testimony that Shi had frustrated the Receiver's efforts to regain control of the WFOEs. (See Shi's Objs. to August Report at 11.) Shi argues there is no evidence in the record to support claims that he hindered the Receiver's work in recovering the assets. (See id.) He suggests that Magistrate Judge Figueredo "relied on self-serving contentions made by the Receiver and Guo in submissions to the Court" and that the Receiver attributed

the actions of defendant Xu and third-party China AI to Shi without evidence. (Id. at 11.)

Contrary to Shi's assertion, both Guo and the Receiver linked Xu's actions to Shi with supporting evidence. In his status updates to the Court, the Receiver reported that Shi and his associates hindered efforts to gain control of Link Motion's China subsidiaries. (See Dkt. No. 443 at 2.) The Receiver detailed several lawsuits initiated by Xu to prevent Guo from obtaining the corporate seals of entities controlled by Shi. (See id. at 1-3.) In one case, which Guo initiated, a witness testified that the seals were handed to Lei Li, an employee of a subsidiary and Shi's assistant. (See Id. at 2; Dkt. No. 443-13 at 5.) Additionally, Shi submitted fraudulent shareholder resolutions with the Beijing Municipal Market Supervision Administration that claimed he had authority to change registration from Guo to himself, which directly contravenes this Court's Receivership order.[3] (See Dkt. No. 443-9.)

Through the documentation in the record, the Receiver put forth reliable evidence showing that Shi took part in obstructing his efforts to gain control of the subsidiaries

---

[3] The order appointing a temporary receiver provides that the Receiver "shall take any act necessary to preserve and safeguard the Company's assets, including monitoring and, if necessary to prevent dissipation, taking sole control over the Company's assets, subsidiaries, and bank accounts." (Receivership Order § II.2.a.)

in question. See Gasser v. Infanti Int'l, Inc., 03 Civ. 6413, 2011 WL 2183549, at *24 (E.D.N.Y. June 3, 2011). Upon a de novo review of the evidence, the Court overrules Shi's objection to the August Report's crediting of Guo's testimony regarding Shi's obstruction efforts and, upon a de novo review, and substantially for the reasons stated in the August Report, adopts its findings and reasoning.

  iii. <u>Shi's Remaining Objections to Pre-October 5, 2020, Expenses</u>

  Shi raises the following objections to the August Report's recommendation that the Receiver's expenses between February 1, 2019, and to October 5, 2020 be approved: (1) objections to time entries submitted because they demonstrate that the expenses were not for the benefit of Link Motion and would not have occurred but for the appointment of the Receiver; (2) objections to the August Report's conclusion that the Receiver's expenditure on the defense of Link Motion in the Hong Kong arbitration was reasonable and necessary; and (3) objections related to the August Report's finding that the Receiver took control of certain Link Motion applications.[4]

---

[4] Shi also objected to the redactions made in the time entries but later received access to the unredacted time entries, thereby mooting this objection. (See Shi's Supplemental Objs. to August Report at 6.)

Shi further objects to Magistrate Judge Figueredo's approval of expenses made between September 22, 2019, and October 5, 2020, based on this Court's approval of similar expenses in the prior period. (Shi's Objs. to

a. Time Entry Objections

Shi makes a variety of objections to the time entries submitted by the Receiver, arguing that the narratives demonstrate that the work was not performed for the benefit of Link Motion. First, Shi objects to several time entries that he claims do not relate to work performed by the Receiver for Baliga, not Link Motion. (See Shi's Supplemental Objs. to August Report at 13.) Shi highlights time entry narratives such as "discuss second amended complaint with A. Sklar; fact research for second amended complaint." (Id.) Shi was unable to raise these arguments before Magistrate Judge Figueredo because he did not have access to the unredacted time entries before publication of the August Report. As such, this issue raises a matter of first impression before the Court. The Court agrees with Shi that these time entries clearly relate to the representation of Baliga by attorneys at SLG and should be rejected.

The Receiver argues that the time entries pertain to his investigation of the factual allegations set forth in the Second Amended Complaint, but this argument is unconvincing

---

Aug. 2023 R&R at 8.) Per Shi, those prior expense approvals cited by Magistrate Judge Figueredo were issued *ex parte* and therefore should not be considered law of the case for purposes of approving similar expenses. Not so. As explained in the August Report, Magistrate Judge Figueredo independently examined the time entries and expenses for reasonableness and approved them on that alternative basis. (See August Report at 18.)

upon review of the entries. For example, one billing entry states the Receiver "[c]ompiled actions and occurrences since the 1st amended complaint in SDNY case in order to *add in new factual allegations in 2nd amended complaint.*" (Dkt. No. 378-4 at 119) (emphasis added). This narrative clearly relates to the drafting of the Second Amended Complaint, not investigating it. Moreover, the entries are dated several days before the Second Amended Complaint was filed. The Receiver acknowledges that these entries appear "on their face to relate to Plaintiff's Second Amended Complaint" and agrees to withdraw them given that the attorneys who submitted those entries have since left the Receiver's firm. (See Dkt. No. 503 at 12 n.4.) The Court will proceed accordingly and admonishes the Receiver for including these entries in court filings in this action and misrepresenting their nature. As such, Shi's objection to the specific time-entries on Appendix A-3 of his supplemental objections, (Dkt. No. 494 at 25), are hereby sustained and the Court holds that $9,440 of these fees shall be borne by the Receiver.

Shi further argues that the Receiver billed an unreasonable amount of time for work performed, referencing a letter to Magistrate Judge Freeman, for which the Receiver billed 44.5 hours. (See Shi's Supplemental Objs. to August Report at 14.) The time spent on the task Shi objects to are

20

reasonable. The letter Shi references was submitted in response to Magistrate Judge Freeman's order, requiring the Receiver to explain why he applied to the Grand Court of the Cayman Islands for an order recognizing him as a temporary receiver (the "Cayman Islands Proceeding") and to provide the Court with copies of the related submissions. (See Dkt. No. 163 at 54-55.) Magistrate Judge Freeman also directed the Receiver to explain the implications of the Order issued by the Grand Court, which recognized the Receiver's authority to remove directors, and to include supporting legal authority. (See id. at 55.) In turn, the Receiver submitted a six-page single-spaced letter with twenty-one exhibits which included the supporting documents for the application and the supporting legal authority. (See Dkt. No. 173.) Considering the complexity of the Cayman Islands Proceeding and the voluminous attachments the Receiver included to support his letter, the Court is persuaded that the time the Receiver spent on this task was not otherwise wasteful or unnecessary. Shi's remaining objections to the reasonableness of the submitted time entries are overruled.

b. Hong Kong Arbitration

Shi also objects to the August Report's finding that the "Receiver's expenditure on the legal defense of LKM in an arbitration proceeding in Hong Kong was a reasonable and

21

necessary use of LKM's funds." (Shi's Objs. to August Report
at 13.) Shi specifically takes issue with the August Report's
purported finding that the Receiver secured an award on behalf
of Link Motion because Link Motion was still found liable for
$137,280,000. (Id.) Shi mischaracterizes the August Report.
The arbitration was commenced by Zongzhi Hi Tech Overseas
Investment Ltd. ("Zongzhi") against Link Motion to recover an
approximately $137 million unpaid balance of a convertible
note. (See Dkt. No. 210-1 at 6.) The Receiver's counsel
asserted counterclaims against Zongzhi in the arbitration,
including a claim that Zongzhi aided and abetted Shi in
breaching his fiduciary duties to Link Motion by causing Link
Motion to sign two Pledge Agreements (the "Pledge
Agreements"). (See Dkt. No. 210 at 1.) The resulting final
award rescinded the Pledge Agreements in their entirety, as
the August Report notes, but awarded Zongzhi the unpaid
balance of the note. (See Dkt. No. 210-1 at 61.) Thus, as the
August Report aptly recognized, the Receiver did not secure
an award on behalf of Link Motion.

Further, Shi fails to articulate why the outcome of the
arbitration warrants rejecting the Receiver's expenses in
relation to participating in the Hong Kong proceeding. The
Receiver was authorized to "commence, continue, join in,
and/or control any action, suit, arbitration, or proceeding

. . . in the name of [Link Motion] or otherwise, including
. . . proceedings to prevent or avoid transactions . . . that
may dissipate or transfer ownership of the Company's assets."
(See Receivership Order § II(2)(e).) Here, the Receiver
participated in the arbitration proceeding and while he was
unsuccessful in avoiding the underlying enforcement of the
promissory note, his efforts resulted in the rescinding of
the Pledge Agreements thereby saving Link Motion
approximately $270 million. This was a reasonable and
necessary use of Link Motion's funds and consistent with the
Receivership Order. Shi's objection to the August Report's
approval of the expenses associated with the Hong Kong
arbitration are accordingly overruled.

c. Access to Link Motion Applications

Finally, Shi objects to the August Report's conclusion
that the Receiver failed to gain access to Link Motion's
application developer accounts with Apple and Google. (See
Shi's Objs. to August Report at 14.) Shi points to earlier
submissions by the Receiver, which show that the Receiver was
able to recover funds from these accounts, and accordingly
should have accounted for them (See Dkt. Nos. 100, 376 ¶¶ 13-
14.) After reviewing the record, the Court overrules this
objection. The Receiver clarified that he obtained the rights
to only certain funds that Link Motion received from revenue

previously generated by sales of the apps on those platforms, which have already been accounted for. (See Dkt. No. 443 at 7.) The Receiver could not access the actual software and software development, which are maintained at Link Motion's China subsidiaries. (See id.) Shi's objection to the Magistrate Judge's finding that the Receiver did not need to account for these applications is overruled.

In sum, Shi's objection to the August Report's approval of the time entries that clearly relate to the drafting of the Second Amended Complaint are sustained. Shi's remaining objections to the August Report's approval of pre-October 5, 2020, expenses are overruled.

iv.   Shi's Objections to Post-October 5, 2020, Expenses

The August Report approved an additional $552,331.52 in fees and expenses incurred by the Receiver after October 5, 2020, finding that the work performed relating to those fees was for the benefit of Link Motion. (See August Report at 27.) Shi raises the following objections to the August Report's recommendation that the Receiver's expenses between October 5, 2020, to November 16, 2022, be approved: (1) objections to the August Report's reliance on activities that occurred before October 5, 2020; (2) objections to the August Report's conclusion that the Receiver's cancellation of Link Motion shares issued to China AI were for the benefit of Link

24

Motion; (3) objections to the August Report's determination that the Receiver's calling of the Emergency General Meeting ("EGM") was beneficial to Link Motion; and (4) objections to various records and time entries on the basis that the expenses would not have been incurred but for the continuation of the Receiver's appointment.

First, Shi questions whether certain expenses were actually incurred after October 5, 2020. (See Shi's Objs. to August Report at 15.) Shi contends that the work supporting such fees, including the retention of Cayman Islands counsel and attempting to gain control of Link Motion's applications, took place before October 5, 2020, and cannot serve as a valid basis to recommend approval of post-October 5, 2020, expense claims. Shi appears to be correct that certain expenses related to Link Motion's retention of a registered agent for the Cayman Islands occurred prior to October 5, 2020. (See Dkt. No. 376-8 at 2.) However, that the registered agent was retained prior to October 5, 2020, does not justify rejecting the expenses at issue. Under this Court's prior order, expenses incurred up to October 5, 2020, are to be borne by Link Motion as long as those costs are "reasonable" and "necessary". (See Dkt. No. 331 at 19.) Shi does not argue that the Receiver's working with the registered agent in the Cayman Islands to ensure that Link Motion stayed in good

standing was otherwise unreasonable or unnecessary. Therefore, these expenses are properly borne by Link Motion regardless of when they were incurred. Shi's objection to approval of post-October 5, 2020, based on their timing is overruled.

Shi also argues that certain time entries reflecting post-October 5, 2020, expenses "would not have arisen but for the continuation of the Receiver's appointment. (See Shi's Supplemental Objs. to August Report at 8.) First, Shi argues that time entries related to the calling of an EGM evince an attempt by the Receiver to effect a liquidation of Link Motion. (See id. at 9.) Shi reads too much into these time entries, which merely show that the Receiver's counsel had a call with Cayman Islands counsel to discuss a possible liquidation proceeding in the Cayman Islands in response to a jurisdictional issue Shi raised earlier in this litigation. (See Dkt. No. 503 at 6.) Moreover, when Link Motion provided notice of the EGM to specify its purpose, it made no mention of a liquidation proceeding. (See Dkt. No. 186 at 1-2.) Shi also argues that certain time entries reflect time devoted to assisting Baliga with his legal claims. The time entries Shi cites merely show interactions and conference calls with the Receiver's counsel, Baliga's counsel, and Shi's counsel. (See Dkt. No. 378-4 at 124.) There is nothing in these entries to

suggest that the expenses in question would not have been incurred had there been no Receivership. Moreover, Shi's suggestion of "gross overbilling" is unfounded and the time entries his objections relies upon are reasonable. The 4-hour entry Shi objects to pertained not just to a telephone call but also involved reviewing and sending demand letters and additional legal work. (See Shi's Supplemental Objs. to August Report at 10.)

Next, Shi objects to the August Report's finding that the Receiver's pursuit of claims against China AI, which resulted in the cancellation of China AI's shares in Link Motion, benefited Link Motion. (See Shi's Objs. to August Report at 16.) For context, the Receiver requested the Court's permission to cancel Class B common shares issued to China AI, arguing that China AI had defaulted on its agreement to pay $10 million in exchange for the shares. (See Dkt. No. 194 at 3.) Shi argues that the Receiver's $10 million claim against China AI was legally flawed, as China AI never owed that amount because certain conditions of the purchase agreement were not met. (See Shi's Objs. to August Report at 16-17.)

Regardless of whether there was merit to the underlying breach claim, the Receiver also found that the cancellation of China AI's Link Motion shares was warranted because there

was evidence that Shi was involved in the agreement between Link Motion and China AI, making the agreement a conflicted transaction with no business purpose. (See Dkt. Nos. 142-1, 220.) The Receiver submitted evidence that when Link Motion's counsel at the time, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), became aware of the transaction, Skadden objected to it and expressed concern that it lacked a legitimate business purpose. (See Dkt No. 142-1 at 4.) In light of this Court's directive to the Receiver to prevent waste and theft of assets to the detriment of investors (See Receivership Order at § II(2)(a)), the Receiver's underlying investigation as to the legitimacy of the transaction between Link Motion and China AI was well within his authority. Therefore, it was reasonable and beneficial for Link Motion to cancel the shares issued to China AI. Shi's objection is accordingly overruled.

In objecting to the August Report's conclusion that the Receiver's attempt to call an EGM was beneficial to Link Motion, Shi raises arguments that were not brought before Magistrate Judge Figueredo, which is improper in objecting to a magistrate judge's report and recommendation. Before Magistrate Judge Figueredo, Shi argued that calling the EGM was unnecessary for the Receiver to obtain control over certain Link Motion assets. Shi did not otherwise raise

arguments regarding the Receiver's liability before Magistrate Judge Figueredo. In turn, Magistrate Judge Figueredo concluded that the Receiver's attempted convening of the EGM was beneficial to Link Motion. In Shi's objections before this Court, however, Shi advances a new argument that the Receiver tried to call the EGM for the purpose of appointing Guo to the board and absolving the Receiver of any liability and thus, according to Shi, the August Report's conclusion that the EGM was beneficial to Link Motion was clear error. (See Shi's Objs. to August Report at 18.) The Court will not "consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." US v. Gladden, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019).

Accordingly, Shi's objections to the August Report's recommendation that the Receiver's post-October 5, 2020, expenses be approved are overruled.

B. THE NOVEMBER 2024 REPORT AND RECOMMENDATION

In the November Report, Magistrate Judge Figueredo recommended that: 1) Guo's expenses incurred as the Receiver's agent in China be approved in the amount of $1,042,985; 2) the Receiver's request to hold Shi personally liable for those expenses be denied, and 3) Baliga's objection to Felicello's continued representation of Link Motion and

Shi for purposes of moving to dismiss the TAC be denied. (See November Report at 1-2.) Both Shi and the Receiver filed limited objections to the November Report. The Court addresses each in turn.

### i.    Shi's Objections to the November Report[5]

Shi objects to the November Report's recommendation to approve $1,042,985 of Guo's expenses, arguing that the VAT invoices[6] Guo submitted do not demonstrate that Guo actually incurred the expenses. (See Shi's Objs. to November Report at 15-16.) Shi contends that those VAT invoices are insufficient to verify the accuracy of the expenses and were likely paid from a Link Motion account, not Guo's personal account. (See id. at 10.) While the November Report acknowledged that the VAT invoices did not include information about who paid them, the November Report concluded that Guo paid the invoices, based on Guo's testimony that Link Motion's subsidiaries in China lacked the funds to cover the expenses, and that no

---

[5] Insofar as Shi's objections relate to the issuance of the 2019 Court-approved Convertible Note Agreement that the Receiver negotiated between Link Motion and Guo, the Court will not address those arguments in this decision. The Court reserved its decision on Shi's motion to vacate the Convertible Note until the Receiver's accounting of expenses, including Guo's, is resolved. (See Dkt. No. 440 at 3.) A separate decision on the Convertible Note Agreement will be issued contemporaneously with this one.

[6] Guo submitted VAT invoices related to his 2019 expenditures on behalf of the Receivership in China. (See Dkt. No. 429 ¶ 9.) VAT invoices are government-issued receipts in China which enables the government to track VAT payments and compliance with certain regulations. (See id. ¶ 9 n.4.)

other party would have done so. (See November Report at 12.) Thus, the factual context surrounding Link Motion's financial condition, coupled with Guo's testimony, supported a finding that Guo paid for such expenses. (See id.) Shi counters that the subsidiaries in China were generating substantial revenue at the time Guo took control in 2019. (See Shi's Objs. to November Report at 16.) In support of this argument, Shi cites only a declaration he submitted in 2023, where he attests that prior to the commencement of this action, one of the subsidiaries generated annual revenues of approximately $10,000,000. (See Dkt. No. 436 ¶ 35.) The Court agrees with the November Report that Guo's testimony sufficiently supports the conclusion that he paid the expenses. Shi's argument otherwise is speculative and lacks evidentiary support in the record.

Shi's remaining objections relate to: the Receiver's and Guo's alleged conflict of interest; the August Report, which the Court already addressed above; and the Convertible Note Agreement, which the Court will address in a separate decision and order. Accordingly, Shi's limited objection to the November Report's recommendation that Guo's expenses be approved is overruled.

    ii.  The Receiver's Objections to the November Report

The Receiver's objections are limited to the November Report's recommendation that the Court (1) not approve payments Guo made to certain vendors and law firms, and (2) not approve Guo's $15,000 monthly compensation. The Court addresses each objection in turn.

First, the November Report concluded that Guo failed to explain the necessity of certain payments he made to KLC Corporate Advisory and Recovery Limited ("KLC"), W.K.TO & Co Solicitors & Notaries ("W.K."), Epiq Hong Kong Limited ("Epiq"), and KSG Attorneys Limited ("KSG"). The November Report accordingly rejected approval of those expenses. The Receiver objects to that recommendation, arguing that Guo's retention of each of those vendors and firms was previously approved by this Court, and that the services in question were performed for the benefit of Link Motion. (See Receiver's Objs. to November Report at 5-7.) Shi opposes the Receiver's objections, arguing that Guo failed to provide sufficient documentation supporting the disputed expenses, and that Guo was unauthorized to incur such expenses because they exceeded his duties to act only on behalf of Link Motion within mainland China. (See Dkt. No. 539 at 13.)

Shi's argument that Guo was unauthorized to incur various expenses because they were not performed within mainland China are unpersuasive. Shi's argument is based on

language in an amended Note Agreement, which clarified that "there is no requirement for loan proceeds" [i.e. money that Guo loaned to the company] to be used outside of China and no requirements for "Guo to cover any of the costs incurred in Hong Kong, including the ongoing Hong Kong arbitration proceedings." (See Dkt. No. 419-2 at 3.) But Guo not being required to advance costs for Hong Kong-related activities does not necessarily mean he was prohibited from advancing such costs. As explained further below, Guo and the Receiver have adequately established the necessity of the vendor services at issue, which is the standard for approving such expenses. See Key Bank of New York v. Anton, 659 N.Y.S.2d 895, 897 (App. Div. 2d Dep't 1997). The Court is not persuaded that the Receiver's statements require the Court to reject those expenses to the vendor. Instead, the expenses are properly evaluated for their reasonableness and necessity. Northshore Asset Mgmt., No. 05 Civ. 2192, 2009 WL 3122608, at *3.

Moreover, the Court overrules the November Report's disapproval of the vendor expenses. The Court is satisfied that the record provides sufficient context to justify approval of those expenses. As the Receiver points out, the Court previously approved a Hong Kong co-receiver to assist the Receiver in performing his Hong Kong-related duties. (See

Dkt. No. 43.) In asking the Court for approval, the Receiver reported that he engaged KLC, a Hong Kong-based accounting and corporate advisory firm, to assist the Receiver in its Hong Kong-related work. (See Dkt. No. 43 at 2.) The Court is satisfied with this explanation for the Receiver's KLC-related expenses. In addition, Epiq was the technical support vendor for Link Motion's Hong Kong arbitration and is identified as supporting the video conferencing technology for the remote arbitration proceeding. (See Dkt. No. 210-1 at 16.) It is clear from the record that the payments made to Epiq were related to the underlying arbitration proceedings. Similarly, the record shows that the payments made to W.K. were for the preparation of Chinese translation of two court orders. (See Dkt. No. 488-1 at 342, 344.) Finally, the Receiver previously notified the Court that he retained KSG as Cayman Islands counsel and the Court approved the request. (See Dkt. No 98.) KSG assisted the Receiver with a variety of tasks, including filing applications with the Cayman Islands Grand Court, as well as general consultation regarding Cayman corporate law. (See Dkt. No. 220.) The Court is persuaded that those expenses were necessary and for the benefit of Link Motion. Accordingly, the Court sustains the Receiver's objections to the November Report's recommendation to deny approval of $45,597 in payments the Receiver made to certain

firms and vendors. Lastly, the Receiver objects to the November Report's recommendation to deny Guo's requested salary of $15,000 per month, totaling $345,000. Per this Court's prior order, the Receiver "and his professionals shall be paid on an hourly basis at a reasonable and customary rate for such work to be approved by the Court." (Receivership Order at § II.6.) As the November Report recognized, Guo was not paid an hourly rate and failed to submit time records reflecting the hours he worked as the Receiver's agent. Without such records, the Court cannot evaluate the reasonableness of Guo's requested salary. However, the Court is mindful of the time and effort Guo dedicated to recovering Link Motion's assets in China and supervising the defense of Link Motion in numerous proceedings. Accordingly, the Court will not completely deny Guo compensation. However, the Court will exercise its discretion to reduce Guo's salary to an appropriate amount.

The amount of compensation to be awarded to a receiver or his agent "is squarely within the court's discretion." <u>SEC v. Platinum Mgmt. (NY) LLC</u>, No. 16 Civ. 6848, 2018 WL 4623012, at *4 (E.D.N.Y. Sept. 26, 2018). Courts evaluate the following considerations when determining the reasonableness of receiver compensation: "(1) the complexity of problems faced, (2) the benefits to the receivership estate, (3) the quality

of the work performed, and (4) the time records presented." Id. Since Guo has not submitted any time records, the Court will employ a percentage cut as a practical means of reducing Guo's salary while also ensuring he is adequately compensated for his efforts that have benefited Link Motion. The deficiency in Guo's compensation submission is similar to those encountered in actions to recover attorney's fees where courts have reduced fee awards due to inadequate documentation. See SEC v. Goren, 272 F. Supp. 2d 202, 213 (S.D.N.Y. 2003) (courts have endorsed percentage cuts as a practical way of "trimming fat from a fee application.") and (collecting cases). In some cases, courts have applied percentage reductions as high as forty percent when time records were vague, incomplete, or entirely absent. See, e.g., Safranek v. Wormuth, 23 Civ. 5985, 2024 WL 5186599, at *7 (S.D.N.Y. Dec. 19, 2024) (reducing attorney's fees by forty-five percent due to vague time entries and instances of block billing); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing attorney's fees by forty percent in light of duplicate time entries, insufficient descriptions of work done, and necessity of such work).

Applying the same rationale here, the Court exercises its discretion to reduce Guo's requested salary by forty

percent to account for the insufficient recordkeeping. The Court accordingly awards Guo an aggregate salary of $207,000.

Accordingly, the Court overrules the November Report's recommendation to deny Guo any compensation due to lack of documentation.

### iii. Piercing the Corporate Veil, Sanctions, and Felicello's Representation of Link Motion

The November Report further recommended (1) denying the Receiver's request to apportion certain expenses and costs to Shi, either by piercing the corporate veil or by simply allocating the expenses, (2) denying the Receiver's request for monetary sanctions, and (3) permitting Felicello to represent Shi and Link Motion for the limited purpose of moving to partially dismiss the TAC. (See November Report at 20-38.) As neither party objects and the Court finds no clear error, these recommendations are adopted in full substantially for the reasons stated in the November Report.

**ORDER**

Accordingly, it is hereby

**ORDERED** that upon de novo review and substantially for the reasons set forth in the August 11, 2023, Report and Recommendation submitted by Magistrate Judge Valerie Figueredo ("August Report") (Dkt. No. 466), the Court adopts in part the August Report as the Court's decision on the

approval of the Receiver's accounting with respect to the August Report's recommendation (1) to approve accounting of the expenses incurred by the Receiver between February 1, 2019 and October 5, 2020, in the amount of $2,669,901.95 which is to be borne by Link Motion, Inc. ("Link Motion"), (2) to approve accounting of the expenses incurred by the Receiver between October 5, 2020, and November 16, 2022, in the amount of $552,331.52 to be borne by Link Motion; and it is further

ORDERED that the objections from Vincent Wenyong Shi ("Shi") are **DENIED** as to those recommendations the Court adopts above; and it is further

ORDERED that Shi's objections as to the August Report's approval of $9,440 of the Receiver's expenses are **SUSTAINED**; and it is further

ORDERED that $9,440 of the Receiver's expenses incurred between February 1, 2019, and October 5, 2020, are disapproved, and to be borne by the Receiver; and it is further

ORDERED that upon de novo review and substantially for the reasons set forth in the November 25, 2024, Report and Recommendation submitted by Magistrate Judge Valerie Figueredo ("November Report") (Dkt. No. 529) the Court adopts in part the November Report as the Court's decision on (1) the approval of Lilin "Francis" Guo's ("Guo") expenses in the

amount of $1,042,985, (2) Felicello Law, P.C.'s representation of Link Motion for purposes of moving to dismiss the Third Amended Complaint (Dkt. No. 470) and (3) the Receiver's request to hold Shi personally liable for the Receiver's expenses; and it is further

**ORDERED** that the objections from Shi are **DENIED** as to those recommendations the Court adopts above; and it is further

**ORDERED** that the Court rejects the recommendations set forth in the November Report with respect to Guo's incurred expenses related to payment to certain legal vendors; and it is further

**ORDERED** that Guo's incurred expenses related to the retention of legal vendors be approved in the amount of $45,597; and it is further

**ORDERED** that the Court rejects the recommendations set forth in the November Report with respect to Guo's compensation; and it is further

**ORDERED** that Guo be granted a total salary of $207,000 for his work on behalf of the Receiver; and it is further

**ORDERED** that the Receiver is no longer bound by and is hereby discharged and released from his duties, obligations, and responsibilities as receiver as set forth in the Receivership Order (Dkt. No. 26) and any other orders of the

Court related to his service or appointment as receiver; and it is further

**ORDERED** that the Receiver and his attorneys, accountants, consultants and other professionals, and all persons acting by, through, under or in concert with any of them, shall not be liable to anyone for his, her, or their own good faith compliance with: (i) any order, rule, law, judgment or decree; (ii) the duties and responsibilities as Receiver or as professional to the Receiver; and/or (iii) any actions taken or omitted by them, except on a finding by this Court that he, she or they acted or failed to act as a result of bad faith or gross negligence or in reckless disregard of his, her, its or their duties; and it is further

**ORDERED** that all creditors, investors, and other parties in interest shall be permanently and forever barred, restrained and enjoined from taking any action to impose or seeking to impose liability on the Receiver and his professionals, without first obtaining relief to do so from the Court and only limited to the extent provided by the exception in the preceding paragraph; and it is further

**ORDERED** that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**SO ORDERED.**

Dated:     19 May 2025
              New York, New York

                                     _____
                                      Victor Marrero
                                        U.S.D.J.