USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _5/19/2025_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAYNE BALIGA,

                            Plaintiff,

            - against -

LINK MOTION, INC. (F/K/A NQ MOBILE
INC.), VINCENT WENYONG SHI, ROLAND WU,
and ZEMIN XU

                            Defendants.

18 Civ. 11642 (VM)

DECISION AND ORDER

**VICTOR MARRERO, United States District Judge.**

Pending before the Court is the motion by defendant Vincent Wenyong Shi ("Shi") pursuant to Federal Rule of Civil Procedure 60 ("Rule 60") to vacate the Court's prior order approving a Convertible Note Agreement (the "Note Agreement") executed by receiver Robert W. Seiden ("Seiden" or the "Receiver") and his agent, Lilin "Francis" Guo ("Guo"), to sanction the Receiver. Alternatively, Shi seeks to modify the terms of the Convertible Note to reduce the number of Link Motion Inc. ("Link Motion" or the "Company") shares Guo received. (See Dkt. Nos. 421; 533 at 19.) For the reasons stated below, Shi's motion is **DENIED**.

## I.   BACKGROUND

The Court presumes familiarity with the underlying facts of this case from prior orders. (See Dkt. Nos. 331, 466, 508.)

The Court provides only a brief recitation of the facts germane to the instant motion.

On February 1, 2019, the Court appointed Seiden as a temporary receiver for Link Motion. (See Dkt. No. 26 [hereinafter "Receivership Order"].) The Receivership Order authorized the Receiver to protect the status quo of the Company along with preventing waste, dissipation, and theft of assets. (See id. § II(2).) In April 2019, the Receiver appointed Guo as the Receiver's agent in China. (See Dkt. No. 43 at ¶ 10.) At the time of his appointment, Guo held over six million American Depository Shares ("ADSs" or "ADS")[1] of Link Motion, for which his total investment was approximately $20 million between 2017 and 2018. (See Dkt. No. 477-1 at ¶ 2.)

In June 2019, the Receiver submitted an *ex parte* letter to the Court requesting approval of the Note Agreement between Guo and the Receiver. (See Dkt. No. 419-1 at 5[2].) Under the terms of the Note Agreement, Guo was to provide Link Motion with a loan of Renminibi ("RMB") equivalent of $1,500,000 to

---

[1] ADSs "represent an interest in the shares of a non-U.S. company that have been deposited with a U.S. bank." SEC, Investor Bulletin: American Depository Receipts (2012), https://www.sec.gov/investor/alerts/adr-bulletin.pdf.

[2] The page numbers referenced herein for citations to the electronic docket ("Dkt.") are to the ECF-generated pagination in those documents, except for citations to Dkt. Nos. 421-5, 437, 473, which reference the original pagination in those documents.

help fund Link Motion's day-to-day operations within China
and Hong Kong. (See Dkt. No. 419-1 at 2.) The repayment of
the loan under the Note Agreement was contingent on the
Receiver successfully recovering and securing liquid funds of
Link Motion. (See id. at 5.) Under the terms of the Note
Agreement, Guo could choose to convert his loan into Class B
shares of Link Motion at $0.10 per ADS equivalent upon the
Note Agreement's maturity date. (See id.)

After the Court's approval of the Note Agreement, Guo,
acting as the Receiver's agent, sought to establish control
of, manage, and pursue recovery efforts on behalf of Link
Motion's subsidiaries in China. (See Dkt. No. 477-1 at ¶¶ 10-
18.) Guo incurred numerous expenses and hired accounting,
legal, and translational professionals in China to help
achieve the Receiver's goal of monitoring and safeguarding
Link motion's assets.[3] (See Dkt. No. 477-1 at ¶¶ 10-18.)

On August 25, 2022, the Court found that there was no
longer a basis for the receivership and ordered that the
Receiver be discharged following a full accounting of the
activities performed during the period of the Receiver's
appointment. (See Dkt. No. 331 at 23.) The Court subsequently

---

[3] A detailed account of Guo's expenses can be found in Magistrate Judge
Figueredo's Report and Recommendation approving those expenses. Baliga v.
Link Motion Inc., 18 Civ. 11642, 2024 WL 5497632 at *1-3 (S.D.N.Y. Nov.
25, 2024).

ordered the Receiver to submit an accounting of the receivership with supporting documentation, (see Dkt. No. 359 at 1), and referred the accounting proceedings for a Report and Recommendation by Magistrate Judge Valerie Figueredo. (See Dkt. No. 362.) During the accounting proceedings, Shi objected to the compensation paid by the Receiver to Guo. (See Dkt. No. 394 ¶ 80.) Specifically, Shi objected to the Note Agreement, arguing that Guo's exercise of his right to convert his repayment into shares of Link Motion, "massively dilute[d] the voting rights and equity interests of existing shareholders of" Link Motion. (See id. ¶ 82.) Shi then moved to unseal the Note Agreement and Magistrate Judge Figueredo directed the Receiver to file the Note Agreement on the public docket. (See Dkt. No. 410.) On May 24, 2023, the Receiver publicly filed the Note Agreement and the previously sealed letter requesting the Court's approval of the Note Agreement (the "Application"). (See Dkt. No. 419-1.)

After the Receiver publicly filed the Note Agreement and the Application, Shi immediately filed a proposed order to show cause with emergency relief under Rule 60(b) seeking a Court order enjoining the Receiver and Guo from convening a meeting of Link Motion shareholders pending a final determination with respect to the Receiver's accounting. (See Dkt. No. 440 at 1; Dkt. No. 42-1 ¶ 2.) Shi argues that the

Court's prior approval of the Note Agreement and Application must be vacated under Rule 60(b) because the Receiver allegedly made false statements in the Application and the Note Agreement was allegedly criminally usurious under New York law. (See Dkt. No. 421-5 at 2-4.) The Court temporarily enjoined the Receiver and Guo from proceeding with any shareholder meeting and extended the injunction until the Receiver's accounting of expenses, including Guo's, was resolved. (See Dkt. No. 440.)

During the accounting and expense proceedings before Magistrate Judge Figueredo, Shi raised the issue of the Note Agreement and repeated the arguments he made in the proposed order to show cause proceedings. (See Dkt. No. 473 at 11-16.) By November 2024, Magistrate Judge Figueredo had issued two Reports and Recommendations approving the Receiver's accounting and most of Guo's expenses.[4] (See "August Report, Dkt. No. 466; "November Report," Dkt. No. 538 (together, the "Reports and Recommendations").) In approving Guo's expenses, Magistrate Judge Figueredo clarified that the issue of the Note Agreement was not within the scope of this Court's referral order and declined to rule on Shi's pending motion

---

[4] Contemporaneously with this Decision and Order, the Court here issues a Decision and Order adopting in part and denying in part Magistrate Judge Figueredo's Reports and Recommendations on the Receiver's accounting and Guo's expenses.

to vacate the Note Agreement. (<u>See</u> November Report at 35.)
In his objections to the Reports and Recommendations, Shi
objected to Magistrate Judge Figueredo's failure to rule on
the Note Agreement and submitted an additional argument
asserting that if the Court declined to vacate the Note
Agreement, it should alternatively reduce the number of
shares issued to Guo as a result of the conversion. (<u>See</u> Dkt.
No. 533 at 25.)

On April 8, 2025, the Court issued an order informing
the parties that it was then prepared to adjudicate Shi's
Rule 60(b) motion based on the existing briefing but would
allow one final submission from each party. (<u>See</u> Dkt. No.
546.) On April 14, 2025, the Receiver and Shi filed separate
letters summarizing their arguments regarding the Note
Agreement. (<u>See</u> Dkt. Nos. 547, 548.) The issue is now fully
briefed and ripe for resolution.

## II.  <u>DISCUSSION</u>

### A.  <u>APPLICABLE PROVISIONS OF RULE 60</u>

Shi's papers fail to specify under which subsection of
Rule 60(b) he is moving for the relief he requests, despite
key differences in applicable standards depending on which
subsection is relied upon. Moreover, the arguments Shi
advances appear relevant only to Rule 60(d)(3). Shi's
principal arguments are that (1) the Receiver committed a

fraud on the Court by making false statements of material facts in asking for Court approval of the Note Agreement, and (2) that under New York law the Note Agreement is criminally usurious and *void ab initio*. (See Dkt. Nos. 421-5 at 2-4; 548 at 1-2.) Accordingly, the Court will discern the proper subsection based on the arguments Shi puts forward. See Long v. Carberry, 151 F.R.D. 240, 241 (S.D.N.Y. 1993).

With respect to Shi's argument that that the Receiver committed a fraud on the Court, there are two provisions of Rule 60 to remedy fraud – subsections (b)(3) and (d)(3) – and the Court construes Shi's motion as being made under Rule 60(d)(3). Rule 60(b)(3) allows a district court to relieve a party from an order upon a showing of fraud, misrepresentation, or misconduct by an opposing party. Fed. R. Civ. P. 60(b)(3). However, a party claiming fraud under Rule 60(b)(3) must base its claim solely on fraud committed against them as an adverse party. See James v. United States, 603 F. Supp. 2d 472, 486 n.3 (E.D.N.Y. 2009) (a fraud allegation premised solely on "fraud upon himself as an adverse party" should be made under Rule 60(b)(3)). Rule 60(d)(3), however, recognizes a district court's power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).

While Shi does not explicitly invoke subsection (d)(3), given his focus on a "fraud upon the court" in his moving papers, rather than a fraud upon himself as an adverse party, the Court interprets Shi's motion to be made pursuant to Rule 60(d)(3) for purposes of Shi's arguments regarding the Receiver's statements in support of the Note Agreement. See James, 603 F. Supp. 2d at 486 n.3 (construing petitioner's pleading as Rule 60(d)(3) motion given his focus on a "fraud upon the court"); see also In re Genger, No. 19-13895, 2025 WL 922179, at *43 (Bankr. S.D.N.Y. Mar. 25, 2025) ("It is . . . well settled that allegations of fraud on the court do not constitute grounds for relief under Rule 60(b)(3).")

With respect to Shi's argument that the Note Agreement is void due to its purported usurious terms, the Court construes Shi's motion as being made under the catch all provision of Rule 60(b)(6), which permits relief only if Rule 60 subsections (b)(1) through (5) do not apply, and if "extraordinary circumstances are present or the failure to grant relief would work an extreme hardship on the movant." ISC Holding AG v. Nobel Biocare Fin. AG, 688 F.3d 98, 109 (2d Cir. 2012). None of the other provisions in Rule 60(b) apply to Shi's argument that the Note Agreement is facially usurious

in violation of New York law.[5] <u>See</u> <u>Shukla v. Sharma</u>, 07 Civ. 2972, 2014 WL 4437278, at *4 (E.D.N.Y. Sept. 9, 2014) (finding that no other provision of Rule 60(b) applied to defendants' argument that the court's fee award was facially usurious in violation of New York law.). Therefore, the Court construe Shi's arguments regarding usury and the share modifications under Rule 60(b)(6).

B.    <u>RULE 60(d)(3)</u>

A court may exercise its equitable power to set aside a fraudulent judgment "to maintain the integrity of the courts and safeguard the public." <u>United States v. Smiley</u>, 553 F.3d 1137, 1142 (8th Cir. 2009). If there is a fraud on the court, that court may <i>sua sponte</i> take action to set aside any

---

[5] In arguing that the Note Agreement is usurious, Shi does not allege mistake, inadvertence, or neglect, <u>see</u> Fed. R. Civ. P. 60(b)(1), fraud, <u>see</u> Fed. R. Civ. P. Rule 60(b)(3), or that the judgment has been satisfied Fed. R. Civ. P. 60(b)(5). The Court is mindful that Shi seems to imply that he is moving under Rule 60(b)(2), which applies to newly discovered evidence. (<u>See</u> Dkt. Nos. 421-5 at 2; 437 at 7.) However, Shi has not established that he was justifiably ignorant of the existence of the Note Agreement despite the exercise of due diligence, as required by Rule 60(b)(2). <u>See</u> <u>U.S. v. Potamkin Cadillac Corp.</u>, 697 F.2d 491, 493 (2d Cir. 1983) ("[I]n order to succeed on a motion pursuant to Rule 60(b)(2), the movant must present evidence that is 'truly newly discovered or . . . could not have been found by due diligence.") (internal citations omitted). The Court's order approving the Note Agreement was publicly issued on the docket in June 2019 and Shi made no effort to inquire into the terms of the Note Agreement until 2023. (<u>See</u> Dkt. No. 71.)

Further, Rule 60(b)(4) does not apply to Shi's argument that the Note Agreement is <i>void ab initio</i> because Rule 60(b)(4) applies only in narrow circumstances where a judgment is premised on a jurisdictional error or a violation of due process that deprives a party of a notice or opportunity to be heard, neither of which are applicable here. <u>United Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260, 270 (2010). A judgment is not void under Rule 60(b)(4) merely because it is substantively erroneous, as Shi alleges here. <u>See</u> <u>id.</u>

judgment entered. See Martina Theatre Corp. v. Schine Chain Theatres, Inc., 278 F.2d 798, 801 (2d Cir. 1960).

Fraud on the court encompasses fraud that attempts to "defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Kupferman v. Consolidated Research & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972). A party seeking relief under Rule 60(d)(3) "must prove, by clear and convincing evidence, that the defendant interfered with the judicial system's ability to adjudicate impartially." Mazzei v. The Money Store, 62 F.4th 88, 93-94 (2d Cir. 2023). Moreover, the movant must prove by clear and convincing evidence that the non-moving party acted in bad faith. See Marco Destin, Inc. v. Levy, 690 F. Supp. 3d 182, 191 (S.D.N.Y. 2023).

Shi fails to meet his burden of proving that the Receiver's Application for the Note Agreement constituted a fraud on the Court that warrants vacating the Court's prior order. Shi claims the following statements the Receiver made to the Court in support of the Note Agreement were fraudulent: (1) that Guo is a "large original Link Motion shareholder;" (2) that the Receiver misrepresented the conversion terms of the Note Agreement as "ADS equivalent;" and (3) that the

proceeds of the loan would be held in Link Motion's Wholly Foreign-Owned Enterprise's ("WFOE") bank account. (See Dkt. Nos. 421-5 at 2-4; 548 at 1-3.) The Court addresses each statement in turn.[6]

First, Shi argues that the Receiver's characterization of Guo as a "large original Link Motion shareholder" in the Application was "demonstrably false" and was intended to falsely imply that Guo's personal interests were aligned with the interests of other Link Motion shareholders. (See Dkt. No. 421-5 at 3-4.) Shi asserts that "original" shareholders refer only to registered Class A or B shareholder at that time. (See Dkt. No. 548 at 1.)

The Receiver's representation that Guo was a "large original Link Motion shareholder" did not interfere with the Court's ability to approve the Note Agreement impartially. The Court was aware that Guo held over 3,000,000 Link Motion ADSs, valued at more than $10 million, before February 2018.

---

[6] Shi also argues that Guo was not entitled to convert his loan into shares because repayment of the Note Agreement was contingent on successful recovery of liquid funds. (See Dkt. No. 548 at 2.) The Note Agreement states that "payment on this Note shall be contingent on successful recovery of liquid funds as a result of the ongoing efforts of the Court Appointed Temporary Receiver and his team." (See Dkt. No. 419-1 at 8.) However, the Note is unclear about whether Guo's conversion option is also subject to that condition and there is insufficient evidence in the record to suggest such definite interpretation by clear and convincing evidence. See Loreley Financing (Jersey) No. 3 Limited v. Wells Fargo Securities, LLC, 13 F.4th 247, 260 (2d Cir. 2021) ("Clear and convincing evidence is evidence that satisfies the factfinder that it is highly probable that what is claimed actually happened and it is evidence that is neither equivocal nor open to opposing presumptions.").

(See Dkt. No. 428 ¶¶ 2-3.) Given that ADSs represent a beneficial interest in a company, Guo's substantial investment in his ADSs, at the time, reflected a significant financial stake in Link Motion. See Baliga v. Link Motion Inc., 18 Civ. 11642, 2022 WL 3699339, at *4 (S.D.N.Y. Aug. 25, 2022) (adopting Magistrate Judge Freeman's recommendation that Baliga's ownership of ADSs is sufficient to grant him standing to assert federal derivative securities claims.) Thus, Shi's claim that the Receiver's description misled the Court regarding Guo's financial stake in Link Motion is unconvincing. While Shi is correct that Guo was not a registered shareholder of Link Motion and it is unclear what the Receiver meant by describing Guo as an "original" shareholder, such a characterization does not detract from the Court's understanding that Guo had a significant financial stake in Link Motion based on the value of his ADSs. Shi has failed to explain why Guo's ADSs did not give him a stake comparable to the interests of other shareholders. Shi's conclusory assertion that Guo's and other Link Motion shareholders' interests were not aligned, without any supporting evidence, falls short of the clear and convincing standard required by Rule 60(d)(3).

As such, Shi has failed to prove by clear and convincing evidence that the Receiver's statement that Guo was a "large

original Link Motion shareholder" constitutes fraud on the Court so serious as to "affect[] the integrity of the normal process of adjudication." United Sates ex rel. Brutus Trading, LLC v. Standard Chartered Bank, 18 Civ. 11117, 2024 WL 4766997, at *4 (S.D.N.Y. Nov. 13, 2024) (citing Gleason v. Jandrucko, 860 F.2d 556, 558 (2d Cir. 1988).

Second, Shi's claim that the Receiver falsely misrepresented the "terms of the conversion to the Court" is also unavailing. In the Application to the Court, the Receiver submitted the Note Agreement and its terms for the Court's review. Given that the terms submitted in the Application are identical to the terms of the Note Agreement, it is unclear how the Court could have been misled about the Note Agreement's contents and terms. (Dkt. No. 419-1 at 7-10.)

Moreover, Shi's arguments regarding the substance of the Receiver's representations in the Application fail to meet the clear and convincing standard. Shi takes issue with the Receiver's statement in the Application, which claimed that the conversion terms of the Note Agreement were "ADS equivalent." Shi argues this is inaccurate because the Note permitted that the conversion terms of the Note Agreement were "ADS equivalent" because the Note permitted converting the loan to Class B Shares of Link Motion. (See Dkt. No. 548 at 2.) Shi contends that this action constituted a fraud on

13

the Court because holders of ADS have no right to convert into Class B shares, thus making the statement fraudulent. (See id.)

The Court disagrees. The Note Agreement provided that Guo had the right to "opt to convert the amount loaned plus earned and accrued interest into Class B Common Equity at $0.10 per ADS equivalent, in which one ADS will equal to 5 Class B common shares." (Dkt. No. 419-1 at 9.) As such, the Receiver fully disclosed that the amount loaned would be convertible to Class B shares and used the ADS equivalent as a reference point where each ADS is worth five Class B shares. (Id.) Given that the Receiver's Application was accompanied by the terms of the Note Agreement, the Court was apprised of the terms of conversion.

Finally, Shi argues that the Receiver "falsely told the Court that the proceeds of the loan from Guo 'will be held in the WFOE's bank account within China controlled by the Receivership.'" (See Dkt. No. 421-5 at 3 (quoting Dkt. No. 419-1 at 10).) Shi claims that this statement was false because the Receiver's accounting submitted on November 18, 2022 (See Dkt. No. 376) reported no funds being deposited into the WFOE account in China during the course of the Receivership. Shi references the Receiver's declaration, submitted as part of the final and full accounting, which

14

details $2,204,556.09 in receipts the Receiver recovered from Link Motion and its WFOEs, which were deposited into the Receiver's law firm's trust account. (See Dkt. No. 376 at 4.) Although the Receiver's declaration did not include the loan as part of the funds recovered, the Court is not persuaded that the loan's absence from the declaration indicates fraud on the Court. Guo's loan was intended to fund Link Motion's operations in China and Hong Kong and thus would not be properly characterized as a receipt or a fund recovered - the types of recoverable expenses contemplated under the Receivership Order. Given that the Receiver's declaration contemplated recoverable fees and costs under the Receivership Order, and not an accounting of everything that was held in the WFOE's bank account, Shi has failed to prove by clear and convincing evidence that a fraud on the Court has occurred.

Therefore, for the reasons explained above, Shi has failed to meet his burden to establish fraud on the Court under Rule 60(d)(3).

C.    RULE 60(b)(6)

Rule 60(b)(6) is "properly invoked only when there are extraordinary circumstances justifying relief or when the judgment may work an extreme and undue hardship." Simone v. Prudential Ins. Co. of Am., 164 F. App'x 39, 40 (2d Cir.

2006); see also SEC v. Neto, 27 F. Supp. 3d 434, 440 (S.D.N.Y. 2014) (same). Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice." Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986) (internal quotation marks omitted). "In determining whether extraordinary circumstances exist, a court may consider a wide range of factors, including the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." Pettiford v. City of Yonkers, 14 Civ. 6271, 2018 WL 3364394, at *3 (S.D.N.Y. July 10, 2018) (internal quotation marks omitted).

Shi argues that the Court should vacate its prior order approving the Note Agreement because the Note Agreement violates New York law's prohibition on usurious loans[7]. (See Dkt. No. 421-5 at 4; Dkt. No. 548 at 3.) New York Penal Law Section 190.40 ("Section 190.40") provides that a person is guilty of criminal usury if he charges interest at a rate exceeding twenty-five percent. See N.Y. Penal Law § 190.40. In support of this argument, Shi primarily relies on Adar Bays, LLC v. GeneSYS ID, Inc., 179 N.E.3d 612 (N.Y. 2021), where the New York Court of Appeals held that a stock

---

[7] It is unclear whether New York's usury laws even apply to the Note Agreement. The Note Agreement lacks a choice of law provision, and the record is insufficient for the Court to undertake a proper a choice of law analysis. In any event, as discussed below, Shi has not met his burden of proving that the Note Agreement is usurious under New York law.

conversion option at a fixed discount in a loan agreement should be treated as interest for purposes of determining whether the loan violates New York's laws against usury. See Adar Bays, 179 N.E.3d at 621. According to Shi, Guo's ability to convert the outstanding balance of his loan into shares of Link Motion at a substantially discounted share price should be counted as interest under Adar Bays. (See Dkt. No. 421-5 at 8.) The Note Agreement sets an interest rate of 25 percent, the maximum allowed by New York law. Per Shi, because ADSs in Link Motion were trading at $0.15 per ADS prior to Link Motion being delisted, the conversion option at $0.10 per ADS, combined with the inherent value of Class B shares, constitutes a 61.58 percent conversion discount. Combined with the twenty-five percent interest rate charged on the underlying Loan, Shi argues that this figure amounts to an interest rate of 86.6 percent per annum, making the Note void ab initio under New York law. (See id. at 4.)

The parties disagree on whether Shi can invoke Section 190.40 in his objections to the Note Agreement. New York courts have held that corporations cannot assert usury in a civil action unless the party invokes usury as an affirmative defense in an action to recover repayment of a loan. In other words, a party cannot seek affirmative relief under Section 190.40. See Haymount Urgent Care PC v. GoFund Advance, LLC,

22 Civ. 1245, 2022 WL 2297768, at *254 (S.D.N.Y. June 27, 2022). The Receiver contends that Shi cannot invoke Section 190.40 because no action has been initiated to recover payment of the loan. (See Dkt. No. 430 at 15.) Shi responds that the Receiver's *ex parte* requests for Court approval of the conversions made under the Note Agreement constitute an action to recover payment of the loan. (See Dkt. No. 437 at 9.)

The issue of whether Shi can raise the affirmative defense of criminal usury in this context is a novel one and the Court is not aware of any authority speaking to this issue. However, for the reasons explained below, the Court does not need to address the complex question of whether the affirmative defense is properly raised at this posture because Shi has not met his high evidentiary burden of proving by clear and convincing evidence that the Note Agreement is usurious under New York law.

A party seeking to void a loan agreement, as Shi does here, bears the burden of proving, by clear and convincing evidence, that "a loan . . . of money, requiring interest in violation of a usury statute, was charged by the holder or payee with the intent to take interest in excess of the legal rate." Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc., 961 N.Y.S.2d 86, 89 (App. Div. 1st Dep't 2013.) "A loan

is usurious if the lender intends to take and receive a rate of interest in excess of that allowed by law even though the lender has no specific intent to violate the usury law." In re Venture Mortg. Fund, L.P., 282 F.3d 185, 188 (2d Cir. 2002) (internal citation omitted); Freitas v. Geddes Sav. & Loan Ass'n, 471 N.E.2d 437, 443 (1984) ("Usurious intent [is] an essential element of usury."). "If usury can be gleaned from the face of an instrument, intent will be implied and usury will be found as a matter of law." Blue Wolf Capital, 961 N.Y.S.2d at 89. However, if usury does not appear on the face of the note, it becomes a question of fact and courts must look not to the note's form, "but to its substance or real character." Id.

The Court finds that Shi has failed to establish by clear and convincing evidence that the Note Agreement's conversion option produced a usurious interest rate at the time the Note Agreement was executed. Valuing conversion options is a complicated question of fact, usually requiring the assistance of expert testimony. See Golock Capital, LLC, 2023 WL 3750333, at *7. As the party asserting usury, Shi must demonstrate "by reasonable methods" that the conversion option's value was usurious "at the time of the bargain." Adar Bays, 179 N.E.3d at 624, 627. Such valuation of a

contingent future payment "must be tailored to the risks involved." Id. at 624.

The only evidence Shi provides that purportedly proves that the Note Agreement is usurious is an appendix to his initial motion (the "Appendix"), which applies a convoluted formula to calculate the conversion option based on the terms of the Note Agreement. (See Dkt. No. 421-5 at 10.) As far as the Court is aware, the Appendix was not prepared by an expert, nor does Shi adequately explain its methodology in his papers. Shi's Appendix provides no methodology for valuing the conversion option in the Note Agreement beyond citing the last listed ADS price of $0.15, which fails to account for the strong likelihood that ADSs in Link Motion had significantly lost value since being delisted, which occurred before the Note Agreement was executed. Further, Shi's method does not measure the "intrinsic value" of Guo's conversion option at the time of the bargain – here, 2019, but instead "seems to assume that [Guo] would always be able to exercise the rights to achieve a maximum payout." Apollo Capital Corp. v. Astra Veda Corp., 23 Civ. 9708, 2024 WL 3729093, at *4 (S.D.N.Y. Aug. 7, 2024). Without a reliable valuation of ADSs in Link Motion at the time the Note Agreement was executed, the Court cannot assess whether the conversion option is even at a discount, let alone whether

Guo's exercise of the option was at a usurious rate. Thus, Shi has failed to carry his burden of showing by clear and convincing evidence that the conversion option in the Note Agreement is usurious. As such, the Court is not persuaded that extraordinary circumstances exist that would warrant vacatur of its prior order under Rule 60(b)(6).[8]

### D.   SHI'S REQUEST TO MODIFY SHARES ISSUED TO GUO

In his objections to the Reports and Recommendations, Shi argues that if the Court is inclined to approve Guo's expense claims, as recommended by Magistrate Judge Figueredo, the Court should cancel at least 34,124,500 of the 86,272,750 shares that Guo converted from the Note Agreement. (See Dkt. No. 533 at 25-26.) Shi claims this adjustment is necessary because Guo converted $1,725,455 in claims into 86,272,750 Class B Shares, but Magistrate Judge Figueredo recommended denying Guo's salary of $345,000 and an additional $45,597 of expenses to vendors Guo advanced in the course of his work on behalf of the Receiver, creating a discrepancy between the converted amount and approved expense claims. (See id.) Although Shi did not raise this issue in his underlying Rule

---

[8] Shi's argument that the Note Agreement constitutes fraudulent conveyance for lack of fair consideration is meritless for the same reasons. (See Dkt. No. 419-5 at 9.) As already stated, Shi does not prove by clear and convincing evidence that the value at which Guo would convert his shares was not fair and justified.

60(b) motion, he now argues that the discrepancy justifies cancelling the excess shares.

The Court is not persuaded that terminating shares issued to Guo under the Note Agreement is required at this time. The purpose of the proceedings before Magistrate Judge Figueredo was to resolve the Receiver's accounting and the propriety of Guo's expenses during the course of the receivership. The Court has overruled, in part, Magistrate Judge Figueredo's denial of a salary to Guo and also rejected her denial of Guo's vendor expenses. Thus, as it now stands, Guo has been granted a salary of $207,000 and the Court has approved the $45,597 which Magistrate Judge Figueredo recommended denying. The resulting decreased discrepancy between the number of shares converted and approved expenses is for the parties to resolve. If this matter is not resolved, and Link Motion were to not seek reimbursement of Guo's requested aggregate salary, this Court has jurisdiction with respect to all matters arising from or related to the implementation of its Order approving the Receiver's accounting and the Receiver's discharge. For now, the Court declines to reduce Guo shares converted pursuant to the Note Agreement.

### III. <u>ORDER</u>

For the preceding reasons, it is hereby

**ORDERED** that the motion (Dkt. No. 421) of Defendant Vincent Wenyong Shi to vacate, or otherwise modify, this Court's prior order (Dkt. No. 419-1) approving the Convertible Note Agreement entered into by Link Motion, Inc. and Lilin "Francis" Guo is **DENIED**.

**SO ORDERED.**

Dated:    19 May 2025
          New York, New York

                              _____
                                   Victor Marrero
                                      U.S.D.J.