UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

WAYNE BALIGA,

                            Plaintiff,

                      -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI, ROLAND WU,
and ZEMIN XU,

                          Defendants.

-----------------------------------------------------------------X

18-CV-11642 (VM) (VF)

**REPORT &
RECCOMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge**

**To: THE HONORABLE VICTOR MARRERO, United States District Judge.**

       Plaintiff Wayne Baliga ("Plaintiff") commenced this action against Link Motion Inc.

("LKM"), Vincent Wenyong Shi ("Shi"), Roland Wu, and Zemin Xu (collectively,

"Defendants") for alleged violations of federal securities laws and state common law. Plaintiff's

suit arises from his purchase and ownership of American Depository Shares ("ADS") of LKM.

On September 11, 2023, Plaintiff filed a Third Amended Complaint, asserting claims for:

violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5, 17 C.F.R.

§ 240.10b-5; violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a); common-law

fraud; and negligent misrepresentation. ECF No. 470. The Third Amended Complaint also

asserts a claim for equitable relief, seeking to re-appoint a receiver. ECF No. 470 at ¶¶ 170-74.

Presently pending before the Court is Defendants' motion to dismiss the common-law-fraud

claim in the Third Amended Complaint. See ECF Nos. 480-81, 534, 543-44. As set forth herein,

I respectfully recommend that Defendants' motion be **DENIED**.

1

## BACKGROUND[1]

### I.     Factual Background[2]

LKM, formerly known as NQ Mobile Inc., is a multinational technology company that develops, licenses, supports, and sells mobile-software platforms, including mobile games and social-media platforms, as well as services that focus on the smart-car and smart-ride business. ECF No. 470 at ¶ 17. Defendant Shi is LKM's co-founder, who served as chairman of the Board of LKM from 2014 through March 2019. Id. at ¶ 18.

Between January 21, 2014, and January 18, 2019, Plaintiff Wayne Baliga was a purchaser and owner of LKM ADS. Id. at 1; see also id. at ¶ 16. Specifically, Plaintiff purchased LKM securities in January, June, July, and August of 2018. Id. at ¶ 180. During the relevant time period, Defendants engaged in a series of fraudulent transactions and made several misstatements and omissions, and, after Defendants' fraudulent conduct came to light, the price of Plaintiff's LKM ADS declined. Id. at ¶¶ 16, 135.

During the relevant time period, Plaintiff was retired and relied on his investments for his retirement income. Id. at ¶ 25. Plaintiff viewed his investment in LKM as an active investment and monitored news regarding LKM on a near-daily basis. Id. Plaintiff, for example, configured automatic notifications through Yahoo! Finance, which alerted Plaintiff to any news related to LKM. Id. at ¶ 26. Plaintiff reviewed the notifications on a daily basis and conducted his own web

---

[1] I assume the parties' familiarity with the factual and procedural background of this case which has been detailed in numerous opinions. See e.g., ECF Nos. 275, 372, 461, 466, 508, 529. Only the facts relevant to the motion to dismiss the common-law-fraud claim in the Third Amended Complaint are recounted here.

[2] The factual allegations recounted herein are taken from the Third Amended Complaint. For purposes of this motion to dismiss, I accept as true all well-pled factual allegations and draw all reasonable inferences in Plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

searches to further monitor news related to LKM. Id. Further, Plaintiff reviewed all of LKM's

SEC filings, as well as transcripts of quarterly calls. Id. at ¶ 27.

On March 30, 2017, Defendant LKM announced that it had entered into an agreement

with Tongfang SPC (the "Tongfang Transaction"). Id. at ¶ 46. Tongfang SPC agreed to acquire

63% of LKM's equity interest in one of LKM's corporate assets, FL Mobile Jiutian Technology

Co., Ltd. ("FL Mobile"), a developer, publisher, and operator of games for mobile phones, for

RMB 2.52 billion. Id. at ¶¶ 2, 46. Tongfang SPC also agreed to buy 65% of LKM's equity

interest in another of LKM's corporate assets, Beijing Showself Technology Co. Ltd.

("Showself"), a mobile, social-media video platform, for RMB 800 million. Id. Under the

agreement, Tongfang SPC was to pay LKM a nominal upfront payment of RMB 150 million,

after which LKM would immediately transfer FL Mobile and Showself to Tongfang SPC. Id. at

¶ 46. Tongfang SPC was required to pay the remaining balance of RMB 3.17 billion to LKM by

May 31, 2017. Id.

Defendants represented that Tongfang SPC, the buyer in the Tongfang Transaction, "was

a corporate affiliate of Tsinghua Tongfang, a bona fide Chinese state-owned computer

manufacturing giant based in Beijing." Id. ¶ 48. LKM, for example, issued a press release in

March 2017, attached to a Form 6-K signed by Shi, stating that LKM "had entered into definitive

agreements . . . with [Tongfang SPC,] . . . an affiliate of Tsinghua Tongfang." Id. at ¶¶ 49, 97. In

reality, however, Tongfang SPC was not an affiliate of Tsinghua Tongfang, but instead was

owned and controlled by Shi. Id. at ¶¶ 56, 59. Defendants represented that the Tongfang

Transaction was a significant element of LKM's strategy to pivot from mobile internet services

to smart mobility solutions. Id. at ¶ 29.

On or about March 30, 2017, Plaintiff reviewed the press release announcing the Tongfang Transaction. Id. at ¶¶ 50, 60. Relying upon the representation that Tongfang SPC was an affiliate of Tsinghua Tongfang, Plaintiff continued to hold his existing ADS rather than selling his position in LKM. Id.

On April 26, 2017, in LKM's 2016 annual report on a Form 20-F that was dated April 25, 2017, and was signed by Shi, LKM stated that Tongfang SPC was "an affiliate private equity investment fund of Tsinghua Tongfang." Id. at ¶ 51. That same day, or soon after, Plaintiff reviewed the annual report. Id. at ¶ 52. Relying upon the representation that Tongfang SPC was an affiliate of Tsinghua Tongfang, Plaintiff continued to hold his existing LKM ADS. Id.

In a May 31, 2017 press release filed on a Form 6-K dated June 2, 2017, and signed by Shi, LKM stated that Tongfang SPC needed additional time to make the remaining payments due under the Tongfang Transaction, but that Tongfang SPC "communicated its confidence to [LKM] and is making final preparations for completing the transaction." Id. at ¶ 64. On June 2, 2017, Plaintiff reviewed the May 31, 2017 press release. Id. at ¶ 65. Relying on Defendants' representations therein, Plaintiff continued to hold his existing LKM ADS. Id.

In June 2017, Plaintiff reviewed an article regarding Tsinghua Tongfang's announcement of a plan "to create a world-class ecosystem for nurturing high-tech start-ups combining technology, finance and business incubators." Id. at ¶ 53. Plaintiff viewed Tsinghua Tongfang's plan to invest in high-tech start-ups as supporting Defendants' claims that Tongfang SPC was an affiliate of Tsinghua Tongfang. Id.

On August 31, 2017, LKM provided an update regarding the Tongfang Transaction on its website indicating that Tongfang SPC still needed additional time to make the payments due under the Tongfang Transaction, but that LKM was "confident" that the Tongfang Transaction

"will be completed soon." <u>Id.</u> at ¶ 66. That same day or soon thereafter, Plaintiff reviewed the update on LKM's website and continued to hold his existing LKM ADS. <u>Id.</u> at ¶ 67.

On November 20, 2017, LKM stated, in a press release attached to a Form 6-K that was signed by Shi (the "November 2017 Press Release"), that Tongfang SPC was "an affiliate of Tongfang Securities Limited, a part of Tsinghua Tongfang." <u>Id.</u> at ¶ 54. On or about November 21, 2017, Plaintiff reviewed the press release. <u>Id.</u> at ¶ 55. Relying upon the representation that Tongfang SPC was an affiliate of Tsinghua Tongfang, Plaintiff continued to hold his existing ADS and purchased additional LKM ADS in January 2018. <u>Id.</u>

In a press release dated December 14, 2017, submitted with a Form 6-K filed on December 15, 2017, and signed by Shi (the "December 2017 Press Release"), LKM announced that the Tongfang Transaction was complete with Tongfang SPC having "paid in full." <u>Id.</u> at ¶ 69. On December 15, 2017, or soon thereafter, Plaintiff reviewed the press release. <u>Id.</u> at ¶ 70. Relying on the representation that the Tongfang Transaction was completed, Plaintiff continued to hold his existing ADS and purchased additional LKM ADS in January 2018. <u>Id.</u> In January 2018, relying on both the November 2017 Press Release and the December 2017 Press Release, Plaintiff purchased additional LKM ADS. <u>Id.</u> at ¶¶ 55, 70.

Shortly after the completion of the Tongfang Transaction, Defendants' misrepresentations and omissions regarding the Tongfang Transaction came to light through a report published on the website SeekingAlpha.com on February 6, 2018 (the "February 2018 Report"). <u>See id.</u> at ¶¶ 71-80. Specifically, the February 2018 Report revealed that LKM transferred all of its equity interests in FL Mobile and Showself to Shi and not to Tongfang SPC. <u>Id.</u> at ¶ 72.

Publicly, Defendants maintained that they had done nothing wrong. See, e.g., id. at ¶¶ 82-85. In response to the February 2018 Report, for example, Shi stated that "all material aspects" of the Tongfang Transaction were publicly disclosed, including his participation and role in Tongfang SPC. Id. at ¶ 82. Shi maintained that Tongfang SPC was an "independent third party." Id. On February 7, 2018, Plaintiff reviewed Shi's public statements, and relying on Shi's representations, Plaintiff continued to hold his LKM ADS. Id. at ¶ 83.

On April 10, 2018, LKM hosted an earnings call, and represented that at the end of 2017, it had "$3.19 million in cash, cash equivalents and terms deposits" with another "$271 million notes receivable." Id. at ¶ 84. On April 11, 2018, or soon thereafter, Plaintiff reviewed the investor presentation provided on the April 10, 2018 earnings call, as well as the call transcript. Id. at ¶ 85. Relying on the representations made therein, Plaintiff continued to hold his existing LKM ADS. Id.

On May 22, 2018, LKM issued a shareholder letter from Shi stating that LKM's annual report was delayed because of "accounting classification corrections and related updates." Id. at ¶ 87. LKM also represented that it was "working tirelessly to make the necessary corrections and provide the corrected financials as expeditiously as practicable." Id. On May 24, 2018, LKM indicated that it would be filing its annual report under a Form 20-F. Id. Nothing in the May 22, 2018 shareholder letter from Shi, or in any prior filing, suggested that LKM had misstated its cash, cash equivalents, or notes receivable. Id. at ¶ 88. On May 24, 2018 or soon thereafter, Plaintiff reviewed Shi's letter to shareholders, and relying on Shi's representations, Plaintiff continued to hold his existing LKM ADS and purchased an additional 71,000 LKM ADS in June, July, and August 2018. Id. at ¶ 89.

After the truth about the Tongfang Transaction was revealed, LKM experienced a series of setbacks ultimately resulting in the LKM ADS being delisted from the New York Stock Exchange. Id. at ¶ 81. On the last day that the LKM ADS were available on the New York Stock Exchange, they were listed for about $0.15 per share. Id. at ¶ 32.

Plaintiff relied on Defendants' representations in 2017 through 2018 when purchasing LKM ADS in January, June, July, and August of 2018. Id. at ¶ 180. Plaintiff also relied on Defendants' representations throughout 2017 and 2018 when he continued to hold his existing LKM ADS. See, e.g., id. at ¶¶ 50, 52, 55, 60, 65, 67, 70, 83.

## II.    Procedural History

On October 5, 2020, Plaintiff filed a second amended complaint, asserting claims for violations of Exchange Act Section 10(b) and Rule 10b-5, common-law fraud, negligent misrepresentation, and unjust enrichment. ECF No. 166. Plaintiff also sought equitable relief in the form of maintaining or re-appointing the receiver. Id. On December 1, 2021, Defendants moved to dismiss the second amended complaint. ECF Nos. 261-62. On December 27, 2021, Plaintiff opposed the motion (ECF No. 263), and on January 14, 2022, Defendants filed a reply in support of their motion to dismiss (ECF No. 266).

On August 10, 2022, the undersigned issued a Report and Recommendation ("R&R"), recommending that the motion to dismiss with regards to Plaintiff's claims for violations of Exchange Act Section 10(b) and Rule 10b-5, common-law fraud, and negligent misrepresentation be denied. ECF No. 328. The R&R recommended granting Defendants' motion to dismiss with regards to Plaintiff's claim for unjust enrichment. Id. On November 4, 2022, the Honorable Victor Marrero adopted in part and rejected in part the August 10, 2022 R&R. ECF No. 372. As is relevant here, Judge Marrero remanded the motion to dismiss with

respect to Plaintiff's common-law-fraud claim to the undersigned for further consideration and directed the parties to submit supplemental briefing on the issue. Id. at 42.[3] After the parties submitted supplemental briefs (ECF Nos. 381, 383, 392), the Court heard oral argument regarding the common-law-fraud claim on May 24, 2023. ECF No. 426. On June 21, 2023, the undersigned issued an R&R recommending that the common-law-fraud claim be dismissed because Plaintiff failed to plead reliance as required under New York law. ECF No. 441 at 3. The Court identified the following deficiencies in Plaintiff's common-law-fraud claim: (1) Plaintiff failed to allege facts showing that he reasonably relied on Defendants' omissions (id. at 8-11); and (2) Plaintiff did not allege any transactions in LKM ADS made in reliance on the subject misstatements and omissions (id. at 15-17). On July 28, 2023, Judge Marrero adopted the R&R in its entirety, and afforded Plaintiff a final opportunity to amend his complaint to cure the deficiencies in the common-law-fraud claim. ECF No. 461.

Plaintiff filed the Third Amended Complaint on September 11, 2023. ECF No. 470. Plaintiff's Third Amended Complaint added allegations related only to the common-law-fraud claim "in order to allege additional facts to support the element of reliance." Id. at ¶ 79 n.1 (internal quotation marks omitted) (quoting ECF No. 461). On October 11, 2023, Defendants moved to dismiss the common-law-fraud claim in the Third Amended Complaint. ECF Nos. 480-481. On October 16, 2023, Judge Marrero referred the motion to dismiss to the undersigned. ECF No. 483. The briefing deadlines associated with the motion to dismiss, however, were adjourned *sine die* pending the Court's decision on the then-outstanding motions regarding the funding of the receivership account and the dispute over Shi's representation. ECF No. 500. On

---

[3] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the original pagination in those documents.

November 25, 2024, the undersigned issued a R&R, which, as is relevant here, recommended permitting Shi's current counsel to proceed with the representation for purposes of the motion to dismiss the Third Amended Complaint. ECF No. 529 at 1-2. On May 19, 2025, Judge Marrero adopted the R&R with respect to Shi's current counsel's concurrent representation of Shi and Link Motion for purposes of the motion to dismiss the Third Amended Complaint. ECF No. 549.

On December 30, 2024, Defendants renewed their motion to dismiss the common-law-fraud claim in the Third Amended Complaint. ECF No. 541. Plaintiff filed an opposition on January 15, 2025, and Defendants submitted a reply brief on February 13, 2025. ECF Nos. 543-544.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" Green v. Dep't of Educ. of City of N.Y., 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). In determining if a claim is sufficiently plausible to withstand dismissal, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); see also Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322-24 (2007). "The court's function on a [motion to dismiss] is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

## DISCUSSION

To state a claim for common-law fraud under New York law, a plaintiff must plead the following elements: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009); Pasternack v. Lab'y Corp. of Am. Hldgs., 27 N.Y.3d 817, 827 (2016). Pursuant to Rule 3016(b) of the New York Civil Practice Law and Rules, the circumstances constituting fraud must be pled with particularity. N.Y. C.P.L.R. § 3016(b); see Orix Credit All., Inc. v. R.E. Hable Co., 256 A.D.2d 114, 116 (1st Dep't 1998). Further, common-law-fraud claims must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). See, e.g., Bui v. Indus. Enters. of Am., Inc., 594 F. Supp. 2d 364, 371, 373 (S.D.N.Y. 2009) (dismissing common-law-fraud claim "for the same reasons that" plaintiffs' Section 10(b) and Rule 10b-5 claims were dismissed, including failure to meet the "heightened pleading standards of Rule 9(b)"); Icebox-Scoops v. Finanz St. Honoré, B.V., 676 F. Supp. 2d 100, 110 (E.D.N.Y. 2009) ("Rule 9(b) applies to all [common-law-fraud] claims, including claims under state law."). Under Rule 9(b), a complaint asserting a claim for fraud must: "(1) specify the statements that the plaintiff alleges were fraudulent, (2) identify the speaker, (3) indicate when and where the statements were made, and (4) explain why the statements were fraudulent." Bui, 594 F. Supp. 2d at 370.

In the prior complaint, as indicated in the June 21, 2023 R&R adopted by Judge Marrero, Plaintiff had adequately pled all elements of a common-law-fraud claim, except for the element of reliance. See, e.g., ECF No. 441 at 16-17; ECF No. 461 at 7. Consequently, the only issue

presently before the Court is whether Plaintiff's Third Amended Complaint adequately pleads reliance.

To plausibly allege reliance on a misrepresentation, a plaintiff must put forth sufficient facts from which it can be inferred that the plaintiff "reasonably relied on the misrepresentation." P.T. Bank Cent. Asia v. ABN AMRO Bank N.V., 301 A.D.2d 373, 376 (1st Dep't 2003); see also ACA Fin. Guar. Corp. v. Goldman, Sachs & Co., 25 N.Y.3d 1043, 1044 (2015) (explaining that to support fraudulent-inducement claim, "plaintiff must allege facts to support the claim that it justifiably relied on the alleged misrepresentations"). A plaintiff can plead actual reliance by, for example, including allegations that the plaintiff "read" or "reviewed" a defendant's fraudulent materials, Gotham Diversified Neutral Master Fund, LP v. Chicago Bridge & Iron Co. N.V., No. 18-CV-9927 (LGS), 2019 WL 3996519, at *4 (S.D.N.Y. Aug. 23, 2019), and by "linking individual purchases of securities to an alleged misstatement," Fir Tree Cap. Opportunity Master Fund, L.P. v. Am. Realty Cap. Props., Inc., No. 17-CV-4975 (AKH), 2017 WL 10808809, at *5 (S.D.N.Y. Dec. 14, 2017).

To show reliance on an omission, a plaintiff must allege facts from which it can be inferred that the defendant had a "'duty to disclose' the matters that were allegedly withheld," Aviles v. S & P Glob., Inc., 380 F. Supp. 3d 221, 299 (S.D.N.Y. 2019) (quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 179 (2011)), coupled with allegations that the plaintiff relied on the omission. See, e.g., Towne v. Kingsley, 163 A.D.3d 1309, 1311-12 (3d Dep't 2018) (finding that plaintiff adequately adduced evidence demonstrating his justifiable reliance on the defendant's omission, separate and apart from the facts establishing a duty to disclose the material omission); Terra Sec. ASA Konkursbo v. Citigroup, Inc., 450 F. App'x 32, 34 (2d Cir. 2011) (summary order) (explaining that fraud requires "more than a mere . . .

omission," such as "reasonable reliance on the part of the plaintiff") (internal quotation marks

and citation omitted); Coraud LLC v. Kidville Franchise Co., LLC, 109 F. Supp. 3d 615, 619

(S.D.N.Y. 2015) ("Under New York law, to prevail on a claim of common law fraud . . . , a

plaintiff must show, among other things, 'reasonable reliance' on the alleged . . . omissions.")

(citation omitted).

As it relates to a common-law-fraud claim based on an omission by Defendants, the

Court already determined that Shi and LKM had a duty to disclose material facts. ECF No. 441

at 13 ("Shi thus had a duty to disclose material facts"); id. at 15 ("The company's duty to

disclose the related party nature of the Tongfang Transaction was triggered coincident to the

March 30 press release.") (internal quotation marks omitted) (quoting ECF No. 372 at 37-38);

see also ECF No. 461. As such, the remaining issue is whether Plaintiff has adequately alleged

that he reasonably relied on Defendants' alleged misstatements and/or omissions. As explained

below, Plaintiff has done so with the allegations in the Third Amended Complaint concerning his

purchase of additional LKM ADS in January 2018.

As an initial matter, the parties dispute whether Plaintiff's allegations concerning his

decision to continue holding LKM ADS can support a common-law-fraud claim under New

York law. Plaintiff contends that a so-called "holder" claim is actionable where the allegation is

that the investment is now substantially worthless. See ECF No. 543 at 6-7. A holder claim is a

fraud claim where a plaintiff "allege[s] that material misrepresentations or omissions caused

[him] to retain ownership of securities that [he] acquired prior to the alleged wrongdoing," rather

than alleging that the misrepresentations or omissions caused him to purchase stock. See In re

WorldCom, Inc. Sec. Litig., 336 F. Supp. 2d 310, 318-19 (S.D.N.Y. 2004). Conversely,

Defendants argue that New York law does not recognize so-called holder claims for common-law fraud. See ECF No. 481 at 7.

Defendants are correct that generally New York courts do not recognize holder claims, because such claims violate New York's out-of-pocket damages rule. See Feinberg v. Marathon Pat. Grp. Inc., 193 A.D.3d 568, 148 (1st Dep't 2021) (holding that the lower court "correctly dismissed" the holder claims "based on alleged fraudulent and/or negligent misrepresentations that caused plaintiff . . . to refrain from selling shares of defendants' stock" because "holder claims violate the out-of-pocket rule governing damages recoverable for fraud") (internal quotation marks and citations omitted); see also SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C., 829 F.3d 173, 175 (2d Cir. 2016) (affirming dismissal of holder claim without "decid[ing] whether New York law permits holder fraud claims" because plaintiff failed to allege "reliance on any misrepresentations in deciding to hold rather than sell its stock"). In New York, damages in an action for fraud "are measured using the 'out-of-pocket' rule, which captures 'the actual pecuniary loss sustained as the direct result of the wrong.'" Keystone Foods Hldgs. Ltd. v. Tyson Foods, Inc., No. 22-CV-1113 (DAL) (RR) (MAK), 2023 WL 3477157, at *2 (2d Cir. May 16, 2023) (summary order) (quoting Lama Hldg. Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996)). Holder claims typically violate this rule because they are often "too remote and speculative to support cognizable damages." Starr Found. v. Am. Int'l Grp., Inc., 76 A.D.3d 25, 30 (1st Dep't 2010); see also Bullen v. CohnReznick, LLP, 194 A.D.3d 637, 639 (1st Dep't 2021) (noting that holder claims that seek "recovery for the loss of the value that might have been realized in a hypothetical market exchange that never took place" are "nonactionable") (internal quotation marks and citations omitted). However, the New York Court of Appeals has yet to determine whether holder claims can support a claim for fraud where

the plaintiff can allege "specific, verifiable, out-of-pocket losses associated with" a purported fraud. In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig., No. 20-CV-10028 (KPF), 2021 WL 4481215, at *27-28 (S.D.N.Y. Sept. 30, 2021).

Courts in this Circuit have thus declined to decide whether New York law fully precludes holder claims. See id. at *27 (noting that "the status of holder claims under New York law is unclear"). Instead, courts in this District have allowed holder claims to survive a motion to dismiss where a plaintiff has sufficiently pled out-of-pocket losses rather than "speculative lost profits." Id. at *2 (finding that plaintiff's "damages [we]re capable of being calculated and proven, as [plaintiff's] investment [would] have a certain, verifiable value as of the date that discovery establishes that the defendant's misrepresentations or fraud began"). Under the current landscape, therefore, a plaintiff may plead out-of-pocket losses to support a holder claim under New York law by alleging:

> (1) the loss of substantially the entire investment, (2) whether the plaintiff would have sought to rescind the investment, had there been an accurate disclosure . . . , (3) the time frame within which the rescission would have occurred, (4) the portion of the investment that would have been sold, and (5) the effect truthful disclosure would have had on the value of the investment.

Beach v. Citigroup Alt. Invs. LLC, No. 12-CV-7717 (PKC), 2014 WL 904650, at *17 (S.D.N.Y. Mar. 7, 2014); see also In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig., 2021 WL 4481215, at *27-28.

Plaintiff has not adequately alleged out-of-pocket losses to support a holder claim in the limited form in which such claims presently can support an action for common-law fraud in New York. The Third Amended Complaint includes allegations that Plaintiff "demonstrated [his] reliance [on Defendants' misrepresentations and omissions] by continuing to hold his existing ADS rather than selling his position in LKM." ECF No. 470 at ¶¶ 50, 52, 55, 60, 65, 67, 70, 83,

85, 89. Plaintiff argues that "Plaintiff's investments in LKM ADS[] are substantially worthless at this point" (ECF No. 543 at 7), and he alleges that, "[o]n the final day LKM[] ADS w[ere] available to be traded on the [New York Stock Exchange], the stock was valued at $0.15." ECF No. 470 at ¶ 32. But Plaintiff does not include any allegations in the Third Amended Complaint regarding whether he would have sought to rescind the investment had there been an accurate disclosure by Defendants, or the portion of his investment in LKM ADS that he would have sold.[4] Cf. In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig., 2021 WL 4481215, at *27-28 (denying motion to dismiss holder claim under New York law where plaintiff "allege[d] specific, verifiable out-of-pocket losses" by "alleging that [Plaintiff] would have redeemed its entire investment upon learning the truth"). Nor does Plaintiff allege any facts from which to infer what effect a truthful disclosure by Defendants would have had on the value of Plaintiff's investment in LKM ADS. Instead, Plaintiff merely repeats throughout the Third Amended Complaint that he "continu[ed] to hold his existing ADS rather than sell[ ] his position in LKM" after reviewing LKM's SEC filings, relevant shareholder communications, news articles, and website updates. ECF No. 470 at ¶¶ 50, 52, 55, 60, 65, 67, 70, 83, 85, 89. However, because it cannot be inferred

---

[4] Plaintiff's reliance on AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc., 661 F. App'x 2 (2d Cir. 2016) (summary order), is misplaced. See ECF No. 543 at 6. In AHW Inv., the court explained that under New York's out-of-pocket damages rule, "recovery is limited to '*the actual pecuniary loss* sustained as the direct result of the wrong.'" 661 F. App'x at 5 (emphasis in original) (quoting Starr Found. v. Am. Int'l Grp., Inc., 76 A.D.3d 25, 27 (1st Dep't 2010)). The court acknowledged that a New York state court decision "found that *bondholders* stated a claim for relief by alleging that they had been fraudulently induced to retain *bonds* that were actually 'substantially worthless.'" Id. (quoting Continental Insurance Co. v. Mercadante, 222 A.D. 181, 182 (1st Dep't 1927)) (emphasis added). The court in AHW Inv., however, explained that bonds were distinct from stock, because stock in a company "constitute[s] ownership interests," such that they are not rendered "substantially worthless," even when the stock price declines. 661 F. App'x at 6 & n.3. Although Plaintiff is correct that the court in AHW Inv. does not definitively state that New York law precludes fraud claims based on a holder theory (ECF No. 543 at 6), the court in AHW Inv. made clear that a plaintiff asserting a holder claim for stock in a company must allege actual pecuniary loss rather than speculative damages. See 661 F. App'x at 5-6.

that discovery will render Plaintiff's damages "capable of being calculated and proven," In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig., 2021 WL 4481215, at *28, any holder claim violates New York's out-of-pocket damages rule and thus Plaintiff's continued holding of LKM ADS cannot support a common-law-fraud claim.

Beginning with the Plaintiff's purchases in June, July, and August 2018, the Third Amended Complaint fails to plausibly allege that Plaintiff relied on a misrepresentation or omission when making those purchases of LKM ADM. The Third Amended Complaint identifies four categories of misstatement and omissions: (1) statements and omissions concerning the purported affiliation between Tongfang SPC and Tsinghua Tongfang; (2) statements and omissions concealing Shi's financial interest in the Tongfang Transaction; (3) statements and omissions meant to assure investors that Tongfang SPC would complete the required payment under the Tongfang Transaction; and (4) statements and omissions concerning the efficacy of LKM's internal controls. ECF No. 470 at ¶ 95. Plaintiff does not allege that he relied on any of these alleged misstatements or omissions when making his purchases in June, July, and August 2018.

Instead, Plaintiff alleges that he relied on Shi's letter to LKM shareholders from May 2018 when purchasing LKM ADM in June, July, and August 2018. Id. at ¶ 89. In Shi's letter to shareholders, which was included with LKM's public announcement that it would be filing its delayed 2017 annual report with the SEC under a Form 20-F, Shi stated that LKM's "failure to file its annual report for 2017 was due to the necessity of 'accounting classification corrections and related updates,'" and LKM was "working tirelessly to make the necessary corrections and provide the corrected financials as expeditiously as practicable." Id. at ¶ 87. Although Plaintiff alleges that Shi's letter did not "suggest[ ] that [LKM] had misstated its cash, cash equivalents,

or notes receivable," <u>id.</u> at ¶ 88, Plaintiff also alleges that LKM, in its announcement

accompanying Shi's shareholder letter, "admitted that its financial statements from the second

[quarter] of 2016 through the fourth quarter of 2016—and all of 2017—were inaccurate and

could not be relied upon," <u>id.</u> at ¶ 119.

In other words, although Plaintiff alleges that Shi's May 2018 letter did not disclose that

the company had misstated its financials, the complaint also alleges that LKM publicly

acknowledged, at the same time as Shi's letter, that its 2017 financial statements were inaccurate

and could not be relied upon. It is thus not apparent what misstatement or omission, if any, was

contained in Shi's May 2018 letter.[5] <u>See</u> <u>id.</u> at ¶¶ 95-119 (listing all of Defendants' alleged

misstatements and omissions, none of which concern Shi's May 2018 letter). Simply stated,

Plaintiff has not identified a misstatement or omission connected to the May 2018 letter, upon

which he relied in making the June, July, and August 2018 purchases of LKM ADS. And to state

a plausible claim for common-law fraud, a plaintiff must identify the alleged misstatement or

omission relied on at the time of purchase. <u>See</u> <u>Koppel v. 4987 Corp.</u>, No. 96-CV-7570 (RLC),

1999 WL 608783, at *3 (S.D.N.Y. Aug. 11, 1999) ("Nowhere in his complaint does [plaintiff]

allege that he relied on a false material representation, and he therefore fails to state

---

[5] Even if nothing in Shi's letter "suggested that [LKM] had misstated its cash, cash
equivalents, or notes receivable" (ECF No. 470 at ¶ 88)—such that the letter contained an
actionable misstatement or omission—Plaintiff's reliance on Shi's letter in purchasing LKM
ADS would nonetheless be unreasonable, because LKM announced in May 2018 that LKM's
financial statements "were inaccurate and could not be relied upon" (<u>id.</u> at ¶ 119). <u>See</u> <u>484
Assocs., L.P. v. Moy</u>, No. 06-CV-2290 (PAC), 2007 WL 683999, at *3 (S.D.N.Y. Mar. 5, 2007)
("Notwithstanding that the fact-specific nature of reasonable reliance generally renders it
inappropriate for determination on a motion to dismiss, courts will grant a Rule 12(b)(6) motion
[on the basis that the alleged reliance was unreasonable] if [p]laintiff had actual notice of the
falsity of the misrepresentations"); <u>see also, e.g.</u>, <u>May v. Barclays PLC</u>, No. 23-CV-2583 (LJL),
2025 WL 887300, at *30 (S.D.N.Y. Mar. 21, 2025) (dismissing common-law-fraud claim for
failure to plead *reasonable* reliance).

a claim for fraud."), aff'd, 39 F. App'x 633 (2d Cir. 2002); see also Sec. Inv. Prot. Corp. v. BDO

Seidman, L.L.P., 95 N.Y.2d 702, 709 (2001) ("Plaintiff cannot sustain a cause of action for fraud

if defendant's misrepresentation did not form the basis of reliance."). Plaintiff therefore fails to

state a claim for common-law fraud with respect to his purchases of LKM ADS in June, July,

and August 2018.

Nevertheless, Plaintiff also alleges that he purchased LKM ADS in January 2018 in

reliance on misrepresentations made by Defendants in the November 2017 Press Release and the

December 2017 Press Release. ECF No. 470 at ¶¶ 55, 70. Those allegations suffice to support a

common-law-fraud claim, because, as discussed below, Plaintiff has now plausibly alleged

reliance.

To plead reliance, a plaintiff "must allege with particularity that [he] actually relied upon

the [defendant's] supposed misstatements." In re Bear Stearns Cos., Inc. Sec., Derivative, &

ERISA Litig., 995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014), aff'd sub nom., 829 F.3d 173 (2d Cir.

2016); Gotham Diversified Neutral Master Fund, LP, 2019 WL 3996519, at *4. A plaintiff can

satisfy this requirement by alleging that the plaintiff "'read' or 'reviewed' allegedly fraudulent

materials and relied on those materials in choosing to purchase . . . stock." Gotham Diversified

Neutral Master Fund, LP, 2019 WL 3996519, at *4 (finding reliance sufficiently pled where

plaintiff read and reviewed entity's quarterly and annual reports as well as individual defendants'

public statements prior to purchasing defendant entity's stock).

With regards to Plaintiff's January 2018 purchase of LKM ADS, Plaintiff alleges that he

relied on Defendants' representations throughout 2017 that "the Tongfang Transaction—and the

liquid capital generated from the Tongfang Transaction—[were] a significant element of

[LKM's] strategy." ECF No. 470 at ¶¶ 29-30. Plaintiff further alleges that he reviewed the

November 2017 Press Release, which stated that Tongfang SPC was "an affiliate of Tongfang Securities Limited, a part of Tsinghua Tongfang," on or about November 21, 2017. Id. at ¶¶ 54-55. He also alleges that he reviewed, on or about December 15, 2017, the December 2017 Press Release, which indicated that the Tongfang Transaction was fully consummated. Id. at ¶¶ 69-70. Plaintiff additionally alleges that he "reviewed the November 2017 Press Release and relied upon the representation that Tongfang SPC was an affiliate of Tsinghua Tongfang" when he "purchas[ed] additional LKM ADS in January 2018." Id. at ¶ 55. And Plaintiff alleges that he "reviewed the December [] 2017 Press Release and relied upon the inference that Tongfang SPC was a third-party entity, not an investment vehicle of Shi's" and the "representation that Tongfang SPC had paid RMB 1.55 billion and would be obligated under the terms of the Senior Note to pay a further RMB 1.77 billion" when he "purchased additional LKM ADS in January 2018." Id. at ¶ 70.

Additionally, Plaintiff alleges that he reviewed news alerts daily through Yahoo! Finance (ECF No. 470 at ¶ 26), as well as all SEC filings and transcripts of quarterly earnings calls related to LKM (id. at ¶ 27). Plaintiff provides the approximate dates on which he reviewed LKM's SEC filings. See, e.g., id. at ¶¶ 52, 55, 60, 65, 89. For example, Plaintiff alleges that he reviewed the November 2017 Press Release, which was attached to an SEC filing, on "November 21, 2017, or soon thereafter," and he reviewed the December 2017 Press Release, which was also attached to an SEC filing, on "December 15, 2017, or soon thereafter." Id. at ¶¶ 55, 70. Plaintiff also alleges the approximate dates he conducted independent searches into Tongfang SPC and reviewed LKM's website. Id. at ¶¶ 53, 67.

Plaintiff's allegations in the Third Amended Complaint adequately plead that Plaintiff's purchase in January 2018 of LKM ADS was made in reliance on at least two specific public

statements from LKM—the November 2017 Press Release and the December 2017 Press Release—which contained misrepresentations about the Tongfang Transaction, such as the misrepresentation that "Tongfang SPC was an affiliate of Tsinghua Tongfang," and failed to disclose that Tongfang SPC was "an investment vehicle of Shi's." Id. at ¶¶ 55, 70. Plaintiff has therefore sufficiently pled a common-law-fraud claim based on his January 2018 purchase of LKM ADS. See, e.g., Gotham Diversified Neutral Master Fund, LP, 2019 WL 3996519, at *4 (holding that reliance was adequately pled where "the Complaint makes separate factual allegations in support of [p]laintiffs' actual reliance, alleges reliance on multiple public filings and statements, and alleges the purchase of securities from April 24, 2014, to January 29, 2015, in reliance on those misstatements"); Fir Tree Cap. Opportunity Master Fund, L.P., 2017 WL 10808809, at *6 (determining that "plaintiffs have specifically pled actual reliance" because they "identified specific purchases and statements upon which they relied").

Contrary to Defendants' argument (ECF No. 481 at 8), these allegations satisfy Rule 9(b). See Bui, 594 F. Supp. 2d at 370 (explaining that Rule 9(b) requires a plaintiff to specify the fraudulent statements, identify the speaker, "indicate when and where the statements were made," and "explain why the statements were fraudulent"). Plaintiff specifies the statements that were fraudulent—namely the November 2017 Press Release and the December 2017 Press Release (ECF No. 470 at ¶¶ 54-55, 69-70); Plaintiff identifies LKM and Shi as the speakers (id.); Plaintiff indicates that the statements were made in press releases attached to LKM's Form 6-Ks filed with the SEC (id. at ¶¶ 54, 69); and Plaintiff explains that the statements were fraudulent because they misrepresented the relationship between Tongfang SPC and Tsinghua Tongfang and failed to disclose Shi's relationship with Tongfang SPC (id. at ¶¶ 55, 70).

Defendants also argue that Plaintiff's allegations regarding his January 2018 purchase of ADS are insufficient to show that Plaintiff made a purchase in direct reliance on the November 2017 Press Release and the December 2017 Press Release, because Plaintiff waited more than a month after he reviewed those press releases to purchase LKM ADS. ECF No. 481 at 8-10. But Defendants do not point to any authority placing a temporal limit on reliance, and the Court is not aware of any case dictating that a one-month delay between reviewing a misrepresentation and making a securities purchase renders a fraud claim inactionable. In fact, courts have allowed claims to survive a motion to dismiss where the plaintiff alleged reliance on misrepresentations made more than a month prior to the plaintiff's purchase of securities. See, e.g., Gotham Diversified Neutral Master Fund, LP, 2019 WL 3996519, at *4 (denying motion to dismiss common-law-fraud claim premised on purchases in 2014 and 2015 made in reliance on misrepresentations made in 2013 and 2014); In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig., 2021 WL 4481215, at *26-27 (denying motion to dismiss common-law-fraud claim based on "investments that closed on three dates in March, April, and May of 2019" allegedly made in reliance on Defendants' statements "from at least March 2019"). And, in any event, as discussed *infra* at 21-22, whether Plaintiff's reliance on the November 2017 Press Release and the December 2017 Press Release was reasonable is a question of fact. See Computech Int'l, Inc. v. Compaq Computer Corp., No. 02-CV-2628 (RWS), 2004 WL 1126320, at *9 (S.D.N.Y. May 21, 2004).

Defendants further argue that, even if Plaintiff has adequately pled reliance, such reliance was not reasonable or justifiable because the February 2018 Report, published on February 6, 2018, had previously raised allegations against Shi, and LKM issued a shareholder letter dated May 2018 indicating that it would be correcting its financials. ECF No. 544 at 8. Defendants thus

contend that Plaintiff should have conducted his own due diligence, rather than "recklessly" relying on Defendants' statements. ECF No. 544 at 6; see also ECF No. 481 at 10-12.

"The question of whether or not reliance was justifiable or reasonable is ordinarily a question of fact to be determined at trial." Computech Int'l, Inc., 2004 WL 1126320, at *9; see also Stanley v. Skowron, 958 F. Supp. 2d 417, 424 (S.D.N.Y. 2013) (explaining that whether "a party's reliance was reasonable" is "ordinarily a question of fact to be determined at trial") (internal quotation marks and citations omitted). A plaintiff's reliance is generally not reasonable if the facts "are not matters peculiarly within the [defendant]'s knowledge, and the [plaintiff] has the means available to him of knowing, by the exercise of ordinary intelligence, the truth." ACA Galleries, Inc. v. Kinney, 928 F. Supp. 2d 699, 703 (S.D.N.Y. 2013), aff'd, 552 F. App'x 24 (2d Cir. 2014) (internal quotation marks omitted) (quoting Danann Realty Corp. v. Harris, 157 N.E.2d 597, 600 (N.Y. 1959)). Here, the public statements Defendants point to (see, e.g., ECF No. 481 at 6; ECF No. 544 at 8) were made after Plaintiff's January 2018 purchase of LKM ADS and thus could not have been available to Plaintiff at the time of his purchase. Regardless, the reasonableness of Plaintiff's reliance on Defendant's public statements is a "fact-specific inquiry and is therefore often not decided at the motion to dismiss phase of a litigation." Gotham Diversified Neutral Master Fund, LP, 2019 WL 3996519, at *3 (internal quotation marks and citations omitted).

The Tongfang Transaction was announced on March 30, 2017. See ECF No. 470 at ¶ 46. After the Tongfang Transaction was announced, Plaintiff reviewed several public filings, read relevant news alerts, and conducted his own independent research. See, e.g., id. at ¶¶ 25-30. Plaintiff then purchased additional LKM ADS in January 2018 in reliance on the information available to him at that time. Id. at ¶¶ 55, 70. These facts suffice to allow a plausible inference, at

the motion-to-dismiss stage, that Plaintiff reasonably relied on publicly available materials as well as public filings made by LKM itself. See Gotham Diversified Neutral Master Fund, LP, 2019 WL 3996519, at *4 (holding that plaintiff's allegations that it relied on "multiple public filings and statements" was sufficient to plead reasonable reliance at the motion to dismiss stage).

In sum, I respectfully recommend that Defendants' motion to dismiss be denied, as Plaintiff has adequately pled reliance to support a common-law-fraud claim with regards to Plaintiff's purchase of LKM ADS in January 2018. Plaintiff, however, has not adequately pled a common-law-fraud claim with regards to his continued holding of LKM ADS or his purchases of LKM ADS in June, July, and August 2018.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion to dismiss Plaintiff's common-law-fraud claim in the Third Amended Complaint be **DENIED** to the extent that Plaintiff's claim is premised on his January 2018 purchase of LKM ADS. I respectfully recommend, however, that Plaintiff's common-law-fraud claim not be allowed to proceed for his continued holding of his existing LKM ADS or for his purchases of LKM ADS in June, July, and August 2018.

DATED:     New York, New York
             June 9, 2025

VALERIE FIGUEREDO
United States Magistrate Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Victor Marrero. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**