**MORROW NI / LLP**

Seattle | New York | Los Angeles
www.moni.law

**Complex Disputes**

June 10, 2025

Honorable Victor Marrero
United States District Court,
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

      Re:    *Baliga v. Link Motion Inc., et. al., Case No. 1:18-cv-11642-VM-VF* – Seeking Clarification That The Previously Noticed EGM May Proceed

Dear Judge Marrero:

Pursuant to Rule I.A. of the Court's individual practice rules, Lilin "Francis" Guo ("Mr. Guo") respectfully writes to seek clarification that, given recent rulings, either Mr. Guo or the Receiver may re-notice and convene the previously noticed extraordinary general meetings ("EGM") of Link Motion Inc. shareholders.

The Court had previously temporarily enjoined certain already-noticed EGMs in May and June 2023. Dkts. 424, 508. The injunction was expressly conditioned on the resolution of Mr. Guo's compensation and the Receiver's accounting. As of May 2025, those matters have been resolved by the Court's rulings at Dkts. 549 and 550.

However, the Court has not expressly vacated the injunction. The Court's recent decisions also leave unclear whether the Receiver or Mr. Guo may re-notice and convene the EGMs that the Receiver previously noticed before his discharge. Mr. Guo therefore writes to confirm that the injunction has dissolved, and that the previously noticed EGMs may be re-noticed by either: (i) the recently discharged Receiver; or (ii) Mr. Guo himself—who the Receiver had tasked with chairing the meetings—in his capacity as Interim Chairman of the Board, which appointment the Court had previously approved.

## PROCEDURAL BACKGROUND

On April 17, 2019, the Receiver notified the Court that it had removed Vincent Weiyong Shi ("Shi") as Link Motion Inc.'s board chairman and appointed Mr. Francis Guo as Interim Chairman of the Board. Dkt. 43, at 3 ¶ 10.

On February 4, 2022, the Receiver informed the Court that he was seeking approval from the Cayman Court to convene EGMs. Dkt. 268.

On March 4, 2022, the Receiver notified the Court that the Cayman Court had approved the EGMs, and that he planned to notice the meetings. Dkt. 271; 271-1. That same day, the Receiver noticed two EGMs to be held on consecutive dates in March 2022, to vote on corporate governance matters. Dkt. 276-2; 276-3.



On March 9, 2022, Magistrate Freeman issued a Report and Recommendation ("R&R") recommending that the Court approve of the Receiver's prior actions, and stating that "**in light of the fact that the Receivership Order was properly authorized in the first instance, and Shi has not persuasively shown that the actions of the Receiver, taken as a whole, have been detrimental to the Company (as opposed to detrimental to Shi, himself), none of the actions taken by the Receiver should be required by the Court to be unwound, as Shi proposes. Nor do I recommend that the Court direct Shi be reinstated to his prior positions of Chairman of the Board and Chief Operating Officer of the Company, or that any other former Directors of the Company who may have been removed by the Receiver be ordered reinstalled.**" ECF 275 at p. 41 (emphasis added).

On March 15, 2022, Mr. Shi sought to enjoin the EGMs. Dkt. 276-6. On March 16, 2022, the Court entered a TRO for the EGMs and ordered the Receiver to show cause why the EGMs should not be enjoined. Dkt. 277. On April 5, 2022, the TRO was extended pending resolution of the objections to Magistrate Freeman's March 9, 2022 R&R. Dkt. 298.

On August 25, 2022, the Court adopted the March 9 R&R's recommendations "in their entirety." Dkt. 331, at 2. Among other things, the Court approved, over Mr. Shi's objections, "**Shi's removal as a director**", which the Court declined to find null and void. *Id.* at 11. The Court also declined to unwind any of the Receiver's other actions to date. *Id.* With respect to the previously-noticed EGMs, the Court only ruled that, given the Receiver had not been able to reach Mr. Guo since April 2022, there may be reason to hold the EGMs in abeyance until he returned. *Id.*

On September 15, 2022, after the parties briefed the issue, the Court held "that the Receiver has authority to convene the EGMs", but "that regardless of the Receiver's authority to do so, the EGMs shall be **postponed** until Guo reappears and can attend the meetings." Dkt. 338, at 2 (emphasis added).

On October 5, 2022, the Court denied the Defendants' renewed request to halt the EGMs, reaffirming the Receiver's authority to convene them, holding:

> **Defendants … contend that the Cayman Court order granting [the Receiver the] authority [to convene EMGs] was issued prior to the Court's D&O discharging the Receiver upon completion of its accounting such that the Receiver's authority is terminated**. … As explained above and in the September 15 Order, **the D&O did not require the Receiver to 'unwind any activities that have already been taken on the Company's behalf**.' (September 15 Order at 10 (quoting D&O at 7).) And the Receiver had already taken action to convene the EGMs before either the Report and Recommendation or D&O were entered. Accordingly, the Court reaffirms its finding that the Receiver maintains its authority, until fully discharged after its accounting, to convene the EGMs.

Dkt. 364, at 12 (emphasis added).



**MORROW NI / LLP**

Complex Disputes

Seattle | New York | Los Angeles
www.moni.law

On May 9, 2023, the Receiver notified the Court of Mr. Guo's recent reappearance and his intent to immediately reconvene the EGMs. Dkt. 416.

On May 16, 2023, the Receiver re-noticed the two EGMs for May 30 and 31, 2023. Dkts. 421-3, 421-4. The notices made clear that the EGMs will be chaired by Mr. Guo. *Id.* ¶ 3.

On May 18, 2023, the Receiver notified the Court that he has sent notice for the meetings. Dkt. 418.

On May 26, 2023, Mr. Shi filed an application for an order to show cause to enjoin the proposed EGMs, challenging the validity of Mr. Guo's shareholder status and challenging the Convertible Note Agreement through which Mr. Guo acquired significant shareholdings. Dkt. 421-5.

On the same day, the Circuit Court denied Mr. Shi's appeal. Dkt. 424. Also on the same day, the Court temporarily enjoined the EGMs pending further briefing. Dkt. 425.

On June 21, 2023, the Court extended the injunction. The Court stated: "**Accordingly, and to reserve judicial resources and avoid conflicting orders, the Court reserves its decision on Shi's motion and extends the injunction granted at Dkt. No. 425 until the Receiver's accounting of expenses, including Guo's, is resolved**." Dkt. 440 at 3 (emphasis added).

Between 2023 and 2025, the parties submitted extensive briefings concerning the Receiver's final accounting, the Convertible Note Agreement, Mr. Guo's expenses, and Mr. Shi's Rule 60 motion. *See* Dkts. 421, 430, 466, 477, 486, 503, 518, 521, 525, 529, 539.

On May 19, 2025, the Court issued a comprehensive Decision and Order resolving all outstanding issues in favor of the Receiver and Mr. Guo. It noted that "Shi had looted the company of nearly $89 million." Dkt. 549, at 16. It also (1) Approved the overwhelming majority of the Receiver's accounting; and (2) Generally approved Mr. Guo's expenses and compensation. *See Id.* at 38–40.

Further, on May 22, 2025, the Court denied Mr. Shi's Rule 60 motion to vacate the Court's prior order approving the Convertible Note Agreement, rejecting all fraud and usury claims. Dkt. 550.

While all substantive issues that led to the enjoining of the EGMs have now been resolved, the Court has not expressly vacated the May 26, 2023 injunction (Dkt. 424). Furthermore, the Receiver's official discharge puts the previously noticed—but not yet convened—EGMs in limbo. Mr. Guo, as Interim Chairman of the Board and the person the Receiver had tasked with chairing the EGMs, now writes to seek clarification that the previously noticed EGMs may be re-noticed and convened on new dates, whether by the Receiver or by Mr. Guo in his capacity as interim Chairman.



## ARGUMENT

**The TRO Should Be Dissolved:** Federal courts have consistently recognized that an injunction must be lifted when there is a material change in operative facts, or the underlying legal basis no longer exists. *See, e.g., ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1355–56 (Fed. Cir. 2015) (vacating injunction where the Patent and Trademark Office cancelled the underlying patent claim); *California ex rel. Becerra v. U.S. Envtl. Prot. Agency*, 978 F.3d 708, 713–14 (9th Cir. 2020) (finding abuse of discretion where the court refused to modify an injunction despite an intervening change in law that nullified its basis*); Helmer v. Briody, 721 F. Supp. 498*, 505–06 (S.D.N.Y. 1989) (dissolving injunction issued to preserve plaintiff's union membership once the union election concluded and the plaintiff lost); *Ry. Lab. Executives' Ass'n v. Metro-N. Commuter R.R.,* 759 F. Supp. 1019, 1022 (S.D.N.Y. 1990) (finding dissolution appropriate where a change in decisional law undermined the injunction); *Phelps v. Hamilton,* 122 F.3d 1309, 1325 (10th Cir. 1997) (holding that a temporary injunction should be dissolved when it no longer serves any valid purpose).

The injunctions entered in May and June 2023 (Dkts. 425, 440) were expressly predicated on the pending resolution of the Receiver's accounting and Mr. Guo's related expenses. Those matters have now been resolved by the Court's Orders at Dkts. 549 and 550. The injunctions were not issued as permanent restraints, nor did the Court indicate any intent for them to persist beyond adjudication of the underlying factual disputes. Now that the basis for the injunction has been eliminated, it should be dissolved.

**The Court Should Permit The Receiver Or Mr. Guo To Re-Notice And Convene The Thrice-Interrupted EGMs:** The Court's recent orders discharged the Receiver and ended the Receivership. The simultaneous dissolution of the Court's prior injunction should lift any stay on the EGMs that the Receiver had noticed for May 2023, which the Court had previously "postponed." Dkt. 338, at 2 (emphasis added). In this setting, there are two bases for the Court to permit resumption of the EGM process.

**First**, the Court can direct the Receiver to resume his duties for the limited purpose of re-noticing and convening the previously noticed EGMs. Specifically, the Court's May 19 discharge order stated that "that the Receiver is no longer bound by and is hereby discharged and released from his duties, obligations, and responsibilities as receiver as set forth in the Receivership Order (Dkt. No. 26) and any other orders of the Court related to his service or appointment as receiver." Dkt. 549, at 39-40.

The Court also "ORDERED that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order." *Id.* at 40. The Court's subsequent order denying Shi's Rule 60 motion also stated that "this Court has jurisdiction with respect to all matters arising from or related to the implementation of its Order approving the Receiver's accounting and the Receiver's discharge." Dkt. 550, at 22.



Here, the Receiver previously noticed the EGM, which were not convened due to the Court's injunction. Because the injunction should now be dissolved, and the interrupted EGMs were formerly noticed by the Receiver, the Court should order the Receiver to re-notice and reconvene the EGMs as an unfinished pre-receivership-dissolution matter. *See S.E.C. v. Cobalt Multifamily Invs. I, Inc.*, 542 F. Supp. 2d 277, 282 (S.D.N.Y. 2008) (deciding to "maintain the Receiver in a limited capacity" to complete certain lawsuits where "the Receiver's principal duties with respect to marshaling the assets of the Cobalt entities are largely complete, with the exception of certain discrete tasks that need to be completed in order to ensure that the defrauded investors receive adequate relief.")

Indeed, this Court had previously rejected Defendants' argument that the EGMs cannot be held because the Cayman order permitting the EGMs was "issued prior to the Court's D&O discharging the Receiver upon completion of its accounting such that the Receiver's authority is terminated." Dkt. 364, at 12. As the Court ruled, its original order that the Receiver would be discharged upon an accounting "did not require the Receiver to 'unwind any activities that have already been taken on the Company's behalf.'" *Id.*

Similarly here, the fact that the Receiver has now been discharged does not mean his prior act of noticing the EGMs must be undone. The Court should permit the Receiver to resume his duties solely for the limited purpose of seeing this last, important act of corporate governance through to its completion.

**Alternatively,** Mr. Guo, who the Receiver had tasked with chairing the EGMs, should be permitted to re-notice and convene the EGMs in his capacity as interim Board Chairman. The Court has issued numerous rulings approving of the actions the Receiver took during the pendency of the receivership, including his obtaining approval for and noticing of the EGMs. *Supra*, at 1-3. The Court also specifically approved of Mr. Shi's removal from the board and Mr. Guo's appointment as Interim Chairman. Dkts. 275, 331.

With the Receiver discharged, Mr. Guo, in his capacity interim Chairman of the Board, should be permitted to complete tasks pending at the time of the Receiver's discharge, namely, the noticed but not convened EGMs. *Nicoll v. Boyd*, 90 N.Y. 516, 520 (1882) (where death of receiver meant that his duties "devolved upon the court. It was competent, therefore, to appoint the plaintiff to carry the suits on to their completion, and in other respects fulfill the duties which the first receiver left incomplete.")

## CONCLUSION

For the foregoing reasons, Mr. Guo respectfully writes to seek clarification that the previously noticed EGMs may be re-noticed and convened on new dates, whether by: (i) the Receiver himself; or (ii) Mr. Guo—who the Receiver had tasked with chairing the meetings—in his capacity as interim Chairman of the Board.



Sincerely,

**Morrow Ni LLP**

s/ *Angus F. Ni*
Angus F. Ni

41 Madison Ave, 31st Floor
New York, NY 10010
E-mail: angus@moni.law
Phone: (773) 543-3223

*Counsel for Lilin "Francis" Guo*

