USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _10/29/2025_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WAYNE BALIGA,

                    Plaintiff,

        - against -

LINK MOTION, INC., et al.,

                    Defendants.

**18 CV 11642(VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

Plaintiff Wayne Baliga ("Baliga") filed a Third Amended Complaint (<u>see</u> "TAC," Dkt. No. 470) in this matter on September 11, 2023, asserting claims for: violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5, 17 C.F.R. § 240.10b-5; violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a); common-law fraud; and negligent misrepresentation. Defendants Vincent Wenyong Shi and Link Motion, Inc. (collectively, "Shi") subsequently filed a motion and a renewed motion to dismiss the common-law fraud claim (<u>see</u> "MTD," Dkt. Nos. 480, 534). Pending before the Court are specific objections (<u>see</u> "Objections" or "Objs.," Dkt. No. 565) filed by Shi to a Report and Recommendation (<u>see</u> the "R&R," Dkt. No. 551) issued on June 9, 2025, by Magistrate Judge Valerie Figueredo ("Judge

1

Figueredo"). For the reasons set forth below, Shi's Objections are hereby **OVERRULED**.

## I.    BACKGROUND[1]

Baliga commenced this action against Shi, Link Motion, Inc. ("LKM"), Roland Wu, and Zemin Xu (collectively, "Defendants"), alleging violations of federal securities laws and state common law. Baliga's suit arises from his purchase and ownership of American Depository Shares ("ADS") of LKM. Because the Court presumes familiarity with the underlying facts of this case from prior orders (see Dkt. Nos. 331, 466, 508), the Court provides only a brief recitation of the facts germane to the common-law fraud claim, the subject of the R&R at issue.

Shi is co-founder of LKM - a multinational technology company that develops, licenses, supports, and sells mobile-software platforms – and served as chairman of the Board of LKM from 2014 through March 2019. (See TAC ¶¶ 17-18.) Baliga purchased and owned LKM ADS between January 21, 2014, and January 18, 2019 – making specific purchases in January, June, July, and August of 2018. (See id. ¶¶ 16-18.) Baliga alleges that during that period, the price of his LKM ADS

---

[1] Except as otherwise noted, the following background derives from Baliga's TAC. (See Dkt. No. 470.)

declined after Defendants engaged in fraudulent transactions and made various misstatements and omissions relating to the underlying securities transactions. (See id. ¶¶ 16, 135.)

On March 30, 2017, LKM announced that it had entered into an agreement with Tongfang SPC ("Tongfang"), under which Tongfang agreed to acquire sixty-three percent of LKM's equity interest in one of LKM's corporate assets, FL Mobile Jiutian Technology Co., Ltd. ("FL Mobile") and sixty-five percent of LKM's equity interest in another of LKM's corporate assets, Beijing Showself Technology Co. Ltd. ("Showself"). (See id. ¶¶ 2, 46.) Defendants represented, including in press releases and in reports, that Tongfang "was a corporate affiliate of Tsinghua Tongfang, a bona fide Chinese state-owned computer manufacturing giant based in Beijing," even though Tongfang was not an affiliate of Tsinghua Tongfang, but instead was owned and controlled by Shi. (Id. ¶¶ 48, 56, 59.)

In a May 31, 2017, press release signed by Shi, LKM stated that Tongfang needed additional time to make the remaining payments due under the parties' agreement, but that Tongfang "communicated its confidence to [LKM] and is making final preparations for completing the transaction." (Id. ¶ 64.) On August 31, 2017, LKM provided a similar update on its

3

website. (See id. ¶ 66.) On November 20, 2017, LKM again stated in a press release signed by Shi that Tongfang was "an affiliate of Tongfang Securities Limited, a part of Tsinghua Tongfang." (Id. ¶ 54.) Baliga reviewed the press release on or about November 21, 2017. (See id. ¶ 55.) On December 14, 2017, LKM issued another press release signed by Shi announcing that the transaction with Tongfang was complete and that Tongfang had "paid in full." (Id. ¶ 69.) Baliga reviewed the press release on or about December 15, 2017. (See id. ¶ 70.) Relying on the foregoing press releases, Baliga continued to hold his existing LKM ADS and purchased additional LKM ADS in January 2018. (See id. ¶¶ 55, 70.)

On February 6, 2018, a report (the "2018 Report") published on the website SeekingAlpha.com revealed that LKM had transferred its equity interests in FL Mobile and Showself to Shi - not to Tongfang, as Defendants had previously represented. (See id. ¶¶ 71-80.) Defendants denied wrongdoing and on April 10, 2018, LKM hosted an earnings call, representing that at the end of 2017, it had "$319.8 million in cash, cash equivalents and terms deposits" with another "$271 million notes receivable." (Id. ¶ 84.)

On May 22, 2018, LKM issued a shareholder letter from Shi stating that LKM's annual report was delayed because of

4

"accounting classification corrections and related updates"
but stated that LKM was "working tirelessly to make the
necessary corrections and provide the corrected financials as
expeditiously as practicable." (Id. ¶ 84.) The letter did not
suggest that LKM had misstated its cash, cash equivalents, or
notes receivable. (See id. ¶ 88.) Baliga continued to hold
his existing LKM ADS during this period and purchased an
additional 71,000 LKM ADS in June, July, and August 2018.
(See id. ¶ 89.)

LKM's share price fell to $0.15 on the last day the
shares were available to trade on the New York Stock Exchange,
and the company was ultimately delisted. (See id. ¶¶ 32, 81.)
On September 11, 2023, Baliga filed the TAC, asserting a
common-law fraud claim, among others. (See TAC.) In his prior
complaint, Baliga adequately pled all elements of the common-
law fraud claim, except for the element of reliance. (See
Dkt. No. 441 at 16-17; Dkt. No. 461 at 7.)

Shi moved to dismiss the common-law fraud claim in the
TAC on October 11, 2023. (See MTD.) The Court referred the
motion to Magistrate Judge Figueredo on October 16, 2023.
(See Dkt. No. 483.) The briefing deadlines associated with
the motion to dismiss, however, were adjourned *sine die*
pending the Court's decision on then-outstanding motions.

(See Dkt. No. 500.) On December 30, 2024, Shi renewed the motion to dismiss the common-law fraud claim in the TAC. (See Dkt. No. 534.) Baliga filed an opposition on January 15, 2025, and Shi submitted a reply brief on February 13, 2025. (See Dkt. Nos. 543, 544.)

Judge Figueredo issued the R&R on June 9, 2025, addressing the issue of justifiable reliance. (See R&R.) In the R&R, Judge Figueredo recommended that the Court find that Baliga adequately pleaded reliance to support a common-law fraud claim regarding his purchase of LKM ADS in January 2018. (See id. at 23.) However, Judge Figueredo also recommended that the Court find that Baliga did not adequately plead a common-law fraud claim regarding his continued holding of LKM ADS or his purchases of LKM ADS in June, July, and August 2018. (See id.)

On June 23, 2025, Shi filed Objections to the R&R, arguing that the Court should reject the recommendation that Baliga adequately pleaded justifiable reliance regarding his purchase of LKM ADS in January 2018. (See Objs. at 2.) On July 17, 2025, Baliga submitted a reply ("Reply") and a motion for leave to file the Reply, which the Court granted. (See Dkt. Nos. 570, 571.) Baliga contends that the Court should deny Shi's Objections and accept the R&R. (See Reply at 4.)

## II.  <u>STANDARD OF REVIEW</u>

Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Rule") 72, the Court may designate a magistrate judge to submit recommendations for the disposition of certain motions. A party may object in writing to the magistrate judge's recommendations, and the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); <u>see</u> Fed. R. Civ. P. 72(b)(3). "The district court need not, however, specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety." <u>Morris v. Local 804, Int'l Brotherhood of Teamsters</u>, 167 F. App'x 230, 232 (2d Cir. 2006); <u>see</u> <u>Minto v. Decker</u>, 108 F. Supp. 3d 189, 192 (S.D.N.Y. 2015) (same).

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); <u>see</u> Fed. R. Civ. P. 72(b)(3).

### III. <u>DISCUSSION</u>

After a de novo review, the Court overrules Shi's Objections. Shi argues, contrary to Judge Figueredo's R&R, that Baliga has not adequately alleged justifiable reliance with respect to his January 2018 purchase of LKM ADS. (<u>See</u> Objs. at 2.) As the R&R sets forth, Baliga relied "on at least two specific public statements from LKM - the November 2017 Press Release and the December 2017 Press Release" - which allegedly misrepresented that "Tongfang SPC was an affiliate of Tsinghua Tongfang" and additionally failed to disclose that Tongfang was "an investment vehicle of Shi's." (R&R at 19; TAC ¶¶ 55, 70.) The R&R also cites Baliga's allegations that he reviewed those press releases - as well as daily news alerts, all SEC filings, and transcripts of quarterly earnings calls - ahead of purchasing the LKM ADS in January 2018. (<u>See</u> R&R at 19.)

Shi contends that Judge Figueredo's recommendations were made in error because they "overlooked the other allegations in the TAC that, when read together with [Baliga's] allegations about the November 2017 to January 2018 period," do not support justifiable reliance. (Objs. at 2-3.) Shi argues that "Baliga's record of purchases . . . shows that [the] disclosures" "had no impact" on his decision to purchase

8

LKM ADS – specifically asserting that Baliga could not have relied on Defendants' "statements in November and December 2017 because Baliga continued to purchase LKM ADS even *after* the February 2018 disclosure allegedly revealed that the contents of the November and December 2017 press releases were fraudulent." (Id. at 3.)

The Court is not persuaded by Shi's argument that Baliga's continued purchases after February 2018 negate the allegations of justifiable reliance before that date. To plead a claim for common-law fraud, a "plaintiff must allege facts to support the claim that it justifiably relied on the alleged misrepresentations." ACA Financial Guar. Corp. v. Goldman, Sachs & Co., 25 N.Y.3d 1043, 1044 (2015). "In assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 195 (2d Cir. 2003). Reasonable reliance is thus a "fact-specific inquiry," Glidepath Holding B.V. v. Spherion Corp., 590 F. Supp. 2d 435, 459 (S.D.N.Y. 2007), and "is therefore often not decided

at the motion to dismiss phase of a litigation." <u>Karsch v. Blink Health Ltd.</u>, 291 F. Supp. 3d 503, 507 (S.D.N.Y. 2018).

As Judge Figueredo noted, Baliga alleged that he reviewed the November 2017 press release, which stated that Tongfang was "an affiliate of Tongfang Securities Limited, a part of Tsinghua Tongfang," on or about November 21, 2017, and relied on this representation when purchasing additional LKM ADS in January 2018. (R&R at 18-19; TAC ¶¶ 54-55). Baliga also pleaded facts that he reviewed the December 2017 press release and "relied upon the inference that Tongfang was a third-party entity, not an investment vehicle of Shi's" – in addition to the "representation that Tongfang SPC had paid RMB 1.55 billion and would be obligated under the terms of the Senior Note to pay a further RMB 1.77 billion" - when purchasing additional LKM ADS in January 2018. (R&R at 19; TAC ¶ 70.) In recommending that Baliga sufficiently pleaded justifiable reliance, Judge Figueredo cited established precedent explaining that plaintiffs can satisfy their burden by alleging that they "read or reviewed allegedly fraudulent materials and relied on those materials in choosing to purchase . . . stock." <u>Gotham Diversified Neutral Master Fund, LP v. Chicago Bridge & Iron Co. N.V.</u>, No. 18-CV-9927, 2019 WL 3996519, at *4 (S.D.N.Y. Aug. 23, 2019) (internal quotation

marks omitted). Here, the Court agrees that Baliga pleaded ample facts that he "read" or "reviewed" the "allegedly fraudulent materials" and relied on them to purchase additional LKM stock in January 2018.

Shi cites Bocci v. Nationstar Mortgage LLC to argue that Baliga has failed to plead justifiable reliance because his allegations do not evidence that "[he] changed [his] behavior in response to believing Defendants' alleged misrepresentations." No. 23-CV-1780, 2024 WL 4326932, at *13 (S.D.N.Y. Sept. 27, 2024). But Bocci does support Shi's contention that because Baliga continued to purchase LKM ADS after the February 2018 disclosure revealed the alleged fraud, Baliga's "purchase of ADS could not have been in reliance on Defendants' specific statements in November and December 2017." (Objs. at 3.) In Bocci, the plaintiff began making reduced payments related to a mortgage loan under a forbearance plan with Nationstar. See 2024 WL 4326932, at *2. Three months later, Nationstar stopped accepting the payments and sent a letter stating that the plan had been approved in error because it lacked investor approval. See id. In an effort to adhere to the terms of the plan, the plaintiff continued to try to make payments, which Nationstar rejected - triggering Deutsche Bank to foreclose on the home.

See id. The plaintiff alleged that Nationstar fraudulently represented that it required investor approval to grant her a standard loan modification and that Deutsche Bank committed fraud by falsely claiming that she defaulted on her mortgage loan. See id. at *13. In finding that the plaintiff had not pleaded justifiable reliance, the court explained that nothing in the complaint "indicate[d] how [the plaintiff] relied on Nationstar's investor-approval representations" or Deutsche Bank's statement to her detriment. See id. The court, therefore, found no indication of how the plaintiff "changed her behavior" because of the alleged misrepresentations. Id.

Here, unlike in Bocci, Baliga's complaint specifically alleges that he relied on the November 2017 and the December 2017 press releases - which allegedly misrepresented, among other facts, Tongfang's affiliations - to purchase the LKM ADS in January 2018. (See TAC ¶¶ 55, 70.) The Court cannot conclude that just because Baliga continued to purchase LKM ADS after the alleged fraud was exposed, he would have also purchased them in January 2018 with full information. Because Baliga pleaded numerous facts indicating reliance, a lack of "changed behavior" does not conclusively negate that alleged reliance. The circumstances here are also distinguishable from the case that the Bocci court relied on to support its

holding. In <u>SRM Global Master Fund Ltd. P'ship v. Bear Stearns Companies LLC</u>, the court found that the "complaint's only relevant factual allegations assert that [the plaintiff] relied on the misrepresentations" "in deciding whether it should liquidate, retain or increase its investment." 829 F.3d 173, 177–78 (2d Cir. 2016). Because the allegations did not indicate that the plaintiff "purchased or sold stock, or actually entered into or unwound a swap agreement, in reliance on the defendants' misrepresentations," the "common law fraud claims were properly dismissed." <u>Id.</u> Here, Baliga alleged he relied on the misrepresentations not to merely contemplate the purchase of – but to actually purchase - additional LKM ADS. (<u>See</u> TAC ¶¶ 55, 70.)

Finally, the Court is also persuaded that Baliga satisfied Rule 9(b) – which requires a plaintiff to "(1) specify the statements that the plaintiff alleges were fraudulent, (2) identify the speaker, (3) indicate when and where the statements were made, and (4) explain why the statements were fraudulent." <u>Bui v. Industrial Enterprises of America, Inc.</u>, 594 F. Supp. 2d 364, 370 (S.D.N.Y. 2009). Here, as Judge Figueredo determined, Baliga (1) articulated the allegedly fraudulent November 2017 and December 2017 press release statements (<u>see</u> TAC ¶¶ 54-55, 69-70), (2) identified

LKM and Shi as the speakers (see id.), (3) indicated that the statements were made in press releases attached to LKM's Form 6-Ks filed with the SEC (see id. ¶¶ 54, 69), and (4) explained that the statements were fraudulent because they misrepresented the relationship between Tongfang and Tsinghua Tongfang and failed to disclose Shi's relationship with Tongfang (see id. ¶¶ 55, 70).

Accordingly, Baliga pleaded justifiable reliance and can sustain his claim of common-law fraud.

## IV. <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the Objections (see Dkt. No. 565) raised by defendants Vincent Wenyong Shi and Link Motion, Inc. (collectively, "Shi") to the Report and Recommendation (see the "R&R," Dkt. No. 551) issued on June 9, 2025, by Magistrate Judge Valerie Figueredo ("Judge Figueredo") in this action, upon the Court's de novo review, are hereby **OVERRULED** with prejudice; and it is further

**ORDERED** that Shi's motion to dismiss (see Dkt. Nos. 480, 534) is **DENIED**, as plaintiff Wayne Baliga ("Baliga") pleaded justifiable reliance and can sustain his claim of common-law fraud related to the purchase of LKM ADS in January 2018. However, Baliga cannot sustain the fraud claim as it relates

14

to his continued holding of LKM ADS or his purchases of LKM
ADS in June, July, and August 2018. The Court adopts the
recommendations set forth in the R&R in their entirety.

**SO ORDERED.**

Dated:    29 October 2025
          New York, New York

_____
                                        Victor Marrero
                                          U.S.D.J.

15