**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WAYNE BALIGA, derivatively on behalf of
LINK MOTION INC. (F/K/A NQ MOBILE INC.)

                    Plaintiff,

    -against-

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI, ROLAND WU, and
ZEMIN XU,

                Defendants

1:18-cv-11642-VM-VF

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION BY DEFENDANTS LINK MOTION INC.
F/K/A NQ MOBILE INC. AND
VINCENT WENYONG SHI**

FELICELLO LAW P.C.
366 Madison Avenue
3rd Floor
New York, New York 10017
Tel. (212) 584-7806
*Attorneys for Link Motion, Inc
and Vincent Wenyong Shi*

Of counsel:    Michael James Maloney

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ...................................................................................................................... 8

I.      The Court should cancel the Class B shares issued to Guo. ........................................ 8

     A.    The internal affairs doctrine requires application of Cayman Islands law to this dispute. ........................................................................................................... 8

     B.    Mr. Guo's Class B shares should be canceled as improperly registered in contravention to Art. 6(ii) of Link Motion's Memorandum of Association. ................. 9

II.     The Court should deny Mr. Guo's application to lift the injunction barring the Receiver from noticing an EGM. ................................................................................... 11

III.    The Court should deny Mr. Guo's request to "direct the Receiver to resume his duties" and bar Mr. Guo from re-noticing an EGM. .................................................... 14

IV.    The Court should reject Mr. Guo's contention that Dr. Shi has been removed as a director of the Company. ........................................................................................ 15

V.     In the alternative, the Court should direct that all disputes concerning Guo's Class B shares, voting rights, and status of directors be submitted to the Cayman Court for determination. ...................................................................................................... 16

VI.    The Court should vacate the June 12, 2025 stay and direct Mr. Seiden to promptly turnover to the Company's counsel all books, records, documents and other things that came into his possession during the receivership. .............................................. 18

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Baliga v. Link Motion Inc.*, No. 18CV11642 (VM) (DF),
2022 WL 2531535 (S.D.N.Y. Mar. 9, 2022) ................................................................ 14, 17

*California by & through Becerra v. U.S. Env't Prot. Agency*,
978 F.3d 708 (9th Cir. 2020) .......................................................................................... 12

*Cohn v. Mishkoff-Costlow Co.*,
256 N.Y. 102 (1931) ........................................................................................................ 17

*CTS Corp. v. Dynamics Corp. of Am.*,
481 U.S. 69 (1987) ......................................................................................................... 2, 8

*Eccles v. Shamrock Cap. Advisors, LLC*,
42 N.Y.3d 321 (2024) ....................................................................................................... 8

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ...................................................................................................... 9, 15

*ePlus, Inc. v. Lawson Software, Inc.*,
789 F.3d 1349 (Fed. Cir. 2015) ...................................................................................... 12

*Ezrasons, Inc. v. Rudd*, No. 2,
2025 WL 1436000 (N.Y. May 20, 2025) .................................................................. 2, 8, 15

*Gaynor v. Buckley*,
318 F.2d 432 (9th Cir. 1963) ............................................................................................ 9

*Gelles v. TDA Indus.*,
44 F.3d 102 (2d Cir. 1994) .............................................................................................. 15

*Harr v. Pioneer Mech. Corp.*,
65 F.2d 332 (2d Cir. 1933) ............................................................................................... 9

*Helmer v. Briody*,
721 F. Supp. 498 (S.D.N.Y. 1989) .................................................................................. 12

*Howe v. Bank of New York Mellon*,
783 F. Supp. 2d 466 (S.D.N.Y. 2011) ............................................................................ 15

*Mony Grp., Inc. v. Highfields Capital Mgmt., L.P.*,
368 F.3d 138 (2d Cir. 2004) ............................................................................................ 12

*Pioche Mines Consol., Inc. v. Foley*,
410 F.2d 742 (9th Cir. 1969) ........................................................................................... 18

*Rogers v. Guar. Tr. Co. of New York*,
   288 U.S. 123 (1933)......................................................................................... 16, 17

*Terry v. Charitable Donor Advised Fund, L.P.*,
   2024 WL 382113 (S.D.N.Y. Feb. 1, 2024).................................................................. 15

## Rules

Fed. R. Civ. P. 54(b).......................................................................................................... 13

Fed. R. Civ. P. 65................................................................................................................ 1

Fed. R. Civ. P. 66................................................................................................................ 1

## Treatises

16 Fletcher Cyc. Corp. § 7880 ......................................................................................... 13

36 Am. Jur. 2d Foreign Corporations § 342.................................................................... 8

5A Fletcher Cyc. Corp. § 2193 ........................................................................................ 18

Defendants Link Motion, Inc., f/k/a NetQin Mobile Inc. ("<u>LKM</u>," "<u>Link Motion</u>" or the "<u>Company</u>") and Vincent Wenyong Shi ("<u>Dr. Shi</u>") respectfully submit this memorandum of law in support of their motion, pursuant to Rules 65 and 66 of the Fed. R. Civ. P. and the Court's inherent powers, for an Order (i) cancelling the Class B shares issued to Lilin "Francis" Guo ("<u>Guo</u>") by Robert W. Seiden, former court-appointed receiver (the "<u>Former Receiver</u>" or "<u>Receiver</u>"); (ii) denying the request by Guo to notice an Extraordinary General Meeting ("<u>EGM</u>") of the shareholders of the Company; and (iii) for other relief set forth in the accompanying Notice of Motion.

<b>PRELIMINARY STATEMENT</b>

This motion addresses several disputes arising from the discharge of Robert W. Seiden as the former receiver for Link Motion. Following discharge of Mr. Seiden, his former agent in China, Mr. Guo, disputed the turnover of corporate books and records to Link Motion and Dr. Shi, Dr. Shi's status as a director, and the injunction against noticing an Extraordinary General Meeting ("<u>EGM</u>") of the shareholders. Link Motion—at the request of another registered shareholder—requested that the Court cancel the Class B shares issued to Mr. Guo, as improperly granted and issued in part without consideration, and requested that the Court reject Mr. Guo's contentions regarding Dr. Shi's status as a registered director of Link Motion. Based on this dispute, Mr. Seiden requested a stay of any obligation he had to turnover the books, records, and assets of the Company.

Mr. Guo's requests should be rejected, and Link Motion's and Dr. Shi's granted. First, the Court should recognize that pursuant to the internal affairs doctrine, Cayman Island law governs the parties' disputes. It is indisputable that Link Motion is organized under the laws of the Cayman Islands, and "[f]ew principles are more firmly entrenched in corporate law than the internal affairs doctrine, a choice-of-law rule providing that, with rare exception, the substantive law of the place of incorporation governs disputes relating to the rights and relationships of corporate shareholders

1

and managers." *Ezrasons, Inc. v. Rudd*, No. 2, 2025 WL 1436000, at *1 (N.Y. May 20, 2025), citing among others *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987).

Applying Cayman Islands law, Mr. Guo's shares must be canceled because they were improperly registered as Class B shares in contravention to Link Motion's governing document, the Memorandum of Association, which require Class B shares be converted into Class A shares where, as here, any issuance of Class B shares meets the criteria of Art. 6(d)(ii) of the Memorandum of Association. A portion of Mr. Guo's shares also must be canceled outright for lack of payment.

Second, the Court should decline Mr. Guo's request to re-appoint the Receiver or otherwise direct and EGM. Link Motion's governing document bars Mr. Guo from voting his shares until he pays for them. And even if he did, upon conversion to Class A shares, Mr. Guo would lack the 33 1/3% voting power necessary to requisition an EGM.

Third, the Court should reject Mr. Guo's contention that the Receiver previously removed Dr. Shi from his position as a registered director. At the request of Mr. Seiden, the Grand Court of the Cayman Islands (the "Cayman Court") previously issued a ruling holding that the Receiver lacked the power to appoint or remove Link Motion directors. ECF No. 556-1, 556-2 (the "Ruling"). Not only has the Receiver acknowledged that the Ruling prevented him from removing Dr. Shi as a director, but the Receiver has also agreed in papers filed with this Court that "the Receiver cannot appoint or remove a director. In line with these powers and limitations, [] Shi still holds the title of Chairman of the Company's board of directors. . . ." ECF No. 173 at 6. There is no basis to deviate from the Cayman Court's ruling on this issue.

Fourth, if there is any question as to whether to grant the relief requested by Link Motion and Dr. Shi on this motion, the Court should exercise in the alternative its discretion to decline

jurisdiction over these internal affairs and direct that these disputed issues be submitted to the Cayman Court for resolution.

Finally, there is no longer any basis to delay the return of Link Motion's books, records and property, which should be promptly turned over by the Receiver.

## STATEMENT OF FACTS[1]

Link Motion, f/k/a NetQin Mobile Inc., is a Cayman Islands limited company founded by Dr. Henry Yu Lin, Mr. Xu Zhou, and Dr. Shi (the "Founders"). *See* ECF No. 130-2 at ECF p.22 of 32; ECF No. 36-4 at 7-8 (Art. 6(d)(ii)). As a Cayman Island company, Link Motion is governed by the laws of the Cayman Island and the terms of its controlling document, the Sixth Amended and Restated Memorandum of Association (the "Memorandum of Association"). *See* ECF No. 130-2 at ECF p.22 of 32; ECF No. 36-4; Ex. A to the Declaration of Michael James Maloney dated December 1, 2025. *See* ECF No. 577, 577-1.

Pursuant to Cayman Islands law and the shareholders of Link Motion are registered in the Company's register of members. *See* Ex. A § 44(1); ECF No. 36-4 at 10 (Art. 8). Plaintiff Wayne Baliga has never been a registered shareholder of the Company and did not appear on the Company's register of shareholders. *See* ECF No. 130-1 (10/22/2018 register of shareholders). Before this case was filed, Baliga held approximately 200,000 American Depositary Receipts ("ADRs"), which represented only an indirect, beneficial interest in approximately 1,000,000 Class A shares of the Company,[2] or approximately 0.18% of Class A voting power.[3]

Before this action was commenced, Mr. Guo was not listed on the register of members. *See*

---

[1] The facts relating to this matter are set forth more fully at ECF Nos. 421-1, 421-5, 435, 438, and 556.

[2] *See* ECF No. 142-6, Deposit Agreement, at 2 (§1.2) ("Each American Depositary Share shall represent the right to receive five Shares. . . .").

[3] *See* ECF No. 130-1 at 10 (1,000,000 shares divided by 570,512,819 total shares as shown on shareholder register as of 10/22/2018); ECF No. 36-4 at 7 (Art. 6(c)) (one vote per Class A share).

ECF No. 130-1. Mr. Guo held only unregistered ADRs representing approximately 3.45% of Class A equivalent voting power.[4]

In 2018, Guo and Baliga retained Robert W. Seiden to bring certain claims against the Company on behalf certain ADR holders. Guo paid Mr. Seiden's legal fees. On December 13, 2018, Mr. Seiden's law firm commenced this action by filing the original Complaint, asserting derivative claims and seeking a preliminary injunction and appointment of Mr. Seiden as receiver for the Company. ECF No. 1.

In 2019, the court appointed Robert W. Seiden as receiver for the Company. ECF No. 26. Mr. Seiden appointed Mr. Guo as agent for the receivership in China. After appointment by this Court, the Receiver applied to the Grand Court of the Cayman Islands (the "Cayman Court") for a ruling recognizing the Receiver's appointment and powers. The Cayman Court issued ruling recognizing the Receiver's appointment but ruled that he lacked the power to appoint or remove Link Motion directors. ECF No. 556-1, 556-2 (the "Ruling"). The basis for the Ruling was that the Cayman Court itself could not have granted to a receiver the power to appoint or remove directors. *See* ECF no. 556-2 ¶15.

In June 2019, the Receiver submitted an *ex parte* letter requesting leave to enter into a Convertible Note Agreement (the "Note") with Mr. Guo, which the Court granted. ECF No. 71.

In 2020 and 2021, Mr. Guo claimed to have advanced $1,725,455 in expenses and requested conversion of this amount into 86,272,750 Class B common shares. *See* ECF No. 419-3, 419-8. The Receiver requested that the Court approve the conversions, but the Receiver failed to give notice to Dr. Shi or any other shareholders. *See generally* ECF Nos. 421-1 ¶¶5-12. The

---

[4] *See generally* ECF No. 428 ¶2 (3,940,198 ADRs, equivalent in voting power to 19,700,990 Class A shares); ECF No. 36-4 at 7 (Art. 6(c)) (one vote per Class A share); ECF No. 130-1 at 10 (shareholder register as of 10/22/2018 showing 570,512,819 total shares).

Receiver also failed to address the provisions of Article 6 of the Memorandum of Association. *See* ECF No. 419-3, 419-8.

The Receiver then registered Mr. Guo as the holder of 86,272,50 Class B shares, representing 53.32% of all Class B shares.[5] Registration of Mr. Guo's shares as Class B shares increased his voting power from 3.45% to over 53.32%. *See* footnotes 4 and 5 *supra* and ECF No. 560-1 at (showing 0% Class B shares as of 5/4/2020) and ECF No. 560-2 at 8 (showing 53.32% Class B shares as of 11/2/2021).

Registration of 53.32% of Class B shares to Mr. Guo caused the collective Class B holdings of Dr. Henry Yu Lin, Mr. Xu Zhou, and Dr. Shi (i.e., the "Founders") to fall from 7.09% to 3.31%. *See* ECF No. 560-1 at 9 of 10 (*see* RPL Holdings Limited ("RPL")[6] as of 5/4/2020) and ECF No. 560-2 at 9 of 10 (as of 11/02/2021). This event triggered Article 6(d)(ii) of Link Motion's Memorandum of Association, which requires the "automatic and immediate" conversion of all Class B shares into Class A shares. ECF No. 36-4 at 7-8 (Art. 6(d)(ii)).[7]

The Receiver failed to comply with Article 6(d)(ii) and registered Mr. Guo's shares as Class B shares instead of Class A shares. *See* ECF No. 560-2 at 8 of 10. If Mr. Guo's shares had been properly converted to Class A shares, he would hold less than 33 1/3% voting power and would lack standing to "requisition" an EGM. *See* ECF No. 560-2 at 8-10 of 10;[8] ECF No. 36-4 at 7-8 (Art. 6(c));[9] ECF No. 36-4 at Art. 55(b) (requiring voting power of 33 1/3% to requisition EGM).

---

[5] *See* ECF No. 560-1 (5/4/2020 shareholder register originally filed at ECF No. 142-2) and ECF No. 560-2 (11/2/21 shareholder register originally filed at ECF No. 285-4 at 109-118).

[6] *See* ECF No. 130-2 at ECF p.9 of 32 (disclosing that "Dr. Henry Yu Lin, Mr. Xu Zhou and Dr. Vincent Wenyong Shi" hold their "share capital indirectly through RPL Holdings Limited").

[7] See ECF No. 560-3, a letter from Network Fortune Limited, a registered holder of 10,000,002 Class A common shares who has requested that Mr. Guo's Class B shares be canceled because they violate Article 6(d)(ii).

[8] 86,272,750 shares registered to Mr. Guo divided by 656,785,569 total shares equals 13.1% voting power.

[9] Providing that Class A shares are entitled to one vote per share whereas Class B shares are entitled to 10 votes per share.

On or about May 16, 2023, the Receiver purported to notice EGMs pursuant to a "requisition" issued by Mr. Guo. *See* ECF No. 421-1 ¶16. Mr. Guo's purported power to "requisition" an EGM is governed by Article 55(b) of the Memo of Association, which requires members seeking to requisition an EGM must possess "not less than one-third" voting power. ECF No. 36-4 at 17-18 (§ 55(b)).

On May 26, 2023 the Court entered a TRO enjoining the EGMs. ECF No. 425. The basis asserted for the TRO was irreparable harm to other shareholders that would result from a change of control. *See* ECF No. 421-5 at 7-8. The TRO was extended on June 21, 2023. ECF No. 440.

On May 19, 2025, the Court issued a Decision and Order approving $1,088,582 of Mr. Guo's expense claims and $207,000 of his salary claims. ECF No. 549 at 39. The Court declined "at this time" to cancel any of Mr. Guo's shares, noting that there remains a "discrepancy between the number of shares converted and approved expenses," which "is for the parties to resolve" and reserving jurisdiction "[i]f this matter is not resolved." ECF No. 550 at 22. In the accompanying Decision and Order, the Court finally discharged the Receiver but reserved jurisdiction. ECF No. 549 at 39. Thus, the Receiver is fully discharged with no power over the Company and control of the Company is now governed by the Memorandum of Association. *See* footnote 1 *supra* and ECF No. 36-4.

On May 30, 2025, the registered and duly appointed directors of Link Motion held a duly noticed meeting. *See* ECF No. 560 at 2. At the meeting, a majority of directors present voted in favor of cancellation of Mr. Guo's Class B shares on the ground that registration of Mr. Guo's Class B shares violated Article 6(d)(ii) of the Memorandum of Association. *See also* ECF No. 560-4. Mr. Guo and Plaintiff have opposed cancellation of the shares.

On June 10, 2025, Guo submitted a letter requesting the Court vacate that part of its June

12, 2023 Order, ECF No. 440 at 3, which extended an injunction barring the Receiver from noticing any EGM. *See* ECF No. 554. In his submission, Guo contended that Mr. Seiden, in his capacity as court-appointed Receiver, had removed Shi as a director of the Company.

On June 11, 2025, Mr. Seiden requested that the Court stay any obligation he has, as Former Receiver, to turn over to the Company its books, records, and other things that came into the Receiver's possession during the receivership. ECF No. 555. Shi opposed on the grounds that the Receiver's purported removal of Shi as a director was null and void as a result of the rulings of the Cayman Islands court, ECF No. 556, 556-1, 556-2, and that Guo lacked any power to notice an EGM because his shares were improperly issued and procedurally flawed. ECF No. 556 at 3; ECF No. 560.

On June 12, 2025, the Court issued an Order temporarily staying "any obligation to turn over Link Motion documents to Shi while the Court resolves the underlying issue of what effect it should give the Cayman Court's decision regarding Guo's appointment as interim director and Shi's removal as a director." ECF No. 557 at 2.

On June 17, 2025, the registered and duly appointed directors of Link Motion met and voted to issue a call upon Mr. Guo's shares pursuant to Article 36 of the Memorandum of Association.[10] Pursuant to the terms of Articles 30, 37, and 70, issuance of a call on unpaid shares bars the holder from voting his shares until payment is made and failure to pay the call will result in forfeit of the unpaid shares. *See* ECF No. 36-4 at 15 (*see* Art. 37) and 20 (*see* Art. 70). As of the date of this motion, Guo has failed to pay the amounts requested in the call on his shares.

In addition to their prior requests for an order declaring that Dr. Shi has not been removed

---

[10] See ECF No. 560-4, a letter from Xiao Yu, a registered director of Link Motion, opposing Mr. Guo's request, and ECF No. 568-1, Notice of the Call has not yet been served. *See also* ECF No. 36-4 at 14 (Art. 36).

as a director, Dr. Shi and Link Motion requested by letter an Order (i) cancelling at least 31,843,650 Class B shares for nonpayment, (ii) cancelling the remainder of Guo's Class B shares as improperly issued, (iii) converting the remainder of Mr. Guo's shares into Class A shares,[11] and (iv) extending the stay against noticing of an EGM and denying Mr. Guo's request to lift the injunction precluding the Receiver from noticing an EGM. ECF No. 568.

On October 24, 2025, the parties submitted a proposed schedule for briefing on the disputed issues. ECF No. <u>573</u>. The Court has now referred these matters to the Hon. Valerie Figueredo. ECF No. <u>574</u>.

## ARGUMENT

**I.      The Court should cancel the Class B shares issued to Guo.**

**A.      The internal affairs doctrine requires application of Cayman Islands law to this dispute.**

"Few principles are more firmly entrenched in corporate law than the internal affairs doctrine, a choice-of-law rule providing that, with rare exception, the substantive law of the place of incorporation governs disputes relating to the rights and relationships of corporate shareholders and managers." <u>Ezrasons, Inc.</u>, 2025 WL 1436000, at *1, citing <u>Eccles v. Shamrock Cap. Advisors, LLC</u>, 42 N.Y.3d 321, 328 (2024) and <u>CTS Corp.</u>, 481 U.S. at 89. Actions on claims for cancellation of corporate stock or voting rights necessary implicate the internal affairs doctrine. *See*, *e.g.*, <u>CTS Corp.</u>, 481 U.S. at 89 ("No principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations, including the authority to define the voting rights of shareholders"); *see* <u>36 Am. Jur. 2d Foreign Corporations § 342</u> ("As a general proposition, the courts of one state will not decide what circumstances, under the laws of the state

---

[11] Dr. Shi and Link Motion contend that 10,350,000 of these shares reflecting the salary of $207,000 approved by the Court should be canceled as not properly convertible into shares under the terms of the Note.

of incorporation, regulate the relation of stockholders in a foreign corporation to each other and to the corporation"); *see also Harr v. Pioneer Mech. Corp.*, 65 F.2d 332, 334 (2d Cir. 1933) (holding that the law of the state of incorporation governs the status of the holder and potential purchasers of different classes of stock in the corporation); *Gaynor v. Buckley*, 318 F.2d 432, 434 (9th Cir. 1963) ("The issuance of stock options involves the internal affairs of G-P, and is governed by the law of the state of its incorporation, Georgia").

Here, there c no dispute that Link Motion is a Cayman Islands corporation and its internal affairs are governed by the law of the Cayman Islands. *See* ECF No. 130-2 at ECF p.22 of 32 (Link Motion's "corporate affairs are governed by our memorandum and articles of association, as amended and restated from time to time, and by the Companies Law (2010 Revision) and common law of the Cayman Islands").; ECF No. 36-4; *see, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) ("only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands"). *See also* ECF No. 130-2 at ECF p.22 of 32. Under Cayman Islands law, the issuance of shares is governed by the Cayman Islands Companies Act and Link Motion's Memorandum of Association. *See* ECF No. 36-4; Ex. A.

### B.    Mr. Guo's Class B shares should be canceled as improperly registered in contravention to Art. 6(ii) of Link Motion's Memorandum of Association.

Under Cayman Islands law, share ownership must be kept on the register of members. Ex. A § 44(1); ECF No. 36-4 at 10 (Art. 8). As discussed above, the Receiver registered Mr. Guo's name on the register of members as the owner of 86,272,750 Class B shares. *See* ECF No. 560-3.

The Receiver's registration of Mr. Guo's Class B shares violated Article 6(d)(ii) of Link Motion's Memorandum of Association, which provides that all Class B shares must be

"automatically and immediately converted" into Class A shares when the Founders' Class B shares fall below "5% of the total number of the issued and outstanding Class B Common Shares of the Company." ECF No. 36-4 at 7-8 (Art. 6(d)(ii)); *see* ECF No. 560-3.

When the Receiver registered 86,272,750 Class B shares to Mr. Guo, the Founders' Class B holdings, held by RPL, fell from 7.09% to 3.31%, triggering §6(ii) of the Memo of Association. *See* ECF No. 560-1 at 9 of 10 (RPL Class B holdings as of 5/4/2020); ECF No. 560-2 at 9 of 10 (RPL Class B holdings as of 11/2/21). Accordingly, Mr. Guo's Class B shares should have been converted to Class A shares and are improperly registered as Class B shares on Link Motion's register of members in violation of Article 6(d)(ii) of the Memorandum of Association.

In addition, at least 31,843,650 of Mr. Guo's Class B shares were registered without receiving payment of consideration for those shares. As the Court noted in its Decision and Order, there remains a "discrepancy" between the amount of expenses authorized and the amount previously converted. *See* ECF No. 550 at 22. This "discrepancy" reflects the number of shares for which Mr. Guo has not paid consideration.[12] *See id*. Pursuant to Articles 36 and 37 of the Memorandum of Association, Mr. Guo's unpaid shares should be canceled for nonpayment. *See* ECF No. 36-4 at 15 (Art. 36 & 37). The shares reflecting the Court-approved "salary" also should be canceled because the Note permits conversion of only amounts advanced for expenses, not salary. *See* ECF Nos. 419-1, 419-2.

Where a member's ownership has been improperly or erroneously registered on the Company's register of members, Section 46 of the Cayman Companies Act provides for the remedy of a motion to the Cayman Islands Court to correct the error:

> If the name of any person is, without sufficient cause, entered in or omitted

---

[12] The conversion ratio for Mr. Guo's shares is $0.02 per share. *See* ECF No. 419-3 at ECF p.31 ($894,055 divided by 44,702,750 shares); ECF No. 419-8 at ECF p.40 ($831,400 divided by 41,570,000 shares).

> from the register of members of any company, or if default is made or
> unnecessary delay takes place in entering on the register the fact of any
> person having ceased to be a member of the company, the person or member
> aggrieved or any member of the company or the company itself may, by
> motion to the Court, apply for an order that the register be rectified; and the
> Court may either refuse such application with or without costs to be paid by
> the applicant or it may, if satisfied of the justice of the case, make an order
> for the rectification of the register, and may direct the company to pay all
> the costs of such motion, application or petition, and any damages the party
> aggrieved may have sustained. The Court may, in any proceeding under this
> section, decide any question relating to the title of any person who is a party
> to such proceeding to have that person's name entered in or omitted from
> the register, whether such question arises between two or more members or
> alleged members, or between any members or alleged members and the
> company, and generally, the Court may, in any such proceeding, decide any
> question that it may be necessary or expedient to decide for the rectification
> of the register: Provided that the Court may direct an issue to be tried, on
> which any question of law may be raised.

Ex. A at 50 (§ 46).

Here, the Company has demonstrated that pursuant to Cayman law, Mr. Guo's name was
improperly registered, and there exists good cause to correct the register of members to (i) cancel
31,843,650 of Mr. Guo's Class B shares for nonpayment, and (ii) cancel the remainder of Mr.
Guo's Class B shares and convert them into Class A shares.

## II.    The Court should deny Mr. Guo's application to lift the injunction barring the Receiver from noticing an EGM.

Not only is this request improper because the Receiver has been discharged and lacks any
power, but Mr. Guo's "requisition" is invalid because he lacks voting power necessary to
requisition and EGM. Pursuant to Article 55(b) of the Memorandum of Association, a member
must hold "no less than one-third" voting power to requisition and EGM. ECF No. 36-4 at 17 (Art.
55(b)). Mr. Guo lacks the necessary voting power because: (i) his Class B shares were improperly
registered and must be converted to Class A shares, (ii) a substantial portion of Mr. Guo's shares
must be canceled for nonpayment, and (iii) he is barred from voting his shares until he pays the
call on his shares issued by the board of directors. The Board of Directors properly exercised its

power to issue a call upon Mr. Guo's shares. *See* ECF No. 568-1; ECF No. 36-4 at 14 (Art. 30). Mr. Guo has failed to pay the call and pursuant to Article 70 of the Memorandum of Association, Mr. Guo has no right to vote any of his shares. ECF. No. 36-4 at 20 (Art. 70).

The cases cited by Mr. Guo in his prior submissions are inapposite. *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1355 (Fed. Cir. 2015) is inapplicable because that case involved circumstances where a court canceled an injunction in light of action by a federal agency that canceled a patent claim that was the subject of the injunction. *California by & through Becerra v. U.S. Env't Prot. Agency*, 978 F.3d 708, 714 (9th Cir. 2020) does not apply because that case involved circumstances where Congress changed the legal basis for the injunctive relief.

Here, there has been no change in Cayman Islands law or the Memorandum of Association. And the Court has reserved jurisdiction over the issue of cancellation of Mr. Guo's Class B shares. *See* ECF No. 550 at 22. The parties clearly dispute these issues, and a majority of the duly appointed directors have voted to cancel Mr. Guo's Class B shares and issue a call upon Mr. Guo's unpaid shares. *See* 568-1.

In contrast to *Helmer v. Briody*, 721 F. Supp. 498, 505 (S.D.N.Y. 1989), cited by Mr. Guo, the irreparable harm originally justifying the TRO still exists: If the EGMs are allowed to go forward, the Receiver and Guo will effect a change of control of Link Motion without having the requisite 33 1/3% voting control to "requisition" an EGM. *See Mony Grp., Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 147 (2d Cir. 2004) (a change of control transaction can constitute irreparable harm to shareholders). Accordingly, *Helmer* is inapposite, and the Court should continue the existing TRO to prevent irreparable harm to the other shareholders pending resolution of the share cancellation motion. *See* ECF No. 560-3.

There exists a likelihood of success on the anticipated motion to cancel all of Mr. Guo's Class B shares because the motion simply requests that the Court enforce the existing provisions of Link Motion's corporate documents in accordance with Cayman Islands law. *See* ECF No. <u>36-4</u> at 7-8 (Art. 6(d)(ii)) (requiring automatic conversion of Class B shares into Class A shares).[13] As discussed above, the internal affairs doctrine requires application of Cayman Islands law to resolve this issue.

There is also a likelihood of success on the request to cancel 31,843,650 shares for nonpayment. These shares are subject to cancellation because they are unpaid and the Board of Directors has issued a call upon Mr. Guo's unpaid shares, making them subject to forfeiture. *See* ECF No. <u>550</u> at 22; ECF No. <u>36-4</u> Art. 37; *see also* ECF No. <u>560-4</u>.

The Court has jurisdiction over the motion to cancel Mr. Guo's shares because "[t]he purchaser at a receivership sale takes the property with notice that the court has discretionary power to set it aside," <u>16 Fletcher Cyc. Corp. § 7880</u>, and the Court has reserved jurisdiction over this issue. *See* ECF No. 550 at 22. Here, Mr. Guo purchased his Class B shares from the Receiver by contributing services pursuant to the Note authorized by the Court. Thus, Mr. Guo's purchase of shares is functionally equivalent to a "purchase[] at a receivership sale." <u>16 Fletcher Cyc. Corp. § 7880</u>. The Court's prior rulings regarding the Receiver's actions do not bar a motion to cancel the shares because final judgment has not been entered. *See* <u>Fed. R. Civ. P. 54</u>(b).[14]

Thus, the Court retains the jurisdictional power to set aside all or any part of Mr. Guo's purchase of Class B shares, and the TRO should be continued until the motion to cancel the Mr. Guo's shares is finally resolved. *But see also* Point V *infra*.

---

[13] The previously issued Notices of EGMs should be stricken as improperly issued.

[14] ("[A]any order or other decision . . . that adjudicates fewer than all the claims or . . . rights . . . of fewer than all the parties . . . may be revised at any time before the entry of a judgment.")

**III.     The Court should deny Mr. Guo's request to "direct the Receiver to resume his duties" and bar Mr. Guo from re-noticing an EGM.**

Guo's request is nothing more than a motion for re-appointment of the Receiver and his agent, but as this Court ruled over three years ago, there is no basis for continuation of the Receiver. ECF No. <u>331</u> at 23, adopting ECF No. <u>275</u> at 33-39. Mr. Guo cannot demonstrate any irreparable harm that would justify his request. His compensation claims are claims for money damages only and do not support any form of equitable relief. *See* ECF 275, reported at <u>*Baliga v. Link Motion Inc.*</u>, No. 18CV11642 (VM) (DF), 2022 WL 2531535, at *16 (S.D.N.Y. Mar. 9, 2022) ("given the nature of his currently pleaded, direct securities-fraud claims, Baliga can no longer show that available legal remedies would be inadequate to afford him relief on his claims; that he (as the real party-in-interest in the case) would be likely to suffer harm in the absence of a receivership; or, more generally, that the 'drastic' remedy of a continued receivership would be necessary to prevent him from suffering irreparable harm. For these reasons, he cannot meet his 'heavy' burden of demonstrating any continued need for the receivership"), *report and recommendation adopted,* No. 18 CIV. 11642 (VM), 2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022).

Like every other shareholder, Mr. Guo's rights as a shareholder are governed by the terms of the Memorandum of Association, which requires that his Class B shares be canceled and converted into Class A shares and that the "discrepancy" shares be canceled for nonpayment. *See* ECF No. <u>36-4</u> at Art. 6(ii) and Art. 37. There is no basis to treat Mr. Guo better than the other shareholders. *See* ECF No. <u>560-3</u>, <u>560-4</u>. The Court should bar Mr. Guo from purporting to exercise any right to "requisition" an EGM under Art. 55(b) until the dispute concerning cancellation and conversion of his Class B shares is finally determined.

**IV.      The Court should reject Mr. Guo's contention that Dr. Shi has been removed as a director of the Company.**

The Cayman Court has already decided that the Receiver lacked the power to appoint or remove Link Motion directors. *See* ECF No. 556, 556-1, 556-2. The Cayman Court's Ruling is well-supported by the reasoning that the Receiver lacked such power because it was a power the Cayman Court itself could not have granted to a receiver. *See* ECF no. 556-2 ¶15. The Cayman Court is a competent court of the state of incorporation and has already ruled on this exact issue, finding that Mr. Seiden lacked the power to appoint or remove directors of Link Motion. ECF No. 556-1, 556-2.

Pursuant to the internal affairs doctrine, this Court should defer to the Cayman Court's ruling. *See Edgar*, 457 U.S. at 645; *Gelles v. TDA Indus.*, 44 F.3d 102, 106 (2d Cir. 1994); *Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 475 (S.D.N.Y. 2011); *Ezrasons, Inc.*, 2025 WL 1436000, at *1. There is no reason to disregard the Cayman Ruling. The Receiver was a party to the Cayman proceeding resulting in the Ruling and failed to appeal the ruling. Accordingly, the Cayman Court's rulings are collateral estoppel on this issue. *See Terry v. Charitable Donor Advised Fund, L.P.*, 2024 WL 382113, at *16 (S.D.N.Y. Feb. 1, 2024) (applying principles of comity to recognize a Royal Court of Guernsey decision as collateral estoppel against a party to a federal civil action).

The Receiver himself has acknowledged and accepted the validity of the Cayman Court's Ruling, agrees that he lacked any power to remove Dr. Shi, and agrees that Dr. Shi remains a director of Link Motion. *See* ECF No. 173 at 6 ("[T]he Receiver cannot appoint or remove a director. In line with these powers and limitations, [] Shi still holds the title of Chairman of the Company's board of directors"). Mr. Guo provides no authority to the contrary.

This Court's prior ruling that Plaintiff had standing under the federal securities laws at the time this action was commenced provides no basis for non-recognition of the Cayman Court's Ruling. As this Court has recognized, Plaintiffs' remaining securities fraud is a direct claim for money damages only that is utterly insufficient to support invocation of the Court's equitable powers. *See* ECF No. 275 at 33-39, adopted at ECF No. 331.[15] The facts underlying Plaintiff's current securities claim relate solely to a January 19, 2018 purchase of ADRs and, therefore, have no connection to the internal affairs of Link Motion. There is no other basis to disregard the Cayman Court's Ruling that the receiver had no power to remove Dr. Shi.

V.      **In the alternative, the Court should direct that all disputes concerning Guo's Class B shares, voting rights, and status of directors be submitted to the Cayman Court for determination.**

The disputes concerning cancellation of Mr. Guo's Class B shares, Guo's request to notice and EGM, and Shi's status as a director are before the Court pursuant to the Court's May 19, 2025 Orders reserving jurisdiction. *See* ECF No. 549 at 40 and ECF No 550 at 22. Nonetheless, the Court has the discretion to decline to exercise its jurisdiction over these disputes concerning the internal affairs of Link Motion.

"It has long been settled doctrine that a court—state or federal—sitting in one State will as a general rule decline to interfere with or control by injunction or otherwise the management of the internal affairs of a corporation organized under the laws of another state but will leave controversies as to such matters to the courts of the state of the domicile." *Rogers v. Guar. Tr. Co. of New York*, 288 U.S. 123, 130-31 (1933). Even where a federal court has jurisdiction over a dispute concerning the internal affairs of a foreign corporation, a federal court will ordinarily decline to exercise such jurisdiction in favor of the dispute being resolved in the jurisdiction of

---

[15] *See also* ECF No. 470 at 43 (alleging a purchase price of $19,245.95 for the January 19, 2018 purchase).

incorporation. _Rogers_, 288 U.S. at 131 ("But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency, and justice point to the courts of the state of the domicile as appropriate tribunals for the determination of the particular case"), citing _Cohn v. Mishkoff-Costlow Co._, 256 N.Y. 102, 105 (1931).

The weight of authority makes clear that the disputed issues concerning share cancelation, voting rights, and director status fall squarely within the internal affairs doctrine. The facts and circumstances weigh in favor of submitting these issues to the Cayman court for determination because there is a genuine risk of conflicting orders if these issues are resolved in this Court. The risk of conflicting orders is real because Guo and Baliga ask this Court to make a finding (that the Receiver removed Shi from his office as a director) that is contrary to a prior ruling of the Cayman court (which ruled that the Receiver had no power to remove a director). Rather than make a conflicting ruling, this Court should decline to exercise jurisdiction over this dispute and defer the issue to the Cayman Court.

There are no countervailing factors weighing in favor of resolving these disputed internal affairs in New York because there are no longer any derivative claims pending in this action that would support invocation of the Court's equitable powers. _See Baliga_, 2022 WL 2531535, at *16 (Baliga "cannot meet his 'heavy' burden of demonstrating any continued need for the receivership").

Accordingly, "[t]he facts and circumstances disclosed by the record clearly bring this case within the general rule and abundantly justify the exercise of discretion on the part of the District Court" in declining to exercise its jurisdiction and directing these disputes to be submitted to the Cayman court. _Rogers_, 288 U.S. at 132–33.

**VI.      The Court should vacate the June 12, 2025 stay and direct Mr. Seiden to promptly turnover to the Company's counsel all books, records, documents and other things that came into his possession during the receivership.**

Upon the discharge of a court-appointed receiver, "[i]t is the duty of retiring officers to turn the custody and possession of the corporate books and records over to their successors in office." 5A Fletcher Cyc. Corp. § 2193. The successor to a corporate receiver who has been discharged is to be determined by the law of the jurisdiction in which the corporation is incorporated. *See Pioche Mines Consol., Inc. v. Foley*, 410 F.2d 742, 744 (9th Cir. 1969).

Under Cayman Islands law, a Cayman Islands company is managed by its directors in accordance with the Cayman Islands Companies Law and the Company's organizational documents. ECF No. 36-4 at 23 (Art. 85) ("Subject to the provisions of the Companies Law, these Articles and to any resolutions made in a general meeting, the business of the Company shall be managed by the Directors").

The Court's May 19, 2025 order makes clear that Mr. Seiden "is no longer bound by and is hereby discharged and released from his duties, obligations, and responsibilities as set forth in the Receivership Order (Dkt. No. 26). . . ." ECF No. 549 at 39-40. Because Mr. Seiden is now discharged from the office of receiver, he is now obligated to return the books and records to the registered directors of the Company. *See* 5A Fletcher Cyc. Corp. § 2193. As discussed above, Link Motion's register of directors shows that Dr. Shi remains a registered director of Link Motion.

The Court should disregard Guo's and Mr. Seiden's arguments regarding Shi's status as a director of the Company. Cayman Islands law and the Company's corporate documents provide that the identity of the directors is set forth on a register of directors maintained by the Company's registered office. Ex. A at 55 (§ 55A(1)). Here, the register of Directors of LKM show that Shi, Jia Lian, and Xaio Yu remain registered directors of the Company. ECF No. 334-1.

Accordingly, the Court should follow Cayman Island law and recognize Dr. Shi's status as

director as reflected in the register of directors. As discussed above, there is no reason to deviate

from Cayman Island law.

## CONCLUSION

For all the reasons set forth above, the Court should grant LKM's and Dr. Shi's motion and issue an Order canceling the shares issue to Guo, granting the other relief requested in the accompanying Notice of Motion, and granting other or further relief as the Court deems just and equitable.

Dated:  New York, New York            Respectfully submitted,
        December 1, 2025

                                      FELICELLO LAW P.C.

                                      By:   */s/ Michael James Maloney*
                                            Michael James Maloney
                                      366 Madison Avenue
                                      3rd Floor
                                      New York, New York 10017
                                      Tel. (212) 584-7806
                                      mmaloney@felicellolaw.com
                                      *Attorneys for Link Motion Inc. and Vincent*
                                      *Wenyong Shi*