UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
WAYNE BALIGA,

                                   Plaintiff,                       18-CV-11642 (VM) (VF)

              -against-                                             **OPINION & ORDER**

LINK MOTION INC. (F/K/A NQ MOBILE INC.),
VINCENT WENYONG SHI, ROLAND WU,
and ZEMIN XU,
                                   Defendants.
---------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

Plaintiff Wayne Baliga ("Plaintiff") commenced this action against Link Motion Inc.

("LKM"), Vincent Wenyong Shi ("Shi"), Roland Wu, and Zemin Xu for alleged violations of

federal securities laws and state common law. Presently before the Court is Shi and LKM's

motion for an order (1) canceling and converting certain Class B shares of LKM stock issued to

Lilin "Francis" Guo ("Guo"); (2) maintaining the temporary injunction that bars convening an

Extraordinary General Meeting ("EGM") of the shareholders of LKM; (3) affirming the

discharge of Robert W. Seiden ("Seiden" or the "Receiver"), the former court-appointed

receiver; (4) declaring that Shi remains a registered director of LKM; and (5) directing Seiden to

turn over all documents and records related to LKM. See ECF Nos. 576, 578. As set forth herein,

the motion is **GRANTED in part** and **DENIED in part**.

<h3 align="center">BACKGROUND[1]</h3>

LKM, formerly known as NQ Mobile Inc., is a multinational technology company that

develops, licenses, supports, and sells mobile-software platforms, including mobile games and

---

[1] The Court presumes the parties' familiarity with the factual and procedural background
of this case which has been detailed in numerous opinions. See, e.g., ECF Nos. 275, 372, 461,
466, 508, 529, 549, 550. Only the facts germane to the instant motion are recited herein.

social-media platforms, as well as services that focus on the smart-car and smart-ride business. ECF No. 470 at ¶ 17. LKM is incorporated in the Cayman Islands. ECF No. 130-2 at 2.[2] Shi is LKM's co-founder, who served as chairman of the Board of LKM from 2014 through March 2019. ECF No. 470 at ¶ 18.

On February 1, 2019, the Court issued an order (the "Receivership Order") appointing Seiden as a temporary receiver for LKM. ECF No. 26. That order authorized the Receiver to protect the status quo of the Company and prevent waste, dissipation, and theft of assets. See id. at § II (2). On April 17, 2019, the Receiver notified the Court that Shi had been removed from LKM's Board of directors and that Guo had been appointed as the Receiver's agent in China and as interim director. See ECF No. 43 at ¶ 10; see also ECF No. 549 at 3. At the time of his appointment, Guo held over six million American Depository Shares ("ADS") of LKM, for which his total investment was approximately $20 million between 2017 and 2018.[3] See ECF No. 477-1 at ¶ 2.

The Receiver submitted to the Court an *ex parte* letter dated June 18, 2019, requesting approval of a convertible note agreement (the "Note Agreement") entered into between Guo and the Receiver. See ECF No. 71; see also ECF No. 419-1 at 5. Under the terms of the Note Agreement, Guo was to provide LKM with a loan of Renminbi ("RMB") equivalent to $1,500,000 USD to help fund LKM's day-to-day operations within China and Hong Kong. See ECF No. 419-1 at 5. The repayment of the loan under the Note Agreement was contingent on the

---

[2] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the electronically generated pagination in those documents.

[3] ADS "represent an interest in the shares of a non-U.S. company that have been deposited with a U.S. bank." Sec. & Exch. Comm'n, Investor Bulletin: American Depository Receipts (Aug. 2012), available at https://www.sec.gov/investor/alerts/adr-bulletin.pdf (last accessed Aug. 7, 2026).

Receiver successfully recovering and securing liquid funds of LKM. See id. Under the terms of the Note Agreement, Guo could choose to convert his loan into Class B shares of LKM at $0.10 per ADS equivalent upon the Note Agreement's maturity date. See id. at 6. After the Court's approval of the Note Agreement, Guo, acting as the Receiver's agent, sought to establish control of, and manage, LKM and its subsidiaries in China, including engaging in recovery efforts. See ECF No. 477-1 at ¶¶ 10-18. Guo incurred numerous expenses in this regard, and hired accounting, legal, and translational professionals in China to help achieve the Receiver's goal of monitoring and safeguarding LKM's assets. See id.

On February 3, 2020, the Grand Court of the Cayman Islands recognized this Court's appointment of Seiden as the Receiver, reserving only "the power . . . to appoint or replace any director of [LKM]." ECF No. 132-1 at ¶ 2. On June 1, 2020, the Receiver submitted an application requesting that the Court convert the Note Agreement to Class B common shares in accordance with the terms of the Note Agreement. ECF No. 419-4 at 3. On June 5, 2020, the Court granted the Receiver's application to convert the past outstanding loan amount into Class B shares for Guo, pursuant to the Note Agreement. Id.; ECF No. 419-9 at 3. On July 14, 2020, the Grand Court of the Cayman Islands affirmed the Receiver's power to issue 44,702,750 Class B common shares to Guo pursuant to the terms of the Note Agreement. ECF No. 419-6 at 2-3. On July 22, 2020, the Receiver, acting on behalf of LKM, issued 44,702,750 Class B common shares of LKM to Guo. ECF No. 419-7 at 2-3.

On August 30, 2020, the Receiver submitted a second application requesting that the Court approve Guo's request to exercise his option to convert the Note to Class B shares in accordance with the terms of the Note and to further approve the Receiver to take the necessary steps to register the converted shares with the Cayman Registry. ECF No. 419-9 at 3. On

September 8, 2021, the Court approved the application. Id. On October 14, 2021, the Grand Court of the Cayman Islands approved the Receiver's power to issue 41,570,000 Class B common shares of LKM to Guo. ECF No. 419-11 at 2-3. On October 19, 2021, the Receiver, acting on behalf of LKM, issued 41,570,000 Class B common shares of LKM to Guo. ECF No. 419-12 at 2-3.

On February 4, 2022, the Receiver submitted an application to the Grand Court of the Cayman Islands in which he advanced "a request from [Guo], who is the registered owner of shares representing approximately 40% of the voting rights in [LKM], that shareholder meetings be convened[.]" ECF No. 285-3 at ¶ 5. At that time, Guo was the registered owner of 86,272,750 Class B common shares, which "represent[ed] approximately 40% of the voting rights, but only approximately 13% of the par value of all issued shares." Id. at ¶¶ 17.3-17.4. As a result, Guo himself "[could] not requisition a shareholders' meeting under Article 55 [of LKM's Articles of Association]" and only the Receiver "would have the authority to exercise the powers of [LKM]'s directors under Article 55 to call an [EGM] based on the Receivership Order and the Recognition Order." Id. at ¶¶ 17.4, 18. On February 23, 2022, the Grand Court of the Cayman Island authorized the Receiver to call an EGM in his own capacity. ECF No. 271-1.

On August 25, 2022, this Court concluded that there was no longer a basis for the receivership and ordered that the Receiver be discharged following a full accounting of the activities performed during the period of the Receiver's appointment. See ECF No. 331 at 23. The Court subsequently ordered the Receiver to submit an accounting of the receivership with supporting documentation (see ECF No. 359 at 1) and referred the accounting to the undersigned for a report and recommendation (see ECF No. 362). During the accounting, Shi objected to the compensation paid by the Receiver to Guo. See ECF No. 393 at 3; ECF No. 394 at ¶ 80. Shi

argued that the equity granted to Guo was an "improper windfall," that Guo's shares should be canceled, and that the Receiver should be "surcharged for value of the windfall compensation" awarded to Guo. ECF No. 393 at 3. Shi also described the compensation to Guo as "excessive, unnecessary, and unreasonable" and asserted that Guo's exercise of his right to convert his repayment into shares of LKM, "massively diluted the voting rights and equity interests of existing shareholders of" LKM. ECF No. 394 at ¶¶ 82, 84. Shi raised no other objections to Guo's compensation. Shi then moved to unseal the Note Agreement, and the Court directed the Receiver to file the Note Agreement on the public docket. See ECF No. 413. On May 24, 2023, the Receiver publicly filed the Note Agreement on the docket, as well as the previously sealed letter requesting court approval of the Note Agreement (the "Application"). See ECF No. 419-1.

After the Receiver publicly filed the Note Agreement and the Application, Shi filed a proposed order to show cause with emergency relief under Rule 60(b) seeking an order enjoining the Receiver and Guo from convening a meeting of LKM shareholders pending a final determination with respect to the Receiver's accounting. See ECF No. 440 at 1; ECF No. 42-1 at ¶ 2. That same day, the Court temporarily enjoined the Receiver and Guo from proceeding with any shareholder meeting and extended the injunction until the Receiver's accounting of expenses, including Guo's expenses, was resolved. See ECF No. 440 at 1.

During the accounting, Shi filed objections to Guo's compensation and expense claims, raising the issue of the Note Agreement again and repeating the arguments he made in the proposed order to show cause. See ECF No. 473 at 15-23. Specifically, Shi argued that (1) the Court's prior orders concerning the Note Agreement and Class B shares should be vacated based on newly discovered evidence and because the orders have no precedential value, (2) the Court

5

should find that Guo did not pay for the shares he received, and (3) the Note Agreement should be cancelled. Id.

By November 2024, this Court had issued two Reports and Recommendations ("R&Rs") approving the Receiver's accounting and most of Guo's expenses. See ECF Nos. 466, 529. In approving Guo's expenses, I declined to rule on Shi's then-pending objections to Guo's compensation and expense claims (see ECF No. 473) because that issue was not within the scope of the referral by Judge Marrero (see ECF No. 529 at 34-35). In his objections to the R&Rs, Shi raised an additional argument, made for the first time, that if the Court declined to vacate the Note Agreement, it should alternatively reduce the number of shares Guo was issued as a result of the conversion and cancel "at least 34,124,500 of Guo's Class B shares," because Guo "received more shares than he is entitled to." See ECF No. 533 at 25-26. Shi averred that "[t]he difference between the amount converted by the Receiver ($1,725,455) and the amount authorized in the [November 24] R&R ($1,042,985) is $682,470," and thus "[a]pplying a per share price of $0.02, a minimum of 34,123,500 of Guo's Class B shares must be canceled."[4] Id. at 26.

On April 8, 2025, Judge Marrero issued an order informing the parties that the Court was prepared to adjudicate Shi's Rule 60(b) motion based on the existing briefing but would allow one final submission from each party. See ECF No. 546. On April 14, 2025, the Receiver and Shi filed separate letters summarizing their arguments regarding the Note Agreement. See ECF Nos. 547, 548. Shi's letter asserted that (1) the Receiver's filings to obtain Court approval of the Note Agreement omitted and misrepresented materials facts concerning the Note Agreement and Guo,

---

[4] Shi's memorandum is inconsistent in that it states both that the Court should cancel "at least 34,124,500" shares and "a minimum of 34,123,500" shares. ECF No. 533 at 25-26.

(2) Guo's shares should be canceled for failure to comply with the terms of the Note Agreement, (3) the Court's prior orders regarding the Note Agreement and related conversions should be disregarded, and (4) in the alternative to cancelling all of Guo's shares, at least 34,123,500 of Guo's shares should be cancelled. See ECF No. 548. Judge Marrero denied Shi's Rule 60(b) motion on May 19, 2025. ECF No. 550. In a separate order issued on May 19, 2025, Judge Marrero "discharged and released" the Receiver "from his duties, obligations, and responsibilities as receiver as set forth in the Receivership Order[.]" ECF No. 549 at 39.

On June 10, 2025, Guo filed a letter requesting (1) clarification as to whether the previously noticed EGMs may be re-noticed and convened on new dates; (2) arguing that the injunction barring EGMs should be dissolved; and (3) asking that either Guo or the discharged Receiver be permitted to re-notice and convene the EGMs. ECF No. 554. On June 12, 2025, Judge Marrero granted the discharged Receiver a "temporary stay of any obligation to turn over [LKM] documents to Shi while the Court resolves the underlying issue of what effect it should give the Cayman Court's decision regarding Guo's appointment as interim director and Shi's removal as a director." ECF No. 557 at 2; see also ECF No. 132-1. Judge Marrero also directed the parties to indicate their positions on the "intertwined" issues of "whether Guo was properly appointed as interim director" and "whether the Court should lift the injunction on Guo's noticing of the EGM[.]" ECF No. 557 at 2.

On June 17, 2025, Shi and LKM filed a letter motion requesting that the Court deny Guo's request to vacate the TRO and reject the contention that Shi was removed as a director of LKM. ECF No. 560. On June 23, 2025, Guo opposed Shi and LKM's letter motion. ECF No. 564. On July 9, 2025, Shi and LKM submitted a pre-motion letter in support of their motion to

cancel the Class B shares previously issued to Guo (ECF No. 568), and on July 11, 2025, Guo filed an opposition (ECF No. 569).

On October 17, 2025, Judge Marrero issued an order stating that "the Court is not persuaded that a pre-motion conference is necessary at this time" and asked the parties to advise whether their pre-motion letters constituted a fully briefed motion. ECF No. 572. On October 24, 2025, Shi, LKM, and Guo requested the opportunity to provide full briefing on these issues. ECF No. 573. That same day, Judge Marrero referred this dispute to the undersigned. ECF No. 574.

On December 1, 2025, Shi and LKM filed their motion for an order (1) canceling and converting certain Class B shares issued to Guo; (2) maintaining the temporary injunction on convening an EGM; (3) affirming the discharge of the Receiver; (4) declaring that Shi remains a registered director of LKM; and (5) directing Seiden to turn over all documents and records related to LKM. ECF Nos. 576, 578. On January 12, 2026, Guo filed an opposition (ECF No. 581), and Plaintiff also filed an opposition (ECF No. 583). On February 10, 2026, Shi and LKM filed a reply brief in further support of their motion. ECF No. 584.

On April 10, 2026, Shi and LKM filed a letter motion requesting that the Court lift "various stays of certain proceedings in this action, including stays that operate to delay the winding up of the receivership" and direct Seiden to turn over LKM's books and records. ECF No. 586.

## DISCUSSION

### I.    Shi has been removed as a director and lacks the authority to act on LKM's behalf.

As an initial matter, Shi is not a director or officer of LKM and therefore lacks any authority to act on LKM's behalf. Shi thus lacks the authority to pursue, on behalf of LKM, the relief he seeks by the instant motion.

8

"It is black-letter law that a corporation can only act through its officers, directors and employees." Thayer v. Dial Indus. Sales, Inc., 85 F. Supp. 2d 263, 270 (S.D.N.Y. 2000) (quoting Maltz v. Union Carbide Chem. & Plastics Co., 992 F. Supp. 286, 305 (S.D.N.Y. 1998)). Additionally, "an individual director has no power to act on behalf of the corporation, absent board authorization to do so." Aries Ventures Ltd. v. Axa Fin. S.A., 729 F. Supp. 289, 295 (S.D.N.Y. 1990) (noting that "a corporation can act only through its directors and officers").

This Court previously noted that "[a]s part of the Receivership Order, Judge Marrero expressly authorized the Receiver to remove Shi as a director of [LKM]." ECF No. 163 at 4. Subsequently, "[o]n March 14, 2019, acting in his capacity as Receiver, Seiden apparently then removed Shi as a director of [LKM]." Id.; see also ECF No. 140 at 3 (observing that Judge Marrero had expressly authorized the Receiver to remove Shi as a director of LKM). On April 17, 2019, the Receiver sent a letter to the Court stating that he had "sent a formal letter to [LKM]'s board members informing them of [ ] Shi's removal." ECF No. 43 at ¶ 10. Shi was removed as a director of LKM in April 2019. Subsequently, on March 9, 2022, the Court issued an R&R that declined to recommend "that Shi be reinstated to his prior positions of Chairman of the Board and Chief Operation Officer of the Company[.]" ECF No. 275 at 41. Judge Marrero adopted that R&R in its entirety and overruled Shi's objections, including Shi's objection to the "unenumerated recommendation that he should not be reinstated to his prior positions as Chairman of the Board." ECF No. 331 at 2, 8. Therefore, Shi was removed as both an officer and director of LKM in 2019. See ECF No. 163 at 4 (the Receiver "apparently removed Shi as a director of [LKM]" in March 2019); ECF No. 43 at ¶ 10 (the Receiver sent a letter to the Court in April 2019 stating that he had "sent a formal letter to [LKM]'s board members informing them

9

of [ ] Shi's removal"); ECF No. 285-3 at ¶ 10.4 (the Receiver removed Shi from his "corporate positions [and] authorities" "some months" prior to July 2019).

Further evidencing Shi's removal as an officer and director of LKM is the fact that Shi has consistently challenged his removal throughout this litigation. See, e.g., ECF No. 163 at 45 (R&R noting that as of September 2020, "Shi has actively and repeatedly sought, through his counsel of record, to challenge his removal from [LKM] by the Receiver"). In an application to the Grand Court of the Cayman Islands filed on February 4, 2022, the Receiver stated that "[i]n July 2019, some months after I exercised my power under the Receivership Order to remove Shi from his corporate positions or authorities, Shi purported to engage on behalf of [LKM] the same US lawyers that he had engaged to represent his personal interests in the US litigation." ECF No. 285-3 at ¶ 10.4. The instant motion is another attempt by Shi to relitigate this already-decided issue, and Shi does not provide any new authority to support disturbing the Court's prior orders concluding that the Receiver's removal of Shi in 2019 was valid.[5]

In short, because Shi is not an officer or director of LKM he cannot act on LKM's behalf to seek the cancellation of Guo's shares. See Wofsey, Certilman, Haft, Lebow & Balin v. Hatt, No. 85-CV-5927 (CSH), 1986 WL 14306, at *2 (S.D.N.Y. Dec. 4, 1986) (explaining that individual who was the corporation's "major stockholder but was not its Managing Director . . . recognized that he had no authority to employ anyone to act on behalf of that corporation")

---

[5] Regardless, even if Shi were still a director or officer of LKM (and he is not), there is no indication that Shi has received board authorization to pursue the motion and relief he seeks here. See Galef v. Alexander, 615 F.2d 51, 57 (2d Cir. 1980) ("The management of a corporation is normally entrusted to its board of directors. . . .[T]he directors have responsibility for determining whether or not to pursue causes of action available to the corporation."); In re Veeco Instruments, Inc. Sec. Litig., 434 F. Supp. 2d 267, 273 (S.D.N.Y. 2006) (noting the "well-settled principle that directors, rather than shareholders, manage the affairs of the corporation, and that the decision to bring or not to bring a lawsuit is a decision concerning the management of the corporation").

(internal quotation marks and citation omitted); see also Rackwise, Inc. v. Foley Shechter Ablovatskiy, LLP, No. 19-CV-11094 (AT) (SLC), 2020 WL 7342743, at *5 (S.D.N.Y. Dec. 14, 2020) (quoting CFTC v. Weintraub, 471 U.S. 343, 349 n.5 (1985)) ("It follows that [a former officer and director] retains no control over the corporation's privilege.") (alteration in original); Manley v. AmBase Corp., 126 F. Supp. 2d 743, 756-57 (S.D.N.Y. 2001) (explaining that the fiduciary duty "ceases to exist once an officer or director no longer occupies his or her position or when an officer or director is not acting in his or her official capacity").

## II.   Felicello Law, P.C. cannot represent LKM and Shi in the instant motion.

The second threshold deficiency with the instant motion is that Felicello Law, P.C. filed the motion on behalf of Shi and LKM, yet the firm lacks the authority to dually represent these two clients. Plaintiff and the Receiver previously argued that Felicello Law should be disqualified from representing LKM because "Shi's attempts to frustrate the Receivership evidence[d] a conflict of interest between Shi and LKM that should preclude Felicello Law from representing LKM." ECF No. 529 at 36; see also ECF No. 505 at 3-4; ECF No. 506 at 3. On November 25, 2024, this Court issued an R&R recommending that Felicello Law "continue its dual representation of Shi and LKM *solely* for purposes of moving to dismiss the common law fraud claim in the Third Amended Complaint." ECF No. 529 at 1-2, 35 (emphasis added); see also id. at 38. The R&R explained that "when Baliga and the Receiver consented to [the firm]'s representation of LKM and Shi for the motion to dismiss the Second Amended Complaint, the parties agreed that 'Shi and LKM have an identity of interests and will likely raise overlapping, if not substantively identical defenses'" and therefore there was no "'present conflict of interest between the Company and Shi with respect to the motion to dismiss.'" Id. at 37 (quoting ECF No. 174 at 1). The Court determined that the "[t]he same identity of interests exist[ed]" for the

11

motion to dismiss the common law fraud claim in the Third Amended Complaint, permitting the dual representation for the limited purpose of the motion to dismiss. Id. at 37-38. On May 19, 2025, Judge Marrero adopted that R&R, allowing Felicello Law's concurrent representation of Shi and LKM for the motion to dismiss. ECF No. 549 at 38-39.

The motion to dismiss the Third Amended Complaint has been decided. See ECF Nos. 551, 575. This instant motion is unrelated to the motion to dismiss. And Felicello Law did not receive the Court's permission to continue its dual representation of Shi and LKM. Moreover, although "Shi's conduct vis-à-vis the Receivership d[id] not represent a conflict of interest between Shi and LKM for purposes of a motion to dismiss the common law fraud claim in Count Five of the Third Amended Complaint" (ECF No. 529 at 36), it is not apparent that such a conflict would not exist for purposes of the instant motion. In other words, even if Shi were a director, it is not clear that his interests in voiding the Class B shares would align with LKM's interests.

In sum, Shi does not have the authority to act on behalf of LKM, because he is not an officer or director of the company. Additionally, Felicello Law has not been authorized to continue its dual representation of Shi and LKM and file the instant motion on behalf of them both. Moreover, there is no indication that LKM has authorized the instant course of action by Felicello Law. Collectively, these reasons provide a basis to deny Shi and LKM's motion. And in any case, as discussed below, the motion fails on the merits.

## III.    Guo's Class B LKM shares.

Turning to the request that Guo's Class B shares of LKM be canceled, Shi and LKM assert that at least 31,843,650 of Guo's 86,272,750 Class B shares should be cancelled and the remainder of Guo's shares should be converted from Class B to Class A shares.

12

###### a. Guo's shares that Shi and LKM seek to convert.

According to Shi and LKM, the registration of Guo's 86,272,750 LKM shares as Class B shares "increased his voting power from 3.45% to over 53.32%" and "caused the collective Class B holdings of [the founders of LKM] to fall from 7.09% to 3.31%." ECF No. 578 at 9. Shi and LKM assert that "[t]his event triggered Article 6(d)(ii) of [LKM]'s Memorandum of Association, which requires the 'automatic and immediate' conversion of all Class B shares into Class A shares." Id. (quoting ECF No. 36-4 at Art. 6(d)(ii)).[6] Thus, they argue that all of Guo's shares are registered in violation of the Memorandum of Association so long as the shares are not converted to Class A shares. See id. at 14-16. Guo argues that the doctrines of both laches and waiver bar this new argument concerning the conversion of the Class B shares. ECF No. 581 at 10-12.

Guo is correct that Shi and LKM have waived this argument about Article 6 of LKM's Memorandum of Association. "Courts generally deem an argument waived or abandoned if a party fails to make it." Lakhter v. MTA Headquarters, No. 25-CV-4508 (JMF), 2026 WL 311077, at *2 n.1 (S.D.N.Y. Feb. 5, 2026) (quoting Vasquez v. New York City Dep't of Educ., No. 11-CV-3674 (AJN), 2015 WL 3619432, at *14 (S.D.N.Y. June 10, 2015)); see Whitehurst v. Staten Island Univ. Hosp., No. 18-CV-1090 (ARR) (RER), 2018 WL 11218905, at *2 (E.D.N.Y. July 24, 2018), aff'd sub nom. by, Whitehurst v. 1199SEIU United Healthcare Workers E., 928 F.3d 201 (2d Cir. 2019) (explaining that "[a]n argument is waived or abandoned if a party fails to make it") (internal quotation marks and citation omitted). There is a "basic principle" that "parties must raise their arguments at the first opportunity or waive them." See In re Manhattan

---

[6] Converting Guo's shares to Class A shares would leave Guo with 33.33% voting power. ECF No. 578 at 9. Per Article 55 of LKM's Memorandum of Association, shareholders must possess at least one third of the voting power to call an EGM. Id. (quoting ECF No. 36-4 at Art. 55(b)).

13

Invest. Fund Ltd., 343 B.R. 63, 67 (S.D.N.Y. 2006); Grosso v. AT&T Pension Benefit Plan, No. 18-CV-6448 (LGS), 2021 WL 5889255, at *5 (S.D.N.Y. Dec. 13, 2021) (concluding that argument was "waived because it was not previously raised").

Here, Shi and LKM failed to raise their argument that Article 6(d)(ii) requires conversion of Guo's shares from Class B to Class A shares at any time in their briefing or objections related to the accounting of the Receiver's expenses or at any time since the shares were issued to Guo. In the years since the note-to-share conversion and issuance of shares to Guo were completed pursuant to orders of this Court and the Cayman Court, Shi has had numerous opportunities to raise this Article 6(d)(ii) argument. He has failed to do so despite raising other challenges to the Note Agreement, Guo's share conversions, and Guo's shareholder status. See ECF No. 581 at 11-12. Nor do Shi and LKM contend that Article 6(d)(ii) is new or that they have only just learned of the existence of that provision. What is more, in an April 2025 letter to this Court seeking to cancel the Note Agreement and Guo's shares, Shi cited to a paragraph of a declaration that cited Article 6(c) of LKM's Memorandum of Association, further demonstrating that he likely already knew of the existence of Article 6(d)(ii) at that time. See ECF No. 548 at 2 (citing ECF No. 290 at ¶ 80).

Looking back even further, the Receiver initially issued 44,702,750 Class B common shares of LKM to Guo on July 22, 2020. ECF No. 419-7 at 2-3. On October 19, 2021, the Receiver issued 41,570,000 additional Class B common shares of LKM to Guo. ECF No. 419-12 at 2-3. On February 3, 2023, Shi objected to the compensation paid by the Receiver to Guo as part of the accounting. See ECF No. 393 at 3; ECF No. 394 at ¶ 84. Shi argued that the equity granted to Guo was an "improper windfall," that Guo's shares should be canceled, and that the Receiver should be "surcharged for value of the windfall compensation" awarded to Guo. ECF

14

No. 393 at 3. Shi also described the compensation to Guo as "excessive, unnecessary, and unreasonable," and he asserted that Guo's exercise of his right to convert his repayment into shares of LKM "massively diluted the voting rights and equity interests of existing shareholders of" LKM. ECF No. 394 at ¶¶ 82, 84. He did not, however, raise an argument concerning Article 6(d)(ii).

On September 18, 2023, Shi again filed objections to Guo's compensation and expenses, arguing that (1) the Court's prior orders concerning the Note Agreement and Class B shares should be vacated based on newly discovered evidence and because the orders had no precedential value, (2) the Court should find that Guo did not pay for the shares he received, and (3) the Note Agreement should be cancelled. ECF No. 473 at 15-23. Here, too, Shi did not raise an argument under Article 6(d)(ii).

On December 9, 2024, Shi submitted objections to this Court's R&Rs on the accounting and expense proceedings, raising a new argument that if the Court declined to vacate the Note Agreement, it should alternatively reduce the number of shares issued to Guo as a result of the conversion and cancel "at least 34,124,500 of Guo's Class B shares" because Guo "received more shares than he is entitled to." See ECF No. 533 at 25-26. Once again, Shi did not introduce an argument regarding Article 6(d)(ii).

Shi submitted an additional letter seeking to cancel the Note Agreement and cancel Guo's shares on April 14, 2025. ECF No. 548. There, too, Shi did not mention Article 6(d)(ii) and instead argued that Guo's shares should be canceled for failure to comply with the terms of the Note Agreement or, in the alternative, at least 34,123,500 of Guo's shares should be cancelled. See id. Judge Marrero ruled on the accounting and expense proceedings on May 19, 2025. ECF Nos. 549, 550.

As is evident form this discussion, at all relevant times, Shi and LKM failed to raise an Article 6(d)(ii) argument, despite knowing of LKM's Memorandum of Association and Article 6. Accordingly, Shi and LKM have waived any argument that Article 6(d)(ii) requires conversion of Guo's shares. See Grosso, 2021 WL 5889255, at *5 (concluding that argument that "could have" been made earlier was "waived because it was not previously raised"); Vasquez, 2015 WL 3619432, at *14 (collecting cases applying waiver where party failed to raise argument in first available instance).

   b.   Guo's shares that Shi and LKM seek to cancel.

Shi and LKM also contend that "at least 31,843,650 of Mr. Guo's Class B shares were registered without receiving payment of consideration for those shares" and should be cancelled outright "for nonpayment." ECF No. 578 at 13-15. They note that Judge Marrero's May 19, 2025 order (see ECF No. 550) flagged a "discrepancy" between the amount of expenses authorized by the Court and the amount previously converted to shares under the Note Agreement. ECF No. 578 at 14. Shi and LKM also argue that Guo's shares "reflecting the Court-approved 'salary' also should be canceled because the Note permits conversion of only amounts advanced for expenses, not salary." Id.

Shi raised a similar argument in his objections to this Court's R&Rs on the accounting. See ECF No. 533 at 25-26. There, Shi argued that a discrepancy existed as to the salary and expenses for which Guo could receive compensation and that such a discrepancy justified cancelling the excess shares. Id. Shi claimed that "the Court should cancel at least 34,124,500 of the 86,272,750 shares that Guo converted from the Note Agreement . . . because Guo converted $1,725,455 in claims into 86,272,750 Class B Shares, but Magistrate Judge Figueredo recommended denying Guo's salary of $345,000 and an additional $45,597 of expenses . . . ,

16

creating a discrepancy between the converted amount and approved expense claims." ECF No. 550 at 21 (citing ECF No. 533 at 25-26). Nevertheless, in his May 19, 2025 order, Judge Marrero concluded that "terminating shares issued to Guo under the Note Agreement" was not required "at this time" and explained that "[t]he resulting decreased discrepancy between the number of shares converted and approved expenses is for the parties to resolve." Id. at 22. Judge Marrero declined to "reduce Guo shares converted pursuant to the Note Agreement" and added that if the parties could not resolve the matter and LKM "were to not seek reimbursement of Guo's requested aggregate salary, this Court has jurisdiction with respect to all matters arising from or related to the implementation of its Order approving the Receiver's accounting and the Receiver's discharge." Id.

As Guo argues, the shares should not be cancelled because this is an issue that should be resolved by the parties, a new LKM Board has not had an opportunity to approve additional reimbursements to Guo, and this Court has previously declined to reduce Guo's shares. ECF No. 581 at 13-15. In light of Judge Marrero's prior instruction, any discrepancy should be resolved by the parties. And there is no indication that the parties have attempted to resolve this issue but have been unsuccessful. It would be far better for LKM to address this issue with Guo directly, without the Court's intervention. See Woods v. Bos. Sci. Corp., No. 06-CV-5380 (AKH) (THK), 2006 WL 4495530, at *6 (S.D.N.Y. Nov. 1, 2006), adopted by, 2007 WL 754093 (S.D.N.Y. Feb. 9, 2007) (quoting Custer Channel Wing Corp. v. Frazer, 181 F. Supp. 197, 201 (S.D.N.Y. 1959)) ("A court should, as far as practicable, refrain from interfering with the internal affairs and management of a corporation."). Additionally, Shi and LKM do not explain why they previously sought to cancel at least 34,124,500 of Guo's shares, but now seek to cancel only 31,843,650. Nor do they explain how they calculated that 31,843,650 is the appropriate amount of shares that

should be cancelled. Thus, even if this issue were ripe for court intervention (and it is not), the parties have not provided sufficient information for the Court to decide the issue.

Next, Shi and LKM argue that Guo's LKM shares issued as a "salary" should be cancelled because the Note Agreement did not authorize Guo to receive a salary. ECF No. 578 at 14. But Judge Marrero previously stated that "the Court is mindful of the time and effort Guo dedicated to recovering [LKM]'s assets in China and supervising the defense of [LKM] in numerous proceedings" and thus "the Court will not completely deny Guo compensation." ECF No. 549 at 35. Moreover, Judge Marrero explained that "[t]he amount of compensation to be awarded to a receiver *or his agent* 'is squarely within the court's discretion.'" Id. (quoting Sec. & Exch. Comm'n v. Platinum Mgmt. (NY) LLC, No. 16-CV-6848 (BMC), 2018 WL 4623012, at *4 (E.D.N.Y. Sept. 26, 2018)) (emphasis added). In a separate order, Judge Marrero also "overruled, in part" this Court's "denial of a salary to Guo." ECF No. 550 at 22. Given Judge Marrero's prior decisions, the shares issued to Guo as a "salary" should not be canceled solely on the basis that Guo was not entitled to receive a salary for his work on behalf of LKM.

Accordingly, the parties are directed to meet and confer to try to resolve the issue concerning any discrepancy in Guo's shares. If the parties are unable to resolve this dispute, LKM can renew its motion.

## IV.    The injunction on convening the EGMs should be lifted.

Shi and LKM argue that the Court should maintain "the injunction barring the Receiver from noticing an EGM." ECF No. 578 at 15-18. Conversely, Guo and Plaintiff aver that the Court should dissolve the injunction and order resumption of the EGMs that the Receiver originally noticed for May 2023. ECF No. 581 at 16-18; ECF No. 583 at 5-6.

18

"District courts have continuing power to vacate or modify injunctions where there is a showing of a change in the operative facts so that the injunction is no longer justified." Helmer v. Briody, 721 F. Supp. 498, 505 (S.D.N.Y. 1989); see also Int'l Equity Inv., Inc. v. Opportunity Equity Partners, Ltd., 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) ("A preliminary injunction may be modified if the moving party demonstrates that a material change in circumstances justifies the alteration."); Railway Labor Executives' Ass'n v. Metro North Commuter R. Co., 759 F. Supp. 1019, 1021 (S.D.N.Y. 1990) ("A continuing injunction, however, whether preliminary or permanent, is always subject to modification for a change in circumstances."). In evaluating a motion to dissolve a preliminary injunction, "a court should typically consider 'only truly new evidence.'" JLM Couture, Inc. v. Gutman, No. 20-CV-10575 (LTS) (SLC), 2021 WL 2227205, at *2 (S.D.N.Y. June 2, 2021) (quoting Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1207 (2d Cir. 1970)); see also American Optical Co. v. Rayex Corp., 394 F.2d 155 (2d Cir. 1968) (denying motion to vacate a preliminary injunction that was not based on changes in circumstances that occurred after the injunction was entered). "[U]pon a motion to modify or dissolve a preliminary injunction, the movant must demonstrate that the circumstances warranting a change are truly new[.]" JLM Couture, Inc., 2021 WL 2227205, at *3.

Here, the Receiver had the authority to call the EGMs, and the circumstances that initially necessitated postponing the EGMs have now lapsed, warranting dissolution of the injunction. On February 23, 2022, the Grand Court of the Cayman Islands issued an order "authoriz[ing]" the Receiver to call EGMs for the purpose of appointing directors and putting certain special resolutions and ordinary resolutions before the shareholders. ECF No. 271-1. On March 3, 2022, the Receiver sent a letter to this Court stating that he "plan[ned] to send notice of the EGM in accordance with [LKM]'s bylaws." ECF No. 271. On March 4, 2022, the Receiver noticed an

EGM for March 18, 2022, to vote on certain ordinary resolutions (see ECF No. 276-2), and he noticed an EGM for March 19, 2022, to vote on certain special resolutions (see ECF No. 276-3). On March 15, 2022, Shi filed a proposed order to show cause to enjoin the EGMs and strike the proposed shareholder resolutions. ECF No. 276. The next day, Judge Marrero issued an order temporarily enjoining the EGMs pending a hearing on Shi's application for a preliminary injunction. ECF No. 277. On June 9, 2022, the Receiver informed the Court that he and his office had been unable to contact Guo since April 14, 2022, and that they "fear[ed] that [Guo] ha[d] disappeared or been kidnapped." ECF No. 309 at 3.

On September 15, 2022, Judge Marrero issued an order explaining that the Cayman Court "provided the Receiver with the explicit authority to convene the EGMs that would allow LKM's shareholders to vote on the [appointment or replacement of directors of LKM]." ECF No. 338 at 7. Consequently, Judge Marrero enjoined the EGM "until [Guo] can attend the meetings, provided that Guo reappears prior to the full discharge of the Receiver's authority, following its provision of a full accounting of the receivership's activities." Id. at 13.

The conditions outlined in Judge Marrero's order have since been satisfied. By May 2023, Guo had reappeared, and the Receiver thus sought to reconvene the EGMs consistent with the conditions that Judge Marrero set in his September 2022 order. See ECF No. 418. On May 26, 2023, Judge Marrero again "temporarily enjoined" the Receiver and Guo "from proceeding with any [EGMs] of the shareholders of LKM, including those noticed for May 30, 2023 and May 31, 2023 until further Order of this Court," and he directed that the parties submit briefing on the issue of "Guo's expenses incurred in conjunction with $1.5 million Convertible Note and the Receiver's accounting thereof." ECF No. 425 at 1-2. On June 21, 2023, Judge Marrero again extended the injunction enjoining the EGMs from proceeding "until the Receiver's accounting of

expenses, including Guo's, is resolved." ECF No. 440 at 3. On May 19, 2025, Judge Marrero

ruled on the accounting of the Receiver's expenses and discharged the Receiver. ECF No. 549 at

37-40. Accordingly, as it concerns Judge Marrero's May 2023 order temporarily extending the

injunction, the conditions in that order also have been met as the accounting of Guo's and the

Receiver's expenses are complete.

Additionally, it is not necessary to re-appoint Seiden as the Receiver in any limited

capacity to allow the EGMs to go forward. Seiden properly noticed the EGMs pursuant to his

authority as the Receiver. See ECF No. 271-1. Given that the Receiver appointed Guo to

convene the EGMs (see ECF Nos. 275, 331), Guo may properly re-notice and convene the

postponed EGMs. In short, because there has been a change of circumstances and the conditions

that necessitated the injunction are no longer present, there is no basis to maintain the injunction

preventing the EGMs from proceeding.

## V.   **The Receiver must turn over LKM's books and records.**

Finally, Shi and LKM request that the Court "vacate" Judge Marrero's June 12, 2025

order and "direct [Seiden] to promptly turnover to [LKM]'s counsel all books, records,

documents and other things that came into his possession during the receivership." ECF No. 578

at 22. Neither Guo nor Plaintiff respond to this request.[7] See ECF No. 584 at 12-13. The

Receivership Order is silent as to any post-receivership turnover of books and records. See ECF

No. 26. However, given that Seiden was discharged as the Receiver in May 2025 (see ECF No.

---

[7] Seiden has not appeared in this action since June 11, 2025, when he (1) requested a stay of any obligation he might have to produce LKM documents to Shi in the wake of his discharge as Receiver until the Court resolved the dispute between Guo and Shi concerning LKM's management, and (2) sought the Court's guidance as to whether Felicello Law is an authorized representative of LKM to whom Seiden should turn over the LKM documents and information in his possession. See ECF No. 555.

549), it is improper for Seiden to continue to retain control of LKM's books, records, documents, and any other materials that came into his possession during the receivership. See Wilmington Tr., Nat'l Ass'n as Tr. for Registered Holders of Ashford Hosp. Tr. 2018-Keys Com. Mortg. Pass-Through Certificates v. Ashford Tipton Lakes LP, No. 23-CV-9989 (JLR), 2024 WL 899095, at *13 (S.D.N.Y. Mar. 1, 2024) ("Upon the termination of the receivership, Receiver shall deliver to Plaintiff or its designee all Project Records, Information Technology and such books and records that should come into the Receiver's possession under this Order.").

Accordingly, following the convening of the EGMs, see supra at § IV, and the election of a Board of Directors, Seiden is directed to turn over to LKM or its designee all of LKM's books, records, documents, and any other materials belonging to LKM that came into his possession during the receivership.

## CONCLUSION

For the foregoing reasons, Shi and LKM's motion is **GRANTED** only to the extent that

Seiden's discharge as the Receiver is affirmed and Seiden is required to turn over LKM's books

and records. The motion is **DENIED** on all remaining grounds.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 576 and

586.

DATED:      New York, New York
            August 11, 2026

_____
VALERIE FIGUEREDO
United States Magistrate Judge

23